PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P., | § | |
| | § | Adversary Proceeding No. |
| Plaintiffs, | § | 22-03052-sgj |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

DOCS_NY:45826.2 36027/003

**AMENDED APPENDIX IN SUPPORT OF HIGHLAND
CAPITAL MANAGEMENT, L.P.'S AMENDED MOTION TO DISMISS**

| Ex. | Description | Appx. # |
|---|---|---|
| 1. | *Proof of Claim 177*, filed in Case No. 19-34054-sgj by The Dugaboy Investment Trust | 1-6 |
| 2. | *Original Complaint*, Case No. 21-cv-01479-S, D.I. 1 (N.D. Tex. June 23, 2021) | 7-18 |
| 3. | *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief*, Case No. 19-34054-sgj, D.I. 1943 (Bankr. N.D. Tex. Feb. 22, 2021) | 19-180 |
| 4. | *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)*, Case No. 19-34054-sgj, D.I. 1808 (Bankr. N.D. Tex. Jan. 22, 2021) | 181-247 |
| 5. | *Original Complaint*, Adv. Proceeding No. 22-03052, D.I. 1-1 (Bankr. N.D. Tex. May 25, 2022) | 248-259 |
| 6. | *Schedule of Contracts and Leases to Be Assumed*, Case No. 19-34054-sgj, D.I. 1875-5 (Bankr. N.D. Tex. Feb. 1, 2021) | 260-268 |
| 7. | *Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, Case No. 19-34054-sgj, D.I. 2700 (Bankr. N.D. Tex. Aug. 11, 2021) | 269-273 |
| 8. | *Certificate of Service of Vincent Trang re: Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, Case No. 19-34054-sgj, D.I. 2747 (Bankr. N.D. Tex. Aug. 19, 2021) | 274-449 |
| 9. | *Plaintiff's Motion to Stay All Proceedings*, Adv. Proceeding No. 22-03052, D.I. 6 (Bankr. N.D. Tex. May. 25, 2022) | 450-456 |
| 10. | *Electronic Order*, Adv. Proceeding No. 22-03052, D.I. 7 (Bankr. N.D. Tex. May. 25, 2022) | 457-458 |
| 11. | *Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order*, Adv. Proceeding No. 22-03052, D.I. 8 (Bankr. N.D. Tex. May. 25, 2022) | 459-467 |
| 12. | *Plaintiff's Motion to Dismiss*, Adv. Proceeding No. 22-03052, D.I. 11 (Bankr. N.D. Tex. May. 25, 2022) | 468-476 |
| 13. | *Order*, Adv. Proceeding No. 22-03052, D.I. 18 (Bankr. N.D. Tex. May. 25, 2022) | 477-479 |
| 14. | *Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P.*, dated November 1, 2014 | 480-534 |
| 15. | *Amended and Restated Memorandum and Articles of Association of Highland Multi Strategy Credit Fund, Ltd.*, as adopted on 1 November 2014 | 535-577 |
| 16. | *Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P.*, dated November 1, 2013 | 578-589 |

| 17. | *Declaration of James. P. Seery, Jr., in Support of Amended Motion to Dismiss* | 590-594 |
|-----|--------------------------------------------------------------------------------|---------|
| 18. | *Cayman Hotel and Golf Incorporated v. Resort Gems Limited Grand Court* | 595-615 |
| 19. | The Contracts (Rights of Third Parties) Law, 2014 | 616-624 |
| 20. | *Ebbw Vale Urban DC v. South Wales Traffic Area* | 625-633 |
| 21. | June 25, 2021, Hearing Transcript | 634-756 |
| 22. | November 23, 2021, Hearing Transcript | 757-861 |

[REMAINDER OF PAGE INTENTIONALLY BLANK]

Dated:  July 26, 2022.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor    Highland Capital Management, L.P.

United States Bankruptcy Court for the: Northern    District of Texas
                                                             (State)

Case number    19-34054

## Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies or any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

The Dugaboy Investment Trust

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| The Dugaboy Investment Trust<br>300 Crescent Court, Ste. 700<br>Dallas, TX 75201 | |
| Contact phone _____ | Contact phone _____ |
| Contact email _gscott@myersbigel.com_ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☑ No

☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                       MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing? _____

**Appx. 00002**

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?**

$ <u>See attached Exhibit "A"</u>. **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>See attached Exhibit "A"</u>

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature or property:**

☐ Real estate: If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amount should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410                          Proof of Claim                          page 2

**Appx. 00003**

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Yes. *Check all that apply:*

|  | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

| 13. | **Is all or part of the claim pursuant to 11 U.S.C. § 503(b)(9)?** | ☑ No |
|---|---|---|

☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$ _____

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgement that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/23/2020
                   MM / DD / YYYY

/s/Grant Scott
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Grant Scott | | |
|---|---|---|---|
| | First name | Middle name | Last name |

| Title | Trustee |
|---|---|

| Company | The Dugaboy Investment Trust |
|---|---|
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |

| Address | 4140 Park Lake Ave., Suite 600, Raleigh, NC, 27612 |
|---|---|

| Contact phone | 919-854-1407 |
|---|---|

Email   gscott@investorshaven.com

¨¨1¤}HV4$7     #^«

---

Official Form 410

**Proof of Claim**

**Appx. 00004**

## KCC ePOC Electronic Claim Filing Summary

For phone assistance: Domestic (877) 573-3984 | International (310) 751-1829

| | |
|---|---|
| **Debtor:**<br>19-34054 - Highland Capital Management, L.P.<br>**District:**<br>Northern District of Texas, Dallas Division | |
| **Creditor:**<br>The Dugaboy Investment Trust<br>300 Crescent Court, Ste. 700<br>Dallas, TX, 75201<br>**Phone:**<br>**Phone 2:**<br>**Fax:**<br>**Email:**<br>gscott@myersbigel.com | **Has Supporting Documentation:**<br>Yes, supporting documentation successfully uploaded<br>**Related Document Statement:**<br><br>**Has Related Claim:**<br>No<br>**Related Claim Filed By:**<br><br>**Filing Party:**<br>Authorized agent |
| **Other Names Used with Debtor:** | **Amends Claim:**<br>No<br>**Acquired Claim:**<br>No |
| **Basis of Claim:**<br>See attached Exhibit "A" | **Last 4 Digits:**<br>No / **Uniform Claim Identifier:** |
| **Total Amount of Claim:**<br>See attached Exhibit "A" | **Includes Interest or Charges:**<br>No |
| **Has Priority Claim:**<br>No | **Priority Under:** |
| **Has Secured Claim:**<br>No<br>**Amount of 503(b)(9):**<br>No<br>**Based on Lease:**<br>No<br>**Subject to Right of Setoff:**<br>No | **Nature of Secured Amount:**<br>**Value of Property:**<br>**Annual Interest Rate:**<br>**Arrearage Amount:**<br>**Basis for Perfection:**<br>**Amount Unsecured:** |
| **Submitted By:**<br>Grant Scott on 23-Apr-2020 5:01:59 p.m. Eastern Time<br>**Title:**<br>Trustee<br>**Company:**<br>The Dugaboy Investment Trust | |
| **Optional Signature Address:**<br>Grant Scott<br>4140 Park Lake Ave., Suite 600<br>Raleigh, NC, 27612<br>**Telephone Number:**<br>919-854-1407<br>**Email:**<br>gscott@myersbigel.com | |

VN: 65752F35DCEED8B0205CA4C7932BA53B

**Appx. 00005**

**Exhibit A**

      The Dugaboy Investment Trust ("<u>Claimant</u>"), an investor in certain funds managed by the Debtor, including Highland Multi-Strategy Credit Fund, L.P. and Highland Multi-Strategy Credit Fund, Ltd., may have claims against the Debtor relating to the post-petition actions or inactions of the fund investment manager in managing these funds pursuant to Debtor's Fourth Amended and Restated Limited Partnership Agreement and that certain Third Amended and Restated Investment Management Agreement by and between Highland Multi-Strategy Credit Fund, L.P., Highland Multi-Strategy Credit Fund, Ltd., and the Debtor, as amended from time to time. While the potential claims relate to the post-petition actions or inactions of the fund investment manager, Claimant is filing this claim to preserve all potential rights, claims, and causes of action it may have against the Debtor under these prepetition agreements relating to the investment manager's actions or inactions in managing these funds.

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THE DUGABOY INVESTMENT TRUST,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Cause No. _____ |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, LP,** | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

## ORIGINAL COMPLAINT

This matter concerns grave accounts of self-dealing and deception and seeks redress for violation of federal law including, but not limited to, violations of the Advisers Act of 1940, and other state causes of action.

### I.

### PARTIES

**1.** Plaintiff, The Dugaboy Investment Trust ("Plaintiff"), is a Delaware perpetual non-revocable trust with its principal place of business in Dallas County, Texas.

**2.** Defendant Highland Capital Management LP ("Highland" or "HCMLP") is a Delaware limited partnership, whose principal place of business is in Dallas, Texas.

### II.

### JURISDICTION AND VENUE

**3.** Subject matter jurisdiction is proper in this court under 28 U.S.C. § 1331, and under 28 U.S.C. § 1334 because the suit arises out of post-petition acts or omissions of the debtor and certain of its principals.

**Appx. 00008**

**4.** This Court has general personal jurisdiction over Defendant Highland Capital Management, LP, because it has continuously done business in this state, and the causes of action arise from the acts or omissions committed in this state.

**5.** Venue is proper in this Court because a substantial number of the acts or omissions giving rise to this lawsuit and the causes of action asserted herein occurred in Dallas County.

### III.

### FACTUAL BACKGROUND

**6.** HCMLP is a registered investment advisor ("<u>RIA</u>") subject to the regulations of the Securities Exchange Commission.

**7.** HCMLP is both the advisor of and investor in Highland Multi Strategy Credit Fund, LP ("<u>Multistrat</u>"), a Delaware limited partnership. Highland Multi Strategy Credit Fund GP, L.P., itself a Delaware limited partnership, is the general partner of Multistrat, and HCMLP is the sole member of the general partner of Highland Multi Strategy Credit Fund GP, L.P.

**8.** HCMLP's advisory capacity is governed, or at all relevant times was governed, by the Third Amended and Restated Investment Management Agreement, effective November 1, 2013 (the "<u>IMA</u>").

**9.** The purpose of Multistrat as a vehicle was stated as such: "The Fund's investment objective is to seek attractive risk-adjusted returns, consistent with the preservation of capital and prudent investment management."

**10.** The Confidential Private Placement Memorandum for Multistrat disclosed that "[t]he Investment Manager is registered as an investment adviser with the Securities and Exchange Commission under the U.S. Investment Advisers Act of 1940, as amended (the 'Advisers Act').

---

**Appx. 00009**

Each prospective investor will be required to make a representation to indicate that it is a 'qualified client' as defined in the Advisers Act."

11.     Because of these agreements and roles as the General Partner and RIA, Highland owed contractual and fiduciary duties to Plaintiff, as an investor in Multistrat.

12.     James Seery, the principal, CEO, and CRO of HCMLP in its capacity as a debtor, admitted under oath that HCMLP owes fiduciary duties to the investors of the funds HCMLP manages—which would include Multistrat—and therefore, has admitted under oath that HCMLP and its governed persons owe fiduciary duties to the investors in Multistrat, which includes Plaintiff, the Charitable DAF Fund, Ltd., and Highland Capital Management Services, Inc., among others.

13.     As an investment vehicle advised at all times and controlled at all times by HCMLP, Multistrat purchased and owned a pool of viaticals—investments in life insurance policies keyed to the lives of other persons. When a person passes away, the life insurance money is paid to the owner of the policy—in this case, Multistrat.

14.     The notional value of the viatical pool was approximately $145 million.

15.     In or around August 2020, HCMLP sold the entire viatical pool for approximately $35,000,000 – less than one quarter of the insured value.

16.     The policies insured people aged 90 on average, suggesting that the policies were highly likely to pay off in the ensuing few years given the age and life expectancies of the insureds, as well as considering the actuarial impact of the COVID pandemic.

17.     In the spring of 2020, Multistrat raised funds specifically for the purpose of paying the premiums on the viatical pool—amounts raised, borrowing availability, and liquid securities provided enough cash to pay the premiums. But HCMLP did not pursue this path as promised.

---

Instead, it sold the assets. To this day it is unclear why the policies were sold, and why, just prior to a planned mediation.

18.     Furthermore, the process of selling was severely flawed. For example, the health assessments used to determine the likelihood and timeline for the payout were two years old. HCMLP did not cause new, up-to-date health assessments to be performed, and instead was content to rely on stale information or worse, no information at all.

19.     Furthermore, HCMLP made no effort to adjust the projected life expectancies due to the increasing age of the insureds during a process that stretched over seven months, nor for the potential impact of COVID on people over the age of 90, which would have impacted the price..

20.     Equally troubling is that Multistrat obtained the funds to pay the premiums from another investor—yet, it apparently did not use the funds for that purpose.

21.     HCMLP apparently used the proceeds of the sale to pay itself, notwithstanding the fact that there were redeemed interests waiting to be paid—interests to whom HCMLP also owed fiduciary duties.

22.     In short, HCMLP caused Multistrat to sell the viatical pool at a substantially discounted amount to curry favor with the brokers and buyers in the marketplace for no apparent benefit to Multistrat's investors or the debtor's estate.

### III.

### CAUSES OF ACTION

### First Cause of Action
### Breach of Fiduciary Duty

23.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

24.     As an RIA, HCMLP is subject to the Investment Advisers Act of 1940.

___

**Appx. 00011**

25.     The contracts set forth above—the subscription agreement and the IMA—impose and incorporate the duties and obligations of the Investment Advisers Act of 1940.

26.     Under this federal law, an investment adviser is a fiduciary.[1] This includes a duty of care, a duty of loyalty, and a duty to refrain from engaging in transactions in which it is not a disinterested person.

27.     The duty of loyalty imposed by the Advisers Act of 1940 is not specifically defined in the Advisers Act or in Commission rules, but reflects a Congressional recognition "of the delicate fiduciary nature of an investment advisory relationship" as well as a Congressional intent to "eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested."

28.     To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship, including disclosing transactions in which the advisor has an interest, and to disclose all pertinent facts of a transaction that could affect the client or the client's interest.[2] In order for disclosure to be full and fair, it should be sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent.

---

[1] *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194 (1963). *Santa Fe Indus.* v. *Green*, 430 U.S. 462, 471, n.11 (1977) (in discussing SEC v. Capital Gains, stating that the Supreme Court's reference to fraud in the "equitable" sense of the term was "premised on its recognition that Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers"); Investment Advisers Act Release No. 3060 (July 28, 2010) ("Under the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing *Proxy Voting by Investment Advisers*, Investment Advisers Act Release No. IA2106 (Jan. 31, 2003) ("Investment Advisers Act Release 2106")).

[2] *SEC v. Capital Gains*, supra, at 200 ("Failure to disclose material facts must be deemed fraud or deceit within its intended meaning."). Investment Advisers Act Release 3060, supra, footnote 15 ("as a fiduciary, an adviser has an ongoing obligation to inform its clients of any material information that could affect the advisory relationship"); see also General Instruction 3 to Part 2 of Form ADV ("Under federal and state law, you are a fiduciary and must make full disclosure to your clients of all material facts relating to the advisory relationship.").

29.     This fiduciary duty also requires an adviser "to adopt the principal's goals, objectives, or ends." This means the adviser must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client and must at all times act for the interests of its investors.[3]

30.     Here, the goals of Multistrat included "to seek attractive risk adjusted returns, consistent with the preservation of capital and prudent investment management."

31.     The duty of care includes, among other things: (i) the duty to provide advice that is in the best interest of the client, (ii) the duty to seek best execution of a client's transactions where the adviser has the responsibility to select broker-dealers to execute client trades, and (iii) the duty to provide advice and monitoring over the course of the relationship.

32.     These fiduciary duties are **unwaivable**, and any agreement made in derogation of the obligations under the Advisers Act is **void**.

33.     HCMLP's CEO testified under oath that he and HCMLP were aware of these duties and had to comply with them.

34.     Section 204 of the Advisers Act requires HCMLP to carry written policies and procedures that must be followed in order to adhere to its federal obligations.

35.     Section 206 of the Advisers Act prohibits transactions by an adviser that were accomplished via a "deceit" on a client or prospective client, e.g., by concealing the role and

---

[3] Investment Advisers Act Release 3060 (adopting amendments to Form ADV and stating that "[u]nder the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing Investment Advisers Act Release 2106, supra footnote 15). *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("Section 206 imposes a fiduciary duty on investment advisers to act at all times in the best interest of the fund..."); *SEC v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y 1996) ("Investment advisers are entrusted with the responsibility and duty to act in the best interest of their clients.").

interest the adviser has in the transaction, or via engaging in a course of conduct that has a tendency to mislead a client or which is manipulative.

36.     These breaches include, but are not limited to (1) selling the viatical pool at a distressed price when it was not in distress and there was no need for Multistrat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) concealing the purpose behind the sale of the viatical pool and the conflicts of interest that inhere in the transaction; (5) causing the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multistrat (e.g., by failing to conduct an auction, obtaining competitive bids, and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

37.     The Advisors Act declares any contract that was made in violation of its provisions or regulations, or any contract that has been performed in violation of the Advisors Act, **void**.

38.     The Advisers Act created a private right of action to void unlawful agreements and acts and to seek such equitable relief as accompanies such claims.

39.     Texas law allows a fiduciary plaintiff to seek damages for breaches of fiduciary duty and to seek disgorgement of all ill-gotten gains obtained by a fiduciary.

40.     Plaintiff has been damaged due to the breaches of fiduciary duty outlined herein, and it is entitled to recover damages, punitive damages, and attorneys' fees.

41.     To the extent this claim must be brought as a derivative action, it is plain that the demand requirement under Delaware law could not be met because serving a demand on Highland or to sue Highland would have been futile.

**Appx. 00014**

**Second Cause of Action**
**Breach of Contract**

**42.** Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**43.** The contracts set forth above—the subscription agreement and the IMA—impose a duty of prudent investment management for the benefit of the investors in Multistrat and incorporate the duties and obligations of the Investment Advisers Act of 1940.

**44.** The violations set forth above constitute a breach of each or both of these agreements.

**45.** These breaches include, but are not limited to (1) selling the viatical pool at a distressed price when it was not in distress and there was no need for Multistrat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) concealing the purpose behind the sale of the ,viatical pool and the conflicts of interest that inhere in the transaction; (5) causing the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multistrat (e.g., by failing to conduct an auction, obtaining competitive bids, and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

**46.** Plaintiff has been damaged by the breaches of contract outlined herein.

**47.** Plaintiff is entitled to recover damages and attorneys' fees.

**JURY DEMAND AND PRAYER**

**48.** Plaintiff demands trial by jury.

**49.** Plaintiff respectfully requests judgment and an order:

- Disgorging all ill-gotten gains in an amount to be determined at trial;

---

- Voiding the IMA agreements herein with HCMLP pursuant to the Advisers Act;

- Awarding damages in an amount to be determined at trial;

- Awarding punitive damages in an amount to be determined at trial;

- Awarding attorneys' fees and costs in an amount to be determined at trial;

- Awarding all interim and final relief to which Plaintiff is legally or equitably entitled under the facts and circumstances raised herein.

Dated: June 23, 2021         Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367
E: mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Plaintiff**

JS 44   (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

The Dugaboy Investment Trust

## DEFENDANTS

Highland Capital Management, LP

**(b)** County of Residence of First Listed Plaintiff   Dallas County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Dallas County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sbaiti & Company PLLC, 2200 Ross Avenue, Suite 4900W,
Dallas, TX 75201 (T: 214-432-2899)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 80b-1

Brief description of cause:
Adviser's Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Stacey G. Jernigan

DOCKET NUMBER   19-34054-sgi11 NDTXBK

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT                APPLYING IFP                  JUDGE                  MAG. JUDGE

JS 44 Reverse (Rev. 10/20)  - TXND (10/20)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)    County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)    Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.    Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.    Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.    Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.**  This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

# EXHIBIT 3

Docket #1943  Date Filed: 02/22/2021



**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 22, 2021**

_____

_____ **United States Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) |

### ORDER (I) CONFIRMING THE FIFTH AMENDED
### PLAN OF REORGANIZATION OF HIGHLAND CAPITAL
### MANAGEMENT, L.P. (AS MODIFIED) AND (II) GRANTING RELATED RELIEF

The Bankruptcy Court[2] having:

a.    entered, on November 24, 2020, the *Order (A) Approving the Adequacy of the Disclosure Statement, (B) Scheduling A Hearing to Confirm the Fifth Amended Plan of Reorganization (C) Establishing Deadline for Filing Objections to Confirmation of Plan, (D) Approving Form of Ballots, Voting Deadline and Solicitation Procedures, and (E) Approving Form and Manner of Notice* [Docket No. 1476] (the "Disclosure Statement Order"), pursuant to which the Bankruptcy Court approved the adequacy of the *Disclosure Statement Relating to the Fifth*

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan (as defined below).  The rules of interpretation set forth in Article I of the Plan apply to this Confirmation Order.



*Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1473] (the "<u>Disclosure Statement</u>") under section 1125 of the Bankruptcy Code and authorized solicitation of the Disclosure Statement;

b.    set January 5, 2021, at 5:00 p.m. prevailing Central Time (the "<u>Objection Deadline</u>"), as the deadline for filing objections to confirmation of the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (*As Modified*) [Docket No. 1808] (as amended, supplemented or modified, the "<u>Plan</u>");

c.    set January 5, 2021, at 5:00 p.m. prevailing Central Time,  as the deadline for voting on the Plan (the "<u>Voting Deadline</u>") in accordance with the Disclosure Statement Order;

d.    initially set January 13, 2021, at 9:30 a.m. prevailing Central Time, as the date and time to commence the hearing to consider confirmation of the Plan pursuant to Bankruptcy Rules 3017 and 3018, sections 1126, 1128, and 1129 of the Bankruptcy Code, and the Disclosure Statement Order, which hearing was continued to January 26, 2021, at 9:30 a.m. prevailing Central Time and further continued to February 2, 2021;

e.    reviewed: (i) the Plan; (ii) the Disclosure Statement; and (iii) *Notice of (I) Entry of Order Approving Disclosure Statement; (II) Hearing to Confirm; and (III) Related Important Dates* (the "<u>Confirmation Hearing Notice</u>"), the form of which is attached as <u>Exhibit 1-B</u> to the Disclosure Statement Order;

f.    reviewed: (i) the *Debtor's Notice of Filing of Plan Supplement for the Third Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1389] filed November 13, 2020; (ii) *Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1606] filed on December 18, 2020; (iii) the *Debtor's Notice of Filing of Plan Supplement for the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1656] filed on January 4, 2021; (iv) *Notice of Filing Plan Supplement to the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (with Technical Modifications)t* dated January 22, 2021 [Docket No. 1811]; and (v) *Debtor's Notice of Filing of Plan Supplement to the Fifth Amended Plan of Reorganization of Highland of Highland Capital Management, L.P. (As Modified)* on February 1, 2021 [Docket No. 1875]; (collectively, the documents listed in (i) through (v) of this paragraph, the "<u>Plan Supplements</u>");

g.    reviewed: (i) the *Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on December 30, 2020 [Docket No. 1648]; (ii) the *Second Notice of (I) Executory Contracts and*

DOCS_SF:104487.21 36027/002

*Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on January 11, 2021 [Docket No.1719]; (iii) the *Third Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan, (II) Cure Amounts, if Any, and (III) Related Procedures in Connection Therewith* filed on January 15, 2021 [Docket No. 1749]; (iv) the *Notice of Withdrawal of Certain Executory Contracts and Unexpired Leases from List of Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan* [Docket No. 1791]; (v) the *Fourth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan (II) Cure Amounts, if Any, and (III) Released Procedures in Connection Therewith* filed on January 27, 2021 [Docket No. 1847]; (vi) the *Notice of Hearing on Agreed Motion to (I) Assume Nonresidential Real Property Lease with Crescent TC Investors, L.P. Upon Confirmation of Plan and (II) Extend Assumption Deadline* filed on January 28, 2021 [Docket No. 1857]; and (vii) the *Fifth Notice of (I) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Fifth Amended Plan (II) Cure Amounts, if Any, and (III) Released Procedures in Connection Therewith* filed on February 1, 2021 [Docket No. 1873] (collectively, the documents referred to in (i) to (vii) are referred to as "List of Assumed Contracts");

h.     reviewed: (i) the *Debtor's Memorandum of Law in Support of Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1814] (the "Confirmation Brief"); (ii) the *Debtor's Omnibus Reply to Objections to Confirmation of the Fifth Amended Chapter 11 Plan of Reorganization of Highland Capital Management*; [Docket No. 1807]; and (iii) the *Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1772] and *Supplemental Certification of Patrick M. Leathem With Respect to the Tabulation of Votes on the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1887] filed on February 3, 2021 (together, the "Voting Certifications").

i.     reviewed: (i) the *Notice of Affidavit of Publication* dated December 3, 2020 [Docket No. 1505]; (ii) the *Certificate of Service* dated December 23, 2020 [Docket No. 1630]; (iii) the *Supplemental Certificate of Service* dated December 24, 2020 [Docket No. 1637]; (iv) the *Second Supplemental Certificate of Service* dated December 31, 2020 [Docket No. 1653]; (v) the *Certificate of Service* dated December 23, 2020 [Docket No. 1627]; (vi) the *Certificate of Service* dated January 6, 2021 [Docket No. 1696]; (vii) the *Certificate of Service* dated January 7, 2021 [Docket No. 1699]; (viii) the *Certificate of Service* dated January 7, 2021 [Docket No 1700]; (ix) the *Certificate of Service* dated January 15, 2021 [Docket No. 1761]; (x) the *Certificate of Service* dated January 19, 2021 [Docket No. 1775]; (xi) the

3

**Appx. 00022**

*Certificate of Service* dated January 20, 2021 [Docket No. 1787]; (xii) the *Certificate of Service* dated January 26, 2021[Docket No. 1844]; (xiii) the *Certificate of Service* dated January 27, 2021 [Docket No. 1854]; (xiv) the *Certificate of Service* dated February 1, 2021 [Docket No. 1879]; (xv) the *Certificates of Service* dated February 3, 2021 [Docket No. 1891 and 1893]; and (xvi) the *Certificates of Service* dated February 5, 2021 [Docket Nos. 1906, 1907, 1908 and 1909] (collectively, the "Affidavits of Service and Publication");

j.    reviewed all filed[3] pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and confirmation of the Plan, including all objections, statements, and reservations of rights;

k.    conducted a hearing to consider confirmation of the Plan, which commenced on February 2, 2021, at 9:30 a.m. prevailing Central Time and concluded on February 3, 2021, and issued its oral ruling on February 8, 2021 (collectively, the "Confirmation Hearing);

l.    heard the statements and arguments made by counsel in respect of confirmation of the Plan and having considered the record of this Chapter 11 Case and taken judicial notice of all papers and pleadings filed in this Chapter 11 Case; and

m.    considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan, including (a) all of the exhibits admitted into evidence;[4] (b) the sworn testimony of (i) James P. Seery, Jr., the Debtor's Chief Executive Officer and Chief Restructuring Officer and a member of the Board of Directors of Strand Advisors, Inc. ("Strand"), the Debtor's general partner; (ii) John S. Dubel, a member of the Board of Strand; (iii) Marc Tauber, a Vice President at Aon Financial Services; and (iv) Robert Jason Post, the Chief Compliance Officer of NexPoint Advisors, LP (collectively, the "Witnesses"); (c) the credibility of the Witnesses; and (d) the Voting Certifications.

NOW, THEREFORE, after due deliberation thereon and good cause appearing therefor,

the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of

law:

---

[3] Unless otherwise indicated, use of the term "filed" herein refers also to the service of the applicable document filed on the docket in this Chapter 11 Case, as applicable.

[4] The Court admitted the following exhibits into evidence: (a) all of the Debtor's exhibits lodged at Docket No. 1822 (except TTTTT, which was withdrawn by the Debtor); (b) all of the Debtor's exhibits lodged at Docket No. 1866; (c) all of the Debtor's exhibits lodged at Docket No. 1877; (d) all of the Debtor's exhibits lodged at Docket No. 1895; and (e) Exhibits 6-12 and 15-17 offered by Mr. James Dondero and lodged at Docket No. 1874.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      **Findings of Fact and Conclusions of Law.**  The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record during the Confirmation Hearing, constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding pursuant to Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      **Introduction and Summary of the Plan.** Prior to addressing the specific requirements under the Bankruptcy Code and Bankruptcy Rules with respect to the confirmation of the Plan, the Bankruptcy Court believes it would be useful to first provide the following background of the Debtor's Chapter 11 Case, the parties involved therewith, and some of the major events that have transpired culminating in the filing and solicitation of the Plan of this very unusual case.  Before the Bankruptcy Court is the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*, filed on November 24, 2020, as modified on January 22, 2021 and again on February 1, 2021.  The parties have repeatedly referred to the Plan as an "asset monetization plan" because it involves the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds, subject to the oversight of the Claimant Trust Oversight Board.  The Plan provides for a Claimant Trust to, among other things, manage and monetize the Claimant Trust Assets for the benefit of the Debtor's economic stakeholders.  The Claimant Trustee is responsible

DOCS_SF:104487.21 36027/002

**Appx. 00024**

for this process, among other duties specified in the Plan's Claimant Trust Agreement.  There is also anticipated to be a Litigation Sub-trust established for the purpose of pursuing certain avoidance or other causes of action for the benefit of the Debtor's economic constituents.

3.      **Confirmation Requirements Satisfied.**  The Plan is supported by the Committee and all claimants with Convenience Claims (*i.e.*, general unsecured claims under $1 million) who voted in Class 7.  Claimants with Class 8 General Unsecured Claims, however, voted to reject the Plan because, although the Plan was accepted by 99.8% of the amount of Claims in that class, only 17 claimants voted to accept the Plan while 27 claimants voted to reject the Plan.  As a result of such votes, and because Mr. Dondero and the Dondero Related Entities (as defined below) objected to the Plan on a variety of grounds primarily relating to the Plan's release, exculpation and injunction provisions, the Bankruptcy Court heard two full days of evidence on February 2 and 3, 2021, and considered testimony from five witnesses and thousands of pages of documentary evidence in determining whether the Plan satisfies the confirmation standards required under the Bankruptcy Code.  The Bankruptcy Court finds and concludes that the Plan meets all of the relevant requirements of sections 1123, 1124, and 1129, and other applicable provisions of the Bankruptcy Code, as more fully set forth below with respect to each of the applicable confirmation requirements.

4.      **Not Your Garden Variety Debtor**.  The Debtor's case is not a garden variety chapter 11 case.  The Debtor is a multibillion-dollar global investment adviser registered with the SEC, pursuant to the Investment Advisers Act of 1940.  It was founded in 1993 by James Dondero and Mark Okada.  Mark Okada resigned from his role with Highland prior to the

6

**Appx. 00025**

bankruptcy case being filed on October 16, 2019 (the "Petition Date"). Mr. Dondero controlled the Debtor as of the Petition Date but agreed to relinquish control of it on or about January 9, 2020, pursuant to an agreement reached with the Committee, as described below. Although Mr. Dondero remained with the Debtor as an unpaid employee/portfolio manager after January 9, 2020, his employment with the Debtor terminated on October 9, 2020. Mr. Dondero continues to work for and/or control numerous non-debtor entities in the complex Highland enterprise.

5. **The Debtor**. The Debtor is headquartered in Dallas, Texas. As of the Petition Date, the Debtor employed approximately 76 employees. The Debtor is privately-owned: (a) 99.5% by the Hunter Mountain Investment Trust; (b) 0.1866% by The Dugaboy Investment Trust, a trust created to manage the assets of Mr. Dondero and his family; (c) 0.0627% by Mark Okada, personally and through family trusts; and (d) 0.25% by Strand, the Debtor's general partner.

6. **The Highland Enterprise.** Pursuant to various contractual arrangements, the Debtor provides money management and advisory services for billions of dollars of assets, including collateralized loan obligation vehicles ("CLOs"), and other investments. Some of these assets are managed by the Debtor pursuant to shared services agreements with certain affiliated entities, including other affiliated registered investment advisors. In fact, there are approximately 2,000 entities in the byzantine complex of entities under the Highland umbrella. None of these affiliated entities filed for chapter 11 protection. Most, but not all, of these entities are not subsidiaries (direct or indirect) of the Debtor. Many of the Debtor's affiliated companies are

DOCS_SF:104487.21 36027/002

**Appx. 00026**

offshore entities, organized in jurisdictions such as the Cayman Islands and Guernsey. *See* Disclosure Statement, at 17-18.

7.      **Debtor's Operational History.**  The Debtor's primary means of generating revenue has historically been from fees collected for the management and advisory services provided to funds that it manages, plus fees generated for services provided to its affiliates.  For additional liquidity, the Debtor, prior to the Petition Date, would sell liquid securities in the ordinary course, primarily through a brokerage account at Jefferies, LLC. The Debtor would also, from time to time, sell assets at non-Debtor subsidiaries and cause those proceeds to be distributed to the Debtor in the ordinary course of business.  The Debtor's current Chief Executive Officer, James P. Seery, Jr., credibly testified at the Confirmation Hearing that the Debtor was "run at a deficit for a long time and then would sell assets or defer employee compensation to cover its deficits."  The Bankruptcy Court cannot help but wonder if that was necessitated because of enormous litigation fees and expenses incurred by the Debtor due to its culture of litigation—as further addressed below.

8.      **Not Your Garden Variety Creditor's Committee**.  The Debtor and this chapter 11 case are not garden variety for so many reasons.  One of the most obvious standouts in this case is the creditor constituency.  The Debtor did not file for bankruptcy because of any of the typical reasons that large companies file chapter 11.  For example, the Debtor did not have a large, asset-based secured lender with whom it was in default; it only had relatively insignificant secured indebtedness owing to Jeffries, with whom it had a brokerage account, and one other entity, Frontier State Bank.  The Debtor also did not have problems with its trade vendors or landlords.

8

The Debtor also did not suffer any type of catastrophic business calamity.  In fact, the Debtor filed for Chapter 11 protection six months before the onset of the COVID-19 pandemic.  Rather, the Debtor filed for Chapter 11 protection due to a myriad of massive, unrelated, business litigation claims that it faced—many of which had finally become liquidated (or were about to become liquidated) after a decade or more of contentious litigation in multiple forums all over the world. The Committee in this case has referred to the Debtor—under its former chief executive, Mr. Dondero—as a "serial litigator."  The Bankruptcy Court agrees with that description. By way of example, the members of the Committee (and their history of litigation with the Debtor and others in the Highland complex) are as follows:

a.    **The Redeemer Committee of the Highland Crusader Fund (the "Redeemer Committee")**.  This Committee member obtained an arbitration award against the Debtor in the amount of $190,824,557, inclusive of interest, approximately five months before the Petition Date, from a panel of the American Arbitration Association. It was on the verge of having that award confirmed by the Delaware Chancery Court immediately prior to the Petition Date, after years of disputes that started in late 2008 (and included legal proceedings in Bermuda).  This creditor's claim was settled during this Chapter 11 Case in the amount of approximately $137,696,610 (subject to other adjustments and details not relevant for this purpose).

b.    **Acis Capital Management, L.P., and Acis Capital Management GP, LLC ("Acis")**.  Acis was formerly in the Highland complex of companies, but was not affiliated with Highland as of the Petition Date.  This Committee member and its now-owner, Joshua Terry, were involved in litigation with the Debtor dating back to 2016.  Acis was forced by Mr. Terry (who was a former Highland portfolio manager) into an involuntary chapter 11 bankruptcy in the Bankruptcy Court for the Northern District of Texas, Dallas Division before the Bankruptcy Court in 2018, after Mr. Terry obtained an approximately $8 million arbitration award and judgment against Acis.  Mr. Terry ultimately was awarded the equity ownership of Acis by the Bankruptcy Court in the Acis bankruptcy case.  Acis subsequently asserted a multi-million dollar claim against Highland in the Bankruptcy Court for Highland's alleged denuding of Acis to defraud its creditors—primarily Mr. Terry. The litigation involving Acis and Mr. Terry dates back to mid-2016 and has

9

**Appx. 00028**

continued on with numerous appeals of Bankruptcy Court orders, including one appeal still pending at the Fifth Circuit Court of Appeals. There was also litigation involving Mr. Terry and Acis in the Royal Court of the Island of Guernsey and in a state court in New York. The Acis claim was settled during this Chapter 11 Case, in Bankruptcy Court-ordered mediation, for approximately $23 million (subject to other details not relevant for this purpose), and is the subject of an appeal being pursued by Mr. Dondero.

c.    **UBS Securities LLC and UBS AG London Branch ("UBS").**  UBS is a Committee member that filed a proof of claim in the amount of $1,039,957,799.40 in this Chapter 11 Case. The UBS Claim was based on a judgment that UBS received from a New York state court in 2020. The underlying decision was issued in November 2019, after a multi-week bench trial (which had occurred many months earlier) on a breach of contract claim against non-Debtor entities in the Highland complex. The UBS litigation related to activities that occurred in 2008 and 2009. The litigation involving UBS and Highland and affiliates was pending for more than a decade (there having been numerous interlocutory appeals during its history). The Debtor and UBS recently announced an agreement in principle for a settlement of the UBS claim (which came a few months after Bankruptcy Court-ordered mediation) which will be subject to a 9019 motion to be filed with the Bankruptcy Court on a future date.

d.    **Meta-E Discovery ("Meta-E").**  Meta-E is a Committee member that is a vendor who happened to supply litigation and discovery-related services to the Debtor over the years. It had unpaid invoices on the Petition Date of more than $779,000.

It is fair to say that the members of the Committee in this case all have wills of steel. They fought hard before and during this Chapter 11 Case. The members of the Committee, all of whom have volunteered to serve on the Claimant Trust Oversight Board post-confirmation, are highly sophisticated and have had highly sophisticated professionals representing them. They have represented their constituency in this case as fiduciaries extremely well.

9.    **Other Key Creditor Constituents.**  In addition to the Committee members who were all embroiled in years of litigation with Debtor and its affiliates in various ways, the Debtor has been in litigation with Patrick Daugherty, a former limited partner and employee of the Debtor, for many years in both Delaware and Texas state courts. Mr. Daugherty filed an amended

10

proof of claim in this Chapter 11 Case for $40,710,819.42 relating to alleged breaches of employment-related agreements and for defamation arising from a 2017 press release posted by the Debtor. The Debtor and Mr. Daugherty recently announced a settlement of Mr. Daugherty's claim pursuant to which he will receive $750,000 in cash on the Effective Date of the Plan, an $8.25 million general unsecured claim, and a $2.75 million subordinated claim (subject to other details not relevant for this purpose). Additionally, entities collectively known as "HarbourVest" invested more than $70 million with an entity in the Highland complex and asserted a $300 million proof of claim against the Debtor in this case, alleging, among other things, fraud and RICO violations. HarbourVest's claim was settled during the bankruptcy case for a $45 million general unsecured claim and a $35 million subordinated claim, and that settlement is also being appealed by a Dondero Entity.

10. **Other Claims Asserted.** Other than the Claims just described, most of the other Claims in this Chapter 11 Case are Claims asserted against the Debtor by: (a) entities in the Highland complex—most of which entities the Bankruptcy Court finds to be controlled by Mr. Dondero; (b) employees who contend that are entitled to large bonuses or other types of deferred compensation; and (c) numerous law firms that worked for the Debtor prior to the Petition Date and had outstanding amounts due for their prepetition services.

11. **Not Your Garden Variety Post-Petition Corporate Governance Structure**. Yet another reason this is not your garden variety chapter 11 case is its post-petition corporate governance structure. Immediately from its appointment, the Committee's relationship with the Debtor was contentious at best. First, the Committee moved for a change of venue from

DOCS_SF:104487.21 36027/002

**Appx. 00030**

Delaware to Dallas. Second, the Committee (and later, the United States Trustee) expressed its then-desire for the appointment of a chapter 11 trustee due to its concerns over and distrust of Mr. Dondero, his numerous conflicts of interest, and his history of alleged mismanagement (and perhaps worse).

12.     **Post-Petition Corporate Governance Settlement with Committee.** After spending many weeks under the threat of the potential appointment of a trustee, the Debtor and Committee engaged in substantial and lengthy negotiations resulting in a corporate governance settlement approved by the Bankruptcy Court on January 9, 2020.[5] As a result of this settlement, among other things, Mr. Dondero relinquished control of the Debtor and resigned his positions as an officer or director of the Debtor and its general partner, Strand. As noted above, Mr. Dondero agreed to this settlement pursuant a stipulation he executed,[6] and he also agreed not to cause any Related Entity (as defined in the Settlement Motion) to terminate any agreements with the Debtor. The January 9 Order also (a) required that the Bankruptcy Court serve as "gatekeeper" prior to the commencement of any litigation against the three independent board members appointed to oversee and lead the Debtor's restructuring in lieu of Mr. Dondero and (b) provided for the exculpation of those board members by limiting claims subject to the "gatekeeper" provision to those alleging willful misconduct and gross negligence.

---

[5] This order is hereinafter referred to as the "January 9 Order" and was entered by the Court on January 9, 2020 [Docket No. 339] pursuant to the *Motion of the Debtor to Approve Settlement with Official Committee of Unsecured Creditors Regarding the Governance of the Debtor and Procedures for Operation in the Ordinary Course* [Docket No. 281] (the "Settlement Motion").

[6] *See Stipulation in Support of Motion of the Debtor for Approval of Settlement With the Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in Ordinary Course* [Docket No. 338] (the "Stipulation").

DOCS_SF:104487.21 36027/002

**Appx. 00031**

13. **Appointment of Independent Directors.** As part of the Bankruptcy Court-approved settlement, three eminently qualified independent directors were chosen to lead Highland through its Chapter 11 Case. They are: James P. Seery, Jr., John S. Dubel (each chosen by the Committee), and Retired Bankruptcy Judge Russell Nelms. These three individuals are each technically independent directors of Strand (Mr. Dondero had previously been the sole director of Strand and, thus, the sole person in ultimate control of the Debtor). The three independent board members' resumes are in evidence. The Bankruptcy Court later approved Mr. Seery's appointment as the Debtor's Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative. Suffice it to say that this settlement and the appointment of the independent directors changed the entire trajectory of the case and saved the Debtor from the appointment of a trustee. The Bankruptcy Court and the Committee each trusted the independent directors. They were the right solution at the right time. Because of the unique character of the Debtor's business, the Bankruptcy Court believed the appointment of three qualified independent directors was a far better outcome for creditors than the appointment of a conventional chapter 11 trustee. Each of the independent directors brought unique qualities to the table. Mr. Seery, in particular, knew and had vast experience at prominent firms with high-yield and distressed investing similar to the Debtor's business. Mr. Dubel had 40 years of experience restructuring large complex businesses and serving on boards in this context. And Retired Judge Nelms had not only vast bankruptcy experience but seemed particularly well-suited to help the Debtor maneuver through conflicts and ethical quandaries. By way of comparison, in the chapter 11 case of Acis, the former affiliate of Highland that the Bankruptcy Court presided over and which company was

**Appx. 00032**

much smaller in size and scope than Highland (managing only 5-6 CLOs), the creditors elected a chapter 11 trustee who was not on the normal trustee rotation panel in this district but, rather, was a nationally known bankruptcy attorney with more than 45 years of large chapter 11 experience. While the Acis chapter 11 trustee performed valiantly, he was sued by entities in the Highland complex shortly after he was appointed (which the Bankruptcy Court had to address). The Acis trustee was also unable to persuade the Debtor and its affiliates to agree to any actions taken in the case, and he finally obtained confirmation of Acis' chapter 11 plan over the objections of the Debtor and its affiliates on his fourth attempt (which confirmation was promptly appealed).

14.    **Conditions Required by Independent Directors.**  Given the experiences in Acis and the Debtor's culture of constant litigation, it was not as easy to get such highly qualified persons to serve as independent board members and, later, as the Debtor's Chief Executive Officer, as it would be in an ordinary chapter 11 case.  The independent board members were stepping into a morass of problems. Naturally, they were worried about getting sued no matter how defensible their efforts—given the litigation culture that enveloped Highland historically.  Based on the record of this Case and the proceedings in the Acis chapter 11 case, it seemed as though everything always ended in litigation at Highland.  The Bankruptcy Court heard credible testimony that none of the independent directors would have taken on the role of independent director without (1) an adequate directors and officers' ("D&O") insurance policy protecting them; (2) indemnification from Strand that would be guaranteed by the Debtor; (3) exculpation for mere negligence claims; and (4) a gatekeeper provision prohibiting the commencement of litigation against the independent directors without the Bankruptcy Court's prior authority.  This gatekeeper provision was also

DOCS_SF:104487.21 36027/002

**Appx. 00033**

included in the Bankruptcy Court's order authorizing the appointment of Mr. Seery as the Debtor's

Chief Restructuring Officer, Chief Restructuring Officer, and Foreign Representative entered on

July 16, 2020.[7]   The gatekeeper provisions in both the January 9 Order and July 16 Order are

precisely analogous to what bankruptcy trustees have pursuant to the so-called "Barton Doctrine"

(first articulated in an old Supreme Court case captioned *Barton v. Barbour,* 104 U.S. 126 (1881)).

The Bankruptcy Court approved all of these protections in the January 9 Order and the July 16

Order, and no one appealed either of those orders.  As noted above, Mr. Dondero signed the

Stipulation that led to the settlement that was approved by the January 9 Order.  The Bankruptcy

Court finds that, like the Committee, the independent board members have been resilient and

unwavering in their efforts to get the enormous problems in this case solved.  They seem to have

at all times negotiated hard and in good faith, which culminated in the proposal of the Plan

currently before the Bankruptcy Court.  As noted previously, they completely changed the

trajectory of this case.

15.   **Not Your Garden Variety Mediators.**  And still another reason why this

was not your garden variety case was the mediation effort.  In the summer of 2020, roughly nine

months into the chapter 11 case, the Bankruptcy Court ordered mediation among the Debtor, Acis,

UBS, the Redeemer Committee, and Mr. Dondero.  The Bankruptcy Court selected co-mediators

because mediation among these parties seemed like such a Herculean task—especially during

COVID-19 where people could not all be in the same room.  Those co-mediators were:  Retired

---

[7] *See Order Approving the Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 854] entered on July 16, 2020 (the "July 16 Order")

DOCS_SF:104487.21 36027/002

**Appx. 00034**

Bankruptcy Judge Alan Gropper from the Southern District of New York, who had a distinguished career presiding over complex chapter 11 cases, and Ms. Sylvia Mayer, who likewise has had a distinguished career, first as a partner at a preeminent law firm working on complex chapter 11 cases, and subsequently as a mediator and arbitrator in Houston, Texas. As noted earlier, the Redeemer Committee and Acis claims were settled during the mediation—which seemed nothing short of a miracle to the Bankruptcy Court—and the UBS claim was settled several months later and the Bankruptcy Court believes the ground work for that ultimate settlement was laid, or at least helped, through the mediation. And, as earlier noted, other significant claims have been settled during this case, including those of HarbourVest (who asserted a $300 million claim) and Patrick Daugherty (who asserted a $40 million claim). The Bankruptcy Court cannot stress strongly enough that the resolution of these enormous claims—and the acceptance by all of these creditors of the Plan that is now before the Bankruptcy Court—seems nothing short of a miracle. It was more than a year in the making.

16. **Not Your Garden Variety Plan Objectors (That Is, Those That Remain)**. Finally, a word about the current, remaining objectors to the Plan before the Bankruptcy Court. Once again, the Bankruptcy Court will use the phrase "not your garden variety", which phrase applies to this case for many reasons. Originally, there were over a dozen objections filed to the Plan. The Debtor then made certain amendments or modifications to the Plan to address some of these objections, none of which require further solicitation of the Plan for reasons set forth in more detail below. The only objectors to the Plan left at the time of the Confirmation Hearing

DOCS_SF:104487.21 36027/002

**Appx. 00035**

were Mr. Dondero [Docket No. 1661] and entities that the Bankruptcy Court finds are owned

and/or controlled by him and that filed the following objections:

    a.    *Objection to Confirmation of the Debtor's Fifth Amended Plan of Reorganization* (filed by Get Good Trust and The Dugaboy Investment Trust) [Docket No. 1667];

    b.    *Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (filed by Highland Capital Management Fund Advisors, L.P., Highland Fixed Income Fund, Highland Funds I and its series, Highland Funds II and its series, Highland Global Allocation Fund, Highland Healthcare Opportunities Fund, Highland Income Fund, Highland Merger Arbitrate Fund, Highland Opportunistic Credit Fund, Highland Small-Cap Equity Fund, Highland Socially Responsible Equity Fund, Highland Total Return Fund, Highland/iBoxx Senior Loan ETF, NexPoint Advisors, L.P., NexPoint Capital, Inc., NexPoint Real Estate Strategies Fund, NexPoint Strategic Opportunities Fund)* [Docket No. 1670];

    c.    A *Joinder to the Objection filed at 1670 by:  NexPoint Real Estate Finance Inc., NexPoint Real Estate Capital, LLC, NexPoint Residential Trust, Inc., NexPoint Hospitality Trust, NexPoint Real Estate Partners, LLC, NexPoint Multifamily Capital Trust, Inc., VineBrook Homes Trust, Inc., NexPoint Real Estate Advisors, L.P., NexPoint Real Estate Advisors II, L.P., NexPoint Real Estate Advisors III, L.P., NexPoint Real Estate Advisors IV, L.P., NexPoint Real Estate Advisors V, L.P., NexPoint Real Estate Advisors VI, L.P., NexPoint Real Estate Advisors VII, L.P., NexPoint Real Estate Advisors VIII, L.P., and any funds advised by the foregoing* [Docket No. 1677];

    d.    *NexPoint Real Estate Partners LLC's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexPoint Real Estate Partners LLC f/k/a HCRE Partners LLC)* [Docket No. 1673]; and

    e.    *NexBank's Objection to Debtor's Fifth Amended Plan of Reorganization (filed by NexBank Title, Inc., NexBank Securities, Inc., NexBank Capital, Inc., and NexBank)* [Docket No. 1676].  The entities referred to in (i) through (v) of this paragraph are hereinafter referred to as the "Dondero Related Entities").

    17.    **Questionability of Good Faith as to Outstanding Confirmation**

**Objections.**  Mr. Dondero and the Dondero Related Entities technically have standing to object to

the Plan, but the remoteness of their economic interests is noteworthy, and the Bankruptcy Court

DOCS_SF:104487.21 36027/002

**Appx. 00036**

questions the good faith of Mr. Dondero's and the Dondero Related Entities' objections. In fact, the Bankruptcy Court has good reason to believe that these parties are not objecting to protect economic interests they have in the Debtor but to be disruptors. Mr. Dondero wants his company back. This is understandable, but it is not a good faith basis to lob objections to the Plan. As detailed below, the Bankruptcy Court has slowed down plan confirmation multiple times and urged the parties to talk to Mr. Dondero in an attempt to arrive at what the parties have repeatedly referred to as a "grand bargain," the ultimate goal to resolve the Debtor's restructuring. The Debtor and the Committee represent that they have communicated with Mr. Dondero regarding a grand bargain settlement, and the Bankruptcy Court believes that they have.

18. **Remote Interest of Outstanding Confirmation Objectors.** To be specific about the remoteness of Mr. Dondero's and the Dondero Related Entities' interests, the Bankruptcy Court will address them each separately. First, Mr. Dondero has a pending objection to the Plan. Mr. Dondero's only economic interest with regard to the Debtor is an unliquidated indemnification claim (and, based on everything the Bankruptcy Court has heard, his indemnification claims would be highly questionable at this juncture). Mr. Dondero owns no equity in the Debtor directly. Mr. Dondero owns the Debtor's general partner, Strand, which in turn owns a quarter percent of the total equity in the Debtor. Second, a joint objection has been filed by The Dugaboy Trust ("Dugaboy") and the Get Good Trust ("Get Good"). The Dugaboy Trust was created to manage the assets of Mr. Dondero and his family and owns a 0.1866% limited partnership interest in the Debtor. *See* Disclosure Statement at 7, n.3. The Bankruptcy Court is not clear what economic interest the Get Good Trust has, but it likewise seems to be related to Mr. Dondero. Get Good

18

**Appx. 00037**

filed three proofs of claim relating to a pending federal tax audit of the Debtor's 2008 return, which

the Debtor believes arise from Get Good's equity security interests and are subject to subordination

as set forth in its Confirmation Brief. Dugaboy filed three claims against the Debtor: (a) an

administrative claim relating to the Debtor's alleged postpetition management of Multi-Strat

Credit Fund, L.P., (b) a prepetition claim against a subsidiary of the Debtor for which it seeks to

pierce the corporate veil, each of which the Debtor maintains are frivolous in the Confirmation

Brief, and (c) a claim arising from its equity security interest in the Debtor, which the Debtor

asserts should be subordinated. Another group of objectors that has joined together in one

objection is what the Bankruptcy Court will refer to as the "Highland Advisors and Funds." *See*

Docket No. 1863. The Bankruptcy Court understands they assert disputed administrative expense

claims against the estate that were filed shortly before the Confirmation Hearing on January 23,

2021 [Docket No. 1826], and during the Confirmation Hearing on February 3, 2021 [Docket No.

1888]. At the Confirmation Hearing, Mr. Post testified on behalf of the Highland Advisors and

Funds that the Funds have independent board members that run the Funds, but the Bankruptcy

Court was not convinced of their independence from Mr. Dondero because none of the so-called

independent board members have ever testified before the Bankruptcy Court and all have been

engaged with the Highland complex for many years. Notably, the Court questions Mr. Post's

credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in

October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request,

and he is currently employed by Mr. Dondero. Moreover, Dustin Norris, a witness in a prior

proceeding (whose testimony was made part of the record at the Confirmation Hearing), recently

**Appx. 00038**

testified on behalf of the Highland Advisors and Funds in another proceeding that Mr. Dondero owned and/or controlled these entities. Finally, various NexBank entities objected to the Plan. The Bankruptcy Court does not believe they have liquidated claims against the Debtor. Mr. Dondero appears to be in control of these entities as well.

19. **Background Regarding Dondero Objecting Parties.** To be clear, the Bankruptcy Court has allowed all these objectors to fully present arguments and evidence in opposition to confirmation, even though their economic interests in the Debtor appear to be extremely remote and the Bankruptcy Court questions their good faith. Specifically, the Bankruptcy Court considers them all to be marching pursuant to the orders of Mr. Dondero. In the recent past, Mr. Dondero has been subject to a temporary restraining order and preliminary injunction by the Bankruptcy Court for interfering with Mr. Seery's management of the Debtor in specific ways that were supported by evidence. Around the time that this all came to light and the Bankruptcy Court began setting hearings on the alleged interference, Mr. Dondero's company phone, which he had been asked to turn in to Highland, mysteriously went missing. The Bankruptcy Court merely mentions this in this context as one of many reasons that the Bankruptcy Court has to question the good faith of Mr. Dondero and his affiliates in raising objections to confirmation of the Plan.

20. **Other Confirmation Objections.** Other than the objections filed by Mr. Dondero and the Dondero Related Entities, the only other pending objection to the Plan is the *United States Trustee's Limited Objection to Confirmation of Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1671], which objected to the Plan's exculpation, injunction, and

**Appx. 00039**

Debtor release provisions. In juxtaposition, to these pending objections, the Bankruptcy Court

notes that the Debtor resolved the following objections to the Plan:

a. *CLO Holdco, Ltd.'s Joinder to Objection to Confirmation of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. and Supplemental Objections to Plan Confirmation* [Docket No. 1675]. This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph VV of the Confirmation Order;

b. *Objection of Dallas County, City of Allen, Allen ISD, City of Richardson, and Kaufman County to Confirmation of the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1662]. This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph QQ of the Confirmation Order;

c. *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization (filed by Scott Ellington, Thomas Surgent, Frank Waterhouse, Isaac Leventon)* [Docket No. 1669]. This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraph 82 and paragraphs RR and SS of the Confirmation Order;

d. *Limited Objection of Jack Yang and Brad Borud to Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1666] and the amended joinder filed by Davis Deadman, Paul Kauffman and Todd Travers [Docket No. 1679]. This Objection and the amended joinder were resolved by agreement of the parties pursuant to modifications to the Plan filed by the Debtor;

e. *United States' (IRS) Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1668]. This Objection has been resolved pursuant to mutually agreed language by the parties set forth in paragraphs TT and UU of the Confirmation Order; and

f. *Patrick Hagaman Daugherty's Objection to Confirmation of Fifth Amended Plan of Reorganization* [Docket No. 1678]. This objection was resolved by the parties pursuant to the settlement of Mr. Daugherty's claim announced on the record of the Confirmation Hearing.

21. **Capitalized Terms.** Capitalized terms used herein, but not defined herein,

shall have the respective meanings attributed to such terms in the Plan and the Disclosure

Statement, as applicable.

DOCS_SF:104487.21 36027/002

**Appx. 00040**

22.     **Jurisdiction and Venue.**  The Bankruptcy Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Chapter 11 Case is proper in this district and in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

23.     **Chapter 11 Petition.**   On the Petition Date, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, which case was transferred to the Bankruptcy Court on December 19, 2019.  The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Chapter 11 Case.   The Office of the United States Trustee appointed the Committee on October 29, 2019.

24.     **Judicial Notice.**  The Bankruptcy Court takes judicial notice of the docket in this Chapter 11 Case maintained by the clerk of the Bankruptcy Court and the court-appointed claims agent, Kurtzman Carson Consultants LLC ("KCC"), including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during this Chapter 11 Case, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing, as well as all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at hearings held before the Bankruptcy Court or the District Court for the Northern District of Texas in

**Appx. 00041**

connection with an adversary proceeding or appellate proceeding, respectively, related to this Chapter 11 Case.

25. **Plan Supplement Documents.** Prior to the Confirmation Hearing, the Debtor filed each of the Plan Supplements. The Plan Supplements contain, among other documents, the Retained Causes of Action, the Claimant Trust Agreement, the Litigation Sub-Trust Agreement, the Senior Employee Stipulation, the Related Entity List, the Schedule of Employees, the Reorganized Limited Partnership Agreement, supplements to the Liquidation Analysis/Financial Projections, the Schedule of Contracts and Leases to be Assumed, and the other Plan Documents set forth therein (collectively, the "Plan Supplement Documents").

26. **Retained Causes of Action Adequately Preserved.** The Bankruptcy Court finds that the list of Retained Causes of Action included in the Plan Supplements sufficiently describes all potential Retained Causes of Action, provides all persons with adequate notice of any Causes of Action regardless of whether any specific claim to be brought in the future is listed therein or whether any specific potential defendant or other party is listed therein, and satisfies applicable law in all respects to preserve all of the Retained Causes of Action. The definition of the Causes of Action and Schedule of Retained Causes of Action, and their inclusion in the Plan, specifically and unequivocally preserve the Causes of Action for the benefit of the Reorganized Debtor, the Claimant Trust, or the Litigation Sub-Trust, as applicable.

27. **Plan Modifications Are Non-Material.** In addition to the Plan Supplements, the Debtor made certain non-material modifications to the Plan, which are reflected in (i) the *Redline of Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*

**Appx. 00042**

*(as Modified)* filed on January 22, 2021 [Docket No. 1809], and (ii) Exhibit B to the *Debtor's*

*Notice of Filing of Plan Supplement to Fifth Amended Plan of Reorganization of Highland Capital*

*Management, L.P. (as Modified)* filed on February 1, 2021 [Docket No. 1875] (collectively, the

"Plan Modifications").  Section 1127(a) of the Bankruptcy Code provides that a plan proponent

may modify its plan at any time before confirmation so long as such modified plan meets the

requirements of sections 1122 and 1123 of the Bankruptcy Code.  None of the modifications set

forth in the Plan Supplements or the Plan Modifications require any further solicitation pursuant

to sections 1125, 1126, or 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, because,

among other things, they do not materially adversely change the treatment of the claims of any

creditors or interest holders who have not accepted, in writing, such supplements and

modifications.  Among other things, there were changes to the projections that the Debtor filed

shortly before the Confirmation Hearing (which included projected distributions to creditors and

a comparison of projected distributions under the Plan to potential distributions under a

hypothetical chapter 7 liquidation).  The Plan Supplements and Plan Modifications did not mislead

or prejudice any creditors or interest holders nor do they require that Holders of Claims or Equity

Interests be afforded an opportunity to change previously cast votes to accept or reject the Plan.

Specifically, the Amended Liquidation Analysis/Financial Projections filed on February 1, 2021

[Docket No. 1875] do not constitute any material adverse change to the treatment of any creditors

or interest holders but, rather, simply update the estimated distributions based on Claims that were

settled in the interim and provide updated financial data.  The filing and notice of the Plan

Supplements and Plan Modifications were appropriate and complied with the requirements of

**Appx. 00043**

section 1127(a) of the Bankruptcy Code and the Bankruptcy Rules, and no other solicitation or disclosure or further notice is or shall be required.  The Plan Supplements and Plan Modifications each became part of the Plan pursuant section 1127(a) of the Bankruptcy Code.  The Debtor or Reorganized Debtor, as applicable, is authorized to modify the Plan or Plan Supplement Documents following entry of this Confirmation Order in a manner consistent with section 1127(b) of the Bankruptcy Code, the Plan, and, if applicable, the terms of the applicable Plan Supplement Document.

28.    **Notice of Transmittal, Mailing and Publication of Materials.**  As is evidenced by the Voting Certifications and the Affidavits of Service and Publication, the transmittal and service of the Plan, the Disclosure Statement, Ballots, and Confirmation Hearing Notice were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to the confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required. The publication of the Confirmation Hearing Notice, as set forth in the *Notice of Affidavit of Publication* dated December 3, 2020 [Docket No. 1505], complied with the Disclosure Statement Order.

29.    **Voting.**  The Bankruptcy Court has reviewed and considered the Voting Certifications.  The procedures by which the Ballots for acceptance or rejection of the Plan were

DOCS_SF:104487.21 36027/002

**Appx. 00044**

distributed and tabulated, including the tabulation as subsequently amended to reflect the settlement of certain Claims to be Allowed in Class 7, were fairly and properly conducted and complied with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

30. **Bankruptcy Rule 3016(a).** In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the proponent of the Plan.

31. **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).** As set forth below, the Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

32. **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).** Section 1122 of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Equity Interests.

33. **Classification of Secured Claims.** Class 1 (Jefferies Secured Claim) and Class 2 (Frontier Secured Claim) each constitute separate secured claims held by Jefferies LLC and Frontier State Bank, respectively, and it is proper and consistent with section 1122 of the Bankruptcy Code to separately classify the claims of these secured creditors. Class 3 (Other

**Appx. 00045**

Secured Claims) consists of other secured claims (to the extent any exist) against the Debtor, are not substantially similar to the Secured Claims in Class 1 or Class 2, and are also properly separately classified.

34. **Classification of Priority Claims.** Class 4 (Priority Non-Tax Claims) consists of Claims entitled to priority under section 507(a), other than Priority Tax Claims, and are properly separately classified from non-priority unsecured claims. Class 5 (Retained Employee Claims) consists of the potential claims of employees who may be retained by the Debtor on the Effective Date, which claims will be Reinstated under the Plan, are not substantially similar to other Claims against the Debtor, and are properly classified.

35. **Classification of Unsecured Claims.** Class 6 (PTO Claims) consists solely of the claims of the Debtor's employees for unpaid paid time off in excess of the $13,650 statutory cap amount under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and are dissimilar from other unsecured claims in Class 7 and Class 8. Class 7 (Convenience Claims) allows holders of eligible and liquidated Claims (below a certain threshold dollar amount) to receive a cash payout of the lesser of 85% of the Allowed amount of the creditor's Claim or such holder's *pro rata* share of the Convenience Claims Cash Pool. Class 7 (Convenience Claims) are provided for administrative convenience purposes in order to allow creditors, most of whom are either trade creditors or holders of professional claims, to receive treatment provided under Class 7 in lieu of the treatment of Class 8 (General Unsecured Claims). The Plan also provides for reciprocal "opt out" mechanisms to allow holders of Class 7 Claims to elect to receive the treatment for Class 8 Claims. Class 8 creditors primarily constitute the litigation claims of the Debtor. Class 8 Creditors

**Appx. 00046**

will receive Claimant Trust Interests which will be satisfied pursuant to the terms of the Plan. Class 8 also contains an "opt out" mechanism to allow holders of liquidated Class 8 Claims at or below a $1 million threshold to elect to receive the treatment of Class 7 Convenience Claims. The Claims in Class 7 (primarily trade and professional Claims against the Debtor) are not substantially similar to the Claims in Class 8 (primarily the litigation Claims against the Debtor), and are appropriately separately classified. Valid business reasons also exist to classify creditors in Class 7 separately from creditors in Class 8. Class 7 creditors largely consist of liquidated trade or service providers to the Debtor. In addition, the Claims of Class 7 creditors are small relative to the large litigation claims in Class 8. Furthermore, the Class 8 Claims were overwhelmingly unliquidated when the Plan was filed. The nature of the Class 7 Claims as being largely liquidated created an expectation of expedited payment relative to the largely unliquidated Claims in Class 8, which consists in large part of parties who have been engaged in years, and in some cases over a decade of litigation with the Debtor. Separate classification of Class 7 and Class 8 creditors was the subject of substantial arm's-length negotiations between the Debtor and the Committee to appropriately reflect these relative differences.

36. **Classification of Equity Interests.** The Plan properly separately classifies the Equity Interests in Class 10 (Class B/C Limited Partnership Interests) from the Equity Interests in Class 11 (Class A Limited Partnership Interests) because they represent different types of equity security interests in the Debtor and different payment priorities.

37. **Elimination of Vacant Classes.** Section III.C of the Plan provides for the elimination of Classes that do not have at least one holder of a Claim or Equity Interest that is

**Appx. 00047**

Allowed in an amount greater than zero for purposes of voting to accept or reject the Plan, and are

disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the

Bankruptcy Code with respect to such Class.  The purpose of this provision is to provide that a

Class that does not have voting members shall not be included in the tabulation of whether that

Class has accepted or rejected the Plan.  Pursuant to the Voting Certifications, the only voting

Class of Claims or Equity Interests that did not have any members is Class 5 (Retained

Employees).  As noted above, Class 5 does not have any voting members because any potential

Claims in Class 5 would not arise, except on account of any current employees of the Debtor who

may be employed as of the Effective Date, which is currently unknown.  Thus, the elimination of

vacant Classes provided in Article III.C of the Plan does not violate section 1122 of the Bankruptcy

Code.  Class 5 is properly disregarded for purposes of determining whether or not the Plan has

been accepted under Bankruptcy Code section 1129(a)(8) because there are no members in that

Class.  However, the Plan properly provides for the treatment of any Claims that may potentially

become members of Class 5 as of the Effective Date in accordance with the terms of the Plan.  The

Plan therefore satisfies section 1122 of the Bankruptcy Code.

38.    **Classification of Claims and Designation of Non-Classified Claims (11**

**U.S.C. §§ 1122, 1123(a)(1)).**  Section 1123(a)(1) of the Bankruptcy Code requires that the Plan

specify the classification of claims and equity security interests pursuant to section 1122 of the

Bankruptcy Code, other than claims specified in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the

Bankruptcy Code.  In addition to Administrative Claims, Professional Fee Claims, and Priority

Tax Claims, each of which need not be classified pursuant to section 1123(a)(1) of the Bankruptcy

**Appx. 00048**

Code, the Plan designates eleven (11) Classes of Claims and Equity Interests.  The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

39.    **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Article III of the Plan specifies that each of Class 1 (Jefferies Secured Claim), Class 3 (Other Secured Claims), Class 4 (Priority Non-Tax Claims), Class 5 (Retained Employee Claims), and Class 6 (PTO Claims) are Unimpaired under the Plan.  Thus, the requirement of section 1123(a)(2) of the Bankruptcy Code is satisfied.

40.    **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**  Article III of the Plan designates each of Class 2 (Frontier Secured Claim), Class 7 (Convenience Claims), Class 8 (General Unsecured Claims), Class 9 (Subordinated Claims), Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests) as Impaired and specifies the treatment of Claims and Equity Interests in such Classes.  Thus, the requirement of section 1123(a)(3) of the Bankruptcy Code is satisfied.

41.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment by the Plan proponent for each Claim or Equity Interest in each respective Class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest.  The Plan satisfies this requirement because Holders of Allowed Claims or Equity Interests in each Class will receive the same rights and treatment as other Holders of Allowed Claims or Equity Interests within such holder's respective class, subject only to the voluntary "opt out" options afforded to members of Class 7 and Class 8 in accordance with the terms of the Plan.  Thus, the requirement of section 1123(a)(4) of the Bankruptcy Code is satisfied.

DOCS_SF:104487.21 36027/002

**Appx. 00049**

42.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  Article IV of the Plan sets forth the means for implementation of the Plan which includes, but is not limited to, the establishment of:  (i) the Claimant Trust; (ii) the Litigation Sub-Trust; (iii) the Reorganized Debtor; and (iv) New GP LLC, in the manner set forth in the Plan Documents, the forms of which are included in the Plan Supplements.

a.    **The Claimant Trust.**  The Claimant Trust Agreement provides for the management of the Claimant Trust, as well as the Reorganized Debtor with the Claimant Trust serving as the managing member of New GP LLC (a wholly-owned subsidiary of the Claimant Trust that will manage the Reorganized Debtor as its general partner).  The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will all be managed and overseen by the Claimant Trust Oversight Committee.  Additionally, the Plan provides for the transfer to the Claimant Trust of all of the Debtor's rights, title, and interest in and to all of the Claimant Trust Assets in accordance with section 1141 of the Bankruptcy Code and for the Claimant Trust Assets to automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement.  The Claimant Trust will administer the Claimant Trust Assets as provided under the Plan and the Claimant Trust Agreement contained in the Plan Supplements.

b.    **The Litigation Sub-Trust.**  The Plan and the Litigation Sub-Trust Agreement provide for the transfer to the Litigation Sub-Trust all of the Claimant Trust's rights, title, and interest in and to all of the Estate Claims (as transferred to the Claimant Trust by the Debtor) in accordance with section 1141 of the Bankruptcy Code and for the Estate Claims to automatically vest in the Litigation Sub-Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Litigation Sub-Trust Interests and the Litigation Sub-Trust Expenses, as provided for in the Litigation Sub-Trust Agreement.  The Litigation Trustee is charged with investigating, pursuing, and otherwise resolving any Estate Claims (including those with respect to which the Committee has standing to pursue prior to the Effective Date pursuant to the January 9 Order) pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan, regardless of whether any litigation with respect to any Estate Claim was commenced by the Debtor or the Committee prior to the Effective Date.

DOCS_SF:104487.21 36027/002

**Appx. 00050**

        c.     **The Reorganized Debtor**. The Reorganized Debtor will administer the Reorganized Debtor Assets, which includes managing the wind down of the Managed Funds.

The precise terms governing the execution of these restructuring transactions are set forth in greater detail in the applicable definitive documents included in the Plan Supplements, including the Claimant Trust Agreement, the Litigation Sub-Trust Agreement, and the Schedule of Retained Causes of Action. The Plan, together with the documents and forms of agreement included in the Plan Supplements, provides a detailed blueprint for the transactions contemplated by the Plan. The Plan's various mechanisms provide for the Debtor's continued management of its business as it seeks to liquidate the Debtor's assets, wind down its affairs, and pay the Claims of the Debtor's creditors. Upon full payment of Allowed Claims, plus interest as provided in the Plan, any residual value would then flow to the holders of Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests). Finally, Mr. Seery testified that the Debtor engaged in substantial and arm's length negotiations with the Committee regarding the Debtor's post-Effective Date corporate governance, as reflected in the Plan. Mr. Seery testified that he believes the selection of the Claimant Trustee, Litigation Trustee, and members of the Claimant Trust Oversight Board are in the best interests of the Debtor's economic constituents. Thus, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

        43.     **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).** The Debtor is not a corporation and the charter documents filed in the Plan Supplements otherwise comply with section 1123(a)(6) of the Bankruptcy Code. Therefore, the requirement of section 1123(a)(6) of the Bankruptcy Code is satisfied.

44.     **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Article IV

of the Plan provides for the Claimant Trust to be governed and administered by the Claimant

Trustee.  The Claimant Trust, the management of the Reorganized Debtor, and the management

and monetization of the Claimant Trust Assets and the Litigation Sub-Trust will be managed by

the Claimant Trust Oversight Board.  The Claimant Trust Oversight Board will consist of:  (1) Eric

Felton, as representative of the Redeemer Committee; (2) Joshua Terry, as representative of Acis;

(3) Elizabeth Kozlowski, as representative of UBS; (4) Paul McVoy, as representative of Meta-E

Discovery; and (5) David Pauker.   Four of the members of the Claimant Trust Oversight

Committee are the holders of several of the largest Claims against the Debtor and/or are current

members of the Committee.  Each of these creditors has actively participated in the Debtor's case,

both through their fiduciary roles as Committee members and in their individual capacities as

creditors.  They are therefore intimately familiar with the Debtor, its business, and assets.  The

fifth member of the Claimant Trustee Oversight Board, David Pauker, is a disinterested

restructuring advisor and turnaround manager with more than 25 years of experience advising

public and private companies and their investors, and he has substantial experience overseeing,

advising or investigating troubled companies in the financial services industry and has advised or

managed such companies on behalf of boards or directors, court-appointed trustees, examiners and

special masters, government agencies, and private investor parties.  The members of the Claimant

Trust Oversight Board will serve without compensation, except for Mr. Pauker, who will receive

payment of $250,000 for his first year of service, and $150,000 for subsequent years.

DOCS_SF:104487.21 36027/002

**Appx. 00052**

45. **Selection of Trustees.** The Plan Supplements disclose that Mr. Seery will serve as the Claimant Trustee and Marc Kirschner will serve as the Litigation Trustee. As noted above, Mr. Seery has served as an Independent Board member since January 2020, and as the Chief Executive Officer and Chief Restructuring Officer since July 2020, and he has extensive management and restructuring experience, as evidenced from his curriculum vitae which is part of the record. The evidence shows that Mr. Seery is intimately familiar with the Debtor's organizational structure, business, and assets, as well as how Claims will be treated under the Plan. Accordingly, it is reasonable and in the Estate's best interests to continue Mr. Seery's employment post-emergence as the Claimant Trustee. Mr. Seery, upon consultation with the Committee, testified that he intends to employ approximately 10 of the Debtor's employees to enable him to manage the Debtor's business until the Claimant Trust effectively monetizes its remaining assets, instead of hiring a sub-servicer to accomplish those tasks. Mr. Seery testified that he believes that the Debtor's post-confirmation business can most efficiently and cost-effectively be supported by a sub-set of the Debtor's current employees, who will be managed internally. Mr. Seery shall initially be paid $150,000 per month for services rendered after the Effective Date as Claimant Trustee; however, Mr. Seery's long-term salary as Claimant Trustee and the terms of any bonuses and severance are subject to further negotiation by Mr. Seery and the Claimant Trust Oversight Board within forty-five (45) days after the Effective Date. The Bankruptcy Court has also reviewed Mr. Kirschner's curriculum vitae. Mr. Kirschner has been practicing law since 1967 and has substantial experience in bankruptcy litigation matters, particularly with respect to his prior experience as a litigation trustee for several litigation trusts, as set forth on the record of the

DOCS_SF:104487.21 36027/002

**Appx. 00053**

Confirmation Hearing and in the Confirmation Brief. Mr. Kirschner shall be paid $40,000 per month for the first three months and $20,000 per month thereafter, plus a success fee related to litigation recoveries. The Committee and the Debtor had arm's lengths negotiations regarding the post-Effective Date corporate governance structure of the Reorganized Debtor and believe that the selection of the Claimant Trustee, the Litigation Trustee, and the Claimant Trust Oversight Committee are in the best interests of the Debtor's economic stakeholders. Section 1123(a)(7) of the Bankruptcy Code is satisfied.

46. **Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order governing notice, disclosure, and solicitation in connection with the Plan, the Disclosure Statement, the Plan Supplements, and all other matters considered by the Bankruptcy Court in connection with this Chapter 11 Case.

47. **Debtor's Solicitation Complied with Bankruptcy Code and Disclosure Statement Order.** Before the Debtor solicited votes on the Plan, the Bankruptcy Court entered the Disclosure Statement Order. In accordance with the Disclosure Statement Order and evidenced by the Affidavits of Service and Publication, the Debtor appropriately served (i) the Solicitation Packages (as defined in the Disclosure Statement Order) on the Holders of Claims in Classes 2, 7, 8 and 9 and Holders of Equity Interests in Classes 10 and 11 who were entitled to vote on the Plan; and (ii) the Notice of Nonvoting Status (as defined in the Disclosure Statement Order) and the

**Appx. 00054**

Confirmation Hearing Notice to the Holders of Claims in Classes 1, 3, 4, 5 and 6, who were not entitled to vote on the Plan pursuant to the Disclosure Statement Order. The Disclosure Statement Order approved the contents of the Solicitation Packages provided to Holders of Claims and Equity Interests entitled to vote on the Plan, the notices provided to parties not entitled to vote on the Plan, and the deadlines for voting on and objecting to the Plan. The Debtor and KCC each complied with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code, as evidenced by the Affidavits of Service and Publication. The Debtor also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class. The Debtor caused the same Disclosure Statement to be transmitted to all holders of Claims and Equity Interests entitled to vote on the Plan. The Debtor has complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order. The Bankruptcy Court rejects the arguments of the Mr. Dondero and certain Dondero Related Entities that the changes made to certain assumptions and projections from the Liquidation Analysis annexed as Exhibit C to the Disclosure Statement (the "Liquidation Analysis") to the Amended Liquidation Analysis/Financial Projections require resolicitation of the Plan. The Bankruptcy Court heard credible testimony from Mr. Seery regarding the changes to the Liquidation Analysis as reflected in the Amended Liquidation Analysis/Financial Projections. Based on the record, including the testimony of Mr. Seery, the Bankruptcy Court finds that the changes between the Liquidation Analysis and the Amended Liquidation Analysis/Financial Projections do not constitute materially adverse change to the treatment of Claims or Equity

Interests. Instead, the changes served to update the projected distributions based on Claims that were settled after the approval of the Disclosure Statement and to otherwise incorporate more recent financial data. Such changes were entirely foreseeable given the large amount of unliquidated Claims at the time the Disclosure Statement was approved and the nature of the Debtor's assets. The Bankruptcy Court therefore finds that holders of Claims and Equity Interests were not misled or prejudiced by the Amended Liquidation Analysis/Financial Projections and the Plan does not need to be resolicited.

48. **Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).** The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of this Chapter 11 Case, the Plan itself, and the extensive, unrebutted testimony of Mr. Seery in which he described the process leading to Plan's formulation. Based on the totality of the circumstances and Mr. Seery's testimony, the Bankruptcy Court finds that the Plan is the result of extensive arm's-length negotiations among the Debtor, the Committee, and key stakeholders, and promotes the objectives and purposes of the Bankruptcy Code. Specifically, the Debtor's good faith in proposing the Plan is supported by the following facts adduced by Mr. Seery:

    a. The Independent Board determined that it should consider all potential restructuring alternatives, including pursuit of a traditional restructuring and the continuation of the Debtor's business, a potential sale of the Debtor's assets in one or more transactions, an asset monetization plan similar to that described in the Plan, and a so-called "grand bargain" plan that would involve Mr. Dondero's sponsorship of a plan with a substantial equity infusion.

**Appx. 00056**

b.      The Debtor subsequently engaged in arm's-length, good faith negotiations with the Committee over an asset monetization Plan commencing in June 2020, which negotiations occurred over the next several months.

c.      Negotiations between the Debtor and the Committee were often contentious over disputes, including, but not limited to, the post-confirmation corporate governance structure and the scope of releases contemplated by the Plan.

d.      While negotiations with the Committee progressed, the Independent Board engaged in discussions with Mr. Dondero regarding a potential "grand bargain" plan which contemplated a significant equity infusion by Mr. Dondero, and which Mr. Seery personally spent hundreds of hours pursuing over many months.

e.      On August 3, 2020, the Bankruptcy Court entered the *Order Directing Mediation* [Docket No. 912] pursuant to which the Bankruptcy Court ordered the Debtor, the Committee, UBS, Acis, the Redeemer Committee, and Mr. Dondero into mediation.  As a result of this mediation, the Debtor negotiated the settlement of the claims of Acis and Mr. Terry, which the Bankruptcy Court approved on October 28, 2020 [Docket No. 1302].

f.      On August 12, 2020, the Debtor filed its *Chapter 11 Plan of* Reorganization *of Highland Capital Management, L.P.* [Docket No. 944] (the "Initial Plan") and related disclosure statement (the "Initial Disclosure Statement") which were not supported by either the Committee or Mr. Dondero.  The Independent Board filed the Initial Plan and Initial Disclosure Statement in order to act as a catalyst for continued discussions with the Committee while it simultaneously worked with Mr. Dondero on the "grand bargain" plan.

g.      The Bankruptcy Court conducted a contested hearing on the Initial Disclosure Statement on October 27, 2020.  The Committee and other parties objected to approval of the Disclosure Statement at the Initial Disclosure Statement hearing, which was eventually continued to November 23, 2020.

h.      Following the Initial Disclosure Statement hearing, the Debtor continued to negotiate with the Committee and ultimately resolved the remaining material disputes and led to the Bankruptcy Court's approval of the Disclosure Statement on November 23, 2020.

i.      Even after obtaining the Bankruptcy Court's approval of the Disclosure Statement, the Debtor and the Committee continued to negotiate with Mr. Dondero and the Committee over a potential "pot plan" as an alternative to the Plan on file with the Bankruptcy Court, but such efforts were unsuccessful.  This history conclusively demonstrates that the Plan is being proposed in good faith within the meaning of section 1129(a)(3).

DOCS_SF:104487.21 36027/002

**Appx. 00057**

49.      **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

Article II.B of the Plan provides that Professionals will file all final requests for payment of

Professional Fee Claims no later than 60 days after the Effective Date, thereby providing an

adequate period of time for interested parties to review such claims.  The procedures set forth in

the Plan for the Bankruptcy Court's approval of the fees, costs, and expenses to be paid in

connection with this chapter 11 Case, or in connection with the Plan and incident to this Chapter

11 Case, satisfy the objectives of and are in compliance with section 1129(a)(4) of the Bankruptcy

Code.

50.      **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  Article IV.B

of the Plan provides for the appointment of the Claimant Trustee, Litigation Trustee, and the

Claimant Trust Oversight Committee and the members thereto.  For the reasons more fully

explained in paragraphs 44-45 of this Confirmation Order with respect to the requirement of

section 1123(a)(7) of the Bankruptcy Code, the Debtor has disclosed the nature of compensation

of any insider to be employed or retained by the Reorganized Debtor, if applicable, and

compensation for any such insider.  The appointment of such individuals is consistent with the

interests of Claims and Equity Interests and with public policy.  Thus, the Plan satisfies section

1129(a)(5) of the Bankruptcy Code.

51.      **No Rate Changes (11 U.S.C. § 1129(a)(6)).**  The Plan does not provide for

any rate change that requires regulatory approval.  Section 1129(a)(6) of the Bankruptcy Code is

thus not applicable.

DOCS_SF:104487.21 36027/002

**Appx. 00058**

52.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**  The "best interests"

test is satisfied as to all Impaired Classes under the Plan, as each Holder of a Claim or Equity

Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date

of the Plan, that is not less than the amount that such Holder would so receive or retain if the

Debtor were liquidated under chapter 7 of the Bankruptcy Code.  On October 15, 2020, the Debtor

filed the Liquidation Analysis [Docket 1173], as prepared by the Debtor with the assistance of its

advisors and which was attached as Exhibit C to the Disclosure Statement.  On January 29, 2021,

in advance of Mr. Seery's deposition in connection with confirmation of the Plan, the Debtor

provided an updated version of the Liquidation Analysis to the then-objectors of the Plan,

including Mr. Dondero and the Dondero Related Entities.  On February 1, 2021, the Debtor filed

the Amended Liquidation Analysis/Financial Projections.    The Amended Liquidation

Analysis/Financial Projections included updates to the Debtor's projected asset values, revenues,

and expenses to reflect: (1) the acquisition of an interest in an entity known as "HCLOF" that the

Debtor will acquire as part of its court-approved settlement with HarbourVest and that was valued

at $22.5 million; (2) an increase in the value of certain of the Debtor's assets due to changes in

market conditions and other factors; (3) expected revenues and expenses arising in connection with

the Debtor's continued management of the CLOs pursuant to management agreements that the

Debtor decided to retain; (4) increases in projected expenses for headcount (in addition to adding

two or three employees to assist in the management of the CLOs, the Debtor also increased

modestly the projected headcount as a result of its decision not to engage a Sub-Servicer) and

professional fees; and (5) an increase in projected recoveries on notes resulting from the

acceleration of term notes owed to the Debtor by the following Dondero Related Entities: NexPoint Advisors, L.P.; Highland Capital Management Services, Inc.; and HCRE Partners, LLC (n/k/a NexPoint Real Estate Partners, LLC). Under the Plan, as of the Confirmation Date, (a) Class 7 General Unsecured Creditors are projected to receive 85% on account of their claims; and (b) Class 8 General Unsecured Creditors are projected to receive at least approximately 71% on account of their Claims. Under a hypothetical chapter 7 liquidation, all general unsecured creditors are projected to receive approximately 55% on account of their Claims. The Bankruptcy Court finds that the distributions that Class 7 and 8 General Unsecured Creditors are projected to receive under the Plan substantially exceeds that which they would receive under a chapter 7 liquidation based on Mr. Seery's testimony, including the following credible reasons he posited, among others:

    a.    The nature of the Debtor's assets is complex. Certain assets relate to complicated real estate structures and private equity investments in operating businesses. Mr. Seery's extensive experience with the Debtor during the thirteen months since his appointment as an Independent Director and later Chief Executive Officer and Chief Restructuring Officer, provides him with a substantial learning curve in connection with the disposition of the Debtor's assets and are reasonably expected to result in him being able to realize tens of millions of dollars more value than would a chapter 7 trustee.

    b.    Assuming that a hypothetical chapter 7 trustee could even operate the Debtor's business under chapter 7 of the Bankruptcy Code and hire the necessary personnel with the relevant knowledge and experience to assist him or her in selling the Debtor's assets, a chapter 7 trustee would likely seek to dispose of the Debtor's assets in a forced sale liquidation which would generate substantially less value for the Debtor's creditors than the asset monetization plan contemplated by the Plan.

    c.    A chapter 7 trustee would be unlikely to retain the Debtor's existing professionals to assist in its efforts to monetize assets, resulting in delays, increased expenses, and reduced asset yields for the chapter 7 estate.

d.    The chapter 7 estate would be unlikely to maximize value as compared to the asset monetization process contemplated by the Plan because potential buyers are likely to perceive a chapter 7 trustee as engaging in a quick, forced "fire sale" of assets; and

e.    The Debtor's employees, who are vital to its efforts to maximum value and recoveries for stakeholders, may be unwilling to provide services to a chapter 7 trustee.

Finally, there is no evidence to support the objectors' argument that the Claimant Trust Agreement's disclaimed liability for ordinary negligence by the Claimant Trustee compared to a chapter 7 trustee's liability has any relevance to creditor recoveries in a hypothetical chapter 7 liquidation.  Thus, section 1129(a)(7) of the Bankruptcy Code is satisfied.

53.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  Classes 1, 3, 4, 5 and 6 are Unimpaired under the Plan.  Class 2 (Frontier Secured Claim), Class 7 (Convenience Claims), and Class 9 (Subordinated Claims) have each voted to accept the Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  However, Class 8 (General Unsecured Claims), Class 10 (Class B/C Limited Partnership Interests), and Class 11 (Class A Limited Partnership Interests) have not accepted the Plan.   Accordingly, section 1129(a)(8) of the Bankruptcy Code has not been satisfied.  The Plan, however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

54.    **Treatment of Administrative, Priority, Priority Tax Claims, and Professional Fee Claims (11 U.S.C. § 1129(a)(9)).**  The treatment of Administrative Claims, Priority Claims, and Professional Fee Claims pursuant to Article III of the Plan, and as set forth below with respect to the resolution of the objections filed by the Internal Revenue Service and

**Appx. 00061**

certain Texas taxing authorities satisfies the requirements of sections 1129(a)(9) of the Bankruptcy

Code.

55.    **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**    Class 2

(Frontier Secured Claims) and Class 7 (Convenience Claims) are each Impaired Classes of Claims

that voted to accept the Plan, determined without including any acceptance of the Plan by any

insider.  Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code is satisfied.

56.    **Feasibility (11 U.S.C. § 1129(a)(11)).**  Article IV of the Plan provides for

the implementation of the Plan through the Claimant Trust, the Litigation Sub-Trust, and the

Reorganized Debtor.  The Plan provides that the Claimant Trust, among other things, will monetize

and distribute the Debtor's remaining assets.  The Disclosure Statement, the Amended Liquidation

Analysis/Financial Projections, and the other evidence presented at the Confirmation Hearing

provide a reasonable probability of success that the Debtor will be able to effectuate the provisions

of the Plan.  The Plan contemplates the establishment of the Claimant Trust upon the Effective

Date, which will monetize the Estate's assets for the benefit of creditors.  Mr. Seery testified that

the Class 2 Frontier Secured Claim will be paid over time pursuant to the terms of the New Frontier

Note and the Reorganized Debtor will have sufficient assets to satisfy its obligations under this

note.  The Claims of the Holders of Class 7 Claims (as well as those Class 8 creditors who validly

opted to receive the treatment of Class 7 Claims) are expected to be satisfied shortly after the

Effective Date.  Holders of Class 8 Claims (including any holders of Class 7 Claims who opted to

receive the treatment provided to Class 8 Claims) are not guaranteed any recovery and will

**Appx. 00062**

periodically receive pro rata distributions as assets are monetized pursuant to the Plan and the

Claimant Trust Agreement.  Thus, section 1129(a)(11) of the Bankruptcy Code is satisfied.

57.    **Payment of Fees (11 U.S.C. § 1129(a)(12)).**  All fees payable under 28

U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to Article

XII.A of the Plan, thus satisfying the requirement of section 1129(a)(12) of the Bankruptcy Code.

The Debtor has agreed that the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-

Trust shall be jointly and severally liable for payment of quarterly fees to the Office of the United

States Trustee pursuant to 28 U.S.C. § 1930 through the entry of the Final Decree for the Debtor

or the dismissal or conversion of the Chapter 11 Case.

58.    **Retiree Benefits.**  The Plan provides for the assumption of the Pension Plan

(to the extent such Pension Plan provides "retiree benefits" and is governed by section 1114 of the

Bankruptcy Code).  Thus, the Plan complies with section 1129(a)(13) of the Bankruptcy Code, to

the extent applicable.

59.    **Miscellaneous Provisions (11 U.S.C. §§ 1129(a)(14)-(16)).**  Sections

1129(a)(14)-(16) of the Bankruptcy Code are inapplicable as the Debtor (i) has no domestic

support obligations (section 1129(a)(14)), (ii) is not an individual (section 1129(a)(15)), and (iii)

is not a nonprofit corporation (section 1129(a)(16)).

60.    **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. §**
**1129(b)).**  The classification and treatment of Claims and Equity Interests in Classes 8, 10 and 11,

which have not accepted the Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does

not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy

Code.

    a.    <u>Class 8</u>.  The Plan is fair and equitable with respect to Class 8 General Unsecured Claims.  While Equity Interests in Class 10 and Class 11 will receive a contingent interest in the Claimant Trust under the Plan (the "<u>Contingent Interests</u>"), the Contingent Interests will not vest unless and until holders of Class 8 General Unsecured Claims and Class 9 Subordinated Claims receive distributions equal to 100% of the amount of their Allowed Claims plus interest as provided under the Plan and Claimant Trust Agreement.  Accordingly, as the holders of Equity Interests that are junior to the Claims in Class 8 and Class 9 will not receive or retain under the Plan on account of such junior claim interest any property unless and until the Claims in Class 8 and Class 9 are paid in full plus applicable interest, the Plan is fair and equitable with respect to holders of Class 8 General Unsecured Claims pursuant to section 1129(b)(2)(B) of the Bankruptcy Code and the reasoning of *In re Introgen Therapuetics* 429 B.R 570 (Bankr. W.D. Tex. 2010).

    b.    <u>Class 10 and Class 11</u>.  There are no Claims or Equity Interests junior to the Equity Interests in Class 10 and Class 11.  Equity Interests in Class 10 and 11 will neither receive nor retain any property under the Plan unless Allowed Claims in Class 8 and Class 9 are paid in full plus applicable interest pursuant to the terms of the Plan and Claimant Trust Agreement.  Thus, the Plan does not violate the absolute priority rule with respect to Classes 10 and 11 pursuant to Bankruptcy Code section 1129(b)(2)(C).  The Plan does not discriminate unfairly as to Equity Interests.  As noted above, separate classification of the Class B/C Partnership Interests from the Class A Partnerships Interests is appropriate because they constitute different classes of equity security interests in the Debtor, and each are appropriately separately classified and treated.

Accordingly, the Plan does not violate the absolute priority rule, does not discriminate unfairly,

and is fair and equitable with respect to each Class that has rejected the Plan.  Thus, the Plan

satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to Classes 8, 10,

and 11.

DOCS_SF:104487.21 36027/002

**Appx. 00064**

61.    **Only One Plan (11 U.S.C. § 1129(c)).**  The Plan is the only chapter 11 plan confirmed in this Chapter 11 Case, and the requirements of section 1129(c) of the Bankruptcy Code are therefore satisfied.

62.    **Principal Purpose (11 U.S.C. § 1129(d)).**  Mr. Seery testified that the principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

63.    **Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

64.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtor, the Independent Directors, and the Debtor's employees, advisors, Professionals, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

65.    **Discharge (11 U.S.C. § 1141(d)(3)**)).  The Debtor is entitled to a discharge of debts pursuant to section 1141(d)(3)(B) of the Bankruptcy Code.  Under the Plan, the Claimant Trust or Reorganized Debtor, as applicable, will continue to manage funds and conduct business

DOCS_SF:104487.21 36027/002

**Appx. 00065**

in the same manner as the Debtor did prior to Plan confirmation, which includes the management of the CLOs, Multi-Strat, Restoration Capital, the Select Fund and the Korea Fund. Although the Plan projects that it will take approximately two years to monetize the Debtor's assets for fair value, Mr. Seery testified that while the Reorganized Debtor and Claimant Trust will be monetizing their assets, there is no specified time frame by which this process must conclude. Mr. Seery's credible testimony demonstrates that the Debtor will continue to engage in business after consummation of the Plan, within the meaning of Section 1141(d)(3)(b) and that the Debtor is entitled to a discharge pursuant to section 1141(d)(1) of the Bankruptcy Code.

66.     **Retention of Jurisdiction.**  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and/or section 1142 of the Bankruptcy Code to the maximum extent under applicable law.

67.     **Additional Plan Provisions (11 U.S.C. § 1123(b)).**  The Plan's provisions are appropriate, in the best interests of the Debtor and its Estate, and consistent with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

68.     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** The Debtor has exercised reasonable business judgment with respect to the rejection of the Executory Contracts and Unexpired Leases pursuant the terms of the Plan and this Confirmation Order, and such rejections are justified and appropriate in this Chapter 11 Case. The Debtor also filed the List of Assumed Contracts, which contain notices to the applicable counterparties to the contracts set forth on Exhibit "FF" to Plan Supplement filed on February 1, 2021 [Docket No. 1875] and which exhibit sets forth the list of executory contracts and unexpired leases to be

**Appx. 00066**

assumed by the Debtor pursuant to the Plan (collectively, the "Assumed Contracts"). With respect to the Assumed Contracts, only one party objected to the assumption of any of the Assumed Contracts, but that objection was withdrawn.[8] Any modifications, amendments, supplements, and restatements to the Assumed Contracts that may have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Assumed Contracts or the validity, priority, or amount of any Claims that may arise in connection therewith. Assumption of any Assumed Contract pursuant to the Plan and full payment of any applicable Cure pursuant to the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

69.     **Compromises and Settlements Under and in Connection with the Plan (11 U.S.C. § 1123(b)(3)).** All of the settlements and compromises pursuant to and in connection with the Plan, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

70.     **Debtor Release, Exculpation and Injunctions (11 U.S.C. § 1123(b)).** The Debtor Release, Exculpation, and Injunction provisions provided in the Plan (i) are within the jurisdiction of the Bankruptcy Court under 28 U.S.C. § 1334; (ii) are integral elements of the transactions incorporated into the Plan, and inextricably bound with the other provisions of the Plan; (iii) confer material benefit on, and are in the best interests of, the Debtor, its Estate, and its

---

[8] *See Notice of Withdrawal of James Dondero's Objection Debtor's Proposed Assumption of Contracts and Cure Amounts Proposed in Connection Therewith* [Docket No. 1876]

creditors; (iv) are fair, equitable, and reasonable; (v) are given and made after due notice and opportunity for hearing; (vi) satisfy the requirements of Bankruptcy Rule 9019; and (vii) are consistent with the Bankruptcy Code and other applicable law, and as set forth below.

71. **Debtor Release.** Section IX.D of the Plan provides for the Debtor's release of the Debtor's and Estate's claims against the Released Parties. Releases by a debtor are discretionary and can be provided by a debtor to persons who have provided consideration to the Debtor and its estate pursuant to section 1123(b)(3)(A) of the Bankruptcy Code. Contrary to the objections raised by Mr. Dondero and certain of the Dondero Related Entities, the Debtor Release is appropriately limited to release claims held by the Debtor and does not purport to release the claims held by the Claimant Trust, Litigation Sub-Trust, or other third parties. The Plan does not purport to release any claims held by third parties and the Bankruptcy Court finds that the Debtor Release is not a "disguised" release of any third party claims as asserted by certain objecting parties. The limited scope of the Debtor Release in the Plan was extensively negotiated with the Committee, particularly with the respect to the Debtor's conditional release of claims against employees, as identified in the Plan, and the Plan's conditions and terms of such releases. The Plan does not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual

**Appx. 00068**

fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction. The Debtor Release also contains conditions to such releases as set forth in Article X.D of the Plan with respect to employees (the "Release Conditions"). Until the an employee satisfies the Release Conditions or the Release Conditions otherwise terminate, any claims against such employee will be tolled so that if the Release Conditions are not met the Litigation Trustee may pursue claims against an employee at a later date. The evidence before the Bankruptcy Court, including, but not limited to Mr. Seery's testimony, demonstrates that the Debtor is not aware of any claims against any of the Released Parties, that the Released Parties have been instrumental in assisting the Debtor's efforts toward confirmation of the Plan and that, therefore, the releases are a *quid pro quo* for the Released Parties' significant contributions to a highly complex and contentious restructuring. The Committee, whose members hold approximately $200 million in claims against the Estate, is highly sophisticated and is represented by highly sophisticated professionals, and has actively and vigorously negotiated the terms of the Debtor Release, which was the subject of significant controversy at the Initial Disclosure Statement hearing held by the Bankruptcy Court on October 27, 2020.

72. **Exculpation.** Section IX.C of the Plan provides for the exculpation of certain Exculpated Parties to the extent provided therein (the "Exculpation Provision"). As explained below, the Exculpation Provision is appropriate under the unique circumstances of this litigious Chapter 11 Case and consistent with applicable Fifth Circuit precedent. First, with respect to the Independent Directors, their agents, and their advisors, including any employees acting at

DOCS_SF:104487.21 36027/002

**Appx. 00069**

their direction, the Bankruptcy Court finds and concludes that it has already exculpated these parties for acts other than willful misconduct and gross negligence pursuant to the January 9 Order. The January 9 Order was specifically agreed to by Mr. Dondero, who was in control of the Debtor up until entry of the January 9 Order. The January 9 Order was not appealed. In addition to the appointment of the Independent Directors in an already contentious and litigious case, the January 9 Order set the standard of care for the Independent Directors and specifically exculpated them for negligence. Mr. Seery and Mr. Dubel each testified that they had input into the contents of the January 9 Order and would not have agreed to their appointment as Independent Directors if the January 9 Order did not include the protections set forth in paragraph 10 of the January 9 Order. Paragraph 10 of the January 9 Order (1) requires that parties wishing to sue the Independent Directors or their agents and advisors must first seek approval from the Bankruptcy Court before doing so; (2) sets the standard of care for the Independent Directors during the Chapter 11 Case and exculpated the Independent Directors for acts other than willful misconduct or gross negligence; (3) only permits suits against the Independent Directors to proceed for colorable claims of willful misconduct and gross negligence upon order of the Bankruptcy Court; and (4) does not expire by its terms.

73.     **Existing Exculpation of Independent Directors.** The Bankruptcy Court also finds and concludes that it has already exculpated Mr. Seery acting in the capacity as Chief Executive Officer and Chief Restructuring Officer pursuant to the July 16 Order. The Bankruptcy Court concludes its previous approval of the exculpation of the Independent Directors, their agents, advisors and employees working at their direction pursuant to the January 9 Order, and the Chief

DOCS_SF:104487.21 36027/002

Executive Officer and Chief Restructuring Officer pursuant to the July 16 Order constitutes the

law of this case and are *res judicata* pursuant to *In re Republic Supply Co. v. Shoaf*, 815 F.2d 1046

(5th Cir.1987). The January 9 Order and July 16 Order cannot be collaterally attacked based on

the objectors' objection to the exculpation of the Independent Directors, their agents, and advisors,

including any employees acting at their direction, as well as the Chief Executive Officer and Chief

Restructuring Officer, that the Bankruptcy Court already approved pursuant to the January 9 Order

and the July 16 Order.

 74.    **The Exculpation Provision Complies with Applicable Law.**  Separate

and apart from the *res judicata* effect of the January 9 Order and the July 16 Order, the Bankruptcy

Court also finds and concludes that the Exculpation Provision is consistent with applicable law,

including *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), for several reasons:

 a.     First, the statutory basis for *Pacific Lumber'*s denial of exculpation for certain
 parties other than a creditors' committee and its members is that section 524(e) of
 the Bankruptcy Code "only releases the debtor, not co-liable third parties." *Pacific
 Lumber*, 253 F.3d. at 253.  However, *Pacific Lumber* does not prohibit all
 exculpations under the Bankruptcy Code and the court in such case specifically
 approved the exculpations of a creditors' committee and its members on the
 grounds that "11 U.S.C. § 1103(c), which lists the creditors' committee's powers,
 implies committee members have qualified immunity for actions within the scope
 of their duties…. [I]f members of the committee can be sued by persons unhappy
 with the committee's performance during the case or unhappy with the outcome of
 the case, it will be extremely difficult to find members to serve on an official
 committee." *Pacific Lumber*, 253 F.3d at 253 (quoting Lawrence P. King, et al,
 Collier on Bankruptcy, ¶ 1103.05[4][b] (15th Ed. 2008)).  *Pacific Lumber's*
 rationale for permitted exculpation of creditors' committees and their members
 (which was clearly policy-based and based on a creditors' committee qualified
 immunity flowing from their duties under section 1103(c) of the Bankruptcy Code
 and their disinterestedness and importance in chapter 11 cases) does not preclude
 exculpation to other parties in a particular chapter 11 case that perform similar roles
 to a creditors' committee and its members.  The Independent Directors, and by
 extension the Chief Executive Officer and Chief Restructuring Officer, were not

**Appx. 00071**

part of the Debtor's enterprise prior to their appointment by the Bankruptcy Court under the January 9 Order. The Bankruptcy Court appointed the Independent Directors in lieu of a chapter 11 trustee to address what the Bankruptcy Court perceived as serious conflicts of interest and fiduciary duty concerns with the then-existing management prior to January 9, 2020, as identified by the Committee. In addition, the Bankruptcy Court finds that the Independent Directors expected to be exculpated from claims of negligence, and would likely have been unwilling to serve in contentious cases absent exculpation. The uncontroverted testimony of Mr. Seery and Mr. Dubel demonstrates that the Independent Directors would not have agreed to accept their roles without the exculpation and gatekeeper provision in the January 9 Order. Mr. Dubel also testified as to the increasing important role that independent directors are playing in complex chapter 11 restructurings and that unless independent directors could be assured of exculpation for simple negligence in contentious bankruptcy cases they would be reluctant to accept appointment in chapter 11 cases which would adversely affect the chapter 11 restructuring process. The Bankruptcy Court concludes that the Independent Directors were appointed under the January 9 Order in order to avoid the appointment of a chapter 11 trustee and are analogous to a creditors' committee rather than an incumbent board of directors. The Bankruptcy Court also concludes that if independent directors cannot be assured of exculpation for simple negligence in contentious bankruptcy cases, they may not be willing to serve in that capacity. Based upon the foregoing, the Bankruptcy Court concludes that *Pacific Lumber's* policy of exculpating creditors' committees and their members from "being sued by persons unhappy with the committee's performance during the case or unhappy with the outcome of the case" is applicable to the Independent Directors in this Chapter 11 Case.[9]

b.    Second, the Bankruptcy Court also concludes that *Pacific Lumber* does not preclude the exculpation of parties if there is a showing that "costs [that] the released parties might incur defending against such suits alleging such negligence are likely to swamp either the Exculpated Parties or the reorganization." *Pacific Lumber*, 584 F.3d at 252. If ever there was a risk of that happening in a chapter 11 reorganization, it is this one. Mr. Seery credibly testified that Mr. Dondero stated outside the courtroom that if Mr. Dondero's pot plan does not get approved, that Mr. Dondero will "burn the place down." The Bankruptcy Court can easily expect that the proposed Exculpated Parties might expect to incur costs that could swamp them and the reorganization based on the prior litigious conduct of Mr. Dondero and his controlled entities that justify their inclusion in the Exculpation Provision.

---

[9] The same reasoning applies to the inclusion of Strand in the Exculpation Provision because Strand is the general partner of the Debtor through which each of the Independent Board members act.

75.     **Injunction.**  Section IX.D of the Plan provides for a Plan inunction to implement and enforce the Plan's release, discharge and release provisions (the "Injunction Provision").  The Injunction Provision is necessary to implement the provisions in the Plan.  Mr. Seery testified that the Claimant Trustee will monetize the Debtor's assets in order to maximize their value.  In order to accomplish this goal, the Claimant Trustee needs to be able to pursue this objective without the interference and harassment of Mr. Dondero and his related entities, including the Dondero Related Entities.  Mr. Seery also testified that if the Claimant Trust was subject to interference by Mr. Dondero,  it would take additional time to monetize the Debtor's assets and those assets could be monetized for less money to the detriment of the Debtor's creditors.  The Bankruptcy Court finds and concludes that the Injunction Provision is consistent with and permissible under Bankruptcy Code sections 1123(a), 1123(a)(6), 1141(a) and (c), and 1142.  The Bankruptcy Court rejects assertions by certain objecting parties that the Injunction Provision constitutes a "third-party release."  The Injunction Provision is appropriate under the circumstances of this Chapter 11 Case and complies with applicable bankruptcy law.  The Bankruptcy Court also concludes that the terms "implementation" and "consummation" are neither vague nor ambiguous

76.     **Gatekeeper Provision**.  Section IX.F of the Plan contains a provision contained in paragraph AA of this Confirmation Order and which the Debtor has referred to as a gatekeeper provision (the "Gatekeeper Provision").  The Gatekeeper Provision requires that Enjoined Parties first seek approval of the Bankruptcy Court before they may commence an action against Protected Parties.  Thereafter, if the Bankruptcy Court determines that the action is

54

**Appx. 00073**

colorable, the Bankruptcy Court may, if it has jurisdiction, adjudicate the action. The Bankruptcy Court finds that the inclusion of the Gatekeeper Provision is critical to the effective and efficient administration, implementation, and consummation of the Plan. The Bankruptcy Court also concludes that the Bankruptcy Court has the statutory authority as set forth below to approve the Gatekeeper Provision.

77. **Factual Support for Gatekeeper Provision.** The facts supporting the need for the Gatekeeper Provision are as follows. As discussed earlier in this Confirmation Order, prior to the commencement of the Debtor's bankruptcy case, and while under the direction of Mr. Dondero, the Debtor had been involved in a myriad of litigation, some of which had gone on for years and, in some cases, over a decade. Substantially all of the creditors in this case are either parties who were engaged in litigation with the Debtor, parties who represented the Debtor in connection with such litigation and had not been paid, or trade creditors who provided litigation-related services to the Debtor. During the last several months, Mr. Dondero and the Dondero Related Entities have harassed the Debtor, which has resulted in further substantial, costly, and time-consuming litigation for the Debtor. Such litigation includes: (i) entry of a temporary restraining order and preliminary injunction against Mr. Dondero [Adv. Proc. No. 20-03190 Docket No. 10 and 59] because of, among other things, his harassment of Mr. Seery and employees and interference with the Debtor's business operations; (ii) a contempt motion against Mr. Dondero for violation of the temporary restraining order, which motion is still pending before the Bankruptcy Court [Adv. Proc. No. 20-03190 Docket No. 48]; (iii) a motion by Mr. Dondero's controlled investors in certain CLOs managed by the Debtor that the Bankruptcy Court referred to

as frivolous and a waste of the Bankruptcy Court's time [Docket No. 1528] which was denied by the Court [Docket No. 1605]; (iv) multiple plan confirmation objections focused on ensuring the Dondero Related Entities be able to continue their litigation against the Debtor and its successors post-confirmation [Docket Nos. 1661, 1667, 1670, 1673, 1676, 1677 and 1868]; (v) objections to the approval of the Debtor's settlements with Acis and HarbourVest and subsequent appeals of the Bankruptcy Court's order approving each of those settlements [Docket Nos. 1347 and 1870]; and (vi) a complaint and injunction sought against Mr. Dondero's affiliated entities to prevent them from violating the January 9 Order and entry of a restraining order against those entities [Adv Proc. No. 21-03000 Docket No 1] (collectively, the "Dondero Post-Petition Litigation").

78.     **Findings Regarding Dondero Post-Petition Litigation.**  The Bankruptcy Court finds that the Dondero Post-Petition Litigation was a result of Mr. Dondero failing to obtain creditor support for his plan proposal and consistent with his comments, as set forth in Mr. Seery's credible testimony, that if Mr. Dondero's plan proposal was not accepted, he would "burn down the place."  The Bankruptcy Court concludes that without appropriate protections in place, in the form of the Gatekeeper Provision, Mr. Dondero and his related entities will likely commence litigation against the Protected Parties after the Effective Date and do so in jurisdictions other than the Bankruptcy Court in an effort to obtain a forum which Mr. Dondero perceives will be more hospitable to his claims.  The Bankruptcy Court also finds, based upon Mr. Seery's testimony, that the threat of continued litigation by Mr, Dondero and his related entities after the Effective Date will impede efforts by the Claimant Trust to monetize assets for the benefit of creditors and result

DOCS_SF:104487.21 36027/002

in lower distributions to creditors because of costs and distraction such litigation or the threats of such litigation would cause.

79.    **Necessity of Gatekeeper Provision.**  The Bankruptcy Court further finds that unless the Bankruptcy Court approves the Gatekeeper Provision, the Claimant Trustee and the Claimant Trust Oversight Board will not be able to obtain D&O insurance, the absence of which will present unacceptable risks to parties currently willing to serve in such roles.  The Bankruptcy Court heard testimony from Mark Tauber, a Vice President with AON Financial Services, the Debtor's insurance broker ("AON"), regarding his efforts to obtain D&O insurance.  Mr. Tauber credibly testified that of all the insurance carriers that AON approached to provide D&O insurance coverage after the Effective Date, the only one willing to do so without an exclusion for claims asserted by Mr. Dondero and his affiliates otherwise requires that this Order approve the Gatekeeper Provision.  Based on the foregoing, the Bankruptcy Court finds that the Gatekeeper Provision is necessary and appropriate in light of the history of the continued litigiousness of Mr. Dondero and his related entities in this Chapter 11 Case and necessary to the effective and efficient administration, implementation and consummation of the Plan and is appropriate pursuant to *Carroll v. Abide (In re Carroll)* 850 F.3d 811 (5th Cir. 2017).  Approval of the Gatekeeper Provision will prevent baseless litigation designed merely to harass the post-confirmation entities charged with monetizing the Debtor's assets for the benefit of its economic constituents, will avoid abuse of the court system and preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants.  Any suit against a Protected Party would effectively be a suit against the Debtor, and the Debtor may be required to indemnify the Protected

DOCS_SF:104487.21 36027/002

**Appx. 00076**

Parties under the Limited Partnership Agreement, which will remain in effect through the Effective

Date, or those certain *Indemnification and Guaranty Agreements*, dated January 9, 2020, between

Strand, the Debtor, and each Independent Director, following the Confirmation Date as each such

agreement will be assumed pursuant to 11 U.S.C. § 365 pursuant to the Plan.

80.    **Statutory Authority to Approve Gatekeeper Provision.**    The

Bankruptcy Court finds it has the statutory authority to approve the Gatekeeper Provision under

sections 1123(a)(5), 1123(b)(6), 1141, 1142(b), and 105(a).    The Gatekeeper Provision is also

within the spirit of the Supreme Court's "Barton Doctrine." *Barton v. Barbour,* 104 U.S. 126

(1881).    The Gatekeeper Provision is also consistent with the notion of a prefiling injunction to

deter vexatious litigants, that has been approved by the Fifth Circuit in such cases as *Baum v. Blue*

*Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008), and *In re Carroll,* 850 F.3d 811 (5th Cir.

2017).

81.    **Jurisdiction to Implement Gatekeeper Provision.**  The Bankruptcy Court

finds that it will have jurisdiction after the Effective Date to implement the Gatekeeper Provision

as post-confirmation bankruptcy court jurisdiction has been interpreted by the Fifth Circuit under

*United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.)*, 301 F.3d

296 (5th Cir. 2002) and *EOP-Colonnade of Dallas Ltd. P'Ship v. Faulkner (In re Stonebridge*

*Techs., Inc.)*, 430 F.3d 260 (5th Cir. 2005).  Based upon the rationale of the Fifth Circuit in *Villegas*

*v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015), the Bankruptcy Court's jurisdiction to act as a

gatekeeper does not violate *Stern v. Marshall.*  The Bankruptcy Court's determination of whether

**Appx. 00077**

a claim is colorable, which the Bankruptcy Court has jurisdiction to determine, is distinct from whether the Bankruptcy Court would have jurisdiction to adjudicate any claim it finds colorable.

82.     **Resolution of Objections of Scott Ellington and Isaac Leventon**.  Each of Scott Ellington ("Mr. Ellington") and Isaac Leventon ("Mr. Leventon") (each, a "Senior Employee Claimant") has asserted certain claims for liquidated but unpaid bonus amounts for the following periods: 2016, 2017, and 2018, as set forth in Exhibit A to that certain *Senior Employees' Limited Objection to Debtor's Fifth Amended Plan of Reorganization* [Docket No. 1669] (the "Senior Employees' Objection") (for each of Mr. Ellington and Mr. Leventon, the "Liquidated Bonus Claims").

a.      Mr. Ellington has asserted Liquidated Bonus Claims in the aggregate amount of $1,367,197.00, and Mr. Leventon has asserted Liquidated Bonus Claims in the aggregate amount of $598,198.00.  Mr. Ellington received two Ballots[10] – a Ballot for Class 7 of the Plan and a Ballot for Class 8 of the Plan.  Mr. Ellington completed and timely returned both of such Ballots, voted to reject the Plan, and elected to have his Class 8 Liquidated Bonus Claims treated under Class 7 of the Plan, subject to the objections and reservations of rights set forth in the Senior Employees' Objection.  If Mr. Ellington is permitted to elect Class 7 treatment for his Liquidated Bonus Claims, then the maximum amount of his Liquidated Bonus Claims will be $1,000,000.

b.      Mr. Leventon received two Ballots—a Ballot for Class 7 of the Plan and a Ballot for Class 8 of the Plan.  Mr. Leventon completed and timely returned both of such Ballots and voted each such Ballots to rejected the Plan.

c.      The Senior Employees' Objection, among other things, objects to the Plan on the grounds that the Debtor improperly disputes the right of Mr. Ellington to elect Class 7 treatment for his Liquidated Bonus Claims and Mr. Leventon's entitlement to receive Class 7 Convenience Class treatment for his Liquidated Bonus Claims.  The Debtor contended that neither Mr. Ellington or Mr. Leventon were entitled to elect to receive Class 7 Convenience Class treatment on account of their Liquidated

---

[10] As defined in the Plan, "Ballot" means the forms(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

DOCS_SF:104487.21 36027/002

Bonus Claims under the terms of the Plan, the Disclosure Statement Order or applicable law.

d.     The Debtor and Mr. Ellington and Mr. Leventon negotiated at arms' length in an effort to resolve all issues raised in the Senior Employee's Objection, including whether or not Mr. Ellington and Mr. Leventon were entitled to Class 7 Convenience Class treatment of their Liquidated Bonus Claims. As a result of such negotiation, the Debtor, Mr. Ellington, and Mr. Leventon have agreed to the settlement described in paragraphs 82(e) through 82(k) below and approved and effectuated pursuant to decretal paragraphs RR through SS (the "Senior Employees' Settlement").

e.     Under the terms of the Senior Employees' Settlement, the Debtor has the right to elect one of two treatments of the Liquidated Bonus Claims for a Senior Employee Claimant. Under the first treatment option ("Option A"), the Liquidated Bonus Claims will be entitled to be treated in Class 7 of the Plan, and the Liquidated Bonus Claims will be entitled to receive payment in an amount equal to 70.125% of the Class 7 amount of the Liquidated Bonus Claims, subject to the Liquidated Bonus Claims becoming Allowed Claims under the terms of the Plan. Under this calculation, Mr. Ellington would be entitled to receive $701,250.00 on account of his Class 7 Convenience Class Claim when and as Allowed under the Plan, and Mr. Leventon would be entitled to receive $413,175.10 on account of his Class 7 Convenience Class Claim when and as Allowed under the Plan. If, however, any party in interest objects to the allowance of the Senior Employee Claimant's Liquidated Bonus Claims and does not prevail in such objection, then such Senior Employee Claimant will be entitled to a payment in an amount equal to 85% of his Allowed Liquidated Bonus Claims (subject, in the case of Mr. Ellington, to the cap imposed on Class 7 Claims). In addition, under Option A, each of Mr. Ellington and Mr. Leventon would retain their respective rights to assert that the Liquidated Bonus Claims are entitled to be treated as Administrative Expense Claims, as defined in Article I.B.2. of the Plan, in which case the holder of such Liquidated Bonus Claims would be entitled to payment in full of the Allowed Liquidated Bonus Claims. Under Option A, parties in interest would retain the right to object to any motion seeking payment of the Liquidated Bonus Amounts as Administrative Expenses.

f.     Under the second treatment option ("Option B"), the Debtor would agree that the Senior Employee Claimant has Allowed Liquidated Bonus Claims, no longer subject to objection by any party in interest, in the amounts of the Liquidated Bonus Claims (subject, in the case of Mr. Ellington, to the cap imposed by Class 7). If the Debtor elects Option B as to a Senior Employee Claimant, then such Senior Employee Claimant would be entitled to a payment on account of his Allowed Liquidated Bonus Claims in an amount equal to 60% of the amount of the

Liquidated Bonus Claims (which, in Mr. Ellington's case, would be $600,000 and in Mr. Leventon's case, would be $358,918.80), and such payment would be the sole recovery on account of such Allowed Liquidated Bonus Claims.

g.      The Debtor may, with the consent of the Committee, elect Option B with respect to a Senior Employee Claimant at any time prior to the occurrence of the Effective Date.  If the Debtor does not make an election, then Option A will apply.

h.      Under either Option A or Option B, Mr. Ellington and Mr. Leventon will retain all their rights with respect to all Claims other than the Liquidated Bonus Amounts, including, but not limited to, their Class 6 PTO Claims, other claims asserted as Class 8 General Unsecured Claims, the Senior Employees' claims for indemnification against the Debtor, and any other claims that they may assert constitute Administrative Expense Claims, and any other such Claims are subject to the rights of any party in interest to object to such Claims, and the Debtor reserves any all of its rights and defenses in connection therewith.

i.      Subject to entry of this Confirmation Order and as set forth and announced on the record at the hearing on confirmation of the Plan and no party objecting thereto, Mr. Ellington and Mr. Leventon agreed to change the votes in their respective Ballots from rejection to acceptance of the Plan and to withdraw the Senior Employees' Objection.

j.      The Senior Employees' Settlement represents a valid exercise of the Debtor's business judgment and satisfies the requirements for a compromise under Bankruptcy Rule 9019(a).

k.      For the avoidance of doubt, neither Mr. Leventon nor Mr. Ellington shall be a Released Party under the Plan regardless of how the Senior Employee Claimants' Claims are to be treated hereunder.

Based upon the foregoing findings, and upon the record made before the Bankruptcy Court

at the Confirmation Hearing, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

    **A.      Confirmation of the Plan.**  The Plan is approved in its entirety and

**CONFIRMED** under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the

**Appx. 00080**

Plan Supplements and Plan Modifications, are incorporated by reference into and are an integral part of this Confirmation Order.[11]

   **B.**  **Findings of Fact and Conclusions of Law**.  The findings of fact and the conclusions of law set forth in this Confirmation Order and on the record of the Confirmation Hearing constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusion of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Confirmation Order.  To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any findings of fact or conclusions of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Bankruptcy Court, and is adopted as such.

   **C.**  **Objections**.  Any resolution or disposition of objections to confirmation of the Plan or otherwise ruled upon by the Bankruptcy Court on the record of the Confirmation Hearing is hereby incorporated by reference.  All objections and all reservations of rights pertaining to confirmation of the Plan that have not been withdrawn, waived or settled are overruled on the merits, except as otherwise specifically provided in this Confirmation Order.

   **D.**  **Plan Supplements and Plan Modifications.**  The filing with the Bankruptcy Court of the Plan Supplements and the Plan Modifications constitutes due and

---

[11] The Plan is attached hereto as **Exhibit A**.

**Appx. 00081**

sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan Modifications and the Plan Supplements do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan Modifications and the Plan Supplements constitute the Plan pursuant to section 1127(a) of the Bankruptcy Code.  Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

E.    **Deemed Acceptance of Plan.**  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims and Equity Interests who voted to accept the Plan (or whom are conclusively presumed to accept the Plan) are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

F.    **Vesting of Assets in the Reorganized Debtor.**  Except as otherwise provided in the Plan or this Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code, except with respect to such Liens, Claims, charges, and other encumbrances that are specifically preserved under the Plan upon the Effective Date.  The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the

**Appx. 00082**

representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

      **G.**    **Effectiveness of All Actions.** All actions contemplated by the Plan, including all actions in connection with the Claimant Trust Agreement, the Senior Employee Stipulation, the New GP LLC Documents, the New Frontier Note, the Reorganized Limited Partnership Agreement, the Litigation Sub-Trust Agreement, and the other Plan Documents, are authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to or order of the Bankruptcy Court, or further action by the directors, managers, officers or partners of the Debtor or the Reorganized Debtor and with the effect that such actions had been taken by unanimous action of such parties.

      **H.**    **Restructuring Transactions.** The Debtor or Reorganized Debtor, as applicable, are authorized to enter into and effectuate the Restructuring provided under the Plan, including, without limitation, the entry into and consummation of the transactions contemplated by the Claimant Trust Agreement, the Senior Employee Stipulation, the New GP LLC Documents, the New Frontier Note, the Reorganized Limited Partnership Agreement, the Litigation Sub-Trust Agreement, and the other Plan Documents, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of its business or a corporate restructuring of the overall corporate structure of the Reorganized Debtor, as and to the extent provided in the Plan. Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring pursuant to the Plan are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

DOCS_SF:104487.21 36027/002

**Appx. 00083**

I.  **Preservation of Causes of Action.**  Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, this Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor, the Litigation Sub-Trust, or the Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of the Plan based on the Disclosure Statement, the Plan, or this Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any other Final Order (including, without limitation, this Confirmation Order).  In addition, the right of the Reorganized Debtor, the Claimant Trust, or the Litigation Sub-Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

J.  **Independent Board of Directors of Strand.**  The terms of the current Independent Directors shall expire on the Effective Date without the need for any further or other action by any of the Independent Directors.  For avoidance of doubt, the Assumed Contracts

DOCS_SF:104487.21 36027/002

**Appx. 00084**

include the *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and James Seery*; the *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and John Dubel* and *Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and Russell Nelms* and shall each remain in full force and effect notwithstanding the expiration of the terms of any Independent Directors.

   **K.     Cancellation of Equity Interests and Issuance of New Partnership Interests.** On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be deemed cancelled, and all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, such Class A Limited Partnership Interests and Class B/C Limited Partnership Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement. As of the Effective Date and pursuant to the Plan, new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner. The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited

DOCS_SF:104487.21 36027/002

**Appx. 00085**

Partnership Agreement. Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC. The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

L.     **Transfer of Assets to Claimant Trust.**  On or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax. Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to the Plan and the Claimant Trust Agreement.

M.     **Transfer of Estate Claims to Litigation Sub-Trust**.  On or prior to the Effective Date, the Claimant Trust shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Sub-Trust all of the Claimant Trust's rights, title, and interest in and to all of the Estate Claims as successor in interest to the Debtor, and in accordance with section 1141 of the Bankruptcy Code, the Estate Claims shall automatically vest in the Litigation Sub-Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Litigation Sub-Trust Interests and Litigation Sub-Trust Expenses. The Litigation Trustee will

DOCS_SF:104487.21 36027/002

**Appx. 00086**

be authorized to investigate, pursue, and otherwise resolve the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan, including as successor in interest to the Debtor or Committee, as applicable, in any litigation commenced prior to the Effective Date in which Estate Claims are asserted.

   **N.**  **Compromise of Controversies.**  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved under the Plan and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

   **O.**  **Objections to Claims**.  The Claims Objection Deadline shall be the date that is 180 days after the Effective Date, *provided, however*, that the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee and as otherwise provided under the Plan.

   **P.**  **Assumption of Contracts and Leases.**  Effective as of the date of this Confirmation Order, each of the Assumed Contacts shall be assumed by the Debtor without the need for any further notice to or action, order, or approval of the Bankruptcy Court, under section 365 of the Bankruptcy Code and the payment of Cures, if any, shall be paid in accordance with the Plan.  Each Assumed Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to any of the

DOCS_SF:104487.21 36027/002

**Appx. 00087**

Assumed Contracts that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of such Assumed Contracts or the validity, priority, or amount of any Claims that may arise in connection therewith. Assumption of the Assumed Contracts pursuant to Article V.A of the Plan and full payment of any applicable Cure pursuant to the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition, or other bankruptcy-related defaults, arising under any Assumed Contracts.

Q. **Rejection of Contracts and Leases.** Unless previously assumed during the pendency of the Chapter 11 Case or pursuant to the Plan, all other Executory Contracts and Unexpired Leases are rejected as of the date of the entry of this Confirmation Order and pursuant to the terms of the Plan. To the extent that any party asserts any damages resulting from the rejection of any Executory Contract or Unexpired Lease, such claim must be filed within **thirty (30) days** following entry of this Confirmation Order, or such claim will be forever barred and disallowed against the Reorganized Debtor.

R. **Assumption of Issuer Executory Contracts.** On the Confirmation Date, the Debtor will assume the agreements set forth on **Exhibit B** hereto (collectively, the "Issuer Executory Contracts") pursuant to section 365 of the Bankruptcy Code and Article V of the Plan. In full and complete satisfaction of its obligation to cure outstanding defaults under section 365(b)(1) of the Bankruptcy Code, the Debtor or, as applicable, any successor manager under the

**Appx. 00088**

Issuer Executory Contracts (collectively, the "Portfolio Manager") will pay to the Issuers[12] a

cumulative amount of $525,000 (the "Cure Amount") as follows:

a.    $200,000 in cash on the date that is five business days from the Effective Date, with such payment paid directly to Schulte Roth & Zabel LLP ("SRZ") in the amount of $85,714.29, Jones Walker LLP ("JW") in the amount of $72,380.95, and Maples Group ("Maples" and collectively with SRZ and JW, the "Issuers' Counsel") in the amount of $41,904.76 as reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case; and

b.    $325,000 in four equal quarterly payments of $81,250.00 (each, a "Payment"), which amounts shall be paid to SRZ in the amount of $34,821.43, JW in the amount of $29,404.76, and Maples in the amount of $17,023.81 as additional reimbursement for the attorney's fees and other legal expenses incurred by the Issuers in connection with the Debtor's bankruptcy case (i) from any management fees actually paid to the Portfolio Manager under the Issuer Executory Contracts (the "Management Fees"), and (ii) on the date(s) Management Fees are required to be paid under the Issuer Executory Contracts (the "Payment Dates"), and such obligation shall be considered an irrevocable direction from the Debtor and the Bankruptcy Court to the relevant CLO Trustee to pay, on each Payment Date, the Payment to Issuers' Counsel, allocated in the proportion set forth in such agreement; *provided, however,* that (x) if the Management Fees are insufficient to make any Payment in full on a Payment Date, such shortfall, in addition to any other amounts due hereunder, shall be paid out of the Management Fees owed on the following Payment Date, and (y) nothing herein shall limit either Debtor's liability to pay the amounts set forth herein, nor the recourse of the Issuers or Issuers' Counsel to the Debtor, in the event of any failure to make any Payment.

    **S.    Release of Issuer Claims.**  Effective as of the Confirmation Date, and to

the maximum extent permitted by law, each Issuer on behalf of itself and each of its current and

former  advisors,  trustees,  directors,  officers,  managers,  members,  partners,  employees,

beneficiaries, shareholders, agents, participants, subsidiaries, parents, successors, designees, and

---

[12] The "Issuers" are: Brentwood CLO, Ltd., Gleneagles CLO, Ltd., Greenbriar CLO, Ltd., Highland CLO 2018-1, Ltd., Highland Legacy Limited, Highland Loan Funding V Ltd., Highland Park CDO I, Ltd., Pam Capital Funding LP, Rockwall CDO II Ltd., Rockwall CDO Ltd., Southfork CLO Ltd., Stratford CLO Ltd., Westchester CLO, Ltd., Aberdeen Loan Funding, Ltd., Eastland CLO, Ltd., Grayson CLO, Ltd., Highland Credit Opportunities CDO Ltd., Jasper CLO, Ltd., Liberty Cayman Holdings, Ltd., Liberty CLO, Ltd., Red River CLO, Ltd., Valhalla CLO, Ltd.

**Appx. 00089**

assigns hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue, (i) the Debtor and (ii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, the Independent Directors, the CEO/CRO, and with respect to the Persons listed in this subsection (ii), such Person's Related Persons (collectively, the "Debtor Released Parties"), for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation, any claims, defenses, and affirmative defenses, whether known or unknown, including, without limitation, those which were or could have been asserted in, in connection with, or with respect to the Bankruptcy Case (collectively, the "Issuer Released Claims").

      **T.**      **Release of Debtor Claims against Issuer Released Parties.**  Upon entry of this Order, and to the maximum extent permitted by law, the Debtor hereby forever, finally, fully, unconditionally, and completely releases, relieves, acquits, remises, and exonerates, and covenants never to sue [(i) each Issuer and (ii) Wendy Ebanks, (iii) Yun Zheng, (iv) Laura Chisholm (v) Mora Goddard, (vi) Stacy Bodden, (vii) Suzan Merren (viii) Scott Dakers, (ix) Samit Ghosh, (x) Inderjit Singh, (xi) Ellen Christian, (xii) Andrew Dean, (xiii) Betsy Mortel, (xiv) David Hogan, (xv) Cleveland Stewart, (xvi) Rachael Rankin, (xvii) Otelia Scott, (xviii) Martin Couch, (xx) Ferona Bartley-Davis, (xxi) Charlotte Cloete, (xxii) Christina McLean, (xxiii) Karen Ellerbe,

(xxiv) Gennie Kay Bigord, (xxv) Evert Brunekreef, (xxvii) Evan Charles Burtton  (collectively, the "Issuer Released Parties"),] for and from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, liens, losses, costs and expenses (including, without limitation, attorney's fees and related costs), damages, injuries, suits, actions, and causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, matured or unmatured, liquidated or unliquidated, contingent or fixed, at law or in equity, statutory or otherwise, including, without limitation, any claims, defenses, and affirmative defenses, whether known or unknown, which were or could have been asserted in, in connection with, or with respect to the Bankruptcy Case (collectively, the "Debtor Released Claims"); *provided, however,* that notwithstanding anything herein to the contrary, the release contained herein will apply to the Issuer Released Parties set forth in subsection (ii) above only with respect to Debtor Released Claims arising from or relating to the Issuer Executory Contracts.  Notwithstanding anything in this Order to the contrary, the releases set forth in paragraphs S and T hereof will not apply with respect to the duties, rights, or obligations of the Debtor or any Issuer hereunder.

   **U.**  **Authorization to Consummate.**  The Debtor is authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions precedent to the Effective Date of the Plan set forth in Article VIII.A of the Plan.  The Plan shall not become effective unless and until the conditions set forth in Article VIII.A of the Plan have been satisfied, or otherwise waived pursuant to Article VIII.B of the Plan.

   **V.**  **Professional Compensation.**  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date

must be filed no **later than sixty (60) days after the Effective Date**.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and an opportunity for hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Court.  The Debtor shall fund the Professional Fee Reserve as provided under the Plan. The Reorganized Debtor shall pay Professional Fee Claims in Cash in the amounts the Bankruptcy Court allows.  The Debtor is authorized to pay the pre-Effective Date fees and expenses of all ordinary course professionals in the ordinary course of business without the need for further Bankruptcy Court order or approval.  From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 (if applicable) of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor or Claimant Trustee, as applicable, may employ and pay any Professional or Entity employed in the ordinary course of the Debtor's business without any further notice to or action, order, or approval of the Bankruptcy Court.

W.    **Release, Exculpation, Discharge, and Injunction Provisions.    The following release, exculpation, discharge, and injunction provisions set forth in the Plan are approved and authorized in their entirety, and such provisions are effective and binding on all parties and Entities to the extent provided therein.**

X.    **Discharge of Claims and Termination of Interests.**  To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or this Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement,

73

**Appx. 00092**

discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or this Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

Y.     **Exculpation.** Subject in all respects to Article XII.D of the Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(v);

74

**Appx. 00093**

*provided, however*, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date.  The Plan's exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of the Plan, including Article IV.C.2 of the Plan, protecting such Exculpated Parties from liability.

      **Z.**      **Releases by the Debtor.**  On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.  Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under

**Appx. 00094**

any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance

Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual

fraud, or gross negligence of such applicable Released Party as determined by Final Order of the

Bankruptcy Court or any other court of competent jurisdiction.

**AA.    Injunction.    Upon entry of this Confirmation Order, all Enjoined**

**Parties are and shall be permanently enjoined, on and after the Effective Date, from taking**

**any actions to interfere with the implementation or consummation of the Plan.    Except as**

**expressly provided in the Plan, this Confirmation Order, or a separate order of the**

**Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after**

**the Effective Date, with respect to any Claims and Equity Interests, from directly or**

**indirectly (i) commencing, conducting, or continuing in any manner, any suit, action, or**

**other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative**

**or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing,**

**levying, attaching (including any prejudgment attachment), collecting, or otherwise**

**recovering, enforcing, or attempting to recover or enforce, by any manner or means, any**

**judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii)**

**creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or**

**encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any**

**right of setoff, directly or indirectly, against any obligation due to the Debtor or against**

**property or interests in property of the Debtor, except to the limited extent permitted under**

**Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner,**

in any place whatsoever, that does not conform to or comply with the provisions of the Plan. The injunctions set forth in the Plan and this Confirmation Order shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property. Subject in all respects to Article XII.D of the Plan, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however*, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in

DOCS_SF:104487.21 36027/002

**Appx. 00096**

Article XI of the Plan, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

      **BB.** **Duration of Injunction and Stays.** Unless otherwise provided in the Plan, in this Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date, shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Bankruptcy Court will enter an equivalent order under Section 105.

      **CC.** **Continuance of January 9 Order and July 16 Order.** Unless otherwise provided in the Plan, in this Confirmation Order, or in a Final Order of the Bankruptcy Court, each of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course, entered by the Bankruptcy Court on January 9, 2020* [Docket No. 339] and *Order Approving the Debtor's Motion Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Retention of James P. Seery, Jr., as Chief Executive Officer, Chief Restructuring Officer, and Foreign Representative Nunc Pro Tunc to March 15, 2020* [Docket No. 854] entered on July 16, 2020 shall remain in full force and effect from the Confirmation Date and following the Effective Date.

      **DD.** **No Governmental Releases.** Nothing in this Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or

**Appx. 00097**

any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in this Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit, or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in this Confirmation Order or the Plan exculpate any party or person from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against any party or person.

      **EE.**    **Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or the Reorganized Debtor; (b) the Restructuring transactions pursuant to the Plan; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan,

DOCS_SF:104487.21 36027/002

**Appx. 00098**

including any deeds, bills of sale, assignments, or other instrument of transfer executed in

connection with any transaction arising out of, contemplated by, or in any way related to the Plan,

shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial

Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental

assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon

entry of this Confirmation Order, the appropriate state or local governmental officials or agents

shall forego the collection of any such tax or governmental assessment and accept for filing and

recordation of any of the foregoing instruments or other documents without the payment of any

such tax, recordation fee, or governmental assessment.

       **FF.    Cancellation of Notes, Certificates and Instruments.**  Except for the

purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in

the Plan or as otherwise provided in this Confirmation Order, on the Effective Date, all agreements,

instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest

and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no

force or effect.  The holders of or parties to such cancelled instruments, Securities, and other

documentation will have no rights arising from or related to such instruments, Securities, or other

documentation or the cancellation thereof, except the rights provided for pursuant to the Plan, and

the obligations of the Debtor thereunder or in any way related thereto will be fully released,

terminated, extinguished and discharged, in each case without further notice to or order of the

**Appx. 00099**

Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

**GG. Documents, Mortgages, and Instruments.** Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring transactions contemplated under the Plan, and this Confirmation Order.

**HH. Post-Confirmation Modifications.** Subject section 1127(b) of the Bankruptcy Code and the Plan, the Debtor and the Reorganized Debtor expressly reserve their rights to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII.B of the Plan.

**II. Applicable Nonbankruptcy Law.** The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

**JJ. Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state,

DOCS_SF:104487.21 36027/002

**Appx. 00100**

federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

      **KK.**  **Notice of Effective Date.**  As soon as reasonably practicable after the Effective Date, the Reorganized Debtor shall file notice of the Effective Date and shall serve a copy of the same on all Holders of Claims and Equity Interests, and all parties who have filed with the Bankruptcy Court requests to receive notices in accordance with Bankruptcy Rules 2002 and 3020(c).  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtor mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or is otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of this Chapter 11 Case and no other or further notice is necessary.

      **LL.**  **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

      **MM.**  **Waiver of Stay.**  For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

DOCS_SF:104487.21 36027/002

**Appx. 00101**

NN.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

OO.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

PP.    **Effect of Conflict.**  This Confirmation Order supersedes any Bankruptcy Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.  If there is any inconsistency between the terms of this Confirmation Order and the terms of a final, executed Plan Supplement Document, the terms of the final, executed Plan Supplement Document will govern and control.

QQ.    **Resolution of Objection of Texas Taxing Authorities.**  Dallas County, Kaufman County, City of Allen, Allen ISD and City of Richardson (collectively, the "Tax Authorities") assert that they are the holders of prepetition and administrative expense claims for 2019, 2020 and 2021 ad valorem real and business personal property taxes.  The ad valorem property taxes for tax year 2020 shall be paid in accordance with and to the extent required under

applicable nonbankruptcy law.  In the event the 2020 taxes are paid after February 1, 2021, the

Tax Authorities may assert any rights and amounts they claim are owed with respect to penalties

and interest that have accrued through the date of payment and the Debtor and Reorganized Debtor

reserve any all rights and defenses in connection therewith.

a.  The Debtor/Reorganized Debtor shall pay all amounts owed to the Tax Authorities for tax year 2021 in accordance with and to the extent required under applicable nonbankruptcy law.  The Tax Authorities shall not be required to file and serve an administrative expense claim and request for payment as a condition of allowance of their administrative expense claims pursuant to 11 U.S.C. Section 503(b)(1)(D). With regard to year 2019 ad valorem property taxes, the Tax Authorities will receive payment of their prepetition claims within 30 days of the Effective Date of the Plan.  The payment will include interest from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511, and 1129, if applicable, subject to all of the Debtor's and Reorganized Debtor's rights and defenses in connection therewith. Notwithstanding any other provision in the Plan, the Tax Authorities shall (i) retain the liens that secure all prepetition and postpetition amounts ultimately owed to them, if any, as well as (ii) the state law priority of those liens until the claims are paid in full.

b.  The Tax Authorities' prepetition claims and their administrative expense claims shall not be discharged until such time as the amounts owed are paid in full.  In the event of a default asserted by the Taxing Authorities, the Tax Authorities shall provide notice Debtor or Reorganized Debtor, as applicable, and may demand cure of any such asserted default.  Subject to all of its rights and defenses, the Debtor or Reorganized Debtor shall have fifteen (15) days from the date of the notice to cure the default.  If the alleged default is not cured, the Tax Authorities may exercise any of their respective rights under applicable law and pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court, subject in all respects to the Debtor's and Reorganized Debtor's applicable rights and defenses. The Debtor/Reorganized Debtor shall be entitled to any notices of default required under applicable nonbankruptcy law and each of the Taxing Authorities, the Debtor and the Reorganized Debtor reserve any and all of their respective rights and defenses in connection therewith.  The Debtor's and Reorganized Debtor's rights and defenses under Texas Law and the Bankruptcy Code with respect to this provision of the Confirmation Order, including their right to dispute or object to the Tax Authorities' Claims and liens, are fully preserved.

**Appx. 00103**

**RR.    Resolution of Objections of Scott Ellington and Isaac Leventon.**
Pursuant to Bankruptcy Rule 9019(a), the Senior Employees' Settlement is approved in all respects.  The Debtor may, only with the consent of the Committee, elect Option B for a Senior Employee Claimant by written notice to such Senior Employee Claimant on or before the occurrence of the Effective Date.  If the Debtor does not elect Option B, then Option A will govern the treatment of the Liquidated Bonus Claims.

a.    Notwithstanding any language in the Plan, the Disclosure Statement, or this Confirmation Order to the contrary, if Option A applies to the Liquidated Bonus Claims of a Senior Employee Claimant, then the Liquidated Bonus Claims of such Senior Employee Claimant will receive the treatment described in paragraph 82(e) hereof, and if the Debtor timely elects Option B with respect to the Liquidated Bonus Claims of a Senior Employee Claimant, then the Liquidated Bonus Claims of such Senior Employee will receive the treatment described in paragraph 82(f) hereof.

b.    The Senior Employees' Settlement is hereby approved, without prejudice to the respective rights of Mr. Ellington and Mr. Leventon to assert all their remaining Claims against the Debtor's estate, including, but not limited to, their Class 6 PTO Claims, their remaining Class 8 General Unsecured Claims, any indemnification claims, and any Administrative Expense Claims that they may assert and is without prejudice to the rights of any party in interest to object to any such Claims.

c.    Pursuant to Bankruptcy Rule 3018(a), Mr. Ellington and Mr. Leventon were permitted to change their votes on the Plan.  Accordingly, Mr. Ellington's votes on his Ballots in Class 7 and Class 8 of the Plan were changed from a rejection of the Plan to acceptance of the Plan, and Mr. Leventon's votes on his Ballots in Class 7 and Class 8 of the Plan were, changed from rejections of the Plan to acceptances of the Plan.

d.    The Senior Employees' Objection is deemed withdrawn.

**SS.    No Release of Claims Against Senior Employee Claimants**.  For the avoidance of doubt, the Senior Employees' Settlement, as approved herein, shall not, and shall not be deemed to, release any Claims or Causes of Action held by the Debtor against either Senior

**Appx. 00104**

Employee Claimant nor shall either Senior Employee Claimant be, or be deemed to be, a "Released Party" under the Plan.

**TT.** **Resolution of Objection of Internal Revenue Service.** Notwithstanding any other provision or term of the Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (the "IRS Claim"):

(a) Notwithstanding any other provision in the Plan, if the Debtor, the Reorganized Debtor, or any successor in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor, the Reorganized Debtor and/or any successor in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of the date of said notice and demand, then the following shall apply to the IRS:

(1) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(2) The automatic stay of 11 U.S.C. § 362 and any injunction of the Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Bankruptcy Court, and the entire prepetition liability owed to the IRS, together with any unpaid postpetition tax liabilities, may become due and payable immediately; and

(3) The IRS shall have the right to proceed to collect from the Debtor, the Reorganized Debtor or any successor in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(b) If the IRS declares the Debtor, the Reorganized Debtor, or any successor-in-interest to be in default of the Debtor's, the Reorganized Debtor's and/ or any successor- in-interest's obligations under the Plan, then entire prepetition liability of an IRS' Allowed Claim, together with any unpaid postpetition tax liabilities shall become due and payable

86

immediately upon written demand to the Debtor, Reorganized Debtor and/or any successor-in-interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor, Reorganized Debtor, and/or any successor in interest is in default.

(c) The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default, the IRS shall be entitled to proceed as set out in paragraphs (1), (2), and/or (3) herein above without further notice to the Debtor, the Reorganized Debtor, or any successor in interest, or its counsel. The collection statute expiration date for all unpaid federal tax liabilities shall be extended pursuant to non-bankruptcy law.

(d) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor, the Reorganized Debtor, and/or any successor in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor, the Reorganized Debtor and/or any successor in interest to the Internal Revenue Service.

(e) Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, causes of action, rights of setoff or recoupment, rights to appeal tax assessments, or other legal or equitable defenses that the Debtor or Reorganized Debtor have under non-bankruptcy law in connection with any claim, liability or cause of action of the United States and its agency the Internal Revenue Service.

(f) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor from and after the Confirmation Date, or the Reorganized Debtor and/or any successor in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

UU. **IRS Proof of Claim.** Notwithstanding anything in the Plan or in this Confirmation Order, until all required tax returns are filed with and processed by the IRS, the IRS's proof of claim will not be deemed fixed for purposes of Section 502 of the Bankruptcy Code and may be amended in order to reflect the IRS' assessment of the Debtor's unpaid priority and general unsecured taxes, penalties and interest.

DOCS_SF:104487.21 36027/002

**Appx. 00106**

VV.    **CLO Holdco, Ltd. Settlement**    Notwithstanding anything contained herein to the contrary, nothing in this Order is or is intended to supersede the rights and obligations of either the Debtor or CLO Holdco contained in that certain *Settlement Agreement between CLO Holdco, Ltd., and Highland Capital Management, L.P., dated January 25,2021* [Docket No. 1838-1] (the "CLOH Settlement Agreement"). In the event of any conflict between the terms of this Order and the terms of the CLOH Settlement Agreement, the terms of the CLOH Settlement Agreement will govern.

WW.    **Retention of Jurisdiction.** The Bankruptcy Court may properly, and upon the Effective Date shall, to the maximum extent permitted under applicable law, retain jurisdiction over all matters arising out of, and related to, this Chapter 11 Case, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

XX.    **Payment of Statutory Fees; Filing of Quarterly Reports.** All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date. The Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust shall be jointly and severally liable for payment of quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 through the entry of the Final Decree for the Debtor or the dismissal or conversion of the Chapter 11 Case. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

YY.    **Dissolution of the Committee**. On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have

88

**Appx. 00107**

any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). Notwithstanding the foregoing, any Committee member or Professional may serve following the Effective Date with respect to the Claimant Trust Oversight Board or Litigation Sub-Trust. The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan, the Claimant Trust Agreement, and/or Litigation Sub-Trust in connection with such representation.

      **ZZ.** **Miscellaneous.** After the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall have no obligation to file with the Bankruptcy Court or serve on any parties reports that the Debtor or Reorganized Debtor, as applicable, were obligated to file under the Bankruptcy Code or a court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports, reports to any parties otherwise required under the "first" and "second" day orders entered in this Chapter 11 Case (including any cash collateral financing orders entered in this Chapter 11 Case) and monthly or quarterly reports for Professionals; *provided*, *however*, that

DOCS_SF:104487.21 36027/002

the Debtor or Reorganized Debtor, as applicable, will comply with the U.S. Trustee's post confirmation reporting requirements.

**###END OF ORDER###**

DOCS_SF:104487.21 36027/002

**<u>Exhibit A</u>**

**Fifth Amended Plan (as Modified)**

DOCS_SF:104487.21 36027/002

**Appx. 00110**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ...............................................1

    A.    Rules of Interpretation, Computation of Time and Governing Law....................1

    B.    Defined Terms ..........................................................................................2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS.................16

    A.    Administrative Expense Claims..........................................................16

    B.    Professional Fee Claims.....................................................................17

    C.    Priority Tax Claims............................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS .........................................................................18

    A.    Summary.............................................................................................18

    B.    Summary of Classification and Treatment of Classified Claims and Equity Interests ..................................................................................18

    C.    Elimination of Vacant Classes ...........................................................19

    D.    Impaired/Voting Classes ....................................................................19

    E.    Unimpaired/Non-Voting Classes .......................................................19

    F.    Impaired/Non-Voting Classes............................................................19

    G.    Cramdown...........................................................................................19

    H.    Classification and Treatment of Claims and Equity Interests.............19

    I.    Special Provision Governing Unimpaired Claims..............................24

    J.    Subordinated Claims..........................................................................24

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ......................................24

    A.    Summary.............................................................................................24

    B.    The Claimant Trust ............................................................................25

        1.    Creation and Governance of the Claimant Trust and Litigation Sub-Trust.................................................................................25

        2.    Claimant Trust Oversight Committee.....................................26

Appx. 00112

**Page**

| | | | |
|---|---|---|---|
| | 3. | Purpose of the Claimant Trust. | 27 |
| | 4. | Purpose of the Litigation Sub-Trust. | 27 |
| | 5. | Claimant Trust Agreement and Litigation Sub-Trust Agreement. | 27 |
| | 6. | Compensation and Duties of Trustees. | 29 |
| | 7. | Cooperation of Debtor and Reorganized Debtor. | 29 |
| | 8. | United States Federal Income Tax Treatment of the Claimant Trust. | 29 |
| | 9. | Tax Reporting. | 30 |
| | 10. | Claimant Trust Assets. | 30 |
| | 11. | Claimant Trust Expenses. | 31 |
| | 12. | Trust Distributions to Claimant Trust Beneficiaries. | 31 |
| | 13. | Cash Investments. | 31 |
| | 14. | Dissolution of the Claimant Trust and Litigation Sub-Trust. | 31 |
| C. | | The Reorganized Debtor | 32 |
| | 1. | Corporate Existence | 32 |
| | 2. | Cancellation of Equity Interests and Release | 32 |
| | 3. | Issuance of New Partnership Interests | 32 |
| | 4. | Management of the Reorganized Debtor | 33 |
| | 5. | Vesting of Assets in the Reorganized Debtor | 33 |
| | 6. | Purpose of the Reorganized Debtor | 33 |
| | 7. | Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets | 33 |
| D. | | Company Action | 34 |
| E. | | Release of Liens, Claims and Equity Interests | 35 |
| F. | | Cancellation of Notes, Certificates and Instruments | 35 |

- ii -

**Appx. 00113**

**Page**

G.    Cancellation of Existing Instruments Governing Security Interests ................... 35

H.    Control Provisions ........................................................................................... 35

I.    Treatment of Vacant Classes ........................................................................... 36

J.    Plan Documents ............................................................................................... 36

K.    Highland Capital Management, L.P. Retirement Plan and Trust ...................... 36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES .................................................................................................... 37

A.    Assumption, Assignment, or Rejection of Executory Contracts and
      Unexpired Leases .......................................................................................... 37

B.    Claims Based on Rejection of Executory Contracts or Unexpired
      Leases ............................................................................................................ 38

C.    Cure of Defaults for Assumed or Assigned Executory Contracts and
      Unexpired Leases .......................................................................................... 38

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 39

A.    Dates of Distributions ..................................................................................... 39

B.    Distribution Agent ........................................................................................... 39

C.    Cash Distributions ........................................................................................... 40

D.    Disputed Claims Reserve ................................................................................ 40

E.    Distributions from the Disputed Claims Reserve ............................................ 40

F.    Rounding of Payments .................................................................................... 40

G.    *De Minimis* Distribution ................................................................................. 41

H.    Distributions on Account of Allowed Claims .................................................. 41

I.    General Distribution Procedures ..................................................................... 41

J.    Address for Delivery of Distributions ............................................................. 41

K.    Undeliverable Distributions and Unclaimed Property ..................................... 41

L.    Withholding Taxes .......................................................................................... 42

**Appx. 00114**

**Page**

M. Setoffs ................................................................................................42

N. Surrender of Cancelled Instruments or Securities ...............................42

O. Lost, Stolen, Mutilated or Destroyed Securities ................................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
 UNLIQUIDATED AND DISPUTED CLAIMS............................................43

A. Filing of Proofs of Claim ...................................................................43

B. Disputed Claims..................................................................................43

C. Procedures Regarding Disputed Claims or Disputed Equity Interests ..............43

D. Allowance of Claims and Equity Interests.........................................44

 1. Allowance of Claims...............................................................44

 2. Estimation ...............................................................................44

 3. Disallowance of Claims ..........................................................44

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN .................................................45

A. Conditions Precedent to the Effective Date .......................................45

B. Waiver of Conditions..........................................................................46

C. Dissolution of the Committee .............................................................46

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS .................47

A. General.................................................................................................47

B. Discharge of Claims............................................................................47

C. Exculpation .........................................................................................47

D. Releases by the Debtor........................................................................48

E. Preservation of Rights of Action........................................................49

 1. Maintenance of Causes of Action ...........................................49

 2. Preservation of All Causes of Action Not Expressly Settled or
  Released ..................................................................................49

**Appx. 00115**

<b>Page</b>

F.    Injunction ..............................................................................................50

G.    Duration of Injunctions and Stays.......................................................51

H.    Continuance of January 9 Order ..........................................................51

ARTICLE X. BINDING NATURE OF PLAN ........................................................51

ARTICLE XI. RETENTION OF JURISDICTION ...................................................52

ARTICLE XII. MISCELLANEOUS PROVISIONS ................................................54

A.    Payment of Statutory Fees and Filing of Reports ...............................54

B.    Modification of Plan .............................................................................54

C.    Revocation of Plan................................................................................54

D.    Obligations Not Changed......................................................................55

E.    Entire Agreement ..................................................................................55

F.    Closing of Chapter 11 Case ..................................................................55

G.    Successors and Assigns.........................................................................55

H.    Reservation of Rights............................................................................55

I.     Further Assurances ...............................................................................56

J.     Severability ...........................................................................................56

K.    Service of Documents ...........................................................................56

L.    Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code................................................................57

M.    Governing Law ......................................................................................58

N.    Tax Reporting and Compliance ............................................................58

O.    Exhibits and Schedules .........................................................................58

P.    Controlling Document ...........................................................................58

- v -

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor.  Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan.  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents.  All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein.  Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.      Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set

forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.      "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.      "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4.      "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.      "*Affiliate*" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.  For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.      "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy

2

Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7.      "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8.      "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9.      "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11.      "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

15.    "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16.    "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17.    "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.    "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19.    "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20.    "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21.    "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22.    "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23.    "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

4

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement. The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold Claimant Trust Interests

5

unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

Appx. 00122

42.     "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein. Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43.     "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44.     "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved. As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45.     "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46.     "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47.     "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48.     "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49.     "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50.     "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be: (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or Reorganized

Appx. 00123

Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

51. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52. "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55. "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56. "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

57. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

58. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

59. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

61. "*Estate Claims*" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [D.I. 354].

8

62. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

68. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

Appx. 00125

69.    "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

70.    "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

71.    "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

72.    "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

73.    "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

74.    "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75.    "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

76.    "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

77.    "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

78.    "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

79.    "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80.    "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

10

81.    "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement.  As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

82.    "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

83.    "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

84.    "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

85.    "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

86.    "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

87.    "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

88.    "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

89.    "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

90.    "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

91.    "Petition *Date*" means October 16, 2019.

92.    "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices,

11

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93.    "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94.    "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95.    "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96.    "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98.    "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100.    "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

101.    "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

102.    "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

103.    "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

104.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105.    "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

106.    "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

107.    "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

108.    "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder

13

of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

109. "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

110. "*Related Entity*" means, without duplication, (a) Dondero, (b) Mark Okada ("Okada"), (c) Grant Scott ("Scott"), (d) Hunter Covitz ("Covitz"), (e) any entity or person that was an insider of the Debtor on or before the Petition Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any entity or person that was a non-statutory insider, (f) any entity that, after the Effective Date, is an insider or Affiliate of one or more of Dondero, Okada, Scott, Covitz, or any of their respective insiders or Affiliates, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries, and (i) Affiliates of the Debtor and any other Entities listed on the Related Entity List.

111. "*Related Entity List*" means that list of Entities filed with the Plan Supplement.

112. "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

113. "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

114. "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

115. "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust. For the avoidance of doubt, "Reorganized Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

116. "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

117.    "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

118.    "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

119.    "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

120.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

121.    "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

122.    "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

123.    "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

124.    "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

125.    "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

126.    "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127.    "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

128.    "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129.    "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to an order entered by the Bankruptcy Court (including any other court having jurisdiction over the Chapter 11 Case) after notice and a hearing.

Appx. 00131

130.    "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131.    "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132.    "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133.    "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136.    "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137.    "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.    Administrative Expense Claims**

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on

or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

## B.    Professional Fee Claims

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329,330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

## C.    Priority Tax Claims

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount of a total value as of the Effective Date of the Plan equal to the amount of such Allowed

17

Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) if paid over time, payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF
## CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.**     **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

**B.**     **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

C.      **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

D.      **Impaired/Voting Classes**

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

E.      **Unimpaired/Non-Voting Classes**

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

F.      **Impaired/Non-Voting Classes**

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

G.      **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.      **Classification and Treatment of Claims and Equity Interests**

   1.    *Class 1 – Jefferies Secured Claim*

        •    *Classification*:  Class 1 consists of the Jefferies Secured Claim.

        •    *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until

19

**Appx. 00135**

full and final payment of such Allowed Class 1 Claim is made as provided herein.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

2.    *Class 2 – Frontier Secured Claim*

- *Classification*:  Class 2 consists of the Frontier Secured Claim.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

3.    *Class 3 – Other Secured Claims*

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

20

4.    *Class 4 – Priority Non-Tax Claims*

- *Classification*: Class 4 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*: Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.    *Class 5 – Retained Employee Claims*

- *Classification*: Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

- *Impairment and Voting*: Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6.    *Class 6 – PTO Claims*

- *Classification*: Class 6 consists of the PTO Claims.

- *Allowance and Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- *Impairment and Voting*: Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6

Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7.    *Class 7 – Convenience Claims*

- *Classification*:  Class 7 consists of the Convenience Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8.    *Class 8 – General Unsecured Claims*

- *Classification*:  Class 8 consists of the General Unsecured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

    Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

22

**Appx. 00138**

9.      *Class 9 – Subordinated Claims*

- *Classification*: Class 9 consists of the Subordinated Claims.

  *Treatment*: On the Effective Date, Holders of Subordinated Claims shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10.     *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*: Class 10 consists of the Class B/C Limited Partnership Interests.

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.     *Class 11 – Class A Limited Partnership Interests*

- *Classification*: Class 11 consists of the Class A Limited Partnership Interests.

**Appx. 00139**

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

**I.**   **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**J.**   **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

**A.**   **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited

Appx. 00140

partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities.  The Debtor believes that the continued provision of the services under such contracts will not be cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement.  Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.**     **The Claimant Trust**[2]

  1.     *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries.  Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

**Appx. 00141**

such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.    *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

26

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3. *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4. *Purpose of the Litigation Sub-Trust.*

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5. *Claimant Trust Agreement and Litigation Sub-Trust Agreement.*

The Claimant Trust Agreement generally will provide for, among other things:

27

(i)    the payment of the Claimant Trust Expenses;

(ii)    the payment of other reasonable expenses of the Claimant Trust;

(iii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)    the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)    the orderly monetization of the Claimant Trust Assets;

(vi)    litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)    the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)    the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)    the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. The Litigation Sub-Trust Agreement generally will provide for, among other things:

(i)    the payment of other reasonable expenses of the Litigation Sub-Trust;

28

**Appx. 00144**

(ii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

(iii)    the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

6.    *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as appropriate. The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.    *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

8.    *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer

of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.    *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10.    *Claimant Trust Assets.*

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

**Appx. 00146**

11.    _Claimant Trust Expenses._

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12.    _Trust Distributions to Claimant Trust Beneficiaries._

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, *provided* that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13.    _Cash Investments._

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.    _Dissolution of the Claimant Trust and Litigation Sub-Trust._

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Claimant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and

no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

**C.**     **The Reorganized Debtor**

1.     *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

2.     *Cancellation of Equity Interests and Release*

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

3.     *Issuance of New Partnership Interests*

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor. Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

The Reorganized Limited Partnership Agreement does not provide for, and specifically disclaims, the indemnification obligations under the Limited Partnership Agreement, including any such indemnification obligations that accrued or arose or could have been brought prior to the Effective Date. Any indemnification Claims under the Limited Partnership Agreement that accrued, arose, or could have been filed prior to the Effective Date will be resolved through the Claims resolution process provided that a Claim is properly filed in accordance with the Bankruptcy Code, the Plan, or the Bar Date Order. Each of the Debtor, the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust reserve all rights with respect to any such indemnification Claims.

**Appx. 00148**

4.    *Management of the Reorganized Debtor*

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC. The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee. The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor. Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes. Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

5.    *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.    *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.    *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement,

the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor.  Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

D.    **Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person.  On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

34

E.    **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

F.    **Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

G.    **Cancellation of Existing Instruments Governing Security Interests**

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

H.    **Control Provisions**

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

Appx. 00151

**I.      Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.      Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement.  To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

**K.      Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement Plan And Trust ("Pension Plan") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1301-1461.  The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "IRC"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC.  In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code.  The Debtor reserves the right to contest any such liability or responsibility.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to this Plan on or prior to the Confirmation Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a contract or lease to be assumed in the Plan or the Plan Supplement, on the Confirmation Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Confirmation Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments.  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.  To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4),

**Appx. 00153**

as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

**B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order.  Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Confirmation Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed and barred.  If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.      Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Confirmation Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

Appx. 00154

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Dates of Distributions**

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein. If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan. Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

**B.** **Distribution Agent**

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter. The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

Appx. 00155

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

## C.      **Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

## D.      **Disputed Claims Reserve**

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

## E.      **Distributions from the Disputed Claims Reserve**

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount.  To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date.  For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests.  If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

## F.      **Rounding of Payments**

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

**Appx. 00156**

G.    *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

H.    **Distributions on Account of Allowed Claims**

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

I.    **General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

J.    **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

K.    **Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Appx. 00157

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

**L.      Withholding Taxes**

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

**M.      Setoffs**

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

**N.      Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

Appx. 00158

**O.** **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest. Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

**A.** **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

**B.** **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

**C.** **Procedures Regarding Disputed Claims or Disputed Equity Interests**

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

43

D.    **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

1.    *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

2.    *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

3.    *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE,**

44

**ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.**

### ARTICLE VIII.
### EFFECTIVENESS OF THIS PLAN

**A.      Conditions Precedent to the Effective Date**

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have become a Final Order and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust

45

Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

## B.      Waiver of Conditions

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

## C.      Dissolution of the Committee

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on

46

the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

# ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

**A.**   <u>**General**</u>

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

**B.**   <u>**Discharge of Claims**</u>

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

**C.**   <u>**Exculpation**</u>

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided*, *however*, the foregoing

will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

**D.**     **Releases by the Debtor**

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "Reduced Employee Claim"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "Independent Members"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation

48

Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.    Preservation of Rights of Action**

1.    *Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

2.    *Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including,

without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

**F.    Injunction**

    **Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

    **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

    **The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.**

    **Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court**

Appx. 00166

**(i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.**

### G.     Duration of Injunctions and Stays

**ARTICLE II. Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Court will enter an equivalent order under Section 105.**

### H.     Continuance of January 9 Order

Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date.


### ARTICLE X.
### BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

Appx. 00167

### ARTICLE XI.
### RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided*, *however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or expense reimbursement that may be requested by a purchaser thereof; *provided*, *however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

52

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

Appx. 00169

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

**A.    Payment of Statutory Fees and Filing of Reports**

All outstanding Statutory Fees shall be paid on the Effective Date. All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed. The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**B.    Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**C.    Revocation of Plan**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

Appx. 00170

D.    **Obligations Not Changed**

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

E.    **Entire Agreement**

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

F.    **Closing of Chapter 11 Case**

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

G.    **Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

H.    **Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the

55

Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

I.    **Further Assurances**

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.  On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

J.    **Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

K.    **Service of Documents**

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

**If to the Claimant Trust:**

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700

Dallas, Texas 75201
Attention: James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Attn: Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn: Jeffrey N. Pomerantz, Esq.
        Ira D. Kharasch, Esq.
        Gregory V. Demo, Esq.

## L.  Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to

57

evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

**M.** **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

**N.** **Tax Reporting and Compliance**

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**O.** **Exhibits and Schedules**

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

**P.** **Controlling Document**

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however,* that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

Appx. 00174

Dated:  January 22, 2021

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:

James P. Seery, Jr.
Chief Executive Officer and Chief Restructuring
Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

**<u>Exhibit B</u>**

**Schedule of CLO Management Agreements and Related Contracts to Be Assumed**

**Schedule of CLO Management Agreements and Related Contracts to Be Assumed**

1.  Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

2.  Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

3.  Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

4.  Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

5.  Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

6.  Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

7.  Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

8.  Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

9.  Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

10.  Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

11.  Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

12.  Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

13.  Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

14.  Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

15.  Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

16.  Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

17.  Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

18.  Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

19.   Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

20.   Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

21.   Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

22.   Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

23.   Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

24.   Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

25.   Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

26.   Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

27.   Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

28.   Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

29.   Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

30.   Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

31.   Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

32.   Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

33.   Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

34.   Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

35.   Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

DOCS_NY:42355.1 36027/002

**Appx. 00178**

36.  Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

37.  Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

38.  Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

39.  Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

40.  Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

41.  Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

42.  Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

43.  Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

44.  Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

45.  Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

46.  A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

47.  A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

48.  Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

49.  Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

50.  Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

51.  Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

52.  Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

53.  Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

54.  Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

55.  Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

56.  Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

57.  Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

58.  Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

59.  Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

60.  Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

**Appx. 00180**

# EXHIBIT 4

Docket #1808 Date Filed: 01/22/2021

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

## FIFTH AMENDED PLAN OF REORGANIZATION OF HIGHLAND
## CAPITAL MANAGEMENT, L.P. (AS MODIFIED)

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com:

Counsel for the Debtor and Debtor-in-Possession

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210122000000000013

Appx. 00182

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ............................................... 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................... 1

    B.    Defined Terms ...................................................................................... 2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS ................ 16

    A.    Administrative Expense Claims .................................................................. 16

    B.    Professional Fee Claims ............................................................................ 17

    C.    Priority Tax Claims ................................................................................... 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS ............................................................... 18

    A.    Summary ................................................................................................. 18

    B.    Summary of Classification and Treatment of Classified Claims and Equity Interests ........................................................................................ 19

    C.    Elimination of Vacant Classes ................................................................... 19

    D.    Impaired/Voting Classes ........................................................................... 19

    E.    Unimpaired/Non-Voting Classes ............................................................... 19

    F.    Impaired/Non-Voting Classes ................................................................... 19

    G.    Cramdown ............................................................................................... 19

    H.    Classification and Treatment of Claims and Equity Interests ........................ 20

    I.    Special Provision Governing Unimpaired Claims ........................................ 24

    J.    Subordinated Claims ................................................................................ 25

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN ..................................... 25

    A.    Summary ................................................................................................. 25

    B.    The Claimant Trust ................................................................................... 26

    1.    *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.* ..................................................................................................... 26

    2.    *Claimant Trust Oversight Committee* ....................................................... 27

Appx. 00183

<u>Page</u>

3. *Purpose of the Claimant Trust.* ...........................................................27

4. *Purpose of the Litigation Sub-Trust.* ...................................................28

5. *Claimant Trust Agreement and Litigation Sub-Trust Agreement.* ......28

6. *Compensation and Duties of Trustees.* .................................................29

7. *Cooperation of Debtor and Reorganized Debtor.* ................................30

8. *United States Federal Income Tax Treatment of the Claimant Trust.* ...............30

9. *Tax Reporting.* .......................................................................................30

10. *Claimant Trust Assets.* ..........................................................................31

11. *Claimant Trust Expenses.* ......................................................................31

12. *Trust Distributions to Claimant Trust Beneficiaries.* ...........................31

13. *Cash Investments.* ..................................................................................31

14. *Dissolution of the Claimant Trust and Litigation Sub-Trust.* .............32

C. The Reorganized Debtor ........................................................................32

1. *Corporate Existence* ...............................................................................32

2. *Cancellation of Equity Interests and Release* .......................................33

3. *Issuance of New Partnership Interests* ..................................................33

4. *Management of the Reorganized Debtor* ...............................................33

5. *Vesting of Assets in the Reorganized Debtor* ........................................34

6. *Purpose of the Reorganized Debtor* .......................................................34

7. *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets* ...............................................................34

D. Company Action .....................................................................................34

E. Release of Liens, Claims and Equity Interests.......................................35

F. Cancellation of Notes, Certificates and Instruments..............................36

G. Cancellation of Existing Instruments Governing Security Interests..................36

**Appx. 00184**

**Page**

H.    Control Provisions ...................................................................................... 36

I.    Treatment of Vacant Classes ...................................................................... 36

J.    Plan Documents .......................................................................................... 36

K.    Highland Capital Management, L.P. Retirement Plan and Trust ................ 37

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ........................................................................................ 37

A.    Assumption, Assignment, or Rejection of Executory Contracts and
        Unexpired Leases ................................................................................. 37

B.    Claims Based on Rejection of Executory Contracts or Unexpired
        Leases .................................................................................................. 38

C.    Cure of Defaults for Assumed or Assigned Executory Contracts and
        Unexpired Leases ................................................................................. 39

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 39

A.    Dates of Distributions ................................................................................ 39

B.    Distribution Agent ...................................................................................... 40

C.    Cash Distributions ...................................................................................... 41

D.    Disputed Claims Reserve ........................................................................... 41

E.    Distributions from the Disputed Claims Reserve ....................................... 41

F.    Rounding of Payments ................................................................................ 41

G.    *De Minimis* Distribution .............................................................................. 41

H.    Distributions on Account of Allowed Claims ............................................ 42

I.    General Distribution Procedures ................................................................ 42

J.    Address for Delivery of Distributions ........................................................ 42

K.    Undeliverable Distributions and Unclaimed Property ............................... 42

L.    Withholding Taxes ...................................................................................... 43

M.    Setoffs ........................................................................................................ 43

**Page**

N.    Surrender of Cancelled Instruments or Securities ..............................43

O.    Lost, Stolen, Mutilated or Destroyed Securities ...............................43

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
            UNLIQUIDATED AND DISPUTED CLAIMS...........................44

A.    Filing of Proofs of Claim ...............................................44

B.    Disputed Claims...........................................................44

C.    Procedures Regarding Disputed Claims or Disputed Equity Interests ..............44

D.    Allowance of Claims and Equity Interests...............................44

1.    *Allowance of Claims* .....................................................45

2.    *Estimation* ..............................................................45

3.    *Disallowance of Claims* .................................................45

ARTICLE VIII. EFFECTIVENESS OF THIS PLAN ...............................46

A.    Conditions Precedent to the Effective Date .......................................46

B.    Waiver of Conditions.......................................................47

C.    Effect of Non-Occurrence of Conditions to Effectiveness**Error! Bookmark not defined.**

D.    Dissolution of the Committee ...........................................47

ARTICLE IX. EXCULPATION, INJUNCTION AND RELATED PROVISIONS ................48

A.    General...................................................................48

B.    Discharge of Claims........................................................48

C.    Exculpation ..............................................................48

D.    Releases by the Debtor.....................................................49

E.    Preservation of Rights of Action............................................50

1.    *Maintenance of Causes of Action* ........................................50

2.    *Preservation of All Causes of Action Not Expressly Settled or Released*...........50

F.    Injunction ...............................................................51

Appx. 00186

**Page**

G. Term of Injunctions or Stays............................................................................52

H. Continuance of January 9 Order .......................................................................52

ARTICLE X. BINDING NATURE OF PLAN ...............................................................52

ARTICLE XI. RETENTION OF JURISDICTION.........................................................53

ARTICLE XII. MISCELLANEOUS PROVISIONS ......................................................55

A. Payment of Statutory Fees and Filing of Reports ............................................55

B. Modification of Plan .........................................................................................55

C. Revocation of Plan ............................................................................................55

D. Obligations Not Changed...................................................................................56

E. Entire Agreement ..............................................................................................56

F. Closing of Chapter 11 Case ..............................................................................56

G. Successors and Assigns .....................................................................................56

H. Reservation of Rights........................................................................................56

I. Further Assurances............................................................................................57

J. Severability .......................................................................................................57

K. Service of Documents .......................................................................................57

L. Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code........................................................................................58

M. Governing Law ..................................................................................................59

N. Tax Reporting and Compliance ........................................................................59

O. Exhibits and Schedules .....................................................................................59

P. Controlling Document .......................................................................................59

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

HIGHLAND CAPITAL MANAGEMENT, L.P., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), proposes the following chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of this Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtor's history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents that may be Filed with the Bankruptcy Court that are referenced in this Plan or the Disclosure Statement as Exhibits and Plan Documents. All such Exhibits and Plan Documents are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the other provisions of this Plan, and in accordance with the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date.

If this Plan cannot be confirmed, for any reason, then subject to the terms set forth herein, this Plan may be revoked.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A. Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Documents" are references to Articles, Sections, Exhibits and Plan Documents hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns;

(h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## B.    **Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Acis*" means collectively Acis Capital Management, L.P. and Acis Capital Management GP, LLP.

2.    "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed pursuant to sections 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, and that have not already been paid by the Debtor during the Chapter 11 Case and a Professional Fee Claim.

3.    "*Administrative Expense Claims Bar Date*" means, with respect to any Administrative Expense Claim (other than a Professional Fee Claim) becoming due on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date that is forty-five days after the Effective Date.

4.    "*Administrative Expense Claims Objection Deadline*" means, with respect to any Administrative Expense Claim, the later of (a) ninety (90) days after the Effective Date and (b) sixty (60) days after the timely Filing of the applicable request for payment of such Administrative Expense Claim; *provided, however,* that the Administrative Expense Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

5.    "*Affiliate*" of any Person means any Entity that, with respect to such Person, either (i) is an "affiliate" as defined in section 101(2) of the Bankruptcy Code, or (ii) is an "affiliate" as defined in Rule 405 of the Securities Act of 1933, or (iii) directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. For the purposes of this definition, the term "control" (including, without limitation, the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction in any respect of the management or policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

6.    "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) any Claim that is evidenced by a Proof of Claim that has been timely Filed by the

2

Bar Date, or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; (c) a Claim Allowed pursuant to the Plan or an order of the Bankruptcy Court that is not stayed pending appeal; or (d) a Claim that is not Disputed (including for which a Proof of Claim has been timely filed in a liquidated and noncontingent amount that has not been objected to by the Claims Objection Deadline or as to which any such objection has been overruled by Final Order); *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed as set forth above.

7.   "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

8.   "*Assets*" means all of the rights, titles, and interest of the Debtor, Reorganized Debtor, or Claimant Trust, in and to property of whatever type or nature, including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property, the Debtor's books and records, and the Causes of Action.

9.   "*Available Cash*" means any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee.

10.   "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510, 544, 545, and 547-553 of the Bankruptcy Code or under similar state or federal statutes and common law, including fraudulent transfer laws

11.  "*Ballot*" means the form(s) distributed to holders of Impaired Claims or Equity Interests entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

12.  "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Case.

13.  "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or any other court having jurisdiction over the Chapter 11 Case.

14.  "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, in each case as amended from time to time and as applicable to the Chapter 11 Case.

**Appx. 00190**

15. "*Bar Date*" means the applicable deadlines set by the Bankruptcy Court for the filing of Proofs of Claim against the Debtor as set forth in the Bar Date Order, which deadlines may be or have been extended for certain Claimants by order of the Bankruptcy Court.

16. "*Bar Date Order*" means the *Order (I) Establishing Bar Dates for Filing Proofs of Claim and (II) Approving the Form and Manner of Notice Thereof* [D.I. 488].

17. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19. "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes, without limitation,: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims; (f) the Avoidance Actions, and (g) the Estate Claims.  The Causes of Action include, without limitation, the Causes of Action belonging to the Debtor's Estate listed on the schedule of Causes of Action to be filed with the Plan Supplement.

20. "*CEO/CRO*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer.

21. "*Chapter 11 Case*" means the Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Delaware Bankruptcy Court and transferred to the Bankruptcy Court on December 4, 2019, and styled *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj-11.

22. "*Claim*" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

23. "*Claims Objection Deadline*" means the date that is 180 days after the Confirmation Date; *provided, however,* the Claims Objection Deadline may be extended by the Bankruptcy Court upon a motion by the Claimant Trustee.

**Appx. 00191**

24. "*Claimant Trust*" means the trust established for the benefit of the Claimant Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Claimant Trust Agreement.

25. "*Claimant Trust Agreement*" means the agreement Filed in the Plan Supplement establishing and delineating the terms and conditions of the Claimant Trust.

26. "*Claimant Trust Assets*" means (i) other than the Reorganized Debtor Assets (which are expressly excluded from this definition), all other Assets of the Estate, including, but not limited to, all Causes of Action, Available Cash, any proceeds realized or received from such Assets, all rights of setoff, recoupment, and other defenses with respect, relating to, or arising from such Assets, (ii) any Assets transferred by the Reorganized Debtor to the Claimant Trust on or after the Effective Date, (iii) the limited partnership interests in the Reorganized Debtor, and (iv) the ownership interests in New GP LLC. For the avoidance of doubt, any Causes of Action that, for any reason, are not capable of being transferred to the Claimant Trust shall constitute Reorganized Debtor Assets.

27. "*Claimant Trust Beneficiaries*" means the Holders of Allowed General Unsecured Claims, Holders of Allowed Subordinated Claims, including, upon Allowance, Disputed General Unsecured Claims and Disputed Subordinated Claims that become Allowed following the Effective Date, and, only upon certification by the Claimant Trustee that the Holders of such Claims have been paid indefeasibly in full plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, post-petition interest from the Petition Date at the Federal Judgment Rate in accordance with the terms and conditions set forth in the Claimant Trust Agreement and all Disputed Claims in Class 8 and Class 9 have been resolved, Holders of Allowed Class B/C Limited Partnership Interests, and Holders of Allowed Class A Limited Partnership Interests.

28. "*Claimant Trustee*" means James P. Seery, Jr., the Debtor's chief executive officer and chief restructuring officer, or such other Person identified in the Plan Supplement who will act as the trustee of the Claimant Trust in accordance with the Plan, the Confirmation Order, and Claimant Trust Agreement or any replacement trustee pursuant to (and in accordance with) the Claimant Trust Agreement. The Claimant Trustee shall be responsible for, among other things, monetizing the Estate's investment assets, resolving Claims (other than those Claims assigned to the Litigation Sub-Trust for resolution), and, as the sole officer of New GP LLC, winding down the Reorganized Debtor's business operations.

29. "*Claimant Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustees on account of administration of the Claimant Trust, including any reasonable administrative fees and expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, reasonable escrow expenses, and other expenses.

30. "*Claimant Trust Interests*" means the non-transferable interests in the Claimant Trust that are issued to the Claimant Trust Beneficiaries pursuant to this Plan; *provided*, *however*, Holders of Class A Limited Partnership Interests, Class B Limited Partnership Interests, and Class C Limited Partnership Interests will not be deemed to hold

5

Claimant Trust Interests unless and until the Contingent Claimant Trust Interests distributed to such Holders vest in accordance with the terms of this Plan and the Claimant Trust Agreement.

31. "*Claimant Trust Oversight Committee*" means the committee of five Persons established pursuant to ARTICLE IV of this Plan to oversee the Claimant Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Claimant Trust Agreement.

32. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in ARTICLE III hereof pursuant to section 1122(a) of the Bankruptcy Code.

33. "*Class A Limited Partnership Interest*" means the Class A Limited Partnership Interests as defined in the Limited Partnership Agreement held by The Dugaboy Investment Trust, Mark and Pamela Okada Family Trust – Exempt Trust 2, Mark and Pamela Okada – Exempt Descendants' Trust, and Mark Kiyoshi Okada, and the General Partner Interest.

34. "*Class B Limited Partnership Interest*" means the Class B Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

35. "*Class B/C Limited Partnership Interests*" means, collectively, the Class B Limited Partnership and Class C Limited Partnership Interests.

36. "*Class C Limited Partnership Interest*" means the Class C Limited Partnership Interests as defined in the Limited Partnership Agreement held by Hunter Mountain Investment Trust.

37. "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1) on October 29, 2019 [D.I. 65], consisting of (i) the Redeemer Committee of Highland Crusader Fund, (ii) Meta-e Discovery, (iii) UBS, and (iv) Acis.

38. "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

40. "*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Convenience Claim*" means any prepetition, liquidated, and unsecured Claim against the Debtor that as of the Confirmation Date is less than or equal to $1,000,000 or any General Unsecured Claim that makes the Convenience Class Election. For the avoidance of doubt, the Reduced Employee Claims will be Convenience Claims.

Appx. 00193

42. "*Convenience Claim Pool*" means the $13,150,000 in Cash that shall be available upon the Effective Date for distribution to Holders of Convenience Claims under the Plan as set forth herein.   Any Cash remaining in the Convenience Claim Pool after all distributions on account of Convenience Claims have been made will be transferred to the Claimant Trust and administered as a Claimant Trust Asset.

43. "*Convenience Class Election*" means the option provided to each Holder of a General Unsecured Claim that is a liquidated Claim as of the Confirmation Date on their Ballot to elect to reduce their claim to $1,000,000 and receive the treatment provided to Convenience Claims.

44. "*Contingent Claimant Trust Interests*" means the contingent Claimant Trust Interests to be distributed to Holders of Class A Limited Partnership Interests, Holders of Class B Limited Partnership Interests, and Holders of Class C Limited Partnership Interests in accordance with this Plan, the rights of which shall not vest, and consequently convert to Claimant Trust Interests, unless and until the Claimant Trustee Files a certification that all holders of Allowed General Unsecured Claims have been paid indefeasibly in full, plus, to the extent all Allowed unsecured Claims, excluding Subordinated Claims, have been paid in full, all accrued and unpaid post-petition interest from the Petition Date at the Federal Judgment Rate and all Disputed Claims in Class 8 and Class 9 have been resolved.   As set forth in the Claimant Trust Agreement, the Contingent Claimant Trust Interests distributed to the Holders of Class A Limited Partnership Interests will be subordinated to the Contingent Claimant Trust Interests distributed to the Holders of Class B/C Limited Partnership Interests.

45. "*Debtor*" means Highland Capital Management, L.P. in its capacity as debtor and debtor in possession in the Chapter 11 Case.

46. "*Delaware Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

47. "*Disclosure Statement*" means that certain *Disclosure Statement for Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time, which describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

48. "*Disputed*" means with respect to any Claim or Equity Interest, any Claim or Equity Interest that is not yet Allowed.

49. "*Disputed Claims Reserve*" means the appropriate reserve(s) or account(s) to be established on the Initial Distribution Date and maintained by the Claimant Trustee for distributions on account of Disputed Claims that may subsequently become an Allowed Claim.

50. "*Disputed Claims Reserve Amount*" means, for purposes of determining the Disputed Claims Reserve, the Cash that would have otherwise been distributed to a Holder of a Disputed Claim at the time any distributions of Cash are made to the Holders of Allowed Claims. The amount of the Disputed Claim upon which the Disputed Claims Reserve is calculated shall be:  (a) the amount set forth on either the Schedules or the filed Proof of Claim, as applicable; (b) the amount agreed to by the Holder of the Disputed Claim and the Claimant Trustee or

7

Reorganized Debtor, as applicable; (c) the amount ordered by the Bankruptcy Court if it enters an order disallowing, in whole or in part, a Disputed Claim; or (d) as otherwise ordered by the Bankruptcy Court, including an order estimating the Disputed Claim.

51. "*Distribution Agent*" means the Claimant Trustee, or any party designated by the Claimant Trustee to serve as distribution agent under this Plan.

52. "*Distribution Date*" means the date or dates determined by the Reorganized Debtor or the Claimant Trustee, as applicable, on or after the Initial Distribution Date upon which the Distribution Agent shall make distributions to holders of Allowed Claims and Interests entitled to receive distributions under the Plan.

53. "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Effective Date or such later date determined by the Bankruptcy Court.

54. "*Effective Date*" means the Business Day that this Plan becomes effective as provided in ARTICLE VIII hereof.

55. "*Employees*" means the employees of the Debtor set forth in the Plan Supplement.

56. "*Enjoined Parties*" means (i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

57. "*Entity*" means any "entity" as defined in section 101(15) of the Bankruptcy Code and also includes any Person or any other entity.

58. "*Equity Interest*" means any Equity Security in the Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares, of stock or limited company interests, the Class A Limited Partnership Interests, the Class B Limited Partnership Interests, and the Class C Limited Partnership Interests.

59. "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

60. "*Estate*" means the bankruptcy estate of the Debtor created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

61. "*Estate Claims*" has the meaning given to it in Exhibit A to the *Notice of Final Term Sheet* [D.I. 354].

Appx. 00195

62. "*Exculpated Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

63. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

64. "*Exhibit*" means an exhibit annexed hereto or to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

65. "*Federal Judgment Rate*" means the post-judgment interest rate set forth in 28 U.S.C. § 1961 as of the Effective Date.

66. "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67. "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

68. "*Frontier Secured Claim*" means the loan from Frontier State Bank to the Debtor in the principal amount of $7,879,688.00 made pursuant to that certain First Amended and Restated Loan Agreement, dated March 29, 2018.

Appx. 00196

69. "*General Partner Interest*" means the Class A Limited Partnership Interest held by Strand, as the Debtor's general partner.

70. "*General Unsecured Claim*" means any prepetition Claim against the Debtor that is not Secured and is not a/an: (a) Administrative Expense Claim; (b) Professional Fee Claim; (c) Priority Tax Claim; (d) Priority Non-Tax Claim; or (e) Convenience Claim.

71. "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

72. "*GUC Election*" means the option provided to each Holder of a Convenience Claim on their Ballot to elect to receive the treatment provided to General Unsecured Claims.

73. "*Holder*" means an Entity holding a Claim against, or Equity Interest in, the Debtor.

74. "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

75. "*Independent Directors*" means John S. Dubel, James P. Seery, Jr., and Russell Nelms, the independent directors of Strand appointed on January 9, 2020, and any additional or replacement directors of Strand appointed after January 9, 2020, but prior to the Effective Date.

76. "*Initial Distribution Date*" means, subject to the "Treatment" sections in ARTICLE III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

77. "*Insurance Policies*" means all insurance policies maintained by the Debtor as of the Petition Date.

78. "*Jefferies Secured Claim*" means any Claim in favor of Jefferies, LLC, arising under that certain Prime Brokerage Customer Agreement, dated May 24, 2013, between the Debtor and Jefferies, LLC, that is secured by the assets, if any, maintained in the prime brokerage account created by such Prime Brokerage Customer Agreement.

79. "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

80. "*Limited Partnership Agreement*" means that certain Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., dated December 24, 2015, as amended.

10

**Appx. 00197**

81. "*Litigation Sub-Trust*" means the sub-trust established within the Claimant Trust or as a wholly –owned subsidiary of the Claimant Trust on the Effective Date in each case in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement and Claimant Trust Agreement. As set forth in the Litigation Sub-Trust Agreement, the Litigation Sub-Trust shall hold the Claimant Trust Assets that are Estate Claims.

82. "*Litigation Sub-Trust Agreement*" means the agreement filed in the Plan Supplement establishing and delineating the terms and conditions of the Litigation Sub-Trust.

83. "*Litigation Trustee*" means the trustee appointed by the Committee and reasonably acceptable to the Debtor who shall be responsible for investigating, litigating, and settling the Estate Claims for the benefit of the Claimant Trust in accordance with the terms and conditions set forth in the Litigation Sub-Trust Agreement.

84. "*Managed Funds*" means Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan.

85. "*New Frontier Note*" means that promissory note to be provided to the Allowed Holders of Class 2 Claims under this Plan and any other documents or security agreements securing the obligations thereunder.

86. "*New GP LLC*" means a limited liability company incorporated in the State of Delaware pursuant to the New GP LLC Documents to serve as the general partner of the Reorganized Debtor on the Effective Date.

87. "*New GP LLC Documents*" means the charter, operating agreement, and other formational documents of New GP LLC.

88. "*Ordinary Course Professionals Order*" means that certain *Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtor to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course* [D.I. 176].

89. "*Other Unsecured Claim*" means any Secured Claim other than the Jefferies Secured Claim and the Frontier Secured Claim.

90. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, individual, corporation, company, general or limited partnership, limited liability company, unincorporated organization firm, trust, estate, business trust, association, joint stock company, joint venture, government, governmental agency, Governmental Unit or any subdivision thereof, the United States Trustee, or any other entity, whether acting in an individual, fiduciary or other capacity.

91. "*Petition Date*" means October 16, 2019.

92. "*Plan*" means this *Debtor's Fifth Amended Chapter 11 Plan of Reorganization*, including the Exhibits and the Plan Documents and all supplements, appendices,

Appx. 00198

and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

93. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Allowed Equity Interests under this Plan.

94. "*Plan Documents*" means any of the documents, other than this Plan, but including, without limitation, the documents to be filed with the Plan Supplement, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, and as may be modified consistent with the terms hereof with the consent of the Committee.

95. "*Plan Supplement*" means the ancillary documents necessary for the implementation and effectuation of the Plan, including, without limitation, (i) the form of Claimant Trust Agreement, (ii) the forms of New GP LLC Documents, (iii) the form of Reorganized Limited Partnership Agreement, (iv) the Sub-Servicer Agreement (if applicable), (v) the identity of the initial members of the Claimant Trust Oversight Committee, (vi) the form of Litigation Sub-Trust Agreement; (vii) the schedule of retained Causes of Action; (viii) the New Frontier Note, (ix) the schedule of Employees; (x) the form of Senior Employee Stipulation,; and (xi) the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to this Plan, which, in each case, will be in form and substance reasonably acceptable to the Debtor and the Committee.

96. "*Priority Non-Tax Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including any Claims for paid time-off entitled to priority under section 507(a)(4) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

97. "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class.

98. "*Professional*" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 327, 328, 330, 331, 363, 503(b), 503(b)(4) and 1103 of the Bankruptcy Code.

99. "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code, with respect to a particular Professional, for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

100. "*Professional Fee Claims Bar Date*" means with respect to Professional Fee Claims, the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

**Appx. 00199**

101. "*Professional Fee Claims Objection Deadline*" means, with respect to any Professional Fee Claim, thirty (30) days after the timely Filing of the applicable request for payment of such Professional Fee Claim.

102. "*Professional Fee Reserve*" means the reserve established and funded by the Claimant Trustee pursuant this Plan to provide sufficient funds to satisfy in full unpaid Allowed Professional Fee Claims.

103. "*Proof of Claim*" means a written proof of Claim or Equity Interest Filed against the Debtor in the Chapter 11 Case.

104. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105. "*Protected Parties*" means, collectively, (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; *and* (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

106. "*PTO Claims*" means any Claim for paid time off in favor of any Debtor employee in excess of the amount that would qualify as a Priority Non-Tax Claim under section 507(a)(4) of the Bankruptcy Code.

107. "*Reduced Employee Claims*" has the meaning set forth in ARTICLE IX.D.

108. "*Reinstated*" means, with respect to any Claim or Equity Interest, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim or Equity Interest in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim or Equity Interest to demand or receive accelerated payment of such Claim or Equity Interest after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim or Equity Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Equity Interest for any

Appx. 00200

damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Equity Interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim or Equity Interest (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

109.    "*Rejection Claim*" means any Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to the Confirmation Order.

110.    "*Related Entity*" means, without duplication, (a) Dondero, (b) Mark Okada ("Okada"), (c) Grant Scott ("Scott"), (d) Hunter Covitz ("Covitz"), (e) any entity or person that was an insider of the Debtor on or before the Petition Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any entity or person that was a non-statutory insider, (f) any entity that, after the Effective Date, is an insider or Affiliate of one or more of Dondero, Okada, Scott, Covitz, or any of their respective insiders or Affiliates, including, without limitation, The Dugaboy Investment Trust, (g) the Hunter Mountain Investment Trust and any of its direct or indirect parents, (h) the Charitable Donor Advised Fund, L.P., and any of its direct or indirect subsidiaries, and (i) Affiliates of the Debtor and any other Entities listed on the Related Entity List.

111.    "*Related Entity List*" means that list of Entities filed with the Plan Supplement.

112.    "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

113.    "*Released Parties*" means, collectively, (i) the Independent Directors; (ii) Strand (solely from the date of the appointment of the Independent Directors through the Effective Date); (iii) the CEO/CRO; (iv) the Committee; (v) the members of the Committee (in their official capacities), (vi) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case; and (vii) the Employees.

114.    "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to this Plan on and after the Effective Date.

115.    "*Reorganized Debtor Assets*" means any limited and general partnership interests held by the Debtor, the management of the Managed Funds and those Causes of Action (including, without limitation, claims for breach of fiduciary duty), that, for any reason, are not capable of being transferred to the Claimant Trust.  For the avoidance of doubt, "Reorganized

**Appx. 00201**

Debtor Assets" includes any partnership interests or shares of Managed Funds held by the Debtor but does not include the underlying portfolio assets held by the Managed Funds.

116. "*Reorganized Limited Partnership Agreement*" means that certain Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P., by and among the Claimant Trust, as limited partner, and New GP LLC, as general partner, Filed with the Plan Supplement.

117. "*Restructuring*" means the restructuring of the Debtor, the principal terms of which are set forth in this Plan and the Disclosure Statement.

118. "*Retained Employee Claim*" means any Claim filed by a current employee of the Debtor who will be employed by the Reorganized Debtor upon the Effective Date.

119. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtor with the Bankruptcy Court [D.I. 247].

120. "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor's Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the interest of the Debtor's Estate in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

121. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

122. "*Senior Employees*" means the senior employees of the Debtor Filed in the Plan Supplement.

123. "*Senior Employee Stipulation*" means the agreements filed in the Plan Supplement between each Senior Employee and the Debtor.

124. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

125. "*Statutory Fees*" means fees payable pursuant to 28 U.S.C. § 1930.

126. "*Strand*" means Strand Advisors, Inc., the Debtor's general partner.

127. "*Sub-Servicer*" means a third-party selected by the Claimant Trustee to service or sub-service the Reorganized Debtor Assets.

Appx. 00202

128. "*Sub-Servicer Agreement*" means the agreement that may be entered into providing for the servicing of the Reorganized Debtor Assets by the Sub-Servicer.

129. "*Subordinated Claim*" means any Claim that is subordinated to the Convenience Claims and General Unsecured Claims pursuant to 11 U.S.C. § 510 or order entered by the Bankruptcy Court.

130. "*Subordinated Claimant Trust Interests*" means the Claimant Trust Interests to be distributed to Holders of Allowed Subordinated Claims under the Plan, which such interests shall be subordinated in right and priority to the Claimant Trust Interests distributed to Holders of Allowed General Unsecured Claims as provided in the Claimant Trust Agreement.

131. "*Trust Distribution*" means the transfer of Cash or other property by the Claimant Trustee to the Claimant Trust Beneficiaries.

132. "*Trustees*" means, collectively, the Claimant Trustee and Litigation Trustee.

133. "*UBS*" means, collectively, UBS Securities LLC and UBS AG London Branch.

134. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

135. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

136. "*Voting Deadline*" means the date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the under the Order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125(a) of the Bankruptcy Code and authorizing the Debtor to solicit acceptances of the Plan.

137. "*Voting Record Date*" means November 23, 2020.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**A.** <u>**Administrative Expense Claims**</u>

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Available Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtor or the Reorganized

Appx. 00203

Debtor, as applicable, and such Holder; *provided, however,* that Administrative Expense Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

If an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtor in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtor or the Reorganized Debtor, as applicable, and the party asserting such Administrative Expense Claim by the Administrative Expense Claims Objection Deadline.

### B.    <u>Professional Fee Claims</u>

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 327, 328, 329,330, 331, 503(b) or 1103 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered on or prior to the Effective Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtor or Reorganized Debtor, as applicable, and such other Entities who are designated as requiring such notice by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim.

Objections to any Professional Fee Claim must be Filed and served on the Debtor or Reorganized Debtor, as applicable, and the party asserting the Professional Fee Claim by the Professional Fee Claim Objection Deadline.  Each Holder of an Allowed Professional Fee Claim will be paid by the Debtor or the Claimant Trust, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

On the Effective Date, the Claimant Trustee shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Claimant Trust and shall be maintained by the Claimant Trustee in accordance with the Plan and Claimant Trust Agreement.  The Claimant Trust shall fund the Professional Fee Reserve on the Effective Date in an estimated amount determined by the Debtor in good faith prior to the Confirmation Date and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date.  Following the payment of all Allowed Professional Fee Claims, any excess funds in the Professional Fee

**Appx. 00204**

Reserve shall be released to the Claimant Trust to be used for other purposes consistent with the Plan and the Claimant Trust Agreement.

**C.** **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtor:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, (b) payment of such Allowed Priority Tax Claim in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; or (c) such other less favorable treatment as agreed to in writing by the Debtor and such Holder. Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtor may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.** **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtor or any other Entity) prior to the Effective Date.

Appx. 00205

### B.    Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Jefferies Secured Claim | Unimpaired | Deemed to Accept |
| 2 | Frontier Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 4 | Priority Non-Tax Claim | Unimpaired | Deemed to Accept |
| 5 | Retained Employee Claim | Unimpaired | Deemed to Accept |
| 6 | PTO Claims | Unimpaired | Deemed to Accept |
| 7 | Convenience Claims | Impaired | Entitled to Vote |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote |
| 9 | Subordinated Claims | Impaired | Entitled to Vote |
| 10 | Class B/C Limited Partnership Interests | Impaired | Entitled to Vote |
| 11 | Class A Limited Partnership Interests | Impaired | Entitled to Vote |

### C.    Elimination of Vacant Classes

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### D.    Impaired/Voting Classes

Claims and Equity Interests in Class 2 and Class 7 through Class 11 are Impaired by the Plan, and only the Holders of Claims or Equity Interests in those Classes are entitled to vote to accept or reject the Plan.

### E.    Unimpaired/Non-Voting Classes

Claims in Class 1 and Class 3 through Class 6 are Unimpaired by the Plan, and such Holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

### F.    Impaired/Non-Voting Classes

There are no Classes under the Plan that will not receive or retain any property and no Classes are deemed to reject the Plan.

### G.    Cramdown

If any Class of Claims or Equity Interests is deemed to reject this Plan or does not vote to accept this Plan, the Debtor may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the

**Appx. 00206**

Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**H.**       **Classification and Treatment of Claims and Equity Interests**

   *1.*       *Class 1 – Jefferies Secured Claim*

   - *Classification*: Class 1 consists of the Jefferies Secured Claim.

   - *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtor:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtor and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.  Each Holder of an Allowed Class 1 Claim will retain the Liens securing its Allowed Class 1 Claim as of the Effective Date until full and final payment of such Allowed Class 1 Claim is made as provided herein.

   - *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

   *2.*       *Class 2 – Frontier Secured Claim*

   - *Classification*:  Class 2 consists of the Frontier Secured Claim.

   - *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim:  (A) Cash in an amount equal to all accrued but unpaid interest on the Frontier Claim through and including the Effective Date and (B) the New Frontier Note.  The Holder of an Allowed Class 2 Claim will retain the Liens securing its Allowed Class 2 Claim as of the Effective Date until full and final payment of such Allowed Class 2 Claim is made as provided herein.

   - *Impairment and Voting*:  Class 2 is Impaired, and the Holders of Class 2 Claims are entitled to vote to accept or reject this Plan.

**Appx. 00207**

3.     *Class 3 – Other Secured Claims*

- *Classification*:  Class 3 consists of the Other Secured Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 3 Claim is Allowed on the Effective Date or (ii) the date on which such Class 3 Claim becomes an Allowed Class 3 Claim, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 3 Claim, at the option of the Debtor, or following the Effective Date, the Reorganized Debtor or Claimant Trustee, as applicable, (i) Cash equal to such Allowed Other Secured Claim, (ii) the collateral securing its Allowed Other Secured Claim, plus postpetition interest to the extent required under Bankruptcy Code Section 506(b), or (iii) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

4.     *Class 4 – Priority Non-Tax Claims*

- *Classification*:  Class 4 consists of the Priority Non-Tax Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 4 Claim is Allowed on the Effective Date or (ii) the date on which such Class 4 Claim becomes an Allowed Class 4 Claim, each Holder of an Allowed Class 4 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 4 Claim Cash equal to the amount of such Allowed Class 4 Claim.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

5.     *Class 5 – Retained Employee Claims*

- *Classification*:  Class 5 consists of the Retained Employee Claims.

- *Allowance and Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Allowed Class 5 Claim will be Reinstated.

**Appx. 00208**

- • *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

6. *Class 6 – PTO Claims*

- • *Classification*:  Class 6 consists of the PTO Claims.

- • *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 6 Claim is Allowed on the Effective Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Claim 6 Claim Cash equal to the amount of such Allowed Class 6 Claim.

- • *Impairment and Voting*:  Class 6 is Unimpaired, and the Holders of Class 6 Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 6 Claims are not entitled to vote to accept or reject this Plan and will not be solicited.

7. *Class 7 – Convenience Claims*

- • *Classification*:  Class 7 consists of the Convenience Claims.

- • *Allowance and Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 7 Claim is Allowed on the Effective Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, each Holder of an Allowed Class 7 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, its Allowed Class 7 Claim (1) the treatment provided to Allowed Holders of Class 8 General Unsecured Claims if the Holder of such Class 7 Claim makes the GUC Election or (2) an amount in Cash equal to the lesser of (a) 85% of the Allowed amount of such Holder's Class 7 Claim or (b) such Holder's Pro Rata share of the Convenience Claims Cash Pool.

- • *Impairment and Voting*:  Class 7 is Impaired, and the Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

8. *Class 8 – General Unsecured Claims*

- • *Classification*:  Class 8 consists of the General Unsecured Claims.

22

**Appx. 00209**

- *Treatment*: On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Claimant Trust Interests, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing, or (iii) the treatment provided to Allowed Holders of Class 7 Convenience Claims if the Holder of such Class 8 General Unsecured Claim is eligible and makes a valid Convenience Class Election.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 8 is Impaired, and the Holders of Class 8 Claims are entitled to vote to accept or reject this Plan.

9.  *Class 9 – Subordinated Claims*

- *Classification*: Class 9 consists of the Subordinated Claims.

  *Treatment*: On the Effective Date, Holders of Subordinated Claims shall receive either (i) their Pro Rata share of the Subordinated Claimant Trust Interests or, (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee may agree upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Subordinated Claim, except with respect to any Subordinated Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*: Class 9 is Impaired, and the Holders of Class 9 Claims are entitled to vote to accept or reject this Plan.

10. *Class 10 – Class B/C Limited Partnership Interests*

- *Classification*: Class 10 consists of the Class B/C Limited Partnership Interests.

**Appx. 00210**

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 10 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class B/C Limited Partnership Interest Claim, except with respect to any Class B/C Limited Partnership Interest Claim Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 10 is Impaired, and the Holders of Class 10 Claims are entitled to vote to accept or reject this Plan.

11.   *Class 11 – Class A Limited Partnership Interests*

- *Classification*:  Class 11 consists of the Class A Limited Partnership Interests.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 11 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive (i) its Pro Rata share of the Contingent Claimant Trust Interests or (ii) such other less favorable treatment as to which such Holder and the Claimant Trustee shall have agreed upon in writing.

  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of this Plan, the Debtor, the Reorganized Debtor, and the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Class A Limited Partnership Interest, except with respect to any Class A Limited Partnership Interest Allowed by Final Order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 11 is Impaired, and the Holders of Class 11 Claims are entitled to vote to accept or reject this Plan.

**I.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtor's rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**Appx. 00211**

J.      **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice and hearing, the Debtor the Reorganized Debtor, and the Claimant Trustee reserve the right to seek entry of an order by the Bankruptcy Court to re-classify or to subordinate any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THIS PLAN

A.      **Summary**

As discussed in the Disclosure Statement, the Plan will be implemented through (i) the Claimant Trust, (ii) the Litigation Sub-Trust, and (iii) the Reorganized Debtor.

On the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be cancelled, and new Class A Limited Partnership Interests in the Reorganized Debtor will be issued to the Claimant Trust and New GP LLC – a newly-chartered limited liability company wholly-owned by the Claimant Trust.  The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor, and on and following the Effective Date, the Claimant Trust will be the Reorganized Debtor's limited partner and New GP LLC will be its general partner.  The Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement, which will amend and restate, in all respects, the Debtor's current Limited Partnership Agreement.  Following the Effective Date, the Reorganized Debtor will be managed consistent with the terms of the Reorganized Limited Partnership Agreement by New GP LLC.  The sole managing member of New GP LLC will be the Claimant Trust, and the Claimant Trustee will be the sole officer of New GP LLC on the Effective Date.

Following the Effective Date, the Claimant Trust will administer the Claimant Trust Assets pursuant to this Plan and the Claimant Trust Agreement, and the Litigation Trustee will pursue, if applicable, the Estate Claims pursuant to the terms of the Litigation Sub-Trust Agreement and the Plan.  The Reorganized Debtor will administer the Reorganized Debtor Assets and, if needed, with the utilization of a Sub-Servicer, which administration will include, among other things, managing the wind down of the Managed Funds.

Although the Reorganized Debtor will manage the wind down of the Managed Funds, it is currently anticipated that neither the Reorganized Debtor nor the Claimant Trust will assume or assume and assign the contracts between the Debtor and certain Related Entities pursuant to which the Debtor provides shared services and sub-advisory services to those Related Entities. The Debtor believes that the continued provision of the services under such contracts will not be

**Appx. 00212**

cost effective.

The Reorganized Debtor will distribute all proceeds from the wind down to the Claimant Trust, as its limited partner, and New GP LLC, as its general partner, in each case in accordance with the Reorganized Limited Partnership Agreement. Such proceeds, along with the proceeds of the Claimant Trust Assets, will ultimately be distributed to the Claimant Trust Beneficiaries as set forth in this Plan and the Claimant Trust Agreement.

**B.** **The Claimant Trust**[2]

      *1.*           *Creation and Governance of the Claimant Trust and Litigation Sub-Trust.*

On or prior to the Effective Date, the Debtor and the Claimant Trustee shall execute the Claimant Trust Agreement and shall take all steps necessary to establish the Claimant Trust and the Litigation Sub-Trust in accordance with the Plan in each case for the benefit of the Claimant Trust Beneficiaries. Additionally, on or prior to the Effective Date, the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Claimant Trust all of its rights, title, and interest in and to all of the Claimant Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Claimant Trust Assets shall automatically vest in the Claimant Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Claimant Trust Interests and the Claimant Trust Expenses, as provided for in the Claimant Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage from any stamp, transfer, reporting, sales, use, or other similar tax.

The Claimant Trustee shall be the exclusive trustee of the Claimant Trust Assets, excluding the Estate Claims and the Litigation Trustee shall be the exclusive trustee with respect to the Estate Claims in each case for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Claimant Trust Assets. The Claimant Trustee shall also be responsible for resolving all Claims and Equity Interests in Class 8 through Class 11, under the supervision of the Claimant Trust Oversight Committee.

On the Effective Date, the Claimant Trustee and Litigation Trustee shall execute the Litigation Sub-Trust Agreement and shall take all steps necessary to establish the Litigation Sub-Trust. Upon the creation of the Litigation Sub-Trust, the Claimant Trust shall irrevocably transfer and assign to the Litigation Sub-Trust the Estate Claims. The Claimant Trust shall be governed by the Claimant Trust Agreement and administered by the Claimant Trustee. The powers, rights, and responsibilities of the Claimant Trustee shall be specified in the Claimant Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting to the Claimant Trust Oversight Committee as may be set forth in the Claimant Trust Agreement. The Claimant Trust shall hold and distribute the Claimant Trust Assets (including the proceeds from the Estate Claims, if any) in accordance with the provisions of the Plan and the Claimant Trust Agreement; *provided* that the Claimant Trust Oversight Committee may direct the Claimant Trust to reserve

---

[2] In the event of a conflict between the terms of this summary and the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, the terms of the Claimant Trust Agreement or the Litigation Sub-Trust Agreement, as applicable, shall control.

**Appx. 00213**

Cash from distributions as necessary to fund the Claimant Trust and Litigation Sub-Trust. Other rights and duties of the Claimant Trustee and the Claimant Trust Beneficiaries shall be as set forth in the Claimant Trust Agreement. After the Effective Date, neither the Debtor nor the Reorganized Debtor shall have any interest in the Claimant Trust Assets.

The Litigation Sub-Trust shall be governed by the Litigation Sub-Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Sub-Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this ARTICLE IV, subject to any required reporting as may be set forth in the Litigation Sub-Trust Agreement. The Litigation Sub-Trust shall investigate, prosecute, settle, or otherwise resolve the Estate Claims in accordance with the provisions of the Plan and the Litigation Sub-Trust Agreement and shall distribute the proceeds therefrom to the Claimant Trust for distribution. Other rights and duties of the Litigation Trustee shall be as set forth in the Litigation Sub-Trust Agreement.

2.          *Claimant Trust Oversight Committee*

The Claimant Trust, the Claimant Trustee, the management and monetization of the Claimant Trust Assets, and the management of the Reorganized Debtor (through the Claimant Trust's role as managing member of New GP LLC) and the Litigation Sub-Trust will be overseen by the Claimant Trust Oversight Committee, subject to the terms of the Claimant Trust Agreement and the Litigation Sub-Trust Agreement, as applicable.

The Claimant Trust Oversight Committee will initially consist of five members. Four of the five members will be representatives of the members of the Committee: (i) the Redeemer Committee of Highland Crusader Fund, (ii) UBS, (iii) Acis, and (iv) Meta-e Discovery. The fifth member will be an independent, natural Person chosen by the Committee and reasonably acceptable to the Debtor. The members of the Claimant Trust Oversight Committee may be replaced as set forth in the Claimant Trust Agreement. The identity of the members of the Claimant Trust Oversight Committee will be disclosed in the Plan Supplement.

As set forth in the Claimant Trust Agreement, in no event will any member of the Claimant Trust Oversight Committee with a Claim against the Estate be entitled to vote, opine, or otherwise be involved in any matters related to such member's Claim.

The independent member(s) of the Claimant Trust Oversight Committee may be entitled to compensation for their services as set forth in the Claimant Trust Agreement. Any member of the Claimant Trust Oversight Committee may be removed, and successor chosen, in the manner set forth in the Claimant Trust Agreement.

3.          *Purpose of the Claimant Trust.*

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and

27

monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.

In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

The purpose of the Reorganized Debtor is discussed at greater length in ARTICLE IV.C.

4. _Purpose of the Litigation Sub-Trust._

The Litigation Sub-Trust shall be established for the purpose of investigating, prosecuting, settling, or otherwise resolving the Estate Claims. Any proceeds therefrom shall be distributed by the Litigation Sub-Trust to the Claimant Trust for distribution to the Claimant Trust Beneficiaries pursuant to the terms of the Claimant Trust Agreement.

5. _Claimant Trust Agreement and Litigation Sub-Trust Agreement._

The Claimant Trust Agreement generally will provide for, among other things:

(i)     the payment of the Claimant Trust Expenses;

(ii)    the payment of other reasonable expenses of the Claimant Trust;

(iii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation;

(iv)    the investment of Cash by the Claimant Trustee within certain limitations, including those specified in the Plan;

(v)     the orderly monetization of the Claimant Trust Assets;

(vi)    litigation of any Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(vii)   the resolution of Claims and Equity Interests in Class 8 through Class 11, subject to reporting and oversight by the Claimant Trust Oversight Committee;

(viii)  the administration of the Disputed Claims Reserve and distributions to be made therefrom; and

(ix)    the management of the Reorganized Debtor, including the utilization of a Sub-Servicer, with the Claimant Trust serving as the managing member of New GP LLC.

28

Appx. 00215

Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.

In furtherance of, and consistent with the purpose of, the Claimant Trust and the Plan, the Trustees, for the benefit of the Claimant Trust, shall, subject to reporting and oversight by the Claimant Trust Oversight Committee as set forth in the Claimant Trust Agreement: (i) hold the Claimant Trust Assets for the benefit of the Claimant Trust Beneficiaries, (ii) make Distributions to the Claimant Trust Beneficiaries as provided herein and in the Claimant Trust Agreement, and (iii) have the sole power and authority to prosecute and resolve any Causes of Action and objections to Claims and Equity Interests (other than those assigned to the Litigation Sub-Trust), without approval of the Bankruptcy Court. Except as otherwise provided in the Claimant Trust Agreement, the Claimant Trustee shall be responsible for all decisions and duties with respect to the Claimant Trust and the Claimant Trust Assets; *provided, however,* that the prosecution and resolution of any Estate Claims included in the Claimant Trust Assets shall be the responsibility of the Litigation Trustee. The Litigation Sub-Trust Agreement generally will provide for, among other things:

      (i)     the payment of other reasonable expenses of the Litigation Sub-Trust;

      (ii)    the retention of employees, counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; and

      (iii)   the investigation and prosecution of Estate Claims, which may include the prosecution, settlement, abandonment, or dismissal of any such Estate Claims, subject to reporting and oversight as set forth in the Litigation Sub-Trust Agreement.

The Trustees, on behalf of the Claimant Trust and Litigation Sub-Trust, as applicable, may each employ, without further order of the Bankruptcy Court, employees and other professionals (including those previously retained by the Debtor and the Committee) to assist in carrying out the Trustees' duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Claimant Trust Assets in accordance with the Plan and the Claimant Trust Agreement.

The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Claimant Trust and payable solely from the Claimant Trust Assets.

      6.        *Compensation and Duties of Trustees.*

The salient terms of each Trustee's employment, including such Trustee's duties and compensation shall be set forth in the Claimant Trust Agreement and the Litigation Sub-Trust

Appx. 00216

Agreement, as appropriate. The Trustees shall each be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

7.     *Cooperation of Debtor and Reorganized Debtor.*

To effectively investigate, prosecute, compromise and/or settle the Claims and/or Causes of Action that constitute Claimant Trust Assets (including Estate Claims), the Claimant Trustee, Litigation Trustee, and each of their professionals may require reasonable access to the Debtor's and Reorganized Debtor's documents, information, and work product relating to the Claimant Trust Assets. Accordingly, the Debtor and the Reorganized Debtor, as applicable, shall reasonably cooperate with the Claimant Trustee and Litigation Trustee, as applicable, in their prosecution of Causes of Action and in providing the Claimant Trustee and Litigation Trustee with copies of documents and information in the Debtor's possession, custody, or control on the Effective Date that either Trustee indicates relates to the Estate Claims or other Causes of Action.

The Debtor and Reorganized Debtor shall preserve all records, documents or work product (including all electronic records, documents, or work product) related to the Claims and Causes of Action, including Estate Claims, until the earlier of (a) the dissolution of the Reorganized Debtor or (b) termination of the Claimant Trust and Litigation Sub-Trust.

8.     *United States Federal Income Tax Treatment of the Claimant Trust.*

Unless the IRS requires otherwise, for all United States federal income tax purposes, the parties shall treat the transfer of the Claimant Trust Assets to the Claimant Trust as: (a) a transfer of the Claimant Trust Assets (other than the amounts set aside in the Disputed Claims Reserve, if the Claimant Trustee makes the election described in Section 7 below) directly to the applicable Claimant Trust Beneficiaries followed by (b) the transfer by the such Claimant Trust Beneficiaries to the Claimant Trust of such Claimant Trust Assets in exchange for the Claimant Trust Interests. Accordingly, the applicable Claimant Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Claimant Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

9.     *Tax Reporting.*

(a) The Claimant Trustee shall file tax returns for the Claimant Trust treating the Claimant Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). The Claimant Trustee may file an election pursuant to Treasury Regulation 1.468B-9(c) to treat the Disputed Claims Reserve as a disputed ownership fund, in which case the Claimant Trustee will file federal income tax returns and pay taxes for the Disputed Claims Reserve as a separate taxable entity.

(b) The Claimant Trustee shall be responsible for payment, out of the Claimant Trust Assets, of any taxes imposed on the Claimant Trust or its assets.

30

(c) The Claimant Trustee shall determine the fair market value of the Claimant Trust Assets as of the Effective Date and notify the applicable Claimant Trust Beneficiaries of such valuation, and such valuation shall be used consistently for all federal income tax purposes.

(d) The Claimant Trustee shall distribute such tax information to the applicable Claimant Trust Beneficiaries as the Claimant Trustee determines is required by applicable law.

10. _Claimant Trust Assets._

The Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Causes of Action included in the Claimant Trust Assets (except for the Estate Claims) without any further order of the Bankruptcy Court, and the Claimant Trustee shall have the exclusive right, on behalf of the Claimant Trust, to sell, liquidate, or otherwise monetize all Claimant Trust Assets, except as otherwise provided in this Plan or in the Claimant Trust Agreement, without any further order of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Litigation Trustee shall have the exclusive right to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all Estate Claims included in the Claimant Trust Assets without any further order of the Bankruptcy Court.

From and after the Effective Date, the Trustees, in accordance with section 1123(b)(3) and (4) of the Bankruptcy Code, and on behalf of the Claimant Trust, shall each serve as a representative of the Estate with respect to any and all Claimant Trust Assets, including the Causes of Action and Estate Claims, as appropriate, and shall retain and possess the right to (a) commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action in any court or other tribunal and (b) sell, liquidate, or otherwise monetize all Claimant Trust Assets.

11. _Claimant Trust Expenses._

From and after the Effective Date, the Claimant Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Claimant Trust, the Litigation Sub-Trust, and any professionals retained by such parties and entities from the Claimant Trust Assets, except as otherwise provided in the Claimant Trust Agreement.

12. _Trust Distributions to Claimant Trust Beneficiaries._

The Claimant Trustee, in its discretion, may make Trust Distributions to the Claimant Trust Beneficiaries at any time and/or use the Claimant Trust Assets or proceeds thereof, _provided_ that such Trust Distributions or use is otherwise permitted under the terms of the Plan, the Claimant Trust Agreement, and applicable law.

13. _Cash Investments._

With the consent of the Claimant Trust Oversight Committee, the Claimant Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in a manner consistent with the terms of the Claimant Trust Agreement; _provided, however,_ that such investments are

Appx. 00218

investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.     *Dissolution of the Claimant Trust and Litigation Sub-Trust.*

The Trustees and the Claimant Trust and Litigation Sub-Trust shall be discharged or dissolved, as the case may be, at such time as:  (a) the Litigation Trustee determines that the pursuit of Estate Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such Estate Claims, (b) the Claimant Trustee determines that the pursuit of Causes of Action (other than Estate Claims) is not likely to yield sufficient additional proceeds to justify further pursuit of such Causes of Action, (c) the Clamant Trustee determines that the pursuit of sales of other Claimant Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such sales of Claimant Trust Assets, (d) all objections to Disputed Claims and Equity Interests are fully resolved, (e) the Reorganized Debtor is dissolved, and (f) all Distributions required to be made by the Claimant Trustee to the Claimant Trust Beneficiaries under the Plan have been made, but in no event shall the Claimant Trust be dissolved later than three years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such third anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Claimant Trust Assets; *provided, however,* that each extension must be approved, upon a finding that the extension is necessary to facilitate or complete the recovery on, and liquidation of the Claimant Trust Assets, by the Bankruptcy Court within 6 months of the beginning of the extended term and no extension, together with any prior extensions, shall exceed three years without a favorable letter ruling from the Internal Revenue Service or an opinion of counsel that any further extension would not adversely affect the status of the Claimant Trust as a liquidating trust for federal income tax purposes.

Upon dissolution of the Claimant Trust, and pursuant to the Claimant Trust Agreement, any remaining Claimant Trust Assets that exceed the amounts required to be paid under the Plan will be transferred (in the sole discretion of the Claimant Trustee) in Cash or in-kind to the Holders of the Claimant Trust Interests as provided in the Claimant Trust Agreement.

**C.**     **The Reorganized Debtor**

1.     *Corporate Existence*

The Debtor will continue to exist after the Effective Date, with all of the powers of partnerships pursuant to the law of the State of Delaware and as set forth in the Reorganized Limited Partnership Agreement.

**Appx. 00219**

2.        _Cancellation of Equity Interests and Release_

On the Effective Date, (i) all prepetition Equity Interests, including the Class A Limited Partnership Interests and the Class B/C Limited Partnership Interests, in the Debtor shall be canceled, and (ii) all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, the Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

3.        _Issuance of New Partnership Interests_

On the Effective Date, the Debtor or the Reorganized Debtor, as applicable, will issue new Class A Limited Partnership Interests to (i) the Claimant Trust, as limited partner, and (ii) New GP LLC, as general partner, and will admit (a) the Claimant Trust as the limited partner of the Reorganized Debtor, and (b) New GP LLC as the general partner of the Reorganized Debtor. The Claimant Trust, as limited partner, will ratify New GP LLC's appointment as general partner of the Reorganized Debtor.  Also, on the Effective Date, the Claimant Trust, as limited partner, and New GP LLC, as general partner, will execute the Reorganized Limited Partnership Agreement and receive partnership interests in the Reorganized Debtor consistent with the terms of the Reorganized Limited Partnership Agreement.

The Reorganized Limited Partnership Agreement does not provide for, and specifically disclaims, the indemnification obligations under the Limited Partnership Agreement, including any such indemnification obligations that accrued or arose or could have been brought prior to the Effective Date.  Any indemnification Claims under the Limited Partnership Agreement that accrued, arose, or could have been filed prior to the Effective Date will be resolved through the Claims resolution process provided that a Claim is properly filed in accordance with the Bankruptcy Code, the Plan, or the Bar Date Order.  Each of the Debtor, the Reorganized Debtor, the Claimant Trust, and the Litigation Sub-Trust reserve all rights with respect to any such indemnification Claims.

4.        _Management of the Reorganized Debtor_

Subject to and consistent with the terms of the Reorganized Limited Partnership Agreement, the Reorganized Debtor shall be managed by its general partner, New GP LLC.  The initial officers and employees of the Reorganized Debtor shall be selected by the Claimant Trustee.  The Reorganized Debtor may, in its discretion, also utilize a Sub-Servicer in addition to or in lieu of the retention of officers and employees.

As set forth in the Reorganized Limited Partnership Agreement, New GP LLC will receive a fee for managing the Reorganized Debtor.  Although New GP LLC will be a limited liability company, it will elect to be treated as a C-Corporation for tax purposes.  Therefore, New GP LLC (and any taxable income attributable to it) will be subject to corporate income taxation on a standalone basis, which may reduce the return to Claimants.

**Appx. 00220**

5.        *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in this Plan or the Confirmation Order, on or after the Effective Date, all Reorganized Debtor Assets will vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

The Reorganized Debtor shall be the exclusive trustee of the Reorganized Debtor Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code with respect to the Reorganized Debtor Assets.

6.        *Purpose of the Reorganized Debtor*

Except as may be otherwise provided in this Plan or the Confirmation Order, the Reorganized Debtor will continue to manage the Reorganized Debtor Assets (which shall include, for the avoidance of doubt, serving as the investment manager of the Managed Funds) and may use, acquire or dispose of the Reorganized Debtor Assets and compromise or settle any Claims with respect to the Reorganized Debtor Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Reorganized Debtor shall oversee the resolution of Claims in Class 1 through Class 7.

Without limiting the foregoing, the Reorganized Debtor will pay the charges that it incurs after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

7.        *Distribution of Proceeds from the Reorganized Debtor Assets; Transfer of Reorganized Debtor Assets*

Any proceeds received by the Reorganized Debtor will be distributed to the Claimant Trust, as limited partner, and New GP LLC, as general partner, in the manner set forth in the Reorganized Limited Partnership Agreement. As set forth in the Reorganized Limited Partnership Agreement, the Reorganized Debtor may, from time to time distribute Reorganized Debtor Assets to the Claimant Trust either in Cash or in-kind, including to institute the wind-down and dissolution of the Reorganized Debtor. Any assets distributed to the Claimant Trust will be (i) deemed transferred in all respects as forth in ARTICLE IV.B.1, (ii) deemed Claimant Trust Assets, and (iii) administered as Claimant Trust Assets.

**D.        Company Action**

Each of the Debtor, the Reorganized Debtor, and the Trustees, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, the Claimant Trust Agreement, the Reorganized Limited Partnership Agreement, or the New GP LLC Documents, as applicable, in

34

**Appx. 00221**

the name of and on behalf of the Debtor, the Reorganized Debtor, or the Trustees, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers, or directors of the Debtor or the Reorganized Debtor, as applicable, or by any other Person.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the stockholders, partners, directors, managers, or members of the Debtor, any Related Entity, or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, partners, directors, managers or members of such Persons, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in this Plan involving the legal or corporate structure of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, and any legal or corporate action required by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, in connection with this Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, partners, directors, managers, or members of the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, or by any other Person. On the Effective Date, the appropriate officers of the Debtor and the Reorganized Debtor, as applicable, as well as the Trustees, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in this Plan in the name of and on behalf of the Debtor and the Reorganized Debtor, as well as the Trustees, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The appropriate officer of the Debtor, the Reorganized Debtor, as well as the Trustees, will be authorized to certify or attest to any of the foregoing actions.

## E.    Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable. For the avoidance of

35

doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

**F.      Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect.  The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  For the avoidance of doubt, this section is in addition to, and shall not be read to limit in any respects, ARTICLE IV.C.2.

**G.      Cancellation of Existing Instruments Governing Security Interests**

Upon payment or other satisfaction of an Allowed Class 1 or Allowed Class 2 Claim, or promptly thereafter, the Holder of such Allowed Class 1 or Allowed Class 2 Claim shall deliver to the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, any collateral or other property of the Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Class 1 or Allowed Class 2 Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or *lis pendens*, or similar interests or documents.

**H.      Control Provisions**

To the extent that there is any inconsistency between this Plan as it relates to the Claimant Trust, the Claimant Trust Agreement, the Reorganized Debtor, or the Reorganized Limited Partnership Agreement, this Plan shall control.

**I.      Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under ARTICLE III.C of this Plan shall receive no Plan Distributions.

**J.      Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any documents filed with the Plan Supplement, and any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in ARTICLE I hereof) and fully enforceable as if stated in full herein.

36

The Debtor and the Committee are currently working to finalize the forms of certain of the Plan Documents to be filed with the Plan Supplement. To the extent that the Debtor and the Committee cannot agree as to the form and content of such Plan Documents, they intend to submit the issue to non-binding mediation pursuant to the *Order Directing Mediation* entered on August 3, 2020 [D.I. 912].

**K.** **Highland Capital Management, L.P. Retirement Plan and Trust**

The Highland Capital Management, L.P. Retirement Plan And Trust ("<u>Pension Plan</u>") is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("<u>ERISA</u>"). 29 U.S.C. §§ 1301-1461. The Debtor is the contributing sponsor and, as such, the PBGC asserts that the Debtor is liable along with any members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) with respect to the Pension Plan.

Upon the Effective Date, the Reorganized Debtor shall be deemed to have assumed the Pension Plan and shall comply with all applicable statutory provisions of ERISA and the Internal Revenue Code (the "<u>IRC</u>"), including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Pension Plan in accordance with its terms and the provisions of ERISA and the IRC. In the event that the Pension Plan terminates after the Plan of Reorganization Effective Date, the PBGC asserts that the Reorganized Debtor and each of its controlled group members will be responsible for the liabilities imposed by Title IV of ERISA.

Notwithstanding any provision of the Plan, the Confirmation Order, or the Bankruptcy Code (including section 1141 thereof) to the contrary, neither the Plan, the Confirmation Order, or the Bankruptcy Code shall be construed as discharging, releasing, exculpating or relieving the Debtor, the Reorganized Debtor, or any person or entity in any capacity, from any liability or responsibility, if any, with respect to the Pension Plan under any law, governmental policy, or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility against any person or entity as a result of any of the provisions of the Plan, the Confirmation Order, or the Bankruptcy Code. The Debtor reserves the right to contest any such liability or responsibility.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.** **Assumption, Assignment, or Rejection of Executory Contracts and Unexpired Leases**

Unless an Executory Contract or Unexpired Lease: (i) was previously assumed or rejected by the Debtor pursuant to this Plan on or prior to the Confirmation Date; (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (iii) is the subject of a motion to assume filed by the Debtor on or before the Confirmation Date; (iv) contains a change of control or similar provision that would be triggered by the Chapter 11 Case (unless such provision has been irrevocably waived); or (v) is specifically designated as a

contract or lease to be assumed in the Plan or the Plan Supplement, on the Confirmation Date, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to section 365 of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is listed in the Plan Supplement.

At any time on or prior to the Confirmation Date, the Debtor may (i) amend the Plan Supplement in order to add or remove a contract or lease from the list of contracts to be assumed or (ii) assign (subject to applicable law) any Executory Contract or Unexpired Lease, as determined by the Debtor in consultation with the Committee, or the Reorganized Debtor, as applicable.

The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, rejections, and assumptions and assignments. Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

If certain, but not all, of a contract counterparty's Executory Contracts and/or Unexpired Leases are rejected pursuant to the Plan, the Confirmation Order shall be a determination that such counterparty's Executory Contracts and/or Unexpired Leases that are being assumed pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and/or Unexpired Leases that are being rejected pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must file a timely objection to the Plan on the grounds that their agreements are integrated and not severable, and any such dispute shall be resolved by the Bankruptcy Court at the Confirmation Hearing (to the extent not resolved by the parties prior to the Confirmation Hearing).

Notwithstanding anything herein to the contrary, the Debtor shall assume or reject that certain real property lease with Crescent TC Investors L.P. ("Landlord") for the Debtor's headquarters located at 200/300 Crescent Ct., Suite #700, Dallas, Texas 75201 (the "Lease") in accordance with the notice to Landlord, procedures and timing required by 11 U.S.C. §365(d)(4), as modified by that certain *Agreed Order Granting Motion to Extend Time to Assume or Reject Unexpired Nonresidential Real Property Lease* [Docket No. 1122].

## B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases

Any Executory Contract or Unexpired Lease not assumed or rejected on or before the Confirmation Date shall be deemed rejected, pursuant to the Confirmation Order. Any Person asserting a Rejection Claim shall File a proof of claim within thirty days of the Effective Date. Any Rejection Claims that are not timely Filed pursuant to this Plan shall be forever disallowed

and barred. If one or more Rejection Claims are timely Filed, the Claimant Trustee may File an objection to any Rejection Claim.

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with ARTICLE III of this Plan.

**C.** **Cure of Defaults for Assumed or Assigned Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed or assigned hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtor upon assumption or assignment thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree. The Debtor may serve a notice on the Committee and parties to Executory Contracts or Unexpired Leases to be assumed or assigned reflecting the Debtor's or Reorganized Debtor's intention to assume or assign the Executory Contract or Unexpired Lease in connection with this Plan and setting forth the proposed cure amount (if any).

If a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtor, the Reorganized Debtor, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assigned or (3) any other matter pertaining to assumption or assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption or assignment.

Assumption or assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable cure amounts pursuant to this ARTICLE V.C shall result in the full release and satisfaction of any cure amounts, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed or assigned Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assignment. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed or assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any cure amounts have been fully paid pursuant to this ARTICLE V.C, shall be deemed disallowed and expunged as of the Confirmation Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.** **Dates of Distributions**

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity

39

Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtor shall receive the full amount of the distributions that this Plan provides for Allowed Claims or Allowed Equity Interests in the applicable Class and in the manner provided herein. If any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in this Plan. Except as otherwise provided in this Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Claims and Equity Interests against the Debtor shall be deemed fixed and adjusted pursuant to this Plan and none of the Debtor, the Reorganized Debtor, or the Claimant Trust will have liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under this Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtor and the Reorganized Debtor.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtor and the Equity Interests in the Debtor shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Debtor, the Reorganized Debtor, the Trustees, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the transfer of any Claims against the Debtor or Equity Interests in the Debtor occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under this Plan to such Persons or the date of such distributions.

## B.     Distribution Agent

Except as provided herein, all distributions under this Plan shall be made by the Claimant Trustee, as Distribution Agent, or by such other Entity designated by the Claimant Trustee, as a Distribution Agent on the Effective Date or thereafter. The Reorganized Debtor will be the Distribution Agent with respect to Claims in Class 1 through Class 7.

The Claimant Trustee, or such other Entity designated by the Claimant Trustee to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the

**Appx. 00227**

Distribution Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

The Distribution Agent shall not have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

**C.      Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign creditors may be made in such funds and by such means as the Distribution Agent determines are necessary or customary in a particular foreign jurisdiction.

**D.      Disputed Claims Reserve**

On or prior to the Initial Distribution Date, the Claimant Trustee shall establish, fund and maintain the Disputed Claims Reserve(s) in the appropriate Disputed Claims Reserve Amounts on account of any Disputed Claims.

**E.      Distributions from the Disputed Claims Reserve**

The Disputed Claims Reserve shall at all times hold Cash in an amount no less than the Disputed Claims Reserve Amount. To the extent a Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, within 30 days of the date on which such Disputed Claim becomes an Allowed Claim pursuant to the terms of this Plan, the Claimant Trustee shall distribute from the Disputed Claims Reserve to the Holder thereof any prior distributions, in Cash, that would have been made to such Allowed Claim if it had been Allowed as of the Effective Date. For the avoidance of doubt, each Holder of a Disputed Claim that subsequently becomes an Allowed Claim will also receive its Pro Rata share of the Claimant Trust Interests. If, upon the resolution of all Disputed Claims any Cash remains in the Disputed Claims Reserve, such Cash shall be transferred to the Claimant Trust and be deemed a Claimant Trust Asset.

**F.      Rounding of Payments**

Whenever this Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under this Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under this Plan.

**G.      *De Minimis* Distribution**

Except as to any Allowed Claim that is Unimpaired under this Plan, none of the Debtor, the Reorganized Debtor, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in ARTICLE VI.J hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall

41

revert to the Claimant Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

**H.      Distributions on Account of Allowed Claims**

Except as otherwise agreed by the Holder of a particular Claim or as provided in this Plan, all distributions shall be made pursuant to the terms of this Plan and the Confirmation Order. Except as otherwise provided in this Plan, distributions to any Holder of an Allowed Claim shall, to the extent applicable, be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**I.      General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under this Plan, unless this Plan specifically provides otherwise. All Cash and other property held by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable, for ultimate distribution under this Plan shall not be subject to any claim by any Person.

**J.      Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under this Plan, shall be made (1) at the addresses set forth in any written notices of address change delivered to the Debtor and the Distribution Agent; (2) at the address set forth on any Proofs of Claim Filed by such Holders (to the extent such Proofs of Claim are Filed in the Chapter 11 Case), (2), or (3) at the addresses in the Debtor's books and records.

If there is any conflict or discrepancy between the addresses set forth in (1) through (3) in the foregoing sentence, then (i) the address in Section (2) shall control; (ii) if (2) does not apply, the address in (1) shall control, and (iii) if (1) does not apply, the address in (3) shall control.

**K.      Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtor or the Claimant Trust as undeliverable, no further distribution shall be made to such Holder, and Distribution Agent shall not have any obligation to make any further distribution to the Holder, unless and until the Distribution Agent is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within six months from the date upon which a distribution is first made to such Entity shall forfeit all rights to any distribution under this Plan and such Cash shall thereafter be deemed an Claimant Trust Asset in all respects and for all purposes. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor's Estate, the Reorganized Debtor, the Claimant Trust, or against any Holder of an Allowed Claim to whom distributions are made by the Distribution Agent.

42

## L.     Withholding Taxes

In connection with this Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to this Plan shall be subject to such withholding and reporting requirements. The Distribution Agent shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under this Plan, the Distribution Agent may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Distribution Agent to comply with applicable tax reporting and withholding laws. If a Holder fails to comply with such a request within one year, such distribution shall be deemed an unclaimed distribution. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

## M.     Setoffs

The Distribution Agent may, to the extent permitted under applicable law, set off against any Allowed Claim and any distributions to be made pursuant to this Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtor, the Reorganized Debtor, or the Distribution Agent may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with this Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or the Claimant Trustee of any such claims, rights and causes of action that the Debtor, the Reorganized Debtor, or Claimant Trustee possesses against such Holder. Any Holder of an Allowed Claim subject to such setoff reserves the right to challenge any such setoff in the Bankruptcy Court or any other court with jurisdiction with respect to such challenge.

## N.     Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to this Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to ARTICLE IV of this Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Distribution Agent unless waived in writing by the Distribution Agent.

## O.     Lost, Stolen, Mutilated or Destroyed Securities

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim or Equity Interest evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by this Plan, deliver to the Distribution Agent: (i) evidence reasonably satisfactory to the Distribution Agent of such loss, theft, mutilation, or destruction; and (ii) such security or indemnity as may be required by the Distribution Agent to hold such party harmless from any

Appx. 00230

damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim or Equity Interest.  Upon compliance with ARTICLE VI.O of this Plan as determined by the Distribution Agent, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under this Plan, be deemed to have surrendered such security or note to the Distribution Agent.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.**     **Filing of Proofs of Claim**

Unless such Claim appeared in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid, each Holder of a Claim was required to file a Proof of Claim on or prior to the Bar Date.

**B.**     **Disputed Claims**

Following the Effective Date, each of the Reorganized Debtor or the Claimant Trustee, as applicable, may File with the Bankruptcy Court an objection to the allowance of any Disputed Claim or Disputed Equity Interest, request the Bankruptcy Court subordinate any Claims to Subordinated Claims, or any other appropriate motion or adversary proceeding with respect to the foregoing by the Claims Objection Deadline or, at the discretion of the Reorganized Debtor or Claimant Trustee, as applicable, compromised, settled, withdrew or resolved without further order of the Bankruptcy Court, and (ii) unless otherwise provided in the Confirmation Order, the Reorganized Debtor or the Claimant Trust, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim or Disputed Equity Interests following the Effective Date without further notice to creditors (other than the Entity holding such Disputed Claim or Disputed Equity Interest) or authorization of the Bankruptcy Court, in which event such Claim or Equity Interest shall be deemed to be an Allowed Claim or Equity Interest in the amount compromised for purposes of this Plan.

**C.**     **Procedures Regarding Disputed Claims or Disputed Equity Interests**

No payment or other distribution or treatment shall be made on account of a Disputed Claim or Disputed Equity Interest unless and until such Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interests and the amount of such Allowed Claim or Equity Interest, as applicable, is determined by order of the Bankruptcy Court or by stipulation between the Reorganized Debtor or Claimant Trust, as applicable, and the Holder of the Claim or Equity Interest.

**D.**     **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim or Disputed Equity Interest becomes an Allowed Claim or Equity Interest after the Distribution Date, the Distribution Agent shall make a distribution to the Holder of such Allowed Claim or Equity Interest in accordance with the Plan.

44

1.    *Allowance of Claims*

After the Effective Date and subject to the other provisions of this Plan, the Reorganized Debtor or the Claimant Trust, as applicable, will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtor had with respect to any Claim. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim or Equity Interest will become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under this Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

2.    *Estimation*

Subject to the other provisions of this Plan, the Debtor, prior to the Effective Date, and the Reorganized Debtor or the Claimant Trustee, as applicable, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim or Disputed Equity Interest pursuant to applicable law and in accordance with this Plan and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim or Disputed Equity Interest, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or Equity Interest or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

3.    *Disallowance of Claims*

Any Claims or Equity Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Reorganized Debtor or the Claimant Trust, as applicable, by that Entity have been turned over or paid to the Reorganized Debtor or the Claimant Trust, as applicable.

**EXCEPT AS OTHERWISE PROVIDED HEREIN OR AS AGREED TO BY THE DEBTOR, REORGANIZED DEBTOR, OR CLAIMANT TRUSTEE, AS APPLICABLE, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH**

**Appx. 00232**

LATE PROOF OF CLAIM HAS BEEN DEEMED TIMELY FILED BY A FINAL ORDER.

## ARTICLE VIII.
## EFFECTIVENESS OF THIS PLAN

A.      **Conditions Precedent to the Effective Date**

The Effective Date of this Plan will be conditioned upon the satisfaction or waiver by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee with such consent not to be unreasonably withheld), pursuant to the provisions of ARTICLE VIII.B of this Plan of the following:

- This Plan and the Plan Documents, including the Claimant Trust Agreement and the Reorganized Limited Partnership Agreement, and all schedules, documents, supplements and exhibits to this Plan shall have been Filed in form and substance reasonably acceptable to the Debtor and the Committee.

- The Confirmation Order shall have become a Final Order and shall be in form and substance reasonably acceptable to the Debtor and the Committee. The Confirmation Order shall provide that, among other things, (i) the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee are authorized to take all actions necessary or appropriate to effectuate and consummate this Plan, including, without limitation, (a) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in this Plan, (b) assuming the Executory Contracts and Unexpired Leases set forth in the Plan Supplement, (c) making all distributions and issuances as required under this Plan; and (d) entering into any transactions as set forth in the Plan Documents; (ii) the provisions of the Confirmation Order and this Plan are nonseverable and mutually dependent; (iii) the implementation of this Plan in accordance with its terms is authorized; (iv) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with this Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under this Plan, shall not be subject to any Stamp or Similar Tax; and (v) the vesting of the Claimant Trust Assets in the Claimant Trust and the Reorganized Debtor Assets in the Reorganized Debtor, in each case as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date.

- All documents and agreements necessary to implement this Plan, including without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, in each case in form and substance reasonably acceptable to the Debtor and the Committee, shall have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding

46

**Appx. 00233**

upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement this Plan, including, without limitation, the Reorganized Limited Partnership Agreement, the Claimant Trust Agreement, and the New GP LLC Documents, shall have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or consummation of the Restructuring.

- The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

- The Professional Fee Reserve shall be funded pursuant to this Plan in an amount determined by the Debtor in good faith.

**B.** **Waiver of Conditions**

The conditions to effectiveness of this Plan set forth in this ARTICLE VIII (other than that the Confirmation Order shall have been entered) may be waived in whole or in part by the Debtor (and, to the extent such condition requires the consent of the Committee, the consent of the Committee) and any applicable parties in Section VII.A of this Plan, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or effectuate this Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time by the Debtor, the Reorganized Debtor, or the Claimant Trust, as applicable.

**C.** **Dissolution of the Committee**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Case, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtor's or Committee's

47

**Appx. 00234**

Professionals to represent either of the Trustees or to be compensated or reimbursed per the Plan and the Claimant Trust Agreement in connection with such representation.

## ARTICLE IX.
## EXCULPATION, INJUNCTION AND RELATED PROVISIONS

### A.    General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

### B.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all consideration distributed under this Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtor or any of its Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### C.    Exculpation

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided*, *however*, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross

48

negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

### D.    <u>Releases by the Debtor</u>

On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and the Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, including, but not limited to, the Claimant Trust and the Litigation Sub-Trust from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Person.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, (ii) the rights or obligations of any current employee of the Debtor under any employment agreement or plan, (iii) the rights of the Debtor with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtor under any employment agreement with a current or former employee of the Debtor, (iv) any Avoidance Actions, or (v) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

Notwithstanding anything herein to the contrary, any release provided pursuant to this ARTICLE IX.D (i) with respect to a Senior Employee, is conditioned in all respects on (a) such Senior Employee executing a Senior Employee Stipulation on or prior to the Effective Date and (b) the reduction of such Senior Employee's Allowed Claim as set forth in the Senior Employee Stipulation (such amount, the "<u>Reduced Employee Claim</u>"), and (ii) with respect to any Employee, including a Senior Employee, shall be deemed null and void and of no force and effect (1) if there is more than one member of the Claimant Trust Oversight Committee who does not represent entities holding a Disputed or Allowed Claim (the "<u>Independent Members</u>"), the Claimant Trustee and the Independent Members by majority vote determine or (2) if there is only one Independent Member, the Independent Member after discussion with the Claimant Trustee, determines (in each case after discussing with the full Claimant Trust Oversight Committee) that such Employee (regardless of whether the Employee is then currently employed by the Debtor, the Reorganized Debtor, or the Claimant Trustee):

- sues, attempts to sue, or threatens or works with or assists any entity or person to sue, attempt to sue, or threaten the Reorganized Debtor, the Claimant Trust, the Litigation

**Appx. 00236**

Sub-Trust, or any of their respective employees or agents, or any Released Party on or in connection with any claim or cause of action arising prior to the Effective Date,

- has taken any action that, impairs or harms the value of the Claimant Trust Assets or the Reorganized Debtor Assets, or

- (x) upon the request of the Claimant Trustee, has failed to provide reasonable assistance in good faith to the Claimant Trustee or the Reorganized Debtor with respect to (1) the monetization of the Claimant Trust Assets or Reorganized Debtor Assets, as applicable, or (2) the resolution of Claims, or (y) has taken any action that impedes or frustrates the Claimant Trustee or the Reorganized Debtor with respect to any of the foregoing.

*Provided, however,* that the release provided pursuant to this ARTICLE IX.D will vest and the Employee will be indefeasibly released pursuant to this ARTICLE IX.D if such Employee's release has not been deemed null and void and of no force and effect on or prior to the date that is the date of dissolution of the Claimant Trust pursuant to the Claimant Trust Agreement.

By executing the Senior Employee Stipulation embodying this release, each Senior Employee acknowledges and agrees, without limitation, to the terms of this release and the tolling agreement contained in the Senior Employee Stipulation.

The provisions of this release and the execution of a Senior Employee Stipulation will not in any way prevent or limit any Employee from (i) prosecuting its Claims, if any, against the Debtor's Estate, (ii) defending him or herself against any claims or causes of action brought against the Employee by a third party, or (iii) assisting other persons in defending themselves from any Estate Claims brought by the Litigation Trustee (but only with respect to Estate Claims brought by the Litigation Trustee and not collection or other actions brought by the Claimant Trustee).

**E.      Preservation of Rights of Action**

*1.      Maintenance of Causes of Action*

Except as otherwise provided in this Plan, after the Effective Date, the Reorganized Debtor or the Claimant Trust will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action included in the Reorganized Debtor Assets or Claimant Trust Assets, as applicable, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Case and, as the successors in interest to the Debtor and the Estate, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Causes of Action without notice to or approval from the Bankruptcy Court.

*2.      Preservation of All Causes of Action Not Expressly Settled or Released*

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final

50

**Appx. 00237**

Order (including, without limitation, the Confirmation Order), such Cause of Action is expressly reserved for later adjudication by the Reorganized Debtor or Claimant Trust, as applicable (including, without limitation, Causes of Action not specifically identified or of which the Debtor may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action as a consequence of the confirmation, effectiveness, or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such Causes of Action have been expressly released in this Plan or any other Final Order (including, without limitation, the Confirmation Order). In addition, the right of the Reorganized Debtor or the Claimant Trust to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, is expressly reserved.

F.     <u>Injunction</u>

**Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.**

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation Sub-Trust, and the Claimant Trust and their respective property and interests in property.**

**Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or**

51

**arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; *provided, however,* the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.**

**G.**     **Duration of Injunctions and Stays**

**ARTICLE II. Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, (i) all injunctions and stays entered during the Chapter 11 Case and in existence on the Confirmation Date shall remain in full force and effect in accordance with their terms; and (ii) the automatic stay arising under section 362 of the Bankruptcy Code shall remain in full force and effect subject to Section 362(c) of the Bankruptcy Code, and to the extent necessary if the Debtor does not receive a discharge, the Court will enter an equivalent order under Section 105.**

**H.**     **Continuance of January 9 Order**

Unless otherwise provided in this Plan, in the Confirmation Order, or in a Final Order of the Bankruptcy Court, the restrictions set forth in paragraphs 9 and 10 of the *Order Approving Settlement with Official Committee of Unsecured Creditors Regarding Governance of the Debtor and Procedures for Operations in the Ordinary Course*, entered by the Bankruptcy Court on January 9, 2020 [D.I. 339] shall remain in full force and effect following the Effective Date.

## ARTICLE X.
## BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan, including, without limitation, the provisions in ARTICLE IX, will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtor and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state,

**Appx. 00239**

Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated thereby is to be recorded with respect to nay taxes of the kind specified in Bankruptcy Code section 1146(a).

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Reorganized Debtor, the Claimant Trust, and this Plan to the maximum extent legally permissible, including, without limitation, jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate or establish the priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

- grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date; *provided, however*, that, from and after the Effective Date, the Reorganized Debtor shall pay Professionals in the ordinary course of business for any work performed after the Effective Date subject to the terms of this Plan and the Confirmation Order, and such payment shall not be subject to the approval of the Bankruptcy Court;

- resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor, Reorganized Debtor, or Claimant Trust may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, any dispute regarding whether a contract or lease is or was executory or expired;

- make any determination with respect to a claim or cause of action against a Protected Party as set forth in ARTICLE IX;

- resolve any claim or cause of action against an Exculpated Party or Protected Party arising from or related to the Chapter 11 Case, the negotiation of this Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, or the transactions in furtherance of the foregoing;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any sale, disposition, assignment or other transfer of the Reorganized Debtor Assets or Claimant Trust Assets, including any break-up compensation or

53

expense reimbursement that may be requested by a purchaser thereof; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- if requested by the Reorganized Debtor or the Claimant Trustee, authorize, approve, and allow any borrowing or the incurrence of indebtedness, whether secured or unsecured by the Reorganized Debtor or Claimant Trust; *provided, however*, that neither the Reorganized Debtor nor the Claimant Trustee shall be required to seek such authority or approval from the Bankruptcy Court unless otherwise specifically required by this Plan or the Confirmation Order;

- resolve any issues related to any matters adjudicated in the Chapter 11 Case;

- ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of this Plan;

- decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action (including Estate Claims) that are pending as of the Effective Date or that may be commenced in the future, including approval of any settlements, compromises, or other resolutions as may be requested by the Debtor, the Reorganized Debtor, the Claimant Trustee, or the Litigation Trustee whether under Bankruptcy Rule 9019 or otherwise, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor, the Claimant Trustee, or Litigation Trustee after the Effective Date, provided that the Reorganized Debtor, the Claimant Trustee, and the Litigation Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

- enter such orders as may be necessary or appropriate to implement, effectuate, or consummate the provisions of this Plan, the Plan Documents, and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Documents, or the Disclosure Statement;

- resolve any cases, controversies, suits or disputes that may arise in connection with the implementation, effectiveness, consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

- issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with implementation, effectiveness, consummation, or enforcement of this Plan, except as otherwise provided in this Plan;

- enforce the terms and conditions of this Plan and the Confirmation Order;

- resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification, and other provisions contained herein and enter such

54

orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

- enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

- resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Documents, or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; and

- enter an order concluding or closing the Chapter 11 Case after the Effective Date.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

**A.    Payment of Statutory Fees and Filing of Reports**

All outstanding Statutory Fees shall be paid on the Effective Date.  All such fees payable, and all such fees that become due and payable, after the Effective Date shall be paid by the Reorganized Debtor when due or as soon thereafter as practicable until the Chapter 11 Case is closed, converted, or dismissed.  The Claimant Trustee shall File all quarterly reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Claimant Trustee shall File with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Reorganized Debtor shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**B.    Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order with the consent of the Committee, such consent not to be unreasonably withheld; and (b) after the entry of the Confirmation Order, the Debtor may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**C.    Revocation of Plan**

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File a subsequent chapter 11 plan with the consent of the Committee.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, then:  (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement

55

executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other Entity.

### D.  Obligations Not Changed

Notwithstanding anything in this Plan to the contrary, nothing herein will affect or otherwise limit or release any non-Debtor Entity's (including any Exculpated Party's) duties or obligations, including any contractual and indemnification obligations, to the Debtor, the Reorganized Debtor, or any other Entity whether arising under contract, statute, or otherwise.

### E.  Entire Agreement

Except as otherwise described herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### F.  Closing of Chapter 11 Case

The Claimant Trustee shall, after the Effective Date and promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### G.  Successors and Assigns

This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, including, without limitation, the Reorganized Debtor and the Claimant Trustee. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

### H.  Reservation of Rights

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Reorganized Debtor, the Claimant Trustee, or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor, the Reorganized Debtor, or the Claimant Trustee with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtor of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Documents, nor anything contained in this

Appx. 00243

Plan, will constitute an admission by the Debtor that any such contract or lease is or is not an executory contract or lease or that the Debtor, the Reorganized Debtor, the Claimant Trustee, or their respective Affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtor, the Reorganized Debtor, or the Claimant Trustee under any executory or non-executory contract.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, under any executory or non-executory contract or lease.

If there is a dispute regarding whether a contract or lease is or was executory at the time of its assumption under this Plan, the Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract.

## I.  Further Assurances

The Debtor, the Reorganized Debtor, or the Claimant Trustee, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtor shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

## J.  Severability

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## K.  Service of Documents

All notices, requests, and demands to or upon the Debtor, the Reorganized Debtor, or the Claimant Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

**Appx. 00244**

**If to the Claimant Trust:**

Highland Claimant Trust
c/o Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.

**If to the Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.

**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Attn: Jeffrey N. Pomerantz, Esq.
     Ira D. Kharasch, Esq.
     Gregory V. Demo, Esq.

**If to the Reorganized Debtor:**

Highland Capital Management, L.P.
300 Crescent Court, Suite 700
Dallas, Texas 75201
Attention: James P. Seery, Jr.
**with copies to:**

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Attn: Jeffrey N. Pomerantz, Esq.
     Ira D. Kharasch, Esq.
     Gregory V. Demo, Esq.

**L.   Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego

58

the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan; (ii) the maintenance or creation of security or any Lien as contemplated by this Plan; and (iii) assignments, sales, or transfers executed in connection with any transaction occurring under this Plan.

**M.**    **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Texas, without giving effect to the principles of conflicts of law of such jurisdiction; *provided, however,* that corporate governance matters relating to the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trust, as applicable, shall be governed by the laws of the state of organization of the Debtor, the Reorganized Debtor, New GP LLC, or the Claimant Trustee, as applicable.

**N.**    **Tax Reporting and Compliance**

The Debtor is hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtor is for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**O.**    **Exhibits and Schedules**

All exhibits and schedules to this Plan, if any, including the Exhibits and the Plan Documents, are incorporated and are a part of this Plan as if set forth in full herein.

**P.**    **Controlling Document**

In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and of the Confirmation Order, on the other hand, shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan, the Disclosure Statement, and any Plan Document, on the one hand, and any provision of the Confirmation Order, on the other hand, that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, the Disclosure Statement, and the Plan Documents, as applicable.

*[Remainder of Page Intentionally Blank]*

**Appx. 00246**

Dated:  January 22, 2021

Respectfully submitted,

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By:

James P. Seery, Jr.
Chief Executive Officer and Chief Restructuring
Officer

Prepared by:

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
        ikharasch@pszjlaw.com
        gdemo@pszjlaw.com

and

**HAYWARD & ASSOCIATES PLLC**
Melissa S. Hayward (TX Bar No. 24044908)
Zachery Z. Annable (TX Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
        ZAnnable@HaywardFirm.com

*Counsel for the Debtor and Debtor-in-Possession*

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **THE CHARITABLE DAF FUND, LP.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Cause No.** _____ |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

This matter concerns self-dealing and seeks redress for violation of state and federal law, including, but not limited to, violations of the Advisers Act of 1940, and other state causes of action.

### I.

### PARTIES

**1.**     Plaintiff The Charitable  DAF Fund, L.P. ("Plaintiff" or "DAF") is a limited partnership formed under the laws of the Cayman Islands.

**2.**     Defendant Highland Capital Management L.P. ("Highland" or "HCMLP") is a Delaware limited partnership, whose principal place of business is in Dallas, Texas, at 300 Crescent Court, Suite 700, Dallas, Texas 75201.

### II.

### JURISDICTION AND VENUE

**3.**     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1331 and under 28 U.S.C. § 1334 because the suit arises out of post-petition acts or omissions of the debtor and certain of its principals.

---

**Appx. 00249**

**4.** This Court has personal jurisdiction over Defendant Highland Capital Management, L.P. because it has continuously done business in this state, and the causes of action arise from the acts or omissions committed in this state.

**5.** Venue is proper in this Court because a substantial number of the acts or omissions giving rise to this lawsuit and the causes of action asserted herein occurred in Dallas County.

### III.

### FACTUAL BACKGROUND

**6.** HCMLP is a registered investment advisor ("RIA") subject to the regulations of the Securities Exchange Commission.

**7.** HCMLP is both the advisor of and investor in Highland Multi Strategy Credit Fund, L.P. ("Multistrat"), a Delaware limited partnership. Highland Multi Strategy Credit Fund GP, L.P., itself a Delaware limited partnership, is the general partner of Multistrat, and HCMLP is the sole member of the general partner of Highland Multi Strategy Credit Fund GP, L.P.

**8.** HCMLP's advisory capacity is governed, or at all relevant times was governed, by the Third Amended and Restated Investment Management Agreement, effective November 1, 2013 (the "*IMA*").

**9.** The purpose of Multistrat as a vehicle was stated as such: "The Fund's investment objective is to seek attractive risk-adjusted returns, consistent with the preservation of capital and prudent investment management."

**10.** The Confidential Private Placement Memorandum for Multistrat disclosed that "[t]he Investment Manager is registered as an investment adviser with the Securities and Exchange Commission under the U.S. Investment Advisers Act of 1940, as amended (the 'Advisers Act').

---

Original Complaint

Each prospective investor will be required to make a representation to indicate that it is a 'qualified client' as defined in the Advisers Act."

11.     Because of these agreements and roles as the General Partner and RIA, Highland owed contractual and fiduciary duties to Plaintiff as an investor in Multistrat.

12.     James Seery, the principal, CEO, and CRO of HCMLP. in its capacity as a debtor, admitted under oath that HCMLP owes fiduciary duties to the investors of the funds HCMLP manages—which would include Multistrat—and therefore, has admitted under oath that HCMLP and its governed persons owe fiduciary duties to the investors in Multistrat, which include Plaintiff, The Charitable DAF Fund, and Highland Capital Management Services, Inc., among others.

13.     As an investment vehicle advised at all times and controlled at all times by HCMLP, Multistrat purchased and owned a pool of viaticals—investments in life insurance policies keyed to the lives of other persons. When a person passes away, the life insurance money is paid to the owner of the policy—in this case, Multistrat.

14.     The notional value of the viatical pool was approximately $145 million.

15.     In or around August 2020, HCMLP sold the entire viatical pool for approximately $35,000,000—less than one quarter of the insured value.

16.     The policies insured people aged 90 on average, suggesting that the policies were highly likely to pay off in the ensuing few years given the age and life expectancies of the insureds, as well as considering the actuarial impact of the COVID pandemic.

17.     In the spring of 2020, Multistrat raised funds specifically for the purpose of paying the premiums on the viatical pool—amounts raised, borrowing availability, and liquid securities provided enough cash to pay the premiums. But HCMLP did not pursue this path as promised.

---

Instead, it sold the assets. To this day, it is unclear why the policies were sold, and why, just prior to a planned mediation.

18. Furthermore, the process of selling was severely flawed. For example, the health assessments used to determine the likelihood and timeline for the payout were two years old. HCMLP did not cause new, up-to-date health assessments to be performed, and instead was content to rely on stale information or worse, no information at all.

19. Furthermore, HCMLP made no effort to adjust the projected life expectancies due to the increasing age of the insureds during a process that stretched over seven months, nor for the potential impact of COVID on people over the age of 90, which would have impacted the price..

20. Equally troubling is that Multistrat obtained the funds to pay the premiums from another investor—yet, it apparently did not use the funds for that purpose.

21. HCMLP apparently used the proceeds of the sale to pay itself, notwithstanding the fact that there were redeemed interests waiting to be paid—interests to whom HCMLP also owed fiduciary duties.

22. In short, HCMLP caused Multistrat to sell the viatical pool at a substantially discounted amount to curry favor with the brokers and buyers in the marketplace for no apparent benefit to Multistrat's investors or the debtor's estate.

### III.

### CAUSES OF ACTION

### First Cause of Action
### Breach of the Advisers Act

23. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

24. Highland's actions violate the Advisers Act.

25. As an RIA, HCMLP is subject to the Investment Advisers Act of 1940.

---

26.     The IMA imposes and incorporates the duties and obligations of the Investment Advisers Act of 1940.

27.     Under this federal law, an investment adviser is a fiduciary.[1] This includes a duty of care, a duty of loyalty, and a duty to refrain from engaging in transactions in which it is not a disinterested person.

28.     The duty of loyalty imposed by the Advisers Act of 1940 is not specifically defined in the Advisers Act or in Commission rules but reflects a Congressional recognition "of the delicate fiduciary nature of an investment advisory relationship" as well as a Congressional intent to "eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested."

29.     To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship, including disclosing transactions in which the advisor has an interest, and to disclose all pertinent facts of a transaction that could affect the client or the client's interest.[2] In order for disclosure to be full and fair, it should be sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent.

---

[1] *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194 (1963). *Santa Fe Indus.* v. *Green*, 430 U.S. 462, 471, n.11 (1977) (in discussing SEC v. Capital Gains, stating that the Supreme Court's "references to fraud in the "equitable" sense of the term was "premised on its recognition that Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers"); Investment Advisers Act Release No. 3060 (July 28, 2010) ("Under the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing *Proxy Voting by Investment Advisers*, Investment Advisers Act Release No. 2106 (Jan. 31, 2003) ("Investment Advisers Act Release 2106")).

[2] *SEC v. Capital Gains*, supra, at 200 ("Failure to disclose material facts must be deemed fraud or deceit within its intended meaning."). Investment Advisers Act Release 3060, supra, footnote 15 ("as a fiduciary, an adviser has an ongoing obligation to inform its clients of any material information that could affect the advisory relationship"); see also General Instruction 3 to Part 2 of Form ADV ("Under federal and state law, you are a fiduciary and must make full disclosure to your clients of all material facts relating to the advisory relationship.").

---

Case 22-03052-sgj Doc 32 Filed 07/26/22 Entered 07/26/22 14:17:26 Page 258 of 865

Case 22-03052-sgj Doc 1-1 Filed 05/25/22 Entered 05/25/22 17:14:18 Page 6 of 11
Case 3:21-cv-01710-N Document 1 Filed 07/22/21 Page 6 of 11 PageID 6

30.     This fiduciary duty also requires an adviser "to adopt the principal's goals, objectives, or ends." This means the adviser must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client and must at all times act for the interests of its investors.[3]

31.     Here, the goals of Multistrat included "to seek attractive risk adjusted returns, consistent with the preservation of capital and prudent investment management."

32.     The duty of care includes, among other things: (i) the duty to provide advice that is in the best interest of the client, (ii) the duty to seek best execution of a client's transactions where the adviser has the responsibility to select broker-dealers to execute client trades, and (iii) the duty to provide advice and monitoring over the course of the relationship.

33.     These fiduciary duties are **unwaivable**, and any agreement made in derogation of the obligations under the Advisers Act is **void**.

34.     Therefore, Plaintiff seeks to declare the sale of the viaticals void because they were accomplished in violation of the Advisers Act.

35.     Plaintiff further seeks to declare the agreement(s) between Highland and Multistrat void because they were continued in violation of the Advisers Act.

<u>**Second Cause of Action**</u>
**Breach of Fiduciary Duty**

36.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

---

[3] Investment Advisers Act Release 3060 (adopting amendments to Form ADV and stating that "[u]nder the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing Investment Advisers Act Release 2106, supra footnote 15). *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("Section 206 imposes a fiduciary duty on investment advisers to act at all times in the best interest of the fund..."); *Sec. & Exch. Commission v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y 1996) ("Investment advisers are entrusted with the responsibility and duty to act in the best interest of their clients.").

37.     As an RIA, HCMLP is subject to the Investment Advisers Act of 1940.

38.     The IMA imposes and incorporates the duties and obligations of the Investment Advisers Act of 1940.

39.     Under this federal law, an investment adviser is a fiduciary.[4] This includes a duty of care, a duty of loyalty, and a duty to refrain from engaging in transactions in which it is not a disinterested person.

40.     The duty of loyalty imposed by the Advisers Act of 1940 is not specifically defined in the Advisers Act or in Commission rules, but reflects a Congressional recognition "of the delicate fiduciary nature of an investment advisory relationship" as well as a Congressional intent to "eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested."

41.     To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship, including disclosing transactions in which the advisor has an interest, and to disclose all pertinent facts of a transaction that could affect the client or the client's interest.[5] In order for disclosure to be full and fair, it should be

---

[4] *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194 (1963). *Santa Fe Indus.* v. *Green*, 430 U.S. 462, 471, n.11 (1977) (in discussing SEC v. Capital Gains, stating that the Supreme Court's reference to fraud in the "equitable" sense of the term was "premised on its recognition that Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers"); Investment Advisers Act Release No. 3060 (July 28, 2010) ("Under the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing *Proxy Voting by Investment Advisers*, Investment Advisers Act Release No. IA2106 (Jan. 31, 2003) ("Investment Advisers Act Release 2106")).

[5] *SEC v. Capital Gains*, supra, at 200 ("Failure to disclose material facts must be deemed fraud or deceit within its intended meaning."). Investment Advisers Act Release 3060, supra, footnote 15 ("as a fiduciary, an adviser has an ongoing obligation to inform its clients of any material information that could affect the advisory relationship"); see also General Instruction 3 to Part 2 of Form ADV ("Under federal and state law, you are a fiduciary and must make full disclosure to your clients of all material facts relating to the advisory relationship.").

---

sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent.

42.    This fiduciary duty also requires an adviser "to adopt the principal's goals, objectives, or ends." This means the adviser must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client and must at all times act for the interests of its investors.[6]

43.    Here, the goals of Multistrat included "to seek attractive risk adjusted returns, consistent with the preservation of capital and prudent investment management."

44.    The duty of care includes, among other things: (i) the duty to provide advice that is in the best interest of the client, (ii) the duty to seek best execution of a client's transactions where the adviser has the responsibility to select broker-dealers to execute client trades, and (iii) the duty to provide advice and monitoring over the course of the relationship.

45.    These fiduciary duties are **unwaivable**, and any agreement made in derogation of the obligations under the Advisers Act is **void**.

46.    HCMLP's CEO testified under oath that he and HCMLP were aware of these duties and had to comply with them.

47.    Section 204 of the Advisers Act requires HCMLP to carry written policies and procedures that must be followed in order to adhere to its federal obligations.

---

[6] Investment Advisers Act Release 3060 (adopting amendments to Form ADV and stating that "[u]nder the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing Investment Advisers Act Release 2106, supra footnote 15). *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("Section 206 imposes a fiduciary duty on investment advisers to act at all times in the best interest of the fund..."); *SEC v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y 1996) ("Investment advisers are entrusted with the responsibility and duty to act in the best interest of their clients.").

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 261 of 865

Case 22-03052-sgj Doc 1-1 Filed 05/25/22   Entered 05/25/22 17:14:18   Page 9 of 11
Case 3:21-cv-01710-N   Document 1   Filed 07/22/21   Page 9 of 11   PageID 9

48.     Section 206 of the Advisers Act prohibits transactions by an adviser that were accomplished via a "deceit" on a client or prospective client, e.g., by concealing the role and interest the adviser has in the transaction, or via engaging in a course of conduct that has a tendency to mislead a client or which is manipulative.

49.     These breaches include, but are not limited to (1) selling the viatical pool at a distressed price when it was not in distress and there was no need for Multistrat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) concealing the purpose behind the sale of the viatical pool and the conflicts of interest that inhere in the transaction; (5) causing  the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multistrat (e.g., by failing to conduct an auction, obtaining competitive bids and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

50.     The Advisers Act declares any contract that was made in violation of its provisions or regulations, or any contract that has been performed in violation of the Advisors Act, **void**.

51.     The Advisers Act created a private right of action to void unlawful agreements and acts and to seek such equitable relief as accompanies such claims.

52.     Texas law allows a fiduciary plaintiff to seek damages for breaches of fiduciary duty and to seek disgorgement of all ill-gotten gains obtained by a fiduciary.

53.     Plaintiff has been damaged due to the breaches of fiduciary duty outlined herein, and it  is entitled to recover damages, punitive damages, and attorneys' fees.

_____

54.     To the extent this claim must be brought as a derivative action, it is plain that the demand requirement under Delaware law could not be met because serving a demand on Highland or to sue Highland would have been futile.

**Third Cause of Action**
**Breach of Contract**

55.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.     The IMA imposes a duty of prudent investment management for the benefit of the investors in Multistrat and incorporate the duties and obligations of the Investment Advisers Act of 1940.

57.     The violations set forth above constitute a breach of each or both of these agreements.

58.     These breaches include, but are not limited to (1) selling the viatical pool at a distressed price when it was not in distress and there was no need for Multistrat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) concealing the purpose behind the sale of the viatical pool and the conflicts of interest that inhere in the transaction; (5) causing the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multistrat (e.g., by failing to conduct an auction, obtaining competitive bids, and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

59.     Plaintiff has been damaged by the breaches of contract outlined herein.

60.     Plaintiff is entitled to recover damages and attorneys' fees.

---

### JURY DEMAND AND PRAYER

**61.**    Plaintiff demands trial by jury.

**62.**    Plaintiff respectfully requests judgment and an order:

- Disgorging all ill-gotten gains in an amount to be determined at trial;

- Voiding the sale and other relevant agreements herein with HCMLP pursuant to the Advisers Act;

- Awarding damages in an amount to be determined at trial;

- Awarding punitive damages in an amount to be determined at trial;

- Awarding attorneys' fees and costs in an amount to be determined at trial;

- Awarding all interim and final relief to which Plaintiff is legally or equitably entitled under the facts and circumstances raised herein.

Dated:  July 22, 2021

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/  Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
**Jonathan Bridges**
Texas Bar No. 24028835
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
    jeb@sbaitilaw.com

**Counsel for Plaintiff**

**Appx. 00259**

# EXHIBIT 6

Appx. 00260

### Schedule of Contracts and Leases to Be Assumed

1. Advisory Services Agreement, dated November 21, 2011, effective June 20, 2011, by and between Carey International, Inc., and Highland Capital Management, L.P.

2. Amended and Restated Advisory Services Agreement, dated March 4, 2013, by and between Trussway Holdings, Inc., and Highland Capital Management, L.P.

3. Reference Portfolio Management Agreement, dated March 4, 2004, by and between Highland Capital Management, L.P., and Citibank N.A.

4. Advisory Services Agreement, dated May 25, 2011, by and between CCS Medical, Inc., and Highland Capital Management, L.P.

5. Amended and Restated Advisory Services Agreement, dated February 28, 2013, by and between Cornerstone Healthcare Group Holding, Inc., and Highland Capital Management, L.P.

6. Prime Brokerage Agreement by and between Jefferies LLC and Highland Capital Management, L.P., dated May 24, 2013.

7. Amended and Restated Shared Services Agreement, dated August 21, 2015, by and between Highland Capital Management, L.P., and Falcon E&P Opportunities GP, LLC.

8. Amended and Restated Administrative Services Agreement, effective as of August 21, 2015, by and between Highland Capital Management, L.P., and Petrocap Partners II GP, LLC.

9. Office Lease, between Crescent Investors, L.P., and Highland Capital Management, L.P.

10. Paylocity Corporation Services Agreement, between Highland Capital Management, L.P., and Paylocity Corporation, dated November 19, 2012.

11. Electronic Trading Services Agreement, between SunTrust Robinson Humphrey Inc., and Highland Capital Management, L.P., dated February 6, 2019.

12. Letter Agreement, between FTI Consulting, Inc., and Highland Capital Management, L.P., dated November 19, 2018.

13. Administrative Services Agreement, dated January 1, 2018, between Highland Capital Management, L.P., and Liberty Life Assurance Company of Boston.

14. Electronic Communications: Customer Authorization & Indemnification, between Highland Capital Management, L.P., and The Bank of New York Mellon Corporation, dated August 9, 2016.

15. Letter Agreement, dated August 9, 2016, Electronic Access Terms and Conditions, by and between The Bank of New York Mellon Trust Company, N.A., and Highland Capital Management, L.P.

16. Shared Services Agreement by and between Highland HCF Advisor, Ltd., and Highland Capital Management, L.P., dated effective October 27, 2017.

17.   Sub-Advisory Agreement, by and between Highland HCF Advisors, Ltd., and Highland Capital Management, dated effective October 27, 2017.

18.   Collateral Management Agreement, dated November 2, 2006, by and between Highland Credit Opportunities CDO Ltd. and Highland Capital Management, L.P.

19.   Management Agreement, dated November 15, 2007, between Highland Restoration Capital Partners, L.P., Highland Restoration Capital Partners Offshore, L.P., Highland Restoration Capital Partners Master L.P., Highland Restoration Capital Partners GP, LLC, and Highland Capital Management, L.P.

20.   Investment Management Agreement, between Highland Capital Multi-Strategy Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

21.   Investment Management Agreement, between Highland Capital Multi-Strategy Master Fund, L.P., and Highland Capital Management, L.P., dated July 31, 2006.

22.   Management Agreement, dated August 22, 2007, between and among Highland Capital Management, L.P., and Walkers Fund Services Limited, as trustee of Highland Credit Opportunities Japanese Unit Trust.

23.   Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013.

24.   Investment Management Agreement, dated March 31, 2015, by and among Highland Select Equity Master Fund, L.P., Highland Select Equity Fund GP, L.P., and Highland Capital Management, L.P.

25.   Amended and Restated Investment Management Agreement, dated February 27, 2017, by and among Highland Prometheus Master Fund L.P., Highland Prometheus Feeder Fund I, L.P., Highland Prometheus Feeder Fund II, L.P., Highland SunBridge GP, LLC, and Highland Capital Management, L.P.

26.   Servicing Agreement, dated December 20, 2007, by and among Greenbriar CLO, Ltd., and Highland Capital Management, L.P.

27.   Investment Management Agreement, dated November 1, 2007, by and between Longhorn Credit Funding, LLC, and Highland Capital Management, L.P. (as amended)

28.   Reference Portfolio Management Agreement, dated August 1, 2016, by and between Highland Capital Management, L.P., and Valhalla CLO, Ltd.

29.   Collateral Servicing Agreement, dated December 20, 2006, by and among Highland Park CDO I, Ltd., and Highland Capital Management, L.P.

30.   Portfolio Management Agreement, dated March 15, 2005, by and among Southfork CLO Ltd., and Highland Capital Management, L.P.

31.   Amended and Restated Portfolio Management Agreement, dated November 30, 2005, by and among Jaspar CLO Ltd., and Highland Capital Management, L.P.

32.   Servicing Agreement, dated May 31, 2007, by and among Westchester CLO, Ltd., and Highland Capital Management, L.P.

33. Servicing Agreement, dated May 10, 2006, by and among Rockwall CDO Ltd. and Highland Capital Management, L.P. (as amended)

34. Portfolio Management Agreement, dated December 8, 2005, by and between Liberty CLO, Ltd., and Highland Capital Management, L.P.

35. Servicing Agreement, dated March 27, 2008, by and among Aberdeen Loan Funding, Ltd., and Highland Capital Management, L.P.

36. Servicing Agreement, dated May 9, 2007, by and among Rockwall CDO II Ltd. and Highland Capital Management, L.P.

37. Collateral Management Agreement, by and between, Highland Loan Funding V Ltd. and Highland Capital Management, L.P., dated August 1, 2001.

38. Collateral Management Agreement, dated August 18, 1999, by and between Highland Legacy Limited and Highland Capital Management, L.P.

39. Servicing Agreement, dated November 30, 2006, by and among Grayson CLO Ltd., and Highland Capital Management, L.P. (as amended)

40. Servicing Agreement, dated October 25, 2007, by and among Stratford CLO Ltd., and Highland Capital Management, L.P.

41. Servicing Agreement, dated August 3, 2006, by and among Red River CLO Ltd., and Highland Capital Management, L.P. (as amended)

42. Servicing Agreement, dated December 21, 2006, by and among Brentwood CLO, Ltd., and Highland Capital Management, L.P.

43. Servicing Agreement, dated March 13, 2007, by and among Eastland CLO Ltd., and Highland Capital Management, L.P.

44. Portfolio Management, Agreement, dated October 13, 2005, by and among Gleneagles CLO, Ltd., and Highland Capital Management, L.P.

45. AT&T Managed Internet Service, between Highland Capital Management, L.P. and AT&T Corp., dated February 24, 2015.

46. ViaWest, Master Service Agreement, dated October 3, 2011, between Highland Capital Management, L.P. and ViaWest

47. Stockholders' Agreement, dated April 15, 2005, by and between American Banknote Corporation and Highland Capital Management, L.P.

48. Stockholders' Agreement and Amendment No. 1, dated January 25, 2011, by and between Carey Holdings, Inc. and Highland Capital Management, L.P.

49. Stockholders' Agreement and Amendment, dated March 24, 2010, by and between Cornerstone Healthcare Group Holding, Inc. and Highland Capital Management, L.P.

50. Members' Agreement and Amendment, dated November 15, 2017, by and between Highland CLO Funding, Ltd. and Highland Capital Management, L.P.

51. Stock Purchase and Sale Agreement and Amendment, dated January 16, 2013, by and between Progenics Pharmaceuticals, Inc. and Highland Capital Management, L.P.

52.   Stockholders' Agreement and Amendments, dated October 24, 2008, by and between JHT Holdings, Inc. and Highland Capital Management, L.P.

53.   Amended and Restated Limited Partnership Agreement of Highland Dynamic Income Fund, L.P., dated February 25, 2013, by and between Highland Dynamic Income Fund GP, LLC and Highland Capital Management, L.P.

54.   Highland Multi-Strategy Fund, L.P. Limited Partnership Agreement, dated July 6, 2006, by and between Highland Multi-Strategy Fund GP, L.P. and Highland Capital Management, L.P.

55.   Operating Agreement of HE Capital, LLC (as amended), dated September 27, 2007, by and between ENA Capital, LLC Ellman Management Group, Inc. and Highland Capital Management, L.P.

56.   Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund II, LLC, dated February 27, 2007, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

57.   Limited Liability Company Agreement of Highland Multi-Strategy Onshore Master SubFund, LLC, dated July 19, 2006, by and between Highland Multi-Strategy Master Fund, L.P. and Highland Capital Management, L.P.

58.   Highland Capital Management, L.P., Limited Liability Company Agreement of Highland Receivables Finance 1, LLC, by and between Highland Capital Management, L.P. and Highland Capital Management, L.P.

59.   Agreement of Limited Partnership of Highland Restoration Capital Partners, L.P. and Amendments, dated November 6, 2007, by and between Highland Restoration Capital Partners GP, LLC and Highland Capital Management, L.P.

60.   Agreement of Limited Partnership of Highland Select Equity Fund GP, L.P., dated October 2005, by and between Highland Select Equity Fund GP, LLC and Highland Capital Management, L.P.

61.   Agreement of Limited Partnership of Penant Management LP, dated December 12, 2012, by and between Penant Management GP, LLC and Highland Capital Management, L.P.

62.   Agreement of Limited Partnership of Petrocap Incentive Partners III, LP, dated April 12, 2018, by and between Petrocap Incentive Partners III GP, LLC, Petrocap Incentive Holdings III, LP and Highland Capital Management, L.P.

63.   Amended and Restated Agreement of Limited Partnership of Petrocap Partners II, LP, dated October 30, 2014, by and between Petrocap Partners II GP, LLC, Petrocap Incentive Partners II, LP and Highland Capital Management, L.P.

64.   Agreement of Limited Partnership of Highland Credit Opportunities CDO GP, L.P., dated December 29, 2005, by and between Highland Credit Opportunities CDO GP, LLC and Highland Capital Management, L.P.

65.   Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P., dated November 1, 2014, by and between Highland Multi Strategy Credit Fund GP, L.P. and Highland Capital Management, L.P.

66. DUO Security, 2 factor authentication, by and between DUO Security and Highland Capital Management, L.P.

67. GoDaddy Domain Registrations, by and between GoDaddy and Highland Capital Management, L.P.

68. Highland Loan Fund, Ltd. et al, Investment Management Agreement, dated July 31, 2001, by and between Highland Loan Fund, Ltd. et al and Highland Capital Management, L.P.

69. E Mailflow Monitoring, by and between Mxtoolbox and Highland Capital Management, L.P.

70. Cloud single sign on for HR related employee login, by and between Onelogin and Highland Capital Management, L.P.

71. Collateral Management Agreement, dated May 19, 1998, by and between Pam Capital Funding LP, Ranger Asset Mgt LP and Highland Capital Management, L.P.

72. Collateral Management Agreement, dated August 6, 1997, by and between Pamco Cayman Ltd., Ranger Asset Mgt LP and Highland Capital Management, L.P.

73. Order Addenda, dated January 28, 2020, by and between CenturyLink Communications, LLC and Highland Capital Management, L.P.

74. Service Agreement (as amended), dated April 1, 2005, by and between Intex Solutions, Inc. and Highland Capital Management, L.P.

75. Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Red River CLO Ltd. et al

76. Interim Collateral Management Agreement, June 15, 2005, between Highland Capital Management, L.P. and Rockwall CDO Ltd

77. Amendment No. 1 to Servicing Agreement, October 2, 2007, between Highland Capital Management, L.P. and Rockwall CDO Ltd

78. Collateral Servicing Agreement dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.; The Bank of New York Trust Company, National Association

79. Representations and Warranties Agreement, dated December 20, 2006, between Highland Capital Management, L.P. and Highland Park CDO I, Ltd.

80. Collateral Administration Agreement, dated March 27, 2008, between Highland Capital Management, L.P. and Aberdeen Loan Funding, Ltd.; State Street Bank and Trust Company

81. Collateral Administration Agreement, dated December 20, 2007, between Highland Capital Management, L.P. and Greenbriar CLO, Ltd.; State Street Bank and Trust Company

82. Collateral Acquisition Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd

83.    Collateral Administration Agreement, dated March 13, 2007, between Highland Capital Management, L.P. and Eastland CLO, Ltd. and Investors Bank and Trust Company

84.    Collateral Administration Agreement, dated October 13, 2005, between Highland Capital Management, L.P. and Gleneagles CLO, Ltd.; JPMorgan Chase Bank, National Association

85.    Collateral Acquisition Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.

86.    Collateral Administration Agreement, dated November 30, 2006, between Highland Capital Management, L.P. and Grayson CLO, Ltd.; Investors Bank & Trust Company

87.    Collateral Acquisition Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.

88.    Collateral Administration Agreement, dated August 3, 2006, between Highland Capital Management, L.P. and Red River CLO, Ltd.; U.S. Bank National Association

89.    Master Warehousing and Participation Agreement, dated April 19, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company

90.    Master Warehousing and Participation Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

91.    Master Warehousing and Participation Agreement (Amendment No. 2), dated May 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

92.    Master Warehousing and Participation Agreement (Amendment No. 1), dated April 12, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

93.    Master Warehousing and Participation Agreement (Amendment No. 3), dated June 22, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

94.    Master Warehousing and Participation Agreement (Amendment No. 4), dated July 17, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; MMP-5 Funding, LLC; IXIS Financial Products Inc.

95.    Collateral Administration Agreement, dated February 2, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; U.S. Bank National Association; IXIS Financial Products Inc.

96.    Collateral Administration Agreement, dated April 18, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Highland Special Opportunities Holding Company; U.S. Bank National Association

97.    Master Participation Agreement, dated June 5, 2006, between Highland Capital Management, L.P. and Red River CLO Ltd.; Grand Central Asset Trust

98.     A&R Asset Acquisition Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Smith Barney Inc.; Highland Loan Funding V Ltd.

99.     A&R Master Participation Agreement, dated July 18, 2001, between Highland Capital Management, L.P. and Salomon Brothers Holding Company; Highland Loan Funding V Ltd.

100.    Collateral Acquisition Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.

101.    Collateral Administration Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd.; JPMorgan Chase Bank, National Association

102.    Master Warehousing and Participation Agreement, dated March 24, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

103.    Master Warehousing and Participation Agreement (Amendment No. 1), dated May 16, 2005, between Highland Capital Management, L.P. and Jasper CLO Ltd; MMP-5 Funding, LLC; and IXIS Financial Products Inc.

104.    Securities Account Control Agreement, dated June 29, 2005, between Highland Capital Management, L.P. and Highland CDO Opportunity Fund, Ltd.; JPMorgan Chase Bank, National Association

105.    Collateral Administration Agreement, dated December 8, 2005, between Highland Capital Management, L.P. and Liberty CLO Ltd.

106.    Collateral Administration Agreement, dated May 10, 2006, between Highland Capital Management, L.P. and Rockwall CDO Ltd; JPMorgan Chase Bank, National Association

107.    Collateral Administration Agreement, dated May 9, 2007, between Highland Capital Management, L.P. and Rockwall CDO II, Ltd.; Investors Bank & Trust Company

108.    Collateral Administration Agreement, dated March 15, 2005, between Highland Capital Management, L.P. and Southfork CLO Ltd.; JPMorgan Chase Bank, National Association

109.    Collateral Administration Agreement, dated October 25, 2007, between Highland Capital Management, L.P. and Stratford CLO Ltd.; State Street

110.    Collateral Administration Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Valhalla CLO, Ltd.; JPMorgan Chase Bank

111.    Extension/Buy-Out Agreement, dated August 18, 2004, between Highland Capital Management, L.P. and Citigroup Financial Products Inc.; Citigroup Global Markets Inc.

112.    Collateral Acquisition Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.

113.    Collateral Administration Agreement, dated May 31, 2007, between Highland Capital Management, L.P. and Westchester CLO, Ltd.; Investors Bank & Trust Company

114.    Collateral Administration Agreement, dated December 21, 2006, between Highland Capital Management, L.P. and Brentwood CLO, Ltd.; Investors Bank & Trust Company

115.    Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and James Seery

116.    Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and John Dubel

117.    Indemnification and Guaranty Agreement between Highland Capital Management, Strand Advisors, Inc. and Russell Nelms

118.    Colocation Service Order dated October 14, 2019 between Highland Capital Management and Dawn US Holdings, LLC d/b/a Evoque Date Center Solutions

119.    Tradesuite Web Module Services/Agreement between Highland Capital Management and DTCC ITP LLC

120.    Bloomberg (Terminal) Agreement No. 306371 between Highland Capital Management and Bloomberg Finance, L.P.[1]

121.    Master Service Agreement between Highland Capital Management and Via West

122.    Amendment to Bloomberg Order Management System Addendum and Bloomberg Order Management System Schedule of Services Account No. 167969 between Highland Capital Management and Bloomberg Finance, L.P.

123.    Fourth Amendment to Software License and Services Agreement between Highland Capital Management and Markit WSO Corporation

124.    Master Services Agreement, First Amendment to Master Services Agreement, Second Amendment and Restatement of Master Services Agreement between Highland Capital Management and Siepe Services, LLC

125.    Internet Agreement Account No. 831-000-7888-651 between Highland Capital Management and AT&T

126.    Landline Fax Agreement Account No. 831-000-2532-176 between Highland Capital Management and AT&T

127.    Amazon Web Services Account No. 353534426569 between Highland Capital Management and Amazon Web Service, Inc.

128.    Website Hosting Agreement  Account No. 325667 between Highland Capital Management and WP Engine

---

[1] The Debtor is currently in discussions with Bloomberg regarding the assumption of this agreement.

Appx. 00268

# EXHIBIT 7

Docket #2700 Date Filed: 08/11/2021

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717) (admitted *pro hac vice*)
Ira D. Kharasch (CA Bar No. 109084) (admitted *pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) Case No. 19-34054-sgj11 |
| | ) |
| Debtor. | ) |
| | ) |

### NOTICE OF OCCURRENCE OF EFFECTIVE DATE OF
### CONFIRMED FIFTH AMENDED PLAN OF REORGANIZATION
### OF HIGHLAND CAPITAL MANAGEMENT, L.P.

PLEASE TAKE NOTICE that on February 22, 2021, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Docket No. 1943] (the "Confirmation Order") confirming the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1808] (as

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



1934054210811000000000001

Appx. 00270

amended, supplemented, or modified, the "Plan"). Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order, as applicable.

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on August 11, 2021.

PLEASE TAKE FURTHER NOTICE that, except with respect to Administrative Expense Claims that are Professional Fee Claims or as otherwise set forth in the Plan, requests for payment of an Administrative Expense Claim must be Filed with the Bankruptcy Court **no later than forty-five (45) days after the Effective Date** (the "Administrative Expense Claims Bar Date"). **HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR.**

PLEASE TAKE FURTHER NOTICE that, unless otherwise ordered by the Bankruptcy Court, all final requests for payment of Professional Fee Claims must be Filed **no later than sixty (60) days after the Effective Date**.

PLEASE TAKE FURTHER NOTICE that the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan and Confirmation Order, including, without limitation: the injunction with respect to the commencement of claims and causes of action against Protected Parties set forth in Section IX.F of the Plan and Sections AA and BB of the Confirmation Order, the duration of injunction and stays set forth in Section IX.G of the Plan and Section AA of the Confirmation Order, and the continuance of the January 9 Order and July 16 Order set forth in Section IX.H of the Plan and Section CC of the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that on the Effective Date, all Class A Limited Partnership Interests, including the Class A Limited Partnership Interests held by Strand, as general partner, and Class B/C Limited Partnerships in the Debtor will be deemed cancelled, and all obligations or debts owed by, or Claims against, the Debtor on account of, or based upon, such Class A Limited Partnership Interests and Class B/C Limited Partnership Interests shall be deemed as cancelled, released, and discharged, including all obligations or duties by the Debtor relating to the Equity Interests in any of the Debtor's formation documents, including the Limited Partnership Agreement.

PLEASE TAKE FURTHER NOTICE that the Confirmation Order and the Plan

**Appx. 00271**

are available for inspection. If you would like to obtain copies you may: (a) access the Debtor's restructuring website at http://www.kccllc.net/hcmlp; (b) call toll free: (877) 573-3984 or international: (310) 751-1829; or (c) email HighlandInfo@kccllc.com and reference "Highland" in the subject line. You may also obtain copies of any pleadings filed in this case for a fee via PACER at: pacer.uscourts.gov.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

DOCS_SF:105466.2 36027/002

3

**Appx. 00272**

Dated: August 11, 2021.                    **PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
Email: jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for the Debtor*

# EXHIBIT 8

Appx. 00274

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054 (SGJ) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I, Vincent Trang, depose and say that I am employed by Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent for the Debtor in the above-captioned case.

On August 11, 2021, at my direction and under my supervision, employees of KCC caused the following document to be served via Electronic Mail upon the service list attached hereto as **Exhibit A**; and via First Class Mail upon the service lists attached hereto as **Exhibit B** and **Exhibit C**:

- **Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P**. [Docket No. 2700]

Furthermore, on August 11, 2021, at my direction and under my supervision, employees of KCC caused the following document to be served via First Class Mail upon "Highland Capital Management LP, For Further Delivery to Addressed Parties, 300 Crescent Ct, Ste 700, Dallas, TX 75201," for distribution in individually addressed envelopes to each party on the service list attached hereto as **Exhibit D**; and via First Class Mail upon "Highland Capital Management LP, For Further Delivery to Addressed Parties, 13455 Noel Rd, Ste 800, Dallas, TX 75240," for distribution in individually addressed envelopes to each party on the service list attached hereto as **Exhibit E**:

- **Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of Highland Capital Management, L.P**. [Docket No. 2700]

Dated: August 19, 2021

/s/ Vincent Trang
Vincent Trang
KCC
222 N Pacific Coast Highway, Suite 300
El Segundo, CA 90245

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725).  The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

# EXHIBIT A

**Exhibit A**
Core/2002 Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| Counsel for Collin County Tax Assessor/Collector | Abernathy, Roeder, Boyd & Hullett, P.C. | Chad Timmons, Larry R. Boyd, Emily M. Hahn | ctimmons@abernathy-law.com; bankruptcy@abernathy-law.com; ehahn@abernathy-law.com |
| Counsel for NexBank | Alston & Bird LLP | Jared Slade | jared.slade@alston.com |
| Counsel for NexBank | Alston & Bird LLP | Jonathan T. Edwards | jonathan.edwards@alston.com |
| Counsel to Jefferies LLC | Ashby & Geddes, P.A. | William P. Bowden, Esq., Michael D. DeBaecke, Esq. | mdebaecke@ashbygeddes.com |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Issac Leventon (the "Senior Employees") and CPCM, LLC | Baker & McKenzie LLP | Debra A. Dandeneau | debra.dandeneau@bakermckenzie.com |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Issac Leventon (the "Senior Employees") and CPCM, LLC | Baker & McKenzie LLP | Michelle Hartmann | michelle.hartmann@bakermckenzie.com |
| Counsel for NWCC, LLC | Barnes & Thornburg LLP | Thomas G. Haskins, Jr. | thomas.haskins@btlaw.com |
| Counsel to Acis Capital Management GP LLC and Acis Capital Management, L.P. (collectively, "Acis") | Blank Rome LLP | John E. Lucian, Josef W. Mintz | mintz@blankrome.com; jbibiloni@blankrome.com |
| Counsel to James Dondero | Bonds Ellis Eppich Schafer Jones LLP | John Y. Bonds, III, Bryan C. Assink | john@bondsellis.com; bryan.assink@bondsellis.com |
| Counsel to Oracle America, Inc. | Buchalter, A Professional Corporation | Shawn M. Christianson, Esq. | schristianson@buchalter.com |
| Counsel for UBS Securities LLC and UBS AG, London Branch | Butler Snow LLP | Martin A. Sosland and Candice M. Carson | martin.sosland@butlersnow.com; candice.carson@butlersnow.com |
| Counsel to Integrated Financial Associates Inc. | Carlyon Cica Chtd. | Candace C. Carlyon, Esq., Tracy M. Osteen, Esq. | ccarlyon@carlyoncica.com; tosteen@carlyoncica.com |
| Counsel to the Intertrust Entities and the CLO Entities | Chipman, Brown, Cicero & Cole, LLP | Mark L. Desgrosseilliers | desgross@chipmanbrown.com |
| Counsel to Siepe LLC | Condon Tobin Sladek Thornton PLLC | J. Seth Moore | smoore@ctstlaw.com |
| Counsel to Patrick Daugherty ("Mr. Daugherty") | Cross & Simon LLC | Michael L. Vild, Esquire | mvild@crosslaw.com |
| Counsel for BH Equities, L.L.C. | Dentons US LLP | Casey Doherty | Casey.doherty@dentons.com |
| Counsel to Jefferies LLC | Dentons US LLP | Lauren Macksoud, Esq. | lauren.macksoud@dentons.com |
| Counsel to Jefferies LLC | Dentons US LLP | Patrick C. Maxcy, Esq. | patrick.maxcy@dentons.com |
| Counsel to Acis Capital Management, LP and Acis Capital Management GP, LLC ("Creditors") and Joshua N. Terry and Jennifer G. Terry | Forshey & Prostok LLP | Jeff P. Prostok, J. Robert Forshey, Suzanne K. Rosen | jprostok@forsheyprostok.com; bforshey@forsheyprostok.com; srosen@forsheyprostok.com |
| Secured Creditor | Frontier State Bank | Attn:  Steve Elliot | selliott@frontier-ok.com |
| Counsel to the Redeemer Committee of the Highland Crusade Fund | Frost Brown Todd LLC | Mark A. Platt | mplatt@fbtlaw.com |
| Counsel to Alvarez & Marsal CRF Management LLC as Investment Manager of the Highland Crusader Funds | Gibson, Dunn & Crutcher LLP | Marshall R. King, Esq., Michael A. Rosenthal, Esq. & Alan Moskowitz, Esq. | mking@gibsondunn.com; mrosenthal@gibsondunn.com; amoskowitz@gibsondunn.com |
| Counsel to Alvarez & Marsal CRF Management LLC as Investment Manager of the Highland Crusader Funds | Gibson, Dunn & Crutcher LLP | Matthew G. Bouslog, Esq. | mbouslog@gibsondunn.com |
| Counsel for the Debtor | Hayward & Associates PLLC | Melissa S. Hayward, Zachery Z. Annable | MHayward@HaywardFirm.com; ZAnnable@HaywardFirm.com |
| Counsel for the Dugaboy Investment Trust and Get Good Trust | Heller, Draper & Horn, L.L.C. | Douglas S. Draper, Leslie A. Collins, Greta M. Brouphy | ddraper@hellerdraper.com; lcollins@hellerdraper.com; gbrouphy@hellerdraper.com |
| Equity Holders | Hunter Mountain Investment Trust | c/o Rand Advisors LLC | Jhonis@RandAdvisors.com |
| IRS | Internal Revenue Service | Attn Susanne Larson | SBSE.Insolvency.Balt@irs.gov |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | Mimi.M.Wong@irscounsel.treas.gov |
| Counsel to Crescent TC Investors, L.P. | Jackson Walker L.L.P. | Michael S. Held | mheld@jw.com |
| Secured Creditor | Jefferies LLC | Director of Compliance | cbianchi@jefferies.com |
| Secured Creditor | Jefferies LLC | Office of the General Counsel | cbianchi@jefferies.com |
| Counsel to the Redeemer Committee of the Highland Crusader Fund | Jenner & Block LLP | Marc B. Hankin, Richard Levin | mhankin@jenner.com; rlevin@jenner.com |
| Counsel for CCS Medical, Inc. | Jones Day | Amanda Rush | asrush@jonesday.com |
| Counsel to the Issuers (group of 25 separate Cayman issuers of loan) | Jones Walker LLP | Joseph E. Bain, Amy K. Anderson | jbain@joneswalker.com; aanderson@joneswalker.com |
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors L.P., et al | K&L Gates LLP | Artoush Varshosaz | artoush.varshosaz@klgates.com |
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors L.P., et al | K&L Gates LLP | James A. Wright III | james.wright@klgates.com |

**Appx. 00277**

**Exhibit A**
Core/2002 Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., et al | K&L Gates LLP | Stephen G. Topetzes | stephen.topetzes@klgates.com |
| Counsel for CLO Holdco, Ltd. | Kane Russell Coleman Logan PC | John J. Kane | jkane@krcl.com |
| Counsel for Highland CLO Funding Ltd. | King & Spalding LLP | Paul R. Bessette | pbessette@kslaw.com |
| Counsel for BET Investments II, L.P. | Kurtzman Steady, LLC | Jeffrey Kurtzman, Esq. | Kurtzman@kurtzmansteady.com |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Andrew Clubok, Sarah Tomkowiak | Andrew.Clubok@lw.com; Sarah.Tomkowiak@lw.com |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Asif Attarwala, Kathryn K. George | asif.attarwala@lw.com; Kathryn.George@lw.com |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Jeffrey E. Bjork, Kimberly A. Posin | jeff.bjork@lw.com; kim.posin@lw.com |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Zachary F. Proulx | Zachary.Proulx@lw.com |
| Counsel to Coleman County TAD, Kaufman County, Upshur County, Fannin CAD, Tarrant County, Grayson County, Allen ISD, Dallas County, Irving ISD, and Rockwall CAD | Linebarger Goggan Blair & Sampson LLP | Elizabeth Weller, Laurie A. Spindler | dallas.bankruptcy@publicans.com |
| Counsel for Jack Yang and Brad Borud | Loewinsohn Flegle Deary Simon LLP | Daniel P. Winikka | danw@lfdslaw.com |
| Creditor | Lynn Pinker Cox & Hurst, L.L.P. | Michael K. Hurst, Esq. | mhurst@lynnllp.com |
| Equity Holders | Mark K. Okada | | mokadadallas@gmail.com |
| Counsel to the Redeemer Committee of the Highland Crusader Fund | Morris, Nichols, Arsht & Tunnell LLP | Curtis S. Miller, Kevin M. Coen | rdehney@mnat.com; cmiller@mnat.com |
| Counsel to Meta-e Discovery, LLC | Morrison Cohen LLP | Joseph T. Moldovan, Esq. & Sally Siconolfi, Esq. | bankruptcy@morrisoncohen.com |
| Bank | NexBank | John Danilowicz | john.holt@nexbankcapital.com |
| Counsel to California Public Employees' Retirement System ("CalPERS") | Nixon Peabody LLP | Louis J. Cisz, III, Esq. | lcisz@nixonpeabody.com |
| SEC Headquarters | Office of General Counsel | Securities & Exchange Commission | SECBankruptcy-OGC-ADO@SEC.GOV |
| US Trustee for Northern District of TX | Office of the United States Trustee | Lisa L. Lambert, Esq | lisa.l.lambert@usdoj.gov |
| Counsel for the Debtor | Pachulski Stang Ziehl & Jones LLP | John A. Morris and Gregory V. Demo | jmorris@pszjlaw.com; gdemo@pszjlaw.com |
| Counsel for the Debtor | Pachulski Stang Ziehl & Jones LLP | Richard M. Pachulski, Jeffrey N. Pomerantz, Ira D. Kharasch, James E. O'Neill | rpachulski@pszjlaw.com; jpomerantz@pszjlaw.com; ikharasch@pszjlaw.com; joneill@pszjlaw.com |
| Counsel for the Debtor | Pachulski Stang Ziehl & Jones LLP | Richard M. Pachulski, Jeffrey N. Pomerantz, Ira D. Kharasch, James E. O'Neill | rpachulski@pszjlaw.com; jpomerantz@pszjlaw.com; ikharasch@pszjlaw.com; joneill@pszjlaw.com |
| Pension Benefit Guaranty Corporation ("PBGC") | Pension Benefit Guaranty Corporation | Michael I. Baird | baird.michael@pbgc.gov; efile@pbgc.gov |
| Counsel to City of Garland, Garland ISD, Wylie ISD , Plano ISD | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | Linda D. Reece | lreece@pbfcm.com |
| Delaware counsel to Alvarez & Marsal CRF Management LLC | Potter Anderson & Corroon LLP | Jeremy W. Ryan, Esq., R. Stephen McNeill, Esq. & D. Ryan Slaugh, Esq. | jryan@potteranderson.com; rmcneill@potteranderson.com; rslaugh@potteranderson.com |
| Secured Creditor | Prime Brokerage Services | Jefferies LLC | cbianchi@jefferies.com |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Richards, Layton & Finger PA | Michael J. Merchant, Sarah E. Silveira | merchant@rlf.com; silveira@rlf.com |
| Counsel to Hunter Mountain Trust | Rochelle McCullough, LLP | E. P. Keiffer | pkeiffer@romclaw.com |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Issac Leventon (the "Senior Employees") and CPCM, LLC | Ross & Smith, PC | Judith W. Ross, Frances A. Smith, Eric Soderlund | judith.ross@judithwross.com; frances.smith@judithwross.com; eric.soderlund@judithwross.com |
| Counsel to the Intertrust Entities and the Issuers (group of 25 separate Cayman issuers of loan) | Schulte Roth & Zabel LLP | David J. Karp, James V. Williams III | david.karp@srz.com; jay.williams@srz.com |
| SEC Regional Office | Securities & Exchange Commission | Richard Best, Regional Director | bankruptcynoticeschr@sec.gov; nyrobankruptcy@sec.gov |
| SEC Regional Office | Securities & Exchange Commission | Sharon Binger, Regional Director | philadelphia@sec.gov |
| Counsel to Official Committee of Unsecured Creditors | Sidley Austin LLP | Matthew Clemente, Alyssa Russell, Elliot A. Bromagen | mclemente@sidley.com; alyssa.russell@sidley.com; ebromagen@sidley.com |
| Counsel to Official Committee of Unsecured Creditors | Sidley Austin LLP | Penny P. Reid, Paige Holden Montgomery, Charles M. Person, Juliana Hoffman | preid@sidley.com; pmontgomery@sidley.com; cpersons@sidley.com; jhoffman@sidley.com |
| Counsel to Patrick Daugherty | Spencer Fane LLP | Jason P. Kathman | jkathman@spencerfane.com |

**Exhibit A**
Core/2002 Service List
Served via Electronic Mail

| Description | CreditorName | CreditorNoticeName | Email |
|---|---|---|---|
| DE Secretary of State | State of Delaware | Division of Corporations - Franchise Tax | dosdoc_bankruptcy@state.de.us |
| Counsel to the Hunter Mountain Trust ("Hunter") | Sullivan Hazeltine Allinson LLC | William A. Hazeltine, Esq. | whazeltine@sha-llc.com |
| Equity Holders | The Dugaboy Investment Trust | | gscott@myersbigel.com |
| Equity Holders | The Mark and Pamela Okada Family Trust - Exempt Trust #1 | | mokadadallas@gmail.com |
| Equity Holders | The Mark and Pamela Okada Family Trust - Exempt Trust #2 | | mokadadallas@gmail.com |
| Counsel to the United States Internal Revenue Service | U.S. Department of Justice, Tax Division | David G. Adams | david.g.adams@usdoj.gov |
| United States Attorney General | United States Attorney General | U.S. Department of Justice | askdoj@usdoj.gov |
| Counsel for NexPoint Real Estate Partners, LLC F/K/A HCRE Partners, LLC | Wick Phillips Gould & Martin, LLP | Brant C. Martin, Jason M. Rudd, Lauren K. Drawhorn | brant.martin@wickphillips.com; jason.rudd@wickphillips.com; lauren.drawhorn@wickphillips.com |
| Counsel to Acis Capital Management GP LLC and Acis Capital Management, L.P. (collectively, "Acis") | Winstead PC | Rakhee V. Patel, Phillip Lamberson | rpatel@winstead.com; plamberson@winstead.com; achiarello@winstead.com |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: David Neier | dneier@winston.com |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: Katherine A. Preston | kpreston@winston.com |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: Thomas M. Melsheimer; Natalie L. Arbaugh | tmelsheimer@winston.com; narbaugh@winston.com |

**Appx. 00279**

# EXHIBIT B

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 7 of 175

**Exhibit B**
Core/2002 Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel for Collin County Tax Assessor/Collector | Abernathy, Roeder, Boyd & Hullett, P.C. | Chad Timmons, Larry R. Boyd, Emily M. Hahn | 1700 Redbud Blvd, Ste. 300 | | | McKinney | TX | 75069 |
| Counsel for NexBank | Alston & Bird LLC | Jared Slade | Chase Tower | 2200 Ross Avenue | | Dallas | TX | 75201 |
| Counsel for NexBank | Alston & Bird LLP | Jonathan T. Edwards | One Atlantic Center | 1201 West Peachtree Street | | Atlanta | GA | 30309 |
| Counsel to Jefferies LLC | Ashby & Geddes, P.A. | William P. Bowden, Esq., Michael D. DeBaecke, Esq. | 500 Delaware Avenue, 8th Floor | PO Box 1150 | | Wilmington | DE | 19899-1150 |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Isaac Leventon (the "Senior Employees") and CPCM, LLC | Baker & McKenzie LLP | Debra A. Dandeneau | 452 Fifth Ave | | | New York | NY | 10018 |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Isaac Leventon (the "Senior Employees") and CPCM, LLC | Baker & McKenzie LLP | Michelle Hartmann | 1900 North Pearl | Suite 1500 | | Dallas | TX | 75201 |
| Counsel for NWCC, LLC | Barnes & Thornburg LLP | Thomas G. Haskins, Jr. | 2121 North Pearl Street, Suite 700 | | | Dallas | TX | 75201 |
| Bank | BBVA | Michael Doran | 8080 North Central Expressway | Suite 1500 | | Dallas | TX | 75206 |
| Counsel to Acis Capital Management GP LLC and Acis Capital Management, L.P. (collectively, "Acis") | Blank Rome LLP | John E. Lucian, Josef W. Mintz | 1201 N. Market Street, Suite 800 | | | Wilmington | DE | 19801 |
| Counsel to James Dondero | Bonds Ellis Eppich Schafer Jones LLP | John Y. Bonds, III, Bryan C. Assink | 420 Throckmorton Street, Suite 1000 | | | Fort Worth | TX | 76102 |
| Counsel to Oracle America, Inc. | Buchalter, A Professional Corporation | Shawn M. Christianson, Esq. | 55 Second Street, 17th Floor | | | San Francisco | CA | 94105-3493 |
| Counsel for UBS Securities LLC and UBS AG, London Branch | Butler Snow LLP | Martin A. Sosland and Candice M. Carson | 2911 Turtle Creek Blvd. | Suite 1400 | | Dallas | TX | 75219 |
| Counsel to Integrated Financial Associates Inc. | Carlyon Cica Chtd. | Candace C. Carlyon, Esq., Tracy M. Osteen, Esq. | 265 E. Warm Springs Road, Suite 107 | | | Las Vegas | NV | 89119 |
| Counsel to the Intertrust Entities and the CLO Entities | Chipman, Brown, Cicero & Cole, LLP | Mark L. Desgrosseilliers | Hercules Plaza | 1313 North Market Street, Suite 5400 | | Wilmington | DE | 19801 |
| Creditor | Cole, Schotz, Meisel, Forman & Leonard, P.A. | | 301 Commerce Street, Suite 1700 | | | Fort Worth | TX | 76102 |
| Counsel to Siepe LLC | Condon Tobin Sladek Thornton PLLC | J. Seth Moore | 8080 Park Lane, Suite 700 | | | Dallas | TX | 75231 |
| Counsel to Patrick Daugherty ("Mr. Daugherty") | Cross & Simon LLC | Michael L. Vild, Esquire | 1105 N. Market Street, Suite 901 | | | Wilmington | DE | 19801 |
| Counsel for BH Equities, L.L.C. | Dentons US LLP | Casey Doherty | 1221 McKinney Street, Suite 1900 | | | Houston | TX | 77010 |
| Counsel to Jefferies LLC | Dentons US LLP | Lauren Macksoud, Esq. | 1221 Avenue of the Americas | | | New York | NY | 10020-1089 |
| Counsel to Jefferies LLC | Dentons US LLP | Patrick C. Maxcy, Esq. | 233 South Wacker Drive | Suite 5900 | | Chicago | IL | 60606-6361 |
| Counsel to Acis Capital Management, LP and Acis Capital Management GP, LLC ("Creditors") and Joshua N. Terry, and Jennifer G. Terry | Forshey & Prostok LLP | Jeff P. Prostok, J. Robert Forshey, Suzanne K. Rosen | 777 Main Street, Suite 1550 | | | Fort Worth | TX | 76102 |
| Secured Creditor | Frontier State Bank | Attn: Steve Elliot | 5100 South I-35 Service Road | | | Oklahoma City | OK | 73129 |

Highland Capital Management, L.P.
Case No. 19-34054

Page 1 of 5

**Appx. 00281**

**Exhibit B**
Core/2002 Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel to the Redeemer Committee of the Highland Crusader Fund | Frost Brown Todd LLC | Mark A. Platt | 100 Crescent Court, Suite 350 | | | Dallas | TX | 75201 |
| Counsel to Alvarez & Marsal CRF Management LLC as Investment Manager of the Highland Crusader Funds | Gibson, Dunn & Crutcher LLP | Marshall R. King, Esq., Michael A. Rosenthal, Esq. & Alan Moskowitz, Esq. | 200 Park Avenue | | | New York | NY | 10066 |
| Counsel to Alvarez & Marsal CRF Management LLC as Investment Manager of the Highland Crusader Funds | Gibson, Dunn & Crutcher LLP | Matthew G. Bouslog, Esq. | 3161 Michelson Drive | | | Irvine | CA | 92612 |
| Counsel for the Dugaboy Investment Trust and Get Good Trust | Heller, Draper & Horn, L.L.C. | Douglas S. Draper, Leslie A. Collins, Greta M. Brouphy | 650 Poydras Street, Suite 2500 | | | New Orleans | LA | 70130 |
| Equity Holders | Hunter Mountain Investment Trust | c/o Rand Advisors LLC | John Honis | 87 Railroad Place Ste 403 | | Saratoga Springs | NY | 12866 |
| IRS | Internal Revenue Service | Attn Susanne Larson | 31 Hopkins Plz Rm 1150 | | | Baltimore | MD | 21201 |
| IRS | Internal Revenue Service | Centralized Insolvency Operation | PO Box 7346 | | | Philadelphia | PA | 19101-7346 |
| Counsel to Crescent TC Investors, L.P. | Jackson Walker L.L.P. | Michael S. Held | 2323 Ross Avenue, Suite 600 | | | Dallas | TX | 75201 |
| Secured Creditor | Jefferies LLC | Director of Compliance | 520 Madison Avenue, 16th Floor | Re Prime Brokerage Services | | New York | NY | 10022 |
| Secured Creditor | Jefferies LLC | Office of the General Counsel | 520 Madison Avenue, 16th Floor | Re Prime Brokerage Services | | New York | NY | 10022 |
| Counsel to the Redeemer Committee of the Highland Crusader Fund | Jenner & Block LLP | Marc B. Hankin, Richard Levin | 919 Third Avenue | | | New York | NY | 10022-3908 |
| Counsel for CCS Medical, Inc. | Jones Day | Amanda Rush | 2727 N. Harwood Street | | | Dallas | TX | 75201 |
| Counsel to the Issuers (group of 25 separate Cayman issuers of loan) | Jones Walker LLP | Joseph E. Bain, Amy K. Anderson | 811 Main Street, Suite 2900 | | | Houston | TX | 77002 |
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., et al | K&L Gates LLP | Artoush Varshosaz | 1717 Main Street, Suite 2800 | | | Dallas | TX | 75201 |
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., et al | K&L Gates LLP | James A. Wright III | 1 Lincoln Street | | | Boston | MA | 02110 |
| Counsel for Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P., et al | K&L Gates LLP | Stephen G. Topetzes | 1601 K Street, NW | | | Washington | DC | 20006-1600 |
| Counsel to CLO Holdco, Ltd. | Kane Russell Coleman Logan PC | John J. Kane | 901 Main Street, Suite 5200 | | | Dallas | TX | 75242-1699 |
| Secured Creditor | KeyBank National Association | as Administrative Agent | 225 Franklin Street, 18th Floor | | | Boston | MA | 02110 |
| Secured Creditor | KeyBank National Association | as Agent | 127 Public Square | | | Cleveland | OH | 44114 |
| Counsel for Highland CLO Funding Ltd. | King & Spalding LLP | Paul R. Bessette | 500 West 2nd St., Suite 1800 | | | Austin | TX | 78701-4684 |
| Counsel to BET Investments II, L.P. | Kurtzman Steady, LLC | Jeffrey Kurtzman, Esq. | 401 S. 2nd Street, Suite 200 | | | Philadelphia | PA | 19147 |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Andrew Clubok, Sarah Tomkowiak | 555 Eleventh Street, NW, Suite 1000 | | | Washington | DC | 20004 |

Exhibit B
Core/2002 Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Asif Attarwala, Kathryn K. George | 330 N. Wabash Avenue, Ste. 2800 | | | Chicago | IL | 60611 |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Jeffrey E. Bjork, Kimberly A. Posin | 355 South Grand Avenue, Ste. 100 | | | Los Angeles | CA | 90071 |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Latham & Watkins LLP | Zachary F. Proulx | 1271 Avenue of the Americas | | | New York | NY | 10020 |
| Counsel to Coleman County TAD, Kaufman County, Upshur County, Fannin CAD, Tarrant County, Grayson County, Allen ISD, Dallas County, Irving ISD, and Rockwall CAD | Linebarger Goggan Blair & Sampson LLP | Elizabeth Weller, Laurie A. Spindler | 2777 N. Stemmons Freeway | Suite 1000 | | Dallas | TX | 75207 |
| Counsel for Jack Yang and Brad Borud | Loewinsohn Flegle Deary Simon LLP | Daniel P. Winikka | 12377 Merit Drive, Suite 900 | | | Dallas | TX | 75251 |
| Creditor | Lynn Pinker Cox & Hurst, L.L.P. | Michael K. Hurst, Esq. | 2100 Ross Avenue, Ste 2700 | | | Dallas | TX | 75201 |
| Equity Holders | Mark K. Okada | | 300 Crescent Court | Suite 700 | | Dallas | TX | 75201 |
| Counsel to the Redeemer Committee of the Highland Crusader Fund | Morris, Nichols, Arsht & Tunnell LLP | Curtis S. Miller, Kevin M. Coen | 1201 North Market Street, Suite 1600 | | | Wilmington | DE | 19801 |
| Counsel to Meta-e Discovery, LLC | Morrison Cohen LLP | Joseph T. Moldovan, Esq. & Sally Sicorolfi, Esq. | 909 Third Avenue | | | New York | NY | 10022 |
| Bank | NexBank | John Danilowicz | 2515 McKinney Ave | Ste 1100 | | Dallas | TX | 75201 |
| Counsel to California Public Employees' Retirement System ("CalPERS") | Nixon Peabody LLP | Louis J. Cisz, III, Esq. | One Embarcadero Center, 32nd Floor | | | San Francisco | CA | 94111 |
| SEC Headquarters | Office of General Counsel | Securities & Exchange Commission | 100 F St NE | | | Washington | DC | 20554 |
| Texas Attorney General | Office of General Counsel | Ken Paxton | 300 W. 15th Street | | | Austin | TX | 78701 |
| Attorney General of the United States | Office of the Attorney General | | Main Justice Building, Room 5111 | 10th & Constitution Avenue, N.W. | | Washington | DC | 20530 |
| US Attorneys Office for Northern District of TX | Office of the United States Attorney | | 1100 Commerce Street, 3rd Floor | | | Dallas | TX | 75202 |
| US Trustee for District of DE | Office of the United States Trustee | Linda Casey | 844 King St Ste 2207 | Lockbox 35 | | Wilmington | DE | 19801 |
| US Trustee for Northern District of TX | Office of the United States Trustee | Lisa L. Lambert, Esq | 1100 Commerce Street, Room 976 | Earle Cabell Federal Building | | Dallas | TX | 75242 |
| US Trustee for District of DE | Office of the United States Trustee Delaware | Jane M. Leamy | J. Caleb Boggs Federal Building | 844 King St Ste 2207 | Lockbox 35 | Wilmington | DE | 19801 |
| Pension Benefit Guaranty Corporation ("PBGC") | Pension Benefit Guaranty Corporation | Michael I. Baird | Office of the General Counsel | 1200 K Street, N.W. | | Washington | DC | 20005-4026 |
| Counsel to City of Garland, Garland ISD, Wylie ISD , Plano ISD | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | Linda D. Reece | 1919 S. Shiloh Rd., Suite 310 | | | Garland | TX | 75042 |
| Delaware counsel to Alvarez & Marsal CRF Management LLC | Potter Anderson & Corroon LLP | Jeremy W. Ryan, Esq., R. Stephen McNeill, Esq, & D. Ryan Slaugh, Esq. | 1313 North Market Street, 6th Floor | | | Wilmington | DE | 19801 |
| Secured Creditor | Prime Brokerage Services | Jefferies LLC | 520 Madison Avenue | | | New York | NY | 10022 |
| Counsel to UBS Securities LLC and UBS AG London Branch ("UBS") | Richards, Layton & Finger PA | Michael J. Merchant, Sarah E. Silveira | One Rodney Square | 920 North King Street | | Wilmington | DE | 19801 |

**Exhibit B**
Core/2002 Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel to Hunter Mountain Trust | Rochelle McCullough, LLP | E. P. Keiffer | 325 North St. Paul Street, Suite 4500 | | | Dallas | TX | 75201 |
| Counsel for Scott Ellington, Thomas Surgent, Frank Waterhouse, and Isaac Leventon (the "Senior Employees") and CPCM, LLC | Ross & Smith, PC | Judith W. Ross, Frances A. Smith, Eric Soderlund | 700 North Pearl Street, Suite 1610 | | | Dallas | TX | 75201 |
| Counsel to the Intertrust Entities and the Issuers (group of 25 separate Cayman issuers of loan) | Schulte Roth & Zabel LLP | David J. Karp, James V. Williams III | 919 Third Avenue | | | New York | NY | 10022 |
| SEC Regional Office | Securities & Exchange Commission | Richard Best, Regional Director | New York Regional Office | Brookfield Place, Suite 400 | 200 Vesey Street | New York | NY | 10281 |
| SEC Regional Office | Securities & Exchange Commission | Sharon Binger, Regional Director | Philadelphia Regional Office | One Penn Center, Suite 520 | 1617 JFK Boulevard | Philadelphia | PA | 19103 |
| Counsel to Official Committee of Unsecured Creditors | Sidley Austin LLP | Matthew Clemente, Alyssa Russell, Elliot A. Bromagen | One South Dearborn Street | | | Chicago | IL | 60603 |
| Counsel to Official Committee of Unsecured Creditors | Sidley Austin LLP | Penny P. Reid, Paige Holden Montgomery, Charles M. Person, Juliana Hoffman | 2021 McKinney Avenue Suite 2000 | | | Dallas | TX | 75201 |
| Counsel to Patrick Daugherty | Spencer Fane LLP | Jason P. Kathman | 5700 Granite Parkway, Suite 650 | | | Plano | TX | 75024 |
| TX Comptroller of Public Accounts | State Comptroller of Public Accounts | Revenue Accounting Division-Bankruptcy Section | PO Box 13258 | | | Austin | TX | 78711 |
| DE Secretary of State | State of Delaware | Division of Corporations - Franchise Tax | 401 Federal Street | PO Box 898 | | Dover | DE | 19903 |
| Equity Holders | Strand Advisors, Inc. | | 300 Crescent Court | Suite 700 | | Dallas | TX | 75201 |
| Counsel to the Hunter Mountain Trust ("Hunter") | Sullivan Hazeltine Allinson LLC | William A. Hazeltine, Esq. | 919 North Market Street, Suite 420 | | | Wilmington | DE | 19801 |
| TX AG Office | Texas Attorney Generals Office | Bankruptcy-Collections Division | PO Box 12548 | | | Austin | TX | 78711-2548 |
| Equity Holders | The Dugaboy Investment Trust | | 300 Crescent Court | Suite 700 | | Dallas | TX | 75201 |
| Equity Holders | The Mark and Pamela Okada Family Trust - Exempt Trust #1 | | 300 Crescent Court | Suite 700 | | Dallas | TX | 75201 |
| Equity Holders | The Mark and Pamela Okada Family Trust - Exempt Trust #2 | | 300 Crescent Court | Suite 700 | | Dallas | TX | 75201 |
| Counsel to the United States Internal Revenue Service | U.S. Department of Justice, Tax Division | David G. Adams | 717 N. Harwood St., Suite 400 | | | Dallas | TX | 75201 |
| United States Attorney General | United States Attorney General | William Barr, Esquire | | 950 Pennsylvania Avenue, NW | Room 4400 | Washington | DC | 20530-0001 |
| United States Bankruptcy Court | United States Bankruptcy Court | Honorable Stacey G. Jernigan | Northern District of Texas - Dallas Division | Earle Cabell Federal Building | 1100 Commerce St., Rm. 1254 | Dallas | TX | 75242-1496 |
| U.S. Department of the Treasury | US Department of the Treasury | Office of General Counsel | 1500 Pennsylvania Avenue, NW | | | Washington | DC | 20220 |
| Counsel for NexPoint Real Estate Partners, LLC F/K/A HCRE Partners, LLC | Wick Phillips Gould & Martin, LLP | Brant C. Martin, Jason M. Rudd, Lauren K. Drawhorn | 3131 McKinney Avenue, Suite 500 | | | Dallas | TX | 75204 |

**Exhibit B**
Core/2002 Service List
Served via First Class Mail

| Description | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| Counsel to Acis Capital Management GP LLC and Acis Capital Management, L.P. (collectively, "Acis") | Winstead PC | Rakhee V. Patel, Phillip Lamberson | 2728 N. Harwood Street, Suite 500 | | | Dallas | TX | 75201 |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: David Neier | 200 Park Avenue | | | New York | NY | 10166-4193 |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: Katherine A. Preston | 800 Capitol Street, Suite 2400 | | | Houston | TX | 77002 |
| Counsel for Jean Paul Sevilla and Hunter Covitz (the "Employees") | Winston & Strawn LLP | Attn: Thomas M. Melsheimer; Natalie L. Arbaugh | 2121 N. Pearl Street, Suite 900 | | | Dallas | TX | 75201 |
| Delaware Division of Revenue | Zillah A. Frampton | Bankruptcy Administrator | Delaware Division of Revenue | Carvel State Office Building, 8th Floor | 820 N. French Street | Wilmington | DE | 19801 |

Page 5 of 5

Highland Capital Management, L.P.
Case No. 19-34054

# EXHIBIT C

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 13 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| 13D Global Strategy and Research | | 491 N Main Street | | | Ketchum | ID | 83340-0000 | |
| 13D RESEARCH, INC | | PO BOX 2087 | 109 BOULDER VIEW LANE | | Ketchum | ID | 83340 | |
| 13D RESEARCH, INC | | 6115 Estate Smith Bay | Box 2/Suite 333 | | St. Thomas | VI | 00802-1304 | |
| 1564 Entertainment, LLC | | 391 E. Las Colinas Blvd. | #130-428 | | Irving | TX | 75039 | |
| 1st AMERICAN FIRE PROTECTION, INC | | PO BOX 2123 | | | Mansfield | TX | 76063-2123 | |
| 1st Partners & Co | | PO Box 141629 | | | Dallas | TX | 75222 | |
| 2011 PCDC Teachers Cup | | 25 Highland Park Village | #100-188 | | Dallas | TX | 75205 | |
| 2-10 HOME BUYERS | | 10375 E HARVARD AVE | | | Denver | CO | 80231 | |
| 2905 Maple LLC | | 2905 Maple Avenue | | | Dallas | TX | 75201 | |
| 299 Credit Finance Holdings LLC | | 875 Third Avenue | 10th Floor | | New York | NY | 10022 | |
| 300 Inc. | | 3805 Beltline Rd | | | Addison | TX | 75001 | |
| 4CAST Inc | | 420 Lexington Avenue, Suite 2147 | | | New York | NY | 10170 | |
| 4th Bin, Inc. | | 703 3rd Avenue | 6th Floor | | New York | NY | 10017 | |
| A. Dean Jenkins | | Address on File | | | | | | |
| A.S.A.P. Advisor Services | | 5000 Olde Towne Parkway | Suite 100 | | Marietta | GA | 30068 | |
| AA GMT | | 4700 AMERICAN BLVD MD1000 | | | Ft. Worth | TX | 76155 | |
| Aaron, Philip B. | | Address on File | | | | | | |
| ABALON BUSINESS MACHINES & SERVICES | | 60 E 42ND ST | | | New York | NY | 10167 | |
| Abayarathna, Sahan | | Address on File | | | | | | |
| Abbit Stonecypher | | Address on File | | | | | | |
| Aberdeen Loan Funding, Ltd. | c/o Walkers SPV Limited | Walker House 87 Mary Street | George Town | | Grand Cayman | | KY1-9002 | Cayman Islands |
| Aberdeen Loan Funding, Ltd. | Aberdeen Loan Funding, Ltd. c/o Walkers SPV Limited, Walker House | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Aberdeen Loan Funding, Ltd. and State Street Bank and Trust Company | | 87 Mary Street | George Town | | Grand Cayman | | 1-9902 | Cayman Islands |
| Aberdeen Loan Funding, Ltd. and State Street Bank and Trust Company | State Street Bank and Trust Company | 200 Clarendon St | Mail Code EUC 108 | | Boston | MA | 02116 | |
| Ableco, LLC | | 299 Park Avenue | Floor 21-23 | | New York | NY | 10171 | |
| Ablon and Co., PLLC | | 10000 N. Central Expy #400 | | | Dallas | TX | 75231 | |
| ABM | | PO Box 419860 | | | Boston | MA | 02241-9860 | |
| ABM Janitorial Services | | P.O. Box 951864 | | | Dallas | TX | 75395 | |
| ABM Texas General Services, Inc. | | 2020 Westridge Drive | | | Irving | TX | 75038-0000 | |
| About Faces Entertainment, LLC | | 5092 Dorsey Hall Drive | Suite 202 | | Ellicott City | MD | 21042 | |
| AboveNet Communications Inc. | | PO Box 79006 | | | City of Industry | CA | 91716-9006 | |
| Abraham Rondina | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 14 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Abrams & Bayliss LLP | John M. Seaman | 20 Montchanin Road, Suite 200 | | | Wilmington | DE | 19807 | |
| Abrams Mediation | | 7616 Burns Run Suite 180 | | | Dallas | TX | 75248 | |
| Abrams Mediation | | 4901 LBJ Fwy | #150 | | Dallas | TX | 75244-6179 | |
| Absolute Entertainment | | 1517 Prudential Drive | | | Dallas | TX | 75235 | |
| ACA Compliance Group | | 8403 Colesville Road | Suite 870 | | Silver Spring | MD | 20910 | |
| Academy Engraving Inc | | 271 Madison Avenue | Suite 207 | | New York | NY | 10016 | |
| Accessibility Today | | PO Box 1757 | | | Roanoke | TX | 76262 | |
| Accountant General | Appleby Services (Bermuda) Ltd. | PO Box HM 1179 | | | Hamilton | | HM EX | BERMUDA |
| Accountant General | ATTN Lorna Phillips | M Q Services Limited Victoria Place | | | Hamilton | | HM 10 | BERMUDA |
| ACCOUNTEMPS | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| ACCOUNTEMPS | | FILE 73484 | | | San Francisco | CA | 94160-3484 | |
| Accuity Inc. dba NRS | | PO Box 7247-8077 | PO BOX 60000 | | Philadelphia | PA | 19170-8077 | |
| Acis Capital Management L.P. and Acis Capital Management GP, LLC, et al | | 3110 Webb Ave., Suite 203 | | | Dallas | TX | 75205 | |
| Acis Capital Management L.P. and Acis Capital Management GP, LLC, et al | Attn Annmarie Chiarello, Rakhee V. Patel | c/o Winstead PC | 500 Winstead Building | 2728 N. Harwood Street | Dallas | TX | 75201 | |
| Acis Capital Management L.P. and Acis Capital Management GP, LLC, et al | Brian P. Shaw | Rogge Dunn Group PC | 500 N. Akard St. Suite 1900 | | Dallas | TX | 75201 | |
| Acis Capital Management L.P. and Acis Capital Management GP, LLC, et al | James T. Bently | Schulte Roth & Zabel LLP | 919 Third Avenue | | New York | NY | 10022 | |
| Acis Capital Management L.P. and Acis Capital Management GP, LLC, et al | Joseph E. Bain | Jones Walker LLP | 811 Main St. Suite 2900 | | Houston | TX | 77002 | |
| Ackerman McQueen Inc. | | 1601 Northwest Expressway | Suite 1100 | | Oklahoma City | OK | 73118 | |
| ACMLP Claim, LLC | | 4514 Cole Ave., Suite 600 | | | Dallas | TX | 75205 | |
| Action Fire Pros | | 3709 S IH 35 | | | Waxahachie | TX | 75165 | |
| Action Shred of Texas | | 2835 Congressman Lane | | | Dallas | TX | 75220 | |
| Action Shred of Texas | | 1420 S. Barry Ave | | | Dallas | TX | 75223 | |
| Act-On Software, Inc. | | 121 SW Morrison STreet, Ste 1600 | | | Portland | OR | 97204 | |
| Ada Hsieh | | Address on File | | | | | | |
| ADAM DYBALA | | Address on File | | | | | | |
| Adam Energy Forum | | PO Box 802511 | | | Dallas | TX | 75380-2511 | |
| ADAM FALCON | | Address on File | | | | | | |
| Adam Hanson | | Address on File | | | | | | |
| Adam Kneller | | Address on File | | | | | | |
| Adam Ostermiller | | Address on File | | | | | | |
| ADAM PETERSON | | Address on File | | | | | | |
| Adam-Permian Energy Network | | 1439 Wakefield Dr. | | | Houston | TX | 77018 | |
| ADAM-Tulsa | Attn Melissa Turgeon | 3500 One Williams Center, MD 2600 | | | Tulsa | OK | 74172-0135 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 2 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 15 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Addleshaw Goddard LLP | | Sovereign House, PO Box 8 | Sovereign Street Leeds | | West Yorkshire | | LS1 1HQ | United Kingdom |
| Adeo Internet Marketing Inc. | | 2501 East Charleston Rd | | | Island Pond | VT | 05846 | |
| Adesso Process Service | | PO BOX 12621 | | | Albany | NY | 12212 | |
| Adeyemi Ogunkoya | | Address on File | | | | | | |
| ADISA | | 10401 North Meridian Street | Suite 202 | | Indianapolis | IN | 46290 | |
| AdMaster Compliance | | 1101 Arrow Point Drive | Suite 301 | | Cedar Park | TX | 78613 | |
| ADMIN .U.C. | State of Connecticut | Department of Labor | Employment Security Division | | Hartford | CT | 06104-2940 | |
| Admiral Communications | | 4505 Excel Pkwy, Ste 300 | | | Addison | TX | 75001 | |
| ADP | | 2735 Stemmons Fwy | | | Dallas | TX | 75207 | |
| ADP | | PO BOX 78415 | | | Phoenix | AZ | 85062-8415 | |
| ADP | | PO Box 31001-1568 | | | Pasadena | CA | 91110-1568 | |
| ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA | | PO BOX 70294 | | | San Juan | PR | 00936-8294 | |
| ADT SECURITY SERVICES, INC | ATTN M MALDONADO | 335 W 16th ST | | | New York | NY | 10011 | |
| ADT SECURITY SERVICES, INC | | PO BOX 371956 | | | Pittsburgh | PA | 15250-7956 | |
| Advanced Business Group, Inc. | | 520 Eighth Ave, 15th Flr | | | New York | NY | 10018 | |
| Advanced Discovery, Inc. | | 13915 N Mopac Expy | Suite 400 | | Austin | TX | 78728 | |
| Advanced Discovery, Inc. | | PO Box 102242 | | | Atlanta | GA | 30368-2242 | |
| Advanced Discovery, Inc. | | PO Box 3173 | | | Wichita | KS | 67201-3173 | |
| Advantage Data Inc. | | PO Box 961210 | | | Boston | MA | 02196-1210 | |
| Advent Software Inc. | Attn Bill Hall | 600 Townsend St., Suite 4000 | | | San Francisco | CA | 94103 | |
| Advent Software, Inc. | | PO BOX 823374 | | | Philadelphia | PA | 19182-3374 | |
| Advent Software, Inc. | | Three Lincoln Centre | 5430 LBJ Freeway Ste 800 | | Dallas | TX | 75240-0000 | |
| Advent Software, Inc. | | Dept 33096 PO Box 39000 | | | San Francisco | CA | 94139-3096 | |
| ADVENTURE PHOTO TOURS, INC. | | 3111 S VALLEY VIEW BLVD | X-106 | | Las Vegas | NV | 89102 | |
| ADVISOR CONSULTANT NETWORK INC | | 600 SUPERIOR AVE | SUITE 1300 | | Cleveland | OH | 44114 | |
| Advisor Group, Inc. | | PO Box 978516 | | | Dallas | TX | 75397-8516 | |
| Advisory Group Equity Services, Ltd. | | 444 Washington Street | Suite 407 | | Woburn | MA | 01801 | |
| Advocates Professional Services, Inc | | 119 North Park Ave, Suite 303 | | | Rockville Centre | NY | 11570 | |
| AERIAL FOCUS | | 4885 ALPHA RD | STE 155 | | Dallas | TX | 75244-4633 | |
| AeroIndustry Jobs, Inc | | PO Box 215 | | | Oxford | ME | 04270 | |
| Aetna | AETNA-MIDDLETOWN | PO BOX 88663 | | | Chicago | IL | 60695-1863 | |
| Aetna | Attn Lockbox No 804735 | 350 East Devon Avenue | | | Itasca | IL | 60143 | |
| Aetna | | 10275 W. Higgins Rd | Suite 500 | | Rosemont | IL | 60018 | |
| Aetna | | PO Box 804735 | | | Chicago | IL | 60680-4108 | |
| Aetna | | PO Box 88860 | | | Chicago | IL | 60695-1860 | |
| Aetna-COBRA | | COBRA/Special Plans | | | Secaucus | NJ | 07188-0050 | |
| Aetna-FSA Payment Remittance | Aetna-Middletown | PO Box 13504 | PO Box 13050 | | Newark | NJ | 07188-0504 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 16 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Afshan Mohammed | | Address on File | | | | | | |
| Agio, LLC | | 201 David L Boren Blvd | Ste 250 | | Norman | OK | 73072 | |
| Agren Blando Court Reporting Video Inc. | | 216 16th Street | Suite 650 | | Denver | CO | 80202 | |
| Aguilar Movers, Inc. | | 1206 Edwards Circle | | | Dallas | TX | 75224 | |
| AHLUWALIA, SANJIV | | Address on File | | | | | | |
| AI Insight | | P.O. Box 639250 | | | Cincinnati | OH | 45263-9250 | |
| AICPA | | PO BOX 10069 | | | Newark | NJ | 07101-3069 | |
| AICPA | | Multiple Member Payment | PO Box 2219 | | Jersey City | NJ | 07303-2219 | |
| AIG Advisor Group, Inc. | | PO Box 978516 | | | Dallas | TX | 75397-8516 | |
| AIMSE | ATTN Joyce Welsh | 12100 Sunset Hills Road | Suite 130 | | Reston | VA | 20190 | |
| Aimware, Inc | | 16 Olde Taverne Lane | | | Amesbury | MA | 01913 | |
| AIQ, Inc. | | 270 Rutherford Blvd | 2nd Floor | | Clifton | NJ | 07014 | |
| AIQ, Inc. | | 1500 Broadway | Suite 2900 | | New York | NY | 10036 | |
| Air Graffiti Dallas | | 4901 Harbor Ct | | | Flower Mound | TX | 75022 | |
| AIRBAND COMMUNICATIONS, INC | | 75 Remittance Drive | Suite 6566 | | Chicago | IL | 60675-6566 | |
| Aire Dynamics | | 2305 E BELTLINE RD | STE 190 | | Carrollton | TX | 75006 | |
| Aire Dynamics | | 305 E Beltline Rd Ste 190 | | | Carrollton | TX | 75006 | |
| Aire Dynamics | | 3250 WEST STORY RD #102 | | | Irving | TX | 75038 | |
| AirWatch, LLC | | 931 Monroe Drive NE | Ste 102-303 | | Atlanta | GA | 30308 | |
| AirWatch, LLC | | PO Box 742332 | | | Atlanta | GA | 30374-2332 | |
| Akerman Senterfitt & Edison, PA | | P.O. Box 4906 | | | Orlando | FL | 32802 | |
| AKF Reporters, Inc. | | 436 Blvd of the Allies | | | Pittsburgh | PA | 15219-1314 | |
| Akin, Gump, Strauss, Hauer & Feld LLP | | 1333 New Hampshire Ave, NW | | | Washington | DC | 20036 | |
| Akin, Gump, Strauss, Hauer & Feld LLP | | DEPT. 7247-6827 | | | Philadelphia | PA | 19170-6827 | |
| Akin, Gump, Strauss, Hauer & Feld LLP | | Dept 7247-6838 | | | Philadelphia | DE | 19170-6838 | |
| Akin, Gump, Strauss, Hauer & Feld LLP | | Dept. 2909 | | | Carol Stream | IL | 60132-2909 | |
| Akin, Gump, Strauss, Hauer & Feld LLP | | 2300 N Field St Ste 1800 | | | Dallas | TX | 75201-2481 | |
| Alabama Department of Revenue | Individual and Corporate Tax Division | Corporate Income Tax Section | PO Box 327435 | | Montgomery | AL | 36132-7435 | |
| Alabama Power Service Organization | c/o Katrina Haynes | PO Box 1209 | | | Eufaula | AL | 36072 | |
| Alabama Sheriffs Youth Ranches | | 200 Crescent Ct Ste 1900 | | | Dallas | TX | 75201 | |
| Alan Adams | | Address on File | | | | | | |
| ALAN WELCH | | Address on File | | | | | | |
| Albion Computer Services | | 49 Berkely Square | | | London | | W1J 5AZ | United Kingdom |
| A-Legal | | 1201 Elm Street | Suite 2560 | | Dallas | TX | 75270 | |
| Alejandro Vargas | | Address on File | | | | | | |
| Alex Kanji | | Address on File | | | | | | |
| ALEX SOMERS | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 17 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Alexanders Mobility Services | | 2750 Miller Park N Ste 300 | | | Garland | TX | 750427-751 | |
| ALEXIS ZHOU | | Address on File | | | | | | |
| ALFERMANN, NICHOLAS | | Address on File | | | | | | |
| ALICE WANG | | Address on File | | | | | | |
| All American Entertainment | | 5790 Fayetteville Rd. | Ste. 200 | | Durham | NC | 27713 | |
| All Star Group, Inc | | 3835 E. Thousand Oaks Blvd | Suite 282 | | Westlake Village | CA | 91362 | |
| ALL SYSTEMS SERVICES | | 7901 WHISPERING WOODS LN. | | | N. Richland Hills | TX | 75240 | |
| Allan Huffman | | Address on File | | | | | | |
| ALLAN PAPWORTH | | Address on File | | | | | | |
| Allen ISD | Attn Elizabeth Weller | 2777 N. Stemmons Freeway | Suite 1000 | | Dallas | TX | 75207 | |
| Allen ISD | c/o Laurie A. Spindler, Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| ALLEN KIM | | Address on File | | | | | | |
| ALLEN, MICAELA S. | | Address on File | | | | | | |
| ALLEN, TARA | | Address on File | | | | | | |
| Allens Arthur Robinson | | GPO Box 50 | | | Sydney | NSW | 02001 | AUSTRALIA |
| Alliance Legal Staffing | | PO Box 670534 | | | Dallas | TX | 75367 | |
| ALLIANCE REPORTING LLC | | 3500 OAK LAWN AVE | SUITE 400 | | Dallas | TX | 75219 | |
| Allied Capital Partners | | PO BOX 676649 | | | Dallas | TX | 75267-6649 | |
| Allied Electronics Inc. | Accts Receivable Dept. | PO Box 2325 | | | Fort Worth | TX | 76113-2325 | |
| Allison Lam | c/o Frederik Michel | Address on File | | | | | | |
| Allison Taylor | | PO Box 187 | | | Dingmans Ferry | PA | 18328 | |
| ALPHA ELECTRICAL SERVICES INC | | 3727 HWY 138 | | | Stockbridge | GA | 30281 | |
| AlphaLit | | 8201 Greensboro Drive | Suite 717 | | McLean | VA | 22102 | |
| Alphasense, Inc. | | PO Box 37176 | | | San Francisco | CA | 94137-0176 | |
| Alpine Macro | | 1130 Sherbrooke St West PH1 | | | Montreal | QC | H3A2M8 | Canada |
| Alston & Bird LLP | | 1201 W. Peachtree Street | | | Atlanta | GA | 30309-3424 | |
| Alternative Asset Investment Mgmt LLC | | PO Box.5274 | | | New York | NY | 10185 | |
| Altex Electronics, Ltd. | | 11342 IH 35 North | | | San Antonio | TX | 78233 | |
| Altus Network Solutions, Inc. | | dba nFront Security | 4920 Atlanta Highway, Suite 313 | | Alpharetta | GA | 30004-2921 | |
| Alvarez & Marsal Global Forensic and Dispute Services | | 555 Thirteenth Street NW, 5th Floor West | | | Washington | DC | 20004 | |
| Alvarez & Marsal North America, LLC | | 2029 Century Park East, Suite 2060 | | | Los Angeles | CA | 90067 | |
| Alvarez and Marsal CRF Management, LLC | | 2029 Century Park East, Suite 2060 | | | Los Angeles | CA | 90067 | |
| ALVAREZ, ADRIANA | | Address on File | | | | | | |
| Alvaro Idoate Photographer | | 18 Tapia Street | | | San Juan | PR | 00911 | |
| Alvaro Magalhaes | | Address on File | | | | | | |
| AM Linen Rental | | 1611B Tantor Rd | | | Dallas | TX | 75229 | |
| Amanda Coussens | | Address on File | | | | | | |
| AMANDA RUDOLPH | | Address on File | | | | | | |
| Amazon Web Services, Inc. | Attn AWS Legal | 410 Terry Avenue North | | | Seattle | WA | 98109-5210 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| AMB Janitorial Services | American Building Maintenance | PO Box 97292 | | | Dallas | TX | 75397 | |
| Ambassador Funds Management Services | | Level 8, 3 Spring St | | | Sydney | N8W | 02000 | AUSTRALIA |
| Ambassador Funds Management Services | | STE 1202, LEVEL 12 | 3 SPRING ST | | SYDNEY | NSW | 02000 | AUSTRALIA |
| Amber Electrical Contractors | | 2251 Century Center Blvd | | | Irving | TX | 75062 | |
| Ambridge Partners LLC | | Due Diligence Services | 520 Eighth Ave, 25th Floor | | New York | NY | 10018 | |
| AMC Theaters | | 13731 Collections Center Drive | | | Chicago | IL | 60693 | |
| American Airlines | | 4255 Amon Carter Blvd | MD 4106 | | Fort Worth | TX | 76155 | |
| American Airlines, Inc. | | PO Box 619616 MD4106 | | | Ft Worth | TX | 76155-0000 | |
| AMERICAN APPRAISAL CANADA, INC | | 310 FRONT ST WEST Suite 710 | | | TORONTO | ON | M5V 3B5 | CANADA |
| American Arbitration Association | ATTN Kathleen Cantrell | 1750 Two Galleria Tower | 13455 Noel Road | | Dallas | TX | 75240 | |
| American Arbitration Association | | 120 Broadway. 21st Floor | | | New York | NY | 10271 | |
| American Arbitration Association | | Lackey Hershman, LLP | 3102 Oak Lawn Avenue, Suite 777 | | Dallas | TX | 75219 | |
| American Arbitration Association | | 13455 Noel Road, Suite 1750 | | | Dallas | TX | 75240 | |
| AMERICAN BANK NOTE COMPANY | | PO Box 1931 | | | Columbia | TN | 38402 | |
| American Banknote Corporation | Attention Patrick J. Gentile | 560 Sylvan Avenue | | | Englewood Cliffs | NJ | 07632 | |
| American Bar Association | | PO Box 4745 | | | Carol Stream | IL | 60197-4745 | |
| American Bldg. Maintenance Co. | | PO Box 951864 | | | Dallas | TX | 75395-1864 | |
| American Cancer Society | ATTN JAMIE SLOAN | 1199 S Belt Line Rd Ste 160 | | | Coppell | TX | 75019-4656 | |
| American Cancer Society | Attn Sharyn Klumb | 1199 S Belt Line Rd Ste 160 | | | Coppell | TX | 75019-4656 | |
| American Chamber of Commerce Resources | | 65 East Wacker Place | Suite 1804 | | Chicago | IL | 60601 | |
| American Express National Bank | | PO Box 3001 | | | Malvern, | PA | 19355-0701 | |
| American Federation of the Arts | | 305 East 47 St. | 10 th Floor | | New York | NY | 10017 | |
| American Furniture Rental | | 3201 E. Arkansas Lane | Suite 101 | | Arlington | TX | 76010 | |
| American Global Wealth Management | | 1600 Pennsylvania Avenue | | | McDonough | GA | 30253 | |
| American Heart Assoc. National Center | Attn SouthWest Affiliate-A/R | PO Box 4002903 | | | Des Moines | IA | 50340-2903 | |
| American Heart Association | c/o Cotes du Coeur | Attn Gabbi Sikes | 105 Decker Ct, Ste 200 | | Irving | TX | 75062 | |
| American Heart Association | | 2550 US Highway 1 | | | North Brunswick | NJ | 08902 | |
| American Heart Association | | Greater Kansas City Community Found | 1055 Broadway Blvd., Suite 130 | | Kansas City | MO | 64105 | |
| American Heart Association | | Southwest Affiliate | 105 Decker Court, Suite 200 | | Irving | TX | 75062 | |
| American Heart Association | | 7272 Greenville Avenue | | | Dallas | TX | 75231 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| American Heart Association | | 8200 Brookriver Dr | Suite N-100 | | Dallas | TX | 75247 | |
| American Heart Association | | SouthWest Affiliate - Acct Rec. | PO Box 4002031 | | Des Moines | IA | 50340-2031 | |
| AMERICAN IDENTITY | | PO BOX 219189 | | | Kansas City | MO | 6412121-9189 | |
| American Language Technologies | | 3941 Legacy Drive, #204 | PMB 199A | | Plano | TX | 75023 | |
| AMERICAN LOCKSMITHS | | 830 THIRD AVE | | | New York | NY | 10022 | |
| American Metal Market LLC | | Subscription Department | PO Box 15127 | | North Hollywood | CA | 91615-5127 | |
| American National Bank & Trust | Attention Commercial Lending | 2732 Midwestern Parkway | | | Wichita Falls | TX | 76308 | |
| American National Bank & Trust | | 2732 Midwestern Parkway | | | Wichita Falls | TX | 76308 | |
| American Portfolios - Kolinsky With Mgt. | Attn Ann Antunovich | 4250 Veterans Memorial Hwy | Ste 420 E | | Holbrook | NY | 11741 | |
| American Portfolios Financial Srvcs Inc. | | 4250 Veterans Memorial Hwy | | | Holbrook | NY | 11741 | |
| American Program Bureau, Inc. | | One Gateway Center | Suite 751 | | Newton | MA | 02458 | |
| American Red Cross | | PO Box 4002018 | | | Des Moines | IA | 50340-2018 | |
| AMERICAN RESEARCH BUREAU | | 2386 HERITAGE WAY | | | Salt Lake City | UT | 84109-1808 | |
| American Restaurant Association | | 2907 126th Ter E | | | Parrish | FL | 34219-1629 | |
| American Solutions for Business | | NW#7794 | PO Box 1450 | | Minneapolis | MN | 55485-7794 | |
| American Solutions for Business | | PO Box 218 | | | Glenwood | MN | 56334-0218 | |
| American Solutions for Business | | 8479 Solution Center | | | Chicago | IL | 60677-8004 | |
| American Stock Exchange | | PO Box 11181A | | | New York | NY | 10286-1181 | |
| American Stock Exchange | | BOX 757510 | | | Philadelphia | PA | 19175-7510 | |
| Ameriprise Financial Services, Inc. | | 50798 Ameriprise Financial Center | | | Minneapolis | MN | 55474 | |
| Amicus Search Group | | 700 N. Pearl St | Suite # 1640 | | Dallas | TX | 75201 | |
| AMR RAO | | 1020 MEDFORD RD | | | Pasadena | CA | 91107 | |
| AMX Environmental Ltd | | 2351 W Northwest HWY-STE 2118 | | | Dallas | TX | 75220-8406 | |
| Amy Nguyen | | Address on File | | | | | | |
| Analysis Group | | 111 Huntington Ave, 14th Floor | | | Boston | MA | 02199 | |
| ANAND DESAI | | Address on File | | | | | | |
| Anchor Advisory Services Corporation | | 4 Court St. | Ste 207 | | Plymouth | MA | 02360 | |
| ANDERSEN, DEREK C. | | Address on File | | | | | | |
| ANDERSON, KIRK | | Address on File | | | | | | |
| ANDREI DORENBAUM | | Address on File | | | | | | |
| ANDREI DORENBAUM | | Address on File | | | | | | |
| Andrew Hayton | | Address on File | | | | | | |
| Andrew Hilgenbrink | | Address on File | | | | | | |
| Andrew Lieberman | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Andrew Mangin | | Address on File | | | | | | |
| Andrew Merrick Homes LLC | | 13455 NOEL RD | STE 1330 | | Dallas | TX | 75240 | |
| Andrew Parmentier | | Address on File | | | | | | |
| Andrew Rosemore | | Address on File | | | | | | |
| ANDREW STONE | | Address on File | | | | | | |
| ANDREW YACENDA | | Address on File | | | | | | |
| Andrews Kurth | Scott A. Brister, Esq. | Address on File | | | | | | |
| Andrews Kurth | | Address on File | | | | | | |
| Andrews Kurth LLP | | 600 Travis St., Suite 4200 | | | Houston | TX | 77002 | |
| Andrews Kurth LLP | | PO Box 301276 | | | Dallas | TX | 75303-1276 | |
| Andrius Balta | | Address on File | | | | | | |
| Animal Defense League | | 11300 Nacogdoches Rd | | | San Antonio | TX | 78217-2318 | |
| Anish Tailor | | Address on File | | | | | | |
| Anna Englert | | Address on File | | | | | | |
| Ansarada Pty Limited | | 30 South Wacker Dr | 22 Floor | | Chicago | IL | 60606 | |
| ANTONOVICH, THOMAS G. | | Address on File | | | | | | |
| Aon Consulting, Inc. | | 445 Hutchinson Ave | Ste 900 | | Columbus | OH | 43235-0000 | |
| Aon Consulting, Inc. | | 29695 Network Place | | | Chicago | IL | 60673-1296 | |
| APIR Systems Ltd. | | PO Box 5446 | | | Kingston | ACT | 02604 | AUSTRALIA |
| APKE & KIMBRELL, LLP | | 1650 HIGHWAY 6 | STE 100 | | Sugar Land | TX | 77478 | |
| Appleby Corpoate Services (Bermuda) Ltd. | | PO Box HM 1179 | | | Hamilton | | HM EX | BERMUDA |
| Appliance Fixx Air & Heat | | PO Box 271258 | | | Flower Mound | TX | 75027-1258 | |
| Aptiviti, Inc. | | 145 W 28th St Fl 9 | | | New York | NY | 10001-6114 | |
| Aramark | | 2120 Hutton Dr | Suite 100 | | Carrollton | TX | 75006 | |
| ARCHON SOLICITORS | | MARTIN HOUSE | 5 MARTIN LANE | | London | | EC4R 0DP | United Kingdom |
| ARCpoint Labs of Irving | | 8925 Sterling Street | Suite 255 | | Irving | TX | 75063 | |
| ARGENTIC REAL ESTATE FINANCE LLC | | 40 WEST 57TH STREET | 29TH FLOOR | | New York | NY | 10019 | |
| Argo Partners | | 12 West 37th Street, 9th Floor | | | New York | NY | 10018 | |
| Argonaut Insurance Company | | 225 W Washington Street | 24th floor | | Chicago | IL | 60606-0000 | |
| Argosy Group | | PO Box 5094 | | | Brentwood | TN | 37024 | |
| Argosy Group | | Two Washingtonian Center | 9737 Washingtonian Blvd., Ste. 200 | | Gaithersburg | MD | 20878-7364 | |
| Argosy Group LLC | | 9737 Washingtonian Blvd. | Ste. 100 | | Gaithersburg | MD | 20878 | |
| Argus Software | | PO BOX 671591 | | | Dallas | TX | 75267 | |
| Argus Software | | 3050 Post Oak Blvd | Suite 900 | | Houston | TX | 77056 | |
| Ari L. Faneuil | | Address on File | | | | | | |
| Arizona Biltmore Resort & Hotel | | PO Box 740949 | | | Los Angeles | CA | 90074-0949 | |
| Arizona Corporation Commision | | Z Corp Commission - Securities DIV | 1300 West Washington Street, 3rd Floor | | Phoenix | AZ | 85007 | |
| ARIZONA DEPARTMENT OF REVENUE | ATTN Collections Division | 1600 West Monroe St | | | Phoenix | AZ | 85007 | |
| ARIZONA DEPARTMENT OF REVENUE | | PO BOX 29079 | | | Phoenix | AZ | 85038 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 21 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ARIZONA DEPARTMENT OF REVENUE | | PO Box 29085 | | | Phoenix | AZ | 85038-9085 | |
| Arizona Land Management Services, LLC | | 4900 North Scottsdale Rd | Suite 3000 | | Scottsdale | AZ | 85251 | |
| Arizona Land Management Services, LLC | | PO Box 13303 | | | Scottsdale | AZ | 85267-3303 | |
| Arizona Outback Adventures | | 17465 N 93rd St | | | Scottsdale | AZ | 85255-6324 | |
| Arizona PSPRS Trust | | E Camelback Road | Suite 200 | | Phoenix | AZ | 85016 | |
| Arkadin, Inc. | | Lockbox #32726 | Collection Center Dr | | Chicago | IL | 60693-0726 | |
| Arkansas Secretary of State | Business & Commercial Services Division | PO Box 8014 | | | Little Rock | AR | 72203 | |
| Arkansas Securities Department | | 201 E. Markham, Rm 300 | Heritage West Bldg | | Little Rock | AR | 72201 | |
| Arndell, Connor | | Address on File | | | | | | |
| Arnold, Jeffrey | | Address on File | | | | | | |
| Arnstein & Lehr LLP | | 120 South Riverside Plaza | Ste 1200 | | Chicago | IL | 60606-3910 | |
| Arntzen de Besche | | Address on File | | | | | | |
| ARORA, SANDEEP | | Address on File | | | | | | |
| Arredondo, Alba M. | | Address on File | | | | | | |
| Arris Western Corp. | | 718 N Buckner #316 | | | Dallas | TX | 75218 | |
| Arthouse Design | | 2373 Central Park Blvd | Suite 204 | | Denver | CO | 80238 | |
| Arthur Klausner | | Address on File | | | | | | |
| Article 1 | | Rua Eugen Germer, 86 | Blumenau | | Santa Catarina | | 89015–140 | BRAZIL |
| Artografx, Inc. | | 2611 Andjon | | | Dallas | TX | 75220 | |
| AS&K Services Limited | | PO Box HM 1179 | | | Hamilton | | HM EX | BERMUDA |
| Asante Phase I Community Association | | 1600 W Broadway | Suite 200 | | Tempe | AZ | 85282 | |
| Ashby & Geddes | | PO Box 1150 | | | Wilmington | DE | 19899 | |
| Ashley Van Hoef | | Address on File | | | | | | |
| Ashton Consulting Limited | | 9F, Atago East Building | 3-16-11 Nishishinbashi | | Minato-ku | Tokyo | 105-0003 | JAPAN |
| Ashurst LLP | | Time Square Tower | 7 Time Square | | New York | NY | 10036 | |
| ASI Business Solutions | | 820 W Sandy Lake Rd Ste 100 | | | Coppell | TX | 75019-4108 | |
| ASI Business Solutions | | 12801 N Stemmons Frwy Ste 710 | | | Dallas | TX | 75234-5881 | |
| ASI, Corporate | | 8181 Jetstar Drive | Suite 100 | | Irving | TX | 75063 | |
| ASI, Corporate | | 3860 W. Northwest Hwy | Suite 350 | | Dallas | TX | 75220 | |
| Asociacion Suzuki de Violin de PR | | Address on File | | | | | | |
| Aspen Publishers Inc. | | Villa Nevarez | 1026 calle 18 | | San Juan | PR | 00927 | |
| Aspen Publishers Inc. | | 7201 McKinney Circle | | | Frederick | MD | 21704 | |
| Aspen Publishers Inc. | | PO Box 64054 | | | Baltimore | MD | 21264-4054 | |
| Aspen Publishers Inc. | | 4829 INNOVATION WAY | | | Chicago | IL | 60682-0048 | |
| ASSAR, VATSAL | | Address on File | | | | | | |
| Asset Communications, Inc. | | 1764 Prospector Ave | Suite 1 | | Park City | UT | 84060 | |
| Asset-Backed Alert | | 5 Marine View Plaza # 400 | | | Hoboken | NJ | 07030-5795 | |
| ASSIST THE OFFICER FOUNDATION | | 1412 GRIFFIN ST E | | | Dallas | TX | 75215 | |
| Assn of Asian American Invest Managers | Attn Amy Gee | 50 California Street | Suite 2320 | | San Francisco | CA | 94111 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 22 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Assoc. Asian American Investment Mgrs | c/o V. Lau, Leading Edge Invest Advisors | 50 california Street, Suite 2320 | | | San Francisco | CA | 94111 | |
| Assoc. for American Innovation, Inc. | | 2200 Wilson Blvd | Suite 102-533 | | Arlington | VA | 22201 | |
| Assoc. of Asian America Investment Mgrs | | 1045 N. Utah St., Suite 512 | | | Arlington | VA | 22201 | |
| Assured Environments | | 45 Broadway | 10th Floor | | New York | NY | 10019 | |
| AST Equity Plan Solutions | | 123 S. Broad Street | Suite 1160 | | Philadelphia | PA | 19109 | |
| AST Equity Plan Solutions | | PO Box 12893 | | | Philadelphia | PA | 19176-0893 | |
| ASTRON SOLUTIONS | | 535 W 34TH ST | STE 407 | | New York | NY | 10001 | |
| ASW Law Limited | | Crawford House | 50 Cedar Avenue | | Hamilton | | 0HM11 | Bermuda |
| ASW Law Limited | | Crawford House | PO Box HM2879 | | Hamilton | | 0HMLX | Bermuda |
| AT&T | c/o Bankruptcy | 4331 Communications Dr | Flr 4W | | Dallas | TX | 75211 | |
| AT&T | | PO BOX 5012 | | | Carol Stream | IL | 60197 | |
| AT&T | | PO BOX 5019 | | | Carol Stream | IL | 60197 | |
| AT&T | | PO BOX 78045 | | | Phoenix | AZ | 85062 | |
| AT&T | | PO BOX 13128 | | | Newark | NJ | 07101-5628 | |
| AT&T | | PO BOX 13146 | | | Newark | NJ | 07101-5646 | |
| AT&T | | PO BOX 105068 | | | Atlanta | GA | 30348-5068 | |
| AT&T | | PO Box 105414 | | | Atlanta | GA | 30348-5414 | |
| AT&T | | PO BOX 5001 | | | Carol Stream | IL | 60197-5001 | |
| AT&T | | PO BOX 5020 | | | Carol Stream | IL | 60197-5020 | |
| AT&T | | PO Box 9005 | | | Carol Stream | IL | 60197-9005 | |
| AT&T | | PO BOX 630047 | | | Dallas | TX | 75263-0047 | |
| AT&T | | PO BOX 650661 | | | Dallas | TX | 75265-0661 | |
| AT&T | | PO BOX 660324 | | | Dallas | TX | 75266-0324 | |
| AT&T | | PO BOX 660921 | | | Dallas | TX | 75266-0921 | |
| AT&T | | PO BOX 930170 | | | Dallas | TX | 75393-0170 | |
| AT&T | | PO BOX 940012 | | | Dallas | TX | 75394-0012 | |
| AT&T | | PO BOX 78225 | | | Phoenix | AZ | 85062-8225 | |
| AT&T Internet Services | ATTN HIPCS | PO BOX 650040 | | | Dallas | TX | 75265-0040 | |
| AT&T Internet Services | | PO BOX 5016 | | | Carol Stream | IL | 60197-5016 | |
| AT&T Internet Services | | PO Box 650396 | | | Dallas | TX | 75265-0396 | |
| AT&T Long Distance | | PO Box 5017 | | | Carol Stream | IL | 60197-5017 | |
| AT&T MOBILITY | | PO Box 105773 | | | Atlanta | GA | 30348-5773 | |
| AT&T MOBILITY | | PO BOX 536695 | | | Atlanta | GA | 30353-8695 | |
| AT&T MOBILITY | | PO BOX 31287 | | | Tampa | FL | 33631-3287 | |
| AT&T MOBILITY | | PO BOX 31488 | | | Tampa | FL | 33631-3488 | |
| AT&T MOBILITY | | PO Box 6428 | | | Carol Stream | IL | 60197-6428 | |
| AT&T MOBILITY | | PO Box 6444 | | | Carol Stream | IL | 60197-6444 | |
| AT&T MOBILITY | | PO BOX 6463 | | | Carol Stream | IL | 60197-6463 | |
| AT&T MOBILITY | | PO Box 8229 | | | Aurora | IL | 60572-8229 | |
| AT&T Mobility | | 208 South Akard Street | | | Dallas | TX | 75202-0000 | |
| AT&T MOBILITY | | PO Box 650553 | | | Dallas | TX | 75265-0553 | |
| AT&T MOBILITY | | PO BOX 650574 | | | Dallas | TX | 75265-0574 | |
| AT&T Performing Arts Center | Attn Development | 700 N. Pearl Street, Suite N1800 | | | Dallas | TX | 75201 | |
| Atlas IDF, LP | c/o Atlas IDF GP, LLC | John Honis | 87 Railroad Place | Suite 403 | Saratoga Springs | NY | 12866 | |
| Attia Medical, PC | | 5820 Oberlin Dr, Suite 205 | | | San Diego | CA | 92121 | |

Highland Capital Management, L.P.
Case No. 19-34054

Appx. 00296

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 23 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Attorney General of South Carolina | Securities Division | 1000 Assembly St | Rembert C. Dennis Office Bldg | | Columbia | SC | 29201 | |
| Atul Kavthekar | | Address on File | | | | | | |
| Audio Visual Innovations, Inc. | | P.O. Box 62251 | | | Baltimore | MD | 21264-2251 | |
| AURORA BOREALIS | ATTN GEORGE WHITE | 101 BARCLAY ST 13W | | | New York | NY | 10286 | |
| AUSHRIF JAVEED | | Address on File | | | | | | |
| Austin Brown | | Address on File | | | | | | |
| AUSTIN TRANTHAM | | Address on File | | | | | | |
| AUSTIN, TIMOTHY | | DRAWER #7718 | | | | | | |
| Automotive News | | Subscriber Services Department 77940 | PO BOX 79001 | | Detroit | MI | 48279 | |
| Automotive News | | One Galleria Tower | | | Detroit | MI | 48277-0940 | |
| Avalon Synergy | | 3 Second Street Suite 803 | 13355 Noel Rd, Suite 1100 | | Dallas | TX | 75240 | |
| AvePoint, Inc | | Address on File | | | Jersey City | NJ | 07311 | |
| Avi Levine | | 4502 CLAIRE CHENNAULT | | | | | | |
| AVIATION SERVICES ELITE | | 14001 Dallas Pkwy | | | Addison | TX | 75001 | |
| Aviation Services Group | | PO Box 505 | | | Dallas | TX | 75240 | |
| Aviation Week | | 180 N STETSON | | | Hightstown | NJ | 08520-9897 | |
| AVIDITY PARTNERS | | 13859 Diplomat Drive | STE 1310 | | Chicago | IL | 60601 | |
| AVI-SPL | | PO Box 844612 | Suite 180 | | Dallas | TX | 75234 | |
| AVI-SPL | | PO BOX 62251 | | | Boston | MA | 02284-4612 | |
| AVI-SPL | | 65 Dan Rd | | | Baltimore | MD | 21264-2251 | |
| Avitar Technologies, Inc. | | PO Box 394 | | | Canton | MA | 02021 | |
| Avtech | ATTN Accounts Receivable | Address on File | | | Newport | RI | 02840-0004 | |
| AWAIS SHAIKH | | 2828 Hood Street | | | | | | |
| AWARE | | 1325 Avenue of the Americas 27th floor | Residence 1705 | | Dallas | TX | 75219 | |
| Axicon Partners, LLC | ATTN Robert T. Scott | PO Box 457 | | | New York | NY | 10019 | |
| Axios Institute | | PO Box 831 | | | Edinburg | VA | 22824 | |
| Axis Global Systems | | 1729 Crosby Rd. | | | North Bergen | NJ | 07047 | |
| A-Z Cleaning Services | | 420 Ninth Avenue | | | Carrollton | TX | 75006 | |
| B&H Photo – Video, Inc. | | | | | New York | NY | 10001 | |
| B3 Entertainment Productions, Inc. | | 1509 Schooner Bay Dr. | | | Wylie | TX | 75098 | |
| Badge of Honor Memorial Fund | | Executive Office | 3131 Maple Ave 7E | | Dallas | TX | 75201 | |
| Bailey Kennedy, LLP | | 8984 Spanish Ridge Ave | | | Las Vegas | NV | 89148 | |
| Bailey, Connor | | Address on File | | | | | | |
| Baker & Daniels | | 111 E Wayne Ste 800 | | | Fort Wayne | IN | 46802 | |
| Baker & McKenzie LLP | Debra A. Dandeneau | 452 Fifth Avenue | | | New York | NY | 10018 | |
| Baker & McKenzie LLP | Michelle Hartmann | 1900 North Pearl | Suite 1500 | | Dallas | TX | 75201 | |
| Baker Botts LLP | | 901 Louisiana Street | | | Houston | TX | 77002 | |
| Baker Botts LLP | | PO BOX 201626 | | | Houston | TX | 77216 | |
| Baker Botts LLP | | PO Box 301251 | | | Dallas | TX | 75303-1251 | |
| Baker McKenzie LLP | | 100 New Bridge Street | | | London | | EC4V 6JA | United Kingdom |
| Baker McKenzie LLP | | 2300 Trammell Crow Center | 2001 Ross Ave | | Dallas | TX | 75201 | |
| Baker McKenzie LLP | | 815 Connecticut Ave. NW | | | Washington | DC | 200064078 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 11 of 155

**Appx. 00297**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 24 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Baker Tilly Virchow Krause, LLP | | 1050 Crown Pointe Parkway, Ste 1650 | | | Atlanta | GA | 30338 | |
| Baker Tilly Virchow Krause, LLP | | 205 N Michigan Ave | | | Chicago | IL | 60601-5927 | |
| Baker, Lauren | | Address on File | | | | | | |
| BAKER, SCOTT | | Address on File | | | | | | |
| Baker, Stephen | | Address on File | | | | | | |
| Balch & Bingham LLP | | P. O. Box 306 | | | Birmingham | AL | 35201 | |
| BALFOUR ASSOCIATES, INC | ATTN DAVID VANVALKENBURG | 5350 PRESERVE DR | | | Greenwood Village | CO | 80121 | |
| Ballard Spahr LLP | | 1735 Market Street | 51st Floor | | Philadelphia | PA | 19103 | |
| BALLS BROTHERS | | 313 CAMBRIDGE HEATH RD | BETHNAL GREEN | | London | | E2 9LQ | United Kingdom |
| Bancroft Associates PLLC | | 500 New Jersey Avenue | Seventh Floor | | Washington | DC | 20001 | |
| Bank Director | | 201 Summit Drive | Suite 250 | | Brentwood | TN | 37027 | |
| Bank Director | | 5110 Maryland Way Ste 250 | | | Brentwood | TN | 37027-9501 | |
| BANK OF AMERICA | | 335 MADISON AVE | | | New York | NY | 10017 | |
| Bannon, Lucy | | Address on File | | | | | | |
| Baradach, Artsiom | | Address on File | | | | | | |
| BARANSI, SAMER | | Address on File | | | | | | |
| Barbera, Angela | | Address on File | | | | | | |
| Barndollar Investment Advisory Services | | 2719 Letap Ct | Ste 101 | | Land O Lakes | FL | 34638 | |
| BARNES & ROBERTS, LLC | | 2701 Canton St. | | | Dallas | TX | 75226 | |
| BARNES & ROBERTS, LLC | | 2816 COMMERCE ST | | | Dallas | TX | 75226 | |
| Barnes and Noble College | C/O Bush Center Store | 2943 SMU Blvd | | | Dallas | TX | 75205 | |
| BARNES&THORNBURG LLP | | 11 South Meridian Street | | | Indianapolis | IN | 46204 | |
| Barri Pearson | | Address on File | | | | | | |
| Barrier Advisors | | 13455 Noel Rd., Ste 2200 | | | Dallas | TX | 75240 | |
| Barrington Financial Group, LLC | | 77 Franklin Street | Suite 802 | | Boston | MA | 02110 | |
| Barrister Books. Com | | 615 Florida St. | | | Lawrence | KS | 66044 | |
| Barristers & Attorneys | | PO Box HM 26 | | | Hamilton | | HM LX | BERMUDA |
| Barrons | | 200 Burnett Rd | PO Box 7031 | | Chicopee | MA | 01021-7031 | |
| BARTH GROSS ELECTRIC CO. INC | | 110 W 26th ST | | | New York | NY | 10001 | |
| BARTLIT BECK HERMAN PALENCHAR SCOTT | | COURTHOUSE PLACE | 54 W HUBBARD ST | Suite 300 | Chicago | IL | 60610 | |
| Bass, Berry & Sims PLC | | 150 Third Ave South, Ste 2800 | | | Nashville | TN | 37201 | |
| BATCHWORK MANAGEMENT LTD | | HOME PARK ESTATE | STATION RD | | KINGS LANGLEY | | WD4 8DH | United Kingdom |
| BATEMAN, JACK | | Address on File | | | | | | |
| Bates Group, LLC | | 5005 S.W. Meadows Rd, Ste 300 | | | Lake Oswego | OR | 97035 | |
| Bates White, LLC | Karen Goldberg, Esq. | Bates White, LLC | 2001 K Street NW, North Bldg Suite 500 | | Washington | DC | 20006 | |
| Bates White, LLC | | 2001 K Street, NW | North Building, Suite 500 | | Washington | DC | 20006 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 12 of 155

**Appx. 00298**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 25 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BAUER, WILLIAM | | Address on File | | | | | | |
| Bayard, P.A. | | 222 Delaware Avenue, 9th Floor | | | Wilmington | DE | 19801 | |
| Baynard, Cameron | | Address on File | | | | | | |
| Bazooka Search Ltd | | 115 Coventry Rd | | | London | | E2 6GG | United Kingdom |
| BB&T Securities, LLC | | 2619 N Oak Street, 3rd Floor | | | Myrtle Beach | SC | 29577 | |
| BBD, LLP | | 1835 Market Street | 3rd Floor | | Philadelphia | PA | 19103 | |
| BBVA | Michael Doran | 8080 North Central Expressway | Suite 1500 | | Dallas | TX | 75206 | |
| BCA Publications Ltd. | | 1002 Sherbooke St West Ste 1600 | | | Montreal | QC | H3A 3L6 | CANADA |
| BCA Research Inc | | 1002 Sherbrooke St. W | Suite 1600 | | Montreal | QC | H3A 3L6 | CANADA |
| BDC Review, LLC | | 407 East Maple Street | Ste 305 | | Cumming | GA | 30040 | |
| BDO USA, LLP | | 700 North Pearl | Suite 2000 | | Dallas | TX | 75201 | |
| BDO USA, LLP | | P.O. Box 31001-0860 | | | Pasadena | CA | 91110-0860 | |
| BEALL-SARRIS, ASHLEY E. | | Address on File | | | | | | |
| BEARD, MATTHEW | | Address on File | | | | | | |
| Beauchamp, Thomas | | Address on File | | | | | | |
| Becky Bowler | | Address on File | | | | | | |
| Bedell Cristin | | Address on File | | | | | | |
| BEEF SLABS OF TEXAS LLC | | 2000 N HWY 157 | STE 112 | | Mansfield | TX | 76063 | |
| Behind the Numbers LLC | | 8140 Walnut Hill Ln #300 | | | Dallas | TX | 75231 | |
| BELINGER & DEWOLF, LLP | | 10000 N CENTRAL EXPWY | STE 900 | | Dallas | TX | 75231 | |
| Bell Nunnally and Martin, LP | Russell W. Mills | 2323 Ross Avenue Suite 1900 | | | Dallas | TX | 75201 | |
| Bell, Boyd & Lloyd | | Three First National Plaza | 70 West Madison S, Ste 3300 | | Chicago | IL | 60602 | |
| Bella Flora of Dallas | | 118 Oak Lawn Ave. | | | Dallas | TX | 75207 | |
| BEN ASARE | | Address on File | | | | | | |
| Ben E. Keith | | Address on File | | | | | | |
| Ben Greenfield, Human Wellness Sol. LLC | | 8515 N Argonne Rd | | | Spokane | WA | 99217 | |
| BEN VONDERHAAR | | Address on File | | | | | | |
| Benefit Data | | 2220 San Jacinto Blvd, Ste 345 | | | Denton | TX | 76205 | |
| Benesch | LouAnne Molinaro | 222 Delaware Avenue, Suite 801 | | | Wilmington | DE | 19801-1611 | |
| BENJAMIN FINGER | | Address on File | | | | | | |
| Benjamin Sarly | | Address on File | | | | | | |
| Benson Hlavaty Architects | | 3141 Hood St Ste 420 | | | Dallas | TX | 75219 | |
| Bent Tree Country Club, Inc. | | 5201 Westgrove Drive | | | Dallas | TX | 75248 | |
| Bent Tree Country Club, Inc. | | PO Box 204795 | | | Dallas | TX | 753204795 | |
| BERIHUN, ELIZABETH | | Address on File | | | | | | |
| Berkeley Research Group, LLC | Emily Kirksey | 1800 M Street NW | Second Floor | | Washington | DC | 20036 | |
| Berkeley Research Group, LLC | Valerie Riva | 2200 Powell Street Suite 1200 | | | Emeryville | CA | 94608 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Berkeley Research Group, LLC | Valerie Riva | 2200 Powell Street Suite 1200 | | | Emeryville | CA | 94608 | |
| Berkeley Research Group, LLC | | 2200 Powell Street | Suite 1200 | | Emeryville | CA | 94608 | |
| Berkeley Square Advisors LLC | | 701 N Green Valley Pkwy Ste 200 | | | Henderson | NV | 89074 | |
| Berkshire Capital Securities, LLC | | 535 Madison Avenue | | | New York | NY | 10022 | |
| Bernard DeMeo | | Address on File | | | | | | |
| Bernard Peperstraete | | Address on File | | | | | | |
| Berry Appleman & Leiden LLP | | 3355 W. Alabama Street | Suite 1050 | | Houston | TX | 77098 | |
| Berry Appleman & Leiden LLP | Attn Connie Allard | 353 Sacramento Street | Suite 1300 | | San Francisco | CA | 94111 | |
| Berthel Fisher & Company | | 701 Tama Street | | | Marion | IA | 52302 | |
| Berthel Fisher & Company | Attn Dan Barnard | Berthel Fisher & Company | 8090 N 85th Way, Ste 101 | | Scottsdale | AZ | 85258 | |
| Berthel Fisher & Company | | 16100 Chesterfield Parkway West | Suite 150 | | Chesterfield | MO | 63017 | |
| Berthel Fisher & Company | | 1500 Paxton Street | | | Harrisburg | PA | 17104 | |
| Best Companies Group | | 8700 Ambassador Row | | | Dallas | TX | 75247 | |
| Beyond | | 2544 West Commerce Street | | | Dallas | TX | 75212 | |
| Beyond the Box | | Address on File | | | | | | |
| Bhavani Jaroff | | | | | | | | |
| BHIL Distributors, Inc. | | 325 John H. McConnell Blvd | Suite 200 | | Columbus | OH | 43215 | |
| Bickel & Brewer | | 1717 Main St | | | Dallas | TX | 75201 | |
| Bifferato Gentilotti LLC | | 100 Biddle Avenue | Springside Plaza | Suite 100 | Newark | DE | 19702 | |
| Big Brother Big Sister | | 450 E. John Carpenter Fwy., Ste 300 | | | Irving | TX | 75062 | |
| Big Brothers Big Sisters of Mass Bay | Attn Erin DeMarco | 75 Federal Street, 8th Floor | | | Boston | MA | 02110 | |
| Big Honkin Ideas | | 1424 Lincoln Blvd | | | Santa Monica | CA | 90401 | |
| Big Thought | | 2501 Oak Lawn | Ste 550, LB-42 | | Dallas | TX | 75219 | |
| BILL CRISPIN | | Address on File | | | | | | |
| Bill J Crouch & Associates | | 210 MacCorkle Ave SE | | | Chalston | WV | 25314 | |
| BILL MITTENBERGER | | Address on File | | | | | | |
| BILL WALLISCH | | Address on File | | | | | | |
| Bill Wilton | | Address on File | | | | | | |
| BILLINGHURST, MINDY | | Address on File | | | | | | |
| BIMAL KALVANI | | Address on File | | | | | | |
| Bingham McCutchen LLP | | P.O. Box 3486 | | | Boston | MA | 02241-3486 | |
| BioCentury Publications | | PO Box 1246 | | | San Carlos | CA | 94070 | |
| Bison Coolers, LLC | | 5113 Commercial Drive | | | North Richland Hills | TX | 76180 | |
| BISYS | | PO Box 19468A | | | Newark | NJ | 07195-0468 | |
| BKM Total Office of Texas | | 9755 Clifford Drive #100 | | | Dallas | TX | 75220 | |
| Black Box Network Services | | PO Box 890699 | | | Dallas | TX | 75389-0699 | |
| Black Mountain Systems, LLC | | 12520 High Bluff Dr | Ste 340 | | San Diego | CA | 92130 | |
| BLACK, WINSTON | | Address on File | | | | | | |
| Blackberry Wireless | | 12432 Collections Center Dr | | | Chicago | IL | 60693 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 27 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BLACKBURN, MICHAEL | | Address on File | | | | | | |
| BLACKWELL SANDERS PEPER MARTIN LLP | | PO BOX 795135 | | | Saint Louis | MO | 63179 | |
| Blair Roeber | | Address on File | | | | | | |
| BLAKE DEXTER | | Address on File | | | | | | |
| Blake Morrell | | Address on File | | | | | | |
| Blank Rome LLP | | Lockbox #8586 | PO Box 8500 | | Philadelphia | PA | 19178-8500 | |
| Blast Creative | | 2703 Poly Drive | | | Billings | MT | 59102 | |
| Blast Creative | | 3036 Hunters Ridge Loop | | | Billings | MT | 59102 | |
| Block Garden & McNeill, LLP | | Sterling Plaza | 5949 Sherry Lane, Suite 900 | | Dallas | TX | 75225 | |
| BLOMBERG FINANCE L.P. | | 731 LEXINGTON AVE | | | New York | NY | 10022 | |
| Blondies Treehouse, Inc. | | 431 Fayette Avenue | | | Mamaroneck | NY | 10543 | |
| Bloom Strategic Consulting, Inc. | Attn Accounts Receivable | 4514 Cole Ave. | Suite 600 | | Dallas | TX | 75205 | |
| Bloomberg | | PO Box 30244 | | | Hartford | CT | 06150-2044 | |
| Bloomberg Businessweek | | PO Box 37531 | | | Boone | IA | 50037-0531 | |
| Bloomberg Finance LP | | PO BOX 30244 | | | Hartford | CT | 06150 | |
| Bloomberg Finance LP | | 731 Lexington Ave. | | | New York | NY | 10022 | |
| Bloomberg Finance LP | | PO Box 416604 | | | Boston | MA | 02241-6604 | |
| Blue Cross Blue Shield of Texas | | 1001 East Lookout Drive | | | Richardson | TX | 75082 | |
| Blue Cross Blue Shield of Texas | | PO Box 731428 | | | Dallas | TX | 75373-1428 | |
| Blue Ribbon Advantage | | 7020 Portwest Drive, Suite 150 | | | Houston | TX | 77024 | |
| Blue Ribbon Advantage | | P.O. Box 79487 | | | Houston | TX | 77279-9487 | |
| Blue Ribbon Industries | | 408 Singleton Blvd | | | Dallas | TX | 75212 | |
| Blue Vault Partners, LLC | | 407 E Maple St | Suite 305 | | Cumming | GA | 30040 | |
| Blueprint for Prosperity | Attn Finance | 500 North Akard St, Suite 2600 | | | Dallas | TX | 75201 | |
| Blumberg/Excelsior | | 62 White St | | | New York | NY | 10013 | |
| BLUMER, JENNIFER | | Address on File | | | | | | |
| BMC Software, Inc. | | 2101 Citywest Blvd | | | Houston | TX | 77042 | |
| BMC Software, Inc. | | PO Box 301165 | | | Dallas | TX | 75303-1165 | |
| BMZ Discovery Services LLC | | 1400 Biscaya Drive | | | Miami Beach | FL | 33154 | |
| BNA | | PO BOX 17009 | | | Baltimore | MD | 21297-1009 | |
| BNY Mellon | | 525 Penn Place | | | Pittsburgh | PA | 15219-0000 | |
| Bob Grier | | Address on File | | | | | | |
| Bob Marx | | Address on File | | | | | | |
| Bochetto & Lentz, P.C. | | 1524 Locust Street | | | Philadelphia | PA | 19102 | |
| BOCK, MARIA | | Address on File | | | | | | |
| BODRON, MICHAEL | | Address on File | | | | | | |
| Boies, Schiller & Flexner LLP | Scott E. Gant, Esq. | Boies, Schiller & Flexner LLP | 5301 Wisconsin Ave. NW | | Washington | DC | 20015 | |
| Boies, Schiller & Flexner LLP | | 5301 Wisconsin Ave NW | | | Washington | DC | 20015-2015 | |
| BOK Financial Asset Management | | The Lyric Centre | 440 Louisiana, Suite 2500 | | Houston | TX | 77002 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 15 of 155

**Appx. 00301**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BOK Financial Asset Management | | PO Box 1270 | | | Tulsa | OK | 74101-1270 | |
| BOK Financial Securities, Inc. | Attn Leslie Swafford | 1 Williams Center, 16th Flr | | | Tulsa | OK | 74172 | |
| Bonahoom & Associates | | 10850 Switzer Ave #101 | | | Dallas | TX | 75238 | |
| Bonnie Murray | | Address on File | | | | | | |
| Boom Global Media Inc | | 295 Greenwich St. # 296 | | | New York | NY | 10007 | |
| BOSC, Inc. | Attn Chelle Davidson | One Williams Center, 9 NE | | | Tulsa | OK | 74172 | |
| BOSE, ROHAN | | Address on File | | | | | | |
| Boston Financial Data Services | | PO Box 74008640 | Lockbox 008640 | | Chicago | IL | 60674-8640 | |
| Boston Financial Data Services | | 330 W. 9th Street | | | Kansas City | MO | 64105-1514 | |
| Boston Properties, L.P. | | 800 Boylston Street | Suite 1900 | | Boston | MA | 02199 | |
| Boston Properties, L.P. | | 599 Lexington Ave | | | New York | NY | 10022-6004 | |
| Boundless Network | | 200 E. 6th Street | Suite 300 | | Austin | TX | 78701 | |
| Bow Line Media | | 1809 Thale Drive | | | Dallas | TX | 75228 | |
| Bowman Dahl, LLC | | 120 West 28th Street | #3C | | New York | NY | 10001 | |
| Bowne | | PO BOX 6081 | | | New York Church Street Station | NY | 10277-2706 | |
| Bowne | | PO Box 951060 | | | Dallas | TX | 75247-1060 | |
| BOX.com | | 900 Jefferson Ave | | | Redwood City | CA | 94063-0000 | |
| BOYCE, PATRICK | | Address on File | | | | | | |
| Boyce-Field, Mollie | | Address on File | | | | | | |
| Boys & Girls Clubs of Greater Fort Worth | Attn Christi Langas | 3218 East Belknap | | | Fort Worth | TX | 76111 | |
| BRACEWELL & GIULIANI LLP | | PO BOX 848566 | | | Dallas | TX | 75284-8566 | |
| Bracewell & Patterson | | PO Box 848566 | | | Dallas | TX | 75284-8566 | |
| Brad Beman | | Address on File | | | | | | |
| Brad Borud | Daniel P Winikka | Loewinsohn Flegle Deary Simon LLP | 12377 Merit Drive, Suite 900 | | Dallas | TX | 75251 | |
| BRAD BORUD | | Address on File | | | | | | |
| BRAD BORUD | | Address on File | | | | | | |
| BRAD DAVEY | | Address on File | | | | | | |
| BRAD GUY | | Address on File | | | | | | |
| Brad Mendenhall | | Address on File | | | | | | |
| BRAD VOSS | | Address on File | | | | | | |
| Braden Bair | | Address on File | | | | | | |
| Bradfield Elementary | Attn Jackie Tilden, VP of Development | 4300 Southern Avenue | | | Dallas | TX | 75205 | |
| Bradford K Borud | | Address on File | | | | | | |
| BRADLEY MACK | | Address on File | | | | | | |
| BRADY, CHARLA | | Address on File | | | | | | |
| Bragalone Conroy PC | | Chase Tower | 2200 Ross Avenue | Suite 4500W | Dallas | TX | 75201-7924 | |
| Branda Fanning | | Address on File | | | | | | |
| Brandywine Process Servers, Ltd. | | PO Box 1360 | | | Wilmington | DE | 19899 | |
| BRANER, PHILIP | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 29 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BRE/TZ TX PROPERTIES LP | | PO Box 842530 | | | Dallas | TX | 75284-2530 | |
| Breault, Evan | | Address on File | | | | | | |
| Breault, Evan | | Address on File | | | | | | |
| Breazeale, Sachse & Wilson LLP | | One American Place | Suite 2300 | | Baton Rouge | LA | 70821-3197 | |
| Breezy Higa | | Address on File | | | | | | |
| Brenda Samples, Tax Assessor | | Kaufman County Tax Office | PO Box 339 | | Kaufman | TX | 75142 | |
| Brennan, Kieran | | Address on File | | | | | | |
| Brennan, Michael | | Address on File | | | | | | |
| Brent Gregoire | | Address on File | | | | | | |
| Brentwood CLO Ltd., et al. | Joseph E. Bain | Jones Walker LLP | 811 Main St. Suite 2900 | | Houston | TX | 77002 | |
| Brentwood CLO Ltd., et al. | Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | |
| Brentwood CLO, Ltd. | MaplesFS | PO Box 309, Ugland House | South Church Street | George Town | Grand Cayman | | KY1-1104 | Cayman Islands |
| Brentwood CLO, Ltd. | | Maples Finance Limited, PO Box 1093GT | Queensgate House, South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Brentwood CLO, Ltd. Investors Bank & Trust Company | Brentwood CLO, Ltd. c/o Maples Finance Limited | P. O. Box 1093GT | Queensgate House, South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Brentwood CLO, Ltd. Investors Bank & Trust Company | Investors Bank & Trust Company | 200 Claredon Street | CDO Services - Brentwood CLO, Ltd | | Boston | MA | 02116 | |
| Bressler, Amery & Ross, P.C. | | 325 Columbia Turnpike | | | Florham Park | NJ | 07932 | |
| Brett Benjamin | | Address on File | | | | | | |
| Brett H. McCloskey | | Address on File | | | | | | |
| Brett Hoge | | Address on File | | | | | | |
| Brett Pope | | Address on File | | | | | | |
| Bretton Advisors, Inc. | | Address on File | | | | | | |
| Brian Andrusin | | Address on File | | | | | | |
| Brian Broadbent | | Address on File | | | | | | |
| Brian Collins | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| BRIAN COX | | Address on File | | | | | | |
| Brian D. Glueckstein | Sullivan Cromwell LLP | 125 Broad Street | | | New York | NY | 10004 | |
| Brian Fitzsimmons | | Address on File | | | | | | |
| Brian G Albert Esq. | | Address on File | | | | | | |
| Brian Goehl | | Address on File | | | | | | |
| Brian Hochhauser | | Address on File | | | | | | |
| Brian Home | | Address on File | | | | | | |
| BRIAN JONES | | Address on File | | | | | | |
| Brian Jones. | | Address on File | | | | | | |
| Brian Josephson | | Address on File | | | | | | |
| Brian Lauten, PC | | Address on File | | | | | | |
| Brian Li | | Address on File | | | | | | |
| BRIAN LOHRDING | | Address on File | | | | | | |
| Brian Malizia | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 30 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Brian P. Shaw | | Address on File | | | | | | |
| BRIAN PRICE | | Address on File | | | | | | |
| BRIAN TILTON | | Address on File | | | | | | |
| Bridge Title Company, LLC | | 8150 N. Central Expwy | Ste 650 | | Dallas | TX | 75205 | |
| Brighthouse Financial | | PO Box 371310 | | | Pittsburgh | PA | 15250-7310 | |
| Brighthouse Life Insurance Company | | PO Box 371487 | | | Pittsburgh | PA | 15250-7487 | |
| Brighton House Associates, LLC | | 2 Park Central Drive | Suite 300 | | Southborough | MA | 01772 | |
| BRIGHTWORK | ATTN JOYCE WELSH | 16 OLDE TAVERNE LANE | | | Amesbury | MA | 01913 | |
| Brion Enterprises, Inc. | | 1545 Prudential Dr. | | | Dallas | TX | 75235-4111 | |
| Britain, William | | Address on File | | | | | | |
| BRITAIN, WILLIAM L. | | Address on File | | | | | | |
| Brittain, Mark | | Address on File | | | | | | |
| BRITTNEE WOOLDRIDGE | | 2201 WOLF ST | #6106 | | Dallas | TX | 75201 | |
| BRITTNEY CUNNINGHAM | | Address on File | | | | | | |
| BROADCASTING & CABLE | | PO BOX 5655 | | | Harlan | IA | 51593-1155 | |
| Broaddus, Paul | | Address on File | | | | | | |
| Broadridge Customer Communications | | 5516 Collection Ctr Dr | | | Chicago | IL | 60693 | |
| Broadridge Customer Communications | | 2600 Southwest Blvd. | | | Kansas City | MO | 64108 | |
| Broadridge ICS | | PO Box 416423 | | | Boston | MA | 0224-6423 | |
| Broadridge Investor Communication Soluti | | One Park Ave | | | New York | NY | 10016-0000 | |
| Broadridge Output Solutions, Inc. | | PO Box 15788 | | | Chicago | IL | 60693 | |
| BROADVIEW NETWORKS | | PO Box 9242 | | | Uniondale | NY | 11555-9242 | |
| Brodeur, Steven | | Address on File | | | | | | |
| BRODRICK NORMAN | | 456 9th St | #8 | | Hoboken | NJ | 07030 | |
| Broker Dealer Financial Services Corp | | 6775 Booneville Rd | | | WDM | IA | 50266-8093 | |
| Brookover, Steven | | Address on File | | | | | | |
| Broker Educational Sales Training, Inc. | | 7137 Congress Street | | | New Port Richey | FL | 34653-6464 | |
| Brook Lane Partners, LLC | | 330 East 75th Street | Suite 10H | | New York | NY | 10021 | |
| Brook Lane Partners, LLC | | 445 Park Avenue | 10th Floor | | New York | NY | 10022 | |
| Brookmont Capital Management, LLC | | 2000 McKinney Avenue | Suite 1230 | | Dallas | TX | 75201 | |
| Brosier & Buchanan Partners | | Address on File | | | | | | |
| Brown & Hofmeister LLP | | 320 W. 7th | | | Amarillo | TX | 79101 | |
| Brown & Sikes, Inc. | | 740 E Campbell | Suite 800 | | Richardson | TX | 75081 | |
| Brown Pruitt Peterson & Wambsganss, P.C. | | 325 N St Paul St Ste 1280 | | | Dallas | TX | 75201 | |
| Brown Rudnick Berlack Israels LLP | | 201 Main St | | | Fort Worth | TX | 76102 | |
| Brown Rudnick LLP | Robert J. Stark | One Financial Center | | | Boston | MA | 02111 | |
| Brown, Austin | | 7 Times Square | | | New York | NY | 10036 | |
| Brown, Austin | | Address on File | | | | | | |
| Brown, Austin | | Address on File | | | | | | |
| Brown, Austin | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| BROWN, BLAKE | | Address on File | | | | | | |
| BROWN, BRITTON | | Address on File | | | | | | |
| BROWN, LEE | | Address on File | | | | | | |
| Brown, Rachel | | Address on File | | | | | | |
| BROWNELL, JESSE R. | | Address on File | | | | | | |
| Brownstein Hyatt Farber Schreck LLP | | 100 City Parkway | suite 1600 | | Las Vegas | NV | 89106 | |
| Brownstein Hyatt Farber Schreck, LLP | Samuel A. Schwartz, Esq. | 100 North City Parkway, Suite 1600 | | | Las Vegas | NV | 89106 | |
| Bruce Beetz | | Address on File | | | | | | |
| BRUCE CHAPIN | | Address on File | | | | | | |
| BrucePac | | 811 N First St | | | Silverton | OR | 97381 | |
| Bruchou Fernandez Mandero & Lombardi | | BFM y L S.R.L., Ing. Butty 275, PISO 12 | | | Buenos Aires | | C1001AFA | Argentina |
| BRUMLEY, ANGELA | | Address on File | | | | | | |
| Brumley, Angela K. | | Address on File | | | | | | |
| Bryan Cave LLP | | PO Box 503089 | | | Saint Louis | MO | 63150-3089 | |
| BRYAN CLARK | | Address on File | | | | | | |
| Bryntesson Reporting, Inc. | | 2404 Belle Haven Meadows Ct | | | Alexandria | VA | 22306 | |
| BT Video Inc | | PO Box 540365 | | | Dallas | TX | 75354-0365 | |
| Buchalter Nemer | | 1000 Wilshire Blvd | Suite 1500 | | Los Angelos | CA | 90017 | |
| BUCKLES BY JIM | | PO BOX 1885 | | | Mabank | TX | 75147-1885 | |
| Budget Blinds | | 4012 Daniel Way | | | Frisco | TX | 75035 | |
| Bulk Books | | Address on File | | | | | | |
| Buntz, Jennifer | | Address on File | | | | | | |
| BURKE HANSEN LLC | | 1601 N 7TH ST, STE 200 | | | Phoenix | AZ | 85006 | |
| Burkey, John | | Address on File | | | | | | |
| Burns Transcription Service | | 11311 N Central Expwy Ste 216 | | | Dallas | TX | 75243 | |
| Burns, Nathan | | Address on File | | | | | | |
| Bury Street Capital Ltd | | Devonshire House | 1 Devonshire Street | | London | | W1W 5DR | United Kingdom |
| BUSH, ALBERT | | Address on File | | | | | | |
| Business Essentials | | PO BOX 37 | | | Grapevine | TX | 76099 | |
| Business Essentials | | PO BOX 292696 | | | Lewisville | TX | 75029-2696 | |
| Business Executives National Security | | 1030 15th Street NW | Suite 200 East | | Washington | DC | 20005 | |
| Business Flooring Speacialists | | 7341 Dogwood park | | | Fort Worth | TX | 76118 | |
| Business Intelligence Advisors | | One Washington Mall One8th Flr | | | Boston | MA | 02108 | |
| Business Real Estate | | PO Box 15216 | | | Scottsdale | AZ | 85267 | |
| Business Technologies, Inc. | | 16060 Ventura Blvd Ste 105-505 | | | Encino | CA | 91436 | |
| Business Week | | PO Box 8419 | | | Red Oak | IA | 51591-1419 | |
| Business Wire | | Department 34182 | | | San Francisco | CA | 94139 | |
| Business Wire | | PO Box 45348 | PO Box 39000 | | San Francisco | CA | 94145-0348 | |
| Butler Burgher Group | | 4300 Alexander Dr. | Suite 200 | | Alpharette | GA | 30022 | |
| Byron Wilson | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| C.J. Martin | | Address on File | | | | | | |
| C2 Imaging | | 3180 Pullman Street | | | Costa Mesa | CA | 92626 | |
| C2 LEGAL OF DALLAS | | 2001 BRYAN ST | STE 3025 | | Dallas | TX | 75201 | |
| C5 Texas | Attn Rachel Jenkins | PO Box 191129 | | | Dallas | TX | 75219 | |
| Cabot Lodge Securities LLC | | 200 Vesey St. | | | New York | NY | 10281 | |
| Cades Schutte LLP | | 1000 Bishop Street, 12th floor | | | Honolulu | HI | 96813 | |
| Cadwalader, Wickersham, & Taft LLP | | General Post Office | PO Box 5929 | | New York | NY | 10087-5929 | |
| CALAPRS | | 575 Market Street | Suite 2125 | | San Francisco | CA | 94105 | |
| Caleb Dorfman | | Address on File | | | | | | |
| Caleb Moore | | Address on File | | | | | | |
| Caledonian Directors Limited | | PO Box 1043 | George Town | | Grand Cayman | | KY1-1002 | Cayman Islands |
| Caledonian Directors Limited | | PO Box 1043 | | | George Town | | KY1-1102 | Cayman Islands |
| California Department of Insurance | Attn Name Reservation Unit | 45 Fremont Street, 24th Floor | | | San Francisco | CA | 94105 | |
| California Dept. of Business Oversight | | Securities Registration Division | 1515 K Street, Suite 200 | | Sacramento | CA | 95814 | |
| California Public Employees Retirement System | c/o Louis J. Cisz, III | Nixon Peabody LLP | One Embarcadero Center, 32nd Floor | | San Francisco | CA | 94111 | |
| CALLAN, BENTLEY | | Address on File | | | | | | |
| Cambridge International Partners, Inc. | | 780 Third Ave 25th Flr | | | New York | NY | 10017 | |
| Cambridge Investment Research, Inc. | c/o Premier Wealth Management | 5004 Lenker Street, Suite 200 | | | Mechanicsburg | PA | 17050 | |
| Cambridge Investment Research, Inc. | Przewocki James, Inc. | 2030 E Speedway | Suite 220 | | Tucson | AZ | 85719 | |
| Cambridge Investment Research, Inc. | | 1776 Pleasant Plain Rd | | | Fairfield | IA | 52556 | |
| Cambridge Investment Research, Inc. | | fbo Jimmy J. Williams, Rep #GM6 | 1776 Pleasant Plain Rd | | Fairfield | IA | 52556 | |
| Cameron Baynard | | Address on File | | | | | | |
| CAMP CUTHRELL | | Address on File | | | | | | |
| Campano & Associates | | PO Box 370 | | | Wilton | CT | 06897-0370 | |
| CAMPBELL, JIM | | Address on File | | | | | | |
| CAMPBELL, JIM | | Address on File | | | | | | |
| Canadian Imperial Bank of Commerce | | 425 Lexington Avenue | | | New York | NY | 10017 | |
| Candidates on Demand Group, Inc. | | 433 Fifth Ave, 6th Flr | | | New York | NY | 10016 | |
| Canon Solutions America, Inc | | 15004 Collections Center Dr | | | Chicago | IL | 60693 | |
| Canteen Vending Services | | PO Box 417632 | | | Boston | MA | 02241-7632 | |
| Cantor Fitzgerald & Co. | Attn McKenzie Campbell | 110 East 59th Street | | | New York | NY | 10022 | |
| CAPE RANKEN | | Address on File | | | | | | |
| Cape Securities, Inc. | | 1600 Pennsylvania Ave. | | | McDonough | GA | 30253 | |
| CAPITAL FOR KIDS | ATTN Susan Nichol | 2807 Allen St. #816 | | | Dallas | TX | 75204 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 33 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Capital Hedge, LLC | | 145 Washington Street, Suite 16 | | | Norwell | MA | 02061 | |
| Capital Investment Group, Inc. | | PO Box 32249 | | | Raleigh | NC | 27622 | |
| Capital Link Forum, Inc. | | 230 Park Ave, Ste 1536 | | | New York | NY | 10169 | |
| Capital Royalty LP | | 1000 Main St | Suite 2500 | | Houston | TX | 77002 | |
| Capitalize for Kids | ATTN Mary Logan | 01-208-Adelaide Street West | | | Toronto | ON | M5H 1W7 | CANADA |
| Capitol Service Inc | | PO Box 1831 | | | Austin | TX | 78767 | |
| CAPITOL SERVICES, INC | | PO BOX 1831 | | | Austin | TX | 78767 | |
| Caplin Photography | | 50 W 90th Street | #C6 | | New York | NY | 10024 | |
| Caprock Court Reporting, Inc. | | 1112 Texas Avenue, Suite 200 | | | Lubbock | TX | 79401 | |
| Capstone Advisory Group | | Park 80 West | Plaza I-Plaza Level | | Saddle Brook | NJ | 07663 | |
| Capstone LLC | | 1400 Eye Street, NW Suite 1115 | | | Washington | DC | 20005 | |
| Captain Hopes Kids | | 10480 Shady Trail | Suite 104 | | Dallas | TX | 75220 | |
| CAREER BLAZERS | | PO BOX 414050 | | | Boston | MA | 0224 1-4050 | |
| CAREER BLAZERS | | GLOBABL EMPLOYMENT SOLUTIONS, INC | PO BOX 842595 | | Boston | MA | 02284-2595 | |
| Career Group Inc | | PO Box 203654 | | | Dallas | TX | 75320-3654 | |
| CAREERBUILDER, LLC | | 200 N. LaSalle St | Suite 1100 | | Chicago | IL | 60601 | |
| CAREERBUILDER, LLC | | 13047 COLLECTION CTR DR | | | Chicago | IL | 60693-0130 | |
| Carey Holdings, Inc. | Attention General Counsel | 4530 Wisconsin Avenue, N.W., 5th Floor | | | Washington | DC | 20016 | |
| Carey International, Inc. | Attn Diane Ennist | 7445 New Technology Way | | | Frederick | MD | 21703 | |
| Carey International, Inc. | Attn Thomas McKee, Jr | Greenberg Traurig, LLP | 1750 Tysons Blvd., #1000 | | McLean | VA | 22102 | |
| Carey International, Inc. | | Billing Department | PO Box 842350 | | Boston | MA | 02284-2350 | |
| Carey International, Inc. | Gary Kessler | 4530 Wisconsin Ave. NW | Suite 500 | | Washington | DC | 20016 | |
| Carey Olsen | attn Sam Dawson | Willow House Cricket Square | | | Grand Cayman | | KY1-1001 | Cayman Islands |
| Carey Olsen | | Address on File | | | | | | |
| Carey Olsen (Guernsey) LLP | | PO Box 98, Carey House, Les Banques | | | St Peter Port | Guernsey | GY1 4BZ | Channel Islands |
| CARL MOORE | | Address on File | | | | | | |
| Carl Steigerwald III | | 919 Congress Ave Suite 919 | | | Austin | TX | 78701 | |
| CARL WELLMAN | | Address on File | | | | | | |
| Carla Martin | | Address on File | | | | | | |
| Carla Siegal Interiors | | 31 Sturges Hwy | | | Westport | CT | 06880 | |
| CARLSON, STEPHEN | | Address on File | | | | | | |
| Carmona, Benjamin | | Address on File | | | | | | |
| CARNEGIE CONSULTING | | 44 CARNABY ST | | | London | | WTF 9PP | United Kingdom |
| Carol Bavousett Mattick PC | | 919 Congress Ave Suite 919 | | | Austin | TX | 78701 | |
| CAROLYN SANCHEZ | | Address on File | | | | | | |
| CARON, JOHN H | | Address on File | | | | | | |
| Carpenter Lipps & Leland LLP | | 280 Plaza, Suite 1300 | 280 North High Street | | Columbus | OH | 43215 | |
| Carrington Coleman | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 34 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CARROLL, JUSTIN | | Address on File | | | | | | |
| Carter Ledyard & Milburn LLP | | Counsellors at Law 2 Wall St | | | New York | NY | 10005 | |
| CARTER, JEROME | | Address on File | | | | | | |
| CARTUS CORPORATION PTE LTD | | 4 SHENTON WAY | #09-01/04 SGX CENTRE 2 | | Singapore | | 068807 | SINGAPORE |
| Carwin Advisors | | 2100 McKinney Ave. Suite 1510 | | | Dallas | TX | 75201 | |
| Case Anywhere LLC | | 21860 Burbank Blvd. | Suite 125 | | Woodland Hills | CA | 91367 | |
| Casepoint, LLC | | 7900 Tysons One Place, 680 | | | McLean | VA | 22102 | |
| Cashier - Texas Workforce Commission | | PO Box 149037 | | | Austin | TX | 78714-9037 | |
| CASPER COMPANY LLC | | 830 POST RD E | | | Westport | CT | 06880 | |
| CASTELLA, ANDRES | | Address on File | | | | | | |
| CASTELLA, ANDRES | | Address on File | | | | | | |
| Catalyst Financial Partners LLC | | 118 E 28th Street | Suite 314 | | New York | NY | 10016 | |
| Catapult Systems Inc. | | 1221 South MoPac Expressway | Ste 350 | | Austin | TX | 78746 | |
| Catherine M. Luvisa, trustee | Cooper Lee Luvisa Educational Trust | Address on File | | | | | | |
| Catherine M. Luvisa, trustee | | Address on File | | | | | | |
| Catherine McCoy | | Address on File | | | | | | |
| Catherine P. Matthews | | Address on File | | | | | | |
| Cattle Barons Ball | Attn Underwriting Chairs | 3838 Oak Lawn Avenue, Suite 700 | | | Dallas | TX | 75219 | |
| Cattle Barons Ball | | 30 Highland Park Village Ste 216 | | | Dallas | TX | 75205 | |
| CATTLE BUYERS WEEKLY | | PO BOX 2533 | | | Petaluma | CA | 94953-2533 | |
| Cawley, Gillespie & Associates, Inc. | | 306 West 7th Street, Ste 302 | | | Fort Worth | TX | 76102 | |
| Cawley Keith | | Address on File | | | | | | |
| CB RICHARD ELLIS | | 2700 POST OAK BLVD | STE 250 | | Houston | TX | 77056 | |
| CB Richard Ellis, Inc | | 2700 Post Oak Blvd. Suite 250 | | | Houston | TX | 77056 | |
| CB Richard Ellis, Inc | | Valuation & Advisory Services 210 Interstate North Pkwy SE Ste 300 | 2415 East Camelback Rd | | Phoenix | AZ | 85016-4290 | |
| Cbeyond | | PO Box 848432 | | | Atlanta | GA | 30339-2233 | |
| Cbeyond | | PO BOX 849846 | | | Dallas | TX | 75284-8432 | |
| CBIZ Valuation Group, Inc. | ATTN ACCOUNTS RECEIVABLE | 3030 LBJ Freeway, Ste 1650 | | | Dallas | TX | 75284-9846 | |
| CBIZ Valuation Group, Inc. | | 4851 LBJ Freeway | | | Dallas | TX | 75234 | |
| CBIZ Valuation Group, Inc. | | 4851 LBJ Freeway #800 | Suite 800 | | Dallas | TX | 75244 | |
| CBIZ Valuation Group, LLC | Attn Accounts Receivable | 400 South LaSalle Street | | | Dallas | TX | 75284 | |
| Cboe LiveVol, Inc. | | Location Code 2981 | | | Chicago | IL | 60605 | |
| CBRE, Inc. | | 21250 HAWTHORNE BLVD | P.O. Box 406588 | | Atlanta | GA | 30384-6588 | |
| CCH | | PO Box 4307 | | | Torrance | CA | 90503-5502 | |
| CCH Incorporated | | PO Box 5729 | | | Carol Stream | IL | 60197-4307 | |
| CCH Prosystem FX | | | | | Carol Stream | IL | 60197-5729 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CCH Prosystem FX | | P.O. Box 2701 | | | Torrance | CA | 90509-2701 | |
| CCS Medical | | 1505 LBJ Freeway | Suite 600 | | Farmers Branch | TX | 75234 | |
| CCW Recovery Solutions | | 4 Mount Ephraim Road | Tunbridge Wells | | Kent | | TN1 1EE | United Kingdom |
| CDW | Attn Ronelle Erickson | 200 N. Milwaukee Ave | | | Vernon Hills | IL | 60061 | |
| CDW Direct | | PO Box 75723 | | | Chicago | IL | 60675-5723 | |
| Cecilio Gomez | | Address on File | | | | | | |
| Cedar Glade LP | Attn Robert K. Minkoff, President | 600 Madison Ave, 17th Floor | | | New York | NY | 10022 | |
| Centaurus Financial, Inc. | | 2300 E. Katella Ave | Suite 200 | | Anaheim | CA | 92806 | |
| Center for Financial Professionals Ltd | c/o CFP Events, Suite 68 | The Maltings, Roydon Road | | | Stanstead Abbots | Herts | SG12 8HG | United Kingdom |
| Center Street Securities, Inc. | | 2 International Plz Ste 301 | | | Nashville | TN | 37217-2088 | |
| Centerpoint Advisors | | 301 Commerce St Ste 1750 | | | Fort Worth | TX | 76102 | |
| Centerpoint Builders | | 5339 Alpha Rd Ste 250 | | | Dallas | TX | 75240 | |
| CENTRAL REPRODUCTION COMPANY | | PO BOX 131971 | | | Dallas | TX | 75313 | |
| Centroid | | 1050 Wilshire Dr. | Ste #170 | | Troy | MI | 48084 | |
| Centroid | | 900 Wilshire Dr. | Ste. #273 | | Troy | MI | 48084 | |
| CenturyLink | | 100 CenturyLink Drive | | | Monroe | LA | 71203-0000 | |
| CenturyLink Communications, LLC | | 1801 California Street | | | Denver | CO | 80202 | |
| CERA | Accounts Receivable | Department 55 Cambridge Pkwy | | | Cambridge | MA | 02142 | |
| Certified Moving & Storage Company | | 286 Madison Avenue | | | New York | NY | 10017 | |
| Certified Process Servers, Inc. | | PO Box 496508 | | | Garland | TX | 75049-6508 | |
| Certified Staffing Solutions | | 66 Orange Street, 3rd Fl | | | Providence | RI | 02903 | |
| Cetera Advisor Networks LLC | Attn STS | 200 N. Sepulveda Blvd, Ste 1300 | | | El Segundo | CA | 90245 | |
| Cetera Advisor Networks LLC | c/o Legacy Advisor, C. Tabaka | 2450 Rimrock Rd, Ste 203 | | | Madison | WI | 53713 | |
| Cetera Financial Group | c/o Due Diligence Dept | 200 N. Sepulveda Blvd, Ste 1200 | | | El Segundo | CA | 90245 | |
| Cezar AV, Inc. | | 393 Upland Avenue | | | Yonkers | NY | 10703 | |
| CFA Society Los Angeles | | 520 S. Grand Ave | Ste 370 | | Los Angeles | CA | 90071 | |
| CFALA | | 520 S. Grand Ave. | Ste 655 | | Los Angeles | CA | 90071 | |
| CFA-SW | ATTN Scott Woodward | UHY, LLP | 1717 Main Street | | Dallas | TX | 75201 | |
| CFO & CONTROLLER ALERT | | 370 TECHNOLOGY DR | PO BOX 3019 | | Malvern | PA | 19355 | |
| Chad Clark | | Address on File | | | | | | |
| CHAD SCHRAMEK | | Address on File | | | | | | |
| Chakheeva, Svetlana | | Address on File | | | | | | |
| CHAMBERS, TRACIE | | Address on File | | | | | | |
| CHAN, WING FUNG WILLY | | Address on File | | | | | | |
| CHANCERY ST JAMES PLC | | 5 ST JAMESs SQUARE | | | London | | SW1Y 4SJ | United Kingdom |
| Chang, Frederic | | Address on File | | | | | | |
| Chang, Lewis | | Address on File | | | | | | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Chapline, Thomas | | Address on File | | | | | | |
| Charitable DAF Fund GP, LLC | Grant Scott | 4140 Park Lake Avenue | Suite 600 | | Raleigh | NC | 27612 | |
| Charitable DAF Fund, L.P. | Grant Scott | 4140 Park Lake Avenue | Suite 600 | | Raleigh | NC | 27612 | |
| Charles Byrne | | Address on File | | | | | | |
| Charles Geraci | | Address on File | | | | | | |
| CHARLES GREGOR | | Address on File | | | | | | |
| Charles Hoedebeck | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Charles River Associates | | PO Box 845960 | | | Boston | MA | 02284-5960 | |
| Charles Schwab & Co., Inc. | | 211 Main Street | MS SF-211MN-08-434 | | San Francisco | CA | 94105 | |
| Charley Krause | | Address on File | | | | | | |
| Charlie Maynard | | Address on File | | | | | | |
| Charlotte Investor IV LP | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |
| Charlotte Investor IV, L.P. | Attn Erica Weisgerber Debevoise and Plimpton LLP | 919 Third Avenue | | | New York | NY | 10022 | |
| Charlotte Investor IV, L.P. | Charlotte Investor IV LP | c/o HarbourVest Partners, LLC | One Financial Center | | Boston | MA | 02111 | |
| Charter Finan. Publishing Network, Inc. | | PO Box 7550 | | | Shrewsbury | NJ | 07702-7550 | |
| Chase Bank of Texas, N.A. | | 600 Travis Street | 8th Floor | Global Trust Services | Houston | TX | 77002 | |
| CHASE COURIERS, INC | | 1220 Champion Circle | #114 | | Carrollton | TX | 75006 | |
| CHASE COURIERS, INC | | 1002 N. Central Expressway #495 | | | Richardson | TX | 75080 | |
| CHASE COURIERS, INC | | 1002 N CENTRAL EXPWY, #229 | | | Richardson | TX | 75080 | |
| Chase Miller | | Address on File | | | | | | |
| Chatham Worth | | Address on File | | | | | | |
| CHAVARRIAGA, MAURICIO | | Address on File | | | | | | |
| CHEMICAL DATA | | 2900 N LOOP WEST | STE 830 | | Houston | TX | 77092 | |
| CHEMICAL MARKET ASSOCIATES, INC | | PO BOX 974416 | | | Dallas | TX | 75397-4416 | |
| Chen, Bryan | | Address on File | | | | | | |
| Chen, Jonathan C. | | Address on File | | | | | | |
| Cherith Harrison | | Address on File | | | | | | |
| Chetan Aras | | Address on File | | | | | | |
| Chi Uh Chun | | Address on File | | | | | | |
| Chick-fil-A | | 12120 Inwood Road | LL06 | | Dallas | TX | 75244 | |
| Chick-fil-A | | 1201 Elm Street | | | Dallas | TX | 75270 | |
| CHiLDRENs SEEK CAMP | Cory Cheat | 3624 Long Prairie Rd. Ste #101 | | | Flower Mound | TX | 75022 | |
| CHIRAG PANCHOLI | | Address on File | | | | | | |
| CHISM, CARTER | | Address on File | | | | | | |
| Chisum, Naomi | | Address on File | | | | | | |
| Choi, Jae Young | | Address on File | | | | | | |
| CHOI, YUN S. | | Address on File | | | | | | |
| CHOICE INVESTMENTS, INC | | 4800 BEE CAVE ROAD | | | Austin | TX | 78746 | |
| Chris Carrillo | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 37 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CHRIS COLVIN | | Address on File | | | | | | |
| CHRIS CRAWSHAW | | Address on File | | | | | | |
| Chris Hakemack | | Address on File | | | | | | |
| Chris Hylen | | Address on File | | | | | | |
| Chris Jackson | | Address on File | | | | | | |
| Chris Lombardi | | Address on File | | | | | | |
| Chris Malone | | Address on File | | | | | | |
| Chris Miller | | Address on File | | | | | | |
| Chris Saehler | | Address on File | | | | | | |
| Chris Sullivan | | Address on File | | | | | | |
| Christian & Small LLP | | 505 N 20th Street, Suite 1800 | | | Birmingham | AL | 35203-2696 | |
| Christian Carrillo | | Address on File | | | | | | |
| Christian MacCaron | | Address on File | | | | | | |
| Christina Dandar | | Address on File | | | | | | |
| Christina Seaman | | Address on File | | | | | | |
| Christine Hedrick | | Address on File | | | | | | |
| Christine Ragnauth | | Address on File | | | | | | |
| Christopher Courbier | | Address on File | | | | | | |
| CHRISTOPHER EGER | | Address on File | | | | | | |
| CHRISTOPHER NILSEN | | Address on File | | | | | | |
| CHRISTOPHER PITTMAN | | Address on File | | | | | | |
| Christopher Rice | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Christopher Rossi | | Address on File | | | | | | |
| Chronicle of Higher Education | | PO Box 1955 | | | Marion | OH | 43306-8055 | |
| Chronicle of Philanthropy | Attn Subscription Department | PO Box 1989 | | | Marion | OH | 43306-8089 | |
| Chubb | | 2001 Bryan St. | Ste. 3600 | | Dallas | TX | 75201-0000 | |
| Chubb National Insurance Company | c/o Chubb | 202A Halls Mill Road - 2E | | | Whitehouse Station | NJ | 08889 | |
| Chuck Hoar | | Address on File | | | | | | |
| Chuck McQueary | | Address on File | | | | | | |
| Church, Daniel | | Address on File | | | | | | |
| CIGNA HEALTHCARE | | CGLIC-Chicago | 5476 Collections Center Dr | | Chicago | IL | 60693-0547 | |
| CIRCLE B | | 3536 MILLER PARK | | | Garland | TX | 75042-7519 | |
| Cisco | | 170 West Tasman Dr | | | San Jose | CA | 95134-0000 | |
| CISCO Capital | | File No. 73226 | PO Box 60000 | | San Francisco | CA | 94160-3230 | |
| Cisco Webex Events | | 170 West Tasman Dr | | | San Jose | CA | 95134-0000 | |
| Cisco WebEx, LLC | | 16720 Collections Center Dr | | | Chicago | IL | 60693 | |
| Cision US Inc. | | PO Box 842869 | | | Boston | MA | 02284-2869 | |
| Cision US Inc. | | 1 Prudential Plaza, 7th floor | 130 E Randolph Street | | Chicago | IL | 60601-0000 | |
| CIT TECHNOLOGY | ATTN CUSTOMER SERVICE | PO BOX 550599 | | | Jacksonville | FL | 32255-0599 | |
| Citibank, N.A. | Doug Warren | 390 Greenwich Street | 4th Floor | | New York | NY | 10013 | |
| CITICORP VENDOR FINANCE | | PO BOX 7247-0118 | | | Philadelphia | PA | 19170-0118 | |

Page 25 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 38 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Citigroup Financial Products Inc. Citigroup Global Markets Inc. | Citigroup Global Markets Inc. | 390 Greenwich Street, 4th Floor | Managing Director | Global Structured Credit Products | New York | NY | 10013 | |
| Citizens of Georgia Power | Attn Stephen Kin, Bin #63031 | 7825 River Road | | | Waynesboro | GA | 30830 | |
| Citrix Online, LLC | | 7414 Hollister Avenue | | | Goleta | CA | 93117 | |
| City of Allen | Elizabeth Weller | c/o Laurie A. Spindler | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | Dallas | TX | 76015 | |
| City of Dallas | | 1500 Marilla Street | 2D South | | Dallas | TX | 75201 | |
| City of Dallas | | City Hall 1AN | | | Dallas | TX | 75277 | |
| City of Dallas | | City Hall, 2D South | | | Dallas | TX | 75277 | |
| City of Dallas | | Security Alarms | P.O. Box 139076 | | Dallas | TX | 75313-9076 | |
| City of Garland | Linda D. Reece | c/o Perdue Brandon Fielder et al | 1919 S. Shiloh Road, Suite 310, LB 40 | | Garland | TX | 75042 | |
| City of Richardson | Elizabeth Weller | c/o Laurie A. Spindler | Linebarger Goggan Blair and Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | Dallas | TX | 75207 | |
| City of Surprise | | 16000 N. Civic Center Plaza | Stormwater Division | | Surprise | AZ | 85374-7470 | |
| Civic Research Institute | | 4478 US Route 27 PO Box 585 | | | Kingston | NJ | 08528 | |
| CJ Peng | | Address on File | | | | | | |
| CL McDade & Company | | PO Box 702565 | | | Dallas | TX | 75370 | |
| Claraphi Advisory Network | | 25301 Cabot Rd | Suite 203 | | Laguna Hills | CA | 92653 | |
| CLARITY IN NUMBERS, LLC | | 10 UPENA LN APT 304 | | | KIHEI | HI | 96753-5112 | |
| Clark Hill Strasburger | | Address on File | | | | | | |
| Clark, James | | Address on File | | | | | | |
| Clark, Stetson | | Address on File | | | | | | |
| Classic Legal Document Services, Inc. | | 1717 Main Street, Suite 2280 | | | Dallas | TX | 75201 | |
| Claudia C Pleitez | | Address on File | | | | | | |
| Clay Callan | | Address on File | | | | | | |
| Clayton Coleman | | Address on File | | | | | | |
| Clearwater Analytics LLC | | 777 W Main St | Ste 900 | | Boise | ID | 83702-0000 | |
| Clearwell Systems, INC. | | 441 Louge Ave | | | Mountain View | CA | 94043 | |
| Cleary Gottlieb Steen & Hamilton LLP | | One Liberty Plaza | | | New York | NY | 10006-1470 | |
| Clerk of the Municipal Courts | | 2014 Main Street | | | Dallas | TX | 75201 | |
| CLERK, SUPREME COURT | | PO BOX 149335 | | | Austin | TX | 78714-9335 | |
| ClickDimensions, LLC | | 5901 Peachtree Dunwoody Rd., Ste B500 | | | Atlanta | GA | 30328 | |
| Client One Securities, LLC | | 11460 Tomahawk Creek Parkway | Suite 100 | | Leawood | KS | 66211 | |
| Clientwise LLC | | 487 East Main Street | Suite 303 | | Mount Kisco | NY | 10549 | |
| Clifford Chance | | Address on File | | | | | | |
| Clifford Chance | | PO Box 7247-6805 | | | Philadelphia | PA | 19170-6805 | |
| Clint Swisher | | Address on File | | | | | | |
| CLO Holdco, Ltd. | c/o Grant Scott, Esq | Myers Bigel Sibley & Sajovec, P.A. | 4140 Park Lake Ave, Ste 600 | | Raleigh | NC | 27612 | |
| CLO Holdco, Ltd. | Grant Scott, Director | Myers Bigel P.A. | 4140 Park Lake Ave, Ste 600 | | Raleigh | NC | 27612 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 26 of 155

**Appx. 00312**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CLO Holdco, Ltd. | Grant Scott, Director | Myers Bigel P.A. | 4140 Park Lake Ave, Ste 600 | | Raleigh | NC | 27612 | |
| CLO Holdco, Ltd. | Grant Scott, Esq. | Myers Bigel Sibley & Sajovec, P.A. | 4140 Park Lake Ave, Ste 600 | | Raleigh | NC | 27612 | |
| CLO Holdco, Ltd. | John J Kane | Kane Russell Coleman Logan PC | 901 Main Street, Suite 5200 | | Dallas | TX | 75202 | |
| CLO Holdco, Ltd. | | 190 Elgin Avenue | George Town | Grand Cayman | George Town | KY | 19005 | Cayman Islands |
| CM Murray LLP | | 37th Floor | One Canada Square, Canary Wharf | | London | | E14 5AA | United Kingdom |
| CMGRP, Inc. | | 1717 Main St, Ste 1600 | | | Dallas | TX | 75201 | |
| CMGRP, Inc. | | PO Box 74008263 | | | Chicago | IL | 60674-8263 | |
| CMS BondEdge | | PO Box 98616 | | | Chicago | IL | 60693 | |
| CNBC LLC | c/o Legal Dept, Attn Janet Williams | 900 Sylvan Avenue | | | Englewood Cliffs | NJ | 07632 | |
| Coastal Equities Inc. | | 1201 N. Orange Street | 9th Floor | | Wilmington | DE | 19801 | |
| Coates Analytics | | PO Box 371685 | | | Pittsburgh | PA | 15251-7685 | |
| COBURN, JASON | | Address on File | | | | | | |
| COBURN, JASON M | | Address on File | | | | | | |
| Coch, Trevor | | Address on File | | | | | | |
| Cockle Printing Co | | 2311 Douglas St | | | Omaha | NE | 68102 | |
| COOVAC | | BOX 399 | | | Clark Mills | NY | 13321 | |
| Cohen & Company, Ltd | | PO BOX 94787 | | | Cleveland | OH | 4410-4787 | |
| Cohen, Jeffrey | | Address on File | | | | | | |
| Coheso, Inc. | | 7083 Commerce Cir Ste I | | | Pleasanton | CA | 94588-8017 | |
| Colbert, Kenneth T. | | Address on File | | | | | | |
| ColdFusion Ice | | 4901 Saint Lawrence Road | | | Fort Worth | TX | 76103 | |
| Cole Schotz | Court Plaza North | 25 Main Street | P.O. Box 800 | | Hackensack | NJ | 07602-0800 | |
| Cole Schotz | Michael D. Warner, Esq. | Cole Schotz Meisel Forman & Leonard | 301 Commerce Street, Suite 1700 | | Fort Worth | TX | 76102 | |
| Coleman Research Group, Inc. | Attn Legal | 1 Glenwood Ave | | | Raleigh | NC | 27603 | |
| Coleman Research Group, Inc. | | 100 Park Avenue Suite 1600 | | | New York | NY | 10017 | |
| Coleman Research Group, Inc. | | 120 West 45th St | 25th Floor | | New York | NY | 10036 | |
| Coleman, Clayton | | Address on File | | | | | | |
| Collas Crill | attn Stephen Leontsinis | Floor 2, Willow House | Cricket Square PO Box 709 | | Grand Cayman | | KY1-1107 | Cayman Islands |
| Collas Crill | | Floor 2, Willow House, Cricket Square, PO Box 709 | | | Grand Cayman | | KY1-1107 | Cayman Islands |
| COLLAS CRILL LLP, ADVOCATES CLIENT ACCOUNT | | Glategny Court, PO Box 140, Glategny Esplanade | | | St Peter Port | Guernsey | GY1 4EW | Channel Islands |
| Collin County Tax Assessor/Collector | Abernathy, Roeder, Boyd & Hullett, P.C. | 1700 Redbud Blvd., Suite 300 | | | McKinney | TX | 75069 | |
| Collin County Tax Assessor/Collector | | P.O. Box 8046 | | | McKinney | TX | 75070 | |
| Collin County Tax Assessor/Collector | | P.O. Box 8046 | | | McKinney | TX | 75070 | |

Page 27 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 40 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Collins Building Services, Inc | | Court Square Place, 24-01 44th Rd | 15th Fl | | Long Island City | NY | 11101 | |
| Collins Legal Video Service | | 1700 Pacific Ave | Suite 2410 | | Dallas | TX | 75201 | |
| Collins Realtime Reporting | | 1700 Pacific Ave | Suite 2410 | | Dallas | TX | 75201 | |
| COLLINS, BRIAN | | Address on File | | | | | | |
| Colin McDermott | | Address on File | | | | | | |
| Colonial Surety Company | | 123 Tice Boulevard, Suite 250 | | | Woodcliff Lake | NJ | 07677 | |
| Colorado Department of Revenue | | Colorado Department of Revenue | | | Denver | CO | 80261 | |
| Colorado State Treasurer | | Colorado DEPT of Regulatory Agencies | 1560 Broadway, Suite 900 | | Denver | CO | 80202-5150 | |
| ColorMark, L.C. | | 1840 Hutton Dr | Bldg 208 | | Carrollton | TX | 75006 | |
| COLVIN, CHRISTOPHER | | Address on File | | | | | | |
| COLVIN, MICHAEL | | Address on File | | | | | | |
| Commissioner of Revenue Services | | DEPARTMENT OF REVENUE SERVICES | PO BOX 2936 | | Hartford | CT | 06104-2936 | |
| Commissioner of Securities, State of LA | | Office of Financial Institutions | 8660 United Plaza Boulevard, 2nd Floor | | Baton Rouge | LA | 70809 | |
| COMMISSIONER OF TAXATION AND FINANCE | | NYS ASSESSMENT RECEIVABLES | PO BOX 4127 | | Binghamton | NY | 13902-4127 | |
| Commodity Futures Trading Commission | | Three Lafayette Centre | 1155 21st Street, NW | | Washington | DC | 20581 | |
| COMMONWEALTH OF MASSACHUSETTS | | Securities Division | 1 Ashburton Place, Room 1701 | | Boston | MA | 02108 | |
| COMMONWEALTH OF MASSACHUSETTS | | MASSACHUSETTS DEPT OF REVENUE | PO BOX 7065 | | Boston | MA | 02204-7065 | |
| Communities Foundation of Texas, Inc. | Attn Marcia Godwin 5500 | Caruth Haven Lane | | | Dallas | TX | 75225-8146 | |
| Communities in Schools of North Texas | | PO Box 295543 | | | Lewisville | TX | 75029-5543 | |
| Community Beer Company | | 1530 Inspiration Drive | Suite 200 | | Dallas | TX | 75207 | |
| Community Partners of Dallas | | 1215 Skiles Street | | | Dallas | TX | 75204 | |
| Commvault Backup | | 1 Commvault Way | | | Tinton Falls | NJ | 077244-0000 | |
| COMPASS BANK OPERATING | | PO BOX 630020 | | | Dallas | TX | 75263-9720 | |
| Compass Lexecon | | PO Box 630391 | | | Baltimore | MD | 21263-0391 | |
| Compass Lexecon | | 1244 Dryden Pl | | | Evanston | IL | 60201-3399 | |
| Compass Lexecon LLC | | PO Box 418005 | | | Boston | MA | 02241-8005 | |
| COMPETITIVE LOGISTICS LLC | | 53 PERIMETER CENTER E | STE 201 | | Atlanta | GA | 30346 | |
| Complete Coherence Ltd | | Newton House, Suite B | Newton Lane | | Romsey, Hants | | SO51 8LE | United Kingdom |
| Complete Fitness Outfitters | | PO Box 1237 | | | Atoka | OK | 74252 | |
| Complete Legal, Ltd | | 1201 Elm St. | Suite 2560 | | Dallas | TX | 75270 | |
| Compliance Science, Inc. | | 875 Avenue of the Americas | 12th Floor | | New York | NY | 10001 | |
| Compliance Search Group | | 1001 Avenue of the Americas | Suite 2401 | | New York | NY | 10018 | |
| Compliance Search Group | | 450 Seventh Ave | Suite 1409 | | New York | NY | 10123 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 41 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Comptroller of Maryland | | Revenue Administration Division | 110 Carroll Street | | Annapolis | MD | 21411-0001 | |
| Comptroller of Public Accounts | | PO Box 149348 | | | Austin | TX | 78714 | |
| Compuforms Data Products, Inc. | | PO Box 101536 | | | Fort Worth | TX | 76185-1536 | |
| Compulink Technologies, Inc. | | 214 West 29 Street | Suite 201 | | New York | NY | 10001 | |
| Computershare | | 250 Royall St #1011 | | | Canton | MA | 02021 | |
| Computershare | | 14257 Collection Ctr Dr | | | Chicago | IL | 60693 | |
| Computershare | | 16750 Collection Ctr Dr | | | Chicago | IL | 60693 | |
| Computershare Trust Company, N.A. | | PO BOX 43078 | | | Providence | RI | 02940-3078 | |
| Comsys Services, LLC | | PO Box 60260 | | | Charlotte | NC | 28260 | |
| Concord Marketing Solutions | | 2000 Bloomingdale Road | | | Glendale Heights | IL | 60139 | |
| Concorde Holdings, Inc. | | 1120 East Long Lake Rd | Suite 207 | | Troy | MI | 48085 | |
| Concorde Investment Services | | 1120 East Long Lake Road | Ste 207 | | Troy | MI | 48085 | |
| Concur Technologies, Inc. | | 62157 Collections Center Drive | | | Chicago | IL | 60693 | |
| Concur Technologies, Inc. | | 18400 NE Union Hill Road | | | Redmond | WA | 98052 | |
| Conference Plus, Inc | | 8153 Solutions Center | | | Chicago | IL | 60677-8001 | |
| Conference Room AV | | 13601 W McMillan Rd | Suite 102-277 | | Boise | ID | 83713 | |
| Conga | | P. O. Box 7839 | | | Broomfield | CO | 80021 | |
| ConnectAndSell, Inc | | 856 Rand St. | | | San Mateo | CA | 94401 | |
| Connected Software | | PO Box 29 | | | West Newbury | MA | 01985 | |
| Connecticut Department of Banking | | Securities & Business Invest Division | 260 Constitution Plaza | | Hartford | CT | 06103 | |
| CONNER, PATRICK | | Address on File | | | | | | |
| Connex Systems, Inc. | | 2033 Chenault Drive, Suite 150 | | | Carrollton | TX | 75006 | |
| CONNIE MILTENBERGER | | 127 KENDALL BLUFF COURT | | | Chesterfield | MO | 63017 | |
| Connolly Bove Lodge & Hutz LLP | | 1007 North Orange St | | | Wilmington | DE | 19899 | |
| Connolly Gallagher LLP | | 1201 North Market Street | 20th Floor | | Wilmington | DE | 19801 | |
| Connolly, James | | Address on File | | | | | | |
| Connor White | | Address on File | | | | | | |
| Conseco Life Insurance Company | | PO Box 71214 | | | Charlotte | NC | 28272-1214 | |
| CONSOLIDATED GENERAL LIFE INSURANCE CO | | 4245 N CENTRAL EXPWY | STE 500 | | Dallas | TX | 75205 | |
| Context Summits LLC | | 401 City Avenue | Suite 815 | | Bala Cynwyd | PA | 19004 | |
| Continental Court Reporters, Inc. | | 2777 Allen Parkway, Suite 600 | | | Houston | TX | 77019-2166 | |
| Continental Office Group, LLC | | PO Box 132 | | | Wylie | TX | 75098 | |
| Contrarian Funds, LLC | Attn 392426 | 500 Ross St 154-0455 | | | Pittsburgh | PA | 15262 | |
| Contrarian Funds, LLC | Attn 392426 | 500 Ross St 154-0455 | | | Pittsburgh | PA | 15262 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 42 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Contrarian Funds, LLC | Attn Alpa Jimenez | 411 West Putnam Ave., Suite 425 | | | Greenwich | CT | 06830 | |
| ConvergeOne, Inc. | Selina Held | 10900 Nesbitt Avenue South | | | Bloomington | MN | 55437 | |
| ConvergeOne, Inc. | | NW 5806 | PO Box 1450 | | Minneapolis | MN | 55485-5806 | |
| Conway, Jacob | | Address on File | | | | | | |
| CONYERS DILL & PEARMAN | | CLARENDON HOUSE 2 | CHURCH STREET | | Hamilton | | 0HM11 | BERMUDA |
| Cooke Young Keidan | Philip Young | 21 Lombard St | | | London | | EC3V 9AH | United Kingdom |
| Cooke, Brad | | Address on File | | | | | | |
| COOLTECH AIR CONDITIONING LTD | | 530 LONDON ROAD | Stanwell | | Ashford | | TW15 3AE | United Kingdom |
| COOPER LEVENSON APRIL NIEDELMAN | | 1125 ATLANTIC AVE | | | Atlantic City | NJ | 08401 | |
| Copy Sense | | 121 E. 8th | Ste 100B | | Austin | TX | 78701 | |
| Copy Solutions | | 2001 Bryan St | Suite 1935 | | Dallas | TX | 75201 | |
| CopyPLEX | | 400 Tri-State Bldg 432 Walnut St | | | Cincinnati | OH | 45202 | |
| Copyright Clearance Center | | 222 Rosewood Dr | | | Danvers | MA | 01923 | |
| Copyright Clearance Center | | PO Box 843006 | | | Boston | MA | 02284-3006 | |
| CORAL EQUITY PARTNERS | | 28 Innisbrook Ave | | | Las Vegas | NV | 89113 | |
| CORCORAN, KIMBERLY | | Address on File | | | | | | |
| CORE Staffing Services, Inc. | | 463 Fashion Ave Rm 1800 | | | New York | NY | 10018-7760 | |
| Corinne Durand | | Address on File | | | | | | |
| CORNELIUS, WILLIAM | | Address on File | | | | | | |
| Corner Bakery | | CB Catering 91 PO Box 844288 | | | Dallas | TX | 75284-4288 | |
| Cornerstone Healthcare Group Holding Inc | David Smith | 3030 Ross Avenue | Suite 5400 | | Dallas | TX | 75201 | |
| Cornerstone Healthcare Group Holding, In | | 2200 Ross Ave | Ste. 5400 | | Dallas | TX | 75201-0000 | |
| Cornerstone Healthcare Group Holding, Inc. | Attn Michael Brohm | 13455 Noel Road, Suite 1320 | | | Dallas | TX | 75240 | |
| Cornerstone Macro LLC | | 1330 Avenue of the Americas Fl 5 | | | New York | NY | 10019-5493 | |
| Cornerstone Restructuring LLC | | 1125 Maxwell Ln | Suite 1010 | | Hoboken | NJ | 07030 | |
| CornerStone Staffing | | PO Box 909 | | | Grapevine | TX | 76099 | |
| CORPORATE COFFEE SYSTEMS | | 745 SUMMA AVE | | | Westbury | NY | 11590 | |
| CORPORATE EXPRESS INC | | PO BOX 71217 | | | Chicago | IL | 71217 | |
| Corporate Expressions | | 11 Blackberry Ln. | | | Norwalk | CT | 06850 | |
| Corporate Golf | | 604 West Morgan St Ste 202 | | | Durham | NC | 27701 | |
| Corporate Green | | PO Box 820725 | | | Dallas | TX | 75382 | |
| Corporate Interiors Inc. | | PO Box 709 | | | Frisco | TX | 75034-0709 | |
| Corporate Montage | | 9950 Westpark Dr Ste 602 | | | Houston | TX | 77063-5196 | |
| Corporate Search Partners | | 6116 N Central Expwy Ste 406 | | | Dallas | TX | 75206 | |
| Corporate Source Ltd | | 2651 N Harwood Ste 260 | | | Dallas | TX | 75201 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Corporate Source Ltd | | 1505 Oak Lawn Ave | Suite 300 | | Dallas | TX | 75207 | |
| Corporate Source Ltd | | Lockbox 671236 | | | Dallas | TX | 75267-1236 | |
| Corporate Strategies by SkilPath | | 6900 Squibb Rd | | | Mission | KS | 66202 | |
| Corporate Strategies by SkilPath | | PO Box 803839 | | | Kansas City | MO | 64180-3839 | |
| Corporate Transportation Group | | 335 Bond St | | | Brooklyn | NY | 11231 | |
| Corporation Service Company | | PO BOX 13397 | | | Philadelphia | PA | 19101-3397 | |
| Cory McCallum | | Address on File | | | | | | |
| COSMOPOLITAN GLASS | | 307 DAIBES CT | | | Edgewater | NJ | 07020 | |
| CoStar Realty Information, Inc. | | PO Box 791123 | | | Baltimore | MD | 21279-1123 | |
| Cotton, Austin | | Address on File | | | | | | |
| Coughlin, William | | Address on File | | | | | | |
| Coughlin, William A. | | Address on File | | | | | | |
| Counsel Press LLC | | PO Box 1053 | | | New York | NY | 10018-9998 | |
| CounselWorks LLC | | 477 Madison Avenue | Suite 740 | | New York | NY | 10022 | |
| COURIERS INC | | 225 MILLWELL DR | | | Maryland Heights | MO | 63043 | |
| Cournoyer, Timothy | | Address on File | | | | | | |
| Courthouse Digital Video | | 8848 Twin Pines Ln | | | Frisco | TX | 75036-1427 | |
| Courtlandt Securities Corporation | | PO Box 11929 | | | Newport Beach | CA | 92658 | |
| Courtroom Intelligence, Inc. | | 620 N Grant | Suite 512 | | Odessa | TX | 79761 | |
| Courtroom Intelligence, Inc. | | 1219 West University Blvd | | | Odessa | TX | 79764 | |
| Covenant Review LLC | | 708 Third Ave | 6th Floor | | New York | NY | 10017 | |
| Covenant Review LLC | | 230 Park Ave, Suite 812 | | | New York | NY | 10169 | |
| COVERT INVESTIGATIVE SERVICES | | PO BOX 67 | | | Lewisville | TX | 75057 | |
| COVITZ, HUNTER | | Address on File | | | | | | |
| Cowen and Company, LLC | | Finance Group - 21st Floor | 599 Lexington Avenue | | New York | NY | 10022 | |
| Cowie, Jason | | Address on File | | | | | | |
| COX, BRIAN | | Address on File | | | | | | |
| COZEN O CONNER ATTORNEYS | | W1385 | PO BOX 7777 | | Philadelphia | PA | 19175-0775 | |
| CP EATON PARTNERS, LLC | | 131 ROWAYTON AVE | | | Rowayton | CT | 06853 | |
| CPCM, LLC | Baker & McKenzie LLP | Debra A. Dandeneau | 452 Fifth Avenue | | New York | NY | 10018 | |
| CPCM, LLC | Baker & McKenzie LLP | Michelle Hartmann | 1900 North Pearl | Suite 1500 | Dallas | TX | 75201 | |
| CPCM, LLC | Ross & Smith, PC | Judith W. Ross, Frances A. Smith, Eric Soderlund | 700 North Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| CPCM, LLC | | 6505 W. Park Blvd. Ste. 306 | PMB#352 | | Plano | TX | 75093 | |
| Craig and Macauley Professional Corp. | | 600 Atlantic Ave | | | Boston | MA | 02210 | |
| Crain Communications Inc. | | 16309 Collection Center Dr. | | | Chicago | IL | 60693 | |
| Crain Communications Inc. | | 1155 Gratiot Ave | | | Detroit | MI | 48207-2732 | |
| Cranellis | | 10047 Park Meadows Dr | | | Lone Tree | CO | 80124 | |
| Crawford Wishnew & Lang | Michael J Lang | 1700 Pacific Avenue Suite 2390 | | | Dallas | TX | 75201 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CRE ADVISORS, LLC | | PO BOX 2302 | | | Addison | TX | 75001 | |
| Creative Meetings & Incentives | | 2405 Mill Plain Rd | | | Fairfield | CT | 06824 | |
| CREATIVE PRINTING | | 311 N STEMMONS | STE 400 | | Dallas | TX | 75207 | |
| CREDIT SUISSE | ATTN JUDY HARNETT | 11 MADISON AVE, 11TH FLR | | | New York | NY | 10010 | |
| CREDIT SUISSE | | 700 College Road East | | | Princeton | NJ | 08540 | |
| CREDIT SUISSE | | 11 MADISON AVE, 26TH FLR | AARON OVEDIA | | New York | NY | 10010 | |
| Creditflux | | 63 Clerkenwell Rd | | | London | | EC 1M- 5NP | United Kingdom |
| Crescent Asset Management | | 1440 Broadway | 17th flr | | New York | NY | 10018 | |
| Crescent Partners, LLC | | 1440 Broadway | 17th floor | | New York | NY | 10018 | |
| Crescent Research | | PO Box 64-3622 | | | Vero Beach | FL | 32964 | |
| Crescent TC Investors LP | | 200 Crescent Ct | Suite 250 | | Dallas | TX | 75201 | |
| Crescent TC Investors, L.P. | c/o Michael S. Held | 2323 Ross Avenue, Suite 600 | | | Dallas | TX | 75201 | |
| Crescent TC Investors, L.P. | Dale Todd, President | 277 Park Ave., 36th Floor | | | New York | NY | 10017 | |
| Crescent TC Investors, L.P. | Hien Le | 5847 San Felipe St., Suite 150 | | | Houston | TX | 77057 | |
| Crescent TC Investors, L.P. | Hien Le | 5847 San Felipe St., Suite 150 | | | Houston | TX | 77057 | |
| Crescent TC Investors, L.P. | Jackson Walker LLP | Michael S. Held | 2323 Ross Ave., Suite 600 | | Dallas | TX | 75201 | |
| Crescent TC Investors, L.P. | Michael S. Held | 2323 Ross Ave., Suite 300 | | | Dallas | TX | 75201 | |
| Crescent TC Investors, L.P. | | Post Office Box 841772 | | | Dallas | TX | 75284 | |
| Crescent TC Investors, L.P. | | Post Office Box 841772 | | | Dallas | TX | 75284 | |
| CREST_DAVID | | Address on File | | | | | | |
| Cris Rodriquez | | Address on File | | | | | | |
| Crisostomo, Norm | | Address on File | | | | | | |
| Critical Electric Systems Group, LLC | | 704 Central Pkwy East | #1200A | | Plano | TX | 75074 | |
| CROSS 3 LLC | | 7324 ELDRED AVE, NE | | | Rockford | MI | 49341 | |
| Crosson Dannis, Inc. | | 8150 N. Central Expressway, Suite 950 | | | Dallas | TX | 75206 | |
| Crossroads Audio, Inc. | | 2623 Myrtle Springs Avenue | | | Dallas | TX | 75220 | |
| Crowe & Dunlevy, P.C. | Vickie L. Driver | 2525 McKinnon Street, Suite 425 | | | Dallas | TX | 75201 | |
| Crowe Dunlevy | | Address on File | | | | | | |
| Crowell & Moring | | 1001 Pennsylvania Ave NW | | | Washington | DC | 20004-2595 | |
| CROWELL, LEONARD | | Address on File | | | | | | |
| Crown Capital Securities, L.P. | | 725 Town & Country Rd | Suite 530 | | Orange | CA | 92868 | |
| CRT CAPITAL GROUP, LLC | | 262 HARBOR DR | | | Stamford | CT | 06902 | |
| CSC | | PO Box 13397 | | | Philadelphia | PA | 19101-3397 | |
| CSI e-Discovery Services, LLC | | 4950 N. OConnor Rd. | Suite 152 | | Irving | TX | 75062 | |
| CSI Global Deposition Services | Accounting Dept-972-719-5000 | 4950 N. OConnor Rd, 1 st Fl | | | Irving | TX | 75062-2778 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CSI Litigation Psychology, LLC | | 4950 North OConnor Rd. | Corporate Plaza 1, First Floor | | Irving | TX | 75062 | |
| CSS Medical Inc. | Steve Saft | 14255 49th Street North | Suite 301 | | Clearwater | FL | 33762 | |
| CT Corp | | PO Box 4349 | | | Carol Stream | IL | 60197-4349 | |
| CT Corporation | | 1999 Bryan Street | Ste 900 | | Dallas | TX | 75201-0000 | |
| CT Corporation System | ATTN Michael E. Jones | 350 N. St. Paul Street, Ste. 2900 | | | Dallas | TX | 75201 | |
| CT Corporation System | C/O STEPHANIE WATTS-DARTY | DALLAS CORPORATE TEAM 2 | 350 North St. Paul St. | | Dallas | TX | 75201 | |
| CT Corporation System | | PO Box 4349 | | | Carol Stream | IL | 60197-4349 | |
| CT Lien Solutions | | PO Box 301133 | | | Dallas | TX | 75303 | |
| CT Lien Solutions | | Lockbox 200824 | | | Houston | TX | 77216 | |
| CTRL+V Inc. | | 251 Union St. | | | Lawrence | NY | 11559 | |
| Culhane Meadows PLLC | | PO Box 49716 | | | Atlanta | GA | 30359 | |
| Culinaire International | Attn Catering Dept | 2943 SMU Blvd | | | Dallas | TX | 75205 | |
| CULLEN ESTATE TRUST | | 601 JEFFERSON ST STE 4000 | | | Houston | TX | 77002-7913 | |
| CUNNINGHAM, BRITTNEY | | Address on File | | | | | | |
| CurAlea Associates LLC | | 12 Roszel Road | Suite B102 | | Princeton | NJ | 08540 | |
| Cushman & Wakefield of Arizona, Inc. | | 2555 East Camelback Road, Ste 400 | | | Phoenix | AZ | 85016 | |
| CUSIP | | 55 Water Street | 43rd Floor | | New York | NY | 10041 | |
| CUSIP Global Services | | 33356 Collection Center Dr | | | Chicago | IL | 60693-0333 | |
| CUSIP Service Bureau | | 2542 Collection Center Drive | | | Chicago | IL | 60693 | |
| CUSIP Service Bureau | | Standard and Poors | 2542 Collection Center Drive | | Chicago | IL | 60693 | |
| CUSIP Service Bureau | | PO Box 19140A | | | Newark | NJ | 07195-0140 | |
| CUSTOM BOOK BINDERY, INC. | | 9 SHERIDAN AVE | | | Clifton | NJ | 07011 | |
| Custom Headsets of Dallas | | 5949 W Hwy/ 175 | | | Kaufman | TX | 75142 | |
| CVE Technologies Group Inc. | | 1414 S. Gustin Rd. | | | Salt Lake City | UT | 84104 | |
| CVE technology | | 3000 E Plano Pkwy | | | Plano | TX | 75074-0000 | |
| CW PARTNERS LLC | | 2811 MCKINNEY AVE | STE 214 | | Dallas | TX | 75204 | |
| Cylance | | 400 Spectrum Center Dr. | Suite 900 | | Irvine | CA | 92618-0000 | |
| CYNTHIA VALLES | | Address on File | | | | | | |
| CYRUS SPURLINO REVOCABLE TRUST | | 7214 N MOBLEY RD | | | Odessa | FL | 33556-2303 | |
| Cystic Fibrosis Foundation | NE Texas/Fort Worth Chapter | 1600 Airport Fwy Ste 501 | | | Bedford | TX | 76022-6882 | |
| Cystic Fibrosis Foundation | | 7506 E Independence Blvd #120 | | | Charlotte | NC | 28227 | |
| Cystic Fibrosis Foundation | | Northeast Texas Chapter | 3102 Maple Ave, Ste 120 | | Dallas | TX | 75201 | |
| CZG Dynamics Associates | | 14 Penn Plaza, Suite 1712 | | | New York | NY | 10122 | |
| D Magazine | | 750 North St. Paul Street | Suite 2100 | | Dallas | TX | 75201 | |
| D Magazine | | 4311 Oak Lawn Ave Ste 100 | | | Dallas | TX | 75219-9701 | |
| D&S Enterprises | | 10703 Sweetwater Drive | | | Frisco | TX | 75035 | |
| D. Alan Bowlby | | PO Box 1067 | | | Addison | TX | 75001 | |

Page 33 of 155

**Appx. 00319**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 46 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| D. Allan Bowlby & Associates, Inc | | PO BOX 1067 | | | Addison | TX | 75001 | |
| D.F. King & Co, Inc. | | 48 Wall Street | | | New York | NY | 10005 | |
| D.H. Hill Securities, LLLP | | 1543 Green Oak Place | Ste 100 | | Kingwood | TX | 77339 | |
| DAETSCH, MOLLY | | Address on File | | | | | | |
| DALE BEHM | | Address on File | | | | | | |
| Dale Frey | | Address on File | | | | | | |
| Dallas A&M Club | Attn Mike Henderson | 4303 Glenwick | | | Dallas | TX | 75205 | |
| Dallas AfterSchool Network | | 3900 Willow St Ste 110 | | | Dallas | TX | 75226-1247 | |
| Dallas Area Habitat for Humanity | | House Party | PO Box 700924 | | Dallas | TX | 75370 | |
| Dallas Art & Design | | 3617 Fairmount St Ste 101 | | | Dallas | TX | 75219 | |
| Dallas Bar Association | | 2101 Ross Ave | | | Dallas | TX | 75201 | |
| Dallas Basketball Ltd. | | 1333 N Stemmons Fwy | Ste 105 | | Dallas | TX | 75207-3722 | |
| Dallas Business Journal | | PO Box 840190 | | | Dallas | TX | 75284-0190 | |
| Dallas CASA | | 2757 Swiss Avenue | | | Dallas | TX | 75204 | |
| Dallas Challenge | | 7777 Forest Lane | Suite C-410 | | Dallas | TX | 75203 | |
| DALLAS CHAPTER TEI | ATTN Sharon Langlotz | Cash America International, Inc | 1600 West 7th St | | Ft. Worth | TX | 76102-6803 | |
| DALLAS CHAPTER TEI | | 901 MAIN ST | 69TH FLR, BANK AMERICA PLAZA | | Dallas | TX | 75202 | |
| DALLAS CHAPTER TEI | | PO BOX 961101 | BNSF RAILWAY COMPANY, SCOTT RYNEARSON | | Fort Worth | TX | 76161-1101 | |
| Dallas Childrens Advocacy Center | Attn Stephen Jordan | 5351 Samuell Blvd | | | Dallas | TX | 75228 | |
| Dallas Childrens Theater | Attn Michael Gonzales | 5938 Skillman | | | Dallas | TX | 75231 | |
| Dallas Committee on Foreign Relations | Attn Hannah Fagadau | 4925 Greenville Avenue | Suite 1025 | | Dallas | TX | 75206-4092 | |
| Dallas Contemporary, MTV | Attn Elizabeth Weller | 161 Glass Street | | | Dallas | TX | 75207 | |
| Dallas County | | 2777 N. Stemmons Freeway | Suite 1000 | | Dallas | TX | 75207 | |
| Dallas County | Elizabeth Weller | c/o Laurie A. Spindler | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | Dallas | TX | 75207 | |
| Dallas County Republican Party | | 10100 N Central Exprwy | Ste 175 | | Dallas | TX | 75231 | |
| Dallas County Tax Assessor | John R. Ames, CTA | 1201 Elm Street | Suite 2600 | | Dallas | TX | 75270 | |
| Dallas County Tax Assessor | John R. Ames, CTA | PO Box 139066 | | | Dallas | TX | 75313-9066 | |
| Dallas County Tax Office | | PO Box 139033 | | | Dallas | TX | 75313-9033 | |
| Dallas Courier Service, Inc. | | PO Box 833583 | | | Richardson | TX | 75083 | |
| DALLAS DUCKS UNLIMITED | | 400 TURTLE CREEK CENTER | 3811 TURTLE CREEK BLVD | SCOTT WEBER | Dallas | TX | 75219 | |
| Dallas Employment Services | | 6125 Luther Ln # 299 | | | Dallas | TX | 75225-6202 | |
| Dallas Gigs LLC | Attn Eddie Parker | PO Box 225423 | | | Dallas | TX | 75222 | |
| Dallas Glass & Door Company, Ltd | | PO Box 440 | | | Fate | TX | 75132 | |
| Dallas Hispanic Firefighters Association | | 703 McKinney Ave | Suite 201 | | Dallas | TX | 75202 | |
| DALLAS HR | | 4100 SPRING VALLEY RD | STE 300 | | Dallas | TX | 75244 | |
| Dallas Jewish Community Foundation | | One Hillcrest Green | 12700 Hillcrest Rd, Suite 201 | | Dallas | TX | 75230 | |

Highland Capital Management, L.P.
Case No. 19-34054

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Dallas Junior Chamber of Commerce Found. | | PO Box 130721 | | | Dallas | TX | 75313 | |
| Dallas Kid to Do | Attn Megan Harrison | 650 South R.L. Thornton Freeway | | | Dallas | TX | 75203-3013 | |
| Dallas Landscape Lighting | | 2026 Midlake Rd | | | Dallas | TX | 75205 | |
| Dallas Museum of Art | | 1717 North Harwood | | | Dallas | TX | 75201 | |
| DALLAS PETROLEUM CLUB | | 2200 ROSS AVE | LB 171 | | Dallas | TX | 75201-2799 | |
| DALLAS POLICE AND FIRE | | THE VICTOR LAZADA MEMORIAL FUND | 7474 FERGUSON RD | | Dallas | TX | 75228 | |
| Dallas Police Department | Alarm Permit Compliance Unit | PO Box 840186 | | | Dallas | TX | 75284-0186 | |
| Dallas Producers Club | c/o J. Patrick Collins | PMB 414 | 3824 Cedar Springs Rd | | Dallas | TX | 75219-4136 | |
| Dallas Regional Chamber | Attn Finance | 500 North Akard St, Suite 2600 | | | Dallas | TX | 75201 | |
| Dallas Security Systems, Inc. | | PO Box 550939 | | | Dallas | TX | 75355-0939 | |
| Dallas Stars | | 2601 Avenue of the Stars | | | Frisco | TX | 75034-9089 | |
| Dallas Summer Musicals, Inc. | | 909 1st Ave | | | Dallas | TX | 75210-1042 | |
| Dallas T-Shirt Company | | 2626 Manana Dr | Suite A | | Dallas | TX | 75220 | |
| Dallas Urban Debate Alliance | | PO Box 670564 | | | Dallas | TX | 75367 | |
| Dallas Wildcat Committee | Attn Barbara Johnston | 2200 Ross Ave, Suite 4150E | | | Dallas | TX | 75201 | |
| Dallas Womens Foundation | | 8150 North Central Expwy Suite #110 | | | Dallas | TX | 75206 | |
| Dallas Youth Council | | PO Box 793604 | | | Dallas | TX | 75379 | |
| Dallas Zoological Society | | 650 South RL Thorton Fwy | | | Dallas | TX | 75203-3013 | |
| Damage Recovery | | PO Box 801770 | | | Kansas City | MO | 64180 | |
| DAMC | ATTN CARL BAGGETT | NORCOM CAPITAL | 15770 N DALLAS PKWY | | Dallas | TX | 75248 | |
| DAMERIS, THEODORE | | Address on File | | | | | | |
| DAMEWARE DEVELOPMENT | | 241 MORNINGSIDE DR | | | Mandeville | LA | 70448 | |
| Dan Drabinski | | Address on File | | | | | | |
| Dan Subach | c/o Loewinsohn Flegle Deary Simon | Address on File | | | | | | |
| Dan Winikka | | 12377 Merit Drive | | | Dallas | TX | 75251 | |
| Dana Driensky | | Address on File | | | | | | |
| DANAHY, BRIAN J. | | Address on File | | | | | | |
| DANDAR, CHRISTINA | | Address on File | | | | | | |
| Daniel J Edelman, Inc | | JPMorgan Chase Bank, NA | 21992 Network Place | | Chicago | IL | 60673 | |
| Daniel Kaplan Associates LLC | | 55 Madison Ave, 4th Flr | | | Morristown | NJ | 07960 | |
| Daniel Moisio | | Address on File | | | | | | |
| Daniel N. Shaviro | | Address on File | | | | | | |
| Daniel P Winikka | Loewinsohn Flegle Deary Simon LLP | 12377 Merit Drive, Suite 900 | | | Dallas | TX | 75251 | |
| Daniel Ranson | | Address on File | | | | | | |
| Daniel Riedler | | Address on File | | | | | | |
| Daniel Sexton | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Daniel Starvit | | Address on File | | | | | | |
| Daniel Sheehan & Associates, PLLC | Daniel J Sheehan, Jr | 8150 N. Central Expressway Suite 100 | | | Dallas | TX | 75206 | |
| Daniela Garrett | | Address on File | | | | | | |
| Daniels & Erickson, PC | | 12221 Merit Dr. | Suite 760 | | Dallas | TX | 75251 | |
| Dansby White | | Address on File | | | | | | |
| Darby Dunn Communications | | 461 Manor Lane | | | Pelham | NY | 10803 | |
| Darla M Chavez | | Address on File | | | | | | |
| Daryls By Design | | 1801 N Griffin Street | | | Dallas | TX | 75202 | |
| DATACARE SOFTWARE GROUP INC | | 445 PARK AVE | 10TH FLR | | New York | NY | 10022 | |
| Datamax | | PO Box 20527 | | | Saint Louis | MO | 63139 | |
| DataPlus Consulting Incorporated | | 750 North St Paul St. Suite 1225 | | | Dallas | TX | 75201 | |
| DataPlus Consulting Incorporated | | PO Box 190634 | | | Dallas | TX | 75219 | |
| DataPlus Consulting, Incorporated | | 750 North St Paul | Suite 1225 | | Dallas | TX | 75201 | |
| Datapoint Management | | 210 Empire House | 1 Empire Way | | Wembley | | HA9 0EW | United Kingdom |
| DAUGHERTY, PATRICK | | Address on File | | | | | | |
| DAUM, KURT | | Address on File | | | | | | |
| Dave Barnett | | Address on File | | | | | | |
| DAVE WALLS | | Address on File | | | | | | |
| DAVID BLANKS | | Address on File | | | | | | |
| DAVID BLANKS | | Address on File | | | | | | |
| David Boguslawski | | Address on File | | | | | | |
| David C. Smith | | Address on File | | | | | | |
| DAVID CALLAHAN | | Address on File | | | | | | |
| David Childs Tax Assessor-Collector | | PO Box 620088 | DALLAS COUNTY TAX ASSESSOR-COLLECTOR | | Dallas | TX | 75262-0088 | |
| David Childs Tax Assessor-Collector | | PO BOX 139066 | | | Dallas | TX | 75313-9066 | |
| David Culley | | Address on File | | | | | | |
| David Feldman Worldwide, Inc | | PO Box 2392 | | | New York | NY | 10116-2392 | |
| David Fraiberg | | Address on File | | | | | | |
| DAVID FULLERTON | | Address on File | | | | | | |
| David Geneson | | Address on File | | | | | | |
| David Hill | | Address on File | | | | | | |
| David Hu | | Address on File | | | | | | |
| David Huff Photography LLC | | 22022 N 119th Drive | | | Sun City | AZ | 85373 | |
| DAVID LANCELOT | | Address on File | | | | | | |
| DAVID LEE | | Address on File | | | | | | |
| DAVID LEHUQUET | | Address on File | | | | | | |
| David M. Cooper | | Address on File | | | | | | |
| DAVID MARTIN | | Address on File | | | | | | |
| David Ourlicht | | Address on File | | | | | | |
| DAVID POWERS | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 49 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| DAVID R HOLEBROOKE ROTH IRA | | 120 BULKLEY AVE APT 405 | | | Sausalito | CA | 94965-2149 | |
| DAVID SALYER | | Address on File | | | | | | |
| DAVID SMITH | | Address on File | | | | | | |
| David Smith | | Address on File | | | | | | |
| David Spiegel | | Address on File | | | | | | |
| David Tomek PLLC | | 325 N St Paul Street | Suite 3300 | | Dallas | TX | 75201 | |
| David W. Langford, CSR, CRR, RDR | Official Court Reporter | 101st Judicial District Court | George L. Allen Courts Building | | Dallas | TX | 75202-4631 | |
| David Walls | | Address on File | | | | | | |
| David Weisbach | | Address on File | | | | | | |
| DAVIES WARD PHILLIPS & VINEBERG LLP | | 44TH FLR | 1 FIRST CANADIAN PLACE | | TORONTO | ON | M5X 1B1 | CANADA |
| Davis Deadman | Jason P. Kathman | 2701 Dallas Parkway, Suite 590 | | | Plano | TX | 75093 | |
| Davis Deadman | | Address on File | | | | | | |
| DAVIS FORESTRY | | PO BOX 24633 | | | Little Rock | AR | 72221 | |
| Davis Polk & Wardwell | Attn Andrew Dean | 450 Lexington Ave | | | New York | NY | 10017 | |
| Davis R. Deadman | | Address on File | | | | | | |
| Davis Wright Tremaine LLP | | 2600 Century Square 1501 Fourth Ave | | | Seattle | WA | 98101-1688 | |
| DAVIS, MARY M. | | Address on File | | | | | | |
| DAVIS, MARY MARTHA | | Address on File | | | | | | |
| Dawn ORourke | | Address on File | | | | | | |
| Day Pitney LLP | | PO Box 416234 | | | Boston | MA | 0224I-6234 | |
| DDC Financial Group s.r.o. | | Bohusovicka 230-12 | 190 00 Prague | | Praha 9 | | | CZECH REPUBLIC |
| DEADMAN, DAVIS | | Address on File | | | | | | |
| DealFlow Media, Inc | | PO Box 122 | | | Syosset | NY | 11791 | |
| Deana K. Adams | Official Court Reporter | 600 Commerce, 630 C | 6th Floor, East Tower | | Dallas | TX | 75202 | |
| Deanne Engle | | Address on File | | | | | | |
| Debevoise & Plimpton | | 919 Third Ave | | | New York | NY | 10022 | |
| Debevoise & Plimpton LLC | M. Natasha Labovitz, Erica S. Weisgerber, Daniel E. Stroik c/o Accounting Dept. 28th Floor | 919 Third Avenue | | | New York | NY | 10022 | |
| Debevoise & Plimpton LLP | Attn Christopher K. Tahbaz, Esq. | 909 Third Ave | | | New York | NY | 10022 | |
| Debevoise and Plimpton LLP | | 919 Third Avenue | | | New York | NY | 10022 | |
| Debra A. Dandeneau | Baker & McKenzie LLP | 452 Fifth Avenue | | | New York | NY | 10018 | |
| Debt Domain | | 295 Madison Ave | Ste 24 | | New York | NY | 10017-0000 | |
| Debtdomain (USA) Inc. | | 295 Madison Ave | Suite 924 | | New York | NY | 10017 | |
| DECHERT LLP | | PO BOX 7247-6643 | | | Philadelphia | PA | 19170-6643 | |
| Dechert UK | | 160 Queen Victoria Street | | | London | England | EC4V 4QQ | United Kingdom |
| DEDYO, STEPHEN J. | | Address on File | | | | | | |
| DeGolyer & MacNaughton | | 5001 Spring Valley Rd | Suite 800 east | | Dallas | TX | 75244 | |
| Del Vecchio Reporting Services, LLC | | 117 Randi Drive | | | Madison | CT | 06443 | |
| DELAROSA, STEVEN | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 50 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| DELAWARE DIVISION OF CORPORATIONS | | 401 FEDERAL ST | STE 4 | | Dover | DE | 19901 | |
| Delaware Secretary of State | Division of Corporations | 401 Federal St. Suite 4 | | | Dover | DE | 19901 | |
| Delaware Secretary of State | DIVISION OF CORPORATIONS | PO BOX 11728 | | | Newark | NJ | 07101-4728 | |
| Delaware Secretary of State | Division of Corporations | PO Box 5509 | | | Binghamton | NY | 13902-5509 | |
| Delaware Secretary of State | Division of Corporations | PO Box 74072 | | | Baltimore | MD | 22174-4072 | |
| DELAWARE SECRETARY OF STATE # 51-6000279 | | 1209 Orange St | | | Wilmington | DE | 19801 | |
| DELAWARE SECRETARY OF STATE # 51-6000279 | | State of Delaware Division of Corp | PO Box 5509 | | Binghamton | NY | 13902-5509 | |
| DELGADO, MAURICIO | | Address on File | | | | | | |
| Dell Business Credit | | Payment Processing Center | PO Box 5275 | | Carol Stream | IL | 60197-5275 | |
| Dell Commercial Credit | | Dept. 50-0049055190 PO BOX 689020 | | | Des Moines | IA | 50368-9020 | |
| Dell Financial Services | | Payment Processing Center | 4307 Collection Center Dr. | | Chicago | IL | 60693 | |
| Dell Financial Services L.L.C. | DFS–Bankruptcy | PO Box 81577 | | | Austin | TX | 78708 | |
| Dell Marketing LP | c/o Dell USA LP | PO Box 676021 | | | Dallas | TX | 75267-6021 | |
| DELOITTE & TOUCHE | ATTN KILEY RODEN | 10 WESTPORT RD | | | Wilton | CT | 06897 | |
| Deloitte Financial Advisory Services LLP | | 4022 Sells Drive | | | Hermitage | TN | 37076 | |
| Deloitte Financial Advisory Services LLP | | 2200 Ross Ave | | | Dallas | TX | 75201 | |
| Deloitte Financial Advisory Services LLP | | PO Box 2062 | | | Carol Stream | IL | 60132-2062 | |
| Deloitte Tax LLP | | 4022 Sells Drive | | | Hermitage | TN | 37076 | |
| Deloitte Tax LLP | | PO BOX 2079 | | | Carol Stream | IL | 60132-2079 | |
| Deloitte Tax LLP | | PO Box 844736 | | | Dallas | TX | 75284-4736 | |
| Delphi Legal Technologies | | 350 N. Saint Paul Suite 275 | | | Dallas | TX | 75201 | |
| Delphi Legal Technologies | | PO Box 133026 | | | Dallas | TX | 75313-3026 | |
| Delta Dallas Staffing, LP | | Tollway Plaza II | 15950 N. Dallas Pkwy, Ste 500 | | Dallas | TX | 75248 | |
| Deluxe Business Forms | | PO Box 742572 | | | Cincinnati | OH | 45274-2572 | |
| Denison Glass & Mirror | | 4231 S State Highway 91 | | | Denison | TX | 75020-8115 | |
| Dennis Sugino | | Address on File | | | | | | |
| DENNIS WINTER IRA | | Address on File | | | | | | |
| Denton County | | PO Box 90223 | | | Denton | TX | 76202 | |
| Denton County Tax Assessor | | PO Box 90223 | | | Denton | TX | 76202 | |
| Denton US LLP | | Dept. 894579 | | | Los Angeles | CA | 90189-4579 | |
| Dentons US LLP | Attn Lauren Macksoud, Esq. and Patrick Maxcy, Esq. | 1221 Avenue of the Americas | | | New York | NY | 10020 | |
| Dentons US LLP | Casey Doherty | 1221 McKinney Street, Suite 1900 | | | Houston | TX | 77010-2006 | |
| Denver Daughtry | | Address on File | | | | | | |
| Department of Business Oversight | | 1515 K St #200 | | | Sacramento | CA | 95814 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 51 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Department of Corporations (CA) | | Securities Regulations Div. | 320 W 4th St, Ste 750 | | Los Angeles | CA | 90013-1105 | |
| Department of Finance, State of Idaho | | Securities Bureau | 800 Park Boulevard, Suite 200 | | Boise | ID | 83712 | |
| Department of State | Division of Corporations | 99 Washington Ave. | | | Albany | NY | 12231-0001 | |
| DEPARTMENT OF TAX AND REVENUE | WV STATE TAX DEPT | PO BOX 2745 | INTERNAL AUDITING DIVISION | | Charleston | WV | 25330-2745 | |
| Department of Taxation and finance | | Dept of Labor-Unemp Insurance Div | PO Box 15012 | | Albany | NY | 12212 | |
| DEPARTMENT OF THE TREASURY | INTERNAL REVENUE SERVICE | ACS SUPPORT | PO BOX 57 | | Bensalem | PA | 19020-8514 | |
| DEPARTMENT OF THE TREASURY | IRS | STOP 5107 NWSAT | 4050 ALPHA RD | | Farmers Branch | TX | 75244-4201 | |
| DEPARTMENT OF THE TREASURY | | Internal Revenue Service | Suite 517, MC 8000NDAL | | Cincinnati | OH | 45999-0009 | |
| Department of the Treasury | | 4050 Alpha Road | | | Dallas | TX | 75201-7849 | |
| Department of the Treasury - Internal Revenue Service | Internal Revenue Service | 1100 Commerce St | M/S MC5027DAL | | Dallas | TX | 75242 | |
| Department of the Treasury - Internal Revenue Service | Internal Revenue Service | P. O. Box 7346 | | | Philadelphia | PA | 19101-7346 | |
| Dept. of Licensing & Regulatory Affairs | Corp, Securities & Comm Licensing Bureau | 525 W. Allegan Street - Audit & Exam Div | | | Lansing | MI | 48909 | |
| DERRICK PITTS | | Address on File | | | | | | |
| Desai, Neil | | Address on File | | | | | | |
| Dessaint, Louis C. | | Address on File | | | | | | |
| DEWITT, AUDREY | | Address on File | | | | | | |
| DFPG Investments, Inc. | | 9017 S. Riverside Dr. | Ste 210 | | Sandy | UT | 84070 | |
| DFW Ice Cream | | 10198 Western Hills Dr. | | | Frisco | TX | 75034 | |
| DFW MULTIMEDIA INC | | 1330 RIVER BEND DR | SUITE 850 | | Dallas | TX | 75247 | |
| DFW Private Equity Forum | Attn Amy Thompson | 2323 Victory Avenue | Suite 2000 | | Dallas | TX | 75219 | |
| DFW VIDEO | | DFW Multimedia, Inc. | 13300 River Bend Drive, Ste. 850 | | Dallas | TX | 75247 | |
| DGHS Holdings, LLC | | 5049 Sherry Lane | Suite 750 | | Dallas | TX | 75225 | |
| Dhamodharan Srinivasan | | 583 Jeremy Drive | | | Bourbonnais | IL | 60606 | |
| Dharnidharka, Kerry | | Address on File | | | | | | |
| DHL EXPRESS | | PO BOX 4723 | | | Houston | TX | 77210-4723 | |
| DHR INTERNATIONAL, INC | | 10 South Riverside Plaza | Suite 2220 | | Chicago | IL | 60606 | |
| Dice Holdings, Inc. | | 4939 Collections Center Dr. | | | Chicago | IL | 60693 | |
| DICE INC | | 4939 COLLECTIONS CENTER DR. | | | Chicago | IL | 60693 | |
| Dickman Davenport, Inc. | | 3131 Turtle Creek Blvd | Suite 320 | | Dallas | TX | 75219 | |
| DIECKHAUS, SCOTT | | Address on File | | | | | | |
| DIECKHAUS, SCOTT | | Address on File | | | | | | |
| DIFC Global | | 11-12 St. James Square | | | London | | SW1Y 4LB | United Kingdom |
| DIFFADallas | | 2050 Stemmons Fwy | Mail Unit 262 | | Dallas | TX | 75207 | |
| Diffenderfer, Claude A. | | Address on File | | | | | | |
| Digital Copy LLC | | 500 N Akard St, Suite 250 | | | Dallas | TX | 75201 | |
| Digital Legal LLC | | 1001 Jefferson Plaza | Suite 100 | | Wilmington | DE | 19801 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 52 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Digital Marketing and Print Solutions | | 3305 Wiley Post | | | Carrollton | TX | 75006 | |
| Digital Mountain | | 5050 El Camino Real | Suite 205 | | Los Altos | CA | 94022 | |
| Digital Telefonos | | PO Box 852184 | | | Richardson | TX | 75085-2184 | |
| Digital Verdict, Inc. | | 750 N. St. Paul Street | Suite 1225 | | Dallas | TX | 75201 | |
| Digital Works | | 6606 LBJ Fwy | Suite 240 | | Dallas | TX | 75240 | |
| DiningIn LLC | | 50 Milk St Ste 110 | | | Boston | MA | 02109-5004 | |
| DiningIn Out in Dallas | | 3030 Olive Street | Ste 400 | | Dallas | TX | 75219 | |
| Dinoto Inc. | | 535 Dean Street | PH 102 | | Brooklyn | NY | 11217 | |
| DiOrio, Matthew | | Address on File | | | | | | |
| Direct Corporate Resources, Inc. | | Freedom Center 10203 Kotzebue Ste 114 | | | San Antonio | TX | 78217 | |
| Director of Compliance | Re Prime Brokerage Services | Jefferies LLC | 520 Madison Avenue, 16th Floor | | New York | NY | 10022 | |
| Directors Desk LLC | | Lockbox 50200 | PO Box 8500 | | Philadelphia | PA | 19178-0200 | |
| DirectTV | | 208 South Akard Street | | | Dallas | TX | 75202-0000 | |
| Directv, LLC | | PO Box 60036 | | | Los Angeles | CA | 90060-0036 | |
| DISCOVERY BENEFITS | | 3216 13TH AVE S | | | Fargo | ND | 58103 | |
| DISCOVERY BENEFITS | | PO BOX 869 | COBRA DEPT | | Fargo | ND | 58107 | |
| DISCOVERY BENEFITS | | PO BOX 9528 | | | Fargo | ND | 58107-0869 | |
| DISCOVERY BENEFITS | | PO BOX 2079 | | | Omaha | NE | 68108-2079 | |
| Discovery Benefits Inc | | 4321 20th Ave. S. | | | Fargo | ND | 58103-0000 | |
| Discovery Data | | 12 Christopher Way, Ste 202 | | | Eatontown | NJ | 07724 | |
| Displays Unlimited, Inc. | | 626 106th Street | | | Arlington | TX | 76011 | |
| District Director | Attn Insolvency | Internal Revenue Service | 31 Hopkins Plaza, Room 1150 | | Baltimore | MD | 21201 | |
| Diversus Investment Advisers (Asia) Ltd | | 410 Oxford Street | | | Bondi Junction | NSW | 02022 | AUSTRALIA |
| DIVYASH PATEL | | Address on File | | | | | | |
| Dixon Hughes Goodman LLP | | 4350 Congress Street | Suite 900 | | Charlotte | NC | 28209 | |
| Dixon Hughes Goodman LLP | | PO Box 602828 | | | Charlotte | NC | 28260-2828 | |
| DKW Law Group LLC | | 600 Grant St, 58th Flr | | | Pittsburgh | PA | 15219 | |
| DLA Piper LLP (US) | Marc D. Katz, Esq. | DLA Piper LLP (US) | 1900 N Pearl St, Suite 2200 | | Dallas | TX | 75201 | |
| DLA Piper LLP (US) | | 1900 N Pearl St, Suite 2200 | | | Dallas | TX | 75201 | |
| DLA Piper LLP US | | 6225 Smith Avenue | | | Baltimore | MD | 21209 | |
| DOAR Communications, Inc. | | 170 Earle Ave | | | Lynbrook | NY | 11563 | |
| Document Technologies, Inc. | | PO Box 933435 | | | Atlanta | GA | 31193-3435 | |
| Don Bryant | | Address on File | | | | | | |
| Don Drive Interiors | | 8408 Chancellor Row | | | Dallas | TX | 75247 | |
| Don Netzer Photography | | 2510 Southwell Rd. | #107 | | Dallas | TX | 75229 | |
| Don Netzer Photography | | 2510 Southwell Rd. # 107 | | | Dallas | TX | 75229 | |
| DONALD OSBORNE | | Address on File | | | | | | |
| Donald Salvino | | Address on File | | | | | | |
| DONALDSON, MICHEAL | | Address on File | | | | | | |
| Donaldson, Steven | | Address on File | | | | | | |
| DONDERO, JAMES | | Address on File | | | | | | |
| Dongpeng Gong | | Address on File | | | | | | |
| Donnelley Financial Solutions | | PO Box 842282 | | | Boston | MA | 02284-2282 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 53 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Donnelley Financial, LLC | | 35 W Wacker Drive | | | Chicago | IL | 60601 | |
| Donnelley Financial, LLC | | 20 Commerce Way, Ste 800 | Lockbox #842282 | | Woburn | MA | 01801-1057 | |
| Donnelley Financial, LLC | | PO Box 842282 | | | Boston | MA | 02284-2282 | |
| Donnelley Financial, LLC | | PO Box 531632 | | | Atlanta | GA | 30353-1832 | |
| DORENBAUM, ANDREI | | Address on File | | | | | | |
| DOUG MEYER | | Address on File | | | | | | |
| DOUGHERTY, RAYMOND | | Address on File | | | | | | |
| DOUGHERTY, RAYMOND | | Address on File | | | | | | |
| Douglas Wade Carvell | | Address on File | | | | | | |
| Dow Jones & Company, Inc. | ATTN PAUL CHAMPIGNY | 8251 PRESIDENTS DR | BARRON/CUSTOMER SERVICE | | Orlando | FL | 32809 | |
| Dow Jones & Company, Inc. | | 84 Second Ave. | | | Chicopee | MA | 01020 | |
| Dow Jones & Company, Inc. | | Subscriptions Dept. | 200 Burnett Rd | | Chicopee | MA | 01020 | |
| Dow Jones & Company, Inc. | | 1211 Avenue of the Americas | | | New York | NY | 10036 | |
| Dow Jones & Company, Inc. | | BOX 4137 | | | New York | NY | 10261-4137 | |
| Dow Jones & Company, Inc. | | WALL ST JRNL OR BARRONS | PO Box 4137 | | New York | NY | 10261-4137 | |
| Dow Jones Reuters Business Interactive | | PO Box 7247-0237 | | | Philadelphia | PA | 19170-0237 | |
| DOWNEN, MARTIN | | Address on File | | | | | | |
| Dozal, Ana | | Address on File | | | | | | |
| DRABINSKI, DANIEL J. | | Address on File | | | | | | |
| Dravis, Samantha | | Address on File | | | | | | |
| Drew Dedelow | | Address on File | | | | | | |
| Drew Thomas | | Address on File | | | | | | |
| DREW, RICHARD | | Address on File | | | | | | |
| Drilling Info, Inc. | | PO Box 679093 | | | Dallas | TX | 75267-9093 | |
| DrillingInfo | | PO Box 5545 | | | Austin | TX | 78763 | |
| Drinker Biddle & Reath LLP | | One Logan Square, Ste 2000 | | | Philadelphia | PA | 19103-6996 | |
| DRINNON, KASEY | | Address on File | | | | | | |
| DRONOV, ALEXEY | | Address on File | | | | | | |
| Dropoff, Inc. | | Dept 3696 | PO Box 123696 | | Dallas | TX | 75312-3696 | |
| DSFOP | | PO Box 36023 | | | Dallas | TX | 75235-1023 | |
| DSHS | | Mail Code 2003 | PO Box 149347 | | Austin | TX | 78714-9347 | |
| DST Asset Manager Solutions | | 330 W. 9th | Ste 219230 | | Kansas City | MO | 64105 | |
| DST RESEARCH ANALYTICS & CONSULTING, LLC | | DST TECHNOLOGIES, INC | 5523 Collections Center Drive | | Chicago | IL | 60693 | |
| DST Systems, Inc. | | 2454 Collections Center Dr | | | Chicago | IL | 60693-0024 | |
| DST Technologies, Inc. | | 2454 Collections Center Drive | | | Chicago | IL | 60693-0024 | |
| DTCC ITP LLC | | PO Box 27590 | | | New York | NY | 10087-7590 | |
| Duane Morris LLP | ATTN Payment Processing | 30 South 17th St | | | Philadelphia | PA | 19103-4196 | |
| DUBOSE FUNERAL HOME | | 703 SOUTH ROCKWALL ST | | | Terrell | TX | 75160 | |
| Ducera Partners LLC | | 499 Park Ave, 16th Floor | | | New York | NY | 10022 | |
| Duff & Phelps, LLC | c/o David Landman | Benesch, Friedlander, Coplan & Aronoff | 200 Public Square, Suite 2300 | | Cleveland | OH | 44114-2378 | |
| Duff & Phelps, LLC | | 2397 Paysphere Circle | | | Chicago | IL | 60674 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 54 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Duff & Phelps, LLC | | DUFF & PHELPS, LLC | 12595 Collection Center Drive | | Chicago | IL | 60693 | |
| Duff & Phelps, LLP | Benesch | LouAnne Molinaro | 222 Delaware Avenue, Suite 801 | | Wilmington | DE | 19801-1611 | |
| Duff & Phelps, LLP | David A. Landman | 200 Public Square, Ste. 2300 | | | Cleveland | OH | 44114 | |
| Duff & Phelps, LLP | Richard G. Hardy, Esq. | 1660 West 2nd Street, Suite 1100 | | | Cleveland | OH | 44113 | |
| Duffy, James B. | | Address on File | | | | | | |
| Duffy, William | | Address on File | | | | | | |
| Dun & Bradstreet Inc. | | PO Box 75434 | | | Chicago | IL | 60675-5434 | |
| Dun & Bradstreet | The Rowland Law Firm | PO Box 3108 | | | Crofton | MD | 21114 | |
| Dun & Bradstreet | The Rowland Law Firm | Ronald L. Rowland, Authorized Agent | 2453 Vineyard Lane | | Crofton | MD | 21114 | |
| DUNN, CHRISTOPHER | | Address on File | | | | | | |
| Dunn, John | | Address on File | | | | | | |
| DUO Security | | 170 West Tasman Dr | | | San Jose | CA | 95134 | |
| Dustin Schneider | | Address on File | | | | | | |
| DUSTIN WORLEY | | Address on File | | | | | | |
| DuWest Realty | | 3319 Darmouth Ave. | | | Dallas | TX | 75205 | |
| DuWest Realty | | 4403 N Central Expy | | | Dallas | TX | 75205 | |
| DuWest Realty | | 4514 Cole Avenue | Suite 1100 | | Dallas | TX | 75205 | |
| Dykema Gossett, PLLC | | 400 Renaissance Center | | | Detroit | MI | 48243-1668 | |
| Dynamex | | Greeley Square Station | PO Box 20284 | | New York | NY | 10001 | |
| Dynamex | | PO BOX 20284 GREELEY SQ STATION | | | New York | NY | 10001 | |
| Dynamex | | PO Box 842304 | | | Dallas | TX | 75284-2304 | |
| E Gallery Studios | | 1330 Motor Circle | | | Dallas | TX | 75207 | |
| eA Data Automation Services, LLC | | 5000 Olde Towne Parkway | Suite 100 | | Marietta | GA | 30068 | |
| EA Electric | | 2941 Trade Center Drive | #200 | | Carrollton | TX | 75007-4647 | |
| EAB HealthWorks LLC | | 400 West End Ave | Suite 8A | | New York | NY | 10024 | |
| Eagle Software | | 124 Indiana Ave | | | Salina | KS | 67401 | |
| Earl F. Hale, Jr. | | Address on File | | | | | | |
| EarthColor Houston Inc. | | PO Box 840578 | | | Dallas | TX | 75284-0578 | |
| Earthstream Global Inc. | | 800 Town & Country Blvd | Suite 300 | | Houston | TX | 77024 | |
| EASLEY & MARQUIS, PLLC | | 5000 LEGACY DR | STE 400 | | Plano | TX | 75024 | |
| Eastern Point Trust Company | Attn Accounts Receivable | PO Box 3322 | | | Warrenton | VA | 20188-3322 | |
| Eastern Point Trust Company, Inc. | George S. Robinson, IV | 4685 Millennium Drive | | | Belcamp | MD | 21017 | |
| Eastland CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Eastland CLO, Ltd. | c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Eastland CLO, Ltd. | Eastland CLO Ltd. c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1093GT | Queensgate House, South Church Street | The Directors | George Town, Grand Cayman | | KY1-1108 | Cayman Islands |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Eastland CLO, Ltd. and Investors Bank and Trust Company | Eastland CLO Ltd. c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1234 | Queensgate House | The Directors-Eastland CLO, Ltd. | George Town, Grand Cayman | | KY1-1108 | Cayman Islands |
| Eastland CLO, Ltd. and Investors Bank and Trust Company | Investors Bank and Trust Company Attn CDO Services Group Ref Eastland CLO | 200 Clarendon St | Mail Code EUC 108 | | Boston | MA | 02116 | |
| EASY 2 HIRE LLC | | 3637 Temecula Creek Trail | | | McKinney | TX | 75070 | |
| Eckelkamp Retirement Planning | | 5550 S. Ft. Apache Rd | Suite 101 | | Las Vegas | NV | 89148-7667 | |
| Eclipse Entertainment, LLC | | 6850 Manhattan Blvd. | Suite 300 | | Fort Worth | TX | 76120 | |
| EcoSystems Environmental, Inc. | | PO Box 110849 | | | Carrollton | TX | 75011-0849 | |
| Ed Trampolsky | | Address on File | | | | | | |
| Edelman Pub Relations Worldwide (HK) Ltd | | 701 Central Plaza | 18 Harbour Road | Wan Chai | HONG KONG | | | HONG KONG |
| Edelman Pub Relatns Worldwide Korea Ltd | | 18th Flr Ferrum Tower 66 | | | Seoul | | 100210 | South Korea |
| Eden, Hugh B. | | Address on File | | | | | | |
| EDGAR filings, Ltd | | 3900 Essex | Suite 900 | | Houston | TX | 77027 | |
| Edgar Online | | 50 Washington St 9th Flr | | | Norwalk | CT | 06854 | |
| Edgar Online | | 11200 Rockville Pike, Ste. 310 | | | Rockville | MD | 20852 | |
| Edgar Online | | 88747 Expedite Way | | | Chicago | IL | 60695-1700 | |
| Edge Realty Partners | | 5950 Berkshire Ln | Suite 200 | | Dallas | TX | 75225 | |
| Edgewater Financial LLC | c/o Michael D Breen | 807 West Lynn Ste 218 | | | Austin | TX | 78703 | |
| Edjie Fox | | Address on File | | | | | | |
| Edina Country Club | | 5100 Wooddale Ave | | | Edina | MN | 55424 | |
| Education is Freedom | | 2711 N. Haskell Ave. | Suite 2070, LB 18 | | Dallas | TX | 75201 | |
| Edward A Barber | | Address on File | | | | | | |
| Edward Lin | | Address on File | | | | | | |
| Edward McRedmond | | Address on File | | | | | | |
| Effort Group, LLC | | 1 Throndal Circle | | | Darien | CT | 06820 | |
| efinancialcareers | | 1040 Avenue of the Americas | 8th Floor | | New York | NY | 10018 | |
| efinancialcareers | | 4939 Collections Center Dr | | | Chicago | IL | 60693 | |
| Eftekhari, Cyrus | | Address on File | | | | | | |
| EGON ZEHNDER INTERNATIONAL | | 350 PARK AVE | | | New York | NY | 10022 | |
| Egret Management, Inc. | | 10515 Egret Lane | | | Dallas | TX | 75230 | |
| EIDSON, ALLISON | | Address on File | | | | | | |
| EIMEN, CATHERINE | | Address on File | | | | | | |
| EIMER STAHL KLEVORN & SOLBERG LLP | | 224 SOUTH MICHIGAN AVE | STE 1100 | | Chicago | IL | 60604 | |
| EIMN, LLC | Attn Accounting Department | 225 Park Avenue South, 7th Floor | | | New York | NY | 10003 | |
| EL CONQUISTADOR GOLF RESORT CASINO | | 1000 EL CONQUISTADOR AVE | | | Fajardo | PR | 00738 | |
| Elalia Abate | | Address on File | | | | | | |
| Eleanor Munson, PhD | | Address on File | | | | | | |
| Electra Cruises, Inc. | | 3439 Via Oporto | | | Newport Beach | CA | 92663 | |
| Elektronik Devices Company | | 1712 Ponciana Ln | | | Plano | TX | 75075 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ELGIN CAPITAL | | 130 JERMYN ST | | | London | | SW1Y 4UR | United Kingdom |
| Eliason, Hayley | | Address on File | | | | | | |
| Eliot Weissberg | The Investors Center, Inc. | 70 East Main St, POB 1447 | | | Avon | CT | 06001 | |
| Elisa Dreier Reporting | | 950 Third Avenue 5th Floor | | | New York | NY | 10022 | |
| Elisa Dreier Reporting Corp. | | 780 Third Ave, 7th Flr | | | New York | NY | 10017 | |
| ELISABETH LEIDERMAN | | Address on File | | | | | | |
| Elite Casino Events | | P. O. Box 6755 | | | Fort Worth | TX | 76115 | |
| Elite Copy Solutions, Inc. | | 403 N Stemmons Freeway Ste 100 | | | Dallas | TX | 75207 | |
| Elite Deposition Technologies | | 400 N. St Paul St, 13th Floor, Ste 1340 | | | Dallas | TX | 75201 | |
| Elite Document Technology-Dallas | | 400 N. Saint Paul St. | Suite 1300 | | Dallas | TX | 75201 | |
| Elite Document Technology-Dallas | | 403 North Stemmons Freeway Suite 100 | | | Dallas | TX | 75207 | |
| Elite Scheduling Services, LLC | | 8442 S. Union Lake Dr. SE | | | Alexandria | MN | 56308 | |
| Elkins McSherry | | 225 Liberty St | 24th floor | | New York | NY | 10281-0000 | |
| ELKINS/MCSHERRY, LLC | ATTN FINANCE | 2 WFC | 225 LIBERTY ST, 24TH FLR | | New York | NY | 10281 | |
| ELKINS/MCSHERRY, LLC | | 1290 Avenue of the Americas | 22nd Floor | | New York | NY | 10104 | |
| Ellen W. Slights, Esq. | United States Attorney's Office | District of Delaware | 1007 N. Orange Street, Suite 700 | | Wilmington | DE | 19801 | |
| Ellington, Scott | c/o Frances A Smith | Ross & Smith PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | Dallas | TX | 75201 | |
| Ellington, Scott | | Address on File | | | | | | |
| EMC Integrated Systems Group | | 121 Central Ave | Suite 200 | | Grapevine | TX | 76051 | |
| Emerald City Management | | 4688 Reunion Dr. | | | Plano | TX | 75024 | |
| Emerging Portfolio Fund Research, Inc. | | PO Box 417184 | | | Boston | MA | 02241-7184 | |
| Emerson Network Power | | PO BOX 70474 | | | Chicago | IL | 60673-0001 | |
| Emert, Craig | | Address on File | | | | | | |
| EMI Environmental Group | | 14850 Montfort Dr Ste 205 | | | Dallas | TX | 75254 | |
| Emma Cruttenden | | Address on File | | | | | | |
| EMMANUEL, ARTHUR | | Address on File | | | | | | |
| Emmet, Marvin & Martin, LLP | | 120 Broadway | 32nd Floor | | New York | NY | 10271 | |
| Employer Compliance Service | | 611 Pennsylvania Ave SE #4000 | | | Washington | DC | 20003-4303 | |
| Employment Security Division | | 500 East Third Street | | | Carson City | NV | 89713-0030 | |
| EMSI-Examination Mgmt Services, Inc | | Health Service Division | PO Box 910465 | | Dallas | TX | 75391-0465 | |
| ENA Capital, LLC | Attn Steve Ellman and Bob Kauffman | Ellman Management Group, Inc. | 4040 E. Camelback Road, Suite 250 | | Phoenix | AZ | 85018 | |
| Encore Discovery Solutions | | Dept 2851 | PO Box 122651 | | Dallas | TX | 7531-2-2651 | |
| Encore Live, LLC | | 600 E Exchange Ave | | | Fort Worth | TX | 76164-8246 | |
| Encore Productions | | 2012 Greenbriar Lane | | | Plano | TX | 75074 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 57 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| EnerCom, Inc. | | 800 18th Street | Suite 200 | | Denver | CO | 80202 | |
| Energy Search Associates, LLC | | 7709 San Jacinto Place | Ste 206 | | Plano | TX | 75024 | |
| EnergyNet Services, Inc. | | 7201 W. Interstate 40 | Suite 319 | | Amarillo | TX | 79106 | |
| ENGSTROM, DONNA | | Address on File | | | | | | |
| EnMark Services, Inc. | | 1700 Pacific Avenue | Suite 2660 | | Dallas | TX | 75201 | |
| ENOCH, KEVIN | | Address on File | | | | | | |
| Entwistle & Cappucci LLP | | 280 Park Ave | 26th Floor West | | New York | NY | 10017 | |
| Envestnet Tamarac | | 701 5th Ave. Ste 1400 | | | Seattle | WA | 98104 | |
| Envoy Data Corporation | | 1310 W. Boxwood Ave | | | Gilbert | AZ | 85233 | |
| EPFR Global | | PO Box 417184 | | | Boston | MA | 02241-7184 | |
| Epiq eDiscovery Solutions | | Dept 2651 | PO Box 122651 | | Dallas | TX | 75312-2651 | |
| Episcopal School of Dallas | Karla Wigley | ESD Development Office | 4100 Merrell Rd. | | Dallas | TX | 75229 | |
| Episcopal School of Dallas | | 4100 Merrell Rd | | | Dallas | TX | 75229 | |
| Eqocal | | 2060 Walkley Rd. | | | Ottawa | ON | K1G 3P5 | CANADA |
| Equest | | PO Box 2109 | | | Wylie | TX | 75098 | |
| Equest | | PO Box 171779 | | | Dallas | TX | 75217 | |
| Equity Search Partners | | 200 Crescent Court, Ste 1300 | | | Dallas | TX | 75201 | |
| Equivalent Data | | 4809 Westway Park Blvd. | Payment Center | | Houston | TX | 77041 | |
| eRevival LLC | | 141 Lanza Ave | Bldg 5 | | Garfield | NJ | 07026 | |
| Eric Girard | | Address on File | | | | | | |
| ERIC KEPHART | | Address on File | | | | | | |
| ERIC MARK | | Address on File | | | | | | |
| Eric Pearson | | Address on File | | | | | | |
| Eric Reynolds | | Address on File | | | | | | |
| Eric Thayer | | Address on File | | | | | | |
| Erick Rawlings | | Address on File | | | | | | |
| Erin Sheehan | | Address on File | | | | | | |
| Ernst & Young | | 200 Plaza Drive | | | Secaucus | NJ | 07094 | |
| ERS | | 101 S Coit Rd Bldg 36, Ste 297 | | | Richardson | TX | 75080 | |
| Erskine Chambers - Andrew Blake | | 33 Chancery Lane | | | London | | WC2A 1EN | United Kingdom |
| Erskine Chambers - Michael Todd | | 33 Chancery Lane | | | London | | WC2A 1EN | United Kingdom |
| Escudero, Gaston | | Address on File | | | | | | |
| ESD | ATTN SARA CAMPBELL | EPISCOPAL SCHOOL OF DALLAS | 4100 MERRELL RD | | Dallas | TX | 75229 | |
| Esquire Deposition Services, LLC | | PO Box 827829 | | | Philadelphia | PA | 19182-7829 | |
| Esquire Deposition Solutions, LLC | | PO Box 846099 | | | Dallas | TX | 75284 | |
| Esquire Litigation Solutions, LLC | | PO Box 785751 | | | Philadelphia | PA | 19178-5756 | |
| Estevez, Jaime | | Address on File | | | | | | |
| Estudio ROVIRA | | 1850 North Greenville Ave #158 | | | Richardson | TX | 75081 | |
| ETCI | Attn AR/Mutual Funds | PO Box 3512 | | | Arlington | VA | 22203 | |
| E Trade Financial | | | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 58 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| EUROMONEY INSTITUTIONAL INVESTOR | | PO Box 4009 | | | Chesterfield | MO | 63006-4009 | |
| EuroUSA Shipping Inc. | | 1826 Holiars Place | | | Middleburg | FL | 32068 | |
| Evans & McFarland, LLC | | 4643 S. Ulster, Suite 800 | | | Denver | CO | 80237 | |
| Evans, Christian | | Address on File | | | | | | |
| EventWork Photography, LLC | | 1712 Midcrest Dr | | | Plano | TX | 75075 | |
| Evercore Restructuring LLC | | 55 East 52 St | | | New York | NY | 10055 | |
| eVestment | | 5000 Ole Towne Parkway | Suite 100 | | Marietta | GA | 30068 | |
| Evoque Data Center | | 250 Vesey Street 15th Floor | | | New York | NY | 10281-0000 | |
| EWI RE Inc | | One Lincoln Centre | Suite 1060 | | Dallas | TX | 75240 | |
| EWING, LEAH | | Address on File | | | | | | |
| Exagere LLC | | 227 Dauphine | | | New Orleans | LA | 70112 | |
| Exclaimer Ltd. | | 445 Park Avenue | 9th Floor | | New York | NY | 10022 | |
| EXECUTIVE BEVERAGE SERVICE | | PO BOX 850783 | | | Richardson | TX | 75081 | |
| EXECUTIVE BEVERAGE SERVICE | | 5032 DICKENS LN | | | CARROLLTON | TX | 75010-4915 | |
| Executive Charge, Inc. | | 1440 39th St | | | Brooklyn | NY | 11218 | |
| Executive Liquidation | | 100 Redneck Avenue | | | Moonachie | NJ | 07074 | |
| Executive Office Group Limited | | 23 Berkeley Square | | | London | | W1J 6HE | United Kingdom |
| Executive Scheduling Associates, Inc. | | 215 Lake Blvd. Ste 367 | | | Redding | CA | 96003 | |
| Experience, Inc | | 2 Faneuil Hall Marketplace | 3 rd Floor | | Boston | MA | 02109 | |
| Experis Finance US, LLC | | PO Box 905378 | | | Charlotte | NC | 28290-5378 | |
| EXPERT PAY | | PO BOX 659791 | | | San Antonio | TX | 78265-9791 | |
| Exterior Consulting Innovations, Inc. | | 1406 S Clark Rd | | | Duncanville | TX | 75137-2811 | |
| F5 | | 801 5th Ave | | | Seattle | WA | 98104-0000 | |
| Fabriclean, Inc. | | 11-39 50th Ave | | | Long Island City | NY | 11101 | |
| Factiva | | PO BOX 30994 | | | New York | NY | 10261 | |
| Factiva | | DJRBI, LLC | PO Box 7247-0237 | | Philadelphia | PA | 19170-0237 | |
| Factory Builder Stores | | 512 E Dallas Rd | Ste 500 | | Grapevine | TX | 76051 | |
| FACTSET RESEARCH SYSTEMS, INC. | Attn Finance | 301 Merritt 7, 3rd Floor | | | Norwalk | CT | 06851 | |
| FACTSET RESEARCH SYSTEMS, INC. | | PO BOX 414756 | | | Boston | MA | 02241-4756 | |
| Fafinski Mark & Johnson, P.A. | | 775 Prairie Center Drive, Suite 400 | | | Eden Prairie | MN | 55344 | |
| Fair Harbor Capital, LLC | As Assignee of Action Shred of Texas | Ansonia Finance Station | PO Box 237037 | | New York | NY | 10023 | |
| Fair Harbor Capital, LLC | As Assignee of CVE Technologies Group Inc. | Ansonia Finance Station | PO Box 237037 | | New York | NY | 10023 | |
| Fair Harbor Capital, LLC | As Assignee of Daniel Sheehan & Associates, PLLC | Ansonia Finance Station | PO Box 237037 | | New York | NY | 10023 | |

Page 46 of 155

**Appx. 00332**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 59 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Fair Harbor Capital, LLC | As Assignee of Vengroff Williams Inc as Authorized Agent of American Arbitration Association | Ansonia Finance Station | PO Box 237037 | | New York | NY | 10023 | |
| Fair Harbor Capital, LLC | Frederick Glass | 130 West 57th Street, 5th Floor | | | New York | NY | 10019 | |
| Fair Market Life Settlements Corporation | | 435 Ford Rd | Suite 120 | | St. Louis Park | MN | 55426 | |
| FAIRMONT DALLAS | | 1717 N AKARD ST | C0/LIZ BAKER, GROUP BILLING COORDINATOR | | Dallas | TX | 75201 | |
| Faith Petersen | | Address on File | | | | | | |
| Falcon E&P Opportunities GP, LLC | c/o PetroCap LLC | Marc Manzo | 2602 McKinney Avenue | Suite 400 | Dallas | TX | 75204 | |
| Family Compass | | 4210 Junius Street | | | Dallas | TX | 75246 | |
| Family Office Association | | 500 West Putnam Ave. | Suite 400 | | Greenwich | CT | 06830 | |
| Fanning & Associates | | PO Box 37 | | | Denton | TX | 76202 | |
| Fanning & Associates | | 226 Sanders Rd | | | Denton | TX | 76210 | |
| FARIA, RICHARD | | Address on File | | | | | | |
| Farouk Z Lalji | | Address on File | | | | | | |
| FASKEN MARTINEAU DUMOULIN | | STE 4200 TORONTO DOMINION BANK TOWER | BOX 20 TORONTO-DOMINION CENTRE | | TORONTO | ON | M5K 1N6 | CANADA |
| FASTFRAME | | 3001 Knox Street | #105 | | Dallas | TX | 75205 | |
| FASTFRAME | | 11107 Sesame Street | | | Dallas | TX | 75238 | |
| Fat Ox | | 7715 E Montebello Avenue | | | Scottsdale | AZ | 85250 | |
| Fauxcades, Inc. | | 8888 Governors Row | | | Dallas | TX | 75247 | |
| Feast of Sain Arnold | | 8 Fourth Street | | | Colorado Springs | CO | 80906 | |
| Federal Insurance Company c/o Chubb | Federal Insurance Company | 202A Halls Mill Road - 2E | | | Whitehouse Station | NJ | 08889 | |
| Federal Insurance Company c/o Chubb | | 202A Halls Mill Road - 2E | | | Whitehouse Station | NJ | 08889 | |
| FedEx | | 4103 COLLECTION CENTER DR | | | Chicago | IL | 60693 | |
| FedEx | | Dept CH PO Box 10306 | | | Palatine | IL | 60055-0306 | |
| FedEx | | PO Box 94515 | | | Palatine1 | IL | 600944-4515 | |
| FedEx | | PO Box 660481 | | | Dallas | TX | 75266-0481 | |
| FEDORYSHYN, ERIC | | Address on File | | | | | | |
| FEHLIG, STACEY | | Address on File | | | | | | |
| Felhaber Larson Fenlon & Vogt | | 220 Southy 6th Street | Ste 2200 | | Minneapolis | MN | 55402-4504 | |
| Felicity Toube QC | | 3-4 South Square | Grays Inn | | London | | WC1R 5HP | United Kingdom |
| Ferguson, Misty | | Address on File | | | | | | |
| FERRELL, JOHN | | Address on File | | | | | | |
| Fetzer Architectural Woodwork | | 6223 West Double Eagle Circle | | | West Valley City | UT | 84118 | |
| Fidelity Information Services | | PO Box 911653 | | | Dallas | TX | 75391-1653 | |
| Fidelity Information Services Inc | | PO Box 18012 | | | Ashburn | VA | 20146 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 60 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Fidelity Information Services Inc | | Payment Processing Center | PO Box 4535 | | Carol Stream | IL | 60197-4535 | |
| Fidelity Investments Institutional | | Operations Company, Inc. | PO Box 73307 | | Chicago | IL | 60673-7307 | |
| Fidelity National Information Services | | Payment Processing Center | PO Box 18012 | | Ashburn | VA | 20146 | |
| FIGARI & DAVENPORT LLP | | 901 MAIN ST | 3400 BANK OF AMERICA PLAZA | | Dallas | TX | 75202-3796 | |
| FINANCIAL ACCOUNTING STANDARDS BOARD | | PO BOX 630420 | | | Baltimore | MD | 21263-0420 | |
| FINANCIAL AGENT | | FEDERAL TAX DEPOSIT PROCESSING | PO BOX 970030 | | Saint Louis | MO | 63197 | |
| Financial Data Services, Inc. | Cash Management | 4800 Deer Lake East Dr, 2nd Flr | | | Jackson | FL | 32246-6484 | |
| Financial Fineprint, Inc. | | 1619 3rd Ave Apt 7K | | | New York | NY | 10128-3036 | |
| FINANCIAL GRAPHIC SERVICE, INC. | | 2910 S 18th AVE | | | Broadview | IL | 60155-4727 | |
| Financial Graphic Services | | PO Box 85090 | | | Chicago | IL | 60680-0851 | |
| Financial Industry Regulatory Authority | | 15200 Omega Drive, Suite 210 | | | Rockville | MD | 20850 | |
| Financial Investment News | | 41 Union Square West | Suite 1021 | | New York | NY | 10003 | |
| Financial Investment News | | 267 Fifth Avenue | Suite 1010 | | New York | NY | 10016 | |
| Financial Media Group, LLC | | 9635 Maroon Circle | Ste 150 | | Englewood | CO | 80112 | |
| Financial Planning Association | | 1290 N Broadway # 1625 | | | Denver | CO | 80203-2122 | |
| Financial Planning Association of Iowa | Attn Erin Ramsey | 914 NE 53rd Court | | | Ankeny | IA | 50021 | |
| Financial Research Associates | ATTN Teri Lewis | 18705 NE Cedar Drive | | | Battle Ground | WA | 98604 | |
| Financial Research Associates, LLC | Attn Teri Lewis | 18705 NE Cedar Drive | | | Battle Ground | WA | 98604 | |
| Financial Research Associates, LLC | | 200 Washington Street | Suite 201 | | Santa Cruz | CA | 95060 | |
| Financial Risk Management | | 888 Seventh Ave | | | New York | NY | 10019 | |
| Financial Services Institute | | 607 14th St, NW | Suite 750 | | Washington | DC | 20005 | |
| Financial Services Institute | | PO Box 116730 | | | Atlanta | GA | 30368-6730 | |
| Financial Times | | PO Box 1627 | | | Newburgh | NY | 12551-9976 | |
| Financial Tracking Technologies LLC | | 1111 East Putnam Ave | Ste 304 | | Riverside | CT | 06878-0000 | |
| Financial Tracking Technologies LLC | | 2 Soundview Dr, Ste 100 | | | Greenwich | CT | 06830 | |
| Financial Tracking Technologies LLC | | 1111 E Putnam Ave. | Suite 304 | | Riverside | CT | 06878 | |
| Financial West Group | Attn Nicole White | 4510 E. Thousand Oaks Blvd. | | | Westlake Village | CA | 91362 | |
| Fink, Jason | | Address on File | | | | | | |
| FINRA | | 1735 K Street, NW | | | Washington | DC | 20006 | |
| Fire Works Media Productions | | 2440 Pebblebrook Ct. | | | Grand Prairie | TX | 75050 | |
| First Allied Securities | Attn Commission Accounting | 655 W. Broadway, 11th Flr | | | San Diego | CA | 92101 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 61 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| First American Title Insurance Company | | 8311 W. Sunset Road | Suite 100 | | Las Vegas | NV | 89113 | |
| First Financial Network, Inc. | | 14000 Quail Springs Pkwy, Ste 200 | | | Oklahoma City | OK | 73134 | |
| First Foundation Advisers | | 18101 Von Karman Avenue | Suite 750 | | Irvine | CA | 92612 | |
| First Foundation Inc. | | 18101 Van Karman Avenue | Ste 700 | | Irvine | CA | 92612 | |
| First Page Management LLC dba StatusLabs | | 151 South 1st | Ste 100 | | Austin | TX | 78704-0000 | |
| First Presbyterian Church | | One West Putnam Ave | | | Greenwich | CT | 06830 | |
| First Southwest | | 325 North St. Paul St | Suite 800 | | Dallas | TX | 75201 | |
| First Trust Highland Floating Rate Fund | | 330 Bay St Ste 1300 | | | Toronto | ON | M5H2S8 | CANADA |
| FIS Brokerage & Securities Services LLC | | 62446 Collections Center Drive | | | Chicago | IL | 60693-0624 | |
| FIS Investment Systems LLC | | 601 Riverside Ave | | | Jacksonville | FL | 32204 | |
| Fischer Porter & Thomas, PC | | 440 Sylvan Avenue, Suite 130 | | | Englewood Cliffs | NJ | 07632-2700 | |
| FISH & RICHARDSON P.C. | | PO BOX 3295 | | | Boston | MA | 02110 | |
| FITCH, STEPHANIE | | Address on File | | | | | | |
| FITEH ZEGEYE | | Address on File | | | | | | |
| FITZSIMMONS, BRIAN | | Address on File | | | | | | |
| Five Blocks, Inc. | | 5967 West 3rd Street | Suite 307 | | Los Angeles | CA | 90036 | |
| FJF INTERNATIONAL | | 858 TOWER VIEW CIRCLE | | | New Hope | PA | 18938 | |
| Flagship Cruises & Events | | PO Box 120751 | | | San Diego | CA | 92112 | |
| Flaherty, Sensabaught, & Bonasso, PLLC | | 200 Capital St | PO Box 3843 | | Charleston | WV | 25338-3843 | |
| Flemming Zulack Williamson Zauderer LLP | | One Liberty Plaza | 35th Floor | | New York | NY | 10006-1404 | |
| Flexential | | 11900 East Cornell Avenue | Building B, 3rd Floor | | Aurora | CO | 80014-0000 | |
| Flexential Colorado Corp. | | 8809 Lenox Point Drive | Suite G | | Charlotte | NC | 28273 | |
| Flexential Colorado Corp. | | PO Box 732368 | | | Dallas | TX | 75373-2368 | |
| Flink, Robert | | Address on File | | | | | | |
| Florance & Associates Consulting | | 1475 Richardson Dr. | Suite 270 | | Richardson | TX | 75080 | |
| Florida Department of Banking & Finance | Division of Securities | 200 East Gaines Street | | | Tallahassee | FL | 32399-6502 | |
| FLORIDA DEPARTMENT OF REVENUE | | 5050 W TENNESSEE ST | | | Tallahassee | FL | 32399-0135 | |
| Florissant Geological, LLC | | 5214 Vanderbilt Ave. | | | Dallas | TX | 75206 | |
| Flossie ORiley Photography | | 701 Woodcrest Dr | | | Hurst | TX | 76053-4921 | |
| Foley Gardere | Holly ONeil, Esq. | Foley & Lardner LLP | 2021 McKinney Avenue Suite 1600 | | Dallas | TX | 75201 | |
| FOLEY GARDERE | | 2021 MCKINNEY AVENUE | SUITE 1600 | | Dallas | TX | 75201 | |
| Foley Gardere, Foley Lardner LLP | Attn Holland N. O Neil | 2021 McKinney Avenue, Ste. 1600 | | | Dallas | TX | 75201 | |
| Folks & Associates | | PO Box 851168 | | | Mesquite | TX | 75185-1168 | |
| Forbes | | PO BOX 5468 | | | Harlan | IA | 51593-0968 | |
| Forbes | | PO Box 5474 | | | Harlan | IA | 51593-0974 | |
| Fordham, Michael | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Forensic Risk Alliance | | Third Floor, Audrey House | Ely Place | | London | | EC1N-6SN | United Kingdom |
| Foreside Consulting Services, LLC | | 3 Canal Plaza | Suite 100 | | Portland | ME | 04101 | |
| Foreside Consulting Services, LLC | | PO Box 7556 | | | Portland | ME | 04112-7556 | |
| Foreside Financial Services, LLC | | 3 Canal Plaza | Suite 100 | | Portland | ME | 04101 | |
| Forest Resource Consultants, Inc | | 964 Georgia Ave Ste 100 | | | Macon | GA | 31201-6766 | |
| Forest2Market, Inc. | ATTN Accounts Receivable | 10030 Park Cedar Drive | Suite 201 | | Charlotte | NC | 28210-8902 | |
| Forney & Terrell Alarm Systems, LLC | | P.O. Box 341 | | | Terrell | TX | 75160 | |
| Forns, Alison | | Address on File | | | | | | |
| Forrest A. Garb & Associates, Inc. | | 5310 Harvest Hill, Ste 130 | | | Dallas | TX | 75230 | |
| Forshey & Prostok, L.L.P. - IOLTA | | 777 Main St. Ste 1290 | | | Fort Worth | TX | 76102 | |
| FORSight Resources, LLC | | 8761 Dorchester Rd | Suite 102 | | North Charleston | SC | 29420 | |
| Fort Worth Stock Show Syndicate | | PO Box 17005 | | | Fort Worth | TX | 76102 | |
| Fort Worth Wildcatters | | 777 Main Street #800 | | | Fort Worth | TX | 76102 | |
| Fortune | | PO Box 60400 | | | Tampa | FL | 33660-0400 | |
| Fortune | | PO BOX 61460 | | | Tampa | FL | 33661-1460 | |
| FORTUNE Personnel Consultants of Troy | | 560 Kirts Blvd | Suite 102 | | Troy | MI | 48084 | |
| Foundation for BrainHealth Advances | Center for BrainHealth | 2200 West Mockingbird Lane | | | Dallas | TX | 75235 | |
| Four Seasons Plantscaping, LLC | | 139 Turtle Creek Blvd. | | | Dallas | TX | 75207-6807 | |
| Four Seasons Plantscaping, LLC | | PO Box 793429 | | | Dallas | TX | 75379-0000 | |
| FOWLER HATLEY | | Address on File | | | | | | |
| Fox Rothschild LLP | Attn Accounts Receivable-60 | 2000 Market St, 20th Floor | | | Philadelphia | PA | 19103-3222 | |
| FOX, SEAN | | Address on File | | | | | | |
| FPA Connecticut State Conference | | 95 West St | | | Rocky Hill | CT | 06067 | |
| FPA of Middle Tennessee | Patricia Fisher, Chapter Exec | PO Box 150608 | | | Nashville | TN | 37215 | |
| FPA South Florida | | 8930 State Rd. 84, Ste 316 | | | Davie | FL | 33324 | |
| FPANJ | | 551 Valley Rd #365 | | | Upper Montclair | NJ | 07043 | |
| FPC | FORTUNE Personnel Consultants of Troy | 560 Kirts Blvd. | Suite 102 | | Troy | MI | 48084 | |
| FPC OF SAVANNAH, INC. | | PO BOX 8846 | | | Savannah | GA | 31412 | |
| FPG CT Owner LP | | PO Box 5297 | Lockbox 305297 | | New York | NY | 10008-5297 | |
| FPG Galleria Two Owner, LP | | PO Box 3085 | | | Hicksville | NY | 11802-3085 | |
| FRAGOMEN, DEL REY, BERNSEN & LOEWY LLP | | 99 WOOD AVE SOUTH | 10TH FLR | | ISELIN | NJ | 08830 | |
| Frances Wildhaber | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Franchise Tax Board | Bankruptcy Section MS A340 | PO Box 2952 | | | Sacramento | CA | 95812-2952 | |
| FRANCHISE TAX BOARD | | PO BOX 942857 | | | Sacramento | CA | 94257-0511 | |
| FRANCIS X GRAY & CO | | 122 W 26TH ST | STE 1101 | | New York | NY | 10001 | |
| Frank Cunningham | | Address on File | | | | | | |
| Frank Russell Company | | NW 6327 | PO Box 1450 | | Minneapolis | MN | 55485-6327 | |
| Frank Waterhouse | c/o David Neier | Winston Strawn LLP | 200 Park Avenue | | New York | NY | 10166 | |
| Frank Waterhouse | Debra A. Dandeneau | Baker & McKenzie LLP | 452 Fifth Avenue | | New York | NY | 10018 | |
| Frank Waterhouse | Michelle Hartmann | Baker & McKenzie LLP | 1900 North Pearl, Suite 1500 | | Dallas | TX | 75201 | |
| Frank Waterhouse | Ross & Smith, PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| Frank Waterhouse | | Address on File | | | | | | |
| Franke Foodservice Solutions | | 3149 Paysphere Circle | | | Chicago | IL | 60674-0031 | |
| Frederick C. Moss | | Address on File | | | | | | |
| FreedomPark LP | | 7501 Esters Blvd | Ste. 130 | | Irving | TX | 75063 | |
| FreeMotion Fitness | | PO Box 99661 | | | Chicago | IL | 60690 | |
| FRICK, TINA | | Address on File | | | | | | |
| FridsonVision | | 54 W 21st ST | STE 1007 | | New York | NY | 10010 | |
| FridsonVision | | 1 Penn Plaza Ste 3600 | | | New York | NY | 10119 | |
| Fried Frank Harris Shriver & Jacobson | | One New York Plaza | | | New York | NY | 10004-1980 | |
| Fried, Frank, Harris, Shriver & Jacobson | | One New York Plaza | | | New York | NY | 10004-1980 | |
| Friedman Kaplan Seiler & Adelman LLP | | 1633 BROADWAY | | | New York | NY | 10019-6708 | |
| Friedreichs Ataxia Research Alliance | | 533 W. Uwchlan Avenue | | | Downington | PA | 19335 | |
| Friends of the Dallas Fire Dept. | c/o Ray Cheery | Dallas Security Systems PO Box 550939 | | | Dallas | TX | 75355-0939 | |
| Friends of the Dallas Police | | 3232 McKinney Ave | #855 | | Dallas | TX | 75204 | |
| Friends of the IDF | | 29 E MADISON ST | | | Chicago | IL | 60602 | |
| FRITZ, ERIC | | Address on File | | | | | | |
| Fizzell, Madeline | | Address on File | | | | | | |
| Fizzell_Madeline | | Address on File | | | | | | |
| Front Sight Focus | Attn Tamera Watt | PO Box 12292 | | | Raleigh | NC | 27605 | |
| Frontier State Bank | Attn Mr Steve Elliott | 5100 South I-35 Service Road | | | Oklahoma City | OK | 73129 | |
| Frontline Source Group, Inc. | | 901 Main Street | Suite 4010 | | Dallas | TX | 75202 | |
| FSC Securities Corporation | Attn Reimbursement Processing | Lockbox 101092 | 3585 Atlanta Ave | | Hapeville | GA | 30354 | |
| FSC Securities Corporation | Attn Shelly Kooiker | 3737 Woodland Ave, Ste 500 | | | West Des Moines | IA | 50266 | |
| FT Interactive Data | | 32 CROSBY DR | | | Bedford | MA | 01730 | |
| FT Interactive Data | | PO Box 98616 | | | Chicago | IL | 60693 | |
| FT Interactive Date Corporation | | 22 Crosby Drive | | | Bedford | MA | 01730-0000 | |
| FTI CONSULTING | | 2001 Ross Ave | Suite 400 | | Dallas | TX | 75201 | |
| FTI CONSULTING | | PO BOX 630391 | | | Baltimore | MD | 21263-0391 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 64 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| FTI Consulting, Inc. | | Three Times Square | 10th floor | | New York | NY | 10036-0000 | |
| Fuentes, Brian | | Address on File | | | | | | |
| Fulbright & Jaworski | | 2200 Ross Ave Ste 2800 | | | Dallas | TX | 75201-2784 | |
| Fulbright & Jaworski | | FULBRIGHT TOWER | 1301 MCKINNEY | SUITE 5100 | Houston | TX | 77010-3095 | |
| Fullmer, Kevin | | Address on File | | | | | | |
| Fullmer, Kevin | | 417 Parkhurst Drive | | | Dallas | TX | 75218 | |
| Fun Time Faces TX | | 1430 Broadway, 12th Flr | Suite 1208 | | New York | NY | 10018 | |
| FUNDFIRE | Money-Media, Inc. | | | | | | | |
| FURNITURE FOR BUSINESS | | 14 CARLSON COURT | | | London | | SW15 2NQ | United Kingdom |
| Furniture Solutions Now Ltd. | | 1505 Oak Lawn Ave | Suite 300 | | Dallas | TX | 75207 | |
| FUSE Research Network, LLC | | 200 Highland Avenue | Suite 403 | | Needham | MA | 02494 | |
| Fusion GPS | | 2122 P Street NW | Suite 202 | | Washington | DC | 20037 | |
| G.L. Seaman & Company | | 4201 International Parkway | | | Carrollton | TX | 75007 | |
| G.Neil Corporation | | PO Box 451179 | | | Sunrise | FL | 33345-1179 | |
| Gabriel Moss QC | | 3-4 South Square, Grays Inn | | | London | | WC1R 5HP | United Kingdom |
| GAGE, CASEY S | | Address on File | | | | | | |
| Gail Davis & Associates, Inc. | | 3500 Oak Lawn | Suite 740 | | Dallas | TX | 75219 | |
| Gail Spurgeon | | Address on File | | | | | | |
| Gallop, Johnson & Neuman, L.C. | | 101 S Hanley Ste 1600 | | | Saint Louis | MO | 63105 | |
| Game On! | | 502 South 2nd Avenue | | | Dallas | TX | 75226 | |
| Gaming Today | | PO Box 93116 | | | Las Vegas | NV | 89193 | |
| Garcia & Associates Security | | Two Penn Plaza Ste 1500 | | | New York | NY | 10121 | |
| GARCIA, ERICKA | | Address on File | | | | | | |
| GARDERE WYNNE SEWELL LLP | | 1000 LOUISIANA | STE 3400 | | Houston | TX | 77002-5011 | |
| Gardner Haas PLLC | | 2501 N. Harwood Street | Suite 1250 | | Dallas | TX | 75201 | |
| Gardner, William | | Address on File | | | | | | |
| Garland Independent School District | Linda D. Reece | c/o Perdue Brandon Fielder et al | 1919 S. Shiloh Road, Suite 310, LB 40 | | Garland | TX | 75042 | |
| Garman Turner Gordon | William M. Noall | Address on File | | | | | | |
| Garman Turner Gordon | | 7251 Amigo St Ste 210 | | | Las Vegas | NV | 89119-4302 | |
| Gardner Inc | | PO BOX 911319 | | | Dallas | TX | 75391-1319 | |
| Gary Cao | | Address on File | | | | | | |
| Gary Durham Consulting, LLC | | 200 Crescent Court | Suite 1414 | | Dallas | TX | 75201 | |
| Gary Fitzsimmons, District Clerk | | 600 COMMERCE ST | STE 716 | | Dallas | TX | 75202-4606 | |
| Gary L. Gardner | | Address on File | | | | | | |
| Gary Sinse Foundation | | PO Box 368 | | | Woodland His | CA | 91365-0368 | |
| Gary V McGowan | | Address on File | | | | | | |
| GARZA, LAUREN | | Address on File | | | | | | |
| Gateway Financial Advisors, Inc. | | 4101 Dublin Blvd. | Suite F, PMB 57 | | Dublin | CA | 94568 | |
| GATHINGS, SALLY | | Address on File | | | | | | |
| GATZKI, KENT | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 65 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| GAUNTT, AMANDA | | Address on File | | | | | | |
| Gaurav Singhal | | Address on File | | | | | | |
| Gautier, Chris | | Address on File | | | | | | |
| Gazelle Court Reporting Services, LLC | | 2807 Allen Street, No 727 | | | Dallas | TX | 75204 | |
| GDHCC | | 4622 MAPLE AVE | STE 207 | | Dallas | TX | 75219 | |
| Geeks Who Drink LLC | | 9450 SW Gemini Dr # 84921 | | | Beaverton | OR | 97008-7105 | |
| General American Life Insurance | | PO Box 790201 | | | Saint Louis | MO | 63179-0196 | |
| General Information Services | ATTN Sara Leslie | 12770 Coit Rd, Ste 300 | | | Dallas | TX | 75251 | |
| General Information Services | | PO Box 538450 | | | Atlanta | GA | 30353-8450 | |
| Geomap Company | | PO Box 671077 | | | Dallas | TX | 75267-1077 | |
| George Bates | | Address on File | | | | | | |
| George Catering | | PO Box 140537 | | | Dallas | TX | 75214 | |
| GEORGE FEIGER IRA | | Address on File | | | | | | |
| George Mathew | | Address on File | | | | | | |
| George W. Bush Foundation | | 2943 SMU Blvd | Leslie Cravens, Catering | | Dallas | TX | 75205 | |
| George W. Bush Foundation | | PO Box 600610 | | | Dallas | TX | 75360 | |
| George W. Bush Presidential | | Library and Museum | 2943 SMU Boulevard | | Dallas | TX | 75205 | |
| George W. Bush Presidential Center | | 2943 SMU Boulevard | | | Dallas | TX | 75205 | |
| GEORGIA DEPARTMENT OF REVENUE | | TAXPAYER SERVICES DIVISION | PO BOX 105499 | | Atlanta | GA | 30348-5499 | |
| GEORGIA DEPARTMENT OF REVENUE | | Processing Center | PO Box 740239 | | Atlanta | GA | 30374-0239 | |
| GEORGIA DEPARTMENT OF REVENUE | | PROCESSING CENTER | PO BOX 740320 | | Atlanta | GA | 30374-0320 | |
| Georgia Secretary of State | | 2 Martin Luther King Jr. Drive | Suite 820 West Tower | | Atlanta | GA | 30334 | |
| Geraghty, Dougherty and Edwards | | 1531 Hendry St, PO Box 1605 | | | Ft. Myers | FL | 33902 | |
| Gerry Gartenberg Productions, Inc. | | 3 New York Avenue | | | White Plains | NY | 10606 | |
| Gerson Lehrman Group | | 850 Third Ave | 9th Floor | | New York | NY | 10022 | |
| Gerson Lehrman Group | | BOX 200589 | | | Pittsburgh | PA | 15251-0589 | |
| Getty Images US Inc. | | PO Box 84434 | | | Seattle | WA | 98124-5734 | |
| GHV Settlement Fund | C/O Richard Haskell | 920 N Stone Ave | | | Lagrange Park | IL | 60526 | |
| Gianna Cerullo | | Address on File | | | | | | |
| GIBB, ALLISON | | Address on File | | | | | | |
| Gibbs & Bruns LLP | | 1100 Louisiana Street | Suite 5300 | | Houston | TX | 77002 | |
| GIBBSPRODUCTIONS | | 2429 Connecticut Lane | | | Dallas | TX | 75214 | |
| Gibson, Dunn & Crutcher LLP | | 333 South Grand Ave | | | Los Angeles | CA | 90071 | |
| Gifford Fong Associates | | 3658 Mt. Diablo Boulevard | Suite 200 | | Lafayette | CA | 94549-4751 | |
| Gigantic Color | | PO Box 740209, Dept# 7052 | | | Atlanta | GA | 30374 | |
| Gilbert Bromley | | Address on File | | | | | | |
| Gilbert Martinez Jr. | | Address on File | | | | | | |
| GILCHRIST, CLINT | | Address on File | | | | | | |
| GILL, NICOLE | | Address on File | | | | | | |
| GILLES, ERIN | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 66 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Gillian C. Sartini | | Address on File | | | | | | |
| Gillian Sartini | | Address on File | | | | | | |
| GILLUM, KATIE | | Address on File | | | | | | |
| Gils Elegant Catering | | 1001 MacArthur Blvd | | | Grand Prairie | TX | 75050 | |
| GIMBEL, JESSICA D. | | Address on File | | | | | | |
| Girard Securities, Inc. | Attn Connie Goodell | 5405 Morehouse Dr Ste 135 | | | San Diego | CA | 92121-4767 | |
| GIRARD, ERIC | | Address on File | | | | | | |
| Girard, Kovarik & Associates | Attn Robert Danion | 101 N. Clematis St. Ste 200 | | | West Palm Beach | FL | 33401 | |
| GLASGOW, SAMUEL | | Address on File | | | | | | |
| Glassdoor | | 1 Harbor Drive | Suite 300 | | Sausalito | CA | 94965 | |
| Glassdoor | | Dept 3436 | PO Box 123436 | | Dallas | TX | 75312-3436 | |
| Glast, Phillips, & Murray | | 2200 One Galleria Tower | 13355 Noel Rd, LB 48 | | Dallas | TX | 75240-1518 | |
| GLC Advisors & Co., LLC | | 451 Jackson Street | 2nd Floor | | San Francisco | CA | 94111 | |
| Gleneagles CLO, Ltd | The Directors | PO Box 1093 GT | Queensgate House, South Church Street | | Grand Cayman | | KY1-11-8 | Cayman Islands |
| Gleneagles CLO, Ltd. | | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Gleneagles CLO, Ltd. | | | | Gleneagles CLO, Ltd. Telecopy | | | | |
| JPMorgan Chase Bank, National Association | JPMorgan Chase Bank, National Association | 600 Travis 50th Floor | Worldwide Securities Service | | Houston | TX | 77002 | |
| GLENN KIM | | Address on File | | | | | | |
| Glenn Morrison | | Address on File | | | | | | |
| Global Alpha Forum, LLC | | 30 Old Kings Hwy South | | | Darien | CT | 06820 | |
| Global Experience Specialists, Inc. | | Bank of America, PO Box 96174 | | | Chicago | IL | 60693 | |
| GLOBAL FINANCIAL SERVICES | | PO BOX 856460 | | | Louisville | KY | 40285-6460 | |
| Global Recruiters of Mid-Cities | | PO Box 2165 | | | Bedford Park | IL | 60499-2165 | |
| Global Shares Inc. | | 111 Town Square Place | Suite 1401 | | Jersey City | NJ | 07310 | |
| Global Shares Ireland Ltd | | Unit 2, Building D, | West Cork Technology Park Clonkality Co. | | Cork | | P85 EY90 | IRELAND |
| GlobalMacro Partners, LLC | | 1755 S. Naperville Rd | Ste 100 | | Wheaton | IL | 60189 | |
| GLOBE STORAGE & MOVING CO. INC | | 36 BLEECKER ST | | | New York | NY | 10012 | |
| Glocap Search LLC | | 156 W 56th St. | 4th Floor | | New York | NY | 10019 | |
| Gloss Luxury Event Rentals | | 6525 Briarhaven Drive | | | Dallas | TX | 75240 | |
| GM SNYDER AND ASSOCIATES | | 300 Ozark Trail Drive | Suite 104 | | Saint Louis | MO | 63011 | |
| GoDaddy | | 14455 N. Hayden Rd. | Ste. 219 | | Scottsdale | AZ | 85260 | |
| Godfrey | | 1000 Louisiana | Suite 5100 | | Houston | TX | 77002-5096 | |
| Godier, Lindsey | | Address on File | | | | | | |
| Goetz, Matthew | | Address on File | | | | | | |
| Goetz, Matthew X. | | Address on File | | | | | | |
| Goetz, Matthew X. | | Address on File | | | | | | |
| Goglia PLLC | | 4519 Melissa Lane | | | Dallas | TX | 75229 | |
| Gold Crown Valet Parking, Inc. | | 901 Waterfall Way | Suite 107 | | Richardson | TX | 75080 | |
| GOLD LION | | 8043 Abramshire Ave | | | Dallas | TX | 75231 | |

Page 54 of 155

**Appx. 00340**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Gold Medal Strategies, Inc. | | 319 1st Street West | | | Tierra Verde | FL | 33715 | |
| Gold Star Distributors, Inc. | | PO Box 831150 | | | Richardson | TX | 75083-1150 | |
| Golds Gym International | Attn Corporate Billing | 125 E John Carpenter Frwy | Suite 1300 | | Irving | TX | 75062 | |
| Golds Gym International | | 4001 Maple Avenue | Suite 200 | | Dallas | TX | 75219 | |
| Golds Texas Holdings Group, Inc | | 4001 Maples Avenue Ste 200 | | | Dallas | TX | 75219-0000 | |
| Goldsmith Associates, PLLC | | 6540 Highgate Lane | | | Dallas | TX | 75214 | |
| GOLDSMITH, JASON | | Address on File | | | | | | |
| GOLDSMITH, SARAH B. | | Address on File | | | | | | |
| Golf Balls Galore, Inc. | | 2181 J and C Blvd | | | Naples | FL | 34109 | |
| GONZAGA, GABRIELLA | | Address on File | | | | | | |
| GONZALEZ, EVAN | | Address on File | | | | | | |
| GOOD FULTON & FARRELL | | 2808 FAIRMOUNT ST | STE 300 | | Dallas | TX | 75201 | |
| Goodwin and Marshall, Inc. | | 2405 Mustang Drive | | | Grapevine | TX | 76051 | |
| GOODWIN PROCTER LLP | | EXCHANGE PLACE | 53 STATE STREET | | Boston | MA | 02109 | |
| Gordon, Fournaris & Mammarella, P.A. | | 1925 Lovering Avenue | | | Wilmington | DE | 19806 | |
| Gosserand, Boyd | | Address on File | | | | | | |
| Gotham Promotions | | 67 Sullivan St | | | New York | NY | 10012 | |
| GourmEATS - Kevin Ashade | | 1407 Main St. | Apt 1703 | | Dallas | TX | 75202 | |
| Governance Re Ltd. | | | 2nd Floor, 90 Pitts Bay Road | | Pembroke | | HM 08 | Bermuda |
| Governance Re Ltd. | | Wellesley House North Floor | 90 Pitts Bay Road | | Pembroke | | HM 08 | Bermuda |
| Governance RE Ltd. | | Wellesley House North,2nd Clarendon House | 2 Church St | | Hamilton | | HM 11 | Bermuda |
| GP Industries, Inc. | | 3230 Riverside Ave #110-A | | | Paso Robles | CA | 93446 | |
| GPI Lee Parkway, LP | | 3333 Lee Parkway | | | Dallas | TX | 75219 | |
| Grace Chang | | Address on File | | | | | | |
| Grafton Hospitality | | 340 South US Highway 1 Ste 306 | | | Jupiter | FL | 33477 | |
| Graham, Jacquelyn | | Address on File | | | | | | |
| Grand Street Settlement | | 80 Pitt Street | | | New York | NY | 10002 | |
| Grant Thornton LLP | | 33570 Treasury Center | | | Chicago | IL | 60694-3500 | |
| Grant, Jennifer | | Address on File | | | | | | |
| Grants Interest Rate Observer | | 233 Broadway Fl 24 | | | New York | NY | 10279-2502 | |
| Grapevine Consultants | | 3003 Double Creek Drive | | | Grapevine | TX | 76051 | |
| Grasshopper Lawn & Patio, LLC | | 1002 Ashby Dr | | | Allen | TX | 75002 | |
| GRATEKE, RYAN | | Address on File | | | | | | |
| Graubard Miller | | Address on File | | | | | | |
| Graves, Vanessa | | Address on File | | | | | | |
| Gray Reed & McGraw LLP | Jason S. Brookner | 1601 Elm Street, Suite 4600 | | | Dallas | TX | 75201 | |
| Gray Reed & McGraw LLP | Mark Gargiulo - CFO | 1300 Post Oak Blvd., Suite 2000 | | | Houston | TX | 77056 | |
| GRAY, MATTHEW | | Address on File | | | | | | |
| Grayson CLO Corp., et al | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Grayson CLO Ltd. | c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 68 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Grayson CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Grayson CLO, Ltd. | Grayson CLO Ltd. c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1093GT | Queensgate House, South Church Street | The Directors | George Town, Grand Cayman | | | Cayman Islands |
| Grayson CLO, Ltd. Investors Bank & Trust Company | Investors Bank and Trust Company c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1234 | Queensgate House South Church Street | The Directors - Grayson CLO, Ltd. | George Town, Grand Cayman | KY | 1-1108 | Cayman Islands |
| Grayson County | Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| Great American Photo Booths | | 3525 Melanie Ln | | | Plano | TX | 75023 | |
| Great Investors Best Ideas Foundation | | 3879 Maple Avenue | Ste 350 | | Dallas | TX | 75219 | |
| Great Northern Insurance Company, Chubb National Insurance Company and Federal Insurance Company | c/o Chubb | 202A Halls Mill Road - 2E | | | Whitehouse Station | NJ | 08889 | |
| Great Performances | | 2417 3rd Ave Fl 3 | | | Bronx | NY | 10451-6339 | |
| Great Point Capital LLC | | 200 W Jackson #1000 | | | Chicago | IL | 60606 | |
| Great Southern Bank | | 8201 Preston Road | Suite 305 | | Dallas | TX | 75225 | |
| Great Value Storage | | 9530 Skillman Street | | | Dallas | TX | 75243 | |
| Great Value Storage | | 401 Congress Ave, 33rd Flr | | | Austin | TX | 78701 | |
| Greater Talent Network, Inc. | | 437 Fifth Avenue | | | New York | NY | 10016 | |
| Green, Allison | | Address on File | | | | | | |
| GREEN, JASON | | Address on File | | | | | | |
| Greenberg Traurig | | 2200 Ross Avenue | Suite 5200 | | Dallas | TX | 75201 | |
| Greenberg Traurig | | 1000 LOUISIANA ST | STE 1800 | | Houston | TX | 77002 | |
| Greenbriar CLO, Ltd. | c/o Maples Finance Limited | PO Box 1093GT | Boundry Hall, Cricket Square | George Town | Grand Cayman | | KY1-11-8 | Cayman Islands |
| Greenbriar CLO, Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Greenbriar CLO, Ltd. and State Street Bank and Trust Company | Greenbriar CLO, Ltd. c/o Maples Finance Limited | P.O.Box 1093GT | Boundary Hall Cricket Square | | George Town, Grand Cayman | | 1-9902 | Cayman Islands |
| Greenbriar CLO, Ltd. and State Street Bank and Trust Company Attn CDO Services Group | | 200 Clarendon St | Mail Code EUC 108 | | Boston | MA | 02116 | |
| Greenway - 4641 Production, L.P. | c/o Robert Lynn Management | 4851 LBJ Freeway | Suite 1000 | | Dallas | TX | 75244 | |
| Greenway - 4641 Production, L.P. | c/o Trinity Interests, Inc. | 12750 Merit Dr Ste 1300 | | | Dallas | TX | 75251 | |
| Greenway - 4641 Production, L.P. | | 2808 Fairmount Street | Ste 100 | | Dallas | TX | 75201 | |
| Greenway - 4641 Production, L.P. | | 5924 ROYAL LANE | STE 250 | | Dallas | TX | 75230 | |
| GREENWICH STRATEGIC ADVISORS LLC | | 42 CARY ROAD | | | Riverside | CT | 06878 | |
| Greenwood Office Outfitters | | 2951 Suffolk Drive | Suite 640 | | Fort Worth | TX | 76133-1149 | |
| Greg Campbell | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 69 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Greg Jackson | | Address on File | | | | | | |
| Greg Lussen | | Address on File | | | | | | |
| GREGG IMAMOTO | | Address on File | | | | | | |
| Gregory C. Bussey | | Address on File | | | | | | |
| Gregory Chang | | Address on File | | | | | | |
| Gregory FCA Communications | | 27 West Athens Avenue | | | Ardmore | PA | 19003 | |
| Gregory Polsen | | Address on File | | | | | | |
| Gregory Webster | | Address on File | | | | | | |
| GREGORY, MICHAEL | | Address on File | | | | | | |
| GREGORY, MICHAEL | | Address on File | | | | | | |
| Greg Saggers | | Address on File | | | | | | |
| Greyline Partners, LLC | | P.O. Box 733976 | | | Dallas | TX | 75373-3976 | |
| Greyline Solutions | | PO Box 733976 | | | Dallas | TX | 75373-3976 | |
| Greyline Solutions LLC | | 1 Sansome Street, Ste 1895 | | | San Francisco | CA | 94104-4432 | |
| GRIFFITH, CANDICE | | Address on File | | | | | | |
| GRIFFITH, CANDICE C. | | Address on File | | | | | | |
| GRIFFITH, MATTHEW | | Address on File | | | | | | |
| GRO Designs, LLC | | 3500 Commerce St. #100 | | | Dallas | TX | 75226 | |
| GROFF, SCOTT | | Address on File | | | | | | |
| Groom Law Group | | 1701 Pennsylvania Ave NW | Ste 1200 | | Washington | DC | 20006 | |
| GROS EXECUTIVE RECRUITERS, INC | | 1616 WESTGATE CIRCLE | | | Brentwood | TN | 37027-8019 | |
| Group Services Inc | | Condominium San Alberto, Suite 721 | 605 Conado Ave | | San Juan | PR | 00907 | |
| GROVES, SHAWN | | Address on File | | | | | | |
| Gruber Hurst Johansen Hail Shank LLP | | PO Box 600041 | | | Dallas | TX | 75360-0041 | |
| GRUBHUB for Work | | PO Box 748570 | | | Los Angeles | CA | 90074-8570 | |
| GrubHub Holdings Inc. | | 111 W. Washington Street | Ste 2100 | | Chicago | IL | 60602-0000 | |
| Grubhub Holdings Inc. | | 5050 Capitol Ave Apt 252 | | | Dallas | TX | 75206-7724 | |
| GSB Digital | | 30-30 47th Avenue | Suite 5500 | | Long Island City | NY | 11101 | |
| GT Dallas Properties LLC | c/o Capital One Bank | PO Box 3085 | | | Hicksville | NY | 11802-3085 | |
| G-TEXAS MANAGEMENT, INC | ATTN BARBARA BOURMAN | 1135 SOUTH LAMAR ST | | | Dallas | TX | 75215 | |
| Guardian Performance Solutions LLC | | 836 57th Street | Suite 408 | | Sacramento | CA | 95819 | |
| Guggenheim Strategic Opportunities Fund | c/o Guggenheim Partners | 330 Madison Ave, 11th Floor | | | New York | NY | 10017 | |
| Guidepoint Global | | 675 Avenue of The Americas Fl 2 | | | New York | NY | 10010-5117 | |
| Guidepost Solutions, LLC | | 415 Madison Ave | 11th Floor | | New York | NY | 10017 | |
| Guild Associates | | 153 Mitchell Hill Rd | | | Lyme | CT | 06371-3021 | |
| Gulati, Sanjay | | Address on File | | | | | | |
| GUNNERSON, ERIK | | Address on File | | | | | | |
| GUSTAVO PRILICK | | Address on File | | | | | | |
| Guy J. Renzi & Associates | | Golden Crest Corporate Center | 2277 State Hwy 33, Suite 410 | | Trenton | NJ | 08690 | |
| H.I.S. BridgeBuilders | | 2705 West Commerce St | | | Dallas | TX | 75208 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Haas Petroleum Engineering Svcs. Inc. | | 750 N Saint Paul St Ste 1750 | | | Dallas | TX | 75201-3288 | |
| Hagar Restaurant Service LLC | | 1229 West Main St. | | | Oklahoma City | OK | 73106 | |
| Hain Capital Investors Master Fund, Ltd | | 301 Route 17, 7th Floor | | | Rutherford | NJ | 07070 | |
| Hakemack, Christopher | | Address on File | | | | | | |
| Hal Whalen | | Address on File | | | | | | |
| Hale, Sarah | | Address on File | | | | | | |
| HALL, PHIL | | Address on File | | | | | | |
| Halloran & Sage LLP | | 225 Asylum Street | One Goodwin Square | | Hartford | CT | 06103 | |
| HALPIN, CHRISTOPHER | | Address on File | | | | | | |
| Haltom, Steven | | Address on File | | | | | | |
| Hamilton | PRICKETT, JONES & ELLIOTT, P.A. | Marcus E. Montejo | Kevin H. Davenport | 1310 King Street | Wilmington | DE | 19801 | |
| Hamilton Communications | | PO Box 555 | | | Westbrook | CT | 06498 | |
| HAMILTON, TODD | | Address on File | | | | | | |
| Hand Securities Inc. | | 820 Gessner Rd | Suite 1250 | | Houston | TX | 77024 | |
| Hansen, Jessica | | Address on File | | | | | | |
| Hanson, Adam | | Address on File | | | | | | |
| HARBOR GROUP LTD | | 70 E SUNRISE HWY | #411 | | Valley Streram | NY | 11581 | |
| Harbor Yacht Clubs, LLC | | 1880 Harbor Island Drive | | | San Diego | CA | 92101 | |
| HarbourVest 2017 Global AIF L.P. | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HarbourVest 2017 Global AIF L.P. | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |
| HARBOURVEST 2017 GLOBAL AIF L.P. | | One Financial Centre, 44th Floor | | | Boston | MA | 02111 | |
| HarbourVest 2017 Global Fund L.P. | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HarbourVest 2017 Global Fund L.P. | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |
| HARBOURVEST 2017 GLOBAL FUND L.P. | | One Financial Centre, 44th Floor | | | Boston | MA | 02111 | |
| Harbourvest Dover Street IX Investment L.P. | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HarbourVest Dover Street IX Investment L.P. | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |
| Harbourvest Dover Street IX Investment L.P. | | One Financial Centre, 44th Floor | | | Boston | MA | 02111 | |
| HarbourVest Partners L.P. | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |
| HarbourVest Partners L.P. on behalf of funds and accounts under management | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HarbourVest Skew Base AIF L.P. | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HarbourVest Skew Base AIF L.P. | c/o HarbourVest Partners, LLC | One Financial Center | | | Boston | MA | 02111 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 71 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| HARBOURVEST SKEW BASE AIF,L.P. | | One Financial Centre, 44th Floor | | | Boston | MA | 02111 | |
| Harder LLP | | 132 S. RODEO DRIVE | FOURTH FLOOR | | BEVERLY HILLS | CA | 90212 | |
| HARIKRISHNAN NAIR | | 8734 SHADY SHORE DR | | | Frisco | TX | 75034 | |
| Harlem Lacrosse | | PO Box 708 | | | New York | NY | 10030 | |
| Harper & Peterson, P.L.L.C. | | 3040 Woodbury Drive | | | Woodbury | MN | 55129 | |
| Harris Hilburn & Sherer | | 1111 Rosalie | | | Houston | TX | 77004 | |
| HARRIS, WILTSHIRE & GRANNIS LLP | | 1200 EIGHTEENTH ST, NW | | | Washington | DC | 20036 | |
| HARRISON, MATTHEW | | Address on File | | | | | | |
| Harsha Patwardhan | | Address on File | | | | | | |
| Hart Energy Publishing, L.P. | | 4545 Post Oak Pl Ste 210 | | | Houston | TX | 77027 | |
| Hart Energy Publishing, L.P. | | 1616 S. Voss Rd | Suite 1000 | | Houston | TX | 77057 | |
| Hart Energy, LP | | 1616 S. Voss Street | Suite 1000 | | Houston | TX | 77057 | |
| Hartford CFA Society | | PO Box 266 | | | Granby | CT | 06035 | |
| Hartford Life Insurance Company | | 777 Main Street | | | Hartford | CT | 06115 | |
| Hartline Dacus Barger Dreyer LLP | | 6688 N. Central Expwy, #1000 | | | Dallas | TX | 75206 | |
| Hartman Wanzor LLP | Kenneth Cantrell | 6050 Southwest Blvd Suite 150 | | | Fort Worth | TX | 76109 | |
| Hartman Wanzor LLP | | 6050 Southwest Blvd | Suite 200 | | Fort Worth | TX | 76109 | |
| Harvard Club of Dallas | | 5706 E Mockingbird Ln Ste 115 | | | Dallas | TX | 75206-5461 | |
| Harvard Club of New York City | | 35 West 44th Street | | | New York | NY | 10036 | |
| Harvest Exchange Corp | | PMB 245 | 516 N Ogden Ave | | Chicago | IL | 60642-6421 | |
| Haselroth, Matthew | | Address on File | | | | | | |
| HASENAUER, MICHAEL | | Address on File | | | | | | |
| HASENAUER, MICHAEL | | Address on File | | | | | | |
| Haven Search Group, LLC | | 3303 Lee Parkway | Suite 400 | | Dallas | TX | 75219 | |
| Hawaii State Tax Collector | | PO Box 1530 | | | Honolulu | HI | 96806-1530 | |
| HAWK Network Defense, Inc. | | 5057 Keller Springs Road | Suite 300 | | Addison | TX | 75001 | |
| Hayes, Christopher | | Address on File | | | | | | |
| Hayley Eliason | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| HAYMARKET MEDIA LIMITED | | 23/F, The Centrium, 60 Wyndham St | Central | | HONG KONG | | | HONG KONG |
| Haynes and Boone, LLP | ATTN Cari Peretzman | 901 Main St # 3100 | | | Dallas | TX | 75202 | |
| Haynes and Boone, LLP | | 2323 Victory Ave | Suite 700 | | Dallas | TX | 75219 | |
| Haynes and Boone, LLP | | PO Box 841399 | | | Dallas | TX | 75284-1399 | |
| Hazen, Anthony | | Address on File | | | | | | |
| HCM Market Letter, LLC | | Harch Capital Management, LLC | 621 NW 53rd Street, Suite 400 | | Boca Raton | FL | 33487 | |
| HCRE Partner, LLC | Wick Phillips Gould & Martin, LLP | Jason M. Rudd, Lauren K. Drawhorn | 3131 McKinney Avenue, Suite 500 | | Dallas | TX | 75204 | |
| HEAD, ALAN | | Address on File | | | | | | |
| Health Strategy Consulting | | 46 Kilvert St | | | Warwick | RI | 02886 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 72 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Health Texas Provider Network | | PO Box 844128 | | | Dallas | TX | 75284 | |
| Heat Software USA Inc | | PO Box #204375 | | | Dallas | TX | 75320-4375 | |
| HEATHER BROWN | | Address on File | | | | | | |
| HEATHERINGTON, MELINDA | | Address on File | | | | | | |
| HEBERT, ERIC | | Address on File | | | | | | |
| Hedge Connection, Inc. | | 141 Parkway Rd | Suite 15 | | Bronxville | NY | 10708 | |
| Hedge Fund Alert | | 5 Marine View Plaza #400 | | | Hoboken | NJ | 07030-5795 | |
| Hedge Fund Research, Inc. | | 10 South Riverside Plaza | Suite 700 | | Chicago | IL | 60606 | |
| Hedgebay Securities, LLC | | 62 Post Road West | | | Westport | CT | 06880 | |
| HEDGEFUND INTELLIGENCE LTD | | NESTOR HOUSE, PLAYHOUSE YARD | ACCOUNT DEPT | | London | | EC4V 5EX | United Kingdom |
| Hedgeye Risk Management, LLC | Legal Department | 1 High Ridge Park 3rd Floor | | | Stamford | CT | 06905-0000 | |
| HEIN ONKENHOUT | | Address on File | | | | | | |
| HEISS, BRADFORD | | Address on File | | | | | | |
| Helder Melendez | | Address on File | | | | | | |
| Helen Kim | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Helicopters for Heroes | c/o Jeff Davis | 9219 Viscount Row | | | Dallas | TX | 75247 | |
| HELLER EHRMAN LLP | | FILE NO 73536 | PO BOX 60000 | | San Francisco | CA | 94160-3536 | |
| Helping Our Heroes Foundation | | 6505 W. Park Blvd | Ste 306-165 | | Plano | TX | 75093 | |
| Helwig, Kevin | | Address on File | | | | | | |
| HENDERSHOT, PAUL | | Address on File | | | | | | |
| HENDRIX, KRISTIN | | Address on File | | | | | | |
| Henjum Goucher | | Address on File | | | | | | |
| Henjum Goucher | | Address on File | | | | | | |
| HENNIGAN, BENNETT & DORMAN LLP | | 865 S FIGUEROA ST | | | Los Angeles | CA | 90017 | |
| Henry Chang | | Address on File | | | | | | |
| Herbert A. Rosenthal, Chartered | | 1020-19th St. NW, #400 | | | Washington | DC | 20036-6101 | |
| HEROES FOR CHILDREN | ATTN LARISSA LINTON & JENNY SCOTT | 3411 PRESTON RD, STE C-13-227 | | | Frisco | TX | 75034 | |
| HERREN, CASEY | | Address on File | | | | | | |
| HERRICK, KATHRYN D. | | Address on File | | | | | | |
| Hersey, William | | Address on File | | | | | | |
| Hess, Zachary | | Address on File | | | | | | |
| Hewetts Island CLO 1-R, Ltd. | c/o Acis Capital Management | Blank Rome LLP | John E. Lucian, Josef W. Mintz | 1201 N. Market Street, Suite 800 | Wilmington | DE | 19801 | |
| Hewetts Island CLO 1-R, Ltd. | c/o Acis Capital Management | Winstead PC | Rakhee V. Patel, Phillip Lamberson | 2728 N. Harwood Street, Suite 500 | Dallas | TX | 75201 | |
| Hewetts Island CLO 1-R, Ltd. | c/o Acis Capital Management | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| HFF SECURITIES LP | | 10100 SANTA MONICA BLVD | STE 1400 | | Los Angeles | CA | 90067 | |

Appx. 00346

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 73 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| HFP GP, LLC | Attn Highland Capital Management, L.P. as sole member | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| HG Deposition and Litigation Services | | 2777 N. Stemmons Freeway, Ste 1025 | | | Dallas | TX | 75207 | |
| Higdon Barrett | | Address on File | | | | | | |
| HIGDON PARTNERS | | 230 PARK AVE | | | New York | NY | 10169 | |
| High Bandwidth | | 10107 Candlebrook Drive | | | Dallas | TX | 75243 | |
| High Profile, Inc. | | 4851 LBJ Freeway, Suite 500 | | | Dallas | TX | 75244 | |
| High Road Touring | | Jackson Haring | 751 Bridgeway, 3rd Flr | | Sausalito | CA | 94965 | |
| High Tower | Attn GIS | 505 5th Ave, 14th Flr | | | New York | NY | 10017 | |
| High Tower | Attn Klaris Tamazian | 200 W. Madison, Ste 2500 | | | Chicago | IL | 60606 | |
| Highland Builders, Inc. | | 2342 Fabens Road | Ste 100 | | Dallas | TX | 75229 | |
| Highland Capital Insurance Solutions GP LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Capital Loan Fund, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Capital Loan GP, LLC | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Capital Management Fund, L.P. and NexPoint Advisers, L.P. | Attn Davor Rukavina, Esq, and Julian P. Vasek, Esq. | Munsch Hardt Kopf & Harr, P.C. | 3800 Ross Tower | 500 N. Akard Street | Dallas | TX | 75202-2790 | |
| Highland Capital Management Fund, L.P. and NexPoint Advisers, L.P. | K&L Gates LLP | A. Lee Hogewood, III | 4350 Lassiter at North Hills Ave., Suite 300 | | Raleigh | NC | 27609 | |
| Highland Capital Management Fund, L.P. and NexPoint Advisers, L.P. | K&L Gates LLP | Attn Artoush Varshosaz | 1717 Main Street, Suite 2800 | | Dallas | TX | 75201 | |
| Highland Capital Management Fund, L.P. and NexPoint Advisers, L.P. | K&L Gates LLP | Attn Stephen G. Topetzes | 1601 K Street, NW | | Washington | DC | 20006-1600 | |
| Highland Capital Management Services, Inc. | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Capital Multi-Strategy Fund, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland CDO and Structured Products Fund, Ltd. Citigroup Financial Products Inc. JPMorgan Chase Bank | Citigroup Financial Products Inc. | 390 Greenwich Street | Doug Warren | | New York | NY | 10013 | |
| Highland CDO and Structured Products Fund, Ltd. Citigroup Financial Products Inc. JPMorgan Chase Bank | JPMorgan Chase Ban | 600 Travis Street | 50th Floor | ITS-Greg Sheehan | Houston | TX | 77002 | |
| Highland CDO Opportunity Fund GP, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Highland CDO Opportunity Fund, Ltd. IXIS Financial Products Inc. JPMorgan Chase Bank, National Association | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | WSS-Greg Sheehan | Houston | TX | 77002 | |
| Highland CLO Funding Ltd. | King & Spalding LLP | 500 West 2nd St., Suite 1800 | | | Austin | TX | 78701-4684 | |
| Highland CLO Funding, Ltd | | Paul R. Bessette First Floor, Dorey Court, Admiral Park | St Peter Port | | Guernsey | | GY1 6HJ | Channel Islands |
| Highland CLO Management Ltd. | | PO Box 309 | Ugland House | | Grand Cayman | | KY1-1104 | Cayman Islands |
| Highland Credit Opportunites | Japanese Feeder Sub-Trust | c/o Intertrust (Cayman) Limited | 190 Elgin Avenue | George Town | Grand Cayman | | KY1-9005 | Cayman Islands |
| Highland Credit Opportunites | Japanese Unit Trust | c/o Intertrust (Cayman) Limited | 190 Elgin Avenue | George Town | Grand Cayman | | KY1-9005 | Cayman Islands |
| Highland Credit Opportunities CDO GP, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Credit Opportunities CDO, Ltd. | c/o Walkers SPV Limited | Walker House 87 Mary Street | George Town | | Grand Cayman | | KY1-9002 | Cayman Islands |
| Highland Crusader Offshore Partners, L.P., et al. | Michael A. Rosenthal, Gibson, Dunn and Crutcher LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Highland Dallas Foundation Inc. | c/o CT Corporation, Registered Agent | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Dynamic Income Fund GP LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Employee Retention Assets, LLC | Attn James Dondero | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Fund Holdings, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland GP Holdings LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Legacy Limited | c/o Maples & Calder/ Graham Lockington | PO Box 309, Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Highland Legacy Limited | c/o Queensgate SPV Services Limited | PO Box 1093GT / Suzanne St. Thomas | Compass Center, 2nd Flr. Crewe Road | George Town | Grand Cayman | | | Cayman Islands |
| Highland Loan Fund, Ltd. et al | | PO Box 309 | Ugland House South Church Street | Grand Cayman | Cayman Island | | KY1-1104 | Cayman Islands |
| Highland Loan Funding V, Ltd. | c/o Maples & Calder/ F.O.E. | PO Box 309, Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Highland Loan Funding V, Ltd. | c/o QSPV Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Highland Loan Master Fund, L.P. | c/o Maples Corporate Services Limited | PO Box 309 | Ugland House | | Grand Cayman | | KY1-1104 | Cayman Islands |
| Highland Multi Strategy Credit Fund GP, L.P. | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Multi-Strategy Credit Fund GP, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Multi-Strategy Credit Fund, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 75 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Highland Multi-Strategy Fund GP, L.P. | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Multi-Strategy Master Fund, L.P. | c/o MQ Services Ltd. | Victoria House | 31 Victoria Street | | Hamilton | | 0HM10 | Bermuda |
| Highland Multi-Strategy Master Fund, L.P. | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Park CDO I, Ltd. | Moodys Investors Service, Inc. | 99 Church Street | | | New York | NY | 10041 | |
| Highland Park CDO I, Ltd. | Standard & Poors Ratings Services | 55 Water Street, 41 st Floor | Commercial Mortgage Surveillance Group | CDO Surveillance | New York | NY | 10041 | |
| Highland Park CDO I, Ltd, The Bank of New York Trust Company, National Association | Highland Park CDO I, Ltd. c/o Maples Finance Limited | P.O. Box 1093GT | Queensgate House, South Church Street | George Town, The Directors | George Town | | | Cayman Islands |
| Highland Park CDO I, Ltd, The Bank of New York Trust Company, National Association | The Bank of New York Trust Company, National Association | 601 Travis | 16th Fl | | Houston | TX | 77002 | |
| Highland Park CDO I, Ltd. | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Highland Principal Opportunities GP, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Prometheus Feeder Fund I, L.P. | c/o Maples Corporate Services Limited | PO Box 309 | Ugland House | | Grand Cayman | | KY1-1104 | Cayman Islands |
| Highland Prometheus Feeder Fund II, L.P. | c/o Maples Corporate Services Limited | PO Box 309 | Ugland House | | Grand Cayman | | KY1-1104 | Cayman Islands |
| Highland Prometheus Mast Fund, L.P. | c/o Maples Corporate Services Limited | PO Box 309 | Ugland House | | Grand Cayman | | KY1-1104 | Cayman Islands |
| Highland Restoration Capital Partners GP, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Restoration Capital Partners Master, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Restoration Capital Partners Offshore, L.P. | c/o Intertrust Cayman | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Highland Restoration Capital Partners, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Select Equity Fund GP | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| Highland Select Equity Fund GP, LLC | | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Highland Select Equity Master Fund, GP | c/o MQ Services Ltd. | Victoria House | 31 Victoria Street | | Hamilton | | 0HM10 | Bermuda |
| Highland SunBridge GP, LLC | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| HighTower Advisors | Attn GIS | 505 5th Ave, 14th Floor | | | New York | NY | 10017 | |
| HighTower Advisors | | 200 West Madison | Suite 2500 | | Chicago | IL | 60606 | |
| HighTower Advisors/The Sarian Group | | 656 East Swedesford Road | Suite 360 | | Wayne | PA | 19087 | |
| HighTower Holding LLC | | 200 W. Madison | Ste 2500 | | Chicago | IL | 60606 | |
| Hilary Adams | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 76 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| HILGENBRINK, ANDREW | | Address on File | | | | | | |
| Hilgenbrink, Andrew | | Address on File | | | | | | |
| HILL, OWEN | | Address on File | | | | | | |
| Hill, Robert | | Address on File | | | | | | |
| Hillcrest Athletic Association | HHS Athletics c/o Andy Todd | 9924 Hillcrest Rd | | | Dallas | TX | 75230-5309 | |
| Hillis, Blair | | Address on File | | | | | | |
| Hines REIT 2200 Ross Avenue LP | | PO Box 841147 | | | Dallas | TX | 75284-1147 | |
| Hines REIT 2200 Ross Avenue LP | | PO Box 841197 | | | Dallas | TX | 75284-1197 | |
| Hitchcock, Daniel | | Address on File | | | | | | |
| HM Life Insurance Company | | PO Box 382229 | | | Pittsburgh | PA | 15250-8229 | |
| Hoedebeck, Charlie | | Address on File | | | | | | |
| Hoermann, Richard | | Address on File | | | | | | |
| Hoge & Gameros, LLP | | 4311 Oak Lawn Ave Ste 600 | | | Dallas | TX | 75219 | |
| Holland & Knight, LLP | | PO Box 864084 | | | Orlando | FL | 32886-4084 | |
| Hollister, Michael J. | | Address on File | | | | | | |
| Holloway, Travis | | Address on File | | | | | | |
| Holly Church Communications | | 3730 Pinebrook Cir Apt 606 | | | Bradenton | FL | 34209-8073 | |
| Holmes Detective Bureau, Inc. | | 1270 Avenue of the Americas | Suite 1906 | | New York | NY | 10020 | |
| Holt, Eric | | Address on File | | | | | | |
| Home Health Service | | 2400 Dallas Parkway | STE 440 | | Plano | TX | 75093 | |
| Home Health Services | | 3333 Earheart Drive | Suite 210 | | Carrollton | TX | 75006 | |
| HOME, BRIAN | | Address on File | | | | | | |
| HONEYCUTT, JOHN BROOKS | | Address on File | | | | | | |
| HONEYCUTT, JOHN BROOKS | | Address on File | | | | | | |
| HONIS, JOHN | | Address on File | | | | | | |
| HONIS, JOHN | | Address on File | | | | | | |
| Honyaku Center Inc. | | 3-13-12 Mita | | | Minato-ku | Tokyo | 109-0073 | JAPAN |
| HOOVER HULL LLP | | PO BOX 44989 | | | Indianapolis | IN | 46244-0989 | |
| Hopes Door Inc. | | 860 F Ave | Suite 100 | | Plano | TX | 75074 | |
| HOPSON, STUART | | Address on File | | | | | | |
| Hotel Crescent Court | | 400 Crescent Court | | | Dallas | TX | 75201 | |
| Hotel Zaza | | 2332 Leonard Street | | | Dallas | TX | 75201 | |
| Houlihan Lokey | Attn Accounts Receivable | 10250 Constellation Blvd, 5th Floor | | | Los Angeles | CA | 9006?-6802 | |
| HOUSE OF BLUES | ATTn BARBARA BOUMAN | 2200 N LAMAR ST | | | Dallas | TX | 75202 | |
| Housing Crisis Center | | Megan Singleton, Development Manager | 4210 Junius Street | | Dallas | TX | 75246 | |
| How Handy Is That | | 21650 Oxnard Street | Suite 1530 | | Woodland Hills | CA | 91367 | |
| Howard B. Wiener | | Address on File | | | | | | |
| HOWARD DRANSFIELD IRA | | Address on File | | | | | | |
| Howle, Ian | | 2859 Umatilla St | | | Denver | CO | 80211 | |
| hrQ-Dallas, LLC | | Address on File | | | | | | |
| HSIEH, ADA | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 64 of 155

**Appx. 00350**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 77 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| HTH Worldwide Insurance Services | c/o Travel Accounting | One Radnor Corporate Center | 933 1st Ave | | King of Prussa | PA | 19406-1342 | |
| HUBBLE, JONATHAN | | Address on File | | | | | | |
| HUDSON GLOBAL RESOURCES | | 75 Remittance Drive, Suite 6465 | | | Chicago | IL | 60675-6465 | |
| Hudson Reporting & Video, Inc. | A DEPOSITION CENTER | 2124 Oak Tree Rd | | | New Jersey | NJ | 08820 | |
| HUGHES & HUBBARD | | One Battery Park Plaza | | | New York | NY | 10006 | |
| Hughes & Luce LLP | | 1717 Main St Ste 2800 | | | Dallas | TX | 75201 | |
| Hughes, Alex | | Address on File | | | | | | |
| HUKILL, NATHAN | | Address on File | | | | | | |
| HULL, CYNTHIA | | Address on File | | | | | | |
| Hummingbird | | PO Box 8500-3885 | | | Philadelphia | PA | 19178-3885 | |
| Hundt Reporting, L.L.C. | | 703 McKinney Ave, Ste 405 | | | Dallas | TX | 75202 | |
| Hunt, Brandon | | Address on File | | | | | | |
| HUNT, HEATHER | | Address on File | | | | | | |
| Hunter Covitz | c/o David Neier, Winston Strawn LLP | 6612 Sondra Dr. | | | Dallas | TX | 75214 | |
| Hunter Covitz | | Address on File | | | | | | |
| HUNTER COVITZ | | Address on File | | | | | | |
| Hunter Donaldson | | Address on File | | | | | | |
| Hunter Mountain Investment Trust | c/o Rand Advisors LLC | John Honis | 87 Railroad Place Ste 403 | | Saratoga Springs | NY | 12866 | |
| Hunter Mountain Trust | c/o E. P. Keiffer | Rochelle McCullough LLP | 325 N Saint Paul St Ste 4500 | | Dallas | TX | 75201-3827 | |
| Hunter Mountain Trust | Hunter Mountain Trust | John Honis, Trustee for Hunter Mountain Trust | 87 Railroad Place, Suite 403 | | Saratoga Springs | NE | 12866 | |
| Hunting & Fishing for ALS Research | | 2525 Fairmont St | | | Dallas | TX | 75201 | |
| HUNTINGTON, JOHN | | Address on File | | | | | | |
| Hunton & Williams LLP | | RIVERFRONT PLAZA, EAST TOWER | 951 EAST BYRD ST | | Richmond | VA | 23219 | |
| Hunton & Williams LLP | | PO BOX 840686 | | | Dallas | TX | 75284-0686 | |
| Hunton Andrews Kurth LLP | Alexander G. McGeoch | 1445 Ross Avenue Suite 3700 | | | Dallas | TX | 75202 | |
| Hunton Andrews Kurth, LLP | | 1445 Ross Avenue | Suite 3700 | | Dallas | TX | 75202-2799 | |
| Hurley, Leslie | | Address on File | | | | | | |
| HURLEY, MICHIEL | | Address on File | | | | | | |
| Huron Consulting Group | | 4795 Paysphere Circle | | | Chicago | IL | 60674 | |
| Hutcherson Law | | 10000 N. Central Expressway | Suite 800 | | Dallas | TX | 75231 | |
| Hutchison & Steffen, PLLC | | 10080 W Alta Drive | Ste 200 | | Las Vegas | NV | 89145 | |
| HV International VIII Secondary L.P. | Attn Erica Weisgerber | Debevoise and Plimpton LLP | 919 Third Avenue | | New York | NY | 10022 | |
| HV International VIII Secondary L.P. | c/o HarbourVest | One Financial Center | | | Boston | MA | 02111 | |
| HV INTERNATIONAL VIII SECONDARY L.P. | | One Financial Centre, 44th Floor | | | Boston | MA | 02111 | |
| Hyatt Regency Lost Pines Resort and Spa | | 575 Hyatt Lost Pines Road | | | Lost Pines | TX | 78612 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Hyatt Regency Scottsdale Resort & Spa | | 7500 E Doubletree Ranch Road | | | Scottsdale | AZ | 85258 | |
| I & A INTERNATIONAL | | 1717 MAIN ST | SUITE 4800 | | Dallas | TX | 75201 | |
| i Entertainment | | 2409 Avenue J | Suite D | | Arlington | TX | 76006 | |
| I.M.S. Relocation | | 2005 McDaniel Drive | Ste 150 | | Carrollton | TX | 75006 | |
| IA Watch | | PO Box 9407 | | | Gaithersburg | MD | 20897-9824 | |
| IA Watch | | 100 Winners Circle, Ste 300 | PO Box 5094 | | Brentwood | TN | 37024-5094 | |
| IAN FARRAND | | Address on File | | | | | | |
| IBM Websphere | | 1 New Orchard Road | | | Armonk | NY | 10504-0000 | |
| ICAA | | 1050 17th St, NW Ste 725 | | | Washington | DC | 20036-5503 | |
| Ice Bro Promos | | 1007 East Levee | | | Dallas | TX | 75207 | |
| Ice Data Indices, LLC | | PO Box 74008873 | | | Chicago | IL | 60693-8873 | |
| ICE Data Pricing & Reference Data, LLC | | PO Box 98616 | | | Chicago | IL | 60693 | |
| ICE Systems, Inc. | | PO Box 11126 | | | Hauppauge | NY | 11788-0934 | |
| ICI Mutual Insurance Brokers, Inc. | | 1401 H Street NW | Suite 1000 | | Washington | DC | 20005 | |
| IDAHO STATE TAX COMMISSION | REVENUE OPERATIONS DIVISION | IDAHO STATE TAX COMMISSION | PO BOX 36 | | Boise | ID | 83722-0410 | |
| IDAHO STATE TAX COMMISSION | | PO Box 83784 | | | Boise | ID | 83707-3784 | |
| IDCSERVCO Business Services | Attn Accounts Receivable | PO Box 1925 | | | Culver City | CA | 90232-1925 | |
| iDiscover, LLC | | 2049 Century Park East, Ste 4370 | | | Los Angeles | CA | 90067 | |
| IFG Project Resourcing | | 1560 Sawgrass Corporate Pkwy 4th Flr | | | Sunrise | FL | 33323 | |
| IFP Securities, LLC | | 3030 N Rocky Point Dr W | Suite 700 | | Tampa | FL | 33607 | |
| IHS Global Inc. | | PO Box 847193 | | | Dallas | TX | 75284-7193 | |
| IHS Markit | Michelle Searles | 15 Inverness Way East | | | Englewood | CO | 80112 | |
| II Magazines | Absolute Return & Alpha | 225 Park Ave - South | | | New York | NY | 10003 | |
| II Magazines | | PO Box 4009 | Subscriptions | | Chesterfield | MO | 63006-4009 | |
| IINews | | PO Box 5018 | | | Brentwood | TN | 37024-9552 | |
| IJC Partners LLC | | 20 East 46th St | Suite 901 | | New York | NY | 10017 | |
| Ikon Office Solutions | | DALLAS DISTRICT-DAL | PO BOX 676466 | | Dallas | TX | 75267 | |
| Ikon Office Solutions | | Northeast District-NYG | PO BOX 827164 | | Philadelphia | PA | 19182-7164 | |
| Ikon Office Solutions | | LDS Southeast District -FTL | PO Box 532545 | | Atlanta | GA | 303532545 | |
| Ikon Office Solutions | | LDS DALLAS DISTRICT -DAL | PO BOX 676466 | | Dallas | TX | 75267-6466 | |
| Ikon Office Solutions | | National Accounts | PO Box 676466 | | Dallas | TX | 75267-6466 | |
| ILLINOIS DEPARTMENT OF REVENUE | | PO BOX 19009 | | | SPRINGFIELD | IL | 62794-9009 | |
| ILLINOIS DEPARTMENT OF REVENUE | | PO Box 19045 | | | Springfield | IL | 62794-9045 | |
| Illinois Secretary of State | | Department of Business Services | | | Springfield | IL | 62756 | |
| Illinois Securities Department | | Securities Division | 421 E. Capital Ave., 2nd Fl. | | Springfield | IL | 62701 | |
| Illumant LLC | | 431 Florence Street | Suite 210 | | Palo Alto | CA | 94301 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| imageMAKER Development, Inc | | Suite 102-416, 6th St | | | New Westminister | BC | V3L 3B2 | CANADA |
| imageMAKER Development Inc | | Ste 102,416 - 6th Street | | | New Westminister | BC | V3L3B2 | Canada |
| imageNet | | PO Box 613310 | | | Dallas | TX | 75261-3310 | |
| Imaginuity Interactive, Inc. | | 2633 McKinney Ave | Ste 130-377 | | Dallas | TX | 75204 | |
| IMAMOTO, GREGG | | Address on File | | | | | | |
| IMCA | Attn Lara Davies | 5619 DTC Pkwy, Suite 500 | | | Greenwood Village | CO | 80111 | |
| Imran Hussain | | Address on File | | | | | | |
| IMRE | | 210 W PENNSYLVANIA AVE STE 700 | | | TOWSON | MD | 212044532 | |
| In Time Communications | | 9137 Loma Vista Dr | | | Dallas | TX | 75243 | |
| INCORPORATING SERVICES, LTD | | 3500 S DUPONT HWY | | | Dover | DE | 19901 | |
| Independence Capital Co., Inc. | | 5579 Pearl Road | Suite 100 | | Parma | OH | 44129 | |
| Independent Financial Group LLC | | 12671 High Bluff Drive | Suite 200 | | San Diego | CA | 92130 | |
| Independent Petroleum Assoc. of America | | 1201 15th St. NW | Ste 300 | | Washington | DC | 20005 | |
| Independent Petroleum Assoc. of America | | PO Box 79584 | | | Baltimore | MD | 21279-0584 | |
| IndexUniverse LLC | | 201 Mission Street | Suite 720 | | San Francisco | CA | 94105 | |
| IndexUniverse LLC | | 353 Sacramento Street | Suite 1520 | | San Francisco | CA | 94111 | |
| INDIANA DEPARTMENT OF REVENUE | | PO BOX 1028 | | | Indianapolis | IN | 46206-1028 | |
| Indiana Securities Division | | Securities Division | 302 West Washington Street, Room E-111 | | Indianapolis | IN | 46204 | |
| Infinity Litigation | | 3141 Hood St. #103 | | | Dallas | TX | 75219 | |
| Informa Investment Solutions | | PO Box 416014 | | | Boston | MA | 02241-6014 | |
| Informa Investment Solutions | | 4 Westchester Park Drive | | | White Plain | NY | 10604-0000 | |
| Informa UK Ltd. | | PO Box 32794 | | | Hartford | CT | 06150-2794 | |
| Information Management Network | | 225 Park Avenue South, 7th Fl | | | New York | NY | 10003 | |
| INFOTECH | | 92 CORPORATE PARK | STE C703 | | Irvine | CA | 92606 | |
| INNES, JOHN | | Address on File | | | | | | |
| Innovative Legal Solutions, Inc. | | 440 Louisana, Suite 1100 | | | Houston | TX | 77002 | |
| INSIDE CMS | | PO BOX 7167 | BEN FRANKLIN STATION | | Washington | DC | 20044-7167 | |
| INSIDE HEALTH POLICY.COM | | PO BOX 7167 | BEN FRANKLIN STATION | | Washington | DC | 20044-7167 | |
| Insider Score | | 254 Witherspoon St | | | Princeton | NJ | 08542 | |
| InsiderScore, LLC | | 254 Witherspoon Street | | | Princeton | NJ | 08542 | |
| InsiderScore, LLC | | 100 Thanet Circle | Suite 300 | | Princeton | NJ | 08540-0000 | |
| Insight | | PO Box 78825 | | | Phoenix | AZ | 78825 | |
| Insight Direct USA, Inc. | | PO Box 731069 | | | Dallas | TX | 75373 | |
| Insight Investments | | 611 Anton Blvd | Suite 700 | | Costa Mesa | CA | 92626 | |
| instant Technologies | | 54 Ross Road | | | Durham | NH | 03824 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Institute for International Research | | PO BOX 3685 | | | Boston | MA | 02241-3685 | |
| Institute for Portfolio Alternatives | | PO Box 480 | | | Ellicott City | MD | 21041-0480 | |
| Institute for Private Investors | | 17 State Street | 5th Floor | | New York | NY | 10004 | |
| Institutional Investor News | Attn Andrew Levin | 225 Park Ave South, 8th Flr | | | New York | NY | 10003 | |
| Institutional Investor News | ATTN Jeff Schilling | 225 Park Ave. South | 7th Floor | | New York | NY | 10003 | |
| Institutional Investor News | Attn Mutual Fund Industry Awards | PO Box 1575 | | | New York | NY | 10008 | |
| Institutional Investor News | | PO BOX 5034 | | | Brentwood | TN | 37024 | |
| Institutional Investor News | | PO Box 417611 | | | Boston | MA | 02241-7611 | |
| Institutional Investor News | | PO BOX 1575 | | | New York | NY | 10008-1575 | |
| Institutional Investor News | | PO Box 4009 | | | Chesterfield | MO | 63003-4009 | |
| Institutional Investor Newsletters | | PO BOX 5016 | | | Brentwood | TN | 37024-9549 | |
| Institutional Investor Newsletters | | PO Box 5018 | | | Brentwood | TN | 37024-9552 | |
| Institutional Investor Newsletters | | PO BOX 5030 | | | Brentwood | TN | 37024-9555 | |
| Institutional Investor, LLC | | PO Box 417611 | | | Boston | MA | 02241-7611 | |
| Institutional Recovery Solutions, Inc. | | 626 RXR Plaza | | | Uniondale | NY | 11556 | |
| Insurance Commissioner of Iowa | | Securities Bureau | 601 Locust Street, 4th Floor | | Des Moines | IA | 50309-3738 | |
| INSYNC ELECTRONIC MEDIA DESIGN, LLC | | 33 FELWAY DR | | | Coram | NY | 11727 | |
| Integra FEC LLC | | 1801 Lavaca Street, Suite 101 | | | Austin | TX | 78701 | |
| Integrated Financial Associates, Inc. | Carlyon Cica Chtd | 265 E. Warm Springs Road, Suite 1-7 | | | Las Vegas | NV | 89119 | |
| Integrated Financial Associates, Inc. | | 3111 S. Rainbow Blvd., Suite 209 | | | Las Vegas | NV | 89146 | |
| Integrated Solutions | | 425 Gotham Pkwy | | | Carlstadt | NJ | 07072 | |
| Interactive Data Pricing & Reference | | PO BOX 98616 | | | Chicago | IL | 60693 | |
| Interactive Data Pricing and Reference D | | 32 Crosby Drive | | | Bedford | MA | 01730-0000 | |
| InterDyn BMI | | 3001 Broadway St NE, #320 | | | Minneapolis | MN | 55413 | |
| Interfor | | 575 Madison Avenue, Suite 1006 | | | New York | NY | 10022 | |
| Internal Revenue Service | Attn Insolvency | 1352 Marrows Road, 2nd Floor | MC 4505 NDAL | | Newark | DE | 19711-5445 | |
| Internal Revenue Service | Attn Linda Yao | 4050 Alpha Road | | | Farmers Branch | TX | 75244 | |
| Internal Revenue Service | Faye Copple, Bankruptcy Specialist | 1100 Commerce St | M/S MC5027DAL | | Dallas | TX | 75242 | |
| Internal Revenue Service | | P.O. BOX 21126 | | | Philadelphia | PA | 19114 | |
| Internal Revenue Service | | STOP 5107 NWSAT | 4050 ALPHA RD | | Farmers Branch | TX | 75244-4201 | |
| Internal Revenue Service | | Ogden | | | Ogden | UT | 84201-0039 | |
| International Assets Advisory, LLC | | 390 North Orange Ave | Ste 750 | | Orlando | FL | 32801 | |

Page 68 of 155

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| International Bar Association | | 10th Flr 1 Stephen St | | | London | | W1T 1AT | United Kingdom |
| International Foundation | | 18700 W. Bluemound Rd | PO Box 69 | | Brookfield | WI | 53008-0069 | |
| Intertrust | | 190 Elgin Ave | George Town | | Grand Cayman | | KY1-9000 | Cayman Islands |
| Intex Solutions, Inc. | Accounts Receivable | 110 A St | | | Needham | MA | 02494-2807 | |
| Intralinks | | P.O. Box 10259 | | | New York | NY | 10259 | |
| Intralinks Inc. | | 150 East 42nd St | 8th floor | | New York | NY | 10017-0000 | |
| Intuit | | PO Box 30860 | | | Los Angeles | CA | 90030-0860 | |
| Inventus | | P.O. Box 130114 | | | Dallas | TX | 75313 | |
| INVeSHARE, Inc. | | PO Box 568 | | | Alpharetta | GA | 30009-0568 | |
| Investigative Management Group | | 825 Third Avenue | 18th Floor | | New York | NY | 10022 | |
| Investment Company Institute | | PO Box 759456 | | | Baltimore | MD | 21275 | |
| Investment Company Institute | | Dept. 3077 | | | Washington | DC | 20061-3077 | |
| Investment Management Advisors, LLC | | 3131 Maple Ave., Suite 7E | | | Dallas | TX | 75201 | |
| Investment Management Institute | | 123 Mason St | | | Greenwich | CT | 06830 | |
| Investment Management Institute | | 165 W. Putnam Avenue | 2nd Floor | | Greenwich | CT | 06831 | |
| Investment Planners, Inc. | | PO Box 170 | | | Decatur | IL | 62525-0170 | |
| Investment Professionals Conference | Attn Rachel Christensen | 470 Tanner Building | | | Provo | UT | 84602 | |
| Investment Program Association | | PO Box 480 | | | Ellicott City | MD | 21042-0480 | |
| InvestmentWires, Inc. | | 14 Wall Street | 20th Floor | | New York | NY | 10005 | |
| Investor Force, Inc. | | Lockbox # 415926 | | | Boston | MA | 02241-5926 | |
| Investors Bank & Trust Company | | 200 Clarendon Street | Mail Code EUC 108 | | Boston | MA | 02116 | |
| Investors Business Daily | | 12655 Beatrice St. | | | Los Angeles | CA | 90066 | |
| IPC Information Systems, Inc. | | PO Box 26644 | | | New York | NY | 10087 | |
| IPC Network Services, Inc. | Harborside Financial Center | 1500 Plaza 10 | 15th Floor | | Jersey City | NJ | 07311 | |
| Ipitomi Limited | | 3rd Floor | 125 Wood Street | | London | | EC2V 7AN | United Kingdom |
| Ipreo Data Inc. | | 421 Fayetteville Street | Suite 900 | | Raleigh | NC | 27601 | |
| IRELL & MANELLA LLP | | 840 NEWPORT CENTER DR | STE 450 | | Newport Beach | CA | 92660-6324 | |
| IRENE KUBERT | LASC | 600 SOUTH COMMONWEALTH AVE, DEPT 316 | | | Los Angeles | CA | 90005 | |
| Iron Mountain - Off-Site Data Protection | | PO Box 915026 | | | Dallas | TX | 75391-5026 | |
| Iron Mountain Records Management | Whitelaw House | Alderstone House Business Park | MacMillan Rd | | Livington | | EH54 7DF | United Kingdom |
| Iron Mountain Records Management | | PO Box 915004 | | | Dallas | TX | 75391-5004 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Ironwood Legal Solutions | | Level 8, South Wing Millennium House, 46/58, Nawam Mawatha | | | Colombo | | 2 | Sri Lanka |
| IRR - Las Vegas | | 8367 West Flamingo Road | Suite 100 | | Las Vegas | NV | 89147 | |
| IRS | | Earle Cabell Federal Building | 1100 Commerce St #121 | | Dallas | TX | 75242 | |
| Irving ISD | Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| Irving, Katie | | Address on File | | | | | | |
| Isaac D. Leventon | c/o David Neier | Winston Strawn LLP | 200 Park Avenue | | New York | NY | 10166 | |
| Isaac Leventon | Debra A. Dandeneau | Baker & McKenzie LLP | 452 Fifth Avenue | | New York | NY | 10018 | |
| Isaac Leventon | Michelle Hartmann | Baker & McKenzie LLP | 1900 North Pearl, Suite 1500 | | Dallas | TX | 75201 | |
| Island Love Rebuilding Fund | | PO Box 53412 | | | Lafayette | LA | 70505-3412 | |
| Itech Inc. | | 6230 Wilshire Blvd, # 145 | | | Los Angeles | CA | 90048 | |
| ITG Investment Research, Inc. | Attn Chris Stilo | 380 Madison Ave | | | New York | NY | 10017 | |
| ITG Investment Research, Inc. | | 1270 Avenue of the Americas | | | New York | NY | 10020 | |
| ITG Investment Research, Inc. | | PO Box 30270 | | | New York | NY | 10087-0270 | |
| Ivanti Security | | 698 West 10000 South | | | Jordan | UT | 84095-0000 | |
| Ivins, Phillips & Barker Chartered | | 1700 Pennsylvania Avenue, NW | | | Washington | DC | 20006 | |
| J Gregory Stone | | Address on File | | | | | | |
| J. Sagar Associates | | Vakils House | 18 Sprott Road | Ballard Estate | Mumbai | | 400 001 | India |
| J.C. Trident, Inc. | | 9035 Orlando Ave | | | Navarre | FL | 32566 | |
| Jack Boles Parking | | PO Box 190326 | | | Dallas | TX | 75219-0326 | |
| Jack Takacs | | Address on File | | | | | | |
| JACK YANG | | Address on File | | | | | | |
| Jackson Walker | | PO Box 130989 | | | Dallas | TX | 75313-0989 | |
| Jackson Walker LLP | Michael S. Held | 2323 Ross Ave., Suite 600 | | | Dallas | TX | 75201 | |
| Jackson Walker LLP | | PO BOX 130989 | | | Dallas | TX | 75313-0989 | |
| Jackson, Jesse | | Address on File | | | | | | |
| JACOBS ENGINEERING GROUP | | PO BOX 651063 | | | Charlotte | NC | 28265 | |
| JAGADEESH REDDY | | Address on File | | | | | | |
| Jain, Ajit | | Address on File | | | | | | |
| Jain, Ajit | | Address on File | | | | | | |
| Jain, Bhawika | | Address on File | | | | | | |
| Jain, Bhawika | | Address on File | | | | | | |
| JAKE AMBROSE | | Address on File | | | | | | |
| Jake Istnick | | Address on File | | | | | | |
| JAMAL CARTY | | Address on File | | | | | | |
| James A Shlikett | | Address on File | | | | | | |
| James C. Merrill & Associates, Inc. | | 14677 Midway Rd., Ste 203 | | | Addison | TX | 75001 | |
| James D. Calver | | Address on File | | | | | | |
| James D. Dondero | D. Michael Lynn | Address on File | | | | | | |
| James D. Dondero | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| James Dondero, as the successor-in-interest to the Canis Major Trust | James D. Dondero | D. Michael Lynn | 420 Throckmorton Street, Suite 1000 | | Fort Worth | TX | 76102 | |
| James Edward | | Address on File | | | | | | |
| James Klein | | Address on File | | | | | | |
| James Lamar | | Address on File | | | | | | |
| James Love | | Address on File | | | | | | |
| James Mathis Consulting LLC | | 3701 Braewood Circle | | | Plano | TX | 75093 | |
| James McCaffrey | | Bank of Marshall Islands Building, 2nd Floor, PO Box 509 | | | Majuro | | 96960 | Marshall Islands |
| JAMES PAGLIAROLI | | Address on File | | | | | | |
| James Palmer | | Address on File | | | | | | |
| James Peterson | | Address on File | | | | | | |
| James R. Thompson | | Address on File | | | | | | |
| James T. Bentley | Schulte Roth & Zabel LLP | 919 Third Avenue | | | New York | NY | 10022 | |
| James, Carter & Coulter, P.L.C. | | 500 Broadway | Suite 400 | | Little Rock | AR | 72203 | |
| JAMESON, MATTHEW | | Address on File | | | | | | |
| JAMS, Inc. | | PO Box 512850 | | | Los Angeles | CA | 90051-0850 | |
| Jane Rose Reporting Inc. | | 2547 State Hwy. 35 | Suites 1&2 | | Luck | WI | 54853 | |
| Janet McGreal | | Address on File | | | | | | |
| JANIS ROGERS & ASSOCIATES | | 1545 W MOCKINGBIRD LN | STE 1032 | | Dallas | TX | 75235 | |
| Jansen & Palmer, LLC | | 4746 Elliot Avenue South | | | Minneapolis | MN | 55407 | |
| JANULESKI, GEOFFREY J | | Address on File | | | | | | |
| Japan Alternative Investment Co.Ltd | | 19th Floor, KDDI Otemachi Bldg | 1-8-1 Otemachi, Chiyoda-ku | | Tokyo | | 100-0004 | JAPAN |
| Japanese Evangelical Missionary Society | | 948 East Second St | | | Los Angeles | CA | 90012-4382 | |
| Jardine, Jeffrey | | Address on File | | | | | | |
| Jardine, Jordan | | Address on File | | | | | | |
| Jaron Stern | | Address on File | | | | | | |
| Jason Chang | | Address on File | | | | | | |
| Jason Goldsmith | | Address on File | | | | | | |
| Jason Hoarell | | Address on File | | | | | | |
| Jason Kathman | | Address on File | | | | | | |
| JASON KIRSCHNER | | Address on File | | | | | | |
| Jason L. Janik | | Address on File | | | | | | |
| Jason Post | | Address on File | | | | | | |
| Jason Rothstein | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| JASON SANTAMARIA | | Address on File | | | | | | |
| Jason Vanacour | | Address on File | | | | | | |
| Jason Vanacour | | Address on File | | | | | | |
| Jasper CLO Ltd MMP-5 Funding, LLC and IXIS Financial Products Inc. | Jasper CLO Ltd. | PO Box 1234 Queengate House | South Church Street | The Directors | Grand Cayman | | | Cayman Islands |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Jasper CLO Ltd. | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | Worldwide Securities Services - Jasper CLO Ltd. | Houston | TX | 77002 | |
| Jasper CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Jasper CLO Ltd. JPMorgan Chase Bank, National Association | Jasper CLO Ltd. c/o Maples Finance Limited | Queensgate House, South Church Street, George Town | | P.O. Box 1093GT | Grand Cayman | | | Cayman Islands |
| Jasper CLO, Ltd. | c/o Ogier Fiduciary Services (Cayman) Limited | PO Box 1234 | Queensgate House, South Church Street | | Grand Cayman | | | Cayman Islands |
| Jay Angotti | | Address on File | | | | | | |
| Jay Borikar | | Address on File | | | | | | |
| Jay Gierak | | Address on File | | | | | | |
| Jay M Cohen, PA | | PO Box 2210 | | | Winter Park | FL | 32790 | |
| Jay Sluis | | Address on File | | | | | | |
| Jay Steigerwald | | Address on File | | | | | | |
| JB Sigmon | | Address on File | | | | | | |
| JDRF Greater Dallas Chapter | | 9400 N Central Expressway | Suite 1201 | | Dallas | TX | 75231 | |
| Jean Paul Sevilla | Baker & McKenzie LLP | Debra A. Dandeneau | 452 Fifth Avenue | | New York | NY | 10018 | |
| Jean Paul Sevilla | c/o David Neier, Winston Strawn LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Jean Paul Sevilla | Michelle Hartmann | Baker & McKenzie LLP | 1900 North Pearl, Suite 1500 | | Dallas | TX | 75201 | |
| Jean Paul Sevilla | | Address on File | | | | | | |
| Jean Paul Sevilla | | Address on File | | | | | | |
| Jean-Francois Lemay | | Address on File | | | | | | |
| Jeff Cohen | | Address on File | | | | | | |
| Jeff Damec | | Address on File | | | | | | |
| Jeff Gilbert | | Address on File | | | | | | |
| Jeff Graham | | Address on File | | | | | | |
| Jeff Habicht | | Address on File | | | | | | |
| Jeff Seaver | | Address on File | | | | | | |
| Jeff Turner | | Address on File | | | | | | |
| Jefferies | Ronald Wong | 101 California Street | Suite 3100 | | San Francisco | CA | 94111 | |
| Jefferies LLC | Attn Casey Doherty | c/o Dentons US LLP | 1221 McKinney Street, Suite 1900 | | Houston | TX | 77010-2006 | |
| Jefferies LLC | Attn Christopher Bianchi | Prime Brokerage Services | 520 Madison Avenue | | New York | NY | 10022 | |
| Jefferies LLC | Christopher Bianchi | 520 Madison Avenue, 2nd Floor | | | New York | NY | 10022 | |
| Jefferies LLC | Dentons US LLP | Attn Lauren Macksoud, Esq. and Patrick Maxcy, Esq. | 1221 Avenue of the Americas | | New York | NY | 10020 | |
| Jefferies LLC | | 520 Madison Avenue, 12th Floor | | | New York | NY | 10022 | |
| Jeffrey Dutton | | Address on File | | | | | | |
| Jeffrey Rose | | Address on File | | | | | | |
| Jehyun Law | | 11st Floor, Samsung Life East Yeouido Bldg, 25 | Yeouido-Dong | 2Gil 17, International Financial-Ro | Yeongdeungpo-Gu | Seoul | 150-878 | South Korea |
| JEMS | | 948 EAST 2ND ST | | | Los Angeles | CA | 900124317 | |
| Jenifer Jurrius | | Address on File | | | | | | |
| JENKINS, AMY | | Address on File | | | | | | |
| JENNA BRIDGES | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 72 of 155

**Appx. 00358**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| JENNER & BLOCK LLP | | 353 N CLARK ST | | | Chicago | IL | 606654-3456 | |
| Jenni Logan | | Address on File | | | | | | |
| Jennifer Buntz | | Address on File | | | | | | |
| JENNIFER LYNN HUNTSMAN TRUST | ATTN BRIAN SHRUM | 1 S MAIN ST 12TH FLR | | | Salt Lake City | UT | 84111-1904 | |
| Jennifer Ricci | | Address on File | | | | | | |
| Jennifer Wooton | | Address on File | | | | | | |
| JENSEN, ASTRID | | Address on File | | | | | | |
| JENSEN, MARTY | | Address on File | | | | | | |
| Jeong, Sang K. | | Address on File | | | | | | |
| Jeremy Kross | | Address on File | | | | | | |
| Jeremy Simpson | | Address on File | | | | | | |
| JERICHO SERVICES | | 2571 MERRELL RD | | | Dallas | TX | 75229 | |
| Jerome Carter | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76012-4135 | |
| Jessica Gimbel | | Address on File | | | | | | |
| Jessica Hoskings | | Address on File | | | | | | |
| Jessica Nalder | | Address on File | | | | | | |
| Jessica Ogle | | Address on File | | | | | | |
| Jessup Holdings LLC | Attn John Mandler | c/o Mandel, Katz and Brosnan LLP | 100 Dutch Hill Road, Suite 390 | | Orangeburg | NY | 10962 | |
| Jesuit Alumni Homecoming | | 12345 Inwood Rd | | | Dallas | TX | 75244 | |
| Jetti, Vikram | | Address on File | | | | | | |
| JEWISH FEDERATION OF GREATER DALLAS | ATTN KAREN HANEY | JACOB FELDMAN BUILDING | 7800 NORTHAVEN RD | | Dallas | TX | 75230 | |
| JHAWER, SHANTANU | | Address on File | | | | | | |
| JHT Holdings, Inc. | Attn Christopher Reehl | 10801 Corporate Drive | PO Box 581025 | | Pleasant Prairie | WI | 53158 | |
| Jillian Ashenbrener | | Address on File | | | | | | |
| Jim Pagliaroli | | Address on File | | | | | | |
| Jinny Cha | | Address on File | | | | | | |
| JJB Hilliard, WL Lyons LLC | Attn Mac Thomas | 500 West Jefferson Street | | | Louisville | KY | 40202 | |
| JOCELYN FRANK FABIANCIC | | Address on File | | | | | | |
| Jocoy, Laura C. | | Address on File | | | | | | |
| JOE DOUGHERTY | | Address on File | | | | | | |
| JOE DOUGHERTY | | Address on File | | | | | | |
| JOE EMMANUEL | | Address on File | | | | | | |
| Joe Farach | | Address on File | | | | | | |
| Joe Foster Company LLC | | 25 Highland Park Village | Suite 100-880 | | Dallas | TX | 75205 | |
| Joe Joyner | | Address on File | | | | | | |
| Joe Kingsley | | Address on File | | | | | | |
| Joe Laganza | | Address on File | | | | | | |
| Joe Norton | | Address on File | | | | | | |
| Joe Scanlon | | CRT Capital Holdings LLC | 262 Harbor Drive | | Stamford | CT | 06902 | |
| JOEL ESHBAUGH | | Address on File | | | | | | |
| Joel Zeff Creative | | PO Box 979 | | | Coppell | TX | 75019 | |
| Johanna McBroom | | Address on File | | | | | | |
| JOHN A TOWNSEND, IOLTA | TAX PROCEDURE GROUP | 5615 KIRBY DR, STE 830 | | | Houston | TX | 77005 | |
| John Burer | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| John Caron | | Address on File | | | | | | |
| John Chant | | Address on File | | | | | | |
| John Crocker | | Address on File | | | | | | |
| John Duval Associates | | 400 East 56th St Ste 10-S | | | New York | NY | 10022 | |
| John Duval Associates | | 446 Milan Hill Rd | | | Red Hook | NY | 12571 | |
| John F Yang | KLS Financial Advisors | 127 Main Street, Suite A | | | Chatham | NJ | 07928 | |
| John F. Jack Yang | Daniel P Winikka | Loewinsohn Flegle Deary Simon LLP | 12377 Merit Drive, Suite 900 | | Dallas | TX | 75251 | |
| John F. Jack Yang | | Address on File | | | | | | |
| John F. Warren, Dallas County Clerk | Attn Central Records | 600 Commerce St–B1 | | | Dallas | TX | 75202 | |
| John Fink | | Address on File | | | | | | |
| JOHN FRUSHA | | Address on File | | | | | | |
| JOHN GALANTE | | Address on File | | | | | | |
| John Gavin | | Address on File | | | | | | |
| John Guagliardo | | Address on File | | | | | | |
| John Hancock Life Insurance | | PO Box 894764 | | | Los Angeles | CA | 90189-4764 | |
| John Hare | | Address on File | | | | | | |
| JOHN HENNEGAN | | Address on File | | | | | | |
| John Holmes | | Address on File | | | | | | |
| John Honis | | Address on File | | | | | | |
| John Howard | | Address on File | | | | | | |
| JOHN HUNTINGTON | | Address on File | | | | | | |
| John Ly | | Address on File | | | | | | |
| John Martin | | Address on File | | | | | | |
| JOHN MELTON | | Address on File | | | | | | |
| John Morgan | | Address on File | | | | | | |
| JOHN MORRIS | | Address on File | | | | | | |
| John Partchenko | | Address on File | | | | | | |
| John Paul Raffo | | Address on File | | | | | | |
| John Perkins | | Address on File | | | | | | |
| John R Ames, CTA | | Records Bldg, 500 Elm St | PO Box 139033 | | Dallas | TX | 75313-9033 | |
| John R Ames, CTA | | PO Box 139066 | | | Dallas | TX | 75313-9066 | |
| John R. Watkins | | Address on File | | | | | | |
| John Reineberg | | Address on File | | | | | | |
| John Seng | | Address on File | | | | | | |
| John Yang | | Address on File | | | | | | |
| JOHN, KYLE | | Address on File | | | | | | |
| Johnston Tobey Baruch, P.C. | | 3308 Oak Grove Avenue | | | Dallas | TX | 75204 | |
| Jolles Associates, Inc. | | PO Box 930 | | | Great Falls | VA | 22066 | |
| JON BURKE | | Address on File | | | | | | |
| JON MARTIN | | Address on File | | | | | | |
| JON TAYLOR | | Address on File | | | | | | |
| Jones Day | | Address on File | | | | | | |
| Jones Reporting Company Inc | | Two Oliver Street | | | Boston | MA | 02109 | |
| Jones Roach & Caringella, Inc. | | 10920 Via Frontera Ste 440 | | | San Diego | CA | 92127-1732 | |
| JONES, DAVID | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 87 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Jones, Michael | | Address on File | | | | | | |
| Jones, Owen | | Address on File | | | | | | |
| JONES, ROBERT | | Address on File | | | | | | |
| Jones, Terrence O. | | Address on File | | | | | | |
| Jordan Fraker Photography | | 8806 San Fernando Way | | | Dallas | TX | 75218 | |
| Jordan Kahn Music Company | | 3941 Legacy Drive | #204 A-225 | | Plano | TX | 75023 | |
| Jordan Malouf | | Address on File | | | | | | |
| Jordan Thompson | | Address on File | | | | | | |
| Jordan, Hyden, Womble & Culbreth P.C. | | 500 N Shoreline, Ste 900N | | | Corpus Christi | TX | 78471 | |
| Jordan, Micah | | Address on File | | | | | | |
| JORDEN BURT | | Address on File | | | | | | |
| JORGE JARAMILLO | | Address on File | | | | | | |
| Jose Antonio Blanco & Asociados | | Valentin Vergara 1675 | 1602 Florida | | Buenos Aires | | | ARGENTINA |
| Jose Ontiveros | | Address on File | | | | | | |
| Josef Yehia | | Address on File | | | | | | |
| JOSEPH BIDJOKA | | Address on File | | | | | | |
| Joseph Kevin Ciavarra | | Address on File | | | | | | |
| Joseph R Pinkston III | | Address on File | | | | | | |
| Josh Bock | | Address on File | | | | | | |
| Josh Philips | | Address on File | | | | | | |
| Josh Terry | Attn Rakhee V. Patel, Winstead PC | Address on File | | | | | | |
| Josh Terry | | Address on File | | | | | | |
| Joshua & Jennifer Terry | c/o Brian P. Shaw, Esq. | Rogge Dunn Group, PC | 500 N. Akard Street, Suite 1900 | | Dallas | TX | 75201 | |
| Joshua N. Terry on behalf of his IRAs and Jennifer G. Terry on behalf of her IRAs and The Terry Family 401-K Plan | Brian P. Shaw | 500 N. Akard St. Suite 1900 | | | Dallas | TX | 75201 | |
| Joshua N. Terry on behalf of his IRAs and Jennifer G. Terry on behalf of her IRAs and The Terry Family 401-K Plan | | Address on File | | | | | | |
| Joshua Tree Feeding Program Inc | | 1601 W Indian School Rd | | | Phoenix | AZ | 85015 | |
| Joy Squad Dallas | | 1725 Prescott Drive | | | Flower Mound | TX | 75028 | |
| JP Morgan | | WSS GLOBAL FEE BILLING | PO BOX 26040 | | New York | NY | 10087-6040 | |
| JP Morgan | | ITS Fee Billing | PO Box 911953 | | Dallas | TX | 75391-1953 | |
| JP MORGAN HEDGE FUND SERVICES | | ONE BEACON ST. 19TH FLR | | | Boston | MA | 02108 | |
| JP Sevilla | | Address on File | | | | | | |
| JPMorgan Chase Bank | Worldwide Securities Services | 600 Travis Street, 50th Floor | | | Houston | TX | 77002 | |
| JPMorgan Clearing Corp | ATTN Metrotech Center North | 1 MetroTech Center # 1 | | | Brooklyn | NY | 11201 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 88 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| JPMORGAN FCS | | 13455 Noel Rd, Ste 1150 | | | Dallas | TX | 75240 | |
| JPMORGAN FCS | | WSS GLOBAL FEE BILLING | PO BOX 26040 | | New York | NY | 10087-6040 | |
| JT Magen & Company Inc | | 44 West 28th Street | 11 th floor | | New York | NY | 10001 | |
| Judy Chamberlin Entertainment | | 2604 Medline Ct | | | Southlake | TX | 76092 | |
| Jumpline, Inc. Web Hosting | | PO Box 8789 | | | St Petersburg | FL | 33738-8789 | |
| JUN HONG HENG | | Address on File | | | | | | |
| JUNG, KEVIN | | Address on File | | | | | | |
| Junior Achievement of Dallas | Attn Shelley Strickland | 1201 W Executive Dr | | | Richardson | TX | 75081 | |
| JUNIOR LEAGUE OF DALLAS | | 8003 INWOOD RD | | | Dallas | TX | 75209 | |
| Justin Carfora | | Address on File | | | | | | |
| Justin Gould | | Address on File | | | | | | |
| Justin Nabours | | Address on File | | | | | | |
| Justin Smith | | Address on File | | | | | | |
| Juvenile Diabetes Research Foundation | | 200 Vesey St Frnt | | | New York | NY | 10281-8000 | |
| JW Cole Financial, Inc. | | 11811 N. Tatum Blvd | Ste 3055 | | Phoenix | AZ | 85028 | |
| JW Marriott Essex House NY | | 160 Central Park South | | | New York | NY | 10019 | |
| K & L Gates LLP | | Suite 2800 | 1717 Main Street | | Dallas | TX | 75201 | |
| K&L Gates LLP | A. Lee Hogewood, III | 4350 Lassiter at North Hills Ave., Suite 300 | | | Raleigh | NC | 27609 | |
| K&L Gates LLP | Attn Artoush Varshosaz | 1717 Main Street, Suite 2800 | | | Dallas | TX | 75201 | |
| K&L Gates LLP | James A. Wright III | State Street Financial Center | One Lincoln Street | | Boston | MA | 02111-2950 | |
| K&L Gates LLP | Stephen G. Topetzes | 1601 K Street, NW | | | Washington | DC | 20006 | |
| Kadleck & Associates | | 555 Republic Dr, suite 115 | | | Plano | TX | 75074 | |
| KAHR REAL ESTATE SERVICES LLC | | 139 FULTON ST | STE 319 | | New York | NY | 10038 | |
| KAI CHEN | | Address on File | | | | | | |
| Kane Environmental Engineering, Inc. | | 8816 Big View Dr | | | Austin | TX | 78730 | |
| KANE RUSSELL COLEMAN & LOGAN PC | | 901 MAIN ST STE 5200 | | | DALLAS | TX | 75202-3705 | |
| Kansas Corporate Tax | | Department of Revenue | 915 SW Harrison Street | | Topeka | KS | 66612-1588 | |
| Kansas Independent Oil & Gas Association | | 229 E. William | Suite 211 | | Wichita | KS | 67202-4027 | |
| Kapil Mathur | | Address on File | | | | | | |
| Kaplan Voekler Cunningham & Frank PLC | | PO Box 2470 | | | Richmond | VA | 23218-2470 | |
| KAREL, TRAVIS | | Address on File | | | | | | |
| Karen Weiss | | Address on File | | | | | | |
| Kari Kovelan | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Karl Eisleben | | Address on File | | | | | | |
| KARL FARMER | | Address on File | | | | | | |
| Karthik Bhavaraju | | Address on File | | | | | | |
| Kase Kinney | | 581 Avenue of the Americas | 5th Floor | | New York | NY | 10011 | |
| kasina, LLC | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | | 1633 BROADWAY | | | New York | NY | 10019-6799 | |
| Kastle Systems | | PO BOX 75160 | | | Baltimore | MD | 21275-5160 | |
| Kathryn Plouff | | Address on File | | | | | | |
| Katten Muchin Rosenman LLP | c/o Cedar Glade LP | 600 Madison Avenue, 17th Floor | | | New York | NY | 10022 | |
| KattenMuchinRosenman LLP | | 525 W Monroe St | | | Chicago | IL | 60661-3693 | |
| Katthik Bhavaraju | | Address on File | | | | | | |
| KAUFFMAN, PAUL | | Address on File | | | | | | |
| Kaufman County | Attn Elizabeth Weller | 2777 N. Stemmons Freeway | Suite 1000 | | Dallas | TX | 75207 | |
| Kaufman County | c/o Laurie A. Spindler, Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| Kavita Naik | | Address on File | | | | | | |
| KCD Financial | Attn Vicki Berger | 3061 Allied St, Ste B | | | Green Bay | WI | 54304 | |
| KCD Financial, Inc. | | 3061 Allied St. | Suite B | | Green Bay | WI | 54304 | |
| KEARNEY, JOSEPH | | Address on File | | | | | | |
| KEARNEY, JOSEPH D. | | Address on File | | | | | | |
| KEITH BECKMAN | | Address on File | | | | | | |
| Keith Bowers | | Address on File | | | | | | |
| Keith Dunlap | | Address on File | | | | | | |
| Keith Gorman | | Address on File | | | | | | |
| Keith Schneider | | Address on File | | | | | | |
| Kelan Advisors | | PO Box 122 | | | Lexington | MA | 02420 | |
| Keller Williams | c/o Paula Barbee | Address on File | | | | | | |
| Kellie Stevens | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| KELLOGG | | KELLOGG ALUMNI CLUB | 7040 BROOKSHIRE DR. | | Dallas | TX | 75230 | |
| Kellogg Huber Hansen Todd Evans | | 1615 M Street N.W. | Ste 400 | | Washington | DC | 20036-3209 | |
| Kelly Bennett | | Address on File | | | | | | |
| Kelly Correll | Hugh G. Connor II, Michael D. Anderson and Katherine T. Hopkins | Address on File | | | | | | |
| Kelly Hart & Hallman | Louis M. Phillips | 201 Main Street, Suite 2500 | | | Fort Worth | TX | 76102 | |
| Kelly Hart & Pitre | | 301 Main Street, Suite 1600 | | | Baton Rouge | LA | 70801 | |
| Kelly Hart Pitre | Amelia L. Hurt | 400 Poydras Street, Suite 1812 | | | New Orleans | LA | 70130 | |
| Kelsey Ellenberg | | 17510 West Grand Parkway South | Suite 510 | | Sugarland | TX | 77479 | |
| KEN KUNIMOTO | | Address on File | | | | | | |
| Ken Owen & Associates | | 801 West Ave | | | Austin | TX | 78701-2207 | |
| Ken Paxton Campaign | | 1505 Elm Street, #1601 | | | Dallas | TX | 75201 | |
| Kendall + Landscape Architecture | | 6976 Santa Barbara Dr | | | Dallas | TX | 75214-2561 | |
| Kendall Best | | Address on File | | | | | | |
| Kennecott Funding Ltd | c/o Guggenheim Partners | 330 Madison Ave, 11th Floor | | | New York | NY | 10017 | |
| Kennedy DMC Austin | | 5810 Trade Center Dr | Suite 500 | | Austin | TX | 78744 | |
| KENNETH BELLAIRE | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Kenneth Daewoo Park | | Address on File | | | | | | |
| Kenneth L Maun | Tax Assessor Collector | Collin County | PO Box 8046 | | McKinney | TX | 75070 | |
| Kenneth L. Maun | | PO Box 8046 | | | McKinney | TX | 75070-8046 | |
| Kenneth Tharp | | Address on File | | | | | | |
| Kenny Juarez | | Address on File | | | | | | |
| Kensho Technologies, Inc. | | 17 Dunster St | Suite 300 | | Cambridge | MA | 02138 | |
| KENT CAPPS | | Address on File | | | | | | |
| Kent Gatzki | | Address on File | | | | | | |
| Kentucky State Treasurer | Division of Securities | 1025 Capital Center Drive, Suite 200 | | | Frankfort | KY | 40601 | |
| KERA | | 3000 Harry Hines Blvd | | | Dallas | TX | 75201 | |
| Kercsmar & Feltus PLLC | | 6263 N. Scottsdale Rd. | Suite 320 | | Scottsdale | AZ | 85250 | |
| Kerns, Brian | | Address on File | | | | | | |
| Kerri Kearney | | Address on File | | | | | | |
| KEVIN CLEARY | | Address on File | | | | | | |
| Kevin Dowd | | Address on File | | | | | | |
| Kevin Dunwoodie | | Address on File | | | | | | |
| KEVIN ETHRIDGE | | Address on File | | | | | | |
| KEVIN LATIMER | | Address on File | | | | | | |
| Kevin Messerle | | Address on File | | | | | | |
| Kevin Potts | | Address on File | | | | | | |
| Kevin Price | | Address on File | | | | | | |
| KEVIN SHAHBAZ | | Address on File | | | | | | |
| KeyBank National Association | as Administrative Agent | 225 Franklin Street, 18th Floor | | | Boston | MA | 02110 | |
| KeyBank National Association | as Agent | 127 Public Square | | | Cleveland | OH | 44114 | |
| KeyBank National Association | ATTN KREC Loan Services | 4910 Tiedman Road | 3rd Floor | | Brooklyn | OH | 44144 | |
| KFORCE PROFESSIONAL STAFFING | | PO BOX 2277997 | | | Atlanta | GA | 30384-7997 | |
| KidLinks | | 6387B Camp Bowie Blvd | #278 | | Fort Worth | TX | 76116 | |
| KidLinks Foundation | | 5485 Belt Line Rd | Suite 400 | | Dallas | TX | 75254-7604 | |
| Kiely, Thomas | | Address on File | | | | | | |
| Kilcullen & Company | | 150 N. Radnor Chester Rd. | Suite C210 | | Radnor | PA | 19087 | |
| KILLEBREW, MATT | | Address on File | | | | | | |
| Kim & Chang | | Seyang Building, 223 Naeja-dong | Jongno-gu | | Seoul | | 110-720 | South Korea |
| Kim Dawson Agency | | 1645 Stemmons Freeway | Suite #B | | Dallas | TX | 75207 | |
| Kim Leslie Shafer | | Address on File | | | | | | |
| Kim R. Kunz | | Address on File | | | | | | |
| Kim, Austen | | Address on File | | | | | | |
| KIM, HELEN | | Address on File | | | | | | |
| Kinder, Travis | | Address on File | | | | | | |
| KING & SPALDING LLP | | 1180 Peachtree St NE | | | Atlanta | GA | 30309-3521 | |
| KING & SPALDING LLP | | PO Box 116133 | | | Atlanta | GA | 30368-6133 | |
| King & Wood Mallesons LLP | | 10 Queen Street Place | | | London | | EC4R 1BE | United Kingdom |
| Kingwood Administrative Services | | 15 Golf Linds Ct | | | Kinwood | TX | 77339 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Kingwood Forestry Service, Inc | | PO Box 1290 | | | Monticello | AR | 71657 | |
| Kingwood Forestry Services, Inc | | 145 Greenfield Drive | | | Monticello | AR | 71655 | |
| Kinney Recruiting LP | | 106 E 6th St Ste 300 | | | Austin | TX | 78701 | |
| Kinsley & Associates, LLC | | 6732 West Coal Mine Avenue | #500 | | Littleton | CO | 80123 | |
| Kirkland & Ellis | | 777 S Figueroa St Ste 3700 | | | Los Angeles | CA | 90017 | |
| Kirkland & Ellis | | 153 E 53RD ST | CITIGROUP CENTER | | New York | NY | 10022-4611 | |
| Kirkpatrick Lockhart Preston Gates Ellis | | SUITE 2800 | 1717 MAIN ST | | Dallas | TX | 75201 | |
| Kirkpatrick Lockhart Preston Gates Ellis | | 1601 K Street NW | | | Washington | DC | 20006-1600 | |
| Klee, Tuchin, Bogdanoff & Stern | | 2121 Ave of the Stars, Flr 33 | | | Los Angeles | CA | 90067 | |
| Kleinberg, Kaplan, Wolff & Cohen | | 551 Fifth Ave 18th Flr | | | New York | NY | 10176 | |
| Kline & Kline | | 8117 Preston Rd, Ste 300 | | | Dallas | TX | 75225 | |
| Klisares, Michael | | Address on File | | | | | | |
| KLOS, DAVID | | Address on File | | | | | | |
| Klosters Trading Corporation | | 61 Heather Lane | | | Williston | VT | 05495 | |
| KMS Financial Services, Inc. | Attn Megan Slater | 2001 Sixth Avenue, Suite 280 | | | Seattle | WA | 98121-9833 | |
| Knect365 US, Inc. | | PO Box 3685 | | | Boston | MA | 02241-3685 | |
| KNIGHT ELECTRICAL SERVICES CORP | | 599 11th Avenue | | | New York | NY | 10036 | |
| KNIGHT ELECTRICAL SERVICES CORP | | 111 8TH AVE | STE 526 | | New York | NY | 10011-5298 | |
| Knights of Columbus | | 2280 Springlake Road | | | Dallas | TX | 75234 | |
| Knott, Brandon | | Address on File | | | | | | |
| Knott, Brandon | | Address on File | | | | | | |
| Knox, Haley | | Address on File | | | | | | |
| KNUTSON, DEREK | | Address on File | | | | | | |
| Koch Companies Public Sector, LLC | | PO Box 93901 | | | Chicago | IL | 60673 | |
| Kody Krause | | Address on File | | | | | | |
| Komen Dallas Race for the Cure | ATTN GARI PHILLIPS | 12820 HILLCREST | STE C105 | | Dallas | TX | 75230 | |
| Komen Dallas Race for the Cure | | 765 NorthPark Center | | | Dallas | TX | 75225 | |
| Korea Chonha Translation Co., Ltd. | | 1024 Manhattan Bldg, 36-2 | Yeungdeungpo-gu | | Seoul | | 150-746 | South Korea |
| Korea Standard Transl Center Co, Ltd. | | S-701, Garden 5 Works | Munjeong-dong Songpa-gu | | Seoul | | 138-200 | South Korea |
| KORNGUT, BRYAN | | Address on File | | | | | | |
| KORTLANDER, MATTHEW | | Address on File | | | | | | |
| KORTLANDER, MATTHEW A. | | Address on File | | | | | | |
| Kouzmenko, Svetlana | | Address on File | | | | | | |
| Kovack Securities Inc. | | 6451 N. Federal Hwy | Suite 1201 | | Ft. Lauderdale | FL | 33308 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Kovelan, Kari | | Address on File | | | | | | |
| KPMG LLP | | 3 Chestnut Ridge Rd | | | Montvale | NJ | 07645 | |
| KRAMER LEVIN NAFTALIS & FRANKEL LLP | | 1177 AVENUE OF THE AMERICAS | | | New York | NY | 10036-2714 | |
| Krishnan, Prasad | | Address on File | | | | | | |
| Kroll Associates, Inc. | | 475 Sansome Street | Suite 510 | | San Francisco | CA | 94104 | |
| Kromann Reumert | | Sundkrogsgade 5 | | | Copenhagen | | DK-2100 | DENMARK |
| Kruse & Associates, Ltd. | | 180 North LaSalle Street, Ste 3700 | | | Chicago | IL | 60601 | |
| Kryzer, Damon | | Address on File | | | | | | |
| KUCHLER, TOM | | Address on File | | | | | | |
| Kuehn, Richard | | Address on File | | | | | | |
| KULWICH, STEPHANIE | | Address on File | | | | | | |
| Kuperman, Orr & Albers PC | | 2801 Via Fortuna | Suite 430 | | Austin | TX | 78746 | |
| KURATTI, MOHAN | | Address on File | | | | | | |
| KURT DAUM | | Address on File | | | | | | |
| KURT DAUM | | Address on File | | | | | | |
| KURT PLUMER | | Address on File | | | | | | |
| Kurtis Plumer | | Address on File | | | | | | |
| Kurtosys Systems Inc. | | 134 5th Ave | 3rd Floor | | New York | NY | 10011 | |
| KWOK, NAM | | Address on File | | | | | | |
| L.A. Fuess Partners | | 3333 Lee Pkwy, Ste 300 | | | Dallas | TX | 75219 | |
| L.C. Kirk & Co | | 101 W Argonne | Ste 16 | | Saint Louis | MO | 63122 | |
| LABADIE, MICHAEL | | Address on File | | | | | | |
| Lackey Hershman LLP | Paul Lackey, Esq. | Stinson LLP | 3102 Oak Lawn Avenue, Ste 777 | | Dallas | TX | 75219 | |
| Lackey Hershman LLP | | 3102 Oak Lawn, Ste 777 | | | Dallas | TX | 75219-4241 | |
| LAFFER ASSOCIATES | | 103 Murphy Court | | | Nashville | TN | 37203 | |
| LAH Investments, LLC | | 4 Circle Drive | | | Rumson | NJ | 07660 | |
| Lamba, Menka | | Address on File | | | | | | |
| LAMENSDORF, JONATHAN | | Address on File | | | | | | |
| Lamplighters Parents Association | | 11611 Inwood Road | | | Dallas | TX | 75229 | |
| Landmark Graphics Corp | | PO Box 301341 | | | Dallas | TX | 75303-1341 | |
| Landmark Graphics Corp | | 2107 CityWest Blvd | Building 2 | | Houston | TX | 77042-2827 | |
| Landmark Graphics Corporation | | 10200 Bellaire Blvd | | | Houston | TX | 77072-5299 | |
| Landon Patterson | | Address on File | | | | | | |
| Landpro Corporation | | 21755 I-45 North | Building 7 | | Spring | TX | 77388 | |
| Landry, John | | Address on File | | | | | | |
| Lanier Worldwide, Inc. | | PO Box 105533 | | | Atlanta | GA | 30348-5533 | |
| Larkin, William | | Address on File | | | | | | |
| LAROCHE PETROLEUM CONSULTANTS, LTD | | 4600 GREENVILLE AVE | STE 160 | | Dallas | TX | 75206 | |
| LaRoche Petroleum Consultants, Ltd. | | 2435 N. Central Expwy | Suite 1500 | | Richardson | TX | 75080 | |
| LARRY LINDSEY | | Address on File | | | | | | |
| Lars Enstrom | | Address on File | | | | | | |
| LARSEN, JESS S. | | Address on File | | | | | | |
| LARSON & MCGOWIN INC. | | 254 NORTH JACKSON ST | PO BOX 2143 | | Mobile | AL | 36652 | |

Highland Capital Management, L.P.
Case No. 19-34054

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Laser App | | 222 Valley Creek Blvd, Ste 300 | | | Exton | PA | 19341 | |
| Laser App | | 3190 Shelby Street | Suite D-100 | | Ontario | CA | 91764 | |
| LATENTZERO INC | | 160 Federal Street | 16 th Floor | | Boston | MA | 02110 | |
| LATENTZERO INC | | PO BOX 415437 | | | Boston | MA | 02241 | |
| LATENTZERO INC | | Dept CH 16755 | 16TH FLR | | Palatine | IL | 60055-6755 | |
| Lateral Group NA, LLC | | 5516 Collection Ctr Drive | | | Chicago | IL | 60693 | |
| Latham & Watkins LLP | Andrew Clubok, Sarah Tomkowiak | 555 Eleventh Street, NW, Suite 1000 | | | Washington | DC | 20004 | |
| Latham & Watkins LLP | Jamie Wine | 885 Third Ave. | | | New York | NY | 10022-4834 | |
| Latham & Watkins LLP | Jeffrey E. Bjork, Kimberly A. Posin | 355 South Grand Avenue, Ste. 100 | | | Los Angeles | CA | 90071 | |
| LATHAM & WATKINS LLP | | PO BOX 7247-8181 | | | Philadelphia | PA | 19170-8181 | |
| Latham and Watkins LLP | Asif Attarwala | 330 North Wabash Ave. Suite 2800 | | | Chicago | IL | 60611 | |
| LATIMER, KEVIN | | Address on File | | | | | | |
| Latin Markets | | 10 W. 37th St | 7th Floor | | New York | NY | 10018 | |
| LatinFinance | | Subscriptions | PO Box 4009 | | Chesterfield | MO | 63006-4009 | |
| Lattig, Larry | | Address on File | | | | | | |
| Lauren A. Coleman | | Address on File | | | | | | |
| Lauren Brady | | Address on File | | | | | | |
| LAUREN HOLLAND | | Address on File | | | | | | |
| Lauren Powell | | Address on File | | | | | | |
| Lauren Roche | | Address on File | | | | | | |
| Lauren Sekerke | | Address on File | | | | | | |
| Lauren Selevan | | Address on File | | | | | | |
| Lauren Thedford | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Law Debenture Corporate Services Limited | | Fifth Floor | 100 Wood Street | | London | | EC2V 7EX | United Kingdom |
| LAW JOURNAL PRESS | | PO BOX 18105 | | | Newark | NJ | 07191-8105 | |
| Law Office of Michael R. Boling | | 2305 W. Parker Rd | Suite 203 | | Plano | TX | 75023 | |
| Law Office of Sean F. Oshea | | 90 Park Ave. 20th Flr | | | New York | NY | 10016 | |
| Law Offices of Art Brender | | 600 Eighth Avenue | | | Ft. Worth | TX | 76104 | |
| LAW OFFICES OF CHAPMAN & CUTLER | | PO BOX 71291 | | | Chicago | IL | 60694 | |
| Law Offices of Charles Renfrew | | 710 Sansome St | | | San Francisco | CA | 94111-1704 | |
| LAW OFFICES OF CHRISTOPHER NOLLAND | | 1717 MAIN ST | STE 5550 LB 39 | | Dallas | TX | 75201 | |
| LAWLER, TIMOTHY | | Address on File | | | | | | |
| Lawrence A. Hamermesh | | Address on File | | | | | | |
| Lawrence Labanowski | | Address on File | | | | | | |
| LAWRENCE, SUZANNE | | Address on File | | | | | | |
| Lawyers Title of Arizona, Inc. | | 3131 E. Camelback Rd | Suite 220 | | Phoenix | AZ | 85016 | |
| LB GROUP, LLC | ATTN J LYONS BREWER | 274 RIVERSIDE AVE | | | Westport | CT | 06880 | |
| LE, ELI | | Address on File | | | | | | |
| LEAK, ELIZABETH | | Address on File | | | | | | |
| LEAP Foundation | | 9101 N Central Expressway | Suite 600 | | Dallas | TX | 75231 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| LED ENTERPRISES, INC. | | 11131 SHADY TRAIL | | | Dallas | TX | 75229 | |
| LEDERMAN, SHAWN | | Address on File | | | | | | |
| Lee Lord | | Address on File | | | | | | |
| Lee Park and Arlington Hall Conservancy | | 3333 Turtle Creek Blvd. | | | Dallas | TX | 75219 | |
| Lee, Dylan | | Address on File | | | | | | |
| Lee, Jae | | Address on File | | | | | | |
| LEE, JEFFREY | | Address on File | | | | | | |
| Lee, Shawn | | Address on File | | | | | | |
| Lee, Woenjun | | Address on File | | | | | | |
| Legal Concierge, Inc. | | 3975 McCreary Road | | | Parker | TX | 75002 | |
| LegaLink Dallas | | PO Box 277951 | | | Atlanta | GA | 30384 | |
| LegaLink Dallas | | PO Box 538481 | | | Atlanta | GA | 30353-8481 | |
| Legalpeople LLC | | 134 N. LaSalle Street, Ste 800 | | | Chicago | IL | 60602 | |
| LegalSource LS, LLC | | 601 West 5th St, Ste 240 | | | Los Angeles | CA | 90071 | |
| LEGG, BRIAN | | Address on File | | | | | | |
| Leif M Clark Consulting PLLC | | PO Box 2676 | | | San Antonio | TX | 78299 | |
| LEMME, MATTHEW | | Address on File | | | | | | |
| LEMUS, LUIS | | Address on File | | | | | | |
| LEMUS, LUIS C. | | Address on File | | | | | | |
| LENGE, ANDREW | | Address on File | | | | | | |
| Lenz & Staehelin | | Route de Chene 30 | CH-1211 | | Geneva | | 6 | Switzerland |
| LEO, EDWARD | | Address on File | | | | | | |
| Leonard Budyonny | | Address on File | | | | | | |
| LESLIE GILB TAPLIN LIVING TRUST | | Address on File | | | | | | |
| Leslie Kwang | | Address on File | | | | | | |
| Leung, Timothy | | Address on File | | | | | | |
| LEVENTON, ISAAC | | Address on File | | | | | | |
| Levinger PC | | 1445 Ross Avenue | Suite 2500 | | Dallas | TX | 75202 | |
| Levinger PC | | 1700 Pacific Ave Ste 2390 | | | Dallas | TX | 75201-7371 | |
| Levy & Salomao Advogados | | AV. Brog.Faria Lima, 2601-120Andar | CEP 01452-924 | | Sao Paulo-SP | | | BRAZIL |
| Lewis J. Shuster | | Address on File | | | | | | |
| Lewis Silkin LLP | | 5 Chancery Lane | Cliffords Inn | | London | | EC4A 1BL | United Kingdom |
| Lewis, Rice & Fingersh, L.C. | | 500 N Broadway, Ste 2000 | | | Saint Louis | MO | 63102-2147 | |
| Lexecon | | 332 S. Michigan Ave. | | | Chicago | IL | 60604-4397 | |
| LexisNexis | | PO Box 733106 | | | Dallas | TX | 75373-3106 | |
| Lexitas | | P.O. Box 734298 | Dept. 2012 | | Dallas | TX | 75373-4298 | |
| LHWL | | PO Box 38011 | | | Dallas | TX | 75238 | |
| Li, Chaoyi | | Address on File | | | | | | |
| Liberty CLO Ltd. | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | Worldwide Securities Services-Liberty CLO, Ltd. | Houston | TX | 77002 | |
| Liberty CLO Ltd. | Liberty CLO, Ltd. c/o Walkers SPV Limited | Walker House, PO Box 908GT, Mary Street | George Town, Grand Cayman | The Directors | Grand Cayman | | | Cayman Islands |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Liberty CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Liberty Life Assurance Co of Boston | | Group Benefits | PO Box 2658 | | Carol Stream | IL | 60132-2658 | |
| Liberty Life Assurance Company of Boston | | 100 Liberty Way | | | Dover | NH | 03821-0000 | |
| Liberty Mutual Insurance Company | | 175 Berkley St | | | Boston | MA | 02116-0000 | |
| LIDDLE, BRIANNE | | Address on File | | | | | | |
| Life Fitness | | 156 Oak Trail | | | Coppell | TX | 75019 | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA | | PO BOX 13701 | | | Philadelphia | PA | 19101-3701 | |
| Lighthouse Document Solutions | | 723 Main St | Suite 430 | | Houston | TX | 77002 | |
| Lighthouse Document Solutions | | 2520 Caroline | | | Houston | TX | 77004 | |
| Lightpath Capital, Inc. | | 1453 Third Street Promenade | Suite 315 | | Los Angeles | CA | 90401 | |
| Lincoln Discovery Services, Inc. | | 42 Nevada Ave | | | Long Beach | NY | 15161 | |
| Lincoln Financial Advisors Corp. | Attn Trish Kendregan, FBO David Chazin | 1300 S. Clinton Street, 1H-53 | | | Fort Wayne | IN | 46802 | |
| Lincoln Financial Advisors Corp. | | 1 Independent Drive | Suite 2901 | | Jacksonville | FL | 32202 | |
| Lincoln Financial Advisors Corp. | | Trish Kendregan | 1300 S. Clinton St, IH-53 | | Fort Wayne | IN | 46802 | |
| Lincoln Financial Advisors Corp | | 18400 Von Karman, Ste 400 | | | Irvine | CA | 92612 | |
| LINDEN, RICHARD | | Address on File | | | | | | |
| Lindsey McCully | | Address on File | | | | | | |
| Lindsey Norman | | Address on File | | | | | | |
| Linear Technologies | | 259 West 30th Street | Suite 201 | | New York | NY | 10001 | |
| Linear Technologies, Inc. | | 259 West 30th Street, Suite 201 | | | New York | NY | 10001 | |
| LinkedIn Corporation | | 62228 Collections Center Drive | | | Chicago | IL | 60693-0622 | |
| LinkedIn Corporation | | 1000 West Maude Avenue | | | Sunnyvale | CA | 94085-0000 | |
| Linsco/Private Ledger | | 9785 Towne Centre Dr | | | San Diego | CA | 92121-1968 | |
| LINVEL, SHANNON | | Address on File | | | | | | |
| Lipper Inc | | PO Box 417148 | | | Boston | MA | 02241 | |
| LiquidFiles | | PO Box 2403 | | | North Parramatta | NSW | 01750 | AUSTRALIA |
| Lisa Bock | | Address on File | | | | | | |
| Lisa Joseph | | Address on File | | | | | | |
| LISA RIDLEY | | 1717 McKinney Avenue | Suite 700 | | Dallas | TX | 75202 | |
| Litigation Paralegals, LLC | | 15 Golf Links Court | | | Kingwood | TX | 77339-5335 | |
| Litigation Research | | 901 Main St Concourse 121 | | | Dallas | TX | 75202 | |
| Litigation Solution, Inc. | | 15 Glf Lknks Ct | | | Kingswood | TX | 77339 | |
| Litigation Research | ATTN Litigation Research | | | | | | | |
| Little Forney Crossing, Ltd. | c/o Standridge Companies, Ltd | 3008 E. Hebron Pkwy, Bldg 300 | | | Carrollton | TX | 75010 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 96 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Litter Mendelson, PC | | PO Box 45547 | | | San Francisco | CA | 94145-0547 | |
| LIU, JEFF | | Address on File | | | | | | |
| Live Healthy America | | 1300 Walnut Street | Suite 100 | | Des Moines | IA | 50309 | |
| LiveWire Technologies, Inc. | | PO Box 550 | | | Little Elm | TX | 75068 | |
| Lizarazo, Mireya | | Address on File | | | | | | |
| Llaughing Llama Productions | Attn Robert Briscoe | 11 Moller St | | | Tenafly | NJ | 07670 | |
| LLOYD GROUP | | PO BOX 1374 MIDTOWN STATION | | | New York | NY | 10018 | |
| LLOYD, ANDREA K. | | Address on File | | | | | | |
| LNR and Associates | | 9426 Chimney Corner Lane | | | Dallas | TX | 75243 | |
| Loan Syndications and Trading | Attn Alicia Sansone | 366 Madison Ave, 15th Floor | | | New York | NY | 10017 | |
| Loan Syndications and Trading | ATTN LORENA DELUCA | 360 MADISON AVE, 16TH FLR | | | New York | NY | 10017 | |
| Locke Liddell & Sapp LLP | | PO Box 911541 | | | Dallas | TX | 75391-1-541 | |
| Lockton Companies of Dallas | | PO Box #671195 | | | Dallas | TX | 75267-1195 | |
| Loews Coronado Bay | Jessica Gaines | Loews Business Service Center | 424 Church Street, Suite 300 | | Nashville | TN | 37219 | |
| Loews Coronado Bay | Loews Coronado Bay Hotel | 4000 Coronado Bay Road | | | Coronado | CA | 92118 | |
| Loews Coronado Bay Resort | | 4000 Coronado Bay Road | | | Coronado | CA | 92118 | |
| Loews Las Vegas Resort | | 101 MonteLago Blvd | | | Henderson | NV | 89011 | |
| Logan Allin | | Address on File | | | | | | |
| LogMeIn, Inc. | | PO Box 50264 | | | Los Angeles | CA | 90074-0264 | |
| LogoLink | | 3001 LBJ Freeway Ste 103 | | | Dallas | TX | 75234 | |
| LOHRDING, BRIAN | | Address on File | | | | | | |
| Lolben, Tara | | Address on File | | | | | | |
| LOMBARDI, CHRISTOPHER | | Address on File | | | | | | |
| London Stock Exchange | | 10 Paternoster Square | | | London | | EC4M 7LS | United Kingdom |
| Longhorn Credit Funding, LLC | c/o Lord Securities Corp. | 48 Wall Street, 27th Floor | Attn Secretary | | New York | NY | 10005 | |
| Longhorn Credit Funding, LLC | | 874 Walker Rd, Ste C | | | Dover | DE | 19904-0000 | |
| Looper Reed & McGraw P.C. | | 1601 Elm St, Ste 4600 | | | Dallas | TX | 75201 | |
| Loren Jackson, District Clerk | Att Civil/Family Post Trial | PO Box 4651 | | | Houston | TX | 77210-4651 | |
| Lori Hosea | | Address on File | | | | | | |
| LOSEY, NICHOLAS | | Address on File | | | | | | |
| LOUGHLIN MEGHJI + COMPANY, INC. | | 148 MADISON AVE | 8TH FLOOR | | New York | NY | 10016 | |
| LOUGHLIN MEGHJI + COMPANY, INC. | | 220 West 42nd Street, 9th Floor | | | New York | NY | 10036 | |
| Louis Dessaint | | Address on File | | | | | | |
| LOVELACE, NAOMI | | Address on File | | | | | | |
| Lowenstein Sandler PC | | 65 Livingston Ave | | | Roseland | NJ | 07068 | |
| Loyal Source | | 3504 Lake Lynda Drive | Suite 175 | | Orlando | FL | 32817 | |
| Loyens Loeff | | Address on File | | | | | | |
| Loyola University- Barnett Professorship | ATTN Traci Wolff | Loyola University New Orleans | 7214 St. Charles Ave., Campus Box 909 | | New Orleans | LA | 70115 | |
| LPGP Connect | | 98 Mereway Road | | | Twickenham | | TW2 6RG | United Kingdom |

Page 84 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 97 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| LPL Financial | Attn Accounts Receivable | PO Box 5023038 | | | San Diego | CA | 92150-2308 | |
| LPL Financial | Attn Client Comp Dept | 4707 Executive Dr | | | San Diego | CA | 92121-3091 | |
| LPL Financial | Attn Comp Dept FBO Sid Lorio | 4707 Executive Drive | | | San Diego | CA | 92121-3091 | |
| Lucas Associates, Inc. | | PO Box 638364 | | | Cincinnati | OH | 45263-8364 | |
| Lucas Group | | PO Box 406672 | | | Atlanta | GA | 30384-6672 | |
| LUCAS VOILES | | Address on File | | | | | | |
| LUCHEY, BRITTANY | | Address on File | | | | | | |
| LUCIDITY CONSULTING GROUP LP | ATTN ROBIN PARSONS | 1300 LOOKOUT DRIVE | SUITE 225 | | Richardson | TX | 75082 | |
| Lucy Bannon | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| LUI, VINCENT | | Address on File | | | | | | |
| Luis Gomez | | Address on File | | | | | | |
| Luis Lopez | | Address on File | | | | | | |
| Lumension Security, Inc. | | PO Box 912806 | | | Denver | CO | 80291-2806 | |
| Luna, Jose | | Address on File | | | | | | |
| LUNNEY, BRITTANY | | Address on File | | | | | | |
| Lutheran High School | c/o Hannah Culburtson | 9531 Milltrail | | | Dallas | TX | 75238 | |
| Luu, Joye | | Address on File | | | | | | |
| LVOVICH, YARASLAV | | Address on File | | | | | | |
| Lynn Pinker Cox & Hurst, L.L.P. | | Lynn Pinker Cox & Hurst, LLP | 2100 Ross Avenue, Ste 2700 | | Dallas | TX | 75201 | |
| LYNN, PHAM & ROSS, LLP | Michael K. Hurst, Esq. | PO BOX 190466 | | | Dallas | TX | 75219-4129 | |
| Lynne Fiske | | Address on File | | | | | | |
| Lynx Capital, LLC | | 10900 Wilshire Blvd Ste 300 | | | Los Angeles | CA | 90024 | |
| Lyon Wealth Management Inc. | | 14646 N Kierland Blvd, Ste 125 | HighTower Advisors | | Scottsdale | AZ | 85254 | |
| LYON, RICHARD D. | | Address on File | | | | | | |
| Lyons Brewer Group | | 274 Riverside Ave | | | Westport | CT | 06880 | |
| LYRECO | | DEER PARK - DONNINGTON WOOD | | | TELFORD SHROPSHIRE | | TF2 7NB | United Kingdom |
| M Patrick McShan | | Address on File | | | | | | |
| M&M The Special Events Company | | 9500 W 55th St Ste A | | | Countryside | IL | 60525-7125 | |
| M&S Technologies | | 2727 LBJ Freeway | Suite 810 | | Dallas | TX | 75234 | |
| M/S Media Productions Inc | | 512 Main Street, Suite 1301 | | | Fort Worth | TX | 76102 | |
| MA Division of Unemployment Assistance | | Revenue Service | 19 StanfoRd St | | Boston | MA | 02114-2566 | |
| Mabry, Will | | Address on File | | | | | | |
| Macauley LLC | | 300 Delaware Avenue | Suite 760 | | Wilmington | DE | 19801 | |
| Macfarlanes | | 10 Norwich St | | | London | | EC4A 1BD | United Kingdom |
| MACKENZIE PARTNERS, INC | | 105 MADISON AVE | | | New York | NY | 10016 | |
| MacroMavens | | 180 W 20th Street | Suite 1700 | | New York | NY | 10011-0000 | |
| MacroMavens, LLC | | 180 W. 20th Street | Suite 1700 | | New York | NY | 10011 | |
| MADDEN, SAMUEL | | Address on File | | | | | | |
| MaddenSewell, LLP | | 1755 Wittington Place | Ste 300 | | Dallas | TX | 75234 | |
| MAH, JEFFERY | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 98 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| MAHMUD, GIBRAN | Address on File | | | | | | |
| MailFinance | 25881 Network Place | | | Chicago | IA | 60673-1258 | |
| Make-A-Wish Foundation of Metro New York | One Penn Plaza Ste 3600 | | | New York | NY | 10119 | |
| MALCOLM M KNAPP, INC | 46 E 92ND ST APT 5 | | | NEW YORK | NY | 10128-1371 | |
| Malone Maxwell Borson Architects | 718 North Buckner Blvd | Suite 400 | | Dallas | TX | 75218 | |
| Malwarebytes Corporation | 10 Almaden Blvd, 10th Floor | | | San Jose | CA | 95113 | |
| Management Recruiters of Tallahassee | 743 East Tennessee St | | | Tallahassee | FL | 32308 | |
| Management Search Inc | 245 Peachtree Center Ave | suite 2500 | | Atlanta | GA | 30303 | |
| Manaswi Sharma | Address on File | | | | | | |
| Manchester Grand Hyatt | PO Box 51914, Unit O | | | Los Angeles | CA | 90051-6214 | |
| MandateWire | ATTN Accounting | 1430 Broadway, 12th Floor | | New York | NY | 10018 | |
| Manesh Shah | Address on File | | | | | | |
| Mangia | 50 West 57th Street | | | New York | NY | 10019 | |
| Mangin, Andrew | Address on File | | | | | | |
| Manhattan Fire & Safety Corp. | 242 West 30th Street | 7th Floor | | New York | NY | 10001 | |
| Manhattan Information Systems, Inc. | 228 East 45th St | | | New York | NY | 10017 | |
| Manhattan Jewish Experience | Attn Danielle Yadaie | 131 West 86th Street, Floor 11 | | New York | NY | 10024 | |
| Manian, Meagan | Address on File | | | | | | |
| MANNING, ELLEN | Address on File | | | | | | |
| MANO, JONATHAN | Address on File | | | | | | |
| Mansoor Kazi | Address on File | | | | | | |
| Manuel Lopez | Address on File | | | | | | |
| Manulife Financial | PO Box 894764 | | | Los Angeles | CA | 90189-4764 | |
| MANZO, MARC C. | Address on File | | | | | | |
| MapAnything | 5200 77 Center Dr, Ste 400 | | | Charlotte | NC | 28217 | |
| Maples and Calder | UGLAND HOUSE | PO BOX 309GT S CHURCH ST | George Town | Grand Cayman | | | Cayman Islands |
| Maples Compliance Services (Cayman) Limi | PO Box 1093, Queensgate House | | | Grand Cayman | | KY1-1102 | Cayman Islands |
| Maples Fiduciary Services (Delaware) Inc. | 4001 Kennett Pike, Ste 302 | | | Wilmington | DE | 19807 | |
| MAPLES FINANCE | PO BOX 1093GT, QUEENSGATE HOUSE | SOUTH CHURCH ST | | GEORGE TOWN | | KY1-1104 | Cayman Islands |
| MaplesFS | attn Peter Huber | Boundry Hall, Cricket Square | PO Box 1093 | | Grand Cayman | | KY1-1102 | Cayman Islands |
| MaplesFS Service Company Limited | PO Box 1093 | Boundary Hall | | GRAND CAYMAN | | KY1-1102 | Cayman Islands |
| Marble Care Unlimited | 705 N. Bowser | #110 | | Richardson | TX | 75081 | |
| Marc Carlson | Address on File | | | | | | |
| MARC FABER LIMITED | SUITE 3311-3313 | TWO INTERNATIONAL FINANCE CENTER | 8 FINANCE STREET | CENTRAL HONG KONG | | | HONG KONG |
| MARC KLYMAN | Address on File | | | | | | |
| MARC MANZO | Address on File | | | | | | |
| March of Dimes | attn Megan Fletcher | 12660 Coit Road, Suite 200 | | Dallas | TX | 75251 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21   Entered 08/19/21 16:03:15   Page 99 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Marco Consulting, LLC | | 913 Westminster Way | | | Southlake | TX | 76092 | |
| Marcus Evans Inc. | | Address on File | | | | | | |
| Margaret Peggy Boswell | | Address on File | | | | | | |
| Margarita Masters | | 906 Sunnyvale Dr | | | Arlington | TX | 76010-2936 | |
| Maricopa County Treasurer | | 301 West Jefferson St | Rm 100 | | Phoenix | AZ | 85003 | |
| Marion A. Patterson | | Address on File | | | | | | |
| Mark Badros | | Address on File | | | | | | |
| Mark Divine | Koa Kai, LLC | PO Box 232307 | | | Leucadia | CA | 92023 | |
| Mark Drucker | | Address on File | | | | | | |
| Mark Gargiulo – CFO | | Address on File | | | | | | |
| MARK GELNAW | | Address on File | | | | | | |
| Mark K. Okada | Sullivan Cromwell LLP | Brian D. Glueckstein | 125 Broad Street | | New York | NY | 10004 | |
| Mark Kiniry | | Address on File | | | | | | |
| Mark Okada | | Address on File | | | | | | |
| Mark Patrick | | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commece Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Mark Rywelski | | Address on File | | | | | | |
| Mark Schonfeld, Esq. | Michael P. Hutchens, Esq. | Securities & Exchange Commission | 3 World Financial Center, Suite 400 | | New York | NY | 10281-1022 | |
| Mark Simmelkjaer | Regional Director | Address on File | | | | | | |
| Mark Turner | | Address on File | | | | | | |
| MARKET AXESS CORPORATION | | LOCKBOX # 30023, GENERAL POST OFC | PO BOX 30023 | | New York | NY | 10087-0023 | |
| Market Builders, Inc. | | 433 Begonia Ave. | | | Corona Del Mar | CA | 92625 | |
| Market76, Inc. | | 900 Grand Avenue | Suite A | | New Haven | CT | 06511 | |
| MarketResearch | | 6101 Executive Blvd Ste 110 | | | Rockville | MD | 20852 | |
| Markets Group | | 10 W. 37th St. | 7th Floor | | New York | NY | 10018 | |
| Markham Fine Jewelers | | 8355 Gaylord Pkwy | | | Frisco | TX | 75034 | |
| Markit | Attn John Taylor | IHS Markit Legal Department | IHS Markit, 450 West 33rd St, | 5th Floor | New York | NY | 10001 | |
| Markit Equities Limited | c.o Market Group Limited, Level 4 | Ropemaker Place, 25 Ropemaker Street | | | London | | EC2Y9LY | United Kingdom |
| Markit Group Limited | | 4th Flr Ropemaker Place | 25 Ropemaker St | | London | | EC2Y9LY | United Kingdom |
| Markit Group Limited | | Level 5 | 2 More London Riverside | | London | | SEI 2AP | United Kingdom |
| Markit Group Limited / Markit North Amer | | 2 More London Riverside | | | London | | SE12AP | United Kingdom |
| Markit North America Inc. | | 620 8th Ave | 35th floor | | New York | NY | 10018 | |
| Markit Valuations Ltd | | level 5 | 2 More London Riverside | | London | | SEI 2AP | United Kingdom |
| Markit WSO Corp | Kendra Montoya | 15 Inverness Way East | | | Englewood | CO | 80112 | |
| MARKIT WSO CORPORATION | | Three Lincoln Centre | 5430 LBJ Frwy, STe 800 | | Dallas | TX | 75240 | |
| MarksADR, LLC | | 4833 Rugby Ave, Ste 301 | | | Bethesda | MD | 20814 | |
| MARQUESS & ASSOCIATES | | 15441 KNOLL TRAIL | STE 280 LB1 | | Dallas | TX | 75248 | |
| Marriott Business Services | | PO Box 402642 | | | Atlanta | GA | 30384-2642 | |
| Mars Printing | | 17426 Studebaker Rd | | | Cerritos | CA | 90703 | |
| MARSHALL HESS | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 87 of 155

**Appx. 00373**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 100 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Marson, Stacy | | Address on File | | | | | | |
| Martin G. Salazar | | Address on File | | | | | | |
| Martin Podorsky | | Address on File | | | | | | |
| Martin, Andrew | | Address on File | | | | | | |
| Martin, Carla | | Address on File | | | | | | |
| MARTIN, DANIEL G. | | Address on File | | | | | | |
| MARTIN, WILLIAM | | Address on File | | | | | | |
| MARTINSON, MARK | | Address on File | | | | | | |
| Marty Mooney | | Address on File | | | | | | |
| Marval & OFarrell | | Av. Leandro N. Alem 928 | | | Buenos Aires | | 01001 | ARGENTINA |
| Mary Irving | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Mary Zappone | | Address on File | | | | | | |
| Maryam Rusch | | Address on File | | | | | | |
| Maryland Office of the Attorney General | Division of Securities | 200 Saint Paul Place | | | Baltimore | MD | 21202 | |
| Marzullo Reporting Agency | | 345 North LaSalle | No 1605 | | Chicago | IL | 60654 | |
| MASON, DEANA | | Address on File | | | | | | |
| MASON, FREDERIC | | Address on File | | | | | | |
| MASON, FREDERIC | | Address on File | | | | | | |
| Mass. Dept. of Revenue | Attn Bankruptcy Unit | PO Box 9564 | | | Boston | MA | 02114 | |
| MASSACHUSETTS DEPARTMENT OF REVENUE | | PO Box 7025 | | | Boston | MA | 02204 | |
| MASSACHUSETTS DEPARTMENT OF REVENUE | | PO BOX 7065 | | | Boston | MA | 02204-7065 | |
| Massachusetts Mutual Life Insurance Co | | 1295 State Street | | | Springfield | MA | 01111 | |
| Massand Capital, INC | | 130 East 18th Street #1P | | | New York | NY | 10003 | |
| MASSEYS LLP | | Hillgate House | 26 Old Bailey | | London | | EC4M 7OH | United Kingdom |
| MassMutual Financial Group | | 100 Bright Meadow Blvd | | | Enfield | CT | 06082 | |
| MassMutual Life Insurance Company | | 1000 N Central Expwy Ste 1000 | | | Dallas | TX | 75231-4177 | |
| Massoud Karimzadeh | | Address on File | | | | | | |
| Mateo Hix | | Address on File | | | | | | |
| MATRIX RESOURCES INC. | | PO BOX 101177 | | | Atlanta | GA | 30392 | |
| Matt Culler | | Address on File | | | | | | |
| MATT DUNHAM | | Address on File | | | | | | |
| Matt Hurd | | Address on File | | | | | | |
| Matt McElligott | | Address on File | | | | | | |
| Matt McElligott Photography | | 1409 E. Windsor Drive | | | Denton | TX | 76209 | |
| MATTHEW BENDER & CO, INC | | PO BOX 7247-0178 | | | Philadelphia | PA | 19170-0178 | |
| Matthew Berry, Esq. | Office of General Counsel | Federal Communications Commission | 445 12th Street, S.W. | | Washington | DC | 20554 | |
| Matthew DiOrio | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Matthew Garrett | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21  Entered 08/19/21 16:03:15  Page 101 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Matthew Gould | | Address on File | | | | | | |
| Matthew Kirst | | Address on File | | | | | | |
| Matthew Murphy | | Address on File | | | | | | |
| MATTHEW SCHNABEL | | Address on File | | | | | | |
| Matthew Selman | | Address on File | | | | | | |
| MATTHEW WHITLEY | | Address on File | | | | | | |
| Mattos Filho Veiga Filho Marry Jr. | | Address on File | | | | | | |
| Maurice Robinson & Associates LLC | | 880 Apollo St Suite 125 | | | El Segundo | CA | 90245 | |
| Maurice Robinson & Associates LLC | | 28 Dover Place | | | Manhattan Beach | CA | 90266 | |
| Mauricio Chavarriaga | c/o Highland Capital Mgmt. | 245 Park Ave, 24th Flr | | | New York | NY | 10167 | |
| Mauricio Chavarriaga | | Address on File | | | | | | |
| Mauricio Delgado | | Address on File | | | | | | |
| MAWN, CHRISTOPHER | | Address on File | | | | | | |
| Max Russell Phinney | | Address on File | | | | | | |
| Maxim Group, LLC | | 405 Lexington Ave #2 | | | New York | NY | 10174 | |
| MAY, DERRICK | | Address on File | | | | | | |
| MAYER BROWN LLP | | 2027 COLLECTION CENTER DR | | | Chicago | IL | 60693-0020 | |
| Mayer, Brown, Rowe & Maw LLP | | 1675 Broadway | | | New York | NY | 10019-5820 | |
| Mayeron, John | | Address on File | | | | | | |
| Mayo, Christopher L. | | Address on File | | | | | | |
| Mayors Intern Fellows Fund | | The Dallas Foundation | 3963 Maple Ave, Suite 390 | | Dallas | TX | 75219 | |
| Mazzeo Song & Bradham LLP | | 708 Third Ave, 19th Fl | | | New York | NY | 10017 | |
| MBA Reporting Services, Inc. | | 555 Republic Drive | 2nd Floor | | Plano | TX | 75074 | |
| MBM Advisors, Inc. | | 440 Louisiana #2600 | | | Houston | TX | 77002 | |
| McCaffety, Christopher | | Address on File | | | | | | |
| McCague Borlack LLP | | 130 King St. West Suite 2700 | | | Toronto | ON | M5XIC7 | CANADA |
| McClung, Elizabeth B. | | Address on File | | | | | | |
| McCormick, Robert | | Address on File | | | | | | |
| McCormick, Robert | | Address on File | | | | | | |
| McDaniel, Patrick | | Address on File | | | | | | |
| McDermett, Bonner | | Address on File | | | | | | |
| McDermott Investment Services, LLC | | 44 E Broad St, FL 2 | | | Bethlehem | PA | 18018 | |
| McDermott Will & Emery LLP | | Lockbox - New York PO Box 7247-6755 | | | Philadelphia | PA | 19170-6755 | |
| McDermott Will & Emery LLP | | PO BOX 2995 | | | Carol Stream | IL | 60132-2995 | |
| McDermott Will & Emery LLP | | 227 West Monroe Street | | | Chicago | IL | 60606-5096 | |
| McDermott Will & Emery LLP | | P.O. Box 6043 | | | Chicago | IL | 60680-6043 | |
| McElroy & Company P.C. | | 16415 Addison Road | Suite 800 | | Addison | TX | 75001 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 102 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| MCFARLANE, PETER A | | Address on File | | | | | | |
| MCFARLING, BRANDON | | Address on File | | | | | | |
| MCGRANER, MATTHEW | | Address on File | | | | | | |
| McGraner, Matthew | | Address on File | | | | | | |
| MCGREGOR, MICHELLE | | Address on File | | | | | | |
| McGuireWoods LLP | | 800 E. Canal Street | | | Richmond | VA | 23219-3916 | |
| McIntosh Search Incorporated | | 6310 Lemmon Ave Ste 202 | | | Dallas | TX | 75209 | |
| McKay, Brad | | Address on File | | | | | | |
| MCKEE NELSON LLP | | ONE BATTERY PARK PLAZA | 34TH FLR | | New York | NY | 10004 | |
| McKool Smith | | 300 Crescent Court | Suite 1500 | | Dallas | TX | 75201 | |
| McKool Smith P.C. | c/o Travis DeArman | 300 Crescent Court Ste 1500 | | | Dallas | TX | 75201 | |
| McKool Smith, P.C. | Gary Cruciani, Esq. | McKool Smith | 300 Crescent Court, Suite 1500 | | Dallas | TX | 75201 | |
| McLagan Partners | | PO Box 905188 | | | Charlotte | NC | 28290-5188 | |
| McLagan Partners | | PO Box 100137 | | | Pasadena | CA | 91189-0137 | |
| McLagan Partners Inc (Aon McLagan) | | 1600 Summer Street | | | Stamford | CT | 06905-0000 | |
| McLagen Partners, Inc. | Stephen Reuther | 4 Overlook Point | | | Lincolnshire | IL | 60069 | |
| MCLOCHLIN, MICHAEL | | Address on File | | | | | | |
| MCLOCHLIN, MICHAEL P. | | Address on File | | | | | | |
| McMains, Aubree | | Address on File | | | | | | |
| McMillan Binch Mendelsohn | | Brookfield Place Suite 4400 | Bay Wellington Tower | | Toronto | ON | M5J2T3 | CANADA |
| McNamara, John | | Address on File | | | | | | |
| McRedmond, Edward | | Address on File | | | | | | |
| MCS Capital LLC c/o STC, Inc. | | 233 North Prospect St., Ste. 202 | | | Hagerstown | MD | 21740 | |
| Meadows Collier Reed Cousins & Blau LLP | | 901 Main St. Suite 3700 | | | Dallas | TX | 75202 | |
| MEANS, BRADLEY | | Address on File | | | | | | |
| Medanich, Michael | | Address on File | | | | | | |
| Mediant Communications Inc. | Mediant Communications | 400 Regency Forest Drive, Suite 200 | | | Cary | NC | 27518 | |
| Mediant Communications LLC | | PO Box 29976 | | | New York | NY | 10087-9976 | |
| MedPost Urgent Care-East Dallas | | 9540 Garland Rd | Suite C408 | | Dallas | TX | 75218-5004 | |
| Meeks, Lucas | | Address on File | | | | | | |
| MEETINGZONE LTD | | OXFORD HOUSE | OXFORD ROAD | | Thame | | OX9 2AH | United Kingdom |
| MEGAN MCGEE | | Address on File | | | | | | |
| Meister Seelig & Fein LLP | | 125 Park Avenue | 7th Floor | | New York | NY | 10017 | |
| MELENDEZ, HELDER | | Address on File | | | | | | |
| MELISSA LOPEZ | | Address on File | | | | | | |
| Melody Po | | Address on File | | | | | | |
| Mendelsohn, Rosenzweig, Shact | | 1000 Sherbrooke St West, 27th Flr | | | Montreal | QC | H3A 3G4 | CANADA |
| Mendenhall, Brad | | Address on File | | | | | | |
| MERCER (US) INC. | John Dempsey | 1166 Avenue of the Americas | | | New York | NY | 10036 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 103 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Mercer Consumer | Attn DV1 Fin | PO Box 310293 | | | Des Moines | IA | 50331-0293 | |
| Mercer Consumer | Wells Fargo Bank | c/o Regulus Lockbox Services 310293 | | | Des Moines | IA | 50309 | |
| Merchants Automotive Group, Inc. | | 1278 Hooksett Road | 666 Walnut Street | | Hooksett | NH | 03106 | |
| Merchants Automotive Group, Inc. | | PO Box 16415 | | | Hooksett | NH | 03106-6415 | |
| Mercy Corps | | P. O. Box 2669, Dept W | | | Portland | OR | 97208-2669 | |
| MEREDITH HERZFELD | | Address on File | | | | | | |
| Mergent, Inc. | | PO Box 403123 | | | Atlanta | GA | 30384-3123 | |
| Mergermarket | | 895 Broadway | 4th Floor | | New York | NY | 10003 | |
| Mergermarket (US) Limited (trading as X) | | 1501 Broadway | Suite 801 | | New York | NY | 10036-0000 | |
| MERGERMARKET LTD | | 11 West 19th Street | 2nd Floor | | New York | NY | 10011 | |
| MERGERMARKET LTD | | 3 E 28th ST | 4th FLR | | New York | NY | 10016 | |
| Merit Court Reporters | | 307 W 7th Street | Ste 1350 | | Fort Worth | TX | 76102 | |
| Merope Pentogenis | | Address on File | | | | | | |
| Merrill Communications LLC | | One Merrill Circle | | | Saint Paul | MN | 55108 | |
| Merrill Communications LLC | | CM-9638 | | | Saint Paul | MN | 55170-9638 | |
| MERRILL CORPORATION | | CM-9638 | | | Saint Paul | MN | 55170 | |
| MERRILL LYNCH | Attn Blake Bollinger | 569 Brookwood Village | Ste 501 | | Birmingham | AL | 35209 | |
| MERRILL LYNCH | Attn Chad Kulm | 110 S Phillips Ave, Ste 101 | | | Sioux Falls | SD | 57104 | |
| MERRILL LYNCH | Attn Jason Aversa | 3100 Hingston Ave | | | Egg Harbor Township | NJ | 08234 | |
| MERRILL LYNCH | Attn Lynae Carr | 1221 McKinney Street, Ste 3900 | | | Houston | TX | 77010 | |
| MERRILL LYNCH | Attn Megan Arnold | 13355 Noel Rd, 7th Floor | | | Dallas | TX | 75240 | |
| MERRILL LYNCH | Attn Monty Willhite | 60 E SOuth Temple St, #200-61 | | | Salt Lake City | UT | 84111 | |
| MERRILL LYNCH | Attn Robert Luther | 1100 Canal Street | | | The Villages | FL | 32162 | |
| MERRILL LYNCH | Attn Tiffany Contreras | 17225 El Camino Real, Ste 200 | | | Houston | TX | 77058 | |
| MERRILL LYNCH | C/O Girard Kovarik & Assoc | 101 N. Clematis St., Ste 200 | City Place II, 14th Flr | | West Palm Beach | FL | 33401 | |
| MERRILL LYNCH | | 185 Asylum Street | | | Hartford | CT | 06103 | |
| MERRILL LYNCH | | NJ2-140-02-01 | 1400 Merrill Lynch Drive | | Pennington | NJ | 08534 | |
| MERRILL LYNCH | | 4802 Deer Lake Dr E | CMS CBRU FL9-801-01-02 | | Jacksonville | FL | 32246 | |
| MERRILL LYNCH | | CMS CBRU FL9-801-01-02 | 4802 Deer Lake Dr E | | Jacksonville | FL | 32246 | |
| MERRILL LYNCH | | 21805 FIELD PARKWAY STE 220 | | | DEER PARK | IL | 60010 | |
| Merrill Lynch Valuations LLC | Attn Richard Eimbinder | 15514 Collections Center Drive | | | Chicago | IL | 60693 | |
| Merry Phengvath | | 450 E 4th Street | | | Brooklyn | NY | 11218 | |
| MERS Educational Conference | ATTN Bob Rust | Municipal Empee Retirement Syst of LA | 7937 Office Park Blvd | | Baton Rouge | LA | 70809 | |
| MESERVE, NICHOLAS | | Address on File | | | | | | |
| Meta-e Discovery LLC | Paul McVoy | Meta-e Discovery | Six Landmark Square, 4th Floor | | Stamford | CT | 06901 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Meta-e Discovery, LLC | Attn Paul H. McVoy | 93 River Street | | | Milford | CT | 06460 | |
| Meta-e Discovery, LLC | Morrison Cohen LLP | Attn Joseph T. Moldovan and Sally Siconolfi | 909 Third Avenue | | New York | NY | 10022 | |
| Metalogix International | | PO Box 83304 | | | Pittsburgh | PA | 15250 | |
| METHVIN, JAMES | | Address on File | | | | | | |
| Metlife | Attn Placings Unit | 1300 Hall Blvd. | | | Bloomfield | CT | 06002 | |
| Metlife | Attn Retail Life & DI Operations | 18210 Crane Nest Dr, 5th Floor | Placings Unit | | Tampa | FL | 33647 | |
| Metlife | | PO BOX 371487 | | | Pittsburgh | PA | 15250-7487 | |
| Metlife Investors USA Insurance Company | | PO Box 13863 | | | Philadelphia | PA | 19101-0000 | |
| MetLife SBC | | 5400 LBJ Freeway | Suite 1100 | | Dallas | TX | 75240 | |
| MetLife SBC | | PO Box 804466 | | | Kansas City | MO | 64180-4466 | |
| Metro Attorney Service Inc. | | 305 Broadway, 14th Flr | | | New York | NY | 10007 | |
| Metro-Repro, Inc. | | PO Box 560092 | | | Dallas | TX | 75356-0092 | |
| METT | Attn Jana Clemans | Pioneer Natural Resources | 5205 N. OConnor Blvd, Suite 200 | | Irving | TX | 75039-3746 | |
| Meunier, Marc | | Address on File | | | | | | |
| MGL Consulting Corp. | | 10077 Grogans Mills Rd Ste 300 | | | The Woodlands | TX | 77380 | |
| MHA Petroleum Consultants LLC | | 730 17th Street | Suite 410 | | Denver | CO | 80202 | |
| MIAO, EUGENE | | Address on File | | | | | | |
| MICHAEL & TERESA OLSON TRUST | | Address on File | | | | | | |
| Michael Blackburn | | Address on File | | | | | | |
| MICHAEL COLVIN | | Address on File | | | | | | |
| Michael Cummings | | Address on File | | | | | | |
| MICHAEL DEVICO | | Address on File | | | | | | |
| Michael Hasenauer | | Address on File | | | | | | |
| Michael Jeong | | Address on File | | | | | | |
| MICHAEL KELLY | | Address on File | | | | | | |
| MICHAEL LANE CUISINE. INC | | 8409 PICKWICK # 112 | | | Dallas | TX | 75225 | |
| MICHAEL LATHAM | | Address on File | | | | | | |
| Michael Ly | | Address on File | | | | | | |
| Michael Malone Architects, Inc | | 5646 Milton St Suite 705 | | | Dallas | TX | 75206 | |
| Michael Morris | | Address on File | | | | | | |
| Michael P Zarrilli | | Address on File | | | | | | |
| MICHAEL PAGE INTERNATIONAL | | 8 BATIN RD | | | Slough Berkshire | | SL1 3SA | United Kingdom |
| MICHAEL PASSMORE | | Address on File | | | | | | |
| MICHAEL PETERSON | | Address on File | | | | | | |
| Michael Phillips | | Address on File | | | | | | |
| Michael R. Coker Company | | 2700 Swiss Ave Suite 100 | | | Dallas | TX | 75204 | |
| Michael Radovan | | Address on File | | | | | | |
| Michael S. Held | | Address on File | | | | | | |
| MICHAEL SHERIDAN | | Address on File | | | | | | |
| Michael Sorell | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| MICHAEL SZKODZINSKI | | Address on File | | | | | | |
| MICHAEL T DALBY IRA | | Address on File | | | | | | |
| Michael Teplitsky | | Address on File | | | | | | |
| MICHAEL WANG | | Address on File | | | | | | |
| MICHAEL WILCHER | | Address on File | | | | | | |
| Micheal Paul Donaldson | | Address on File | | | | | | |
| Michelle French, Tax A/C | | Address on File | | | | | | |
| Michigan Department of Treasury | | PO Box 30774 | | | Lansing | MI | 48909-8274 | |
| Mick Law P.C. | | 816 South 169th Street | | | Omaha | NE | 68118 | |
| Microsoft Corporation | | 1950 N Stemmons Fwy | Suite 5010 | | Dallas | TX | 75207 | |
| Microsoft Corporation and Microsoft Licensing GP, a Subsidiary of Microsoft Corporation | David P. Papiez | Fox Rothschild LLP | 1001 4th Ave, Suite 4500 | | Seattle | WA | 98154 | |
| Microsoft Corporation and Microsoft Licensing GP, a Subsidiary of Microsoft Corporation | Microsoft Corporation | Amber Brazier, Associate Paralegal | One Microsoft Way | | Redmond | WA | 98052 | |
| Microsoft Services | | One Microsoft Way | | | Redmond | VA | 98052 | |
| Microsoft Services | | PO Box 844510 | | | Dallas | TX | 75284-4510 | |
| MICRO-TEL | | 3700 Holcomb Bridge Rd | Suite 5 | | Peachtree Corners | GA | 30092 | |
| Mike Brennan | | Address on File | | | | | | |
| Mike Brohm | | Address on File | | | | | | |
| Mike Doyle | | Address on File | | | | | | |
| Mike Hurley | | Address on File | | | | | | |
| Mike Sharkey | | Address on File | | | | | | |
| Mike Wolbert | | Address on File | | | | | | |
| Milbank, Tweed, Hadley & McCloy LLP | | 1 CHASE MANHATTAN PLAZA | | | New York | NY | 10005-1413 | |
| Milberg LLP | | One Pennsylvania Plaza | 49th Floor | | New York | NY | 10119 | |
| Miles Littlefield | | Address on File | | | | | | |
| Miller & Chevalier Chartered | | P.O. Box 758604 | | | Baltimore | MD | 21275-8604 | |
| Miller Buckfire & Co, LLC | | 601 Lexington Ave | | | New York | NY | 10022 | |
| Miller Korzenik Sommers Rayman LLP | | 1501 Broadway Ste 2015 | | | New York | NY | 10036-5600 | |
| MILLER, DEBORAH | | Address on File | | | | | | |
| Miller, Egan, Molter & Nelson LLP | | 4514 Cole Avenue | Suite 1200 | | Dallas | TX | 75205 | |
| Miller, Egan, Molter & Nelson LLP | | 1402 San Antonio St. | Suite 100 | | Austin | TX | 78701 | |
| MILLIMAN CONSULTANTS AND ACTUARIES | | 1550 LIBERTY RIDGE DR | STE 200 | | WAYNE | PA | 19087-5572 | |
| Mills, James | | Address on File | | | | | | |
| MILTENBERGER, WILLIAM | | Address on File | | | | | | |
| Mindy Billinghurst | | Address on File | | | | | | |
| Miner, Christopher | | Address on File | | | | | | |
| Minnesota Revenue | | Mail Station 1260 | | | Saint Paul | MN | 55145-1260 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 106 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Minnesota State Treasurer | | Minnesota Department of Commerce | 85 7th Place East, Suite 500 | | Saint Paul | MN | 55101 | |
| Miramar OSC | Attn Leslie Henger | 11763 Ashlock Way | | | San Diego | CA | 92131 | |
| Mirani, Parth | | Address on File | | | | | | |
| MISLAV TOLUSIC | | Address on File | | | | | | |
| Mississippi Secretary of State | Business Regulation & Enforcement Div | 125 S. Congress Street | | | Jackson | MS | 39201 | |
| MISSISSIPPI STATE TAX COMMISSION | | PO BOX 1033 | | | Jackson | MS | 39215 | |
| Missouri Department of Revenue | | PO Box 3020 | | | Jefferson City | MO | 65105-3020 | |
| MISSOURI DIRECTOR OF REVENUE | TAXATION BUREAU | PO BOX 3365 (573)751-4541 | | | Jefferson City | MO | 65105-3365 | |
| Missouri Secretary of State | | Securities Division | 600 West Main Street, 2nd Floor | | Jefferson City | MO | 65101 | |
| Mitchell A. Harwood & Partners | | 791 Park Ave Ste 4B | | | New York | NY | 10021 | |
| Mitchell, Krysta | | Address on File | | | | | | |
| Mitchener Turnipseed | | Address on File | | | | | | |
| MITTS, BRIAN | | Address on File | | | | | | |
| MJL ENTERPRISE | | PO BOX 852563 | | | Richardson | TX | 75085 | |
| MLF Lex Serv LP | | 4350 East West Highway | | | Bethesda | MD | 20814 | |
| MODERN HEALTHCARES DAILY DOSE | | CIRCULATION DEPT | 1155 GRATIOT AVE | | Detroit | MI | 48207-2912 | |
| Mohring, Christopher | | Address on File | | | | | | |
| Molecular Insights | | 160 Second Street | | | Cambridge | MA | 02142 | |
| Moloney Securities | | 13537 Barrett Parkway Drive | Suite 300 | | Manchester | MI | 63021 | |
| Monarch Investigation Inc | | PO Box 292265 | | | Lewisville | TX | 75029-2265 | |
| Money.Media, Inc. | Attn Accounting | 330 Hudson Street | 7th Floor | | New York | NY | 10013 | |
| Monster, Inc. | | PO Box 90364 | | | Chicago | IL | 60696-0364 | |
| MONSTERTRAK | | 14372 COLLECTIONS CENTER DR | | | Chicago | IL | 60693 | |
| Moodys Analytics | | 395 Oyster Point Blvd | Suite 215 | | South San Francisco | CA | 94080 | |
| Moodys Analytics | | PO BOX 102597 | | | Atlanta | GA | 30368-0597 | |
| Moodys Analytics | | PO BOX 116714 | | | Atlanta | GA | 30368-0597 | |
| Moodys Analytics | | PO Box 116647 | | | Atlanta | GA | 30368-6647 | |
| Moodys Analytics, Inc. | Attn Christopher R. Belmonte and Pamela A. Bosswick | c/o Duane Morris LLP | 230 Park Avenue, Suite 1130 | | New York | NY | 10169 | |
| Moodys Analytics, Inc. | Sue McGeehan | 7 World Trade Center | 250 Greenwich Street | | New York | NY | 10007 | |
| Moodys Analytics, Inc. | | 7 World Trade Center | | | New York | NY | 10007-0000 | |
| Moodys Investor Service | | PO Box 102597 | | | Atlanta | GA | 30368-0597 | |
| Moodys Investors Service, Inc. | Attn Christopher R. Belmonte and Pamela A. Bosswick | c/o Duane Morris LLP | 230 Park Avenue, Suite 1130 | | New York | NY | 10169 | |
| Moodys Investors Service, Inc. | Sue McGeehan | 7 World Trade Center | 250 Greenwich Street | | New York | NY | 10007 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 107 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Moodys Investors Service, Inc. | Sue McGeehan | VP, Collections, Finance Dept. | 7 World Trade Center at 250 Greenwich Street | | New York | NY | 10007 | |
| MOORE & VAN ALLEN PLLC | | 100 NORTH TRYON ST | STE 4700 | | Charlotte | NC | 28202-4003 | |
| MOORE, CALEB | | Address on File | | | | | | |
| MOORE, WILLIAM C. | | Address on File | | | | | | |
| Morgan Lewis & Bockius LLP | | PO Box 8500 S-6050 | | | Philadelphia | PA | 19178-6050 | |
| Morgan Stanley | Attn Accounts Receivable | PO Box 860 | | | New York | NY | 10008-0860 | |
| Morgan Stanley | Attn Adam Razov | 855 Franklin Ave. | | | Garden City | NY | 11530 | |
| Morgan Stanley | Attn Diana Sigona | 1585 Broadway, 23rd Flr | | | New York | NY | 10036 | |
| Morgan Stanley | Attn Jonathan Canter | 10960 Wilshire Blvd, Ste 2000 | | | Los Angeles | CA | 90024 | |
| Morgan Stanley | Attn Margaret Oshea-NW Managers Mtg | 1585 Broadway, 23rd Floor | | | New York | NY | 10036 | |
| Morgan Stanley | Attn MF Billing Dept. | 1300 Thames St, 4th Flr | | | Baltimore | MD | 21231 | |
| Morgan Stanley | Attn Michael Lawrence | 6037 La Flocha | | | Rancho Santa Fe | CA | 92067 | |
| Morgan Stanley | Attn Michelle Dolan | 2 Jericho Plaza | | | Jericho | NY | 11753 | |
| Morgan Stanley | Attn Robyn Owens | 370 17th Street, Suite 2800 | | | Denver | CO | 80202 | |
| Morgan Stanley | | 111 S. Pfingsten Road | Suite 200 | | Deerfield | IL | 60015 | |
| Morgan Stanley | | 200 Crescent Court | Ste 900 | | Dallas | TX | 75201 | |
| Morgan Stanley | | 14850 N Scottsdale Rd | Ste 600 | | Scottsdale | AZ | 85254 | |
| Morgan Stanley | | 733 Bishop Street | Ste 2800 | | Honolulu | HI | 96813 | |
| MORGAN, JOHN | | Address on File | | | | | | |
| MORGANS, JONATHAN | | Address on File | | | | | | |
| MORLEY CAMPBELL | | | | | | | | |
| Morningstar Inc. | | 22 W Washington St | | | Chicago | IL | 60602-0000 | |
| Morningstar, Inc. | | 2668 Paysphere Circle | | | Chicago | IL | 60674 | |
| Morningstar, Inc. | | 135 South LaSalle St Dept. 2668 | | | Chicago | IL | 60674-2668 | |
| Morningstar, Inc. | | 5133 Innovation Way | | | Chicago | IL | 60682-0051 | |
| Morris James LLP | | 500 Delaware Avenue | Suite 1500 | PO Box 2306 | Wilmington | DE | 19899-2306 | |
| Morris, Manning, & Martin LLP | | 1600 Atlanta Financial Center | 3343 Peachtree Road, NE | | Atlanta | GA | 30326-1044 | |
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | | 1201 NORTH MARKET ST | PO BOX 1347 | | Wilmington | DE | 19899-1347 | |
| MORRIS, NICHOLS, ARSHT &TUNNELL LLP | William M. Lafferty | Kevin M. Coen | 1201 N. Market Street | | Wilmington | DE | 19801 | |
| Morrison & Foerster | | 1290 Ave of the Americas | | | New York | NY | 10104-0050 | |
| Morrison Cohen LLP | Attn Joseph T. Moldovan and Sally Siconolfi | 909 Third Avenue | | | New York | NY | 10022 | |
| Morstad | | 79 East Putnam Ave | Outdoor Traders Building | | Greenwich | CT | 06830 | |
| Mortensen, Christopher | | Address on File | | | | | | |
| Morton, David C. | | Address on File | | | | | | |
| MOSTLY SMOKED | | VITTORIA HOUSE | 2A TOWCESTER RD | | BOW London | | E3 3ND | United Kingdom |
| Motus Red LLC | | 7018 Hursey | | | Dallas | TX | 75205 | |
| Mourant Ozannes | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

**Appx. 00381**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Move Solutions, Ltd. | | 1473 Terre Colony Ct, Dept DA | | | Dallas | TX | 75212 | |
| MoveWorks, Inc. | | 4945 Sharp Street | | | Dallas | TX | 75247 | |
| MP Advisory | | 43 Vila Nova Pauliceia | | | Sao Paulo-SP | | | BRAZIL |
| MPulse Maintenance Software | | PO Box 22906 | | | Eugene | OR | 22906 | |
| MQ Services Ltd. | | Chancery Hall | 52 Reid St | | Hamilton | | HM 12 | BERMUDA |
| MQ Services Ltd. | | PO Box HM 1737 | | | Hamilton | | HM GX | BERMUDA |
| MQ Services Ltd. | | PO BOX HM 809 | | | Hamilton | | HM GX | BERMUDA |
| MRB Research Partners Inc. | | 122 East 42nd Street | Suite 2310 | | New York | NY | 10168 | |
| MRI Contract Staffing | | 5151 Beltline Rd | Suite 550 | | Dallas | TX | 75254 | |
| MRI Contract Staffing | | 88276 Expedite Way | | | Chicago | IL | 60695-0001 | |
| MS Society of Long Island | | 40 Marcus Dr. | Suite 100 | | Melville | NY | 11747 | |
| MSCI Inc. | | PO Box 414631 | | | Boston | MA | 02241-4631 | |
| MSCI Inc. | | 7 World Trade Center | 250 Greenwich St, 49th floor | | New York | NY | 10007-0000 | |
| MT State Auditor, Securities Comm. | | 840 Helena Avenue | | | Helena | MT | 59601 | |
| MTV Staying Alive Foundation | | 1305 Wycliff Ave | Suite 120 | | Dallas | TX | 75207 | |
| Muck Holdings LLC | Attn Paul Haskel | c/o Crowell & Moring LLP | 590 Madison Avenue | | New York | NY | 10022 | |
| MULLER, MARY | | Address on File | | | | | | |
| Multichannel News | | PO Box 5667 | | | Harlan | IA | 51593-1167 | |
| MUNDASSERY, APPU | | Address on File | | | | | | |
| Munger Tolles & Olson LLP | | 355 South Grand Ave | | | Los Angeles | CA | 90071-1560 | |
| Munsch Hardt Kopf & Harr, P.C. | Davor Rukavina, Esq., Thomas D. Berghman, Esq., Julian P. Vasek, Esq, | 500 N. Akard St., Ste. 3800 | | | Dallas | TX | 75201 | |
| Munsch Hardt Kopf & Harr, P.C. | Davor Rukavina, Julian P. Vasek | 3800 Ross Tower | 500 N. Akard Street | | Dallas | TX | 75201 | |
| Murano Connect LP | | 252 West 38th Street | Suite 402 | | New York | NY | 75202-2790 | |
| Murder Mystery Texas | | 6304 Innsbrooke Dr | | | Arlington | TX | 10018 | |
| Murphy, George | | Address on File | | | | | 76016 | |
| MURPHY, MATTHEW | | Address on File | | | | | | |
| MURRAY HILL CENTER SOUTHWEST INC | | 14185 Dallas Parkway Suite 1200 | | | Dallas | TX | 75254 | |
| MURRAY, ANDREW | | Address on File | | | | | | |
| Murray, Mason | | Address on File | | | | | | |
| Murray, Wesley | | Address on File | | | | | | |
| Muscular Dystrophy Association | Attn Janice | PO Box 38 | | | Terrell | TX | 75160 | |
| Musser, Carley | | Address on File | | | | | | |
| Muthu Dorai | | Address on File | | | | | | |
| Mxtoolbox | | 12710 Research Blvd | Ste 225 | | Austin | TX | 78759 | |
| MY HOUSE OF FINE EATS & CATERING | | 2025 PROMENADE CENTER | | | Richardson | TX | 75080 | |
| Myers Bigel Sibley & Sajovec, P.A. | | PO Box 37428 | | | Raleigh | NC | 27627 | |
| Myers Park Country Club | | 2415 Roswell Avenue | | | Charlotte | NC | 28209 | |
| Myron Corp. | | PO Box 660888 | | | Dallas | TX | 75266-0888 | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 109 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| N.C. DEPARTMENT OF REVENUE | | PO BOX 25000 | | | Raleigh | NC | 27640-0002 | |
| N9NE Group Dallas-Ghostbar | | 2440 Victory Park Ln, 33rd Floor | | | Dallas | TX | 75219 | |
| NAI OLYMPIA PARTNERS | | 320 NORTH MERIDIAN ST | STE 400 | | Indianapolis | IN | 46204 | |
| NAIFA - Greater Washington DC | | 600 State Street | Suite A | | Cedar Falls | IA | 50613 | |
| Nalin Yogasundram | | Address on File | | | | | | |
| Namaro Graphics Designs | | PO Box 148 | | | Rhinebeck | NY | 12572 | |
| NANCY SMITH-WELLS, CSR | | PO BOX 1284 | | | South Pasadena | CA | 91031 | |
| NAPE Expo, LP | | PO Box 224531 | | | Dallas | TX | 75222 | |
| NAPONIC, JILL | | Address on File | | | | | | |
| NARAYAN HEGDE | | Address on File | | | | | | |
| NARY RADHAKRISHNAN | | Address on File | | | | | | |
| NASD Regulation, Inc. | | 701 Market St | W8705 c/o Mellon Bank, Rm 3490 | | Philadelphia | PA | 19106 | |
| NASD, CRD-IARD | | PO BOX 7777-W8705 | | | Philadelphia | PA | 19175-8705 | |
| NASD, CRD-IARD | | PO BOX 7777-W9995 | | | Philadelphia | PA | 19175-9995 | |
| Nasdaq Information, LLC | | LBX# 80200 | PO Box 780200 | | Philadelphia | PA | 19178-0200 | |
| Nasdaq OMX | C/O Wachovia Bank | #90200 | PO Box 8500 | | Philadelphia | PA | 19178-0200 | |
| NASDAQ Stock Market | | PO Box 7777 W1555 | | | Philadelphia | PA | 19106 | |
| NASH, CLARISSA | | Address on File | | | | | | |
| Nasher Sculpture Center | | 2001 Flora Street | | | Dallas | TX | 75201 | |
| NASKAR, ANJALI | | Address on File | | | | | | |
| NASKAR, ANJALI | | Address on File | | | | | | |
| NASP | Attn Michelle | 727 15th Street, NW | Suite 750 | | Washington | DC | 20005 | |
| Natalie Ulo | | Address on File | | | | | | |
| Nathan Brooks | | Address on File | | | | | | |
| Nathan Burns | | Address on File | | | | | | |
| Nathan Hall | | Address on File | | | | | | |
| Nathan Hukill | | Address on File | | | | | | |
| NATHAN SPEICHER | | Address on File | | | | | | |
| NATHAN ZANG | | Address on File | | | | | | |
| NATIONAL COMPLIANCE SERVICES, INC. | | 355 NE 5TH AVE | STE 4 | | Delray Beach | FL | 33483 | |
| National Corporate Research Ltd | | 122 E 42nd St Fl 18 | | | New York | NY | 10168-1899 | |
| National Depo | | P.O. Box 404743 | | | Atlanta | GA | 30384-4743 | |
| NATIONAL ECONOMIC RESEARCH ASSOC. INC | | PO BOX 29677 | GENERAL POST OFFICE | | New York | NY | 10087-9677 | |
| National Economic Research Associate | | PO Box 7247-6754 | | | Philadelphia | PA | 19170-6754 | |
| National Financial Services Corp. | ATTN Emily Ivers-Mailzone ZE7F | 82 Devonshire St. | | | Boston | MA | 02109 | |
| National Financial Services, LLC | Attn Fl Operational Accounting | 100 Salem St, Mail Zone O1S | | | Smithfield | RI | 02917 | |
| National Financial Services, LLC | Attn Thomas Smith-Vaughan | 82 Devonshire Street | | | Boston | MA | 02109 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 110 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| NATIONAL FLAG & DISPLAY CO. | | 22 W 21ST ST | | | New York | NY | 10010 | |
| National MS Society | Attn Cara Harting | 2105 Luna Rd, Ste 390 | | | Carrollton | TX | 75006 | |
| National Multiple Sclerosis Society | | PO Box 4527 | | | New York | NY | 10163 | |
| National Regulatory Services | | 33443 Treasury Center | | | Chicago | IL | 60694-3400 | |
| National Stripper Well Association | | PO Box 18336 | | | Oklahoma City | OK | 73154 | |
| National Trust Management Services | Accounts Receivable | 7957 Wellington Dr | | | Warrenton | VA | 20186 | |
| National Trust Management Services | | PO Box 3322 | | | Warrenton | VA | 20188 | |
| National Valuation Consultants, Inc. | | 7807 E. Peakview Ave, Ste 200 | | | Centiennial | CO | 80111 | |
| Nationwide Business Concepts | | 1439 W. Chapman Avenue | #64 | | Orange | CA | 92868 | |
| Nationwide Services | | P.O. Box 23099 | | | Ft. Lauderdale | FL | 33307 | |
| Natixis North America LLC | | 1251 Avenue of the Americas | | | New York | NY | 10020 | |
| NAU, STEVEN | | Address on File | | | | | | |
| NautaDutilh NV | | Postbus 7113, 1007 JC Amsterdam, Beethovenstraat 400 | | | Amsterdam | | 1082 PR | Netherlands |
| NAVEJAS, MARIANA | | Address on File | | | | | | |
| NAVIGANT CONSULTING INC | | 4511 PAYSPHERE CIRCLE | | | Chicago | IL | 60674 | |
| Navigent 3, LLC | | PO Box 5370 | | | Wayland | MA | 01778 | |
| Navigent 3, LLC | | 1737 Washington st | | | E. Bridgwater | MA | 02333 | |
| NC Office of the Secretary of State | | 2 South Salisbury Street | Old Revenue Complex | | Raleigh | NC | 27601 | |
| NEAR EARTH LLC | | 945 WEST ROAD | HOYT DAVIDSON | | New Canaan | CT | 06840 | |
| Nebraska Department of Banking & Finance | Bureau of Securities | 1526 K Street, Suite 300 | | | Lincoln | NE | 68508-2732 | |
| NEEL, MITRA | | Address on File | | | | | | |
| Neil Desai | | Address on File | | | | | | |
| Neil Menard | | Address on File | | | | | | |
| NELL GWYNN HOUSE APARTMENTS LTD | | SLOANE AVE | | | London | | SW3 3AX | United Kingdom |
| Nelson, Caitlin | | Address on File | | | | | | |
| NELSON, KRAMER | | Address on File | | | | | | |
| NELSON, KRAMER | | Address on File | | | | | | |
| NEOFUNDS BY NEOPOST | | PO BOX 30193 | | | Tampa | FL | 33630-3193 | |
| Nesmith, Christopher | | Address on File | | | | | | |
| NESTLE WATERS POWWWOW | | PO BOX 727 | | | CAMBERLEY | | GU15 9WZ | United Kingdom |
| Netapp | | 1395 Crossman Ave | | | Sunnyvale | CA | 94089-0000 | |
| Netherland, Sewell & Associates, Inc. | | 2100 Ross Avenue | Suite 2200 | | Dallas | TX | 75201 | |
| Netherland, Swell & Associates, Inc. | | 1601 Elm St. Suite 4500 | | | Dallas | TX | 75201 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 98 of 155

**Appx. 00384**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 111 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Netpro Computing Inc. | | 4747 N. 22nd St. #400 | | | Phoenix | AZ | 85016-4774 | |
| NetWrix Corporation | Accounts Receivable | 1460 Manning Parkway | | | Powell | OH | 43065 | |
| NEVADA COACHES, LLC | | 1550 S INDUSTRIAL RD | | | Las Vegas | NV | 89102 | |
| Nevada Dept of Taxation | | PO Box 52609 | | | Phoenix | AZ | 85072-2609 | |
| Nevada Secretary of State | | Securities Division | 2250 Las Vegas Blvd N Ste 400 | | N Las Vegas | NV | 89030-5873 | |
| NEW CONCEPT | | CROOKED COTTAGE, NEWCHAPEL RD | LINGFIELD | | SURREY | | RH7 6BJ | United Kingdom |
| New Edge Networks | | Unit 10 PO Box 5000 | | | Portland | OR | 97208-5000 | |
| NEW ERA | | 2935 Talisman | | | Dallas | TX | 75229 | |
| New Hampshire Department of State | Bureau of Securities Regulation | 107 North Main Street | Room 204, State House | | Concord | NH | 03301-4951 | |
| New Horizons Computer Learning Center | | PO Box 671164 | | | Dallas | TX | 75267-1164 | |
| New Mexico Securities Division | | P. O. Box 25101 | | | Santa Fe | NM | 87504 | |
| NEW YORK CITY DEPARTMENT OF FINANCE | | 345 ADAMS ST | | | Brooklyn | NY | 11201 | |
| NEW YORK CITY DEPARTMENT OF FINANCE | | PO Box 3931 | | | New York | NY | 10008-3931 | |
| NEW YORK CITY DEPARTMENT OF FINANCE | | PO Box 5150 | | | Kingston | NY | 12402-5150 | |
| New York Financial Writers Association | | PO Box 338 | | | Ridgewood | NJ | 07451-0338 | |
| New York State Corporation Tax | NYS Corporate Tax | Processing Unit | P.O. Box 22093 | | Albany | NY | 12201 | |
| New York State Department of Law | | New York Office of the Attorney General | 120 Broadway, 23rd Floor | | New York | NY | 10271 | |
| New York State Department of State | | Misc. Records Bureau | 41 State St | | Albany | NY | 12231 | |
| New York State Income Tax | | W A HARRIMAN CAMPUS | | | Albany | NY | 12227 | |
| New York State Income Tax | | Extension Request PO Box 4125 | | | Binghamton | NY | 13902-4126 | |
| Newbridge Financial Inc. | ATtn Scott Weeks - Accountant | 5200 Town Center Circle | Tower 1, Ste 306 | | Boca Raton | FL | 33486 | |
| Newbridge Securities Corporation | Attn Robert Spitler-CFO | 1451 W Cypress Creek Rd, Suite 204 | | | Ft. Lauderdale | FL | 33309 | |
| Newbridge Securities Corporation | | 5200 Town Center Circle Tower 1 | Ste 306 | | Boca Raton | FL | 33486 | |
| NewOak Advisors LLC | | 485 Lexington Ave, 25th Floor | | | New York | NY | 10017 | |
| NewOak Capital | | 485 Lexington Ave, 25th flr | | | New York | NY | 10017 | |
| News Communications | | 4th Flr, Chinyang Bldg | 90-3 Chungjeongno 2-ga, | | Seodamun-gu | | 120-012 | SOUTH KOREA |
| NexBank | John Danilowicz | 2515 McKinney Ave | Ste 1100 | | Dallas | TX | 75201 | |
| NexBank Capital Advisors | | 2515 McKinney Ave, Ste 1100 | | | Dallas | TX | 75201 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| NexBank Capital, Inc., NexBank Securities, Inc., NexBank Title, Inc. and NexBank | Jason M. Rudd and Lauren K. Drawhorn | Wick Phillips Gould & Martin, LLP | 3131 McKinney Avenue, Suite 500 | | Dallas | TX | 75204 | |
| NEXBANK SECURITIES, INC | | 2515 McKinney | Suite 1700 | | Dallas | TX | 75201 | |
| NEXBANK SECURITIES, INC | | 13455 NOEL RD | 22ND FL | | Dallas | TX | 75240 | |
| NexBank SSB | dba NexBank Credit Services | Grant Smith | 2515 McKinney Ave. | 11th Floor | Dallas | TX | 75201 | |
| NexBank SSB | | 2515 McKinney Ave. Suite 1100 | | | Dallas | TX | 75201 | |
| NEXBANK, SSB | ATTN MARCIA SANDS | 13455 NOEL RD | STE 2220 | | Dallas | TX | 75240 | |
| NexPoint Advisers, L.P. | Attn Davor Rukavina, Esq. and Julian P. Vasek, Esq. | Munsch Hardt Kopf & Harr, P.C. | 3800 Ross Tower | 500 N. Akard Street | Dallas | TX | 75202-2790 | |
| NexPoint Advisors, L.P. | | 200 Crescent Court | Suite 700 | | Dallas | TX | 75201 | |
| NexPoint Latin America Opportunities Fund | K&L Gates LLP | Stephen G. Topetzes | 1601 K Street, NW | | Washington | DC | 20006 | |
| NexPoint Latin America Opportunities Fund | K&L Gates LLP | James A. Wright III | State Street Financial Center | One Lincoln Street | Boston | MA | 02111-2950 | |
| NexPoint Latin America Opportunities Fund | Stephen G. Topetzes | K&L Gates LLP | PO Box 54977 | | Washington, | DC | 02006 | |
| Nextel Communications | | | | | Los Angeles | CA | 90054-0977 | |
| NexVest, LLC | Jason Rudd | 3131 McKinney Ave Suite 100 | | | Dallas | TX | 75204 | |
| NexVest, LLC | | 2515 McKinney Ave Suite 1100 | | | Dallas | TX | 75201 | |
| Ney Castro | | Address on File | | | | | | |
| NGO, HONGVIEN | | Address on File | | | | | | |
| Nguyen, Hung | | Address on File | | | | | | |
| NGUYEN, KRISTINE | | Address on File | | | | | | |
| NGUYEN, TONY KHOI | | Address on File | | | | | | |
| NH Dept of State | Bureau of Securities Regulation | 107 N. Main St., State House Room 204 | | | Concord | NH | 03301 | |
| Nicholas Headley | | Address on File | | | | | | |
| Nicholas Headley | | Address on File | | | | | | |
| NICHOLAS OLENEC | | Address on File | | | | | | |
| Nicholas T. Meserve | | Address on File | | | | | | |
| NICHOLAS TRUYENS | | Address on File | | | | | | |
| NICK ALFERMANN | | Address on File | | | | | | |
| Nick Meserve | | Address on File | | | | | | |
| NICK PAULEIT | | Address on File | | | | | | |
| Nickey L. Oates Company | | 25 Highland Park Village | Suite 100 | | Dallas | TX | 75205 | |
| Nicklas, James | | Address on File | | | | | | |
| NICODEMUS WINATA | | 14181 NOEL RD | | | Dallas | TX | 75254 | |
| Nicole Lacues | | Address on File | | | | | | |
| Nikolayev, Yegor | | Address on File | | | | | | |
| Niles Chura | | Address on File | | | | | | |
| Niles K Chura | | Address on File | | | | | | |
| NILSEN, CHRISTOPHER | | Address on File | | | | | | |
| Niray Batavia | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 113 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Nisen & Elliott LLC | | 200 West Adams St | | | Chicago | IL | 60606 | |
| Nitro Software, Inc. | | 150 Spear St Ste 1500 | | | San Francisco | CA | 94105-5115 | |
| NIXON PEABODY LLP | ATTN BOBBI HALL | 100 SUMMER ST | | | Boston | MA | 02110 | |
| NJ DIVISION OF TAXATION | REVENUE PROCESSING CENTER | PO BOX 642 | PART | | Trenton | NJ | 08646-0642 | |
| NMS Communications LLC | | 443 12th Street | 5C | | Brooklyn | NY | 11215 | |
| NMS MANAGEMENT, INC. | | 500 NORTH BROADWAY | STE 236 | | Jericho | NY | 11753 | |
| NOAH MAYER | | Address on File | | | | | | |
| NOBLE, SHELBY | | Address on File | | | | | | |
| Noel, Kirby | | Address on File | | | | | | |
| Noelle Williams | | Address on File | | | | | | |
| Nonna Knows Catering | | 1931 Market Center Blvd Apt 1323 | | | Dallas | TX | 75207-3500 | |
| Noonmark Capital | | 9 Hall Avenue | | | Larchmont | NY | 10538 | |
| NORRIS, DUSTIN | | Address on File | | | | | | |
| NORRIS, DUSTIN | | Address on File | | | | | | |
| North Carolina Department of Revenue | | PO Box 25000 | | | Raleigh | NC | 27640-0520 | |
| North Ridge Securities | | 112 Madison Ave, 5th Floor | | | New York | NY | 10016 | |
| NorthPark Center | | 8687 North Central Expressway | | | Dallas | TX | 75225 | |
| Northwestern University | Attn Maureen Fenty | 1800 Sherman Avenue, Suite 400 | | | Evanston | IL | 60201 | |
| Norton Rose | | Address on File | | | | | | |
| Notable Solutions, Inc. | | 9715 Key West Avenue | Suite 200 | | Rockville | MD | 20850 | |
| Nouveau | | 2270 Springlake Rd | Suite 400 | | Dallas | TX | 75234 | |
| Nova Engineering, Inc | | 2625 N. Josey Lane, Suite 112 | | | Carrollton | TX | 75007 | |
| Novack and Macey LLP | | 100 N Riverside Plaza | | | Chicago | IL | 60606-1501 | |
| NOW Advisors | | 1320 Greenway Dr | Suite 758 | | Irving | TX | 75038 | |
| NPB Financial Group, LLC | | 3500 W. Olive Avenue | Suite 300 | | Burbank | CA | 91505 | |
| NTR Review | | 407 East maple Street | | | Cumming | GA | 30040 | |
| Numara Software Inc | | PO Box 102280 | | | Atlanta | GA | 30368-2280 | |
| Numara Software Inc | | PO BOX 933754 | | | Atlanta | GA | 31193-3754 | |
| Nutter, McClennen & Fish, LLP | Attn Ian Roffman | Seaport West | 155 Seaport Blvd | | Boston | MA | 02210 | |
| NWCC, LLC | c/o of Michael A. Battle, Esq. | Barnes & Thornburg, LLP | 1717 Pennsylvania Ave N.W. Ste 500 | | Washington | DC | 20006-4623 | |
| NWCC, LLC | James Peterson | 375 Park Avenue, 36th Floor | | | New York | NY | 10152 | |
| NWCC, LLC | Jonathan D. Sundheimer | Barnes and Thornburg LLP | 11 S. Meridian St. | | Indianapolis | IN | 46204 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 3644 | | | New York | NY | 10008 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 3646 | | | New York | NY | 10008 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 3922 | General Corporation Tax | | New York | NY | 10008-3922 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 3931 | | | New York | NY | 10008-3931 | |
| NYC DEPARTMENT OF FINANCE | | 59 Maiden Lane, 19th Floor | | | New York | NY | 10038-4502 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 114 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| NYC DEPARTMENT OF FINANCE | | PO Box 5040 | | | Kingston | NY | 12402-5040 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 5060 | | | Kingston | NY | 12402-5060 | |
| NYC DEPARTMENT OF FINANCE | | PO Box 5070 | | | Kingston | NY | 12402-5070 | |
| NYC DEPARTMENT OF FINANCE | | PO BOX 5100 | | | Kingston | NY | 12402-5150 | |
| NYC DEPARTMENT OF FINANCE | | PO BOX 5150 | | | Kingston | NY | 12402-5150 | |
| NYC FIRE DEPARTMENT | | CHURCH STREET STATION | PO BOX 840 | | New York | NY | 10008-0840 | |
| NYEMASTER GOODE LAW FIRM | | 700 WALNUT | STE 1600 | | Des Moines | IA | 50309-3899 | |
| NYIAC | | 150 E. 42nd St. 17th Floor | | | New York | NY | 10017 | |
| NYS Assessment Receivables | | PO Box 4127 | | | Binghamton | NY | 13902-4127 | |
| NYS Unemployment Insurance | | PO Box 4301 | | | Binghamton | NY | 13902-4301 | |
| NYS Workers Comp Board DB | | One Exchange Plaza | 55 Broadway Suite 201 | | New York | NY | 10006 | |
| NYSE ARCA, LLC | | PO Box 223529 | | | Pittsburgh | PA | 15251-2529 | |
| NYSE MARKET, INC | | Grand Central Station | PO BOX 4695 | | New York | NY | 10163 | |
| NYSE MARKET, INC | | Box #223695 | | | Pittsburgh | PA | 15251-2695 | |
| NYSE MARKET, INC | | BOX #4006 | PO BOX 8500 | | Philadelphia | PA | 19178-4006 | |
| NYSIF Disability Benefits | DCC | 1 Watervliet Ave. EXT | | | Albany | NY | 12206 | |
| NYSIF Disability Benefits | | PO Box 5239 | | | New York | NY | 10008-5239 | |
| Oak Tree Securities, Inc. | | 4049 First Street | Suite 129 | | Livermore | CA | 94551-4949 | |
| Ober, Kaler, Grimes & Shriver | | 100 Light Street | | | Baltimore | MD | 21202 | |
| Objective Group, Inc. | | 201 South Biscayne Blvd, 28th Floor | | | Miami | FL | 33131 | |
| OBJECTIVE PARADIGM CORPORATION | ATTN RYAN POLLOCK | 805 N MILWAUKEE AVE STE 300 | | | Chicago | IL | 60622 | |
| OBRIEN, JUSTIN | | Address on File | | | | | | |
| OBRIEN, MICHAEL J | | Address on File | | | | | | |
| OC CRUISER, Inc | | 1439 W Chapman Ave #260 | | | Orange | CA | 92868 | |
| Oce Imagistics Inc | | PO Box 856193 | | | Louisville | KY | 40285 | |
| OConnor, Shannon | | Address on File | | | | | | |
| OConnors | | 3800 Buffalo Speedway | Ste 500 | | Houston | TX | 77098 | |
| Office Depot, Inc | | DEPT 56-4201182804 | PO BOX 689020 | OFFICE DEPOT CREDIT PLAN | Des Moines | IA | 50368-9020 | |
| Office Depot, Inc | | Dept. 56 - 4201182804 PO Box 9020 | | | Des Moines | IA | 50368-9020 | |
| Office Depot, Inc | | PO Box 70025 | | | Los Angeles | CA | 900740025 | |
| OFFICE EQUIPMENT FINANCE SERVICES | | PO BOX 790448 | | | Saint Louis | MO | 63179-0448 | |
| Office Expo | | 2025A Midway Rd | | | Carrollton | TX | 75006 | |
| Office of Secretary of State | | 1019 Brazos Street | | | Austin | TX | 78701 | |
| Office of the Attorney General | Michael B. Mukasey, Esq. | U.S. Department of Justice | 950 Pennsylvania Avenue, N.W. | | Washington | DC | 20530-0001 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 102 of 155

**Appx. 00388**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 115 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Office of the Attorney General | | Securities Division | 200 St Paul Place | | Baltimore | MD | 21202 | |
| Office of the General Counsel | Re Prime Brokerage Services | Jefferies LLC | 520 Madison Avenue, 16th Floor | | New York | NY | 10022 | |
| Office of the General Counsel | | Pension Benefit Guaranty Corp. | 1200 K Street, N.W. | | Washington | DC | 20005-4026 | |
| Office of the Securities Comm. KS | Securities Division | 1300 SW Arrowhead Rd | | | Topeka | KS | 666044019 | |
| OGLETREE DEAKINS | | PO BOX 89 | | | Columbia | SC | 29202 | |
| OGLETREE DEAKINS | | 918 S PLEASANTBURG DR (29607) | | | Greenville | SC | 29602 | |
| Ogletree Deakins Nash Smoak & Stewart PC | | P.O. Box 89 | | | Columbia | SC | 29202 | |
| OHANNA, DAVID | | Address on File | | | | | | |
| OHC Advisors Inc | | 12060 SW 129th CT Ste 200 | | | Miami | FL | 33186-4582 | |
| Ohio Division of Securities | | 77 South High Street | 22nd Floor | | Columbus | OH | 43215 | |
| Oil & Gas Information Systems | | 5801 Edwards Ranch Road | Suite 200 | | Fort Worth | TX | 76109 | |
| Oil & Gas Journal | | Pennwell Corporation | PO Box 4362 | | Chicago | IL | 60680-4207 | |
| Oil and Gas Investor | | PO Box 3001 | | | Northbrook | IL | 60065-3001 | |
| Okada, Luke | | Address on File | | | | | | |
| Oklahoma Department of Securities | | Oklahoma Department of Securities | 204 N. Robinson Ave., Ste. 400 | | Oklahoma City | OK | 73102-7001 | |
| Oklahoma Independent Petroleum Assoc. | | 500 N.E. 4th Street | | | Oklahoma City | OK | 73104 | |
| OKLAHOMA TAX COMMISSION | GENERAL COUNSELS OFFICE | 100 N. BROADWAY AVE, SUITE 1500 | | | OKLAHOMA CITY | OK | 73102 | |
| OKLAHOMA TX COMMISSION | | PO BOX 26930 | | | Oklahoma City | OK | 73126-0930 | |
| OKOLITA, MATTHEW | | Address on File | | | | | | |
| Okta Inc | | 100 1st St Fl 6 | | | San Francisco | CA | 94105-4632 | |
| Okta, Inc. | | 301 Brannan St | Suite 100 | | San Francisco | CA | 94107 | |
| Old Republic National Title Ins. Co. | | 8201 Preston Rd | Suite 450 | | Dallas | TX | 75225 | |
| Olender Reporting, Inc. | | 1522 K St NW Ste 720 | | | Washington | DC | 20005 | |
| Olive & Ivy | | 7135 E Camelback Rd | No 195 | | Scottsdale | AZ | 85251 | |
| OLIVER CASTELINO | | Address on File | | | | | | |
| OLSON,CANNON, GORMLEY, & DESRUISSEAUX | | 9950 WEST CHEYENNE AVE | | | Las Vegas | NV | 89129 | |
| OMS-DALLAS | | Prestonwood Tower | 5151 Beltline Rd. | Suite 550 | Dallas | TX | 75254 | |
| OMelveny & Myers LLP | | 400 South Hope St, 18th Floor | | | Los Angeles | CA | 9007-12899 | |
| Omgeo LLC | | 2967 Collections Center Dr | | | Chicago | IL | 60693 | |
| On Course Promotion | | 6865 Pear Tree Dr | | | Carlsbad | CA | 92011 | |
| Onelogin, Inc. | | 848 Battery St | | | San Francisco | CA | 94111-1504 | |
| On-Site Sourcing, Inc. | | PO Box 75495 | | | Baltimore | MD | 21275 | |
| Opal Financial Group | | 132 W 36th St Rm 200 | | | New York | NY | 10018-8840 | |
| Open Text Inc. | c/o JP Morgan Lockbox | 24685 Network Place | | | Chicago | IL | 60673-1246 | |
| Opentext | | 275 Frank Tompa Drive | | | Waterloo | ON | N2L 0A1 | Canada |

Highland Capital Management, L.P.
Case No. 19-34054

Page 103 of 155

**Appx. 00389**

175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| OppenheimerFunds, Inc. | Attn Accounts Payable | 6803 S. Tucson Way, Bldg 2 Garden Level | | | Centennial | CO | 80112 | |
| Options Group | | 121 East 18th St | | | New York | NY | 10003 | |
| Options Price Reporting Authority | | PO Box 95718 | | | Chicago | IL | 60694-0001 | |
| Opus 2 International Inc | Mr Matthew Finnecy | 5th Floor, 5 New Street Square | | | London | | EC4A 3BF | United Kingdom |
| Opus 2 International, Inc. | Matthew Finnecy, Credit Controller | 5 New Street Square | | | London | | EC4A 3BF | United Kingdom |
| Opus 2 International, Inc. | | 100 Pine Street | Suite 560 | | San Francisco | CA | 94111 | |
| ORACLE AMERICA, INC | | PO BOX 71028 | | | Chicago | IL | 60694-1028 | |
| ORACLE AMERICA, INC | | PO Box 203448 | | | Dallas | TX | 75320-3448 | |
| Oracle America, Inc. | | 500 Oracle Parkway | | | Redwood Shores | CA | 94065-0000 | |
| Oracle America, Inc., Successor in Interest to Sun Microsystems | Shawn M. Christianson, Esq. | Buchalter, a Professional Corporation | 55 2nd St., 17th Fl. | | San Francisco | CA | 94105 | |
| Oracle Healthcare Advisors Inc. | | 12060 SW 129th Ct Ste 201 | | | Miami | FL | 33186-4582 | |
| Orbis Marketing, Inc. | | 21550 Oxnard Street | Suite 850 | | Woodland Hills | CA | 91367 | |
| Orchard Group Productions | | 301 Park Forest Ct | | | Hurst | TX | 76053 | |
| Oregon Department of Revenue | | 955 Center St NE | | | Salem | OR | 97301 | |
| ORENT, COURTNEY | | Address on File | | | | | | |
| Organizational Talent | | 3752 Colliers Dr | | | Edgewater | MD | 21037 | |
| Orrick, Herrington & Sutcliffe LLP | | 4253 Collections Center Dr | | | Chicago | IL | 60693 | |
| OSED Investments, LLC | | 8951 Synergy Dr., Ste 225 | | | McKinney | TX | 75070 | |
| OUTLOOKSOFT CORPORATION | | ONE STAMFORD PLAZA | 11TH FLR | | Stamford | CT | 06901-3281 | |
| OutSource Management | c/o Cathy Wylet, Meeting Planner | 14410 N. 10th Place | | | Phoenix | AZ | 85022 | |
| Ouyang, Kaixi | | Address on File | | | | | | |
| OVATION TRAVEL GROUP | ATTN ANDREA KELLY | 71 FIFTH AVE | 11TH FLR | | New York | NY | 10003 | |
| Ovis Creative | | 483 10th Ave | Suite 230 | | New York | NY | 10018 | |
| Owens, David | | Address on File | | | | | | |
| OXANA BROWN | | 59 Franklin Street | Suite 5R | | New York | NY | 10013 | |
| Oxer Technologies | | 1750 Pennsylvania Ave Ste 100 | | | Washington | DC | 20006-4506 | |
| PA Consulting Group | | PO Box 71364 | | | Philadelphia | PA | 71364 | |
| PACER Service Center | | PO BOX 70951 | | | Charlotte | NC | 28272-0951 | |
| PACER Service Center | | PO Box 277773 | | | Atlanta | GA | 30384-7773 | |
| PACER Service Center | | P.O. Box 5208 | | | Portland | OR | 97208-5208 | |
| Pachulski Stang Ziehl & Jones LLP | | 10100 Santa Monica Blvd | Ste 1300 | | Los Angeles | CA | 90067 | |
| Pacific Life Annuities & Mutual Funds | | 700 Newport Center Drive | | | Newport Beach | CA | 92660-6397 | |
| Pacugo Catering | | 1215 Viceroy Drive | | | Dallas | TX | 75247 | |
| Packerland Brokerage Services Inc. | | 432 Security Blvd | | | Green Bay | WI | 54313-9709 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 104 of 155

**Appx. 00390**

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PADILLA, ANDREW | | Address on File | | | | | | |
| Paessler | | Thurn-und-Taxis-Str. 14 | | | Nuremberg | | 90411 | Germany |
| Pageant Media | | Dunstan House 14a St Cross St | | | London | | EC1N 8XA | United Kingdom |
| PAIPANANDIKER, CHET | | Address on File | | | | | | |
| Palico LLC | | 420 Lexington Avenue | Suite 1425 | | New York | NY | 10170 | |
| Palisade Capital Management | | One Bridge Plaza | Suite 695 | | Fort Lee | NJ | 07024 | |
| PALLEY, RENNICK | | Address on File | | | | | | |
| Palm Beach Investment Research Grp Inc. | | 13638 Via Flora | Suite A | | Delray Beach | FL | 33484 | |
| PALMER, JAMES | | Address on File | | | | | | |
| PAM Capital Funding LP | c/o Maples & Calder | PO Box 309, Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| PAM Capital Funding LP | c/o Queensgate SPV Services Limited | PO Box 1093GT / Suzanne St. Thomas | Compass Center, 2nd Flr, Crewe Road | George Town | Grand Cayman | | | Cayman Islands |
| PAM Capital Funding, LP / Ranger Asset M | c/o Maples and Calder, PO Box 309 | Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| PamCo Cayman Ltd. | c/o Maples & Calder | PO Box 309, Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| PamCo Cayman Ltd. | c/o Queensgate SPV Services Limited | PO Box 1093, Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| PamCo Cayman Ltd. / Ranger Asset Managem | c/o Maples and Calder, PO Box 309 | Ugland House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Panhandle Producers Royalty Ownrs Assoc. | | 3131 Bell Street | Suite 209 | | Amarillo | TX | 79106 | |
| PaperCut Software International Pty Ltd | | 308 SW 1st Ave Ste 300 | | | Portland | OR | 97204-3432 | |
| PAR Plumbing | | 60 N. Prospect Avenue | | | Lynbrook | NY | 11563-1395 | |
| Paradigm | | 360 Park Avenue South | 16th Floor | | New York | NY | 10010 | |
| Paradise Bakery and Cafe | | 13710 Dallas Parkway, Suite H | | | Dallas | TX | 75240 | |
| Paradox Sports | | 710 10th Street | Suite 200 | | Golden | CO | 80401 | |
| Paragon Photocopying, Co. | | 1700 Commerce Ste 200 | | | Dallas | TX | 75201 | |
| PARCELS INC | | PO BOX 27 | | | Wilmington | DE | 19899 | |
| PARIVEDA SOLUTIONS | | PO BOX 671060 | | | Dallas | TX | 75267 | |
| Park Cities Quail 2016 Dinner & Auction | | 25 Highland Park Village | Suite 100-417 | | Dallas | TX | 75205 | |
| Park, Jun | | Address on File | | | | | | |
| Parker Poe Adams & Bernstein LLP | | 401 S. Tryon St, Ste 3000 | Three Wells Fargo Center | | Charlotte | NC | 28202 | |
| Parkinsons Disease Foundation | | Gift Processing Center | PO Box 96268 | | Washington | DC | 20090-6268 | |
| Parkland Securities, LLC | ATtn Blayne Andersen | 300 Parkland Plaza | | | Ann Arbor | MI | 48103 | |
| Parks Coffee | | PO Box 110209 | | | Carrollton | TX | 75011-0209 | |
| Parkway Bent Tree Partners, Ltd | | 17130 Dallas Parkway | Suite 240 | | Dallas | TX | 75248 | |
| Parmentier, Andrew | | Address on File | | | | | | |
| Parmentier, Andrew | | Address on File | | | | | | |
| Parmentier, Andrew | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 118 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PARNELL, CATHERINE | | Address on File | | | | | | |
| PARS International Corp | Attn Permissions A/R | 253 West 35th Street, 7th Floor | | | New York | NY | 10001 | |
| Parth Shah | | Address on File | | | | | | |
| Partner Engineering & Science, Inc. | | 2154 Torrance Blvd | Suite 200 | | Torrance | CA | 90501 | |
| Partridge Snow & Hahn, LLP | | 40 Westminster Street | Suite 1100 | | Providence | RI | 02903 | |
| Party Frills | | 219 E White St | | | Anna | TX | 75409 | |
| PASSMORE, MICHAEL | | Address on File | | | | | | |
| Pat & Emmitt Smith Charities | | 16000 North Dallas Pkwy | Suite 550N | | Dallas | TX | 75248 | |
| Pate & Knarr | | PO Box 1907 | | | Oklahoma City | OK | 73101-1907 | |
| PATEL, VISHAL | | Address on File | | | | | | |
| PATRICK BOYCE | | Address on File | | | | | | |
| Patrick Bressler | | Address on File | | | | | | |
| Patrick Conner | | Address on File | | | | | | |
| Patrick Daugherty | c/o Thomas A. Uebler | McCollom DEmilio Smith Uebler LLC | 2751 Centerville Rd #401 | | Wilmington | DE | 19808 | |
| Patrick Daugherty | c/o Thomas A. Uebler, Esq. | McCollom DEmilio Smith Uebler LLC | 2751 Centerville Rd #401 | | Wilmington | DE | 19808 | |
| Patrick Daugherty | | Address on File | | | | | | |
| Patrick Daugherty/Andrew K. York | Dylan O. Drummond | Gray Reed & McGraw, LLP | 1601 Elm Street | Suite 4600 | Dallas | TX | 75201-7212 | |
| Patrick Hagaman Daugherty | Jason Kathman | 2701 Dallas Parkway Suite 590 | | | Plano | TX | 75093 | |
| Patrick Hagaman Daugherty | Pronske and Kathman | Jason P. Kathman | 2701 Dallas Parkway Suite 590 | | Plano | TX | 75093 | |
| Patrick Hagaman Daugherty | | Address on File | | | | | | |
| Patrick J. Elverum | | Address on File | | | | | | |
| PATRICK KELLY | | Address on File | | | | | | |
| PATRICK MARK | | Address on File | | | | | | |
| Patina Corporation | | 45 Broadway | Ste 1440 | | New York | NY | 10006 | |
| Patton Boggs LLP | | 2550 M St NW | | | Washington | DC | 20037 | |
| Paul D. Kauffman | | Address on File | | | | | | |
| Paul D. Peterson, Ltd. | | 3040 Woodbury Drive | | | Woodbury | MN | 55129 | |
| Paul DiMartino | | Address on File | | | | | | |
| Paul Hastings, Janofsky & Walker LLP | | 55 Second St, 24th Flr | | | San Francisco | CA | 94105-3441 | |
| Paul Kauffman | Jason P. Kathman | Pronske & Kathman, P.C. | 2701 Dallas Parkway, Suite 590 | | Plano | TX | 75093 | |
| PAUL KAUFFMAN | | Address on File | | | | | | |
| Paul Kauffman | | Address on File | | | | | | |
| Paul Kaufmann | | Address on File | | | | | | |
| PAUL KUNKEL | | Address on File | | | | | | |
| PAUL N. ADKINS | | Address on File | | | | | | |
| Paula Shrober | | Address on File | | | | | | |
| PAUS2 (Investments) GP Ltd. | Attn Eric Pedde | c/o Alberta Investment Management Corporation | 1100-10830 Jasper Avenue | | Edmonton | AB | T5J2B3 | Canada |
| Paws Cause 2015 | Attn Paws Cause 2015 | 2400 Lone Star Drive | | | Dallas | TX | 75212 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Paxstone Capital LLP | Attn Kasper Kemp Hansen | 483 Green Lane | | | London | | N13 4BS | United Kingdom |
| PayCom Payroll, LLC | | 4005 NW Expressway, STE 500 | | | Oklahoma City | OK | 73116 | |
| PayFlex Systems USA, Inc. | | 10802 Farnam Drive | Suite 100 | | Omaha | NE | 68154 | |
| Paylocity | | 1400 American Ln # 1900 | | | Schaumburg | IL | 60173-5452 | |
| Paylocity Corporation | | 3850 N. Wilke Rd. | | | Arlington Heights | IL | 60004-0000 | |
| Payne & Smith, LLC | | 10711 Preston Rd | Suite 110 | | Dallas | TX | 75230 | |
| Payne & Smith, LLC | | PO Box 670805 | | | Dallas | TX | 75367-0805 | |
| PayScale Inc | | PO Box 49283 | | | San Jose | CA | 95161-9283 | |
| PBGC | | DEPT 77430, PO BOX 77000 | | | Detroit | MI | 48277-0430 | |
| PBGC | | PO Box 979120 | | | Saint Louis | MO | 63197-9001 | |
| PC Connection | | PO Box 382808 | | | Pittsburgh | PA | 15250-8808 | |
| PC Serv LLC/SharePoint Solutions | Accounts Recievable | 1521 Gordon Petty Dr | | | Brentwood | TN | 37027 | |
| PC Serv, LLC / SharePoint Solutions | | PO Box 1588 | | | Brentwood | TN | 37024-1558 | |
| PCMG Trading Partners XXIII, L.P. | c/o The Corporation Trust Company | 1209 Orange St | | | Wilmington | DE | 19801 | |
| PCS Securities, Inc. | | 19020 88th Avenue West | | | Edmonds | WA | 98026 | |
| Peach Labs, Inc. | | 108 S Jackson St Ste 300 | | | Seattle | WA | 98104-2872 | |
| Peacock, Carissa | | Address on File | | | | | | |
| Pearson, James M. | | Address on File | | | | | | |
| Pearson, Kyle | | Address on File | | | | | | |
| PEGGY FRANCIS | | Address on File | | | | | | |
| Peller | | Dreikonigstrasse 45 | Postfach 2016 | | Zurich | | CH-8027 | SWITZERLAND |
| Peltekian, Michael | | Address on File | | | | | | |
| Peltekian, Michael | | Address on File | | | | | | |
| PELZEL, TERRY | | Address on File | | | | | | |
| Penant Management GP, LLC | c/o Highland Capital Management, L.P. | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Penland, Nathan | | Address on File | | | | | | |
| Pension Benefit Guaranty Corporation | Attn M. Baird | Office of the General Counsel | 1200 K Street, N.W., Suite 3305 | | Washington | DC | 20005 | |
| Pension Benefit Guaranty Corporation | Lori Butler, Assistant General Counsel | 1200 K Street, N.W., Suite 3513 | | | Washington | DC | 20005 | |
| Pension Benefit Guaranty Corporation | | Department 77430 | PO Box 77000 | | Detroit | MI | 48277-0430 | |
| PensionDanmark | | | | | | | | |
| Pensionsforsikringsakties | Attention Head of Legal | Langelinie Alle 43 | | | Copenhagen | | 02100 | Denmark |
| PensionDanmark Pensionsforsikringsaktieselska b | Attn David Grant Crooks | c/o Fox Rothschild LLP | Two Lincoln Centre | 5420 LBJ Freeway, Suite 1200 | Dallas | TX | 75240 | |
| Pensions & Investments | | Crain Communication Inc. | 115 Gratiot | | Detroit | MI | 48207-2997 | |
| Pensions & Investments | | Subscriber Services Department 77940 | | SUBSCRIBER SERVICES | Detroit | MI | 48277-0940 | |
| Pensions & Investments | | PO BOX 79001 | DRAWER #7718 | | Detroit | MI | 48279-7718 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 107 of 155

**Appx. 00393**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 120 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PENTAGROUP FINANCIAL, LLC | | 5959 CORPORATE DR | STE 1400 | | Houston | TX | 77036 | |
| PENTON TECHNOLOGY MEDIA | | 221 E 29TH ST | | | Loveland | CO | 80538 | |
| Pepper Hamilton LLP | | 1201 Market St, Ste 1600 | | | Wilmington | DE | 19899 | |
| Pepperdine University | ATTN Stacy Taylor | Pepperdine School of Law | 24255 Pacific Coast Hwy | | Malibu | CA | 90263 | |
| PEREIRA, TOM | | Address on File | | | | | | |
| Perino, Inc | | 450 W 42nd Street | Apt 46M | | New York | NY | 10036 | |
| Perkins Coie LLP | Attn Client Accounting | 1201 Third Avenue, Suite 4900 | | | Seattle | WA | 98101 | |
| Perot Museum of Nature and Science | | 2201 North Field Street | | | Dallas | TX | 75201 | |
| Perot Museum of Nature and Science | | PO Box 151469 | | | Dallas | TX | 75315 | |
| Pershing LLC | Alternative Invest Dept. - Zamena Khan | 300 Colonial Center Parkway, 3rd Floor | | | Lake Mary | FL | 32746 | |
| Pershing LLC | Attn Brittany Crowley | 300 Colonial Center Parkway | | | Lake Mary | FL | 32746 | |
| Pershing LLC | Attn Genesis Garcia | One Pershing Plaza, 8th Fl | | | Jersey City | NJ | 07399 | |
| Pershing LLC | Attn IBD - 15th Floor | One Pershing Plaza | | | Jersey City | NJ | 07399 | |
| Personnel Concepts | | PO Box 3353 | | | San Dimas | CA | 91773 | |
| PERTRAC FINANCIAL SOLUTIONS, LLC | | 2650 Thousand Oaks, Ste 1340 | | | Memphis | TN | 38118 | |
| PERTRAC FINANCIAL SOLUTIONS, LLC | | 10403 DOUBLE R BOULEVARD | | | Reno | NV | 89521 | |
| Pestotnik + Gold LLP | | 501 W. Broadway | Suite 1850 | | San Diego | CA | 92101 | |
| Petals & Stems Florist | | 13319 Montfort | LBJ at Montfort | | Dallas | TX | 75240 | |
| PETER CHUNG | | Address on File | | | | | | |
| PETER CHUNG | | Address on File | | | | | | |
| PETER FERGUSON | | Address on File | | | | | | |
| PETER NOLAN | | Address on File | | | | | | |
| PETER PESTILLO | | Address on File | | | | | | |
| Peter Roman | | Address on File | | | | | | |
| PetroCap III and SLP | Marc Lombardi | c/o Akin Gump Strauss Hauer & Feld, LLP | 2300 N. Field Street, Suite 1800 | | Dallas | TX | 75201-2481 | |
| PetroCap III and SLP | Sarah Schultz | c/o Akin Gump Strauss Hauer & Feld, LLP | 2300 N. Field Street, Suite 1800 | | Dallas | TX | 75201-2481 | |
| PetroCap III and SLP | Wesley Williams | c/o Akin Gump Strauss Hauer & Feld, LLP | 2300 N. Field Street, Suite 1800 | | Dallas | TX | 75201-2481 | |
| PetroCap Inc | | 2602 McKinney Avenue | Suite 400 | | Dallas | TX | 75204 | |
| Petrocap Incentive Partners III GP, LLC | Attn Lane Britain | Petrocap Incentive Holdings III, LP | 3333 Lee Parkway, Suite 750 | | Dallas | TX | 75219 | |
| Petrocap Incentive Partners III GP, LLC | Marc Lombardi, Sarah Schultz, Wesley Williams | c/o Akin Gump Strauss Hauer & Feld, LLP | 2300 N. Field Street, Suite 1800 | | Dallas | TX | 75201-2481 | |
| PetroCap Partners II GP, LLC | Attention William L. Britain | 2602 McKinney Avenue | Suite 400 | | Dallas | TX | 75204-0000 | |
| Petrocap Partners II GP, LLC | Attn Lane Britain | Petrocap Incentive Partners II, LP | 3333 Lee Parkway, Suite 750 | | Dallas | TX | 75219 | |
| PetroCap Partners II, GP, LLC | PetroCap, LLC | William L. Britain | 2602 McKinney Avenue | Suite 400 | Dallas | TX | 75204 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PetroCap Partners III, L.P. | Marc Lombardi, Sarah Schultz, Wesley Williams | c/o Akin Gump Strauss Hauer & Feld, LLP | 2300 N. Field Street, Suite 1800 | | Dallas | TX | 75201-2481 | |
| PetroCap Partners III, L.P. | | 3333 Lee Parkway | Suite 750 | | Dallas | TX | 75219 | |
| Petroleum Club of Midland | | PO Box 10527 | | | Midland | TX | 79702-7527 | |
| Petsmart Charities, Inc. | | PO Box 96426 | | | Washington | DC | 20077-7227 | |
| PFERTNER, JIM | | Address on File | | | | | | |
| PFPC DISTRIBUTORS | | PO BOX 828789 | | | Philadelphia | PA | 19182-8789 | |
| PFPC DISTRIBUTORS | | PO BOX 828810 | | | Philadelphia | PA | 19182-8810 | |
| Phase 3 Marketing and Communications | | Dept# 7052 | PO Box 2153 | | Birmingham | AL | 35287-7052 | |
| PHELAN, KEVIN | | Address on File | | | | | | |
| PHIL GALPIN | | Address on File | | | | | | |
| Phil Rochefort | | Address on File | | | | | | |
| Philadelphia Biblical University | Attn Mr. Tim Hui | 200 Manor Ave | | | Langhorne | PA | 19047-9989 | |
| PHILET FOODS | | 5331 E MOCKINGBIRD LN | STE 413 | | Dallas | TX | 75206 | |
| Philip Settimi | | Address on File | | | | | | |
| Philippine American Physicians | | PO Box 690695 | | | Orlando | FL | 32869 | |
| Phillips, Michael | | Address on File | | | | | | |
| Phoenician Operating LLC | | 6000 East Camelback Road | | | Scottsdale | AZ | 85251 | |
| PicFlips, LLC | | 8553 N Beach St #280 | | | Fort Worth | TX | 76244 | |
| Pillsbury Winthrop Shaw Pittman LLP | | PO Box 7880 | | | San Francisco | CA | 94120-7880 | |
| Pink Ribbon Cleaning Services | | PO Box 541141 | | | Dallas | TX | 75354 | |
| Pinnacle Aviation Charter | | 14988 North 78th Way | Suite 106 | | Scottsdale | AZ | 85260 | |
| Pinnacle Business Systems | | 609 S. Kelly Avenue, Suite E-7 | | | Edmond | OK | 73003 | |
| Pinnacle Group International | | PO BOX 2800, # 265 | | | Carefree | AZ | 85377 | |
| Pinnacle International | | 5420 LBJ, Ste 390 | | | Dallas | TX | 75240 | |
| Pinnacle International | | PO Box 2800, #265 | | | Carefree | AZ | 85377 | |
| Pinnacle Office Products LLC | | 8024 Glenwood Ave | Suite 200 | | Raleigh | NC | 27612 | |
| Pinnacle Office Products LLC | | 8024 Glenwood Ave Ste 200 | STE 200 | | Raleigh | NC | 27612 | |
| PIONEER INVESTMENT MANAGEMENT | | 60 STATE STREET | | | Boston | MA | 02109 | |
| Pipos Travel Corp. | | 2333 Brickell Ave. | Mezz UL4 | | Miami | FL | 33129 | |
| PIRA Energy Group | | 3 Park Ave, 26th Flr | | | New York | NY | 10016-5989 | |
| Piriform Inc. | | 590 Madison Avenue | 21st Floor | | New York | NY | 10022 | |
| Pirozzi & Hillman, Inc. | | 274 Madison Ave | | | New York | NY | 10016 | |
| Pirtle Design | | 506 Union St | | | Hudson | NY | 12534-2816 | |
| Pitney Bowes Credit Corp. | | PO Box 856460 | | | Louisville | KY | 40285-6460 | |
| PITNEY BOWES FINANCIAL SERVICES LLC | | PO BOX 371887 | | | Pittsburg | PA | 15250-7887 | |
| Pitney Bowes Global Financial Services | | PO Box 371874 | | | Pittsburgh | PA | 15250-0000 | |
| Pitney Bowes Inc. | | PO Box 371896 | | | Pittsburgh | PA | 15250-7896 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 122 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Pitney Bowes- Purchase Power | | PO Box 371874 | | | Pittsburgh | PA | 15250-2648 | |
| PITTMAN, TABOR J. | | Address on File | | | | | | |
| Pivotal Research Group LLC | Jeff Shelton | c/o 12 John Street | | | Demarest | NJ | 07627 | |
| Pivotal Research Group LLC | | 12 John Street | | | Demarest | NJ | 07627 | |
| PJ Mechanical Service & Maint. Corp. | | 135 W. 18th Street | | | New York | NY | 10011 | |
| Planatech Solutions Ltd. | | Grosvenor Gardens House | 35/37 Grosvenor Gardens | | London | | SW1W 0BY | United Kingdom |
| Plano East Golf Booster Club | Attn Brian Flanagan | 700 Bear Creek Dr. | | | Murphy | TX | 75094 | |
| Plano Party Animals | | 600 Legacy Drive | Suite 111 | | Plano | TX | 75023 | |
| PLANT DECOR | | PO BOX 8 | | | Ponder | TX | 76259-0008 | |
| Plant Interscapes, Inc. | | 6436 Babcock Rd. | | | San Antonio | TX | 78249 | |
| PlantKeeper | | PO BOX 226142 | | | Dallas | TX | 75222-6142 | |
| Plastic News | | Subscriber Services | PO Box 07938 | | Detroit | MI | 48207-9944 | |
| Platinum Litigation Solutions, LLC | | 325 N. Saint Paul Street | Suite 1100 | | Dallas | TX | 75201 | |
| Platinum Parking | | 300 Crescent Court | Level G1, LB#102 | | Dallas | TX | 75201 | |
| Platypus Studios | Attn Mark Baldi | 2055 Corte Del Nogal | | | Carlsbad | CA | 92011 | |
| Plexus Groupe LLC | | 21805 W Field Parkway, Ste 300 | | | Deer Park | IL | 60010 | |
| Plimus, Inc. | | 142 N. Milpitas Blvd #435 | | | Milpitas | CA | 95035-4401 | |
| PLS Inc. | | PO Box 4987 | | | Houston | TX | 77210-4987 | |
| PLUM, KEITH | | Address on File | | | | | | |
| PLUMER, KURTIS | | Address on File | | | | | | |
| PMC Commercial Trust | | 17950 Preston Road | Ste 600 | | Dallas | TX | 75252 | |
| PMC Service Company | | 2425 DillaRd St | | | Grand Prarie | TX | 75051 | |
| PNC Global Investment Servicing | | PO Box 828789 | | | Philadelphia | PA | 19182-8789 | |
| PNP Productions | | 8312 Westlawn Avenue | | | Los Angeles | CA | 90045 | |
| POER, MARY | | Address on File | | | | | | |
| POGLITSCH, JON | | Address on File | | | | | | |
| POGRANICHNY, PAUL | | 501 Elm Street | Suite 350 | | Dallas | TX | 75202 | |
| Point Multimedia LLC | | Address on File | | | | | | |
| Pollock, Staci | | Address on File | | | | | | |
| Polsen, Gregory | | Address on File | | | | | | |
| Pope, Hardwicke, Christie, Schell, Kelly & Taplett LLP | | 500 W 7th Street | Ste 600 | | Fort Worth | TX | 76102 | |
| POPE, JAMES | | Address on File | | | | | | |
| POPE, THERESA | | Address on File | | | | | | |
| Portfolio Media, Inc | | 860 Broadway | 6th Floor | | New York | NY | 10003 | |
| POST, ROBERT | | Address on File | | | | | | |
| Potbelly Sandwich Works, LLC | | 222 Merchandise Mart Plaza | 23rd FL | | Chicago | IL | 60654 | |
| POTTER ANDERSON & CORROON LLP | Timothy R. Dudderar | Hercules Plaza, 6th Floor | 1313 North Market Street | | Wilmington | DE | 19801 | |
| Potter, Anderson & Corroon LLP | | 1313 North Market St PO Box 951 | | | Wilmington | DE | 19899-0951 | |
| POWELL, ETHAN K. | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PR Newswire | | PO Box 5897 | | | New York | NY | 10087-5897 | |
| PR Newswire Association, LLC | | 602 Plaza | Three Harborside Financial Center | | Jersey City | NJ | 07311-0000 | |
| PRACTICING LAW INSITUTE | | 810 SEVENTH AVE | | | New York | NY | 10019 | |
| PRACTICING LAW INSITUTE | | PO Box 26532 | | | New York | NY | 10087-6532 | |
| Prairie Rose Studio | | PO Box 1316 | | | Commerce | TX | 75429 | |
| PRAMOD RAJU | | Address on File | | | | | | |
| Precise Land Surveying, Inc. | | 4625 Eastover Dr | | | Mesquite | TX | 75149 | |
| Premier Wealth Strategies | Attn Jon Rustad | 8777 E. Via de Ventura, Ste 140 | | | Scottsdale | AZ | 85258 | |
| Premiere Global Services | | PO Box 404351 | | | Atlanta | GA | 30384-4351 | |
| Premiere Speakers Bureau, Inc. | | 109 International Drive | Suite 300 | | Franklin | TN | 37067 | |
| Pregin Ltd. | | Scotia House | 33 Finsbury Square | | London | | EC2A 1BB | United Kingdom |
| Pregin Ltd. | | PO Box 200918 | | | Pittsburgh | PA | 15251-0918 | |
| Presbyterian Hospital of Dallas | | PO Box 910013 | | | Dallas | TX | 75391 | |
| Prescott Legal Search | | PO Box 1024140 | | | Atlanta | GA | 30368-4140 | |
| Presidential Process Service Inc | | 419 Park Ave South | Suite 700 | | New York | NY | 10016 | |
| Preston Florist | | 14856 Preston Rd Ste 110 | | | Dallas | TX | 75240 | |
| Preston Hollow Catering | | 3419 Westminister | #235 | | Dallas | TX | 75205 | |
| Preston Hollow Elementary PTA | | 6423 Walnut Hill Lane | | | Dallas | TX | 75230 | |
| PRI Association | | 5th Floor | 25 Camperdown Street | | Whitechapel | | E1 8DZ | United Kingdom |
| PRICE_BRIAN | | Address on File | | | | | | |
| Price_Kevin | | Address on File | | | | | | |
| PRICE_WHITNEY | | Address on File | | | | | | |
| Pricewaterhouse Coopers, LLP | | 8 Cross St. #17-00 | PWC Singapore Building | | Singapore | | 048424 | SINGAPORE |
| Pricewaterhouse Coopers, LLP | | P.O. Box 952282 | | | Dallas | TX | 75395 | |
| Pricewaterhouse Coopers, LLP | | PO Box 75647 | | | Chicago | IL | 60675-5647 | |
| PricewaterhouseCoopers | c/o John Wander, Vinson Elkins LLP | 2001 Ross Avenue | Suite 3900 | | Dallas | TX | 75201 | |
| PRICEWATERHOUSECOOPE RS | | SOUTHWARK TOWERS | 32 LONDON BRIDGE ST | | London | | SE1 9SY | United Kingdom |
| PricewaterhouseCoopers LLP | | One North Wacker | 520 Madison Avenue | | Chicago | IL | 60606-0000 | |
| Prime Brokerage Services | | Jefferies LLC | | | New York | NY | 10022 | |
| Primedia | | PO Box 96985 | | | Chicago | IL | 60693 | |
| Princeton Club of NY | | 15 West 43rd Street | | | New York | NY | 10036-7497 | |
| Princeton Search LLC | | d/b/a PrincetonOne | PO Box 52265 | | Newark | NJ | 07101-0220 | |
| Principal Financial Group | | PO Box 477 | | | Appleton | WI | 54912-0477 | |
| Principal Life | | Dept. 400 PO Box 14416 | | | Des Moines | IA | 50306-3416 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 124 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PrintComm | | 1161 Executive Drive West | | | Richardson | TX | 75081 | |
| PrintGlobe | | PO Box 975659 | | | Dallas | TX | 75397-5659 | |
| Privcap LLC | | 86 Chambers Street | 7th Floor | | New York | NY | 10007 | |
| Probe Ministries | | 2001 W. Plano Pkwy | Suite 2000 | | Plano | TX | 75075 | |
| Probe Ministries | | 1900 Firman Dr Ste 100 | | | Richardson | TX | 75081-6796 | |
| Professional Technologies, Inc. | Accounting Dept. | 4950 N. OConnor Rd., 1st Floor | | | Irving | TX | 75062-2778 | |
| PROFESSIONALS PUBLISHING GROUP | | 1911 N US HWY 301 | STE 140 | | Tampa | FL | 33619 | |
| PROFFESSIONAL TECHNOLOGIES INCORPORATED | | CORPORATE PLAZA 1, 1st floor | | | Irving | TX | 75062-2778 | |
| Proffessional Video Services, LLC | | 8 Canterbury Lane | | | Westfield | NJ | 07090 | |
| Progenics Pharmaceuticals, Inc. | Attn CEO | 777 Old Saw Mill Road | | | Tarrytown | NY | 10591 | |
| Progressive Business Publication | | 370 Technology Drive | PO BOX 3019 | | Malvern | PA | 19355 | |
| Pronske and Kathman | Jason P. Kathman | 2701 Dallas Parkway Suite 590 | | | Plano | TX | 75093 | |
| Proofpoint | | 892 Ross Drive | | | Sunnyvale | CA | 94089 | |
| Proposal Software, Inc. | | 1140 US Hwy 287 | Suite 400-102 | | Broomfield | CO | 80020 | |
| Prosek Partners LLC | | 1552 Post Road | | | Fairfield | CT | 06824 | |
| Proskauer Rose LLP | | Eleven Times Square | | | New York | NY | 10036-8299 | |
| Prospect News Inc. | | 6 MAIDEN LANE | 9th floor | | New York | NY | 10038 | |
| Prospect News Inc. | | 164 Prospect Park West #4R | | | Brooklyn | NY | 11215 | |
| Prosper Sports Association | | 1050 High Willow | | | Prosper | TX | 75078 | |
| ProStar Services, Inc | | PO Box 110209 | | | Carrollton | TX | 75011 | |
| Protection Networks | | 4887 Alpha Road, St 200 | | | Farmers Branch | TX | 75244-4632 | |
| PROVIDEA CONFERENCING LLC | | PO Box 636132 | | | Cincinnati | OH | 45263 | |
| PROVIDEA CONFERENCING LLC | | 1297 Flynn Rd. | Suite 100 | | CAMARILLO | CA | 93012 | |
| Prudential | Attn Nirsa Reyes | 100 Mulberry St, Gateway Ctr 3, 14 flr | | | Newark | NJ | 07102 | |
| Prudential | | PO BOX 856138 | | | Louisville | KY | 40285 | |
| Pryor Cashman LLP | | 410 Park Ave | | | New York | NY | 10022 | |
| PUBLIC COMPANY ACCTNG OVERSIGHT BOARD | | PO BOX 631116 | | | Baltimore | MD | 21263-1116 | |
| Puerto Rico Secretary of the Treasury | | Securities Division | 1492 Ponce de Leon Avenue, Suite 600 | | San Juan | PR | 00907-1492 | |
| Puglisi & Associates | | 850 Library Ave, Suite 204 | | | Newark | DE | 19711 | |
| PUNCHSTOCK | | 8517 EXCELSIOR DR | STE 200 | | Madison | WI | 53717 | |
| PUNCHSTOCK | | PO Box 953604 | | | Saint Louis | MO | 63195 | |
| PURCELL, ONDINA | | Address on File | | | | | | |
| PURCELL, ONDINA A. | | Address on File | | | | | | |
| Purdy-McGuire | | 4300 Sigma Ste 200 | | | Dallas | TX | 75244-4416 | |
| Pure Compliance | | PO BOX 951839 | | | Dallas | TX | 75395 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 125 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Purshe Kaplan Sterling Investments, Inc. | | 18 Corporate Woods Blvd | 4th Floor | | Albany | NY | 12211 | |
| PUSATERI, MICHAEL | | Address on File | | | | | | |
| Putnam Lovell | | 1155 Metcalfe St, 4th Flr | | | Montreal | QC | H3B 4S9 | CANADA |
| PwC Product Sales LLC | | PO Box 952282 | | | Dallas | TX | 75395-2282 | |
| Q&A RECRUITING | | 14241 N DALLAS PKWY, STE 550 | | | Dallas | TX | 75254 | |
| Q.O.P.S. | | PO Box 10429 | | | Van Nuys | CA | 91410 | |
| Quadriga Partners, LLC | Attn Jason Ficken | 100 Fillmore, Suite 425 | | | Denver | CO | 80206 | |
| Quality High-Tech Services, Inc. | | 11807 Forestgate Dr | | | Dallas | TX | 75243 | |
| QUAN ZHANG | | Address on File | | | | | | |
| QUANTUM | | DEPT 0596 | PO BOX 120596 | | Dallas | TX | 75312 | |
| Queens Ballpark Co. | Attn Marc Candelaria | 126-01 Roosevelt Ave. | | | Flushing | NY | 11368 | |
| Quest CE | | 10100 W. Innovation Drive | Suite 200 | | Milwaukee | WI | 53226 | |
| Quest Events | | 2591 Dallas Parkway | Suite 201 | | Frisco | TX | 75034 | |
| QUEST IRA, INC., FBO HUNTER COVITZ, ACCT. # x9811 | | 17171 Park Row #100 | | | Houston | TX | 77084 | |
| QUEST IRA, INC., FBO JON POGLITSCH, ACCT. # x0612 | | 17171 Park Row #100 | | | Houston | TX | 77084 | |
| QUEST IRA, INC., FBO LEE B. PARKER III, ACCT. # x8311 | | 17171 Park Row #100 | | | Houston | TX | 77084 | |
| QUEST IRA, INC., FBO NEIL DESAI, ACCT. # x9211 | | 17171 Park Row #100 | | | Houston | TX | 77084 | |
| Quest Software | | PO Box 51739 | | | Los Angelos | CA | 90051-6039 | |
| Quick Trak Messangers | | 267 West 17th Street | 3rd Floor | | New York | NY | 10019 | |
| Quinn Emanuel Trial Lawyers | | 865 S Figueroa St | 10th FL | | Los Angeles | CA | 90017 | |
| Quintairos, Prieto Wood & Boyer | | 9300 South Dadeland Blvd, 4th Floor | | | Miami | FL | 33156 | |
| Quintairos, Prieto Wood & Boyer | | 865 S. Figueroa St | 10th FL | | Los Angeles | CA | 90017 | |
| QVerity, Inc. | | 740 Greenville Blvd. | Suite 400, PMB 154 | | Greenville | NC | 27858 | |
| Rabbit Reproduction | | PO Box 29764 | | | Dallas | TX | 75229 | |
| Rachael Romine | | Address on File | | | | | | |
| RACHAL, TRAVIS | | Address on File | | | | | | |
| RACHAL, TRAVIS | | Address on File | | | | | | |
| Rademacher, Cole | | Address on File | | | | | | |
| Radianz Americas Inc | ATTN Head of Legal | 620 Eighth Ave | 45 th Floor | | New York | NY | 10018 | |
| Radianz Americas Inc | | PO Box 7247-6642 | | | Philadelphia | PA | 19170-6642 | |
| Radianz Americas Inc | | DEPT CH 19227 | | | Palentine | IL | 60055-9227 | |
| Rafael Anchia | | Address on File | | | | | | |
| RAJU, PRAMOD | | Address on File | | | | | | |
| Rakhee V. Patel, Phillip Lamberson, Annmarie Chiarello | | 500 Windstead Building | 2728 N. Harwood Street | | Dallas | TX | 75201 | |
| Rally Point Media Strategies LLC | | 1320 North Veitch St | #1712 | | Arlington | VA | 22201 | |
| RAMAMURTHY, SUNDAR | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 113 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 126 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Ramesh Swaminathan | | Address on File | | | | | | |
| Rand Advisors Series I Insurance Fund | c/o Rand Advisors | John Honis | 87 Railroad Place | Suite 403 | Saratoga Springs | NY | 12866 | |
| Rand Advisors, LLC / Atlas IDF LP, et al | Attn John Honis | 87 Railroad Place | Ste 403 | | Saratoga Springs | NY | 12866-0000 | |
| Rand PE Fund I, L.P. | c/o Rand PE Fund Management, LLC | John Honis | 87 Railroad Place | Suite 403 | Saratoga Springs | NY | 12866 | |
| Randal Stout Entertainment | | 2341 Hummingbird Trail | | | Grapevine | TX | 76051 | |
| RANDAL ZIEGENHAGEN | | 5317 ELLSWORTH AVE | | | Dallas | TX | 75206 | |
| Random Lengths | | PO Box 867 | | | Eugene | OR | 97440-0867 | |
| RANGEL, VICTOR | | Address on File | | | | | | |
| Ranger Creek Goose | | 209 Alex Way | | | Abilene | TX | 79602 | |
| Ransom, Garrett | | Address on File | | | | | | |
| Rapid7 LLC | | 120 Causeway St Ste 400 | | | Boston | MA | 02114-1314 | |
| Rapid7 LLC | | PO Box 347377 | | | Pittsburgh | PA | 15251-4377 | |
| Ratcliffe for Congress | | 2931 Ridge Road, Ste 101 | PMB #217 | | Rockwall | TX | 75032 | |
| RAWLINGS, OLSON, CANNON | | GORMLEY & DESRUISSEAUX | 9950 W CHEYENNE AVE | | Las Vegas | NV | 89129 | |
| Raymond Dougherty | | Address on File | | | | | | |
| Raymond James & Associates, Inc | Attn Kristin Koscho | 880 Carillon Parkway | | | St. Petersburg | FL | 33716 | |
| Raymond James & Associates, Inc | Attn Treasury/RMB-M/F | PO Box 23591 | | | St. Petersburg | FL | 33742 | |
| Raymond James & Associates, Inc | | 70 East Main St | | | Avon | CT | 06001 | |
| Raymond James & Associates, Inc | | Granada Building, 5th Floor | 1216 State Street, Suite 500 | | Santa Barbara | CA | 93101 | |
| Raymond James Financial | ALPG attn Todd Moulton | 3610 N. University Ave, Ste 350 | | | Provo | UT | 84604 | |
| Raymond James Financial | Attn Catina Cruz/RJ BP Dev Conf Free | PO Box 23613 | | | St. Petersburg | FL | 33742 | |
| Raymond Joseph Dougherty | D. Craig Shew, PLLC | PO Box 1373 | | | Ada | OK | 74821-1373 | |
| Raymond Joseph Dougherty | | Address on File | | | | | | |
| RBC Capital Markets, LLC | Attn Dave Hirons | 4250 Executive Square, Ste 800 | | | Lajolla | CA | 92037 | |
| RBC Capital Markets, LLC | Attn Jim Brick | 60 South Street, P21 | | | Minneapolis | MN | 55402 | |
| RCR Wireless News | | Subscriber Services Department 77940 | | | Detroit | MI | 48277-0940 | |
| Real Capital Analytics | | 139 5th Ave | | | New York | NY | 10010 | |
| REAL ESTATE ALERT | | 5 Marine View Plaza #400 | | | Hoboken | NJ | 07030 | |
| Real Time Services | | 452 West John Street | | | Hicksville | NY | 11801-1301 | |
| REALPOINT | | BOX #3001 | 200 WITMER RD | | Horsham | PA | 19044 | |
| REALPOINT | | Receivable Management Services | 4836 Brecksville Rd | | Richfield | OH | 44286 | |
| Reasoning Mind | | 5910 N. Central Expressway # 250 | | | Dallas | TX | 75206 | |
| Rebecca A. Thompson | | Address on File | | | | | | |
| Rebecca Stropoli | | Address on File | | | | | | |
| Record Press Inc. | | 229 West 36th Street | | | New York | NY | 10018 | |
| Records Deposition Service | | 1701 N Collins Blvd Ste 334 | | | Richardson | TX | 75080-3602 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 114 of 155

**Appx. 00400**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 127 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Red Hat | | 100 East Davie Street | | | Raleigh | NC | 27601-0000 | |
| Red Oak Compliance Solutions LLC | | 1320 Arrow Point Dr Ste 411 | | | Cedar Park | TX | 78613-2095 | |
| Red River CLO Corp. | | P.O. Box 1093GT, Queensgate House | | George Town | Grand Cayman | | | Cayman Islands |
| Red River CLO Ltd c/o Ogier Fiduciary Services (Cayman) Limited | Attention The Directors | P.O. Box 1234, | Queensgate House South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Red River CLO Ltd. | | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Red River CLO Ltd. et al | U.S. Bank National Association Corporate Trust Services/CDO Department | One Federal Street, Third Floor | | | Boston | MA | 02110 | |
| Red River CLO Ltd. Grand Central Asset Trust | LaSalle Bank N.A., as Collateral Administrator | 181 West Madison Street | Suite 3200 | CDO Trust Services - Roy Hykal | Chicago | IL | 60602 | |
| Red River CLO Ltd. Grand Central Asset Trust | U.S. Bank, National Association | One Federal Street | 3rd Floor | Mr. Jackson Carneiro | Boston | MA | 02110 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | Highland Special Opp. Holding Company | 2 Galleria Towers 13455 Noel Road | Suite 1300 | | Dallas | TX | 75240 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | LaSalle Bank N.A., as Collateral Administrator | 181 West Madison Street | Suite 3200 | CDO Trust Services - Maciej Zurawski | Chicago | IL | 60602 | |
| Red River CLO Ltd. Highland Special Opportunities Holding Company U.S. Bank National Association | U.S. Bank, National Association | One Federal Street | Third Floor | Mr. Jackson Carneiro | Boston | MA | 02110 | |
| Red River CLO Ltd. MMP-5 Funding, LLC IXIS Financial Products Inc. | IXIS Financial Products Inc. | 9 West 57th Street | 36th Floor | | New York | NY | 10019 | |
| Red River CLO Ltd. MMP-5 Funding, LLC IXIS Financial Products Inc. | MMP-5 Funding, LLC | 120 White Plains Road | Suite 115 | | Tarrytown | NY | 10591 | |
| Red River CLO Ltd. U.S. Bank National Association IXIS Financial Products Inc. | Red River CLO Ltd. Address c/o Ogier Fiduciary Services (Cayman) Limited | P.O. Box 1234 | Queensgate House South Church Street | Red River CLO Ltd. | George Town | | KY1-1108 | Cayman Islands |
| Red River CLO Ltd., et al | c/o Ogier Fiduciary Services (Cayman) Limited | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Red River CLO, Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Red River CLO, Ltd. | Red River CLO Ltd. c/o Ogier Fiduciary Services (Cayman) limited | P.O. Box 1093GT | Queensgate House, South Church Street | The Directors c/o Ogier Fiduciary Services (Cayman) Limited | George Town | | | Cayman Islands |
| Red River CLO, Ltd. U.S. Bank National Association | U.S. Bank National Association Corporate Trust Services/CDO Department | One Federal Street, Third Floor Ref Red River CLO Ltd | | | Boston | MA | 02110 | |
| Red River CLO, Ltd. U.S. Bank National Association | | P.O. Box 1234 | Queensgate House South Church Street | The Directors - Red River | George Town | | KY1-1108 | Cayman Islands |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Red Rock Strategic Partners | | PO Box 35 | | | Watkinsville | GA | 30677 | |
| Redbud E&P Inc. | | 2602 McKinney Ave | Ste 400 | | Dallas | TX | 75204 | |
| Redeemer Committee - Highland Crusader | | | | | | | | |
| Redeemer Commttee Highland Crusader Fund | Attn Eric Felton | 731 Pleasant Ave. | | | Glen Ellyn | IL | 60137 | |
| Redmond Law Firm | c/o Terri Mascherin, Esq. | Jenner & Block | 353 N. Clark Street | | Chicago | IL | 60654-3456 | |
| Redspin | | 6731 W. 121 St., Ste 226 | | | Overland Park | KS | 66209 | |
| REED SMITH | | 27271 Las Rambias | Suite 200 | | Mission Viejo | CA | 92691 | |
| REED SMITH | | Address on File | | | | | | |
| REED SMITH | | PO Box 360074M | | | Pittsburgh | PA | 15251-6074 | |
| REED WATSON | | PO BOX 759052 | | | Baltimore | MD | 21275-9052 | |
| | | Address on File | | | | | | |
| Reese Energy Consulting, Inc. | | 725 South Boulevard | | | Edmond | OK | 73034 | |
| Refinitiv | c/o Sarah E. Doerr | Refinitiv f/d/b/a Thomson Reuters | Moss & Barnett | 150 5th St S, Suite 1200 | Minneapolis | MN | 55402 | |
| Refinitiv US LLC | | 3 Times Square | | | New York | NY | 10036 | |
| Regulatory Compliance Watch | | PO Box 9407 | | | Gaithersburg | MD | 20898-9407 | |
| Regus Business Centre | | Colleen Susini, Centre Manager | 245 Park Ave, 39th Flr | | New York | NY | 10167 | |
| Regus Management Group LLC | | PO Box 842456 | | | Dallas | TX | 75284-2458 | |
| Reid Collins & Tsai | William T. Reid, Esq. | Reid Collins & Tsai LLP | 810 Seventh Avenue, Ste 410 | | New York | NY | 10019 | |
| Reid Collins & Tsai LLP | | 1301 S. Capital of Texas Hwy | #C300 | | Austin | TX | 78746 | |
| Reid Collins & Tsai LLP | | 4301 Westbank Drive | Building B Suite 230 | | Austin | TX | 78746 | |
| Reid Davis | | Address on File | | | | | | |
| REIS SERVICES, LLC | | 530 Fifth Ave5th Floor | | | New York | NY | 10036 | |
| Reis, Inc. | | 5 West 37th St | | | New York | NY | 10018 | |
| Reis, Inc. | | 530 5TH AVE, 5TH FLR | | | New York | NY | 10036 | |
| REIT ZONE PUBLICATIONS, LLC | | 448 IGNACIO BLVD | STE 345 | | Novato | CA | 94949 | |
| Reiter, Jon | | Address on File | | | | | | |
| Relationship Science LLC | | 909 3rd Ave | FL 18 | | New York | NY | 10022 | |
| Relationship Science LLC | | PO Box 347989 | | | Pittsburgh | PA | 15251-4989 | |
| Ren Morrison Photography | | 5445 Caruth Haven 121 | | | Dallas | TX | 75225 | |
| Rentacrate Incorporated | | 124 Prospect St. | | | Waltham | MA | 02453 | |
| Rentacrate Incorporated | | 22 Century Blvd | Suite 420 | | Nashville | TN | 37214 | |
| Rentacrate Incorporated | | PO Box 32194 | | | New York | NY | 10087-2194 | |
| Rentfro, Tyler | | Address on File | | | | | | |
| Reorg Research, Inc. | | 1140 Broadway | Ste 201 | | New York | NY | 10001 | |
| Reorg Research, Inc. | | 11 East 26th Street | 12th Floor | | New York | NY | 10010-0000 | |
| Reporters Central LLC | | 363 Seventh Ave, 21st Fl | | | New York | NY | 10001 | |
| Republic Title of Texas, Inc. | | 2701 W. Plano Parkway, Suite 100 | | | Plano | TX | 75075 | |
| Reputation Management Consultants | | 92 Corporate Park | Suite C-700 | | Irvine | CA | 92606 | |
| Rescue Cell Phone | | 280 Legacy Dr | #104 | | Plano | TX | 75023 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 129 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Rescue Cell Phone | | 6121 Greenville Ave | | | Dallas | TX | 75206 | |
| Research in Motion Corporation | | 12432 Collections Center Dr | | | Chicago | IL | 60693 | |
| Resolutions, LLC. | | 222 Berkeley Street | Suite 1060 | | Boston | MA | 02116 | |
| Resort Capital Advisors | | 712 Intracoastal Dr | | | Ft. Lauderdale | FL | 33304 | |
| Resource Technologies Corp. | | PO Box 3201 | | | Troy | MI | 48007-3201 | |
| Restaurant Associates | Attn Jeanine Miller | 1071 Fifth Avenue | | | New York | NY | 10128 | |
| Resulte Universal | | 5151 Belt Line Rd | Suite 455 | | Dallas | TX | 75254 | |
| REUTERS LOAN PRICING CORPORATION | | GENERAL POST OFFICE | PO BOX 26803 | | New York | NY | 10087-26803 | |
| Rey Rodriquez | | Address on File | | | | | | |
| Reynolds Frizzell Black Doyle Allen | | 1100 Louisiana | Ste 3500 | | Houston | TX | 77002 | |
| Reynolds, Steven | | Address on File | | | | | | |
| RFPnetworks B.V. | | Laan van Kronenburg 14 | | | Amstelveen | | 1183AS | NETHERLANDS |
| Rhinotek Computer Products | | PO Box 6205 | | | Carson | CA | 90749 | |
| Rhode Island Dept. Business Regulation | | Securities Division | 1511 Pontiac Ave. Bldg 69, 1st Floor | | Cranston | RI | 02920 | |
| Rialto Capital Advisors, LLC | | 790 NW 107th Avenue | Suite 400 | | Miami | FL | 33131 | |
| RICCI, JENNIFER | | Address on File | | | | | | |
| Riccione Resources, Inc | | 17194 Preston Rd | Suite 102-390 | | Dallas | TX | 75248-1221 | |
| RICE, BRIAN | | Address on File | | | | | | |
| RICE, CHARLES | | Address on File | | | | | | |
| Rice, Christopher | | Address on File | | | | | | |
| Rich Bitterman | | Address on File | | | | | | |
| RICH DAPAAH | | Address on File | | | | | | |
| RICH, MICHAEL | | Address on File | | | | | | |
| RICHARD & SYLVIA TUCKER TRUST | | Address on File | | | | | | |
| Richard Arnitz | | Address on File | | | | | | |
| RICHARD BARNES TRUST | | Address on File | | | | | | |
| Richard Egelhof | | Address on File | | | | | | |
| Richard Even | | Address on File | | | | | | |
| Richard Harris | | Address on File | | | | | | |
| Richard Layton & Finger | | One Rodney Square | 920 North King Street | | Wilmington | DE | 19801 | |
| RICHARD LINDENMUTH | | Address on File | | | | | | |
| Richard M. Alderman | | Address on File | | | | | | |
| Richard Pines | | Address on File | | | | | | |
| Richard Redden | | Address on File | | | | | | |
| Richard Rinehart | | Address on File | | | | | | |
| RICHARD TUCKER | | Address on File | | | | | | |
| Richards Partners | | 8750 N Central Expy | Suite 100 | | Dallas | TX | 75231-6437 | |
| Richards, Paul | | Address on File | | | | | | |
| Richards, Paul A. | | Address on File | | | | | | |
| Richardson, Kellie | | Address on File | | | | | | |
| Richmond Communicatinos Group, Inc. | | 2750 Northhaven Rd Ste 202 | | | Dallas | TX | 75229 | |
| Richofsky, Lori | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 130 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| RICK DREW | | Address on File | | | | | | |
| Ricky Swadley | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Ricoh Americas Corporation | | PO BOX 13852 | | | Newark | NJ | 07188-0852 | |
| Ricoh Americas Corporation | | PO Box 4245 | | | Carol Stream | IL | 60197-4245 | |
| Ricoh Americas Corporation | | PO BOX 73210 | | | Chicago | IL | 60673-7210 | |
| Ricoh Americas Corporation | | PO Box 660342 | | | Dallas | TX | 75266-0342 | |
| Ricoh Americas Corporation | | PO BOX 730366 | | | Dallas | TX | 75373-0366 | |
| RICOH BUSINESS SOLUTIONS | | First Floor | 4667 N. Royal Atlanta Dr. | | Tucker | GA | 30084 | |
| RICOH BUSINESS SOLUTIONS | | PO BOX 73210 | | | Chicago | IL | 60673-7210 | |
| Ricoh USA, Inc. | | PO Box 827577 | | | Philadelphia | PA | 19182-7577 | |
| Ricoh USA, Inc. | | 21146 Network Place | | | Chicago | IL | 60673-1211 | |
| Ricoh USA, Inc. | | PO Box 660342 | | | Dallas | TX | 75266-0342 | |
| Riddle, Cara | | Address on File | | | | | | |
| Ridgely, Taylor | | Address on File | | | | | | |
| RIDGELY, TAYLOR | | Address on File | | | | | | |
| RIDGELY, TAYLOR | | Address on File | | | | | | |
| RIDGEWAY, BRIAN | | Address on File | | | | | | |
| Rigzone.com, Inc. | | 14531 FM 529, Ste 225 | | | Houston | TX | 77095 | |
| RINGHEIMER, JEREMY | | Address on File | | | | | | |
| RIORDAN, TERRENCE | | Address on File | | | | | | |
| RIORDAN, TERRENCE C. | | Address on File | | | | | | |
| Rios, Heriberto | | Address on File | | | | | | |
| Ripe4Offices | | 13-19 Circus Rd | St. Johns Wood | | London | | NW8 6PB | United Kingdom |
| Ripple Effect Strategies, Inc. | | 503 E. Jackson St. | Suite 235 | | Tampa | FL | 33602-4904 | |
| RISI | | PO BOX 16586 | | | North Hollywood | CA | 91615-6586 | |
| Risk Metrics Group | | PO Box 2621 | | | Buffalo | NY | 14240-2621 | |
| Ritch, Lauren N. | | Address on File | | | | | | |
| Riveron Consulting, LLC | | 2515 McKinney Avenue | Suite 1200 | | Dallas | TX | 75201 | |
| RL Consulting | | 19228 Charandy Drive | | | Leesburg | VA | 20175 | |
| RME | | PO Box 261237 | | | Tampa | FL | 33685-1237 | |
| ROARK, BRANDEN | | Address on File | | | | | | |
| ROB BUCK PHOTOGRAPHS, INC | | 3411 CLEARVIEW DR | | | Austin | TX | 78703 | |
| ROB PEDERSON | | Address on File | | | | | | |
| Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP | | 2000 K Street, NW | 4th FL | | Washington | DC | 20006 | |
| Robert A. Leonard | | Address on File | | | | | | |
| Robert Carey | | Address on File | | | | | | |
| Robert Flink | | Address on File | | | | | | |
| ROBERT GAGE | | Address on File | | | | | | |
| ROBERT GEORGE | | Address on File | | | | | | |
| Robert Half Finance and Accounting | | 2613 Camino Ramon | | | San Ramon | CA | 94583 | |
| Robert Half Finance and Accounting | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 131 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Robert Half Legal | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Legal | | File 73484 | PO Box 60000 | | San Francisco | CA | 94160-3484 | |
| Robert Half Management Resources | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Management Resources | | PO Box 60000 | | | San Francisco | CA | 94160-3484 | |
| Robert Half Technology | | PO Box 743295 | | | Los Angeles | CA | 90074-3295 | |
| Robert Half Technology | | FILE 73484 | PO Box 60000 | | San Francisco | CA | 94160-3484 | |
| Robert Hargesheimer | | Address on File | | | | | | |
| Robert M. Garza & Associates, Inc. | | 1001 Hot Springs Dr | | | Allen | TX | 75013 | |
| ROBERT MUNROE | | Address on File | | | | | | |
| Robert Pederson | | Address on File | | | | | | |
| Robert Peiser | | Address on File | | | | | | |
| Robert Roland | | Address on File | | | | | | |
| Robert Sullivan | | Address on File | | | | | | |
| ROBERT THOMPSON | | Address on File | | | | | | |
| Robert William Chanda | | Address on File | | | | | | |
| Roberta L. Fisher | | Address on File | | | | | | |
| Robin Russell, Joseph P. Rovira | Hunton Andrews Kurth LLP | 600 Travis Street, Suite 4200 | | | Houston | TX | 77002 | |
| Robust Advisors, Inc. | | 7 DeGraaf Court | | | Mahwah | NJ | 07430 | |
| ROBY, JOHN | | Address on File | | | | | | |
| Rochelle McCullough, LLP | E. P. Keiffer | 325 North St. Paul Street, Suite 4500 | | | Dallas | TX | 75201 | |
| Rockwall CDO II Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwall CDO II, Ltd. Investors Bank & Trust Company | Investors Bank & Trust Company | 200 Claredon Street | CDO Services Group | | Boston | MA | 02116 | |
| Rockwall CDO II, Ltd. Investors Bank & Trust Company | Rockwall CDO II Ltd c/o Maples Finance Limited | P.O. Box 1093GT, Boundary Hall | Cricket Square George Town, Grand Cayman | | Grand Cayman | | | Cayman Islands |
| Rockwall CDO Ltd JPMorgan Chase Bank, National Association | JPMorgan Chase Bank | 600 Travis Street | 50th Floor | Attention The Directors-Stratford CLO Ltd. Worldwide Securities Services-Rockwall CDO Ltd. | Houston | TX | 77002 | |
| Rockwall CDO Ltd. | c/o Maples Finance Limited | P.O. Box 1093GT | Queensgate House South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwall CDO Ltd., et al | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Rockwell CDO (Delaware) Corp. | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO I Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO II Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rockwell CDO, Ltd | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Rod Laughlin | | Address on File | | | | | | |
| Rod Lim | | Address on File | | | | | | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| RODDA, SANDIE | | Address on File | | | | | | |
| RODDA, SANDIE K | | Address on File | | | | | | |
| Roderick Givens | | Address on File | | | | | | |
| Rodolfo Esquivel | | Address on File | | | | | | |
| Roe Golightly | | Address on File | | | | | | |
| Roeber, Blair A. | | Address on File | | | | | | |
| ROGER CHEN | | Address on File | | | | | | |
| ROGER LI | | Address on File | | | | | | |
| ROOGE DUNN GROUP, PC | Brian P. Shaw | 500 N. Akard Street, Suite 1900 | | | Dallas | TX | 75201 | |
| Romacorp, Inc. | David Short | 1700 Alma Drive | Suite 400 | | Plano | TX | 75075 | |
| Ron Attar | | Address on File | | | | | | |
| Ron DVari | | Address on File | | | | | | |
| Ron Patterson Insurance | | 2435 N Central Expy Ste 1600 | | | Richardson | TX | 75080-2784 | |
| Ronald McDonald House of Dallas | | 5641 Medical Center Dr | | | Dallas | TX | 75235 | |
| ROOS, PAUL | | Address on File | | | | | | |
| Ropes & Gray LLP | | 800 Boylston Street | | | Boston | MA | 02199 | |
| Ropes & Gray LLP | | One International Place | | | Boston | MA | 02110-2624 | |
| Ropes & Gray LLP | | PO Box 414265 | | | Boston | MA | 02214-4265 | |
| Rosen Systems, Inc. | | 2323 Langford St. | | | Dallas | TX | 75208 | |
| Rosenthal, Monhait, & Goddess PA | | Suite 1401, 919 Market St | PO Box 1070 | | Wilmington | DE | 19899-1070 | |
| Rosewood Crescent Hotel | Attn Ms Eva Delgadillo | PO Box 845576 | | | Dallas | TX | 75284-5576 | |
| Rosewood Crescent Hotel | | 400 Crescent Court | | | Dallas | TX | 75201 | |
| Rosewood Crescent Hotel & | | Rosewood Mansion on Turtle Creek | 400 Crescent Court | | Dallas | TX | 75201 | |
| Ross & Smith, PC | Judith W. Ross, Frances A. Smith, Eric Soderlund | 700 North Pearl Street, Suite 1610 | | | Dallas | TX | 75201 | |
| Ross Smith Energy Group | | 400, 407 - 8th Avenue | | | CALGARY | AB | T2P 4Z2 | CANADA |
| Ross Vaillancourt | | Address on File | | | | | | |
| ROSS, JAMES | | Address on File | | | | | | |
| Roth Staffing Companies, LP | | PO Box 848761 | | | Los Angeles | CA | 90084-8761 | |
| ROTHSTEIN, JASON | | Address on File | | | | | | |
| Rothstein, Kass & Company, P.C. | | 9171 Wilshire Blvd, Ste 500 | | | Beverly Hills | CA | 90210-5591 | |
| Roubini Global Economics, LLC | | 131 Varick St., Ste 1005 | | | New York | NY | 10013 | |
| Roubini Global Economics, LLC | | PO Box 10087 | | | Uniondale | NY | 11555 | |
| Rough Creek Lodge | | PO Box 2400 | | | Glen Rose | TX | 76043 | |
| Round Hill Country Club | | 3169 Roundhill Rd | | | Alamo | CA | 94507 | |
| ROURKE, KEVIN | | Address on File | | | | | | |
| ROWLETT HILL, LLP | | 25 HIGHLAND PARK VILLAGE 100 HIGHLAND PARK VILLAGE | STE 100-448 | | Dallas | TX | 75205 | |
| Rowlett Law PLLC | | 100 HIGHLAND PARK VILLAGE | STE 200 | | Dallas | TX | 75205 | |
| Rowlett Law PLLC | | 12655 N Central Expwy Ste 421 | | | Dallas | TX | 75243 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ROY SEROUSSI | | Address on File | | | | | | |
| Royal Dispatch Services Inc | | 43-22 Van Dam Street | | | Long Island City | NY | 11101 | |
| ROYAL PRINTING GROUP, INC. | | 2035 ROYAL LN | STE 250 | | Dallas | TX | 75229 | |
| RR Donnelley | | PO Box 932721 | | | Cleveland | OH | 44193 | |
| RR Donnelley | | PO Box 538602 | | | Atlanta | GA | 30353-8602 | |
| RR Donnelley Financial, Inc. | | PO Box 932721 | | | Cleveland | OH | 44193 | |
| RR Donnelley Financial, Inc. | | PO Box 730216 | | | Dallas | TX | 75373-0216 | |
| RR Donnelley Receivables, Inc | | PO Box 13654 | | | Newark | NJ | 07188-0001 | |
| RSM McGladrey | | 5155 Paysphere Circle | | | Chicago | IL | 60674 | |
| RSM US LLP | | 5155 Paysphere Circle | | | Chicago | IL | 60674 | |
| RTB Media LLC | | 619 Willow Ave | | | Hoboken | NJ | 07030 | |
| Rubin and Rudman LLP | | 50 Rowes Wharf | Suite 3L | | Boston | MA | 02110 | |
| Rudy Mora Brick Masonry | | 131 Rosegarden Dr. | | | McKinney | TX | 75070 | |
| RUGG, STACEY | | Address on File | | | | | | |
| Rugmakers Gallery, Inc. | | 4920 Cash Rd. | | | Dallas | TX | 75247-6308 | |
| RUSCH, MARYAM | | Address on File | | | | | | |
| Russ Kathrein | | Address on File | | | | | | |
| Russel Reynolds & Associates | | Church Street Station | Post Office Box 6427 | | New York | NY | 10249 | |
| Russell Jones & Walker | | 61 Sandmere Rd | Clapham | | London | | SW1Y4UR | United Kingdom |
| Russell Reynolds Associates | | Church Street Station | PO Box 6427 | | New York | NY | 77100 | |
| Russell W. May | | Address on File | | | | | | |
| Russell W. May | | Address on File | | | | | | |
| RUTLEDGE, ROBERT | | Address on File | | | | | | |
| Ryan Associates Technology LLC | | 21 Hillandale Dr | | | New Rochelle | NY | 10804 | |
| RYAN HIGHTOWER | | Address on File | | | | | | |
| Ryan Law | | Address on File | | | | | | |
| Ryan Lucero | | Address on File | | | | | | |
| Ryan Moore | | Address on File | | | | | | |
| Ryan ODowd Photography | | 3924 County Road 168 | | | McKinney | TX | 75071 | |
| Ryan P. Newell (Connolly Gallagher LLP) | Attn Jeffrey C. Wisler, Esq. | Connolly Gallagher LLP | 1201 N. Market Street, 20th Floor | | Wilmington | DE | 19801 | |
| RYAN VOTAW | | Address on File | | | | | | |
| Ryan, Inc. | | Address on File | | | | | | |
| Ryder, Phillip | | Address on File | | | | | | |
| S&P Global Market Intelligence | | 33356 Collection Center Drive | | | Chicago | IL | 60693-0333 | |
| S&P Global Market Intelligence LLC | | 55 Water Street | | | New York | NY | 10041-0000 | |
| S. LeBlanc & Company | | 942 Shore Crest Rd. | | | Carlsbad | CA | 92011 | |
| Saagar Grover | | Address on File | | | | | | |
| Sachdev, Kunal | | Address on File | | | | | | |
| Sacred Heart in NYC | | 1 East 91st ST. | | | New York | NY | 10128 | |
| SACRS | c/o Strategic Local Govt Services, LLC | 1415 L Street, Suite 1000 | | | Sacramento | CA | 95814 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 121 of 155

**Appx. 00407**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Sadis & Goldberg | Stephen Hutter | 551 Fifth Avenue, 21st Flr | | | New York | NY | 10176 | |
| SAEHLER, CHRISTOPHER J. | | Address on File | | | | | | |
| Sagar Vira | | Address on File | | | | | | |
| Sage Document Services Group LLC | | 2 West 45th Street | Ste 407 | | New York | NY | 10036 | |
| Sage Search Partners | | 3811 Turtle Creek Blvd | Suite 850 | | Dallas | TX | 75219 | |
| SagePoint Financial, Inc. | Attn Supervision-Reimbursement | 2800 N Central Ave, Suite 1200 | | | Phoenix | AZ | 85004 | |
| SagePoint Financial, Inc. | | 74 8th St. SE | Suite 105 | | Hickory | NC | 28602 | |
| SAKUNGEW, PON | | Address on File | | | | | | |
| Sal Villacorta | | Address on File | | | | | | |
| Salesforce.com | | PO BOX 842569 | | | Boston | MA | 02284 | |
| Salesforce.com | | PO Box 5126 | | | Carol Stream | IL | 60197-5126 | |
| Salesforce.com | | PO Box 203141 | | | Dallas | TX | 75320-3141 | |
| Salesmanship Club Chrtbl Golf Dallas Inc | | 106 E. Tenth St. | | | Dallas | TX | 75203 | |
| Sali Fund Management, LLC | Tom Nieman | 6836 Austin Center Blvd. | Suite 320 | | Austin | TX | 78731 | |
| Salomon Smith Barney Inc. Highland Loan Funding V Ltd. | Highland Loan Funding V Ltd | P. O. Box 1093 GT | Queensgate House South Church Street | The Directors | George Town | | KY1-1108 | Cayman Islands |
| Salomon Smith Barney Inc. Highland Loan Funding V Ltd. | Salomon Smith Barney | 390 Greenwich Street | 4th Floor | FI Structured Products Group | New York | NY | 10013-2396 | |
| Salus Valuation Group, Inc. | | 111 West Myrtle Ave | Unit 6 | | Foley | AL | 36535 | |
| Sam Engineering & Testing | | 1115 Luke St, Suite 100 | | | Irving | TX | 75061 | |
| SAM GARCIA | | Address on File | | | | | | |
| Sam Graham | | Address on File | | | | | | |
| Sams Club | | PO Box 9001152 | | | Louisville | KY | 40290-1152 | |
| Sanborn, Brian | | Address on File | | | | | | |
| SANBORN, PATRICIA | | Address on File | | | | | | |
| SANCHEZ, RODERICK | | Address on File | | | | | | |
| SANDEEP GUPTA | | Address on File | | | | | | |
| SANDEEP GUPTA | | Address on File | | | | | | |
| Sandlapper Securities, LLC | | 406 N Pleasantburg Dr | | | Greenville | SC | 29607-2128 | |
| Sands Point Funding, Ltd. | c/o Guggenheim Partners | 330 Madison Ave, 11th Floor | | | New York | NY | 10017 | |
| SANJEEV MEHTA | | Address on File | | | | | | |
| Santoyo Moore Wehmeyer P.C. | | 1020 NE Loop 410, Suite 320 | | | San Antonio | TX | 78209 | |
| Sard Verbinnen & Co. | | 630 Third Ave | | | New York | NY | 10017 | |
| Sard Verbinnen & Co. | | General Post Office | PO Box 26781 | | New York | NY | 10087-6781 | |
| Sard Verbinnen, LLC | | PO Box 26781 | | | New York | NY | 10087-6781 | |
| Satuit Technologies Inc. | | 80 Washington St. | Unit M50 | | Norwell | MA | 02061 | |
| Satuit Technologies Inc. | | 100 Grossman Drive | Suite 302 | | Braintree | MA | 02184 | |
| Savvy Training & Consulting | | 4530 Independence Trail | | | Evergreen | CO | 80439 | |
| Sawko & Burroughs, P. C. | | 1172 Bent Oaks Drive | | | Denton | TX | 76210 | |
| Saxton Morgan | | PO Box 2302 | | | Addison | TX | 75001 | |
| Sayles Werbner | | Address on File | | | | | | |
| Sbaiti & Company PLLC | Mazin A Sbaiti | J.P. Morgan Chase Tower | 2200 Ross Avenue | Suite 4900W | Dallas | TX | 75201 | |
| SBC | | PO Box 660324 | | | Dallas | TX | 75266-0324 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 135 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SBC Long Distance | | PO Box 660688 | | | Dallas | TX | 75266-0688 | |
| SBC Southwestern Bell | | PO Box 5069 | | | Saginaw | MI | 48605-5069 | |
| SC Department of Revenue | | 300A Outlet Pointe Boulevard | | | Columbia | SC | 29210 | |
| Scarab Consulting | AMEGY BANK NATIONAL ASSOCIATION | ASSIGNEE FOR SCARAB ACQUISITION, LLC | DEPT 338, PO BOX 4346 | | Houston | TX | 77210-4346 | |
| Scarab Consulting | | Dept 338, PO Box 4346 | | | Houston | TX | 77210 | |
| Scarab Consulting | | 504 Lavaca, Suite 910 | | | Austin | TX | 78701 | |
| SCF Securities, Inc. | | 155 E. Shaw Avenue | Suite 102 | | Fresno | CA | 93710 | |
| SCHEMBRI, STEPHEN | | Address on File | | | | | | |
| Schmidt & Stacey Consulting Eng, Inc. | | 400 City Place | 2711 N. Haskell Ave. | Lock Box 29 | Dallas | TX | 75204 | |
| SCHNABEL, MATTHEW | | Address on File | | | | | | |
| School, Jennifer | | Address on File | | | | | | |
| SCHRAY, NATHAN | | Address on File | | | | | | |
| SCHRECK, DEANNE | | Address on File | | | | | | |
| Schroepfer Wessels Jolesch | | 8401 North Central Expwy Ste 300 | | | Dallas | TX | 75225 | |
| SCHROTH, MELISSA | | Address on File | | | | | | |
| SCHULER, ELLIOT | | Address on File | | | | | | |
| SCHULER, KARISSA | | Address on File | | | | | | |
| Schulte Roth & Zabel LLP | James T. Bentley | 919 Third Avenue | | | New York | NY | 10022 | |
| Schumacher Cargo Logistics, Inc. | | 550 W. 135th Street | | | Gardena | CA | 90248 | |
| SCI | | 31/507 Clerkenwell Close | | | London | | EC1R 0AT | United Kingdom |
| Scoop Reprint Source | | 30270 Rancho Viejo Road | Suite E | | San Juan Capistrano | CA | 92675 | |
| Scott A. Snook | | Address on File | | | | | | |
| Scott B. Ellington | c/o David Neier, Winston Strawn LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Scott B. Ellington | Scott Ellington c/o Francis A Smith, Ross & Smith PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| Scott B. Ellington | | Address on File | | | | | | |
| SCOTT COOPER | | Address on File | | | | | | |
| Scott Douglass & McConnico LLP | | 303 Colorado Street, Suite 2400 | | | Austin | TX | 78701 | |
| Scott Ellington | Debra A. Dandeneau | Baker & McKenzie LLP | 452 Fifth Avenue | | New York | NY | 10018 | |
| Scott Ellington | Michelle Hartmann | Baker & McKenzie LLP | 1900 North Pearl, Suite 1500 | | Dallas | TX | 75201 | |
| Scott F. Kavanaugh | | Address on File | | | | | | |
| Scott F. Kavanaugh | | Address on File | | | | | | |
| Scott Harris | | Address on File | | | | | | |
| Scott Hoermann | | Address on File | | | | | | |
| Scott K Meyer | | Address on File | | | | | | |
| SCOTT KOHNEN | | Address on File | | | | | | |
| Scott McCurry | | Address on File | | | | | | |
| SCOTT NELSON | | Address on File | | | | | | |
| Scott Niebling Valuation Group | | 3930 East Ray Rd | Suite 180 | | Phoenix | AZ | 85044 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 136 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SCOTT ROSENTHAL | | Address on File | | | | | | |
| SCOTT SCHEIN | | Address on File | | | | | | |
| Scott Shpilberg | | Address on File | | | | | | |
| SCOTT TANDBERG | | Address on File | | | | | | |
| Scott Waggoner | | Address on File | | | | | | |
| Scura Paley Securities LLC | | 489 5th Ave, 15th Flr | | | New York | NY | 10017 | |
| Sea Island Company | c/o Group Billing, Acctg Dept | 100 Cloister Drive | | | Sea Island | GA | 31561 | |
| SEAL Legacy Foundation | | 1401 McKinney | Ste 2222 | | Houston | TX | 77010 | |
| SEAMAN, CRISTINA | | Address on File | | | | | | |
| SeamlessWeb Professional Solutions, Inc. | | PO Box 5439 | | | New York | NY | 10087-5439 | |
| SeamlessWeb Professional Solutions, Inc. | | PO Box 71649 | | | Chicago | IL | 60694-1649 | |
| Sean Neumayer Photography | | 4321 S. Coolidge Ave | | | Tampa | FL | 33611 | |
| Search Finance | | 14001 Dallas Pkwy | Ste 1200 | | Dallas | TX | 75240 | |
| Seaver, Jeffrey | | Address on File | | | | | | |
| SEC Headquarters | Mail Stop 7010 / 2017 Annual Report | 100 F Street, NE | Mail Stop 7010 | | WASHINGTON | DC | 20549-2000 | |
| Secretary of State | Division of Corporations | Franchise Tax | P.O. Box 7040 | | Dover | DE | 19903 | |
| Secretary of State | | PO BOX 12887 | | | Austin | TX | 78711 | |
| Secretary of State | | 1500 11th St | | | Sacramento | CA | 95814 | |
| Secretary of State | | PO Box 13550 | IRC Unit, 3rd FL | | Austin | TX | 78711-3550 | |
| Secretary of State | | PO Box 13697 | | | Austin | TX | 78711-3697 | |
| Secretary of State | | 801 Capitol Way South | PO Box 40234 | | Olympia | WA | 98504-0234 | |
| Secretary of State of Illinois | | Illinois Securities Department | 421 E. Capital Ave., 2nd Fl. | | Springfield | IL | 62701 | |
| SECRETARY OF STATE OF TEXAS | ACCOUNTS RECEIVABLE | PO BOX 12887 | | | Austin | TX | 78711-2887 | |
| Secretary of the Commonwealth | | Securities Division | One Ashburton Place, Rm 1701 | | Boston | MA | 02108 | |
| Secretary of Treasury | | P.O. Box 7040 | | | Dover | DE | 19903 | |
| Secretary of Treasury | | 15th & Pennsylvania Avenue, N.W. | | | Washington | DC | 20220 | |
| Secure Concepts LLC | | 128 East BRdway #501 | | | New York | NY | 10002 | |
| Secure Options, Inc. | | 5420 Bryan Street | | | Dallas | TX | 75206 | |
| Secure Options, Inc. | | 2156 W Northwest Hwy Ste 300 | | | Dallas | TX | 75220 | |
| Secure Share Network LLC | | 3475 Piedmont Road NE, Ste 450 | | | Atlanta | GA | 30305 | |
| Secure Source Inc. | | 710 South Kimball Ave | | | Southlake | TX | 76092 | |
| Secured Access Systems, LLC | | 1913 Walden Court | | | Flower Mound | TX | 75022 | |
| Securities & Exchange Commission | Division of Trading & Markets | 100 F Street, NE | Mail Stop 7010 | | WASHINGTON | DC | 20549-2000 | |
| Securities & Exchange Commission | Michael A. Berman, Esq. | Office of General Counsel-Bankruptcy | 100 F Street, N.E. | | Washington | DC | 20549 | |
| Securities America | Attn Accounting Dept | 12325 Port Grace Blvd. | | | La Vista | NE | 68128 | |
| Securities America, Inc. Cooper McManus | | 9870 Research Drive | | | Irvine | CA | 92618-3302 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 124 of 155

**Appx. 00410**

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Securities Commissioner State of ND | | State Capitol | 600 East Boulevard Avenue, 5th Floor | | Bismarck | ND | 58505-0510 | |
| Securities Division, AZ Corp. Comm | | Securities Division | 1300 W Washington St #3 | | Phoenix | AZ | 85007 | |
| Securities Investor Protection Corp | | PO Box 92185 | | | Washington | DC | 20090-2185 | |
| Securities Service Network | | 115 Glastonbury Blvd | | | Glastonbury | CT | 06033 | |
| See Food Media LLC | | 496 Lagurdai Place # 4C | | | New York | NY | 10012 | |
| SEI Investments Distribution Co. | Attn Chris Rowan-SIDCO Acctng | One Freedom Valley Dr | | | Oaks | PA | 19456 | |
| SEIDEN KRIEGER ASSOCIATES, INC | | 375 PARK AVE | | | New York | NY | 10152 | |
| Selah Photography | | 5421 Shiver Road | | | Keller | TX | 76244 | |
| Select Security & Private Investigations | | PO Box 1352 | | | Rockwall | TX | 75087 | |
| Selig ADR, Inc | | 5009 Caroline St., Ste 100 | | | Houston | TX | 77004 | |
| Selman, Matthew | | Address on File | | | | | | |
| SERENI, ALEXIS J. | | Address on File | | | | | | |
| SERVCORP | | Level 19 | Two International Finance Center | 8 Finance Street | CENTRAL HONG KONG | | | HONG KONG |
| SERVCORP | | 6 BATTERY ROAD | RAFFLES PLACE | | Singapore | | 049909 | SINGAPORE |
| Service Systems Associates | Attn Robin Scichili | 650 S RL Thornton Frwy | | | Dallas | TX | 75203 | |
| SET, AUGUSTUS | | Address on File | | | | | | |
| Setfords Solicitors | | 14 Haydon Place | | | Guilford | | GU1 4LL | United Kingdom |
| Seth Weinstein | | Address on File | | | | | | |
| Seton Hall University | Attn Bryan Felt | 400 South Orange Ave | | | South Orange | NJ | 07079 | |
| Severson, Keith | | Address on File | | | | | | |
| SEVILLA, JEAN-PAUL | | Address on File | | | | | | |
| Seward & Kissel | | One Battery Park Plaza | | | New York | NY | 10004 | |
| Seyfarth Shaw LLP | | 131 S. Dearborn Street, Suite 2400 | | | Chicago | IL | 60603 | |
| ShadowTV, Inc. | | 630 9th Ave | Suite 1000 | | New York | NY | 10036 | |
| Shag Carpet Productions, Inc. | | 502 South 2nd Avenue | | | Dallas | TX | 75226 | |
| SHAH, AMOL | | Address on File | | | | | | |
| SHAHDA, CHRIS | | Address on File | | | | | | |
| SHAHDA, CHRISTOPHER | | Address on File | | | | | | |
| Shahzad Pirvani | | Address on File | | | | | | |
| Shakeford Melton & McKinley | | 3333 Lee Pkwy | 10 th fl | | Dallas | TX | 75219 | |
| Shane Tipton | | Address on File | | | | | | |
| Shannon, Gracey, Ratliff & Miller, LLP | | 420 Commerce St., Ste 500 | | | Fort Worth | TX | 76102 | |
| SharePoint Solutions | Attn Accounts Receivable | PO Box 1588 | | | Brentwood | TN | 37024-1588 | |
| SHARON EASLEY | | Address on File | | | | | | |
| SHARON SHUSTER | | Address on File | | | | | | |
| SHARRY, GREGORY | | Address on File | | | | | | |
| Shasta Land Management Consultants | | 1229 South Street | | | Redding | CA | 96001 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 138 of
175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SHAWN LEDERMAN | | Address on File | | | | | | |
| Shawn Raver | | Address on File | | | | | | |
| Shayla Kelly | | Address on File | | | | | | |
| Shea & Carlyon Ltd | | 701 Bridger Ave #850 | | | LasVegas | NV | 89101 | |
| Shearman & Sterling LLP | | 5990 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shelley Shackelford & Co. | | 5807 SANDHURST LN SUITE D | | | Dallas | TX | 75206 | |
| SHELLY RASTOGI | | Address on File | | | | | | |
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | | 333 S. Hope Street | 48th Floor | | Los Angeles | CA | 90071 | |
| SHIFFERD, CHARLES | | Address on File | | | | | | |
| Shoot2Sell | | 14681 Midway Rd | Ste 105 | | Addison | TX | 75001 | |
| Short, Lauren | | Address on File | | | | | | |
| SHPILBERG, SCOTT | | Address on File | | | | | | |
| Shred-it USA | | 11101 Franklin Avenue | Suite 100 | | Franklin Park | IL | 60131-1403 | |
| Shred-it USA | | 28883 Network Place | | | Chicago | IL | 60673-1288 | |
| Shred-it USA | | PO Box 730504 | | | Dallas | TX | 75373-0504 | |
| Shred-it USA | | PO Box 101007 | | | Pasadena | CA | 91189-1007 | |
| SHUMWAY, CLAY | | Address on File | | | | | | |
| SHUSTER, SHARON | | Address on File | | | | | | |
| Siber Systems, Inc | | 3701 Pender Dr Ste 400 | | | Fairfax | VA | 22030-6045 | |
| Siddharth Mehra | | Address on File | | | | | | |
| SIDLEY AUSTIN LLP | | PO BOX 0642 | | | Chicago | IL | 60690 | |
| SIEGEL, HAROLD | | Address on File | | | | | | |
| Siepe Services, LLC | Chris Doty | 5440 Harvest Hill Road Suite 100 | | | Dallas | TX | 75230 | |
| Siepe Services, LLC | | 5440 Harvest Hill Road | Suite 100 | | Dallas | TX | 75230 | |
| Siepe Services, LLC | | 2200 Ross Ave. Ste 4700E | | | Dallas | TX | 75201-0000 | |
| Siepe, LLC | | 6135 Churchill Way | | | Dallas | TX | 75230 | |
| SIEVERT, AMY | | Address on File | | | | | | |
| Sigma Financial Corp | Attn Jackie Pascarella | 1717 N. JH 35, Ste 150 | | | Round Rock | TX | 78664 | |
| Sigma Financial Corporation | | 300 Parkland Plaza | | | Ann Arbor | MI | 48103 | |
| Signator Investors, Inc. | | 20 E Thomas Rd Ste 2000 | | | Phoenix | AZ | 85012-3129 | |
| Signature Productions, Ltd. | | 5331 85th St. | | | Lubbock | TX | 79424 | |
| Sills Cummis & Gross | | The Legal Center | One Riverfront Plaza | | Newark | NJ | 07102-5400 | |
| Silva, Alison | | Address on File | | | | | | |
| Silver Scriptor LLC | | PO Box 9012 | | | Austin | TX | 78766 | |
| Silver Scriptor LLC | | PO Box 61064 | | | Seattle | WA | 98141 | |
| Silverman Communications Group | | 11 Carol Ct. | | | Glen Rock | NJ | 07452 | |
| SIMEK, DAVID | | Address on File | | | | | | |
| SIMMONS, DAVID | | Address on File | | | | | | |
| Simon, Scott | | Address on File | | | | | | |
| Simpson Appraisal, Inc | | 6009 Belt Line Rd., Suite 145 | | | Dallas | TX | 75254 | |
| SIMPSON THACHER & BARTLETT LLP | | 425 LEXINGTON AVE | | | New York | NY | 10017-3954 | |
| SIMPSON THACHER & BARTLETT LLP | | PO Box 29008 | | | New York | NY | 10087-9008 | |
| Sims, Austin | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 139 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SINGH, TANIA | | Address on File | | | | | | |
| SISK, JESSICA | | Address on File | | | | | | |
| Stirick and Company Inc. | | 11999 Vincente Blvd | Penthouse | | Los Angeles | CA | 90049 | |
| Stirick and Company Inc. | | 1840 Century Park East Ste 800 | | | Los Angeles | CA | 90067 | |
| SK Research, LLC | | 10320 Little Patuxent Parkway | 12th Floor | | Columbia | MD | 21044 | |
| Skadden, Arps, Slate, Meagher & Flom LLP | | Four Times Square | | | New York | NY | 10036 | |
| Skadden, Arps, Slate, Meagher & Flom LLP | | PO Box 1764 | | | White Plains | NY | 10602 | |
| SKC COMMUNICATION PRODUCTS, LLC | | P.O. BOX 874843 | | | Kansas City | MO | 64187-4843 | |
| Skybridge Alternatives Conference | Attn Jeanie Reyes | 527 Madison Ave, 16th Flr | | | New York | NY | 10022 | |
| SkyBridge SALT LLC | Attn Jeanie Reyes | 527 Madison Ave, 16th Floor | | | New York | NY | 10022 | |
| Skyline DFW Exhibits & Events | | 900 Avenue S | | | Grand Prairie | TX | 75050 | |
| Skyline Sector 5 | | 525 113th Street | | | Arlington | TX | 76011 | |
| Slant Partners | | 3838 Oak Lawn Avenue | Suite 1550 | | Dallas | TX | 75219 | |
| Slayton International | | One North Franklin Ste 2500 | | | Chicago | IL | 60606 | |
| SlideGenius, Inc. | | 1660 Hotel Cir N # 175 | | | San Diego | CA | 92108-2807 | |
| SloMo Lounge | | 4901 Harbor Court | | | Flower Mound | TX | 75022 | |
| Smallwood, Allan | | Address on File | | | | | | |
| Smarsh | | 921 SW Washington St | Suite 540 | | Portland | OR | 97205 | |
| Smarsh | | PO Box 505265 | | | Saint Louis | MO | 63150-5265 | |
| Smith Katzenstein Jenkins LLP | | 800 Delaware Avenue, Ste. 1000 | P.O. Box 410 | | Washington | DE | 19899 | |
| SMITH, DAVID | | Address on File | | | | | | |
| Smith, Felicia | | Address on File | | | | | | |
| Smith, Ian | | Address on File | | | | | | |
| Smith, Jackson, Boyer & Bovard | | 9400 NCX, Ste 420 9400 N Central Expwy | | | Dallas | TX | 75231-5063 | |
| SMITH, SEAN | | Address on File | | | | | | |
| Smith, Theodore | | Address on File | | | | | | |
| SMS | | WELLS FARGO BANK-IN CARE OF SMS | 6480 ARGO ST | | Dallas | TX | 75214 | |
| SMU Cox School of Business | | Pitts Leadership Award | PO Box 750333 | | Dallas | TX | 75275-0333 | |
| Snapptraffic Consulting | | 9 Cherry Pl. | | | Huntington | NY | 11743 | |
| Snell & Wilmer LLP | | One Arizona Center | 400 E. Van Buren, Suite 1900 | | Phoenix | AZ | 85004-2202 | |
| SNI Companies | | 14241 Dallas Parkway | Suite 550 | | Dallas | TX | 75254 | |
| SNL Financial | | PO BOX 414624 | | | Boston | MA | 02241-4624 | |
| SNR Denton US LLP | | 233 S. Wacker Dr | Suite 7800 | | Chicago | IL | 60606 | |
| Snyder Kearney, LLC | | 10320 Little Patuxent Pkwy Suite 1200 | | | Columbia | MD | 21044 | |
| Snyder, Evan | | Address on File | | | | | | |
| Social Matters | | PO Box 800357 | | | Dallas | TX | 75380-0357 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 140 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SOCIETY FOR HUMAN RESOURCE MANAGEMENT | | PO BOX 79482 | | | Baltimore | MD | 21279-0482 | |
| Society of St. Vincent de Paul, Inc | Diocesan Council of Dallas | 10500 Steppington Drive, Suite 251 | | | Dallas | TX | 75230 | |
| Software Shelf International, Inc | | 601 Cleveland Street, Suite 710 | | | Clearwater | FL | 33755 | |
| Software Shelf International, Inc | | PO Box 7343 | | | Menlo Park | CA | 94026 | |
| SoftwareONE, Inc. | | 20875 Crossroads Cir. | Suite 1 | | Waukesha | WI | 53186 | |
| SoftwareONE, Inc. | | PO Box 510944 | | | New Berlin | WI | 53151-0944 | |
| Sohn Conference Foundation | c/o Garwood Events | 225 106 Street, Ste 15M | 15700 W. Cleveland Ave | | New York | NY | 10025 | |
| Solarwinds | | 7171 Southwest Parkway | Bldg 400 | | Austin | TX | 78735-0000 | |
| SolarWinds, Inc | | PO Box 730720 | | | Dallas | TX | 75373 | |
| Solid Details LLC | | 2121 Santa Anna Ave. | | | Dallas | TX | 75228 | |
| Solomon R. Guggenheim Foundation | | 345 Hudson Street | 12th Floor | | New York | NY | 10014 | |
| SOLOW BUILDING COMPANY II, LLC | | PO BOX 27112 | | | New York | NY | 10087-7112 | |
| SOLOW BUILDING COMPANY II, LLC | | PO Box 823812 | | | Philadelphia | PA | 19182-3812 | |
| SOMMER FRAZIER | | Address on File | | | | | | |
| Sonny Bryans Smokehouse | | 2625 Seelco St | | | Dallas | TX | 75235-2608 | |
| Sony Pictures Studio Group | A Sony Pictures Entertainment Company | File #54715 | | | Los Angeles | CA | 90074-4715 | |
| Soto, Hailey | | Address on File | | | | | | |
| Source Code North America, Inc | | Dept CH 16510 | | | Palatine | IL | 60055-6510 | |
| Source, Inc. | | PO Box 202414 | | | Dallas | TX | 75320 | |
| SourceMedia | | PO Box 4871 | | | Chicago | IL | 60680 | |
| SourceMedia | | PO Box 4634 | | | Chicago | IL | 60680-9598 | |
| SourceMedia | | PO Box 71633 | | | Chicago | IL | 60694-1633 | |
| South Dakota Division of Securities | | 124 S. Euclid, Ste. 104 | | | Pierre | SD | 57501 | |
| Southern Conference Teacher Retirement | | PO Box 642 | | | Sturbridge | MA | 01566 | |
| Southern Methodist University | Attn Erin Sutton | PO Box 750460 | | | Dallas | TX | 75275-0460 | |
| Southfork CLO Ltd. JPMorgan Chase Bank, National Association | | Queensgate House, South Church Street, George Town | | P.O. Box 1093GT | Grand Cayman | | | Cayman Islands |
| Southfork CLO Ltd. JPMorgan Chase Bank, National Association | Attention The Directors-Stratford CLO Ltd. | 600 Travis Street | 50th Floor | Institutional Trust Services-Southfork CLO Ltd. | Houston | TX | 77002 | |
| Southfork CLO, Ltd. | The Directors | PO Box 1093 GT | Queensgate House, South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Southland Property Tax Consultants, Inc | | 201 S Main St Ste 1460 | | | Fort Worth | TX | 76102-3146 | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Southland Property Tax Consultants, Inc | | 777 Main Street | Suite 1960 | | Fort Worth | TX | 76102-5323 | |
| Southwest Ford Inc. | | PO Box 234 | | | Weatherford | TX | 76086 | |
| Southwest Glass, Inc. | | 2333 Glenda Lane | | | Dallas | TX | 75229 | |
| Southwest Reporting & Video Service | | 826 Heights Blvd. | | | Houston | TX | 77007 | |
| Southwest Search | | PO Box 710596 | | | Dallas | TX | 7537-0596 | |
| Southwest Securities, Inc. | Attn Holly Peritz | 1201 Elm St., Ste 3500 | | | Dallas | TX | 75270 | |
| Southwestern Medical Foundation | | Parkland Hall at Old Parkland | 3889 Maple Ave., Ste 100 | | Dallas | TX | 75219 | |
| Sove Lavi | | Kimberly Simeus | 1212 Wyndham Hill Lane | | Southlake | TX | 76092 | |
| SOWIN, JOSEPH | | Address on File | | | | | | |
| SOWIN, JOSEPH | | Address on File | | | | | | |
| Spears & Associates | | 8908 S. Yale | Suite 440 | | Tulsa | OK | 74137 | |
| Special Delivery Service, Inc. | | 5470 L.B.J. Freeway | | | Dallas | TX | 75240 | |
| Special Fund For Disability Benefits | Accounts-DB Penalty | 328 State Street | | | Schenectady | NY | 12305-2318 | |
| Special Fund For Disability Benefits | Accounts-DB Penalty Room | 301 20 Park St | | | Albany | NY | 12207-1674 | |
| Specialized Schedulers, Inc. | | 22334 SW 107th Ave | | | Tualatin | OR | 97062 | |
| SPECTOR, ANASTASIYA | | Address on File | | | | | | |
| SPECTRUM GAMING GROUP LLC | | 2 DONOVAN ROAD | | | Pennington | NJ | 08534 | |
| SPEICHER, NATHAN | | Address on File | | | | | | |
| Spence, Austin | | Address on File | | | | | | |
| Spherion | | PO Box 100186 | | | Atlanta | GA | 30384-0186 | |
| Spinner Printing Company | | 3335 Keller Springs #100 | | | Carrollton | TX | 75006 | |
| Spin-Off Advisors, LLC | | 1327 W. Washington Blvd | Ste 4-G | | Chicago | IL | 60607 | |
| Spoke LLC | | 3304 9th St. NE #1 | | | Washington | DC | 20017 | |
| Spot Cooling Systems | | 1420 Century Dr Ste 800 | | | Carrollton | TX | 75006 | |
| Spotlight Marketing Communications | | 18101 Von Karman Ave. | Third Floor | | Irvine | CA | 92612 | |
| Springboard Network LLC | | 9900 Spectrum Drive | | | Austin | TX | 7871-0000 | |
| Sprint | | PO Box 660092 | | | Dallas | TX | 75266-0092 | |
| Square, Inc | | 1455 Market St. | Suite 600 | | San Francisco | CA | 94103 | |
| Squire Patton Boggs (US) LLP | | PO Box 643051 | | | Cincinnati | OH | 45264 | |
| ST JUDE CHILDRENs RESEARCH HOSPITAL | | 501 St. Jude Place | | | Memphis | TN | 38105 | |
| ST JUDE CHILDRENs RESEARCH HOSPITAL | | 4324 N BELTLINE RD | STE C-206 | | Irving | TX | 75038 | |
| St. Louis Cardinals | | 700 Clark St | Group Ticket Dept. | | Saint Louis | MO | 63102 | |
| STA SVDP | | 6306 Kenwood Ave | | | Dallas | TX | 75214 | |
| Stacey Morimoto | | Address on File | | | | | | |
| STACEY RUGG | | Address on File | | | | | | |
| Staffelbach, Inc. | | 2525 McKinnon, Suite 800 | | | Dallas | TX | 75201 | |
| STAGGS, JOE | | Address on File | | | | | | |
| Staltari, Mauro | | Address on File | | | | | | |
| Stan Lata | | Address on File | | | | | | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Standard & Poors | Capital IQ | 2542 Collection Center Dr | | | Chicago | IL | 60693 | |
| Standard & Poors/Capital IQ | | 33356 Collection Center Drive | | | Chicago | IL | 60693-0333 | |
| Standard Ins. Co. RAS Executive Benefits | Attn Glenda Wright-P4B | 1100 SW 6th Ave | | | Portland | OR | 97204 | |
| Standard Ins. Co. RAS Executive Benefits | | INDIVIDUAL CLIENT SERVICES | PO BOX 711 | | Portland | OR | 97207-0711 | |
| Standard Ins. Co. RAS Executive Benefits | | PO BOX 5674 | | | Portland | OR | 97228-5674 | |
| Standard Insurance Company | | 1100 SW 6th Ave | | | Portland | OR | 97204 | |
| Standard Insurance Company | | PO Box 2707 | | | Portland | OR | 97208-3358 | |
| Standard Insurance Company | | PO BOX 3358 | | | Portland | OR | 97208-3358 | |
| Standard Research Corporation | | 4430 Tyne Blvd | | | Nashville | TN | 37215 | |
| STANLEY ACCESS TECH LLC | | PO BOX 0371595 | | | Pittsburgh | PA | 15251-7595 | |
| Stanton Advisors LLC | | 300 Coles Street | Apt. 802 | | Jersey City | NJ | 07310 | |
| Stanton Law Firm PC | James Stanton | 1717 Main St., Suite 3800 | | | Dallas | TX | 75201 | |
| Stanton Law Firm PC | | 4350 Beltway Drive | | | Addison | TX | 75001 | |
| Stanton LLP | | 1717 Main St, Ste 3800 | | | Dallas | TX | 75201 | |
| Stanton LLP | | 9400 N Central Expwy | Ste 1304 | | Dallas | TX | 75231 | |
| Staples Credit Plan | | Dept. 22 - 0008144217 PO Box 9020 | | | Des Moines | IA | 50368-9020 | |
| Star Displays | | 16914 FM 2920 | | | Tomball | TX | 77377 | |
| Star Pro Staffing | | 8600 Preston Rd Apt 113 | | | Dallas | TX | 75225-3529 | |
| State Auditor | | 1900 Kanawha Boulevard East | Building 1, Room W-100 | | Charleston | WV | 25305 | |
| STATE BAR OF TEXAS | | PO Box 5075 | | | Saginaw | MI | 48605-5075 | |
| State Bar of Texas | | PO Box 12487 | | | Austin | TX | 78711-2487 | |
| State Bar of Texas | | PO BOX 13007 | MCLE DEPT | | Austin | TX | 78711-3007 | |
| State Bar of Texas | | PO Box 149335 | | | Austin | TX | 78714-9335 | |
| State Comptroller | | 111 E 17th St | | | Austin | TX | 78774-0001 | |
| State Comptroller | | Comptroller of Public Accounts | 111 E 17th St | | Austin | TX | 78774-0100 | |
| State Fair of TX Youth Livestock Auction | | PO Box 150009 | | | Dallas | TX | 75315 | |
| State Insurance Fund | | PO Box 4779 | Disability Benefits | | Syracuse | NY | 13221-4779 | |
| State Insurance Fund | | PO Box 5261 | 333 W. Willoughby Ave., Ste. 9 | | Binghamton | NY | 13902-5261 | |
| State of Alaska | | Securities Section, Division of Banking | | | Juneau | AK | 99801 | |
| STATE OF ARKANSAS | DEPT OF FINANCE & ADMINISTRATION | PO BOX 919 | CORPORATION INCOME TAX SECTION | | Little Rock | AR | 72203-0919 | |
| STATE OF CALIFONIA, FRANCHISE TAX BOARD | | PO BOX 942867 | | | Sacramento | CA | 94267-0011 | |
| State of Delaware | Division of Corporations | PO Box 5509 | | | Binghamton | NY | 13902-5509 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 143 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| STATE OF MARYLAND | Dept of Assessments & Taxation | Personal Property Division | PO Box 17052 | | Baltimore | MD | 21297-1052 | |
| STATE OF MICHIGAN | COMPOSITE RETURN | PO BOX 30058 | MICHIGAN DEPT OF TREASURY | | Lansing | MI | 48909 | |
| STATE OF MICHIGAN | Corp, Securities & Comm Licensing Bureau | 525 W. Allegan Street | Audit & Exam Division | | Lansing | MI | 48909 | |
| STATE OF MICHIGAN | MICHIGAN DEPARTMENT OF TREASURY | DEPT 77375 | PO BOX 77000 | | Detroit | MI | 48227-0375 | |
| STATE OF MICHIGAN | | PO Box 30774 | | | Lansing | MI | 48909-8274 | |
| State of New Hampshire | | New Hampshire Dept. of State | 107 N. Main Street, Rm 204, State House | | Concord | NH | 03301-4951 | |
| STATE OF NEW JERSEY | DEPT OF LABOR AND WORKFORCE | PO BOX 929 | DIV OF REVENUE PROCESSING | | Trenton | NJ | 08646-0929 | |
| STATE OF NEW JERSEY | | New Jersey Dept of Law & Public Safety | 153 Halsey Street, 6th Floor | | Newark | NJ | 07102 | |
| STATE OF NEW JERSEY | | REVENUE PROCESSING CENTER | PO BOX 642 | | Trenton | NJ | 08646-0642 | |
| State of New Jersey-CBT | Division of Tax Revenue Proc Center | PO Box 66 | | | Trenton | NJ | 08646-0666 | |
| State of Oregon | Div of Finance & Corporate Securities | 350 Winter St NE, Rm 410 | Labor & Industries Bldg | | Salem | OR | 97301 | |
| State Securities Commissioner of Alabama | | Registration Division | 401 Adams Avenue, Suite 280 | | Montgomery | AL | 36104 | |
| State Street Bank and Trust Company | CDO Services Group | 200 Clarendon Street | Mail Code EUC-108 | | Boston | MA | 02116 | |
| State Street Bank and Trust Company | | PO Box 5607 | | | Boston | MA | 02206-5607 | |
| State Street Corporation | | PO Box 5013 | | | Boston | MA | 02206-5013 | |
| State Street Corporation | | PO Box 5607 | | | Boston | MA | 02206-5607 | |
| State Street Bank and Trust Company | State Street Global Exchange | Elkins McSherry LLC | One Lincoln Street | | Boston | MA | 02111 | |
| State Street Global Markets, LLC | | One Lincoln Street | | | Boston | MA | 02111 | |
| Status Labs.com | | 151 South 1st | Suite 100 | | Austin | TX | 78704 | |
| Stax Media, Inc. | | 4630 Soquel Drive | Suite 5 | | Soquel | CA | 95073 | |
| Stefan Peiler | | Address on File | | | | | | |
| Stellar Adventures | | PO Box 8329 | | | Scottsdale | AZ | 85252 | |
| Stenstrom-Schneider, INC | | 13748 Neutron Rd | | | Dallas | TX | 75244-4412 | |
| Stephanie Catalano | | Address on File | | | | | | |
| Stephanie Vitiello | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| STEPHEN LORENZ | | Address on File | | | | | | |
| Stephen M. Fremgen | | Address on File | | | | | | |
| Steptoe & Johnson LLP | | 1330 Connecticut Ave, N.W. | | | Washington | DC | 20036-1795 | |
| STERLING VALUATION GROUP, INC | | 590 MADISON AVE | 5TH FLR | | New York | NY | 10022 | |
| STEVE LEACH | | Address on File | | | | | | |
| Steve Mackay | | Address on File | | | | | | |
| Steve Thiel | | Address on File | | | | | | |
| STEVE ZIMMERMAN | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 144 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Steven Delarosa | | Address on File | | | | | | |
| STEVEN GART | | Address on File | | | | | | |
| Steven Haltom | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| Steven J White MD | | PO Box 650772 | | | Dallas | TX | 75265-0772 | |
| Steven J. Kaplan, P.C. | | 5910 Stoneshire Ct | | | Dallas | TX | 75252 | |
| Steven Johnson | | Address on File | | | | | | |
| STEVEN SUN | | Address on File | | | | | | |
| Stevens, Kellie | | Address on File | | | | | | |
| Stevens, Kellie | | Address on File | | | | | | |
| Stewart F. House Photography | | 2600 Bunker Hill Cr | | | Plano | TX | 75075 | |
| Stewart, Phoebe | | Address on File | | | | | | |
| Stewart, Phoebe L. | | Address on File | | | | | | |
| STEWART, STEVEN a. | | Address on File | | | | | | |
| STF Services Corporation | | PO Box 3251 | | | Syracuse | NY | 13220-3251 | |
| STIKEMAN ELLIOT | | 5300 Commerce Court West | 199 Bay Street West | | Toronto | ON | M5L 1B9 | CANADA |
| Stillman & Friedman, P.C. | | 425 Park Avenue | 26th Floor | | New York | NY | 10022 | |
| Stinson Leonard Street LLP | Stinson LLP | Attn Paul Lackey | 3102 Oak Lawn Avenue, Suite 777 | | Dallas | TX | 75219 | |
| Stinson Leonard Street LLP | | PO Box 843052 | | | Kansas City | MO | 64184 | |
| Stinson LLP | Attn Paul Lackey | 3102 Oak Lawn Avenue, Suite 777 | | | Dallas | TX | 75219 | |
| Stinson LLP | Deborah Deitsch-Perez, Michael P. Aigen | 3102 Oak Lawn Avenue, Suite 777 | | | Dallas | TX | 75219 | |
| Stinson LLP | Paul M. Hoffmann | 1201 Walnut Street, Suite 2900 | | | Kansas City, | MO | 64106-2150 | |
| STINSON MORRISON HECKER LLP | | PO Box 219492 | | | Kansas City | MO | 64121 | |
| Stone, David | | Address on File | | | | | | |
| Stone, Kenneth | | Address on File | | | | | | |
| Stonecypher, Abbie | | Address on File | | | | | | |
| Stonelake Capital Holdings, LP | Attn Blake Wilson | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn Jacob Becker | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn John A. Kiltz | 3200 Gracie Kiltz Lane, Suite 500 | | | Austin | TX | 78758 | |
| Stonelake Capital Holdings, LP | Attn Kenneth E. Aboussie, Jr. | 100 Crescent Court, Suite 850 | | | Dallas | TX | 75201 | |
| Stonelake Capital Holdings, LP | Attn W. Hunter Sage, Esq. | 200 Park Place, 4200 Westheimer, Suite 900 | | | Houston | TX | 77027 | |
| Stonelake Capital Holdings, LP | Attn William C. Wilshusen | Haynes & Boone, LLP | 2323 Victory Avenue, Suite 700 | | Dallas | TX | 75219 | |
| STOOPS, CLIFFORD | | Address on File | | | | | | |
| Stout Management Company | | 10151 Park Run Drive | | | Las Vegas | NV | 89145 | |
| Stradley Ronon Stevens & Young, LLP | | 2005 Market Street | | | Philadelphia | PA | 19103-7018 | |
| Strand Advisors Inc. | | 1209 Orange Street | | | Wilmington | DE | 19801-0000 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 145 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Strand Advisors, Inc. | Attn James Seery | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strand Advisors, Inc. | Attn John Dubel | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strand Advisors, Inc. | Attn Russell Nelms | Two Galleria Tower | 13455 Noel Road, Suite 1300 | | Dallas | TX | 75240 | |
| Strasburger & Price, L.L.P. | | PO Box 50100 | | | Dallas | TX | 75250-9989 | |
| Strategas Research Partners LLC | ATTN Eileen Gabay | 52 Vanderbilt Avenue | 8th Floor | | New York | NY | 10017 | |
| Strategas Securities LLC | | 52 Vanderbilt Ave | 8th Fl | | New York | NY | 10017 | |
| STRATEGIC ALLIANCE GROUP, LLC | | 500 N CYPRESS CREEK RD | STE 420 | | Ft. Lauderdale | FL | 33309 | |
| Strategic Financial Solutions | | 2650 Thousand Oaks Blvd | Suite 1340 | | Memphis | TN | 38118 | |
| Strategic Growth, Inc | | 5004 Crestway Drive | | | Austin | TX | 78731 | |
| Strategic Insight Group | | 1300 Summit Ave Ste 512 | | | Fort Worth | TX | 76102-4419 | |
| STRATEGIC WORKFORCE SOLUTIONS | | PO BOX 32960 | | | Hartford | CT | 32960 | |
| Stratford CLO Ltd. | | P.O. Box 1093GT, Queensgate House | South Church Street | George Town | Grand Cayman | | | Cayman Islands |
| Stratford CLO Ltd. State Street Bank and Trust Company | State Street Bank and Trust Company | 200 Claredon Street | CDO Services Group, Ref Stratford CLO Ltd. | | Boston | MA | 02116 | |
| Stratford CLO Ltd. State Street Bank and Trust Company | Stratford CLO Ltd. | P. O. Box 1093GT, Boundary Hall | Cricket Square George Town, Grand Cayman | Attention The Directors-Stratford CLO Ltd. | Grand Cayman | | | Cayman Islands |
| Stratford CLO, Ltd. | c/o Maples Finance Limited | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |
| Stratos Legal Services, LP | | 4295 San Felipe | Ste 125 | | Houston | TX | 77027 | |
| Stratus Energy Group | Attn P. Hudson | 1206 San Antonio Street | | | Austin | TX | 78701 | |
| Strohl Systems Group | | 631 Park Ave | | | King of Prussia | PA | 19406 | |
| STRONCZEK, JILLIAN N. | | Address on File | | | | | | |
| Strong Pipkin Bissell & Ledyard, L.L.P. | | 1400 San Jacinto Building, 595 Orleans | | | Beaumont | TX | 77701-3255 | |
| Stroock & Stroock & Lavan LLP | | 180 Maiden Lane | | | New York | NY | 10038 | |
| Structural and Steel Products, Inc | | 3001 W Pafford Street | | | Fort Worth | TX | 76110-0000 | |
| Structure Tone Southwest, Inc. | | 3333 Welborn St, Ste 200 | | | Dallas | TX | 75219 | |
| Structured Credit Investor | | 507 Clerkwell Workshops | 27/31 Clerkenwell Close | | Farringdon | | EC1R 0AR | United Kingdom |
| Studio Movie Grill | | 5405 Beltline Rd | | | Dallas | TX | 75248 | |
| STUECHELI, GREGORY | | Address on File | | | | | | |
| Stuhlsatz, Amy | | Address on File | | | | | | |
| Stutman Treister & Glatt PC | | 1901 Avenue of the Stars | 12th Floor | | Los Angeles | CA | 90067-6013 | |
| Styx International, Ltd. | | 875 Third Avenue | 10th Floor | | New York | NY | 10022 | |
| Styx Partners, LP | | 875 Third Avenue | 10th Floor | | New York | NY | 10022 | |
| Success CE | | 2 Corporate Plaza Drive | Suite 100 | | Newport Beach | CA | 92660 | |
| Succession Resource Group | | PO Box 1573 | | | Tualatin | OR | 97062 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 133 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 146 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Sue McGeehan | VP, Collections, Finance Dept. | 7 World Trade Center at 250 Greenwich Street | | | New York | NY | 10007 | |
| Sui Hock Goy | | Ni Advisors, Inc. | 1138 Cadillac Ct. | | Nilpitas | CA | 95035 | |
| Suicide and Crisis Center of North Texas | | 10625 Northboro | | | Dallas | TX | 75230 | |
| Sullivan Cromwell LLP | Brian D. Glueckstein | 125 Broad Street | | | New York | NY | 10004 | |
| SULLIVAN, JOURDAN | | Address on File | | | | | | |
| Summit Brokerage Services, Inc. | Attn Compliance/Payroll | 595 South Federal Highway | Ste 500 | | Boca Raton | FL | 33432 | |
| Summit Brokerage Services, Inc. | | 500 S. Federal Highway | Suite 500 | | Boca Raton | FL | 33432 | |
| Summit Management Limited | | 23 Lime Tree Bay Avenue | Suite #4-210 | Govenors Square | | | KY1-1209 | Cayman Islands |
| Sun Life Assurance Company of Canada | | PO Box 7247-7184 | | | Philadelphia | PA | 19170-7184 | |
| Sunbelt Securities, Inc. | | 2700 Post Aok Blvd, Suite 1700 | | | Houston | TX | 77056 | |
| Sundance Painting | | 3702 N Buckner Blvd | | | Dallas | TX | 75228-5612 | |
| SunDiego Charter Company | | 522 W 8th Street | | | National City | CA | 91950 | |
| SUNEET AGARWAL | | 444 WASHINGTON BLVD | | | Jersey City | NJ | 07310 | |
| SunGard | | Bank of America Lockbox Services | 15138 Collections Center Dr | | Chicago | IL | 60693 | |
| Sungard Availability Services | | 91233 Collection Center Drive | | | Chicago | IL | 60693 | |
| Sungard Protegent | | 15138 Collections Center Dr | | | Chicago | IL | 60693 | |
| Sunil Devarakonda | | 111 East 125th Street, Apt 3 E | | | New York | NY | 10035 | |
| SunTrust Robinson Humphrey Inc. | Attn Documentation | SunTrust Robinson Humphrey 5001 Spring Valley Rd Ste 1000 W | 711 5th Avenue 14th Fl. | | New York | NY | 10022-0000 | |
| Superior Search & Staffing | | PO Box 15548 | | | Dallas | TX | 75244 | |
| Supermarket News | | Address on File | | | North Hollywood | CA | 91615-5548 | |
| SURGENT, THOMAS | | 4127 Towne Green Circle | | | Addison | TX | 75001 | |
| Susan Burton Consulting, LLC | | Address on File | | | | | | |
| Susan Leahy | | 1000 Louisiana | Ste. 5100 | | Houston | TX | 77002 | |
| SUSMAN GODFREY LLP | | 700 Sixth Street NW | Suite 700 | | Washington | DC | 20001 | |
| Sutherland Asbill & Brennan LLP | | 999 Peachtree Street NE | | | Atlanta | GA | 30309-3996 | |
| Sutherland Asbill & Brennan LLP | | Address on File | | | | | | |
| Swadley, Emily | | Address on File | | | | | | |
| SWADLEY, RICK | | 400 Crescent Court | | | Dallas | TX | 75201 | |
| Swank Audio Visuals | | Address on File | | | | | | |
| Sweeney, Katelyn | | Zurichbergstrasse 20 | | | Zurich | | 08032 | SWITZERLAND |
| SWIXMED | | 353 Larkfield Rd | | | East Northport | NY | 11731 | |
| Sybari Software, Inc. | | | | | | | | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Symphony Communication Services LLC | | 1117 S California Ave | | | Palo Alto | CA | 94304-0000 | |
| Synnex Corporation | | 5845 Collections Center Dr | | | Chicago | IL | 60693 | |
| Sysco Food Services | | PO Box 560700 | | | Lewisville | TX | 75056-0700 | |
| System Electric | | 1278 Montalvo Way | | | Palm Springs | CA | 92262 | |
| T.H. Quest, Inc. | | 5001 Spring Valley Rd. | Ste 400-E | | Dallas | TX | 75244 | |
| T4 Capital Talent, LLC | | 272 E. Deerpath Rd | Suite 236 | | Lake Forest | IL | 60045 | |
| TACA The Arts Community Alliance | Attn Julie Bice | One Arts Plaza | 1722 Routh Street, #115 | | Dallas | TX | 75201 | |
| TAK-CHEUNG DAVIDSON WAN | | 5050 S LAKE SHORE DR, APT #1509 | | | Chicago | IL | 60615 | |
| Talkingbox DMG, LLC | | 284 Sport Hill Road | | | Easton | CT | 06612 | |
| TAMALE SOFTWARE, INC | | 320 CONGRESS ST | | | Boston | MA | 02210 | |
| TANDBERG, SCOTT | | Address on File | | | | | | |
| Tanner Morgan | | Address on File | | | | | | |
| Tara Allen | | Address on File | | | | | | |
| TARAs LIMO & AIRPORT SERVICE | | PO BOX 795581 | | | Dallas | TX | 75379-5581 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson, LLP | 2777 N. Stemmons Freeway, Suite 1000 | | Dallas | TX | 75207 | |
| TARSHA, DANIEL S. | | Address on File | | | | | | |
| TARUN K BHATT | | Address on File | | | | | | |
| Tax & Accounting-R&G | | PO BOX 71687 | | | Chicago | IL | 60694-7687 | |
| TAX EXECUTIVES INSTITUTE, INC | | PO BOX 9407 | | | Uniondale | NY | 11555-9407 | |
| Taylor Porter | | Address on File | | | | | | |
| Taylor, Brian | | Address on File | | | | | | |
| TAYLOR, GREGORY | | Address on File | | | | | | |
| TCS Central Region GP LLC | ATTN Kelly Thomas | 5001 Spring Valley | Suite 600W | | Dallas | TX | 75244 | |
| TCS Corporate Services | Allied Capital Partners | PO Box 676649 | | | Dallas | TX | 75267 | |
| TCS Corporate Services | | PO Box 671160 | | | Dallas | TX | 75267-1160 | |
| TD Ameritrade Trust Company | Attn FFC RMT | PO Box 17748 | | | Denver | CO | 80217-0748 | |
| TDA Associates, Inc. | | 2101 Sardis Rd N, Suite 109 | | | Charlotte | NC | 28227 | |
| TDIndustries | | PO Box 300008 | | | Dallas | TX | 75303-0008 | |
| Technology Team, LLC | | 1120 South Freeway | Suite 215 | | Fort Worth | TX | 76104 | |
| Ted Kanarek | | Address on File | | | | | | |
| Telecomm Strategies Inc | | 6404 Highland Drive | | | Chevy Chase | MD | 20815 | |
| TELOS Performance Center | | 13701 Dallas Pkwy | | | Dallas | TX | 75240 | |
| Temple Emanu-El | Attn Rick Rosenberg | 8500 Hillcrest | | | Dallas | TX | 75225 | |
| Tennessee Department of Revenue | | 500 Deaderick Street | Andrew Jackson State Office Building | | Nashville | TN | 37242 | |
| Tennessee Dept of Commerce & Insurance | | Securities Division | 500 James Robertson Parkway, Suite 680 | | Nashville | TN | 37243 | |
| TERRELL, ARTIS | | Address on File | | | | | | |
| Terrie Rabinowitz, L.C. S.W. | | 7186 Promenade Dr Apt 801 | | | Boca Raton | FL | 33433-6977 | |
| Terry Jackson | | Address on File | | | | | | |
| Terry Jackson | | Address on File | | | | | | |
| Terry Swagerty | | Address on File | | | | | | |
| Terry, Doris A. | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TERRY, JOSHUA N. | | Address on File | | | | | | |
| TESLA, NIKOLA | | Address on File | | | | | | |
| Texas Alliance of Energy Producers | | 900 8th Street, Suite 400 | | | Wichita Falls | TX | 76301 | |
| Texas Best Meats | | PO Box 4810 | | | Wichita Falls | TX | 76308 | |
| Texas Best Meats | | 7043 Seymour Hwy | | | Wichita Falls | TX | 76310 | |
| Texas Commerce Bank, N.A. | | 600 Travis Street | 8th Floor, Texas Commerce Tower | Global Trust Services | Houston | TX | 77002 | |
| Texas Comptroller of Public Accounts | | PO Box 149348 | | | Austin | TX | 78714-9348 | |
| Texas Department of Insurance | Financial Regulation Division | Company Licensing and Registration | 333 Guadalupe | | Austin | TX | 78701 | |
| Texas Dept of Licensing and Regulation | | PO Box 12157 | | | Austin | TX | 78711 | |
| TEXAS DEPT OF STATE HEALTH SERVICES | | LOCKBOX-DSHS ASBESTOS/DEMO NOTIFICATION | PO BOX 12190 | | Austin | TX | 78711-2190 | |
| Texas Entertainment Group | | 103 N Kirby St | | | Garland | TX | 75042 | |
| Texas LawBook LLC | | 3888 Everwood Lane | | | Addison | TX | 75001 | |
| TEXAS ROOF MANAGEMENT, INC | | 728 LINGCO DR | | | Richardson | TX | 75081 | |
| Texas Secretary of State | Accounts Receivable | PO Box 12887 | | | Austin | TX | 78711-2887 | |
| Texas Secretary of State | | PO Box 13697 | | | Austin | TX | 78711 | |
| Texas State Comptroller | | 9241 LBJ FREEWAY | STE 205 | | Dallas | TX | 75243 | |
| Texas State Comptroller | | PO Box 12030 | | | Austin | TX | 78711-2030 | |
| Texas State Securities Board | | Securities Commission of Texas | 208 E 10th, Room 610 | | Austin | TX | 78701 | |
| TEXPERS | | 13111 Northwest Freeway | Suite 100 | | Houston | TX | 77040 | |
| Thackray Williams LLP | | 32-40 Widmore Rd | Bromley | | Kent | | BR1 1RY | United Kingdom |
| Tharrington Smith LLP | | PO Box 1151 | | | Raleigh | NC | 27602 | |
| The American Cancer Society | | 18505 West Twelve Mile Rd | | | Southfield | MI | 48076 | |
| The Ashcroft Lawfirm, LLC | | 950 North Glebe Road | Suite 2400 | | Arlington | VA | 22203 | |
| The Ashcroft Lawfirm, LLC | | 1100 Main Street | Suite 2710 | | Kansas City | MO | 64105 | |
| The Aspen Institute | | Society of Fellows | 1000 N. Third Street | | Aspen | CO | 81611 | |
| The Badge of Honor Memorial Foundation | | David Blanchard | 3131 Maple Ave | | Dallas | TX | 75201 | |
| The Bailey Group | | PO Box 1395 | | | Whitehouse Station | NJ | 08889 | |
| The Bank of New York Mellon | Elizabeth Stern | Director and Managing Counsel | 240 Greenwich Street, 18th Floor | | New York | NY | 10286 | |
| The Bank of New York Mellon Trust Compan | | 601 Travis, 16th floor | | | Houston | TX | 77002-0000 | |
| The Bank of New York Trust Co. | Global Corp. Trust | 600 Travis Street, 50th Floor | | | Houston | TX | 77002 | |
| The Bermuda Monetary Authority | | 43 Victoria Street | | | Hamilton | | HM 12 | Bermuda |
| The Bowman Law Firm, LLC | | 840 Tom Wheeler Lane | | | McEwen | TN | 37101 | |
| The Bradbury Group | | 10661 Rockley Rd | | | Houston | TX | 77099 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Brattle Group | | 44 Brattle St | | | Cambridge | MA | 02138-3736 | |
| The Bretton Woods Institute | | R.R. #1 Simcoe | | | Toronto | ON | N3Y 4J9 | CANADA |
| The Bryant Park Hotel | | 40 W. 40th Street | | | New York | NY | 10018 | |
| THE BUREAU OF NATIONAL AFFAIRS, INC | | PO Box 419889 | | | Boston | MA | 02241-9889 | |
| The Bureau of National Affairs, Inc |Bio | | 1801 South Bell Street | | | Arlington | VA | 22202-0000 | |
| The Burnett Companies Consolidated, Inc. | | PO Box 973940 | | | Dallas | TX | 75397 | |
| The Cake Guys | | 730 Big Stone Gap Rd | Suite B | | Duncanville | TX | 75137 | |
| The Cayman Islands Monetary Authority | | 171 Elgin Ave, SIX Cricket Square | | George Town | Grand Cayman | | | Cayman Islands |
| The Charlotte Observer | | 600 S. Tryon Street | | | Charlotte | NC | 28202 | |
| The Chart Store | | 11768 Tarrynot Ln | | | Carmel | IN | 46033 | |
| The Claro Group, LLC | | 123 N Wacker Dr Ste 2100 | | | Chicago | IL | 60606-1747 | |
| THE CLUEN CORPORATION | | 135 5TH AVE FL 4 | | | NEW YORK | NY | 10010-7157 | |
| The Crystal Charity Ball | | Mrs. Mark D Leyendecker, Underwriting | 3838 Oak Lawn Avenue, Suite L150 | | Dallas | TX | 75219 | |
| The Cystic Fibrosis Foundation | | 4040 North Central Expressway | Ste 730 | | Dallas | TX | 75204 | |
| The da Vinci School | Atn Christi Warren | 10909 Midway Rd | | | Dallas | TX | 75229 | |
| The Dallas Morning News | | Subscriptions Dept. | PO Box 630054 | | Dallas | TX | 75263-0054 | |
| The Darden School | Atn Development- CFR | PO Box 7726 | | | Charlottesville | VA | 22906-7726 | |
| The Day Group | | The 401 Centre | 302 Regent Street | | London | | W1B3HH | United Kingdom |
| The Deal LLC | | 105 Madison Ave | 5th floor | | New York | NY | 10016 | |
| The Deal LLC | | PO BOX 26356 | | | New York | NY | 10087-6356 | |
| The Deal LLC | | PO Box 3502 | | | Northbrook | IL | 60065-9850 | |
| The Devon Trust II | | #2800 | 715 - 5th Avenue SW | | Calgary | AB | T2P 2X6 | CANADA |
| The DI Wire Publishing LLC | | 18101 Von Karman Ave | Suite 300 | | Irvine | CA | 92612 | |
| The Dugaboy Investment Trust | Grant Scott, Trustee | 4140 Park Lake Ave., Suite 600 | | | Raleigh | NC | 27612 | |
| The Economist | | Subscription Center | PO Box 46978 | | Saint Louis | MO | 63146-6978 | |
| The Economist | | Subscriptions Department | PO Box 58522 | | Boulder | CO | 80322-8522 | |
| The Efficient Business LLC | | 13601 Preston | Ste 250E | | Dallas | TX | 75240 | |
| The Efficient Business LLC | | 14800 Quorum Dr | Suite 560 | | Dallas | TX | 75254-7679 | |
| The Emblem Source, LLC | | 4575 Westgrove Drive | Suite 500 | | Addison | TX | 75001 | |
| The Englishmans Interiors | | 14655 Midway Rd | | | Addison | TX | 75001 | |
| The Executive Centre | | Tokyo Ginko Kyokai Bldg 15th Floor | 1-3-1 Marunouchi | | Chiyoda-ku | Tokyo | 100-0005 | JAPAN |
| The Expert Series LLC | | 317 Madison Avenue | Suite 920 | | New York | NY | 10017 | |
| The Family Place | Atn Shivangi Pokharel | PO Box 7999 | | | Dallas | TX | 75209 | |
| THE FRANCHISE TAX BOARD | | PO BOX 942867 | | | Sacramento | CA | 94267-0001 | |
| THE FRANK W. NORRIS FOUNDATION | | PO Box 6071 | | | Athens | GA | 30604 | |
| THE FRANK W. NORRIS FOUNDATION | | Warnell School of Forestry | and Natural Resources | | Athens | GA | 30602-2152 | |
| THE FREDONIA GROUP | | 767 BETA DR | | | Cleveland | OH | 44143 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 150 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Garden Gate | | 2615 Routh Street | | | Dallas | TX | 75201 | |
| The Garden Gate | | 2303 Farrington | #100 | | Dallas | TX | 76207 | |
| The General Counsel Forum | | PO Box 131263 | | | Dallas | TX | 75313 | |
| The Greitens Group | | 4500 West Pine Boulevard | | | Saint Louis | MO | 63108 | |
| The Griffith Law Firm | | 4925 Greenville Ave | Suite 200 | | Dallas | TX | 75206 | |
| The Gym | | 921 W. Mayfield Rd. | Suite 112 | | Arlington | TX | 76015 | |
| The Hanover Insurance Group | | PO Box 580045 | | | Charlotte | NC | 28258-0045 | |
| The Harry Walker Agency, Inc. | | 355 Lexington Ave | Flr 21 | | New York | NY | 10017 | |
| THE HARTFORD | | PO BOX 2907 | | | The Hartford | CT | 061004-2907 | |
| THE HARTFORD | | PO Box 660916 | | | Dallas | TX | 75266-0916 | |
| The Hockaday School | Attn Holly Hook | 11600 Welch Road | | | Dallas | TX | 75229 | |
| The Hogan Firm | | 1311 Delaware Ave | | | Wilmington | DE | 19806 | |
| The House Oldtown Brasserie | | 6936 E. Main St. | | | Scottsdale | AZ | 85251 | |
| The Intl Stock Exchange Authority Ltd | | PO Box 623, Helvetoa Court | Les Echelons | | St Peter Port | GUERNSEY | GY1 1AR | United Kingdom |
| The Irish Stock Exchange plc | | 28 Anglesea Street | Block B, 3rd Floor | | Dublin | | D02 XT25 | IRELAND |
| The Island Hotel | | 690 Newport Center Drive | | | Newport Beach | CA | 92660 | |
| The Joule | | 1530 Main Street | | | Dallas | TX | 75201 | |
| The Junior League of Dallas | | PO Box 12707 | | | Dallas | TX | 75226 | |
| The Kaplan Group | | 2250 King Ct. Suite 50 | | | San Luis | CA | 93401 | |
| The Kiplinger Tax Letter | | PO Box 62300 | | | Tampa | FL | 33662-2300 | |
| The Kiplinger Tax Letter | | PO Box 3299 | | | Harlan | IA | 51593-0479 | |
| The Ladders | Accounting Dept | 137 Varick St | | | New York | NY | 10013 | |
| THE LAKESHORE COMPANIES | | 1081 MOMENTUM PL | | | Chicago | IL | 60689-5310 | |
| The LDM Group, LLC | | Renaissance Tower | 1201 Elm Street, Ste. 4201 | | Dallas | TX | 75270 | |
| The Leukemia & Lyphoma Society | | 1311 Mamaroneck Ave, Suite 310 | | | White Plains | NY | 10605 | |
| The Leukemia & Lyphoma Society | | 8111 LBJ Freeway | Suite 425 | | Dallas | TX | 75251 | |
| The Loan Syndications and Trading Assoc | | 366 Madison Ave | 15th Floor | | New York | NY | 10017 | |
| The Mark and Pamela Okada Family Exempt Trust #1 | Brian D. Glueckstein | Sullivan Cromwell LLP | 125 Broad Street | | New York | NY | 10004 | |
| The Markets.com | | PO Box 9420 | | | Uniondale | NY | 11555-9420 | |
| The Matchbox Studio | | 3013 Canton Street | | | Dallas | TX | 75226 | |
| The McCarton Foundation | | 331 W. 25th Street | | | New York | NY | 10001 | |
| The Medleh Group | | PO Box 96370 | | | Houston | TX | 77213 | |
| The Money Management Institute | | 1101 17th St. NW Ste 703 | | | Washington | DC | 20036 | |
| The Money Management Institute | | PO Box 759231 | | | Baltimore | MD | 21275-9231 | |
| The Montessori School of Raleigh | | 7005 Lead Mine Road | | | Raleigh | NC | 27615 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| The Morgan Library & Museum | | 225 Madison Avenue | | | New York | NY | 10016 | |
| The NASDAQ OMX Group Inc. | | Lockbox 90200 | PO Box 8500 | | Philadelphia | PA | 19178-0200 | |
| The NASDAQ Stock Market LLC | c/o Wells Fargo Bank | Lockbox 80200/PO Box 8500 | | | Philadelphia | PA | 19178-0200 | |
| The National due Diligence Alliance | | West8 Tower | 10205 Westheimer Rd, Ste 500 | | Houston | TX | 77042 | |
| The Neighbors Law Firm P.C. | | 2500 Regency Parkway | | | Cary | NC | 27518 | |
| The New York Times | | PO Box 4039 | | | Woburn | MA | 01888-4039 | |
| The New York Times | | PO BOX 371456 | | | Pittsburgh | PA | 15250-7456 | |
| The nGage Company, LLC | Attn Phil McKay | 170 Pine Point Rd | | | Scarborough | ME | 04074 | |
| The Oechsli Institute | | PO Box 29385 | | | Greensboro | NC | 27429 | |
| The Optimal Networking Event, LLC | | 5 Block Court | | | Randolph | NJ | 07869 | |
| The Optimal Networking Event, LLC | | PO Box 191 | | | Mt. Freedom | NJ | 07970-0191 | |
| The Original Butt Sketch | | PO Box 4495 | | | Dallas | TX | 75208-4495 | |
| The Paley Center for Media | Attn Accounting Department | 25 West 52nd Street | | | New York | NY | 10019 | |
| The Party New York | | 137 Avenue A | Suite 2E | | New York | NY | 10009 | |
| The Paul Revere Life Ins. Co. | | PO Box 740590 | | | Atlanta | GA | 30374-0590 | |
| The Pension Bridge, Inc | | 4504 S Ocean Blvd | | | Highland Bch | FL | 33487-4233 | |
| THE PLACEMENT GROUP, INC. | | 6060 North Central Expressway | Suite 524 | | Dallas | TX | 75206 | |
| THE PLANT PLACE | | 10704 Goodnight Lane | | | Dallas | TX | 75220 | |
| The Plexus Groupe | | 21805 Field Parkway | Suite 300 | | Deer Park | IL | 60010 | |
| The Plumbing Mechanical Fire Prot. Co | | 60 North Prospect Avenue | | | Lynbrook | NY | 11563-1395 | |
| The Promise House | Attn Christy Cerralvo | RBC Capital Markets | 2711 N Haskell Ave, Ste 2500 | | Dallas | TX | 75240 | |
| The Real Estate Council | | Three Lincoln Center | 5430 LBJ Frwy, Suite 100 | | Dallas | TX | 75240 | |
| The Real Estate Council Foundation | Attn Stephanie Keller Hudiberg | 3100 McKinnon Street | Suite 1150 | | Dallas | TX | 75201 | |
| The Reeds Public Relations Corporation | | 3232 McKinney Avenue | Suite 855 | | Dallas | TX | 75204 | |
| The Renaissance Consulting Group | | 870 San Jacinto Twr 2121 San Jacinto St | | | Dallas | TX | 75201 | |
| The Rhythm Room | Attn Elaine Hewlett | 4734 Tremont Street | | | Dallas | TX | 75246 | |
| The Rise School | | 4220 Monterey Oaks Blvd. | | | Austin | TX | 78749 | |
| The Ritz-Carlton | | 455 Grand Bay Drive | | | Key Biscayne | FL | 33149 | |
| The Ritz-Carlton | | 2121 McKinney Avenue | | | Dallas | TX | 75201 | |
| THE RITZ-CARLTON, LAKE LAS VEGAS | ATTN A/R | 1610 LAKE LAS VEGAS PKWY | | | Henderson | NV | 89011 | |
| The Rowland Law Firm | Ronald L. Rowland, Authorized Agent | 2453 Vineyard Lane | | | Crofton | MD | 21114 | |
| The Ryan Anthony Foundation | | 2512 Boll Street | | | Dallas | TX | 75204 | |
| The Search Group | | 222. W Las Colinas Blvd | Ste 844E | | Irving | TX | 75039 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 152 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| THE SIGN COMPANY | | 575 MADISON AVE | | | New York | NY | 10022 | |
| The Spencer Company | | 2121 North Akard | Suite 100 | | Dallas | TX | 75201 | |
| The Standard | | 1100 SW Sixth Ave | | | Portland | OR | 97204-0000 | |
| The Standard | | PO Box 3358 | | | Portland | OR | 97208-3358 | |
| The Standard | | PO BOX 5674 | | | Portland | OR | 97228-5674 | |
| The Standard Life Insurance Co of NY | | PO Box 3358 | | | Portland | OR | 97208-3358 | |
| The State of Texas | Deana K. Adams, CSR | Official Court Reporter | 600 Commerce, 630 C | | Dallas | TX | 75202 | |
| The Stewpot Alliance | | 4516 Lovers Lane | Suite 229 | | Dallas | TX | 75225 | |
| The Strategic Financial Alliance | | 202 Abbey Court | | | Alpharetta | GA | 30004 | |
| The Strategic Financial Alliance, Inc. | | 2200 Century Parkway, Ste 500 | | | Atlanta | GA | 30345 | |
| The TAARP Group, LLP | | 8333 Douglas Avenue | Suite 1500 | | Dallas | TX | 75225 | |
| The TAARP Group, LLP | | PO Box 797337 | | | Dallas | TX | 75379-7337 | |
| The TASA Group, Inc. | | 1166 DeKalb Pike | | | Blue Bell | PA | 19422-1853 | |
| The Texas Lyceum | | 3305 Steck Ave Ste 200 | | | Austin | TX | 78757-8155 | |
| The Texas Lyceum Association, Inc | | 7131 Lavendale Ave | | | Dallas | TX | 75230 | |
| The Townwide Fund of Huntington, Inc. | | 148 East Main Street | | | Huntington | NY | 11743 | |
| The United States Ski & Snowboard Assoc | | 1 Victory Lane | Box 100 | | Park City | UT | 84060 | |
| The United States Treasury | | Internal Revenue Service | PO Box 9941 | | Ogden | UT | 84409 | |
| The University of Texas at Arlington | | Grants and Accounting, Box 19136 | | | Arlington | TX | 76019-0136 | |
| The VIA Group,Inc | | 2610 Technology Forest Blvd | | | The Woodlands | TX | 77381 | |
| The Wall Street Journal | | Corporate Subscription Program | 102 First Ave | | Chicopee | MA | 01020 | |
| The Wellness Group, LLC | | 1000 N. Green Valley Pkwy | Suite 440 #401 | | Henderson | NV | 89074 | |
| The Wellness Group, LLC | | 100 N. Green Valley Pkwy | Suite 440 #401 | | Henderson | NV | 89074 | |
| The Westin Charlotte | | 601 South College Street | | | Charlotte | NC | 28202 | |
| The YGS Group | | 3650 West Market Street | Content Division-A/R | | York | PA | 17404 | |
| The Yield Book, Inc. | | PO Box 13755 | | | Newark | NJ | 07188-0755 | |
| THEDFORD, LAUREN E. | | Address on File | | | | | | |
| Theodore N Dameris | | Address on File | | | | | | |
| Theodore N. Dameris | | Address on File | | | | | | |
| Think-Cell | | InvalidenstraBe 34 | | | Berlin | | 10115 | GERMANY |
| Think-cell Sales GmbH & Co. KG | | Chausseestr. 8/E | | | Berlin | | 10115 | GERMANY |
| Thirstystone Resources | | 860 E 19th St | | | Tucson | AZ | 85719 | |
| THOMAS HENNINGS | | Address on File | | | | | | |
| Thomas Hoerner | | PO Box 740967 | | | Dallas | TX | 75374-0967 | |
| Thomas Printworks | | P. O. Box 740967 | | | Dallas | TX | 75374-0967 | |
| Thomas Reprographics | | Address on File | | | | | | |
| THOMAS SHARP | | | | | | | | |
| Thomas Surgent | c/o David Neier | Winston Strawn LLP | 4441 Beverly Drive | | Dallas | TX | 75205 | |
| Thomas Surgent | c/o David Neier, Winston Strawn LLP | 200 Park Avenue | | | New York | NY | 10166 | |
| Thomas Surgent | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 153 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Thomas White | c/o KGen Power Corp | 9337 Spring Cypress Rd. #214 | | | Spring | TX | 77379 | |
| Thompson & Knight | | PO Box 660684 | | | Dallas | TX | 75266-0684 | |
| Thompson & Knight | | Dept 70 PO Box 4346 | | | Houston | TX | 77210-4346 | |
| THOMPSON & KNIGHT LLP | | ONE ARTS PLAZA | 1722 ROUTH STREET SUITE 1500 | | Dallas | TX | 75201-2533 | |
| Thompson Coe Cousins & Irons LLP | | 700 N. Pearl Street | Twenty Fifth Floor | | Dallas | TX | 75201 | |
| Thompson Reuters | | 610 Opperman Drive | PO Box 64833 | | Eagan | MN | 55123-0000 | |
| THOMPSON, DAVISON R. | | Address on File | | | | | | |
| Thompson, Jordan | | Address on File | | | | | | |
| THOMPSON, ROBIN | | Address on File | | | | | | |
| Thomson | | PO Box 4634 | | | Chicago | IL | 60680-9598 | |
| Thomson Financial | | 195 Broadway | 7th floor | | New York | NY | 10007 | |
| Thomson Financial | | PO Box 360301 | | | Pittsburgh | PA | 15251-6301 | |
| Thomson Financial | | PO Box 5136 | | | Carol Stream | IL | 60197-5136 | |
| Thomson Financial | | PO Box 95512 | | | Chicago | IL | 60690-5512 | |
| THOMSON REUTERS | Attn Greg Winterton | 3 Times Square, 18th Floor | | | New York | NY | 10036 | |
| THOMSON REUTERS | | PO BOX 55743 | The Tomson Reuters Building | | London | | E14 10B | United Kingdom |
| THOMSON REUTERS | | PO Box 95512 | | | Chicago | IL | 95512 | |
| THOMSON REUTERS | | TAX & ACCOUNTING - R&G | PO BOX 71687 | | Chicago | IL | 60694-1687 | |
| Thomson Reuters (Markets) LLC | | PO Box 415983 | | | Boston | MA | 02241 | |
| Thomson Reuters (Markets) LLC | | GPO BOX 10410 | | | Newark | NJ | 07193-0410 | |
| Thomson Reuters (Tax & Accounting) Inc. | | PO Box 71687 | | | Chicago | IL | 60694-1687 | |
| Thomson Reuters Corporation | | 17400 Medine Road | Suite 850 | | Plymouth | MN | 55447 | |
| Thomson Reuters Tax & Accounting - Check | | PO Box 71687 | | | Chicago | IL | 60694-0000 | |
| Thomson RIA | | PO Box 6159 | | | Carol Stream | IL | 60197-6159 | |
| Thomson West | | PO Box 64833 | | | Saint Paul | MN | 551164-0833 | |
| Thomson West | | PO Box 6292 | | | Carol Stream | IL | 60197-6292 | |
| Thornton-Tomasetti Group, Inc. | | PO Box 826203 | | | Philadelphia | PA | 19182-6203 | |
| Throckmorton, Michael | | Address on File | | | | | | |
| Thuzio, Inc. | | 267 Fifth Avenue | Seventh Floor | | New York | NY | 10016 | |
| TIAMPO, SAUKOK | | Address on File | | | | | | |
| TIBCO Software, Inc. | | Lockbox No 7514 | PO Box 7247 | | Philadelphia | PA | 19170-7514 | |
| Tiffs Treats | | Address on File | | | | | | |
| Tim Dalton | | Address on File | | | | | | |
| TIM LAWLER | | Address on File | | | | | | |
| Tim Symington | | Address on File | | | | | | |
| Timber Mart-South | Center for Forest Business | Daniel B. Warnell School of Forestry | The University of Georgia | | Athens | GA | 30602-2152 | |
| Timberhorn, LLC | | 127 W Worthington Ave Ste 100 | | | Charlotte | NC | 28203-0064 | |
| Time Value Software | | 22 Mauchly | | | Irvine | CA | 92618 | |

Page 141 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 154 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorNoticeName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TIME WARNER CABLE | | PO BOX 9227 | | | Uniondale | NY | 11555-9227 | |
| TIME WARNER CABLE | | Box 223085 | | | Pittsburgh | PA | 15251-2085 | |
| TIME WARNER CABLE | | PO BOX 742663 | | | CINCINNATI | OH | 45274-2663 | |
| TIME WARNER CABLE | | PO Box 742633 | | | Cincinnati | OH | 45274-2663 | |
| TIME WARNER CABLE | | PO Box 650063 | | | Dallas | TX | 75265-0063 | |
| TIME WARNER CABLE | | PO BOX 650210 | | | Dallas | TX | 75265-0210 | |
| TIME WARNER CABLE | | PO Box 60074 | | | City of Industry | CA | 91716-0074 | |
| Time, Inc. | | PO Box 60001 | | | Tampa | FL | 33660-0001 | |
| Times Square Tower Associates LLC | | 800 Boylston Street | Suite 1900 | | Boston | MA | 02199 | |
| Times Square Tower Associates LLC | | PO Box 415917 | | | Boston | MA | 0224-5917 | |
| Timothy Brice | | Address on File | | | | | | |
| Timothy Hotchandani | | Address on File | | | | | | |
| Timothy Lawler | | Address on File | | | | | | |
| Timothy Leung | | Address on File | | | | | | |
| Timothy Spring | | Address on File | | | | | | |
| TIPS,LLC | | Department 34932 | PO Box 39000 | | San Francisco | CA | 94139 | |
| TIPS,LLC | | File 30578 | PO Box 60000 | | San Francisco | CA | 94160 | |
| Title Partners, LLC | | 5501 LBJ Freeway | Ste 200 | | Dallas | TX | 75240 | |
| TLK Networks | | PO Box 202286 | | | Arlington | TX | 76006 | |
| TMC Communications, LLC | | 245 Park Ave, 24th Flr | | | New York | NY | 10167 | |
| TMF Group | | 400 Capability Green | | | Luton | | LU1 3AE | United Kingdom |
| TNT INTERNATIONAL | | PO BOX 186 | RAMSBOTTOM | | BURY | | BL09GR | United Kingdom |
| Tobias Lewis | | Address on File | | | | | | |
| TOBY FELDMAN INC. | | ONE PENN PLAZA | | | New York | NY | 10119 | |
| Todd A. Travers | | Address on File | | | | | | |
| Todd Blatterman | | Address on File | | | | | | |
| Todd Travers | c/o Jason P. Kathman | Pronske & Kathman, P.C. | 2701 Dallas Parkway, Suite 590 | | Plano | TX | 75093 | |
| Todd Travers | | Address on File | | | | | | |
| Toly Novik | | Address on File | | | | | | |
| TOM BEACH | | Address on File | | | | | | |
| TOM LOVELL | | Address on File | | | | | | |
| Tom Rigatti | | Address on File | | | | | | |
| Tomasino, Matthew | | Address on File | | | | | | |
| TOMLIN, WILLIAM | | Address on File | | | | | | |
| Tony Zaffaro | | Address on File | | | | | | |
| Total Alternatives | | PO Box 5018 | | | Brentwood | TN | 37024 | |
| Total Uptime Tech | | Post Office Box 2228 | | | Skyland | NC | 28776-0000 | |
| Touchstone Securities, Inc | | 303 Broadway | Suite 1100 | | Cincinnati | OH | 45202-4203 | |
| TOUDOUZE, KENNETH | | Address on File | | | | | | |
| Towers Watson | | PO Box 8500 | S-6110 | | Philadelphia | PA | 19178-6110 | |
| TPAC | | 920 Tyne Blvd | | | Nashville | TN | 37220 | |
| TQ ESI, LLC | | 400 N. St Paul | STE 1230 | | Dallas | TX | 75201 | |
| Tracey Ivey | | Address on File | | | | | | |
| TradeStation Securities, Inc. | Attn Account Department | 8050 SW 10th St -- Ste 2000 | | | Plantation | FL | 33324 | |
| TRAHAN, MICHAEL | | Address on File | | | | | | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 142 of 155

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 155 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TransPerfect Legal Solutions | Attn Accounts Receivable | 1250 Broadway Fl 7 | | | New York | NY | 10001-3749 | |
| TRANSWESTERN | | 5001 SPRING VALLEY RD | STE 600W | | Dallas | TX | 75244 | |
| TRANTHAM, AUSTIN | | Address on File | | | | | | |
| Travel Search Network | | 8111 LBJ Freeway # 550 | | | Dallas | TX | 75251 | |
| TRAVERS, TODD | | Address on File | | | | | | |
| Travis Kruger | | Address on File | | | | | | |
| TRC | | PO Box 536282 | | | Pittsburgh | PA | 15253-5904 | |
| TRC Consultants, LC | | 120 Diefert Ave | Suite 100 | | Boerne | TX | 78006 | |
| Treasurer of State of Vermont | | Securities Division | 89 Main Street, 2nd Floor, Drawer 20 | | Montpelier | VT | 05620 | |
| Treasurer of Virginia | | Virginia State Corporation Commission | 1300 East Main Street, 9th Floor | | Richmond | VA | 23219 | |
| Treasurer, State of Connecticut | | Securities & Business Investment Div | 260 Constitution Plaza | | Hartford | CT | 06103 | |
| Treasurer, State of Maine | | Office of Securities | 76 Northern Avenue | | Gardiner | ME | 04345 | |
| TREASURY OF THE UNITED STATES | Austin Campus Disclosure Office | Stop 7000-AUSC | PO Box 2986 | | Austin | TX | 78768 | |
| TREASURY OF THE UNITED STATES | INTERNAL REVENUE SERVICE | 3651 SOUTH IH-35, MS 7000AUSC | DISCLOSURE OFFICE | | Austin | TX | 78741 | |
| TREMOR, LAUREN E. | | Address on File | | | | | | |
| Trend Macrolytics LLC | | 680 N. Lake Shore Drive | #1412 | | Chicago | IL | 60611 | |
| Trenkner, Jamie | | Address on File | | | | | | |
| Trepp, LLC | | 477 Madison Ave 18th Flr | | | New York | NY | 10022 | |
| Triad Security Systems | | 971 Lehigh Avenue | | | Union | NJ | 07083 | |
| Trial Arts Professional Copy Service | | 1500 Dragon St, Ste C | | | Dallas | TX | 75207 | |
| Tricor Evatthouse Corporate Services | | 8 Cross Street | #11-00 PWC Building | | Singapore | | 048424 | SINGAPORE |
| Tricor Singapore Pte Ltd | | 8 Cross Street | #11-00 PWC Building | | Singapore | | 048424 | SINGAPORE |
| Trinity River Mission | | 2060 Singleton Blvd, Ste 104 | Suite 320 | | Dallas | TX | 75212 | |
| Triple Threat Cowboy | | 1430 Regal Row | | | Dallas | TX | 75247 | |
| TRI-RIVER CAPITAL | C/O BEUTEL & JOYCE, LP | ATTN MILTON WALTERS | 555 FIFTH AVE - 15TH FLR | | New York | NY | 10017 | |
| Tritech Communications, Inc. | | 625 Locust St. | | | Garden City | NY | 11530 | |
| Troutman Sanders LLP | | P.O. Box 933652 | | | Atlanta | GA | 31193-3652 | |
| TROY BARNETTE | | Address on File | | | | | | |
| Trump International Hotel & Tower CH | | 401 North Wabash Ave | | | Chicago | IL | 60611 | |
| Trussway Holdings, Inc. | Kendall Hoyd | 9411 Alcorn | | | Houston | TX | 77093-6753 | |
| Trussway Holdings, LLC | | 7001 Enterprise Ave | | | Fort Worth | TX | 76118 | |
| Trustees of Boston University | | 1 Silber Way | | | Boston | MA | 02215 | |
| Trustwave | | 70 W Madison St | Ste. 1050 | | Chicago | IL | 60602 | |
| TSCM AMERICA | | PO Box 6743 | | | McKinney | TX | 75071 | |
| TSCPA | | PO Box 797488 | | | Dallas | TX | 75379 | |
| TSG Reporting, Inc | | 747 Third Ave, Suite 10A | | | New York | NY | 10017 | |
| TSX INC | | The Exchange Tower | PO Box 421, 130 King Street West | | Toronto | ON | M5X 1E1 | CANADA |
| TTA Research & Guidance | | PO Box 71687 | | | Chicago | IL | 60694 | |
| Tuan Olona, LLP | | One Rockefeller Plaza | Eleventh Floor | | New York | NY | 10020 | |
| Turf Scapes | | 368 National Drive | | | Rockwall | TX | 75032-6531 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 143 of 155

**Appx. 00429**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 156 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Turing Experts | | Birchin Court | 20 Birchin Lane | | London | | EC3V 9DU | United Kingdom |
| Turtle Bay Resort | Attn Finance Department | 57-091 Kamehameha Highway | | | Kahuku | HI | 96731 | |
| TW Telecom Holdings, llc | | PO Box 910182 | | | Denver | CO | 80291-0182 | |
| Twenty-First Securities Corporation | | 780 Third Avenue | 24th Floor | | New York | NY | 10017 | |
| TXU ENERGY | | PO BOX 650638 | | | Dallas | TX | 75265-0638 | |
| TXU ENERGY | | PO BOX 660409 | | | Dallas | TX | 75266-0409 | |
| Tyco Integrated Security | | PO Box 371967 | | | Pittsburg | PA | 15250-7967 | |
| Tyler Kemp | | Address on File | | | | | | |
| TYRA GILB TRUST | | 325M SHARON PARK DR #207 | | | Menlo Park | CA | 94025-6804 | |
| U.D.S.TX, LLC | | 1401 Elm, Suite 4567 | | | Dallas | TX | 75202 | |
| U.S. - Japan Council | Attn Dana Fager, Develop. Coordinator | 1819 L Street, NW, Suite 800 | | | Washington | DC | 20036 | |
| U.S. Bancorp Equipment Finance, Inc. | | PO Box 790448 | | | Saint Louis | MO | 63179-0448 | |
| U.S. Bank | | CM-9690 | PO Box 70870 | | Saint Paul | MN | 55170-9690 | |
| U.S. Bank National Association | Attn CDO Unit | One Federal Street | 3rd Floor | Mail Code EX-MA-FED | Boston | MA | 02110 | |
| U.S. Fund for UNICEF | | 520 Post Oak Blvd | Suite 280 | | Houston | TX | 77027 | |
| U.S. Securities and Exchange Commission | Fort Worth Regional Office | Burnett Plaza, 19th Floor | 801 Cherry Street, Unit 18 | | Fort Worth | TX | 76102 | |
| UBS AG, London Branch | Attn Suzanne Forster, John Lantz | UBS Securities LLC, | 1285 Avenue of the Americas | | New York | NY | 10019 | |
| UBS AG, London Branch | Latham & Watkins LLP | Jeffrey E. Bjork, Kimberly A. Posin | 355 South Grand Avenue, Ste. 100 | | Los Angeles | CA | 90071 | |
| UBS AG, London Branch | Latham and Watkins LLP | Asif Attarwala | 330 North Wabash Ave. Suite 2800 | | Chicago | IL | 60611 | |
| UBS AG, London Branch | Latham and Watkins LLP | Andrew Clubok, Sarah Tomkowiak | 555 Eleventh Street, NW, Suite 1000 | | Washington | DC | 20004-1304 | |
| UBS AG, London Branch | UBS Securities LLC | Attn Suzanne Forster, John Lantz | 1285 Avenue of the Americas | | New York | NY | 10019 | |
| UBS AG, London Branch UBS Securities LLC | Latham & Watkins LLP | 555 Eleventh Street NW Suite 1000 | | | Washington | DC | 20004 | |
| UBS Securities LLC | | 1285 Avenue of the Americas | | | New York | NY | 10019 | |
| UBS Securities LLC | c/o Andrew Clubok | Latham & Watkins LLP #1000 | 555 11th Street NW | | Washington | DC | 20004 | |
| UBS Securities LLC | Latham & Watkins LLP | Jeffrey E. Bjork, Kimberly A. Posin | 355 South Grand Avenue, Ste. 100 | | Los Angeles | CA | 90071 | |
| UBS Securities LLC | Latham and Watkins LLP | Asif Attarwala | 330 North Wabash Ave. Suite 2800 | | Chicago | IL | 60611 | |
| UCG | | 11300 Rockville Pike | Ste 1100 | | Rockville | MD | 20852-3030 | |
| Uchi Dallas, LLC | | 701 S. Lamar Blvd | Suite C | | Austin | TX | 78704 | |
| UDAI DHAWAN | | 28 SPRAIN VALLEY RD | | | Scarsdale | NY | 10583 | |
| UERMMMC-MAAAI | Dr. Audrey Coo, Treaurer | PO Box 2153 | | | Bedford Park | IL | 60499-2153 | |
| Uif Nofelt | | Address on File | | | | | | |
| Ulicjny, Inc. | | 92 Amity Drive | | | Wayne | PA | 19087 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 144 of 155

**Appx. 00430**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 157 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Umari Zugaro, PLLC | Basil A. Umari | 1403 Eberhard | | | Houston | TX | 77019 | |
| UMB Bank, N.A. | Attn Trust Fees Dept | PO Box 414589 | | | Kansas City | MO | 64141-4589 | |
| UNICOM TECHNOLOGIES, INC | | 1011 HWY 6 S | STE 200 | | Houston | TX | 77077 | |
| Unimerica Insurance Company | Administrative Office | 6300 Olson Memorial Highway | | | Golden Valley | MN | 55427 | |
| Unishippers | | 800 W Airport Fwy Ste 611 LB 6065 | | | Irving | TX | 75062 | |
| Unishippers | | 800 W Airport FWY Ste 611 LB 6065 | | | Irving | TX | 75062-6294 | |
| United American Reporting Services | | 1201 Elm Street | Suite 5220 | | Dallas | TX | 75270 | |
| United Capital | | 5655 S. Yosemite St. | Suite 450 | | Greenwood Village | CO | 80111 | |
| United Carpet Cleaning Systems, Inc. | | PO Box 1625 | | | Hurst | TX | 76053 | |
| UNITED HEALTHCARE INSURANCE COMPANY | ATTN LISA CARRILLO | 5800 GRANITE PKWY, STE 700 | | | Plano | TX | 75024 | |
| UNITED HEALTHCARE INSURANCE COMPANY | | 22561 NETWORK PLACE | | | Chicago | IL | 60673-1225 | |
| United Mechanical | | 11540 Plano Road | PO Box 551206 | | Dallas | TX | 75355-1206 | |
| United Parcel Service, Inc | | 55 Glenlake Parkway | | | Atlanta | GA | 30328-0000 | |
| United States Treasury | | INTERNAL REVENUE SVC | PO BOX 69 | | Memphis | TN | 38101-0069 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Cincinnati | OH | 45999-0039 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Kansas City | MO | 64999-0202 | |
| United States Treasury | | STOP 5107 NWSAT | 4050 ALPHA RD | | Farmers Branch | TX | 75244-4201 | |
| United States Treasury | | PO Box 660443 | | | Dallas | TX | 75266-0443 | |
| United States Treasury | | INTERNAL REVENUE SERVICE | | | Ogden | UT | 84201-0039 | |
| UNITED VAN LINES | | ONE UNITED DRIVE | | | Fenton | MO | 63026-1350 | |
| United Way of Mass. Bay & Merrimack Vly | Attn A/R- Barbara Alexander | PO Box 51381 | | | Boston | MA | 02205-1381 | |
| Universal Printing Solutions, Inc. | | 10573 West Pico Blvd. #610 | | | Los Angeles | CA | 90064-2438 | |
| University of Michigan | c/o Matching Gifts | 3003 S. State Street, Suite 8000 | | | Ann Arbor | MI | 48109-1288 | |
| University of Pennsylvania | | 433 Franklin Building | 3451 Walnut Street | | Philadelphia | PA | 19104-6285 | |
| University Prk Sch ParentTeacher Assoc | | 3505 Amherst | | | Dallas | TX | 75225 | |
| Unum Life Insurance Company of America | | PO BOX 406834 | | | Atlanta | GA | 30384-6834 | |
| Unum Life Insurance Company of America | | PO Box 409548 | | | Atlanta | GA | 30384-9548 | |
| Update Legal | | 1140 Avenue of the Americas | | | New York | NY | 10036 | |
| Uplift Education | c/o David Jackson | 1825 Market Center Blvd, Ste 500 | | | Dallas | TX | 75207 | |
| UPMC HEALTH SYSTEM PENSION TRUST | | 1 MELLON BANK CTR | | | Pittsburgh | PA | 15258 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 158 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| UPS Freight | | PO Box 730900 | | | Dallas | TX | 75373-0900 | |
| UPS Supply Chain Solutions | | PO BOX 7247-0244 | | | Philadelphia | PA | 19170-0001 | |
| UPS Supply Chain Solutions | | 28013 Network Place | | | Chicago | IL | 60673-1280 | |
| UPS Supply Chain Solutions | | PO Box 730900 | | | Dallas | TX | 75373-0900 | |
| UpSwing Performance Improvement, Inc. | | PO Box 738 | | | Manchester | MO | 63011 | |
| Uptown Energy Partners | | 2602 McKinney Ave | Suite 330 | | Dallas | TX | 75204 | |
| Urano, Cameron | | Address on File | | | | | | |
| URBAN, ASHLEY | | Address on File | | | | | | |
| URBAN, JOHN | | Address on File | | | | | | |
| URBANIC, MATTHEW | | Address on File | | | | | | |
| URECH, DANIELLE | | Address on File | | | | | | |
| URS CORPORATION | | PO BOX 121028 | DEPT 1028 | | Dallas | TX | 75312-1028 | |
| US Attorneys Office for the Northern District of Texas | Erin Nearly Cox, Donna K. Webb | 1100 Commerce St. Suite 300 | | | Dallas | TX | 75242 | |
| US Bank | | 1555 N Rivercenter Dr, Ste 302 | | | Milwaukee | WI | 53212 | |
| US BANK NA | ATTN THOMAS BELCHER | ONE FEDERAL STREET | THIRD FLOOR | | Boston | MA | 02110 | |
| US Foods, Inc. | | Box 843202 | | | Dallas | TX | 75284-3202 | |
| US Legal Support | | Texas Records & Reporting | PO BOX 952172 | | Dallas | TX | 75395-2172 | |
| US Legal Support | | Chicago, IL Reporting | PO Box 4772-11 | | Houston | TX | 77210-4772 | |
| US Markets | | 10 W. 37th St | 7th FL | | New York | NY | 10018 | |
| US Policy Metrics LLC | | 2001 K St NW Fl 8-11 | | | Washington | DC | 20006-1042 | |
| US Postage Meter Center | | PO Box 800848 | | | Santa Clarita | CA | 91380 | |
| US Securities & Exchange Commission | FOIA Officer & Privacy Act Officer | 100 F Street, NE | Mail Stop 2736 | | WASHINGTON | DC | 20549-2000 | |
| US Ski and Snowboard Team Foundation | | 1 Victory Lane | Box 100 | | Park City | UT | 84060 | |
| USA Shooting | Attn Rob Weekes | 1 Olympic Plaza | | | Colorado Springs | CO | 80909 | |
| usfi marketing communications | | 12100 Ford Rd Ste 100 | | | Dallas | TX | 75234 | |
| USTMAAM | C/O MARC VILLAFANIA | 104 BIG OAKS RD | | | STREAMWOOD | IL | 60107-1320 | |
| USW LOCAL 870 | | 94 WASHINGTON PLACE | | | Totwa | NJ | 07512 | |
| Utah Division of Securities | | Securities Division | 160 East 300 South, 2nd Floor | | Salt Lake City | UT | 84111 | |
| UTAH STATE TAX COMMISSION | | 210 N 1950 W | | | Salt Lake City | UT | 84134 | |
| Valhalla CLO, Ltd. | c/o Intertust SPV (Cayman) Limited | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Valhalla CLO, Ltd. JPMorgan Chase Bank | JPMorgan Chase Bank | 390 Greenwich Street, 4th Floor | Institutional Trust Services | Valhalla CLO. Ltd. | New York | NY | 10013 | |
| Valhalla CLO, Ltd. JPMorgan Chase Bank | Valhalla CLO, Ltd. c/o Walkers SPV Limited | Walker House, PO Box 908GT, Mary Street | George Town, Grand Cayman | The Directors | Grand Cayman | | | Cayman Islands |
| VALIANT MEDIA | | 3116-D COMMERCE ST | | | Dallas | TX | 75226 | |
| Validity, Inc. | | 200 Clarendon St | 22nd Floor | | Boston | MA | 02116 | |
| Value Line Publishing | ATTN Matt Jamison | Value Line Publishing, Inc | 220 East 42nd Street 6th floor | | New York | NY | 10017 | |
| ValueScope, Inc. | | 1400 Thetford Ct. | | | Southlake | TX | 76092 | |
| VAN HOEF, ASHLEY | | Address on File | | | | | | |
| VANACOUR, JASON | | Address on File | | | | | | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Vanessa Sea | | Address on File | | | | | | |
| Vanguard Brokerage Services | Attn Securities Receipt & Transfer | PO Box 1170 | | | Valley Forge | PA | 19482-1170 | |
| Vector One Management | | 113 E 55th St | | | New York | NY | 10022 | |
| Vela Wood PC | Attention Kevin Vela | 5307 E. Mockingbird Lane, Suite 802 | | | Dallas | TX | 75206 | |
| Venable LLP | | PO Box 630798 | | | Baltimore | MD | 21263-0798 | |
| Venable LLP | | PO Box 62727 | | | Baltimore | MD | 21264-2727 | |
| Vengroff Williams, Inc c/o American Arbitration Association | Vengroff Williams, Inc c/s American Arbitration | 2211 Fruitville Rd | | | Sarasota | FL | 34237 | |
| Venture Mechanical, Inc. | | 1644 W Crosby Rd | | | Carrollton | TX | 75006-6628 | |
| Veritas Backup Exec | | 2625 Augustine Drive | | | Santa Clara | CA | 95054-0000 | |
| Veritas Enterprise Vault | | 2625 Augustine Drive | | | Santa Clara | CA | 95054-0000 | |
| Veritas Software Global LLC | | PO Box 60000 | | | San Francisco | CA | 94160-3667 | |
| Veritext Corp. | | 3090 Bristol Street | Suite 190 | | Costa Mesa | CA | 92626 | |
| Veritext Los Angelos Reporting Co | | 3090 Bristol St | Suite 190 | | Costa Mesa | CA | 92626 | |
| Veritext Mid-Atlantic | | 1801 Market Street | Suite 1800 | | Philadelphia | PA | 19103 | |
| Veritext New York Reporting Co | | 330 Old Country Rd | Suite 300 | | Mineola | NY | 11501 | |
| Veritext New York Reporting Co | | PO Box 71303 | | | Chicago | IL | 60694-1303 | |
| Verity Group | | 885 E Collins Blvd | Ste. 102 | | Richardson | TX | 75081-0000 | |
| Verity Group | | PO Box 940361 | | | Plano | TX | 75094-0361 | |
| VERIZON | | PO BOX 15124 | | | Albany | NY | 12212-5124 | |
| VERIZON | | PO BOX 1100 | | | Albany | NY | 12250-0001 | |
| Verizon Wireless | | PO Box 489 | | | Newark | NJ | 07101-0489 | |
| Verizon Wireless | | PO Box 790406 | | | Saint Louis | MO | 63179-0406 | |
| Verizon Wireless | | PO Box 660108 | | | Dallas | TX | 75266-0108 | |
| Verizon Wireless | | PO Box 4001 | | | Inglewood | CA | 90313-4001 | |
| Vermont Department of Taxes | | PO Box 588 | | | Montpelier | VT | 05601 | |
| Vermont Dept of Financial Regulation | | Dept of Banking, Insurance & Securities | 89 Main Street, 2nd Floor, Drawer 20 | | Montpelier | VT | 05620 | |
| Verrill Dana LLP | | One Portland Square | P.O. Box 586 | | Portland | ME | 04112 | |
| VFG Securities, Inc. | Attn Jana Oledzki | 100 Corporate Pointe | Suite 382 | | Culver City | CA | 90230-7612 | |
| ViaWest, Inc. | Attn John Greenwood | 1200 17th Street, Suite 1150 | | | Denver | CO | 80202 | |
| ViaWest, Inc. | | PO Box 732368 | | | Dallas | TX | 75373-2368 | |
| ViaWest, Inc. | | PO Box 912362 | | | Denver | CO | 80291-2362 | |
| Vibrancy21 | | 1133 South Clinton Street | | | Baltimore | MD | 21224 | |
| Vickery Meadow Learning Center | | 6329 Ridgecrest | | | Dallas | TX | 75231 | |
| Victor Chang | | Address on File | | | | | | |
| Victor Chong | | Address on File | | | | | | |
| Vigilant Resources | | 45 Rockefeller Plaza, 20th Floor | | | New York | NY | 10111 | |
| VILLA VERONA, LTD | | 13330 NOEL RD | | | Dallas | TX | 75240 | |
| Village on the Green | | 5301 Alpha Road, Suite 44 | | | Dallas | TX | 75240 | |
| Vin Thompson | | Address on File | | | | | | |

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Vincent Lopez Serafino & Jenevein, PC | | 2001 Bryan St | Suite 2000 | | Dallas | TX | 75201 | |
| VINSON & ELKINS, LLP | | A1001 FANNIN ST, STE 2300 | FIRST CITY TOWER | | Houston | TX | 77002-6760 | |
| Vintage Filings | | 350 Hudson Street, Suite 300 | | | New York | NY | 10014 | |
| Vintage Filings | | 350 Hudson Street | Suite 300 | | New York | NY | 10014 | |
| Vintage Filings | | PO Box 30719 | | | New York | NY | 10087-0719 | |
| Vira, Sagar | | Address on File | | | | | | |
| VIRGINIA DEPARTMENT OF TAXATION | | PO BOX 1500 | | | Richmond | VA | 23218-1500 | |
| VIRGINIA DEPARTMENT OF TAXATION | | PO BOX 1777 | | | Richmond | VA | 23218-1777 | |
| Virginia Retirement System | Attn Control | PO Box 361 | | | Richmond | VA | 23218 | |
| Virginia Retirement Systems | Attn Control | PO Box 361 | | | Richmond | VA | 23218 | |
| Vishnu Gogineni | | Address on File | | | | | | |
| Visix, Inc. | | 230 Scientific Drive | Suite 800 | | Norcross | GA | 30092 | |
| Vitae Search Group, LLC | | 6009 Mariposa Drive | | | McKinney | TX | 75070 | |
| Vitiello, Stephanie | | Address on File | | | | | | |
| Vlahakis, Eleni | | Address on File | | | | | | |
| VODAFONE | | PO BOX 549 | | | London | | OX17 3ZJ | United Kingdom |
| Vogel Alcove | | 200 Crescent Court | Ste 300 | | Dallas | TX | 75201 | |
| Voice of Hope | Attn Ruth Hardesty | PO Box 224845 | | | Dallas | TX | 75222-4845 | |
| Volunteers for Youth, Inc. | | 205 Lloyd Street | Suite 103 | | Carrboro | NC | 27510 | |
| Voya Financial Advisors | Attn Adriana Mardarie Gagov | 909 Locust Street | | | Des Moines | IA | 50309 | |
| Voya Financial Advisors | | 5780 Powers Ferry Road, NW | | | Atlanta | GA | 30327 | |
| VSI Solutions | | 203 Dumont ct | | | Fairview | TX | 75069 | |
| VTB Capital plc | | 14 Cornhill | | | London | | EC3V3ND | United Kingdom |
| W San Diego | | 421 West B St | | | San Diego | CA | 92101 | |
| W. Andrew Hodge Consulting, PA | | PO Box 11417 | | | Glendale | AZ | 85318 | |
| W.B. Mason Co., Inc. | | 59 Centre St | | | Brockton | MA | 02301 | |
| Wachovia Insurance Services | | 5956 Sherry Lane | Suite 2000 | | Dallas | TX | 75225-6531 | |
| Wachovia Secuities LLC | | Relationship Management Group-MO1400 | 1 North Jefferson St | | Saint Louis | MO | 63103 | |
| Wachtell, Lipton, Rosen & Katz | | 51 West 52nd Street | | | New York | NY | 10019 | |
| Wagner, Grace | | Address on File | | | | | | |
| Wake2O | | Rue du Mont Blanc 3 | | | Geneva | | 01201 | SWITZERLAND |
| Wakefield Quinn | | Victoria Place | 31 Victoria St | | Hamilton | | 0HM10 | Bermuda |
| Wakefield Quinn | | PO BOX HM 809 | | | Hamilton | | 0HMCX | BERMUDA |
| Walek & Associates, Inc. | | 317 Madison Avenue Suite 2300 | | | New York | NY | 10017 | |
| WALIA, AMIT | | Address on File | | | | | | |
| Walker Dunlop | | Address on File | | | | | | |
| Walker Kobelan | | Address on File | | | | | | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 161 of
175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Walkers | | PO Box 265GT, Walker House | 87 Mry Street | | George Town | | KY1-9001 | Cayman Islands |
| Walkers - Ireland | | The Exchange, Georges Dock, IFSC | | | Dublin | | 1 | Ireland |
| Walkers Fund Services Limited | c/o Intertrust Cayman | 190 Elgin Avenue | George Town | | Grand Cayman | | KY1-9005 | Cayman Islands |
| Wall Street Tax Association | c/o OConnor Davies Munns & Dobbins LLP | 60 East 42nd Street | | | New York | NY | 10165 | |
| WALLS, DAVID | | Address on File | | | | | | |
| WALTER JARMAN | | Address on File | | | | | | |
| WAN, QIAN | | Address on File | | | | | | |
| WANG, ALICE | | Address on File | | | | | | |
| WANG, CHEN-HAN | | Address on File | | | | | | |
| Wang, Ruozhou | | Address on File | | | | | | |
| Warehouse Store Fixture Co. | | 84 Progress Lane | | | Watebury | CT | 06705 | |
| Warner Stevens LLP | | 1700 City Center Tower II | 301 Commerce Street | | Fort Worth | TX | 76102 | |
| Warren Posner | | Address on File | | | | | | |
| Washington Speakers Bureau Inc. | | 1663 Prince Street | | | Alexandria | VA | 22314 | |
| Washington State Treasurer | | WA Dept of Finan Inst. Securities Div | 150 Israel Road SW | | Tumwater | WA | 98501 | |
| Waterhouse, Frank | Ross & Smith, PC | Plaza of the Americas | 700 N Pearl Street, Suite 1610 | | Dallas | TX | 75201 | |
| WATERHOUSE, FRANK | | Address on File | | | | | | |
| Waterview Advisors | | 14800 Quorum Dr Ste 450 | | | Dallas | TX | 75254-7531 | |
| Watson Wyatt & Co | | PO Box 277665 | | | Atlanta | GA | 30384 | |
| WATSON, ERIN | | Address on File | | | | | | |
| Watts, Andrew | | Address on File | | | | | | |
| WATTS, KEITH R | | Address on File | | | | | | |
| Wayne Bell | | Address on File | | | | | | |
| WC 4641 Production, LLC | C/o Great Value Storage | 4641 Production Drive | | | Dallas | TX | 75235 | |
| WCDABG | Attn Sharon Popham, Reservations Chair | 3 Carmarthen Court | | | Dallas | TX | 75225 | |
| Wealthforge Securities, LLC | | 6800 Paragon Place | Ste 200 | | Richmond | VA | 23230 | |
| Wealthmaster Group, LLC | | 18881 Von Karman Ave | Suite 720 | | Irvine | CA | 92612 | |
| Weatherly, Brian | | Address on File | | | | | | |
| Weaver and Tidwell, LLP | | 2821 West 7th Street | Suite 700 | | Fort Worth | TX | 76107 | |
| Webb, Justin | | Address on File | | | | | | |
| WebsiteBackup Company | | 2375 E. Camelback Rd | Suite 600 | | Phoenix | AZ | 85016 | |
| WEBSTER, GREGORY W | | Address on File | | | | | | |
| WEIJUN ZANG | | Address on File | | | | | | |
| Weinstein, Clower & Associates | | PO Box 795001 | | | Dallas | TX | 75379 | |
| Welch Consulting Ltd | | 1716 Briarcrest Drive #700 | | | Bryan | TX | 77802-2760 | |
| Wells Fargo Advisors FBO Bezilla | Attn Alan Kinney | 200 Stephenson Ave, Suite 301 | | | Savannah | GA | 31405 | |
| Wells Fargo Advisors, LLC | Attn Andrew Black | 280 Park Avenue, FL 29W | | | New York | NY | 10017 | |
| Wells Fargo Advisors, LLC | Attn April Johnson | 10900 Wilshire Blvd, 11th Floor | | | Los Angeles | CA | 90024 | |

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Wells Fargo Advisors, LLC | Attn Dan Racicot WF - Finet | 4275 Executive Square, Ste 910 | | | La Jolla | CA | 92037 | |
| Wells Fargo Advisors, LLC | Attn Denise Bare | 9665 Wilshire Blvd, Ste 100 | | | Beverly Hills | CA | 90212 | |
| Wells Fargo Advisors, LLC | Attn Greg Shumaker | 700 Ackerman Rd., Ste 400 | | | Columbus | OH | 43202 | |
| Wells Fargo Advisors, LLC | Attn Kathy Buckley | 6060 South American Plaza St East | | | Tulsa | OK | 74135 | |
| Wells Fargo Advisors, LLC | Attn Kevin Dailey | 100 East Wisconsin Ave, 12th Floor | | | Milwaukee | WI | 53202 | |
| Wells Fargo Advisors, LLC | Attn Mike McChesney | 2500 Legacy Dr., Ste 200 | | | Frisco | TX | 75034 | |
| Wells Fargo Advisors, LLC | Attn Nicole Stenquist | 450 Post Road East | | | Westport | CT | 06880 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 20 William Street, Ste 300 | | | Wellesley | MA | 02481 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 331 Newman Springs Rd, Ste 230 | | | Red Bank | NJ | 07701 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 222 East Main St, Ste 106 | | | Smithtown | NY | 11787 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 13621 University Ave | | | Clive | IA | 50325 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 909 Fannin St, Suite 1200 | | | Houston | TX | 77010 | |
| Wells Fargo Advisors, LLC | Attn Operations Manager | 1200 17th St, Ste 2000 | | | Denver | CO | 80202 | |
| Wells Fargo Advisors, LLC | Attn Operations Mgr Garner Mabry | 6400 South Fiddlers Green Cir, Ste 1840 | | | Greenwood Village | CO | 80111 | |
| Wells Fargo Advisors, LLC | Attn Paula Curry, Control Specialist | 2 International Place, 20th Fl | | | Boston | MA | 02110 | |
| Wells Fargo Advisors, LLC | Attn Rita Borchers | 7400 West 130th St, Ste 200 | | | Overland Park | KS | 66213 | |
| Wells Fargo Advisors, LLC | Attn Tracy Lusk | 8115 Preston Rd, Suite 300 | | | Dallas | TX | 75225 | |
| Wells Fargo Advisors, LLC | Attn Web Wang | 5820 Canoga Ave, #100 | | | Woodland Hills | CA | 91367 | |
| Wells Fargo Advisors, LLC | c/o David Elfenbein | 1211 Avenue of the Americas, 27th Flr | | | New York | NY | 10036 | |
| Wells Fargo Advisors, LLC | c/o Hefter Leshem Margolis | 500 Lake Cook Rd, Ste 100 | | | Deerfield | IL | 60015 | |
| Wells Fargo Advisors, LLC | c/o Shannon Walker | 695 E. Arlington Blvd., Ste 201 | | | Greenville | NC | 27858 | |
| Wells Fargo Advisors, LLC | | 180 Glastonbury Blvd | Suite 301 | | Glastonbury | CT | 06033 | |
| Wells Fargo Advisors, LLC | | 1 North Jefferson Ave. | | | Saint Louis | MO | 63103 | |
| Wells Fargo Advisors, LLC | | 3501 W Rosemont Ave | | | Chicago | IL | 60659-2207 | |
| Wells Fargo Advisors, LLC | | 10900 Wilshire Blvd | 11th Floor | | Los Angeles | CA | 90024 | |
| Westwood | | WF 8113 | PO BOX 1450 | | Minneapolis | MN | 55485-8113 | |
| WELLS FARGO BANK | | Address on File | | | | | | |
| Wemple, Stefanie | | Address on File | | | | | | |
| WEN, JING | | Address on File | | | | | | |
| WENDELL, MORTON | | Address on File | | | | | | |
| Wendy Harper | | Address on File | | | | | | |
| WENTWORTH, KEVIN J. | | Address on File | | | | | | |
| Wesley Golie | | Address on File | | | | | | |
| West Court Reporting Services | | West Payment Center | P.O. Box 6292 | | Carol Stream | IL | 60197-6292 | |
| West Payment Center | | PO Box 6292 | | | Carol Stream | IL | 60197-6292 | |
| West Publishing Corporation | | P.O. Box 12421 | | | Newark | NJ | 07101 | |
| West Virginia State Auditor Office | Securities Division | 1900 Kanawha Blvd. E | State Capital Building 1, Room W-100 | | Charleston | WV | 25305-0230 | |
| Westchester CLO, Ltd. | The Directors | PO Box 1093 GT, Queensgate House | South Church Street | George Town | Grand Cayman | | KY1-1108 | Cayman Islands |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 163 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Westchester CLO, Ltd. | | P.O. Box 1093GT | Queensgate House, South Church Street | The Directors | George Town | | | Cayman Islands |
| Westchester CLO, Ltd. | Investors Bank & Trust Company | | COO Services Group Ref Westchester CLO, Ltd. | | | | | |
| Investors Bank & Trust Company | | 200 Claredon Street | | | Boston | MA | 02116 | |
| Western International Securities, Inc. | | 70 S. Lake Ave | Ste 700 | | Pasadena | CA | 91101 | |
| Wesley McGeoghegan | | 49 Chetwynd Road | | | Somerville | MA | 02144 | |
| WESTMINSTER CITY COUNCIL | | PO BOX 397 | | | London | | WA55 1GG | United Kingdom |
| WestPark Capital, Inc. | | 1900 Avenue of the Stars | Suite 310 | | Los Angeles | CA | 90067 | |
| Westwood Professional Services, Inc. | | 7699 Anagram Drive | | | Eden Prairie | MN | 55334 | |
| WHARF, PAUL | | Address on File | | | | | | |
| WHARF, PAUL C. | | Address on File | | | | | | |
| Whatley, David | | Address on File | | | | | | |
| WHERRY, SHANNON M. | | Address on File | | | | | | |
| Whetstone, Laurie | | Address on File | | | | | | |
| Whitaker, Chalk, Swindler, & Sawyer | | 301 Commerce St. Suite 3500 | | | Ft. Worth | TX | 76102 | |
| White & Case LLP | | 1155 Avenue of the Americas | | | New York | NY | 10036-2787 | |
| White & Williams LLP | | 1800 One Liberty Place | | | Philadelphia | PA | 19103-7395 | |
| White, Jeremy | | Address on File | | | | | | |
| White, Kelly | | Address on File | | | | | | |
| WhiteGlove House Call Health, Inc. | | 5300 Bee Cave Rd, Bldg One | Ste 100 | | Austin | TX | 78746 | |
| WhiteGlove House Call Health, Inc. | | PO Box 845720 | | | Dallas | TX | 75284-5720 | |
| Whitehall-Parker Securities, Inc. | | 477 Pacific Ave, 2nd Floor | | | San Francisco | CA | 94133 | |
| Whitney Smith Co | | 301 Commerce St | Suite 1950 | | Fort Worth | TX | 76102 | |
| WhitneySmith Company | | 301 Commerce Street, Suite 1950 | | | Fort Worth | TX | 76102 | |
| WICK PHILIPS LLP | | 500 North Akward Street | Suite 2100 | | Dallas | TX | 75201 | |
| Wick Phillips Gould & Martin, LLP | Jason M. Rudd, Lauren K. Drawhorn | 3131 McKinney Avenue, Suite 500 | | | Dallas | TX | 75204 | |
| Wicks Business Information | | 1375 Kings Highway East Ste 450 | | | Fairfield | CT | 06824 | |
| Wild Rose Floral Design Studio | | PO Box 541 | | | Rockwall | TX | 75087 | |
| Wild Rose Floral Design Studio | | 720 E Lamar St | | | Royse City | TX | 75189 | |
| Wientz, Goldman & Spitzer | | 90 Woodbridge Center Dr. | | | Woodbridge | NJ | 07095 | |
| Wiley, Grant | | Address on File | | | | | | |
| Wilkinson Center | Attn Andrea Jones | PO Box 720248 | | | Dallas | TX | 75372 | |
| Wilkinson Center | Attn Cathy Rosson | PO Box 720248 | | | Dallas | TX | 75372 | |
| Wilks, Lukoff & Bracegirdle, LLC | Thad J. Bracegirdle | 4250 Lancaster Pike, Suite 200 | | | Wilmington | DE | 19805 | |
| Will Pryor Mediation & Arbitration | | 5420 LBJ Frwy Ste 626 | | | Dallas | TX | 75240 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21    Entered 08/19/21 16:03:15    Page 164 of 175

**Exhibit C**
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| WILLIAM CORNELIUS | | Address on File | | | | | | |
| William Gosserand | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| William Ikard | | Address on File | | | | | | |
| William Keeney | | Address on File | | | | | | |
| William M. Cobb & Associates, Inc. | | 12770 Coit Rd, Ste 907 | | | Dallas | TX | 75251 | |
| William Mabry | Michael P. Hutchens, Esq. | Whitaker Chalk Swindle & Schwartz PLLC | 301 Commerce Street, Suite 3500 | | Fort Worth | TX | 76102-4135 | |
| William Oliveira | | Address on File | | | | | | |
| William R. Welch | | Address on File | | | | | | |
| William Todd Westerburg | | Address on File | | | | | | |
| Williams, Andrew | | Address on File | | | | | | |
| WILLIAMS, MEREDITH | | Address on File | | | | | | |
| Willis of New York, Inc. | | PO Box 4557 | | | New York | NY | 10249-4557 | |
| Willis of Texas, Inc. | | Dallas/Ft. Worth Division | PO Box 730310 | | Dallas | TX | 75373-0310 | |
| Willis of Texas, Inc. | | PO Box 731739 | | | Dallas | TX | 75373-1739 | |
| Wilkie Farr & Gallagher LLP | | 787 Seventh AvE | | | New York | NY | 10019-6099 | |
| WILLMORE, DAVID | | Address on File | | | | | | |
| Willoughby McCabe Agents Co | | 3409 Rosedale Avenue | | | Dallas | TX | 75205 | |
| WILLOUGHBY-MCCABE, PATRICK | | Address on File | | | | | | |
| Wilmer Cutler Pickering Hale and Dorr LLP | Timothy F. Silva | 60 State Street | | | Boston | MA | 02109 | |
| Wilmer Cutler Pickering Hale Dorr LLP | | 1875 Pennsylvania Avenue NW | | | Washington | DC | 20006 | |
| Wilmer Cutler Pickering Hale Dorr LLP | | PO Box 7247-8760 | | | Philadelphia | PA | 19170-8760 | |
| Wilmington Trust Company | | Rodney Square North | 1100 North Market St | | Wilmington | DE | 19890-0001 | |
| Wilshire Associates Incorporated | Attn Accounts Receivable | 1299 Ocean Avenue, Suite 700 | | | Santa Monica | CA | 90401-1085 | |
| WILSON SMITH | | Address on File | | | | | | |
| WILSON, ANDREW | | Address on File | | | | | | |
| WILSON, ANTHONY | | Address on File | | | | | | |
| Wilson, Owen | | Address on File | | | | | | |
| WILSON, SCOTT | | Address on File | | | | | | |
| Wilson, Sonsini, Goodrich, & Rosati | | PO Box 742866 | | | Los Angeles | CA | 90074-2866 | |
| Wilson, Sonsini, Goodrich, & Rosati | | File # 73672 | PO Box 60000 | | San Francisco | CA | 94160-3672 | |
| WILSON, STEVE L. | | Address on File | | | | | | |
| Wilton, William | | Address on File | | | | | | |
| WINGS Ventures LLC | | 172304 Preston Rd | Ste 800 | | Dallas | TX | 75252 | |
| Winn Media | | Address on File | | | | | | |
| WINSTEAD P.C. | | 5400 RENAISSANCE TOWER | 1201 ELM ST | | Dallas | TX | 75270 | |
| WINSTEAD P.C. | | 2728 N Harwood Street | Suite 500 | | Dallas | TX | 75201-1743 | |
| Winston & Strawn LLP | | 2121 North Pearl Street | Suite 900 | | Dallas | TX | 75201 | |
| Wired | | PO Box 37704 | | | Boone | IA | 50037-0704 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 165 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Wisconsin Office of Comm of Securities | Division of Securities | 201 West Washington Avenue, Suite 300 | | | Madison | WI | 53703 | |
| WISE, CHRIS | | Address on File | | | | | | |
| Wiseman & Hoffman | | 460 Park Ave South, 4th Flr | | | New York | NY | 10016 | |
| WISER, JASON | | Address on File | | | | | | |
| Withers Bergman LLP | | 157 Church Street, 12th Floor | PO Box 426 | | New Haven | CT | 06502 | |
| Withers Bergman LLP | | PO Box 1685 | | | New Haven | CT | 06507 | |
| WM Fund Associates Co., Ltd. | | Kakimi Kojimachi Annex Bldg 6F | 3-2 Kojimachi, Chiyoda-ku | | Tokyo | | 102-0083 | JAPAN |
| Wolters Kluwer | | 1999 Bryan Street | Ste 900 | | Dallas | TX | 75201-0000 | |
| Wolters Kluwer Legal & Regulatory US | | PO Box 71882 | | | Chicago | IL | 60694-1882 | |
| Wombat Security Technologies | | 3030 Penn Avenue | Suite 200 | | Pittsburgh | PA | 15201 | |
| Womens Auxiliary Childrens-Six Flags | Attn Jenny Garberding | 7315 Centenary Ave | | | Dallas | TX | 75225 | |
| Womens Auxiliary Childrens-Six Flags | Attn Robin Wilson, Treasurer | 7506 Greenbrier | | | Dallas | TX | 75225 | |
| Wonderlic | | 1795 N. Butterfield Rd | | | Libertyville | IL | 60048-1212 | |
| WOOD, HANNAH | | Address on File | | | | | | |
| Woodall Rodgers Park Foundation | Attn Erika White | 1909 Woodall Rodgers Fwy | Suite 403 | | Dallas | TX | 75201 | |
| Woodbury Financial Services, Inc. | ATTN Reimb Processing | PO Box 64284 | | | Saint Paul | MN | 55164 | |
| Woodruff-Sawyer & Co. | | PO Box 45057 | | | San Francisco | CA | 94145-9950 | |
| WOOTTON, JENNIFER | | Address on File | | | | | | |
| World Affairs Council | | 325 N. St. Paul St. | Suite 4200 | | Dallas | TX | 75201 | |
| World Data Products | | M & I 196 PO Box 1414 | | | Minneapolis | MN | 55480-1414 | |
| World Financial Solutions | | 16140 Northcross Drive | | | Huntersville | NC | 28078 | |
| Worldwide Insurance Services | ATTN INDIVIDUAL UNDERWRITING DEPT | 100 MATSONFORD RD | STE 100 | | Radnor | PA | 19087 | |
| WP Engine | | 504 Lavaca Street | Suite 1000 | | Austin | TX | 78701-0000 | |
| WQ International Ltd. | | Victoria Place. 31 Victoria Street | | | Hamilton | | 0HM10 | BERMUDA |
| Wright Wealth Management | | 3181 Clearwater Dr. | Ste A | | Prescott | AZ | 86305 | |
| Wrights Media | | 2407 Timberloch Place | Suite B | | The Woodlands | TX | 77380-1039 | |
| Wurz, Brandon | | Address on File | | | | | | |
| Wyoming Secretary of State | | Securities Division, State Capitol Bldg | 2020 Carey Avenue, Suite 700 | | Cheyenne | WY | 82001 | |
| Xact Data Discovery -DATX | | 5800 Foxridge Dr | Suite 406 | | Mission | KS | 66202 | |
| Xerox | | 45 Glover Ave | | | Norwalk | CT | 06856-0000 | |
| Xerox Corporation | | 2553 Collections Center Dr. | | | Chicago | IL | 60693 | |
| Xerox Corporation | | PO Box 650361 | | | Dallas | TX | 75265 | |
| Xerox Corporation | | PO Box 827598 | | | Philadelphia | PA | 19182-7598 | |
| Xerox Corporation | | PO Box 802555 | | | Chicago | IL | 60680-2555 | |
| Xerox Corporation | | PO Box 7405 | | | Pasadena | CA | 91109-7405 | |
| Xignite, Inc | | 1825 South Grant St | Suite 100 | | San Mateo | CA | 94404 | |
| Xignite, Inc | | Dept 3344 | PO Box 123344 | | Dallas | TX | 75312-2344 | |

Highland Capital Management, L.P.
Case No. 19-34054

Page 153 of 155

**Appx. 00439**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 166 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| XIOTECH CORPORATION | | DEPT CH 17326 | | | Palentine | IL | 60055-7326 | |
| XO Communications | | PO Box 530471 | | | Atlanta | GA | 30353-0471 | |
| XPISTI LLC | | 2807 Allen Street # 382 | | | Dallas | TX | 75204 | |
| Xtract Research | | 330 Hudson Street | 4th Floor | | New York | NY | 10013 | |
| YAGNISIS, AIRLIA | | Address on File | | | | | | |
| YANG, JOHN | | Address on File | | | | | | |
| YAROSLAV JERRY LVOVICH Yehia, Josef | | Address on File | | | | | | |
| Yelibelly, Inc. | | Address on File | | | | | | |
| YINGHUI HE | | 2364 Northwest Pkwy | | | Southlake | TX | 76092 | |
| YMCA of Metropolitan Dallas | | 5101 Temyson Pkwy. | | | Plano | TX | 75024 | |
| YOON, CHRISTOPHER K. | | Address on File | | | | | | |
| York & Chapel, Corp. | | 2 Trap Falls Road | Suite 410 | | Shelton | CT | 06484 | |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | Bruce L. Silverstein | Elena C. Norman | 1000 North King Street | | Wilmington | DE | 19801 | |
| Young Life | C/O Lee Anne Bingham | 3304 Beckham Ct | | | Plano | TX | 75075 | |
| YOUNG LIFE ALBUQUERQUE | | PO BOX 91894 | | | Albuquerque | NM | 87199-1894 | |
| YOUNG LIFE, NORTH CENTRAL TEXAS | | 11300 N CENTRAL EXPWY | STE 600 | | Dallas | TX | 75243 | |
| Young Womens Preparatory Network | | 1722 Routh Street | Suite 720 | | Dallas | TX | 75201 | |
| Young, Priya | | Address on File | | | | | | |
| YTAC-Dallas | | 2807 Allen St., Box 347 | | | Dallas | TX | 75204 | |
| Zacks Investment Research, Inc. | | 111 North Canal Street | Suite 1101 | | Chicago | IL | 60606 | |
| ZANG, WEIJUN | | Address on File | | | | | | |
| ZANG, WEIJUN | | Address on File | | | | | | |
| ZARIN, GREGORY | | Address on File | | | | | | |
| Zayo Group | | 1821 30th Street | Unit A | | Boulder | CO | 80301-0000 | |
| Zayo Group, LLC | | PO Box 952136 | | | Dallas | TX | 75395-2136 | |
| Zendesk | | 1019 Market St. | | | San Francisco | CA | 94103-0000 | |
| Zenprise Inc | | 6120 Stevenson Blvd | | | Fremont | CA | 94538 | |
| ZEPHYR ASSOCIATES | | 4 Westchester Park Dr | 2nd Floor | | White Plains | NY | 10604 | |
| ZEPHYR ASSOCIATES | | Dept 2215 | PO Box 2121 | | Memphis | TN | 38159 | |
| ZEPHYR ASSOCIATES | | PO Box 12368 | 312 Doria Court | Suite 204 | Zephyr Cove | NV | 89448 | |
| ZEPHYR ASSOCIATES | | PO Box 416014 | | | Boston | MA | 02241-6014 | |
| ZEPHYR ASSOCIATES | | P.O. Box 2153 | Dept. 1899 | | Birmingham | AL | 35287-1899 | |
| ZIEGENHAGEN, RANDALL | | Address on File | | | | | | |
| ZIEGLER, JASON | | Address on File | | | | | | |
| ZIMMERMANN, JOHN | | File No #31469 | PO Box 60000 | | San Francisco | CA | 94160 | |
| ZOHO Corporation | | PO Box 742760 | | | Los Angeles | CA | 90074-2760 | |
| ZOHO Corporation | | 4900 Hoppard Road | Suite 310 | | Pleasanton | CA | 94588-7100 | |
| Zosel, August | | Address on File | | | | | | |
| Zscaler | | 110 Rose Orchard Way | | | San Jose | CA | 95134-0000 | |
| Zuckerman Spaeder LLP | | 1800 M Street NW | | | Washington | DC | 20036-5802 | |
| Zuluaga, Juan Camilo | | Address on File | | | | | | |
| Zurich North America | ATTN HOWARD BULGATZ | 8745 PAYSPHERE CIRCLE | | | Chicago | IL | 60674 | |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 167 of 175

Exhibit C
Creditor Matrix
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Zurich North America | | 8712 Innovation Way | | | Chicago | IL | 60682-0087 | |
| Zyrka | | 1408 N. Riverfront Blvd. #106 | | | Dallas | TX | 75207 | |

Page 155 of 155

**Appx. 00441**

# EXHIBIT D

**Exhibit D**
Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Advisors Equity Group, LLC | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Canis Major Trust | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| DONDERO, JAMES | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Eagle Equity Advisors, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| ELLINGTON, SCOTT | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Fanshaw Bay, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Four Rivers Co-Invest, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Gunwale, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| HCRE Partner, LLC | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| HFP GP, LLC | Attn Highland Capital Management, L.P. as sole member | | | Dallas | TX | 75201 |
| Highland HCF Advisor, Ltd. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Acquisition Corporation | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Funds Distributor, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Insurance Solutions, L.P. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management (Singapore) | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management Fund Advisors, L.P. | Attn General Counsel | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Management Fund Advisors, L.P. | | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| Highland Capital Management Services, Inc. | | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| HIGHLAND CAPITAL MANAGEMENT, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Capital Mgmt Fund Advisors | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland CLO Funding, Ltd. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland CLO Management, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Energy MLP Fund | | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland First Foundation Income Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |

Highland Capital Management, L.P.
Case No. 19-34054

**Appx. 00443**

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 170 of
175

**Exhibit D**
Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Highland Fixed Income Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Floating Rate Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Funds I | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Funds II | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Global Allocation Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Healthcare Opportunities Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Income Fund HFRO | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Latin America Consulting, LTD | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Long/Short Equity Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Merger Arbitrage Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Opportunistic Credit Fund | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| Highland Prometheus | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland RCP Offshore, LP | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland RCP, LP | | 300 Crescent Ct. | Suite 700 | Dallas | TX | 75201 |
| Highland Small-Cap Equity Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Socially Responsible Equity Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| Highland Tax-Exempt Fund | Highland Energy MLP Fund | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| Highland Tax-Exempt Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Highland Total Return Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| Highland/iBoxx Senior Loan ETF | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Honis, Trevor | | 300 Crescent Ct. | Ste. 700 | Dallas | TX | 75201 |
| James D. Dondero | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| James D. Dondero | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| James Dondero, as the successor-in-interest to the Canis Major Trust | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| LEE BLACKWELL PARKER, III | | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| Mark K. Okada | Attn Melissa Schroth | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Mark K. Okada | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexBank Advisors, L.P | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |

Highland Capital Management, L.P.
Case No. 19-34054

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 171 of
175

**Exhibit D**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| NexBank Capital, Inc | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank Securities, Inc | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank SSB | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexBank Title, Inc. | | 300 Crescent Ct, Suite 700 | | Dallas | TX | 75201 |
| NexPoint Advisors, L.P. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Cap Escrow | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Capital, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Discount Strategies Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Energy and Material Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Event-Driven Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| NexPoint Healthcare Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Healthcare Opportunities Fund | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| NexPoint Latin America Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| NexPoint Real Estate Strategies Fund | Highland Energy MLP Fund | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| NexPoint Strategic Opportunities Fund | Highland Energy MLP Fund | 300 Crescent Court, Ste 700 | | Dallas | TX | 75201 |
| OKADA, MARK | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| PARKER, LEE | | 300 Crescent Ct. Suite 700 | | DALLAS | TX | 75201 |
| Penant Management GP, LLC | c/o Highland Capital Management, L.P. | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| PetroCap Operating, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| PetroCap Partners II, LP | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| PRILICK, GUSTAVO | | 300 Crescent Court | STE 700 | Dallas | TX | 75201 |
| Ragen, Spencer | | 300 Crescent Ct. | Ste. 700 | Dallas | TX | 75201 |
| SE Multifamily Holdings, LLC | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| Strand Advisors Inc. | | 300 Crescent Court | | Dallas | TX | 75201 |
| Strand Advisors, Inc. | Attn Isaac Leventon | 300 Crescent Court, Suite 700 | | Dallas | TX | 75201 |
| Strand Advisors, Inc. | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Dugaboy Investment Trust | | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 172 of 175

**Exhibit D**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| The Dugaboy Investment Trust, as successor-in-interest to the Canis Major Trust | | 300 Crescent Court Ste 700 | | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 1 | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 1, Individually and as Successor-In-Interest of the Canis Minor Trust | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 2 | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Get Good Non-Exempt Trust No. 2, Individually and as Successor-In-Interest of the Canis Minor Trust | | 300 Crescent Court, Ste. 700 | | Dallas | TX | 75201 |
| The Get Good Trust | | 300 Crescent Ct | Ste 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Exempt Trust #1 | Attn Melissa Schroth | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Exempt Trust #2 | Attn Melissa Schroth | 300 Crescent Court Suite 700 | | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust | Exempt Trust #1 | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust | Exempt Trust #2 | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust - Exempt Descendants Trust #1 | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |
| The Mark and Pamela Okada Family Trust - Exempt Descendants Trust #2 | | 300 Crescent Court | Suite 700 | Dallas | TX | 75201 |

# EXHIBIT E

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 174 of 175

**Exhibit E**
Multiple Party Address Packages
Served via First Class Mail

| CreditorName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|
| AMY JENKINS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Amy Mitts | 13455 Noel Rd | Suite 800 | Dallas | TX | 75240 |
| BENTLEY CALLAN | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| BILL CORNELIUS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| BOYD GOSSERAND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| CLINT GILCHRIST | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| COURTNEY ORENT | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Cummings Bay Capital Management, LP | 13455 Noel Rd, Ste 800 | | Dallas | TX | 75240 |
| DAVID CRULL | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| DAVID SMITH | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| EMERALD ORCHARD | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| GUSTAVO PRILICK | 13455 Noel Rd, Ste 800 | | Dallas | TX | 75240 |
| HCM ACQUISITION COMPANY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND ALL CAP EQUITY VALUE FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CAPITAL REAL ESTATE ADVISORS | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CDO HOLDING COMPANY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND CDO OPPORTUNITY FUND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| HIGHLAND CREDIT OPPORTUNITIES FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND CREDIT STRATEGIES FUND RIC | 13455 NOEL RD STE 800 | | Dallas | TX | 75240 |
| HIGHLAND CRUSADER FUND | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Highland Employee Retention Assets LLC | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL CORP | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL REAL ESTATE CORP | 13455 NOEL RD | | Dallas | TX | 75240 |
| HIGHLAND FINANCIAL TRUST | 13455 NOEL RD | | Dallas | TX | 75240 |
| Highland Funds Asset Management | 13455 Noel Rd | Ste 800 | Dallas | TX | 75240 |
| HIGHLAND LOAN FUNDING V | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |

Page 1 of 2

Case 19-34054-sgj11 Doc 2747 Filed 08/19/21 Entered 08/19/21 16:03:15 Page 175 of 175

**Exhibit E**

Multiple Party Address Packages
Served via First Class Mail

| CreditorName | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|
| HIGHLAND SELECT EQUITY FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| Highland Special Situations Fund | 13455 Noel Rd | | Dallas | TX | 75204 |
| JASON GREEN | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| JENNIFER JURRIUS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| KEN KAPADIA | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LARRY LINDSEY | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LAURA KNIPP | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Lauren Okada | 13455 Noel Rd | suite 800 | Dallas | TX | 75240 |
| LESLIE HARRIS | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| LINDY HEATHERINGTON | 13455 NOELRD | STE 800 | Dallas | TX | 75240 |
| Lisa Miller | 13455 Noel Rd | | Dallas | TX | 75240 |
| Luke Okada | 13455 Noel St | Suite 800 | Dallas | TX | 75240 |
| Michael Hasenauer | 13455 Noel Rd | Suite 800 | Dallas | TX | 75240 |
| Michael McLochlin | 13455 Noel Rd. Ste 800 | | Dallas | TX | 75240 |
| MICKEY MINCES | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| MULTI-STRATEGY SUB FUND | 13455 NOEL RD | | Dallas | TX | 75240 |
| NATALIE HARALSON | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| NGUYEN, TIFFANY | 13455 NOEL RD #800 | | DALLAS | TX | 75240 |
| REAL ESTATE FUND 2002-A | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| SCOTT BASHRUM | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |
| Scott Groff | 13455 Noel Rd Suite 800 | | Dallas | TX | 75240 |
| SCOTT WILSON | 13455 NOEL RD | | Dallas | TX | 75240 |
| SHELBY NOBLE | 13455 NOEL RD | | Dallas | TX | 75240 |
| TAMRA APPLEGATE | 13455 NOEL RD | | Dallas | TX | 75240 |
| WILLIAM SMITH | 13455 NOEL RD | STE 800 | Dallas | TX | 75240 |

Highland Capital Management, L.P.
Case No. 19-34054

Page 2 of 2

# EXHIBIT 9

Appx. 00450

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **THE CHARITABLE DAF FUND, LP.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Cause No. 3:21-cv-01710-N** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

### PLAINTIFF'S MOTION TO STAY ALL PROCEEDINGS

### I.

### NECESSITY OF MOTION

Plaintiff submits this Motion as a result of the effective date, August 11, 2021, of Defendant Highland Capital Management L.P.'s Chapter 11 plan of reorganization (the "Plan"). The Plan purports to exculpate Defendant from liability and enjoin Plaintiff from pursuing actions against them. It also contains an assertion of exclusive jurisdiction by the bankruptcy court.

An appeal of the Plan, which the Fifth Circuit certified for direct appeal under 28 U.S.C. § 158(d), is now before the Court of Appeals and captioned *In re Highland Capital Management, L.P.*, No. 21-10449 (the "Fifth Circuit Appeal"). Each of the issues noted above is raised in the appeal. If successful, the appeal will overturn the exculpation, injunction, and assertion of exclusive jurisdiction in the Plan, allowing Plaintiff to proceed with this action in this Court.

In the meantime, however, Plaintiff is enjoined from participating further in this pending case and therefore asks that it be stayed pending the outcome of the Fifth Circuit Appeal.

## II.

## <u>BACKGROUND</u>

On August 9, 2021, Plaintiff received notice that the Plan was now effective. *In re Highland Capital Management, L.P.*, No. 19-34054, Doc. 2700. Although one condition precedent to the effectiveness of the Plan is finality of the confirmation order, which can only happen once all appeals are resolved, that and all other conditions are waivable by the Debtor. *Id.*, Doc. 1943 at pdf 142-43 (Art. VIII at pp. 45-46). The Debtor's notice, which waived finality and any other unsatisfied conditions, makes the Plan's exculpation provisions and injunctions immediately effective.

As to exculpation, the Plan states,

> Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, <u>no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, liability for conduct occurring on or after the Petition Date</u> in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); *provided, however,* the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

---

Case 22-03052-sgj Doc 32 Filed 07/26/22 Entered 07/26/22 14:17:26 Page 457 of 865

Case 22-03052-sgj Doc 6 Filed 05/25/22 Entered 05/25/22 17:35:13 Page 3 of 6
Case 3:21-cv-01710-N Document 6 Filed 08/26/21 Page 3 of 6 PageID 23

*Id.* at pdf 144-45 (Art. IX.C at pp. 47-48 (emphasis added)). "Exculpated Parties" is a defined term in the Plan that includes the Defendant in this action. *Id.* at pdf 106 (Art. I at p. 9).

As to the injunction, the Plan states,

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, <u>all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims and Equity Interests, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the property of the Debtor,</u> (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Debtor or the property of the Debtor, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Debtor or the property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Debtor or against property or interests in property of the Debtor, except to the limited extent permitted under Sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to, and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Debtor, including, but not limited to, the Reorganized Debtor, the Litigation SubTrust, and the Claimant Trust and their respective property and interests in property.

Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the

---

> date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

*Id.* at pdf 147-48 (Art. IX.F at pp. 50-51 (emphasis added)). "Enjoined Parties" is a defined term in the Plan that includes Plaintiff. *Id.* at pdf 105 (Art. I; ¶ 56 at p.8).

Because these provisions are currently in force and prohibits Plaintiff from continuing this action, and because the Fifth Circuit Appeal includes direct challenges to the validity of these very provisions, Plaintiff respectfully submits that the most efficient course of action is for this Court to stay this action until the Fifth Circuit Appeal is resolved. Plaintiff expects that any resolution of the Fifth Circuit Appeal will necessarily determine that the Plan's exculpation and injunction provisions absolves Defendant of any liability or, alternatively, that this action can proceed.

### III.

### <u>ARGUMENT</u>

This Court should exercise its inherent powers to stay all proceedings in the case until the Fifth Circuit Appeal is decided.

The Fifth Circuit has long held that "[t]he district court possesses the inherent power to control its docket." *Marine Chance Shipping v. Sebastian*, 143 F.3d 216, 218 (5th Cir. 1998). The exercise of that power is a discretionary one. *E.g., Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.")

Here, Plaintiff asks this Court to exercise discretion in favor of efficiency and to stay all proceedings. Plaintiff respectfully submits that, until the appeal is resolved, many complex legal questions exist that may affect the viability of this action or the forum in which it should be

---

litigated. Those questions—including the validity of the exculpation and injunction provisions quoted above—will likely be resolved by the Fifth Circuit Appeal. And therefore, Plaintiff submist, judicial economy may be gained by staying all proceedings in this action pending that appeal.

## IV.

## <u>CONCLUSION</u>

Plaintiff appears to be wholly prohibited from participating further in this action by the now-effective terms of the Plan that purport to enjoins Plaintiff and exculpates Defendant. In light of its inability to conduct the litigation and the pending Fifth Circuit Appeal, which that court has certified for direct appeal, Plaintiff respectfully submits that the most appropriate course for this Court is to stay all proceedings until the appeal is decided. Plaintiff therefore respectfully requests a stay and all further relief to which it may be entitled.

Dated: August 26, 2021                    Respectfully submitted,

                                         **SBAITI & COMPANY PLLC**

                                         */s/ Jonathan Bridges*
                                         **Mazin A. Sbaiti**
                                         Texas Bar No. 24058096
                                         **Jonathan Bridges**
                                         Texas Bar No. 24028835
                                         JPMorgan Chase Tower
                                         2200 Ross Avenue – Suite 4900W
                                         Dallas, TX 75201
                                         T: (214) 432-2899
                                         F: (214) 853-4367
                                         E: mas@sbaitilaw.com
                                             jeb@sbaitilaw.com

                                         **Counsel for Plaintiffs**

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 460 of 865

Case 22-03052-sgj Doc 6 Filed 05/25/22   Entered 05/25/22 17:35:13   Page 6 of 6
Case 3:21-cv-01710-N   Document 6   Filed 08/26/21   Page 6 of 6   PageID 26

## CERTIFICATE OF CONFERENCE

I hereby certify that, in a series of communications between August 13 and 26, 2021, I conferred with Defendant's counsel regarding this Motion, and counsel indicated that they are opposed to the relief sought in this Motion.

*/s/ Jonathan Bridges*
Jonathan Bridges

**Appx. 00456**

# EXHIBIT 10

DOCKET TEXT:7 ELECTRONIC ORDER granting 6 Motion to Stay. (Ordered by Judge David C
Godbey on 9/7/2021) (chmb) [ORIGINALLY FILED IN 21-CV-1710 AS #7 ON 09/7/2021 IN
U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor,
Marcey)

# EXHIBIT 11

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 464 of 865

Case 22-03052-sgj Doc 8 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 1 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 1 of 5    PageID 27

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:    jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

---------------------------------------------------------------

| | | |
|---|---|---|
| THE CHARITABLE DAF FUND, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No. 3:21-cv-01710-N |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

---------------------------------------------------------------

1

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION FOR
## RECONSIDERATION OF STAY ORDER

Highland Capital Management, L.P., a defendant in the above-captioned case (the "Debtor" or "Highland"), by and through its undersigned counsel, files this motion (the "Motion") seeking reconsideration of the Stay Order (as defined below) that was recently entered by the Court without notice to, or opposition by, Highland.  In support of its Motion, Highland states as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to section 1334(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code").

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.      The predicates for the relief requested in the Motion are 28 U.S.C. § 157(a), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules), and Rule 59(a) of the Federal Rules of Civil Procedure.

### RELIEF REQUESTED

4.      Through this Motion, Highland requests that this Court issue the proposed form of order attached as **Exhibit A** (the "Proposed Order") pursuant to 28 U.S.C. § 157(a).

5.      For the reasons set forth more fully in *Highland Capital Management, L.P.'s Memorandum of Law in Support of Motion for Reconsideration of Stay Order* (the "Memorandum of Law") filed contemporaneously with this Motion, Highland requests that the Court: (a) re-open the Stay Order, amend the findings and conclusions, and issue a new order denying the Stay Motion, and (b) grant such other and further relief as the Court deems just and proper.

6.      In accordance with Rule 7.1 of the *Local Civil Rules of the United States District Court for the Northern District of Texas* (the "Local Rules"), contemporaneously herewith and in support of the Motion Highland is filing: (a) its Memorandum of Law, and (b) the *Appendix in*

DOCS_NY:44200.2 36027/003

**Appx. 00461**

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 466 of 865

Case 22-03052-sgj Doc 8 Filed 05/25/22   Entered 05/25/22 17:43:18   Page 3 of 5
Case 3:21-cv-01710-N   Document 8   Filed 10/05/21   Page 3 of 5   PageID 29

*Support of Motion for Reconsideration of Stay Order* (the "Appendix"), together with the exhibits annexed thereto.

7.      Based on the exhibits annexed to the Appendix and the arguments contained in the Memorandum of Law, Highland is entitled to the relief requested herein as set forth in the Proposed Order.

8.      Notice of this Motion has been provided to all parties.  Highland submits that no other or further notice need be provided.

WHEREFORE, Highland respectfully requests that the Court (i) enter the Proposed Order substantially in the formed annexed hereto as **Exhibit A** granting the relief requested herein, and (ii) grant Highland such other and further relief as the Court may deem proper.

[*Remainder of Page Intentionally Blank*]

**Appx. 00462**

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 467 of 865

Case 22-03052-sgj Doc 8 Filed 05/25/22    Entered 05/25/22 17:43:18    Page 4 of 5
Case 3:21-cv-01710-N    Document 8    Filed 10/05/21    Page 4 of 5    PageID 30

Dated:  October 5, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

4

**Appx. 00463**

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 468 of 865

Case 22-03052-sgj Doc 8 Filed 05/25/22   Entered 05/25/22 17:43:18   Page 5 of 5
Case 3:21-cv-01710-N   Document 8   Filed 10/05/21   Page 5 of 5   PageID 31

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on October 5, 2021, a true and correct copy of the foregoing Motion was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

DOCS_NY:44200.2 36027/003

**Appx. 00464**

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 469 of 865

Case 22-03052-sgj Doc 8-1 Filed 05/25/22   Entered 05/25/22 17:43:18   Page 1 of 3
Case 3:21-cv-01710-N   Document 8-1   Filed 10/05/21   Page 1 of 3   PageID 32

**<u>EXHIBIT A</u>**

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---------------------------------------------------------------

| | |
|---|---|
| THE CHARITABLE DAF FUND, L.P., | § |
| | § |
| Plaintiff, | § |
| | § |
| | § |
| vs. | § Case No. 3:21-cv-01710-N |
| | § |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § |
| | § |
| Defendant. | § |
| | § |
| | § |
| | § |

---------------------------------------------------------------

**ORDER GRANTING MOTION FOR
RECONSIDERATION OF STAY ORDER**

Before the Court is *Highland Capital Management L.P.'s Motion for Reconsideration of Stay Order* [Docket No. __] (the "Motion")[1]  Having considered: (a) the Motion; (b) *Highland Capital Management, L.P.'s Memorandum of Law in Support of Motion for Reconsideration of Order to Enforce the Order of Reference* [Docket No. __] (the "Memorandum of Law"); and (c) the *Appendix in Support of Motion for Reconsideration of Stay Order* [Docket No. __] (the "Appendix"), and the exhibits annexed thereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that (a) venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1409; (b) Highland was not served with the Stay Motion and had no opportunity to contest it; (c) the Court was presented with new facts and arguments in the Motion, the Memorandum of Law, and the Appendix of which it was unaware when it entered the Stay Order; (d) based on those new facts,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law.

DOCS_NY:44200.2 36027/003

**Appx. 00466**

Case 22-03052-sgj Doc 32 Filed 07/26/22   Entered 07/26/22 14:17:26   Page 471 of 865

Case 22-03052-sgj Doc 8-1 Filed 05/25/22   Entered 05/25/22 17:43:18   Page 3 of 3
Case 3:21-cv-01710-N   Document 8-1   Filed 10/05/21   Page 3 of 3   PageID 34

the Court finds and determines that Plaintiff has not met its burden of proving that a stay of the Action is warranted; and this Court having found that Highland's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      Pursuant to Rule 59, the Court re-opens and vacates the Stay Order and enters this new Order **DENYING** the Stay Motion.

**It is so ordered** this _____ day of _____, 2021.

_____
The Honorable David C. Godbey
United States District Judge

DOCS_NY:44200.2 36027/003

**Appx. 00467**

# EXHIBIT 12

Appx. 00468

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 473 of 865

Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 1 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 1 of 5    PageID 1062

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:   jpomerantz@pszjlaw.com
         rfeinstein@pszjlaw.com
         jmorris@pszjlaw.com
         gdemo@pszjlaw.com
         hwinograd@pszjlaw.com
-and-

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| THE CHARITABLE DAF FUND, L.P., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Case No. 3:21-cv-01710-N |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § § § | |
| Defendant. | § § § § | |

## HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS

1

Highland Capital Management, L.P. ("Highland"), the putative defendant in the above-captioned case (the "Action"), by and through its undersigned counsel, files this motion (the "Motion") to dismiss the Action.  In support of its Motion, Highland states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion pursuant to section 1334(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code").

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409.

3.      The predicates for the relief requested in the Motion are 28 U.S.C. § 157(a), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the Bankruptcy Rules), and Rules 12(b)(1), (3), (4), and (6) of the Federal Rules of Civil Procedure, made applicable in this Action pursuant to Bankruptcy Rule 7012.

## RELIEF REQUESTED

4.      Through this Motion, Highland requests that this Court issue the proposed form of order attached as **Exhibit A** (the "Proposed Order") pursuant to 28 U.S.C. § 157(a).

5.      For the reasons set forth more fully in *Highland Capital Management, L.P.'s Memorandum of Law in Support of Its Motion to Dismiss* (the "Memorandum of Law") filed contemporaneously with this Motion, Highland requests that the Court: (a) dismiss the Action with prejudice, and (b) grant such other and further relief as the Court deems just and proper.

6.      In accordance with Rule 7.1 of the *Local Civil Rules of the United States District Court for the Northern District of Texas* (the "Local Rules"), contemporaneously herewith and in support of the Motion Highland is filing: (a) its Memorandum of Law, and (b) the *Appendix in Support of Motion to Dismiss* (the "Appendix"), together with the exhibits annexed thereto.

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 475 of 865

Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 3 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 3 of 5    PageID 1064

7.    Based on the exhibits annexed to the Appendix and the arguments contained in the Memorandum of Law, Highland is entitled to the relief requested herein as set forth in the Proposed Order.

8.    Notice of this Motion has been provided to all parties.  Highland submits that no other or further notice need be provided.

WHEREFORE, Highland respectfully requests that the Court (i) enter the Proposed Order substantially in the formed annexed hereto as **Exhibit A** granting the relief requested herein, and (ii) grant Highland such other and further relief as the Court may deem proper.

*[Remainder of Page Intentionally Blank]*

3

DOCS_NY:44226.1 36027/003

Dated:  October 5, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        rfeinstein@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

    -and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

4

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 477 of 865

Case 22-03052-sgj Doc 11 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 5 of 5
Case 3:21-cv-01710-N    Document 11    Filed 10/05/21    Page 5 of 5    PageID 1066

## CERTIFICATE OF SERVICE

I hereby certify that, on October 5, 2021, a true and correct copy of the foregoing Motion was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

**Appx. 00473**

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 478 of 865

Case 22-03052-sgj Doc 11-1 Filed 05/25/22    Entered 05/25/22 17:54:35    Page 1 of 3
Case 3:21-cv-01710-N    Document 11-1    Filed 10/05/21    Page 1 of 3    PageID 1067

## EXHIBIT A

DOCS_NY:44226.1 36027/003

**Appx. 00474**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

———————————————————————————

| | |
|---|---|
| THE CHARITABLE DAF FUND, L.P., | §<br>§ |
| Plaintiff, | §<br>§ |
| | §<br>§    Case No. 3:21-cv-01710-N |
| vs. | §<br>§ |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | §<br>§ |
| Defendant. | §<br>§<br>§ |

------------------------------------------------------------ §

**ORDER GRANTING MOTION TO DISMISS**

Before the Court is *Highland Capital Management L.P.'s Motion to Dismiss* [Docket No. __] (the "Motion").[1]  Having considered: (a) the Motion; (b) *Highland Capital Management, L.P.'s Memorandum of Law in Support of Its Motion to Dismiss* [Docket No. __] (the "Memorandum of Law"); and (c) the *Appendix in Support of Motion to Dismiss* [Docket No. __] (the "Appendix"), and the exhibits annexed thereto; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that (a) venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. § 1409; (b) the Effective Date has occurred; (c) the Confirmation Order and Plan enjoin Plaintiff from continuing any action or suit against Highland and mandate that claims against Highland be brought in the Bankruptcy Court following the Effective Date pursuant to the Injunction Provision; (d) the purported claims asserted against Highland arise from transactions that took place post-petition and, to the extent

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Memorandum of Law.

2

**Appx. 00475**

valid, would constitute post-petition administrative claims; (e) the Plan provides a specific procedure through which holders of purported administrative claims, such as Plaintiff, can file an application with the Bankruptcy Court for allowance of its administrative expense claims; and (f) based on the foregoing, under the Confirmation Order and Plan, this Court is not the appropriate venue for this Action; and this Court having found that Highland's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish good cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      The Action is **DISMISSED** with prejudice.


**It is so ordered** this _____ day of _____, 2021.


_____
The Honorable David C. Godbey
United States District Judge

DOCS_NY:44226.1 36027/003

**Appx. 00476**

# EXHIBIT 13

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 482 of 865

Case 22-03052-sgj Doc 18 Filed 05/25/22    Entered 05/25/22 18:10:05    Page 1 of 2
Case 3:21-cv-01710-N    Document 18    Filed 05/19/22    Page 1 of 2    PageID 1345

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

CHARITABLE DAF FUND, L.P.,            §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §        Civil Action No. 3:21-CV-1710-N
                                      §
HIGHLAND CAPITAL                      §
MANAGEMENT, L.P.,                     §
                                      §
        Defendant.                    §

## **ORDER**

This Order addresses Defendant Highland Capital Management, L.P.'s ("HCM") motion for reconsideration of this Court's earlier order staying this case [8]. This case challenges a transaction consumated in the course of a consolidated bankruptcy proceeding and names as the sole defendant the debtor in that bankruptcy. The Court therefore concludes that this case constitutes a matter "related to" a case in the bankruptcy court under the meaning of this District's Miscellaneous Order No. 33. Accordingly, the Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 19-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case.

ORDER – PAGE 1

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 483 of 865

Case 22-03052-sgj Doc 18 Filed 05/25/22    Entered 05/25/22 18:10:05    Page 2 of 2
Case 3:21-cv-01710-N    Document 18    Filed 05/19/22    Page 2 of 2    PageID 1346

Signed May 19, 2022.

David C. Godbey
United States District Judge

ORDER – PAGE 2

# EXHIBIT 14

# Highland Multi Strategy Credit Fund, L.P.

A Delaware Limited Partnership

**Fourth Amended and Restated**

**Limited Partnership Agreement**

November 1, 2014

## TABLE OF CONTENTS

Page

Article I DEFINITIONS ................................................................................................................1

Article II ORGANIZATION........................................................................................................10
    2.1      Continuation of Limited Partnership ...........................................................10
    2.2      Name of Partnership .....................................................................................11
    2.3      Principal Office; Registered Office...............................................................11
    2.4      Term of Partnership......................................................................................11
    2.5      Object and Powers of Partnership.................................................................11
    2.6      Liability of Partners .....................................................................................12
    2.7      Actions by Partnership .................................................................................12
    2.8      Reliance by Third Parties .............................................................................12
    2.9      UCC Status of Limited Partner Interests .....................................................12
    2.10    Series of Interests .........................................................................................12

Article III CAPITAL.....................................................................................................................13
    3.1      Contributions to Capital...............................................................................13
    3.2      Rights of Partners in Capital ........................................................................14
    3.3      Capital Accounts ..........................................................................................14
    3.4      Allocations of Net Profit and Net Loss.........................................................15
    3.5      Allocation of Management Fees, Withholding Taxes and Certain Other
              Expenditures .................................................................................................15
    3.6      Reserves; Adjustments for Certain Future Events ........................................16
    3.7      Performance Allocation ................................................................................17
    3.8      Limited Participation Investments and New Issues ......................................17
    3.9      Allocation to Avoid Capital Account Deficits ..............................................18
    3.10    Regulatory Allocations.................................................................................18
    3.11    Allocations for Income Tax Purposes ..........................................................19
    3.12    Individual Partner's Tax Treatment...............................................................21
    3.13    Distributions.................................................................................................21

Article IV MANAGEMENT .........................................................................................................22
    4.1      Duties and Powers of the General Partner ....................................................22
    4.2      Expenses .......................................................................................................23
    4.3      Rights of Limited Partners ...........................................................................25
    4.4      Other Activities of Partners..........................................................................25
    4.5      Exculpation; Indemnification........................................................................26
    4.6      Advisory Committee.....................................................................................28
    4.7      Alternative Investment Vehicles ..................................................................29

Article V ADMISSIONS, TRANSFERS AND WITHDRAWALS .............................................29
    5.1      Admission of Limited Partners .....................................................................29
    5.2      Admission of Additional General Partners ...................................................29
    5.3      Transfer of Interests of Limited Partners .....................................................30
    5.4      Transfer of Interest of the General Partner ..................................................30
    5.5      Withdrawal of Interests of Partners ..............................................................31

i

Article VI SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION ..................................35

    6.1     Soft Wind Down ...............................................................35

    6.2     Dissolution of Partnership.................................................36

    6.3     Liquidation of Assets ........................................................36

Article VII ACCOUNTING AND VALUATION; BOOKS AND RECORDS ............................37

    7.1     Accounting and Reports......................................................37

    7.2     Valuation of Partnership Assets and Interests ........................38

    7.3     Determinations by the General Partner..................................38

    7.4     Books and Records ............................................................39

    7.5     Confidentiality ................................................................39

Article VIII GENERAL PROVISIONS..........................................................................41

    8.1     Amendment of Partnership Agreement..................................41

    8.2     Special Power-of-Attorney ................................................43

    8.3     Notices ..........................................................................44

    8.4     Agreement Binding Upon Successors and Assigns; Delegation ..........44

    8.5     Governing Law ................................................................44

    8.6     Not for Benefit of Creditors ................................................45

    8.7     Dispute Resolution............................................................45

    8.8     Consents and Voting..........................................................47

    8.9     Merger and Consolidation...................................................48

    8.10    Miscellaneous ..................................................................48

    8.11    BHCA Subject Persons ......................................................48

    8.12    RIC Limited Partners ........................................................49

    8.13    Bad Actor Limited Partners ................................................50

    8.14    Entire Agreement ............................................................50

ii

THIS FOURTH AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT of Highland Multi Strategy Credit Fund, L.P., dated effective as of November 1, 2014, is by and among Highland Multi Strategy Credit Fund GP, L.P., as General Partner, and certain Persons who were admitted as Limited Partners in accordance with the Prior Agreement and those Persons who are hereafter admitted as additional Limited Partners in accordance with this Agreement.   Capitalized terms have the meanings set forth in Article I below.

## PRELIMINARY STATEMENTS

(A)     The General Partner and certain of the Limited Partners have heretofore formed a limited partnership pursuant to the Act (as defined herein) by filing a Certificate of Limited Partnership with the office of the Secretary of State of the State of Delaware on December 1, 2005, and previously entered into a Limited Partnership Agreement, dated effective as of December 1, 2005, as last amended and restated by the Third Amended and Restated Limited Partnership Agreement dated as of December 31, 2007 (the "***Prior Agreement***").

(B)     The General Partner filed an amendment to the Certificate of Limited Partnership of the Fund on August 26, 2014, changing the name of the Fund to "Highland Multi Strategy Credit Fund, L.P."

(C)     The parties hereto desire to continue the Partnership as a limited partnership under the Act and to make certain modifications to the Prior Agreement, as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants expressed herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto hereby agree that the Prior Agreement is amended and restated in its entirety to read as follows:

## Article I
## DEFINITIONS

For purposes of this Agreement:

"***Act***" means the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §§ 17-101, et seq., as in effect on the date hereof and as amended from time to time, or any successor law.

"***Accounting Period***" means each period that starts on the day immediately following the last day of the preceding Accounting Period, and that ends on the earliest of the following dates:

(a)     the last day of a calendar month;

(b)     any date as of which any withdrawal or distribution of capital is made with respect to any Capital Account or as of which this Agreement provides for any amount to be credited to or debited against a Capital Account, other than a withdrawal or distribution by or to, or an allocation to, all Capital Accounts that does not result in any change of the Partnership Percentage relating to any Capital Account;

1

(c)      the date which immediately precedes any day as of which a capital contribution is accepted by the General Partner from any new or existing Partner; or

(d)      any other date which the General Partner selects.

"*Advisers Act*" means the U.S. Investment Advisers Act of 1940, as amended, and the rules promulgated thereunder.

"*Advisory Committee*" has the meaning set forth in Section 4.6.

"*Affiliate*" means, with respect to any Person, a Person which controls, is controlled by, or is under common control with, such Person.  For these purposes, "control" (including "controlled by" and "under common control") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"*Affiliated Investor*" means any Limited Partner that is an Affiliate of the General Partner or the Investment Manager, including their respective employees, members or partners and their respective immediate family members.

"*Agreement*" means this Fourth Amended and Restated Limited Partnership Agreement of the Partnership, as amended from time to time.

"*Alternative Investment Vehicle*" has the meaning set forth in Section 4.7.

"*Arbitration Rules*" has the meaning set forth in Section 8.7(b)(i).

"*Authorized Representative*" has the meaning set forth in Section 7.5(a).

"*Bad Actor Limited Partner*" means a Limited Partner that (i) would cause the disqualification of the Partnership from using Rule 506 under the Securities Act due to the operation of paragraph (d) thereof (or its successor) if such Limited Partner were to beneficially own 20% or more of the outstanding voting interest of all of the Partners (excluding any other Interests that are Non-Voting Interests) or (ii) the General Partner determines is likely to become subject to a conviction, order, judgment, finding or that would be likely to cause the disqualification described in clause (i).

"*BHCA*" means the U.S. Bank Holding Company Act of 1956, as amended.

"*BHCA Subject Person*" means any Limited Partner that is subject, directly or indirectly, to the provisions of Section 4 of the BHCA and the regulations of the Board of Governors of the Federal Reserve System promulgated thereunder.

"*Business Day*" means any day other than (a) Saturday and Sunday and (b) any other day on which banks located in New York, New York are required or authorized by law to be closed.

"*Calculation Period*" means, with respect to each Capital Account, the period commencing as of the date of the establishment of the Capital Account (in the case of the initial Calculation

2

Period) and thereafter each period commencing as of the day following the last day of the preceding Calculation Period with respect to such Capital Account, and ending as of the close of business on the first to occur of the following:

       (a)    the last day of a calendar year;

       (b)    the withdrawal of all or a portion of the Interest attributable to such Capital Account (but only with respect to such withdrawn amount);

       (c)    the permitted Transfer of all or any portion of such Limited Partner's Interest; or

       (d)    the final distribution to such Limited Partner following the dissolution of the Partnership.

"***Capital Account***" means, with respect to each Partner, the capital account established and maintained on behalf of such Partner as described in Section 3.3.

"***Carryforward Account***" means a memorandum account to be recorded in the books and records of the Partnership with respect to each Capital Account that has an initial balance of zero and that is adjusted as follows:

       (a)    As of the first day after the close of each Calculation Period for such Capital Account, the balance of the Carryforward Account is (i) increased by the amount, if any, of such the Negative Performance Change with respect to such Capital Account for such Calculation Period and (ii) reduced (but not below zero) by the amount, if any, of the Positive Performance Change with respect to such Capital Account for such Calculation Period.

       (b)    As of the close of the Calculation Period, any positive balance of the Carryforward Account is further adjusted if such Capital Account has been reduced during such Calculation Period as a result of a distribution or withdrawal, by reducing such positive balance (but not below zero) by an amount determined by multiplying (i) such positive balance by (ii) a fraction, of which (A) the numerator is equal to the amount so distributed or withdrawn, and (B) the denominator is equal to the balance of such Capital Account immediately before giving effect to such distribution or withdrawal.

The Carryforward Account attributable to each Series A Capital Account shall be reset to zero on the Effective Date. For the avoidance of doubt, any gains or losses allocated by the Partnership to any Capital Account of a Limited Partner prior to the Effective Date will be inapplicable in the calculation of the Carryforward Account following the Effective Date.

"***Certificate***" means the Certificate of Limited Partnership of the Partnership referred to in Section 2.1(b).

"***Code***" means the U.S. Internal Revenue Code of 1986, as amended, and as hereafter amended, or any successor law.

"***Dispute***" has the meaning set forth in Section 8.7.

"***Effective Date***" means the date set forth above as the effective date of this Agreement.

"***Election Notice***" has the meaning set forth in Section 8.11(c).

"***FAA***" has the meaning set forth in Section 8.7(b)(ii)

"***FATCA***" means Sections 1471 through 1474 of the Code, as amended, and any Regulations thereunder or official interpretations thereof, including any successor Regulations or interpretations, and any intergovernmental agreement implementing the foregoing.

"***FINRA***" means the Financial Industry Regulatory Authority, Inc.

"***Fiscal Year***" means each period commencing on January 1 of each year and ending on December 31 of such year, unless the General Partner elects another fiscal year; provided that any such other fiscal year is permissible for U.S. federal income tax purposes.  In the case of the Fiscal Year in which the Partnership is terminated in accordance with Article VI, "***Fiscal Year***" means the portion of the calendar year ending on the date on which the Partnership is terminated.

"***GAAP***" means generally accepted accounting principles in the United States, as amended.

"***General Partner***" means Highland Multi Strategy Credit Fund GP, L.P., a Delaware limited partnership, any successor thereto, and any Person hereafter admitted as an additional general partner, in its capacity as general partner of the Partnership.

"***Indemnified Person***" has the meaning set forth in Section 4.5(a).

"***Interest***" means the entire ownership interest of a Partner in the Partnership at the relevant time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"***Investment Company Act***" means the U.S. Investment Company Act of 1940, as amended, and the regulations promulgated thereunder.

"***Investment Management Agreement***" means the investment management agreement between the Investment Manager, the General Partner, the Offshore Fund and the Partnership.

"***Investment Manager***" means Highland Capital Management, L.P., a Delaware limited partnership, or any successor thereto, or any Person thereafter appointed as an investment manager of the Partnership in accordance with the Investment Management Agreement.

"***Investments***" means investment in securities, assets and other financial or intangible investment instruments, contracts or products made as described in the Partnership's offering memorandum.

4

"*Limited Partners*" means any Person who is a limited partner of the Partnership (which, except as otherwise indicated, will include a substituted Limited Partner) at the time of reference thereto, in such Person's capacity as a limited partner of the Partnership. For all purposes of the Act, the Limited Partners of the Partnership will constitute a single class or group of limited partners.

"*Majority-in-Interest of Limited Partners*" means Limited Partners whose Partnership Percentages represent more than 50% of the aggregate Partnership Percentages of all Limited Partners.

"*Management Fee*" means, with respect to each Capital Account, an amount equal to one fourth of (i) 1.5% of each Series A Capital Account balance; (ii) 1.5% of each Series B Capital Account balance; (iii) 1.0% of each Series C Capital Account balance; and (iv) 2.0% of each Series D Capital Account balance, which amounts are calculated on the first Business Day of each calendar quarter. Management Fees shall be appropriately adjusted for contributions during any partial quarter.

"*Negative Basis*" means, with respect to any Partner and as of any time of calculation, the excess of such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest) over the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership.

"*Negative Basis Partner*" means any Partner who withdraws from the Partnership and who has a Negative Basis as of the Withdrawal Date, but such Partner shall cease to be a Negative Basis Partner at such time as it has received allocations pursuant to Section 3.11(d) equal to such Partner's Negative Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"*Net Assets*" means the total value, as determined by the General Partner or its delegate(s) in accordance with Section 7.2, of all Investments and other assets of the Partnership (including net unrealized appreciation or depreciation of the assets and accrued interest and dividends receivable net of any withholding taxes), less an amount equal to all accrued debts, liabilities and obligations of the Partnership (including any reserves for contingencies accrued pursuant to Section 3.6,). Except as otherwise expressly provided herein, Net Assets as of the first day of any Accounting Period are determined on the basis of the valuation of assets conducted as of the close of the immediately preceding Accounting Period, but after giving effect to any capital contributions made by any Partner subsequent to the last day of such immediately preceding Accounting Period, and after giving effect to Management Fee charges, and Net Assets as of the last day of any Accounting Period are determined before giving effect to any of the following amounts payable by the Partnership generally or in respect of any Investment which are effective as of the date on which such determination is made:

       (a)     any Performance Allocation as of the date on which such determination is made;

(b) any withdrawals or distributions payable to any Partner which are effective as of the date on which such determination is made; and

(c) withholding or other taxes, expenses of processing withdrawals and other items payable, any increases or decreases in any reserves, holdbacks or other amounts recorded pursuant to Section 3.6 and any increases or decreases in the value of any Restricted New Issues pursuant to Section 3.8(b) and other amounts specially allocated pursuant to Section 3.8 during the Accounting Period ending as of the date on which such determination is made, to the extent the General Partner determines that, pursuant to any provisions of this Agreement, such items are not to be charged ratably among the Capital Accounts of all Partners on the basis of their respective Partnership Percentages as of the commencement of the Accounting Period.

"*Net Loss*" means any amount by which the Net Assets as of the first day of an Accounting Period exceed the Net Assets as of the last day of the same Accounting Period.

"*Net Profit*" means any amount by which the Net Assets as of the last day of an Accounting Period exceed the Net Assets as of the first day of the same Accounting Period.

"*New Issue Rules*" has the meaning set forth in Section 3.8(b).

"*Nonrecourse Deductions*" has the meaning set forth in Regulations Section 1.704-2(b)(1) and (c).

"*Non-Voting Interest*" means an Interest, the holder of which is not entitled to vote, consent or withhold consent with respect to any Partnership matter (including but not limited to mergers, sales of substantially all assets or consolidations of the Partnership), except as otherwise expressly provided in this Agreement.

"*Offshore Fund*" means Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands exempted company and a Limited Partner of the Partnership.

"*Orderly Realization*" has the meaning set forth in Section 6.1.

"*Other Account*" means any assets or investments of the General Partner, or any assets managed by the General Partner or any Affiliate of the General Partner for the account of any Person or entity (including investment vehicles) other than the Partnership, which are invested or which are available for investment in securities or other instruments or for trading activities whether or not of the specific type being conducted by the Partnership.

"*Partner*" means the General Partner or any of the Limited Partners, except as otherwise expressly provided herein, and "*Partners*" means the General Partner and all of the Limited Partners.

"*Partnership*" means the limited partnership governed by this Agreement.

"*Partnership Minimum Gain*" has the meaning set forth in Regulations Section 1.704-2(b)(2) and (d).

6

"*__Partnership Percentage__*" means a percentage established for each Capital Account on the Partnership's books as of the first day of each Accounting Period. The Partnership Percentage of a Capital Account for an Accounting Period is determined by dividing the amount of such Capital Account as of the beginning of the Accounting Period by the sum of the Capital Accounts of all of the Partners as of the beginning of the Accounting Period. The numerator and denominator of the above shall be calculated after crediting all capital contributions to the Capital Account or Partnership, as appropriate, which are effective as of such date, net of all deductions, including Management Fees. The sum of the Partnership Percentages of all Capital Accounts for each Accounting Period shall equal 100%.

"*__Performance Allocation__*" means, for each Capital Account of a Limited Partner, 20% of the amount by which (a) the Positive Performance Change for such Calculation Period for such Capital Account, if any, exceeds (b) any positive balance in the Carryforward Account for such Capital Account as of the most recent prior date as of which any adjustment has been made thereto.

"*__Performance Change__*" means, with respect to each Capital Account of a Limited Partner for each Calculation Period, the difference between:

> (a)     the sum of (i) the balance of such Capital Account as of the close of the Calculation Period (after giving effect to Management Fees and all allocations to be made to such Capital Account as of such date, including such Capital Account's allocable share of any profits or losses pursuant to Section 3.8 and any credits or debits of any applicable carrying charge associated therewith other than any Performance Allocation to be debited against such Capital Account), plus (ii) any debits to such Capital Account during the Calculation Period to reflect any actual or deemed distributions or withdrawals with respect to such Capital Account, plus (iii) any debits to such Capital Account during the Calculation Period to reflect any items allocable to such Capital Account pursuant to Section 3.5(b) or (c); and

> (b)     the balance of such Capital Account as of the commencement of the Calculation Period.

If the amount specified in clause (a) exceeds the amount specified in clause (b) such difference is a "*__Positive Performance Change__*," and if the amount specified in clause (b) exceeds the amount specified in clause (a), such difference is a "*__Negative Performance Change__*."

The Performance Change will be computed separately for each Capital Account (and thus each separately maintained capital sub-account created to reflect an additional contribution to a Capital Account). Thus, if a Limited Partner has multiple Capital Accounts, the Performance Change will be calculated separately for each Capital Account and the resulting "Positive Performance Change" and "Negative Performance Change" shall be separately allocated to each such Capital Account and shall not be netted against each other.

"*__Person__*" means any individual, partnership, corporation, limited liability company, trust or other entity or any government (including a governmental agency or political subdivision thereof).

**Appx. 00490**

"***Positive Basis***" means, with respect to any Partner and as of any time of calculation, the excess of the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership over such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest).

"***Positive Basis Partner***" means any Partner who withdraws from the Partnership and who has a Positive Basis as of the Withdrawal Date, but such Partner ceases to be a Positive Basis Partner at such time as it has received allocations pursuant to Section 3.11(c) equal to such Partner's Positive Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"***Prior Agreement***" has the meaning set forth in the Preliminary Statements to this Agreement.

"***Realization Period***" has the meaning set forth in Section 6.1.

"***Recent Amendments***" means the changes to the terms of an investment in the Partnership as contemplated in this Agreement and the constituent documents related thereto, including, but not limited to, the re-designation of all Interests held by Limited Partners on the Effective Date as Series A Interests.

"***Regulations***" means the proposed, temporary and final U.S. Treasury Regulations promulgated under the Code, including any successor regulations.

"***Regulatory Allocations***" has the meaning set forth in Section 3.10(d).

"***Restricted Capital Accounts***" has the meaning set forth in Section 3.8(b).

"***Restricted Issues***" has the meaning set forth in Section 3.8(b).

"***Revocation Notice***" has the meaning set forth in Section 8.11(c).

"***RIC Limited Partner***" means a Limited Partner that is registered as an investment company under the Investment Company Act.

"***Schedule of Partners***" means a schedule to be maintained by the General Partner containing the following information with respect to each Partner: (a) name; (b) address; (c) date of admission; (d) amount and date of all capital contributions and withdrawals; and (e) the amount and date of any permitted Transfers.

"***Series***" means a designated series of Interests established in accordance with this Agreement and having such terms as the General Partner determines.

"***Series A Capital Account***" means the Capital Account attributable to a Limited Partner's Series A Interest.

8

"***Series A Interests***" means a Series of Interests having the rights and obligations applicable to Series A Interests as set forth in this Agreement.

"***Series A Lock-Up***" has the meaning set forth in Section 5.5(c)(i).

"***Series A Withdrawal Date***" has the meaning set forth in Section 5.5(c)(i).

"***Series B Capital Account***" means the Capital Account attributable to a Limited Partner's Series B Interest.

"***Series B Interests***" means a Series of Interests having the rights and obligations applicable to Series B Interests as set forth in this Agreement.

"***Series B Withdrawal Date***" has the meaning set forth in Section 5.5(c)(ii).

"***Series C Capital Account***" means the Capital Account attributable to a Limited Partner's Series C Interest.

"***Series C Interests***" means a Series of Interests having the rights and obligations applicable to Series C Interests as set forth in this Agreement.

"***Series C Withdrawal Date***" has the meaning set forth in Section 5.5(c)(iii).

"***Series D Capital Account***" means the Capital Account attributable to a Limited Partner's Series D Interest.

"***Series D Interests***" means a Series of Interests having the rights and obligations applicable to Series D Interests as set forth in this Agreement.

"***Series D Withdrawal Date***" has the meaning set forth in Section 5.5(c)(iv).

"***Sub-Series of Shares***" refers to sub-series of the shares of the Offshore Fund, as created from time to time, for purposes of accounting for any profits and losses attributable to each individual shareholder and of permitting the Performance Allocation to be calculated separately with respect to each shareholder to reflect different returns achieved as a result of subscriptions received from shareholders at different times.

"***Suspension***" has the meaning set forth in Section 5.5(l).

"***Super-Majority-in-Interest of Limited Partners***" means Limited Partners whose Partnership Percentages represent more than 75% of the aggregate Partnership Percentages of all Limited Partners.

"***Transfer***" means any direct, indirect or synthetic sale, exchange, transfer, assignment, pledge, encumbrance, charge, exchange, hypothecation, placing of a lien or a security interest on an Interest or any other disposition by a Partner of its Interest to or in favor of another party, whether voluntary or involuntary (including, but not limited to, being offered or listed on or through any placement agent, intermediary, online service, site, agent or similar Person).

9

"*Withdrawal Date*" means, as applicable, the Series A Withdrawal Date, the Series B Withdrawal Date, the Series C Withdrawal Date, and the Series D Withdrawal Date or any other effective date of withdrawal pursuant to Section 5.5.

## Article II
## ORGANIZATION

**2.1     Continuation of Limited Partnership**

(a)     The General Partner and the Limited Partners hereby agree to continue the Partnership as a limited partnership under and pursuant to the Act and this Agreement.

(b)     The General Partner has executed and filed with the Secretary of State of the State of Delaware a Certificate, and shall execute, acknowledge and file with the Secretary any amendments thereto as may be required by the Act, and any other instruments, documents and certificates which, in the opinion of the Partnership's legal counsel, may from time to time be required by the laws of the United States of America, the State of Delaware or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership. The General Partner shall cause any required amendment to the Certificate to be filed promptly following the event requiring such amendment. All amendments may be signed by the General Partner (as required by the Act) and may be signed either personally or by an attorney-in-fact.

(c)     The parties hereto agree to operate the Partnership as a limited partnership pursuant to the provisions of the Act and of this Agreement and agree that the rights and liabilities of the Limited Partners and the General Partner are as provided in the Act, for limited partners and the general partner except as provided herein.

(d)     The parties hereto acknowledge and agree that the Partnership shall be classified as a "partnership" and not as an association taxable as a corporation for U.S. federal income tax purposes. No election may be made by the Partners or the Partnership to treat the Partnership as other than a "partnership" for U.S. federal, state and/or local income tax purposes and, to the extent necessary, the Partners or Partnership shall make any election to treat the Partnership as a "partnership." The Partners shall treat the Partnership consistently with its status as a "partnership" for U.S. federal income tax purposes and agree to undertake any further action which is necessary to treat the Partnership as such, and shall not undertake any action that is inconsistent with the Partnership's status as a "partnership" for U.S. federal, state and/or local income tax purposes.

(e)     The General Partner may change the domicile of the Partnership to another state, country or other jurisdiction where advisable due to legal, tax or other

10

considerations; <u>provided</u> that no such change of domicile would reasonably be expected to have a material adverse effect on the Limited Partners.

**2.2** **Name of Partnership**

(a)  The name of the Partnership is Highland Multi Strategy Credit Fund, L.P. or such other name as the General Partner may hereafter adopt, subject to causing an amendment to the Certificate to be filed with the Secretary of State of the State of Delaware in accordance with the Act. The General Partner shall send a notice of any change of name to the Limited Partners. All business of the Partnership shall be conducted under such name or under such other name as the General Partner deems appropriate.

(b)  The Partnership shall have the exclusive ownership and right to use the Partnership name so long as the Partnership continues, despite the withdrawal, expulsion, resignation or removal of any Limited Partner, but upon the Partnership's termination or at such time as there ceases to be a general partner, the Partnership shall assign the name and the goodwill attached thereto to the General Partner without payment by the assignee(s) of any consideration therefor.

**2.3** **Principal Office; Registered Office**

(a)  The Partnership's principal office shall be at such location as the General Partner may designate from time to time.

(b)  The Partnership's registered office in the State of Delaware is at 1209 Orange Street, County of New Castle, Wilmington, Delaware 19801, and the registered agent of the Partnership in the State of Delaware is The Corporation Trust Company, unless a different registered office or agent is designated from time to time by the General Partner.

**2.4** **Term of Partnership**

The term of the Partnership commenced on the date on which the Certificate was filed with the Secretary of State of the State of Delaware and continues until the Partnership is dissolved pursuant to Section 6.1 (unless its term is extended pursuant to Section 6.1). The legal existence of the Partnership as a separate legal entity continues until the cancellation of the Certificate.

**2.5** **Object and Powers of Partnership**

(a)  The object and business of the Partnership is (i) to purchase, sell (including short sales), invest and trade in Investments, (ii) to engage in financial transactions, including borrowing, financing, pledging, hedging and other derivative transactions relating thereto for the benefit of the Partnership, (iii) to engage in any lawful act or activity of which limited partnerships may be formed under the Act and (iv) to engage in any and all activities necessary or incidental to the foregoing.

11

(b) The Partnership possesses and may exercise all such powers and privileges as the General Partner considers necessary, convenient or incidental to the conduct, promotion or attainment of the object of the Partnership.

**2.6 Liability of Partners**

In no event shall any Limited Partner (or former Limited Partner) be obligated to make any contribution to the Partnership in addition to its agreed capital contribution (or other payments provided for herein) or have any liability for the repayment or discharge of the debts and obligations of the Partnership except to the extent provided herein or as required by the Act.

**2.7 Actions by Partnership**

The Partnership may execute, deliver and perform all contracts, agreements and other undertakings and engage in all activities and transactions as may in the opinion of the General Partner be necessary or advisable to carry out its objects.

**2.8 Reliance by Third Parties**

Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the General Partner as herein set forth.

**2.9 UCC Status of Limited Partner Interests**

(a) For purposes of the grant, pledge, attachment or perfection of a security interest in an Interest or otherwise, the Interests are deemed to be "securities" within the meaning of Section 8-102(a)(15) and as provided by Section 8-103(c) of the Uniform Commercial Code as in effect from time to time in the State of Delaware or analogous provisions in the Uniform Commercial Code in effect in any other jurisdiction.

(b) Any Interest may be evidenced by a certificate of partnership interest issued by the Partnership in such form as the General Partner may approve. Every certificate representing an Interest shall bear a legend substantially in the following form:

"For the purposes of Section 8-103 of the Uniform Commercial Code of the United States of America in effect in any relevant jurisdiction, the certificates representing an interest in the Limited Partnership constitute "securities" within the meaning of Section 8-102 and Section 8-103 of the Uniform Commercial Code."

**2.10 Series of Interests**

(a) The General Partner, at any time, may without notification to or consent of the other Limited Partners, create and offer different Series of Interests in the Partnership with such rights, obligations, liabilities, privileges, designations and preferences (including different investment strategies, underlying investments, degrees of leverage, Management Fees, Performance Allocations, brokerage commissions, transparency, withdrawal rights, co-investment opportunities, and other

12

differences) as the General Partner may determine upon the issuance of such Series; <u>provided</u> that such Series would not reasonably be expected to have a material adverse effect on the existing Limited Partners. The terms and rights of such Series may be set forth in a supplement to the Partnership's offering memorandum or a "side letter" or other agreement, which the General Partner may incorporate by reference.

(b)     All Interests in the Partnership held by Limited Partners (including Affiliated Investors) as of the Effective Date are hereby designated as Series A Interests.

**Article III**
**CAPITAL**

**3.1     Contributions to Capital**

(a)     The minimum required initial capital contribution of each Limited Partner is the amount determined by the General Partner. The General Partner may change the required minimum initial contribution amount at any time with respect to any, all or less than all Limited Partners.

(b)     The Partnership may accept additional contributions at such times as the General Partner may permit, but no Limited Partner shall be obligated to make any additional capital contribution to the Partnership, subject to the provisions of Section 3.5(b) and any contrary provision of the Act. The minimum required additional capital contribution of any existing Limited Partner to the Partnership shall be the amount the General Partner may determine. The General Partner may change the required minimum additional contribution amount at any time with respect to any, all or less than all Limited Partners.

(c)     The General Partner or an Affiliate has made a capital contribution to the Partnership as set forth in the Schedule of Partners. Except as required by the Act, the General Partner is not required to make any additional capital contributions to the Partnership. The General Partner may, however, make capital contributions to the Partnership in such amounts and at such times as it may determine. The General Partner or any of its Affiliates have the right at any time to make additional capital contributions as a Limited Partner or General Partner. If the General Partner or any of its Affiliates (including their associated Persons, such as officers, directors, partners, members or employees or any of their family members) makes a capital contribution as a Limited Partner, the General Partner or the Investment Manager shall have authority to waive the Management Fee and/or Performance Allocation with respect to such Limited Partner.

(d)     Except as otherwise permitted by the General Partner (i) initial or additional capital contributions by each Partner shall be paid in one installment with cash and/or Investments having an aggregate value as set forth in the Partnership's books and records, and (ii) initial contributions are due as of the date of admission of such Person as a Limited Partner of the Partnership. Whether Investments may be

13

accepted as a contribution to the capital of the Partnership is determined by the General Partner.

**3.2     Rights of Partners in Capital**

(a)     No Partner shall be entitled to interest on its capital contributions to the Partnership. For the avoidance of doubt, interest income, if any, earned on subscription amounts remitted to the Partnership prior to the date that an Interest is issued to a Partner shall be payable to the Partnership and not applied toward the purchase of an Interest.

(b)     No Partner shall have the right to the return of any capital contribution to the Partnership except (i) upon withdrawal of such Partner pursuant to Section 5.5 or (ii) upon the dissolution of the Partnership pursuant to Section 6.1. The entitlement to any such return is limited to the value of the Capital Account(s) of the Partner. The General Partner shall not be liable for the return of any such amounts.

**3.3     Capital Accounts**

(a)     The Partnership shall maintain a separate Capital Account for each Partner. In the event a Limited Partner invests in more than one Series of Interests, the Partnership will maintain a separate Capital Account with respect to each Series of Interests held by such Limited Partner, with each such Capital Account being treated as if it were the Capital Account of a separate Partner for purposes of computing the Performance Allocation, the Management Fee and the withdrawal rights attributable to the Series.

(b)     The General Partner may, in its discretion, maintain a separate sub-account for such purposes as the General Partner may determine appropriate, including for recordkeeping, accounting or reporting or to otherwise give effect to the provisions of this Agreement. Each Capital Account shall reflect the aggregate sum of the balances in such Partner's Capital Account.

(c)     If a Partner makes an additional capital contribution to an existing Capital Account, the Capital Account will be sub-divided into separate capital sub-accounts attributable to each separate capital contribution, with each capital sub-account treated as if it were the Capital Account of a separate Partner for purposes of determining the Management Fee, the Performance Allocation and withdrawal rights and restrictions applicable to each capital sub-account. References herein to a Partner's "Capital Account" include any such separately maintained capital sub-accounts.

(d)     The Partnership will issue to the Offshore Fund an Interest and maintain capital sub-accounts that correspond to each Sub-Series of Shares and each capital sub-account is treated separately for determining Management Fees, the Performance Allocations and withdrawal rights.

14

(e) Each Capital Account has an initial balance equal to the amount of any cash and the net value of any property constituting the relevant Partner's initial capital contribution to such Capital Account.

(f) Each Capital Account shall be increased by such Capital Account's allocable share of the Net Profits allocated by the Partnership to such Capital Account pursuant to Section 3.4.

(g) Each Capital Account shall be reduced by (i) the amount of any cash and the net value of any property withdrawn by or distributed to the relevant Partner pursuant to Sections 5.5 or 6.3, including any amount deducted from any such withdrawal or distribution pursuant to Section 5.5(h), (ii) such Capital Account's allocable share of the Net Losses allocated by the Partnership to such Capital Account pursuant to Section 3.4, (iii) such Capital Account's *pro rata* portion of the expenses allocable (or specially allocable) by the Partnership pursuant to Section 3.5, (iv) such Capital Account's allocable share of the Performance Allocation allocable pursuant to Section 3.7, and (v) such Capital Account's *pro rata* portion of the expenses payable by the Partnership pursuant to Section 4.2(b).

(h) The Capital Account of the Investment Manager, as a special Limited Partner of the Partnership, shall be increased by the amount of the Performance Allocation allocated to such Capital Account and the investment gains therein.

(i) Each Capital Account shall also be adjusted to reflect all other allocations and other changes in the value of such Capital Account not otherwise described in this Section 3.3 in the manner specified in the remaining provisions of this Article III.

## 3.4 Allocations of Net Profit and Net Loss

Subject to Sections 3.5 through 3.10, as of the last day of each Accounting Period, any Net Profit or Net Loss of such Accounting Period shall be separately allocated among and credited to or debited against the Capital Accounts of the Partners in proportion to their respective Partnership Percentages for such Accounting Period.

## 3.5 Allocation of Management Fees, Withholding Taxes and Certain Other Expenditures

(a) As of the first Business Day of each calendar quarter, each Capital Account's Management Fee for such calendar quarter shall be debited against such Capital Account and paid by the Partnership to the Investment Manager. Capital contributions accepted after the commencement of the calendar quarter shall be subject to a prorated Management Fee reflecting the time remaining during that quarter. The Investment Manager may reduce or eliminate the Management Fee with respect to any Partner (or Capital Account) in its sole discretion; provided that such reduction or elimination shall not increase the Management Fee payable by any other Partner (or Capital Account).

(b) To the extent the General Partner or the Partnership is required by law (including under circumstances where the General Partner or the Partnership is unable to rely

15

conclusively on any withholding certification provided by a Partner) to withhold or to make tax payments on behalf of or with respect to any Partner or Partners (including backup withholding or withholding under FATCA), the General Partner or the Partnership may withhold such amounts and make such tax payments as so required. If the Partnership pays or incurs any withholding tax or other tax obligation (including under FATCA) with respect to the income allocable or distributable to one or more Partners, then the amount of such withholding tax or tax obligation shall be treated as a distribution to such Partner or Partners, as applicable, pursuant to the terms of this Agreement. Such amount shall be debited against the Capital Account(s) of such Partner or Partners as of the close of the Accounting Period during which the Partnership so withholds, pays or incurs such obligation. If the amount so withheld, paid or incurred is greater than the balance of the Capital Account(s) of the relevant Partner or Partners, as applicable, then such Partner or Partners and any successors shall make a contribution to the capital of the Partnership, within 10 days following request by the General Partner, the amount of such excess. The General Partner is not obligated to apply for or obtain a reduction of or exemption from withholding tax on behalf of any Partner that may be eligible for such reduction or exemption, or be otherwise obligated to structure Investments so as to reduce or avoid any such withholding tax.

(c)     Except as otherwise provided for in this Agreement, any expenditures payable by the Partnership, to the extent determined by the General Partner to have been paid or withheld on behalf of, or by reason of particular circumstances applicable to, one or more but fewer than all of the Partners, shall be specially allocated only to the Capital Accounts of those Partners on whose behalf such payments are made or whose particular circumstances gave rise to such payments. Such allocations shall be debited from the relevant Capital Accounts of such Partners as of the close of the Accounting Period during which any such items were accrued by the Partnership.

**3.6     Reserves; Adjustments for Certain Future Events**

(a)     The General Partner may cause appropriate reserves to be created, accrued and charged against Net Assets and proportionately against the Capital Accounts for contingent liabilities or probable losses, such reserves to be in the amounts which the General Partner deems necessary or appropriate. The General Partner may increase or reduce any such reserve from time to time by such amounts as the General Partner deems necessary or appropriate. The amount of any such reserve, or any increase or decrease therein, may, at the election of the General Partner, be debited or credited, as the General Partner deems appropriate, to the Capital Accounts of current Partners that (i) are Partners at the time when such reserve is created, increased, or decreased, as the case may be, or (ii) were Partners, or are transferees from Persons who were Partners, at the time of the act or omission giving rise to the contingent liability for which the reserve has been established by the General Partner.

16

(b)     If the General Partner determines that it is equitable to treat an amount to be paid or received as being applicable to one or more prior periods, then all or a portion of such amount may be proportionately debited or credited, as appropriate, in proportion to the Capital Account balances of the current Partners as such balances existed during any such prior period.

**3.7     Performance Allocation**

(a)     The Performance Allocation shall be debited against each Capital Account of each Limited Partner as of the last day of each Calculation Period with respect to such Capital Account, and the amount so debited shall simultaneously be credited to the Capital Account of the Investment Manager, as a special Limited Partner of the Partnership.

(b)     The Investment Manager may waive or alter the Performance Allocation with respect to any Limited Partner.

**3.8     Limited Participation Investments and New Issues**

(a)     If the General Partner determines that for legal, tax, regulatory or bona fide other reasons as to which the General Partner and any Partner may agree such Partner should not participate (or should receive a reduced participation) in the Net Profit or Net Loss with respect to any Investment, the General Partner may allocate Net Profit or Net Loss, if any, with respect to such Investment only to Partners to whom the restrictions on participating in that Investment do not apply.   In order to allocate Net Profit or Net Loss accordingly, the General Partner may establish and maintain a memorandum account in the accounting records of the Partnership on a Partner-by-Partner basis with respect to each such Investment. The Net Profit and Net Loss and expenses relating to such Investment will be separately calculated and allocated based on each participating Partner's balance in such memorandum account for such Investment divided by the sum of the balances of all memorandum accounts for all participating Partners.   In order to compensate a Limited Partner who is not participating in an Investment pursuant to this Section 3.8 for the use of such Partner's share of Partnership capital to purchase the Investment, the General Partner may credit the non-participating Partner's Capital Account (and correspondingly debit the Capital Account of the participating Partners with a carrying charge).   Any distributions from the memorandum account will be based on the participating Partner's respective percentage interest in such Investment.

(b)     Pursuant to certain rules of FINRA ("***New Issue Rules***"), members of FINRA are permitted to sell to the Partnership certain publicly-offered securities ("***Restricted Issues***") only if the Capital Accounts of Partners connected with the securities industry or executive officers or directors of investment banking clients of underwriters ("***Restricted Capital Accounts***") are not restricted from sharing a beneficial interest in such Restricted Issues in accordance with the provisions of the New Issue Rules.   Notwithstanding the provisions of Section 3.4, if the Partnership chooses to invest in Restricted Issues, the Partnership shall not allocate any items

of income, gain, loss, deduction and credit that relate to investments in Restricted Issues to Restricted Capital Accounts except to the extent permitted by the New Issue Rules, and shall instead allocate such items among the other Capital Accounts on a *pro rata* basis. To the extent the New Issue Rules permit certain Persons with Restricted Capital Accounts to participate in profits and losses from Restricted Issues, the General Partner shall allocate such profits and losses from Restricted Issues among such Restricted Capital Accounts on a *pro rata* basis or on such other basis that the General Partner reasonably determines ensures compliance with the New Issue Rules. To the extent consistent with the New Issue Rules, the General Partner shall determine when all Capital Accounts may participate in the Net Profit and Net Loss from any Restricted Issue. The General Partner shall value any Restricted Issue at such time at the then-current price of the security in the secondary market.

**3.9      Allocation to Avoid Capital Account Deficits**

To the extent that any debits pursuant to this Article III would reduce the balance of the Capital Account of any Limited Partner below zero, that portion of any such debits shall instead be allocated to the Capital Account of the General Partner. Any credits in any subsequent Accounting Period which would otherwise be allocable pursuant to this Article III to a Capital Account of any Limited Partner previously affected by the application of this Section 3.9 shall instead be allocated to the Capital Account of the General Partner in such amounts as are necessary to offset all previous debits attributable to such Limited Partner pursuant to this Section 3.9 not previously recovered.

**3.10      Regulatory Allocations**

Notwithstanding anything to the contrary in this Agreement:

(a)      <u>Qualified Income Offset</u>.   In the event any Limited Partner unexpectedly receives any adjustments, allocations, or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Partnership income and gain shall be specially allocated to each such Limited Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the deficit balance in the Capital Account of such Limited Partner as quickly as possible; <u>provided</u> that an allocation pursuant to this Section 3.10(a) may be made only if and to the extent that such Limited Partner would have a deficit balance in its Capital Account after all other allocations provided for in this Article III have been tentatively made as if this Section 3.10(a) were not in this Agreement. This Section 3.10(a) is intended to constitute a "qualified income offset" within the meaning of Section 1.704-1(b)(2)(ii) of the Regulations and is to be interpreted consistently therewith.

(b)      <u>Minimum Gain Chargeback</u>.   Notwithstanding any other provision of this Section 3.10, if there is a net decrease in Partnership Minimum Gain during any Fiscal Year, the Partners shall be specially allocated items of Partnership income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an

18

amount equal to the portion of any such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Regulations Sections 1.704-2(f) and (g). This Section 3.10(b) is intended to comply with the minimum gain chargeback requirement in such Sections of the Regulations and shall be interpreted consistently therewith.

(c)    <u>Gross Income Allocation</u>.  In the event any Limited Partner has a deficit Capital Account at the end of any Fiscal Year that is in excess of the sum of (i) the amount such Limited Partner is obligated to restore pursuant to any provision of this Agreement and (ii) the amount such Limited Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, each such Limited Partner shall be specially allocated items of Partnership gross income and gain in the amount of such excess as quickly as possible; <u>provided</u> that an allocation pursuant to this Section 3.10(c) may be made only if and to the extent that such Limited Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article III have been made as if Section 3.10(a) and this Section 3.10(c) were not in this Agreement.

(d)    <u>Curative Allocations</u>.  The allocations set forth this Section 3.10 (the "***Regulatory Allocations***") are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss, or deduction pursuant to this Section 3.10.  Therefore, notwithstanding any other provision of this Article III (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of the Partnership income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of this Partnership Agreement and all Partnership items were allocated pursuant to other provisions of this Article III (other than the Regulatory Allocations).

(e)    <u>Nonrecourse Deductions</u>.  Any Nonrecourse Deductions for any Fiscal Year or other period shall be allocated to the Partners in accordance with their Partnership Percentages.

(f)    <u>Section 704(b) Compliance</u>.  The allocations provided in this Section 3.10 are intended to comply with the Regulations under Section 704(b) of the Code and may, as determined by the General Partner, be interpreted and applied in a manner consistent therewith.

**3.11**    **Allocations for Income Tax Purposes**

(a)    <u>Income Tax Allocations</u>.  Except as otherwise required by Code Section 704(c), items of income, gain, deduction, loss, or credit that are recognized for U.S. federal

19

income tax purposes in each Fiscal Year shall be allocated among the Partners in such manner as to reflect equitably amounts credited to or debited against each Partner's Capital Account, whether in such Fiscal Year or in prior Fiscal Years. To this end, the Partnership shall establish and maintain records which shall show the extent to which the Capital Account of each Partner comprises amounts that have not been reflected in the taxable income of such Partner as of the last day of each Fiscal Year. To the extent deemed by the General Partner to be feasible and equitable, taxable income and gains in each Fiscal Year shall be allocated among the Partners who have enjoyed the related credits to their Capital Accounts, and items of deduction, loss and credit in each Fiscal Year shall be allocated among the Partners who have borne the burden of the related debits to their Capital Accounts. Foreign tax credits attributable to taxes incurred by the Partnership shall be allocated in a manner consistent with Section 1.704-1(b)(4)(viii) of the Regulations. All matters concerning allocations for U.S. federal, state and/or local income tax purposes, including accounting procedures, not expressly provided for in this Agreement shall be determined by the General Partner.

(b)     Basis Adjustments.  To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) of the Code or Section 743(b) of the Code is required under Section 1.704-1(b)(2)(iv)(m) of the Regulations to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations; provided that in the event that an adjustment to the book value of Partnership property is made as a result of an adjustment pursuant to Section 734(b) of the Code, items of income, gain, loss, or deduction, as computed for book and tax purposes, shall be specially allocated among the Partners so that the effect of any such adjustment shall benefit (or be borne by) the Partner(s) receiving the distribution that caused such adjustment.

(c)     Positive Basis Allocations.  If the Partnership recognized gains or items of gross income (including short-term capital gain) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Positive Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect:  (i) to allocate such gains or items of gross income among such Positive Basis Partners, pro rata in proportion to the respective Positive Basis of each such Positive Basis Partner, until either the full amount of such gains or items of gross income shall have been so allocated or the Positive Basis of each such Positive Basis Partner shall have been eliminated; and (ii) to allocate any gains or items of gross income not so allocated to Positive Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; provided, however, that if, following such Fiscal Year, the Partnership recognizes gains or items of gross income from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the

20

liquidating share of any Positive Basis Partner, that continues to be a Partner in the Partnership following such withdrawal (*i.e.,* such Positive Basis Partner effected a partial, and not a complete, withdrawal of its Interest), then such Positive Basis Partner may be allocated an amount of such gains or items of gross income equal to the amount, if any, by which its or its Positive Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(c).

(d)  <u>Negative Basis Allocations</u>.  If the Partnership recognizes net losses or items of gross loss or deduction (including short-term capital loss) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Negative Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect:   (i) to allocate such net losses or items of gross loss or deduction among such Negative Basis Partners, *pro rata* in proportion to the respective Negative Basis of each such Negative Basis Partner, until either the full amount of such losses or items of loss or deduction shall have been so allocated or the Negative Basis of each such Negative Basis Partner has been eliminated; and (ii) to allocate any net losses or items of gross loss or deduction not so allocated to Negative Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; <u>provided</u>, <u>however</u>, that if, following such Fiscal Year, the Partnership recognizes net losses or items of gross loss and deduction from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the liquidating share of any Negative Basis Partner that continues to be a Partner in the Partnership following such withdrawal (*i.e.*, such Negative Basis Partner effected a partial, and not a complete, withdrawal of its Interest), there may be allocated to such Negative Basis Partner an amount of such net losses or items of gross loss or deduction equal to the amount, if any, by which its or its Negative Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(d).

## 3.12    Individual Partner's Tax Treatment

Each Partner agrees not to treat, on any U.S. federal, state, local and/or non-U.S. income tax return or in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner inconsistent with the treatment of such item by the Partnership or which would result in inconsistent treatment, and each Partner further agrees to treat, on any U.S. federal, state, local and/or non-U.S. income tax return in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner consistent with the treatment of such item by the Partnership.

## 3.13    Distributions

(a)    The Partnership shall make distributions in respect of withdrawals in accordance with Section 5.5 and liquidation in accordance with Section 6.3.   In addition, the General Partner may make other distributions at the times and in the amounts the

21

General Partner determines. Any distributions may be paid in cash, in kind or partly in cash and partly in kind.

(b) Notwithstanding any provision to the contrary contained in this Agreement, the Partnership, and the General Partner on behalf of the Partnership, may not make a distribution to any Partner on any account of its Interest if such distribution would violate Section 17-607 of the Act or other applicable law.

## Article IV
## MANAGEMENT

**4.1 Duties and Powers of the General Partner**

(a) Subject to the terms and conditions of this Agreement, the General Partner has complete and exclusive power and responsibility, to the fullest extent permitted by the Act, for (i) all investment and investment management decisions to be undertaken on behalf of the Partnership and (ii) managing and administering the affairs of the Partnership, and shall have the power and authority to do all things that the General Partner considers necessary or desirable to carry out its duties hereunder and to achieve the purposes of the Partnership, whether or not such action or authority is expressly provided for in this Agreement. Without limiting the foregoing generality, the General Partner's powers include the power to borrow, obtain leverage or otherwise incur indebtedness with respect to the Partnership's capital.

(b) Without limiting the generality of the General Partner's duties and powers hereunder and notwithstanding anything to the contrary contained herein, the General Partner has full power and authority, subject to the other terms and provisions of this Agreement, to execute, deliver and perform such contracts, agreements and other undertakings on behalf of the Partnership, without the consent or approval of any other Person, and to engage in all activities and transactions, as it may deem necessary or advisable for, or as may be incidental to, the conduct of the business contemplated by this Section 4.1.

(c) The General Partner may delegate to any other Person, including the Investment Manager, any power and authority vested in the General Partner pursuant to this Agreement.

(d) The General Partner is the "tax matters partner" for purposes of Section 6231(a)(7) of the Code. The General Partner has the exclusive authority in its determination to make any elections required or permitted to be made by the Partnership under any provisions of the Code or any other revenue laws. The General Partner shall be entitled to be reimbursed by the Partnership for all costs and expenses incurred by it in connection with any administrative or judicial proceeding affecting tax matters of the Partnership and/or the Partners in their capacity as such and to be indemnified by the Partnership (solely out of Partnership assets) with respect to any

22

action brought against it in connection with any judgment in or settlement of any such proceeding.

(e)     Every power vested in the General Partner pursuant to this Agreement and any decision or determination that it is permitted to make is to be construed as a power to act (or not to act) in its sole and absolute discretion, except as otherwise expressly provided herein, and the General Partner shall be entitled to consider in making such decisions or determinations only such interests and factors as it desires, including its own interests. No provision of this Agreement is to be construed to require the General Partner to violate the Act, the Advisers Act, or any other law, regulation or rule of any self-regulatory organization. Notwithstanding any other provision of this Agreement, whenever in this Agreement, the General Partner is permitted or required to make a decision in its "good faith" or under another expressed standard, the General Partner must act under such express standard and will not be subject to any other or different standards.

(f)     Each Limited Partner shall deliver to the General Partner, upon a reasonable request, (i) an affidavit or certificate in form satisfactory to the General Partner that is sufficient to establish that the applicable Partner (and its partners, members, and/or beneficial owners, as the case may be) is not subject to withholding under the provisions of any U.S. federal, state, local, non-U.S. or other tax laws, or with respect to such Partner's tax status under such laws, and (ii) any information or documentation prescribed under FATCA or as may be necessary, as reasonably determined by the General Partner, for the Partnership to comply with its obligations under FATCA (including, but not limited to, information with respect to citizenship, residency, ownership or control of such Partner). Each Limited Partner shall reasonably cooperate with the General Partner in connection with any tax audit of the Partnership, or any existing or former Investment.

## 4.2     Expenses

(a)     Except as otherwise provided herein, and in consideration of the Management Fee, the General Partner and the Investment Manager shall each pay all of its own operating and overhead costs, without reimbursement by the Partnership.

(b)     The Partnership shall pay, or reimburse the General Partner and the Investment Manager for, all other reasonable costs, fees and expenses arising in connection with the Partnership's operations. Such expenses payable by the Partnership include the following:

(i)     all costs, fees and expenses directly related to Investments or prospective Investments (whether or not consummated) of the Partnership, including research and due diligence costs related to an Investment; brokerage commissions and other execution and transaction costs, interest on, and commitment fees and expenses arising out of, debit balances or borrowings; exchange, clearing and settlement charges; fees and expenses of any third-party providers of "back office" and "middle office" services relating to

trade settlement; travel expenses; appraisal fees; investment banking fees and expenses; borrowing charges on Investments sold short; custody fees; and fees of consultants and finders relating to Investments or prospective Investments of the Partnership; the costs, fees and expenses of any appraisers, accountants or other experts engaged by the General Partner or the Investment Manager as well as other expenses directly related to the Partnership's Investments;

(ii) any withholding, transfer or other taxes imposed on the Partnership;

(iii) the reasonable, out-of-pocket fees, costs and expenses (including legal fees and expenses) incurred to comply with any applicable law, rule or regulation (including regulatory filings or other expenses of the Partnership and the pro rata portion of any regulatory and other expenses of the General Partner or the Investment Manager, which benefit or are attributable to the Partnership);

(iv) the reasonable, out-of-pocket costs, fees and expenses for financial and tax accounting, bookkeeping and reporting services, and administrative services performed by any Person on behalf of the Partnership (e.g., the administrator of the Partnership), including the cost of any audit of the Partnership's financial statements and the preparation of its tax returns (including with respect to FATCA compliance);

(v) Management Fees;

(vi) the reasonable, out-of-pocket costs, fees and expenses of legal counsel and any other litigation or investigation involving Partnership activities;

(vii) specific expenses incurred in obtaining, maintaining or performing systems, research and other information, including information service subscriptions, utilized with respect to the Partnership's Investments including without limitation for portfolio management, valuations and accounting purposes, including the costs of statistics and pricing services, service contracts for quotation equipment and related hardware, software, phone and internet charges;

(viii) the reasonable, out-of-pocket costs, fees and expenses associated with the Recent Amendments, including legal and accounting fees, printing costs, reporting and providing information to existing and prospective Partners, obtaining requisite consent from Limited Partners, travel fees and expenses related to the Partnership's offering, filing fees (including any "blue sky" filing fees) and other out-of-pocket expenses and compliance with any applicable federal and state laws;

(ix) the costs and expenses associated with meetings of Partners;

24

(x)     the expenses of the Advisory Committee and the members thereof, including any indemnification expenses;

(xi)    the costs associated with maintaining "directors and officers" or similar liability insurance for the benefit of the Partnership, the General Partner, the Investment Manager, or any other Indemnified Person; and

(xii)   any costs or expenses of winding up and liquidating the Partnership and

(xiii)  all costs, fees and expenses associated with the ongoing offering of Limited Partner Interests.

(c)     Expenses with respect to Section 4.2(b)(viii) above will be amortized by the Partnership over a period of 36 months from the Effective Date; however, the General Partner may limit the amount of expenses amortized so that the Partnership's audited financial statements do not contain qualification.

(d)     Except as otherwise provided elsewhere in this Agreement, including Sections 3.4, 3.5, 3.6, 3.8 and 5.5(i), expenses are generally borne *pro rata* by the Partners in accordance with their respective Partnership Percentages.

(e)     If the General Partner or the Investment Manager, as appropriate, incurs any Partnership expenses for the account or for the benefit of, or in connection with its activities or those of its Affiliates on behalf of, both the Partnership and any Other Account, the General Partner or the Investment Manager, as appropriate, shall allocate such expense among the Partnership and each such Other Account in proportion to the size of the Investment made by each in the activity or entity to which the expense relates, or in such other manner as the General Partner considers fair and reasonable.

(f)     The General Partner and the Investment Manager may, to the extent disclosed in the Partnership's offering memorandum or otherwise disclosed to the Limited Partners, use "soft dollars" generated by the Partnership.  Use of "soft dollars" by the General Partner or the Investment Manager as disclosed herein shall not constitute a breach by either the General Partner or the Investment Manager of any fiduciary or other duty which the General Partner or the Investment Manager may be deemed to owe to the Partnership or its Partners.

## 4.3     Rights of Limited Partners

The Limited Partners may not take any part in the management, control or operation of the Partnership's business, and have no right or authority to act for the Partnership or to vote on matters other than the matters set forth in this Agreement or as required by applicable law.

## 4.4     Other Activities of Partners

(a)     The General Partner is not required to devote any specific amount of its time to the affairs of the Partnership, but shall devote such of its time to the business and affairs

25

of the Partnership as it may determine to be necessary to conduct the affairs of the Partnership for the benefit of the Partnership and the Partners.

(b)    Each Partner acknowledges and agrees that the General Partner, its Affiliates and their respective partners, managers, directors, officers, shareholders, members or employees may engage in or possess an interest in other business ventures or commercial dealings of every kind and description, independently or with others, including, but not limited to, management of other accounts, investment in, or financing, acquisition and disposition of, Investments, investment and management counseling, brokerage services, serving as directors, officers, advisers or agents of other issuers, partners of any partnership, or trustee of any trust, or entering into any other commercial arrangements, whether or not any such activities may conflict with any interest of the parties with respect to the Partnership. Without in any way limiting the foregoing, each Partner hereby acknowledges that none of the General Partner, its Affiliates or their respective partners, managers, directors, officers, shareholders, members or employees shall have any obligation or responsibility to disclose or refer any of the investment or other opportunities obtained through activities contemplated by this Section 4.4(b) to the Partnership, but may refer the same to any other party or keep such opportunities for their own benefit.

(c)    The General Partner and its Affiliates shall act in a manner that each considers fair, reasonable and equitable on an overall basis in allocating investment opportunities to the Partnership and any Other Account. The General Partner and its Affiliates shall allocate investment opportunities as set forth in their policies and procedures, as may be amended from time to time, and as communicated to Limited Partners through the Partnership's private offering memorandum for Interests or otherwise.

(d)    Each of the Partners hereby waives and covenants not to sue on the basis of any law (statutory, common law or otherwise) respecting the rights and obligations of the Partners *inter se* which is or may be inconsistent with this Section 4.4.

## 4.5    Exculpation; Indemnification

(a)    The General Partner, the Investment Manager, any of their Affiliates, each direct or indirect member, manager, partner, director, officer, shareholder and employee of any of the foregoing and, with the approval of the General Partner, any agent of any of the foregoing (including their respective executors, heirs, assigns, successors or other legal representatives) (each an "***Indemnified Person***") shall not be liable to the Partnership or to any of the Limited Partners for any loss or damage occasioned by any acts or omissions in the performance of services under this Agreement or the Investment Management Agreement, or otherwise in connection with the Partnership, its Investments or operations, unless such loss or damage has occurred by reason of the willful misconduct, fraud or gross negligence of such Indemnified Person or as otherwise required by law; provided that nothing in this Agreement is to be construed as waiving any legal rights or remedies which the Partnership may have under state or federal securities laws.

26

(b)      The Partnership (but not the Partners individually) shall indemnify each Indemnified Person to the fullest extent permitted by law against any cost, expense (including reasonable attorneys' fees), judgment or liability incurred by or imposed upon it in connection with any action, suit or proceeding (including any proceeding before any judicial, administrative or legislative body or agency) to which it may be made a party or otherwise be involved or with which it shall be threatened by reason of being or having been General Partner, having been the Investment Manager pursuant to the Investment Management Agreement or its having provided services to the Partnership; provided that the Indemnified Person is not so indemnified to the extent such cost, expense, judgment or liability has been finally determined (i) in a non-appealable decision on the merits in any such action, suit or proceeding, or (ii) on a plea of *nolo contendere*, to have been incurred or suffered by the Indemnified Person solely by reason of willful misconduct, fraud or gross negligence by the Indemnified Person.

      (i)      The right to indemnification granted by this Section 4.5 shall be in addition to any rights to which the Indemnified Person may otherwise be entitled and shall inure to the benefit of the successors or assigns of such Indemnified Person. The Partnership shall pay the expenses incurred by the Indemnified Person in defending a civil or criminal action, suit or proceeding in advance of the final disposition of such action, suit or proceeding, upon receipt of an undertaking by the Indemnified Person to repay such payment if there is an adjudication or determination that it is not entitled to indemnification as provided herein; provided that no such advance shall be made in connection with any action brought by a Majority-in-Interest of the Limited Partners.

      (ii)      In any suit in the name of the Partnership to recover expenses advanced pursuant to the terms of an undertaking, the Partnership shall be entitled to recover such expenses upon a final adjudication that the Indemnified Person or other Person claiming a right to indemnification hereunder has not met the applicable standard of conduct set forth in Section 4.5(a). In any such suit brought to enforce a right to indemnification or to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Indemnified Person or other Person claiming a right to indemnification shall not be entitled to be indemnified, or to an advancement of expenses, hereunder shall be on the Partnership (or any Limited Partner acting derivatively or otherwise on behalf of the Partnership or the Limited Partners) unless otherwise required by applicable law.

      (iii)      Each Indemnified Person may not satisfy any right of indemnity or reimbursement granted in this Section 4.5 or to which it may be otherwise entitled except out of the assets of the Partnership, and no Partner shall be personally liable with respect to any such claim for indemnity or reimbursement. The General Partner may obtain appropriate insurance on behalf, and at the expense, of the Partnership to secure the Partnership's obligations hereunder.

27

(iv)     Nothing in this Agreement is to be construed as to provide for the indemnification of an Indemnified Person for any liability (including liability under U.S. federal securities laws) to the extent that such indemnification would be in violation of applicable law but is to be construed so as to effectuate this Section 4.5 to the fullest extent permitted by law.

(v)      Each Indemnified Person shall be deemed a third-party beneficiary (to the extent not a direct party hereto) of this Agreement and, in particular, the provisions of this Section 4.5.  The General Partner and/or the Investment Manager may enter into agreements on behalf of the Partnership with an Indemnified Person to provide an indemnity to the same extent provided in this Section 4.5.

**4.6**     **Advisory Committee**

(a)      The General Partner and/or the Investment Manager may appoint a committee (the "*Advisory Committee*") composed of one or more individuals selected from time to time by the General Partner.  No member of the Advisory Committee may be an Affiliate of the General Partner and/or the Investment Manager (except as a Limited Partner or as an investor in an Affiliate of the Partnership).

(b)      If established, the Advisory Committee will meet with the General Partner and/or the Investment Manager from time to time as requested by and deemed appropriate by the General Partner and/or the Investment Manager to consult with and advise the General Partner and/or the Investment Manager on any matter deemed appropriate by the General Partner and/or the Investment Manager, including any circumstances involving conflicts of interest between the General Partner and/or the Investment Manager (and their Affiliates), on the one hand, and the Limited Partners and the Partnership, on the other.

(c)      The General Partner and/or the Investment Manager may in its discretion seek the approval of the Advisory Committee or establish any other reasonable mechanism in connection with (i) approvals that are or would be required under the Investment Advisers Act (including Section 206(3)) or (ii) any other matter deemed appropriate by the General Partner and/or the Investment Manager.  Each Limited Partner agrees that, except as otherwise specifically provided herein and to the extent permitted by applicable law, the approval of a majority of the members of the Advisory Committee at such time is binding upon the Partnership and each Partner with respect to any approval sought under this Section 4.6(c).

(d)      As determined by the General Partner and/or the Investment Manager, meetings of the Advisory Committee may be held in person or by telephone.  Approval of the Advisory Committee is deemed to have been given if given by a majority of those members present at a meeting or by a majority of all members of the Advisory Committee if given pursuant to a written consent without a meeting.

Appx. 00511

(e)     The Partnership agrees to reimburse members of the Advisory Committee for their out-of-pocket expenses relating to their services as Advisory Committee members and to indemnify each Advisory Committee member to the maximum extent permitted by law

(f)     In the event an Advisory Committee is not appointed, the General Partner and/or the Investment Manager may obtain the approval of an unaffiliated third party, as is determined advisable by the General Partner and/or the Investment Manager, and any such approval by such third party shall, to the extent permitted under applicable law, serve as the approval of the Advisory Committee and shall be binding on the Partnership and the Limited Partners.

**4.7     Alternative Investment Vehicles**

The General Partner shall have the right in connection with any Investment to direct the capital contributions of some or all of the Partners to be made through one or more alternative investment vehicles ("***Alternative Investment Vehicles***") and to exchange a portion of the Interests of one or more Limited Partners for similar equity interests in one or more Alternative Investment Vehicles if, in the judgment of the General Partner, the use of such vehicle or vehicles would allow the Partnership to overcome legal or regulatory constraints or invest in a more tax efficient manner and/or would facilitate participation in certain types of Investments; provided that the General Partner shall not employ the use of an Alternative Investment Vehicle in any manner that would reasonably be expected to have a material adverse effect on the participating Limited Partners. Any Alternative Investment Vehicle shall contain terms and conditions substantially similar to those of the Partnership and shall be managed by the General Partner or an Affiliate thereof, and such controlling Person is required to comply with the provisions of this Agreement applicable to Alternative Investment Vehicles.   Expenses related to an Alternative Investment Vehicle on behalf of less than all of the Partners shall not be borne by the Partners that do not participate in such Alternative Investment Vehicle.

**Article V**
**ADMISSIONS, TRANSFERS AND WITHDRAWALS**

**5.1     Admission of Limited Partners**

The General Partner may, at such times as the General Partner may determine, without advance notice to or consent from the Limited Partners, admit to the Partnership any Person who executes this Agreement or any other writing evidencing the intent of such Person to become a Limited Partner.   Such admission shall be effective when the General Partner enters the name of such Person on the books and records of the Partnership as a Partner and does not require the consent or approval of any other Partner.   The General Partner has the authority to reject subscriptions for Interests in whole or in part.

**5.2     Admission of Additional General Partners**

(a)     Except as provided in Section 5.2(b), the General Partner may admit one or more Persons as additional general partners to the Partnership.   No additional general

29

partner shall be added unless such additional general partner agrees to be bound by all of the terms of this Agreement.

(b)     Any Person to whom the General Partner has transferred its general partner interest in accordance with Section 5.4 shall be admitted to the Partnership as a substitute General Partner without the consent of the Limited Partners unless otherwise provided for in Section 5.4.

**5.3     Transfer of Interests of Limited Partners**

(a)     No Transfer of any Limited Partner's Interest, whether voluntary or involuntary, shall be valid or effective, and no transferee may become a substituted Limited Partner, unless the prior written consent of the General Partner has been obtained, which consent may be granted, withheld or conditioned for any reason by the General Partner.  Any attempted Transfer not made in accordance with this Section 5.3, to the fullest extent permitted by law, shall be void *ab initio*.

(b)     Prior to recognizing any Transfer in accordance with this Section 5.3, the General Partner may require the transferring Limited Partner to execute and acknowledge an instrument of Transfer in form and substance satisfactory to the General Partner, and may require the transferee to make certain representations and warranties to the Partnership and Partners and to accept, adopt and approve in writing all of the terms and provisions of this Agreement.

(c)     In the event of a Transfer of a Partner's Interest or in the event of a distribution of assets of the Partnership to any Partner, the Partnership may, but shall not be required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for U.S. federal income tax purposes as provided by Section 734 or 743 of the Code.

(d)     In the event of a Transfer at any time other than the end of a Fiscal Year, items of income, gain, loss, deduction or credit recognized by the Partnership for U.S. federal income tax purposes shall be allocated between the transferring parties, as determined by the General Partner, using any permissible method under Code Section 706(d) and the Regulations thereunder.  To the extent the transferring parties have given the General Partner written notice prior to the consent by the General Partner pursuant to Section 5.3(a) of their agreement to apply a particular and reasonable method, then the General Partner may elect to use such method. The transferring parties agree to reimburse the General Partner and the Partnership for any incidental accounting fees and other expenses incurred by the General Partner and the Partnership in making allocations pursuant to this Section 5.3(d).

**5.4     Transfer of Interest of the General Partner**

The General Partner may Transfer its Interest as a General Partner in the Partnership; provided that if any such proposed Transfer would result in an "assignment" (as such term is

30

defined under the Advisers Act), the General Partner shall obtain the consent of Limited Partners constituting a Majority-in-Interest of Limited Partners that are not Affiliated Investors.

**5.5     Withdrawal of Interests of Partners**

(a)     The Interest of a Limited Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)     Withdrawal rights are determined separately with respect to each Capital Account (and each capital sub-account, if applicable).   Each capital contribution shall be accounted for using a separate capital sub-account, and, in the case of a Limited Partner for which more than one capital sub-account is maintained, the withdrawals from any such capital sub-accounts shall be processed on a "first-in, first-out" basis based upon the date on which each capital contribution was made, unless otherwise agreed between the General Partner and such Partner.   Each capital sub-account relating to a contribution of capital from a Limited Partner will be treated as if it were the separate Capital Account of a separate Partner for the purposes of applying the withdrawal provisions of this Section 5.5.

(c)     Subject to a Suspension and the other provisions of this Section 5.5:

(i)     A Limited Partner may make a complete or partial withdrawal from its Series A Capital Account effective on the last Business Day of each calendar quarter occurring at least 36 calendar months after the contribution of the capital to be withdrawn (each, a "***Series A Withdrawal Date***") by providing written notice to the General Partner at least 90 days prior to the proposed Series A Withdrawal Date (such restriction, the "***Series A Lock-Up***").   For purposes of calculating the Series A Lock-Up, each Limited Partner holding Series A Interests on of the Effective Date is deemed to have made its initial contribution for Series A Interests as of the Effective Date.   Additional contributions for Series A Interests after the Effective Date will also be subject to the Series A Lock-Up, which lock-up period shall commence on the date of each such additional contribution.

(ii)    A Limited Partner may make a complete or partial withdrawal from its Series B Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series B Withdrawal Date. The "***Series B Withdrawal Date***" means: (i) the end of the day on the last Business Day of the calendar month that immediately precedes the one-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each one-year anniversary of the preceding Series B Withdrawal Date (or the last Business Day of such month).

(iii)   A Limited Partner may make a complete or partial withdrawal from its Series C Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series C Withdrawal Date.   The "***Series C Withdrawal Date***" means: (i) the end of the day on the last Business Day of

the calendar month that immediately precedes the two-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each two-year anniversary of the preceding Series C Withdrawal Date (or the last Business Day of such month).

(iv) A Limited Partner may make a complete or partial withdrawal from its Series D Capital Account effective on the last Business Day of each calendar quarter (each, a "***Series D Withdrawal Date***") occurring at least 12 calendar months after the contribution of the capital to be withdrawn by providing written notice to the General Partner at least 90 days prior to the proposed Series D Withdrawal Date.

(d) Any notice of withdrawal shall be irrevocable by the Limited Partner, unless otherwise agreed by the General Partner. For the avoidance of doubt, if a Limited Partner notifies the General Partner of its intent to withdraw and later chooses not to withdraw (with the General Partner's consent), any transaction costs incurred by the Partnership or the General Partner in connection therewith may be charged to such withdrawing Limited Partner. The General Partner may refuse to honor any Limited Partner's request for a full or partial withdrawal if such request is not accompanied by such additional information as the General Partner may reasonably require, including any information required to determine the "adjusted basis" for U.S. federal income tax purposes in the Limited Partner's Interest withdrawn.

(e) With respect to any amounts withdrawn, a withdrawing Partner shall not share in the income, gains and losses of the Partnership or have any other rights as a Partner (in the case of a complete withdrawal) after the applicable Withdrawal Date, and withdrawn amounts will be fixed as of the applicable Withdrawal Date, except as provided in Section 3.6. For the avoidance of doubt, none of the Partnership, the General Partner or the Investment Manager shall be liable to a Limited Partner for interest on the proceeds of any withdrawal.

(f) At least 90% of the estimated amount due with respect to the Partnership's marketable investments is normally settled in cash or, subject to the sole discretion of the General Partner, wholly or partially with securities or other assets of the Partnership, within 30 Business Days after the Withdrawal Date, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership or the remaining Capital Accounts. The General Partner is entitled to deduct from such settlement payment an amount equal to the pro rata portion of any Performance Allocation (based on the portion of the withdrawal being settled) payable to the Investment Manager with respect to such withdrawn amount. Any balance will be held back and distributed, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for such Fiscal Year, or sooner in the General Partner's discretion.

(g) In the case of a complete withdrawal, or a partial withdrawal that cannot be fully funded out of the Limited Partner's interest in the Partnership's marketable

32

investments, no settlements occur with respect to any of such Limited Partner's interest in the Partnership's non-marketable investments until the occurrence of liquidity events with respect to such non-marketable investments after the scheduled payment date for the withdrawal (without interest thereon). Notwithstanding the foregoing, the General Partner may, however, make settlements in such cases prior to the occurrence of a liquidity event if such settlement would, in the good faith opinion of the General Partner, not have a material adverse effect on the Partnership.   Generally, a liquidity event will be a sale of the relevant investment for cash, in which case the settlement will be funded in cash within 90 days after the liquidity event (without interest).   If the liquidity event is not a sale for cash, the General Partner may effect the settlement either by making a distribution in kind of the Limited Partner's ratable share of the relevant investment or by distributing the net proceeds derived from a sale of such investment.   The General Partner is entitled to withdraw from each such settlement an amount equal to the remaining portion of any Performance Allocation (pro rata based on the portion of such withdrawal being distributed) to be credited to the Investment Manager at the same time and in the same form (in cash or in kind) as the distribution to the withdrawing Limited Partner.

(h)     The General Partner may effect withdrawal payments (i) in cash, (ii) in kind, by transfer of marketable or non-marketable Investments to the Limited Partner, the value of which, as determined in accordance with Section 7.2, would satisfy the Limited Partner's request for withdrawal, or (iii) in any combination of the foregoing.

(i)     The General Partner may deduct from any withdrawal proceeds due to any Limited Partner pursuant to this Section 5.5 an amount representing the Partnership's actual or estimated expenses, as determined by the General Partner, associated with processing the withdrawal.  Any such withdrawal deduction shall be retained by the Partnership for the benefit of the remaining Limited Partners.

(j)     The right of any Partner to withdraw or receive distributions pursuant to the provisions of this Section 5.5 is subject to all Capital Account allocations and adjustments contemplated by this Agreement and to the provision by the General Partner for all Partnership liabilities and for reserves and holdbacks for contingencies provided in Section 3.6.

(k)     The General Partner may suspend or limit, in whole or in part, (i) the right of the Partners to withdraw or receive distributions from the Partnership and/or (ii) the valuation of the Partnership's Net Assets:

(i)     during any period when any exchange or over-the-counter market on which the Partnership's Investments are quoted, traded or dealt in is closed, other than for ordinary holidays and weekends, or during periods in which dealings are restricted or suspended;

33

(ii) during the existence of any state of affairs as a result of which, in the reasonable opinion of the General Partner, disposal of, or withdrawals or redemptions from, Investments by the Partnership, or the determination of the value of the assets of the Partnership, would not be reasonably practicable;

(iii) during any breakdown in the means of communication normally employed in determining the price or value of the Partnership's assets or liabilities, or of current prices in any market as aforesaid, or when for any other reason the prices or values of any assets or liabilities of the Partnership cannot reasonably be accurately ascertained within a reasonable time frame;

(iv) during any period when the transfer of funds involved in the realization or acquisition of any Investments cannot, in the reasonable opinion of the General Partner, be effected at normal rates of exchange;

(v) in other circumstances where the General Partner is unable to fairly value the Partnership's assets due to extreme market conditions; or

(vi) automatically upon liquidation of the Partnership.

(l) In the event of any such suspension or limitation described above in Section 5.5(k) (a "*Suspension*"), the General Partner shall promptly notify each Limited Partner. Any Limited Partner who has submitted a withdrawal request and to whom payment in full of the amount being withdrawn has not yet been remitted is not given any priority with respect to the withdrawal of such Interests or portions thereof after the cause for such Suspension ceases to exist. The General Partner may, however, allow any such Partners to rescind their withdrawal requests to the extent of any portion thereof for which withdrawal proceeds have not yet been remitted. Upon the reasonable determination by the General Partner that conditions leading to Suspension no longer apply, withdrawal rights for all Limited Partners shall be promptly reinstated, and any pending withdrawal requests (or new, timely withdrawal requests) shall be honored as of the last Business Day of the calendar quarter in which withdrawals have recommenced, subject to the application of the withdrawal limitations described herein.

(m) The General Partner may, notwithstanding any Suspension, upon not less than five days' prior written notice (or immediately if the General Partner determines in its sole discretion that such Limited Partner's continued participation in the Partnership may cause the Partnership, the Investment Manager or the General Partner to violate any applicable law), require any Limited Partner's Interest to be withdrawn in part or in its entirety from the Partnership (including, but not limited to, for reasons relating to FATCA) and for the Limited Partner to cease to be a Limited Partner of the Partnership (in the case of a withdrawal of a Limited Partner's Interest in its entirety) pursuant to this Section 5.5(m). Except as otherwise provided herein, settlements of withdrawals pursuant to this Section 5.5(m) are made in the same manner as voluntary withdrawals.

34

(n)    Notwithstanding the foregoing, the General Partner may waive any restrictions on any Limited Partner's ability to withdraw.

## Article VI
## SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION

**6.1**    **Soft Wind Down**

(a)    The General Partner may, in consultation with the Investment Manager, make a determination that the investment strategy should no longer be continued (whether or not the General Partner has implemented a Suspension). Having made such determination, the Investment Manager may recommend to the General Partner to cause the Partnership to return the Partnership's assets to Limited Partners in an orderly manner (without proceeding with a liquidation of the Partnership) (an "***Orderly Realization***"). The General Partner may, in such circumstances, resolve to effect an Orderly Realization should it determine that doing so is in the best interests of the Partnership as a whole. Such Orderly Realization shall not constitute a dissolution or winding up of the Partnership for any purposes, but rather only the continued management of the Partnership's portfolio so as to reduce such portfolio to cash (to the extent reasonably practicable, as advised by the Investment Manager) and return such cash as well as all other assets of the Partnership to the Limited Partners.

(b)    The General Partner will notify the Limited Partners of any decision to proceed with an Orderly Realization of the Partnership. During an Orderly Realization, the Investment Manager may, in consultation with the General Partner, take such steps as are considered appropriate in the best interests of the Partnership as a whole to effect the Orderly Realization. The General Partner, in consultation with the Investment Manager, shall establish what they consider to be a reasonable time by which the Orderly Realization should be effected (the "***Realization Period***"). Any resolution to undertake an Orderly Realization and the process thereof shall be deemed to be integral to the business of the Partnership and may be carried out without recourse to a formal process of liquidation under Delaware law or any other applicable bankruptcy or insolvency regime.

(c)    The General Partner, in consultation with the Investment Manager, may resolve to cease the Orderly Realization within the Realization Period and recommence active trading if the circumstances permit a lifting of any applicable Suspension or, where no Suspension is in effect, if the circumstances are such that the investment strategy can then be continued.

(d)    Management Fees, and all other fees and expenses, shall be payable and Performance Allocations shall be made during an Orderly Realization on the same basis as provided herein.

35

**6.2     Dissolution of Partnership**

(a)     The Partnership shall be dissolved upon the first to occur of the following dates:

    (i)     any date on which the General Partner shall elect in writing to dissolve the Partnership; or

    (ii)     the occurrence of any other event causing (A) the General Partner (or a successor to its business) to cease to be the general partner of the Partnership or (B) the dissolution of the Partnership under the Act.

(b)     In the event an Orderly Realization lasts longer than three years, a Super-Majority-in-Interest of the Limited Partners may seek a court decree of dissolution or seek the appointment by the court of a liquidator for the Partnership. The Limited Partners will not have any other right to bring an action in court to dissolve the Partnership. The parties agree that irreparable damage would be done to the goodwill and reputation of the Partners if any Limited Partner should bring an action in court to dissolve the Partnership. Care has been taken in this Agreement to provide for fair and just payment in liquidation of the Interests of all Partners. Accordingly, each Limited Partner hereby waives and renounces its right to such a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership except as provided herein.

**6.3     Liquidation of Assets**

(a)     Upon dissolution of the Partnership, the General Partner shall promptly liquidate the business and administrative affairs of the Partnership to the extent feasible, except that if the General Partner is unable to perform this function, a liquidator elected by a Majority-in-Interest of Limited Partners shall liquidate the business and administrative affairs of the Partnership. Net Profit and Net Loss during any Accounting Period, which includes the period of liquidation, shall be allocated pursuant to Article III. The proceeds from liquidation shall be divided in the following manner, subject to the Act:

    (i)     the debts, liabilities and obligations of the Partnership, other than any debts to the Partners as Partners, and the expenses of liquidation (including legal, administrative and accounting expenses incurred in connection therewith), up to and including the date that distribution of the Partnership's assets to the Partners has been completed, shall first be satisfied (whether by payment or the making of reasonable provision for payment thereof);

    (ii)     such debts as are owing to the Partners as Partners are next paid; and

    (iii)     the Partners shall next be paid liquidating distributions (in cash or in securities or other assets, whether or not readily marketable) *pro rata* in accordance with, and up to the positive balances of their respective Capital Accounts, as adjusted pursuant to Article III to reflect allocations for the

36

Accounting Period ending on the date of the distributions under this Section 6.1(a)(iii).

(b)     Notwithstanding this Section 6.3 and the priorities set forth in the Act, the General Partner or liquidator may distribute ratably in kind rather than in cash, upon dissolution, any assets of the Partnership; provided, however, that if any in kind distribution is to be made, (i) the assets distributed in kind shall be valued pursuant to Section 7.2, and charged as so valued and distributed against amounts to be paid under Section 6.3(a) and (ii) any gain or loss (as computed for book purposes) attributable to property distributed in kind shall be included in the Net Profit or Net Loss for the Accounting Period ending on the date of such distribution.

## Article VII
## ACCOUNTING AND VALUATION; BOOKS AND RECORDS

**7.1     Accounting and Reports**

(a)     The Partnership may adopt for tax accounting purposes any accounting method that the General Partner shall decide is in the best interests of the Partnership and that is permissible for U.S. federal income tax purposes.

(b)     As soon as practicable after the end of each Fiscal Year thereafter, the General Partner shall cause an audit of the financial statements of the Partnership as of the end of each such period to be made by a firm of independent accountants selected by the General Partner. As soon as is practicable thereafter, but subject to Section 7.4, the General Partner shall furnish to each Limited Partner a copy of the set of financial statements prepared in accordance with GAAP, with such adjustments thereto as the General Partner determines appropriate, including the report of such independent accountants.

(c)     As soon as practicable after the end of each taxable year, the General Partner shall furnish to each Limited Partner such information as may be required to enable each Limited Partner properly to report for U.S. federal, state and local income tax purposes its distributive share of each Partnership item of income, gain, loss, deduction or credit for such year. The General Partner shall have discretion as to how to report Partnership items of income, gain, loss, deduction or credit on the Partnership's tax returns, and the Limited Partners shall treat such items consistently on their own tax returns.

(d)     As soon as practicable after the end of each calendar month, but subject to Section 7.5, the General Partner shall arrange for the preparation and delivery to each Limited Partner of an interim report containing such information concerning the affairs of the Partnership (which need not include any financial statements) as the General Partner considers appropriate.

37

**7.2** **Valuation of Partnership Assets and Interests**

(a) The General Partner (or its delegate, including the Investment Manager or the administrator of the Partnership) shall value the assets of the Partnership as of the close of business on the last day of each Accounting Period. Such valuations will generally be in accordance with GAAP, with such adjustments thereto as the General Partner reasonably determines appropriate. In addition, the General Partner shall value the assets which are being distributed in kind as of the close of the Business Day immediately preceding the distribution date in accordance with Section 5.5(c) or Section 6.3(b). In determining the value of the assets of the Partnership, no value shall be placed on the goodwill or name of the Partnership, or the office records, files, statistical data or any similar intangible assets of the Partnership not normally reflected in the Partnership's accounting records, but there shall be taken into consideration any related items of income earned but not received, expenses incurred but not yet paid, liabilities fixed or contingent, prepaid expenses to the extent not otherwise reflected in the books of account, and the value of options or commitments to purchase or sell securities pursuant to agreements entered into on or prior to such valuation date.

(b) To the extent readily available, valuations will be based on independent market quotations obtained by the General Partner from recognized pricing services, market participants or other sources. In the case of any Investment for which a quotation from an independent source is not available or is determined by the General Partner to be unreliable or inadequate, the General Partner (i) shall be authorized, to the extent permitted by applicable law, to value such positions at their fair value in such manner as the General Partner determines in good faith, or (ii) may (but shall not be required to) obtain an appraisal, at the expense of the Partnership, by an independent third party selected by the General Partner. Except as otherwise determined by or at the direction of the General Partner, investment and trading transactions shall be accounted for on the trade date.

(c) Accounts shall be maintained in U.S. dollars, and except as otherwise determined by or at the direction of the General Partner: (i) assets and liabilities denominated in currencies other than U.S. dollars shall be translated at the rates of exchange quoted by an independent pricing service as in effect as of the close of business on the relevant valuation dates (and exchange adjustments shall be recorded in the results of operations); and (ii) investment and trading transactions and income and expenses shall be translated at the rates of exchange in effect at the time of each transaction.

**7.3** **Determinations by the General Partner**

(a) All matters concerning the determination and allocation among the Partners of the amounts to be determined and allocated pursuant to this Agreement, including Article III and accounting procedures applicable thereto, shall be determined by the General Partner, unless specifically and expressly otherwise provided for by the provisions of this Agreement, and such determinations and allocations shall be final

38

and binding on all the Partners; provided, however, that all calculations of the Performance Allocation will be made on the basis of, or subject to correction based on, the annual audit of the Partnership's financial statements and appropriate adjustments will be made to all such calculations and related allocations to the extent necessary as a result of that audit.

(b)    The General Partner may make such adjustments to the computation of Net Profit or Net Loss or any other allocations with respect to any Limited Partner, or any component items comprising any of the foregoing, as it considers appropriate to reflect the financial results of the Partnership and the intended allocation thereof among the Partners in a reasonably accurate, fair and efficient manner. Without limiting the generality of the foregoing, any provision of this Agreement that requires an adjustment to be made to any Capital Account or sub-account as of any mid-month or mid-quarter date may be made as of the most recent preceding or succeeding date when a regular valuation is being conducted.

**7.4    Books and Records**

(a)    The General Partner shall keep books and records pertaining to the Partnership's affairs showing all of its assets and liabilities, receipts and disbursements, realized income, gains, deductions and losses, Partners' Capital Accounts and all transactions entered into by the Partnership.  The General Partner shall afford to the Partnership's independent auditors reasonable access to such documents during customary business hours and shall permit the Partnership's auditors to make copies thereof or extracts therefrom at the expense of the Partnership.

(b)    The General Partner shall establish such standards as it deems appropriate regarding the access of Limited Partners to the books and records of the Partnership and shall not be obliged to permit access by a Limited Partner to the name or address of any other Limited Partner.

**7.5    Confidentiality**

(a)    Each Limited Partner agrees to keep confidential, and not to make any use of (other than for purposes reasonably related to its Interest or for purposes of filing such Limited Partner's tax returns) or disclose to any Person, any information or matter relating to the Partnership and its affairs and any information or matter related to any Investment (other than disclosure to such Limited Partner's directors, employees, agents, advisors, or representatives responsible for matters relating to the Partnership or to any other Person approved in writing by the General Partner (each such Person being hereinafter referred to as an "*Authorized Representative*")); provided that (i) such Limited Partner and its Authorized Representatives may make such disclosure to the extent that (A) the information to be disclosed is publicly available at the time of proposed disclosure by such Limited Partner or Authorized Representative, (B) the information otherwise is or becomes legally available to such Limited Partner other than through disclosure by the Partnership or the General Partner, or (C) such disclosure is required by law or in

39

response to any governmental agency request or in connection with an examination by any regulatory authorities; <u>provided</u> that such governmental agency, regulatory authorities or association is aware of the confidential nature of the information disclosed; (ii) such Limited Partner and its Authorized Representatives may make such disclosure to its beneficial owners to the extent required under the terms of its arrangements with such beneficial owners; and (iii) each Limited Partner will be permitted, after written notice to the General Partner, to correct any false or misleading information which becomes public concerning such Limited Partner's relationship to the Partnership or the General Partner. Prior to making any disclosure required by law, each Limited Partner shall use its best efforts to notify the General Partner of such disclosure. Prior to any disclosure to any Authorized Representative or beneficial owner, each Limited Partner shall advise such Authorized Representative or beneficial owner of the obligations set forth in this Section 7.5(a) and each such Authorized Representative or beneficial owner shall agree to be bound by such obligations.

(b)     The General Partner may keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information, including the identity of the Partners or information regarding the Partners or Investments, which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or agreement with a third party to keep confidential.

(c)     Subject to applicable legal and regulatory considerations, the General Partner shall use reasonable efforts to keep confidential any information relating to a Limited Partner obtained by the General Partner in connection with or arising out of the Partnership which the Limited Partner requests to be kept confidential.

(d)     Notwithstanding the provisions of this Section 7.5, Partners (and their employees, representatives and other agents) may disclose to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the Partnership and its transactions and all materials of any kind (including tax opinions or other tax analyses) that are provided to such Person by, or on behalf of the Partnership. For this purpose, "tax treatment" is the purported or claimed U.S. federal income tax treatment of a transaction and "tax structure" is limited to any fact that may be relevant to understanding the purported or claimed U.S. federal income tax treatment of a transaction. For this purpose, the names of the Partnership, the Partners, their affiliates, the names of their partners, members or equity holders and the representatives, agents and tax advisors of any of the foregoing are not items of tax structure.

(e)     The General Partner may disclose to prospective investors such information relating to the Partnership or the Investments as it believes in good faith will benefit the Partnership and facilitate investment in the Partnership by such prospective investors.

(f)     The Investment Manager and a Person acting as a service provider to the Partnership shall have the right to access all information belonging to the Partnership.

## Article VIII
## GENERAL PROVISIONS

**8.1     Amendment of Partnership Agreement**

(a)     Except as otherwise provided in this Section 8.1, this Agreement may be amended, in whole or in part, with the written consent of (i) the General Partner and (ii) the consent of a Majority-in-Interest of Limited Partners (which approval may be obtained by negative consent affording the Limited Partners at least 30 calendar days to object).

(b)     Any amendment that would:

  (i)     increase the obligation of a Partner to make any contribution to the capital of the Partnership;

  (ii)    reduce the Capital Account of a Partner other than in accordance with Article III;

  (iii)   adversely alter any Partner's rights with respect to the allocation of Net Profit or Net Loss or with respect to distributions and withdrawals; or

  (iv)    change the respective liabilities of the General Partner and the Limited Partners;

may only be made if the consent of each Partner adversely affected thereby is obtained (which consent may be obtained by negative consent affording the Partner at least 30 calendar days to object).

(c)     Notwithstanding paragraphs (a) and (b) of this Section 8.1, this Agreement may be amended by the General Partner without the consent of the Limited Partners, at any time and without limitation, if any Limited Partner whose contractual rights as a Limited Partner would be materially and adversely changed by such amendment has an opportunity to withdraw from the Partnership as of a date determined by the General Partner that is not less than 30 calendar days after the General Partner has furnished written notice of such amendment to each affected Limited Partner and that is prior to the effective date of the amendment.  The admission and withdrawal of Limited Partners will not require notice or disclosure to, or the approval of, the other Limited Partners.

(d)     The General Partner may at any time without the consent of the other Partners:

41

(i) add to the representations, duties or obligations of the General Partner or surrender any right or power granted to the General Partner under this Agreement, for the benefit of the Limited Partners;

(ii) cure any ambiguity or correct or supplement any conflicting provisions of this Agreement;

(iii) change the name of the Partnership;

(iv) make any changes required by a governmental body or agency which is deemed to be for the benefit or protection of the Limited Partners, provided, however, that no such amendment may be made unless such change (A) is for the benefit of, or not adverse to, the interests of Limited Partners, (B) does not affect the right of the General Partner to manage and control the Partnership's business, (C) does not affect the allocation of profits and losses among the Partners and (D) does not affect the limited liability of the Limited Partners;

(v) amend this Agreement to reflect a change in the identity of the General Partner which has been made in accordance with this Agreement;

(vi) amend this Agreement (other than with respect to the matters set forth in Section 8.1(b)) to effect compliance with any applicable laws, regulations or administrative actions;

(vii) subject to Section 8.1(b), amend this Agreement to reflect the creation, and terms, of any new Series of Interests;

(viii) effect any other amendment which would not, in the good faith judgment of the General Partner, adversely affect any of the existing Limited Partners; and

(ix) restate this Agreement together with any amendments hereto which have been duly adopted in accordance herewith to incorporate such amendments in a single, integrated document.

(e) Following the adoption of any amendments to this Agreement pursuant to 8.1(d), the General Partner shall promptly deliver a copy of such amendments to this Agreement to the Limited Partners.

(f) The General Partner may agree with a Limited Partner to waive or modify the application of any provision of this Agreement with respect to such Limited Partner without notifying or obtaining the consent of any other Limited Partner (other than a Limited Partner whose rights as a Limited Partner pursuant to this Agreement would be materially and adversely changed by such waiver or modification). Any such waiver or modification may be evidenced by a "side letter" or other document which will govern with respect to the applicable Limited Partner and be incorporated as part of this Agreement.

42

**8.2** **Special Power-of-Attorney**

(a) Each Limited Partner hereby irrevocably makes, constitutes and appoints the General Partner (and each of its successors and permitted assigns), with full power of substitution, the true and lawful representative and attorney-in-fact of, and in the name, place and stead of, such Limited Partner with the power from time to time to make, execute, sign, acknowledge, swear to, verify, deliver, record, file or publish:

(i) an amendment to this Agreement that complies with the provisions of this Agreement (including the provisions of Section 8.1);

(ii) the Certificate and any amendment thereof required because this Agreement is amended, including an amendment to effectuate any change in the membership of the Partnership or in the capital contributions of the Partners;

(iii) any financing statement or other filing or document required or permitted to perfect the security interests contemplated by any provision hereof; and

(iv) all such other instruments, documents and certificates which, in the opinion of legal counsel to the Partnership, may from time to time be required by the laws of the United States of America, the State of Delaware, or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership as a limited partnership, exchange a portion of a Limited Partner's Interest for similar equity interests in an Alternative Investment Vehicle, or to effect the dissolution or termination of the Partnership.

(b) Each Limited Partner is aware that the terms of this Agreement permit certain amendments to this Agreement to be effected and certain other actions to be taken or omitted by or with respect to the Partnership without that Limited Partner's consent. If an amendment of the Certificate or this Agreement or any action by or with respect to the Partnership is taken by the General Partner in the manner contemplated by this Agreement, each Limited Partner agrees that, notwithstanding any objection which such Limited Partner may assert with respect to such action, the General Partner in its sole discretion is authorized and empowered, with full power of substitution, to exercise the authority granted above in any manner which may be necessary or appropriate to permit such amendment to be made or action to be lawfully taken or omitted. Each Partner is fully aware that each other Partner relies on the effectiveness of this special power-of-attorney with a view to the orderly administration of the affairs of the Partnership. This power-of-attorney is a special power-of-attorney and is coupled with an interest in favor of the General Partner and as such:

(i) is irrevocable and continues in full force and effect notwithstanding the subsequent death or incapacity of any party granting this power-of-attorney,

43

regardless of whether the Partnership or the General Partner has had notice thereof; and

(ii) survives the delivery of an assignment by a Limited Partner of the whole or any portion of such Limited Partner's Interest, except that where the assignee thereof has been approved by the General Partner for admission to the Partnership as a substituted Limited Partner, this power-of-attorney given by the assignor survives the delivery of such agreement for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect such substitution.

**8.3    Notices**

Notices which may be or are required to be given under this Agreement by any party to another shall be given by hand delivery, transmitted by facsimile, transmitted electronically to an address that has been previously provided or verified through another form of notice or sent by registered or certified mail, return receipt requested or internationally recognized courier service, and shall be addressed to the respective parties hereto at their addresses as set forth on the register of Partners maintained by the General Partner or to such other addresses, facsimile numbers or electronic addresses as may be designated by any party hereto by notice addressed to (a) the General Partner, in the case of notice given by any Limited Partner, and (b) each of the Limited Partners, in the case of notice given by the General Partner.   Notices will be deemed to have been given (i) when delivered by hand, transmitted by facsimile or transmitted electronically or (ii) on the date indicated as the date of receipt on the return receipt when delivered by mail or courier service.

**8.4    Agreement Binding Upon Successors and Assigns; Delegation**

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations of the Partners hereunder are not assignable, transferable or delegable except as provided in Sections 4.1(c), 5.3 and 5.4, and any attempted assignment, transfer or delegation thereof which is not made pursuant to the terms of such Sections will be null and void *ab initio*.

**8.5    Governing Law**

This Agreement is, and the rights of the Partners hereunder are, governed by and shall be construed in accordance with the laws of the State of Delaware, without regard to the conflict of laws rule thereof which would result in the application of the laws of a different jurisdiction.   The parties hereby consent to the exclusive jurisdiction and venue for any action arising out of this Agreement in the courts located in Dallas County, Texas.   Each Partner consents to service of process in any action or proceeding involving the Partnership by the mailing thereof by registered or certified mail, postage prepaid, to such Partner's mailing address set forth in the register of Partners maintained by the General Partner.

44

**8.6     Not for Benefit of Creditors**

The provisions of this Agreement are intended only for the regulation of relations among Partners and between Partners and former or prospective Partners and the Partnership.   Except for the rights of the Indemnified Persons hereunder, this Agreement is not intended for the benefit of non-Partner creditors and no rights are granted to non-Partner creditors under this Agreement.

**8.7     Dispute Resolution**

The following procedures shall be used to resolve any controversy or claim ("*Dispute*") arising out of, relating to or in connection with the Agreement or otherwise involving the Partnership, its Partners and/or any Indemnified Person.   If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

    (a)   <u>Mediation</u>

        (i)   Any Dispute shall be submitted to mediation by written notice to the other party or parties.   In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations.   The mediator will be selected by agreement of the parties.   If the parties cannot agree on a mediator, a mediator shall be designated by JAMS/Endispute at the request of a party using, if necessary, strike and rank procedures then in effect.

        (ii)   The mediation will be conducted as specified by the mediator and agreed upon by the parties.   The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

        (iii)   The mediation will be treated as a settlement discussion and therefore will be confidential.   The mediator may not testify for either party in any later proceeding relating to the dispute.   No recording or transcript shall be made of the mediation proceedings.

        (iv)   Each party will bear its own costs in the mediation.   The fees and expenses of the mediator will be shared equally by the parties.

    (b)   <u>Arbitration</u>

        (i)   If a Dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration.   A party who files a suit in court regarding a Dispute rather than in arbitration waives its claim and must pay all attorney's fees and costs incurred by the other party in seeking to have such suit dismissed. Under no circumstances will a party maintain its right to pursue his/her/its Dispute if that party initiates a judicial suit instead of complying with the

mediation and arbitration provisions herein. The arbitration will be conducted through JAMS/Endispute in accordance with the procedures in this document and the commercial dispute arbitration rules then in effect ("***Arbitration Rules***"). In the event of a conflict, the provisions of this document will control.

(ii)    The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the U.S. Federal Arbitration Act ("***FAA***"), and resolved by the arbitrators, *provided, however*, that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with confidentiality, non-competition, non-solicitation or non-recruitment covenants or agreements binding on any party, with related expedited discovery for the parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. Under no circumstances will a state arbitration act preclude application of the FAA, including any choice of law provisions in this Agreement, or any other agreement. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

(iii)   The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or any in other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction. The arbitrator(s) shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. Any dispute over whether the arbitrator(s) has failed to comply with the foregoing will be resolved by summary judgment in a court of law.

(iv)    The party initiating arbitration shall pay all arbitration costs and arbitrator's fees, subject to a final arbitration award on who should bear costs and fees. All proceedings shall be conducted in Dallas, Texas, or another mutually agreeable site. Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and/or travel, subject to a final arbitration award on who should bear costs and fees. The duty to arbitrate described above shall survive the termination of this Agreement.

(v)     No discovery will be allowed in connection with the arbitration unless the arbitration panel, upon a showing of substantial need, expressly authorizes

46

    it. In any event, there shall be no more than (a) two party depositions of six hours each. Each deposition is to be taken pursuant to the Texas Rules of Civil Procedure; (b) one non-party deposition of six hours; (c) twenty-five interrogatories; (d) twenty-five requests for admission; (e) ten requests for production. In response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents. The total pages of documents shall include electronic documents; and (f) one request for disclosure pursuant to the Texas Rules of Civil Procedure. Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted.

(vi)    All aspects of the arbitration shall be treated as confidential, including its institution and/or settlement. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests. In the event a party who recovered monies by settlement, award by the arbitration panel, or otherwise in connection with the Dispute violates this confidentiality term, he, she, or it shall refund all such sums recovered. The parties expressly intend to waive the right to retain any monies received through settlement, award by the arbitration panel, or otherwise in connection with the Dispute in the event that that party violates the aforementioned confidentiality term.

(vii)    The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

**8.8    Consents and Voting**

(a)    Except as provided in Section 5.4, Limited Partners do not have any right to vote for the admission or removal of any General Partner and, except for the right to vote on certain amendments proposed by the General Partner and as otherwise expressly set out herein, have no other voting rights. Upon the request of any Limited Partner, the General Partner may designate an Interest as a Non-Voting Interest, in which case the Limited Partner shall not have the right to vote on any matter including amendments.

(b)    Any and all consents, agreements or approvals provided for or permitted by this Agreement shall be in writing and a copy thereof shall be filed and kept with the books of the Partnership. For the avoidance of doubt, an amendment made pursuant to Section 8.1(c) or pursuant to negative consent under Section 8.1(a) or Section 8.1(b) shall not require any affirmative written response by any Limited Partner who is not electing to withdraw from the Partnership.

(c)    In the event the Partnership seeks the approval, vote or consent of the Offshore Fund with respect to any matter to which it would be entitled to vote as a Limited

Partner of the Partnership under this Agreement, the Offshore Fund will: (i) submit such matter for the consent of the shareholders and (ii) shall vote its Limited Partner interest proportionally for and against such matter in the same proportion that the shareholders voted for and against such matter.

**8.9     Merger and Consolidation**

(a)     The Partnership may merge or consolidate with or into one or more limited partnerships formed under the Act or other business entities pursuant to an agreement of merger or consolidation which has been approved in the manner contemplated by Section 17-211(b) of the Act.

(b)     Notwithstanding anything to the contrary contained elsewhere in this Agreement, an agreement of merger or consolidation approved in accordance with Section 17-211(b) of the Act may, to the extent permitted by Section 17-211(g) of the Act, (i) effect any amendment to this Agreement, (ii) effect the adoption of a new limited partnership agreement for the Partnership if it is the surviving or resulting limited partnership in the merger or consolidation, or (iii) provide that the limited partnership agreement of any other constituent partnership to the merger or consolidation (including a limited partnership formed for the purpose of consummating the merger or consolidation) shall be the limited partnership agreement of the surviving or resulting limited partnership.

**8.10    Miscellaneous**

(a)     The captions and titles preceding the text of each Section hereof shall be disregarded in the construction of this Agreement.   Use of the word "including" in this Agreement means in each case "without limitation," whether or not such term is explicitly stated.

(b)     This Agreement may be executed in counterparts, each of which shall be deemed to be an original hereof.

(c)     If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect.   Any provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable.

**8.11    BHCA Subject Persons**

Notwithstanding any other provision of this Agreement to the contrary:

(a)     Solely for purposes of any provision of this Agreement that confers voting rights on the Limited Partners and any other provisions hereof regarding consents of or action by the Limited Partners, any BHCA Subject Person that shall have given the General Partner an Election Notice and shall not thereafter have given the General Partner a Revocation Notice, and that at any time has a Partnership Percentage in

excess of 4.9% of the aggregate Partnership Percentages of the Limited Partners entitled to participate in such voting or the giving of any consent or the taking of any action, shall be deemed to hold a Partnership Percentage of only 4.9% of the aggregate Partnership Percentages of the Limited Partners (after giving effect to the limitations imposed by this Section 8.11 on all such Limited Partners), and such Partnership Percentage in excess of said 4.9% shall be deemed held by the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages; provided that this limitation shall not prohibit a Limited Partner from voting or participating in giving or withholding consent or taking any action under any provision of this Agreement up to the full amount of its Partnership Percentage in situations where such Limited Partner's vote or consent or action is of the type customarily provided by statute or stock exchange rules with regard to matters that would significantly and adversely affect the rights or preference of the Limited Partner's Interest. The foregoing voting restriction shall continue to apply with respect to any assignee or other transferee of such BHCA Subject Person's Interest; provided, however, that the foregoing voting restriction shall not continue to apply if the Interest is transferred: (i) to the Partnership; (ii) to the public in an offering registered under the Securities Act; (iii) in a transaction pursuant to Rule 144 or Rule 144A under the Securities Act in which no Person acquires more than 2% of the Partnership's outstanding Interests; or (iv) in a single transaction to a third party who acquires at least a majority of the Partnership's outstanding Interests without regard to the Transfer of such Interests.

(b)     Except as specifically provided otherwise in this Agreement, a Limited Partner that is a BHCA Subject Person that shall have given the General Partner an Election Notice, and shall not thereafter have given the General Partner a Revocation Notice, shall not be entitled to exercise any rights to consent to actions to be taken with respect to the Partnership, including rights conferred by any applicable law. Such right to consent shall be deemed granted to the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages.

(c)     A Limited Partner that is a BHCA Subject Person and that elects to be subject to Section 8.11(a) and (b) shall notify the General Partner thereof (an "***Election Notice***") and, on the General Partner's receipt of such Election Notice, such Limited Partner shall be subject to Section 8.11(a) and (b) until 10 calendar days after such Limited Partner notifies the General Partner that it elects no longer to be subject to Section 8.11(a) and (b) (a "***Revocation Notice***"), which period may be reduced by the General Partner.

## 8.12    RIC Limited Partners

An Interest of a RIC Limited Partner does not entitle the RIC Limited Partner to vote or consent with respect to any Partnership matter unless the RIC Limited Partner's vote or consent with respect to its Interest would not be considered to be "voting securities" as defined under Section 2(a)(42) of the Investment Company Act. Except as provided in this Section 8.12, an Interest held by a RIC Limited Partner as a Non-Voting Interest is identical in all regards to all other Interests held by Limited Partners.

49

**8.13  Bad Actor Limited Partners**

Under Rule 506(d) under the Securities Act, the Partnership may be banned from selling Interests under Rule 506 if a Limited Partner beneficially owning 20% or more of the Partnership's voting securities engages in a "bad act" set forth in Rule 506.   Accordingly, each Limited Partner agrees that the General Partner may deem the portion of any Bad Actor Limited Partner's Interests to be, or convert any Bad Actor Limited Partner's Interests into, Non-Voting Interests (except for the purposes of voting on any amendment to this Agreement that would materially and adversely change the Bad Actor Limited Partner's rights and preferences as a Limited Partner other than pursuant to an amendment under Section 8.1(c)) to the extent that the General Partner determines that such portion is in excess of 19.99% of the outstanding aggregate voting Interests of all Partners excluding any Interests that are Non-Voting Interests.

**8.14  Entire Agreement**

The parties acknowledge and agree that, this Agreement, together with any other agreement with a Limited Partner pursuant to Section 8.1(e), constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

[Signature Page Follows]

50

The parties hereto have executed this Agreement as of the day and year first above written.

**GENERAL PARTNER:**

HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

By:   HIGHLAND MUTI STRATEGY CREDIT GP, LLC
       its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
       its sole member

By:   STRAND ADVISORS, INC.
       its general partner

By: _____

Name:  James Dondero

Title:   President

**LIMITED PARTNERS:**

By:   HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P
       attorney-in-fact for the Limited Partners

By:   HIGHLAND MULTI STRATEGY CREDIT GP, LLC
       its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
       its sole member

By:   STRAND ADVISORS, INC.
       its general partner

By: _____

Name:  James Dondero

Title:   President

*Signature Page to the Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P.*

# EXHIBIT 15

**THE COMPANIES LAW (2013 REVISION)**

**OF THE CAYMAN ISLANDS**

**COMPANY LIMITED BY SHARES**


**AMENDED AND RESTATED**

**MEMORANDUM AND ARTICLES OF ASSOCIATION**


**OF**


**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

**(As Adopted by Special Resolution on 1 November 2014)**



*Uploaded: 03-Nov-2014 14:05 EST*

*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00536**

**THE COMPANIES LAW (2013 REVISION)**

**OF THE CAYMAN ISLANDS**

**COMPANY LIMITED BY SHARES**

**AMENDED AND RESTATED**

**MEMORANDUM OF ASSOCIATION**

**OF**

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

**(As Adopted by Special Resolution on 1 November 2014)**

1    The name of the Company is **Highland Multi Strategy Credit Fund, Ltd.**

2    The Registered Office of the Company shall be at the offices of Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands, or at such other place within the Cayman Islands as the Directors may decide.

3    The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by the laws of the Cayman Islands.

4    The liability of each Member is limited to the amount unpaid on such Member's Shares.

5    The share capital of the Company is US$50,000 divided into 100 Management Shares of US$0.01 par value each and 49,999,000 Participating Shares of US$0.001 par value each.

6    The Company has power to register by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

7    Capitalised terms that are not defined in this Memorandum of Association bear the respective meanings given to them in the Articles of Association of the Company.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00537**

THE COMPANIES LAW (2013 REVISION)

OF THE CAYMAN ISLANDS

COMPANY LIMITED BY SHARES

AMENDED AND RESTATED

ARTICLES OF ASSOCIATION

OF

HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.

(As Adopted by Special Resolution on 1 November 2014)

# 1 Interpretation

1.1 In these Articles, Table A in the First Schedule to the Statute does not apply and unless there is something in the subject or context inconsistent therewith:

| | |
|---|---|
| "**Administrator**" | means the person, firm or corporation appointed and from time to time acting as administrator of the Company. |
| "**Articles**" | means these articles of association of the Company. |
| "**Auditor**" | means the person (if any) for the time being performing the duties of auditor of the Company. |
| "**Business Day**" | means any day normally treated as a business day in such places and/or on such markets as the Directors may from time to time determine. |
| "**Cayman Islands**" | means the British Overseas Territory of the Cayman Islands. |
| "**Class**" | means a separate class of Participating Share (and includes any sub-class of any such class). |
| "**Company**" | means the above-named Company. |
| "**Directors**" | means the directors for the time being of the Company. |
| "**Dollars**" or "**US$**" | refers to the currency of the United States. |
| "**Electronic Record**" | has the same meaning as in the Electronic Transactions Law. |



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00538**

| | |
|---|---|
| "**Electronic Transactions Law**" | means the Electronic Transactions Law (2003 Revision) of the Cayman Islands. |
| "**Eligible Investor**" | means a person eligible to hold Participating Shares, as determined from time to time by the Directors. |
| "**FATCA**" | means: |

(i)     sections 1471 to 1474 of the US Internal Revenue Code of 1986 and any associated legislation, regulations or guidance, or similar legislation, regulations or guidance enacted in any jurisdiction which seeks to implement similar tax reporting and/or withholding tax regimes;

(ii)    any intergovernmental agreement, treaty, regulation, guidance or any other agreement between the Cayman Islands (or any Cayman Islands government body) and the US, the UK or any other jurisdiction (including any government bodies in such jurisdiction), entered into in order to comply with, facilitate, supplement or implement the legislation, regulations or guidance described in paragraph (i); and

(iii)   any legislation, regulations or guidance in the Cayman Islands that give effect to the matters outlined in the preceding paragraphs.

| | |
|---|---|
| "**Gross Negligence**" | shall have the meaning ascribed thereto under the laws of the State of Delaware, USA. |
| "**Investment Manager**" | means the person, firm or corporation appointed and for the time being acting as the investment manager of the Company. |
| "**Management Share**" | means a voting non participating Share in the capital of the Company of US$0.01 par value designated as a Management Share and having the rights provided for in these Articles. |
| "**Master Fund**" | means Highland Multi Strategy Credit Fund, L.P., or any other entity in which all, or substantially all, of the assets of the Company are invested. |
| "**Member**" | means each person whose name is, from time to time and for the time being, entered in the Register of Members as the holder of one or more Shares. |

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

| | |
|---|---|
| "**Memorandum**" | means the memorandum of association of the Company. |
| "**Net Asset Value**" | means the value of the assets less the liabilities of the Company, or of a Separate Account (as the context may require), calculated in accordance with these Articles. |
| "**Net Asset Value per Participating Share**" | means the amount determined in accordance with these Articles as being the Net Asset Value per Participating Share of a particular Class and/or Series. |
| "**New Issue**" | has the meaning ascribed thereto by Rule 2790 adopted by the National Association of Securities Dealers, Inc. |
| "**New Issue Investment**" | means any New Issue acquired by the Company. |
| "**New Issue Shares**" | means a class of Participating Shares issued and designated as "New Issue Shares" and which may be issued in any one or more Series having the rights and restrictions set out in these Articles |
| "**Offering Memorandum**" | means an offering memorandum relating to Participating Shares of any Class and/or Series as amended or supplemented from time to time subject to and in accordance with these Articles. |
| "**Ordinary Resolution**" | means a resolution passed by a simple majority of the votes of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting, and includes a unanimous written resolution. |
| "**Participating Share**" | means a participating redeemable Share in the capital of the Company of US$0.001 par value and having the rights provided for in these Articles. Participating Shares may be divided into Classes in the discretion of the Directors in accordance with the provisions of these Articles and each Class may be further divided into different Series of Participating Shares and the term "Participating Share" shall include all such Classes and Series of Participating Share. |
| "**Prohibited Person**" | means any person who is restricted from participating in a New Issue pursuant to the Free-Riding and Withholding Interpretation adopted by the Board of Governors of the National Association of Securities Dealers Inc. |
| "**Redemption Date**" | means, in relation to any Class and/or Series of Participating Shares, such day or days as are set out in the Offering Memorandum or as may be specified by the Directors from time to time, upon which a Member is entitled to require the redemption of Participating Shares |

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

of that Class and/or Series.

"**Redemption Fee**"
means such fee (if any) payable by a Member to the Company on a redemption of Participating Shares, as the same may be determined by the Directors and disclosed to the Member at the time of its subscription for such Participating Shares.

"**Redemption Notice**"
means a notice in a form approved by the Directors by which a holder of Participating Shares is entitled to require the Company to redeem its Participating Shares.

"**Redemption Price**"
means the price determined in accordance with these Articles at which redeemable Participating Shares of the relevant Class and/or Series may be redeemed.

"**Register of Members**
means the register of Members, which shall be maintained in accordance with the Statute and includes (except where otherwise stated) any branch or duplicate Register of Members.

"**Registered Office**"
means the registered office for the time being of the Company.

"**Sales Charge**"
means such sales charge (if any) determined by the Directors as being payable by a subscriber on a subscription for Participating Shares of any Class and/or Series.

"**Seal**"
means the common seal of the Company and includes every duplicate seal.

"**Separate Account**"
means a separate internal account of the Company which the Directors may establish and cause to be maintained in accordance with these Articles.

"**Series**"
means a separate series of Participating Share (and includes any sub-series of any such series).

"**Share**" and "**Shares**"
means a share or shares of any class or series in the Company, including a Management Share, a Participating Share or a New Issue Share, as well as any fraction of a Share.

"**Share Rights**"
means, with respect to the Participating Shares of any Class or Series in issue, the class rights for the time being applicable to such Participating Shares or other terms of offer for the time being applicable to such Participating Shares whether set out in the Offering Memorandum, any subscription agreement or otherwise (including any representations, warranties or other disclosure relating

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

to the offer or holding of such Participating Shares).

| | |
|---|---|
| "**Special Resolution**" | has the same meaning as in the Statute and includes a unanimous written resolution. |
| "**Statute**" | means the Companies Law (2013 Revision) of the Cayman Islands. |
| "**Subscriber**" | means the subscriber to the Memorandum. |
| "**Subscription Date**" | means, in relation to Participating Shares of any Class and/or Series, such day or days as are set out in the Offering Memorandum or as may be specified by the Directors from time to time upon which a person may subscribe for Participating Shares of that Class and/or Series. |
| "**Subscription Price**" | means the price determined in accordance with these Articles at which Participating Shares of the relevant Class and/or Series may be subscribed. |
| "**Suspension**" | means a determination by the Directors to postpone or suspend (i) the calculation of the Net Asset Value of Participating Shares of any one or more Classes and/or Series (and the applicable Valuation Date) (a "**Calculation Suspension**"); (ii) the issue of Participating Shares of any one or more Classes and/or Series (and the applicable Subscription Date) (an "**Issue Suspension**"); (iii) the redemption by Members (in whole or in part) of Participating Shares of any one or more Classes and/or Series (and the applicable Redemption Date) (a "**Redemption Suspension**"); and/or (iv) the payment (in whole or in part) of any redemption proceeds (even if Valuation Dates and Redemption Dates are not postponed) (a "**Payment Suspension**"). |
| "**Transfer**" | means, in respect of any Share, any sale, assignment, exchange, transfer, pledge, encumbrance or other disposition of that Share, and "**Transferred**" shall be construed accordingly. |
| "**Treasury Share**" | means a Share held in the name of the Company as a treasury share in accordance with the Statute. |
| "**Valuation Date**" | means, in relation to each Class and/or Series of Participating Shares, the day or days determined from time to time by the Directors to be the day or days on which the Net Asset Value per Participating Share of that Class and/or Series is calculated. |
| "**Valuation Point**" | means, with respect to any Class and/or Series, the time or times on the Valuation Date of such Class and/or Series at which the Directors |

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

5

**Appx. 00542**

determine that the Net Asset Value per Participating Share of that Class and/or Series shall be calculated.

1.2     In these Articles:

(a)     the singular number includes the plural number and vice versa;

(b)     the masculine gender includes the feminine gender;

(c)     persons includes corporations;

(d)     "written" and "in writing" include all modes of representing or reproducing words in visible form, including in the form of an Electronic Record;

(e)     "shall" shall be construed as imperative and "may" shall be construed as permissive;

(f)     references to provisions of any law or regulation shall be construed as references to those provisions as amended, modified, re-enacted or replaced from time to time;

(g)     any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms;

(h)     the term "and/or" is used herein to mean both "and" as well as "or."  The use of "and/or" in certain contexts in no respects qualifies or modifies the use of the terms "and" or "or" in others.  "Or" shall not be interpreted to be exclusive, and "and" shall not be interpreted to require the conjunctive — in each case, unless the context otherwise requires;

(i)     any reference to the powers of the Directors shall include, when the context admits, the service providers or any other person to whom the Directors may delegate their powers;

(j)     any requirements as to delivery under the Articles include delivery in the form of an Electronic Record;

(k)     any requirements as to execution or signature under the Articles including the execution of the Articles themselves can be satisfied in the form of an electronic signature as defined in the Electronic Transactions Law;

(l)     sections 8 and 19(3) of the Electronic Transactions Law shall not apply; and

(m)     headings are inserted for reference only and shall be ignored in construing these Articles.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00543**

## 2 Commencement of Business

2.1 The business of the Company may be commenced as soon after incorporation as the Directors shall see fit.

2.2 The Directors may pay, out of the capital or any other monies of the Company, all expenses incurred in or about the formation and operation of the Company, including the expenses of registration and the initial offering of Participating Shares.

## 3 Service Providers

3.1 The Directors may appoint any person, firm or corporation to act as a service provider to the Company (whether in general or in respect of any Class and/or Series of Shares) and may entrust to and confer upon any such service providers any of the functions, duties, powers and discretions exercisable by them as Directors, upon such terms and conditions (including as to remuneration payable by the Company) and with such powers of delegation, but subject to such restrictions, as they think fit. Without limiting the generality of the foregoing, such service providers may include managers, investment advisers, administrators, registrars, transfer agents, custodians and prime brokers.

3.2 Without prejudice to the generality of the preceding Article, the Directors may appoint any person, firm or corporation to act as the Investment Manager with respect to the assets of the Company (whether in general or in respect of any Class and/or Series of Shares).  The Directors may entrust to and confer upon the Investment Manager any of the functions, duties, powers and discretions exercisable by them as Directors upon such terms and conditions (including as to remuneration payable by the Company) and with such powers of delegation, but subject to such restrictions, as they think fit.

## 4 Rights attaching to Shares

4.1 The Management Shares shall have the following rights:

(a) as to voting: the holder of a Management Share shall (in respect of such Management Share) have the right to receive notice of, attend at and vote as a Member at any general meeting of the Company; and

(b) as to capital: a Management Share shall confer upon the holder the right in a winding up to repayment of capital as provided in these Articles but shall confer no other right to participate in the profits or assets of the Company; and

(c) as to income: no dividends shall be payable on the Management Shares.

4.2 The Participating Shares shall have the following rights:



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00544**

(a)     as to voting: the holder of a Participating Share shall not (in respect of such Participating Share) have the right to receive notice of, attend at or vote as a Member at any general meeting of the Company, but may vote at a separate Class meeting convened in accordance with these Articles; and

(b)     as to capital: a Participating Share shall confer upon the holder thereof the right in a winding up to participate in the surplus assets of the Company by reference to the Separate Account attributable to the relevant Class or Series of Participating Shares as provided in these Articles; and

(c)     as to income: the Participating Shares shall confer on the holders thereof the right to receive dividends as provided in these Articles.

4.3     Notwithstanding Articles 4.1(a) and 4.2(a), if the Company, in its capacity as a limited partner of the Master Fund, is called upon to approve, vote or consent to any matter to which it would be entitled to vote as a limited partner of the Master Fund and is required to seek the consent of the holders of Participating Shares in connection with any such approval, vote or consent pursuant to the constitutional documents of the Master Fund (a "**Master Fund Consent Transaction**"), each holder of a Participating Share shall have the right (in respect of such Participating Share), to the exclusion of the holders of the Management Shares (in respect of such Management Shares), to receive notice of, and vote on, the Master Fund Consent Transaction (the "**Special Voting Right**").  The voting rights attributable to each Participating Share shall be calculated by reference to the Net Asset Value per Participating Share (calculated as at the most recent Valuation Date) and not on the basis of one Participating Share, one vote.  For every Master Fund Consent Transaction, the Directors shall cause the Company to vote its limited partnership interest in the Master Fund proportionally for and against such matter in the same proportion that the Members holding Participating Shares voted for and against such matter pursuant to the Special Voting Right.

4.4     In relation to any Special Voting Right pursuant to Article 4.3, unless otherwise determined by the Directors in their sole discretion, the procedure in this Article 4.4 shall be invoked.  The Directors shall provide written notice of the proposed Master Fund Consent Transaction to the Members holding Participating Shares and shall specify a deadline (the "**Consent Date**"), which shall be no earlier than 30 days after the date of giving such notice, by which date such Members may submit a written refusal to consent to the proposed Master Fund Consent Transaction.  The holders of Participating Shares in respect of which an express written refusal to consent has not been received by the Consent Date shall be deemed to have consented in writing to the proposed Master Fund Consent Transaction.

## 5       Share Capital

5.1     Subject to these Articles, the Directors may allot, issue, grant options or warrants over, or otherwise dispose of Shares in separate classes and/or series with different terms, preferences, privileges or special rights including, without limitation, with respect to investment strategy and/or policy, participation in assets, profits and losses of the Company, voting, fees charged (including

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00545**

management, performance and incentive fees), redemption privileges, allocation of costs and expenses (including, without limitation, the costs and expenses incurred in any hedging activities and any profits and losses arising therefrom) as they think proper.  Subject to the Statute, these Articles and any applicable subscription agreement, any Share Rights (other than those set out in these Articles or set out in a Special Resolution) may be varied by either the Directors or by Ordinary Resolution.  Notwithstanding the foregoing, the Subscriber shall have the power to:

(a)     issue one Share to itself;

(b)     transfer that Share by an instrument of transfer to any person; and

(c)     update the Register of Members in respect of the issue and transfer of that Share.

5.2     On or before the allotment of any Participating Share the Directors shall resolve the Class and/or Series to which such Participating Share shall be classified and may, prior to the issue of any Participating Share, reclassify such Participating Share.  Each Class and/or Series shall be specifically identified.  Subject to the Statute and these Articles, the Directors may at any time re-name any Participating Share.

5.3     Notwithstanding the currency in which the par value of the Participating Shares is denominated, the Directors may specify any currency as the currency in which the Subscription Price, Redemption Price and Net Asset Value of Participating Shares of a Class and/or Series is calculated.

5.4     The Company shall not issue Shares to bearer.

5.5     Fractional Shares may be issued.

5.6     Shares shall only be issued as fully paid-up.

5.7     No right of pre-emption or first refusal shall attach to any Shares.

5.8     New Issue Shares shall not be issued to a Prohibited Person.

**6      Allotment and Issue of Participating Shares**

6.1     The Directors may from time to time allot and issue Participating Shares of any Class and/or Series.  The Directors may, in their discretion, refuse to allot and issue any Participating Shares, and shall not issue any Participating Shares to or for the account of an investor who is not an Eligible Investor.  If the Directors have declared a Calculation Suspension or Issue Suspension, no Participating Shares of that Class or Series (as appropriate) shall be issued until the relevant Suspension has ended.

6.2     The Directors shall determine the Subscription Price at the time of issue of the first issue of Participating Shares of any Class and/or Series.  Thereafter, the Directors may allot and issue

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

Participating Shares of the same Class and/or Series on any Subscription Date provided that such additional Participating Shares are issued at a Subscription Price equal to not less than the Net Asset Value per Participating Share of such Class and/or Series calculated on the relevant Subscription Date (or if the Subscription Date is not also a Valuation Date then on the immediately preceding Valuation Date).

6.3     The Directors may add to the Subscription Price per Participating Share (before making any rounding adjustment) an amount which they consider to be an appropriate allowance to reflect fiscal and purchase charges which would be incurred for the account of the Company in investing an amount equal to the Subscription Price. The Directors may also add, in their discretion, a Sales Charge and/or an amount equal to any stamp duty and any other governmental taxes or charges payable by the Company with respect to the issue of such Participating Shares.

6.4     An applicant for Participating Shares shall pay for such Participating Shares in such currencies, in such manner, at such time, in such place and to such person acting on behalf of the Company as the Directors may from time to time determine.

6.5     Subject to the terms of any subscription agreement, an application for Participating Shares shall be irrevocable by an applicant for Participating Shares once it has been received by the Company. Participating Shares shall be treated as having been issued with effect from the relevant Subscription Date notwithstanding that the subscriber for those Participating Shares may not be entered in the Register of Members until after the Subscription Date.

6.6     Participating Shares shall be issued in such minimum numbers as the Directors may specify either generally or in any particular case; likewise the Directors may from time to time prescribe an amount as the minimum subscription amount.

6.7     The Directors may resolve to accept non-cash assets in satisfaction (in whole or in part) of the Subscription Price.

6.8     The Directors may require an applicant for Participating Shares to pay to the Company for the benefit of any selling agent such selling commissions or such organisational charges as may have been disclosed to such applicant. The Directors may differentiate between applicants as to the amount of such selling commissions or such organisational charges.

6.9     The Company may, in so far as the Statute permits, pay a commission to any person in consideration of that person subscribing or agreeing to subscribe whether absolutely or conditionally for any Participating Shares. Such commissions may be satisfied by the payment of cash and/or the issue of fully or partly paid-up Participating Shares. The Company may also on any issue of Participating Shares pay such brokerage as may be lawful.

## 7     Separate Accounts

7.1     The Directors shall have the power to establish and maintain, with respect to Participating Shares of any Class and/or Series, a Separate Account, to record (purely as an internal accounting

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00547**

matter) the allocation, on a differentiated basis, of the assets and liabilities of the Company to the holders of Participating Shares of any such Class and/or a Series in a manner consistent with the methodology set forth in the Offering Memorandum and the rights otherwise attaching to the Participating Shares.

7.2     The proceeds from the issue of Participating Shares of any Class and/or Series shall be applied in the books of the Company to the Separate Account established for Participating Shares of that Class and/or Series. The assets and liabilities and income and expenditure attributable to that Separate Account shall be applied to such Separate Account and, subject to the provisions of these Articles, to no other Separate Account. In the event that the assets of a Separate Account referable to any Class and/or Series are exhausted, any and all unsatisfied claims which any Members or former Members referable to that Class and/or Series have against the Company shall be extinguished. The Members or former Members referable to a Class and/or Series shall have no recourse against the assets of any other Separate Account established by the Company.

7.3     Where any asset is derived from another asset (whether cash or otherwise), such derivative asset shall be applied in the books of the Company to the same Separate Account as the asset from which it was derived, and on each revaluation of an asset the increase or diminution in value shall be applied to the same Separate Account and, subject to the provisions of these Articles, to no other Separate Account.

7.4     In the case of any asset or liability of the Company which the Directors do not consider is attributable to a particular Separate Account, the Directors shall have discretion to determine the basis upon which any such asset or liability shall be allocated between or among Separate Accounts.

7.5     The Directors may, in the books of the Company, allocate assets and liabilities to and from Separate Accounts if, as a result of a creditor proceeding against certain of the assets of the Company or otherwise, a liability would be borne in a different manner from that in which it would have been borne if applied under the foregoing Articles.

7.6     The Directors may from time to time transfer, allocate or exchange an asset or liability from one Separate Account to another Separate Account provided that at the time of such transfer, allocation or exchange the Directors form the opinion (in good faith) that the value in money or money's worth of each such asset or liability transferred, allocated or exchanged is not significantly less or more than the value in money or money's worth (referred to in these Articles as "proper value") received by the Separate Account from which such asset or liability is transferred, allocated or exchanged except only as is otherwise provided by these Articles.

## 8     Determination of Net Asset Value

8.1     The Net Asset Value and Net Asset Value per Participating Share of each Class and/or Series shall be determined by or on behalf of the Directors as at the relevant Valuation Point on each relevant Valuation Date.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00548**

8.2     In calculating the Net Asset Value and the Net Asset Value per Participating Share, the Directors shall apply such generally accepted accounting principles as they may determine.

8.3     The assets and liabilities of the Company shall be valued in accordance with such policies as the Directors may determine.  Absent bad faith or manifest error, any valuation made pursuant to these Articles shall be binding on all persons.

8.4     Unless otherwise determined by the Directors in any resolution creating a Class and/or Series of Participating Shares or as otherwise disclosed in any Offering Memorandum, the Net Asset Value per Participating Share of each Class (or Series) shall be determined by allocating *pro rata* the Net Asset Value, as at the relevant Valuation Point, of the Company and/or of the relevant Separate Account among each Class and/or Series, adjusting the amount so calculated to reflect any fees, costs, foreign exchange items or other assets or liabilities which are properly attributable to a specific Class and/or Series and then by dividing the resultant amount by the number of Participating Shares of such Class and/or Series then in issue.

8.5     The Directors may determine that the Net Asset Value of any Class and/or Series shall be definitively determined on the basis of estimates and that such determination shall not be modified to reflect final valuations.

8.6     Any expense or liability may be amortised over such period as the Directors may determine.

8.7     The Directors may establish such reserves as they deem reasonably necessary for Company expenses and any other contingent Company assets or liabilities, and may, upon the reversal or release of such reserves, apply any monies resulting therefrom in such manner as they may, in their absolute discretion, determine.

8.8     Net Asset Value per Participating Share shall be rounded to the nearest cent or such other amount as the Directors may determine and the benefit of any such roundings may be retained by the Company.

8.9     The Directors may cause the Company to issue new Participating Shares at par or to compulsorily redeem at par such number of Participating Shares as they consider necessary to address, in such manner as they consider equitable, any prior miscalculation of Net Asset Value or Net Asset Value per Participating Share.  The Company shall not be required to pay to the holder the redemption proceeds of any such compulsorily redeemed Participating Shares, which proceeds shall be retained by the Company.

## 9       Suspensions

9.1     The Directors may, from time to time, in the circumstances disclosed in the Offering Memorandum, declare a Suspension with respect to any one or more Classes and/or Series of Participating Shares.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

9.2     The Directors shall promptly notify all affected Members of any such Suspension and shall promptly notify such Members upon termination of such Suspension.

## 10      Transfer of Shares

10.1    Subject to Article 5.1, Shares may not be Transferred without the prior written approval of the Directors (which may be withheld for any or no reason) provided that the Directors may waive this requirement to the extent that they deem appropriate in connection with the listing of any Class or Series of Share on a stock exchange.

10.2    The Directors shall not register any Transfer of any Share to any person who is, in the opinion of the Directors, not an Eligible Investor.

10.3    Any proposed transferee shall provide to the Directors such information and documents as the Directors may request, including, without limitation, such documents or information as the Directors deem necessary or desirable:

(a)     to enable the Directors to determine that the proposed transferee is an Eligible Investor; and

(b)     to enable the Company to comply with all applicable laws, including anti-money laundering laws.

10.4    The instrument of Transfer of any Share shall be in writing and shall be executed by or on behalf of the transferor (and, if the Directors so require, signed by or on behalf of the transferee). The transferor shall be deemed to remain the holder of a Share until the name of the transferee is entered in the Register of Members.

## 11      Transmission of Shares

11.1    If a Member dies, the survivor or survivors (where the Member was a joint holder) or his or her legal personal representatives (where the Member was a sole holder) shall be the only persons recognised by the Company as having any title to the Member's interest in the Company. The death of any Member shall not operate to relieve, waive or reduce any liabilities attaching to the Member's Shares at the time of death and such liabilities shall continue to bind any survivor or survivors, or any personal representative, as the case may be.

11.2    Any person becoming entitled to a Share in consequence of the death or bankruptcy, or the liquidation or dissolution, of a Member (or in any other way than by Transfer) and who is an Eligible Investor may, upon delivery to the Directors of such evidence as may from time to time be required by them of:

(a)     such person's entitlement to such Shares; and/or

(b)     such person's status as an Eligible Investor,



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

13

**Appx. 00550**

elect, either to become the holder of such Share or to have such Share Transferred to another Eligible Investor nominated by such person. If such person elects to become the holder of such Share, such person shall give notice in writing to the Directors to that effect, but the Directors shall, in either case, have the same right to decline registration of such person as a holder of such Share as they would have had in the case of a Transfer of the Share by that Member before his or her death or bankruptcy, or liquidation or dissolution, as the case may be.

11.3 Any person becoming entitled to a Share in consequence of the death or bankruptcy, or the liquidation or dissolution, of a Member (or in any other way than by Transfer) and who is not an Eligible Investor shall not be registered as the holder of such Share and shall promptly Transfer such Share to an Eligible Investor in accordance with these Articles.

11.4 A person becoming entitled to a Share by reason of the death or bankruptcy or liquidation or dissolution of the holder (or in any other case than by Transfer), and who is an Eligible Investor, shall be entitled to the same dividends and other advantages to which such person would be entitled if such person were the registered holder of such Share. However, the person shall not, before becoming a Member in respect of a Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company and the Directors may at any time give notice requiring any such person to elect either to be registered himself or to have some person nominated by him become the holder of the Share (but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by the relevant Member before his death or bankruptcy or liquidation or dissolution or any other case than by transfer, as the case may be). If the notice is not complied with within ninety days the Directors may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the Share until the requirements of the notice have been complied with.

## 12 Redemption of Shares

12.1 Subject to any provisions relating to a specific Class and/or Series as set out in the Offering Memorandum or these Articles or in any resolution constituting a Class and/or Series or otherwise forming part of the special rights of such Participating Shares, a Member may require the redemption of all or any of such Member's Participating Shares by serving a Redemption Notice on the Company. Unless timely receipt is waived by the Directors in a particular case, a Redemption Notice shall be required to be received on or before a Redemption Date with respect to such Participating Shares (or such number of days prior to such Redemption Date as may be determined by the Directors). Any Member redeeming Participating Shares shall submit to the Directors the share certificate (if any) issued in respect of those Participating Shares. The Company shall redeem such Participating Shares at the Redemption Price, being an amount equal to the Net Asset Value per Participating Share of the relevant Class and/or Series prevailing on the relevant Redemption Date (or if the Redemption Date is not a Valuation Date then on the immediately preceding Valuation Date) subject to any deductions, holdbacks or adjustments provided for in these Articles and/or the Offering Memorandum.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

12.2    The Directors may deduct any Redemption Fee from the Redemption Price.  The Directors may also deduct such amount which they consider to be an appropriate allowance to reflect fiscal and sale charges which would be incurred for the account of the Company in realising assets or closing out positions to provide funds to meet any redemption request.

12.3    A Member may not withdraw a Redemption Notice once submitted to the Company unless (a) the Directors shall have declared a Calculation Suspension or Redemption Suspension or (b) the Directors determine (in their sole discretion) to permit the withdrawal of such redemption request (which they may do in whole or in part).  If a relevant Suspension has been declared by the Directors, the right of a Member to have its Participating Shares redeemed shall be suspended and during the period of Suspension the Member may withdraw its Redemption Notice.  Any withdrawal of the Redemption Notice shall be made in writing and shall only be effective if actually received by the Company before the termination of the period of the Redemption Suspension or Calculation Suspension, as applicable.  If the Redemption Notice is not withdrawn, any Participating Shares the redemption of which has been suspended shall be redeemed once the relevant Suspension has ended at the Redemption Price for Participating Shares of the relevant Class and/or Series calculated on the next Redemption Date following the end of the relevant Suspension.

12.4    The Directors may impose a gate the effect of which is to limit the redemptions of Participating Shares of any Class and/or Series or to limit the redemptions of Participating Shares held by any Member or Members as of any Redemption Date to such extent and in such manner as is disclosed in the Offering Memorandum.  If the Directors determine to limit redemptions, the Directors may determine the manner in which such gated redemption requests will be dealt with on any subsequent Redemption Date.

12.5    If the Company is required by the laws of any relevant jurisdiction to make a withholding from any redemption monies payable to the holder of Participating Shares the amount of such withholding shall be deducted from the redemption monies otherwise payable to such person.

12.6    No redemption of part of a Member's holding of Participating Shares of any one Class and/or Series may be made if, as a result thereof, such Member would hold fewer Participating Shares of such Class and/or Series than such minimum number or value of Participating Shares of such Class and/or Series as may from time to time be specified (either generally or in any particular case or cases) by the Directors.  If such partial redemption would reduce such Member's holding of Participating Shares to less than such minimum holding, the Directors may, in their discretion, elect to compulsorily redeem all of such Member's Participating Shares.

12.7    The Company may, in the absolute discretion of the Directors, refuse to make a redemption payment to a Member if the Directors suspect or are advised that the payment of any redemption proceeds to such Member may result in a breach or violation of any anti-money laundering law by any person in any relevant jurisdiction, or if such refusal is necessary to ensure the compliance by the Company, its Directors, the Administrator or any other service provider of the Company with any anti-money laundering law in any relevant jurisdiction.



15

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00552**

12.8 Any amount payable to a Member for the redemption of Participating Shares shall be paid in such currency or currencies as the Directors may determine. Subject to any Payment Suspension, the Company shall remit redemption proceeds (net of the costs of remittance) by cheque or wire transfer within such period or periods as the Directors shall have disclosed to the Member at the time of its subscription for Participating Shares or, in the absence of any such disclosure, within such period or periods as the Directors shall determine. In the absence of directions as to payment the Company may remit redemption proceeds by cheque to the address of the Member appearing on the Register of Members or by wire transfer to such account as the Directors deem appropriate in the circumstances. The Company shall not be liable for any loss resulting from this procedure.

12.9 On any redemption of Participating Shares the Directors shall have the power to satisfy (in whole or in part) the Redemption Price (and any other sums payable on redemption as provided in these Articles) owing on the redemption of such Participating Shares by dividing *in specie* the whole or any part of the assets of the Company (including, without limitation, shares, debentures, or securities of any other company whether or not held by the Company on the Redemption Date in question) and either (i) distributing such assets directly to the redeeming shareholder, and/or (ii) distributing or allocating such assets to a liquidating account or other similar mechanism to be managed and/or liquidated at the discretion of the Directors.

12.10 Participating Shares shall be treated as having been redeemed with effect from the relevant Redemption Date irrespective of whether or not a Member has been removed from the Register of Members or the Redemption Price has been determined or remitted. Accordingly, on and from the relevant Redemption Date, Members in their capacity as such will not be entitled to or be capable of exercising any rights arising under these Articles with respect to Participating Shares being redeemed (including any right to receive notice of, attend or vote at any meeting of the Company) save the right to receive the Redemption Price and any dividend which has been declared prior to the relevant Redemption Date but not yet paid (in each case with respect to the Participating Shares being redeemed). Such Members will be treated as creditors of the Company with respect to the Redemption Price and will rank accordingly in the priority of the Company's creditors.

12.11 Once a Participating Share is redeemed it shall be available for re issue and, until re issue, shall form part of the authorised and unissued share capital of the Company.

12.12 Upon the written request of a Member or prospective Member in a form acceptable to the Directors, the Company may, in the discretion of the Directors, accept a standing redemption request from such Member or prospective Member pursuant to which the Company shall agree (without assuming any liability for failing to do so) to use its commercially reasonable efforts to redeem such Member's Participating Shares to the extent necessary to ensure that such Member does not own over a specified percentage of the outstanding Participating Shares of the Company or any Class and/or Series thereof; such percentage to be the percentage identified by such Member or prospective Member in such written request as being the percentage which such Member's or prospective Member's ownership cannot exceed without material risk of such



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00553**

Member or prospective Member being in violation of applicable law or regulation.  Any such written request may be revoked by notice in writing to the Company from the affected Member.

12.13   No amendment to these Articles made after a Redemption Date shall affect a Member with respect to Participating Shares of that Member which have been redeemed, or are being treated as redeemed, on or prior to that Redemption Date.

12.14   Unless otherwise provided in the Offering Memorandum, unremitted redemption proceeds shall not bear interest against the Company and redeemed Participating Shares shall not participate in the profits and losses of the Company with effect from the relevant Redemption Date.

## 13      Compulsory Redemption

13.1    The Directors may cause the Company to redeem any or all of the Participating Shares held by any person at the appropriate Redemption Price in the circumstances disclosed in the Offering Memorandum.  If the Directors determine compulsorily to redeem any Participating Shares under this Article they shall give the holder of the Participating Shares such notice of the redemption as they shall have disclosed to the Member at the time of its subscription for Participating Shares or, in the absence of any such disclosure, within such period as the Directors shall determine.

13.2    The Directors may cause a compulsory redemption during any period for which a Redemption Suspension has been declared.

13.3    Without prejudice to the generality of the foregoing, the Company may (without notice) compulsorily redeem the Participating Shares of any Member and, on behalf of such Member, apply the proceeds of redemption in paying for new Participating Shares to give effect to any exchange, conversion or roll-up policy disclosed to Members pursuant to which Participating Shares of one Class or Series (the "**Old Shares**") may, at the option of the Company, be exchanged for Participating Shares of another Class or Series (the "**New Shares**") by means of the redemption of the Old Shares and the immediate re-subscription of the redemption proceeds in paying up the New Shares.

## 14      FATCA

14.1    Notwithstanding any other Article, in order to comply with FATCA, any Director shall be entitled to release and/or disclose on behalf of the Company to the Cayman Islands Tax Information Authority or equivalent authority (the "**TIA**") and any other foreign government body as required by FATCA, any information in its or its agents' or delegates' possession regarding a Member including, without limitation, financial information concerning the Member's investment in the Company, and any information relating to any shareholders, principals, partners, beneficial owners (direct or indirect) or controlling persons (direct or indirect) of such Member.  Any such Director may also authorise any third party agent, including but not limited to, the Investment Manager or Administrator, to release and/or disclose such information on behalf of the Company.



14.2    In order to comply with FATCA and, if necessary, to reduce or eliminate any risk that the Company or its Members are subject to withholding taxes pursuant to FATCA or incur any costs or liabilities associated with FATCA, the Directors may cause the Company to undertake any of the following actions:

(a)    compulsorily redeem any or all of the Shares held by a Member either (i) where the Member fails to provide (in a timely manner) to the Company, or any agent or delegate of the Company, including but not limited to, the Investment Manager or the Administrator, any information requested by the Company or such agent or delegate pursuant to FATCA; or (ii) where there has otherwise been non-compliance by the Company with FATCA whether caused, directly or indirectly, by the action or inaction of such Member, or any related person, or otherwise;

(b)    deduct from, or hold back, redemption or repurchase proceeds, dividend payments or any other distributions, in order to:

(i)    comply with any requirement to apply  and collect withholding tax pursuant to FATCA;

(ii)    allocate to a Member an amount equal to any withholding tax imposed on the Company as a result of the Member's, or any related person's, action or inaction (direct or indirect), or where there has otherwise been non-compliance by the Company with FATCA;

(iii)    ensure that any FATCA related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) are recovered from the Member(s) whose action or inaction (directly or indirectly, including the action or inaction of any person related to such Member) gave rise or contributed to such costs or liabilities;

(c)    in order to give effect to the requirements imposed upon the Company by FATCA, including the actions contemplated by articles 14.2(a) and 14.2(b), the Directors may:

(i)    create separate classes and/or series of Shares ("**FATCA Shares**"), with such rights and terms as the Directors may in their sole discretion determine, and following the compulsory redemption of some or all of a Member's Shares may immediately apply such redemption proceeds in subscribing for such number of FATCA Shares as the Directors determine; and/or

(ii)    may re-name any number of Shares (whether issued or unissued) as FATCA Shares, create a Separate Account with respect to such FATCA Shares and apply any FATCA related costs, debts, expenses, obligations or liabilities (whether external, or internal, to the Company) to such Separate Account; and/or



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

(iii)    allocate any FATCA costs, debts, expenses, obligations, liabilities or withholding tax among Separate Accounts on a basis determined solely by the Directors; and/or

(iv)    adjust the Net Asset Value per Share of any relevant Shares (including any FATCA Share).

## 15    Designated Investments

15.1    The Directors may, in their discretion, classify certain of the Company's investments which are deemed by the Directors or the Investment Manager to be illiquid or the value of which is not readily or reliably ascertainable or which may have a relatively long-term investment horizon as "**Designated Investments**". Once so classified, Designated Investments may, in the discretion of the Directors, be represented by a separate Class and/or Series of Participating Shares which, unless otherwise determined by the Directors, shall be allotted only to those Members who are holders of Participating Shares at the time of such designation. The gains and losses attributable to Designated Investments may, in the discretion of the Directors, be segregated and separately calculated and attributed amongst Members holding Shares of the relevant Class or Series in such manner as is consistent with the relevant provisions of the Offering Memorandum. Participating Shares of any such separate Class and/or Series may be issued by way of bonus or by way of conversion or exchange of all or part of a Member's holding of Participating Shares of another Class and/or Series. Similarly, Shares of a Designated Investment Class and/or Series may be converted or exchanged back into Participating Shares of the original Class and/or Series upon the Directors making a determination that the relevant investment no longer qualifies as a Designated Investment. The power to convert or exchange Participating Shares of one Class and/or Series into Participating Shares of another Class and/or Series may be effected by the Directors in any manner permitted by the Statute and the Articles, including the compulsory redemption of Participating Shares of one Class and/or Series and the application of the proceeds of redemption in subscribing for Participating Shares of the other Class and/or Series or by redesignating a portion of the Participating Shares of any existing Class and/or Series as thereafter belonging to a new Class and/or Series. Shares of a Class or Series of Shares which represent Designated Investments shall not, unless the Directors otherwise determine, be redeemable at the option of the Members holding such Participating Shares. Where investments are classified as Designated Investments and Participating Shares of a separate Class and/or Series are issued by way of bonus, the requirement of these Articles to ensure proper value is transferred to the Separate Account of the Participating Shares of the original Class and/or Series to which such investments were originally allocated shall not apply.

## 16    Purchase and Surrender of Shares

16.1    Subject to the provisions of the Statute and without prejudice to these Articles, the Company may purchase its own Shares (including any redeemable Shares) in such manner and on such other terms as the Directors may agree with the relevant Member.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00556**

16.2 The Company may make a payment in respect of the redemption or purchase of its own Shares in any manner permitted by the Statute, including out of capital.

16.3 The Directors may accept the surrender for no consideration of any fully paid Share.

## 17 Treasury Shares

17.1 The Directors may, prior to the purchase, redemption or surrender of any Share, determine that such Share shall be held as a Treasury Share.

17.2 The Directors may determine to cancel a Treasury Share or transfer a Treasury Share on such terms as they think proper (including, without limitation, for nil consideration).

## 18 Variation of Share Rights

18.1 Subject to the Statute, these Articles and any applicable subscription agreement, all or any of the Share Rights applicable to any Class or Series of Participating Shares in issue (unless otherwise provided by the terms of issue of those Participating Shares) may (whether or not the Company is being wound up) be varied without the consent of the holders of the issued Participating Shares of that Class or Series where such variation is considered by the Directors not to have a material adverse effect upon such holders' Share Rights; otherwise, any such variation may be made with the prior consent in writing of the holders of not less than two-thirds by Net Asset Value of such Participating Shares, or with the sanction of a resolution passed by a majority of at least two-thirds of the votes cast in person or by proxy at a separate meeting of the holders of such Participating Shares. For the avoidance of doubt, the Directors reserve the right, notwithstanding that any such variation may not have a material adverse effect, to obtain consent from the holders of such Participating Shares. To any such meeting all the provisions of these Articles as to general meetings shall *mutatis mutandis* apply, but so that any holder of a Participating Share present in person or by proxy may demand a poll, and the quorum for any such meeting shall be Members holding not less than twenty per cent. by Net Asset Value of the issued Participating Shares of the relevant Class or Series. At any Class meeting, the voting rights attributable to each Participating Share shall be calculated by reference to the Net Asset Value per Participating Share (calculated as at the most recent Valuation Date) and not on the basis of one Participating Share, one vote.

18.2 For the purposes of a Class consent, the Directors may treat two or more or all the Classes or Series of Participating Shares as forming one Class or Series if the Directors consider that such Classes or Series would be affected in the same way by the proposals under consideration, but in any other case shall treat them as separate Classes or Series.

18.3 Where the Shares of any Class or Series (the "**First Class**") rank, or will on issue rank, pari passu with the Shares of another Class or Series (the "**Second Class**") with respect to participation in the same pool of profits or assets of the Company on a winding up, the rights of the First Class shall be deemed to be varied by any variation of or creation of rights in the Second



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00557**

Class (including on initial issue) which gives the Second Class priority over the First Class on a winding up of the Company.

18.4 Subject to the foregoing Articles, the Share Rights applicable to any Class or Series of Shares in issue shall (unless otherwise expressly provided by the conditions of issue of such Shares) be deemed not to be varied by:

(a) the creation, allotment or issue of further Shares ranking pari passu therewith and which may be issued with the benefit of the terms referred to below;

(b) the purchase or redemption of any Shares;

(c) the exercise of the powers to allocate assets and charge liabilities to the various Separate Accounts or any of them and to transfer the same to and from the various Separate Accounts or any of them, as provided for in these Articles;

(d) any reduction or waiver of any fees (including early redemption, management or performance fees) chargeable or allocable to any Class or Series of Shares;

(e) any reduction or waiver of any redemption notice, gate or lock-up period applicable to any Class or Series of Shares; or

(f) any variation or waiver contemplated by or provided for in the Offering Memorandum applicable to the relevant Class and/or Series.

18.5 In relation to any Class or Series consent required pursuant to Article 18.1, the Directors in their discretion may invoke the following procedure (the "**Negative Consent Procedure**"). The Directors shall provide written notice of the proposed variation (the "**Proposal**") to the Members of the affected Class or Series and shall specify a deadline (the "**Redemption Request Date**"), which shall be no earlier than 30 days after the date of giving such notice, by which date such Members may submit a written request for redemption of some or all of their Participating Shares of the affected Class and/or Series on the Redemption Date (the "**Specified Redemption Date**") specified by the Directors in such notice. The terms of the Proposal shall be such that its specified effective date (the "**Effective Date**") shall not be on or prior to the Specified Redemption Date. Such notice shall further provide that the holders of any Participating Shares in respect of which a request for redemption has not been received by the Redemption Request Date (the "**Affected Shares**") shall, in the absence of express written refusal to consent, be deemed to have consented in writing to the Proposal (such Affected Shares being the "**Negative Consent Shares**"). In the event that the Negative Consent Procedure is followed, only the Affected Shares shall be considered for the purposes of determining whether the written consent majority has been obtained under Article 18.1 with the holders of the Negative Consent Shares being deemed to have submitted a written consent in favour of the Proposal on the Effective Date.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00558**

**19      Variation of Terms**

The Directors, with the consent of the Investment Manager, shall have the absolute discretion to agree with a Member to waive or modify the terms applicable to such Member's subscription for Participating Shares (including those relating to management and performance fees and redemption terms) without obtaining the consent of any other Member; provided that such waiver or modification does not amount to a variation of the rights attaching to the Participating Shares of such other Members.

**20      Certificates for Shares**

20.1      A Member shall only be entitled to a share certificate if the Directors resolve that share certificates shall be issued. Share certificates representing Shares, if any, shall be in such form as the Directors may determine.  Share certificates shall be signed by one or more Directors or another person authorised by the Directors. The Directors may authorise certificates to be issued with the authorised signature(s) affixed by mechanical process.  All certificates for Shares shall be consecutively numbered or otherwise identified and shall specify the Shares to which they relate.  All certificates surrendered to the Company for transfer shall be cancelled and, subject to these Articles, no new certificate shall be issued until the former certificate representing a like number of relevant Shares shall have been surrendered and cancelled.

20.2      The Company shall not be bound to issue more than one certificate for Shares held jointly by more than one person and delivery of a certificate to one joint holder shall be a sufficient delivery to all of them.

20.3      If a share certificate is defaced, worn out, lost or destroyed, it may be renewed on such terms (if any) as to evidence and indemnity and on the payment of such expenses reasonably incurred by the Company in investigating evidence, as the Directors may prescribe, and (in the case of defacement or wearing out) on delivery up of the old certificate.

**21      Register of Members**

21.1      The Company shall maintain or cause to be maintained the Register of Members.

21.2      The Directors may determine that the Company shall maintain one or more branch registers of Members in accordance with the Statute. The Directors may also determine which register of Members shall constitute the principal register and which shall constitute the branch register or registers, and to vary such determination from time to time.

**22      Closing Register of Members and Fixing Record Date**

22.1      For the purpose of determining Members entitled to notice of, or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any dividend, or in order to make a determination of Members for any other proper purpose, the Directors may provide that the Register of Members shall be closed for transfers for a stated period which shall not in any case exceed thirty days.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00559**

22.2    In lieu of, or apart from, closing the Register of Members, the Directors may fix in advance or arrears a date as the record date for any such determination of Members entitled to notice of, or to vote at any meeting of the Members or any adjournment thereof, or for the purpose of determining the Members entitled to receive payment of any dividend or in order to make a determination of Members for any other proper purpose.

22.3    If the Register of Members is not so closed and no record date is fixed for the determination of Members entitled to notice of, or to vote at, a meeting of Members or Members entitled to receive payment of a dividend, the date on which notice of the meeting is sent or the date on which the resolution of the Directors declaring such dividend is passed, as the case may be, shall be the record date for such determination of Members.  When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## 23    Non Recognition of Trusts

The Company shall not be bound by or compelled to recognise in any way (even when notified) any equitable, contingent, future or partial interest in any Share, or (except only as is otherwise provided by these Articles or the Statute) any other rights in respect of any Share other than an absolute right to the entirety thereof in the registered holder.

23.1    if it is not paid all the provisions of these Articles shall apply as if that amount had become due and payable by virtue of a call.

23.2    The Directors may issue Shares with different terms as to the amount and times of payment of calls, or the interest to be paid.

23.3    The Directors may, if they think fit, receive an amount from any Member willing to advance all or any part of the monies uncalled and unpaid upon any Shares held by it, and may (until the amount would otherwise become payable) pay interest at such rate as may be agreed upon between the Directors and the Member paying such amount in advance.

23.4    No such amount paid in advance of calls shall entitle the Member paying such amount to any portion of a dividend declared in respect of any period prior to the date upon which such amount would, but for such payment, become payable.

## 24    Lien on Shares

24.1    The Company shall have a first and paramount lien on all Shares (whether fully paid-up or not) registered in the name of a Member (whether solely or jointly with others) for all debts, liabilities or engagements to or with the Company (whether presently payable or not) by such Member or such Member's estate, either alone or jointly with any other person, whether a Member or not, but the Directors may at any time declare any Share to be wholly or in part exempt from the provisions of this Article.  The registration of a Transfer of any such Share shall operate as a waiver of the Company's lien thereon.  The Company's lien on a Share shall also extend to any amount payable in respect of that Share.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00560**

24.2    The Company may sell, in such manner as the Directors think fit, any Shares on which the Company has a lien, if a sum in respect of which the lien exists is presently payable, and is not paid within fourteen clear days after notice has been given to the holder of the Shares, or to the person entitled to it in consequence of the death or bankruptcy of the holder, demanding payment and stating that if the notice is not complied with the Shares may be sold.

24.3    To give effect to any such sale the Directors may authorise any person to execute an instrument of Transfer of the Shares sold to, or in accordance with the directions of, the purchaser.  The purchaser or such purchaser's nominee shall be registered as the holder of the Shares comprised in any such Transfer, and the purchaser shall not be bound to see to the application of the purchase money, nor shall the purchaser's title to the Shares be affected by any irregularity or invalidity in the sale or the exercise of the Company's power of sale under these Articles.

24.4    The net proceeds of such sale after payment of costs, shall be applied in payment of such part of the amount in respect of which the lien exists as is presently payable and any balance shall (subject to a like lien for sums not presently payable as existed upon the Shares before the sale) be paid to the person entitled to the Shares at the date of the sale.

## 25    Amendments of Memorandum and Articles and Alteration of Capital

25.1    The Company may, by Ordinary Resolution:

(a)    increase its share capital by such sum and with such rights, priorities and privileges annexed thereto, as the resolution shall prescribe;

(b)    consolidate and divide all or any of its share capital into Shares of larger amount than its existing Shares;

(c)    by subdivision of its existing Shares or any of them divide the whole or any part of its share capital into Shares of smaller amount than is fixed by the Memorandum; and

(d)    cancel any Shares that at the date of the passing of the resolution have not been taken or agreed to be taken by any person.

25.2    All new Shares created in accordance with the provisions of the preceding Article shall be subject to the same provisions of these Articles with reference to liens, Transfer, transmission and otherwise as the Shares in the original share capital.

25.3    Subject to the provisions of the Statute and the provisions of these Articles as regards the matters to be dealt with by Ordinary Resolution the Company may, by Special Resolution:

(a)    change its name;

(b)    alter or add to these Articles;



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00561**

(c)     alter or add to the Memorandum with respect to any objects, powers or other matters specified therein; and

(d)     reduce its share capital or any capital redemption reserve fund.

## 26     Registered Office

Subject to the provisions of the Statute, the Company may by resolution of the Directors change the location of its Registered Office.  The Company may, in addition to its Registered Office, maintain such other offices or places of business as the Directors determine.

## 27     General Meetings

27.1    All general meetings other than annual general meetings shall be called extraordinary general meetings.  The Directors may call general meetings.

27.2    The Company may but shall not be obliged to hold a general meeting in each year as its annual general meeting, and shall specify the meeting as such in the notice calling it.   Any annual general meeting shall be held at such time and place as the Directors shall determine.

## 28     Notice of General Meetings

28.1    At least five Business Days' notice shall be given of any general meeting.  Every notice shall be exclusive of the day on which it is given or deemed to be given and of the day on which the meeting is to be held and shall specify the place, the day and the hour of the meeting and the general nature of the business and shall be given in the manner hereinafter mentioned or in such other manner if any as may be prescribed by the Company, provided that a general meeting of the Company shall, whether or not the notice specified in this Article has been given and whether or not the provisions of these Articles regarding general meetings have been complied with, be deemed to have been duly convened if it is so agreed:

(a)     in the case of an annual general meeting, by all the Members entitled to attend and vote thereat; and

(b)     in the case of an extraordinary general meeting, by a majority in number of the Members having the right to attend and vote at the meeting, being a majority together holding not less than ninety five per cent. in par value of the Shares giving that right.

28.2    The accidental omission to give notice of a general meeting to, or the non receipt of notice of a meeting by, any person entitled to receive notice thereof shall not invalidate the proceedings of that meeting.

## 29     Proceedings at General Meetings

29.1    No business shall be transacted at any general meeting unless a quorum is present. A quorum shall be one or more Members (present in person, by proxy or authorised corporate

SFC/690420-000001/33202513v4

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00562**

representative, as the case may be) entitled to attend and vote and representing not less than twenty per cent. in par value of all of the Shares in issue and carrying the right to vote at the meeting.

29.2    A person may, with the consent of the Directors, participate at a general meeting by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other.  Participation by a person in a general meeting in this manner is treated as presence in person at that meeting.

29.3    A resolution (including a Special Resolution) in writing (in one or more counterparts) signed by all Members for the time being entitled to receive notice of and to attend and vote at general meetings (or, being corporations or other non-natural persons, signed by their duly authorised representatives) shall be as valid and effective as if the resolution had been passed at a general meeting of the Company duly convened and held.

29.4    If a quorum is not present within half an hour from the time appointed for the meeting or if during such a meeting a quorum ceases to be present, the meeting, if convened upon the requisition of Members, shall be dissolved and in any other case it shall stand adjourned to the same day in the next week at the same time and place or to such other day, time or such other place as the Directors may determine, and if at the adjourned meeting a quorum is not present within half an hour from the time appointed for the meeting the Members present shall be a quorum.

29.5    The chairman, if any, of the board of Directors shall preside as chairman at every general meeting of the Company, or if there is no such chairman, or if the chairman shall not be present within fifteen minutes after the time appointed for the holding of the meeting, or is unwilling to act, the Directors present shall elect one of their number to be chairman of the meeting.

29.6    If no Director is willing to act as chairman, or if no Director is present within fifteen minutes after the time appointed for holding the meeting, the Members present shall choose one of their number to be chairman of the meeting.

29.7    The chairman may, with the consent of a meeting at which a quorum is present (and shall if so directed by the meeting) adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.  When a general meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.  Otherwise it shall not be necessary to give any such notice.

29.8    A resolution put to the vote of a meeting shall be decided on a show of hands unless before, or on the declaration of the result of, the show of hands, the chairman or any Member present in person or by proxy (or in the case of a non-natural person, by its duly authorised representative or by proxy) demands a poll.

29.9    Unless a poll is duly demanded a declaration by the chairman that a resolution has been carried or carried unanimously, or by a particular majority, or lost or not carried by a particular majority,

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00563**

an entry to that effect in the minutes of the proceedings of the meeting shall be conclusive evidence of that fact without proof of the number or proportion of the votes recorded in favour of or against such resolution.

29.10 The demand for a poll may be withdrawn.

29.11 Except on a poll demanded on the election of a chairman or on a question of adjournment, a poll shall be taken as the chairman directs, and the result of the poll shall be deemed to be the resolution of the general meeting at which the poll was demanded.

29.12 A poll demanded on the election of a chairman or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the general meeting directs, and any business other than that upon which a poll has been demanded or is contingent thereon may proceed pending the taking of the poll.

29.13 In the case of an equality of votes, whether on a show of hands or on a poll, the chairman shall not be entitled to a second or casting vote.

## 30 Votes of Members

30.1 Subject to any rights or restrictions attached to any Shares, on a show of hands every Member holding Shares carrying the right to vote on the matter in question who (being an individual) is present in person or by proxy or (if a corporation or other non-natural person) is present by its duly authorised representative or by proxy, shall have one vote and on a poll every such Member shall have one vote for every Share of which he is the holder.

30.2 In the case of joint holders of record, the vote of the senior holder who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders. Seniority among joint holders shall be determined by the order in which the names of the holders stand in the Register of Members.

30.3 A Member of unsound mind, or in respect of whom an order has been made by any court or authority having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by the Member's committee, receiver, curator bonis, or other similar person appointed on such Member's behalf by that court or authority and any such committee, receiver, curator bonis or other similar person may vote by proxy.

30.4 No person shall be entitled to vote at any general meeting unless such person is registered as a Member on the record date for such meeting, nor unless all calls or other monies then payable by such person in respect of such Shares have been paid.

30.5 No objection shall be raised to the qualification of any voter except at the general meeting or adjourned general meeting at which the vote objected to is purported to be given or tendered and every vote not disallowed at the meeting shall be valid. Any objection made in due time shall be referred to the chairman whose decision shall be final and conclusive.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00564**

30.6    On a poll or on a show of hands votes may be cast either personally or by proxy. A Member may appoint more than one proxy or the same proxy under one or more instruments to attend and vote at a meeting. Where a Member appoints more than one proxy the instrument of proxy shall state which proxy is entitled to vote on a show of hands.

30.7    A Member holding more than one Share need not cast the votes in respect of its Shares in the same way on any resolution and therefore may vote a Share or some or all such Shares either for or against a resolution and/or abstain (any such abstentions to count neither for nor against the resolution) from voting a Share or some or all of the Shares and, subject to the terms of the instrument appointing it, a proxy appointed under one or more instruments may vote a Share or some or all of the Shares in respect of which such proxy is appointed either for or against a resolution and/or abstain from voting.

## 31    Proxies

31.1    The instrument appointing a proxy shall be in writing, be executed under the hand of the appointor or of such appointor's attorney duly authorised in writing or, if the appointor is a corporation or other non-natural person, under the hand of an officer or other person duly authorised for that purpose.  A proxy need not be a Member of the Company.

31.2    The Directors may, in the notice convening any meeting or adjourned meeting, or in an instrument of proxy sent out by the Company, specify the place and the time (being not later than the time for holding the meeting or adjourned meeting to which the proxy relates) at which the instrument appointing a proxy shall be deposited.  In the absence of any such direction from the Directors in the notice convening any meeting or adjourned meeting, the instrument appointing a proxy shall be deposited at the Registered Office not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote.

31.3    The chairman may in any event, at the chairman's discretion, declare that an instrument of proxy shall be deemed to have been duly deposited.  An instrument of proxy that is not deposited in the manner permitted and which has not been declared to have been duly deposited by the chairman, shall be invalid.

31.4    The instrument appointing a proxy may be in any usual or common form and may be incorporated within any subscription agreement or other document signed by or on behalf of the Member.  An instrument appointing a proxy may be expressed to be for a particular meeting or any adjournment thereof or generally until revoked.  An instrument appointing a proxy shall be deemed to include the power to demand or join or concur in demanding a poll.

31.5    Votes given in accordance with the terms of an instrument of proxy shall be valid notwithstanding the previous death or insanity of the principal or revocation of the proxy or of the authority under which the proxy was executed, or the Transfer of the Share in respect of which the proxy is given unless notice in writing of such death, insanity, revocation or Transfer was received by the



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

28

**Appx. 00565**

Company at the Registered Office before the commencement of the general meeting, or adjourned meeting at which it is sought to use the proxy.

## 32 Corporate Members

Any corporation or other non-natural person which is a Member of the Company may in accordance with its constitutional documents, or in the absence of such provision by resolution of its directors or other governing body, authorise such person as it thinks fit to act as its representative at any meeting of the Company or of any Class of Members, and the person so authorised shall be entitled to exercise the same powers on behalf of the corporation which such person represents as the corporation could exercise if it were an individual Member.

## 33 Shares Beneficially Owned by the Company

Shares of the Company that are beneficially owned by the Company shall not be voted, directly or indirectly, at any meeting and shall not be counted in determining the total number of outstanding Shares at any given time.

## 34 Directors

There shall be a board of Directors consisting of not less than one person (exclusive of alternate Directors) provided however that the Company may from time to time by Ordinary Resolution increase or reduce the limits in the number of Directors. The first Directors of the Company shall be determined in writing by, or appointed by a resolution of, the Subscriber.

## 35 Powers of Directors

35.1 Subject to the provisions of the Statute, the Memorandum and the Articles and to any directions given by Special Resolution, the business of the Company shall be managed by the Directors who may exercise all the powers of the Company. No alteration of the Memorandum or these Articles and no such direction shall invalidate any prior act of the Directors which would have been valid if that alteration had not been made or that direction had not been given. A duly convened meeting of Directors at which a quorum is present may exercise all powers exercisable by the Directors.

35.2 All cheques, promissory notes, drafts, bills of exchange and other negotiable instruments and all receipts for monies paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed as the case may be in such manner as the Directors shall determine by resolution.

35.3 The Directors may exercise all the powers of the Company to borrow money and to mortgage or charge its undertaking, property and uncalled capital or any part thereof and to issue debentures, debenture stock, mortgages, bonds and other such securities whether outright or as security for any debt, liability or obligation of the Company or of any third party. Notwithstanding the foregoing, the Directors shall not exercise the powers specified in this Article in breach of any limits or restrictions specified in the Offering Memorandum.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00566**

**36    Appointment and Removal of Directors**

36.1    The Company may, by Ordinary Resolution, appoint any person to be a Director and may, by Ordinary Resolution, remove any Director.

36.2    The Directors may appoint any person to be a Director, either to fill a vacancy or as an additional Director provided that the appointment does not cause the number of Directors to exceed any number fixed by or in accordance with these Articles as the maximum number of Directors.

**37    Vacation of Office of Director**

The office of a Director shall be vacated if:

(a)    the Director gives notice in writing to the Company that such Director resigns the office of Director;

(b)    the Director is absent (without being represented by proxy or an alternate Director appointed by such Director) from three consecutive meetings of the board of Directors without special leave of absence from the Directors, and they pass a resolution that such Director has by reason of such absence vacated office;

(c)    the Director dies, becomes bankrupt or makes any arrangement or composition with such Director's creditors generally;

(d)    the Director is or becomes of unsound mind;

(e)    the Director ceases to be a Director by virtue of, or is prohibited from being a Director by, an order made pursuant to any law or regulation binding on the Company; or

(f)    all the other Directors of the Company (being not less than two in number) resolve that such Director should be removed as a Director.

**38    Proceedings of Directors**

38.1    The quorum for the transaction of the business of the Directors may be fixed by the Directors, and unless so fixed shall be two if there are two or more Directors, and shall be one if there is only one Director.  A person who holds office as an alternate Director shall, if such person's appointor is not present, be counted in the quorum.  A Director who also acts as an alternate Director shall, if such Director's appointor is not present, count twice towards the quorum.

38.2    Subject to the provisions of these Articles, the Directors may regulate their proceedings as they think fit.  Questions arising at any meeting shall be decided by a majority of votes.  In the case of an equality of votes, the chairman shall not have a second or casting vote.  A Director who is also an alternate Director shall be entitled in the absence of such Director's appointor to a separate vote on behalf of such Director's appointor in addition to such Director's own vote.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00567**

38.3    A person may participate in a meeting of the Directors or any committee of Directors by conference telephone or other communications equipment by means of which all the persons participating in the meeting can communicate with each other at the same time. Participation by a person in a meeting in this manner is treated as presence in person at that meeting.  Unless otherwise determined by the Directors, the meeting shall be deemed to be held at the place where the chairman is located at the start of the meeting.

38.4    A resolution in writing (in one or more counterparts) signed by all the Directors or all the members of a committee of Directors (an alternate Director being entitled to sign such a resolution on behalf of such alternate Director's appointor) shall be as valid and effectual as if it had been passed at a meeting of the Directors, or committee of Directors as the case may be, duly convened and held.

38.5    A Director or alternate Director may, or other officer of the Company at the direction of a Director or alternate Director may call a meeting of the Directors by at least two days' notice in writing to every Director and alternate Director which notice shall set forth the general nature of the business to be considered unless notice is waived by all the Directors (or their alternates) either at, before or after the meeting is held.

38.6    The continuing Directors may act notwithstanding any vacancy in their body, but if and so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors the continuing Directors or Director may act for the purpose of increasing the number of Directors to that number, or of summoning a general meeting of the Company, but for no other purpose.

38.7    The Directors may elect a chairman of their board and determine the period for which the chairman is to hold office; but if no such chairman is elected, or if at any meeting the chairman is not present within five minutes after the time appointed for holding the same, the Directors present may choose one of their number to be chairman of the meeting.

38.8    All acts done by any meeting of the Directors or of a committee of Directors (including any person acting as an alternate Director) shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any Director or alternate Director, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and qualified to be a Director or alternate Director as the case may be.

38.9    A Director but not an alternate Director may be represented at any meetings of the board of Directors by a proxy appointed in writing by such Director.  The proxy shall count towards the quorum and the vote of the proxy shall for all purposes be deemed to be that of the appointing Director.

**39    Presumption of Assent**

A Director who is present at a meeting of the board of Directors at which action on any Company matter is taken shall be presumed to have assented to the action taken unless the Director's dissent shall be entered in the minutes of the meeting or unless the Director shall file such

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00568**

Director's written dissent from such action with the person acting as the chairman or secretary of the meeting before the close or adjournment thereof or shall forward such dissent by personal delivery, courier or registered post to such person immediately after the close or adjournment of the meeting. Such right to dissent shall not apply to a Director who voted in favour of such action.

## 40 Directors' Interests

40.1 A Director may hold any other office or place of profit under the Company (other than the office of Auditor) in conjunction with such Director's office of Director for such period and on such terms as to remuneration and otherwise as the Directors may determine.

40.2 A Director may act alone or by such Director's firm in a professional capacity for the Company and the Director or such Director's firm shall be entitled to remuneration for professional services as if such Director were not a Director or alternate Director.

40.3 A Director or alternate Director of the Company may be or become a director or other officer of or otherwise interested in any company promoted by the Company or in which the Company may be interested as shareholder or otherwise, and no such Director or alternate Director shall be accountable to the Company for any remuneration or other benefits received by such Director or alternate Director as a director or officer of, or from such Director or alternate Director's interest in, such other company.

40.4 No person shall be disqualified from the office of Director or alternate Director or prevented by such office from contracting with the Company, either as vendor, purchaser or otherwise, nor shall any such contract or any contract or transaction entered into by or on behalf of the Company in which any Director or alternate Director shall be in any way interested be or be liable to be avoided, nor shall any Director or alternate Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or transaction by reason of such Director holding office or of the fiduciary relationship thereby established. A Director (or such Director's alternate Director in such Director's absence) shall be at liberty to vote in respect of any contract or transaction in which such Director is interested provided that the nature of the interest of any Director or alternate Director in any such contract or transaction shall be disclosed by such Director at or prior to such Director's consideration and any vote thereon.

40.5 A general notice that a Director or alternate Director is a shareholder, director, officer or employee of any specified firm or company and is to be regarded as interested in any transaction with such firm or company shall be sufficient disclosure for the purposes of voting on a resolution in respect of a contract or transaction in which such Director has an interest, and after such general notice it shall not be necessary to give special notice relating to any particular transaction.

## 41 Minutes

The Directors shall cause minutes to be made in books kept for the purpose of recording all appointments of officers made by the Directors, all proceedings at meetings of the Company or



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00569**

the holders of any Class of Shares and of the Directors, and of committees of Directors including the names of the Directors or alternate Directors present at each meeting.

## 42 Delegation of Directors' Powers

42.1 The Directors may delegate any of their powers to any committee consisting of one or more Directors or such other persons as the Directors may designate. They may also delegate to any managing director or any Director holding any other executive office such of their powers as they consider desirable to be exercised by such managing director or any Director provided that an alternate Director may not act as managing director and the appointment of a managing director shall be revoked forthwith if such managing director ceases to be a Director. Any such appointment may be made subject to any conditions the Directors may impose, and either collaterally with or to the exclusion of their own powers, and may be revoked or altered. Subject to any such conditions, the proceedings of a committee of Directors shall be governed by these Articles regulating the proceedings of Directors, so far as they are capable of applying.

42.2 The Directors may establish any committees, local boards or agencies or appoint any person to be a manager or agent for managing the affairs of the Company and may appoint any person to be a member of such committees or local boards. Any such appointment may be made either collaterally with or to the exclusion of the Directors' powers, shall be subject to any conditions the Directors may impose, and may be revoked or altered. Subject to any such conditions, the proceedings of any such committee, local board or agency shall be governed by these Articles regulating the proceedings of Directors, so far as they are capable of applying.

42.3 The Directors may by power of attorney or otherwise appoint any company, firm, person or body of persons to be the attorney or authorised signatory of the Company for such purpose and with such powers, authorities and discretions (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such powers of attorney or other appointment may contain such provisions for the protection and convenience of persons dealing with any such attorneys or authorised signatories as the Directors may think fit and may also authorise any such attorney or authorised person to delegate all or any of the powers, authorities and discretions vested in such attorney or authorised person.

42.4 The Directors may appoint such officers as they consider necessary on such terms, at such remuneration (if any) and to perform such duties, and subject to such provisions as to disqualification and removal as the Directors may think fit. Unless otherwise specified in the terms of such officer's appointment an officer may be removed by resolution of the Directors or Members.

## 43 Alternate Directors

43.1 Any Director (other than an alternate Director) may by written notice to the Company appoint any other Director, or any other person willing to act, to be an alternate Director and by written notice to the Company may remove from office an alternate Director so appointed by the Director.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00570**

43.2 An alternate Director shall be entitled to receive notice of all meetings of Directors and of meetings of committees of Directors of which such alternate Director's appointor is a member, to attend and vote at every such meeting at which the Director appointing such alternate Director is not personally present, and generally to perform all the functions of such alternate Director's appointor as a Director in such Director's absence.

43.3 An alternate Director shall cease to be an alternate Director if such alternate Director's appointor ceases to be a Director.

43.4 Any appointment or removal of an alternate Director shall be by notice to the Company signed by the Director making or revoking the appointment or in any other manner approved by the Directors.

43.5 Subject to the provisions of the Articles, an alternate Director shall be deemed for all purposes to be a Director and shall alone be responsible for such alternate Director's own acts and defaults and shall not be deemed to be the agent of the Director appointing such alternate Director.

## 44 No Minimum Shareholding for Directors

The Company in general meeting may fix a minimum shareholding required to be held by a Director, but unless and until such a shareholding qualification is fixed a Director shall not be required to hold Shares.

## 45 Remuneration of Directors

45.1 The remuneration to be paid to the Directors, if any, shall be such remuneration as the Directors shall determine. The Directors shall also be entitled to be paid all travelling, hotel and other expenses properly incurred by them in connection with their attendance at meetings of Directors or committees of Directors, or general meetings of the Company, or separate meetings of the holders of any Class of Shares or debentures of the Company, or otherwise in connection with the business of the Company, or to receive a fixed allowance in respect thereof as may be determined by the Directors, or a combination partly of one such method and partly the other.

45.2 The Directors may by resolution approve additional remuneration to any Director for any services other than such Director's ordinary routine work as a Director. Any fees paid to a Director who is also counsel to the Company, or otherwise serves it in a professional capacity, shall be in addition to such Director's remuneration as a Director.

## 46 Seal

The Company may, if the Directors so determine, have a Seal, which shall only be used by the authority of the Directors or of a committee of the Directors authorised by the Directors. Every instrument to which the Seal has been affixed shall be signed by at least one person who shall be either a Director or some officer or other person authorised by the Directors for the purpose.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00571**

**47      Dividends, Distributions and Reserves**

47.1    Subject to the Statute, these Articles, and the special rights attaching to Participating Shares of any Class and/or Series, the Directors may, in their absolute discretion, declare dividends and distributions on Participating Shares of any Class and/or Series in issue and authorise payment of the dividends or distributions out of the relevant Separate Account in respect of such Participating Shares.  No dividend or distribution shall be paid except out of the realised or unrealised profits of the Company, or out of the share premium account attributable to Participating Shares of the Class and/or Series in respect of which the dividend or distribution is proposed to be paid, or as otherwise permitted by law.

47.2    Except as otherwise provided by the rights attached to Participating Shares, or as otherwise determined by the Directors, all dividends and distributions in respect of Participating Shares of a particular Class and/or Series shall be declared and paid according to Net Asset Value of the Participating Shares of the Class and/or Series that a Member holds. If any Participating Share is issued on terms providing that it shall rank for dividend or distribution as from a particular date, that Participating Share shall rank for dividend or distribution accordingly.

47.3    The Directors may deduct and withhold from any dividend or distribution otherwise payable to any Member all sums of money (if any) then payable by it to the Company on account of calls or otherwise or any monies which the Company is obliged by law to pay to any taxing or other authority.

47.4    Under no circumstances may the assets (or the income derived from such assets) attributed to a Separate Account in respect of any Class and/or Series be used to pay a dividend in respect of a Separate Account that is attributed to any other Class and/or Series.

47.5    The Directors may declare that any dividend or distribution be paid wholly or partly by the distribution of specific assets and in particular of shares, debentures or securities of any other company or in any one or more of such ways and, where any difficulty arises in regard to such distribution, the Directors may settle the same as they think expedient and in particular may issue fractional Shares and fix the value for distribution of such specific assets or any part thereof and may determine that cash payments shall be made to any Members upon the basis of the value so fixed in order to adjust the rights of all Members and may vest any such specific assets in trustees as may seem expedient to the Directors.

47.6    Any dividend, distribution, interest or other monies payable in cash in respect of Participating Shares may be paid by wire transfer to the holder or by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of the holder who is first named on the Register of Members or to such person and to such address as such holder or joint holders may in writing direct.  Every such cheque or warrant shall (unless the Directors in their sole discretion otherwise determine) be made payable to the order of the person to whom it is sent.  Any one of two or more joint holders may give effectual receipts for any dividends, bonuses, or other monies payable in respect of the Participating Share held by them as joint holders.

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00572**

47.7    Any dividend or distribution which cannot be paid to a Member and/or which remains unclaimed after six months from the date of declaration of such dividend or distribution may, in the discretion of the Directors, be paid into a separate account in the Company's name, provided that the Company shall not be constituted as a trustee in respect of that account and the dividend or distribution shall remain as a debt due to the Member.  Any dividend or distribution which remains unclaimed after a period of six years from the date of declaration of such dividend or distribution shall be forfeited and shall revert to the Company.

47.8    No dividend or distribution shall bear interest against the Company.

**48      Capitalisation**

The Directors may capitalise any sum standing to the credit of any of the Company's reserve accounts (including share premium account and capital redemption reserve) or any sum standing to the credit of profit and loss account or otherwise available for distribution and to appropriate such sum to Members of any Class and/or Series in the proportions in which such sum would have been divisible amongst them had the same been a distribution of profits by way of dividend and to apply such sum on their behalf in paying up in full unissued Participating Shares for allotment and distribution credited as fully paid-up to and amongst them in the proportion aforesaid.  In such event the Directors shall do all acts and things required to give effect to such capitalisation, with full power to the Directors to make such provisions as they think fit for the case of Participating Shares becoming distributable in fractions (including provisions whereby the benefit of fractional entitlements accrue to the Company rather than to the Members concerned). The Directors may authorise any person to enter into an agreement with the Company, on behalf of all of the Members interested, providing for such capitalisation and matters incidental thereto and any agreement made under such authority shall be effective and binding on all concerned.

**49      Books of Account**

49.1    The Directors shall cause proper books of account (including, where applicable, material underlying documentation including contracts and invoices) to be kept with respect to all sums of money received and expended by the Company and the matters in respect of which the receipt or expenditure takes place, all sales and purchases of goods by the Company and the assets and liabilities of the Company.  Such books of account must be retained for a minimum period of five years from the date on which they are prepared.  Proper books shall not be deemed to be kept if there are not kept such books of account as are necessary to give a true and fair view of the state of the Company's affairs and to explain its transactions.

49.2    The Directors shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Members not being Directors and no Member (not being a Director) shall have any right of inspecting any account or book or document of the Company except as conferred by Statute, or authorised by the Directors or by the Company in general meeting.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00573**

49.3 The Directors may from time to time cause to be prepared and to be laid before the Company in general meeting profit and loss accounts, balance sheets, group accounts (if any) and such other reports and accounts as may be required by law.

## 50 Audit

50.1 The Directors may appoint an Auditor of the Company who shall hold office on such terms as the Directors determine.

50.2 Every Auditor of the Company shall have a right of access at all times to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and officers of the Company such information and explanation as may be necessary for the performance of the duties of the Auditor.

50.3 Any Auditors of the Company shall, if so required by the Directors, make a report on the accounts of the Company during their tenure of office at the next annual general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an ordinary company, and at the next extraordinary general meeting following their appointment in the case of a company which is registered with the Registrar of Companies as an exempted company, and at any other time during their term of office, upon request of the Directors or any general meeting of the Members.

## 51 Notices

51.1 Notices shall be in writing and may be given by the Company to any Member either personally or by sending it by courier, post, cable, telex, fax or e-mail to the Member or to the address as shown in the Register of Members (or where the notice is given by e-mail by sending it to the e-mail address provided by such Member). Any notice, if posted from one country to another, is to be sent airmail.

51.2 Where a notice is sent by courier, service of the notice shall be deemed to be effected by delivery of the notice to a courier company, and shall be deemed to have been received on the third day (not including Saturdays or Sundays or public holidays) following the day on which the notice was delivered to the courier. Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, pre paying and posting a letter containing the notice, and shall be deemed to have been received on the fifth day (not including Saturdays or Sundays or public holidays in the Cayman Islands) following the day on which the notice was posted. Where a notice is sent by cable, telex or fax, service of the notice shall be deemed to be effected by properly addressing and sending such notice and shall be deemed to have been received on the same day that it was transmitted. Where a notice is given by e-mail service shall be deemed to be effected by transmitting the e-mail to the e-mail address provided by the intended recipient and shall be deemed to have been received on the same day that it was sent, and it shall not be necessary for the receipt of the e-mail to be acknowledged by the recipient.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00574**

51.3 A notice may be given by the Company to the person or persons which the Company has been advised are entitled to a Share or Shares in consequence of the death or bankruptcy of a Member in the same manner as other notices which are required to be given under these Articles and shall be addressed to them by name, or by the title of representatives of the deceased, or trustee of the bankrupt, or by any like description at the address supplied for that purpose by the persons claiming to be so entitled, or at the option of the Company by giving the notice in any manner in which the same might have been given if the death or bankruptcy had not occurred.

51.4 Notice of every general meeting shall be given in the manner authorised by these Articles to every person shown as holding Shares carrying an entitlement to receive such notice in the Register of Members on the record date for such meeting except that in the case of joint holders the notice shall be sufficient if given to the joint holder first named in the Register of Members and every person upon whom the ownership of a Share devolves by reason of such person being a legal personal representative or a trustee in bankruptcy of a Member where the Member but for such Member's death or bankruptcy would be entitled to receive notice of the meeting, and no other person shall be entitled to receive notices of general meetings.

## 52 Winding Up

52.1 If the Company shall be wound up the liquidator shall apply the assets of the Company in satisfaction of creditors' claims in such manner and order as such liquidator thinks fit. The liquidator shall in relation to the assets available for distribution among the Members make in the books of the Company such transfers thereof to and from Separate Accounts as may be necessary in order that the effective burden of such creditors' claims may be shared among the holders of Participating Shares of different Classes and/or Series in such proportions as the liquidator in such liquidator's absolute discretion may think equitable.

52.2 Subject to the special rights attaching to Participating Shares of any Class or Series, the balance shall then be applied in the following priority:

(a) first, to the holders of Management Shares, an amount equal to the par value of such Management Shares; and

(b) second, the balance shall be paid to the holders of Participating Shares in proportion to the Net Asset Value of Participating Shares held, subject to a deduction from those Participating Shares in respect of which there are monies due, of all monies due to the Company for unpaid calls, or otherwise.

52.3 If the Company shall be wound up (whether the liquidation is voluntary or by or under the supervision of the Court) the liquidator may, with the authority of a resolution or resolutions passed by the holders of Participating Shares (whether as a whole or at separate Class meetings), divide among the Members in specie the whole or any part of the assets of the Company, and whether or not the assets shall consist of property of one kind or shall consist of property of different kinds, and may for such purposes set such value as the liquidator deems fair upon any one or more class or classes of property, and may determine how such division shall be

Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00575**

carried out as between the Members or different classes of Members.  The liquidator may, with the like authority, vest any part of the assets in trustees upon such trusts for the benefit of Members as the liquidator, with the like authority, shall think fit, and the liquidation of the Company may be closed and the Company dissolved, but so that no Member shall be compelled to accept any shares or other property in respect of which there is a liability.

## 53    Indemnity and Insurance

53.1    Every Director and officer of the Company (which for the avoidance of doubt, shall not include any Auditor), together with every former Director and former officer of the Company (each an "**Indemnified Person**") shall be indemnified out of the assets of the Company against any liability, action, proceeding, claim, demand, costs, damages or expenses, including legal expenses, whatsoever which they or any of them may incur as a result of any act or failure to act in carrying out their functions other than such liability (if any) that they may incur by reason of their own actual fraud, wilful default or Gross Negligence.  No Indemnified Person shall be liable to the Company for any loss or damage incurred by the Company as a result (whether direct or indirect) of the carrying out of their functions unless that liability arises through the actual fraud, wilful default or Gross Negligence of such Indemnified Person.  No person shall be found to have committed actual fraud, wilful default or Gross Negligence under this Article unless or until a court of competent jurisdiction shall have made a finding to that effect.

53.2    The Company shall advance to each Indemnified Person reasonable attorneys' fees and other costs and expenses incurred in connection with the defence of any action, suit, proceeding or investigation involving such Indemnified Person for which indemnity will or could be sought.  In connection with any advance of any expenses hereunder, the Indemnified Person shall execute an undertaking to repay the advanced amount to the Company if it shall be determined by final judgment or other final adjudication that such Indemnified Person was not entitled to indemnification pursuant to this Article.  If it shall be determined by a final judgment or other final adjudication that such Indemnified Person was not entitled to indemnification with respect to such judgment, costs or expenses, then such party shall not be indemnified with respect to such judgment, costs or expenses and any advancement shall be returned to the Company (without interest) by the Indemnified Person.

53.3    The Directors, on behalf of the Company, may purchase and maintain insurance for the benefit of any Director or other officer of the Company against any liability which, by virtue of any rule of law, would otherwise attach to such person in respect of any negligence, default, breach of duty or breach of trust of which such person may be guilty in relation to the Company.

53.4    Pursuant to the foregoing provisions, the Company may enter into a service or other agreement with any Director (or any entity providing one or more persons to the Company to act as Directors) upon such terms and conditions (including as to indemnification and exculpation) as the Directors shall, in their absolute discretion, determine.  Any such indemnification and exculpation provisions may be specified to a standard equal to or more favourable (but not less favourable) to the Company than any standard specified in these Articles.



Uploaded: 03-Nov-2014 14:05 EST
Filed: 05-Nov-2014 18:02 EST

**Appx. 00576**

**54 Disclosure**

If required to do so under the laws of any jurisdiction to which the Company, the Investment Manager, the Administrator or any other service provider is subject, or in compliance with the rules of any stock exchange upon which the Company's Shares are listed, or to ensure the compliance by any person with any anti-money laundering law in any relevant jurisdiction, any Director, Officer, the Investment Manager, the Administrator or Auditor of the Company shall be entitled to release or disclose any information in its possession regarding the affairs of the Company or a Member including, without limitation, any information contained in the Register of Members or subscription documentation of the Company relating to any Member.

**55 Financial Year**

Unless the Directors otherwise prescribe, the financial year of the Company shall end on 31st December in each year and, following the year of incorporation, shall begin on 1st January in each year.

**56 Transfer by way of Continuation**

The Company shall, subject to the provisions of the Statute and with the approval of a Special Resolution, have the power to register by way of continuation as a body corporate under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands.

**57 Mergers and Consolidations**

The Company shall, with the approval of a Special Resolution, have the power to merge or consolidate with one or more constituent companies (as defined in the Statute), upon such terms as the Directors may determine.



*Uploaded: 03-Nov-2014 14:05 EST*
*Filed: 05-Nov-2014 18:02 EST*

**Appx. 00577**

# EXHIBIT 16

**THIRD AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT**

**by and among**

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

**HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.**

**and**

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

**November 1, 2013**

**THIS THIRD AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT** (this "***Agreement***"), is dated effective as of November 1, 2014, by and among:

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**, a Cayman Islands exempted company (the "***Offshore Fund***");

**HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.**, a Delaware limited partnership (the "***Domestic Fund***," and together with the Offshore Fund, the "***Clients***") acting through its general partner, Highland Multi Strategy Credit Fund GP, L.P. a Delaware limited partnership (the "***General Partner***"); and

**HIGHLAND CAPITAL MANAGEMENT, L.P.**, a Delaware limited partnership (the "***Investment Manager***").

## PRELIMINARY STATEMENTS

A.      The Domestic Fund previously retained the Investment Manager as its investment manager pursuant to an investment management agreement dated as of December 1, 2005, as amended and restated as of December 29, 2005 and as further amended and restated as of September 1, 2006 (the "***Original Agreement***").

B.      The Offshore Fund will invest all of its investable assets in the Domestic Fund.  The Investment Manager will exercise no discretion with respect to the investment of the assets of the Offshore Fund and will serve merely as a steward thereof.  The Investment Manager will conduct its investment activities at the Domestic Fund level as the investment manager to the Domestic Fund.

C.      The Domestic Fund desires to continue to retain the Investment Manager and the Offshore Fund desires to retain the Investment Manager to provide certain discretionary advisory services relating to the assets and liabilities of the Domestic Fund and the Investment Manager desires to accept such appointment, all subject to the terms and conditions hereinafter set forth.

## AGREEMENT

This Agreement amends and restates in its entirety the Original Agreement as set forth below.  For good and valuable consideration, the sufficiency and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

**1.      Appointment.**

The Clients hereby appoint the Investment Manager as investment manager with respect to the assets and liabilities of the Domestic Fund and the Investment Manager hereby accepts such appointment and agrees to perform its obligations in accordance with the terms hereof and of the Fourth Amended and Restated Limited Partnership Agreement of the Domestic Fund, dated effective as of November 1, 2014, as amended from time to time (the "***Domestic Fund Partnership Agreement***"), and the investment objectives, policies,

guidelines and restrictions that from time to time are set forth in the Governing Documents of the Clients as applicable. "***Governing Documents***" mean, with respect to:

(a)     the Offshore Fund:  the Memorandum and Articles of Association of the Offshore Fund, as amended from time to time, and the Confidential Private Offering Memorandum dated November 2014, as may be supplemented from time to time (the "***POM***");

(b)     the Domestic Fund: the Domestic Fund Partnership Agreement and the Private Placement Memorandum dated November 2014, as may be supplemented from time to time (the "***PPM***").

**2.      Authority and Duties of the Investment Manager.**

(a)     All of the investable assets of the Offshore Fund must be invested in, and the investment program of the Offshore Fund is to be conducted by the Investment Manager through, the Domestic Fund.  The Investment Manager will exercise no discretion with respect to the investment of the assets of the Offshore Fund and the investment activities of the Investment Manager will be conducted at the Domestic Fund level as the investment manager to the Domestic Fund.

(b)     The Domestic Fund's investment program will be conducted by the Investment Manager in accordance with the PPM.

(c)     The Investment Manager serves as the investment manager to the Domestic Fund and in that capacity has full discretion and authority, without obtaining the prior approval of any officer or other agent of the Domestic Fund:

(i)      to continuously supervise the investment program of the Domestic Fund and the composition of its investment portfolio including, without limitation, determining from time to time what investments will be purchased, retained or sold, what contracts will be entered into by the Domestic Fund and what portion of its assets will be retained as cash, and to engage consultants and analysts in connection therewith; to cause the Domestic Fund to purchase or sell any asset, enter into any other investment-related transaction, including (directly or through subsidiaries or affiliates of the Domestic Fund) borrowing money, entering into swap transactions, lending securities, exercising control over a company, exercising voting or approval rights and selecting brokers and dealers for execution of portfolio transactions; and to undertake to do anything incidental to the foregoing to facilitate the performance of its obligations hereunder;

(ii)     to invest within or outside the United States of America in "Investments" (as defined in, and subject to the provisions of, the Domestic Fund Limited Partnership Agreement);

(iii)    to effect any and all transactions in Investments, including collateralized loan obligations, asset-backed securities, commodities, total return swaps,

3

credit default swaps, synthetic securities and other financial instruments and assets (and options and other contracts thereon), and everything connected therewith in the broadest sense, including, without limitation, the full discretion and authority to make short sales, to purchase or write options (including uncovered options) and to trade on margin;

(iv)     to, on behalf of the Clients, exercise all rights, powers, privileges and other incidents of ownership or possession with respect to the Investments and other property and funds held or owned by the Domestic Fund, including without limitation the right to possess, lend, transfer, mortgage, pledge or otherwise deal in, and to secure the payment of obligations of the Domestic Fund by mortgage upon, or hypothecation or pledge of, all or part of the property of the Domestic Fund, whether at the time owned or thereafter acquired, and to vote Investments, participate in arrangements with creditors, institute and settle or compromise suits and administrative proceedings and other similar matters;

(v)      to select brokers, dealers, banks and other intermediaries by or through whom such transactions will be executed or carried out and to open, maintain and close accounts with brokers, which power shall include the authority to issue all instructions and authorizations to brokers regarding securities and money therein and to cause the Domestic Fund to pay, or authorize the payment and reimbursement of, brokerage commissions;

(vi)     to open, maintain and close bank accounts and authorize the drawing of checks or other orders for the payment of monies;

(vii)    to borrow or raise monies or utilize any other forms of leverage and to issue, accept, endorse and execute promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non- negotiable instruments and evidences of indebtedness and otherwise to utilize any lines of credit, credit balances or overdraft privileges available to the Domestic Fund;

(viii)   to value the Client's assets as of the close of each fiscal period and any other date selected by the respective Client;

(ix)     to direct any administrator of the Clients, banks, brokers or other custodians to effect deliveries of funds or assets, but only in the course of effecting portfolio transactions for the account of the Clients;

(x)      to remove or replace any administrator of the Clients and/or any accountant of the Clients at any time; and

(xi)     to make and execute all such documents and to take all such other actions as the Investment Manager considers necessary or appropriate to carry out its investment management duties hereunder.

4

(d)     In furtherance of the foregoing, the Board of Directors, on behalf of the Offshore Fund, and the General Partner, on behalf of the Domestic Fund, has delegated certain rights and responsibilities with respect to the operation of their respective partnerships and funds to the Investment Manager, as more fully set forth in the Governing Documents.

(e)     Each Client hereby designates the Investment Manager as the commodity pool operator (the "**CPO**") for such Client with complete authority and responsibility for compliance with the U.S. Commodity Exchange Act and the regulations promulgated thereunder, including to perform any and all duties required of a CPO (i) that is exempt from registration under the regulations of the U.S. Commodity Futures Trading Commission (the "**CFTC**") and (ii) that is in compliance with CFTC Rule 4.13(a)(3), including the filing of a notice of exemption under said Rule 4.13(a)(3) with the CFTC.

(f)     Additionally, each of the Clients hereby designates and appoints the Investment Manager as its agent and attorney-in-fact, with full power and authority and without the need for further approval of the Clients (except as may be required by law) to complete and execute all such documents and to take any and all actions that the Investment Manager, in its discretion, may deem advisable to carry out the foregoing with respect to the assets of the Clients; provided, however, that the Investment Manager is not intended to have actual or constructive custody of any assets of the Clients.  In connection with any of the foregoing, the Investment Manager is further authorized to transfer or tender for cash or exchange such assets. In all such purchases, sales or trades the Clients authorize the Investment Manager to act for the Clients, and at their risk, and in their name and on their behalf, in the same manner and with the same force and effect as the Clients might or could do with respect to such purchases, sales or trades without prior consultation with the Clients.  The Clients also appoint the Investment Manager as their agent and attorney-in-fact to vote, and to execute proxies, waivers, consents and other instruments with respect to, the assets of the Clients.

(g)     At the request of a Client, in any wind down of such Client, the Investment Manager will manage the realization of the Client's assets and the distribution thereof to investors.

(h)     In connection with the execution of transactions on behalf of the Domestic Fund, the Domestic Fund hereby acknowledges and agrees that in the course of selecting brokers, dealers, futures commission merchants, banks and financial intermediaries to effect transactions for the Domestic Fund's account, the Investment Manager may agree to such commissions, fees and other charges on behalf of the Domestic Fund's account as it may deem reasonable in the circumstances, taking into consideration all such factors as the Investment Manager deems relevant, including the following: the ability to effect prompt and reliable executions at favorable prices; the operational efficiency with which transactions are effected; the financial strength, integrity and stability of the broker; the quality, comprehensiveness and frequency of available research and other services considered to be of value; and

5

the competitiveness of commission rates in comparison with other brokers satisfying the Investment Manager's other selection criteria. It is understood that the costs of such services will not necessarily represent the lowest costs available and that the Investment Manager is under no obligation to combine or arrange orders so as to obtain reduced charges.

3.  **Fees and Expenses.**

(a)    For its services to the Domestic Fund, the Domestic Fund will pay the Investment Manager the Management Fee (as defined in the Domestic Fund Partnership Agreement), calculated and payable monthly in advance. The Investment Manager may waive or reduce the management fees with respect to capital account and capital sub-accounts of the Domestic Fund in its discretion.

(b)    The Clients will pay, or will reimburse the Investment Manager, for all costs and expenses arising in connection with their operations, including without limitation, with respect to the Domestic Fund, all costs and expenses directly related to portfolio investments or prospective investments (whether or not consummated) of the Domestic Fund.

(c)    The Clients will not have their own separate employees or office, and they will not reimburse the Investment Manager for salaries, office rent and other general overhead costs of the Investment Manager. The Investment Manager will pay all of its own operating and overhead costs (except liability insurance) without reimbursement by the Clients. The Investment Manager is entitled to reimbursement from the Clients for any expenses paid by it on behalf of the Clients; provided that, the Investment Manager in its sole discretion may absorb any or all of such expenses incurred on behalf of the Clients. If the Investment Manager incurs any such expenses for the account of the Clients and any Customers (as defined below), the Investment Manager will allocate such expenses among the Clients and each such Customer in proportion to the size of the investment made by each in the activity or entity to which the expense relates, or in such other manner as the Investment Manager in its sole discretion considers fair and reasonable.

4.  **Other Activities and Investments.**

(a)    The Investment Manager is not required to devote its full time to the affairs of the Clients, but must devote such of its time to the business and affairs of the Clients as it may determine, in its discretion exercised in good faith, to be necessary to conduct the affairs of the Clients for the benefit of the Clients, the shareholders of the Offshore Fund and the partners of the Domestic Fund. Subject to this limitation, the Investment Manager, its partners and principals and their affiliates are not precluded from engaging in or owning an interest in other business ventures or investment activities of any kind. It is expressly understood that the Investment Manager and its affiliates may effect investment transactions for their own accounts and for the accounts of other customers (generally, "***Customers***"), and the Clients further understand and agree that nothing herein restricts the ability of the

6

Investment Manager and its affiliates to engage in any such transactions notwithstanding the fact that the Clients may enter into or engage in such transactions so long as such transactions are in the best interests of the Clients.

(b)    The Investment Manager will act in a manner that it considers fair, reasonable and equitable in allocating investment opportunities to the Clients. It is understood that when the Investment Manager determines that it would be appropriate for the Clients and one or more of the Customers to participate in an investment opportunity, the Investment Manager will seek to execute orders for, or otherwise allocate such opportunities to, the Clients and such Customers on an equitable basis. In such situations, the Investment Manager may place orders for the Clients and each Customer simultaneously, and if all such orders are not filled at the same price, the Investment Manager may cause the Clients and each Customer to pay or receive the average of the prices at which such orders were filled for the Clients and all other Customers. If all such orders cannot be fully executed under prevailing market conditions, the Investment Manager may allocate among the Clients and the Customers the investments traded in a manner which the Investment Manager considers equitable, taking into account the size of the order placed for the Clients and each such Customer as well as any other factors which the Investment Manager deems relevant.

**5.    Account and Other Information.**

(a)    The Investment Manager must furnish such information concerning activities undertaken for the account of the Clients as the Clients may reasonably request.

(b)    The Clients agree to keep confidential and not to disclose to any person any information or matter relating to the Clients' investments (other than disclosure to the Clients' shareholders, partners, directors and employees, legal counsel, administrator, registrar and accountant in connection with the preparation and review of financial statements and with the filing of any tax returns or to any other person approved in writing by the Investment Manager (each such person being hereinafter referred to as an "***Authorized Representative***")); provided that the Clients and their Authorized Representatives may make such disclosure to the extent that (x) the information to be disclosed is publicly known at the time of proposed disclosure by the Clients or Authorized Representative, (y) the information otherwise is or becomes legally known to the Clients other than through disclosure by the Investment Manager or (z) such disclosure is required by law or in response to any governmental agency request or in connection with an examination by any regulatory authorities, provided that such agency, regulatory authorities or association is aware of the confidential nature of the information disclosed. Prior to making any disclosure required by law, the Clients will use their best efforts to notify the Investment Manager of such disclosure. Prior to any disclosure to any Authorized Representative, the Clients must advise such Authorized Representative of the obligations set forth in this Section 5(b) and are responsible for any breach of these obligations made by an Authorized Representative.

(c)     The Investment Manager retains, or arranges for the retention of, for a period of at least 5 years, copies of any documents generated or received by the Investment Manager in the ordinary course of business pertaining to the financial condition of the account of the Clients or to the compensation payable to the Investment Manager.  At the request of the Clients, the Investment Manager will afford to the Clients' independent auditors reasonable access to such documents during customary business hours and will permit the Clients' auditors to make copies thereof or extracts therefrom at the expense of the Clients.

**6.     Custody.**

The assets of the Clients must be held in the custody of one or more custodians (or other independent institutions performing the functions of custodian, with respect to the assets which are held by such institutions) selected by the Investment Manager.  The Investment Manager will notify the Clients promptly of the proposed selection of any custodians.

**7.     Scope of Liability.**

The Clients agree that the Investment Manager is not liable to the Clients or any of their partners or shareholders for any losses, damages, expenses or claims occasioned by any act or omission of the Investment Manager in connection with the performance of its services hereunder, other than as a result of the Investment Manager's willful misconduct, fraud or gross negligence, or as otherwise prescribed by applicable law.  The Clients explicitly recognize that the investment advisory opinions, recommendations and actions of the Investment Manager will be based on advice and information deemed to be reliable but not guaranteed by or to the Investment Manager.

**8.     Indemnification.**

(a)     The Clients must indemnify and hold harmless the Investment Manager, each member, shareholder, partner, manager or director of, or any person who controls, the Investment Manager, each of the respective affiliates of the foregoing and each of the respective executors, heirs, assigns, successors or other legal representatives of the foregoing (each, an "***indemnitee***") from and against any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted against such indemnitee in connection with the Investment Manager's serving or having served as such pursuant to this Agreement; provided, however, that the indemnitee is not entitled to any such indemnification with respect to any expense, loss, liability or damage that was caused by the indemnitee's willful misconduct, fraud or gross negligence.

(b)     In the event that the Investment Manager or any other indemnitee entitled to indemnification pursuant to paragraph (a) above is or becomes a party to any action or proceeding in respect of which, or there otherwise exists a claim pursuant to which, it may be entitled to seek indemnification hereunder, the indemnitee must promptly notify the respective Client thereof.  The respective Client is entitled to participate in any such suit or proceeding and, to the extent that it may wish, to

8

assume the defense thereof with counsel reasonably satisfactory to the indemnitee. After notice of an election by the Client so to assume the defense thereof, the Client will not be liable to the indemnitee hereunder for any legal or other expenses subsequently incurred by the indemnitee in connection with the defense thereof other than reasonable costs of investigation or reasonable legal expenses incurred as a result of (i) potential conflicts of interest between the indemnitee and the Client or (ii) the protection of proprietary or privacy interests of other clients of or parties in interest with the indemnitee. The Client must advance to the indemnitee the reasonable costs and expenses of investigating and/or defending such claim, subject to receiving a written undertaking from the indemnitee to repay such amounts if and to the extent of any subsequent determination by a court or other tribunal of competent jurisdiction that the indemnitee was not entitled to indemnification hereunder.

(c)     A Client is not liable hereunder for any settlement of any action or claim effected without its written consent thereto.

**9.     Independent Contractor.**

For all purposes of this Agreement, the Investment Manager is an independent contractor and not an employee or dependent agent of any Client. Nothing herein is to be construed as making any Client a partner or co-venturer with the Investment Manager or any of its affiliates or Customers. Except as provided in this Agreement, the Investment Manager has no authority to bind, obligate or represent the Clients.

**10.     Term; Termination; Renewal.**

(a)     This Agreement will remain in full force and effect for a period commencing on the date first above written and ending on December 31, 2014, and thereafter will renew automatically for successive one-year periods. This Agreement may be terminated by any party hereto, without penalty, upon 75 days' prior written notice to the other parties.

(b)     The termination of this Agreement does not extinguish the obligations of the Clients for the payment of fees and expenses in respect of services rendered by the Investment Manager prior to the effective date of such termination.

**11.     Acknowledgement.**

Each of the Clients certifies and acknowledges to the Investment Manager that it:

(i)     has fully disclosed to potential investors the fee provisions and other arrangements relating to the Client's account with the Investment Manager and is satisfied that the potential investors have received sufficient information from the Investment Manager to enable them to evaluate the terms of this Agreement; and

(ii)     fully understands the method of compensation provided herein and its associated risks, including the risk that the performance compensation arrangements with

affiliates of the Investment Manager may create an incentive for the Investment Manager to engage in transactions that are riskier or more speculative than would be the case in the absence of performance compensation and that such risk has been disclosed to potential investors.

**12.     Amendment; Modification; Waiver.**

Except as otherwise expressly provided herein, this Agreement may not be amended, nor may any provision of this Agreement be considered modified or waived, unless evidenced by a writing signed by the party to be charged with such amendment, waiver or modification.

**13.     Binding Effect; Assignment.**

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations hereunder are not, except as otherwise expressly provided herein, assignable, transferable or delegable without the written consent of the other parties hereto and any attempted assignment, transfer or delegation thereof without such consent is null and void, except that the Investment Manager may assign its rights and obligations hereunder to an entity that controls, is controlled by or is under common control with the Investment Manager; provided, however, that such entity assumes the obligations of the Investment Manager hereunder.

**14.     Governing Law.**

This Agreement is governed by and construed in accordance with the substantive laws of the State of Delaware which are applicable to contracts made and entirely to be performed therein, without regard to the place of performance hereunder.

[SIGNATURE PAGE FOLLOWS]

10

**Appx. 00588**

The parties have executed this Agreement as of the day and year first above written.

**HIGHLAND MULTI STRATEGY CREDIT FUND, LTD.**

By: _____

Name: James Dondero

Title: Director

**HIGHLAND MULTI STRATEGY CREDIT FUND, L.P.**

By: HIGHLAND MULTI STRATEGY CREDIT
FUND GP, L.P
attorney-in-fact for the Limited Partners

By: HIGHLAND MULTI STRATEGY CREDIT
GP, LLC
its general partner

By: HIGHLAND CAPITAL MANAGEMENT,
L.P.
its sole member

By: STRAND ADVISORS, INC.
its general partner

By: _____

Name: James Dondero

Title: President

**HIGHLAND CAPITAL MANAGEMENT, L.P.**

By: STRAND ADVISORS, INC.

By: _____

Name: James Dondero

Title: President

*Signature Page to Third Amended and Restated Investment Management Agreement*

# EXHIBIT 17

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P., | § | |
| | § | |
| Plaintiffs, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DECLARATION OF JAMES P. SEERY, JR., IN SUPPORT OF HIGHLAND CAPITAL
## MANAGEMENT, L.P.'S AMENDED MOTION TO DISMISS

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

DOCS_NY:45827.2 36027/003

I, James P. Seery, Jr., pursuant to 28 U.S.C. § 1746(a), under penalty of perjury, declare as follows:

1. During the bankruptcy case, I was first appointed as a member of the Board of Directors (the "Board") of Strand Advisors, Inc. ("Strand"), the general partner of Highland Capital Management, L.P. (the "Highland" or the "Debtor," as applicable), and later as the Debtor's Chief Executive Officer ("CEO") and Chief Restructuring Officer ("CRO").

2. In August 2021, upon the occurrence of the effective date of Highland's Plan, I became Highland's CEO.

3. I submit this Declaration in support of *Highland Capital Management, L.P.'s Amended Motion to Dismiss* (the "Motion"),[2] being filed concurrently with this Declaration. Unless stated otherwise, this Declaration is based on my personal knowledge, my review of the documents described below, and my communications with certain of Highland's employees and counsel.

4. Highland is the investment manager for Multi-Strat (defined below) pursuant to the terms of the *Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P.*, dated November 1, 2013.

5. Multi-Strat is a pooled investment fund structured as a "mini master" and consists of Highland Multi Strategy Credit Fund, L.P., a Delaware limited partnership (the "Master Fund"), and Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands exempted company (the "Feeder Fund"). We refer to the Master Fund and the Feeder Fund collectively as "Multi-Strat."

---

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.

6.      Multi-Strat is managed by Highland, as its investment manager, and its general partner, Highland Multi Strategy Credit Fund GP, L.P. ("MSCF GP").  MSCF GP is wholly-owned by Highland Multi Strategy Credit GP, LLC, which is in turn wholly-owned by Highland.  I am the sole officer of MSCF GP.  I am also a director of the Feeder Fund.

7.      Multi-Strat's investors include both the limited partners in the Master Fund and the shareholders of the Feeder Fund (which itself is a limited partner of the Master Fund).  The ultimate investors, whether direct or through the Feeder Fund, are commonly referred to as Multi-Strat's limited partners.  Multi-Strat's current limited partners on a consolidated basis are:

| Limited Partner | Ownership % |
|---|---|
| Highland | 58.70% |
| CLO Holdco, Ltd. | 4.06% |
| The Dugaboy Investment Trust | 1.71% |
| Highland Capital Management Services, Inc. | 35.10% |
| Mark Okada | 0.43% |

8.      In addition to the limited partners, there are a number of former "redeemed" limited partners of Multi-Strat.

9.      The Charitable DAF Fund, L.P., is not a Multi-Strat limited partner, investor, or "redeemed" limited partner in Multi-Strat.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

DOCS_NY:45827.2 36027/003

I declare under penalty of perjury OF the laws of the United States that the foregoing is true and correct.

Dated:  May 27, 2022


 /s/ James P. Seery, Jr.
James P. Seery, Jr.

# EXHIBIT 18

[1992–93 CILR 372]

CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED

GRAND COURT (Smellie, Ag. J.): July 6th, 1993

Civil Procedure—joinder of parties—party who "ought to have been joined"—Grand Court (Civil Procedure) Rules, r.26 permits joinder of defendant who ought to have been joined at commencement of proceedings only if established link between original cause of action and that against party to be joined—joinder not permitted for purpose of expanding original cause, e.g. to join party not privy to contract forming subject of original cause

Civil Procedure—pleading—amendment—application to amend under Rules of Supreme Court, O.20, r.5 to be decided on merits and effect on action against original defendant—normally allowed unless applicant causing injury for which no compensation or acting mala fide—inconsistent, useless or futile claims or those constituting new cause of action not permitted

Landlord and Tenant—characteristics of relationship—exclusivity—if landlord/tenant relationship and remedy for breach comprehensively covered by lease agreement, court will not impose equitable or agency relationship —court will also not impose duties not strictly and necessarily incidental to relationship expressly created by parties

Landlord and Tenant—breach of covenant—forfeiture—notice—Registered Land Law (Revised), s.56 requirements for notice before forfeiture applicable only if breach capable of remedy

The plaintiff sought leave to amend its writ and statement of claim in an action against the defendant for breach of a lease.

The plaintiff leased premises to the defendant for the operation of its jewellery retail business. The form of lease was based on a Canadian model and provided for the payment of an annual basic rent and an annual percentage rent based on sales. The lease contained extensive provisions dealing with the defendant's obligations to report and account to the plaintiff and specified the relief available in the event of breach of those provisions.

The defendant failed to keep full and faithful records and refused to comply with the directions of an independent auditor engaged by the plaintiff to obtain a reconstruction or compilation of those records. The plaintiff also obtained evidence of at least one sale of a valuable item which had not been recorded. The plaintiff claimed forfeiture of the lease and gave notice

---

1992–93 CILR 373

to that effect. It brought proceedings for recovery of possession and for rent claiming that the defendant had repudiated the lease.

The plaintiff subsequently sought leave to amend its writ and statement of claim (a) to add four more defendants who it alleged conspired with and facilitated or assisted the defendant in its falsification of accounts and disclosures; (b) to plead claims against those defendants; and (c) to effect substantial amendments of the pleadings against the primary defendant to include *inter alia* a claim for an account from the defendant to ascertain the amount owed to it, a claim for a declaration that the lease was duly forfeited and a claim in the alternative for damages for breach of the covenant to pay rent.

The plaintiff submitted that (a) the joinder of the additional defendants was permitted under r.26 of the Grand Court (Civil Procedure) Rules because the proper test was whether they could have been joined in some way at the time the original action was brought irrespective of whether they could have been joined in the action as it was actually brought. Accordingly, though the original action sought recovery of possession and mesne profits from the defendant, it could have instituted proceedings in damages at the same time against the other parties for having procured and conspired with the defendant to breach the lease; (b) the justification for giving leave to amend to include a claim for an account from the defendant consisted in the fiduciary relationship of principal and agent which should be implied as existing between it and the defendant having regard to the lease agreement which demanded a duty of trust from the defendant as tenant; further, an action for an account was an established remedy available to a principal against his agent in lieu of damages; (d) it was entitled to forfeit the lease on the basis that the breach was incapable of being remedied; and (e) it was entitled to make an alternative claim for damages for breach of the covenant to pay rent.

The defendant submitted in reply that (a) the joinder of the proposed defendants under r.26 was not permissible as they were not party to any contract with the plaintiff; (b) the court had no jurisdiction to permit the plaintiff to amend its writ and statement of claim to include new causes of action or inconsistent or useless amendments; (c) no fiduciary relationship existed between itself and the plaintiff; theirs was strictly a relationship of landlord and tenant to be governed by the clearly express terms of the lease; and (d) the plaintiff's application should be

dismissed in its entirety for the most important reason that the cause of action was bound to fail, for though it might have breached the lease, that breach was not irremediable. Accordingly, by virtue of s.56 of the Registered Land Law (Revised) it was entitled to notice requiring it to remedy the breach. As there had been no such proper notice nor any proper demand to remedy, the forfeiture was wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, the lease was still intact despite the plaintiff's claim to forfeiture.

  **Held,** granting the application in part:

  (1) The Grand Court (Civil Procedure) Rules, r.26 provided for the

---

### 1992–93 CILR 374

joinder of defendants who ought to have been joined at the commencement of the proceedings where there was an established link between the original cause and the cause against those to be joined. It did not permit joinder for the purpose of expanding the original cause of action. Since the original action between the plaintiff and the defendant was based on the lease agreement between them as landlord and tenant and the plaintiff's claim to recovery of possession and mesne profits arising from the defendant's breach, there could have been no other parties to the action as instituted because privity of contract existed only between those two (page 381, lines 13–15; lines 21–28; page 383, line 37 – page 384, line 9).

  (2) In general, a plaintiff's application to amend pleadings to vary or add claims was to be decided on the merits to the extent that they might affect the action brought against the original defendant. The applicable principles were embodied in the Rules of the Supreme Court, O.20, r.5, by which amendments should normally be allowed unless it was apparent that the plaintiff applicant was acting *mala fide* or that by his omission or by the amendment he had done or would cause injury to his opponent which could not be compensated for by costs or otherwise; a plaintiff would not be permitted to raise entirely new claims amounting to a new cause of action or those that were inconsistent or useless or which sought to support a case that was bound to fail (page 385, line 27 – page 386, line 26).

  (3) The court should not search for liability in tort or in equity where the parties were in a contractual relationship and this was particularly so in commercial relationships. More specifically it should not impose duties which were not strictly and necessarily incidental to that relationship. Since the lease agreement between the parties was a commercial transaction and it specified expressly and comprehensively their intentions with regard to the defendant's duties as well as an appropriate remedy for breach of the agreement, the court would not invoke the rules of equity so as to impose a relationship where there was no true need for the special protection that equity afforded. Similarly, no relationship of principal and agent could be found in what was strictly a landlord and tenant relationship. Furthermore, the proposition that the court should impose a fiduciary duty on the defendant because of the self-dealing manner in which he had breached the agreement was not acceptable since the equitable rules about self-dealing were based on a pre-existing fiduciary duty. Accordingly, no separate fiduciary duty on the defendant to account was to be implied from their relationship and the plaintiff's application to amend the pleadings on this basis would therefore be refused (page 387, lines 12–30; page 388, line 28 – page 389, line 36).

  (4) The plaintiff had satisfied the court that it had a good, arguable case for forfeiture on the merits since even though it had omitted to address the question of whether the defendant's breach could be

---

### 1992–93 CILR 375

remedied, it was at least objectively arguable that it should be entitled to treat the circumstances existing at the time it purported to forfeit the case as irremediable because (a) the defendant's falsifications were deliberate; (b) its failure to assist the independent auditor betrayed an intention to continue its dissemblance; and (c) the continued performance of the lease depended on the good faith and willingness of the defendant, not only to remedy the breach but also to keep faithful accounts and make full and frank disclosure of sales and income. Although s.56 of the Registered Land Law (Revised) and its requirements for proper notice superseded any provisions in the lease to the contrary, the section would apply only if it were to be determined on the facts that the breaches were capable of remedy. Since the plaintiff's contention was that the breach was irremediable and repudiatory and entitled him to repudiate the lease without notice, it should be allowed to present that claim for determination on its merits. Given the interlocutory nature of these proceedings, the plaintiff needed to show no more than that it had a good, arguable case in this respect. Accordingly, the leave to amend would be granted to

include the claim for a declaration that the lease had been duly forfeited (page 390, lines 3–10; page 390, line 21 – page 392, line 20; page 392, lines 33–41).

  (5) Leave would also be granted to include a claim in the alternative for damages for breach of the covenant to pay rent. This was sustainable in light of the evidence of at least one instance in which the defendant had failed to declare the sale of a valuable item which would have generated income to be assessed for percentage rent (page 393, lines 14–19).

Cases cited:

  (1)  *Baker (G.L.) Ltd.* v. *Medway Building & Supplies Ltd.*, [1958] 1 W.L.R. 1216; [1958] 3 All E.R. 540, observations of Jenkins, L.J. applied.

  (2)  *Bank of Nova Scotia* v. *Becker*, 1988–89 CILR 12, applied.

  (3)  *Cayman Arms (1982) Ltd.* v. *English Shoppe Ltd.*, 1988–89 CILR 383; on appeal, Cause No. 16 of 1989, September 20th, 1989, unreported.

  (4)  *Clarapede* v. *Commercial Union Assn.* (1883), 32 W.R. 262, observations of Brett, M.R. applied.

  (5)  *Executive Air Servs. Ltd.* v. *MacDonald*, 1990–91 CILR *N*–4.

  (6)  *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate House Ltd.*, [1986] Ch. 340; [1985] 2 All E.R. 998, *dicta* of Slade, L.J. applied.

  (7)  *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.*, 1990–91 CILR 163.

  (8)  *Jones v. Hughes*, [1905] 1 Ch. 180, observations of Vaughan Williams, L.J. applied.

  (9)  *Ketteman* v. *Hansel Properties Ltd*, [1987] A.C. 189; [1988] 1 All E.R. 38, observations of Lord Griffiths applied.

(10)  *Kurtz* v. *Spence* (1887), 36 Ch. D. 770.

(11)  *Lac Minerals Ltd.* v. *International Corona Resources Ltd.*, [1989] 2 R.C.S. 574, applied.

(12)  *Molnlycke AB* v. *Procter & Gamble Ltd.*, [1992] 1 W.L.R. 1112; [1992] 4 All E.R. 47, distinguished.

---

1992–93 CILR 376

(13)  *Norwich Pharmacal Co.* v. *Customs & Excise Commrs.*, [1974] A.C. 133; [1973] 2 All E.R. 943.

(14)  *Paradise Manor Ltd.* v. *Bank of Nova Scotia*, 1984–85 CILR 437, considered.

(15)  *Raleigh* v. *Goschen*, [1898] 1 Ch. 73.

(16)  *Salomon* v. *A. Salomon & Co. Ltd.*, [1897] A.C. 22; [1895–99] All E.R. Rep. 33, considered.

(17)  *Tai Hing Cotton Mill Ltd.* v. *Liu Chong Hing Bank Ltd.*, [1986] A.C. 519; [1985] 2 All E.R. 947; [1985] 2 Lloyd's Rep. 313, followed.

(18)  *Tildesley* v. *Harper* (1878), 10 Ch. D. 393, observations of Bramwell, L.J. applied.

(19)  *Tito* v. *Waddell (No.2)*, [1977] Ch. 106; [1977] 3 All E.R. 129, *dicta* of Megarry, V.-C. applied.

**Legislation construed:**

Grand Court (Civil Procedure) Rules, r.25: The relevant terms of this rule are set out at page 380, lines 29–34.

r.26: The relevant terms of this rule are set out at page 380, line 35 – page 381, line 9.

Registered Land Law (Revised) (Law 21 of 1971, revised 1976), s.37(1): The relevant terms of this section are set out at page 392, lines 25–27.

s.55(1):

  "Subject to the provisions of section 57 and to any provision to the contrary in the lease, the lessor shall have the right to forfeit the lease if the lessee—

  (a)  commits any breach of, or omits to perform any agreement or condition on his part expressed or implied in the lease. . . ."

s.56:

  "Notwithstanding anything to the contrary contained in the lease, no lessor shall be entitled to exercise the right of forfeiture for the breach of any agreement or condition in the lease whether expressed or implied, until the lessor has served on the lessee a notice—

  (a)  specifying the particular breach complained of; and

  (b)  if the breach is capable of remedy, requiring the lessee to remedy the breach within such reasonable period as is specified in the notice; and

  (c)  in any case other than non-payment of rent, requiring the lessee to make compensation in money for the breach,

and the lessee has failed to remedy the breach within a reasonable time thereafter, if it is capable of remedy, and to make reasonable compensation in money."

Rules of the Supreme Court, O.20, r.5:

  "Subject to Order 15, rules 6, 7 and 8 and the following provisions of this rule, the Court may at any stage of the proceedings allow the plaintiff to amend his writ, or any party to

1992–93 CILR 377

amend his pleading, on such terms as to costs or otherwise as may be just and in such manner (if any) as it may direct."

*M. Parkinson* for the plaintiff;

*P. Lamontagne, Q.C.* and *P. Boni* for the defendant.

     **SMELLIE, Ag. J.:** By summons dated March 1st, 1993 the landlord/plaintiff sought leave to re-amend its writ and statement of claim in this matter to achieve three main objectives. The first was to add parties—the proposed second to fifth defendants. The

10  second was to plead claims against those additional defendants and the third, to effect consequential amendments of the pleadings against the original defendant. Submissions were taken on March 31st, April 1st and April 5th and an order made on April 16th, 1993 with written reasons to be delivered at a later

15  date. These are the reasons.

    The original parties stand in the position of landlord and tenant by virtue of a lease dated August 16th, 1990. In the action the plaintiff's case is that the tenant/defendant has falsified records of accounts and disclosures required to be respectively kept and

20  made by the defendant pursuant to the lease and that the defendant has falsified those records in order to deprive the plaintiff of rents lawfully due under the lease. The proposed additional defendants are parties who, the plaintiff alleges, conspired with and actually facilitated or assisted the defendant in

25  its falsification of the accounts and disclosures.

    The lease is not typical of the forms in use in this jurisdiction and I am informed by counsel that it follows a Canadian model. It is unusual in that, among other things, it includes a provision for "annual percentage rent" as well as a provision for "basic rent."

30  Central to the dispute is the issue whether the defendant has made full and frank disclosure as to its income from sales as the basis for arriving at the annual percentage rent.

    Article III of the lease contains the following provisions:

    "3.01 *Basic rent*

35    The tenant shall pay to the landlord in each lease year $45,000 *per* annum (in this lease referred to as 'basic rent') by equal monthly instalments in advance, commencing upon the commencement date and on the first day of each calendar month thereafter during the term (provided that if the term

40  commences on a day which is not the first day of a calendar

month, then the instalment of basic rent payable on the

1992–93 CILR 378

commencement date for the broken portion of the calendar
month at the beginning of the term shall be calculated at a
rate per day of 1/365 of the annual basic rent).

 3.02 *Percentage rent*

5  The tenant shall pay to the landlord in each lease year
during the term the annual percentage rent for such lease
year. Such annual percentage rent shall be payable in
monthly instalments of estimated monthly percentage rent
which shall be payable 20 days after the close of each
10 calendar month in each and every lease year (including any
portion of a calendar month at the commencement of the
term if the term commences on a day other than the first day
of a calendar month) *the amount of such estimated monthly
percentage rent to be calculated by the tenant and accom*
15 *panied by a statement certified as correct by the tenant
showing in such detail as the landlord shall reasonably
require, the amount of gross revenue for such calendar month
and the amount of estimated monthly percentage rent payable*.

 3.03 *Adjustment of annual percentage rent*

20  Within 120 days after the end of each lease year *the tenant
shall deliver to the landlord a statement in writing and certified
by the tenant, and which shall also be certified as being
audited by an independent chartered accountant acceptable to
the landlord, setting forth accurately and with reasonable*
25 *detail and particulars and in such form as the landlord may
require the gross revenue both monthly and in the aggregate,
for such lease year and its annual percentage rent payable for
such lease year*. If the aggregate annual percentage rent set
forth in such statement differs from the annual percentage
30 rent set forth in such statement, the tenant shall pay or the
landlord shall refund the difference within 30 days after such
statement is provided." [Emphasis supplied.]

 In the definitions in Article I, the following appears:

  " 'Annual percentage rent' means 6% of gross revenue
35 plus 1.5% of extraordinary off premises revenue (derived
from sales by the tenant of stock kept on the leased premises
or sold off-premises having been placed for display on the
leased premises) minus the basic rent. Annual percentage
rent shall only be payable in the event such calculation from
40 time to time produces a net positive figure."

 By virtue of those provisions the plaintiff claims that special

1992–93 CILR 379

duties and responsibilities are created and are owed to him by the defendant and that they give rise to an implied relationship of trust which is not to be found in an ordinary lease where liabilities for rent are essentially stipulated as a pre-determined sum. Here

5    the plaintiff argues that the lease contains covenants that the tenant must keep proper accounts of its income in order to ensure that the proper amounts of annual percentage rent are known and payable to the plaintiff.

     A most important issue centered on this argument. It is

10    whether this implied relationship of trust is so germane to the landlord/tenant relationship in this lease that the manner in which it was dishonoured by the tenant gave rise to an irremediable breach of the lease. If so the consequence would be that the plaintiff should be entitled to claim that the lease has been duly

15    forfeited and in the manner which the plaintiff has purported to do so in a letter and notice which it sent to the defendant dated November 17th, 1992.

     The plaintiff having raised these allegations of breach of contract and breach of faith, the court was invited by counsel for

20    the defendant to reject any suggestion of fraudulent conduct on the part of the defendant as fraud had not been specifically pleaded at the outset. Instead, and without any admission on the part of his client, counsel for the defendant invited the court to make the following assumptions for the purposes of the hearing

25    of this summons that (a) there is no dispute as to the tenant's contractual obligations to pay basic rent and annual percentage rent, although the amount owed may be disputed; (b) there is no dispute that the tenant is in breach of the lease in not having kept full and faithful records as required by Articles 3:03, 3:04 and

30    3:05 of the lease; (c) despite efforts on the part of the landlord to obtain a reconstruction or compilation of the records of the revenue of the defendant, through an independent auditor engaged for the purpose by the landlord, the tenant had failed to comply with the directions of the auditor to provide names and

35    addresses of customers from whom verification of sales transactions might be obtained, and that such verification was essential to that exercise of reconstruction or compilation of the records; and (d) in at least one instance a certain named customer had purchased an expensive item of jewellery from the tenants' on-

40    premises shop and that the tenant had failed to declare that item of revenue for the purposes of the accounting records.

1992–93 CILR 380

Despite those assumptions which I was invited to make, counsel for the defendant submitted ultimately that the plaintiff's application on his summons should be dismissed in its entirety for the most important reason that the cause of action was bound to

5    fail. This submission was based on the position taken by the defendant that though it may have breached the lease, those breaches were not irremediable; it was entitled to notice requiring it to remedy them; and as there was no such proper notice nor any proper demand to remedy, the forfeiture was

10   wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, that the lease was still intact despite the landlord's claim to forfeiture. The landlord's claim was therefore bound to fail.

For the reasons which will follow, I was unable to accept the

15   defendant's submissions that the plaintiff will inevitably fail to establish that it was entitled to forfeit the lease. Although that is the central issue underlying the action as it stands between the plaintiff and the defendant, the plaintiff sought leave by its summons to do a number of things, some of which were allowed

20   by my order of April 16th and others disallowed. I will proceed to set out my reasons for the order in respect of each issue separately.

(A) *Application for leave to re-amend to join the proposed second,*

25   *third, fourth and fifth defendants. Leave refused.*

For the purposes of joinder of defendants to an existing cause of action, rr. 25 and 26 of the Grand Court (Civil Procedure) Rules are applicable. The text of the rules is as follows:

"25. All persons may be joined as defendants against

30   whom the right of any relief is alleged to exist, whether jointly, severally or in the alternative, and any judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities, without any amendment.

35   26. No cause or matter shall be defeated by reason of the misjoinder or nonjoinder of parties and the Court may in every cause or matter deal with the matter in controversy so far as regards the rights and interests of the parties actually before it. The Court may, at any stage of the proceedings,

40   either upon or without the application of any party and upon such terms as may seem just, order the names of any parties

Appx. 00602

        improperly joined, whether as plaintiffs or defendants, to be
struck out and the names of any parties added who *ought to
have been joined*, whether as plaintiffs or defendants, or
*whose presence before the Court may be necessary to enable*

5     *the Court effectually and completely to adjudicate upon and
settle all the questions* involved in the cause or matter:
    Provided that no person shall be added as a plaintiff, or as
the next friend of a plaintiff under a disability, without his
own consent in writing thereto." [Emphasis supplied.]

10    Rule 25 deals with the joinder of defendants in a single action.
Rule 26 addresses the principles and circumstances which
determine the joinder of a party to proceedings already insti-
tuted. As to joinder of plaintiffs or defendants, r.26 provides for
the addition of two categories of persons: (a) those who ought to

15    have been joined at the commencement of the proceedings, and
(b) those whose presence may be necessary to enable the court
effectually and completely to adjudicate upon and settle all the
questions involved in the cause or matter. Mr. Parkinson sought
the joinder of the additional defendants on the basis that they

20    came within the first category of persons.
   The original action is between the landlord and tenant based on
the lease agreement between them. The claim at the time that
action was brought was against the tenant for recovery of
possession, for rent and for mesne profits and arose from the

25    tenant's alleged repudiation of the lease. Privity of contract
existed only between those parties and in the cause of action as it
was thus framed, there could have been no other parties to the
action as originally instituted. Notwithstanding those circum-
stances Mr. Parkinson submitted that amendments ought to be

30    allowed to add the proposed second to fifth defendants because
the proper test is whether they could have been joined as
defendants in some way, *at the time* the original action was
brought, irrespective of whether they could have been joined as
defendants in the action *as it was actually brought.*

35    The plaintiff's claim against the proposed second to fifth
defendants was, *inter alia*, for damages for having procured and
conspired with the defendant to breach the lease. As such a
claim
could have been brought originally and *at the same time* as the
original action, Mr. Parkinson submitted the requirements of

40    rr. 25 and 26 were met, notwithstanding that the rules of privity
of contract would have precluded joinder of the proposed

defendants in the action as originally framed. He relied primarily on the judgment of the Court of Appeal in *Executive Air Servs. Ltd.* v. *MacDonald* ([5](#)).

5      In that case the Court of Appeal upheld the decision of this court in allowing amendments to join a party as a joint tortfeasor in a statement of claim which originally raised allegations of tortious conduct as well as of breach of contract. In so doing it is significant that the court disallowed amendments seeking to join the same party as defendant to the claim based on allegations of

10     breach of contract. In that case it was urged that the additional defendant was someone who fell within the first of the two categories of persons covered by r.26 of those who ought to have been joined at the commencement of the proceedings. From my reading of that case it appears clear that the court regarded the

15     additional defendant as a party who "ought to have been joined" in the original action as framed in tort and within the meaning of that expression as it appears within r.26. It follows that the Court of Appeal disallowed the further pleadings as the additional defendant was not a party who ought to have been joined in the

20     contractual claim as originally pleaded; as such an amendment would have been contrary to the principles of privity of contract, the additional defendant not having been a party to the contract and therefore against the principles established by *Salomon* v. *A. Salomon & Co. Ltd.* (16). I therefore did not think the case

25     supported Mr. Parkinson's position.

    Although rr. 25 and 26 may be outmoded, they still apply and I consider that the applicable principles were settled by the Court of Appeal in the earlier case of *Bank of Nova Scotia* v. *Becker* ([2](#)) which was cited in argument by Mr. Lamontagne on behalf of the

30     proposed defendants.

    In that case, the applicant and third defendant, a company in liquidation which had been joined as a party in the suit between the plaintiff bank and the other defendants, applied for an order to join its own receivers as parties. The company had been

35     granted a loan by the plaintiff bank for which collateral had been provided by the other defendants. It had defaulted in payment and the bank had appointed receivers who took possession of the company's property. In an action by the bank against the other defendants as guarantors, the company was itself made a

40     co-defendant upon the successful application of one of the other defendants. It was joined for the purpose of setting off any

1992–93 CILR 383

damages it might recover for the wrongful acts of the receivers (whom it alleged to be agents or servants of the bank) against any

relief granted to the bank in relation to it as principal debtor and the other defendants as guarantors.

5      The company then sought to counterclaim against the bank alleging that the receivers, as the bank's agents or servants, had trespassed upon the company's land, wrongfully taken possession

of it and wrongfully converted the company's chattels. The company also applied for leave to join the receivers as added

10     parties in the counterclaim contending that (a) as it was entitled to damages from the bank or the receivers or both, the receivers were, under the Grand Court (Civil Procedure) Rules, r.26 "necessary parties to the proceedings"; and (b) in any event, since by virtue of r.25 it could have initiated proceedings against

15     the bank and joined the receivers as co-defendants, it was "only just and convenient" that it should be able to counterclaim against them both at the same time.

     The Court of Appeal, in refusing to order the joinder of the receiver, held (a) the court was obliged to have regard to the

20     terms of the Grand Court (Civil Procedure) Rules and was only entitled to consider whether joinder was "just and convenient" as an aspect of the application of those rules. It was not entitled to use the "just and convenient" principles to give itself an unfettered discretion to order joinder; (b) as the bank had

25     originally made no claim against the receivers they could not be added as defendants in the bank's writ against the guarantors. Consequently, so far as that action was concerned, the receivers could not qualify as persons who "ought to have been joined" at the beginning of the proceedings. Nor did they so qualify when

30     the company was introduced into the proceedings as an added party and counterclaimed against the bank. The application had therefore failed the first criterion for joinder in r.26; and (c) nor did the receivers qualify under the second criterion as parties "whose presence before the court may be necessary to enable the

35     court effectually and completely to adjudicate upon the issue involved within the meaning of r.26. . . ."

     From the second head of the *ratio decidendi* of the case as extracted above from the report and from the judgment itself, it seems to me that parties can only be joined pursuant to r.26 as

40     persons "who ought to have been joined" if that nexus is established with the action as originally commenced. It is

1992–93 CILR 384

impermissible to join parties for the purpose of expanding the
original cause of action.

In the case before me, there was no privity of contract between
the proposed additional defendants and the plaintiff. The action

5       based on the lease for recovery of possession and mesne profits as
commenced could have joined no other parties. It rested entirely
between the plaintiff as landlord and the defendant as tenant. For
those reasons I was unable to allow the joinder of the proposed
second to fifth defendants.

10      I should also mention in passing that Mr. Parkinson also placed
great reliance on the case of *Molnlycke AB* v. *Procter & Gamble
Ltd.* (12) as authority for two propositions. The first was that
other members of a corporate group besides the defendant (as
were the proposed second and third defendants in relation to the

15      defendant herein) may be brought in as defendants in the same
action if they are in some way shown to have facilitated the
conspiracy whereby the original defendant was able to commit
the wrongdoing complained of and that is so whether or not the
others are willing parties to the conspiracy. The second proposi-

20      tion was that the *Molnlycke* case confirms it is not an abuse of
process to join other parties for the purpose only of obtaining
discovery where that discovery will assist in proving the claims
against the original defendant and assist in the later claim against
the added defendants and further that that approach would not

25      be in breach of the principles laid down in *Norwich Pharmacal
Co.* v. *Customs & Excise Commrs.* (13).

My reading of the *Molnlycke* case leads me to a different view
of it. To my mind it deals with a situation where a plaintiff sought
to join as an alleged tortfeasor a German company which was an

30      affiliate of the defendant company. By virtue of certain provisions
of the Convention on Jurisdiction and the Enforcement of Civil
and Commercial Judgments 1968, joinder in the circumstances of
that case was as of right provided the plaintiff met the preliminary
criterion of showing it had a good arguable case against the

35      alleged defendant by satisfying the court that there was a serious
question which called for a trial for its proper determination in
respect of an alleged defendant company domiciled in a country
which was party (as was Germany) to the convention. That
criterion is premised on a basis entirely distinct from those

40      criteria laid down by rr. 25 and 26 of the Grand Court (Civil
Procedure) Rules and which are clearly set out in the judgment of

1992–93 CILR 385

Appx. 00606

the Court of Appeal in *Bank of Nova Scotia* v. *Becker* (2) which I regard as applicable here. It follows I did not regard the *Molnlycke* case as persuasive authority for either proposition in the circumstances of this case.

5     I should also make it clear that leave to amend to join the additional defendants was not refused on the basis that the plaintiff's case was doomed to failure in its entirety. Had that been my view of the case I would have been obliged to invoke also the principles stated in *Raleigh* v. *Goschen* (15) that leave

10  should not be given to add parties to an action which is bound to fail and where such leave would allow the plaintiff to mount a substantially different cause of action against added parties.

(B) *Leave for consequential re-amendments in respect of the*

15  *proposed additional defendants, including an amendment seeking orders for discovery against them. Leave refused.*

    It followed from the refusal of leave to join the proposed additional defendants that leave for consequential re-amend-ments to plead claims against them had also to be refused. I note

20  further that in any event Mr. Parkinson for the plaintiff indicated he would have been prepared to seek discovery from them separately had they been joined as defendants and to have done so by separate process. As joinder was refused, on the merits, that recourse would also fail to materialize. I have set out above

25  the reasons for the decision not to allow further amendments which sought to add new parties.

    The remaining issues related to the application to re-amend the pleadings to vary or add claims. Such applications still fell to be decided on the merits to the extent that they might affect the

30  action brought against the original defendant. There was no dispute as to the general principles which the court should apply in deciding on an application to amend pleadings for the purposes of adding or varying claims. They are set out at O.20, r.5 of the Rules of the Supreme Court and, as they apply to this case, I

35  summarize them as follows:

    (a) Generally speaking, all amendments ought to be allowed which are for the purpose of determining the real question in controversy between the parties to any proceedings or for correcting any defect or error in any proceedings (*per* Jenkins,

40  L.J. in *G.L. Baker Ltd.* v. *Medway Building & Supplies Ltd.* (1) ([1958] 1 W.L.R. at 1231).

(b) Leave should be given to amend unless the court is satisfied that the party applying was acting *mala fide*, or that, by his blunder, he had done some injury to his opponent which could not be compensated for by costs or otherwise. However negligent

5   or careless may have been the omission, and however late the proposed amendment, the amendment should be allowed if it can be made without injustice to the other side. There is no injustice if the other side can be compensated by costs (*per* Bramwell, L.J. in *Tildesley* v. *Harper* (18) (10 Ch. D. at 397) and *per* Brett, M.R.

10  in *Clarapede* v. *Commercial Union Assn.* (4) (32 W.R. at 263).

(c) An amendment ought to be allowed if thereby "the real substantial question" can be raised between the parties and multiplicity of legal proceedings avoided: see *Kurtz* v. *Spence* (10).

15  (d) On the other hand, it should be remembered that there is a clear difference between allowing amendments to clarify the issues in dispute and those that provide distinct defences or claims to be raised for the first time (*per* Lord Griffiths in *Ketteman* v. *Hansel Properties Ltd.* (9) ([1987] A.C. at 220)).

20  (e) Furthermore, the court will always look at the materiality of the proposed amendment; inconsistent or useless amendments will not be allowed nor will amendments be allowed to raise a case which must fail: see 1 *The Supreme Court Practice 1991*, para. 20/5 – 8/23; *Jones v. Hughes* (8) ([1905] 1 Ch. at 187 *per*

25  Vaughan Williams, L.J.) and the judgment of the Court of Appeal of the Cayman Islands in *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.* (7).

I now turn to deal with the application for re-amendments to the claims.

30  (C) *Leave to re-amend the writ and the statement of claim to include a claim for an account from the defendant to be taken in order to ascertain the ultimate amount which the defendant owes the plaintiff by way of annual percentage rent. Leave refused.*

35  This aspect of the application had proceeded on the basis that a fiduciary relationship of principal and agent should be implied as existing between the plaintiff and defendant having regard to the lease arrangement which demanded a duty of trust from the defendant as tenant. Mr. Parkinson had submitted further that an action for an account is an established remedy available to a

40  principal against his agent (in lieu of damages) and that such an action arose here. I need not provide reasons at length for this

---

1992–93 CILR 387

aspect of the ruling as it appears Mr. Parkinson accepted as

correct the principles cited by Mr. Lamontagne in his response
but as considerable time was taken on it and as a distinction needs
to be struck between the duty to account prescribed by the lease
5    and the remedy in equity which was sought here, I will provide a
brief minute of reasons.

     Two considerations were paramount bearing in mind that the
lease agreement embodies a commercial arm's length transaction
between the parties. It contains extensive provisions as set out in
10   Articles 3:01 – 3:05 as to the tenant's obligations to report and
account to the landlord. It also specifies the relief available in the
event of breach of those provisions. The two questions which
arose were (a) whether there was the necessity and therefore a
basis for implying as between the parties, a term or condition of
15   the lease that there existed a further fiduciary relationship and
arising from it that there should be accounting, as a separate
remedy, beyond that expressly provided in the lease in the event
the tenant acted in breach of the lease; and (b) could there be a
need or basis for finding a relationship of principal and agent and
20   a resulting duty to account, where the written agreement between
the parties is a complete code of the intentions of the parties.

     The decision of the Privy Council in *Tai Hing Cotton Mill Ltd.*
v. *Liu Chong Hing Bank Ltd.* (17) was cited in opposition to Mr.
Parkinson's submissions and is clear authority for the proposition
25   that the court should not search for a liability in tort or in equity
where the parties are in a contractual relationship and that this is
particularly so in commercial relationships. It is not permissible,
on the contractual analysis of the relationship between the
parties, to imply duties which are not strictly and necessarily
30   incidental to that relationship.

     Mr. Parkinson had conceded there was no English authority
directly on point to support his submissions but had cited extracts
from Underhill & Hayton, *Law relating to Trusts & Trustees*, 14th
ed., at 14 (1987), 1(2) *Halsbury's Laws of England*, 4th ed., para.
35   86, at 62, and from 1 *Atkin's Court Forms*, 2nd ed., at 601 *et seq.*
(1992 Issue) in support of his general submissions that the
categories of circumstances which may give rise to a fiduciary
relationship are not closed and that a principal/agent relationship
might be inferred from the nature of the relationship between the
40   parties as was evident in this case from the lease. Further, that an
action for an account is a remedy arising from that relationship.

1992–93 CILR 388

     Mr. Lamontagne in opposition relied also on the decision of
the Supreme Court of Canada in *Lac Minerals Ltd.* v. *Interna*

*tional Corona Resources Ltd.* (11) for the following statement of principles which are extracted from the headnote to the case in the *Canada Supreme Court Reports* ([1989] 2 R.C.S. at 577–578):

5

> "The following common features provide a rough and ready guide to whether or not a fiduciary obligation should be imposed on a new relationship: (1) the fiduciary has scope for the exercise of some discretion or power; (2) the fiduciary can unilaterally exercise that power or discretion so as to affect the beneficiary's legal or practical interests; and (3) the beneficiary is peculiarly vulnerable to or at the mercy of the fiduciary holding the discretion or power."

10

This description of the fiduciary relationship accords with the treatment of the subject in the textbooks which were cited in argument and especially as regards the relationship of principal and agent the following definition of agency is to be found in Fridman's *Law of Agency*, 6th ed., at 9 (1990):

15

> "Agency is the relationship that exists between two persons when one, called the *agent*, is considered in law to represent the other, called the *principal*, in such a way as to be able to affect the principal's legal position in respect of strangers to the relationship by the making of contracts or the disposition of property."

20

That definition does not accord with the relationship created between the landlord and tenant in the context of the lease which is the subject of this action.

25

The very helpful and exhaustive treatment of the subject in the *Lac Minerals* case also demonstrates that no relationship of principal and agent could properly be implied into the commercial arm's length transaction which was the lease agreement between the parties herein. It would not be appropriate to invoke the rules of equity so as to impose a relationship in a situation such as this where there is no true need for the special protection that equity affords.

30

35

I also observe that the plaintiff's submissions were based not on any suggestion of a pre-existing fiduciary duty but on the proposition that the court might find one having regard to the self-dealing manner in which the contractual duties of the defendant had been breached. In that regard I was specifically guided by the opinion of Megarry, V.-C. in *Tito* v. *Waddell (No. 2)* (19) in

40

commenting on this approach to identifying a fiduciary obligation

([1977] 3 All E.R. at 232):

"I cannot see why the imposition of a statutory duty to
perform certain functions, or the assumption of such a duty,
5    should as a general rule impose fiduciary obligations, or even
be presumed to impose any. Of course, the duty may be of
such a nature as to carry with it fiduciary obligations. . . .
Impose a fiduciary duty and you impose fiduciary obliga-
tions. But apart from such cases, it would be remarkable
10   indeed if in each of the manifold cases in which statute
imposes a duty, or imposes a duty relating to property, the
person on whom the duty is imposed were thereby to be put
in a fiduciary relationship with those interested in the
property, or towards whom the duty could be said to be
15   owed. . . .

   Furthermore, I cannot see that coupling the job to be
performed with self-dealing in the performance of it makes
any difference. If there is a fiduciary duty, the equitable rules
about self-dealing apply: but self-dealing does not impose
20   the duty. Equity bases its rules about self-dealing on some
pre-existing fiduciary duty: it is a disregard of this pre-
existing duty that subjects the self-dealer to the con-
sequences of the self-dealing rules. I do not think that one
can take a person who is subject to no pre-existing fiduciary
25   duty and then say that because he self-deals he is thereupon
subjected to a fiduciary duty."

Notwithstanding the assumptions I was invited by Mr. Lamon-
tagne to make and which lead irresistibly to the conclusion that
the defendant was in breach of the lease and thereby guilty of
30   "self-dealing," I was unable to conclude, having regard to the
foregoing statements of principles, that there could be found to
be a principal/agent relationship between the landlord and tenant
as parties to the lease. Accordingly, no separate fiduciary duty to
account was to be implied. The plaintiff had no arguable case for
35   a claim in that regard and the re-amendments could not have
been allowed.

(D) *Application for leave to re-amend to include a claim for a
declaration that the lease was properly rescinded. Leave refused.*
40    This aspect of the application was abandoned by Mr. Parkinson
and I see no need to comment further on it.

1992–93 CILR 390

(E) *Leave to re-amend to include a claim for a declaration
against*
*the defendant that the lease was duly forfeited. Leave granted.*

**Appx. 00611**

Having regard to the assumptions which I should make for present purposes that the defendant was in breach of the lease,

5 the real point in dispute, as I earlier mentioned, was whether the breaches committed by the defendant were repudiatory, that is irremediable breaches giving rise to a right in the plaintiff to repudiate the lease without first giving notice as required by the lease and more importantly as required by ss. 55 and 56 of the

10 Registered Land Law (Revised).

Mr. Lamontagne submitted that leave should not be granted because the plaintiff's claim for a declaration that the lease was duly forfeited was bound to fail. This was so, he urged, because in purporting to forfeit the lease the plaintiff treated as irremedi-

15 able breaches which were patently capable of being remedied and because it failed to give notice to remedy as mandatorily prescribed by s.56 of the Law. Furthermore, he submitted, it was not for the plaintiff unilaterally and subjectively to decide whether the breach was remediable; it was obliged to give notice

20 and see whether the defendant complied within the reasonable time to be set in the notice. Acceptance of Mr. Lamontagne's submissions in this regard would result in the disallowance of the plaintiff's application to re-amend to include a claim for a declaration that the lease was duly forfeited as, having regard to

25 the principles earlier cited, amendments should not be allowed in aid of futile claims. This would be the result as no right of action in forfeiture could have accrued to the plaintiff, if the breach had been capable of remedy.

I was satisfied the plaintiff had at least an arguable case that the

30 breaches complained of were not capable of remedy. On the basis of the authorities the plaintiff need not show more than that, at this stage, in order to render his claim strike-out proof. In arriving at that conclusion I was guided by the following passage from the judgment of the English Court of Appeal given by

35 Slade, L.J. in *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate House Ltd.* (6) ([1985] 2 All E.R. at 1010):

"In my judgment, on the remediability issue, the ultimate question for the court was this: if the s.146 notice had required the lessee to remedy the breach and the lessors had

40 then allowed a reasonable time to elapse to enable the lessee fully to comply with the relevant covenant, would such

1992–93 CILR 391

compliance, coupled with the payment of any appropriate monetary compensation, have effectively remedied the harm which the lessors had suffered or were likely to suffer from

the breach? If, but only if, the answer to this question was

5      No would the failure of the s.146 notice to require remedy of
the breach have been justifiable. In the *Rugby School,*
*Esplanade* and *Hoffman* cases the answer to this question
plainly would have been No. In the present case, however,
for the reasons already stated, I think the answer to it must

10    have been Yes."

Essentially, given the interlocutory nature of the proceedings
before me, the issue is whether the plaintiff has an arguable case.
The answer to that question is No. There is no dispute that the
plaintiff's notice did not afford an opportunity to the defendant to

15   remedy the breach.

   I took the view, in the light of the assumptions I was invited to
draw by the defendant and having regard to the affidavit of Mr.
Mark Chapman, the independent auditor engaged by the plaintiff
to examine the records of the defendant, in which Mr. Chapman

20   expressed the view that there had been no proper records of
accounts at all maintained by the defendant, that the plaintiff had
at least an arguable case that the harm had been irretrievably
done and that the breaches of the positive covenants to keep and
maintain proper accounts and to enable full disclosure of income
are breaches which in the context of this case may be shown to

25   be

incapable of remedy. This is, in my view, arguable notwithstand-
ing that Mr. Chapman's affidavit dealt with the situation as he
found it and did not specifically address the question whether it
would be possible for the defendant to rectify the breach by

30   reconstruction of the records.

   To my mind it must be at least objectively arguable that the
plaintiff should be entitled to treat the circumstances existing at
the time it purported to forfeit the lease as irremediable because
the defalcations were deliberate, because the defendant's failure

35   to assist Mr. Chapman's audit betrayed its intention to continue
its dissemblance and because the continued performance of the
lease depended on the good faith, willingness and ability of the
defendant not only to remedy the breach but also to keep faithful
accounts and make full and final disclosure of sales and income.

40    Put another way, it will be an arguable matter whether a notice
in keeping with s.56 of the Law, specifying the breach and

---

1992–93 CILR 392

requiring remedy, should have been issued in circumstances
where it would have been clear no proper records existed and that
their creation would depend upon the recall and co-operation of

5      the officers or employees of the defendant which, from all
indications, would likely be convenient to the defendant's own
interests and which records may have therefore been predisposed
to falsification. Whether the plaintiff as landlord could reasonably
and objectively apprehend such an outcome as the inevitable
result of a notice to remedy is an issue to be tried.

10      On account of the unusual nature of this lease, none of the
cases cited in argument provided a full answer by way of
precedent to these factual issues which remain to be resolved on
the question whether the plaintiff was entitled to forfeit this lease.
It should also be clear that in arriving at this view of the matter I

15    proceeded on the basis that the requirements of ss. 55 and 56 of
the Registered Land Law (Revised), in respect of the exercise of
the right of forfeiture of leases, are paramount, and specifically as
regards the requirements set out in s.56 for proper notice, this is
so regardless whether there are provisions to the contrary

20    contained in the lease itself.
The primacy of the s.56 requirements is confirmed by the
pronouncements of this court in *Cayman Arms (1982) Ltd.* v.
*English Shoppe Ltd.* (3) and by their confirmation by the Court of
Appeal. Moreover, s.37(1) of the Registered Land Law (Revised)

25    also expressly states that "no land, lease or charge registered
under this Law shall be capable of being disposed of except in
accordance with this Law. . . ." Henry, J.A. stated in the Court
of Appeal case of *Paradise Manor Ltd.* v. *Bank of Nova Scotia*
(14) (1984–85 CILR at 480) that under s.37 of the Registered

30    Land Law (Revised), "no right of a proprietor in or over his land,
lease or charge registered under the Law shall be capable of being
affected except in accordance with the Law. . . ."
Nonetheless, as the plaintiff's primary contention is that it was
entitled to forfeit the lease on the basis that the breaches were

35    incapable of being remedied and as I decided it should be allowed
to present that claim for determination on its merits, there was no
need for me to consider whether the requirements of s.56 as to
notice had been met, as those requirements would apply in the
factual circumstances of this case only if it is determined that the

40    breach is capable of remedy or that the defendant should have
been afforded an opportunity to remedy.

---

1992–93 CILR 393

(F) *Leave to re-amend to include a claim in respect of auditor's*

*fees. Leave granted.*

   The lease in Article 3:04 provides that the cost of "any special

5   audit or an examination by an accountant designated by the
landord pursuant to this section shall be chargeable to and paid
by the tenant" in circumstances like those which led to Mr.
Chapman's audit. Accordingly Mr. Lamontagne for the defen-
dant conceded that the plaintiff's claim in that regard was not
prone to being struck out and did not oppose the amendment.

(G) *Leave to re-amend to include a claim, in the alternative to the
claim for a declaration of forfeiture, for damages for breach of
the*

*covenant to pay rent. Leave granted.*

   In light of the proof of at least one instance where the

15   defendant failed to declare the sale of a valuable item which
would have generated income which would be subject to being
assessed for percentage rent, a claim in the alternative for
damages for breach of the covenant to pay rent is sustainable.
This re-amendment was therefore allowed without opposition.

*Order accordingly.*
Attorneys: *Ritch & Connolly* for the plaintiff; *Ian Boxall & Co.* for the
defendant.

Appx. 00615

# EXHIBIT 19

CAYMAN ISLANDS



Supplement No. 5 published with Extraordinary
Gazette No. 35 dated 21st May, 2014.

**THE CONTRACTS (RIGHTS OF THIRD PARTIES) LAW, 2014**

**(LAW 4 OF 2014)**

*The Contracts (Rights of Third Parties) Law, 2014*

## THE CONTRACTS (RIGHTS OF THIRD PARTIES) LAW, 2014
### ARRANGEMENT OF SECTIONS

1.   Short title
2.   Interpretation
3.   Application
4.   Rights of third party to enforce contractual term
5.   Variation and rescission of contract
6.   Defences
7.   Enforcement of contract by promisee
8.   Protection of promisor from double liability
9.   Exceptions
10.  Supplementary provisions relating to third party
11.  Arbitration provisions

2

Appx. 00618

*The Contracts (Rights of Third Parties) Law, 2014*

CAYMAN ISLANDS

Law 4 of 2014.

I Assent

Franz Manderson

Acting Governor.

14th May, 2014

**A LAW TO MAKE PROVISION FOR THE ENFORCEMENT OF CONTRACTUAL TERMS BY THIRD PARTIES; AND FOR INCIDENTAL AND CONNECTED PURPOSES**

ENACTED by the Legislature of the Cayman Islands.

1.    This Law may be cited as the Contracts (Rights of Third Parties) Law, 2014.  *Short title*

2.    (1)    In this Law -  *Interpretation*

"contract of employment" has the meaning assigned to that expression under section 2 of the Labour Law (2011 Revision);  *(2011 Revision)*

"employee" has the meaning assigned to that expression under section 2 of the Labour Law (2011 Revision);

"set off" includes netting of claims; and

"third party" means a person who is not a party to a contract.

      (2)    In relation to a term of a contract which is enforceable by a third party -

            (a)    "promisor" means a party to the contract against whom the term is enforceable by the third party; and

3

*The Contracts (Rights of Third Parties) Law, 2014*

(b)  "promisee" means a party to the contract by whom the term is enforceable against the promisor.

Application

3.  (1)  This Law shall apply to any contract which, on or after the date on which this Law comes into force, includes terms which comply with section 4.

(2)  A contract made on, before or after the date on which this Law comes into force may be amended to include terms which comply with section 4.

(3)  If, after this Law comes into force, a contract is amended to include terms which comply with section 4, a third party may only enforce a right which accrues on or after the date on which the contract is amended.

(4)  If, prior to the date on which this Law comes into force, a contract included terms which comply with section 4, a third party may only enforce a right which accrues on or after the date on which this Law comes into force.

Rights of third party to enforce contractual term

4.  (1)  Subject to section 9, a third party may in his own right enforce a term of the contract if -

(a)  he is expressly identified in the contract by name, as a member of a class or as answering a particular description, which includes a person nominated or otherwise identified pursuant to the terms of the contract but the third party need not be in existence when the contract is entered into; and

(b)  the contract expressly provides in writing that he may.

(2)  This section does not confer a right on a third party to enforce a term of a contract otherwise than subject to and in accordance with any other relevant terms of the contract.

(3)  For the purpose of exercising his right to enforce a term of the contract, there shall be available to the third party any remedy that would have been available to him in an action for breach of contract if he had been a party to the contract and the rules relating to damages, injunctions, specific performance and other relief shall apply accordingly.

(4)  Where a term of a contract excludes or limits liability in relation to any matter, references in this Law to the third party enforcing the term shall be construed as references to his availing himself of the exclusion or limitation.

Variation and rescission of contract

5.  (1)  Where a third party has a right under section 4 to enforce a term of the contract, the parties to the contract may not, by agreement, rescind the contract, or

4

*The Contracts (Rights of Third Parties) Law, 2014*

vary it so as to extinguish or alter his entitlement under that right, without his consent if -

    (a)    the third party has communicated his assent to the term to the promisor;

    (b)    the promisor is aware that the third party has relied on the term; or

    (c)    the promisor can reasonably be expected to have foreseen that the third party would rely on the term and the third party has in fact relied on it.

    (2)    The assent referred to in subsection (1)(a) -

    (a)    may be by words or conduct; and

    (b)    if sent to the promisor by post or other means, shall not be regarded as communicated to the promisor until received by him.

    (3)    Subsection (1) is subject to any express term of the contract under which -

    (a)    the contract may be rescinded or varied without the consent of the third party; or

    (b)    the consent of the third party is required in circumstances specified in the contract instead of those set out in subsection (1)(a) to (c).

    (4)    Where the consent of a third party is required under subsection (1) or (3), the court may, on the application of one or more of the parties to the contract, dispense with his consent if satisfied that it is just and equitable to do so having regard to all the circumstances.

    (5)    The court may, on the application of one or more of the parties to a contract, dispense with any consent that may be required under subsection (1)(c) if satisfied that it cannot reasonably be ascertained whether or not the third party has in fact relied on the term.

    (6)    If the court dispenses with a third party's consent, it may impose the conditions it thinks fit, including a condition requiring the payment of compensation to the third party.

6.    (1)    Subsections (2) to (5) apply where, in reliance on section 4, proceedings for the enforcement of a term of a contract are brought by a third party.    *Defences*

    (2)    The promisor shall have available to him by way of defence or set-off any matter that -

5

*The Contracts (Rights of Third Parties) Law, 2014*

         (a)   arises from or in connection with the contract and is relevant to the term; and

         (b)   would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

   (3)   The promisor shall also have available to him by way of defence or set-off any matter if -

         (a)   an express term of the contract provides for it to be available to him in proceedings brought by the third party; and

         (b)   it would have been available to him by way of defence or set-off if the proceedings had been brought by the promisee.

   (4)   The promisor shall also have available to him -

         (a)   by way of defence or set-off any matter; and

         (b)   by way of counterclaim any matter not arising from the contract,

that would have been available to him by way of defence or set-off or, as the case may be, by way of counterclaim against the third party if the third party had been a party to the contract.

   (5)   Subsections (2) and (4) are subject to any express term of the contract as to the matters that are not to be available to the promisor by way of defence, set-off or counterclaim.

   (6)   Where in any proceedings brought against him a third party seeks in reliance on section 4 to enforce a term of a contract including, in particular, a term purporting to exclude or limit liability, he may not do so if he could not have done so, whether by reason of any particular circumstances relating to him or otherwise, had he been a party to the contract.

**Enforcement of contract by promisee**

7.   Section 4 does not affect any right of the promisee to enforce any term of the contract.

**Protection of promisor from double liability**

8.   Where under section 4 a term of a contract is enforceable by a third party and a promisee has recovered from the promisor a sum in respect of -

         (a)   the third party's loss in respect of the term; or

         (b)   the expense to the promisee of making good to the third party the default of the promisor,

then, in any proceedings brought in reliance on that section by the third party, the court shall reduce any award to the third party to the extent it thinks appropriate to take account of the sum recovered by the promisee.

*The Contracts (Rights of Third Parties) Law, 2014*

9.    (1)    Section 4 confers no rights on a third party in the case of a contract on a bill of exchange, promissory note or other negotiable instrument.

Exceptions

(2)    Section 4 confers no rights on a third party in the case of any contract binding on a company and its members under sections 12 and 25 of the Companies Law (2013 Revision).

(2013 Revision)

(3)    Section 4 confers no rights on a third party to enforce any term of a contract of employment against an employee.

(4)    Section 4 confers no rights on a third party in the case of -

    (a)    a contract for the carriage of goods by sea;
    (b)    a contract for the carriage of goods by road, or for the carriage of cargo by air; or
    (c)    letters of credit.

(5)    In subsection (4) -

"contract for the carriage of goods by sea" means a contract of carriage -

    (a)    contained in or evidenced by a bill of lading, sea waybill or a corresponding electronic transaction; or
    (b)    under or for the purposes of which there is given an undertaking which is contained in a ship's delivery order or a corresponding electronic transaction.

10.    (1)    Section 4 does not affect any right or remedy of a third party that exists or is available apart from this Law.

Supplementary provisions relating to third party

(2)    In sections 7 and 10 of the Limitation Law (1996 Revision) the references to an action founded on a simple contract and an action upon a specialty shall respectively include references to an action brought in reliance on section 4 relating to a simple contract and an action brought in reliance on that section relating to a specialty.

(1996 Revision)

(3)    Except to the extent provided in section 11(1) or (2), a third party shall not, by virtue of section 4(4), 6(4), 6(6), 11(1) or 11(2) be treated as a party to the contract for the purposes of any other Law or any instrument made under any other Law.

11.    (1)    Where a right under section 4 to enforce a term is subject to an arbitration agreement, the third party shall be treated for the purposes of the Arbitration Law, 2012 as a party to the arbitration agreement as regards disputes

Arbitration provisions

(Law 3 of 2012)

7

*The Contracts (Rights of Third Parties) Law, 2014*

between himself and the promisor relating to the enforcement of the term by the third party.

(2) Where -

(a) a third party has a right under section 4 to enforce an arbitration agreement; and

(b) the third party does not fall to be treated under subsection (1) as a party to the arbitration agreement,

the third party shall, if he exercises the right, be treated for the purposes of the Arbitration Law, 2012 as a party to the arbitration agreement in relation to the matter with respect to which the right is exercised, and be treated as having been so immediately before the exercise of the right.

(3) In this section -

"arbitration agreement" has the meaning assigned to that expression under section 2 of the Arbitration Law, 2012.

Passed by the Legislative Assembly the 11th day of April, 2014.

Juliana Y. O'Connor-Connolly

Speaker.

Zena Merren-Chin

Clerk of the Legislative Assembly.

8

# EXHIBIT 20

# *366 Ebbw Vale Urban District Council v South Wales Traffic Area Licensing Authority.

 No Substantial Judicial Treatment

**Court**
Court of Appeal

**Judgment Date**
16 March 1951

**Report Citation**
[1951] 2 K.B. 366



Court of Appeal

Cohen , Asquith and Birkett , L.JJ.

1951 March 16.

*Road Traffic—Omnibus company—100 per cent. subsidiary of British Transport Commission—Company's application to vary fares made to licensing authority—Jurisdiction of authority— Road Traffic Act, 1930 (20 & 21 Geo. 5, c. 43), s. 72 — Transport Act, 1947 (10 & 11 Geo. 6, c. 49), ss. 2, sub—ss. 1, 2 (f) (g) (i), 3, 63—5, 76 .*

By s. 65, sub-s. 1, of the Transport Act, 1947 , ss. 72 to 76 of the Road Traffic Act, 1930 , do not apply to any passenger road transport service provided by the British Transport Commission or by any person acting as agent for the commission.

The commission, acting under the Transport Act, 1947 , acquired all the shares of a passenger road transport company with power to appoint and dismiss all their directors, the company thus becoming a 100 per cent. subsidiary of the commission. There was no evidence that the commission had in fact appointed the company to act as their agent. The company applied to a licensing authority for public service vehicles under s. 72, sub-ss. 1 and 4, of the Road Traffic Act, 1930 , to vary the conditions of road service licences then held by them, i.e., to increase the existing scale of fares.

*367

Held, that the licensing authority had jurisdiction to hear the application of the company, since the service in question was not a passenger road transport service provided by the commission or by any person acting as agent for the commission. The commission, in acquiring the shares of the company in the exercise of their general duty as stated in s. 3 of the British Transport Act, 1947 , were not "providing", but "securing or promoting" the provision of, an efficient, adequate, economical and properly integrated system of public inland transport.

*Salomon v. Salomon & Co. LD.[1897] A. C. 22* followed.

Observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.[1924] 2 Ch. 33* , 38, 40, referred to.

Decision of the Divisional Court reversed.

© 2022 Thomson Reuters.

**Appx. 00626**

Appeal from the Divisional Court.

The applicants, Ebbw Vale Urban District Council, sought an order to prohibit the licensing authority for public service vehicles for the South Wales Traffic Area from hearing and determining an application by Red and White Services Ld. under s. 72 of the Road Traffic Act, 1930 [1] , to vary the conditions of road service licences then held by them, that was, to increase their existing scale of fares. The ground for the application was that the licensing authority had no jurisdiction to hear the application by the omnibus company by reason of s. 65 of the Transport Act, 1947 [2] .

*368

The Divisional Court (Lord Goddard, C.J., Hilbery and Hallett, JJ.) held that s. 72 of the Act of 1930 on the facts of the case had ceased to apply, because the services afforded by the omnibus company were provided "by the commission" or by a "person acting as agent for the commission" within the meaning of sub-s. 1 of s. 65 of the Transport Act, 1947 .

The omnibus company had been a private enterprise concern when, under the Transport Act, 1947 , the British Transport Commission had acquired all their shares and the power to appoint and dismiss all their directors. The omnibus company, therefore, became a 100 per cent. subsidiary of the British Transport Commission. Lord Goddard, C.J., said that the commission were providing the road passenger service of the omnibus company, though he was rather inclined to think that the omnibus company in the circumstances were acting as agents for the commission. The British Transport Commission and the omnibus company appealed.

Before the Court of Appeal, counsel for the urban district council did not see fit to support the order of prohibition made by the Divisional Court on the ground that the omnibus company provided the services as agents of the British Transport Commission: he contended that the services were provided by the commission.

*Heald, K.C.,* and *R. J. Parker* for the commission.

*Fox-Andrews, K.C.,* and *King-Hamilton* for the omnibus company.

*Cyril Morgan* for the urban district council.

The argument, based on the relevant sections of the Transport Act, 1947 , appears fully from the judgment of Cohen, L.J. Counsel for the appellants cited *Salomon v. Salomon & Co. LD.* [3] ; the speech of Lord Buckmaster in *Rainham Chemical Works LD. (In Liquidation) v. Belvedere Fish Guano Co. LD.* [4] ; the judgment of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.* [5] ; *Railway Executive v. Henson* [6] ; and *Smith v. London Transport Executive* [7] .

COHEN, L.J.

This appeal raises a question as to the jurisdiction of the licensing authority under s. 72 of the Road Traffic Act, 1930 , to hear an application by Red and White Services Ld. for the modification of the conditions of their licence in such a way as to enable them to increase the fares which they are entitled to charge for the services that they supply in a district in South Wales.

Section 72, sub-s. 1 , provides: "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. It is under that last provision that Red and White Services Ld. made the application which gives rise to the present proceedings.

When the application came before the authority, the suggestion was made, and it has since been decided by the Divisional Court, that the jurisdiction of the authority had been taken away, so far as the point then under discussion was concerned, by s. 65 of the Transport Act, 1947 . [His Lordship read sub-s. 1 of s. 65 .] The Divisional Court decided that s. 72 of the Road Traffic Act, 1930 , had ceased to apply on the facts of this case, because the services in question were services provided "by the commission", or by a "person acting as agent for the commission", within the meaning of s. 65.

I will refer to two passages in the judgment of Lord Goddard, C.J., in order to explain the ratio decidendi of the court. He said: "It seems to me, when one gives s. 65 the ordinary meaning of the English language, that the transport commission, having acquired the whole of the undertaking and share-holding of this company, and running the omnibuses of that company for the purpose of providing a passenger service through the Ebbw Vale, are providing a road transport service. The vehicles are not their own: they still belong to the legal entity which is the company; but it seems to me that the commission are in effect providing the road passenger transport, though I am rather inclined to think that the omnibus company in the circumstances are acting as agents for the commission". Then, in the last paragraph he said: "Mr. *370* Heald has relied on the well-known case of *Salomon v. Salomon & Co. LD.* [8] , which decided that in what is commonly called a one-man company, the company is a different entity from the man who holds the whole of the shares. and I have no doubt here that the omnibus company are a different entity from the commission; but it seems to me that the commission are providing this road passenger transport service, because the company are put there by the Transport Commission to do what otherwise it is the privilege of the commission to do. For these reasons I think that the order of prohibition must go".

Colloquially speaking, it may be true to say that the British Transport Commission are running the omnibuses of the company; but I am unable to agree, with all respect to the Divisional Court, that so broad a construction can properly be placed on the material phrase in s. 65: "any passenger road transport service provided ... by the commission or by any person acting as agent for the commission".

Under the ordinary rules of law, a parent company and a subsidiary company, even a 100 per cent. subsidiary company, are distinct legal entities, and in the absence of an agency contract between the two companies one cannot be said to be the agent of the other. That seems to me to be clearly established by *Salomon v. Salomon & Co. LD.* [9] , and by the observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.* [10] .

Tomlin, J., said [11] : "I do not think that any such inference" - that is, an inference of agency between the directors and the company - "can be or ought to be drawn. It has been made plain by the House of Lords that for the purpose of establishing contractual liability it is not possible, even in the case of the so-called one-man companies, to go behind the legal corporate entity of the company and treat the creator and controller of the company as the real contractor merely because he is the creator and controller. If he is to be fixed with liability as principal, the agency of the company must be established substantively and cannot be inferred from the holding of director's office and the control of the shares alone: see *Salomon v. Salomon & Co. LD.* [12] . Any other conclusion would have nullified the purpose for which the creation of limited companies was authorized by the legislature".
     *371*

Tomlin, J., continued: "Nor does the matter stand otherwise in regard to liability for tortious acts". and later [13] : "There is no evidence from which it ought or can be inferred that the defendant directors have authorized the wrongful acts. To draw that inference from the fact that they are sole directors and shareholders of the defendant company would be manifestly wrong and contrary to the principles enunciated by the House of Lords in the cases already referred to, and there is no evidence of any other facts at all in relation to the matter".

So I think that it can clearly be said here that there is no evidence to justify the inference which apparently Lord Goddard, C.J., was inclined to draw, that the omnibus company in the circumstances of the case are acting as agents for the British Transport Commission. In fairness to Mr. Morgan I add that he did not seek to support the order on the ground of agency. He did, however, strongly urge that, on a business view of the matter, the services which were provided in South Wales by the company were services provided by the commission.

I can find nothing in the Act to negative or exclude the ordinary rules of law so far as this question is concerned. I think that the proper approach to the question is to construe s. 65, sub-s. 1, in the light of the other relevant provisions of the Act; and, as Mr. Fox-Andrews said, the proper starting point is s. 3 , which lays down the general duty of the commission and states the objects, as distinct from the powers, which the commission was incorporated to perform. By sub-s. 1: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation".

I would emphasize the distinction that is plainly drawn there between "providing", on the one hand, and "securing or promoting" on the other, the provision of an efficient system of transport. It seems to me that those words clearly visualize that the commission may either provide the system themselves or may secure or promote its provision by others. With that in mind I turn back to s. 2 , which concerns the powers which the commission are to *372 have to enable them to fulfil their object. Section 2, sub-s. 1 , provides: "Subject to the provisions of this Act, the commission shall have power - (a) to carry goods and passengers by rail, road and inland waterway, within Great Britain". By sub-s. 2: "Subject to the provisions of this Act, the powers conferred by sub-s. 1 of this section include power", and then follow a series of powers lettered in paragraphs from (a) to (i). I need only refer to paragraphs (f), (g) and (i). Paragraph (f): "to acquire by agreement (whether absolutely or for any period) the whole or any part of any undertaking of any other person, being an undertaking, or a part of an undertaking, the activities whereof are wholly or mainly such activities as are specified in the said sub-s. 1". Paragraph (g): "to enter into and carry out agreements with any person for the carrying on by that person, whether as agent for the commission or otherwise, of any of the activities specified in the said sub-s. 1, or for the provision by that person, whether as agent for the commission or otherwise, of clearing house facilities in connexion with the transport of goods". Paragraph (i): "to lend money to, or give guarantees for the benefit of, any person carrying on or about to carry on any of the activities specified in the said sub-s. 1", and then, omitting immaterial words, "and to acquire by agreement any securities of any body corporate which is carrying on or about to carry on or which directly or indirectly controls another body corporate which is carrying on or about to carry on any such activities".

I pause here to observe that it is plain as regards the omnibus company that it is under this latter power to acquire the securities of a body corporate which is carrying on transport activities that the acquisition was made. I pause also to observe that both sub-s. 1 and sub-s. 2 are subject to provisoes prohibiting the commission from doing certain things which might otherwise be within the wide words of the enabling power.

Sub-s. 3 provides: "Where, whether by agreement or otherwise, the commission acquire the whole or any part of any undertaking of any other person, they may, subject to the provisions of this Act, carry on any activities, whether mentioned in sub-s. 1 of this section or not, which were theretofore carried on for the purposes of that undertaking or part of an undertaking or were authorized by any statutory provision to be carried on for the purposes thereof". There again that is followed by a proviso restricting the generality of the foregoing Sub-s. 4 also contains certain restrictive powers.

*373

It is clear from that section, and I think that it also appears clear from ss. 63 and 64 , which concern the preparation and approval of area road transport schemes and the contents of area road transport schemes, that the Act contemplates that the commission may either provide services itself or may secure the provision of those services by or through other bodies, and not only by or through agents of the commission. That being so, prima facie, it would seem necessary to see whether what is being done in any particular case is an act done to provide transport facilities, or is an act done to secure the provision of transport facilities. Where a service is provided through a subsidiary company of the commission, it seems to me that prima facie, having regard to the general rule of law, what the commission are doing is to secure the provision of road transport facilities, and not to provide them.

That the commission can act by providing them themselves is made clear by the decision of this court to which our attention was called by Mr. Heald and Mr. Morgan, namely, *Smith v. London Transport Executive* [14] .

That the commission can act through an agent is also clear under the express provisions of sub-s. (2) (g) ; but, as I have said, there is no question of agency here. It seems to me quite plain that it can also arrange with independent concerns to provide a service, in which case it will be performing its function of securing or promoting the provision of an efficient, adequate, economical and properly integrated system of public inland transport. In the present case, I think, the commission were securing the provision of an efficient, adequate, economical and properly integrated system of public inland transport within the meaning of s. 3, sub-s. 1, of the Act, through the omnibus company - not an independent concern, but a separate legal entity.

That conclusion, it seems to me, is rendered more certain by sub-s. 6 of s. 2 of the Act. That provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission, and the undertaking of the body shall be deemed to form part of the undertaking of the commission". The importance of that provision seems to me to be that it is quite plain that Parliament when it passed this Act had in mind the general rule of law to which I have *374 referred as laid down in *Salomon v. Salomon & Co. LD.* [15] , and many other cases, that a subsidiary company is not the agent of the parent company, but is an entirely separate entity. Its acts are not the acts of the parent company, and the parent company is not responsible for its acts or defaults, in the absence of special provisions in some contract between the parties. Parliament, with that in mind, has gone out of its way to prescribe that for certain limited purposes the acts of the subsidiary company shall be

Ebbw Vale Urban DC v South Wales Traffic Area..., [1951] 2 K.B. 366 (1951)

deemed to be the acts of the commission. It seems to me an inevitable inference from that provision that, except to that extent, the intention was that the ordinary rule of law should prevail and that the acts of the subsidiary company should be its own acts and not the acts of the commission.

Mr. Morgan was compelled to admit that if there were a road accident the victim would have a remedy, if he had a remedy at all, not against the commission, but only against the omnibus company. That seems to me to lead to, or support, the conclusion that the services here were provided, not by the commission, but by the company.

There is another argument of Mr. Morgan's to which I ought to refer. He laid some stress on the words in sub-s. 1 of s. 65, "any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise". He relied upon those words as in some way enlarging the meaning to be given to the word "provided". I am unable to follow him in this part of his argument. It seems to me that, in the context in which they appear, the words "or otherwise" are merely in contrast to the words "under a scheme", and mean no more than "provided, whether or not under a scheme under the preceding provisions of this Part of this Act". It does not assist us in determining whether or not as a matter of fact any particular service is provided by the commission.

There is still one other argument to which I must refer. It was said that it would lead to a ridiculous, or at any rate to an artificial, situation if there were to be two bodies dealing with the same subject-matter. Section 76 of the Transport Act, 1947, contains the provisions under which the commission "shall from time to time prepare, and submit to the transport tribunal for confirmation, drafts of schemes (hereafter in this Act referred to as 'charges schemes ') for determining, as respects the *375 services and facilities provided by the commission to which the schemes respectively relate - (a) the charges which are to be made by the commission". So, said Mr. Morgan, it is plain that in one case not the licensing authority under the Road Traffic Act, 1930, but the transport tribunal under the Transport Act, 1947, will have to determine the fares and charges which are to be made by the commission. Is it not, he said, most unlikely that the legislature intended that, as regards other cases, where in substance the service was provided by the commission, the reference should be to the licensing authority? It does not seem to me that that objection really has any substance, and in a sense it begs the question, because it is only where the services are provided by the commission that the obligation to set up a charging scheme arises; and it seems to me that Parliament, having, as it clearly had, in mind the prospect that the commission might discharge their obligations either by providing or by securing provision of the requisite services, should have visualized a different method of settling the charges according to whether the commission provided the services themselves or secured their provision. It seems to me quite natural that the charging scheme should only apply where the commission were providing the services themselves, leaving the matter to be dealt with under the Road Traffic Act, 1930, in cases where the part played by the commission was merely to secure the provision of the services.

For these reasons, I think that the proper inference from the facts proved before the Divisional Court was that this was a case where the services were not provided by the commission but the commission merely secured their provision. I therefore think that it is not a case for prohibition, and I would allow the appeal.


ASQUITH, L.J.

I agree, and I would add only a word or two out of deference to the judgment from which we are differing. The case originally raised two distinct issues: did the commission within the meaning of sub-s. 1 of s. 65 "provide" these services? Or, short of that, did the omnibus company provide them as agents for the commission?

Mr. Morgan has not pressed the second point on the appeal, but, as the Divisional Court based its judgment partly on an affirmative answer to it, it is desirable to glance at it briefly. The only relevant fact before the court is that the commission own substantially all the shares in the company. The two bodies are admittedly separate legal personæ. Admittedly a subsidiary ia not necessarily, as such, an agent for the controlling corporation. *376 There is, of course, nothing to prevent a controlling body from constituting a controlled body its agent if it chooses to do so, but there is no evidence of any such thing having happened here.

I turn, therefore, to the other question: did the commission provide these services themselves? The Divisional Court took a broad, common-sense view of the meaning of the word "provide", but in my view it has to be construed in the light of its context and the general structure of the Act. The other sections of the Act do draw a firm and sharp distinction between services "provided by" the commission themselves, and services of which they "secure the provision", presumably by other people. My Lord has read the first two or three lines of s. 3, sub-s. 1, of the Transport Act, 1947, in support of that proposition, and I will not repeat them, but the same distinction reappears in a salient form in ss. 63 and 64, concerning schemes. Sub-s. 1 of s. 63

**Appx. 00630**

Ebbw Vale Urban DC v South Wales Traffic Area..., [1951] 2 K.B. 366 (1951)

provides: "(1) The commission may, at any time, prepare and submit to the Minister a scheme". Sub-s. 1 of s. 64 provides: "A scheme under the last preceding section may provide for all or any of the following matters, that is to say - (a) for constituting or specifying the body or bodies who are to provide passenger road transport services operating within or partly within the area ...". Then by sub-s. 2: "The commission may be the body specified, or one of the bodies specified, in a provision included in a scheme by virtue of paragraph (a) of sub-s. 1 of this section"; so that it is not to be assumed that the distinction between services provided by the commission themselves and services which they cause other bodies to provide - a distinction which is so clearly present in the draftsman's mind when drafting ss. 63 and 64 - has entirely escaped his mind when he passes on to draft s. 65. It would appear to me that the commission have not in fact themselves provided passenger road services up to this time; but it is quite clear that they could, if they wished to do so, purchase a fleet of omnibuses tomorrow and run them themselves under powers given by s. 2, sub-s. 1 (a) and sub-s. 2 : see *Smith. v. London Transport Executive* [16] . If the commission in this case had bought, not shares in the omnibus company, but the physical assets of that company, and had engaged the company's staff to run the undertaking, in that case the commission would have been "providing" the services themselves. But it is, in my view, only if and to the extent that the commission do provide such services by themselves (or by an *\*377* "agent" within the meaning of sub-s. 1 of s. 65 ) that the jurisdiction as to fares of the licensing authority is displaced; and as neither of these conditions is fulfilled in the present case I agree with my Lord that the appeal ought to be allowed.


BIRKETT, L.J.

I agree with both the judgments which have just been delivered. The point in this case was described by the Lord Chief Justice in the Divisional Court as being a short point, and a short point it assuredly is.

The Lord Chief Justice said: "I think, therefore, for the reasons which I have endeavoured to express - it is a very short point - that this is a road transport service provided by the commission, or by persons acting as agents for the commission, and that accordingly the Road Traffic Act no longer applies". Also, in the Divisional Court the grounds upon which this order for prohibition was asked were these: "The relief sought is an order of prohibition that the licensing authority for public service vehicles for the South Wales Traffic Area be prohibited from hearing and determining an application by Red and White Services Ld. to vary the conditions attached to road service licences now held by the Red and White Services Ld., that is to say, to increase their present scale of fares. The grounds upon which relief is sought are that the said licensing authority has no jurisdiction to hear and determine the said application".

The short question, therefore, is: is it shown, on the true construction of the statutes, and on the facts which have been proved, that the British Transport Commission are providing these road services in South Wales so that ss. 72 to 76 of the Road Traffic Act, 1930 , no longer apply?

Mr. Morgan invited the court to take a broad view, as he termed it, of the word "provide" in sub-s. 1 of s. 65, and, of course, that, I think, is the gist of the whole matter. Section 65, sub-s. 1, of the Transport Act, 1947 , provides: " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the commission or by any person acting as agent for the commission". Quite naturally, Mr. Morgan said that you must take a broad view of that word "provide". If I may say so, with all respect, it was the acceptance of that invitation in the Divisional Court which led to error. The meaning of the word "provide" cannot be interpreted quite on those lines, but must be ascertained with *\*378* some precision, having regard to the wording of the various sections of the Transport Act, 1947 .

I think that Mr. Fox-Andrews was quite right in saying that the section which sheds most light on this matter is s. 3. There the general duty of the commission is set out. Sub-section 1 provides: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation; and for that purpose it shall be the duty of the commission to take such steps as they consider necessary for extending and improving the transport and port facilities within Great Britain in such manner as to provide most efficiently and conveniently for the needs of the public, agriculture, commerce and industry". That is the general duty of the commission, and it is to be observed that one can conceive all sorts of matters as within the power of the Transport Commission under that section: they can provide services themselves; they can, in lieu of providing services themselves, secure the provision of services; or they can, instead of doing that, promote services, all to the end that their general duty under the section shall be fulfilled.

© 2022 Thomson Reuters.

**Appx. 00631**

Ebbw Vale Urban DC v South Wales Traffic Area..., [1951] 2 K.B. 366 (1951)

In this case it was shown that the commission in fact controlled the omnibus company, in this sense, that they owned all the shares, with the possible exception of two, and that they had the controlling power over the appointment and the dismissal of directors. In relation to that, sub-s. 6 of s. 2 is very important, because it is contemplated that the commission shall control, directly or indirectly, corporate bodies. The sub-section provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission", thus limiting this provision most carefully to the matters which are set out in the section, i.e., for the purposes of sub-s. 4 and the provisoes of sub-ss. 2 and 3 of s. 2. Therefore, in this case, although the commission do control the omnibus company, though they do own the shares, though they have the power to control the appointment and dismissal of directors, they do not own the property of the company and the vehicles which actually run upon the roads. As my Lord pointed out, there is no power to sue the commission either in contract or in tort. Therefore, popularly, *379 or, if I may use Mr. Morgan's phrase, "in a broad sense", one may say, of course, that the commission provide the services, as one man might say to another, because they control the company, they own the shares; yet in fact what they are really doing here is, not to provide the services, but, as my Lord has already stated, to secure that those services are provided.

Asquith, L.J., discussed the matter of agency, which clearly influenced the Divisional Court, but which is no longer relied upon here; and Cohen, L.J., disposed of the argument raised on the use of the words "or otherwise" in the words of sub-s. 1 of s. 65: "any passenger road transport service provided whether under a scheme under the preceding provisions of this Part of this Act or otherwise".

In all these circumstances, I am clearly of opinion that this was not a case where the commission in fact provided the services, and, that being so, sub-s. 1 of s. 65, which eliminated ss. 72 to 76 of the Road Traffic Act, 1930 , in the case of any passenger road transport service *provided* by the commission, has no application, and I agree that this appeal should be allowed.

### Representation

Solicitors: M. H. B. Gilmour ; M. H. B. Gilmour ; Lewin, Gregory, Torr, Durnford & Co. , for J. L. J. Price, Merthyr Tydfil .

*Appeal allowed. (C. G. M. )*

### Footnotes

1        Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant
         to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such
         a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express
         carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the
         provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged
         under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time
         vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s.
         65, sub-s. 1 : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not
         apply to any passenger road transport service provided, whether under a scheme under the preceding provisions
         of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission,
         but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the
         conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so
         much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area;
         and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of
         vehicles which may be used on the route and as to the portions of the route on which, and the points at which,
         passengers may be taken up or set down ...".

2        Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant
         to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such
         a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express
         carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the

**Appx. 00632**

provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s. 65, sub-s. 1 : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission, but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area; and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of vehicles which may be used on the route and as to the portions of the route on which, and the points at which, passengers may be taken up or set down ...".

| | |
|---|---|
| 3 | *[1897] A. C. 22* . |
| 4 | *[1921] 2 A. C. 465* , 475. |
| 5 | *[1924] 2 Ch. 33* , 38 and 40. |
| 6 | *(1949) 65 T. L. R. 336; 113 J. P. 333* . |
| 7 | *[1949] Ch. 685; [1951] W. N. 157* . |
| 8 | *[1897] A. C. 22* . |
| 9 | *[1897] A. C. 22* . |
| 10 | *[1924] 2 Ch. 33* . |
| 11 | Ibid. 38. |
| 12 | *[1897] A. C. 22* . |
| 13 | *[1924] 2 Ch. 33* , 40. |
| 14 | *[1949] Ch. 685; [1951] W. N. 157* . |
| 15 | *[1897] A. C. 22* . |
| 16 | *[1949] Ch. 685; [1951] W. N. 157* |

(c) Incorporated Council of Law Reporting for England & Wales

**Appx. 00633**

# EXHIBIT 21

```
                     IN THE UNITED STATES BANKRUPTCY COURT
1                   FOR THE NORTHERN DISTRICT OF TEXAS
                              DALLAS DIVISION
2
                                    )   Case No. 19-34054-sgj-11
3    In Re:                         )   Chapter 11
                                    )
4    HIGHLAND CAPITAL               )   Dallas, Texas
     MANAGEMENT, L.P.,              )   Friday, June 25, 2021
5                                   )   9:30 a.m. Docket
                                    )
6             Debtor.               )
                                    )   EXCERPT:  MOTION FOR
7                                   )   MODIFICATION OF ORDER
                                    )   AUTHORIZING RETENTION OF JAMES
8                                   )   P. SEERY, JR. DUE TO LACK OF
                                    )   SUBJECT MATTER JURISDICTION
9    _____)   (2248)

10                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
11                 UNITED STATES BANKRUPTCY JUDGE.

12   WEBEX APPEARANCES:

13   For the Debtor:          Jeffrey Nathan Pomerantz
                              PACHULSKI STANG ZIEHL & JONES, LLP
14                            10100 Santa Monica Blvd.,
                                13th Floor
15                            Los Angeles, CA  90067-4003
                              (310) 277-6910
16
     For the Debtor:          John A. Morris
17                            PACHULSKI STANG ZIEHL & JONES, LLP
                              780 Third Avenue, 34th Floor
18                            New York, NY  10017-2024
                              (212) 561-7700
19
     For CLO Holdco, Ltd. and  Jonathan E. Bridges
20   The Charitable DAF Fund,  Mazin Ahmad Sbaiti
     LP:                       SBAITI & COMPANY, PLLC
21                             JP Morgan Chase Tower
                               2200 Ross Avenue, Suite 4900 W
22                             Dallas, TX  75201
                               (214) 432-2899
23
     For Get Good Trust and    Douglas S. Draper
24   Dugaboy Investment Trust: HELLER, DRAPER & HORN, LLC
                               650 Poydras Street, Suite 2500
25                             New Orleans, LA  70130
                               (504) 299-3300
```

2

1   APPEARANCES, cont'd.:

2   For the Official Committee   Matthew A. Clemente
    of Unsecured Creditors:      SIDLEY AUSTIN, LLP
3                                One South Dearborn Street
                                 Chicago, IL  60603
4                                (312) 853-7539

5   Recorded by:                 Michael F. Edmond, Sr.
                                 UNITED STATES BANKRUPTCY COURT
6                                1100 Commerce Street, 12th Floor
                                 Dallas, TX  75242
7                                (214) 753-2062

8   Transcribed by:              Kathy Rehling
                                 311 Paradise Cove
9                                Shady Shores, TX  76208
                                 (972) 786-3063
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
            Proceedings recorded by electronic sound recording;
25              transcript produced by transcription service.

3

1          <u>DALLAS, TEXAS - JUNE 25, 2021 - 9:36 A.M.</u>

2       (Transcript excerpt begins at 11:33 a.m.)

3              THE CLERK:  All rise.

4              THE COURT:  All right.  Please be seated.  We are

5    back on the record, and our last motion this morning is the

6    Motion to Reconsider filed by CLO Holdco and the DAF.  Do we

7    have Mr. Bridges and Mr. Sbaiti back with us now?

8              MR. BRIDGES:  Yes, Your Honor.  I have changed seats

9    because of audio problems we're having here, but we're both

10   here.

11             THE COURT:  Okay.  Well, I think we heard an

12   agreement that you all have agreed that you're going to have

13   an hour and a half each, and I presume that means everything:

14   opening statements, arguments, evidence.  So, we'll start the

15   clock.  Nate, it's 11:35.  So, Mr. Bridges, your opening

16   statement?

17     OPENING STATEMENT ON BEHALF OF CLO HOLDCO AND THE CHARITABLE

18                             DAF, LP

19             MR. BRIDGES:  Thank you, Your Honor.  We're here on a

20   motion to modify an order that we'd submit has already been

21   modified by the plan confirmation order, although that order

22   has not yet become effective.

23        The modification there was to add the phrase "to the

24   extent legally permissible" to the Court's assertion of

25   jurisdiction in what is essentially the same gatekeeper

4

1  provision that's at issue here.  We submit that change is an

2  admission or at least a strong indication that the unmodified

3  order, at least as applied in some instances, contains

4  legally-impermissible provisions.  The entire argument today

5  from our side is about what's not legally permissible in that

6  order.

7      And that starts with our concerns regarding the

8  application of 28 U.S.C. § 959(a).  As Your Honor knows well,

9  959(a) is a provision of law that the Fifth Circuit and

10  *Collier on Bankruptcy* call an exception to the *Barton*

11  doctrine.  I know from the last time we were here that the

12  Court is already aware of what 959(a) says.  It's the second

13  sentence, I understand, which the Court pointed to in our

14  previous hearing that creates general equity powers or

15  authorizes the Court to use its general equity powers to

16  exercise some jurisdiction, some control over actions that

17  fall within the first sentence of 959(a).  But that second

18  sentence also prohibits explicitly the Court's using general

19  equity powers to deprive a litigant of his right to trial by

20  jury.

21      Here, we're not under *Barton*, the statutory exception to

22  *Barton* applies, because Mr. Seery is a manager of hundreds of

23  millions of third-party investor property.  Instead, we're

24  here under the Court's general equity powers, as authorized by

25  959(a).  And those equity powers cannot deprive the right to

5

1   trial by jury.

2       But the order does deprive trials by jury, first by

3   asserting sole jurisdiction here, where jury trials are

4   unavailable, and secondly, by abolishing any trial rights for

5   claims that do not involve gross negligence or intentional

6   misconduct.

7       Movants' third cause of action in the District Court case

8   is for ordinary negligence.  It comes with a Seventh Amendment

9   jury right.  But it's barred by the order because the order

10  only allows colorable claims involving gross negligence or

11  intentional conduct, not ordinary negligence.

12      Movants' second cause of action in the District Court case

13  is for breach of contract.  That comes with a Seventh

14  Amendment jury right, but it's barred by the order because the

15  order only allows colorable claims of gross negligence or

16  intentional misconduct, not negligent or faultless breaches of

17  contractual obligations.

18      Movants' first cause of action in the District Court case,

19  breach of Advisers Act fiduciary duties, comes with a jury

20  right.  It's also barred by the order because the order only

21  allows colorable claims involving gross negligence or

22  intentional misconduct.

23      You see there what I mean.  Congress couldn't have been

24  clearer.  Courts cannot deprive litigants of their day in

25  court before a jury of their peers by invoking general equity

6

1  powers.  Those powers don't trump the constitutional right to
2  a jury trial.
3       Yet this Court's order purports to do precisely that, not
4  only for the Movants, but also for future potential litigants
5  who may have claims that have not even accrued yet.  If those
6  claims are for ordinary negligence or breach of contract or
7  breach of fiduciary duties and don't rise to the level of
8  gross negligence or intentional misconduct, this order says
9  that those claims are barred, and it would deprive them of
10 their day in court.
11      The Court's general equity powers are simply not broad
12 enough to uphold such an order.
13      This issue is even more problematic when the causes of
14 action at issue fall within the mandatory withdrawal of the
15 reference provisions of 28 U.S.C. § 157(d).  As this Court
16 knows, it lacks jurisdiction over proceedings that require
17 consideration of non-bankruptcy federal law regulating
18 interstate commerce.  Some such claims -- Movants' Advisers
19 Act claim, for instance -- do not involve culpability rising
20 to the level of gross negligence or intentional misconduct,
21 but the order purports to bar them nonetheless, despite this
22 Court's lacking jurisdiction over the subject matter of those
23 claims.
24      Even if there is gross negligence or intentional
25 misconduct, the order states that this Court will have sole

7

1  jurisdiction over such claims.  And that can't be right if

2  withdrawal of the reference is mandatory.

3      Opposing counsel will tell you that 157(d) is inapplicable

4  here because they think our claims in the District Court won't

5  require substantial consideration of the Advisers Act or any

6  other federal laws regulating interstate commerce.  But their

7  cases don't come anywhere close to making that showing, as the

8  briefing demonstrates.

9      And in any case, that argument is beside the point.  This

10  order is contrary to 157(d) because it asserts jurisdiction

11  over claims that 157(d) does not apply -- I'm sorry, does

12  apply to.  And that's true regardless of whether Movants'

13  claims are among those.

14      The idea that there's no substantial consideration of

15  federal law, however, in the District Court case is undermined

16  by Mr. Seery's testimony in support of his appointment in

17  which he confirmed that the Advisers Act applies to him and

18  that he has fiduciary duties under that Act to the investors

19  of the funds he manages.

20      Your Honor, importantly, the Advisers Act isn't the

21  typical federal statute with loads of case law under it.  It's

22  actually an underdeveloped, less-relied-upon statute, and most

23  -- most of the law under that Act is promulgated by regulation

24  and supervised by the SEC.  As a registered investment

25  advisor, Mr. Seery is bound by that Act, which he admits, he

8

1    agrees to.  But to flesh out what his duties are requires a

2    close exam of more than three dozen regulations under 17

3    C.F.R. Part 275.

4        The obligations include robust duties of transparency and

5    disclosure, as well as duties against self-dealing and the

6    necessity of obtaining informed consent, none of which are

7    waivable, these duties.

8        The proceedings here in this Court reflect an effort to

9    have those unwaivable duties waived.  The allegations in the

10   District Court are essentially insider trading allegations

11   that the Debtor and Mr. Seery knew or should have known

12   information that they had a duty under the Advisers Act to

13   disclose to their advisees.  Both under the Act and

14   contractually, they had those duties.  And, instead, they did

15   not disclose and consummated a transaction that benefited

16   themselves nonetheless.

17       In considering those claims, the presiding court will have

18   to consider and apply the Advisers Act and the many

19   regulations promulgated under it, in addition to other federal

20   laws regulating interstate commerce.  For that reason,

21   withdrawal of the reference on the District Court action is

22   mandatory.  That's the two major -- that's two major problems

23   out of four with the order that we're here on today.

24       First, it deprives litigants of their right to trial, to a

25   jury trial, when Section 959(a) says that can't be done.  And,

9

1   two, the order asserts jurisdiction -- sole jurisdiction, even

2   -- over proceedings in which withdrawal of the reference is

3   mandatory under 157(d).

4       The fourth major problem is what the Court called

5   specificity at the previous hearing.  The Fifth Circuit's

6   *Applewood Chair* case holds that the rule from *Shoaf* does not

7   apply without a "specific discharge or release," and that that

8   release has to be enumerated and approved by the Bankruptcy

9   Court.  Thus, the order here can't exculpate Mr. Seery of

10  liability for ordinary negligence and the like in a blanket

11  fashion.  The claims being released must be identified.

12      That's what happened in *Shoaf*.  Shoaf's guaranty

13  obligation was explicitly released.  That's also what happened

14  in *Espinosa*.  Espinosa's plan listed his student loan as his

15  only specific indebtedness.  But it's not what happened here.

16  And it couldn't happen here, because the ordinary negligence

17  and similar claims being discharged by the order had not yet

18  accrued and thus were not even in existence at the time the

19  order issued.

20      Instead, what we have here is a nonconsensual, nondebtor

21  injunction or release that's precisely what the Fifth Circuit

22  refused to enforce in the *Pacific Lumber* case.

23      So, lack of specificity is the third major problem with

24  the order.  And that brings us to the fourth problem, which is

25  the *Barton* doctrine.  *Barton* is the only possible basis for

10

1  this Court to assert exclusive or sole jurisdiction over

2  anything.  Outside of *Barton*, it's plain black letter law that

3  the District Court's jurisdiction is equal to and includes

4  anything that this Court's derivative jurisdiction would also

5  reach.

6      But the exception to the *Barton* doctrine in 959(a) plainly

7  applies here, leaving no basis for exclusivity with regards to

8  jurisdiction and the District Court.  That's because Mr. Seery

9  is carrying on the business of a debtor and managing the

10 property of others, rather than merely administering the

11 bankruptcy estate.  The exclusive jurisdiction function of the

12 *Barton* doctrine has no applicability because 959(a) creates

13 that exception here.

14     Under its general equity powers, yes, 959(a) still

15 authorizes this Court to exercise some control over actions

16 against Mr. Seery, but short of depriving litigants of their

17 day in court.  And nothing in 959(a), that exception to

18 *Barton*, says that the Court can nonetheless exercise

19 exclusivity in that jurisdiction.  Those general equity powers

20 do not create exclusive or sole jurisdiction.  They do not

21 deprive the District Court of its Congressionally-granted

22 original jurisdiction.

23     Moreover, Mr. Seery is not an appointed trustee entitled

24 to the protections of the *Barton* doctrine in any case.  His

25 appointment was a corporate decision that the Court was asked

11

1  not to interfere with.  The Court was asked to defer under the

2  business judgment rule to the Debtor's appointment of Mr.

3  Seery.  And the Court did so.

4      As we asserted last time, no authority that we can find

5  combines these two unrelated doctrines, the *Barton* doctrine

6  and the business judgment rule.  And they don't go together.

7  None of the testimony or the briefing or argument, in the July

8  order, in the January order that preceded it, none of that

9  indicated that Mr. Seery would be a trustee or the functional

10  equivalent of a trustee.  The word "trustee" does not appear

11  in any of those briefs or transcripts.

12      Opposing -- and because of that, the District Court suit

13  is not about -- well, not because of that.  The District Court

14  suit simply is not about any trustee-like role that Mr. Seery

15  may have played anyway.  Opposing counsel will try to convince

16  you otherwise, will tell you that the District Court case is a

17  collateral attack on the settlement, but it's not.  Wearing

18  his estate administrator hat, Mr. Seery can settle claims in

19  this court.  Wearing his advisor hat, he has to fulfill his

20  Advisers Act duties and properly advise his clients.

21      He doesn't have to wear both hats, and it seems highly

22  unusual that he would choose to fill both of those roles

23  simultaneously.  But he has chosen both roles.  And the

24  District Court case is a hundred percent about his role as an

25  advisor.  Did he comply with the Act?  Did he do the things

12

1   that his advisor role obligated him to do as a manager of that

2   property?

3       The District Court suit really is only being used to

4   illustrate the issues that we're raising here.  It's

5   important, it's timely to address those issues now because of

6   the District Court action, but that's an illustration of the

7   problems with the order.  It is not exclusively that that

8   action is what we're attempting to address.  Rather, the order

9   exculpating Mr. Seery from ordinary negligence liability and

10  similar liability is problematic, is contrary to the law.  On

11  top of that, the Court is asserting jurisdiction over gross

12  negligence and intentional misconduct claims.  To the extent

13  that 157(d) applies, it is problematic and contrary to law as

14  well.

15          THE COURT:  Okay.  We're occasionally getting some

16  breakup of your sound.  So please -- I don't know what you can

17  do to adjust, but it was just now, and intermittently we get a

18  little bit of garbly.  So if you could just say your last

19  sentence one more time, and we'll see if it improves.

20          MR. BRIDGES:  Your Honor, I'm not sure I can say this

21  last sentence again.

22          THE COURT:  Okay.

23          MR. BRIDGES:  I was -- I was mentioning that the

24  District Court case is an illustration of our argument.  Our

25  argument is not merely that the District Court case should be

13

1 exempted or excepted from the order.  Our argument is that the

2 order is legally infirm and that the District Court case and

3 the claims there illustrate some of those infirmities, but

4 that the infirmities go beyond just what's at issue in the

5 District Court case.

6     In sum, there are four problems with the order that render

7 parts of it legally infirm.  It deprives the right of a jury

8 trial -- in fact, of any trial -- in contravention of 959(a)

9 for some causes of action.

10     It asserts jurisdiction -- two, it asserts jurisdiction

11 over claims that are subject to the mandatory withdrawal of

12 the reference provision (garbled) 157(d).

13     And three, it lacks the specificity required to discharge

14 future claims under *Applewood*.

15     Finally, Your Honor, number four, the order relies on the

16 *Barton* doctrine, which doesn't apply and which 959(a) creates

17 an exception to.

18     Movants respectfully submit the order should be modified

19 for those reasons.

20         MR. SBAITI:  Tell him Mark Patrick is here, for the

21 record.

22         THE COURT:  All right.  I have a couple of follow-up

23 questions for you.  I want to drill down on the issue of your

24 client not having appealed the July 2020 order.  Or the

25 HarbourVest settlement order, for that matter.  Tell me as

14

1 directly as possible why you don't view that as a big problem.

2 Because it's high on my list of possible problems here.

3        MR. BRIDGES: I understand, Your Honor. The

4 *Applewood Chair* case is our -- our defense to that argument,

5 that without providing specifics as to the claims being

6 discharged in the July order, that *Shoaf* cannot apply to

7 create a res judicata effect from the failure to appeal that

8 order.

9        THE COURT: But is that really what we're talking

10 about, a discharge of certain claims? We're talking about a

11 protocol that the Court established which wasn't appealed.

12        MR. BRIDGES: Your Honor, your order does many

13 things. We're talking about a few of them in one paragraph of

14 the order. And in that order -- in that paragraph, yes, it

15 creates a protocol for determining the colorability of some

16 claims, claims that rise to the level of gross negligence or

17 intentional misconduct. It does not create a protocol for

18 claims that fall below that threshold, claims for ordinary

19 negligence, as an example.

20        THE COURT: Okay.

21        MR. BRIDGES: For breach of contract that's not

22 intentional, is not grossly negligent, it's just a breach of

23 contract. It can even be faultless. There's still liability.

24 There's still a jury right under the Seventh Amendment for

25 faultless breach of contract.

15

1        The protocols in the order do not address such claims

2   other than to bar them.  To discharge them.  And thus, yes,

3   it's a release, it's a discharge of those claims.  It can be

4   viewed as a permanent injunction against bringing such claims.

5   It's what's -- it's what's not allowed by the *Applewood Chair*

6   case and by *Pacific Lumber*.

7            THE COURT:  All right.  So you're arguing that was --

8   the wording of the order was not specific enough to apprise

9   affected parties of what they were releasing, they're

10  releasing claims based on ordinary negligence against Mr.

11  Seery?  That's not specific enough?

12           MR. BRIDGES:  Correct.  Future unproved claims, the

13  factual basis for which has not happened yet.  Those cannot be

14  and were not disclosed with any specificity in this order.

15       If we compare it to *Shoaf* and to *Espinosa*, in *Shoaf* what

16  we had was a guaranty, Shoaf's guaranty on a transaction that

17  was listed in the actual release, describing what the

18  transaction was that was being -- that the guaranty was being

19  released for.

20       In *Espinosa*, what we had was a student loan --

21           THE COURT:  Right.

22           MR. BRIDGES:  -- that was listed in the plan

23  specifically, as the only specific indebtedness.

24       Here, we don't have any of that specificity.  What we have

25  is a notice to the entire world, Your Honor, that for an

16

1 unlimited period of time any claim for ordinary negligence,

2 for ordinary breach of contract or fiduciary duty against Mr.

3 Seery is barred if it relates to his CEO role. And his CEO

4 role means as a manager of property, exactly precisely what

5 959(a) is talking about.

6     Those jury rights (garbled) claims cannot be released,

7 discharged, expunged, done away with, in an order that isn't

8 explicit.

9     On top of that, even in an explicit order, 959(a) tells

10 the Court it cannot deprive a litigant of its jury trial

11 right.

12         THE COURT: Well, as anyone knows who's been around a

13 while in this case, my brain sometimes goes down an unexpected

14 trail, and maybe this one is one of those situations. Are

15 there contracts that your clients would rely on in potential

16 litigation?

17         MR. BRIDGES: Yes, Your Honor.

18         THE COURT: What are those contracts?

19         MR. BRIDGES: It is a management contract. I don't

20 think I can give you the specifics at this moment, but I

21 probably can before we're done here today. A management

22 contract in which the Debtor provides advisory and management

23 services to the DAF --

24         THE COURT: Well, you know, the shared services

25 agreements that we heard so much about in this case? A shared

**Appx. 00650**

17

1  service agreement?  I can't remember, you know, which entities

2  have them and which do not at times.  So, --

3          MR. BRIDGES:  The shared services agreement is one of

4  those contracts, Your Honor.

5          THE COURT:  Okay.

6          MR. BRIDGES:  It's not the only one.

7          THE COURT:  And what are the others?

8          MR. BRIDGES:  There's -- the other is the investment

9  advisory agreement.

10         THE COURT:  Those two?

11         MR. BRIDGES:  (no response)

12         THE COURT:  Those are the only two?

13         MR. BRIDGES:  There may be one other, Your Honor.

14  I'm not sure.

15         THE COURT:  Are they in evidence?

16         MR. BRIDGES:  I can find out shortly.

17         THE COURT:  Are they in evidence?  We haven't talked

18  about evidence yet, but are they going to be in evidence,

19  potentially?

20         MR. BRIDGES:  They are referenced in the District

21  Court case, the complaint, which is in evidence.

22         THE COURT:  I'm asking, are --

23         MR. BRIDGES:  But those contracts I don't believe are

24  listed as exhibits here in this motion, no.

25         THE COURT:  They are not?  Okay.

18

1        Well, what my brain is thinking about here is, of the

2    umpteen agreements I've seen -- more than umpteen -- of the

3    many, many agreements I've seen over time in this case, so

4    often there's a waiver of jury trial rights, as I recall, as

5    well as an arbitration clause.  I just was curious, hmm, you

6    know, you talked a lot about your clients' jury trial rights:

7    do we know that these agreements have not waived those?

8            MR. BRIDGES:  Your Honor, I think I can answer that

9    by the end of our hearing.  I don't have an answer off the top

10   of my head.  What I can tell you is a jury right has been

11   demanded in the federal court complaint, which is in evidence,

12   and that opposing counsel has brought no evidence indicating

13   that they have the defense of our having waived the right to a

14   jury trial here.

15           THE COURT:  Okay.  Well, I just --

16           MR. BRIDGES:  Or arbitra...

17           THE COURT:  -- would think that you would know that.

18   Does anyone know that on the Debtor's side off the top of your

19   head?

20           MR. POMERANTZ:  I do not, Your Honor.

21           THE COURT:  Uh-huh.

22           MR. POMERANTZ:  And to Mr. Bridges' last point, we

23   have filed a motion to dismiss.  We have not answered the

24   complaint.  So any time to object to their jury trial right

25   would be in the context of the answer.  So the implication

19

1   that we have not raised the issue and therefore it doesn't

2   exist is just not a correct implication and connection he's

3   trying to draw.

4            THE COURT:  Okay.  All right.

5       Well, let me also ask you about this.  I'm obsessing a

6   little over the *Barton* doctrine and your insistence that it

7   does not provide authority or an analogy here.

8       Well, for one thing, is there anything in the Fifth

9   Circuit case *Sherman v. Ondova* that you think either helps you

10  or hurts you on that point?  I'm intimately familiar with it,

11  although I haven't read it in a while, because it was my

12  opinion that the Fifth Circuit affirmed.  And I spent a lot of

13  time thinking about that.  It was a trustee, a traditional --

14  well, no, a Chapter 11 trustee and his counsel.  But anything

15  from that case that you think is worthy of pointing out here?

16           MR. BRIDGES:  No, Your Honor.  I'm not -- nothing

17  comes to mind.  That case is not fresh on my mind.

18      What I would tell you is that *Barton* doctrine and the

19  business judgment rule are incompatible, and the appointment

20  of a trustee never involves application of the business

21  judgment rule or deference to the Debtor or another party in

22  terms of making that appointment.

23      The *Barton* doctrine, as it applies to trustees, is viewed

24  as an extension, to some extent, of judicial immunity to the

25  trustee, who is chosen by, selected by the Court and assigned

20

1   by the Court to carry out certain functions.  That --

2           THE COURT:  Well, let me --

3           MR. BRIDGES:  -- quasi-immunity --

4           THE COURT:  -- stop you there.  You say it's an

5   extension of immunity.  But isn't it, by nature, really a

6   gatekeeping provision?  It's a gatekeeping provision, right?

7   Before you even get to immunity, maybe, in a lawsuit, it's a

8   gatekeeping function that the Supreme Court has blessed, you

9   know, obviously in the context of a receiver, but appellate

10  courts have blessed it in the bankruptcy context.  The

11  Bankruptcy Court can be the gatekeeper on whether the trustee

12  or someone I think in a similar position can get sued or not.

13      And then we had that Fifth Circuit case after *Ondova*.  It

14  begins with a V, *Villegas* or something like that.  Didn't

15  that, I don't know, further ratify, if you will, the whole

16  *Barton* doctrine by saying, oh, just because they're noncore

17  claims, state law or non-bankruptcy law claims, doesn't mean,

18  after *Stern*, the Bankruptcy Court still cannot serve the

19  gatekeeper function.

20      Tell me what you disagree.  That's my kind of combined

21  reading of all of that.

22          MR. BRIDGES:  Your Honor, I have to parse it out.

23  There's a lot to unpack there.  If I can make sure to get in

24  the follow-ups, I can start with saying it's okay for the

25  Court in many instances to act as a gatekeeper.

**Appx. 00654**

21

1        THE COURT:  Okay.

2        MR. BRIDGES:  Both under *Barton* -- under *Barton*, or

3   when the *Barton* exception in 959(a) applies, under the Court's

4   general equitable powers, that gatekeeping functions are not

5   across-the-board prohibited, --

6        THE COURT:  Okay.

7        MR. BRIDGES:  -- and we aren't trying to argue that

8   they're prohibited across the board.

9        THE COURT:  Okay.

10       MR. BRIDGES:  Now, to try to dig into that a little

11  deeper, the order does two things:  gatekeeping as to some

12  claims, and, frankly, discharging or barring other claims.

13  Those are two separate functions.

14      The first one, the gatekeeping, may be, in some

15  circumstances, which we'll come to, many circumstances, may be

16  allowable, may be even mandatory under *Barton*, not even

17  requiring an order from this Court, for the gatekeeping of

18  *Barton* to apply.  But nonetheless, allowable in many instances

19  under the Court's general equity powers under 959(a).  That

20  part is right about gatekeeping.

21      It does not create jurisdiction in this Court where 157(d)

22  deprives this Court of jurisdiction.  Just because it's

23  related to bankruptcy isn't enough to say that the Court

24  therefore has jurisdiction if, one, if mandatory withdrawal of

25  the reference is required.

1        Furthermore, Your Honor, that gatekeeping function, under

2    the equity powers authorized by 959(a), will not allow a court

3    to discharge or -- or deprive, is the word I'm looking for --

4    deprive a litigant of their right to a trial -- a specific

5    kind of trial, a jury trial -- but a trial.  And by crafting

6    an order that says certain kinds of claims that do (garbled)

7    jury rights are barred, rather than just providing a

8    gatekeeper provision, flat-out bars them, that doesn't -- that

9    doesn't comply with 959.

10              THE COURT:  Okay.

11              MR. BRIDGES:  Your Honor, if I could add one last

12   thing.

13              THE COURT:  Go ahead.

14              MR. BRIDGES:  The Supreme Court's *Stern* case points

15   out that -- that it's -- well, actually, it's the *Villegas*

16   case from the Fifth Circuit --

17              THE COURT:  The one I mentioned.

18              MR. BRIDGES:  -- points out that *Stern* -- *Stern* --

19   yes, you did.  *Stern* did not create an exception to the *Barton*

20   doctrine.  And that gives -- that endorses a *Barton* court's

21   ability to perform gatekeeping, even over claims that *Stern*

22   says there would not be jurisdiction over.

23        Contrast that with 959(a), which *Collier on Bankruptcy* and

24   the Fifth Circuit have held is an exception to the *Barton*

25   doctrine.  Because of that exception, *Barton* no longer

23

1  applies, and what you're using in invoking a gatekeeper order

2  is the Court's inherent equitable powers, its general powers

3  in equity. And those equity powers are cabined. They're

4  broad, but they're cabined by 959(a)'s prohibition of doing

5  away with a litigant's right to a trial, a jury trial.

6      Now, I also -- counsel is telling me I should note for the

7  record that Mr. Mark Patrick is here as a representative of

8  our clients. But Your Honor, I'll -- I will quit now unless

9  you have further questions for me.

10         THE COURT: All right. I do not at this time. Mr.

11  Morris or Mr. Pomerantz, who's going to make the argument?

12         MR. POMERANTZ: It's me, Your Honor.

13          OPENING STATEMENT ON BEHALF OF THE DEBTOR

14         MR. POMERANTZ: And I'll start with the jury trial

15  right. In the last few minutes, we have been able to

16  determine that the Second Amended and Restated Investment

17  Advisory Agreement between the DAF and the Debtor has a broad

18  jury trial waiver under 14(f). And in addition, as I will

19  include in my discussion, there is no private right of action

20  under the Investment Advisers Act.

21      I think those two points are fatal to Movants' argument,

22  and probably I can get away with not even responding to the

23  others. But since I prepared a lengthy presentation to

24  address the issues that were raised today, and also the half

25  hour that Mr. Bridges spent with Your Honor on June 8th in

24

1    which was his first opening statement on the motion for

2    reconsideration, I'll now proceed.

3            THE COURT:  All right.

4            MR. POMERANTZ:  The arguments that the Movants made

5    in the original motion essentially boil down to one legal

6    proposition, that the Court did not have jurisdiction to enter

7    the July 16th order because those orders impermissibly

8    stripped the District Court from jurisdiction, in violation of

9    (inaudible) Supreme Court precedent and 28 U.S.C. Section

10   157(d).

11       As with all things Dondero, the arguments continue to

12   morph, and you heard argument at the contempt hearing on June

13   8th and further argument today that now the prospective

14   exculpation for negligence in the order is also unenforceable

15   and should be modified.

16       Movants continue to try to distance themselves from the

17   January 9th order and argue that it is not relevant because

18   they seek to pursue claims against Mr. Seery as CEO and not as

19   an independent director.  Movants ignore, however, that the

20   January 9th order not only protects Mr. Seery in his role as

21   the independent director, but also as an agent of the board.

22   I will walk the Court through my arguments on that issue in a

23   few moments.

24       Of course, the Movants had no explanation, Your Honor, for

25   the question of why it took them until May of 2021, 10 months

1  after the entry of the July 16th order that appointed Mr.
2  Seery as CEO and CRO, and 16 months after the Court appointed
3  the independent board, with Mr. Dondero's blessing and
4  consent, as a substitute for what would have surely been the
5  imminent appointment of a Chapter 11 trustee.
6      Movants try to distance themselves from the prior orders
7  by essentially arguing that the DAF is a newcomer to the
8  Chapter 11 and is not under Mr. Dondero's control but is
9  rather managed separately and independently by Mr. Patrick,
10  who recently replaced Mr. Scott.
11      The Movants admit, as they must, that the DAF is the
12  parent and the sole shareholder of CLO Holdco and conducts its
13  business through CLO Holdco, and both entities conduct their
14  business through one individual.  It was Grant Scott then;
15  it's Mark Patrick now.  So even if Mr. Dondero does not
16  control the DAF and CLO Holdco, which issue was the subject of
17  lengthy testimony in connection with the DAF hearing, both the
18  DAF and the CLO Holdco are bound by the Debtor's res judicata
19  argument, which I will discuss shortly.
20      In any event, I really doubt the Court is convinced that
21  the DAF operates truly independently of Mr. Dondero any more
22  than the Court has been convinced that the Advisors, the
23  Funds, Dugaboy and Get Good, all operate independently from
24  Mr. Dondero.  The only explanation for the delay is that Mr.
25  Dondero has been and continues to be unhappy with the Court's

26

1    rulings and has now hired a new set of lawyers in a desperate

2    attempt to evade this Court's jurisdiction.  Having failed in

3    their attempt to recuse Your Honor from the case, this is

4    essentially their last hope.

5        And these new lawyers, Your Honor, have not only filed

6    this DAF lawsuit in the District Court which is the subject of

7    the contempt motion and today's motion, but they also filed

8    another lawsuit in the District Court on behalf of an entity

9    called PCMG, another Dondero entity, challenging yet another

10   of Mr. Seery's postpetition decisions.

11       And there's no doubt that this is only the beginning.  Mr.

12   Dondero recently told Your Honor at a hearing that there were

13   many more sets of lawyers waiting in the wings.  And as the

14   Court remarked at the hearing on the Trusts' motion to compel

15   compliance with Rule 2015.3, the Trusts were trying through

16   that motion to obtain information about the Debtor's control

17   entities so that they could file more lawsuits against the

18   Debtor, a concern that Mr. Draper unconvincingly denied.

19       I would like to focus the Court preliminarily on exactly

20   what the January 9th and July 16th orders do, because Movants

21   try to confuse things by casting the entire order with a broad

22   brush of their jurisdictional overreach arguments, and they

23   misinterpret Supreme Court and Fifth Circuit precedent.

24       I would like to put up on the screen the language of

25   Paragraph 10 of the January 9th order and Paragraph 35

27

1  (garbled) of the July 16th.

2      Your Honor is very familiar with these orders, I'm sure,

3  having dealt with them in connection with confirmation and in

4  prior proceedings.  But to recap, the orders essentially do

5  three things.

6      First, they require the parties to first come to the

7  Bankruptcy Court before commencing or pursuing a claim against

8  certain parties.

9      Second, they provided the Court with the sole jurisdiction

10  to make a finding of whether the party has asserted a

11  colorable claim of negligence -- of willful misconduct or

12  gross negligence.

13      And lastly, the orders provided the Court with exclusive

14  jurisdiction over any claims that the Court determined were

15  colorable.

16      The protected parties under the January 9th order are the

17  independent directors, their agents and advisors, which, as I

18  mentioned earlier, includes Mr. Seery -- who, at least as of

19  March 2020, was acting as the agent on the board's behalf as

20  the CEO -- for any actions taken under their direction.

21      The protected parties under the July 16th order are Mr.

22  Seery, as the CEO and CRO, and his agents and advisors.

23      Movants spend a lot of time in their moving papers and

24  reply arguing that the Court may not assert exclusive

25  jurisdiction over any claims that pass through the gate.  They

28

1    also spend a lot of time arguing that the Bankruptcy Court

2    does not even have jurisdiction at all to assert -- to

3    adjudicate claims against Mr. Seery because such claims are

4    subject to mandatory withdrawal under Section 157(d).

5        The Debtor doesn't agree, and has briefed why mandatory

6    withdrawal of the reference is inapplicable.  The Debtor has

7    also filed in the District Court a motion to enforce the

8    reference in effect in this district which refers cases in

9    this district arising under, arising in, or related to Chapter

10   11 to the Bankruptcy Court.

11       The motion to enforce the reference, Your Honor, which

12   extensively briefs this issue, is contained in Exhibit 3 of

13   the Debtor's exhibits.

14       We were somewhat surprised that the complaint filed in the

15   District Court wasn't automatically referred to this Court

16   under the standing order in effect in this district, given the

17   related bankruptcy case, the Court's prior approval of the

18   HarbourVest settlement, and the appeal in the District Court

19   of the HarbourVest settlement.

20       When we dug a little further, we found out that Movants

21   filed a civil case cover sheet accompanying the complaint in

22   the District Court.  They neglected in that initial filing to

23   point out that there was any related case to the lawsuit they

24   filed.

25       Mr. Bridges fell on his sword at the contempt hearing on

29

1  June 8th and took complete responsibility for the oversight.

2  I commend him for not trying to argue that the bankruptcy

3  case, the HarbourVest settlement, and the District Court

4  appeal are not related cases that would require disclosure, an

5  argument that surely would have been unsupportable.

6      But as I said at the contempt hearing, I find it curious

7  that such an important issue was overlooked, an issue which

8  would have likely changed the entire trajectory of the

9  proceedings and landed the DAF lawsuit in this Court rather

10  than the District Court.

11      And this Tuesday, Your Honor, Movants filed a revised

12  civil cover sheet with the District Court.  Although they

13  referenced the bankruptcy case as a related case, they didn't

14  bother to mention the appeal already pending in the District

15  Court regarding the HarbourVest settlement -- surely, a

16  related case.

17      Your Honor also asked Mr. Bridges at the June 8th hearing

18  whether it was an oversight or intentional that he didn't

19  mention 28 U.S.C. Section 1334 as a basis for jurisdiction in

20  his complaint.  Mr. Bridges had no answer for Your Honor then,

21  and has given no answer now.  His only comment at the hearing

22  last time was that it must have been Ms. Sbaiti that wrote it

23  because he had no recollection of it.

24      So, Your Honor, it's no surprise that Movants conveniently

25  found themselves in the District Court, which was their

30

1 | ultimate strategy from the get go.

2 |     In any event, Your Honor, we have briefed the withdrawal

3 | of the reference issue.  A response by the Movants is due --

4 | CLO Holdco and DAF is due on June 29th.  And we hope the

5 | District Court will decide soon thereafter whether to enforce

6 | the reference.

7 |     While I'm happy to argue why Movants' mandatory withdrawal

8 | of the reference argument is [not] persuasive, I don't think

9 | it's necessary, but I do, again, want to highlight that there

10 | is no private right of action under the Investment Advisers

11 | Act.

12 |     Your Honor, it's not really relevant to today's hearing,

13 | since we have argued in opposition to the motion before Your

14 | Honor that resolving the issue of the Bankruptcy Court's

15 | jurisdiction to adjudicate claims contained in the complaint

16 | as they relate to Mr. Seery is premature at this point.  The

17 | January 9th and July 16th orders first require the Court to

18 | determine whether a claim is colorable.  It's not until this

19 | Court determines if a claim is colorable that the decision on

20 | where the lawsuit should be tried is relevant.

21 |     Having said that, Your Honor, we read the Movants' reply

22 | brief very carefully and noticed in Footnote 6 that the

23 | Movants state that modifying the exclusive grant of

24 | jurisdiction to adjudicate any claims that pass through the

25 | gate to include the language "to the extent permissible by

31

1   law," in the same way the Debtor modified the plan, would

2   resolve the motion. So let's look at the provision as it

3   exists in the plans.

4      Ms. Canty, if you can put up the next demonstrative,

5   please.

6      This provision provides that the Bankruptcy Court will

7   have sole and exclusive jurisdiction to determine whether a

8   claim or cause of action is colorable, and, only to the extent

9   legally permissible and provided in Article XI, shall have

10   jurisdiction to determine -- to adjudicate the underlying

11   colorable claim or cause of action.

12      The Movants request in their reply brief in Footnote 6

13   that the July 16th order be given the plan treatment. That

14   treatment: sole authority to determine colorability and

15   jurisdiction, and, to the extent legally permissible, to

16   adjudicate underlying claim, only if jurisdiction existed.

17      After reviewing the reply brief and prior to the June 8th

18   hearing, we decided that we would agree to modify both the

19   January 9th and the July 16th orders to provide that the

20   Bankruptcy Court would only have jurisdiction to adjudicate

21   claims that pass through the colorability gate to the extent

22   permissible by law.

23      Prior to the June 8th hearing, Mr. Morris and I had a

24   conversation with Mr. Bridges. We conferred about a potential

25   resolution and a proposed modification. Mr. Bridges indicated

32

1  they were interested in exploring a resolution and wanted to
2  --
3          MR. BRIDGES:  Objection, Your Honor.
4          THE COURT:  There's an objection?
5          MR. BRIDGES:  Objection, Your Honor.  There's a Rule
6  408 settlement discussion.  He's welcome to talk about the
7  results, but he shouldn't be talking about what was -- what
8  was proposed by opposing counsel in a settlement conversation.
9          THE COURT:  Okay.  I overrule.
10         MR. POMERANTZ:  Your Honor, this was not --
11         THE COURT:  I don't think this is a 408 issue.
12 Continue.
13         MR. BRIDGES:  Thank you.
14         MR. POMERANTZ:  The stipulation and order which we
15 provided to counsel is attached to my declaration, which is
16 found at Document 2418, and it was filed in connection with a
17 Notice of Revised Proposed Orders that we filed at Docket
18 2417.  And I would like to put up on the screen the relevant
19 paragraphs of the order that we provided to the Movants.
20     So, you see, we agreed to modify each of the orders at the
21 end to do what the plan says.  The Court would only have
22 jurisdiction for claims passing through the gate if the Court
23 had jurisdiction and it was legally permissible.
24     Movants' counsel, however, responded with a mark-up that
25 went beyond -- went beyond what Movants proposed in Footnote 6

33

1   and sought to fundamentally change the January 9th and July

2   16th orders in ways that were not acceptable to the Debtor and

3   not even contemplated by the original motion.

4       Ms. Canty, can you put up on the screen the relevant

5   paragraphs of the response we received?

6       Specifically, Your Honor, you see at the first part they

7   wanted to provide that the only -- the order only applied to

8   claims involving injury to the Debtor, presumably as opposed

9   to alleged injuries to affiliated funds or third parties.

10  They also provided that the Court's ability to make the

11  initial colorability determination was also qualified by "to

12  the extent permissible by law" in the way that the Court --

13  that the Debtor agreed to modify the ultimate adjudication

14  jurisdiction provision.

15      Your Honor, Movants haven't even talked about this back

16  and forth.  They haven't talked about their about-face.  And

17  I'll leave it for Your Honor to read their Footnote 6 that

18  said it would resolve their motion, the back and forth, our

19  proposal, and now Mr. Bridges' modified, morphed arguments

20  that now point out other issues.

21      In any event, Your Honor, we made the change, and we think

22  it should resolve the motion, or at least it resolves part of

23  the motion.  There can't be any argument that the Court is

24  trying to exert exclusive jurisdiction on claims that pass

25  through the gate.

34

1    What apparently remains from the arguments raised by the

2    Movants is the argument that the Court does not even have

3    jurisdiction to act as a gatekeeper in the first place because

4    it doesn't have jurisdiction of the underlying lawsuit.  And

5    on June 8th and today, they've added a new argument, that the

6    orders impermissibly exculpate Mr. Seery and others, violate

7    their jury trial rights, and are contrary to the Fifth Circuit

8    precedent.

9    Movants claims that the orders are a jurisdictional

10   overreach, a violation of constitutional proportions, a

11   violation of due process, and inconsistent with several U.S.

12   Supreme Court cases.  But, of course, they cite no cases whose

13   facts are even remotely similar to this one.  Instead, they

14   are content to rely on general statements regarding bankruptcy

15   jurisdiction, how it is derived from district court

16   jurisdiction and is constitutionally limited, legal

17   propositions which are not terribly controversial or even

18   applicable to these facts.

19   There are several arguments -- I mean, there are several

20   reasons, Your Honor, why Movants' arguments fail.  Initially,

21   Movants have not cited any authority, any statute, or any rule

22   which would allow this Court to revisit the January 9th and

23   July 16th orders.  As I will discuss in a moment, Your Honor,

24   *Republic v. Shoaf*, a case the Court is very familiar in and

25   relied on in connection with plan confirmation, bars a

**Appx. 00668**

35

1  collateral attack on these orders under the doctrine of res

2  judicata.

3      Similarly, as the Court remarked on June 8th, the Supreme

4  Court's *Espinosa* decision, which rejected an attack based upon

5  Federal Rule of Civil Procedure 60(b)(4) to a prior order that

6  may have been unlawful, prohibits the Court from now

7  reconsidering the January 9th and July 16th orders.

8      But even if Your Honor rules that res judicata does not

9  apply, there are two independent reasons why the orders were

10 not an unlawful extension of the Court's jurisdiction.  The

11 first is because the Court had jurisdiction to enter both of

12 those orders as the ability to determine the colorability of

13 claims is within the jurisdiction of the Court.  The second is

14 because the orders are justified by the *Barton* doctrine.

15     Lastly, Your Honor, Movants' argument that the Court may

16 not act as a gatekeeper to determine the colorability of a

17 claim for which it may not have jurisdiction is incorrect, and

18 as Your Honor has mentioned and as Mr. Bridges unconvincingly

19 tried to distinguish, the Fifth Circuit *Villegas v. Schmidt*

20 case is a case on point and resolves that issue.

21     Turning to res judicata, Your Honor, it prevents the Court

22 from revisiting these governance orders.  CLO Holdco had

23 formal notice of the Seery CEO motion and the opportunity to

24 respond.  It failed to do so.  It is clearly bound.

25     As reflected on Debtor's Exhibit 4, CLO Holdco is a

36

1   wholly-owned subsidiary of the DAF.  The DAF is its sole
2   shareholder.  There is no dispute about that.  Importantly, at
3   the time of both the January and July orders, Grant Scott was
4   the only human being authorized to act on behalf of CLO Holdco
5   and the DAF.  The DAF did not respond to the Seery CEO motion,
6   either.

7         And why is that important, Your Honor?  It's because
8   Movants argue in their reply that the DAF cannot be bound by
9   res judicata because they did not receive notice of the July
10  16th order.  However, Your Honor, that is not the law.  Res
11  judicata binds parties to the dispute and their privies, and
12  the DAF is bound to the prior orders even though it did not
13  receive notice.

14        There are several cases, Your Honor, that stand for this
15  unremarkable proposition.  First I would point Your Honor to
16  the Fifth Circuit's opinion of *Astron Industrial Associates v.*
17  *Chrysler*, found at 405 F.2d 958, a Fifth Circuit case from
18  1968.  In that case, Your Honor, the Fifth Circuit held that
19  the appellant was barred by the doctrine of res judicata from
20  bringing a claim because its parent, which was its sole
21  shareholder, would have been bound by res judicata.

22        *Astron* is consistent with the 1978 Fifth Circuit case of
23  *Pollard v. Cockrell*, 578 F.2d 1002 (1978).  And the Northern
24  District of Texas in 2000 case of *Bank One v. Capital*
25  *Associates*, 2000 U.S. Dist. LEXIS 11652, found that a parent

37

1  and a sole shareholder of an entity couldn't assert res

2  judicata as a defense when those claims could have been

3  brought against its wholly-owned subsidiary.

4      And lastly, Your Honor, the 2011 Southern District of

5  Texas case, *West v. WRH Energy Partners*, 2011 LEXIS 5183, held

6  that res judicata applied with respect to a partnership's

7  general partner because the general partner was in privity

8  with the partnership.

9      These cases are spot on and make sense.  DAF is CLO

10 Holdco's parent.  Grant Scott was the only live person to

11 represent these entities in any capacity at the relevant

12 times.  Accordingly, just as CLO Holdco is bound, DAF is

13 bound.

14     Allowing DAF to assert a claim when its wholly-owned and

15 controlled subsidiary is barred would allow entities to

16 transfer claims amongst their related entities in order to

17 relitigate them and they would never be finality.  And, of

18 course, Jim Dondero, as we know, consented to the January 9th

19 order, which provided Mr. Seery protection in a variety of

20 capacities.

21     And as Your Honor has pointed out, and as Mr. Bridges

22 didn't have an answer for, neither CLO Holdco nor the DAF or

23 any other party appealed any of the governance orders.  And

24 nobody challenged the validity of these orders at the

25 confirmation hearing, where the terms of these orders were

38

 1   front and center.

 2       And importantly, Your Honor, the orders are clear and

 3   unambiguous.  They require a Bankruptcy Court [sic] to seek

 4   Bankruptcy Court approval before they commence or pursue an

 5   action against the independent board, the CEO, CRO, or their

 6   agents.  And they clearly and unambiguously set the standard

 7   of care for actions prospectively:  gross negligence or

 8   willful misconduct.

 9       The Bankruptcy Court had jurisdiction to enter the

10   governance orders, which, as expressly indicated in the

11   orders, were core proceedings dealing with the administration

12   of the estate.  No one challenged this finding of core

13   jurisdiction.  And as I will discuss later, the failure to

14   challenge core jurisdiction is waived under applicable Supreme

15   Court and Fifth Circuit precedent.

16       Your Honor, the Court [sic] does not argue that Movants

17   have waived their right to seek adjudication of a lawsuit that

18   passes through the colorability gate by an Article III Court.

19   The issue is not before the Court, but the changes to the

20   order that the Debtor agreed to make clearly -- clearly will

21   provide Mr. Bridges' clients the ability to make that

22   determination.

23       The Debtor is, however, arguing that the Movants have

24   waived their right to contest the core jurisdiction of the

25   Bankruptcy Court to make the determination that the claims are

39

1  colorable in the first place, and to challenge the exculpation

2  provisions provided to the beneficiaries of those orders.

3      Accordingly, Your Honor, the elements of res judicata are

4  satisfied.  Both proceedings involve the same parties.  The

5  prior judgment was entered by a court of competent

6  jurisdiction.  The prior order was a final judgment on its

7  merits.  And they involved the same causes of action.

8      Importantly, the members of the independent board,

9  including Jim Seery, relied on the protections contained in

10  the January 9th and July 16th orders and would not have

11  accepted these appointments if the protections weren't

12  included.  And how do we know this?  Because each of them,

13  both Mr. Seery and Mr. Dubel, both testified at the

14  confirmation hearing on this very topic.

15      And I would like to put up on the screen an excerpt from

16  Mr. Seery's testimony at confirmation, which is testimony

17  included in the February 2nd, 2021 transcript, which is

18  Exhibit 2 of the Debtor's exhibits.

19          THE COURT:  Okay.

20          MR. POMERANTZ:  And I would like to just read this,

21  Your Honor.

22      "Q   Okay.   You mentioned that there were certain

23       provisions of the January 9th order that were important

24       to you and the other independent directors.  Do I have

25       that right?"

40

1    MR. POMERANTZ:  A little bit later on, Mr. Seery

2 testifies:

3    "A   And then ultimately there'll be another provision

4        in the agreement here, I don't see it off the top of my

5        head, but a gatekeeper provision.  And that provision"

6        --

7    "Q   Hold on one second, Mr. Seery."

8    MR. POMERANTZ:  Please scroll.

9    "Q   So, Paragraph 4 and 5, were those -- were those --

10       were those provisions put in there at the insistence of

11       the prospective independent directors?

12   "A   Yes.

13   "Q   Okay.  Can we go to Paragraph 10, please?  There

14       you go."

15   Mr. Morris:  Is this the other provision that you were

16 referring to?

17   "A   This is -- it's become to be known as the

18       gatekeeper provision, but it's a provision that I

19       actually got from other cases -- again, another very

20       litigious case -- that I thought it was appropriate to

21       bring it into this case.  And the concept here is that

22       when you are dealing with parties that seem to be

23       willing to engage in decade-long litigation and

24       multiple forums, not only domestically but even

25       throughout the world, it seemed important and prudent

41

1    to me and a requirement that I set out that somebody

2    would have to come to this Court, the Court with

3    jurisdiction over these matters, and determine whether

4    there was a colorable claim.  And that colorable claim

5    would have to show gross negligence and willful

6    misconduct -- i.e., something that would not otherwise

7    be indemnifiable" --

8         MR. POMERANTZ:  Hold on one second.

9    "A   So, basically, it set an exculpation standard for

10   negligence.     It exculpates the directors from

11   negligence, and if somebody wants to bring a cause

12   against the directors, they have to come to this Court

13   first to get a finding that there's a colorable claim

14   for gross negligence or willful misconduct."

15   "Q   Would you have accepted the engagement as an

16   independent director without the Paragraphs 4, 5, and

17   10 that we just looked at?

18   "A   No, these were very specific requests.    The

19   language here has been smithed, to be sure, but I

20   provided the original language for Paragraph 10 and

21   insisted on the guaranty provisions above to ensure

22   that the indemnity would have some support.

23   "Q   And ultimately did the Committee and the Debtor

24   agree to provide all the protections afforded by

25   Paragraphs 4, 5, and 10?

42

1      "A   Yes."

2           MR. POMERANTZ:  So, Your Honor, these -- this

3    testimony also applied to as well as the CEO.

4      The testimony was echoed by Mr. Dubel, another member of

5    the board.  And I'm not going to put his testimony on the

6    screen, but it can be found at Pages 272 to 281 of Exhibit 2,

7    which is the February 2nd transcript.

8      Movants argue, however, that res judicata doesn't apply

9    because the Court didn't have jurisdiction to enter these

10   orders.  And they argue that the order stripped the District

11   Court of this jurisdiction.  As I previously described, the

12   Debtor is prepared to modify the governance orders to provide

13   that the Court shall retain jurisdiction to -- on claims that

14   pass through the gate only to the extent legally permissible.

15   The modification does not appear to be good enough for the

16   Movants.  They continue to argue that the Bankruptcy Court

17   can't even act as the exclusive gatekeeper to determine

18   whether such actions are colorable as a prerequisite for

19   commencing or pursuing an action.

20     The problem Movants run into is the Fifth Circuit's

21   opinion of *Republic v. Shoaf* and various Supreme Court

22   decisions, including *Espinosa*.

23     In *Shoaf*, the Fifth Circuit held that a party cannot

24   subsequently challenge a confirmed plan that clearly and

25   unambiguously released a third party, even if the Bankruptcy

43

1  Court lacked jurisdiction to approve the release in the first

2  place.  Movants' proper recourse was to appeal the governance

3  orders, not to seek to collaterally attack them.

4      In *Shoaf*, the Fifth Circuit held that the confirmed plan

5  was res judicata with respect to a suit by the creditor

6  against the guarantor.  And in so ruling, the Fifth Circuit

7  says that the prong of res judicata standard that requires an

8  order, prior order to be made by a court of competent

9  jurisdiction is satisfied regardless of whether the issue was

10 actually litigated.  This is because whenever a court enters

11 an order, it does so by implicitly making a finding of its

12 jurisdiction, a determination that can't be attacked.  And in

13 fact, in the January 9th and the July 16th orders, it wasn't

14 implicit, the Court's jurisdiction; it was set out that the

15 Court had core jurisdiction.

16     Movants try to brush *Shoaf* aside, arguing that is the only

17 case the Debtor cites to support res judicata argument and is

18 a narrow opinion that has been questioned and distinguished.

19 That's just not correct, Your Honor.  Movants ignore that we

20 have cited two United States Supreme Court cases, *Stoll v.*

21 *Gottleib* and *Chicot County Drainage District*, upon which the

22 Fifth Circuit based its *Shoaf* decision.  In each case, the

23 U.S. Supreme Court gave res judicata effect to a Bankruptcy

24 Court order that made a ruling party -- that a ruling party

25 later claimed was beyond the Court's jurisdiction to do so.

1   In *Stoll*, it was a release of guaranty without jurisdiction,

2   like *Shoaf*.  In *Chicot*, it was an extinguishment of a bond

3   claim without jurisdiction.

4        Similarly, Your Honor, the U.S. Supreme Court held in

5   *Espinosa* that a party was not entitled to reconsideration of a

6   Bankruptcy Court order under Federal Rule of Civil Procedure

7   60(b)(4) discharging a student loan without making the

8   required statutory finding of undue hardship in an adversary

9   proceeding.  And the Supreme Court reasoned in that opinion as

10  follows:  A judgment is not void, for example, simply because

11  it may have been erroneous.  Similarly, a motion under

12  60(b)(4) is not a substitute for a timely appeal.  Instead,

13  60(b)(4) applies only in the rare instance where a judgment is

14  premised either on a certain type of jurisdictional error or a

15  violation of due process that deprives a party of notice or

16  the opportunity to be heard.

17       Federal courts considering Rule 60(b)(4) motions that

18  assert a judgment is void because of a jurisdictional defect

19  generally have reserved it only for the exceptional case in

20  which the court that rendered the judgment lacked even an

21  arguable basis for jurisdiction.  This case is not the

22  exceptional -- exceptional circumstance that was referred to

23  by *Espinosa*.

24       In addition, we argue in our brief, and I'll get to in a

25  few moments, that both of the orders are justified under the

45

1  *Barton* doctrine.

2      Actually, before I go to that, Your Honor, I think Movants

3  are really trying to distinguish *Espinosa* by arguing that the

4  Court's order exculpating Mr. Seery for negligence liability

5  did not provide people, mom-and-pop investors, with the due

6  process informing them that they would not be able to assert

7  duty claims based upon mere negligence.  I think that's the

8  core of Mr. Bridges' argument, that, hey, you entered an

9  order, you gave this exculpation, it was inappropriate, and it

10  couldn't be done.

11      There are several problems with Movants' argument.  First,

12  Movants mischaracterize both the facts and the law in

13  connection with the Debtor's relationship with its investors.

14  The Debtor is the registered investment advisor for HCLOF as

15  well as approximately 15 to 18 CLOs.  The only investor in

16  HCLOF other than the Debtor is CLO Holdco.  The investors in

17  the CLOs are the retail funds advised by the Dondero advisors

18  and the other -- and other institutional investors.

19  Accordingly, the thousands of investors, the mom-and-pop

20  investors whose due process rights have allegedly been

21  trampled by the January 9th and July 16th orders, are not

22  investors in any funds managed by the Debtor.

23      And, of course, I have mentioned, as I've mentioned

24  before, no non -- non-Dondero investor, be it a mom-and-pop

25  investor, another institutional investor, anyone unrelated to

46

1   Mr. Dondero, has ever appeared in this Court to challenge the

2   Debtor's activities.

3        But more fundamentally, Your Honor, the Debtor does not

4   owe fiduciary duties to investors in any of the funds that the

5   Debtor advises.  The fiduciary duty that the Debtor owes is to

6   the funds themselves, not the investors in the funds.

7        And while Movants point to Mr. Seery's prior testimony to

8   support the argument that the Debtor owes a duty to investors,

9   Mr. Seery was not testifying as a lawyer and his testimony

10  just cannot change the law.

11       As to each of the funds that the Debtor manages, HCLOF and

12  the CLOs, they were each provided with actual notice of the

13  January 16th -- the July 16th order and didn't object.  And as

14  Your Honor will recall, the Trustees for the CLOs, the party

15  that could potentially have claims for breach of fiduciary

16  duty, they participated in the January 9th hearing.  They came

17  to the Court and were concerned about the protocols that the

18  Debtor was agreeing to with the Committee.  We revised them.

19  The Trustees didn't object.  They didn't object then; they

20  didn't object now.  And, in fact, they consented to the

21  assumption of the contracts between the Debtor and the CLOs.

22       So the argument that the orders, by having this

23  exculpation for future conduct, violated due process rights of

24  anyone and is the type -- essentially, the type of order that

25  *Espinosa* would have contemplated could be attacked, is --

47

1  relies on faulty legal and factual premises.  No duty to

2  investors.  No private right of action.  And both -- and all

3  the funds received due process.

4      In addition, Your Honor, as we argue in our brief and I'll

5  get to in a few moments, both of the orders are justified

6  under the *Barton* doctrine, as Mr. Seery is entitled to

7  protection based upon how courts around the country have

8  interpreted the *Barton* doctrine.  As such, Mr. Seery is

9  performing his role both as an agent of the independent board

10  under the January 9th order, as a CEO under the July 16th

11  order, as a quasi-judicial officer.  And as Your Honor

12  examined in the *Ondova* opinion which you mentioned, trustees

13  are entitled to qualified immunity for damage to third parties

14  resulting from simple negligence, provided that the trustee is

15  operating within the scope of his duties and is not acting in

16  an *ultra vires* manner.

17      So, exculpating the independent directors, their agents,

18  and the CEO in the January 9th and July 16th orders was a

19  recognition by this Court that they would be entitled to

20  qualified immunity, much in the same way trustees are.

21      No doubt that Movants contend that this was error and that

22  the Court overreached.  However, the remedy for that overreach

23  was an appeal, not a reconsideration 16 months later.  The

24  Court's orders based upon the determination that in this

25  highly contentious case that these court officers needed to be

48

1  protected from negligence suits is not the exceptional case

2  where the Court lacked any arguable basis for jurisdiction.

3  Accordingly, this Court must follow *Espinosa*, *Shoaf*, *Stoll*,

4  and *Chicot* and reject the attack on the prior court orders.

5      The only case Movants cite to challenge the Supreme

6  Court's decision -- to challenge the Supreme Court precedent I

7  mentioned and the Fifth Circuit's *Shoaf* decision is the

8  *Applewood* case. *Applewood* is totally consistent with *Shoaf*.

9  *Applewood* also involved a plan that purported to release a

10 guaranty claim that the guarantor argued was res judicata in

11 subsequent litigation regarding the guaranty. The Fifth

12 Circuit held in that case that the plan was not res judicata.

13 It made that ruling because the plan did not contain clear and

14 unambiguous language releasing the guaranty. In that way, the

15 Fifth Circuit distinguished *Shoaf*.

16     *Applewood* and *Shoaf* are consistent. A Bankruptcy Court

17 order will be given res judicata effect, even if the Court

18 didn't have jurisdiction to enter it, if the order was clear

19 and unambiguous. In *Shoaf*, the release was. In *Applewood*, it

20 wasn't.

21     Movants argued on June 8th and argue now that the

22 *Applewood* case really argues -- really deals with prospective

23 exculpation of claims. I went back and read Mr. Bridges'

24 comments carefully of June 8th. He said *Applewood*,

25 exculpation. Well, that's just not correct. *Applewood* is all

Case 22-03052-sgj Doc 32 Filed 07/26/22    Entered 07/26/22 14:17:26    Page 687 of 865

49

1   about requiring specificity of a (garbled) to give it res

2   judicata effect.  Claims that existed at that time, were they

3   described clearly and unambiguously?  Yes?  *Shoaf* applies.

4   No?  *Applewood* does -- applies.

5       So how should the Court apply these principles here?  The

6   Court approved a procedure for certain claims in the

7   governance orders.   The procedure:  come to Bankruptcy Court

8   before pursuing a claim against the independent directors and

9   Seery or their agents so that the Court can make a

10  colorability determination.  Clear and unambiguous.  The

11  governance orders each provide that the Bankruptcy Court had

12  jurisdiction to enter the orders, and the orders were not

13  appealed.

14      Movants attempt to confuse the Court and argue *Applewood*

15  is on point because the January 9th and July 16th orders do

16  not clearly identify specific claims that Movants now have

17  that are being released.  And because they're not specific,

18  then basically it's an ambiguous release and *Applewood*

19  applies.

20      The problem with the Movants' argument is that neither the

21  January 9th or July 16th orders released claims that existed

22  at that time.  If they did, and if there wasn't an adequate

23  description, I might agree with Mr. Bridges that *Applewood*

24  applied.  But there were no claims.  It was prospective.  It

25  was a standard of care.  The Court clearly and unambiguously

50

1  said what the standard of care would be going forward.

2  Clearly, under *Shoaf* and Supreme Court precedent, they are

3  entitled to res judicata because it's a clear and unambiguous

4  provision.  *Applewood* just simply doesn't apply.

5      Mr. Phillips at the last hearing made an impassioned plea

6  to the Court for a narrow interpretation of the exculpation

7  provisions in the January 9th and July 16th orders, and he

8  argued that the Court could not possibly have intended for the

9  exculpation for negligence to apply on a go forward basis.  He

10  thus argued to the Court that the Court should construe the

11  exculpation narrowly and only apply it to potential claims of

12  harm caused to the Debtor, as opposed to harm caused to third

13  parties, which he said included thousands of innocent

14  investors.

15      Of course, Mr. Phillips made those arguments unburdened by

16  the actual facts and the prior proceedings which led to the

17  entry of these orders, because, as he was the first to admit,

18  he only became involved in the case a month ago.

19      As the Court recalls, and as reinforced by Mr. Seery's and

20  Mr. Dubel's testimony I just mentioned, the exculpation

21  provisions were included precisely to prevent Mr. Dondero,

22  through any one of the entities he's owned and controlled, the

23  Movants being two of those, from asserting baseless claims

24  against the beneficiaries of those orders, exactly the

25  situation Mr. Seery now finds himself in.

51

1      And, again, it bears emphasizing:  throughout this case,

2  not one of the purported public investors Mr. Phillips

3  lamented would be prevented from holding Mr. Seery responsible

4  for his conduct has ever appeared in this case to object about

5  anything.  And none of the directors of the funds, the funds

6  where the Debtor acts as an investment adviser, have ever

7  stepped foot in this court, either.

8      Even if the Court declines to apply res judicata, Your

9  Honor, to prevent challenges to the governance orders, the

10  Court has the jurisdiction, had the jurisdiction to include

11  the gatekeeping provisions in those orders.  The Bankruptcy

12  Court derives its jurisdiction from 28 U.S.C. Section 157, and

13  bankruptcy jurisdiction is divided into two parts:  core

14  matters, which are those arising in or arising under Title 11,

15  and noncore matters, those matters which are related to a

16  Chapter 11 case.

17      Bankruptcy Courts may enter final orders in core

18  proceedings, and with the consent of parties, noncore

19  proceedings.  If a party does not consent to a final judgment

20  in the noncore matters or waives its right to consent, then

21  the Bankruptcy Court -- or does not waive its right to

22  consent, then the Bankruptcy Court issues a report and

23  recommendation to the District Court.

24      The seminal Fifth Circuit case on bankruptcy court

25  jurisdiction is the 1987 case of *Wood v. Wood*, 825 F.2d 90.

52

1  There, the Fifth Circuit held that the Bankruptcy Court has

2  related to jurisdiction over matters if the outcome of that

3  proceeding could conceivably have any effect on the estate

4  being administered in the bankruptcy.

5     More recently, the Fifth Circuit, in the 2005 case, in

6  *Stonebridge Tech's*, elaborated on when a matter has a

7  conceivable effect on the estate such as to confer Bankruptcy

8  Court jurisdiction.  There, the Fifth Circuit held that an

9  action is related to bankruptcy if the outcome could alter the

10 debtor's rights, liabilities, options, or freedom of action,

11 either positively or negatively, and which in any way impacts

12 upon the handling and the administration of the bankruptcy

13 estate.  It is against this backdrop, Your Honor, that the

14 Court should evaluate its jurisdiction to have entered the

15 orders.

16    So, again, what did the orders do?  They established

17 governance over the Chapter 11 debtor with new independent

18 directors being approved.  They established the procedures and

19 protocols of how transactions were going to be presented to

20 and approved by the Committee.  They vested in the Committee

21 certain related-party claims, and they provided for the

22 procedures parties would have to follow to assert any claims

23 against the independent directors and the CRO and the agents

24 and advisors.

25    Your Honor, it's hard to imagine that there is a more core

53

1  order than the entry of these orders.  At the time the orders

2  were entered, the Court was well aware of the potential for

3  acrimony from Mr. Dondero and his related entities, and

4  included the gatekeeper provisions to prevent the Debtor's

5  estate from being embroiled in frivolous litigation against

6  the board and the CEO.

7       Such protections were clearly within the Court's

8  jurisdiction, both to protect the administration of the estate

9  but also under applicable Fifth Circuit law dealing with

10  vexatious litigants, as set forth in the *Baum* and *Carroll*

11  cases that the Court cited in its confirmation order.

12      Not that it was hard to predict, but the last several

13  months have reinforced how important the gatekeeping

14  provisions in the order are and how important similar

15  provisions in the plan are.

16      The Court heard extensive testimony at the confirmation

17  hearing regarding the havoc continued litigation by Mr.

18  Dondero and his related entities would cause, which

19  predictions have unfortunately been borne out by the

20  unprecedented blizzard of litigation involving Mr. Dondero and

21  his related entities that has consumed the Court over the last

22  several months and caused the estate to incur millions of

23  dollars in fees that could have been used to pay its

24  creditors.

25      And these attacks are continuing.  As I mentioned before,

54

1    in addition to the DAF lawsuit, Sbaiti & Co. filed an action

2    against the Debtor on behalf of PCMG, another related entity,

3    alleging postpetition mismanagement of the Select Fund.

4         And to complete the hat trick, they are the lawyers

5    seeking to sue Acis in the Southern District of New York for

6    allegedly post-confirmation matters.

7         The Court knew then and certainly knows now that the

8    potential for sizable indemnification claims could consume the

9    estate.  The Court used that as the potential basis for

10   determining that the orders were within its jurisdiction, just

11   as it used that potential to justify the exculpation

12   provisions in the plan as being consistent with *Pacific

13   Lumber*.

14        Movants also ignore the cases -- and we cited in our

15   opposition -- where courts in this district, including Judge

16   Lynn in *Pilgrim's Pride* in 2010 and Judge Houser in the *CHC

17   Group* in 2016, approved gatekeeper provisions that provided

18   the Bankruptcy Court with exclusive jurisdiction to adjudicate

19   claims against postpetition fiduciaries.

20        Movants also ignore cases outside this district, including

21   *General Motors* and *Madoff*, which we cited in our brief as

22   examples of cases where Bankruptcy Courts have been used as

23   gatekeepers to determine if claims are colorable or being

24   asserted against the correct entity.

25        And there's another reason, Your Honor, why Movants may

55

1   now not contest the Court's jurisdiction to have entered those

2   orders.  Each of those orders, as I said before, include a

3   finding that the Court had core jurisdiction to enter the

4   orders.  No party contested that finding or refused to consent

5   to the core jurisdiction.

6        Under well-established Supreme Court precedent, parties

7   can waive their right to challenge the Bankruptcy Court's

8   jurisdiction, core jurisdiction, by failing to object.  In

9   *Wellness v. Sharif* in 2015, the Supreme Court expressly held

10  that Article III was not violated if parties knowingly and

11  voluntarily consented to adjudication of *Stern v. Marshall*-

12  type alter ego claims, and that the consent need not be

13  express, so long as it was knowing and voluntary.

14       And *Wellness* confirmed the pre-*Stern* opinion of the Fifth

15  Circuit in the 1995 *McFarland* case, which held that a person

16  who fails to object to the Bankruptcy Court's assumption of

17  core jurisdiction is deemed to have consented to the entry of

18  a final order by the Bankruptcy Court.

19       Your Honor, I'd now like to turn to the *Barton* doctrine.

20  The Court also has jurisdiction to have entered the orders

21  based upon the *Barton* doctrine.  The *Barton* doctrine dates

22  back to an old United States Supreme Court case and provides

23  as a general rule that, before a suit may be brought against a

24  trustee, consent from the appointing court must be obtained.

25       Movants essentially make two arguments why the *Barton*

**Appx. 00689**

56

1  doctrine doesn't apply.

2      First, Movants, without citing any authority, argue that

3  it does not apply to Mr. Seery because he is not a trustee or

4  receiver and was not appointed by the Court.  Although the

5  doctrine was originally applied to receivers, it has been

6  extended over time to cover various court-appointed

7  fiduciaries and their agents in bankruptcy cases, including

8  debtors in possession, officers and directors of the debtor,

9  and the general partner of the debtor.  And although Mr.

10 Bridges says he couldn't find one case that applied the *Barton*

11 doctrine to a court-retained professional, I will now talk

12 about several such cases.

13     In *Helmer v. Pogue*, a 2012 case cited in our brief, the

14 District Court for the Northern District of Alabama

15 extensively analyzed the *Barton* doctrine jurisprudence from

16 the Eleventh Circuit and beyond and concluded that it applied

17 to debtors in possession.  The *Helmer* Court relied in part on

18 a prior 2000 decision of the Eleventh Circuit in *Carter v.*

19 *Rodgers*, which held that the doctrine applies to both court-

20 appointed and court-approved officers of the debtor, which is

21 consistent with the law in other circuits.

22     And subsequently, the Eleventh Circuit again considered --

23 and in that case, the distinction of a court-appointed as a

24 court-retained professional was -- was not persuasive to the

25 Court, and the Court held that a court-retained professional

57

1    can still have *Barton* protection, notwithstanding that he

2    wasn't appointed, the argument that Mr. Bridges tries to make.

3        And subsequently, --

4            THE COURT:  I wonder, was that -- was that Judge

5    Clifton Jessup, by chance?  Or maybe Bennett?

6            MR. POMERANTZ:  Your Honor, this was -- this was the

7    Eleventh Circuit *Carter v. Rodgers*, so I think Judge Jessup

8    was --

9            THE COURT:  Oh, I thought you were still talking

10   about the Alabama case.  No?

11           MR. POMERANTZ:  Yeah, the Alabama -- well, the

12   Alabama case referred to the Eleventh Circuit case, *Carter v.*

13   *Rodgers*, --

14           THE COURT:  Okay.

15           MR. POMERANTZ:  -- and the appointment and -- or

16   retention issue was discussed in the *Carter v. Rodgers* case.

17           THE COURT:  Okay.

18           MR. POMERANTZ:  And subsequently, the Eleventh

19   Circuit again considered the contours of the *Barton* doctrine

20   in *CDC Corp.*, a 2015 case, 2015 U.S. App. LEXIS 9718.  In that

21   case, which Your Honor referenced in your *Ondova* opinion,

22   which I will discuss in a few moments, the Eleventh Circuit

23   held that a debtor's general counsel who had been approved by

24   the Court, who was appointed by a chief restructuring officer

25   who was also approved by the Court, was covered by the *Barton*

**Appx. 00691**

58

1   doctrine for acts taken in furtherance of the administration

2   of the estate and the liquidation of the assets.

3        And the Eleventh Circuit last year, in *Tufts v. Hay*, 977

4   F.3d 204, reaffirmed that court-approved counsel who function

5   as the equivalent of court-appointed officers are entitled to

6   protection under *Barton*.  While the Court in that case

7   ultimately ruled that counsel could be sued without first

8   going to the Bankruptcy Court, it did so because it determined

9   that the suit between two sets of lawyers would not have any

10  effect on the administration of the estate.

11       So, Your Honor, not only is there authority, there is

12  overwhelming authority that Mr. Seery is entitled to the

13  protections.

14       In *Gordon v. Nick*, a District -- a case from 1998 from the

15  Fourth Circuit, the Court that the *Barton* doctrine applied to

16  a lawsuit against a general partner who was responsible for

17  administering the bankruptcy estate.

18       And as I mentioned, Your Honor, and as Your Honor

19  mentioned, Your Honor had reason to look at the *Barton*

20  doctrine in length and in depth in the 2017 *Ondova* opinion.

21  And in the course of the opinion, Your Honor discussed one of

22  the policy rationales for the doctrine, which you took from

23  the Seventh Circuit's *Linton* opinion, and you said as follows:

24  "Finally, another policy concern underlying the doctrine is a

25  concern for the overall integrity of the bankruptcy process

59

1  and the threat of trustees being distracted from or

2  intimidated from doing their jobs.  For example, losers in the

3  bankruptcy process might turn to other courts to try to become

4  winners there by alleging the trustee did a negligent job."

5      Here, the independent board was approved by the Court as

6  an alternative to the appointment of a Chapter 11 trustee.

7  And it and its agent, including Mr. Seery as the CEO, even

8  before the July 16th order, were provided protections in the

9  form of the gatekeeper order and exculpation.

10     I'm sure the Court has a good recollection of the January

11  9th hearing -- we've talked about it a lot in the proceedings

12  before Your Honor -- where the Debtor and the Committee

13  presented the governance resolution to Your Honor.  And as

14  Your Honor will recall, the appointment of the board was a

15  hotly-contested issue among the Debtor and the Committee and

16  was heavily negotiated.  And the appointment of the

17  independent board was even contested by the United States

18  Trustee at a hearing on January 20th, 2020.

19     I refer the Court to the transcripts of the hearings on

20  January 9th and January 20th of 2020, which clearly

21  demonstrate that appointing this board and giving it the

22  rights and protections and its agents the rights and

23  protections was not your typical corporate governance issue,

24  but it was essentially the Court's alternative to appointing a

25  trustee.  And recognizing that the members of the independent

60

1  board were essentially officers of the Court, the Court

2  approved the gatekeeper provision, requiring parties first to

3  come and seek the Court's permission before suing them, in

4  order to prevent them from being harassed by frivolous

5  litigation.

6      And the independent board was given the responsibility in

7  the January 9th order to retain a CEO it deemed appropriate,

8  and it did so by retaining Mr. Seery.

9      Recognizing the *Barton* doctrine as it applies to Mr. Seery

10 is consistent with a legion of cases throughout the United

11 States, and Movants' argument that Mr. Seery is not court-

12 appointed is just wrong.

13     Second, Your Honor, Movants cite without any authority,

14 argue that even if the *Barton* doctrine applied there is an

15 exception which would allow it to pursue a claim against Mr.

16 Seery without leave of the Court.

17     The Debtor agrees the 28 U.S.C. § 959 is an exception to

18 the *Barton* doctrine.  Section 959(a) provides that trustees,

19 receivers, or managers of any property, including debtors in

20 possession, may be sued without leave of the court appointing

21 them with respect to any of their acts or transactions in

22 carrying on business connected with such property.

23     As the Court also pointed out at the June 8th hearing, and

24 Mr. Bridges alluded to in his argument, the last sentence of

25 959(a) provides that such actions -- clearly referring to

61

1  actions that may be pursued without leave of the appointing

2  court -- shall be subject to the general equity power of such

3  court, so far as the same may be necessary to the ends of

4  justice.

5      And Mr. Bridges made a plea, saying you can't take away my

6  jury trial right there.  You just cannot do that.  Well, I

7  have two answers to that, Your Honor.  One, they relinquished

8  their jury trial right.  We've established that.  Okay?

9      The second is allowing Your Honor to act as a gatekeeper

10 has nothing to do with their jury trial right.  Allowing Your

11 Honor to act as a gatekeeper allows you to determine whether

12 the action could go forward, and it'll either go forward in

13 Your Honor's court or some other court.

14     And the argument that the exculpation was essentially a

15 violation of 959 is just -- is just -- it just is twisting

16 what happened.  You have an exculpation provision.  We already

17 went through the authority the Court had to give an

18 exculpation.  With respect to these litigants who are before

19 Your Honor -- we're not talking about anyone else who's coming

20 in to try to get relief from the order; we're talking about

21 these litigants -- we've already established that they were

22 here, they're bound by res judicata.  So their 959 argument

23 goes away.

24     And as the Court -- and separate and apart from that, the

25 issue at issue in the District Court litigation is -- is not

1  even subject to 959.

2      Mr. Bridges says, well, of course it is because it deals

3  with the administration of the estate.  I'd like to refer to

4  what the Court said -- this Court said in its *Ondova* opinion:

5  The exception generally applies to situations in which the

6  trustee is operating a business and some stranger to the

7  bankruptcy process might be harmed, such as a negligence claim

8  in a slip-and-fall case, and is inapplicable to suits based

9  upon actions taken to further the administering or liquidating

10  the bankruptcy estate.

11      And your *Ondova* opinion is consistent with the Third and

12  Eleventh Circuit opinions Your Honor cited in your opinion, as

13  well as numerous other --

14      (Interruption.)

15          MR. POMERANTZ:  -- from the -- from around the

16  country, including cases from the First, Second, Sixth,

17  Seventh, and Ninth Circuits.  And I'm not going to give all

18  the cites to those cases, but it's not a -- it's not a

19  remarkable proposition that Your Honor relied on in *Ondova*.

20      In addition, several of these cases, including the

21  Eleventh Circuit's *Carter* opinion, have been cited with

22  approval by the Fifth Circuit in *National Business Association

23  v. Lightfoot*, a 2008 unpublished opinion for this very point.

24  The *Barton* exception of 959 does not apply to actions taken in

25  the administration of the case and the liquidation of assets

63

1  in the estate.

2      Suffice it to say that it's clear that the Section 959

3  exception to *Barton* has no applicability in this case.

4  Movants, hardly strangers to the bankruptcy case, want to sue

5  Mr. Seery for acts taken relating to a settlement of very

6  complex and significant claims against the estate.  They want

7  to sue a court-appointed fiduciary for doing his job,

8  resolving claims against the estate and his management of the

9  bankruptcy estate.  And they want to do this outside of the

10 Bankruptcy Court.

11     Settlement of the HarbourVest claim, which is where this

12 claim arises under -- whether it's a collateral attack now or

13 not, and we say it is, is for another issue -- but it clearly

14 arises in the context of settlement of the HarbourVest claim,

15 is the quintessential act to further the administration and

16 liquidation of the bankruptcy estate, and certainly doesn't

17 fall within the 959 exception.

18     Movants seem to be arguing that 959(a) makes a distinction

19 between claims against Mr. Seery that damaged the Debtor and

20 claims against Mr. Seery that damaged third parties.  However,

21 the Movants make up that distinction, and it's not in the

22 statute, it's not in the case law.  The focus is not on who

23 the conduct damages, but it's rather on whether the conduct

24 was taken in connection with the administration or the

25 liquidation of the estate.

64

1    And even if the Debtor is wrong, Your Honor, which it's

2    not, the savings clause allows the Court to determine whether

3    leave to be -- sue will be granted.  Given that these claims

4    are asserted by Dondero-related entities, if not controlled

5    entities, no serious argument exists that the equities do not

6    permit this Court to determine if leave to sue is appropriate.

7    Accordingly, Movants' argument that the orders create this

8    tension with 959 is simply an over-dramatization.  And in any

9    event, Your Honor, there's a basis independent of *Barton* that

10   supports the jurisdiction to enter the orders, as I mentioned.

11   But even if the orders only relied on *Barton*, there is an

12   easy fix to Movants' concerns:  let them come to court and

13   argue that the type of suit they are bringing allegedly falls

14   within the exception of 959.

15   Your Honor, Movants argue that the Bankruptcy Court may

16   not act as a gatekeeper if it would not have jurisdiction to

17   deal with the underlying action.  They essentially argue that

18   an Article I judge may not pass on the colorability of a

19   claim, that it should be decided by an Article III judge.

20   This is the same argument, Your Honor, that Your Honor

21   rejected in connection with plan confirmation and which I

22   touched on earlier.

23   And the reason why Your Honor rejected it is because

24   there's no law to support it.  In fact, there is Fifth Circuit

25   law that holds to the contrary.  And we talked about a little

65

1   bit the Fifth Circuit case decided is *Villegas v. Schmidt* in

2   2015.  And *Villegas* is a simple case.  Schmidt was appointed

3   trustee over a debtor and liquidated its estate and the

4   Bankruptcy Court approved his final fees.  Four years later,

5   Villegas and the prior debtor sued Schmidt in District Court,

6   the district in which the Bankruptcy Court was pending,

7   arguing that he was negligent in the performance of his

8   duties.  The District Court dismissed the case because

9   Villegas failed to obtain Bankruptcy Court approval to bring

10  the suit under the *Barton* doctrine.

11      On appeal, Villegas argued *Barton* didn't apply for two

12  reasons.  First, that *Stern v. Marshall* created an exception

13  to the *Barton* doctrine for claims that the Bankruptcy Court

14  would not have the jurisdiction to adjudicate.  And second,

15  that *Barton* did not apply if the suit is brought in the

16  District Court, which exercises supervisory authority over the

17  Bankruptcy Court that appointed the trustee.  Pretty much the

18  argument that was made by Movants at the contempt hearing.

19      The Fifth Circuit rejected both arguments.  It held that

20  the existence of a *Stern* claim does not impact the Bankruptcy

21  Court's authority because *Stern* did not overrule *Barton* and

22  the Supreme Court had cautioned circuit courts against

23  interpreting later cases as impliedly overruling prior cases.

24      More importantly, the Fifth Circuit pointed to a post-

25  *Stern* 2014 case, *Executive Benefits v. Arkison*, 573 U.S. 25

66

1   (2014), which held that *Stern* does not decide how a Bankruptcy

2   Court or District Courts should proceed when a *Stern* creditor

3   is identified, as support for the argument that *Barton* is

4   still good law, even dealing with a *Stern* claim.

5       Second, the Fifth Circuit, joining every circuit to have

6   addressed the issue, ruled that the District Court and the

7   Bankruptcy Court are distinct from one another and the

8   Bankruptcy Court has the exclusive authority to determine the

9   colorability of *Barton* claims and that the supervisory

10  District Court does not.

11      Movants didn't address *Villegas* in their reply.  Briefly

12  tried to distinguish it, unconvincingly, today.  The bottom

13  line is *Villegas* is directly applicable.  Your Honor cited it

14  in the *Ondova* opinion for precisely the proposition that

15  *Barton* applies whether or not the Court has authority to

16  adjudicate the claim.

17      Accordingly, Your Honor, it was within the Court's

18  jurisdiction to require a party to seek approval of Your Honor

19  on the colorability of a claim before an action may be

20  commenced or pursued against the protected parties, even if

21  Your Honor wouldn't have authority to adjudicate the claim at

22  the end of the day.

23      In fact, some courts have even addressed the proper

24  procedure for doing so, requiring the putative plaintiff to

25  not only seek leave of Bankruptcy Court but also to provide a

67

1   draft complaint and a basis for the Court to determine if the
2   claim is colorable.
3       Movants have done neither, and they should not be
4   permitted to modify the final orders of the Court as a
5   workaround.
6       Your Honor, that concludes my presentation.  I'm happy to
7   answer any questions Your Honor may have.
8           THE COURT:  All right.  Not at this time.  All right.
9   I'm going to figure out, do we need a break or not, depending
10  on what Mr. Bridges tells me.  I assume we're just doing this
11  on argument today.  I think that's what I heard.  No witnesses
12  or exhibits.
13          MR. BRIDGES:  That is correct, Your Honor.
14          THE COURT:  Okay.  Mr. Bridges, how long do you
15  expect your rebuttal to take so I can figure out does the
16  Court need a break?
17          MR. BRIDGES:  Fifteen minutes plus whatever it takes
18  to submit agreed-to exhibits.
19          THE COURT:  Okay.  Let's take a five-minute bathroom
20  break.  We'll come back.  It's -- what time is it?  It's 1:11
21  Central time.  We'll come back in five minutes.
22          THE CLERK:  All rise.
23      (A recess ensued from 1:11 p.m. until 1:17 p.m.)
24          THE CLERK:  All rise.
25          THE COURT:  All right.  Please be seated.  We're

68

1  going back on the record in the Highland matters.

2      Mr. Bridges, time for your rebuttal.  I want to ask you a

3  question right off the bat.  Mr. Pomerantz pointed out

4  something that was on my list that I forgot to ask you when

5  you made your initial presentation.  What is the authority

6  you're relying on?  You did not cite a statute or a rule *per*

7  *se*, but I guess we can probably all agree that Bankruptcy Rule

8  9024 and Federal Rule 60 is the authority that would govern

9  your motion, correct?

10          MR. BRIDGES:  I don't agree, Your Honor.  I don't

11  believe this is a final order that we're contesting here.  And

12  I think that's demonstrated by the Court's final confirmation

13  -- plan -- plan confirmation order that seeks to modify this

14  order or will modify this order upon being -- being effective.

15  So I don't think so.

16      In the alternative, if we are challenging a final order,

17  then I think you're right as to the rules that would be

18  controlling.

19          THE COURT:  All right.  Well, let me back up.  Why

20  exactly do you say this would be an interlocutory order as

21  opposed to a final order?

22          MR. BRIDGES:  Because of its nature, Your Honor.

23  While the appointment in the order or the approval of the

24  appointment in the order might, as a separate component of the

25  order, have -- have finality, the provisions -- the provisions

69

1  in it relating to gatekeeping and exculpation are, we think,

2  by their very nature, quite obviously interlocutory and not

3  permanent.  They don't seem to indicate an intention by any of

4  the parties that, 30 years from now, if Mr. Seery is still CEO

5  at Highland, long after the bankruptcy case has ended, that

6  nonetheless parties would be prohibited from bringing claims,

7  strangers to this action would be prohibited from bringing

8  claims related to his CEO role.

9      I think the nature of it demonstrates that, the

10 modifications to it, and even the inclusion of it in the final

11 plan confirmation, as well as -- can't read that.

12        THE COURT:  Can you give me some authority?  Because

13 as we know, there's a lot of authority out there in the

14 bankruptcy universe on what discrete orders are interlocutory

15 in nature that a bankruptcy judge might routinely enter and

16 which ones are final.  You know, it would just probably, if I

17 flipped open *Collier's*, I could -- you know, it would be mind-

18 numbing.

19     So what authority can you rely on?  I mean, is there any

20 authority that says an employment order is not a final order?

21 That would be shocking to me if you have cases to that effect,

22 but, I mean, of course, sometimes we do interim on short

23 notice and then final.  But this would be shocking to me if

24 there is case authority to support the argument this is not a

25 final order.  But I learn something new every day, so maybe I

70

1  would be shocked and there is.

2         MR. BRIDGES:  Your Honor, I'd point you to *In re*

3  *Smyth*, 207 F.3d 758, and *In re Royal Manor*, 525 B.K. 338

4  [sic], for the proposition that retaining a bankruptcy

5  professional is an interlocutory order.

6         THE COURT:  Okay.  Stop for a moment.  The *Smyth*

7  case.  Which court is that?

8         MR. BRIDGES:  Fifth Circuit.

9         THE COURT:  Okay.  So tell me the facts.  I'm

10  surprised I don't know about this case.  But, again, I don't

11  know every case.  So, it held that an employment order is an

12  interlocutory order?

13         MR. BRIDGES:  Appointing counsel.  A professional in

14  the bankruptcy context, Your Honor.

15         THE COURT:  Counsel for a debtor-in-possession?  An

16  order approving counsel was an interlocutory order?

17         MR. BRIDGES:  Yes, or the Trustee's counsel.

18         THE COURT:  Or the Trustee's counsel?  Okay.  What

19  were the circumstances?  Was this on an expedited basis and

20  there wasn't a follow-up final order, or what?

21         MR. BRIDGES:  Your Honor, I don't have -- I don't

22  have that at the tip of my memory.  I'm sorry.

23         THE COURT:  Okay.  And the other one, 525 B.R. 338,

24  what court was that?

25         MR. BRIDGES:  It's a Bankruptcy Court within the

71

1  Sixth Circuit.  I'm not certain which district.

2          THE COURT:  All right.  Well, maybe one of you two

3  over there can look them up and give me the context, because

4  that is surprising authority.  Or other lawyers on the WebEx

5  maybe can do some quickie research.

6      Okay.  We'll come back to that.  But assuming that this

7  was a final order, which I have just been presuming it was,

8  Rule 60 is the authority you're going under?  9024 and Rule

9  60, correct?

10         MR. BRIDGES:  Your Honor, we have not invoked those

11  rules.  Alternatively, I think you're right that they would

12  control if we are wrong about the interlocutory nature of the

13  order.

14         THE COURT:  Well, you have to be going under certain

15  -- some kind of authority when you file a motion.  So I'm --

16         MR. BRIDGES:  As an alternative --

17         THE COURT:  I'm approaching this exactly, I assure

18  you, as the District Court or a Court of Appeals would.  You

19  know, you start out, what is the legal authority that is being

20  invoked here?

21         MR. BRIDGES:  Well, --

22         THE COURT:  So I just assume Rule 60.  I can't, you

23  know, come up with anything else that would be the authority.

24         MR. BRIDGES:  Yes, Your Honor.  You also have

25  inherent power to modify orders that are in violation of the

72

1   law.  And we pointed you to --

2          THE COURT:  Now, is that right?  Is that really

3   right?  Why do we have Rule 60 if I can just willy-nilly, oh,

4   I feel like I got that wrong two years ago?  I can't do that,

5   can I?  Rule 60 is the template for when a court can do that.

6   Parties are entitled to rely on orders of courts.  And that's

7   why we have Rule 60, right?  So, --

8          MR. BRIDGES:  Your Honor, I think -- I think that

9   we're miscommunicating.  I'm trying not to rely on Rule 60 in

10  the first instance because in the first instance we view this

11  as not a final order.  So, in the first instance, --

12         THE COURT:  I got that.  And I've got my law clerks

13  looking up your cases to see if they convince me.  But I'm

14  asking you to go to layer two.  Assuming I don't agree with

15  you these are final orders, what is your authority for the

16  relief you're seeking?

17         MR. BRIDGES:  Yes, Your Honor.  Rule 60 would apply

18  in the alternative.

19         THE COURT:  All right.

20         MR. BRIDGES:  That's correct.

21         THE COURT:  So, which provision?  Which provision of

22  Rule 60?  (b) what?

23         MR. BRIDGES:  Your Honor, I'm not prepared to concede

24  any of them.  I don't have the rule in front of me.

25         THE COURT:  You're not prepared to concede what?

**Appx. 00706**

73

1          MR. BRIDGES:  Any of the provisions of Rule 60.  Just

2   (b)(1), (b)(2), especially, but I'm -- I'm -- Rule 60 is our

3   basis, as is the particulars (b)(1), (2), (6) --

4          (Garbled audio.)

5          THE COURT:  Okay.  You're breaking up.  Can you

6   restate?

7          MR. BRIDGES:  (b)(1), (2), and (6), as -- as well as

8   any other provision, Your Honor, of Rule 60.

9          THE COURT:  Okay.  Well, so (1), mistake,

10  inadvertence, surprise, excusable neglect.  Which one of

11  those?

12         MR. BRIDGES:  All of the above, Your Honor.

13         THE COURT:  Surprise?  Who's surprised?

14         MR. BRIDGES:  Your Honor, I think every potential

15  litigant who discovers that your order purports to bar

16  prospective unaccrued claims at the time the order issued

17  would be surprised.

18      Frankly, I think Mr. Seery would be surprised, given his

19  testimony that he owes fiduciary duty -- duties that he must

20  abide by and that he appears to have, as I continue to

21  represent to clients, to advisees, and to the SEC, that those

22  duties are owing.

23         THE COURT:  Okay.  I'm giving you one more chance

24  here to make clear on the record what provision of Rule 60(b)

25  are you relying on, okay?  I need to know.  It's not in your

74

 1  pleading.

 2          MR. BRIDGES:  Your Honor, --

 3          THE COURT:  So tell me specifically.  I can only --

 4          MR. BRIDGES:  -- (b)(1) --

 5          THE COURT:  -- come up with a result here if I know

 6  exactly what's being presented.

 7          MR. BRIDGES:  Your Honor, (b)(1), (b)(2), and (b)(6)

 8  --

 9          THE COURT:  Which, okay, there are multiple parts to

10  (1).  You're saying somebody's surprised by the ruling.  I

11  don't know who.  Really, all that matters is your client, the

12  Movants.  You're saying, even though they participated, --

13          MR. BRIDGES:  Yes, Your Honor.

14          THE COURT:  -- got notice, they're somehow surprised?

15  Why are they surprised?

16          MR. BRIDGES:  Yes, Your Honor.

17          THE COURT:  Do you have evidence of their surprise?

18          MR. BRIDGES:  Your Honor, our brief shows the

19  intentions of all involved were not the interpretation of that

20  order being advanced at this -- at this point in time.  And

21  so, yes, I believe that is evidence.  The transcripts of the

22  hearings I believe evidence that as well, that the

23  understanding of everyone involved was not that future --

24  unspecified future claims that had not accrued yet would be

25  released under (b)(1).  Yes, Your Honor.

75

1          THE COURT:  Okay.

2          MR. BRIDGES:  Under (b)(2), --

3          THE COURT:  I don't have any evidence of that.  All I

4  have is the clear wording of the order.  Okay.  Let me just --

5  just let me go through this.

6      Assuming Rule 60 (1) through (6) are what you're arguing

7  here, what about Rule 60(c):  a motion under Rule 60(b) must

8  be made within a reasonable time?  We're now 11 months --

9          MR. BRIDGES:  Your Honor, --

10         THE COURT:  We're now 11 months past the July 2020

11 order.  What is your authority for this being a reasonable

12 time?

13         MR. BRIDGES:  Yes, Your Honor.  If I may back up one

14 step before answering your question.  Under (b)(2), we're

15 relying on newly-discovered evidence that was discovered in

16 late March and caused both the filing of this motion and the

17 filing of the District Court action.

18     Under (b)(4), we believe that the order is --

19         THE COURT:  Let me stop.  Let me stop.  What is my

20 evidence that you're putting in the record that's newly

21 discovered?

22         MR. BRIDGES:  The evidence is detailed in the

23 complaint that is in the record.  You know, --

24         THE COURT:  That's not evidence.

25         MR. BRIDGES:  -- honestly, Your Honor, --

76

1          THE COURT: That is not evidence. Okay? A lawyer-

2    drafted complaint in another court is not evidence. Okay?

3          MR. BRIDGES: Your Honor, I think, to be technical,

4    that there is not a record yet, that we have evidence yet to

5    be admitted on our exhibit list. I believe in this

6    circumstance -- I understand that, in general, allegations in

7    a pleading are not evidence. In this instance, when we're

8    talking about whether or not new facts led to the filing of a

9    lawsuit, I do believe that the allegations in the lawsuit are

10   evidence of those new facts.

11         THE COURT: All right. Go on.

12         MR. BRIDGES: Under (b)(4), we believe the order is,

13   in part, void. It is void because of the jurisdictional and

14   other defects noted in our argument.

15     And also, under (b)(6) (garbled) ground for relief that

16   we're appealing to the equitable powers of this Court to

17   correct errors and manifest injustice towards not just the

18   litigants here but to correct the order of the Court to make

19   it comply with -- with the law, with the statutes promulgated

20   by Congress and to respect the jurisdiction of the District

21   Court.

22         THE COURT: All right. Do you agree with Mr.

23   Pomerantz that the case law standard for Rule 60(b)(4) is

24   exceptional circumstances? It's only applied so that a

25   judgment is voided in exceptional circumstances. Do you

77

1 disagree with that case authority?

2       MR. BRIDGES: I would -- I would agree, in part, that

3 unusual circumstances is not the ordinary case. I'm not

4 entirely sure what you mean by exceptional, but I think we're

5 on the same page.

6       THE COURT: Okay. It's not what I mean. That's just

7 the case law standard. And I'm asking, do you agree with Mr.

8 Pomerantz that that is the standard set forth in case law when

9 applying 60(b)(4)? There have to be some sort of exceptional

10 circumstances where there's just basically no chance the Court

11 had authority to do what it did.

12       MR. BRIDGES: Out of the ordinary would be the phrase

13 I would use, Your Honor.

14       THE COURT: Okay. So I guess then I'll go from

15 there. Is it your argument that gatekeeping provisions in the

16 bankruptcy world are out of the ordinary?

17       MR. BRIDGES: The exculpation of Mr. Seery for

18 liability falling short of gross negligence or intentional

19 wrongdoing in connection with his continuing to conduct the

20 business of the Debtor as an investment advisor subject to the

21 Advisers Act, yes, I would say that is out of the ordinary,

22 that it is extraordinary, that it is --

23       THE COURT: Okay. What is your authority or evidence

24 on that? Because this Court approves exculpation provisions

25 regularly in connection with employment orders, and pretty

78

1   much every judge I know does.  In fact, I'm wondering why this

2   isn't just a term of compensation.  You know, he's going to do

3   x, y, z in the case.  His compensation is going to be a, b, c,

4   d, e.  And by the way, we're going to set a standard of

5   liability for his performance as CEO or investment banker,

6   financial advisor, whatever, so that no one can sue him

7   regarding his performance of his job duties unless it rises to

8   the level of gross negligence, willful misconduct.

9       It's a term of employment that, from my vantage point,

10  seems to be employed all the time.  So it would be anything

11  but exceptional circumstances.  Do you have authority or

12  evidence --

13              MR. BRIDGES:  Your Honor, frankly, --

14              THE COURT:  -- to the contrary?

15              MR. BRIDGES:  Your Honor, frankly, I'm astonished at

16  your view of that situation, that it would merely be a term of

17  his employment, that vitiates the entire fiduciary duty

18  standard created by the Advisers Act that tells him, with

19  hundreds of millions of dollars of assets under management for

20  people he's advising as a registered investment advisor,

21  people he's advising who believe that he has a fiduciary duty

22  to them and that it's enforceable, that the SEC, who monitors,

23  believes he has an enforceable fiduciary duty to those people,

24  and that he's testified that he has fiduciary duties to those

25  people, and that Your Honor is saying no, just as a regular

79

1   term of employment we have undone the Advisers Act's

2   imposition of an unwaivable fiduciary duty.

3       Your Honor, the order is void to the extent that it

4   attempts to do so.

5       This is not an ordinary employment agreement, Your Honor.

6   This is an attempt to exculpate someone from the key thing

7   that our entire investment system depends upon, regulation by

8   the SEC and the requirement in investment advisors to act as

9   fiduciaries when they manage the money of another.

10      It would be the equivalent of telling lawyers who are

11  appointed in a bankruptcy proceeding that they don't have any

12  duties to their client, or at least not fiduciary duties.

13  That the lawyers merely owe a duty not to be grossly negligent

14  to their clients.  That's not an ordinary term of employment,

15  Your Honor.

16          THE COURT:  All right.  So I guess we're back to my

17  question, was this brought within a reasonable time under Rule

18  60(c)?

19          MR. BRIDGES:  It was brought very quickly after the

20  new evidence was discovered at the end of March, Your Honor,

21  yes.

22          THE COURT:  Okay.  Well, I guess I'll just ask you

23  one more question before you continue on with your rebuttal

24  argument.  I mean, again, I want your best argument of why

25  *Villegas* doesn't absolutely permit the gatekeeping provisions

80

1    that you're challenging.  And many cases were cited by Mr.

2    Pomerantz in his brief where courts have extended the *Barton*

3    doctrine to persons other than trustees.  And so what is your

4    best rebuttal to that?

5             MR. BRIDGES:  Your Honor, we've already given it.

6    I'm afraid --

7             THE COURT:  Okay.  If you don't want to say more, --

8             MR. BRIDGES:  -- what I have is not --

9             THE COURT:  -- I'm not going to make you say more.

10            MR. BRIDGES:  I --

11            THE COURT:  I'm just telling you what's on my brain.

12            MR. BRIDGES:  I do.  I want to -- I am apologizing in

13   advance for repeating, but yes, *Villegas*, *Villegas*, however

14   that case is pronounced, says that *Stern* is not an exception

15   to the *Barton* doctrine.

16            THE COURT:  Uh-huh.

17            MR. BRIDGES:  959(a) is an exception to the *Barton*

18   doctrine.  You are not operating under the *Barton* doctrine

19   here.  Even counsel's brief, the Debtor's brief, doesn't say

20   *Barton* applies.  It says it's consistent with *Barton*.

21       Your Honor, in our previous hearing, you directed me to

22   the second sentence of 959(a) because you believe it's what

23   empowers you to do the gatekeeping.  It limits the gatekeeping

24   that you can do by protecting jury rights, the right to trial,

25   says you cannot discharge, undo, deprive a litigant of their

1  right to a trial, a jury trial.

2        THE COURT:  Well, you mentioned it again, jury trial

3  rights.  Do you have any argument --

4        MR. BRIDGES:  Yes, Your Honor.

5        THE COURT:  -- of why that hasn't flown out the

6  window?

7        MR. BRIDGES:  Yes, Your Honor.  I am told that

8  Section 14(f) that counsel for the Debtor referred to is not a

9  waiver of jury rights at all.  It is an arbitration agreement.

10 Your Honor is probably familiar how arbitration agreements

11 work, is that they need not be elected.  They need not be

12 invoked by the parties.  When they are, they create a

13 situation where arbitration may be required.  But a waiver of

14 a jury right outside of arbitration is not part of this

15 arbitration clause, or of any.  The issue is not briefed or in

16 evidence before the Court.  We're relying on representations

17 of counsel as to what that provision contains.  That Mr. Seery

18 wasn't even a party to that agreement, the advisory agreement,

19 with the Charitable DAF.  The arbitration agreement is subject

20 to defenses that are not at issue here before the Court.  That

21 Movants' rights, their contractual rights to invoke the

22 arbitration clause, also appear to be terminated by the

23 orders' assertion of sole jurisdiction in this matter.

24     Your Honor, yes, our jury rights survive Section 14(f) in

25 the advisory agreement with the DAF for all of those potential

1 reasons.

2      On top of that, it doesn't go to all of our causes of

3 action.  It goes to the contract cause of action.  And to the

4 extent they can argue that the other claims are subject to

5 arbitration, that also is a defense and -- defensible and

6 complex issue requiring the application of the Federal

7 Arbitration Act, requiring consideration of the Federal

8 Arbitration Act, which this Court doesn't have jurisdiction to

9 do under 157(d).

10          THE COURT:  What?  Repeat that.

11          MR. BRIDGES:  Yes.  This Court does not have

12 jurisdiction to determine whether or not arbitration --

13 arbitration is enforceable due to the mandatory withdrawal of

14 the reference provisions of 157(d).

15          THE COURT:  That's just not consistent with Fifth

16 Circuit authority.  *National Gypsum*.  What are some of these

17 other arbitration cases?  I've written an article on it.  I

18 can't remember them.  That's just not right.  Bankruptcy

19 courts look at arbitration clauses all the time.  Motions to

20 compel arbitration.

21          MR. BRIDGES:  Your Honor, under 157(d), in the

22 circumstances of this case, if the Court is going to take into

23 consideration an arbitration clause under the Federal

24 Arbitration Act, when that clause is not in evidence and is

25 not before the Court, then Movants respectfully move to

83

1  withdraw the reference of your consideration of that issue and

2  of any proceeding and ask that you would issue only a report

3  and recommendation rather than an order on that issue.

4  　　　　THE COURT: Okay. I regret that we even got off on

5  this trail. I'm sorry. So just proceed with your rebuttal

6  argument as you had envisioned it, Mr. Bridges.

7  　　　　MR. BRIDGES: Thank you, Your Honor.

8  　　Debtor's counsel says there's no private right of action

9  under the Advisers Act. That is both inaccurate and

10  misleading. The Advisory Act creates, imposes fiduciary

11  duties that state law provides the cause of action for. It is

12  a state law breach of fiduciary duty claim regarding --

13  regarding fiduciary duties imposed as a matter of law by the

14  Investment Advisers Act that is Count One in the District

15  Court action.

16  　　Furthermore, that Act does create a private right of

17  action for rescission. That would be rescission of the

18  advisory agreement with the Charitable DAF, not rescission of

19  the HarbourVest settlement.

20  　　Second, Your Honor, the notion that this Court has related

21  to jurisdiction is irrelevant and beside the point. I would

22  like to note for the record that the District Court civil

23  cover sheet that omitted to state that this was a related

24  action has been corrected, has been amended, and that that has

25  taken place.

84

1       Counsel for the Debtor also appears to agree with us that

2   the order ought to be modified for having asserted exclusive

3   jurisdiction over colorable claims to the extent it's not

4   legally permissible to do.  And in trying to invoke the

5   discussions between us as to how the orders might be fixed,

6   what counsel does is tries to cabin the legally-permissible

7   caveat to just the second half of the paragraph at issue.  It

8   is both -- both portions, the gatekeeping and the subsequent

9   hearing of the claims, that should be limited to the extent it

10  would be impermissible legally for this Court to make those

11  decisions.

12      On top of that, Your Honor, merely stating "to the extent

13  legally permissible" would result in a considerable amount of

14  ambiguity in the order that would lead it, I fear, to be

15  unenforceable as a matter of law.

16      Next, Your Honor, when Debtor's counsel talks about the

17  authority in this case, it feels like we're ships passing in

18  the night.  He says that we're wrong in asserting that no case

19  we can find involves both the *Barton* doctrine and the

20  application of the business judgment rule where the Court is

21  asked to defer, and he mentions cases that apply the *Barton*

22  doctrine to an approval rather than an appointment.  The Court

23  is asked to --

24      (Garbled audio.)

25          THE COURT:  I lost you for a moment.  Could you

85

1   repeat the last 30 seconds?

2          MR. BRIDGES:  Thank you, Your Honor.  Yes.  He points

3   -- opposing counsel points us to case law where the *Barton*

4   doctrine has been applied despite the Bankruptcy Court having

5   merely approved rather than appointed the trustee or the, I'm

6   sorry, the professional.  But in doing so, he doesn't

7   reference any case that has done so in the context of business

8   judgment rule deference.  It's like we're ships passing in the

9   night.

10      What we're saying isn't that a mere approval can never

11  rise to the level of the *Barton* doctrine.  What we're saying

12  is that, in combination with the business judgment rule

13  deference, the two cannot go together.  There's no authority

14  for saying that they do.

15      We -- I further feel like we're ships passing in the night

16  when he talks about *Shoaf*.  Counsel says that in *Shoaf* there

17  was a confirmed final plan and it specifically identified the

18  released guaranty.  And yeah, that distinguishes it from this

19  case, just as it distinguished -- just as the *Applewood Chair*

20  case distinguished it when there's not that specific

21  identification.  And here, we don't even have a final plan

22  confirmation at the time these orders are being issued.

23  Without that express -- express notion of what the claims are

24  being discharged, *Shoaf* doesn't apply.

25      There, there was a guaranty to a party on a specific

86

1   indebtedness that was listed, identified with specificity, and

2   disappeared as a result of the judgment, as a result of the

3   judgment in the underlying case.  Here, we're talking about

4   any potential claim that might arise in the future.  As of the

5   July order's issuance, it didn't apply on its -- either it

6   didn't apply to future claims that had not yet accrued or else

7   in violation of *Applewood Chair*, it was releasing claims

8   without identifying them.

9       Who does Seery owe a fiduciary duty to?  Is it, as

10  Debtor's counsel says, only to the funds and not to the

11  investors, or does he also owe those duties to the investors

12  as well?  Your Honor, that is going to be a hotly-contested

13  issue in this litigation, and it involves -- it requires

14  consideration of the Advisers Act and the multitude of

15  accompanying regulations.  To just state that his fiduciary

16  duties are limited in a way that couldn't affect anyone that

17  is -- whose claims are precluded by the July order is both

18  wrong on the law and is invoking something that will be a

19  hotly-contested issue that falls under 157(d), where, again,

20  this Court doesn't have the jurisdiction to decide that, other

21  than in a report and recommendation.

22      The order is legally infirm because it's issued without

23  jurisdiction for doing that as well.

24      Finally, Your Honor, I think (garbled) wrong direction

25  with a statement that suggests that Mr. Seery is an agent of

87

1  the independent directors under the January order.  He is, in

2  fact, not an independent agent -- not an agent of any of the

3  independent directors, but, at most, of the company that is

4  controlled by the board, not -- not of individual directors

5  who could confer on him -- who could confer on him any

6  immunity that they have obtained from the January order just

7  by having appointed him.

8       The proposed order from the other side failed to address

9  either the ambiguity in the order or its attempt to exculpate

10  Mr. Seery from the liability, including liability for which

11  there is a jury trial right, and it is not a fix to the

12  problem for that reason.

13       In order to make the order enforceable and to fix its

14  infirmities, the Court would have to do significantly more.

15  It would have to both apply the caveat from the final

16  confirmation plan order, rope that caveat to the first part of

17  the relevant paragraph, as well as the second part, and it

18  would have to provide directive clarity to be enforceable

19  rather than too vague.

20       Your Honor, I think that's all I have.

21            THE COURT:  Okay.  Just FYI, my law clerk pulled the

22  *Smyth* case from 21 years ago from the Fifth Circuit.  And

23  while it more prominently deals with the issue of whether

24  trustees -- in this case, it was a Chapter 11 trustee -- could

25  be subjected to personal liability for damages to the

88

1   bankruptcy estate --

2        (Echoing.)

3            THE COURT:  Someone, put your phone on mute.  I don't

4   know who that is.

5        It dealt with, you know, the standard of liability, that

6   the trustee could not be sued for matters not to the level of

7   gross negligence.

8        But it does say, in the very last paragraph, to my shock

9   and amazement, that -- it's just one sentence in a 10-page

10  opinion -- orders appointing counsel -- and it was talking

11  about the trustee's lawyer he hired to handle appeals to the

12  Fifth Circuit -- orders appointing counsel under the

13  Bankruptcy Code are interlocutory and are not generally

14  considered final and appealable.  And it cites one case from

15  1993, the Middle District of Florida.  Live and learn.  There

16  is one sentence in that opinion that says that.  But I don't

17  know that it's hugely impactful here, but I did not know about

18  that opinion and I'm rather surprised.

19       All right.  You were going to walk me through evidence,

20  you said?

21           MR. BRIDGES:  Well, do I -- Your Honor, do you want

22  to do that first before I submit --

23           THE COURT:  Yes, please.

24           MR. BRIDGES:  -- my rebuttal argument?

25           THE COURT:  Please.

Appx. 00722

89

1           MR. BRIDGES:  Okay.

2           THE COURT:  Uh-huh.

3           MR. BRIDGES:  Your Honor, we would submit and offer

4    Exhibits 1 through 44, with the exception of those that have

5    been withdrawn, that are 2, 13 --

6           THE COURT:  Okay.  Slow down.  Slow down.  I need to

7    get to the docket entry number we're talking about.  Are we

8    talking -- are your -- the Debtor's exhibits are at 2412.  But

9    Nate, I misplaced my notes.  Where are Charitable DAF and

10   Holdco's?

11          THE CLERK:  I have 2411.

12          THE COURT:  2411?  Is that it?

13          MR. BRIDGES:  2420, Your Honor.

14          THE COURT:  2420?  Okay.  Give me a minute.  (Pause.)

15   2420?

16          MR. BRIDGES:  Yes, Your Honor.

17          THE COURT:  Okay, I'm there.  And it's which

18   exhibits?

19          MR. BRIDGES:  It's Exhibits 1 through 44, Your

20   Honor, with four exceptions.  We have agreed to withdraw

21   Exhibit 2, 13, 14, and 29.

22          THE COURT:  All right.

23          MR. BRIDGES:  Also, Your Honor, we'd like to submit

24   Debtor's Exhibit 1, which is under Exhibit 49 on our list,

25   would be anything offered by the other side.  But we'd like

90

1    to make sure that Debtor's Exhibit 1 gets in the record as

2    well.

3            THE COURT:  Let me back up.  When I pull up the

4    docket entry you just told me, I have Exhibits 44, 45, and 46

5    only.  Am I misreading this?

6            MR. BRIDGES:  I have a chart showing Exhibits 1

7    through 49 titled Docket 2420 filed 6/7/21.

8            THE COURT:  Okay.  The docket entry number you told

9    me, 2420, it only has three exhibits:  44, 45, and 46.  So,

10   first off, I understand -- are you offering 45 and 46 or not?

11           MR. BRIDGES:  No, Your Honor.

12           THE COURT:  Okay.  So you said you were offering 1

13   through 44 minus certain ones.  44 is here.

14           MR. BRIDGES:  Yes.

15           THE COURT:  But I've got to go back to a different

16   docket number.

17           THE CLERK:  It's actually 2411.

18           THE COURT:  It's at 2411.  That has all the others?

19           THE CLERK:  Yes.

20           THE COURT:  Okay.

21      So, Mr. Pomerantz, do you have any objection to Exhibits

22   1 through 44, which he's excepted out 2, 13, 14, and 29, and

23   then he's added Debtor's Exhibit 1?  Any objection?

24           MR. POMERANTZ:  I don't believe so.  I just would

25   confirm with John Morris, who has been focused on the

91

1   exhibits, just to confirm.

2          THE COURT:  Mr. Morris?

3          MR. MORRIS:  No objection, Your Honor.  It's fine.

4          THE COURT:  Okay.  They're admitted.

5      (Movants' Exhibits 1, 3 through 12, 15 through 28, and 30

6   through 44 are received into evidence.  Debtor's Exhibit 1 is

7   received into evidence.)

8          THE COURT:  So, any --

9          MR. BRIDGES:  Thank you, Your Honor.

10         THE COURT:  Anything you wanted to call to my

11  attention about these?

12         MR. BRIDGES:  Your Honor, the things that we

13  mentioned in the argument, for sure, but especially that the

14  word "trustee" is not used in the January hearing's

15  transcript, nor is it under discussion in that transcript

16  that it would be a trustee-like role being played by the

17  Strand directors, as well as the transcript of the July

18  hearing on the order at issue here, Your Honor, where you are

19  asked to defer both in that transcript and in the motion, the

20  motion that was at issue in that hearing, you are asked to

21  defer to the business judgment of the company.

22     And finally, Your Honor, I'd ask you to look at the

23  allegations in the District Court complaint.

24         THE COURT:  All right.

25     Mr. Pomerantz or Morris, let's see what exhibits you're

92

1  wanting the Court to consider.  Your exhibits, it looks like,
2  are at Docket Entry 2412.
3              MR. MORRIS:  As subsequently amended at 2423.
4              THE COURT:  Oh.  All right.  So which ones are you
5  offering?
6              MR. MORRIS:  We're offering all of the exhibits on
7  2423, which is 1 through 17.
8       (Echoing.)
9              THE COURT:  Whoops.  We got some distortion there.
10 Say again?
11             MR. MORRIS:  Yeah.  All of the exhibits that are on
12 2423, which are Exhibits 1 through 17.  But I want to make
13 sure that, as I did earlier, that that has the exhibits that
14 we're relying on.  Does that --
15      (Pause.)
16             THE COURT:  Okay.  Let me make sure I know what's
17 going on here.  You're double-checking your exhibits, Mr.
18 Morris?
19             MR. MORRIS:  Yes, Your Honor.
20             THE COURT:  Okay.
21      (Pause.)
22             MR. MORRIS:  Your Honor, we start with Docket No.
23 2419, --
24             THE COURT:  Okay.
25             MR. MORRIS:  -- which was the amended exhibit list.

93

1   And that actually had Exhibits 1 through 17.  And then that

2   was amended at Docket 2423.  So, the exhibits on both of

3   those lists.

4            THE COURT:  Well, they're one and the same, it looks

5   like, right?

6            MR. MORRIS:  Yes.

7            THE COURT:  Okay.  So you're offering those?

8            MR. MORRIS:  I think -- yeah.

9            THE COURT:  Any objection?

10           MR. BRIDGES:  No objection.

11           THE COURT:  All right.  They're admitted.

12       (Debtor's Exhibits 1 through 17 are received into

13   evidence.)

14           MR. POMERANTZ:  Your Honor, if I may take a few

15   moments to respond to Mr. Bridges' reply?

16           THE COURT:  All right.  Is he still within his hour

17   and a half?

18           THE CLERK:  At an hour and one minute.

19           THE COURT:  Okay.  All right.  You have a little

20   time left, so go ahead.

21           MR. POMERANTZ:  Thank you, Your Honor.

22      So look, I -- it sort of was really not fair to us.  Mr.

23   Bridges was really making things up on the fly.  He was

24   changing the theories of his case and responding to Your

25   Honor.  But I'm going to do my best to respond to the

94

1   arguments made, many of which I sort of anticipated.

2       I'll first start with the issue that Your Honor raised,

3   which was whether this is under Rule 60 or not.  Mr. Bridges

4   identified a couple of cases, said that the order was

5   interlocutory, said that somehow the orders have anything to

6   do with a plan confirmation order.  They do not.  Your Honor

7   didn't hear that argument at the plan confirmation.  The

8   January 9th and July 16th orders are old and cold.  There's

9   an exculpation provision in the plan.  There's a gatekeeper

10  in the plan.  The provisions do not overlap entirely.  The

11  gatekeeper applies prospectively.  The exculpation provision

12  includes additional parties.

13      So the arguments that basically the plan had anything to

14  do -- and the fact that the plan is not a final order -- has

15  anything to do with the January 9th and July 16th orders is

16  just wrong.  It's just wrong.

17      More fundamentally, Your Honor, as Your Honor pointed

18  out, the *Smyth* case is a professional employment order.  And

19  ironically, if you abide by the *Smyth* case, that order is

20  never appealable because it's interlocutory.

21      But more fundamentally, Your Honor, that's dealing with

22  327 professionals.  And again, there's not much analysis in

23  the *Smyth* case, but we're not dealing with a 327

24  professional.  We're dealing with orders that were approved

25  under 363.

95

1   So the premise of the argument that Rule 60(b) -- 60
2   doesn't apply and they have other arguments just doesn't make
3   any sense.
4   Okay.  So now that gets us to Rule 60.  And Your Honor,
5   Your Honor hit the nail on the head.  They haven't presented
6   any evidence.  Allegations in a complaint aren't evidence.
7   They can't stand up there and say surprise evidence.  They
8   had the opportunity -- and this hearing's been continued a
9   few weeks -- they had the opportunity to bring it up, and
10  it's -- they had the opportunity to claim that there was
11  surprise, but they just didn't.  Okay?
12  So to go on to the Rule 60 arguments.  Surprise.
13  Surprise and reasonable delay are really -- go hand in hand
14  with Mr. Bridges' argument.  He says, well, we didn't find
15  out that -- months after the order was entered that he
16  violated a duty to us, so we are surprised by that, and it's
17  a reasonable time.  Well, Your Honor, the order provided for
18  an exculpation.  CLO Holdco and DAF knew that it applied to
19  an exculpation.  They were bound.  They knew based upon that
20  order that they would not be able to bring claims for normal
21  negligence.  There is no surprise.
22  If you take Mr. Bridges' argument to its conclusion, he
23  could wait until the end of the statute of limitations after
24  an order and have come in four years from now and say, Your
25  Honor, we just found out facts so we should go back four

96

1  years before.  That, Your Honor, that's not how the surprise

2  works.  That's not how the reasonable time works.

3      Mr. Bridges did not contest that they're bound by res

4  judicata.  He did not contest that the exculpation itself was

5  clear and unambiguous.  Of course he argued Your Honor

6  couldn't enter an order saying there was exculpation, again,

7  with no authority.  And he seemed surprised, as I suspect he

8  should, since he's not a bankruptcy lawyer, that retention

9  orders, whether it's investment bankers, financial advisors,

10  include exculpations all the time.  So there's no grounds

11  under surprise.

12      There's no grounds -- the motions are late under 60(c).

13      And they're not void.  I went through a painstaking

14  analysis, Your Honor, and I described in detail what the

15  *Espinosa* case held, and the exceptional circumstances which

16  Mr. Bridges tried to get away from as much as he could.

17  Maybe he can try to get away from language in a district

18  Court opinion, in a Bankruptcy Court opinion, in a Circuit

19  Court opinion.  You can't get away from language in a Supreme

20  Court opinion.  The Supreme Court opinion said exceptional

21  circumstances, where there was arguably no basis for

22  jurisdiction for what the Court did.  They have not even come

23  close to convincing Your Honor that there was absolutely no

24  basis.

25      Now, they disagree.  We granted, we think it's a good-

97

1  faith disagreement, but they haven't come close to

2  establishing the *Espinosa* standard, so their motion under 60

3  does not -- it fails.

4      And I don't think -- look, these are good lawyers.  Mr.

5  Bridges and Mr. Sbaiti are good lawyers.  They didn't just

6  inadvertently not mention Rule 60.  They never mentioned it

7  because they knew they had no claim under Rule 60.

8      Your Honor, Mr. Bridges has made comments about the

9  fiduciary duty of Mr. Seery, about what the Investor's Act

10 provides.  He's just wrong on the law.  Now, Your Honor

11 doesn't have to decide that.  Whichever court adjudicates the

12 DAF lawsuit will have to decide it.  But there is no private

13 cause of action for damages.  There are no fiduciary duties to

14 the investors.

15     And what Mr. Bridges doesn't even mention, in that the

16 investment agreement that's so prominent in his complaint,

17 they waived claims other than willful misconduct and gross

18 negligence against Highland.  They waived those claims.  So

19 for Mr. Bridges to come in here and argue that there's some

20 surprise, when he hasn't even bothered to look at the document

21 that's underlying the contractual relationship between the DAF

22 and the Debtor, is -- you know, I'll just say it's

23 inadvertence.

24     Your Honor, Mr. Bridges tried to argue that Mr. Seery is

25 not a beneficiary of the January 9th order.  He's not an

98

1    agent.  Well, again, Your Honor, Mr. Bridges wasn't there.

2    Your Honor and we were.  On January 9th, an independent board

3    was picked, and at the time Mr. Dondero ceased to become the

4    CEO.  So you have three gentlemen coming in -- Mr. Seery, Mr.

5    Dubel, and Mr. Nelms -- coming in to run Highland, in a very

6    chaotic time.  They had to act through their agents.  There

7    was no expectation that this board was going to actually run

8    the day-to-day operations of the Debtor.  Of course not.  They

9    needed someone to run.  And they picked Mr. Seery.  And the

10   argument that well, he's an agent of the company, he's not an

11   agent of the board, that just doesn't make sense.  The

12   independent board had to act.  The directors had to act.  And

13   the directors, how do they deal with that?  They acted through

14   Mr. Seery.  So he is most certainly governed by the January

15   9th order.

16       Your Honor, I want to talk about the jury trial right.

17   Mr. Bridges said that Paragraph 14 is an arbitration clause

18   and not a jury trial waiver.  Now, again, I will forgive Mr.

19   Bridges because I assume he didn't read the provision, okay,

20   and he -- somebody told him that, and that person just got it

21   wrong.  But what I would like to do is read for Your Honor

22   Paragraph 14(f).  It doesn't have to do with arbitration.

23   It's a waiver of jury trial.  14(f), Jurisdiction Venue,

24   Waiver of Jury Trial.  The parties hereby agree that any

25   action, claim, litigation, or proceeding of any kind

99

1  whatsoever against any other party in any way arising from or

2  relating to this agreement and all contemplated transactions,

3  including claims sounding in contract, equity, tort, fraud,

4  statute defined as a dispute shall be submitted exclusively to

5  the U.S. District Court for the Northern District of Texas, or

6  if such court does not have subject matter jurisdiction, the

7  courts of the State of Texas, City of Dallas County, and any

8  appellate court thereof, defined as the enforcement court.

9  Each party ethically and unconditionally submits to the

10 exclusive personal and subject matter jurisdiction of the

11 enforcement court for any dispute and agrees to bring any

12 dispute only in the enforcement court.  Each party further

13 agrees it shall not commence any dispute in any forum,

14 including administrative, arbitration, or litigation, other

15 than the enforcement court.  Each party agrees that a final

16 judgment in any such action, litigation, or proceeding is

17 conclusive and may be enforced through other jurisdictions by

18 suit on the judgment or in any manner provided by law.

19     And then the kick, Your Honor, all caps, as jury trial

20 waiver always are:  Each party irrevocably and unconditionally

21 waives to the fullest extent permitted by law any right it may

22 have to a trial by jury in any legal action, proceeding, cause

23 of action, or counterclaim arising out of or relating to this

24 agreement, including any exhibits, schedules, and appendices

25 attached to this agreement or the transactions contemplated

1 hereby. Each party certifies and acknowledges that no
2 representative of the owner of the other party has represented
3 expressly or otherwise that the other party won't seek to
4 enforce the foregoing waiver in the event of a legal action.
5 It has considered the implications of this waiver, it makes
6 this waiver knowingly and voluntarily, and it has been induced
7 to enter into this agreement by, among other things, the
8 mutual waivers and certifications in this section.
9     Your Honor, I will forgive Mr. Bridges. I assume he just
10 did not read that. But to represent to the Court that that
11 language does not contain a jury trial waiver is -- is just
12 wrong.
13          THE COURT: All right. I'm going to stop right
14 there. And you were reading from the Second Amended and
15 Restated Shared Services Agreement between Highland --
16          MR. POMERANTZ: Not shared services. I'm reading
17 from the Second Amended and Restated Investment Advisory
18 Agreement --
19          THE COURT: Investment --
20          MR. POMERANTZ: -- between the Charitable DAF, the
21 Charitable DAF GP, and Highland Capital Management. The
22 agreement whereby the Debtor was the investment advisor to the
23 Charitable DAF Fund and the Charitable DAF GP.
24          THE COURT: All right. Well, Mr. Bridges, I'm going
25 to bounce quickly back to you. This is your chance to defend

101

1  your honor.

2         MR. BRIDGES:  Yeah, we're -- we're looking at a

3  different agreement, where -- where literally the words that

4  were read to you are not in the agreement in front of us and

5  it is news to me.  So, Your Honor, this is a problem --

6         THE COURT:  What is the agreement you're looking at?

7         MR. BRIDGES:  It is the Amended -- I assume that

8  means First Amended -- Restated Advisory Agreement.

9         MR. POMERANTZ:  Your Honor, we are happy to file this

10 agreement with the Court so the Court has the benefit of it in

11 connection with Your Honor's ruling.

12        THE COURT:  Okay.  I would like you to do that.  Uh-

13 huh.

14        MR. BRIDGES:  I'd like -- I'd like to request -- I'll

15 withdraw that.

16        THE COURT:  Okay.  Go on, Mr. Pomerantz.

17        MR. POMERANTZ:  Mr. Bridges, if you could put us on

18 mute.  If you could put us on mute, Mr. Bridges, so I don't

19 hear your feedback.  Thank you.

20    Mr. Bridges also complains about the language "to the

21 extent permissible by law."  As Your Honor knows and as has

22 been my practice over 30 years, that language is probably in

23 every plan where there's a retention of jurisdiction:  to the

24 extent permissible by law.  And Mr. Bridges says that this

25 will create ambiguity in the order that couldn't be enforced.

102

1    There's no basis for that.  Our including the language "to the
2    extent permissible by law" in the orders, as we are prepared
3    to do, is consistent with the plan confirmation order where we
4    addressed that issue.  And we addressed that issue because we
5    didn't want to put Your Honor in a position where thereby Your
6    Honor may have an action before Your Honor that passes the
7    colorability gate that Your Honor may not be able to assert
8    jurisdiction.  And since jurisdiction can't be waived in that
9    regard, we will agree to amend that.
10        There's nothing ambiguous about that, and there's no
11   reason, though, that clause has to modify the Court's ability
12   to act as a gatekeeper, because, as we've argued *ad nauseam*,
13   gatekeeper provisions where the Court has that ability is not
14   only part of general bankruptcy jurisprudence but also part of
15   the Bankruptcy Code.
16        Counsel says that *Barton* doesn't apply because the
17   business judgment of Your Honor was used in retaining Mr.
18   Seery as opposed to in some other capacity.  There's no basis
19   for that, Your Honor.  A court-appointed -- a court-approved
20   CEO, CRO, professional, they are all entitled to protection
21   under the *Barton* act.  And the argument -- and again, this is
22   separate and apart from whether he's entitled to protection
23   under the January 9th order. But the argument that because it
24   was the business judgment -- again, business judgment in doing
25   something that Your Honor expressly contemplated under the

103

1  January 9th corporate governance order -- there's just no law

2  to support that.  And I guess he's trying to get around the

3  plethora of cases that deal with the situation where *Barton*

4  has been extended.

5      Your Honor, Mr. Bridges, again, in arguing that we're

6  ships passing in the night on *Shoaf* and *Applewood* and

7  *Espinosa*, no, we're not ships passing in the night.  We have a

8  difference in agreement on what these cases stand for.  These

9  cases stand for the proposition that a clear and unambiguous

10 provision, plain and simple, if it's clear and unambiguous, it

11 will be given res judicata effect.  The release in *Shoaf*,

12 clear and unambiguous.  The release in *Applewood*, not.  The

13 issue here is the exculpation language.  That was clear and

14 unambiguous.  It applied prospectively.  The argument makes no

15 sense that we didn't identify -- we didn't identify claims

16 that might arise in the future, so therefore an exculpation

17 clause doesn't apply?  That doesn't make any sense.

18     Your Honor clearly exculpated parties.  Mr. Dondero knew

19 it.  CLO Holdco knew it.  The DAF knew it.  So the issue Your

20 Honor has to decide is whether that exculpation was a clear

21 and unambiguous provision such that it should be entitled to

22 res judicata effect.  And we submit that the answer is

23 unequivocally yes.

24     That's all I have, Your Honor.

25         THE COURT:  All right.  Well, --

104

1          MR. MORRIS:  Your Honor?  I apologize.

2          THE COURT:  Okay.

3          MR. MORRIS:  This is John Morris.

4          THE COURT:  Yes?

5          MR. MORRIS:  I just want to, with respect to the

6    exhibits, I know there was no objection, but I had cited to

7    Docket Nos. 2419 and 2423.  The original exhibit list is at

8    Docket No. 2412.  So it's the three of those lists together.

9    2412, as amended by 2419, as amended by 2423.  Thank you very

10   much.

11         THE COURT:  All right.  Thank you.  All right.

12         MR. BRIDGES:  Your Honor, I still have no objection

13   to that, but may I have the last word on my motion?

14         THE COURT:  Is there time left?

15         THE CLERK:  Yes.

16         THE COURT:  Okay.  Go ahead.

17         MR. BRIDGES:  I just need a minute, Your Honor.  They

18   agreed to change the order.  They proposed it to us.  They

19   proposed it in a proposed order to you.  They can't also say

20   that it cannot be changed.

21       Secondly, Your Honor, in *Milic v. McCarthy*, 469 F.Supp.3d

22   580, the Eastern District of Virginia points out that the

23   Fourth Circuit treats appointment of estate professionals as

24   interlocutory orders as well.

25       That's all.  Thank you, Your Honor.

105

1          THE COURT:  All right.  Here's what we're going to

2   do.  We've been going a very long time.  I'm going to take a

3   break to look through these exhibits, see if there's anything

4   in there that I haven't looked at before and that might affect

5   the decision here.  So we will come back at 3:00 o'clock

6   Central Time -- it's 2:22 right now -- and I will give you my

7   bench ruling on this.  All right.

8      So, Mike, they can all stay on the line, right?

9      Okay.  You can stay on, and we'll be back at 3:00 o'clock.

10          THE CLERK:  All rise.

11   (A recess ensued from 2:22 p.m. to 3:04 p.m.)

12          THE CLERK:  All rise.

13          THE COURT:  All right.  Please be seated.  All right.

14   Everyone presented and accounted for.  We're going back on the

15   record.

16          MR. POMERANTZ:  Your Honor, before you start, this is

17   Jeff Pomerantz.  We had sent to your clerk, and hopefully it

18   got to you, a copy of the Second Amended and Restated

19   Investment Advisory Agreement.  We also copied Mr. Sbaiti with

20   it as well.  And we would also like to move that into

21   evidence, just so that it's part of the Court's record.

22          THE COURT:  All right.

23          MR. BRIDGES:  We would object to that, Your Honor.

24   We haven't had an opportunity to even verify its authenticity

25   yet.

1    THE COURT:  All right.  Well, I'll tell you what.
2  I'm going to address this in my ruling.  So it's not going to
3  be part of the record for this decision, and yet -- well, I'll
4  get to it.
5      All right.  So we're back on the record in Case Number 19-
6  34054, Highland Capital.  The Court has deliberated, after
7  hearing a lot of argument and allowing in a lot of documentary
8  evidence, and the Court concludes that the motion of CLO
9  Holdco, Ltd. and The Charitable DAF to modify the retention
10  order of James Seery, which was entered almost a year ago, on
11  July 16th, 2020, should be denied.
12      This is the Court's oral bench ruling, but the Court
13  reserves discretion to supplement or amend in a more fulsome
14  written order what I'm going to announce right now, pursuant
15  to Rule 7052.
16      First, what is the Movants' authority to request the
17  modification of a bankruptcy court order that has been in
18  place for so many months, which was issued after reasonable
19  notice to the Movants, and after a hearing, which was not
20  objected to by the Movants, or appealed, when the Movants were
21  represented by sophisticated counsel, I might add, and which
22  order was relied upon by parties in this case, most notably
23  Mr. Seery and the Debtor, and in fact was entered after
24  significant negotiations involving a sophisticated court-
25  appointed Unsecured Creditors' Committee with sophisticated

1  professionals and sophisticated members, and after negotiation

2  with an independent board of directors, court-appointed, one

3  of whose members is a retired bankruptcy judge?  What is the

4  Movants' authority?

5      Movants fumbled a little on that question, in that the

6  exact authority wasn't set forth in the motion.  But Movants'

7  primary argument is that Movants think the Seery retention

8  order was an interlocutory order and that the Court simply has

9  the inherent authority to modify it as an interlocutory order.

10     The Court disagrees with this analysis.  I do not think

11 the Fifth Circuit's *Smyth* case dictates that the Seery

12 retention order is still interlocutory.  The Seery retention

13 order was an order entered pursuant to Section 363 of the

14 Bankruptcy Code, not a Section 327 professionals to a debtor-

15 in-possession, professionals to a trustee employment order

16 such as the one involved in the *Smyth* case.

17     But even if the Seery retention order is interlocutory --

18 the Court feels strongly that it's not, but even if it is --

19 the Court believes it would be an abuse of this Court's

20 inherent discretion or authority to modify that order almost a

21 year after the fact and under the circumstances of this case.

22     Now, assuming Rule 60(b) applies to the Movants' request,

23 the Court determines that the Movants have not made their

24 motion anywhere close to within a reasonable time, as Rule

25 60(c) requires, nor do I think the Movants have demonstrated

1  any exceptional circumstances to declare the order or any of

2  its provisions void.  The Movants have put on no evidence that

3  constitutes surprise or constitutes newly-disputed evidence.

4  So why are there no exceptional circumstances here such that

5  the Court might find, you know, a void order or void

6  provisions of an order?

7      First, this Court concludes that there's no credible

8  argument that the Court overreached its jurisdiction with the

9  gatekeeping provisions in the order.  Gatekeeping provisions

10  are not only very common in the bankruptcy world -- in

11  retention orders and in plan confirmation orders, for example

12  -- but they are wholly consistent with the *Barton* case, the

13  U.S. Supreme Court's *Barton's* case, and its progeny that has

14  become known collectively as the *Barton* doctrine.  Gatekeeping

15  provisions are wholly consistent with 28 U.S.C. Section

16  959(a)'s complete language.

17      The Fifth Circuit has blessed gatekeeping provisions in

18  all sorts of contexts.  It has blessed them in the situation

19  of when *Stern* claims are involved in the *Villegas* case.  It

20  even blessed Bankruptcy Courts' gatekeeping functions a long

21  time ago, in 1988, in a case that I don't think anyone

22  mentioned in the briefing, but as I've said, my brain

23  sometimes goes down trails, and I'm thinking of the *Louisiana*

24  *World Exposition* case in 1988, when the Fifth Circuit blessed

25  there a procedure where an unsecured creditors' committee can

1   bring causes of action against persons, such as officers and

2   directors or other third parties, if they first come to the

3   Bankruptcy Court and show a colorable claim.  They have to

4   come to the Bankruptcy Court, show they have a colorable claim

5   and they're the ones that should be able to pursue them.  Not

6   exactly on point, but it's just one of many cases that one

7   could cite that certainly approve gatekeeper functions of

8   various sorts of Bankruptcy Courts.

9      It doesn't matter which court might ultimately adjudicate

10   the claims; the Bankruptcy Court can be the gatekeeper.

11      And the Court agrees with the many cases cited from

12   outside this circuit, such as the case in Alabama, in the

13   Eleventh Circuit, and there was another circuit-level case, at

14   least one other, that have held that the *Barton* doctrine

15   should be extended to other types of case fiduciaries, such as

16   debtor-in-possession management, among others.

17      Finally, as I pointed out in my confirmation ruling in

18   this case, gatekeeping provisions are commonplace for all

19   types of courts, not just Bankruptcy Courts, when vexatious

20   litigants are involved.  I have commented before that we seem

21   to have vexatious litigation behavior with regard to Mr.

22   Dondero and his many controlled entities.

23      Now, as far as the Movants' argument that there was not

24   just improper gatekeeping provisions but actually an improper

25   discharge in the Seery retention order of negligence claims or

1  other claims that don't rise to the level of gross negligence

2  or willful misconduct, again, I reiterate there's nothing

3  exceptional in the bankruptcy world about exculpation

4  provisions like this.  They absolutely are a term of

5  employment very often.  Just like compensation, they're

6  frequently requested, negotiated, and approved.  They are

7  normal in the corporate governance world, generally.  They are

8  normal in corporate contracts between sophisticated parties.

9  And most importantly of all, even if this Court overreached

10  with the exculpation provisions in the Seery retention order,

11  even if it did, res judicata bars the attack of these

12  provisions at this late stage, under cases such as *Shoaf,*

13  *Republic Supply v. Shoaf* from the Fifth Circuit, the *Espinosa*

14  case from the U.S. Supreme Court, and even *Applewood*, since

15  the Court finds the language in this order was clear,

16  specific, and unambiguous with regard to the gatekeeping

17  provisions and the exculpation provisions.

18      Last, and this is the part where I said I'm going to get

19  to this agreement that has been submitted, the Second Amended

20  and Restated Investment Advisor Agreement or whatever the

21  title is.  I am more than a little disturbed that so much of

22  the theme of the Movants' pleadings and arguments, and I think

23  even representations to the District Court, have been they

24  have these sacred jury trial rights, these inviolate jury

25  trial rights, and an Article I Court like this Court should

111

1   have no business through a gatekeeping provision impinging on

2   the possible pursuit of an action where there's a jury trial

3   right.

4        I was surprised initially when I thought about this.  I

5   thought, wow, I've seen so many agreements over the months.  I

6   can't say every one of them waived the jury trial right, but I

7   just remembered seeing that a lot, and seeing arbitration

8   provisions, and so that's why I asked.  It just was lingering

9   in my brain.  So I'm going to look at what is submitted.  I'm

10  not relying on that as part of my ruling.  As you just heard,

11  I had a multi-part ruling, and whether there's a jury trial

12  right or not is irrelevant to how I'm choosing to rule on this

13  motion.  But I do want to see the agreement, and then I want

14  Movants within 10 days to respond with a post-hearing trial

15  brief either saying you agree that this is the controlling

16  document or you don't agree and explain the oversight, okay?

17  Because it feels like a gross omission here to have such a

18  strong theme in your argument -- we have a jury trial right,

19  we have a jury trial right, by God, the gatekeeping

20  provisions, among other things, impinge on our sacred pursuit

21  of our jury trial right -- and then maybe it was very

22  conspicuous in the controlling agreement that you'd waived

23  that, the Movants had waived that.

24       So, anyway, I'm requiring some post-hearing briefing, if

25  you will, on whether omissions, misrepresentations were made

**Appx. 00745**

112

1   to the Court.

2       Anyway, so I reserve the right to supplement or amend this

3   ruling with a more fulsome written order.  I am asking Mr.

4   Pomerantz to upload a form of order that is consistent with

5   this ruling, and --

6           MR. POMERANTZ:  Your Honor, we will do so.  I do have

7   one thing to bring to the Court's attention, unrelated to the

8   motion, before Your Honor leaves the bench.

9           THE COURT:  All right.  So just a couple of follow-up

10  things.  Have you -- I'm not clear I heard what you said about

11  this agreement.  Did you email it to my courtroom deputy or

12  did you file it on the docket?

13          MR. POMERANTZ:  We emailed it to your courtroom

14  deputy.  We're happy to file it on the docket.  And we also

15  provided a copy to Mr. Sbaiti.

16      I would note for the Court that it's signed both by The

17  Charitable DAFs by Grant Scott, just for what it's worth.

18          THE COURT:  Okay.  All right.  Well, I'm trying to

19  think what I want -- I do want you to file it on the docket,

20  and I'm trying to think of what you label it.  Just call it

21  Post-Hearing Submission or something and link it to the motion

22  that we adjudicated here today.  And then, again, you've got

23  10 days, Mr. Bridges, to say whatever you want to say about

24  that agreement.

25      I guess the last thing I wanted to say is we sure devoted

1  a lot of time to this motion today.  We have -- this is a

2  recurring pattern, I guess you can say.  We have a lot of

3  things that we devote a lot of time to in this case that I get

4  surprised, but it is what it is.  You file a motion.  I'm

5  going to give it all the attention Movants and Respondents

6  think it warrants.  I'm going to develop a full record,

7  because, you know, there's a recurring pattern of appeals

8  right now, 11 or 12 appeals, I think, not to mention motions

9  to withdraw the reference.  If we're going to have higher

10  courts involved in the administration of this case, I'm going

11  to make a very thorough record so nobody is confused about

12  what we did, what I considered, what my reasoning was.

13     So I kind of think it's unfortunate for us to have to

14  spend case resources and so much time and fees on things like

15  this, but I'm going to make sure a Court of Appeals is not

16  ever confused about what happened and what we did.  So that's

17  just the way it's going to be.  And I feel like we have no

18  choice, given, again, the pattern of appeals.

19     All right.  So, with that, Mr. Pomerantz, you had one

20  other case matter, you said?

21       MR. POMERANTZ:  Yes.  But before I get to that, Your

22  Honor, I assume that, in response to the Movants' submission

23  on the agreement, that we would have right at four or seven

24  days to respond if we deem it's appropriate?

25       THE COURT:  I think that's reasonable.  That's

114

 1  reasonable.

 2          MR. POMERANTZ:  Okay.  Thank you, Your Honor.

 3          THE COURT:  So let me think of how I want to do this.

 4  I'll just do a short scheduling order of sorts that just, it

 5  says in one or two paragraphs, at the hearing on this motion,

 6  the Court raised questions about the jury trial rights and the

 7  Debtor has now submitted the controlling agreements, I'm

 8  giving the Movants 10 days to respond to whether this is

 9  indeed a controlling agreement, and why, if it is, the Movants

10  have heretofore taken the position they have jury trial

11  rights.  And then I will give you seven days thereafter to

12  reply, and then the Court will set a further status conference

13  if it determines it's necessary.  Okay?

14      So, Nate, we'll do a short little order to that effect.

15  Okay?

16          MR. POMERANTZ:  Thank you, Your Honor.

17      I -- again, before I raise the other issue, I want to pick

18  up on a comment Your Honor just made towards the end.  I know

19  the Court has been frustrated with the time and effort we've

20  been spending.  The Debtor and the creditors have been

21  extremely frustrated, because in addition to the time and

22  effort everyone's spending, we're spending millions of

23  dollars, millions of dollars on litigation that --

24          THE COURT:  It's one of the reasons you needed an

25  exit loan, right?

115

1          MR. POMERANTZ:  Right.  No, exactly.  That's

2     frivolous, that we think is made in bad faith.

3          And Your Honor, and everyone else who's hearing this on

4     behalf of Mr. Dondero, should understand we're looking into

5     what appropriate authority Your Honor would have to shift some

6     of the costs.  Your Honor did that in the contempt motion.

7     Your Honor can surely do that in connection with the notes

8     litigation.  But all this other stuff that is requiring us to

9     spend hundreds and hundreds of hours and spend millions of

10    dollars, we are clearly looking into whether it would be

11    appropriate and what authority there is.  I just wanted to let

12    Your Honor know that.

13         And in connection with that, the last point, Your Honor, I

14    can't actually even believe I'm saying this, but there was

15    another lawsuit filed -- we just found out in the break -- on

16    Wednesday night by the Sbaiti firm on behalf of Dugaboy in the

17    District Court.

18         Now, to make matters worse, Your Honor, the litigation

19    relates to alleged improper management by the Debtor of Multi-

20    Strat.  If Your Honor will recall, at many times I've told

21    this Court what Dugaboy's claims they filed in this case.

22    Dugaboy has a claim that is filed in this case for

23    mismanagement postpetition of Multi-Strat.  Now the Sbaiti

24    firm, in addition to representing CLO Holdco, in addition to

25    representing the DAF, and whatever the Plaintiffs' lawyers are

116

1  in that other District Court, PCMG, and in connection with the

2  Acis matter, they've decided they haven't had enough.  They've

3  now filed another motion that -- you know, why they filed it

4  in District Court and there's a proof of claim on the same

5  issues, I don't know.  But I thought Your Honor should know.

6  I'm not asking Your Honor to do anything about it.  But we

7  will act aggressively, strongly, and promptly.

8      Thank you, Your Honor.

9          THE COURT:  All right.  Well, you've reminded me of

10  what came out earlier today about the entity -- I left my

11  notepad in my chambers -- PMC or PMG or something.

12      Mr. Bridges, we're not going to have a hearing right now

13  on me doing anything, but what are you thinking?  What are you

14  doing?

15          MR. BRIDGES:  Your Honor, I'm not trying to duck your

16  question.  I literally have no involvement with any other

17  claim, and we would have to ask Mr. Sbaiti to answer your

18  questions.

19          THE COURT:  All right.  Is he there?

20          MR. BRIDGES:  He is.

21          THE COURT:  I'll listen.

22          MR. BRIDGES:  I'll switch seats and give him this

23  chair.

24          MR. SBAITI:  Sorry, Your Honor.  We had two computers

25  going and weren't able to use the sound on one, so we ended up

1  turning that off.

2      Your Honor, I'm not sure what the question is about when

3  you say what are we thinking. We have a client that's asked

4  us to file something, and when we're advised by bankruptcy

5  counsel that it's not prohibited for us to do so, and don't

6  know why we're precluded from doing so, and when the time

7  comes I'm sure we'll be able to explain to Your Honor --

8  someone will be able to explain to Your Honor why what we're

9  doing, despite Mr. Pomerantz's exacerbation, or excuse me,

10  exasperation, why that wasn't improper. It's our belief that

11  it wasn't improper or a violation of the Court's rule.

12          THE COURT: Just give me a quick shorthand *Readers'*

13  *Digest* of why you don't think it's improper.

14          MR. SBAITI: Sure. My understanding is, Your Honor,

15  there's not a rule that says we can't file it against the

16  Debtor for postpetition actions. So that, that's as -- that's

17  as much as I understand. And I'm going to -- I'm not trying

18  to duck it, either. And if I'm wrong about that and someone

19  wants to correct me on our side offline and if we have to

20  explain to the Court why that's so or what rule has been

21  violated, I'm sure we'll be able to put together something for

22  that. But that's what I've been advised.

23          THE COURT: Have you done thorough --

24          MR. POMERANTZ: Your Honor, I think what --

25          MR. SBAITI: (garbled), Your Honor.

118

1        THE COURT:  Have you done thorough research yourself?

2   Your Rule 11 signature is on the line, not some bankruptcy

3   counsel you talked to.  Have you done the research yourself?

4        MR. SBAITI:  Well, Your Honor, I've relied on the

5   research and advice of people who are experts, and I believe

6   my Rule 11 obligations also allow me to do that, so yes.

7        MR. POMERANTZ:  Your Honor, I think we're entitled to

8   know if it's Mr. Draper's firm who has been representing

9   Dugaboy.  He's the bankruptcy counsel.  I don't think it's an

10  attorney-client privilege issue.  If Mr. Sbaiti is going to be

11  here and sort of say, hey, bankruptcy counsel said it was

12  okay, I think we would like to know and I'm sure Your Honor

13  would like to know who is that bankruptcy counsel.

14       THE COURT:  Yes.  Fair enough.  Mr. Sbaiti?

15       MR. SBAITI:  Your Honor, in consultation with Mr.

16  Draper and with consultation with other counsel that we've

17  spoken to, that has been our understanding.

18       THE COURT:  Who's the other counsel?

19       MR. SBAITI:  Well, we've talked to Mr. Rukavina about

20  some of these things for the PCMG and the Acis case.  We've

21  talked to the people who, when they tell us you can't do this

22  because they're bankruptcy counsel for our client, then we

23  don't do something.  So, and I'm not trying to throw anybody

24  under the bus, but my understanding of what goes on in

25  Bankruptcy Court is incredibly limited, so, you know, and if

119

1   it's a mistake then I'll own it, if I have a mistaken

2   understanding, but I also wasn't anticipating having to make a

3   presentation about this right here right now, so --

4        THE COURT:  Well, you're filing lawsuits that involve

5   this bankruptcy case during the hearing, so --

6        MR. SBAITI:  Oh, we didn't file it during the

7   hearing, Your Honor.  It was filed last night, I believe.

8        THE COURT:  Okay.  Well, I assume that you're going

9   to go back and hit the books, hit the computer, and be

10  prepared to defend your actions, because your bankruptcy

11  experts, they may think they know a lot, but the judge is not

12  very happy about what she's hearing.

13       MR. POMERANTZ:  Your Honor, if I may ask when Your

14  Honor intends to issue the contempt ruling in connection with

15  the June 8th hearing?  I strongly believe -- and, obviously,

16  this has nothing to do with the contempt hearing; this

17  happened after -- but I strongly believe that sending a

18  message that Your Honor is inclined to hold counsel in

19  contempt, which obviously is one of the violators we said

20  should be held in contempt, it may be important to do that

21  sooner rather than later so that people know that Your Honor

22  is serious.

23       THE COURT:  All right.  Well, I understand and

24  respect that request.  And let me tell you all, I had a seven-

25  day -- okay.  You all were here on that motion June 8th.  I

120

1    had a seven-day, all-day, every-day, 9:00 to 5:00, 45-minute

2    lunch break, in-person hearing with a dozen or so live

3    witnesses that I just finished Tuesday at 5:00 o'clock.  So

4    you all were here on the 8th, and then -- what day was that --

5    what was -- Tuesday, I finished.  Tuesday was the 22nd.  So I

6    started on the 14th, okay?  So you all were here on the 8th

7    and I had a live jury trial -- I mean, not jury trial, a live

8    bench trial -- live human beings in the courtroom, beginning

9    June 14th.  So you're here the 8th.  June 14th through 22nd, I

10   did my trial.  And here we are on the 25th.  And guess what, I

11   have another live human-being bench trial next week, Monday

12   through Friday.

13        So we've been working in other things like this in between

14   those two.  So I'm telling you that not to whine, I'm just

15   telling you that, that's the only reason I didn't get out a

16   quick ruling on this, okay?

17             MR. POMERANTZ:  And Your Honor, I was not at all

18   making that comment to imply anything about the Court.

19             THE COURT:  Well, --

20             MR. POMERANTZ:  The time and effort that you have

21   given to this case is extraordinary, --

22             THE COURT:  Okay.

23             MR. POMERANTZ:  -- so please don't misunderstand my

24   comment.

25             THE COURT:  Okay.  And I didn't mean to express

121

1   annoyance or anything like that.  I guess what I'm trying to

2   do is I don't want anyone to mistake the delay in ruling on

3   the contempt motion to mean I'm just not that -- you know, I'm

4   not prioritizing it, other things are more serious to me or

5   important to me, or I'm going to take two months to get to it.

6   It's literally been I've been in trial almost all day long

7   every day since you were here.  But trust me, I'm about as

8   upset as upset can be about what I heard on June 8th, and I'm

9   going to get to that ruling, and I know what I'm going to do.

10  And, well, like I said, it's just a matter of figuring out

11  dollars and whom, okay?  There's going to be contempt.  I just

12  haven't put it on paper because I've been in court all day and

13  I haven't come up with a dollar figure.  Okay?

14      So I hope -- I don't know if that matters very much, but

15  it should.

16      All right.  We stand adjourned.

17      (Proceedings concluded at 3:35 p.m.)

18                      --oOo--

19

20                    CERTIFICATE

21      I certify that the foregoing is a correct transcript from
    the electronic sound recording of the proceedings in the
22  above-entitled matter.

23   **/s/ Kathy Rehling**                        06/29/2021

24  _____       _____

    Kathy Rehling, CETD-444                       Date
25  Certified Electronic Court Transcriber

122

INDEX
*Excerpt*
*11:33 a.m. to 3:35 p.m.*

PROCEEDINGS                                                          3

OPENING STATEMENTS

- By Mr. Bridges                                                     3
- By Mr. Pomerantz                                                 23

WITNESSES

-none-

EXHIBITS

Movants' Exhibits 1, 3 through 12, 15 through        Received 91
28, and 30 through 44

Debtor's Exhibit 1                                   Received 91
Debtor's Exhibits 1 through 17                       Received 93

RULINGS                                                           106

END OF PROCEEDINGS                                                121

INDEX                                                             122

# EXHIBIT 22

```
                    UNITED STATES BANKRUPTCY COURT
                    NORTHERN DISTRICT OF TEXAS (DALLAS)

IN RE:                        .   Case No. 19-34054-11(SGJ)
                              .
HIGHLAND CAPITAL              .
MANAGEMENT, L.P.,             .
                              .
                              .
         Debtor.             .
. . . . . . . . . . . . . .   .
                              .   Adv. No. 21-03067(SGJ)
CHARITABLE DAF FUND, LP,     .
et al.,                       .
                              .
         Plaintiffs,          .   Earle Cabell Federal Building
                              .   1100 Commerce Street
      v.                      .   Dallas, Texas  75242
                              .
HIGHLAND CAPITAL,             .
MANAGEMENT, L.P., et al.,    .
                              .
         Defendants.          .   Tuesday, November 23, 2021
. . . . . . . . . . . . . .   .   9:40 a.m.
```

                    TRANSCRIPT OF HEARING ON
        PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55);
    PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47); AND
         DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)

            **BEFORE HONORABLE STACEY G. JERNIGAN**
            **UNITED STATES BANKRUPTCY COURT JUDGE**

TELEPHONIC APPEARANCES CONTINUED ON NEXT PAGE.

Audio Operator:          Hawaii S. Jeng

 Proceedings recorded by electronic sound recording, transcript
                 produced by a transcript service.

_____

                    **LIBERTY TRANSCRIPTS**
                    **7306 Danwood Drive**
                    **Austin, Texas 78759**
            **E-mail:  DBPATEL1180@GMAIL.COM**
                    **(847) 848-4907**

2

TELEPHONIC APPEARANCES:

For CLO Holdco, Ltd.:       Sbaiti & Company PLLC
                            BY:  MAZIN AHMAD SBAITI, ESQ.
                            JP Morgan Chase Tower
                            2200 Ross Avenue, Suite 4900 W
                            Dallas, Texas 75201

For Highland Capital        Pachulski Stang Ziehl & Jones LLP
Management:                 BY:  JOHN MORRIS, ESQ.
                            780 3rd Avenue, 34th Floor
                            New York, NY 10017

                            Pachulski Stang Ziehl & Jones LLP
                            BY:  JEFFREY N. POMERANTZ, ESQ.
                            10100 Santa Monica Blvd., 13th Floor
                            Los Angeles, California 90067

For Highland CLO            Brobeck Phleger & Harrison
Funding, Ltd.:              BY:  JONATHAN W. JORDAN, ESQ.
                            4801 Plaza on the Lake
                            Austin, Texas 78746

                            King & Spalding LLP
                            BY:  PAUL RICHARD BESSETTE, ESQ.
                            500 West 2nd Street, Suite 1800
                            Austin, Texas 78701

**Appx. 00759**

3

**INDEX**

|  | **PAGE** |
|---|---|
| PLAINTIFFS' MOTION TO STAY ALL PROCEEDINGS (55)<br>  Court's Ruling - Denied | 29 |
| PLAINTIFFS' MOTION TO STRIKE REPLY APPENDIX (47)<br>  Court's Ruling - Denied | 32 |
| DEFENDANTS' MOTION TO DISMISS COMPLAINT (26)<br>  Court's Ruling - Under Advisement | 103 |

Appx. 00760

4

1        THE COURT: Good morning. Please be seated.

2        All right. We have a setting in the Charitable DAF

3 Fund, et al., v. Highland, Adversary 21-3067. We have three

4 motions that are set.

5        Let me get appearances from the Plaintiffs' counsel

6 first. Go ahead.

7        MR. SBAITI: Good morning, Your Honor. This is Mazin

8 Sbaiti for the Plaintiffs.

9        THE COURT: Okay. Thank you.

10        Now for the Defendants, who do we have appearing?

11        MR. POMERANTZ: Good morning, Your Honor. It's Jeff

12 Pomerantz and John Morris from Pachulski Stang Ziehl & Jones.

13 Your Honor, before -- I understand Your Honor is going to take

14 up the motion to stay first.

15        Before Your Honor does so, I have a procedural issue

16 relating to that motion that I would like to address the Court

17 after appearances are made.

18        THE COURT: All right. I assume that's all the

19 lawyer appearances for this adversary.

20        MR. JORDAN: Your Honor?

21        THE COURT: Oh, go ahead.

22        MR. JORDAN: Your Honor, we are a nominal defendant,

23 but John Jordan on behalf of Highland CLO Funding, Ltd.

24        THE COURT: Okay. Thank you. Sorry about that.

25        MR. BESSETTE: And, Your Honor, Paul Bessette, Mr.

5

1  Jordan's colleague is on the phone, as well.

2          THE COURT:  Okay.  Thank you.

3          All right.  Anyone else I missed?

4      (No audible response)

5          THE COURT:  All right.  Mr. Pomerantz, your

6  procedural issue?

7          MR. POMERANTZ:  Thank you, Your Honor.

8          Your Honor, I must once again bring to this Court's

9  attention a violation of the Court Rules by the various counsel

10  representing Mr. Dondero.  This time it's by Mr. Sbaiti.

11          When the district court entered its order granting

12  Highland's motion to enforce the reference and referring this

13  matter to Your Honor, there were three matters on the Court's

14  docket, district court's docket that got transferred.  First

15  was the motion to dismiss, second was the motion to stay, and

16  third was the motion to strike, which essentially has been

17  rendered moot.

18          The briefing was complete with respect to the first

19  two matters, the motion to dismiss and the motion to stay.  And

20  all that remained for the Court to do was to set a hearing and

21  have oral argument.  Your Honor, on October 13th, Your Honor

22  set a hearing for today for each of those two motions.

23  Nevertheless, on November 10th, almost a month after the Court

24  set the matters for hearing and after pleadings were closed,

25  Plaintiffs filed what they called their amended motion to stay.

6

1        As an initial matter, Your Honor, the amended motion

2   was not even filed in this adversary proceeding initially.  It

3   was filed in the main case, and there was an error that Mr.

4   Sbaiti corrected on November 18th, five days before this

5   hearing.  Plaintiff did not ask for leave of court to file any

6   further pleadings.  They did not provide the time under the

7   local rules for response.  And, in fact, they raised additional

8   arguments in their amended motion.

9        Well, Your Honor, we can certainly argue to the Court

10  that the amended motion constitutes a new motion, is untimely,

11  and the hearing should be continued to allow us to file a

12  response.  We're not going to do that, Your Honor.  As I will

13  discuss when it's my time to response substantively to the

14  motion, the new arguments to stay the proceedings, the amended

15  motion are equally as frivolous as the arguments contained in

16  the original motion.

17       But I bring this to the Court's attention because,

18  again, it's extremely frustrating to have the lawyers

19  representing Mr. Dondero's related entities continue to act as

20  if the rules do not apply to them.  Your Honor will recall just

21  a week or so ago, Your Honor made a -- we had a similar issue

22  in connection with the motion to dismiss.  Failure to follow

23  the rules is unprofessional, and it's disrespectful not only to

24  Highland's professionals but also to the Court and it

25  interferes with Your Honor's ability to control your docket and

7

1  sufficiently prepare for contested matters.

2          At some point, Your Honor, there should be real

3  consequences for the continued violation of the rules. Having

4  said that, Your Honor, we are prepared to go forward with the

5  motion to stay today.

6          THE COURT: All right. Mr. Sbaiti, what say you?

7  I'm looking at Docket Entry Number 69 in the adversary

8  proceeding that was filed last Thursday. So, obviously, very,

9  very late in the game, shall we say. What is your response to

10 this?

11         MR. SBAITI: Your Honor, that was not filed in the

12 adversary as an error. When we asked one of our paralegals to

13 file it, we're not as familiar with the bankruptcy court system

14 and it was an error. It was corrected once the lawyers

15 realized it, which was last -- which was on November the 18th.

16 It was filed in, I guess in the main case. But it was simply

17 an inadvertent error, Your Honor.

18         MR. POMERANTZ: I would add, Your Honor, the original

19 motion filed inadvertently was November 10th. It still was not

20 timely. I think Mr. Sbaiti needs to answer the question of why

21 that was filed untimely, okay.

22         THE COURT: All right. Thank you, Mr. Sbaiti.

23         So, one of my pet peeves in life is people blaming

24 paralegals, by the way. But be that as it may, as Mr.

25 Pomerantz points out that it was still untimely the motion

8

1  filed in the underlying bankruptcy case November 10th.  So what
2  is your --

3       MR. SBAITI:  Your Honor, when we looked at the motion
4  and looked at the progression of the case, we filed an amended
5  motion simply to clarify our position.  And really I don't
6  think we've changed our arguments all that much.  We simply
7  clarified our position.  We've seen amended motions filed in
8  the bankruptcy in our prior dealings, and so at that point, we
9  felt like there wasn't a rule explicitly saying we couldn't
10 have an amended motion.

11      But if it's untimely, Your Honor, you know, we don't
12 think it changes the underlying arguments.  As Mr. Pomerantz
13 said, we don't think there's any prejudice to Highland either.

14      THE COURT:  All right.  Well, just to be clear, you
15 know, it's one thing in an underlying bankruptcy case to file
16 an amended motion after you've gotten a motion set for hearing
17 that might slightly adjust, you know, facts or relief sought.
18 And, of course, we independently look at it when it happens in
19 an underlying case to see do we need more notice to affected
20 parties.

21      But in an adversary proceeding, you know, you just
22 don't do this.  All right?  If you have some sort of
23 exceptional circumstances, you can file I guess a motion to
24 amend because I got to include this new information that didn't
25 exist.  But you just don't do this, okay?

9

1        So I don't -- could you be clear what was the new
2  information?  What was the new information that had to be
3  brought before the Court suddenly?

4        MR. SBAITI:  Your Honor, there wasn't new
5  information.  We were simply giving notice of our understanding
6  of where the legal arguments were going.  The reason being is
7  that after those motions were filed and recently, the debtor
8  took the position in two other cases that they should be
9  dismissed pursuant to the permanent injunction.

10        And so that clarified for us at least a couple of
11  arguments that were unclear to us where the debtor stood on
12  whether or not the permanent injunction would be a basis to
13  dismiss or stay any of the claims that were pending.  There are
14  two other claims pending in district court.  Since we had filed
15  that motion, the debtor filed a motion to reconsider the stays
16  that were granted in those two courts.  And then they also
17  moved to dismiss on the basis of the permanent injunction.

18        And so given that the debtor took the position that
19  they were willing to dismiss those cases based upon the
20  permanent injunction, it in many ways contravenes the position
21  they took in response to our motion which is that the -- for
22  example, they somewhat take the position in Paragraph 22, it
23  wasn't as clear then but it's clear -- it seems clearer now
24  that the permanent injunction is not relevant to whether or not
25  the case can go forward in any capacity.

10

1    And so we simply wanted to incorporate that, but it's
2    mainly legal argument about the choices that are before the
3    Court.  That was really it.  I mean, theoretically, I would
4    have made them for the first time during oral argument and we
5    thought we were doing something good by giving -- apprising the
6    Court in writing and giving notice of these arguments to the
7    other side by filing an amended motion.  We didn't add new
8    evidence or anything like that.

9    MR. POMERANTZ:  Your Honor, that argument is
10   completely disingenuous because our motion to dismiss and
11   motion for reconsideration that Mr. Sbaiti refers to is several
12   weeks ago, okay.  It wasn't November 10th.  It was several
13   weeks ago.

14   I will respond substantively why Mr. Sbaiti is wrong
15   and there's no inconsistent positions when it's my time to
16   speak.  But for Mr. Sbaiti to say he was doing us a favor and
17   he was reacting to recent new information is just wrong, Your
18   Honor.  And they should just not be continued to allowed to get
19   away with flouting the rules.

20   THE COURT:  All right.  Well, let me just say I'm
21   confused, maybe I should say baffled, about this amended
22   motion.  You know, the motion to dismiss that is before the
23   Court for oral argument today isn't about the injunction, isn't
24   about the plan injunction.  It's about res judicata and other
25   12(b)(6) arguments.

11

1          So I'm confused and I think, you know, it's been
2   clear for many months in this adversary proceeding, in
3   particular, the debtor's position on the plan injunction,
4   particularly, you know, in the whole argument on the motion to
5   leave to add Mr. Seery as a defendant.

6          So I'm confused, but we're going to go forward on the
7   argument today, whatever argument you want to make.  And you've
8   been, I guess, forewarned.  I will say that these last-minute
9   amended motions are not going to be tolerated, are not going to
10  be considered.  And so, you know, I hope you won't do it again.
11  Your firm has already been sanctioned once in this adversary
12  proceeding.  I'm sure we all remember.

13         So, you know, I'm just kind of baffled why you would
14  take a chance filing an amended motion without leave or somehow
15  getting it to the attention of the Court or running it by the
16  other parties for their consent to you doing it.  But we're
17  going to go forward and just hear the arguments, okay.  And so
18  --

19         MR. SBAITI:  Thank you.

20         THE COURT:  -- I'll hear your argument.

21         I'm letting people know I don't know where this time
22  estimate came on the calendar today, three hours.  I don't know
23  if someone specifically expressed that.  But I'm letting you
24  know at noon I have a swearing-in ceremony that I'm doing back
25  in my chambers.  So I will stop at noon Central time.

12

1        And so does anyone think that's going to be a

2   problem?

3        MR. SBAITI:  It should not be, Your Honor, from our

4   perspective.

5        THE COURT:  Mr. Pomerantz?

6        MR. POMERANTZ:  I don't believe so.  Mr. Morris is

7   going to handle the motion to dismiss which is going to be the

8   bulk.  My presentation on the motion to stay is only going to

9   be around ten minutes or so.

10       THE COURT:  Okay.  Thank you.

11       Mr. Sbaiti, your argument on the motion for stay.

12       MR. SBAITI:  Thank you, Your Honor.

13       Your Honor, may I share my screen?

14       THE COURT:  You may.

15       MR. SBAITI:  I have a PowerPoint that can kind of --

16       THE COURT:  Okay.  You may.

17       MR. SBAITI:  -- walk us through.  Thank you.

18       Is Your Honor able to see my screen?

19       THE COURT:  I can, yes.

20       MR. SBAITI:  Thank you, Your Honor.

21       Your Honor, what I would point you to is, first, the

22   injunction language.  This is what Your Honor's permanent

23   injunction says, and this is really what animates our motion to

24   stay.  Out motion to stay is derived specifically because my

25   clients and I feel like our case has been enjoined by this

**WWW.LIBERTYTRANSCRIPTS.COM**

13

1 injunction, if not completely disposed of.

2     The language says that we're an enjoined:

3     "An enjoined party is permanently enjoined from

4     commencing, conducting, or continuing in any manner

5     any suit, action, or other proceeding of any kind

6     including any proceeding in a judicial, arbitral,

7     administrative, or other forum against or affecting

8     the debtor or the property of the debtor."

9     And then (v) of that injunction says:

10     "or acting or proceeding in any manner in any place

11     whatsoever that does not conform to or comply with

12     the provisions of the plan."

13     One of the things that was suggested in Paragraph 22

14 of their response was that the DAF and Holdco are not enjoined

15 parties. But the final plan defines an enjoined party in

16 Article 1(b)(56) as any entity who has or -- all entities who

17 have held, hold, or may hold claims against the debtor; any

18 entity that has appeared and/or filed any motion, objection, or

19 other pleading in this Chapter 11 case regardless of the

20 capacity in which such entity appeared and any other party in

21 interest. And, five, the related persons of each of the

22 foregoing.

23     Article 1(b)(22) defines a claim as any claim that's

24 defined in Section 1015 of the Bankruptcy Code. And Section

25 1015 of the Bankruptcy Code defines a claim as a right to

14

1 payment whether or not such right is reduced to judgment,

2 liquidated, unliquidated, fixed, contingent, matured,

3 unmatured, disputed, undisputed, legal, equitable, secured, or

4 unsecured.

5        So given this definition, when we've read this

6 injunction, we believed that we were enjoined parties, the DAF

7 and Holdco were both enjoined parties.  They had appeared in

8 the -- they have claims.  Obviously, those are the claims being

9 asserted here.

10        And so going back to the injunction language, we

11 believe this lawsuit has been disposed of by this permanent

12 injunction.  We believe there's really only one or two things

13 that should probably happen with this lawsuit.  Either it could

14 be dismissed based upon the permanent injunction or what we

15 proposed in our motion to stay is that the Court exercise its

16 inherent authority to simply stay the case pending the appeal

17 of this language, which is up on appeal in the Fifth Circuit

18 right now.

19        If that language, and if the injunction gets affirmed

20 by the Fifth Circuit, then certainly the dismissal can happen

21 once that affirmance happens and there's no harm, no foul, and

22 no one's wasted any time.

23        If they're not, if it's overturned, then, obviously,

24 the injunction would be vacated, presumably by the Fifth

25 Circuit.  And at some point, if the Court decides not to enter

15

1  a similar injunction that would likewise dispose of this case,

2  then the case could proceed on the merits.

3       The issue we've identified both in our original

4  motion and as we fleshed out in our -- as a matter of law in

5  our amended motion to simply put a finer point on it is that

6  the merits are now -- have been disposed of.  This injunction

7  ends this case, at least as far as we read it.  It ends this

8  case irrespective of the underlying merits of the lawsuit,

9  which means that the lawsuit merits themselves have become moot

10  and any opinion or any attempt to resolve it is obviously an

11  advisory opinion by the Court.

12       So we really only see two ways that this could go

13  right now without either gutting the injunction or

14  circumventing it completely, which is to say that either the

15  case should be dismissed based upon the permanent injunction or

16  the case should be stayed based upon the permanent injunction.

17       Mr. Pomerantz or the debtors' brief suggests that,

18  well, the injunction doesn't prevent hearing pending motions.

19  But I would respectfully disagree with that.  If you look at

20  the language, "commencing, conducting, or continuing in any

21  manner in any suit, action, or other proceeding against or

22  affecting the debtor."

23       As 12(b)(6) hearing, I would imagine, was intended to

24  fall under the umbrella of a proceeding.  And us arguing a

25  12(b)(6) motion would us be conducting and maybe even

16

1 continuing the suit because we're trying to protect the merits
2 of the suit, which as I said are at this juncture already moot.

3 And so it comes down to I think a very simple
4 question, which is what do we do at this juncture. Do we just
5 simply dismiss the lawsuit in light of this permanent
6 injunction or stay the lawsuit in light of this permanent
7 injunction?

8 The debtor makes a lot of hay out of the fact that,
9 well, there are special rules that apply when you're trying to
10 stay a case pending appeal. But if you look at all of their
11 case law, it has to do with different circumstances where an
12 appeal -- where there's a matter on appeal that could
13 substantially affect the resolution of the case, which here we
14 think it actually could. But in those cases, those appeals
15 would affect the resolution of the case on the merits; whereas,
16 here, the question goes to whether or not a permanent
17 injunction that really has stopped us all in our tracks.

18 As soon as we understood this injunction and its
19 scope, we're the ones who reached out to the debtor's counsel
20 and asked them on a meet-and-confer whether or not they would
21 just agree to stay the matter. And we were a little bit
22 surprised by their reaction when they first didn't think that
23 this applied to our case, and we didn't understand how. And
24 then they changed their mind, said it did apply to our case but
25 they didn't think that we should stay the case. And they

**WWW.LIBERTYTRANSCRIPTS.COM**

17

1 didn't suggest let's just dismiss it based upon the permanent

2 injunction.

3      So it kind of comes down to the same small -- same

4 simple issue, Your Honor. There's this permanent injunction,

5 and I don't think there's any way for us to get around it at

6 this juncture.

7      THE COURT: Mr. Pomerantz:

8      MR. POMERANTZ: Yes, Your Honor.

9      I'm going to respond to several of the arguments Mr.

10 Sbaiti made in his motion, which apparently he's abandoned

11 because he only is focused on the injunction. And I'm also

12 going to tell Your Honor, what our arguments are because

13 despite Mr. Sbaiti's efforts, he's completely misquoted them.

14      So in the motion and the amended motion, the

15 Plaintiffs make several arguments why this Court should stay

16 the matter. First, they argue they're entitled to a stay

17 because the exculpation provision in the plan prohibits them

18 from proceeding against the Defendants in the action. And

19 there are several problems with that argument.

20      First, Mr. Sbaiti and the Plaintiffs don't even

21 attempt to meet the Fifth Circuit's standards for a stay

22 pending appeal because, of course, they can't. Mr. Sbaiti's

23 trying to sidestep the grounds for a stay pending appeal by

24 arguing it doesn't apply just is incorrect.

25      They would have to show that there is a likelihood of

18

1  success on the merits, they would suffer irreparable harm, the

2  debtor wouldn't suffer irreparable harm, and there is -- public

3  interest supports a stay.  They can't do any of them.

4         In fact, as Your Honor is well aware, Your Honor

5  denied the actual appellants in that suit, in that order, the

6  confirmation order, a stay pending appeal and that was denied

7  by the district court and also denied by the Fifth Circuit

8  Court of Appeals.

9         The Plaintiffs didn't object to the plan, they are

10  not parties to the appeal, and they never sought a stay pending

11  appeal.  So they really can't explain why they as really

12  strangers to the appeal are entitled to a stay of the

13  effectiveness of the plan when the actual appellants to that

14  order were denied a stay pending appeal up through the

15  appellate ladder.

16         Second, notwithstanding Mr. Sbaiti's arguments in the

17  motion, the exculpation provision is neither as broad nor does

18  it affect all the parties that are subject to this litigation.

19  There are three Defendants in the complaint.  The only

20  Defendant that is covered by the exculpation provision is the

21  debtor.  The exculpation provision does not apply HCF Advisors,

22  and it does not apply to Highland CLO Funding.

23         Also, while the exculpation provision does apply to

24  the debtor, it only exculpates the debtor from claims of

25  negligence.  The complaint raises a variety of causes of action

19

1  that have nothing to do with negligence and would not be

2  covered by the exculpation provision.

3         But, Your Honor, the biggest problem with their

4  argument that the exculpation provision supports a stay is that

5  the exculpation -- the appeal of the exculpation provision has

6  nothing to do with this case.  Why?  Because the Fifth Circuit

7  appeal concerns whether the exculpation provision is

8  appropriate for parties other than the debtor.  The debtor is

9  the only Defendant in this case that obtains the benefit of the

10 exculpation.

11        And there is no dispute, there was no dispute at

12 confirmation, there's no dispute in the case law, there's no

13 dispute in Pacific Lumber, there's no dispute in the appeal

14 that a plan can exculpate the debtor.  So the Fifth Circuit

15 appeal doesn't implicate the exculpation provision and cannot

16 support a basis for a stay.

17        The next argument Mr. Sbaiti makes is the injunction

18 provision, and the injunction provision is on appeal to the

19 Fifth Circuit.  But the aspect of the appeal of the injunction

20 is not the provision that Mr. Sbaiti points to.

21        And, again, as with the exculpation provision, the

22 same arguments about failure to obtain a stay, failure to be

23 party to the appeals, and failure to object to the plan apply,

24 as well.  But as is the case with the exculpation provision,

25 the resolution of the appeal of the injunction provision will

20

1  not affect this case in any way.

2          They point to the portion of the injunction that

3  prohibits enjoined parties from directly or indirectly

4  continuing, commencing, or conducting in any manner any suit or

5  action proceeding against the debtor.  They argue that they

6  cannot proceed without violating the injunction because the

7  injunction was intended to put all litigation against the

8  debtor to an end.

9          But, of course, Your Honor, that is not true.  That

10  is not what the injunction is.  The issue on appeal before the

11  Fifth Circuit as it relates to the injunction is whether the

12  injunction impermissibly enjoins parties from enforcing their

13  rights with respect to post-effective date commercial

14  relationships with the reorganized debtor.  And, of course, we

15  argue that it's appropriate, but it has nothing to do with the

16  provision Mr. Sbaiti identified.

17          The appeal does not impact in any way whether a plan

18  can enjoin prosecution of claims that arose prior to the

19  effective date.  And, of course, such a plan provision is

20  completely appropriate and is customary.  The plan provided the

21  debtor as the plan provides all debtors with a fresh start and

22  enjoins litigation against the debtor.

23          But importantly, Your Honor, that does not mean as

24  Plaintiffs argue that any liability for pre-effective date

25  conduct just goes away and that creditors are left without a

21

1  remedy to pursue claims against the debtor for pre-effective

2  date conduct.

3  Rather, if they have a pre-petition claim in lieu of

4  their litigation that's pending, they file a pre-petition claim

5  against the estate and that matter is resolved in the claims

6  objection procedure.  Or, as in the case here, when they make

7  an allegation that there is a post-petition claim, what do they

8  do?  They file a request for payment of an administrative

9  claim, and this Court addresses the validity of the

10  administration claim.  The lawsuit pending in another

11  jurisdiction stops, but the claim has to be resolved in the

12  bankruptcy court.

13  The only conduct that the injunction really prohibits

14  is them from proceeding with actions in other courts.  It does

15  not deny them a remedy.  Accordingly, their argument that they

16  cannot proceed with claims against the debtor because of the

17  injunction provision just lacks any merit and can't form the

18  basis for a stay.

19  Plaintiffs' next argument in their briefing is that

20  if the Court refuses to stay the complaint, they will file a

21  motion to withdraw the reference of this matter to the district

22  court.  Your Honor, this is the biggest head-scratcher of them

23  all given how this complaint ended up before Your Honor.  This

24  exact issue and Plaintiffs' arguments as to why the reference

25  should be withdrawn have already been fully briefed and decided

22

1 by the district court.

2      As Your Honor may recall, the Plaintiff filed this
3 action in the district court, conveniently failing to include
4 the bankruptcy case as a related case or mentioning that the
5 bankruptcy courts have related jurisdiction in the filings.
6 Your Honor may have had occasion to review the underlying
7 complaint when the debtor brought a motion for contempt against
8 counsel for Plaintiffs for pursuing a claim against Mr. Seery
9 in violation of Your Honor's January 9th, 2020 and July 16th,
10 2020 orders.

11      Your Honor issued an order finding counsel and
12 various parties in contempt which order is, of course, subject
13 to appeal.  At the time we were litigating the contempt motion,
14 we filed two motions in district court.  The first was a motion
15 to enforce the reference and have the district court send that
16 complaint to Your Honor.  And that motion to enforce the
17 reference is now on Your Honor's docket at Number 22 and 23.

18      The second was the motion to dismiss which is before
19 Your Honor today.  Plaintiffs oppose the motion to enforce the
20 reference arguing that mandatory withdrawal was required
21 because the matter involved consideration of non-bankruptcy
22 federal law, specifically federal securities laws and the
23 Investment Advisors' Act.

24      Plaintiffs further argue to the district court why
25 would you refer the case to the bankruptcy court if it's only

23

1 going to end up back in the district court upon mandatory

2 withdrawal of the reference. They argue to the district court

3 that would be a complete waste of time.

4        We filed our reply at Docket Number 42 explaining to

5 the district court why mandatory withdrawal of the reference

6 did not apply and why this case should be referred to Your

7 Honor. And what did the district court subsequently do? It

8 entered an order referring this action to Your Honor which is

9 why we are here today.

10        Plaintiffs now flout the district court's order of

11 reference by telling the Court that if the Court does not stay

12 the matter, they will file a motion to withdraw the reference

13 before Your Honor, and they attach virtually identical pleading

14 that they filed in opposition to our motion to enforce the

15 reference.

16        Plaintiffs did not disclose in their amended motion

17 that there was a fully-briefed motion to enforce the reference

18 before the district court. Plaintiffs' argument is

19 disingenuous and designed to mislead the Court.

20        The district court has only agreed that mandatary

21 withdrawal of the reference does not apply and this case

22 belongs in Your Honor. And while we cannot stop the Plaintiffs

23 from filing any motion before this Court, we want to put them

24 on notice that if they do file a motion for withdrawal of the

25 reference in light of the facts as I just stated them, we will

**WWW.LIBERTYTRANSCRIPTS.COM**

Appx. 00780

24

1  seek sanctions.

2         In any event, Your Honor, the fact that they may file

3  a motion for withdrawal of the reference at some point in the

4  future is not grounds to stay the matter.

5         Lastly, Your Honor, Plaintiffs argued in the opening

6  that Highland's position today in opposing the motion to stay

7  is inconsistent with positions Highland has taken in two other

8  lawsuits commenced by the Sbaiti firm.  Like all of their other

9  arguments, they misrepresent the facts and are frivolous.

10         The Sbaiti firm filed a complaint on behalf of the

11  DAF in the district court arguing that Highland mismanaged

12  (audio drop).  That complaint followed in the heels of an

13  almost identical complaint filed by Dugaboy asserting the same

14  claims.

15         And Your Honor may recall questioning Mr. Sbaiti at a

16  hearing in June how Dugaboy could pursue such a claim in the

17  district court if Dugaboy had a pending proof of administrative

18  claim on file in the bankruptcy case.  Well, soon after that

19  hearing, Your Honor, the Dugaboy complaint was dismissed, and a

20  few days later the DAF complaint was filed.  That complaint has

21  never been served on Highland.

22         The second lawsuit is also a lawsuit filed by the

23  Sbaiti firm on behalf of an entity called PCMG in the district

24  court.  And PCMG previously held less than five one-hundredths

25  of a percent interest in a certain fund managed by highland.

25

1 The lawsuit alleges that Highland acted improperly to sell

2 certain assets of the fund, thereby damaging PCMG. That

3 complaint has also never been served on Highland.

4 The Plaintiffs sought a stay of those matters before

5 Highland could file a response, and the court -- the district

6 court's entered stays in those matters. And Highland has filed

7 motions for reconsideration and the motions to dismiss because

8 they violate the injunction.

9 But, importantly, Your Honor, if you read the

10 motions, Highland does not argue that Plaintiffs do not have a

11 remedy for the alleged wrongs they say they suffer. Rather,

12 Highland's argument is that any claims alleged in those

13 lawsuits, just like any claims alleged in the lawsuit before

14 Your Honor today, must proceed in bankruptcy court as part of

15 the claims objection process. That's where they will have

16 their day in court. The lawsuits don't go away. The

17 injunction prevents them from continuing on in district court.

18 Accordingly, Highland is being totally consistent in

19 all matters, and the litigations may not proceed there but must

20 proceed before Your Honor. And, of course, none of these three

21 matters are implicated by the Fifth Circuit appeal.

22 Your Honor, the amended motion was procedurally

23 improper and is substantively without merit. And for all these

24 reasons, we request that the Court deny the stay motion and

25 proceed with the hearing on the motion to dismiss.

26

1      Thank you, Your Honor.

2      THE COURT:  All right.

3      Mr. Sbaiti, you get the last word.

4      MR. SBAITI:  Thank you, Your Honor.

5      Your Honor, the administrative claim process that was

6  described as being the way that these claims were supposed to

7  proceed, by the language of the order that we read, does not

8  allow for these claims.  Those claims are limited to a specific

9  category of claims that don't include the claims that are

10  alleged in this lawsuit.

11      And in any event, this lawsuit wasn't filed as an

12  administrative claim.  So if that's the case and it needs to be

13  refiled or reasserted as an administrative claim, then I think

14  that's a subject for another day.  All I know is that we have

15  this injunction right now that either should stay this case

16  pending the appeal, which I'll address the issue on appeal in a

17  moment, or it should be dismissed, perhaps without prejudice so

18  that it can be refiled properly as an administrative claim if

19  that's what's supposed to happen, because I guess this converts

20  the matter.

21      The appeal, the subject of the appeal as to the

22  injunction, Your Honor, the appeal actually encompasses many of

23  the issues that we're talking about in this case.  Now Mr.

24  Pomerantz tries to narrow the scope of what's up on appeal, and

25  that may indeed be the argument that they're going to present

27

1 to the Fifth Circuit or that they've presented to the Fifth

2 Circuit.

3        But the actual issue up on appeal is the

4 enforceability and validity of the order for a variety of

5 reasons which includes the provision that we're talking about

6 and the enforceability of the provision that we're talking

7 about because it gets rid of particular claims.  And I guess

8 the argument back is, no, it doesn't because there's now an

9 alternative means of going there.

10        Mr. Pomerantz says that we shouldn't have proffered a

11 motion to enforce the reference.  That proffer, however, was

12 because Judge Boyle's reference to this Court didn't deal with

13 our motion to -- our cross-motion to withdraw the reference.

14 All it dealt with was their motion to enforce the reference as

15 a -- to enforce the standing order in the district court.  And

16 that's all she ordered was she cited the standing order and the

17 statutes, I think it's 157(a), and that's really all it did.

18        So it left open the question of whether she wanted

19 Your Honor to deal with the withdrawal of the reference

20 specifically as to the 12(b)(6) issue in the first instance.

21 It didn't resolve the question.  It doesn't purport to resolve

22 that question.  And it's not unheard of for the district court

23 then to send the matter to the bankruptcy court and then to

24 piecemeal which proceedings the withdrawal of the reference is

25 applicable to and then all the other proceedings would stay

28

1 with Your Honor or with the bankruptcy court.

2 So we weren't flouting the district court's order,

3 and we certainly weren't flouting any of the previous orders.

4 And the threat of a sanction for simply exercising our rights

5 in due course is not well taken.

6 Now Mr. Pomerantz says, well, the DAF and CLO Holdco

7 are not parties to the appeal. I don't think that's relevant

8 because if the provision is struck by the Fifth Circuit, it's

9 not only struck for the appellants, it's struck as to all.

10 It's either valid or it's invalid. And even if it's declared

11 to be invalid only as to the appellants, it's not suddenly

12 valid as to everyone else who didn't appeal. That's not

13 generally how these appeals have worked.

14 If the Court doesn't stay this matter, Your Honor,

15 and doesn't dismiss it, we still maintain, Your Honor, that as

16 it stands today, the question on the merits have been mooted

17 and we cannot proceed. I think what Mr. Pomerantz is hoping

18 for or the debtor is hoping for is a provision where our hands

19 are potentially tied to argue the motion.

20 And if the Court tells us they're not, then we'll

21 certainly argue the 12(b)(6). But what I don't want to do is

22 argue a 12(b)(6) motion that on its face appears to violate the

23 permanent injunction and then be held in contempt for violating

24 that injunction.

25 And so that's why we've asked for the Court to either

29

1 stay the matter under its inherent jurisdiction or to -- if

2 you're going to -- if it's not going to be stayed, then we

3 believe it has to be dismissed according to the permanent

4 injunction as it stands right now.

5        THE COURT:  All right.

6        The motion to stay is denied.  The amended motion to

7 stay is likewise denied.  This is an odd argument.  I guess one

8 might say the traditional four-factor test for a stay of a

9 proceeding has really not been the subject of the argument here

10 for a stay.

11        So suffice it to say the four-prong test for a stay,

12 you know, hasn't been met here.  There hasn't been a showing of

13 substantial likelihood of success on the merits or irreparable

14 injury if the stay's not granted or a stay will not

15 substantially harm others or the stay would serve a public

16 interest.

17        But going on to the arguments that were focused on by

18 movant, I just don't think that you have shown that, you know,

19 either the exculpation clause or the injunction provisions of

20 the plan somehow tie your hands in arguing the 12(b)(6) motion,

21 defending against the 12(b)(6) motion today or I just think

22 that your arguments reflect, frankly, a misunderstanding of how

23 the injunction language and exculpation language applies here.

24        So the motion for stay is denied, and I will ask Mr.

25 Pomerantz to submit an order reflecting the Court's ruling.

30

1    So it looks like we have another procedural matter,

2 Mr. Sbaiti.  You filed a motion to strike reply appendix of the

3 Plaintiffs quite a while back.  So did you want to present

4 that?

5    MR. SBAITI:  Yes, Your Honor.  I think it's a very

6 simple procedural issue.

7    Generally, a party that files a 12(b)(6) is limited

8 to the four corners of the complaint.  And if there's a

9 contract incorporated or a document incorporated as an

10 intrinsic part of the complaint, you know, that's usually

11 considered under the 12(b)(6) motion.

12    What the Defendants did, what the debtor here did is

13 they filed a bunch of evidence in their 12(b)(6), essentially

14 attempting to argue it as a summary judgment.  We raised that

15 in our response.  So as part of our response, we objected to

16 all the evidence.  But then on the reply, they filed a bunch

17 more evidence both without leave and improperly, basically

18 sandbagged us.

19    And so we raised two points for striking that

20 evidence.  One was akin to the first argument, which is it's

21 not an evidentiary hearing.  It's not an evidentiary process in

22 the first instance.  A 12(b)(6) motion has to assume that the

23 facts pled are true, and then the question is whether they

24 state a claim.

25    And, secondly, adding them to the reply is especially

31

1   egregious because the reply is the last word.  And we didn't

2   have an opportunity to respond, and we also don't think it's

3   relevant nor should we have to respond to a whole bunch of

4   extra evidence that was attached.

5           That's essentially the basis of our motion, Your

6   Honor.

7           MR. POMERANTZ:  Your Honor, the simple answer to the

8   issue is we filed the reply of the appendix in connection with

9   the motion to enforce the reference.  We didn't file it in

10  connection with the motion to dismiss.  The motion to enforce

11  the reference is moot.  So what Mr. Sbaiti, his whole argument

12  doesn't make any sense.

13          As a substantive matter, just there wasn't any

14  evidence.  It was pointing to court pleadings, orders, and

15  stuff.  So it's irrelevant.  I don't know why it's still on the

16  docket.  It shouldn't be on the docket since it related to the

17  motion to enforce the reference.

18          THE COURT:  All right.  Mr. Sbaiti, did you just

19  simply --

20          MR. SBAITI:  Your Honor, much of that evidence was --

21          THE COURT:  -- misunderstand or what?

22          MR. SBAITI:  I think we might have because it was

23  filed as a separate item, and it may have been miscalendared or

24  misapplied on our system.  But the way it was presented to us

25  when we got it was it appeared to be evidence in support of,

32

1 well, I guess both, but certainly evidence that was averted to

2 in the reply.

3 But if they're saying that the Court's not going to

4 consider it, then that moots the motion and I think we can move

5 on.

6 MR. POMERANTZ: Yes, Your Honor. I had nothing to do

7 with his motion. I guess there was another mistake on their

8 end. I guess that stuff happens occasionally.

9 THE COURT: Okay. All right. So I'll deny it as

10 based on a mistake that's been acknowledged here. And so with

11 that, let's have an order cleaning that up, as well, Mr.

12 Pomerantz, please.

13 With that, we'll move on to the Defendants' motion to

14 dismiss complaint. I think, Mr. Pomerantz, you said Mr. Morris

15 will be making this argument?

16 MR. POMERANTZ: That is correct, Your Honor.

17 THE COURT: All right.

18 Mr. Morris, I'll hear your argument.

19 MR. MORRIS: Good morning, Your Honor. John Morris

20 for Pachulski Stang Ziehl & Jones for the reorganized debtor.

21 Can you hear me okay?

22 THE COURT: I can. Thank you.

23 MR. MORRIS: Okay.

24 Your Honor, this is a bit like Groundhog's Day. I

25 believe that we're going to spend the next half hour or an hour

33

 1  discussing the very issues that were before the Court earlier

 2  this year on the HarbourVest 9019 motion.

 3          As the Court will recall from the June 8 hearing,

 4  there is a complaint that's been filed ostensibly by the DAF

 5  and CLO Holdco.  As Your Honor will recall, the testimony

 6  established that Mark Patrick had just been installed as the

 7  trustee, had no knowledge of the prior events, and Mr. Dondero

 8  and Mr. Sbaiti spent quite some time together formulating this

 9  particular complaint that is nothing less than a collateral

10  attack on the Court's prior order.

11          I'd like to, if I can, just walk through a PowerPoint

12  presentation to try to make the debtor's position quite clear,

13  if I may.

14          THE COURT:  You may.

15          MR. MORRIS:  And I would ask my assistant, Ms. Canty

16  (phonetic), to put up the first slide.

17          Your Honor, you'll recall that last December, the

18  debtor filed its motion under Rule 9019 for court approval of a

19  settlement.  The debtor was completely and utterly transparent

20  in what the terms of the settlement were.

21          Very briefly, as set forth in Appendix 2 or Exhibit 2

22  which was the motion itself, in Paragraph 32, Your Honor, the

23  debtor set forth the terms of the transaction for which it was

24  seeking approval.  Those terms included in the very first

25  bullet point a statement that HarbourVest shall transfer its

34

1 entire interest in CLOF to an entity to be designated by the
2 debtor.

3      And that's an important point that we'll talk about
4 in a number of different contexts, Your Honor. The debtor made
5 it very clear at the very first moment of this matter that it
6 was not going to acquire the asset but the asset was going to
7 be transferred to an entity to be designated by the debtor.
8 The debtor's motion filed last December clearly stated the
9 value of the interest that it would be acquiring in return.
10 That was also set forth in Paragraph 32 in a footnote.

11      It didn't say that it was the fair market value. It
12 said the method of valuation was the net asset value and gave a
13 valuation date of December 1st so that all parties in interest
14 who received the motion understood the economics of the deal.
15 And the deal that the debtor was asking the Court to approve
16 was one whereby HarbourVest would receive certain claims and in
17 exchange for those claims, they were going to transfer their
18 interest in CLO -- HCLOF.

19      The debtor also filed on the docket for all to see a
20 copy of the settlement agreement. The settlement agreement
21 sets forth the terms of the deal, including again the statement
22 that HarbourVest "will transfer all of its rights, title, and
23 interest in HCLOF." It actually says to an affiliate or an
24 entity to be designated by the debtor. And the transfer
25 agreement itself was also put on the docket.

35

1        So that's where things stood just before Christmas.

2   I know that there's some due process and other type arguments

3   that are in the Plaintiffs' opposition to the motion.  But, of

4   course, the undisputed facts are that the debtor timely filed

5   the motion.  The time period was consistent with all applicable

6   rules.  Nobody ever asked the debtor for an extension of time.

7   Nobody ever filed a motion for an extension of time.  And so

8   those due process arguments I think carry no weight at all.

9        So the debtor filed the motion.  And if we can go to

10  the next slide, we see what the responses were, and there were

11  several.  All of the responses, the only responses were

12  objections to the motion filed by Mr. Dondero and his certain

13  of his affiliated entities.

14       Mr. Dondero's objection can be summarized as follows.

15  He made the following observations and asserted the following

16  objections to the proposed settlement.  The first thing he said

17  is that the settlement far exceeds the bounds of

18  reasonableness.  Now, of course, one cannot make a

19  determination of reasonableness without having an understanding

20  of value.  The debtor was giving something and it was getting

21  something.

22       And so Mr. Dondero understood that the issue of value

23  was front and center.  If there was any mistake about it, he

24  also noted that he understood that as part of the settlement

25  and, again, I've written this incorrectly, HarbourVest will

36

1 transfer its entire interest in HCLOF to the debtor. That is

2 not what Mr. Dondero understood. In fact, Mr. Dondero

3 understood that it would transfer its entire interest in HCLOF

4 "to an entity to be designated by the debtor," again, making it

5 clear that he knew exactly what the debtor was doing here. And

6 that can be found at Appendix 4 in Footnote 3 on Page 1 if you

7 want the exact quote from Mr. Dondero's pleading.

8        In the same footnote, he also specifically

9 acknowledges that he understood the valuation. He understood

10 the method valuation. He understood the valuation date of

11 December 1st. And he urged the Court in his pleading to

12 scrutinize the settlement to make clear that the available

13 value of the investment should be realized by the debtor's

14 estate.

15        And this is such a critical point, Your Honor. His

16 concern was that by placing the value in an entity other than

17 the debtor itself, that the Court wouldn't have jurisdiction

18 over that asset. That was his concern. So not only did he

19 understand that the asset was going to be transferred to an

20 affiliate, he wanted to make sure that this Court had

21 jurisdiction over the asset.

22        And, of course, Mr. Seery in his testimony and

23 otherwise, we provided the Court with all the comfort it needed

24 to know that even though it was being assigned to a special-

25 purpose vehicle wholly-owned by the debtor, it would

37

1  nevertheless be subject to the Court's jurisdiction.

2          Mr. Dondero's trusts also filed an objection if we

3  can go to the next slide.

4          Dugaboy and Get Good represented by Douglas Draper

5  made the following observations and asserted the following

6  objections to the HarbourVest Settlement.  They, too, made

7  clear that they understood that the asset was going to be

8  transferred to an entity designated by the debtor.  They, too,

9  acknowledge that they understood that the debtor was valuing

10 the asset at approximately $22 million as of December 1st.  And

11 their objection was that the Court couldn't evaluate the

12 settlement without knowing how the asset was valued, without

13 knowing whether the debtor could acquire the asset, very

14 critical point.

15         These are the points that are made in the complaint.

16 These are the exact same points that are made in the complaint.

17 And also the Court couldn't evaluate the settlement unless they

18 understood that the value would be inure to the benefit of the

19 debtor's estate, again, mimicking Mr. Dondero's concern that by

20 placing the asset in an affiliate of the debtor, that it might

21 not be subject to the Court's jurisdiction.

22         Finally, and most importantly, if we can go to the

23 next slide.  The Plaintiff, CLO Holdco, filed an objection to

24 the 9019 motion.  And this is just so critical.  And this is

25 the Groundhog Day aspect that I specifically speak of.  CLO

38

1  Holdco's objection was based solely on its assertion that it

2  had a superior right to the opportunity to acquire the asset

3  that was being transferred by HarbourVest.  It only made one

4  argument in support of its contention that it had a superior

5  right, but that argument was specifically premised on the

6  membership agreement, Section 6.1 and 6.2 of the membership

7  agreement.

8          CLO Holdco, the Plaintiff in the underlying action,

9  argued to this Court that HarbourVest had no authority to

10 transfer the asset without complying with the right of first

11 refusal that would give CLO Holdco the opportunity to take the

12 asset for itself.  That's what this Court was told.  CLO Holdco

13 didn't make this argument fleetingly.  They provided an

14 extraordinarily detailed analysis of Sections 6.1 and 6.2 of

15 the membership agreement and concluded "that HarbourVest must

16 effectuate the right of first refusal before it can transfer

17 its interest in HCLOF.  That was the objection.  Objections

18 have consequences, as Your Honor knows.

19          If we can go to the next slide.

20          By filing an objection, CLO Holdco and the trusts and

21 Mr. Dondero became participants in the litigation.

22 Notwithstanding the Plaintiffs' arguments to the contrary, when

23 they file the objections, they participate in what's called a

24 contested matter.  And in a contested matter, they had every

25 right to take all discovery on any issue that was related to

39

1  the 9019 motion, including the transfer, the disposition of the
2  asset to an affiliate of the debtor, the valuation of the asset
3  that's being received, the merits of the settlement itself, the
4  causes of action, whether, you know, what communications that
5  were, the negotiations, what did Mr. Seery and Mr. Pugatch
6  discuss?  Right?

7         They could have taken any discovery they wanted.  And
8  they did avail themselves of discovery, in fact.  They did -- I
9  don't know why they did what they did, but they chose to take
10 one deposition, and that was Mr. Pugatch, okay.

11        His deposition transcript, I think is at Exhibit 7,
12 or Appendix Number 7, and it was a long deposition.  It really
13 was.  And they asked Mr. Pugatch at the deposition if he knew
14 what the value of the asset that was being transferred was.
15 And he said $22.5 million.  So it wasn't just Mr. Seery or the
16 debtor who was subscribing to this valuation.  The party on the
17 other side of an arm's length negotiation was subscribing to
18 the exact same valuation.

19        The Plaintiffs could have taken whatever discovery
20 they wanted.  This is a full and fair opportunity to
21 participate in the litigation.  We proceeded to trial.  Before
22 we got there, actually, the debtor filed its response to CLO
23 Holdco's objection and proffered its own very detailed and
24 apparently very persuasive analysis that CLO Holdco's objection
25 was without merit, that CLO Holdco had no right of first

40

1  refusal under the facts and circumstances as they existed, and
2  with Grant Scott, Mr. Dondero's childhood friend at the helm,
3  we got to Court for the contested hearing on the debtor's 9019
4  motion, and CLO Holdco withdrew their objection.

5        And I've put up on the screen just an excerpt of the
6  transcript because, you know, when we talk about whether or *res
7  judicata* should apply, because was there a hearing on the
8  merits?  Was there a decision on the merits?  Just look at the
9  words of CLO Holdco's lawyer.  "CLO Holdco has had an
10 opportunity to review the reply briefing and after doing so has
11 gone back and scrubbed the HCLOF corporate documents based on
12 our analysis of Guernsey law."

13       And some of the arguments of counsel in those
14 pleadings and our review of the appropriate documents, counsel
15 obtained the authority from Mr. Scott to withdraw the CLO
16 Holdco objection based on the interpretation of the member
17 agreement.  We were grateful for that and the Court
18 specifically said in response, "That eliminates one of the
19 major arguments that we had anticipated this morning."

20       Apparently, the Plaintiffs believe that those events
21 have no meaning and that this Court's reliance on CLO Holdco's
22 substantive withdrawal of its objection has no meaning.  I
23 think they're wrong, and we'll get to that in a moment.

24       We proceeded with the hearing.  Mr. Seery and
25 Mr. Pugatch testified at length.  If you look at Footnote 3,

41

1  you'll see Mr. Seery testified for almost 70 pages of

2  testimony.  Mr. Pugatch testified for almost 45 pages of

3  testimony.  His testimony was exhaustive.  And, again, any of

4  the objecting parties had the right to ask whatever questions

5  they want.

6          But I do want to just note a few things that aren't

7  up on the screen right now.  If you go to Appendix 9, Your

8  Honor, which is the transcript of the hearing, at Page 13, you

9  will see that the very first thing I discussed in my opening

10 statement was the economics and how with a valuation of $22.5

11 million this deal made sense for the debtor.

12         You will see from Pages 30 to 42 there is extensive

13 testimony from Mr. Seery about the amount and the value of the

14 asset.  But the most important part of Mr. Seery's testimony is

15 that he explains how it came to be that HarbourVest agreed to

16 transfer its interest in HCLOF to an affiliate of the debtor.

17 And that came about, not because Mr. Seery or the debtor was

18 initially at all interested in doing this.  The whole idea

19 originated with HarbourVest.

20         They wanted to extract themselves from the Highland

21 platform.  They wanted to give this piece up.  So there's no

22 conspiracy going on here.  The unrebutted testimony that all of

23 the objecting parties had an opportunity to challenge was that

24 the whole idea originated with Mr. Pugatch and with

25 HarbourVest.  I think that's an important point to take into

42

1  account.

2       And finally, again, from the hearing, if you look at

3  at Appendix 9, you'd also find that Mr. Pugatch, again,

4  testified, as he had in his deposition, as to the value of the

5  interest being transferred.  So we completed the testimony.  We

6  rested our case having had a full and fair opportunity to

7  contest the motion.  The objecting parties rested as well.  And

8  we got to the point where we had to prepare the notice, and we

9  were discussing that at the hearing, if we can go to the next

10 slide.

11      And it's very important, because again, this was all

12 done transparently, and it was all done on the record.  And

13 after the close of evidence, I addressed the order that was

14 going to be prepared.  I specifically said that I wanted to

15 make clear that we were going to include a provision, "that

16 specifically authorizes the debtor to engage in, to receive

17 HarbourVest the asset, you know, the HCLOF interest," right.  I

18 wanted everybody to know that was what was going to happen, and

19 then I said, "The objection has been withdrawn."  I think the

20 evidence is what it is and we want to make sure that nobody

21 thinks they're going to go to a different court somehow to

22 challenge the transfer.  But yet, that is exactly what the

23 complaint seeks to do.

24      Having put everybody on notice as to where we were

25 going, as to what the evidence showed, the debtor drafted and

43

1 the Court adopted an order, and the order says, among other

2 things, that HarbourVest was authorized to transfer its

3 interest to the debtor. Actually, it says, "to a wholly owned

4 and controlled subsidiary of the debtor," pursuant to the

5 transfer agreement, "without the need to obtain the consent of

6 any party or to offer such interest first to any other investor

7 in HCLOF." So the Court heard the 9019 motion pursuant to a

8 Bankruptcy Rule and entered and order that was unambiguous and

9 that the Plaintiffs did not appeal from.

10          We can go to the next slide.

11          At a very high level, Your Honor, it is just crystal

12 clear that the complaint is just inextricably intertwined with

13 the 9019 proceedings and the order itself. I think Mr. Sbaiti

14 would agree with me that but for the order that approved the

15 transfer of the asset and the testimony about the value of that

16 asset, they have no claims.

17          Every single claim is predicated on what happened in

18 the 9019 hearing. Every single claim is predicated on the

19 Court's order approving the transfer of the asset and the

20 testimony and evidence that was adduced in relation to that

21 asset.

22          There were really only two issues that the Court -- I

23 mean, if you want to think about it at its most simplistic

24 level, the Court was being asked to assess, is it fair, is it

25 reasonable, is it legally permissible for the debtor to give

44

1 something. In this case, allowed claims and releases, and to

2 get something in return. In this case, HarbourVest's interest

3 in HCLOF and releases in return. And that is really the

4 gravamen of the complaint.

5 The complaint is based whether it's breach of

6 fiduciary duty or RICO or breach of contract or tortious

7 interference, whatever the claim is, none of them exist if the

8 debtor doesn't get this. They just don't exist. And that is

9 why the complaint and the proceeding are inextricably

10 intertwined. And if you just take a look at just one paragraph

11 of the pleading, it says at the core of this lawsuit is the

12 fact that HCM, that's the then debtor, purchased the

13 HarbourVest interests in HCLOF for $22.5 million knowing that

14 they were worth far more than that. There's not a cause of

15 action that exists in the complaint that isn't dependent on

16 Paragraph 36.

17 So if we can go to the next slide with that

18 background, I'd like to argue why under 12(b), the complaint

19 should be dismissed because the claim should be barred under

20 the doctrine of *res judicata*. Luckily, Your Honor, there is at

21 least one area of agreement between the parties here, and that

22 is the purpose of the doctrine and the elements that have to be

23 satisfied in order to meet the burden of proof necessary to

24 have the claims barred. And in Footnote 1, you can -- I've

25 tried to just be helpful to the Court to show that we may not

45

1  cite to the exact same cases, but the parties agree that the

2  doctrine is intended to foreclose the re-litigation of claims

3  that were or could have been raised in a prior action and that

4  there's four elements that have to be satisfied for the

5  doctrine to apply.

6  The parties have to be either identical or at least

7  in privity, the judgment in the prior action had to have been

8  rendered by a court of competent jurisdiction.  Number three,

9  the prior action had to have been concluded by a judgment on

10  the merits.  And the last one is that the same claim or cause

11  of action was involved in both suits.  So I just want to spend

12  a few minutes now, Your Honor, going through those four

13  elements to show the Court how easily the reorganized debtor

14  meets this standard.

15  If we can go to the next slide, I can take care of

16  the first two elements very quickly.

17  The first element, the debtor asserted that the

18  Plaintiffs were parties or in privity with parties to the prior

19  proceeding.  That's at Paragraph 17 of the motion to dismiss.

20  The debtor relies on the deposition testimony of Grant Scott,

21  who was then the trustee of the DAF.

22  CLO Holdco is a wholly-owned subsidiary of the DAF,

23  or wholly controlled, in any event, and Mr. Scott's testimony

24  was that he was the only director and there were no employees

25  of either entity.  So we, in our motion, put forth evidence to

46

1  establish the first element, and I don't believe, maybe I've
2  missed it.  I don't believe that the Plaintiffs have contested
3  that element.  If they have, I think Mr. Scott's testimony will
4  carry the day, in any event.
5          The second element as to whether or not a court of
6  competent jurisdiction is the entity or the court that rendered
7  the ruling.  Of course, that's been met, too.  The Plaintiffs,
8  in their opposition to the motion to dismiss, suggested that
9  the bankruptcy court would have lacked jurisdiction if their
10  cross motion to withdraw the reference was granted.  They said
11  if the district court decides that mandatory withdrawal
12  applies, then it cannot find that the bankruptcy courts already
13  entered final judgment was rendered on Plaintiffs' causes of
14  action and had jurisdiction to do so.  I think that's just a
15  clear misstatement of the law.
16          But in any event, Your Honor, at this point, I
17  believe it's irrelevant because the district court, in fact,
18  sent the case back to Your Honor and back to this Court.  And
19  so, at the end of the day, Plaintiffs' argument doesn't hold
20  water because of the district court's ruling, which can be
21  found -- the order of reference can be found at Docket
22  Number 64.  And so I think that easily takes care of the second
23  prong.
24          The third prong is whether -- if we can go to the
25  next slide -- the prior proceeding resulted in a judgment on

47

1  the merits. And this is really the critical point, Your Honor.
2  As the Court knows, the whole doctrine of *res judicata* is
3  designed to prevent, as the parties agree, the re-litigation of
4  claims. Stated another way, it's to bring finale. It's to
5  make sure that the Court doesn't hear the same claims and the
6  same issues that either were brought or that could have been
7  brought in a prior proceeding. And so, we believe that we
8  easily meet the standards set forth in the third prong. The
9  9019 order necessarily determined that the *quid pro quo* that I
10 described earlier was fair, reasonable, and legally
11 permissible.

12        Notwithstanding their assertions to the contrary, the
13 Plaintiffs are most definitely seeking to unwind at least one
14 half of the Court's order by belatedly claiming that they are
15 entitled to the benefit of the bargain while leaving Highland
16 burdened, frankly, with the claims that HarbourVest got as part
17 of the deal. I will tell you, Your Honor, and this is
18 argument, the debtor would never have asked for, and I don't
19 believe that the Court would ever have granted, the 9019 motion
20 if they thought that there was a risk in the future that
21 Highland wouldn't get the benefit of the bargain and it was
22 incumbent upon CLO Holdco and the DAF, and frankly, any party
23 in interest, to stand up and be counted and tell the Court and
24 the debtor, why the debtor was not entitled to do this deal and
25 CLO Holdco did that. They actually did.

48

1      They stood up and they filed an objection and they
2  said we have a superior right to this asset in the form of a
3  right of first refusal.  They wound up folding in the face of
4  persuasive argument, and I respect the lawyer who did that.  I
5  just do.  But that was the time to speak up, and that's why it
6  is on the merits because that is exactly what *res judicata* is
7  intended to do.  It's intended to have everybody put your cards
8  on the table.  You don't put one card on the table and say, I'm
9  going to challenge this under 6.2 of the members agreement, but
10 I'm not going to tell you that I also think you owe me a
11 fiduciary duty under the Advisors Act or as the control party
12 or under any other theory that they had.  They can't do that.
13 That's exactly what the problem is here.

14      If we can go to the next slide.  Is it a judgment on
15 the merits?  The debtor and the Court relied on CLO Holdco's
16 representation that it was withdrawing its argument, its claim,
17 its contention, its assertion that it had a superior right to
18 obtain the HarbourVest interest in HCLOF.  Again, they did so
19 not whimsically, not because Mr. Kane was going to be out of
20 town and he couldn't make the hearing.  He did it after, and I
21 don't think this matters frankly, but I think it's worth noting
22 that he did it after an extremely careful analysis.  I would
23 tell you, Your Honor, that -- well, I would argue, Your Honor,
24 that even if Mr. Kane at CLO Holdco had never filed an
25 objection, if they'd never filed -- if they'd gotten notice

49

1  that this was happening and they sat silently, that would have

2  been enough for *res judicata* because the issue before the Court

3  was whether it was legally permissible for the debtor to

4  acquire this asset.

5       And if they had an obligation, if they owed a duty to

6  another party, it wouldn't have been legally permissible.  And

7  if somebody believed that it wasn't legally permissible because

8  a duty was owed to them, they had an obligation to speak up.

9  And so I think it's very important, particularly for the

10  collateral estoppel argument that I'll make in a moment, that

11  CLO Holdco did in fact file an objection.  It was based on the

12  breach of contract claim that's in their complaint.  It's the

13  exact same claim.  And they withdrew it.  I think it's very,

14  very important.  I think it highlights why *res judicata*

15  applies.  I think it is the linchpin of the collateral estoppel

16  argument.

17       But at the end of the day, I think if they say

18  nothing, they should be estopped or precluded under *res*

19  *judicata* from now asserting -- it would be like -- I was

20  thinking about this earlier, Your Honor.  If you'll remember

21  earlier this year, Mr. Dondero and his entities have kind of a

22  habit of withdrawing objections at the last minute.  We had a

23  couple of sale hearings earlier this year.  And the issue was

24  valuation, you know, and the process, and could the debtor meet

25  its burden of proving that the sale outside of the ordinary

50

1  course of business was in the debtor's best interest.  And they

2  sold that restaurant.  And Mr. Dondero objected.  And at the

3  last second, they withdrew the objection.  Did they sue

4  tomorrow?  Does Your Honor really think that they could bring a

5  lawsuit tomorrow and say they just found a document or theory

6  on which the debtor had an obligation to give them a right of

7  first refusal, even though we've already closed on the

8  transaction, even though they were given notice of the

9  transaction, even though they filed an objection to the

10  transaction, even though they withdrew the objection?  Would

11  the Court tolerate for one second a new pleading tomorrow from

12  Mr. Dondero that the debtor actually had a fiduciary duty to

13  give him a right of first refusal to buy that asset under

14  whatever theory, just because he pleads it and the Court has to

15  accept as true the allegations in the complaint?  I think not.

16  And I think it's worth thinking about that to highlight just

17  how -- just how wrong this is.

18          Continuing on.  You know, the Plaintiffs in

19  opposition say it can't be a trial on the merits because we

20  weren't parties.  Of course they were parties.  Again, they

21  filed an objection.  They were the parties to the contested

22  matter, full stop.  They rely on a case called Applewood and

23  they say, this is the very first point they make in their

24  brief.  Applewood, if it wasn't *res judicata* in Applewood, how

25  could it possibly be *res judicata* here?  But the facts are just

51

1  so inapposite, right?

2          In Applewood, you had a garden variety plan and

3  release where the debtor and the officers and directors got a

4  discharge.  No objection to it.  And a secured lender later on

5  sought to sue guarantors who happened to be officers and

6  directors.  And the court, not surprisingly, said that the

7  confirmation order wouldn't prevent the secured lender from

8  going after the officers and directors, not in their

9  capacities, as such, but in their capacity as guarantors, which

10 were never part of the confirmation order.  That just doesn't

11 apply here because here, we have the debtor making a motion

12 before the Court in which it sought permission and authority to

13 acquire a particular asset.  Anybody who had a claim to that

14 asset should have stepped forward and put their cards on the

15 table.

16          And again, CLO Holdco put their cards on the table

17 and they lost, and they folded.  To use the poker analogy, they

18 folded.  And to hear them come into Court today and say we're

19 going to sue you because I reshuffled the deck, it's not right

20 and Applewood has no relevance.

21          Finally, Your Honor, you know, it's not on the

22 merits, they say, because you know, Mr. Seery and the debtor

23 hid the true value of the asset, and had we only known the true

24 value of the asset, we would have made all of these other

25 claims.  The fact of the matter is, you either have a fiduciary

52

1  duty or you don't.  And if you had a fiduciary duty, they

2  should have spoken up and they did only under 6.2, but they

3  did.

4          But here's the important part, Your Honor.  Take the

5  allegations as true.  You have to take all of the allegations

6  as true, not just some of them.  And if you look at

7  Paragraph 127 of the complaint, and I would ask Ms. Canty to go

8  to Appendix 11 and let's just put Paragraph 127 up on the

9  board.

10         Here's the irony of the whole thing, right.  The

11 whole complaint is based on the fact that somehow Mr. Seery was

12 engaged in insider trading.  They accused him of insider

13 trading, and they say he didn't disclose the full value of the

14 asset.  Just read Paragraph 127.  James Dondero, who was on the

15 board of MGM, is the tippee.  You've got an insider trading

16 case -- I mean, I don't represent MGM.  I'm not with the SEC.

17 I don't know why Mr. Dondero thought he should be telling

18 Mr. Seery in December, 2020.  It's not clear if it was before

19 or after the 9019 motion was filed.  But Mr. Dondero is the

20 very source of information -- you can't make this up.  He's the

21 very source of the information that he now complains Mr. Seery

22 didn't disclose.

23         Of course, Mr. Dondero, the trust, CLO Holdco could

24 have asked Mr. Seery at any time, how did you come up with your

25 valuation?  Mr. Dondero, knowing that he had supplied to

53

1   Mr. Seery, according to Paragraph 27, please take it as true
2   for purposes of this motion only.  He's the source of the
3   inside information.  And now he has the audacity to come to
4   this Court, notwithstanding the Court's approval, all of the
5   time and money and effort spent in the 9019 process, and say,
6   Mr. Seery was wrong because he didn't tell CLO Holdco and the
7   DAF about the information that Mr. Dondero gave to Mr. Seery.
8   It's not right.

9        It was a judgment on the merits.  And if Mr. Dondero
10  or the DAF or CLO Holdco or the trust wanted to challenge the
11  valuation, they had every opportunity to do so.  And based on
12  Paragraph 127, if the Court accepts it as true, shame on them.
13  Shame on them for not pursuing this issue before.  The guy gave
14  Mr. Seery, according to this allegation, and I'm just going to
15  leave it there, inside information.  And he sits there in
16  silence, right?  It says, look at the last sentence: "The news
17  of the MGM purchase should have caused Seery to revalue HCLOF's
18  investment."  Seriously?

19       The third element is (indiscernible).  The fourth
20  element, if we can go to the next slide.

21       Are they the same claims?  Did the claims arise from
22  the same set of operative facts?  I've addressed this pretty
23  clearly already, so I don't want to belabor the point.  But
24  obviously, both the 9019 motion and the complaint arise solely
25  from the debtor's settlement with HarbourVest.  The debtor's

54

1  acquisition of HarbourVest's interest in HCLOF and the debtor's

2  valuation of that interest.  Without those three facts, there

3  is no complaint.  It's just not credible to argue that the

4  fourth element is not met.

5          The case law is clear.  It's quoted in the

6  Plaintiffs' opposition.  It's not just the test of whether the

7  claims are the same.  It's whether the claim is the same as

8  that which was brought or could have been brought.

9          In their opposition, the Plaintiffs contend that the

10 claims "did not write them until after the settlement was

11 consummated," and that the first time the plaintiffs heard

12 about the valuation of HarbourVest's interests was at the

13 January 14, 2021, hearing.  I think I quoted that.  If you

14 look, I don't know if it's Page 10 or Paragraph 10; the way I

15 wrote it, it's probably Page 10.  I think that's a quote right

16 out of there.  But of course, as we saw the debtor disclosed

17 the valuation in its very initial motion, CLO Holdco's counsel

18 elicited valuation testimony directly from Mr. Pugatch, so that

19 was before the hearing.

20         And of course, Mr. Dondero and the trusts both cited

21 in their objections the valuation.  The notion that this was

22 not right, just -- it's contradicted by their own conduct,

23 their objections, their questions in deposition, the

24 information that was contained in the motion that they objected

25 to.

55

1          I do want to go off-script for just a minute, if we

2     could just take that down because I know that this is probably

3     something that Mr. Sbaiti may argue.  And that is, well, gee,

4     but you have to take the allegation as true that Mr. Seery

5     wasn't honest, that Mr. Seery lied to the court.  I don't

6     understand why there's not a fraud cause of action in there,

7     but there's not.  But that's their theory.

8          And gee, how does he get to skate away Scott free if

9     he's allowed to do that with impunity, right?  I will tell you,

10    Your Honor, of course you've seen Mr. Seery many times.  You've

11    made your own assessments of his credibility.  I'm not here to

12    argue the merits, but I will just say that the Defendants, if

13    ever forced to, will contest the allegation.

14         But here's the thing, and here's the important point

15    about, you know, whether or not he could lie with impunity and

16    say, I suspect that's where Mr. Sbaiti is going to want to go.

17         Mr. Seery said what he said.  And he had a reason to

18    speak, and he spoke, and he said what he said and he told

19    everybody who would listen exactly what he was doing and how he

20    was doing it.  For whatever reason, the objectors put the

21    valuation front and center.  It's right in their objections.

22    They noted the objections.  But for whatever reason, they did

23    nothing.

24         Whether they were negligent or whether they were

25    lying in wait is kind of irrelevant.  They had a full and fair

56

1 opportunity to contest this issue. And if they had done so,

2 and the evidence proved what they're now alleging, they can't

3 tell you what would have happened. So, you know, HarbourVest

4 may have taken a different position. The Court may have done

5 something.

6 We're never going to know now because Mr. Seery and

7 the debtor are getting away with something, but because they

8 put in evidence that went unchallenged by Mr. Dondero and the

9 Plaintiffs. It simply went unchallenged. And they say, oh,

10 gee, that's because we didn't know. Well first of all, you

11 didn't ask. And second of all, again, the source of the inside

12 information, the reason that Mr. Seery should have known the

13 asset was worth more. The reason that he should have refrained

14 from trading and not engaged in insider information was

15 Paragraph 127. It was Mr. Dondero.

16 Here's another thing. If -- if again Mr. Seery had

17 not been honest with the Court and that was ever brought out,

18 Maybe HarbourVest -- maybe HarbourVest would have had a right

19 to complain. There's a lot in the complaint about oh,

20 HarbourVest was misled. The actual evidence that's in the

21 record, and this is part of res judicata, Mr. Seery testified

22 very clearly to the arm's length negotiation that took place.

23 He told the Court under oath that the negotiations were

24 contentious.

25 He told the Court under oath that in order to try to

57

1  resolve the case, he and Mr. Pugatch went off and had their own

2  private conversation without lawyers.  They could have taken

3  discovery on any of that, right.  What did you guys talk about?

4  It's certainly not privileged.  They had every opportunity.

5  But what we do know is that Mr. Pugatch under oath, in

6  deposition, and at trial, said the value is $22.5 million.

7          So I don't think Mr. Pugatch or HarbourVest is ever,

8  ever, every going to complain about the transaction they did.

9  Because of what the evidence simply shows.  But again, you've

10 got the Plaintiffs in their complaint saying that somehow the

11 debtor and Mr. Seery in negotiating this transaction has now

12 exposed the debtor to liability.  It just makes no sense.

13         So there was a time and there was a place to

14 challenge Mr. Seery.  Somebody, you know, maybe HarbourVest

15 could have done something, maybe they could still do something.

16 I don't know.  If they really think that there's a problem,

17 maybe we'll hear from HarbourVest someday.  But the Plaintiffs

18 have no right to complain.  They just don't.  They knew

19 everything.  They were the source of the inside information.

20 They sat on their hands, and they shouldn't be allowed to do

21 what they're doing now.

22         If we can go to the next slide.  I want to move to

23 the next theory and try to finish this up.  The next theory is

24 that the Plaintiffs' claims are barred by judicial estoppel.

25 The judicial estoppel argument is really, really very

58

1  straight-forward.  And it's important because if the Court

2  thinks about this the way I do, it's that the whole issue of

3  valuation is completely irrelevant to the Plaintiffs unless

4  they can show that they were owed some kind of duty, that they

5  had some superior right to acquire the asset.  But that's

6  exactly the issue that CLO Holdco relied upon and withdrew and

7  should now be estopped from pursuing.  Right.

8          The legal standard, again the parties agree on, that

9  in order to be estopped, the party must take an inconsistent

10 position.  And the party must have convinced the Court to

11 accept that position.  Again, both prongs are easily met here

12 in just a few sentences from the January 14 hearing.  You have

13 Mr. Kane saying that he understands and acknowledges and admits

14 that they have no superior right to the investment.  And the

15 Court relying on that very representation in declining to

16 conduct a hearing and render a ruling on the merits of the

17 claim that was withdrawn.  The objection that was withdrawn.

18          And for the avoidance of doubt, after Mr. Draper

19 spoke on behalf of the Trust, the Court, at Page 22 engaged in

20 the following colloquy.  The Court asked Mr. Draper:

21          "THE COURT:  Were you saying that the Court still

22              needs to drill down on the issue of whether the

23              debtor can acquire HarbourVest's interest in HCLOF.

24          "MR. DRAPER:  No.

25          "THE COURT:  Okay.  I was confused whether you were

59

1        saying I needed to take an independent look of that.

2        Now that the objection has been withdrawn of CLO

3        Holdco, you're not pressing the issue.

4        "MR. DRAPER:  No.  I am not."

5        Okay.  You can call it res judicata, you can call it

6   judicial estoppel, collateral estoppel, the two prongs are

7   easily met.  They're taking an inconsistent position today and

8   through all kinds of different theories, including the one that

9   they withdrew, the Plaintiffs assert that they had a superior

10  right to acquire the interest from HarbourVest.

11       And they should have asserted those rights at the

12  hearing.  That was the time.  And they should be estopped now

13  from taking a completely inconsistent position from the one

14  that was before the Court.  And I just do want to point out,

15  the statement from a case called Hall vs. G.E. Plastic.  And

16  it's interesting, Your Honor, because there's only a few cases

17  that I focused on, because this is really more fact intensive.

18  And there isn't a dispute as to the, you know, the elements of

19  these matters.

20       But it is interesting that the Plaintiffs, you know,

21  generally ignore all of the cases that we cite to.  One which

22  is Hall vs. G.E. Plastic, where the Court said that the focus

23  on the prior success or judicial acceptance requirements is to

24  minimize the degree of a party contradicting a Court's

25  determination, based on a party's prior position.  That's the

**WWW.LIBERTYTRANSCRIPTS.COM**

60

1  whole point of the exercise.  You can't do this.  You can't do
2  this.

3      Just quickly, that leaves the individual arguments as to
4  each of the five causes of action and I just want to go through
5  some highlights.  There's a negligence claim, Your Honor.  And
6  we did not file a pleading, but the Court can certainly take
7  judicial notice of the fact that the effective date has
8  occurred.  Under the effective date, the plan is now effective.
9  That includes the exculpation clause, as Mr. Pomerantz, I think
10 accurately and without contradiction pointed out earlier, the
11 exculpation clause applies specifically to the debtor and to
12 negligence claims.  And that's not a matter that's at all
13 subject to appeal.

14     So I think just to add to the arguments that we have
15 in our papers, which I adopt and do not abandon for any
16 purpose, I would add to the argument on negligence, that it's
17 now precluded, as a result of the plan becoming effective.

18     The fiduciary duty count suffers from numerous defects.  I
19 just want to point out a couple of them.  They don't respond to
20 the argument under Corwin, that under the Advisor's Act, there
21 is no private right of action to sue for damages arising from a
22 breach of fiduciary duty.  This claim rears its head in
23 virtually every single complaint.  They've never addressed
24 Corwin.  Corwin is binding on this Court, and it is unambiguous
25 that there is no private right of action to sue for damages for

61

1 breach of fiduciary duty under the Advisor's Act.

2 They ignore Goldstein. Goldstein is not from the
3 Fifth Circuit, but it's very persuasive authority that advisors
4 do not owe fiduciary duties to their individual investors.
5 Instead, they owe fiduciary duty to their client. Their client
6 is the entity with whom they're in contractual privity. And so
7 in this case, there's no fiduciary duty there, either.

8 The breach of contract claim. Again I just -- I
9 would just say quickly, Your Honor, it's barred under judicial
10 estoppel. Even if it wasn't, it's clear based on Mr. James'
11 analysis and admission that the debtor's, or the reorganized
12 debtor's interpretation of 6.2 is accurate. And you know, I
13 said this in the beginning. Now let me tie it in a bow because
14 the breach of contract claim, and the tortuous interference
15 claim are both tied to the same thing. And that is the
16 assertion that the Plaintiffs had a right under the membership
17 agreement, a right of first refusal.

18 And they basically say that the debtor was playing
19 games. That they shouldn't be able to get through 6.2 by
20 assigning it to an affiliate. And that's where I go back, Your
21 Honor, and just remind the Court that the debtor told the whole
22 world exactly what they were doing in their motion. And their
23 objections, Mr. Dondero and the Trusts both acknowledge to the
24 whole world that they understood exactly what was happening.

25 In fact, their concern was not that it was going to

62

1  the debtor, but that it might be going to an affiliate outside

2  of the bankruptcy court's jurisdiction.  And for them to now

3  say, having taken all of those positions -- talk about

4  inconsistent positions.  They should be barred from saying

5  today, that the use of an affiliate to effectuate the

6  transaction was wrongful, because they actually told the Court

7  that they needed to -- that the Court needed to make sure that

8  it had jurisdiction over the very entity they now say somehow

9  shouldn't have been allowed to get the asset.

10        It's a bit much.  So that takes care of the tortuous

11 interference.

12        The RICO claim, Your Honor, again is a motion.

13 There's so many different aspects to it.  But I don't think the

14 Court needs to get past the Supreme Court holdings in HJ, Inc.

15 Again, just simply ignored by the Plaintiffs in their

16 opposition to the motion to dismiss.  In HJ, Inc., the Court --

17 the Supreme Court did an exhaustive analysis to try to

18 determine and ultimately did determine, what a pattern of

19 racketeering activity meant.  And the Supreme Court came to the

20 following formulation.  That it had to have two or more

21 predicate related offenses that amounted to a threat of

22 continued criminal activities.

23        You know, the notion here is that the debtor and Mr.

24 Seery engaged in insider trading.  We've already -- I've

25 already mentioned that according to the complaint, which the

63

1  Court can take as true.  Mr. Dondero, himself, was the tippee.
2  But be that as it may, they don't come close to meeting the
3  very high standards set forth by the Supreme Court in HJ, Inc.
4  to show that whatever conduct Mr. Seery and the debtor engaged
5  in, and if you take the allegations as true, in not telling
6  what the fair value of the asset was, that that doesn't amount
7  to a hill of beans for purposes of RICO.  That you don't have
8  any, I think predicate acts.  I think here's the Court,
9  predicate acts extending over a few weeks or months,
10  threatening no future criminal conduct, do not meet RICO
11  pleading grounds.  Right.

12         Security fraud claims cannot be predicate acts for
13  purposes of RICO.  That is also clear.  And that is really, I
14  mean they say mail, wire and fraud.  But what's really at heart
15  is the 10(b)(5).  Okay, it's the 10(b)(5) claim.  Again, Mr.
16  Seery being -- I mean Mr. Dondero being the tippee.  But those
17  are just some of the reasons.

18         None of, you know, that the RICO claim fails. You
19  know, I'll otherwise rely on the papers, unless the Court has
20  specific questions as to any of the other pieces of the motion
21  to dismiss the RICO claim, or any other aspect of the
22  Defendants' motion.  I think this is clear.  I think we win, no
23  matter how you slice it.  It's just wrong.  It's just wrong.
24     This Court will never, ever have a final order if Mr.
25  Dondero is able to engineer complaints such as this, which seek

64

1  to assert claims that absolutely positively could have and

2  should have been brought at the time the debtor made its

3  motion.

4          Unless the Court has any questions, I have nothing

5  further.

6          THE COURT:  I do not.  All right.

7          Mr. Sbaiti, I'm going to let you have as much time as

8  Mr. Morris.  He took 55 minutes.  As I mentioned, I have a hard

9  stop at 12:00 to do a swearing in ceremony.  So if you're not

10  finished in 40 minutes, then I'm going to have to take a break

11  and come back and let you finish.  All right?

12          MR. SBAITI:  Thank you, Your Honor.  Although I don't

13  think I'm going to be much longer than 35-ish minutes.

14          THE COURT:  Okay.

15          MR. SBAITI:  if not less.

16          THE COURT:  Okay.

17          MR. SBAITI:  I think you'll be able to be done by --

18  we'll be able to be done by noon.

19          THE COURT:  All right.  Thank you.

20          MR. SBAITI: Thank you, Your Honor.  Your Honor, may I

21  share my screen?

22          THE COURT:  You may.

23          MR. SBAITI:  Thank you, Your Honor.  Do you see my

24  Power Point, Your Honor?

25          THE COURT:  I do.

65

1          MR. SBAITI:  Thank you, Your Honor.  I don't know
2   what which one you see.  Is it the --

3          THE COURT:  I see presentation.

4          MR. SBAITI:  With the full page?

5          THE COURT:  Yes, uh-huh.

6          MR. SBAITI:  Okay, yeah, great.  I just want to make
7   sure we're on the right page.  Thank you, Your Honor.  So Your
8   Honor, the defendant debtor is a registered investment advisor.
9   And it all begins with that.  And this where the distinctions
10  between what happened in the 9019 and I'll get to the elements
11  of res judicata through argument.

12         But the first thing that has to be identified is that
13  the Defendant is a registered investment advisor.  The
14  objection filed by Holdco back during the 9019 was an objection
15  against HarbourVest selling its interest by filing the right of
16  first refusal.  It did not deal with the investment advisor
17  feature of Highland's relationship.  And I'll get to why the
18  9019 doesn't preclude these arguments today.

19         This is essentially the structure.  Highland was the
20  investment advisor of HCLOF, and Holdco is an investor in
21  HCLOF.  And so Highland would owe a fiduciary duty under the
22  Advisor's Act against -- to CLO Holdco.

23         Highland also had a direct advisor relationship with
24  the DAF.  And so under the Investment Advisor's Act, it owed
25  fiduciary duties to both of those entities.  The law governing

66

1  registered investment advisors is that it's a federally

2  recognized and defined fiduciary duties.  The fiduciary duty to

3   there's a fiduciary duty to affirmatively keep the advisee

4  informed and the fiduciary duty not to self-deal, i.e., not to

5  trade ahead of an advisee and opportunity that an advisee would

6  want or expect and without the advisee's expressed informed

7  consent.

8        This is a federally recognized and defined fiduciary

9  duty and it's actionable under state fiduciary duty laws.

10 While Mr. Morris ended his argument by saying we didn't deal

11 with their case law saying that there's no private right of

12 action under the Advisor's Act, the fact of the matter is that

13 Judge Boyle, about ten years ago, found that a state -- the

14 breach of fiduciary duty claim can be predicated on breaches of

15 federally imposed fiduciary duties under the Advisor's Act.

16 And that's what Douglass v. Beakley held.  And that's actually

17 what we cited in our response.  So I'm not sure why he would

18 argue that we haven't addressed the issue of where does this

19 private right of action come from.

20       Federal Law supplies the rules of the relationship

21 and State Law provides the cause of action for those breaches.

22 Now the scope of that has been expounded upon by many cases.

23 The Fifth Circuit held in Laird, as a fiduciary, the standard

24 of care to which an investment advisor must adhere imposes an

25 affirmative duty of utmost good faith and full and fair

67

1  disclosure to all material facts, as well as an affirmative

2  obligation to employ reasonable care to avoid misleading his

3  clients.

4        The word "affirmative" there is important because it

5  means the investment advisor is not supposed to wait to be

6  asked.  The investment advisor as an affirmative duty to

7  proactively provide the information to the client.

8        The next standard comes from the SEC.  We call it the

9  SEC interpretation letter.  It's a release that came out in

10  2019.  And to meet it's duty of loyalty, an advisor must make

11  full and fair disclosure to its clients of all material facts

12  relating to the advisor relationship.  Material facts relating

13  to the advisor relationship include the capacity at which the

14  firm is acting with respect to the advice provided.

15        The SEC had another release in 2000 -- or excuse me,

16  in that same release, the SEC said the duty of loyalty requires

17  that an advisor not subordinate its clients interests to its

18  own.  In other word, an investment advisor must not place its

19  own interest ahead of its clients' interests.  An advisor has a

20  duty to act in the client's best interest, not its own.

21        The SEC general instruction three to part 2 of Form

22  ADV, that every investment advisor has to pull out.  And this

23  is cited in our papers.  As a fiduciary, you must also seek to

24  avoid conflicts of interest with your clients, and at a

25  minimum, make full disclosure of all material conflicts of

68

1  interest between you and your clients that could affect the

2  advisor relationship. This obligation requires that you provide

3  the client with sufficiently specific facts, so that the client

4  is able to understand the conflicts of interest you have, and

5  the business practices in which you engage, and can give

6  informed consent to such conflicts or practices or reject them.

7         And, finally, the Third Circuit in Belmont said:

8         "Under the best interest test, an advisor may benefit

9         from a transaction recommended to a client if, and

10         only if, that benefit, and all related details of the

11         transaction are fully disclosed."

12         These fiduciary duties are unwaivable by the advisor.

13  Any condition, stipulation or provision binding any person to

14  waive compliance with any provision of this subchapter, or with

15  any rule, regulation or order thereunder shall be void.

16         So the lawsuit does not allege that the HarbourVest

17  settlement should be undone or unwound. I'd like to move to

18  that point. Mr. Morris says well, you have to unwind half of

19  the settlement. Maybe HarbourVest doesn't have to give back

20  what it got, but Highland would still be saddled with the cost

21  of the settlement, but not with the benefit of the settlement.

22         Well, actually that's not true. There's two points

23  that we would make on that. Number one, our suit is a suit for

24  damages. In other words, the suit would be a suit for money

25  damages, based on the difference between the value of the asset

69

1  and what HarbourVest or what the actual value of the asset that

2  was represented, $22.5 million.  So the second point, though,

3  is that even under a situation where CLO or Holdco or the DAF,

4  or even HCLOF were to purchase the HarbourVest suit, the

5  expectation would obviously be that they'd pay the $22.5

6  million that Highland paid for it.

7          So Highland is -- so it's not unwinding, and there's

8  no saddling Highland with a burden that they didn't otherwise

9  have, I think that's a misrepresentation.  But we're not

10 seeking to unwind the lawsuit -- or excuse me, unwind the

11 settlement.

12         Now Mr. Morris is correct, the representation of

13 value by Mr. Seery is -- is one of the main points here.  And

14 the representation was that the value of the entire asset.  Not

15 just the shares of MGM, but the value of the entire asset was

16 $22.5 million.  So in other word, nearly half of HCLOF was

17 represented to be worth $22.5 million.  It was argued by

18 counsel on Page 14 of the January 14th transcript, and then on

19 Page 112 of that transcript, Mr. Seery specifically says the

20 current value is right around $22.5 million.

21         Now that was also in some of the filing papers and

22 Mr. Morris put up the evidence to Your Honor that Mr. Pugatch,

23 on behalf of HarbourVest also parroted that number.  But

24 there's not any evidence today about where that number came

25 from, or whether he was simply relying on Highland's

70

1 representation of that value.

2 　　　　　Now as a general rule, in these 12(B)(6) motions, as
3 I said before, we don't look at the evidence because the whole
4 point of discovery is to find out what's behind a lot of the
5 evidence.  That's been quoted.  The amount of evidence that
6 went into the 9019 motion as not necessarily full-blown
7 discovery.

8 　　　　　I understand Mr. Morris saying well, they could have
9 asked the question.  But as I just showed you, they shouldn't
10 have to ask the question.  There should be fair and full
11 disclosure of all the material facts.  And if it turns out,
12 which we believe it is true, that by January, the value of
13 HCLOF was twice what it was represented, or the HarbourVest
14 portion of HCLOF was twice as to what it was represented,
15 that's a material omission that Highland had an affirmative
16 duty to not misrepresent.  Irrespective of the questions being
17 asked.

18 　　　　　The DAF found out later on that the representation of
19 the value wasn't true.  Now Mr. Morris talked for a very long
20 time about all the opportunities that somebody, Mr. Dondero,
21 somebody other than CLO Holdco.  In addition to CLO Holdco,
22 could have asked the magic question to find out whether or not
23 they were telling the truth.  But that runs right in the face
24 of the standards set forth by the SEC and by the Courts as to
25 the affirmative obligation of an advisor to disclose all the

71

1  material benefits that they're going to get as part of a trade.
2  The idea being that when you're a registered investment advisor
3  and you want to engage in a transaction, you make a full
4  disclosure and say this is the transaction. It's worth 41, but
5  I'm paying 22-1/2. But here's why I'd like to be able to do
6  it. And then that's the discussion that happens.

7        That clearly didn't happen here. And when it turned
8  out that there was this entirely huge upside that they were
9  gaining the benefit of, and maybe HarbourVest didn't care, that
10 that was a false statement. Now the reason we don't have a
11 common law fraud claim, or that we don't necessarily hang our
12 hat on a fraud claim is we don't have enough evidence as it
13 stands today, to specifically say that Mr. Seery intentionally
14 misrepresented that. Although we believe that it was grossly
15 reckless of him to do so. But we don't really need a fraud
16 claim with a gross recklessness standard. We have a breach of
17 fiduciary duty, which basically gets us to the same place.

18       So the timeline we have is September 30th was the
19 last valuation of HCLOF assets provided by HCMLP. And the
20 value of HCLOF, at that time, or the HarbourVest of that value,
21 would have been about 22.5 million. So what it appears to be
22 is that in January or in late December, the valuation that was
23 being done -- what was being reported, wasn't the current
24 valuation. It was the valuation as of the end of the third
25 quarter of 2020.

72

1          On December 22nd, the motion to approve the
2   settlement with HarbourVest was filed.  HCMLP should have had
3   or would have had up-to-date valuations of the HCLOF assets,
4   but didn't necessarily disclose them as being different than
5   the 22.5 million.  On January the 14th, Your Honor, held the
6   9019 hearing.  And then that same day, Your Honor entered the
7   approval order.

8          And finally, in March, the DAF learns the true value
9   of HLOF assets as of January 2021 and starts to look into it.
10  Now Mr. Morris makes much of the fact that well, Mr. Dondero at
11  least knew that he had tipped them off, Mr. Seery.  And if you
12  actually read Paragraph 127, you'll see specifically what it's
13  purported that he said.  He said stop trading in the MGM
14  assets, because MGM might be in play.  So you can't trade
15  because I'm an advisor, Mr. Dondero's an insider, he's the
16  tipper, not the tippee.  Mr. Seery becomes the tippee under
17  that theory of the case, and he has to, and is required to,
18  because of their affiliation at the time, he's required to
19  cease trading.  And that was the purpose of saying that.

20         The collateral issue that we point is that he at the
21  very least knew about that, and that should have caused him to
22  revalue, if he hadn't done so at the time.  Not that, knowing
23  that alone is sufficient to know what the value of HCLOF
24  actually was on that date.  That's a complete misrepresentation
25  of the point and purpose of that allegation.

73

1        And as Your Honor knows, under 12(B)(6)

2   jurisprudence, the way this is supposed to go is we get the

3   benefit of every inference based upon the allegations, not the

4   movant.  So the first violation is that the debtor as an IRA

5   failed to affirmatively disclose the true current valuation of

6   HCLOF and failed to keep the DAF and CLO Holdco reasonably

7   informed of the value of the assets.

8        And the debtor as an IRA, failed to obtain CLO

9   Holdco's with the DAF's informed consent before it traded in

10  the asset, because it didn't have all of the information.  The

11  typical remedy for breach of fiduciary duty is typically

12  damages for any loss suffered by the Plaintiff as a result of

13  the breach.  I don't think there's a debate there.

14       So now we get to Mr. Morris' key argument.  His key

15  argument is that we should be talking about res judicata.  The

16  elements of res judicata and I think we agree is you have to

17  have identical parties in the action; the prior judgment was

18  rendered by a Court of competent jurisdiction; the final

19  judgment was final on the merits, and the cases involved the

20  same causes of action or the same transaction and nexus of

21  facts.

22       Now I'm going to skip to three, because I think

23  that's one of the key points that we disagree with them on.

24  There is no case, Your Honor, that we could find, and no case

25  that I read them citing that says an order on an 9019 has

74

1  preclusive effect under res judicata under an objector to the

2  settlement.  We looked.  We looked in the Fifth Circuit.  We

3  looked outside of the Fifth Circuit.  No District Court, no

4  Fifth Circuit Court of Appeals' opinion we could find held that

5  a 9019 order has res judicata effect on an objector's

6  objection.  And I think the reason is pretty simple.  Is it

7  doesn't.

8          Because the Plaintiff's claims, here our claims

9  hadn't even accrued.  We have a four year statute of

10 limitations, but I think more importantly is that, as the Fifth

11 Circuit said, the 9019 motion grants the Court discretion.

12 It's not supposed to be a mini trial.  The Court can approve a

13 settlement over even the valid objection of an objector.  It's

14 not a trial on the merits.  It's not supposed to be a trial on

15 the merits.  It's not supposed to be a disposition on the

16 merits.

17         So the fact that Your Honor could have approved the

18 9019 settlement with HarbourVest, even if we had a valid

19 objection, means this isn't a disposition on the merits, as res

20 judicata would envision.  It wasn't a trial on the merits, even

21 though it was withdrawn.

22         The other elements that we would point out to is that

23 neither the DAV nor Holdco were parties to the dispute between

24 HarbourVest and Highland.  And this keys off of the issue that

25 I just raised.  The cases that are cited by the debtor to Your

1  Honor all have to do with where one of the settling parties is

2  trying to undo the settlement for some collateral reason.  And

3  the Courts have held, no, that's res judicata, because you were

4  a party to the action.  HarbourVest brought the claims against

5  Highland.  Highland settled those claims.

6           CLO Holdco was collateral to that settlement, it's

7  not a -- excuse me, collateral to that dispute.  It's not a

8  party to that dispute.  Its claims weren't being resolved by

9  the settlement.  And while you have a notice to all creditors

10 and those objections can be raised, there was not inherently

11 any manner for resolving those objections on their own merits.

12 Only -- it was only resolved in so far as deciding whether or

13 not the settlement was in the best interest of the debtor,

14 which Your Honor decided, and we don't challenge that.  But we

15 do argue that it caused damages and the debtor shouldn't get

16 off for those damages.

17           The fourth element is that the --

18           THE COURT:  Just for the record, the standard in a

19 9019 context is not best interest of the debtor, right?

20           MR. SBAITI:  Your Honor, I mean that's what the rule

21 says and Your Honor's order --

22           THE COURT:  That is not what the rule says.  The rule

23 is actually very sparsely worded and then we have Fifth Circuit

24 case law and U.S. Supreme Court law that talk about what the

25 standard is.

76

1          MR. SBAITI:  Yes, Your Honor.  And there are five --

2          THE COURT:  And it's -- is it fair?

3          MR. SBAITI:  There are five elements.

4          THE COURT:  Is it fair and equitable and in the best

5  interest of the estate given a long list --

6          MR. SBAITI:  Correct, Your Honor.  And I didn't mean

7  to --

8          THE COURT:  -- of considerations that the Court is

9  supposed to consider that "bear on the wisdom of the

10 settlement."  Okay.  So it's actually much more involved, is my

11 point, than is it in the best interest of the estate.  Is it in

12 the best interest of the estate and fair and equitable given

13 all factors bearing on the wisdom of the compromise?  And then

14 we have a long laundry list of things the Court should consider

15 as part of that analysis.

16         MR. SBAITI:  That's a --

17         THE COURT:  I just bring that up because if I'm still

18 -- my brain is still stuck five minutes ago on your comment

19 that you can't find any case saying that an order approving a

20 9019 compromise has res judicata effect on creditors.  And it's

21 -- let me just say it's shocking to me that someone would argue

22 otherwise.  Bankruptcy is a collective proceeding --

23         MR. SBAITI:  Your Honor --

24         THE COURT:  -- where creditors can weigh in and

25 object and raise whatever arguments they think the Court should

77

1  consider that bear on the wisdom of the compromise.  And the
2  Fifth Circuit in Foster Mortgage has said the Court should give
3  great deference to the views of the creditors, the paramount
4  interest of creditors.

5       So it's a really sort of shocking proposition that
6  the order approving a 9019 compromise wouldn't have res
7  judicata effect on all parties and interests who got notice of
8  that.  So if you have any elaboration on that, I'd like to hear
9  it.

10      MR. SBAITI:  Your Honor, we looked at the Fifth
11 Circuit cases that they cited, which I believe included that
12 case.  And even in that case, the point that we made in our
13 papers and the point I was trying to arrive at is that among
14 the factors, yes, the Court should give great deference to the
15 creditors.  But among the factors is not that the objections
16 lack merit or are meritless or that they wouldn't be winnable
17 if they were simply standalone claims.

18      And that was really the only point I was trying to
19 make is that Your Honor has discretion.  Granted it's -- as you
20 mentioned, it's not unfettered discretion.  It's bounded by
21 standards and there are -- there is, I know, about five
22 standards Your Honor has to consider or the Court has to
23 consider.  But among those, that laundry list of standards, is
24 not that the Court finds that any objection lacks merit.  And
25 that was really the only point I was making.

78

1          And in terms of the case law, we looked at the Fifth

2 Circuit.  We looked, frankly, outside the Fifth Circuit as much

3 as we could, and because this is actually not an easy one to

4 research, as it turned out, despite the language.  And we also

5 looked for district court opinions in the Fifth Circuit to see

6 did any district court or did any court of appeals give this

7 type of approval to the standard that a 9019 order has res

8 judicata effect on a claim raised in an objection by a

9 creditor.

10         And we couldn't find any and I read all the cases

11 that Mr. Morris cited in his papers, and they didn't cite one

12 that explicitly said that.  They tried to drive at it through

13 insinuation that, well, if the Court has to give great

14 deference or if the Court has to take into account the

15 underlying facts and the fact that there is discovery, surely

16 that must mean this is akin to the trial on the merits.  And I

17 think that's where we simply disagree in good faith.  I'm not

18 ascribing any bad intention.  But we disagree that that's where

19 the law goes.

20         Res judicata is not -- while it's supposed to stop

21 the relitigation of issues, it is predicated on there having

22 been actual litigation of those issues.  And when HarbourVest

23 and Highland settle a case and my clients show up with an

24 objection, even though they withdraw an objection, that, in our

25 opinion -- and we're asking the Court to see it our way -- is

79

1  not trial on the merits. It's not a disposition on the merits

2  of the objection in and of itself. Some objections we can --

3        THE COURT: But the context matters. In the context

4  of a 9019 compromise, the hearing is about look at the bonafide

5  ease of the settlement. And it's either fair and equitable and

6  in the best interest of the estate or not. And an objector can

7  say this is a terrible settlement and here's why it's a

8  terrible settlement and let me cross-examine the movant and let

9  me put on my own witness that will enlighten the Court as to

10  why this is a terrible settlement, why I say terrible, why it's

11  not fair and equitable.

12       That's your chance to convince the Court, don't

13  approve this settlement because there are, you know, 14

14  problems with it. And if you convince the Court, then you

15  convince the Court and it's not approved. If you don't, you

16  appeal, and we do have an appeal of the settlement order.

17       So, again, I'm not understanding the "res judicata

18  doesn't apply" argument.

19       MR. SBAITI: Your Honor, if I could riff on two

20  points based upon what you just said, if I could address those.

21       The first is there are clearly two kinds of

22  objections that get -- at least two kinds of objections that

23  get raised in these 9019 approval hearings. The two that you

24  heard recounted, some were this is bad for the estate. There's

25  reasons why we don't think the estate will benefit from it and

80

1  it will be harmed from it.

2          And those types of objections, which I believe mostly

3  comprise the objections that Mr. Morris was talking about

4  because they are concerns for the estate.  And so creditors who

5  want to get money from the estate are concerned that the

6  settlement will not enter (phonetic) to the benefit of the

7  estate, and therefore, not enter to their benefit as creditors.

8  That's number one.

9          But those don't adhere in a lawsuit.  Those aren't

10 claims for damages that the settlement is going to create for

11 the person objection or for the party objecting.  There's a

12 whole separate set of objections similar to the ones HCLO

13 Holdco raised where that what inheres in the objection is this

14 is actually going to cause us some kind of damage.

15         And so, the factors though, don't require the Court

16 in those second set of instances to say, well, you know what?

17 Not only do I think you're wrong, but I think that your

18 lawsuit, the underlying causes of action that give rise to this

19 objection, have no merit on their own face, that the discovery

20 is not there to support them, that a jury is not going to find

21 there.  I am now the trier or the Court is now the trier of

22 fact on the merits of the underlying causes of action that

23 animate the objection.

24         And that's where I believe we're diverging with the

25 debtor on the law.  It goes too far to say that a 9019 hearing

Appx. 00837

81

1 where the Court in the end has discretion to approve it, even
2 over a meritorious objection by any party, regardless of what
3 bucket of objections the objection falls into.  It goes -- our
4 argument today, Your Honor, and we're asking the Court to see
5 it our way, is that that would go too far.  That an actual
6 cause of action shouldn't be eradicated simply because of the
7 9019 process because, as you pointed out, the Court does have
8 to go through a litany of factors.

9          And if the Court determines that it's fair and it's
10 more equitable to overrule the objection, the Court has that
11 discretion.  And we're not here to unwind that discretion.

12          But the settlement process did violate certain
13 obligations and did cause my client damages.  And that's what
14 we're saying isn't precluded.

15          THE COURT:  Okay.

16          MR. SBAITI:  The fourth element, Your Honor, which I
17 guess in many ways maps on to the argument I just made to Your
18 Honor is that the cases, the underlying cases, do not involve
19 the same claims.  Plaintiffs' claims arise from the settlement
20 process itself and not from the underlying issues being settled
21 between HarbourVest and Highland.  So that's why we think at
22 least three of the four elements aren't met here.  And we'll
23 reserve on the papers, you know, whether jurisdiction was
24 applicable because I think that's probably water under the
25 bridge at this point in the oral argument.

82

1          Now, Mr. Morris attacks the case that we cite,
2    Applewood Chair vs. Three Rivers Planning.  And he argues that,
3    well, this is not applicable.  And the argument he made however
4    was he put it in the context of, well, the parties there, the
5    issue was you had guarantors who were not parties in their
6    capacity as guarantors.  But that's not actually what the Court
7    held.
8          The Court didn't say that the release wasn't
9    applicable to them because they didn't appear as parties in
10   their guarantee capacities.  They -- the Court held that, well,
11   the specific discharge language doesn't enumerate those
12   specific guarantees, and so therefore it's not released.
13         And where this dovetails, we believe, as closely as
14   we can, this isn't a 9019 case.  This is a final confirmed
15   plan.  But where it dovetails with what our argument is, is
16   that the Court there as well was essentially saying the
17   underlying causes of action weren't really presented to us, so
18   we're not -- we -- and the confirmation of the plan didn't
19   involve disposing of them, so we're not going to say that they
20   are precluded.  And we think that that's as close an analogy as
21   we've found in the Fifth Circuit to the issues here today.
22         So I would say, Your Honor, that we believe that
23   dispenses with the res judicata argument.  The judicial
24   estoppel argument, they conflate the language.  I'll go back to
25   this for a second.  They conflate the language of judicial

1  estoppel on the success of the claim.  None of the cases they

2  cite on judicial estoppel involved where a party took a

3  position, withdrew their argument, and then the Court moved on.

4       Mr. Morris tries to convert a judicial estoppel claim

5  into a judicial reliance claim, which is not the purpose of the

6  doctrine and is not the doctrine at all.  The doctrine is that

7  if you take a successful position in one court, you can't take

8  the opposite position in another court.  CLO Holdco didn't take

9  a successful position in one court and then change its position

10 later on.  In fact, its positions, as Mr. Morris stated, are

11 remarkably similar.  They're not inconsistent, which is the

12 problem with their judicial estoppel argument.  And we -- I

13 think we fairly briefed that in our papers and we'll otherwise

14 rest on the papers.

15      To deal -- to address the actual claims, again, I

16 come back to the idea of a fiduciary duty claim, which is our

17 lead claim.  And to be clear, it's a state claim predicated on

18 the violation of federally imposed fiduciary duties.

19      And I'm looking for a clock to make sure I'm not

20 abusing Your Honor's time, and I don't have one right in front

21 of me because my screen -- my screen is up.

22      Your Honor, the Douglass v. Beakley case is, like I

23 said, is Judge Boyle's case.  It specifically provides a cause

24 of action based upon violations of the Advisers Act.  We also

25 cite about four or five other cases in footnote 8 of our

84

response from other circuits, including the Third Circuit, the
Belton case that I referred to earlier, all of which held that,
yes, a state fiduciary duty claim can be predicated on breaches
of a federal Advisers Act violation.

The other point that they make on the fiduciary duty
claim is they argue HCMLP doesn't owe fiduciary duties to CLO
Holdco.  And the cases they cite, Your Honor, we dealt with in
the papers why they were distinguishable, because in those
cases they were dealing with the fact that there wasn't any
harm or any direct relationship.  But what they ignore is the
actual language of the Advisers Act, which is important.

Well, first of all, Mr. Seery admitted in his own
testimony during the approval hearing in July of 2019 that he
says, "We owe."  He says, "There are third party investors in
the fund -- in these funds who have no relation whatsoever to
Highland, and we owe them a fiduciary duty both to manage their
assets prudently, but also to seek to maximize value."  I think
Mr. Seery was absolutely correct when he said that.  Highland
owes fiduciary duties to the investors in the funds that
Highland manages.  The core of our case is that Highland is
using or abusing the assets of the funds it managed in HCLOF
for its own enrichment, which is a classic breach of fiduciary
duty case under the Advisers Act.

Now -- excuse me.  The other point that I would say,
Your Honor, is that there is a statutory basis for us to argue

85

1 a breach of fiduciary duty.  Excuse me.  I didn't mean to stop

2 sharing.  I apologize.

3          Are you back with me, Your Honor, on my --

4          THE COURT:  Yes.

5          MR. SBAITI:  -- PowerPoint?

6          THE COURT:  Yes.

7          MR. SBAITI:  Sorry about that, Your Honor.  I just

8 hit the wrong thing.  I'm not very technologically savvy.  Here

9 we go.

10          So Holdco is an investor in HCLOF, which is a pooled

11 investment vehicle.  A pooled investment vehicle under the case

12 law we cite is simply defined as an investment vehicle that

13 doesn't publicly solicit investors and has few than 100

14 investors.  Highland advises it.  That's the same holding in

15 TransAmerica Mortgage, by the way, which we also cite.

16          15 U.S. C. Section 80(b)(6) establishes the federal

17 fiduciary standards to govern the conduct of registered

18 investment advisers.  That's also the TransAmerica case.  15

19 U.S.C. Section 80(b)(6)(D) delegated to the SEC the power to

20 decide the scope of those duties that are imposed under the

21 statute.  And so the SEC enacted 17 C.F.R. Section 275.206(4)-

22 8.

23          And it expressly states, and we cite the statute or

24 the regular in full in our papers, that the fiduciary duties

25 are owed to investors in the pooled investment vehicles.  It

86

1  specifically says that.  It talks about two different duties
2  owed and they're owed to the investors in the vehicles, which
3  means they're owed to Holdco as an investor in HCLOF, which is
4  the vehicle that Highland manages.

5          It's black and white in the regulation.  And we
6  haven't seen any response.  There was no response of that in
7  the reply that was filed, Your Honor.  And so the argument that
8  there's not a fiduciary duty owed to Holdco because it's merely
9  an investor in HCLOF simply doesn't comport with the law.

10         And finally, the petition lays out the basis for our
11 claims including the applicable federal and state law.
12 Plaintiffs' response lays out why the legal arguments aren't
13 opposite at the 12(b)(6) stage and Rule 9(b) is met where
14 necessary under the federal claim.  And I'm trying to unshare
15 so that I can get back to regular argument.

16         I'd like to briefly address Mr. Morris' argument,
17 Your Honor.  Your Honor, I re-raise my argument that I made
18 before, which is that a 12(b)(6) motion and hearing is not the
19 appropriate time for all the evidence that was poured in here.
20 And I understand Mr. Morris' contention, well, it's really hard
21 to ignore all the history of this case.  But a lot of that
22 history really boils down to things that were actually admitted
23 in the complaint.  The complaint recognized there was a 9019.
24 But what Mr. Morris wants to do is go beyond that and to go to
25 what people said and what they must have meant.  What Mr.

87

1  Dondero must have meant in his objection, what Dugaboy must
2  have meant by their objection, what Mr. Pugatch must have meant
3  by his testimony.

4          All of that is highly improper at this stage of the
5  proceeding, Your Honor.  It's outside of the 12(b)(6) confines.
6  It's outside the four corners of the complaint.  And we object
7  to all of that evidence being considered.

8          THE COURT:  Let me --

9          MR. SBAITI:  The question we --

10         THE COURT:  Let me ask you about that procedural
11  point.

12         MR. SBAITI:  Yes, Your Honor.

13         THE COURT:  As we know, 12(d) provides that if
14  matters outside the pleadings are presented to and not excluded
15  by the Court in a 12(b)(6) motion, the motion must be treated
16  as one for a summary judgment under Rule 56 and all parties
17  must be given a reasonable opportunity to present all the
18  material that is pertinent to the motion.

19         Are you -- what are you arguing?  That I should treat
20  it as a motion for summary judgment and give you more time to
21  present other materials?  I mean, you both presented an
22  appendix, okay.  And I'm telling you we're seeing this more and
23  more, I've noticed.  People are going beyond the four corners
24  of a motion to dismiss and attaching things.  And there's some,
25  you know, Fifth Circuit authority that says, well, if what is

88

1   attached is integral to understanding, you know, an allegation

2   or whatever in the pleading, you know, there is some discretion

3   to go outside the four corners.

4           So I'm trying to understand the point you're making

5   with this.  Are you saying I should treat it as a motion for

6   summary judgment or do these attachments really -- you know, do

7   I have authority under the Fifth Circuit to consider them as

8   part of the 12(b)(6) motion or not?

9           MR. SBAITI:  Typically, in our experience, Your

10  Honor, is when a summary or when a 12(b)(6) is going to be

11  treated as summary judgment under 12(d), the Court says that

12  and then the parties are given an opportunity, as you said, to

13  go do some discovery in order to put together the evidence and

14  materials to then come back and respond as a summary judgment.

15  We responded to a 12(b)(6) and objected to the evidence.  If

16  the Court wants to treat it as a summary judgment, then we

17  would ask for an opportunity for -- to conduct discovery in

18  order to be able to respond as a summary judgment motion, but

19  we didn't -- because we responded to a 12(b)(6) --

20          THE COURT:  You did the same thing though.  You did

21  the same thing in your response.  You submitted an appendix of

22  evidence, if you want to call it evidence.  As someone pointed

23  out, it's stuff from the bankruptcy court record.  I don't

24  think it went beyond what was already in the bankruptcy court.

25          MR. MORRIS:  And if I -- can I be heard on this, Your

1 Honor?

2          THE COURT:  You can.  You can.

3          MR. MORRIS:  Just to respond.  This is really quite

4 simple.  The motion to dismiss is based on res judicata.  Res

5 judicata necessarily requires a review of what happened in

6 connection with the prior hearing.  There's nothing that we

7 have identified or put forth in the appendix or on our exhibit

8 list except for the pleadings in the 9019, the transcripts, the

9 one deposition transcript, the one trial transcript, the

10 settlement agreement, the transfer agreement.  I'd love to know

11 what the Court couldn't or shouldn't take judicial notice of.

12 There is no emails.  There is no -- there is no -- there is no

13 extrinsic evidence, if you will.  All of this is either on the

14 docket or was presented as part of the hearing.

15          THE COURT:  Yeah.  I'm just trying to ferret --

16          MR. MORRIS:  And it's necessary.  And it's necessary

17 for the motion.

18          THE COURT:  Yeah.  I'm just trying to ferret out the

19 procedural position that's being asserted here.  And I don't

20 have the case cites off the top of my brain, but there is

21 authority from at least the Northern District judges, if not

22 the Fifth Circuit, saying in a 12(b)(6) motion I can take

23 judicial notice of items in the record.  And then, you know,

24 there -- I know there's Fifth Circuit authority saying I can go

25 beyond the four corners in a 12(b) context if it's just basic,

90

1  you know, explaining things that are in allegations.  You know,

2  such as --

3          MR. SBAITI:  May I address that, Your Honor?

4          THE COURT:  -- such as if a contract is in dispute,

5  okay.  Like there's no way you can have a cause of action under

6  the contract and here's the contract.  So I'm just trying to

7  nail down your procedural position here.

8          MR. SBAITI:  Your Honor, the distinction I was trying

9  to make that I don't think I put as artfully as I might be able

10 to put now is in a 12(b)(6) if there's a contract, as you said,

11 if there's a legal document, a contract and order that's

12 integral to the case, Your Honor can take judicial notice of

13 that.  Generally, a court can take judicial notice of filings

14 in a bankruptcy, the fact that they were filed.

15         So the transcripts, which Your Honor can't take

16 judicial notice of, is the truth of those.  And that was what I

17 was objecting to is it's one thing for him to say an objection

18 was filed and therefore, because an objection was filed, that

19 should be it.  That was your only chance.  I'm not saying Mr.

20 Morris can't make that argument.

21         But when he goes beyond the fact of the filing or the

22 fact that there was a transcript or the fact that there was a

23 deposition and starts to read from the depositions or read from

24 the filings and say this is what those mean, that goes against

25 the 12(b)(6) parameters because, number one, now it's

91

1  substantive evidence and not simply a judicial notice of

2  something that's right there in front of the Court, i.e.,

3  something on its own docket.  Because those statements and the

4  interpretation of those statements are subject to credibility

5  findings.  They're subject to clarification.  They're subject

6  to rebuttal.  That's the purpose of discovery.

7          And so if Your Honor -- and Mr. Morris is right.

8  Usually, res judicata involves knowing what happened in the

9  prior proceedings.  So if all he wants to do is rest on the

10  fact that an objection was filed by CLO Holdco and maybe even

11  other people, and that should be it and he thinks that's enough

12  for Your Honor to say res judicata applies, then I don't think

13  we have a problem.  It's when he goes beyond that and says,

14  Your Honor, these people must have known and this is what they

15  meant by their argument, that's what I'm asking Your Honor not

16  to consider.  And if Mr. Morris wants you to consider that,

17  that's a summary judgment motion and we should have the

18  opportunity to do discovery at the very least into the issues

19  he has now raised as supporting his res judicata defense which

20  he has the burden of proof on.

21          MR. MORRIS:  Your Honor, this is one of the strangest

22  arguments I have ever heard.  I'm allowed to offer the Court

23  and the Court is allowed to accept the documents, but I'm not

24  allowed to read them.  I'm not allowed to make arguments.  I

25  don't understand what that even means.  If it were a contract,

92

1  I would be allowed to put the contract in front of Your Honor,

2  but I wouldn't be able to argue why the contract doesn't say

3  what the Plaintiff says. I don't get it.

4        THE COURT: Okay.

5        MR. MORRIS: That's --

6        THE COURT: Just I've heard enough on this. I don't

7  think we have moved into Rule 12(e), that realm of me needing

8  to treat this as a motion for summary judgment. I think the

9  so-called evidence, the appendix that was attached to the

10 motion as well as the appendix that was attached to Plaintiffs'

11 response, it's stuff that I can take judicial notice of that's

12 in the record of this Court and I can look at it. You know, it

13 is what it is, the record of this Court.

14        All right. So I have nine people waiting in

15 chambers. I'm trying to figure out should I take a break now

16 or are you fairly close to wrapping up. Either answer is fine,

17 Mr. Sbaiti. I just need to figure out who I make wait here.

18        MR. SBAITI: I have -- oh, I'm sorry. I didn't mean

19 to interrupt you, Your Honor. I was just going to say I have

20 five minutes left, but I know Mr. Morris probably wants to come

21 back. So if you want to break now and we can come back at

22 whenever the Court wants us to, we can do so.

23        THE COURT: All right. Why don't you make your final

24 five minutes and then we'll take a break?

25        MR. SBAITI: Okay. Thank you, Your Honor.

93

1       I just wanted to address some of the arguments that
2  Mr. Morris raised in his argument.  The first thing is -- and I
3  addressed this in part -- but Mr. Morris makes a big deal about
4  paragraph 127 of the complaint and essentially suggests that
5  we're the -- or that Mr. Dondero is the perpetrator of a
6  nefarious scheme.  Whereas, what the pleading actually says,
7  and I again encourage Your Honor to re-read -- to read it
8  specifically, is that Mr. Dondero warned Mr. Seery not to trade
9  in the stock and not to make any transactions because the stock
10 was going to appreciate in value.
11      That has two implications for us, Your Honor.  Number
12 one, it means Mr. Seery was a tippee of insider information,
13 and number two, it means that Mr. Seery, if he did trade on
14 that information or if he did pass that information on to
15 someone else, that is a problem from the Advisers Act
16 standpoint, which is really the only purpose of saying that.
17      While paragraph 127 also says that that should have
18 caused Mr. Seery to revalue the NAV of HCLOF, it does not state
19 and we did not plead that the entire value of HCLOF is tied to
20 the MGM stock.  So the insinuation that that somehow gave us
21 inside information about what the true value of HCLOF was and
22 we should have known or that Mr. Dondero should have known is
23 simply untrue.
24      The other argument Mr. -- that Mr. Morris likes to
25 harp on is that CLO Holdco withdrew its argument, but he

**WWW.LIBERTYTRANSCRIPTS.COM**

94

1  characterizes Mr. Kane's withdrawal testimony -- as he says,

2  Mr. Kane admitted that CLO Holdco lacked the superior right to

3  obtain the HarbourVest.  If you read the very language that was

4  highlighted on Mr. Morris' slide, that's not what Mr. Kane

5  says.  Mr. Kane says, "We've gone back to the drawing board.

6  We've read your reply.  And my client has given me permission

7  to withdraw the argument or withdraw the objection."  That's

8  all he said.  There was not an admission that he was wrong.

9  There was not an admission that they had made a mistake.  There

10  was simply an admission that they decided to withdraw the

11  objection for whatever reason.

12          Lastly, on the specific claims --

13          THE COURT:  That's not an accurate description of the

14  record.  He said he looked at --

15          MR. SBAITI:  Your Honor, I was reading it along with

16  him.

17          THE COURT:  -- Guernsey Law.  And I don't know if his

18  words were deep dive.

19          MR. SBAITI:  Yeah.

20          THE COURT:  But he had looked at the agreements

21  extensively.  That's just not what he said.

22          MR. SBAITI:  And he said he was with -- Your Honor,

23  he said he was withdrawing.  He didn't say we were wrong.  He

24  didn't say we don't have a claim.  What he said was, "We're

25  withdrawing the objection."

95

1      THE COURT:  After doing an extensive look at the
2  agreements in Guernsey Law, okay, so.

3      MR. SBAITI:  Sure.  But, Your Honor, he might have --
4  he could just as easily thought we have a chance, but it's not
5  a good one.  And frankly, we'll be here for 20 days and we're
6  withdrawing it for that reason because we'll live to fight
7  another day.  Your Honor, there's an innumerable number.  To
8  simply say that he admitted that they didn't have a correct
9  claim, it's just he didn't say that.  That's all.  That's the
10  only point I'm making.

11      Your Honor, I don't disagree with the debtor that the
12  Court's exculpation clause gets rid of the negligence claim
13  which was obviously filed before the effective date, so that
14  claim is gone.

15      And I think the last argument that Mr. Morris makes
16  on the RICO claim is the federal court, the Supreme Court
17  standard for pleading a RICO claim, that acts that only
18  continue for a few weeks are not -- don't set out a RICO claim.
19  Your Honor, in our response to that, we actually submitted an
20  amended complaint that shows that the type of acts we're
21  talking about, the pattern of the debtor using its investor
22  vehicles assets to liquidate is a long pattern and practice
23  than simply the HarbourVest suit.  And so, we move to amend on
24  that basis to satisfy that pleading defect, which is the main
25  one that they focused on.

96

1       That's all I have, Your Honor.

2       THE COURT:  All right.  Thank you.

3       We're going to take a 15 minute break and come back.

4   I'll ask Mr. Jordan and Mr. Bessette did they have anything

5   they wanted to say today.  I know they joined in the debtor's

6   motion.  And then we'll let Mr. Morris have rebuttal.

7       All right.  So we'll be back in 15 minutes.

8       THE CLERK:  All rise.

9       MR. MORRIS:  Thank you, Your Honor.

10      (Recess at 12:05 p.m./Reconvened at 12:23 p.m.)

11      THE CLERK:  All rise.

12      THE COURT:  All right.  Please be seated.

13      We're back on the record in Charitable DAF v.

14  Highland Capital.  All right.  So I promised I was going to go

15  back to counsel for Highland CLO Funding, Ltd.  So Mr. Jordan,

16  Mr. Bessette, is there anything you wanted to say for oral

17  argument?

18      MR. JORDAN:  Thank you, Your Honor.  John Jordan on

19  behalf of HCLOF.

20      Our points are two procedural points.  The first is

21  as the Court anticipated, in our motion to dismiss filed back

22  in August, we joined in the motion to dismiss of Highland.  And

23  so to the extent that the Court after deliberation is inclined

24  to grant that motion, we would ask that as a joining party,

25  HCLOF be pulled along with that.

97

1           The second procedural point is that back in our
2   motion to dismiss, we pointed out that the complaint does not
3   actually allege anything against HCLOF.  In the story, we're
4   essentially the football and neither Oklahoma nor UT.  And we
5   pointed that out as an additional argument to what you've heard
6   today.  That motion was never responded to.  The deadline by
7   agreement was extended to October 11th.  And the lack of
8   response was, we believe, not inadvertent but simply an
9   acknowledgment that HCLOF is not a party that anything is being
10  claimed against.
11          It particularly makes sense since effectively and in
12  rough numbers, they're half owned by both sides.  So for every
13  dollar that HCLOF spends hanging around the case, the parties
14  are paying essentially 100 cents collectively.  So for that
15  reason, we would ask, and subject to Mr. Sbaiti's input,
16  whether the Court would ask us or direct us to upload an order
17  granting our motion as unopposed.  We just feel like we don't
18  have any role in this case.
19          THE COURT:  All right.
20          Mr. Sbaiti, what about that?
21          MR. SBAITI:  Your Honor, they were originally added
22  as a nominal party.  And as a nominal party, because of the
23  potential need to have a derivative action, I think that based
24  upon Highland's arguments and the arguments that we had, I
25  don't think the derivative action is necessary for us to

98

1 maintain on a go-forward basis. And so we don't oppose them

2 being dismissed.

3       THE COURT: All right. Then I assume, Mr. Morris,

4 you don't have any problem with this, correct?

5       MR. MORRIS: No, Your Honor.

6       THE COURT: Okay. So I'll look for the parties to

7 submit an agreed order of dismissal of HCLOF after the hearing.

8 All right?

9       MR. JORDAN: Thank you, Your Honor.

10       THE COURT: All right. Mr. Morris, you get the last

11 word.

12       MR. MORRIS: Thank you, Your Honor. I hope to be

13 relatively brief. I really just want to focus on the arguments

14 concerning whether or not the order that was entered by this

15 Court was an order that was entered on the merits.

16       As the Court is well aware, a 9019 motion filed by a

17 debtor is done so on notice. It is to give all parties in

18 interest an opportunity to be heard, not just as to whether or

19 not the debtor meets its burden of proof under Rule 9019 but

20 whether or not the Court can find, as it must, that the

21 proposed settlement is in the best interest of the estate.

22       The purpose of -- I mean that is the purpose of the

23 giving notice so that everybody has a chance to be heard. The

24 questions that the Court asked, the questions that every

25 bankruptcy court asks in a 9019 is can the debtor do this deal,

99

1  should the debtor do this deal, is it in the best interest of

2  the estate to do this deal.

3          And, you know, the idea that a 9019 order is somehow

4  res judicata only to the parties to a settlement is just

5  something that doesn't make any sense to me because it

6  abrogates so many rules that exist that allows and encourages

7  and requires parties who have objections to be heard.

8          Mr. Sbaiti's clients filed an objection.  They

9  initiated a contested matter.  They obtained rights.  They were

10 litigants.  They are litigants in a contested matter where

11 they're required to tell the Court what objections they have to

12 the settlement, and they did that.

13         Mr. Sbaiti, you know, told me that I wasn't allowed

14 to characterize the words that are used in the documents that

15 have now been admitted by the Court.  And, yet, I heard him say

16 that maybe Mr. Kane (phonetic) really meant to tell Your Honor

17 that he was withdrawing the claim because he was going to save

18 it for another day.

19         I'd just ask the Court to look at the transcript.  I

20 don't have to interpret it at all.  And I'd ask the Court to

21 read the words.  I can put them back up on the screen, but

22 they're pretty short.  It's at Pages 7 and 8 of the transcript

23 of what Mr. Kane told you and what you said in response.  It's

24 on the page, not my interpretation, and what the import of that

25 was.

100

1        Mr. Sbaiti believes, I guess, if one is allowed to
2 engage in such conduct without consequence, that one is allowed
3 to allow to file objections, cause the Court and the litigants
4 to participate, to give discovery, to write briefs, to do
5 analyses, withdraw it on the basis of their own good faith
6 analysis of Guernsey law of the documents and somehow say it's
7 irrelevant.  Not what the law is, not what res judicata is
8 intended to do.

9        He should have put all of his cards on the table.  In
10 fact, I think that Mr. Kane believed he was putting all of his
11 cards on the table because that's what he did.  He filed a very
12 comprehensive objection.  He asserted a right to the
13 opportunity that the debtor was proposing to take in the 9019
14 motion.  That's what he was doing.  He was objecting on the
15 basis that he claimed his client had a superior right to this
16 asset.

17        And he didn't -- like I said earlier, Your Honor, I
18 don't think he would be permitted, I don't think these claims
19 would fly today if no objection was filed.  But the fact that
20 there was renders, I think, indisputable that there was a
21 finding on the merits, right.  And the only reason that the
22 Court didn't rule on Mr. Kane's motion, the only reason the
23 Court didn't rule on it is because Mr. Kane withdrew it.

24        Is that really the way this process is supposed to
25 work, that one can tell the Court that after a review of the

Appx. 00857

101

1 documents, I'm going to withdraw the objection and then file a

2 claim for damages three months later with a different client,

3 with a different control person, with a different lawyer?

4 That's okay under doctrine of res judicata? I don't think so.

5 They had a full and fair opportunity. The fact that

6 this was somehow -- you know, they're denigrating the fact that

7 this was a 9019 motion. There's not supposed to be a mini-

8 trial. Your Honor had discretion as to what to do. Every

9 court in every bench trial has discretion as to what to do and

10 whether or not to overrule objections and whether or not to

11 substain [sic] objections. That's what judges to.

12 And there's nothing offensive about the fact that it

13 happened in the context of a 9019 motion. They don't get to

14 sit on their hands and wait to fight another day. If they

15 believed that the debtor was exposing itself to liability, and

16 that's what they actually say in the opposition, that's what I

17 actually think they say in the complaint, accept it as true,

18 they believe that the debtor created liability for itself by

19 rendering -- by entering into this transaction.

20 Shouldn't they have raised their hand and said you

21 can't do this deal, right? And the only response to that --

22 they have to that is they had no idea about value. Paragraph

23 127, Your Honor, Mr. Dondero, the architect of this complaint,

24 as was proven on June 8th, knew very well about value. And it

25 doesn't matter that it was only MGM. Your Honor commented on

102

1  that at the June 8th hearing in a different context.  But

2  everybody knows, right, it is.  He sits on the board of MGM.

3          And I'm sorry if I called him a tippee instead of a

4  tipper.  But if this complaint goes forward, we'll dig into

5  that real deep.  But there's no reason it ought to, Your Honor.

6  This case ought to be dismissed on res judicata grounds.  It

7  should be dismissed on judicial estoppel grounds.  And it

8  should be dismissed for all the reasons that I said in my

9  argument in my brief.

10          But I do just want to close with one point, and that

11  is to read from a case called Goldstein, which I think I

12  alluded to earlier on this issue of whether there's a fiduciary

13  duty that's owed by an advisor to an investor and a fund:

14          "At best, it is counterintuitive to characterize the

15          investors in a hedge fund as the clients of the

16          advisors.  The advisor owes fiduciary duties only to

17          the fund, not to the fund's investors."

18          There's a lot of discussion about fiduciary duties,

19  Your Honor.  But to the extent that they have any basis to

20  defeat the motion to dismiss on res judicata or collateral

21  estoppel grounds, we hope and we trust and we know the Court

22  will review the case law vigorously to test some of the

23  assertions to that.

24          I have nothing further, Your Honor.

25          THE COURT:  All right.  Well, thank you to all of

Appx. 00859

103

1  you.

2        As a reminder, I don't think you need it, but as a
3  reminder, I am essentially acting as a magistrate for Judge
4  Boyle in this action.  And whichever way I go on whichever
5  theories, I think she would expect a thorough write-up.  It
6  would, of course, be in the form of a report and recommendation
7  for her to either adopt or not if I dispose of some or all of
8  the counts in the lawsuit.

9        Even to the extent I deny dismissal, even though the
10 rule typically does not require a court to make detailed
11 findings and conclusions in connection with a denial of a
12 motion to dismiss, again, since I'm sitting as a magistrate, I
13 think Judge Boyle would expect some thorough explanations and
14 reasoning from me.

15        So that's my way of saying I'm taking this under
16 advisement.  I am going to drill down on some of the cases that
17 have been argued.  I think some important issues are raised
18 here that need some thorough reasoning.

19        So I will do the best to get this out without too
20 much delay.  I think there's probably zero chance, zero chance
21 I'm going to get it done by the end of the year.  We're just
22 too behind with some of our under-advisements.  But I will try
23 earnestly to get it out fairly soon after the first of the
24 year.  All right?

25        Thank you.  You all have a good holiday.

104

1         THE CLERK:  All rise.

2       (Proceedings concluded at 12:37 p.m.)

3                    * * * * *

4

5              **C E R T I F I C A T I O N**

6         We, DIPTI PATEL, KAREN WATSON, CRYSTAL THOMAS, AND

7   PATTIE MITCHELL, court approved transcribers, certify that the

8   foregoing is a correct transcript from the official electronic

9   sound recording of the proceedings in the above-entitled

10  matter, and to the best of my ability.

11

12  /s/ Dipti Patel

13  DIPTI PATEL, CET-997

14

15  /s/ Karen Watson

16  KAREN WATSON, CET-1039

17

18  /s/ Crystal Thomas

19  CRYSTAL THOMAS, CET-

20

21  /s/ Pattie Mitchell

22  PATTIE MITCHELL

23  LIBERTY TRANSCRIPTS          DATE: November 23, 2021

24