# EXHIBIT 14

# Highland Multi Strategy Credit Fund, L.P.

A Delaware Limited Partnership

**Fourth Amended and Restated**

**Limited Partnership Agreement**

November 1, 2014

## TABLE OF CONTENTS

**Page**

Article I DEFINITIONS .............................................................................................................1

Article II ORGANIZATION .....................................................................................................10
    2.1    Continuation of Limited Partnership .....................................................................10
    2.2    Name of Partnership .............................................................................................11
    2.3    Principal Office; Registered Office.......................................................................11
    2.4    Term of Partnership..............................................................................................11
    2.5    Object and Powers of Partnership.........................................................................11
    2.6    Liability of Partners .............................................................................................12
    2.7    Actions by Partnership .........................................................................................12
    2.8    Reliance by Third Parties .....................................................................................12
    2.9    UCC Status of Limited Partner Interests ..............................................................12
    2.10   Series of Interests ................................................................................................12

Article III CAPITAL ................................................................................................................13
    3.1    Contributions to Capital .......................................................................................13
    3.2    Rights of Partners in Capital ................................................................................14
    3.3    Capital Accounts ..................................................................................................14
    3.4    Allocations of Net Profit and Net Loss..................................................................15
    3.5    Allocation of Management Fees, Withholding Taxes and Certain Other
             Expenditures ........................................................................................................15
    3.6    Reserves; Adjustments for Certain Future Events .................................................16
    3.7    Performance Allocation ........................................................................................17
    3.8    Limited Participation Investments and New Issues ...............................................17
    3.9    Allocation to Avoid Capital Account Deficits ........................................................18
    3.10   Regulatory Allocations.........................................................................................18
    3.11   Allocations for Income Tax Purposes ...................................................................19
    3.12   Individual Partner's Tax Treatment.......................................................................21
    3.13   Distributions.........................................................................................................21

Article IV MANAGEMENT ....................................................................................................22
    4.1    Duties and Powers of the General Partner ............................................................22
    4.2    Expenses ..............................................................................................................23
    4.3    Rights of Limited Partners ...................................................................................25
    4.4    Other Activities of Partners..................................................................................25
    4.5    Exculpation; Indemnification...............................................................................26
    4.6    Advisory Committee ............................................................................................28
    4.7    Alternative Investment Vehicles ..........................................................................29

Article V ADMISSIONS, TRANSFERS AND WITHDRAWALS ...........................................29
    5.1    Admission of Limited Partners .............................................................................29
    5.2    Admission of Additional General Partners ...........................................................29
    5.3    Transfer of Interests of Limited Partners ..............................................................30
    5.4    Transfer of Interest of the General Partner ............................................................30
    5.5    Withdrawal of Interests of Partners ......................................................................31

Article VI SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION...................................35
    6.1     Soft Wind Down ...................................................................................................35
    6.2     Dissolution of Partnership....................................................................................36
    6.3     Liquidation of Assets ...........................................................................................36

Article VII ACCOUNTING AND VALUATION; BOOKS AND RECORDS ............................37
    7.1     Accounting and Reports........................................................................................37
    7.2     Valuation of Partnership Assets and Interests .....................................................38
    7.3     Determinations by the General Partner.................................................................38
    7.4     Books and Records ...............................................................................................39
    7.5     Confidentiality .....................................................................................................39

Article VIII GENERAL PROVISIONS.....................................................................................41
    8.1     Amendment of Partnership Agreement.................................................................41
    8.2     Special Power-of-Attorney ...................................................................................43
    8.3     Notices .................................................................................................................44
    8.4     Agreement Binding Upon Successors and Assigns; Delegation ...........................44
    8.5     Governing Law .....................................................................................................44
    8.6     Not for Benefit of Creditors .................................................................................45
    8.7     Dispute Resolution...............................................................................................45
    8.8     Consents and Voting.............................................................................................47
    8.9     Merger and Consolidation.....................................................................................48
    8.10    Miscellaneous ......................................................................................................48
    8.11    BHCA Subject Persons ........................................................................................48
    8.12    RIC Limited Partners ...........................................................................................49
    8.13    Bad Actor Limited Partners .................................................................................50
    8.14    Entire Agreement .................................................................................................50

THIS FOURTH AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT of Highland Multi Strategy Credit Fund, L.P., dated effective as of November 1, 2014, is by and among Highland Multi Strategy Credit Fund GP, L.P., as General Partner, and certain Persons who were admitted as Limited Partners in accordance with the Prior Agreement and those Persons who are hereafter admitted as additional Limited Partners in accordance with this Agreement. Capitalized terms have the meanings set forth in Article I below.

## PRELIMINARY STATEMENTS

(A) The General Partner and certain of the Limited Partners have heretofore formed a limited partnership pursuant to the Act (as defined herein) by filing a Certificate of Limited Partnership with the office of the Secretary of State of the State of Delaware on December 1, 2005, and previously entered into a Limited Partnership Agreement, dated effective as of December 1, 2005, as last amended and restated by the Third Amended and Restated Limited Partnership Agreement dated as of December 31, 2007 (the "*Prior Agreement*").

(B) The General Partner filed an amendment to the Certificate of Limited Partnership of the Fund on August 26, 2014, changing the name of the Fund to "Highland Multi Strategy Credit Fund, L.P."

(C) The parties hereto desire to continue the Partnership as a limited partnership under the Act and to make certain modifications to the Prior Agreement, as hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual covenants expressed herein and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto hereby agree that the Prior Agreement is amended and restated in its entirety to read as follows:

## Article I
## DEFINITIONS

For purposes of this Agreement:

"*Act*" means the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. §§ 17-101, et seq., as in effect on the date hereof and as amended from time to time, or any successor law.

"*Accounting Period*" means each period that starts on the day immediately following the last day of the preceding Accounting Period, and that ends on the earliest of the following dates:

(a) the last day of a calendar month;

(b) any date as of which any withdrawal or distribution of capital is made with respect to any Capital Account or as of which this Agreement provides for any amount to be credited to or debited against a Capital Account, other than a withdrawal or distribution by to, or an allocation to, all Capital Accounts that does not result in any change of the Partnership Percentage relating to any Capital Account;

1

(c)     the date which immediately precedes any day as of which a capital contribution is accepted by the General Partner from any new or existing Partner; or

(d)     any other date which the General Partner selects.

"*Advisers Act*" means the U.S. Investment Advisers Act of 1940, as amended, and the rules promulgated thereunder.

"*Advisory Committee*" has the meaning set forth in Section 4.6.

"*Affiliate*" means, with respect to any Person, a Person which controls, is controlled by, or is under common control with, such Person.  For these purposes, "control" (including "controlled by" and "under common control") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"*Affiliated Investor*" means any Limited Partner that is an Affiliate of the General Partner or the Investment Manager, including their respective employees, members or partners and their respective immediate family members.

"*Agreement*" means this Fourth Amended and Restated Limited Partnership Agreement of the Partnership, as amended from time to time.

"*Alternative Investment Vehicle*" has the meaning set forth in Section 4.7.

"*Arbitration Rules*" has the meaning set forth in Section8.7(b)(i).

"*Authorized Representative*" has the meaning set forth in Section 7.5(a).

"*Bad Actor Limited Partner*" means a Limited Partner that (i) would cause the disqualification of the Partnership from using Rule 506 under the Securities Act due to the operation of paragraph (d) thereof (or its successor) if such Limited Partner were to beneficially own 20% or more of the outstanding voting interest of all of the Partners (excluding any other Interests that are Non-Voting Interests) or (ii) the General Partner determines is likely to become subject to a conviction, order, judgment, finding or that would be likely to cause the disqualification described in clause (i).

"*BHCA*" means the U.S. Bank Holding Company Act of 1956, as amended.

"*BHCA Subject Person*" means any Limited Partner that is subject, directly or indirectly, to the provisions of Section 4 of the BHCA and the regulations of the Board of Governors of the Federal Reserve System promulgated thereunder.

"*Business Day*" means any day other than (a) Saturday and Sunday and (b) any other day on which banks located in New York, New York are required or authorized by law to be closed.

"*Calculation Period*" means, with respect to each Capital Account, the period commencing as of the date of the establishment of the Capital Account (in the case of the initial Calculation

Period) and thereafter each period commencing as of the day following the last day of the preceding Calculation Period with respect to such Capital Account, and ending as of the close of business on the first to occur of the following:

> (a)     the last day of a calendar year;

> (b)     the withdrawal of all or a portion of the Interest attributable to such Capital Account (but only with respect to such withdrawn amount);

> (c)     the permitted Transfer of all or any portion of such Limited Partner's Interest; or

> (d)     the final distribution to such Limited Partner following the dissolution of the Partnership.

"***Capital Account***" means, with respect to each Partner, the capital account established and maintained on behalf of such Partner as described in Section 3.3.

"***Carryforward Account***" means a memorandum account to be recorded in the books and records of the Partnership with respect to each Capital Account that has an initial balance of zero and that is adjusted as follows:

> (a)     As of the first day after the close of each Calculation Period for such Capital Account, the balance of the Carryforward Account is (i) increased by the amount, if any, of such the Negative Performance Change with respect to such Capital Account for such Calculation Period and (ii) reduced (but not below zero) by the amount, if any, of the Positive Performance Change with respect to such Capital Account for such Calculation Period.

> (b)     As of the close of the Calculation Period, any positive balance of the Carryforward Account is further adjusted if such Capital Account has been reduced during such Calculation Period as a result of a distribution or withdrawal, by reducing such positive balance (but not below zero) by an amount determined by multiplying (i) such positive balance by (ii) a fraction, of which (A) the numerator is equal to the amount so distributed or withdrawn, and (B) the denominator is equal to the balance of such Capital Account immediately before giving effect to such distribution or withdrawal.

The Carryforward Account attributable to each Series A Capital Account shall be reset to zero on the Effective Date. For the avoidance of doubt, any gains or losses allocated by the Partnership to any Capital Account of a Limited Partner prior to the Effective Date will be inapplicable in the calculation of the Carryforward Account following the Effective Date.

"***Certificate***" means the Certificate of Limited Partnership of the Partnership referred to in Section 2.1(b).

"***Code***" means the U.S. Internal Revenue Code of 1986, as amended, and as hereafter amended, or any successor law.

"***Dispute***" has the meaning set forth in Section 8.7.

"***Effective Date***" means the date set forth above as the effective date of this Agreement.

"***Election Notice***" has the meaning set forth in Section 8.11(c).

"***FAA***" has the meaning set forth in Section 8.7(b)(ii)

"***FATCA***" means Sections 1471 through 1474 of the Code, as amended, and any Regulations thereunder or official interpretations thereof, including any successor Regulations or interpretations, and any intergovernmental agreement implementing the foregoing.

"***FINRA***" means the Financial Industry Regulatory Authority, Inc.

"***Fiscal Year***" means each period commencing on January 1 of each year and ending on December 31 of such year, unless the General Partner elects another fiscal year; provided that any such other fiscal year is permissible for U.S. federal income tax purposes. In the case of the Fiscal Year in which the Partnership is terminated in accordance with Article VI, "***Fiscal Year***" means the portion of the calendar year ending on the date on which the Partnership is terminated.

"***GAAP***" means generally accepted accounting principles in the United States, as amended.

"***General Partner***" means Highland Multi Strategy Credit Fund GP, L.P., a Delaware limited partnership, any successor thereto, and any Person hereafter admitted as an additional general partner, in its capacity as general partner of the Partnership.

"***Indemnified Person***" has the meaning set forth in Section 4.5(a).

"***Interest***" means the entire ownership interest of a Partner in the Partnership at the relevant time, including the right of such Partner to any and all benefits to which a Partner may be entitled as provided in this Agreement, together with the obligations of such Partner to comply with all the terms and provisions of this Agreement.

"***Investment Company Act***" means the U.S. Investment Company Act of 1940, as amended, and the regulations promulgated thereunder.

"***Investment Management Agreement***" means the investment management agreement between the Investment Manager, the General Partner, the Offshore Fund and the Partnership.

"***Investment Manager***" means Highland Capital Management, L.P., a Delaware limited partnership, or any successor thereto, or any Person thereafter appointed as an investment manager of the Partnership in accordance with the Investment Management Agreement.

"***Investments***" means investment in securities, assets and other financial or intangible investment instruments, contracts or products made as described in the Partnership's offering memorandum.

"**_Limited Partners_**" means any Person who is a limited partner of the Partnership (which, except as otherwise indicated, will include a substituted Limited Partner) at the time of reference thereto, in such Person's capacity as a limited partner of the Partnership. For all purposes of the Act, the Limited Partners of the Partnership will constitute a single class or group of limited partners.

"**_Majority-in-Interest of Limited Partners_**" means Limited Partners whose Partnership Percentages represent more than 50% of the aggregate Partnership Percentages of all Limited Partners.

"**_Management Fee_**" means, with respect to each Capital Account, an amount equal to one fourth of (i) 1.5% of each Series A Capital Account balance; (ii) 1.5% of each Series B Capital Account balance; (iii) 1.0% of each Series C Capital Account balance; and (iv) 2.0% of each Series D Capital Account balance, which amounts are calculated on the first Business Day of each calendar quarter. Management Fees shall be appropriately adjusted for contributions during any partial quarter.

"**_Negative Basis_**" means, with respect to any Partner and as of any time of calculation, the excess of such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest) over the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership.

"**_Negative Basis Partner_**" means any Partner who withdraws from the Partnership and who has a Negative Basis as of the Withdrawal Date, but such Partner shall cease to be a Negative Basis Partner at such time as it has received allocations pursuant to Section 3.11(d) equal to such Partner's Negative Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"**_Net Assets_**" means the total value, as determined by the General Partner or its delegate(s) in accordance with Section 7.2, of all Investments and other assets of the Partnership (including net unrealized appreciation or depreciation of the assets and accrued interest and dividends receivable net of any withholding taxes), less an amount equal to all accrued debts, liabilities and obligations of the Partnership (including any reserves for contingencies accrued pursuant to Section 3.6,). Except as otherwise expressly provided herein, Net Assets as of the first day of any Accounting Period are determined on the basis of the valuation of assets conducted as of the close of the immediately preceding Accounting Period, but after giving effect to any capital contributions made by any Partner subsequent to the last day of such immediately preceding Accounting Period, and after giving effect to Management Fee charges, and Net Assets as of the last day of any Accounting Period are determined before giving effect to any of the following amounts payable by the Partnership generally or in respect of any Investment which are effective as of the date on which such determination is made:

(a) any Performance Allocation as of the date on which such determination is made;

(b)     any withdrawals or distributions payable to any Partner which are effective as of the date on which such determination is made; and

(c)     withholding or other taxes, expenses of processing withdrawals and other items payable, any increases or decreases in any reserves, holdbacks or other amounts recorded pursuant to Section 3.6 and any increases or decreases in the value of any Restricted New Issues pursuant to Section 3.8(b) and other amounts specially allocated pursuant to Section 3.8 during the Accounting Period ending as of the date on which such determination is made, to the extent the General Partner determines that, pursuant to any provisions of this Agreement, such items are not to be charged ratably among the Capital Accounts of all Partners on the basis of their respective Partnership Percentages as of the commencement of the Accounting Period.

"*Net Loss*" means any amount by which the Net Assets as of the first day of an Accounting Period exceed the Net Assets as of the last day of the same Accounting Period.

"*Net Profit*" means any amount by which the Net Assets as of the last day of an Accounting Period exceed the Net Assets as of the first day of the same Accounting Period.

"*New Issue Rules*" has the meaning set forth in Section 3.8(b).

"*Nonrecourse Deductions*" has the meaning set forth in Regulations Section 1.704-2(b)(1) and (c).

"*Non-Voting Interest*" means an Interest, the holder of which is not entitled to vote, consent or withhold consent with respect to any Partnership matter (including but not limited to mergers, sales of substantially all assets or consolidations of the Partnership), except as otherwise expressly provided in this Agreement.

"*Offshore Fund*" means Highland Multi Strategy Credit Fund, Ltd., a Cayman Islands exempted company and a Limited Partner of the Partnership.

"*Orderly Realization*" has the meaning set forth in Section 6.1.

"*Other Account*" means any assets or investments of the General Partner, or any assets managed by the General Partner or any Affiliate of the General Partner for the account of any Person or entity (including investment vehicles) other than the Partnership, which are invested or which are available for investment in securities or other instruments or for trading activities whether or not of the specific type being conducted by the Partnership.

"*Partner*" means the General Partner or any of the Limited Partners, except as otherwise expressly provided herein, and "*Partners*" means the General Partner and all of the Limited Partners.

"*Partnership*" means the limited partnership governed by this Agreement.

"*Partnership Minimum Gain*" has the meaning set forth in Regulations Section 1.704-2(b)(2) and (d).

6

"**_Partnership Percentage_**" means a percentage established for each Capital Account on the Partnership's books as of the first day of each Accounting Period. The Partnership Percentage of a Capital Account for an Accounting Period is determined by dividing the amount of such Capital Account as of the beginning of the Accounting Period by the sum of the Capital Accounts of all of the Partners as of the beginning of the Accounting Period. The numerator and denominator of the above shall be calculated after crediting all capital contributions to the Capital Account or Partnership, as appropriate, which are effective as of such date, net of all deductions, including Management Fees. The sum of the Partnership Percentages of all Capital Accounts for each Accounting Period shall equal 100%.

"**_Performance Allocation_**" means, for each Capital Account of a Limited Partner, 20% of the amount by which (a) the Positive Performance Change for such Calculation Period for such Capital Account, if any, exceeds (b) any positive balance in the Carryforward Account for such Capital Account as of the most recent prior date as of which any adjustment has been made thereto.

"**_Performance Change_**" means, with respect to each Capital Account of a Limited Partner for each Calculation Period, the difference between:

(a) the sum of (i) the balance of such Capital Account as of the close of the Calculation Period (after giving effect to Management Fees and all allocations to be made to such Capital Account as of such date, including such Capital Account's allocable share of any profits or losses pursuant to Section 3.8 and any credits or debits of any applicable carrying charge associated therewith other than any Performance Allocation to be debited against such Capital Account), plus (ii) any debits to such Capital Account during the Calculation Period to reflect any actual or deemed distributions or withdrawals with respect to such Capital Account, plus (iii) any debits to such Capital Account during the Calculation Period to reflect any items allocable to such Capital Account pursuant to Section 3.5(b) or (c); and

(b) the balance of such Capital Account as of the commencement of the Calculation Period.

If the amount specified in clause (a) exceeds the amount specified in clause (b) such difference is a "**_Positive Performance Change_**," and if the amount specified in clause (b) exceeds the amount specified in clause (a), such difference is a "**_Negative Performance Change_**."

The Performance Change will be computed separately for each Capital Account (and thus each separately maintained capital sub-account created to reflect an additional contribution to a Capital Account). Thus, if a Limited Partner has multiple Capital Accounts, the Performance Change will be calculated separately for each Capital Account and the resulting "Positive Performance Change" and "Negative Performance Change" shall be separately allocated to each such Capital Account and shall not be netted against each other.

"**_Person_**" means any individual, partnership, corporation, limited liability company, trust or other entity or any government (including a governmental agency or political subdivision thereof).

"***Positive Basis***" means, with respect to any Partner and as of any time of calculation, the excess of the amount that such Partner is entitled to receive upon withdrawal from or liquidation of the Partnership over such Partner's "adjusted tax basis" in its Interest for U.S. federal income tax purposes at such time (determined without regard to any adjustments made to such adjusted tax basis by reason of any Transfer of such Interest).

"***Positive Basis Partner***" means any Partner who withdraws from the Partnership and who has a Positive Basis as of the Withdrawal Date, but such Partner ceases to be a Positive Basis Partner at such time as it has received allocations pursuant to Section 3.11(c) equal to such Partner's Positive Basis as of the Withdrawal Date and without regard to such Partner's share of the liabilities of the Partnership under Section 752 of the Code.

"***Prior Agreement***" has the meaning set forth in the Preliminary Statements to this Agreement.

"***Realization Period***" has the meaning set forth in Section 6.1.

"***Recent Amendments***" means the changes to the terms of an investment in the Partnership as contemplated in this Agreement and the constituent documents related thereto, including, but not limited to, the re-designation of all Interests held by Limited Partners on the Effective Date as Series A Interests.

"***Regulations***" means the proposed, temporary and final U.S. Treasury Regulations promulgated under the Code, including any successor regulations.

"***Regulatory Allocations***" has the meaning set forth in Section 3.10(d).

"***Restricted Capital Accounts***" has the meaning set forth in Section 3.8(b).

"***Restricted Issues***" has the meaning set forth in Section 3.8(b).

"***Revocation Notice***" has the meaning set forth in Section 8.11(c).

"***RIC Limited Partner***" means a Limited Partner that is registered as an investment company under the Investment Company Act.

"***Schedule of Partners***" means a schedule to be maintained by the General Partner containing the following information with respect to each Partner: (a) name; (b) address; (c) date of admission; (d) amount and date of all capital contributions and withdrawals; and (e) the amount and date of any permitted Transfers.

"***Series***" means a designated series of Interests established in accordance with this Agreement and having such terms as the General Partner determines.

"***Series A Capital Account***" means the Capital Account attributable to a Limited Partner's Series A Interest.

"*Series A Interests*" means a Series of Interests having the rights and obligations applicable to Series A Interests as set forth in this Agreement.

"*Series A Lock-Up*" has the meaning set forth in Section 5.5(c)(i).

"*Series A Withdrawal Date*" has the meaning set forth in Section 5.5(c)(i).

"*Series B Capital Account*" means the Capital Account attributable to a Limited Partner's Series B Interest.

"*Series B Interests*" means a Series of Interests having the rights and obligations applicable to Series B Interests as set forth in this Agreement.

"*Series B Withdrawal Date*" has the meaning set forth in Section 5.5(c)(ii).

"*Series C Capital Account*" means the Capital Account attributable to a Limited Partner's Series C Interest.

"*Series C Interests*" means a Series of Interests having the rights and obligations applicable to Series C Interests as set forth in this Agreement.

"*Series C Withdrawal Date*" has the meaning set forth in Section 5.5(c)(iii).

"*Series D Capital Account*" means the Capital Account attributable to a Limited Partner's Series D Interest.

"*Series D Interests*" means a Series of Interests having the rights and obligations applicable to Series D Interests as set forth in this Agreement.

"*Series D Withdrawal Date*" has the meaning set forth in Section 5.5(c)(iv).

"*Sub-Series of Shares*" refers to sub-series of the shares of the Offshore Fund, as created from time to time, for purposes of accounting for any profits and losses attributable to each individual shareholder and of permitting the Performance Allocation to be calculated separately with respect to each shareholder to reflect different returns achieved as a result of subscriptions received from shareholders at different times.

"*Suspension*" has the meaning set forth in Section 5.5(l).

"*Super-Majority-in-Interest of Limited Partners*" means Limited Partners whose Partnership Percentages represent more than 75% of the aggregate Partnership Percentages of all Limited Partners.

"*Transfer*" means any direct, indirect or synthetic sale, exchange, transfer, assignment, pledge, encumbrance, charge, exchange, hypothecation, placing of a lien or a security interest on an Interest or any other disposition by a Partner of its Interest to or in favor of another party, whether voluntary or involuntary (including, but not limited to, being offered or listed on or through any placement agent, intermediary, online service, site, agent or similar Person).

"***Withdrawal Date***" means, as applicable, the Series A Withdrawal Date, the Series B Withdrawal Date, the Series C Withdrawal Date, and the Series D Withdrawal Date or any other effective date of withdrawal pursuant to Section 5.5.

## Article II
## ORGANIZATION

**2.1      Continuation of Limited Partnership**

(a)      The General Partner and the Limited Partners hereby agree to continue the Partnership as a limited partnership under and pursuant to the Act and this Agreement.

(b)      The General Partner has executed and filed with the Secretary of State of the State of Delaware a Certificate, and shall execute, acknowledge and file with the Secretary any amendments thereto as may be required by the Act, and any other instruments, documents and certificates which, in the opinion of the Partnership's legal counsel, may from time to time be required by the laws of the United States of America, the State of Delaware or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership.  The General Partner shall cause any required amendment to the Certificate to be filed promptly following the event requiring such amendment.  All amendments may be signed by the General Partner (as required by the Act) and may be signed either personally or by an attorney-in-fact.

(c)      The parties hereto agree to operate the Partnership as a limited partnership pursuant to the provisions of the Act and of this Agreement and agree that the rights and liabilities of the Limited Partners and the General Partner are as provided in the Act, for limited partners and the general partner except as provided herein.

(d)      The parties hereto acknowledge and agree that the Partnership shall be classified as a "partnership" and not as an association taxable as a corporation for U.S. federal income tax purposes.  No election may be made by the Partners or the Partnership to treat the Partnership as other than a "partnership" for U.S. federal, state and/or local income tax purposes and, to the extent necessary, the Partners or Partnership shall make any election to treat the Partnership as a "partnership."  The Partners shall treat the Partnership consistently with its status as a "partnership" for U.S. federal income tax purposes and agree to undertake any further action which is necessary to treat the Partnership as such, and shall not undertake any action that is inconsistent with the Partnership's status as a "partnership" for U.S. federal, state and/or local income tax purposes.

(e)      The General Partner may change the domicile of the Partnership to another state, country or other jurisdiction where advisable due to legal, tax or other

10

considerations; <u>provided</u> that no such change of domicile would reasonably be expected to have a material adverse effect on the Limited Partners.

## 2.2 Name of Partnership

(a) The name of the Partnership is Highland Multi Strategy Credit Fund, L.P. or such other name as the General Partner may hereafter adopt, subject to causing an amendment to the Certificate to be filed with the Secretary of State of the State of Delaware in accordance with the Act. The General Partner shall send a notice of any change of name to the Limited Partners. All business of the Partnership shall be conducted under such name or under such other name as the General Partner deems appropriate.

(b) The Partnership shall have the exclusive ownership and right to use the Partnership name so long as the Partnership continues, despite the withdrawal, expulsion, resignation or removal of any Limited Partner, but upon the Partnership's termination or at such time as there ceases to be a general partner, the Partnership shall assign the name and the goodwill attached thereto to the General Partner without payment by the assignee(s) of any consideration therefor.

## 2.3 Principal Office; Registered Office

(a) The Partnership's principal office shall be at such location as the General Partner may designate from time to time.

(b) The Partnership's registered office in the State of Delaware is at 1209 Orange Street, County of New Castle, Wilmington, Delaware 19801, and the registered agent of the Partnership in the State of Delaware is The Corporation Trust Company, unless a different registered office or agent is designated from time to time by the General Partner.

## 2.4 Term of Partnership

The term of the Partnership commenced on the date on which the Certificate was filed with the Secretary of State of the State of Delaware and continues until the Partnership is dissolved pursuant to Section 6.1 (unless its term is extended pursuant to Section 6.1). The legal existence of the Partnership as a separate legal entity continues until the cancellation of the Certificate.

## 2.5 Object and Powers of Partnership

(a) The object and business of the Partnership is (i) to purchase, sell (including short sales), invest and trade in Investments, (ii) to engage in financial transactions, including borrowing, financing, pledging, hedging and other derivative transactions relating thereto for the benefit of the Partnership, (iii) to engage in any lawful act or activity of which limited partnerships may be formed under the Act and (iv) to engage in any and all activities necessary or incidental to the foregoing.

11

(b)  The Partnership possesses and may exercise all such powers and privileges as the General Partner considers necessary, convenient or incidental to the conduct, promotion or attainment of the object of the Partnership.

**2.6  Liability of Partners**

In no event shall any Limited Partner (or former Limited Partner) be obligated to make any contribution to the Partnership in addition to its agreed capital contribution (or other payments provided for herein) or have any liability for the repayment or discharge of the debts and obligations of the Partnership except to the extent provided herein or as required by the Act.

**2.7  Actions by Partnership**

The Partnership may execute, deliver and perform all contracts, agreements and other undertakings and engage in all activities and transactions as may in the opinion of the General Partner be necessary or advisable to carry out its objects.

**2.8  Reliance by Third Parties**

Persons dealing with the Partnership are entitled to rely conclusively upon the power and authority of the General Partner as herein set forth.

**2.9  UCC Status of Limited Partner Interests**

(a)  For purposes of the grant, pledge, attachment or perfection of a security interest in an Interest or otherwise, the Interests are deemed to be "securities" within the meaning of Section 8-102(a)(15) and as provided by Section 8-103(c) of the Uniform Commercial Code as in effect from time to time in the State of Delaware or analogous provisions in the Uniform Commercial Code in effect in any other jurisdiction.

(b)  Any Interest may be evidenced by a certificate of partnership interest issued by the Partnership in such form as the General Partner may approve. Every certificate representing an Interest shall bear a legend substantially in the following form:

"For the purposes of Section 8-103 of the Uniform Commercial Code of the United States of America in effect in any relevant jurisdiction, the certificates representing an interest in the Limited Partnership constitute "securities" within the meaning of Section 8-102 and Section 8-103 of the Uniform Commercial Code."

**2.10  Series of Interests**

(a)  The General Partner, at any time, may without notification to or consent of the other Limited Partners, create and offer different Series of Interests in the Partnership with such rights, obligations, liabilities, privileges, designations and preferences (including different investment strategies, underlying investments, degrees of leverage, Management Fees, Performance Allocations, brokerage commissions, transparency, withdrawal rights, co-investment opportunities, and other

12

differences) as the General Partner may determine upon the issuance of such Series; provided that such Series would not reasonably be expected to have a material adverse effect on the existing Limited Partners. The terms and rights of such Series may be set forth in a supplement to the Partnership's offering memorandum or a "side letter" or other agreement, which the General Partner may incorporate by reference.

(b)     All Interests in the Partnership held by Limited Partners (including Affiliated Investors) as of the Effective Date are hereby designated as Series A Interests.

**Article III**
**CAPITAL**

**3.1     Contributions to Capital**

(a)     The minimum required initial capital contribution of each Limited Partner is the amount determined by the General Partner. The General Partner may change the required minimum initial contribution amount at any time with respect to any, all or less than all Limited Partners.

(b)     The Partnership may accept additional contributions at such times as the General Partner may permit, but no Limited Partner shall be obligated to make any additional capital contribution to the Partnership, subject to the provisions of Section 3.5(b) and any contrary provision of the Act. The minimum required additional capital contribution of any existing Limited Partner to the Partnership shall be the amount the General Partner may determine. The General Partner may change the required minimum additional contribution amount at any time with respect to any, all or less than all Limited Partners.

(c)     The General Partner or an Affiliate has made a capital contribution to the Partnership as set forth in the Schedule of Partners. Except as required by the Act, the General Partner is not required to make any additional capital contributions to the Partnership. The General Partner may, however, make capital contributions to the Partnership in such amounts and at such times as it may determine. The General Partner or any of its Affiliates have the right at any time to make additional capital contributions as a Limited Partner or General Partner. If the General Partner or any of its Affiliates (including their associated Persons, such as officers, directors, partners, members or employees or any of their family members) makes a capital contribution as a Limited Partner, the General Partner or the Investment Manager shall have authority to waive the Management Fee and/or Performance Allocation with respect to such Limited Partner.

(d)     Except as otherwise permitted by the General Partner (i) initial or additional capital contributions by each Partner shall be paid in one installment with cash and/or Investments having an aggregate value as set forth in the Partnership's books and records, and (ii) initial contributions are due as of the date of admission of such Person as a Limited Partner of the Partnership. Whether Investments may be

accepted as a contribution to the capital of the Partnership is determined by the General Partner.

### 3.2 Rights of Partners in Capital

(a) No Partner shall be entitled to interest on its capital contributions to the Partnership. For the avoidance of doubt, interest income, if any, earned on subscription amounts remitted to the Partnership prior to the date that an Interest is issued to a Partner shall be payable to the Partnership and not applied toward the purchase of an Interest.

(b) No Partner shall have the right to the return of any capital contribution to the Partnership except (i) upon withdrawal of such Partner pursuant to Section 5.5 or (ii) upon the dissolution of the Partnership pursuant to Section 6.1. The entitlement to any such return is limited to the value of the Capital Account(s) of the Partner. The General Partner shall not be liable for the return of any such amounts.

### 3.3 Capital Accounts

(a) The Partnership shall maintain a separate Capital Account for each Partner. In the event a Limited Partner invests in more than one Series of Interests, the Partnership will maintain a separate Capital Account with respect to each Series of Interests held by such Limited Partner, with each such Capital Account being treated as if it were the Capital Account of a separate Partner for purposes of computing the Performance Allocation, the Management Fee and the withdrawal rights attributable to the Series.

(b) The General Partner may, in its discretion, maintain a separate sub-account for such purposes as the General Partner may determine appropriate, including for recordkeeping, accounting or reporting or to otherwise give effect to the provisions of this Agreement. Each Capital Account shall reflect the aggregate sum of the balances in such Partner's Capital Account.

(c) If a Partner makes an additional capital contribution to an existing Capital Account, the Capital Account will be sub-divided into separate capital sub-accounts attributable to each separate capital contribution, with each capital sub-account treated as if it were the Capital Account of a separate Partner for purposes of determining the Management Fee, the Performance Allocation and withdrawal rights and restrictions applicable to each capital sub-account. References herein to a Partner's "Capital Account" include any such separately maintained capital sub-accounts.

(d) The Partnership will issue to the Offshore Fund an Interest and maintain capital sub-accounts that correspond to each Sub-Series of Shares and each capital sub-account is treated separately for determining Management Fees, the Performance Allocations and withdrawal rights.

(e)     Each Capital Account has an initial balance equal to the amount of any cash and the net value of any property constituting the relevant Partner's initial capital contribution to such Capital Account.

(f)     Each Capital Account shall be increased by such Capital Account's allocable share of the Net Profits allocated by the Partnership to such Capital Account pursuant to Section 3.4.

(g)     Each Capital Account shall be reduced by (i) the amount of any cash and the net value of any property withdrawn by or distributed to the relevant Partner pursuant to Sections 5.5 or 6.3, including any amount deducted from any such withdrawal or distribution pursuant to Section 5.5(h), (ii) such Capital Account's allocable share of the Net Losses allocated by the Partnership to such Capital Account pursuant to Section 3.4, (iii) such Capital Account's *pro rata* portion of the expenses allocable (or specially allocable) by the Partnership pursuant to Section 3.5, (iv) such Capital Account's allocable share of the Performance Allocation allocable pursuant to Section 3.7, and (v) such Capital Account's *pro rata* portion of the expenses payable by the Partnership pursuant to Section 4.2(b).

(h)     The Capital Account of the Investment Manager, as a special Limited Partner of the Partnership, shall be increased by the amount of the Performance Allocation allocated to such Capital Account and the investment gains therein.

(i)     Each Capital Account shall also be adjusted to reflect all other allocations and other changes in the value of such Capital Account not otherwise described in this Section 3.3 in the manner specified in the remaining provisions of this Article III.

**3.4     Allocations of Net Profit and Net Loss**

Subject to Sections 3.5 through 3.10, as of the last day of each Accounting Period, any Net Profit or Net Loss of such Accounting Period shall be separately allocated among and credited to or debited against the Capital Accounts of the Partners in proportion to their respective Partnership Percentages for such Accounting Period.

**3.5     Allocation of Management Fees, Withholding Taxes and Certain Other Expenditures**

(a)     As of the first Business Day of each calendar quarter, each Capital Account's Management Fee for such calendar quarter shall be debited against such Capital Account and paid by the Partnership to the Investment Manager. Capital contributions accepted after the commencement of the calendar quarter shall be subject to a prorated Management Fee reflecting the time remaining during that quarter. The Investment Manager may reduce or eliminate the Management Fee with respect to any Partner (or Capital Account) in its sole discretion; provided that such reduction or elimination shall not increase the Management Fee payable by any other Partner (or Capital Account).

(b)     To the extent the General Partner or the Partnership is required by law (including under circumstances where the General Partner or the Partnership is unable to rely

15

conclusively on any withholding certification provided by a Partner) to withhold or to make tax payments on behalf of or with respect to any Partner or Partners (including backup withholding or withholding under FATCA), the General Partner or the Partnership may withhold such amounts and make such tax payments as so required.   If the Partnership pays or incurs any withholding tax or other tax obligation (including under FATCA) with respect to the income allocable or distributable to one or more Partners, then the amount of such withholding tax or tax obligation shall be treated as a distribution to such Partner or Partners, as applicable, pursuant to the terms of this Agreement.   Such amount shall be debited against the Capital Account(s) of such Partner or Partners as of the close of the Accounting Period during which the Partnership so withholds, pays or incurs such obligation.   If the amount so withheld, paid or incurred is greater than the balance of the Capital Account(s) of the relevant Partner or Partners, as applicable, then such Partner or Partners and any successors shall make a contribution to the capital of the Partnership, within 10 days following request by the General Partner, the amount of such excess.   The General Partner is not obligated to apply for or obtain a reduction of or exemption from withholding tax on behalf of any Partner that may be eligible for such reduction or exemption, or be otherwise obligated to structure Investments so as to reduce or avoid any such withholding tax.

(c)     Except as otherwise provided for in this Agreement, any expenditures payable by the Partnership, to the extent determined by the General Partner to have been paid or withheld on behalf of, or by reason of particular circumstances applicable to, one or more but fewer than all of the Partners, shall be specially allocated only to the Capital Accounts of those Partners on whose behalf such payments are made or whose particular circumstances gave rise to such payments.   Such allocations shall be debited from the relevant Capital Accounts of such Partners as of the close of the Accounting Period during which any such items were accrued by the Partnership.

**3.6     Reserves; Adjustments for Certain Future Events**

(a)     The General Partner may cause appropriate reserves to be created, accrued and charged against Net Assets and proportionately against the Capital Accounts for contingent liabilities or probable losses, such reserves to be in the amounts which the General Partner deems necessary or appropriate.   The General Partner may increase or reduce any such reserve from time to time by such amounts as the General Partner deems necessary or appropriate.   The amount of any such reserve, or any increase or decrease therein, may, at the election of the General Partner, be debited or credited, as the General Partner deems appropriate, to the Capital Accounts of current Partners that (i) are Partners at the time when such reserve is created, increased, or decreased, as the case may be, or (ii) were Partners, or are transferees from Persons who were Partners, at the time of the act or omission giving rise to the contingent liability for which the reserve has been established by the General Partner.

(b)     If the General Partner determines that it is equitable to treat an amount to be paid or received as being applicable to one or more prior periods, then all or a portion of such amount may be proportionately debited or credited, as appropriate, in proportion to the Capital Account balances of the current Partners as such balances existed during any such prior period.

**3.7     Performance Allocation**

(a)     The Performance Allocation shall be debited against each Capital Account of each Limited Partner as of the last day of each Calculation Period with respect to such Capital Account, and the amount so debited shall simultaneously be credited to the Capital Account of the Investment Manager, as a special Limited Partner of the Partnership.

(b)     The Investment Manager may waive or alter the Performance Allocation with respect to any Limited Partner.

**3.8     Limited Participation Investments and New Issues**

(a)     If the General Partner determines that for legal, tax, regulatory or bona fide other reasons as to which the General Partner and any Partner may agree such Partner should not participate (or should receive a reduced participation) in the Net Profit or Net Loss with respect to any Investment, the General Partner may allocate Net Profit or Net Loss, if any, with respect to such Investment only to Partners to whom the restrictions on participating in that Investment do not apply.  In order to allocate Net Profit or Net Loss accordingly, the General Partner may establish and maintain a memorandum account in the accounting records of the Partnership on a Partner-by-Partner basis with respect to each such Investment. The Net Profit and Net Loss and expenses relating to such Investment will be separately calculated and allocated based on each participating Partner's balance in such memorandum account for such Investment divided by the sum of the balances of all memorandum accounts for all participating Partners.   In order to compensate a Limited Partner who is not participating in an Investment pursuant to this Section 3.8 for the use of such Partner's share of Partnership capital to purchase the Investment, the General Partner may credit the non-participating Partner's Capital Account (and correspondingly debit the Capital Account of the participating Partners with a carrying charge).   Any distributions from the memorandum account will be based on the participating Partner's respective percentage interest in such Investment.

(b)     Pursuant to certain rules of FINRA ("**New Issue Rules**"), members of FINRA are permitted to sell to the Partnership certain publicly-offered securities ("**Restricted Issues**") only if the Capital Accounts of Partners connected with the securities industry or executive officers or directors of investment banking clients of underwriters ("**Restricted Capital Accounts**") are not restricted from sharing a beneficial interest in such Restricted Issues in accordance with the provisions of the New Issue Rules.   Notwithstanding the provisions of Section 3.4, if the Partnership chooses to invest in Restricted Issues, the Partnership shall not allocate any items

17

of income, gain, loss, deduction and credit that relate to investments in Restricted Issues to Restricted Capital Accounts except to the extent permitted by the New Issue Rules, and shall instead allocate such items among the other Capital Accounts on a *pro rata* basis. To the extent the New Issue Rules permit certain Persons with Restricted Capital Accounts to participate in profits and losses from Restricted Issues, the General Partner shall allocate such profits and losses from Restricted Issues among such Restricted Capital Accounts on a *pro rata* basis or on such other basis that the General Partner reasonably determines ensures compliance with the New Issue Rules. To the extent consistent with the New Issue Rules, the General Partner shall determine when all Capital Accounts may participate in the Net Profit and Net Loss from any Restricted Issue. The General Partner shall value any Restricted Issue at such time at the then-current price of the security in the secondary market.

**3.9      Allocation to Avoid Capital Account Deficits**

To the extent that any debits pursuant to this Article III would reduce the balance of the Capital Account of any Limited Partner below zero, that portion of any such debits shall instead be allocated to the Capital Account of the General Partner. Any credits in any subsequent Accounting Period which would otherwise be allocable pursuant to this Article III to a Capital Account of any Limited Partner previously affected by the application of this Section 3.9 shall instead be allocated to the Capital Account of the General Partner in such amounts as are necessary to offset all previous debits attributable to such Limited Partner pursuant to this Section 3.9 not previously recovered.

**3.10      Regulatory Allocations**

Notwithstanding anything to the contrary in this Agreement:

(a)      Qualified Income Offset.   In the event any Limited Partner unexpectedly receives any adjustments, allocations, or distributions described in Section 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5), or 1.704-1(b)(2)(ii)(d)(6) of the Regulations, items of Partnership income and gain shall be specially allocated to each such Limited Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, the deficit balance in the Capital Account of such Limited Partner as quickly as possible; provided that an allocation pursuant to this Section 3.10(a) may be made only if and to the extent that such Limited Partner would have a deficit balance in its Capital Account after all other allocations provided for in this Article III have been tentatively made as if this Section 3.10(a) were not in this Agreement. This Section 3.10(a) is intended to constitute a "qualified income offset" within the meaning of Section 1.704-1(b)(2)(ii) of the Regulations and is to be interpreted consistently therewith.

(b)      Minimum Gain Chargeback.   Notwithstanding any other provision of this Section 3.10, if there is a net decrease in Partnership Minimum Gain during any Fiscal Year, the Partners shall be specially allocated items of Partnership income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an

amount equal to the portion of any such Partner's share of the net decrease in Partnership Minimum Gain, determined in accordance with Regulations Sections 1.704-2(f) and (g). This Section 3.10(b) is intended to comply with the minimum gain chargeback requirement in such Sections of the Regulations and shall be interpreted consistently therewith.

(c)     Gross Income Allocation.   In the event any Limited Partner has a deficit Capital Account at the end of any Fiscal Year that is in excess of the sum of (i) the amount such Limited Partner is obligated to restore pursuant to any provision of this Agreement and (ii) the amount such Limited Partner is deemed to be obligated to restore pursuant to the penultimate sentences of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Regulations, each such Limited Partner shall be specially allocated items of Partnership gross income and gain in the amount of such excess as quickly as possible; provided that an allocation pursuant to this Section 3.10(c) may be made only if and to the extent that such Limited Partner would have a deficit Capital Account in excess of such sum after all other allocations provided for in this Article III have been made as if Section 3.10(a) and this Section 3.10(c) were not in this Agreement.

(d)     Curative Allocations.   The allocations set forth this Section 3.10 (the "**Regulatory Allocations**") are intended to comply with certain requirements of the Regulations. It is the intent of the Partners that, to the extent possible, all Regulatory Allocations shall be offset either with other Regulatory Allocations or with special allocations of other items of Partnership income, gain, loss, or deduction pursuant to this Section 3.10.   Therefore, notwithstanding any other provision of this Article III (other than the Regulatory Allocations), the General Partner shall make such offsetting special allocations of the Partnership income, gain, loss, or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of this Partnership Agreement and all Partnership items were allocated pursuant to other provisions of this Article III (other than the Regulatory Allocations).

(e)     Nonrecourse Deductions.   Any Nonrecourse Deductions for any Fiscal Year or other period shall be allocated to the Partners in accordance with their Partnership Percentages.

(f)     Section 704(b) Compliance.   The allocations provided in this Section 3.10 are intended to comply with the Regulations under Section 704(b) of the Code and may, as determined by the General Partner, be interpreted and applied in a manner consistent therewith.

**3.11    Allocations for Income Tax Purposes**

(a)     Income Tax Allocations.   Except as otherwise required by Code Section 704(c), items of income, gain, deduction, loss, or credit that are recognized for U.S. federal

19

income tax purposes in each Fiscal Year shall be allocated among the Partners in such manner as to reflect equitably amounts credited to or debited against each Partner's Capital Account, whether in such Fiscal Year or in prior Fiscal Years. To this end, the Partnership shall establish and maintain records which shall show the extent to which the Capital Account of each Partner comprises amounts that have not been reflected in the taxable income of such Partner as of the last day of each Fiscal Year. To the extent deemed by the General Partner to be feasible and equitable, taxable income and gains in each Fiscal Year shall be allocated among the Partners who have enjoyed the related credits to their Capital Accounts, and items of deduction, loss and credit in each Fiscal Year shall be allocated among the Partners who have borne the burden of the related debits to their Capital Accounts. Foreign tax credits attributable to taxes incurred by the Partnership shall be allocated in a manner consistent with Section 1.704-1(b)(4)(viii) of the Regulations. All matters concerning allocations for U.S. federal, state and/or local income tax purposes, including accounting procedures, not expressly provided for in this Agreement shall be determined by the General Partner.

(b)     **Basis Adjustments**.  To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) of the Code or Section 743(b) of the Code is required under Section 1.704-1(b)(2)(iv)(m) of the Regulations to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations; provided that in the event that an adjustment to the book value of Partnership property is made as a result of an adjustment pursuant to Section 734(b) of the Code, items of income, gain, loss, or deduction, as computed for book and tax purposes, shall be specially allocated among the Partners so that the effect of any such adjustment shall benefit (or be borne by) the Partner(s) receiving the distribution that caused such adjustment.

(c)     **Positive Basis Allocations**.  If the Partnership recognized gains or items of gross income (including short-term capital gain) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Positive Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect:  (i) to allocate such gains or items of gross income among such Positive Basis Partners, *pro rata* in proportion to the respective Positive Basis of each such Positive Basis Partner, until either the full amount of such gains or items of gross income shall have been so allocated or the Positive Basis of each such Positive Basis Partner shall have been eliminated; and (ii) to allocate any gains or items of gross income not so allocated to Positive Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; provided, however, that if, following such Fiscal Year, the Partnership recognizes gains or items of gross income from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the

20

liquidating share of any Positive Basis Partner, that continues to be a Partner in the Partnership following such withdrawal (*i.e.,* such Positive Basis Partner effected a partial, and not a complete, withdrawal of its Interest), then such Positive Basis Partner may be allocated an amount of such gains or items of gross income equal to the amount, if any, by which its or its Positive Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(c).

(d) <u>Negative Basis Allocations</u>. If the Partnership recognizes net losses or items of gross loss or deduction (including short-term capital loss) from the sale of Partnership assets for U.S. federal income tax purposes for any Fiscal Year in which one or more Negative Basis Partners withdraws from the Partnership pursuant to Section 5.5, the General Partner may elect: (i) to allocate such net losses or items of gross loss or deduction among such Negative Basis Partners, *pro rata* in proportion to the respective Negative Basis of each such Negative Basis Partner, until either the full amount of such losses or items of loss or deduction shall have been so allocated or the Negative Basis of each such Negative Basis Partner has been eliminated; and (ii) to allocate any net losses or items of gross loss or deduction not so allocated to Negative Basis Partners to the other Partners in such manner that reflects equitably the amounts credited to such Partners' Capital Accounts pursuant to Section 3.3; <u>provided</u>, <u>however</u>, that if, following such Fiscal Year, the Partnership recognizes net losses or items of gross loss and deduction from a sale of an Investment the proceeds of which are designated on the Partnership's books and records as being used to effect payment of all or part of the liquidating share of any Negative Basis Partner that continues to be a Partner in the Partnership following such withdrawal (*i.e.*, such Negative Basis Partner effected a partial, and not a complete, withdrawal of its Interest), there may be allocated to such Negative Basis Partner an amount of such net losses or items of gross loss or deduction equal to the amount, if any, by which its or its Negative Basis as of the Withdrawal Date exceeds the amount allocated to such Partner pursuant to clause (i) of this Section 3.11(d).

## 3.12    Individual Partner's Tax Treatment

Each Partner agrees not to treat, on any U.S. federal, state, local and/or non-U.S. income tax return or in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner inconsistent with the treatment of such item by the Partnership or which would result in inconsistent treatment, and each Partner further agrees to treat, on any U.S. federal, state, local and/or non-U.S. income tax return in any claim for a refund, any item of income, gain, loss, deduction or credit in a manner consistent with the treatment of such item by the Partnership.

## 3.13    Distributions

(a) The Partnership shall make distributions in respect of withdrawals in accordance with Section 5.5 and liquidation in accordance with Section 6.3. In addition, the General Partner may make other distributions at the times and in the amounts the

General Partner determines. Any distributions may be paid in cash, in kind or partly in cash and partly in kind.

(b)     Notwithstanding any provision to the contrary contained in this Agreement, the Partnership, and the General Partner on behalf of the Partnership, may not make a distribution to any Partner on any account of its Interest if such distribution would violate Section 17-607 of the Act or other applicable law.

**Article IV**
**MANAGEMENT**

**4.1     Duties and Powers of the General Partner**

(a)     Subject to the terms and conditions of this Agreement, the General Partner has complete and exclusive power and responsibility, to the fullest extent permitted by the Act, for (i) all investment and investment management decisions to be undertaken on behalf of the Partnership and (ii) managing and administering the affairs of the Partnership, and shall have the power and authority to do all things that the General Partner considers necessary or desirable to carry out its duties hereunder and to achieve the purposes of the Partnership, whether or not such action or authority is expressly provided for in this Agreement. Without limiting the foregoing generality, the General Partner's powers include the power to borrow, obtain leverage or otherwise incur indebtedness with respect to the Partnership's capital.

(b)     Without limiting the generality of the General Partner's duties and powers hereunder and notwithstanding anything to the contrary contained herein, the General Partner has full power and authority, subject to the other terms and provisions of this Agreement, to execute, deliver and perform such contracts, agreements and other undertakings on behalf of the Partnership, without the consent or approval of any other Person, and to engage in all activities and transactions, as it may deem necessary or advisable for, or as may be incidental to, the conduct of the business contemplated by this Section 4.1.

(c)     The General Partner may delegate to any other Person, including the Investment Manager, any power and authority vested in the General Partner pursuant to this Agreement.

(d)     The General Partner is the "tax matters partner" for purposes of Section 6231(a)(7) of the Code. The General Partner has the exclusive authority in its determination to make any elections required or permitted to be made by the Partnership under any provisions of the Code or any other revenue laws. The General Partner shall be entitled to be reimbursed by the Partnership for all costs and expenses incurred by it in connection with any administrative or judicial proceeding affecting tax matters of the Partnership and/or the Partners in their capacity as such and to be indemnified by the Partnership (solely out of Partnership assets) with respect to any

22

action brought against it in connection with any judgment in or settlement of any such proceeding.

(e)    Every power vested in the General Partner pursuant to this Agreement and any decision or determination that it is permitted to make is to be construed as a power to act (or not to act) in its sole and absolute discretion, except as otherwise expressly provided herein, and the General Partner shall be entitled to consider in making such decisions or determinations only such interests and factors as it desires, including its own interests.   No provision of this Agreement is to be construed to require the General Partner to violate the Act, the Advisers Act, or any other law, regulation or rule of any self-regulatory organization.   Notwithstanding any other provision of this Agreement, whenever in this Agreement, the General Partner is permitted or required to make a decision in its "good faith" or under another expressed standard, the General Partner must act under such express standard and will not be subject to any other or different standards.

(f)    Each Limited Partner shall deliver to the General Partner, upon a reasonable request, (i) an affidavit or certificate in form satisfactory to the General Partner that is sufficient to establish that the applicable Partner (and its partners, members, and/or beneficial owners, as the case may be) is not subject to withholding under the provisions of any U.S. federal, state, local, non-U.S. or other tax laws, or with respect to such Partner's tax status under such laws, or (ii) any information or documentation prescribed under FATCA or as may be necessary, as reasonably determined by the General Partner, for the Partnership to comply with its obligations under FATCA (including, but not limited to, information with respect to citizenship, residency, ownership or control of such Partner).   Each Limited Partner shall reasonably cooperate with the General Partner in connection with any tax audit of the Partnership, or any existing or former Investment.

**4.2    Expenses**

(a)    Except as otherwise provided herein, and in consideration of the Management Fee, the General Partner and the Investment Manager shall each pay all of its own operating and overhead costs, without reimbursement by the Partnership.

(b)    The Partnership shall pay, or reimburse the General Partner and the Investment Manager for, all other reasonable costs, fees and expenses arising in connection with the Partnership's operations.   Such expenses payable by the Partnership include the following:

(i)    all costs, fees and expenses directly related to Investments or prospective Investments (whether or not consummated) of the Partnership, including research and due diligence costs related to an Investment; brokerage commissions and other execution and transaction costs, interest on, and commitment fees and expenses arising out of, debit balances or borrowings; exchange, clearing and settlement charges; fees and expenses of any third-party providers of "back office" and "middle office" services relating to

23

trade settlement; travel expenses; appraisal fees; investment banking fees and expenses; borrowing charges on Investments sold short; custody fees; and fees of consultants and finders relating to Investments or prospective Investments of the Partnership; the costs, fees and expenses of any appraisers, accountants or other experts engaged by the General Partner or the Investment Manager as well as other expenses directly related to the Partnership's Investments;

(ii)    any withholding, transfer or other taxes imposed on the Partnership;

(iii)    the reasonable, out-of-pocket fees, costs and expenses (including legal fees and expenses) incurred to comply with any applicable law, rule or regulation (including regulatory filings or other expenses of the Partnership and the pro rata portion of any regulatory and other expenses of the General Partner or the Investment Manager, which benefit or are attributable to the Partnership);

(iv)    the reasonable, out-of-pocket costs, fees and expenses for financial and tax accounting, bookkeeping and reporting services, and administrative services performed by any Person on behalf of the Partnership (e.g., the administrator of the Partnership), including the cost of any audit of the Partnership's financial statements and the preparation of its tax returns (including with respect to FATCA compliance);

(v)    Management Fees;

(vi)    the reasonable, out-of-pocket costs, fees and expenses of legal counsel and any other litigation or investigation involving Partnership activities;

(vii)    specific expenses incurred in obtaining, maintaining or performing systems, research and other information, including information service subscriptions, utilized with respect to the Partnership's Investments including without limitation for portfolio management, valuations and accounting purposes, including the costs of statistics and pricing services, service contracts for quotation equipment and related hardware, software, phone and internet charges;

(viii)    the reasonable, out-of-pocket costs, fees and expenses associated with the Recent Amendments, including legal and accounting fees, printing costs, reporting and providing information to existing and prospective Partners, obtaining requisite consent from Limited Partners, travel fees and expenses related to the Partnership's offering, filing fees (including any "blue sky" filing fees) and other out-of-pocket expenses and compliance with any applicable federal and state laws;

(ix)    the costs and expenses associated with meetings of Partners;

(x)    the expenses of the Advisory Committee and the members thereof, including any indemnification expenses;

(xi)    the costs associated with maintaining "directors and officers" or similar liability insurance for the benefit of the Partnership, the General Partner, the Investment Manager, or any other Indemnified Person; and

(xii)    any costs or expenses of winding up and liquidating the Partnership and

(xiii)    all costs, fees and expenses associated with the ongoing offering of Limited Partner Interests.

(c)    Expenses with respect to Section 4.2(b)(viii) above will be amortized by the Partnership over a period of 36 months from the Effective Date; however, the General Partner may limit the amount of expenses amortized so that the Partnership's audited financial statements do not contain qualification.

(d)    Except as otherwise provided elsewhere in this Agreement, including Sections 3.4, 3.5, 3.6, 3.8 and 5.5(i), expenses are generally borne *pro rata* by the Partners in accordance with their respective Partnership Percentages.

(e)    If the General Partner or the Investment Manager, as appropriate, incurs any Partnership expenses for the account or for the benefit of, or in connection with its activities or those of its Affiliates on behalf of, both the Partnership and any Other Account, the General Partner or the Investment Manager, as appropriate, shall allocate such expense among the Partnership and each such Other Account in proportion to the size of the Investment made by each in the activity or entity to which the expense relates, or in such other manner as the General Partner considers fair and reasonable.

(f)    The General Partner and the Investment Manager may, to the extent disclosed in the Partnership's offering memorandum or otherwise disclosed to the Limited Partners, use "soft dollars" generated by the Partnership. Use of "soft dollars" by the General Partner or the Investment Manager as disclosed herein shall not constitute a breach by either the General Partner or the Investment Manager of any fiduciary or other duty which the General Partner or the Investment Manager may be deemed to owe to the Partnership or its Partners.

## 4.3    Rights of Limited Partners

The Limited Partners may not take any part in the management, control or operation of the Partnership's business, and have no right or authority to act for the Partnership or to vote on matters other than the matters set forth in this Agreement or as required by applicable law.

## 4.4    Other Activities of Partners

(a)    The General Partner is not required to devote any specific amount of its time to the affairs of the Partnership, but shall devote such of its time to the business and affairs

of the Partnership as it may determine to be necessary to conduct the affairs of the Partnership for the benefit of the Partnership and the Partners.

(b)     Each Partner acknowledges and agrees that the General Partner, its Affiliates and their respective partners, managers, directors, officers, shareholders, members or employees may engage in or possess an interest in other business ventures or commercial dealings of every kind and description, independently or with others, including, but not limited to, management of other accounts, investment in, or financing, acquisition and disposition of, Investments, investment and management counseling, brokerage services, serving as directors, officers, advisers or agents of other issuers, partners of any partnership, or trustee of any trust, or entering into any other commercial arrangements, whether or not any such activities may conflict with any interest of the parties with respect to the Partnership.  Without in any way limiting the foregoing, each Partner hereby acknowledges that none of the General Partner, its Affiliates or their respective partners, managers, directors, officers, shareholders, members or employees shall have any obligation or responsibility to disclose or refer any of the investment or other opportunities obtained through activities contemplated by this Section 4.4(b) to the Partnership, but may refer the same to any other party or keep such opportunities for their own benefit.

(c)     The General Partner and its Affiliates shall act in a manner that each considers fair, reasonable and equitable on an overall basis in allocating investment opportunities to the Partnership and any Other Account.   The General Partner and its Affiliates shall allocate investment opportunities as set forth in their policies and procedures, as may be amended from time to time, and as communicated to Limited Partners through the Partnership's private offering memorandum for Interests or otherwise.

(d)     Each of the Partners hereby waives and covenants not to sue on the basis of any law (statutory, common law or otherwise) respecting the rights and obligations of the Partners *inter se* which is or may be inconsistent with this Section 4.4.

## 4.5     Exculpation; Indemnification

(a)     The General Partner, the Investment Manager, any of their Affiliates, each direct or indirect member, manager, partner, director, officer, shareholder and employee of any of the foregoing and, with the approval of the General Partner, any agent of any of the foregoing (including their respective executors, heirs, assigns, successors or other legal representatives) (each an "***Indemnified Person***") shall not be liable to the Partnership or to any of the Limited Partners for any loss or damage occasioned by any acts or omissions in the performance of services under this Agreement or the Investment Management Agreement, or otherwise in connection with the Partnership, its Investments or operations, unless such loss or damage has occurred by reason of the willful misconduct, fraud or gross negligence of such Indemnified Person or as otherwise required by law; provided that nothing in this Agreement is to be construed as waiving any legal rights or remedies which the Partnership may have under state or federal securities laws.

(b)     The Partnership (but not the Partners individually) shall indemnify each Indemnified Person to the fullest extent permitted by law against any cost, expense (including reasonable attorneys' fees), judgment or liability incurred by or imposed upon it in connection with any action, suit or proceeding (including any proceeding before any judicial, administrative or legislative body or agency) to which it may be made a party or otherwise be involved or with which it shall be threatened by reason of being or having been General Partner, having been the Investment Manager pursuant to the Investment Management Agreement or its having provided services to the Partnership; provided that the Indemnified Person is not so indemnified to the extent such cost, expense, judgment or liability has been finally determined (i) in a non-appealable decision on the merits in any such action, suit or proceeding, or (ii) on a plea of *nolo contendere*, to have been incurred or suffered by the Indemnified Person solely by reason of willful misconduct, fraud or gross negligence by the Indemnified Person.

(i)     The right to indemnification granted by this Section 4.5 shall be in addition to any rights to which the Indemnified Person may otherwise be entitled and shall inure to the benefit of the successors or assigns of such Indemnified Person. The Partnership shall pay the expenses incurred by the Indemnified Person in defending a civil or criminal action, suit or proceeding in advance of the final disposition of such action, suit or proceeding, upon receipt of an undertaking by the Indemnified Person to repay such payment if there is an adjudication or determination that it is not entitled to indemnification as provided herein; provided that no such advance shall be made in connection with any action brought by a Majority-in-Interest of the Limited Partners.

(ii)    In any suit in the name of the Partnership to recover expenses advanced pursuant to the terms of an undertaking, the Partnership shall be entitled to recover such expenses upon a final adjudication that the Indemnified Person or other Person claiming a right to indemnification hereunder has not met the applicable standard of conduct set forth in Section 4.5(a). In any such suit brought to enforce a right to indemnification or to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Indemnified Person or other Person claiming a right to indemnification shall not be entitled to be indemnified, or to an advancement of expenses, hereunder shall be on the Partnership (or any Limited Partner acting derivatively or otherwise on behalf of the Partnership or the Limited Partners) unless otherwise required by applicable law.

(iii)   Each Indemnified Person may not satisfy any right of indemnity or reimbursement granted in this Section 4.5 or to which it may be otherwise entitled except out of the assets of the Partnership, and no Partner shall personally liable with respect to any such claim for indemnity or reimbursement. The General Partner may obtain appropriate insurance on behalf, and at the expense, of the Partnership to secure the Partnership's obligations hereunder.

27

(iv)    Nothing in this Agreement is to be construed as to provide for the indemnification of an Indemnified Person for any liability (including liability under U.S. federal securities laws) to the extent that such indemnification would be in violation of applicable law but is to be construed so as to effectuate this Section 4.5 to the fullest extent permitted by law.

(v)    Each Indemnified Person shall be deemed a third-party beneficiary (to the extent not a direct party hereto) of this Agreement and, in particular, the provisions of this Section 4.5. The General Partner and/or the Investment Manager may enter into agreements on behalf of the Partnership with an Indemnified Person to provide an indemnity to the same extent provided in this Section 4.5.

**4.6    Advisory Committee**

(a)    The General Partner and/or the Investment Manager may appoint a committee (the "***Advisory Committee***") composed of one or more individuals selected from time to time by the General Partner. No member of the Advisory Committee may be an Affiliate of the General Partner and/or the Investment Manager (except as a Limited Partner or as an investor in an Affiliate of the Partnership).

(b)    If established, the Advisory Committee will meet with the General Partner and/or the Investment Manager from time to time as requested by and deemed appropriate by the General Partner and/or the Investment Manager to consult with and advise the General Partner and/or the Investment Manager on any matter deemed appropriate by the General Partner and/or the Investment Manager, including any circumstances involving conflicts of interest between the General Partner and/or the Investment Manager (and their Affiliates), on the one hand, and the Limited Partners and the Partnership, on the other.

(c)    The General Partner and/or the Investment Manager may in its discretion seek the approval of the Advisory Committee or establish any other reasonable mechanism in connection with (i) approvals that are or would be required under the Investment Advisers Act (including Section 206(3)) or (ii) any other matter deemed appropriate by the General Partner and/or the Investment Manager. Each Limited Partner agrees that, except as otherwise specifically provided herein and to the extent permitted by applicable law, the approval of a majority of the members of the Advisory Committee at such time is binding upon the Partnership and each Partner with respect to any approval sought under this Section 4.6(c).

(d)    As determined by the General Partner and/or the Investment Manager, meetings of the Advisory Committee may be held in person or by telephone. Approval of the Advisory Committee is deemed to have been given if given by a majority of those members present at a meeting or by a majority of all members of the Advisory Committee if given pursuant to a written consent without a meeting.

(e)     The Partnership agrees to reimburse members of the Advisory Committee for their out-of-pocket expenses relating to their services as Advisory Committee members and to indemnify each Advisory Committee member to the maximum extent permitted by law

(f)     In the event an Advisory Committee is not appointed, the General Partner and/or the Investment Manager may obtain the approval of an unaffiliated third party, as is determined advisable by the General Partner and/or the Investment Manager, and any such approval by such third party shall, to the extent permitted under applicable law, serve as the approval of the Advisory Committee and shall be binding on the Partnership and the Limited Partners.

**4.7     Alternative Investment Vehicles**

The General Partner shall have the right in connection with any Investment to direct the capital contributions of some or all of the Partners to be made through one or more alternative investment vehicles ("***Alternative Investment Vehicles***") and to exchange a portion of the Interests of one or more Limited Partners for similar equity interests in one or more Alternative Investment Vehicles if, in the judgment of the General Partner, the use of such vehicle or vehicles would allow the Partnership to overcome legal or regulatory constraints or invest in a more tax efficient manner and/or would facilitate participation in certain types of Investments; <u>provided</u> that the General Partner shall not employ the use of an Alternative Investment Vehicle in any manner that would reasonably be expected to have a material adverse effect on the participating Limited Partners. Any Alternative Investment Vehicle shall contain terms and conditions substantially similar to those of the Partnership and shall be managed by the General Partner or an Affiliate thereof, and such controlling Person is required to comply with the provisions of this Agreement applicable to Alternative Investment Vehicles.   Expenses related to an Alternative Investment Vehicle on behalf of less than all of the Partners shall not be borne by the Partners that do not participate in such Alternative Investment Vehicle.

**Article V**
**ADMISSIONS, TRANSFERS AND WITHDRAWALS**

**5.1     Admission of Limited Partners**

The General Partner may, at such times as the General Partner may determine, without advance notice to or consent from the Limited Partners, admit to the Partnership any Person who executes this Agreement or any other writing evidencing the intent of such Person to become a Limited Partner.   Such admission shall be effective when the General Partner enters the name of such Person on the books and records of the Partnership as a Partner and does not require the consent or approval of any other Partner.   The General Partner has the authority to reject subscriptions for Interests in whole or in part.

**5.2     Admission of Additional General Partners**

(a)     Except as provided in Section 5.2(b), the General Partner may admit one or more Persons as additional general partners to the Partnership.   No additional general

29

partner shall be added unless such additional general partner agrees to be bound by all of the terms of this Agreement.

(b) Any Person to whom the General Partner has transferred its general partner interest in accordance with Section 5.4 shall be admitted to the Partnership as a substitute General Partner without the consent of the Limited Partners unless otherwise provided for in Section 5.4.

**5.3    Transfer of Interests of Limited Partners**

(a) No Transfer of any Limited Partner's Interest, whether voluntary or involuntary, shall be valid or effective, and no transferee may become a substituted Limited Partner, unless the prior written consent of the General Partner has been obtained, which consent may be granted, withheld or conditioned for any reason by the General Partner.  Any attempted Transfer not made in accordance with this Section 5.3, to the fullest extent permitted by law, shall be void *ab initio*.

(b) Prior to recognizing any Transfer in accordance with this Section 5.3, the General Partner may require the transferring Limited Partner to execute and acknowledge an instrument of Transfer in form and substance satisfactory to the General Partner, and may require the transferee to make certain representations and warranties to the Partnership and Partners and to accept, adopt and approve in writing all of the terms and provisions of this Agreement.

(c) In the event of a Transfer of a Partner's Interest or in the event of a distribution of assets of the Partnership to any Partner, the Partnership may, but shall not be required to, file an election under Section 754 of the Code and in accordance with the applicable Regulations, to cause the basis of the Partnership's assets to be adjusted for U.S. federal income tax purposes as provided by Section 734 or 743 of the Code.

(d) In the event of a Transfer at any time other than the end of a Fiscal Year, items of income, gain, loss, deduction or credit recognized by the Partnership for U.S. federal income tax purposes shall be allocated between the transferring parties, as determined by the General Partner, using any permissible method under Code Section 706(d) and the Regulations thereunder.  To the extent the transferring parties have given the General Partner written notice prior to the consent by the General Partner pursuant to Section 5.3(a) of their agreement to apply a particular and reasonable method, then the General Partner may elect to use such method. The transferring parties agree to reimburse the General Partner and the Partnership for any incidental accounting fees and other expenses incurred by the General Partner and the Partnership in making allocations pursuant to this Section 5.3(d).

**5.4    Transfer of Interest of the General Partner**

The General Partner may Transfer its Interest as a General Partner in the Partnership; <u>provided</u> that if any such proposed Transfer would result in an "assignment" (as such term is

defined under the Advisers Act), the General Partner shall obtain the consent of Limited Partners constituting a Majority-in-Interest of Limited Partners that are not Affiliated Investors.

**5.5     Withdrawal of Interests of Partners**

(a)     The Interest of a Limited Partner may not be withdrawn from the Partnership prior to its dissolution except as provided in this Section 5.5.

(b)     Withdrawal rights are determined separately with respect to each Capital Account (and each capital sub-account, if applicable).  Each capital contribution shall be accounted for using a separate capital sub-account, and, in the case of a Limited Partner for which more than one capital sub-account is maintained, the withdrawals from any such capital sub-accounts shall be processed on a "first-in, first-out" basis based upon the date on which each capital contribution was made, unless otherwise agreed between the General Partner and such Partner.  Each capital sub-account relating to a contribution of capital from a Limited Partner will be treated as if it were the separate Capital Account of a separate Partner for the purposes of applying the withdrawal provisions of this Section 5.5.

(c)     Subject to a Suspension and the other provisions of this Section 5.5:

(i)     A Limited Partner may make a complete or partial withdrawal from its Series A Capital Account effective on the last Business Day of each calendar quarter occurring at least 36 calendar months after the contribution of the capital to be withdrawn (each, a "***Series A Withdrawal Date***") by providing written notice to the General Partner at least 90 days prior to the proposed Series A Withdrawal Date (such restriction, the "***Series A Lock-Up***").  For purposes of calculating the Series A Lock-Up, each Limited Partner holding Series A Interests as on of the Effective Date is deemed to have made its initial contribution for Series A Interests as of the Effective Date.  Additional contributions for Series A Interests after the Effective Date will also be subject to the Series A Lock-Up, which lock-up period shall commence on the date of each such additional contribution.

(ii)     A Limited Partner may make a complete or partial withdrawal from its Series B Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series B Withdrawal Date. The "***Series B Withdrawal Date***" means: (i) the end of the day on the last Business Day of the calendar month that immediately precedes the one-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each one-year anniversary of the preceding Series B Withdrawal Date (or the last Business Day of such month).

(iii)     A Limited Partner may make a complete or partial withdrawal from its Series C Capital Account upon written notice to the General Partner at least 180 days prior to the applicable Series C Withdrawal Date.  The "***Series C Withdrawal Date***" means: (i) the end of the day on the last Business Day of

31

the calendar month that immediately precedes the two-year anniversary of the contribution of the capital to be withdrawn; and thereafter (ii) the end of the day on each two-year anniversary of the preceding Series C Withdrawal Date (or the last Business Day of such month).

(iv)   A Limited Partner may make a complete or partial withdrawal from its Series D Capital Account effective on the last Business Day of each calendar quarter (each, a "**Series D Withdrawal Date**") occurring at least 12 calendar months after the contribution of the capital to be withdrawn by providing written notice to the General Partner at least 90 days prior to the proposed Series D Withdrawal Date.

(d)   Any notice of withdrawal shall be irrevocable by the Limited Partner, unless otherwise agreed by the General Partner.  For the avoidance of doubt, if a Limited Partner notifies the General Partner of its intent to withdraw and later chooses not to withdraw (with the General Partner's consent), any transaction costs incurred by the Partnership or the General Partner in connection therewith may be charged to such withdrawing Limited Partner.  The General Partner may refuse to honor any Limited Partner's request for a full or partial withdrawal if such request is not accompanied by such additional information as the General Partner may reasonably require, including any information required to determine the "adjusted basis" for U.S. federal income tax purposes in the Limited Partner's Interest withdrawn.

(e)   With respect to any amounts withdrawn, a withdrawing Partner shall not share in the income, gains and losses of the Partnership or have any other rights as a Partner (in the case of a complete withdrawal) after the applicable Withdrawal Date, and withdrawn amounts will be fixed as of the applicable Withdrawal Date, except as provided in Section 3.6.  For the avoidance of doubt, none of the Partnership, the General Partner or the Investment Manager shall be liable to a Limited Partner for interest on the proceeds of any withdrawal.

(f)   At least 90% of the estimated amount due with respect to the Partnership's marketable investments is normally settled in cash or, subject to the sole discretion of the General Partner, wholly or partially with securities or other assets of the Partnership, within 30 Business Days after the Withdrawal Date, provided that the General Partner may delay such payment if such delay is reasonably necessary to prevent such withdrawal from having a material adverse impact on the Partnership or the remaining Capital Accounts.  The General Partner is entitled to deduct from such settlement payment an amount equal to the pro rata portion of any Performance Allocation (based on the portion of the withdrawal being settled) payable to the Investment Manager with respect to such withdrawn amount.  Any balance will be held back and distributed, without interest thereon, promptly following completion of the audit of the Partnership's financial statements for such Fiscal Year, or sooner in the General Partner's discretion.

(g)   In the case of a complete withdrawal, or a partial withdrawal that cannot be fully funded out of the Limited Partner's interest in the Partnership's marketable

investments, no settlements occur with respect to any of such Limited Partner's interest in the Partnership's non-marketable investments until the occurrence of liquidity events with respect to such non-marketable investments after the scheduled payment date for the withdrawal (without interest thereon). Notwithstanding the foregoing, the General Partner may, however, make settlements in such cases prior to the occurrence of a liquidity event if such settlement would, in the good faith opinion of the General Partner, not have a material adverse effect on the Partnership. Generally, a liquidity event will be a sale of the relevant investment for cash, in which case the settlement will be funded in cash within 90 days after the liquidity event (without interest). If the liquidity event is not a sale for cash, the General Partner may effect the settlement either by making a distribution in kind of the Limited Partner's ratable share of the relevant investment or by distributing the net proceeds derived from a sale of such investment. The General Partner is entitled to withdraw from each such settlement an amount equal to the remaining portion of any Performance Allocation (pro rata based on the portion of such withdrawal being distributed) to be credited to the Investment Manager at the same time and in the same form (in cash or in kind) as the distribution to the withdrawing Limited Partner.

(h)     The General Partner may effect withdrawal payments (i) in cash, (ii) in kind, by transfer of marketable or non-marketable Investments to the Limited Partner, the value of which, as determined in accordance with Section 7.2, would satisfy the Limited Partner's request for withdrawal, or (iii) in any combination of the foregoing.

(i)     The General Partner may deduct from any withdrawal proceeds due to any Limited Partner pursuant to this Section 5.5 an amount representing the Partnership's actual or estimated expenses, as determined by the General Partner, associated with processing the withdrawal. Any such withdrawal deduction shall be retained by the Partnership for the benefit of the remaining Limited Partners.

(j)     The right of any Partner to withdraw or receive distributions pursuant to the provisions of this Section 5.5 is subject to all Capital Account allocations and adjustments contemplated by this Agreement and to the provision by the General Partner for all Partnership liabilities and for reserves and holdbacks for contingencies provided in Section 3.6.

(k)     The General Partner may suspend or limit, in whole or in part, (i) the right of the Partners to withdraw or receive distributions from the Partnership and/or (ii) the valuation of the Partnership's Net Assets:

(i)     during any period when any exchange or over-the-counter market on which the Partnership's Investments are quoted, traded or dealt in is closed, other than for ordinary holidays and weekends, or during periods in which dealings are restricted or suspended;

(ii)    during the existence of any state of affairs as a result of which, in the reasonable opinion of the General Partner, disposal of, or withdrawals or redemptions from, Investments by the Partnership, or the determination of the value of the assets of the Partnership, would not be reasonably practicable;

(iii)   during any breakdown in the means of communication normally employed in determining the price or value of the Partnership's assets or liabilities, or of current prices in any market as aforesaid, or when for any other reason the prices or values of any assets or liabilities of the Partnership cannot reasonably be accurately ascertained within a reasonable time frame;

(iv)    during any period when the transfer of funds involved in the realization or acquisition of any Investments cannot, in the reasonable opinion of the General Partner, be effected at normal rates of exchange;

(v)     in other circumstances where the General Partner is unable to fairly value the Partnership's assets due to extreme market conditions; or

(vi)    automatically upon liquidation of the Partnership.

(l)    In the event of any such suspension or limitation described above in Section 5.5(k) (a "*Suspension*"), the General Partner shall promptly notify each Limited Partner. Any Limited Partner who has submitted a withdrawal request and to whom payment in full of the amount being withdrawn has not yet been remitted is not given any priority with respect to the withdrawal of such Interests or portions thereof after the cause for such Suspension ceases to exist. The General Partner may, however, allow any such Partners to rescind their withdrawal requests to the extent of any portion thereof for which withdrawal proceeds have not yet been remitted. Upon the reasonable determination by the General Partner that conditions leading to Suspension no longer apply, withdrawal rights for all Limited Partners shall be promptly reinstated, and any pending withdrawal requests (or new, timely withdrawal requests) shall be honored as of the last Business Day of the calendar quarter in which withdrawals have recommenced, subject to the application of the withdrawal limitations described herein.

(m)    The General Partner may, notwithstanding any Suspension, upon not less than five days' prior written notice (or immediately if the General Partner determines in its sole discretion that such Limited Partner's continued participation in the Partnership may cause the Partnership, the Investment Manager or the General Partner to violate any applicable law), require any Limited Partner's Interest to be withdrawn in part or in its entirety from the Partnership (including, but not limited to, for reasons relating to FATCA) and for the Limited Partner to cease to be a Limited Partner of the Partnership (in the case of a withdrawal of a Limited Partner's Interest in its entirety) pursuant to this Section 5.5(m). Except as otherwise provided herein, settlements of withdrawals pursuant to this Section 5.5(m) are made in the same manner as voluntary withdrawals.

(n)  Notwithstanding the foregoing, the General Partner may waive any restrictions on any Limited Partner's ability to withdraw.

**Article VI**
**SOFT WIND DOWN, DISSOLUTION AND LIQUIDATION**

**6.1  Soft Wind Down**

(a)  The General Partner may, in consultation with the Investment Manager, make a determination that the investment strategy should no longer be continued (whether or not the General Partner has implemented a Suspension).  Having made such determination, the Investment Manager may recommend to the General Partner to cause the Partnership to return the Partnership's assets to Limited Partners in an orderly manner (without proceeding with a liquidation of the Partnership) (an "***Orderly Realization***").  The General Partner may, in such circumstances, resolve to effect an Orderly Realization should it determine that doing so is in the best interests of the Partnership as a whole.  Such Orderly Realization shall not constitute a dissolution or winding up of the Partnership for any purposes, but rather only the continued management of the Partnership's portfolio so as to reduce such portfolio to cash (to the extent reasonably practicable, as advised by the Investment Manager) and return such cash as well as all other assets of the Partnership to the Limited Partners.

(b)  The General Partner will notify the Limited Partners of any decision to proceed with an Orderly Realization of the Partnership.  During an Orderly Realization, the Investment Manager may, in consultation with the General Partner, take such steps as are considered appropriate in the best interests of the Partnership as a whole to effect the Orderly Realization.  The General Partner, in consultation with the Investment Manager, shall establish what they consider to be a reasonable time by which the Orderly Realization should be effected (the "***Realization Period***").  Any resolution to undertake an Orderly Realization and the process thereof shall be deemed to be integral to the business of the Partnership and may be carried out without recourse to a formal process of liquidation under Delaware law or any other applicable bankruptcy or insolvency regime.

(c)  The General Partner, in consultation with the Investment Manager, may resolve to cease the Orderly Realization within the Realization Period and recommence active trading if the circumstances permit a lifting of any applicable Suspension or, where no Suspension is in effect, if the circumstances are such that the investment strategy can then be continued.

(d)  Management Fees, and all other fees and expenses, shall be payable and Performance Allocations shall be made during an Orderly Realization on the same basis as provided herein.

35

**6.2    Dissolution of Partnership**

(a)    The Partnership shall be dissolved upon the first to occur of the following dates:

(i)    any date on which the General Partner shall elect in writing to dissolve the Partnership; or

(ii)    the occurrence of any other event causing (A) the General Partner (or a successor to its business) to cease to be the general partner of the Partnership or (B) the dissolution of the Partnership under the Act.

(b)    In the event an Orderly Realization lasts longer than three years, a Super-Majority-in-Interest of the Limited Partners may seek a court decree of dissolution or seek the appointment by the court of a liquidator for the Partnership. The Limited Partners will not have any other right to bring an action in court to dissolve the Partnership. The parties agree that irreparable damage would be done to the goodwill and reputation of the Partners if any Limited Partner should bring an action in court to dissolve the Partnership. Care has been taken in this Agreement to provide for fair and just payment in liquidation of the Interests of all Partners. Accordingly, each Limited Partner hereby waives and renounces its right to such a court decree of dissolution or to seek the appointment by the court of a liquidator for the Partnership except as provided herein.

**6.3    Liquidation of Assets**

(a)    Upon dissolution of the Partnership, the General Partner shall promptly liquidate the business and administrative affairs of the Partnership to the extent feasible, except that if the General Partner is unable to perform this function, a liquidator elected by a Majority-in-Interest of Limited Partners shall liquidate the business and administrative affairs of the Partnership. Net Profit and Net Loss during any Accounting Period, which includes the period of liquidation, shall be allocated pursuant to Article III. The proceeds from liquidation shall be divided in the following manner, subject to the Act:

(i)    the debts, liabilities and obligations of the Partnership, other than any debts to the Partners as Partners, and the expenses of liquidation (including legal, administrative and accounting expenses incurred in connection therewith), up to and including the date that distribution of the Partnership's assets to the Partners has been completed, shall first be satisfied (whether by payment or the making of reasonable provision for payment thereof);

(ii)    such debts as are owing to the Partners as Partners are next paid; and

(iii)    the Partners shall next be paid liquidating distributions (in cash or in securities or other assets, whether or not readily marketable) *pro rata* in accordance with, and up to the positive balances of their respective Capital Accounts, as adjusted pursuant to Article III to reflect allocations for the

Accounting Period ending on the date of the distributions under this Section 6.1(a)(iii).

(b) Notwithstanding this Section 6.3 and the priorities set forth in the Act, the General Partner or liquidator may distribute ratably in kind rather than in cash, upon dissolution, any assets of the Partnership; provided, however, that if any in kind distribution is to be made, (i) the assets distributed in kind shall be valued pursuant to Section 7.2, and charged as so valued and distributed against amounts to be paid under Section 6.3(a) and (ii) any gain or loss (as computed for book purposes) attributable to property distributed in kind shall be included in the Net Profit or Net Loss for the Accounting Period ending on the date of such distribution.

## Article VII
## ACCOUNTING AND VALUATION; BOOKS AND RECORDS

**7.1    Accounting and Reports**

(a) The Partnership may adopt for tax accounting purposes any accounting method that the General Partner shall decide is in the best interests of the Partnership and that is permissible for U.S. federal income tax purposes.

(b) As soon as practicable after the end of each Fiscal Year thereafter, the General Partner shall cause an audit of the financial statements of the Partnership as of the end of each such period to be made by a firm of independent accountants selected by the General Partner. As soon as is practicable thereafter, but subject to Section 7.4, the General Partner shall furnish to each Limited Partner a copy of the set of financial statements prepared in accordance with GAAP, with such adjustments thereto as the General Partner determines appropriate, including the report of such independent accountants.

(c) As soon as practicable after the end of each taxable year, the General Partner shall furnish to each Limited Partner such information as may be required to enable each Limited Partner properly to report for U.S. federal, state and local income tax purposes its distributive share of each Partnership item of income, gain, loss, deduction or credit for such year. The General Partner shall have discretion as to how to report Partnership items of income, gain, loss, deduction or credit on the Partnership's tax returns, and the Limited Partners shall treat such items consistently on their own tax returns.

(d) As soon as practicable after the end of each calendar month, but subject to Section 7.5, the General Partner shall arrange for the preparation and delivery to each Limited Partner of an interim report containing such information concerning the affairs of the Partnership (which need not include any financial statements) as the General Partner considers appropriate.

**7.2** **Valuation of Partnership Assets and Interests**

(a)     The General Partner (or its delegate, including the Investment Manager or the administrator of the Partnership) shall value the assets of the Partnership as of the close of business on the last day of each Accounting Period.  Such valuations will generally be in accordance with GAAP, with such adjustments thereto as the General Partner reasonably determines appropriate.  In addition, the General Partner shall value the assets which are being distributed in kind as of the close of the Business Day immediately preceding the distribution date in accordance with Section 5.5(c) or Section 6.3(b).  In determining the value of the assets of the Partnership, no value shall be placed on the goodwill or name of the Partnership, or the office records, files, statistical data or any similar intangible assets of the Partnership not normally reflected in the Partnership's accounting records, but there shall be taken into consideration any related items of income earned but not received, expenses incurred but not yet paid, liabilities fixed or contingent, prepaid expenses to the extent not otherwise reflected in the books of account, and the value of options or commitments to purchase or sell securities pursuant to agreements entered into on or prior to such valuation date.

(b)     To the extent readily available, valuations will be based on independent market quotations obtained by the General Partner from recognized pricing services, market participants or other sources.  In the case of any Investment for which a quotation from an independent source is not available or is determined by the General Partner to be unreliable or inadequate, the General Partner (i) shall be authorized, to the extent permitted by applicable law, to value such positions at their fair value in such manner as the General Partner determines in good faith, or (ii) may (but shall not be required to) obtain an appraisal, at the expense of the Partnership, by an independent third party selected by the General Partner.  Except as otherwise determined by or at the direction of the General Partner, investment and trading transactions shall be accounted for on the trade date.

(c)     Accounts shall be maintained in U.S. dollars, and except as otherwise determined by or at the direction of the General Partner:  (i)  assets and liabilities denominated in currencies other than U.S. dollars shall be translated at the rates of exchange quoted by an independent pricing service as in effect as of the close of business on the relevant valuation dates (and exchange adjustments shall be recorded in the results of operations); and (ii) investment and trading transactions and income and expenses shall be translated at the rates of exchange in effect at the time of each transaction.

**7.3** **Determinations by the General Partner**

(a)     All matters concerning the determination and allocation among the Partners of the amounts to be determined and allocated pursuant to this Agreement, including Article III and accounting procedures applicable thereto, shall be determined by the General Partner, unless specifically and expressly otherwise provided for by the provisions of this Agreement, and such determinations and allocations shall be final

and binding on all the Partners; _provided_, _however_, that all calculations of the Performance Allocation will be made on the basis of, or subject to correction based on, the annual audit of the Partnership's financial statements and appropriate adjustments will be made to all such calculations and related allocations to the extent necessary as a result of that audit.

(b)     The General Partner may make such adjustments to the computation of Net Profit or Net Loss or any other allocations with respect to any Limited Partner, or any component items comprising any of the foregoing, as it considers appropriate to reflect the financial results of the Partnership and the intended allocation thereof among the Partners in a reasonably accurate, fair and efficient manner. Without limiting the generality of the foregoing, any provision of this Agreement that requires an adjustment to be made to any Capital Account or sub-account as of any mid-month or mid-quarter date may be made as of the most recent preceding or succeeding date when a regular valuation is being conducted.

**7.4     Books and Records**

(a)     The General Partner shall keep books and records pertaining to the Partnership's affairs showing all of its assets and liabilities, receipts and disbursements, realized income, gains, deductions and losses, Partners' Capital Accounts and all transactions entered into by the Partnership. The General Partner shall afford to the Partnership's independent auditors reasonable access to such documents during customary business hours and shall permit the Partnership's auditors to make copies thereof or extracts therefrom at the expense of the Partnership.

(b)     The General Partner shall establish such standards as it deems appropriate regarding the access of Limited Partners to the books and records of the Partnership and shall not be obliged to permit access by a Limited Partner to the name or address of any other Limited Partner.

**7.5     Confidentiality**

(a)     Each Limited Partner agrees to keep confidential, and not to make any use of (other than for purposes reasonably related to its Interest or for purposes of filing such Limited Partner's tax returns) or disclose to any Person, any information or matter relating to the Partnership and its affairs and any information or matter related to any Investment (other than disclosure to such Limited Partner's directors, employees, agents, advisors, or representatives responsible for matters relating to the Partnership or to any other Person approved in writing by the General Partner (each such Person being hereinafter referred to as an "***Authorized Representative***")); _provided_ that (i) such Limited Partner and its Authorized Representatives may make such disclosure to the extent that (A) the information to be disclosed is publicly available at the time of proposed disclosure by such Limited Partner or Authorized Representative, (B) the information otherwise is or becomes legally available to such Limited Partner other than through disclosure by the Partnership or the General Partner, or (C) such disclosure is required by law or in

39

response to any governmental agency request or in connection with an examination by any regulatory authorities; provided that such governmental agency, regulatory authorities or association is aware of the confidential nature of the information disclosed; (ii) such Limited Partner and its Authorized Representatives may make such disclosure to its beneficial owners to the extent required under the terms of its arrangements with such beneficial owners; and (iii) each Limited Partner will be permitted, after written notice to the General Partner, to correct any false or misleading information which becomes public concerning such Limited Partner's relationship to the Partnership or the General Partner. Prior to making any disclosure required by law, each Limited Partner shall use its best efforts to notify the General Partner of such disclosure. Prior to any disclosure to any Authorized Representative or beneficial owner, each Limited Partner shall advise such Authorized Representative or beneficial owner of the obligations set forth in this Section 7.5(a) and each such Authorized Representative or beneficial owner shall agree to be bound by such obligations.

(b)     The General Partner may keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information, including the identity of the Partners or information regarding the Partners or Investments, which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or agreement with a third party to keep confidential.

(c)     Subject to applicable legal and regulatory considerations, the General Partner shall use reasonable efforts to keep confidential any information relating to a Limited Partner obtained by the General Partner in connection with or arising out of the Partnership which the Limited Partner requests to be kept confidential.

(d)     Notwithstanding the provisions of this Section 7.5, Partners (and their employees, representatives and other agents) may disclose to any and all Persons, without limitation of any kind, the tax treatment and tax structure of the Partnership and its transactions and all materials of any kind (including tax opinions or other tax analyses) that are provided to such Person by, or on behalf of the Partnership. For this purpose, "tax treatment" is the purported or claimed U.S. federal income tax treatment of a transaction and "tax structure" is limited to any fact that may be relevant to understanding the purported or claimed U.S. federal income tax treatment of a transaction. For this purpose, the names of the Partnership, the Partners, their affiliates, the names of their partners, members or equity holders and the representatives, agents and tax advisors of any of the foregoing are not items of tax structure.

(e)     The General Partner may disclose to prospective investors such information relating to the Partnership or the Investments as it believes in good faith will benefit the Partnership and facilitate investment in the Partnership by such prospective investors.

(f)     The Investment Manager and a Person acting as a service provider to the Partnership shall have the right to access all information belonging to the Partnership.

## Article VIII
## GENERAL PROVISIONS

**8.1     Amendment of Partnership Agreement**

(a)     Except as otherwise provided in this Section 8.1, this Agreement may be amended, in whole or in part, with the written consent of (i) the General Partner and (ii) the consent of a Majority-in-Interest of Limited Partners (which approval may be obtained by negative consent affording the Limited Partners at least 30 calendar days to object).

(b)     Any amendment that would:

(i)     increase the obligation of a Partner to make any contribution to the capital of the Partnership;

(ii)     reduce the Capital Account of a Partner other than in accordance with Article III;

(iii)     adversely alter any Partner's rights with respect to the allocation of Net Profit or Net Loss or with respect to distributions and withdrawals; or

(iv)     change the respective liabilities of the General Partner and the Limited Partners;

may only be made if the consent of each Partner adversely affected thereby is obtained (which consent may be obtained by negative consent affording the Partner at least 30 calendar days to object).

(c)     Notwithstanding paragraphs (a) and (b) of this Section 8.1, this Agreement may be amended by the General Partner without the consent of the Limited Partners, at any time and without limitation, if any Limited Partner whose contractual rights as a Limited Partner would be materially and adversely changed by such amendment has an opportunity to withdraw from the Partnership as of a date determined by the General Partner that is not less than 30 calendar days after the General Partner has furnished written notice of such amendment to each affected Limited Partner and that is prior to the effective date of the amendment.   The admission and withdrawal of Limited Partners will not require notice or disclosure to, or the approval of, the other Limited Partners.

(d)     The General Partner may at any time without the consent of the other Partners:

     (i)       add to the representations, duties or obligations of the General Partner or surrender any right or power granted to the General Partner under this Agreement, for the benefit of the Limited Partners;

     (ii)      cure any ambiguity or correct or supplement any conflicting provisions of this Agreement;

     (iii)     change the name of the Partnership;

     (iv)     make any changes required by a governmental body or agency which is deemed to be for the benefit or protection of the Limited Partners, provided, however, that no such amendment may be made unless such change (A) is for the benefit of, or not adverse to, the interests of Limited Partners, (B) does not affect the right of the General Partner to manage and control the Partnership's business, (C) does not affect the allocation of profits and losses among the Partners and (D) does not affect the limited liability of the Limited Partners;

     (v)      amend this Agreement to reflect a change in the identity of the General Partner which has been made in accordance with this Agreement;

     (vi)     amend this Agreement (other than with respect to the matters set forth in Section 8.1(b)) to effect compliance with any applicable laws, regulations or administrative actions;

     (vii)    subject to Section 8.1(b), amend this Agreement to reflect the creation, and terms, of any new Series of Interests;

     (viii)   effect any other amendment which would not, in the good faith judgment of the General Partner, adversely affect any of the existing Limited Partners; and

     (ix)     restate this Agreement together with any amendments hereto which have been duly adopted in accordance herewith to incorporate such amendments in a single, integrated document.

(e)     Following the adoption of any amendments to this Agreement pursuant to 8.1(d), the General Partner shall promptly deliver a copy of such amendments to this Agreement to the Limited Partners.

(f)     The General Partner may agree with a Limited Partner to waive or modify the application of any provision of this Agreement with respect to such Limited Partner without notifying or obtaining the consent of any other Limited Partner (other than a Limited Partner whose rights as a Limited Partner pursuant to this Agreement would be materially and adversely changed by such waiver or modification). Any such waiver or modification may be evidenced by a "side letter" or other document which will govern with respect to the applicable Limited Partner and be incorporated as part of this Agreement.

**8.2** **Special Power-of-Attorney**

(a) Each Limited Partner hereby irrevocably makes, constitutes and appoints the General Partner (and each of its successors and permitted assigns), with full power of substitution, the true and lawful representative and attorney-in-fact of, and in the name, place and stead of, such Limited Partner with the power from time to time to make, execute, sign, acknowledge, swear to, verify, deliver, record, file or publish:

(i) an amendment to this Agreement that complies with the provisions of this Agreement (including the provisions of Section 8.1);

(ii) the Certificate and any amendment thereof required because this Agreement is amended, including an amendment to effectuate any change in the membership of the Partnership or in the capital contributions of the Partners;

(iii) any financing statement or other filing or document required or permitted to perfect the security interests contemplated by any provision hereof; and

(iv) all such other instruments, documents and certificates which, in the opinion of legal counsel to the Partnership, may from time to time be required by the laws of the United States of America, the State of Delaware, or any other jurisdiction in which the Partnership determines to do business, or any political subdivision or agency thereof, or which such legal counsel may deem necessary or appropriate to effectuate, implement and continue the valid and subsisting existence and business of the Partnership as a limited partnership, exchange a portion of a Limited Partner's Interest for similar equity interests in an Alternative Investment Vehicle, or to effect the dissolution or termination of the Partnership.

(b) Each Limited Partner is aware that the terms of this Agreement permit certain amendments to this Agreement to be effected and certain other actions to be taken or omitted by or with respect to the Partnership without that Limited Partner's consent. If an amendment of the Certificate or this Agreement or any action by or with respect to the Partnership is taken by the General Partner in the manner contemplated by this Agreement, each Limited Partner agrees that, notwithstanding any objection which such Limited Partner may assert with respect to such action, the General Partner in its sole discretion is authorized and empowered, with full power of substitution, to exercise the authority granted above in any manner which may be necessary or appropriate to permit such amendment to be made or action to be lawfully taken or omitted. Each Partner is fully aware that each other Partner relies on the effectiveness of this special power-of-attorney with a view to the orderly administration of the affairs of the Partnership. This power-of-attorney is a special power-of-attorney and is coupled with an interest in favor of the General Partner and as such:

(i) is irrevocable and continues in full force and effect notwithstanding the subsequent death or incapacity of any party granting this power-of-attorney,

regardless of whether the Partnership or the General Partner has had notice thereof; and

(ii)    survives the delivery of an assignment by a Limited Partner of the whole or any portion of such Limited Partner's Interest, except that where the assignee thereof has been approved by the General Partner for admission to the Partnership as a substituted Limited Partner, this power-of-attorney given by the assignor survives the delivery of such agreement for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect such substitution.

## 8.3    Notices

Notices which may be or are required to be given under this Agreement by any party to another shall be given by hand delivery, transmitted by facsimile, transmitted electronically to an address that has been previously provided or verified through another form of notice or sent by registered or certified mail, return receipt requested or internationally recognized courier service, and shall be addressed to the respective parties hereto at their addresses as set forth on the register of Partners maintained by the General Partner or to such other addresses, facsimile numbers or electronic addresses as may be designated by any party hereto by notice addressed to (a) the General Partner, in the case of notice given by any Limited Partner, and (b) each of the Limited Partners, in the case of notice given by the General Partner. Notices will be deemed to have been given (i) when delivered by hand, transmitted by facsimile or transmitted electronically or (ii) on the date indicated as the date of receipt on the return receipt when delivered by mail or courier service.

## 8.4    Agreement Binding Upon Successors and Assigns; Delegation

This Agreement is binding upon and inures to the benefit of the parties hereto and their respective successors, but the rights and obligations of the Partners hereunder are not assignable, transferable or delegable except as provided in Sections 4.1(c), 5.3 and 5.4, and any attempted assignment, transfer or delegation thereof which is not made pursuant to the terms of such Sections will be null and void *ab initio*.

## 8.5    Governing Law

This Agreement is, and the rights of the Partners hereunder are, governed by and shall be construed in accordance with the laws of the State of Delaware, without regard to the conflict of laws rule thereof which would result in the application of the laws of a different jurisdiction. The parties hereby consent to the exclusive jurisdiction and venue for any action arising out of this Agreement in the courts located in Dallas County, Texas. Each Partner consents to service of process in any action or proceeding involving the Partnership by the mailing thereof by registered or certified mail, postage prepaid, to such Partner's mailing address set forth in the register of Partners maintained by the General Partner.

**8.6     Not for Benefit of Creditors**

The provisions of this Agreement are intended only for the regulation of relations among Partners and between Partners and former or prospective Partners and the Partnership.  Except for the rights of the Indemnified Persons hereunder, this Agreement is not intended for the benefit of non-Partner creditors and no rights are granted to non-Partner creditors under this Agreement.

**8.7     Dispute Resolution**

The following procedures shall be used to resolve any controversy or claim ("***Dispute***") arising out of, relating to or in connection with the Agreement or otherwise involving the Partnership, its Partners and/or any Indemnified Person.   If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

(a)     <u>Mediation</u>

(i)     Any Dispute shall be submitted to mediation by written notice to the other party or parties.  In the mediation process, the parties will try to resolve their differences voluntarily with the aid of an impartial mediator, who will attempt to facilitate negotiations.   The mediator will be selected by agreement of the parties.  If the parties cannot agree on a mediator, a mediator shall be designated by JAMS/Endispute at the request of a party using, if necessary, strike and rank procedures then in effect.

(ii)     The mediation will be conducted as specified by the mediator and agreed upon by the parties.   The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the dispute.

(iii)     The mediation will be treated as a settlement discussion and therefore will be confidential.   The mediator may not testify for either party in any later proceeding relating to the dispute.   No recording or transcript shall be made of the mediation proceedings.

(iv)     Each party will bear its own costs in the mediation.   The fees and expenses of the mediator will be shared equally by the parties.

(b)     <u>Arbitration</u>

(i)     If a Dispute has not been resolved within 90 days after the written notice beginning the mediation process (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute will be settled by arbitration.   A party who files a suit in court regarding a Dispute rather than in arbitration waives its claim and must pay all attorney's fees and costs incurred by the other party in seeking to have such suit dismissed. Under no circumstances will a party maintain its right to pursue his/her/its Dispute if that party initiates a judicial suit instead of complying with the

45

mediation and arbitration provisions herein. The arbitration will be conducted through JAMS/Endispute in accordance with the procedures in this document and the commercial dispute arbitration rules then in effect ("*Arbitration Rules*"). In the event of a conflict, the provisions of this document will control.

(ii)     The arbitration will be conducted before a panel of three arbitrators, regardless of the size of the dispute, to be selected as provided in the Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the U.S. Federal Arbitration Act ("*FAA*"), and resolved by the arbitrators, *provided, however*, that the Partnership or such applicable affiliate thereof may pursue a temporary restraining order and/or preliminary injunctive relief in connection with confidentiality, non-competition, non-solicitation or non-recruitment covenants or agreements binding on any party, with related expedited discovery for the parties, in a court of law, and, thereafter, require arbitration of all issues of final relief. Under no circumstances will a state arbitration act preclude application of the FAA, including any choice of law provisions in this Agreement, or any other agreement. No potential arbitrator may serve on the panel unless he or she has agreed in writing to abide and be bound by these procedures.

(iii)    The arbitrators may not award non-monetary or equitable relief of any sort. They shall have no power to award punitive damages or any other damages not measured by the prevailing party's actual damages, and the parties expressly waive their right to obtain such damages in arbitration or any in other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitrators have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction. The arbitrator(s) shall be required to state in a written opinion all facts and conclusions of law relied upon to support any decision rendered. Any dispute over whether the arbitrator(s) has failed to comply with the foregoing will be resolved by summary judgment in a court of law.

(iv)     The party initiating arbitration shall pay all arbitration costs and arbitrator's fees, subject to a final arbitration award on who should bear costs and fees. All proceedings shall be conducted in Dallas, Texas, or another mutually agreeable site. Each party shall bear its own attorneys fees, costs and expenses, including any costs of experts, witnesses and/or travel, subject to a final arbitration award on who should bear costs and fees. The duty to arbitrate described above shall survive the termination of this Agreement.

(v)      No discovery will be allowed in connection with the arbitration unless the arbitration panel, upon a showing of substantial need, expressly authorizes

it. In any event, there shall be no more than (a) two party depositions of six hours each. Each deposition is to be taken pursuant to the Texas Rules of Civil Procedure; (b) one non-party deposition of six hours; (c) twenty-five interrogatories; (d) twenty-five requests for admission; (e) ten requests for production. In response, the producing party shall not be obligated to produce in excess of 5,000 total pages of documents. The total pages of documents shall include electronic documents; and (f) one request for disclosure pursuant to the Texas Rules of Civil Procedure. Any discovery not specifically provided for in this paragraph, whether to parties or non-parties, shall not be permitted.

(vi) All aspects of the arbitration shall be treated as confidential, including its institution and/or settlement. Neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests. In the event a party who recovered monies by settlement, award by the arbitration panel, or otherwise in connection with the Dispute violates this confidentiality term, he, she, or it shall refund all such sums recovered. The parties expressly intend to waive the right to retain any monies received through settlement, award by the arbitration panel, or otherwise in connection with the Dispute in the event that that party violates the aforementioned confidentiality term.

(vii) The result of the arbitration will be binding on the parties, and judgment on the arbitrators' award may be entered in any court having jurisdiction.

**8.8    Consents and Voting**

(a) Except as provided in Section 5.4, Limited Partners do not have any right to vote for the admission or removal of any General Partner and, except for the right to vote on certain amendments proposed by the General Partner and as otherwise expressly set out herein, have no other voting rights. Upon the request of any Limited Partner, the General Partner may designate an Interest as a Non-Voting Interest, in which case the Limited Partner shall not have the right to vote on any matter including amendments.

(b) Any and all consents, agreements or approvals provided for or permitted by this Agreement shall be in writing and a copy thereof shall be filed and kept with the books of the Partnership. For the avoidance of doubt, an amendment made pursuant to Section 8.1(c) or pursuant to negative consent under Section 8.1(a) or Section 8.1(b) shall not require any affirmative written response by any Limited Partner who is not electing to withdraw from the Partnership.

(c) In the event the Partnership seeks the approval, vote or consent of the Offshore Fund with respect to any matter to which it would be entitled to vote as a Limited

47

Partner of the Partnership under this Agreement, the Offshore Fund will: (i) submit such matter for the consent of the shareholders and (ii) shall vote its Limited Partner interest proportionally for and against such matter in the same proportion that the shareholders voted for and against such matter.

**8.9   Merger and Consolidation**

(a)    The Partnership may merge or consolidate with or into one or more limited partnerships formed under the Act or other business entities pursuant to an agreement of merger or consolidation which has been approved in the manner contemplated by Section 17-211(b) of the Act.

(b)    Notwithstanding anything to the contrary contained elsewhere in this Agreement, an agreement of merger or consolidation approved in accordance with Section 17-211(b) of the Act may, to the extent permitted by Section 17-211(g) of the Act, (i) effect any amendment to this Agreement, (ii) effect the adoption of a new limited partnership agreement for the Partnership if it is the surviving or resulting limited partnership in the merger or consolidation, or (iii) provide that the limited partnership agreement of any other constituent partnership to the merger or consolidation (including a limited partnership formed for the purpose of consummating the merger or consolidation) shall be the limited partnership agreement of the surviving or resulting limited partnership.

**8.10   Miscellaneous**

(a)    The captions and titles preceding the text of each Section hereof shall be disregarded in the construction of this Agreement.   Use of the word "including" in this Agreement means in each case "without limitation," whether or not such term is explicitly stated.

(b)    This Agreement may be executed in counterparts, each of which shall be deemed to be an original hereof.

(c)    If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement shall remain in full force and effect.   Any provision of this Agreement held invalid or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable.

**8.11   BHCA Subject Persons**

Notwithstanding any other provision of this Agreement to the contrary:

(a)    Solely for purposes of any provision of this Agreement that confers voting rights on the Limited Partners and any other provisions hereof regarding consents of or action by the Limited Partners, any BHCA Subject Person that shall have given the General Partner an Election Notice and shall not thereafter have given the General Partner a Revocation Notice, and that at any time has a Partnership Percentage in

48

excess of 4.9% of the aggregate Partnership Percentages of the Limited Partners entitled to participate in such voting or the giving of any consent or the taking of any action, shall be deemed to hold a Partnership Percentage of only 4.9% of the aggregate Partnership Percentages of the Limited Partners (after giving effect to the limitations imposed by this Section 8.11 on all such Limited Partners), and such Partnership Percentage in excess of said 4.9% shall be deemed held by the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages; provided that this limitation shall not prohibit a Limited Partner from voting or participating in giving or withholding consent or taking any action under any provision of this Agreement up to the full amount of its Partnership Percentage in situations where such Limited Partner's vote or consent or action is of the type customarily provided by statute or stock exchange rules with regard to matters that would significantly and adversely affect the rights or preference of the Limited Partner's Interest.  The foregoing voting restriction shall continue to apply with respect to any assignee or other transferee of such BHCA Subject Person's Interest; provided, however, that the foregoing voting restriction shall not continue to apply if the Interest is transferred: (i) to the Partnership; (ii) to the public in an offering registered under the Securities Act; (iii) in a transaction pursuant to Rule 144 or Rule 144A under the Securities Act in which no Person acquires more than 2% of the Partnership's outstanding Interests; or (iv) in a single transaction to a third party who acquires at least a majority of the Partnership's outstanding Interests without regard to the Transfer of such Interests.

(b)     Except as specifically provided otherwise in this Agreement, a Limited Partner that is a BHCA Subject Person that shall have given the General Partner an Election Notice, and shall not thereafter have given the General Partner a Revocation Notice, shall not be entitled to exercise any rights to consent to actions to be taken with respect to the Partnership, including rights conferred by any applicable law.  Such right to consent shall be deemed granted to the Limited Partners who are not BHCA Subject Persons, *pro rata* in proportion to their respective Partnership Percentages.

(c)     A Limited Partner that is a BHCA Subject Person and that elects to be subject to Section 8.11(a) and (b) shall notify the General Partner thereof (an "***Election Notice***") and, on the General Partner's receipt of such Election Notice, such Limited Partner shall be subject to Section 8.11(a) and (b) until 10 calendar days after such Limited Partner notifies the General Partner that it elects no longer to be subject to Section 8.11(a) and (b) (a "***Revocation Notice***"), which period may be reduced by the General Partner.

## 8.12   RIC Limited Partners

An Interest of a RIC Limited Partner does not entitle the RIC Limited Partner to vote or consent with respect to any Partnership matter unless the RIC Limited Partner's vote or consent with respect to its Interest would not be considered to be "voting securities" as defined under Section 2(a)(42) of the Investment Company Act.  Except as provided in this Section 8.12, an Interest held by a RIC Limited Partner as a Non-Voting Interest is identical in all regards to all other Interests held by Limited Partners.

### 8.13 Bad Actor Limited Partners

Under Rule 506(d) under the Securities Act, the Partnership may be banned from selling Interests under Rule 506 if a Limited Partner beneficially owning 20% or more of the Partnership's voting securities engages in a "bad act" set forth in Rule 506. Accordingly, each Limited Partner agrees that the General Partner may deem the portion of any Bad Actor Limited Partner's Interests to be, or convert any Bad Actor Limited Partner's Interests into, Non-Voting Interests (except for the purposes of voting on any amendment to this Agreement that would materially and adversely change the Bad Actor Limited Partner's rights and preferences as a Limited Partner other than pursuant to an amendment under Section 8.1(c)) to the extent that the General Partner determines that such portion is in excess of 19.99% of the outstanding aggregate voting Interests of all Partners excluding any Interests that are Non-Voting Interests.

### 8.14 Entire Agreement

The parties acknowledge and agree that, this Agreement, together with any other agreement with a Limited Partner pursuant to Section 8.1(e), constitutes the entire agreement among the parties hereto pertaining to the subject matter hereof and supersedes all prior agreements and understandings pertaining thereto.

[Signature Page Follows]

The parties hereto have executed this Agreement as of the day and year first above written.

**GENERAL PARTNER:**

HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P.

By:   HIGHLAND MUTI STRATEGY CREDIT GP, LLC
     its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
     its sole member

By:   STRAND ADVISORS, INC.
     its general partner

By: _____

Name: __James Dondero_____

Title: __President_____

**LIMITED PARTNERS:**

By:   HIGHLAND MULTI STRATEGY CREDIT FUND GP, L.P
     attorney-in-fact for the Limited Partners

By:   HIGHLAND MULTI STRATEGY CREDIT GP, LLC
     its general partner

By:   HIGHLAND CAPITAL MANAGEMENT, L.P.
     its sole member

By:   STRAND ADVISORS, INC.
     its general partner

By: _____

Name: __James Dondero_____

Title: __President_____

*Signature Page to the Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P.*