# **EXHIBIT 18**

[1992–93 CILR 372]

## CAYMAN HOTEL AND GOLF INCORPORATED v. RESORT GEMS LIMITED

GRAND COURT (Smellie, Ag. J.): July 6th, 1993

Civil Procedure—joinder of parties—party who "ought to have been joined"—Grand Court (Civil Procedure) Rules, r.26 permits joinder of defendant who ought to have been joined at commencement of proceedings only if established link between original cause of action and that against party to be joined—joinder not permitted for purpose of expanding original cause, e.g. to join party not privy to contract forming subject of original cause

Civil Procedure—pleading—amendment—application to amend under Rules of Supreme Court, O.20, r.5 to be decided on merits and effect on action against original defendant—normally allowed unless applicant causing injury for which no compensation or acting mala fide—inconsistent, useless or futile claims or those constituting new cause of action not permitted

Landlord and Tenant—characteristics of relationship—exclusivity—if landlord/tenant relationship and remedy for breach comprehensively covered by lease agreement, court will not impose equitable or agency relationship—court will also not impose duties not strictly and necessarily incidental to relationship expressly created by parties

Landlord and Tenant—breach of covenant—forfeiture—notice—Registered Land Law (Revised), s.56 requirements for notice before forfeiture applicable only if breach capable of remedy

The plaintiff sought leave to amend its writ and statement of claim in an action against the defendant for breach of a lease.

The plaintiff leased premises to the defendant for the operation of its jewellery retail business. The form of lease was based on a Canadian model and provided for the payment of an annual basic rent and an annual percentage rent based on sales. The lease contained extensive provisions dealing with the defendant's obligations to report and account to the plaintiff and specified the relief available in the event of breach of those provisions.

The defendant failed to keep full and faithful records and refused to comply with the directions of an independent auditor engaged by the plaintiff to obtain a reconstruction or compilation of those records. The plaintiff also obtained evidence of at least one sale of a valuable item which had not been recorded. The plaintiff claimed forfeiture of the lease and gave notice

---

1992–93 CILR 373

to that effect. It brought proceedings for recovery of possession and for rent claiming that the defendant had repudiated the lease.

The plaintiff subsequently sought leave to amend its writ and statement of claim (a) to add four more defendants who it alleged conspired with and facilitated or assisted the defendant in its falsification of accounts and disclosures; (b) to plead claims against those defendants; and (c) to effect substantial amendments of the pleadings against the primary defendant to include *inter alia* a claim for an account from the defendant to ascertain the amount owed to it, a claim for a declaration that the lease was duly forfeited and a claim in the alternative for damages for breach of the covenant to pay rent.

The plaintiff submitted that (a) the joinder of the additional defendants was permitted under r.26 of the Grand Court (Civil Procedure) Rules because the proper test was whether they could have been joined in some way at the time the original action was brought irrespective of whether they could have been joined in the action as it was actually brought. Accordingly, though the original action sought recovery of possession and mesne profits from the defendant, it could have instituted proceedings in damages at the same time against the other parties for having procured and conspired with the defendant to breach the lease; (b) the justification for giving leave to amend to include a claim for an account from the defendant consisted in the fiduciary relationship of principal and agent which should be implied as existing between it and the defendant having regard to the lease agreement which demanded a duty of trust from the defendant as tenant; further, an action for an account was an established remedy available to a principal against his agent in lieu of damages; (d) it was entitled to forfeit the lease on the basis that the breach was incapable of being remedied; and (e) it was entitled to make an alternative claim for damages for breach of the covenant to pay rent.

The defendant submitted in reply that (a) the joinder of the proposed defendants under r.26 was not permissible as they were not party to any contract with the plaintiff; (b) the court had no jurisdiction to permit the plaintiff to amend its writ and statement of claim to include new causes of action or inconsistent or useless amendments; (c) no fiduciary relationship existed between itself and the plaintiff; theirs was strictly a relationship of landlord and tenant to be governed by the clearly express terms of the lease; and (d) the plaintiff's application should be

dismissed in its entirety for the most important reason that the cause of action was bound to fail, for though it might have breached the lease, that breach was not irremediable. Accordingly, by virtue of s.56 of the Registered Land Law (Revised) it was entitled to notice requiring it to remedy the breach. As there had been no such proper notice nor any proper demand to remedy, the forfeiture was wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, the lease was still intact despite the plaintiff's claim to forfeiture.

**Held,** granting the application in part:

(1) The Grand Court (Civil Procedure) Rules, r.26 provided for the

---

1992–93 CILR 374

joinder of defendants who ought to have been joined at the commencement of the proceedings where there was an established link between the original cause and the cause against those to be joined. It did not permit joinder for the purpose of expanding the original cause of action. Since the original action between the plaintiff and the defendant was based on the lease agreement between them as landlord and tenant and the plaintiff's claim to recovery of possession and mesne profits arising from the defendant's breach, there could have been no other parties to the action as instituted because privity of contract existed only between those two (page 381, lines 13–15; lines 21–28; page 383, line 37 – page 384, line 9).

(2) In general, a plaintiff's application to amend pleadings to vary or add claims was to be decided on the merits to the extent that they might affect the action brought against the original defendant. The applicable principles were embodied in the Rules of the Supreme Court, O.20, r.5, by which amendments should normally be allowed unless it was apparent that the plaintiff applicant was acting *mala fide* or that by his omission or by the amendment he had done or would cause injury to his opponent which could not be compensated for by costs or otherwise; a plaintiff would not be permitted to raise entirely new claims amounting to a new cause of action or those that were inconsistent or useless or which sought to support a case that was bound to fail (page 385, line 27 – page 386, line 26).

(3) The court should not search for liability in tort or in equity where the parties were in a contractual relationship and this was particularly so in commercial relationships. More specifically it should not impose duties which were not strictly and necessarily incidental to that relationship. Since the lease agreement between the parties was a commercial transaction and it specified expressly and comprehensively their intentions with regard to the defendant's duties as well as an appropriate remedy for breach of the agreement, the court would not invoke the rules of equity so as to impose a relationship where there was no true need for the special protection that equity afforded. Similarly, no relationship of principal and agent could be found in what was strictly a landlord and tenant relationship. Furthermore, the proposition that the court should impose a fiduciary duty on the defendant because of the self-dealing manner in which he had breached the agreement was not acceptable since the equitable rules about self-dealing were based on a pre-existing fiduciary duty. Accordingly, no separate fiduciary duty on the defendant to account was to be implied from their relationship and the plaintiff's application to amend the pleadings on this basis would therefore be refused (page 387, lines 12–30; page 388, line 28 – page 389, line 36).

(4) The plaintiff had satisfied the court that it had a good, arguable case for forfeiture on the merits since even though it had omitted to address the question of whether the defendant's breach could be

---

1992–93 CILR 375

remedied, it was at least objectively arguable that it should be entitled to treat the circumstances existing at the time it purported to forfeit the case as irremediable because (a) the defendant's falsifications were deliberate; (b) its failure to assist the independent auditor betrayed an intention to continue its dissemblance; and (c) the continued performance of the lease depended on the good faith and willingness of the defendant, not only to remedy the breach but also to keep faithful accounts and make full and frank disclosure of sales and income. Although s.56 of the Registered Land Law (Revised) and its requirements for proper notice superseded any provisions in the lease to the contrary, the section would apply only if it were to be determined on the facts that the breaches were capable of remedy. Since the plaintiff's contention was that the breach was irremediable and repudiatory and entitled him to repudiate the lease without notice, it should be allowed to present that claim for determination on its merits. Given the interlocutory nature of these proceedings, the plaintiff needed to show no more than that it had a good, arguable case in this respect. Accordingly, the leave to amend would be granted to

include the claim for a declaration that the lease had been duly forfeited (page 390, lines 3–10; page 390, line 21 – page 392, line 20; page 392, lines 33–41).

   (5) Leave would also be granted to include a claim in the alternative for damages for breach of the covenant to pay rent. This was sustainable in light of the evidence of at least one instance in which the defendant had failed to declare the sale of a valuable item which would have generated income to be assessed for percentage rent (page 393, lines 14–19).

Cases cited:

   (1)   *Baker (G.L.) Ltd.* v. *Medway Building & Supplies Ltd.*, [1958] 1 W.L.R. 1216; [1958] 3 All E.R. 540, observations of Jenkins, L.J. applied.

   (2)   *Bank of Nova Scotia* v. *Becker*, 1988–89 CILR 12, applied.

   (3)   *Cayman Arms (1982) Ltd.* v. *English Shoppe Ltd.*, 1988–89 CILR 383; on appeal, Cause No. 16 of 1989, September 20th, 1989, unreported.

   (4)   *Clarapede* v. *Commercial Union Assn.* (1883), 32 W.R. 262, observations of Brett, M.R. applied.

   (5)   *Executive Air Servs. Ltd.* v. *MacDonald*, 1990–91 CILR N–4.

   (6)   *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate House Ltd.*, [1986] Ch. 340; [1985] 2 All E.R. 998, *dicta* of Slade, L.J. applied.

   (7)   *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.*, 1990–91 CILR 163.

   (8)   *Jones v. Hughes*, [1905] 1 Ch. 180, observations of Vaughan Williams, L.J. applied.

   (9)   *Ketteman* v. *Hansel Properties Ltd*, [1987] A.C. 189; [1988] 1 All E.R. 38, observations of Lord Griffiths applied.

   (10)   *Kurtz* v. *Spence* (1887), 36 Ch. D. 770.

   (11)   *Lac Minerals Ltd.* v. *International Corona Resources Ltd.*, [1989] 2 R.C.S. 574, applied.

   (12)   *Molnlycke AB* v. *Procter & Gamble Ltd.*, [1992] 1 W.L.R. 1112; [1992] 4 All E.R. 47, distinguished.

---

1992–93 CILR 376

   (13)   *Norwich Pharmacal Co.* v. *Customs & Excise Commrs.*, [1974] A.C. 133; [1973] 2 All E.R. 943.

   (14)   *Paradise Manor Ltd.* v. *Bank of Nova Scotia*, 1984–85 CILR 437, considered.

   (15)   *Raleigh* v. *Goschen*, [1898] 1 Ch. 73.

   (16)   *Salomon* v. *A. Salomon & Co. Ltd.*, [1897] A.C. 22; [1895–99] All E.R. Rep. 33, considered.

   (17)   *Tai Hing Cotton Mill Ltd.* v. *Liu Chong Hing Bank Ltd.*, [1986] A.C. 519; [1985] 2 All E.R. 947; [1985] 2 Lloyd's Rep. 313, followed.

   (18)   *Tildesley* v. *Harper* (1878), 10 Ch. D. 393, observations of Bramwell, L.J. applied.

   (19)   *Tito* v. *Waddell (No.2)*, [1977] Ch. 106; [1977] 3 All E.R. 129, *dicta* of Megarry, V.-C. applied.

**Legislation construed:**

Grand Court (Civil Procedure) Rules, r.25: The relevant terms of this rule are set out at page 380, lines 29–34.

r.26: The relevant terms of this rule are set out at page 380, line 35 – page 381, line 9.

Registered Land Law (Revised) (Law 21 of 1971, revised 1976), s.37(1): The relevant terms of this section are set out at page 392, lines 25–27.

s.55(1):

   "Subject to the provisions of section 57 and to any provision to the contrary in the lease, the lessor shall have the right to forfeit the lease if the lessee—

   (a)   commits any breach of, or omits to perform any agreement or condition on his part expressed or implied in the lease. . . ."

s.56:

   "Notwithstanding anything to the contrary contained in the lease, no lessor shall be entitled to exercise the right of forfeiture for the breach of any agreement or condition in the lease whether expressed or implied, until the lessor has served on the lessee a notice—

   (a)   specifying the particular breach complained of; and

   (b)   if the breach is capable of remedy, requiring the lessee to remedy the breach within such reasonable period as is specified in the notice; and

   (c)   in any case other than non-payment of rent, requiring the lessee to make compensation in money for the breach,

and the lessee has failed to remedy the breach within a reasonable time thereafter, if it is capable of remedy, and to make reasonable compensation in money."

Rules of the Supreme Court, O.20, r.5:

"Subject to Order 15, rules 6, 7 and 8 and the following provisions of this rule, the Court may at any stage of the proceedings allow the plaintiff to amend his writ, or any party to

---

1992–93 CILR 377

amend his pleading, on such terms as to costs or otherwise as may be just and in such manner (if any) as it may direct."

*M. Parkinson* for the plaintiff;
*P. Lamontagne, Q.C.* and *P. Boni* for the defendant.

**SMELLIE, Ag. J.:** By summons dated March 1st, 1993 the landlord/plaintiff sought leave to re-amend its writ and statement of claim in this matter to achieve three main objectives. The first was to add parties—the proposed second to fifth defendants. The second was to plead claims against those additional defendants and the third, to effect consequential amendments of the pleadings against the original defendant. Submissions were taken on March 31st, April 1st and April 5th and an order made on April 16th, 1993 with written reasons to be delivered at a later date. These are the reasons.

The original parties stand in the position of landlord and tenant by virtue of a lease dated August 16th, 1990. In the action the plaintiff's case is that the tenant/defendant has falsified records of accounts and disclosures required to be respectively kept and made by the defendant pursuant to the lease and that the defendant has falsified those records in order to deprive the plaintiff of rents lawfully due under the lease. The proposed additional defendants are parties who, the plaintiff alleges, conspired with and actually facilitated or assisted the defendant in its falsification of the accounts and disclosures.

The lease is not typical of the forms in use in this jurisdiction and I am informed by counsel that it follows a Canadian model. It is unusual in that, among other things, it includes a provision for "annual percentage rent" as well as a provision for "basic rent." Central to the dispute is the issue whether the defendant has made full and frank disclosure as to its income from sales as the basis for arriving at the annual percentage rent.

Article III of the lease contains the following provisions:

"3.01 *Basic rent*

The tenant shall pay to the landlord in each lease year $45,000 *per* annum (in this lease referred to as 'basic rent') by equal monthly instalments in advance, commencing upon the commencement date and on the first day of each calendar month thereafter during the term (provided that if the term commences on a day which is not the first day of a calendar

month, then the instalment of basic rent payable on the

1992–93 CILR 378

commencement date for the broken portion of the calendar
month at the beginning of the term shall be calculated at a
rate per day of 1/365 of the annual basic rent).

3.02 *Percentage rent*

5      The tenant shall pay to the landlord in each lease year
during the term the annual percentage rent for such lease
year. Such annual percentage rent shall be payable in
monthly instalments of estimated monthly percentage rent
which shall be payable 20 days after the close of each

10     calendar month in each and every lease year (including any
portion of a calendar month at the commencement of the
term if the term commences on a day other than the first day
of a calendar month) *the amount of such estimated monthly
percentage rent to be calculated by the tenant and accom*

15     *panied by a statement certified as correct by the tenant
showing in such detail as the landlord shall reasonably
require, the amount of gross revenue for such calendar month
and the amount of estimated monthly percentage rent payable.*

3.03 *Adjustment of annual percentage rent*

20     Within 120 days after the end of each lease year *the tenant
shall deliver to the landlord a statement in writing and certified
by the tenant, and which shall also be certified as being
audited by an independent chartered accountant acceptable to
the landlord, setting forth accurately and with reasonable*

25     *detail and particulars and in such form as the landlord may
require the gross revenue both monthly and in the aggregate,
for such lease year and its annual percentage rent payable for
such lease year.* If the aggregate annual percentage rent set
forth in such statement differs from the annual percentage

30     rent set forth in such statement, the tenant shall pay or the
landlord shall refund the difference within 30 days after such
statement is provided." [Emphasis supplied.]

In the definitions in Article I, the following appears:

" 'Annual percentage rent' means 6% of gross revenue

35     plus 1.5% of extraordinary off premises revenue (derived
from sales by the tenant of stock kept on the leased premises
or sold off-premises having been placed for display on the
leased premises) minus the basic rent. Annual percentage
rent shall only be payable in the event such calculation from

40     time to time produces a net positive figure."

By virtue of those provisions the plaintiff claims that special

1992–93 CILR 379

duties and responsibilities are created and are owed to him by the defendant and that they give rise to an implied relationship of trust which is not to be found in an ordinary lease where liabilities for rent are essentially stipulated as a pre-determined sum. Here

5 the plaintiff argues that the lease contains covenants that the tenant must keep proper accounts of its income in order to ensure that the proper amounts of annual percentage rent are known and payable to the plaintiff.

A most important issue centered on this argument. It is

10 whether this implied relationship of trust is so germane to the landlord/tenant relationship in this lease that the manner in which it was dishonoured by the tenant gave rise to an irremediable breach of the lease. If so the consequence would be that the plaintiff should be entitled to claim that the lease has been duly

15 forfeited and in the manner which the plaintiff has purported to do so in a letter and notice which it sent to the defendant dated November 17th, 1992.

The plaintiff having raised these allegations of breach of contract and breach of faith, the court was invited by counsel for

20 the defendant to reject any suggestion of fraudulent conduct on the part of the defendant as fraud had not been specifically pleaded at the outset. Instead, and without any admission on the part of his client, counsel for the defendant invited the court to make the following assumptions for the purposes of the hearing

25 of this summons that (a) there is no dispute as to the tenant's contractual obligations to pay basic rent and annual percentage rent, although the amount owed may be disputed; (b) there is no dispute that the tenant is in breach of the lease in not having kept full and faithful records as required by Articles 3:03, 3:04 and

30 3:05 of the lease; (c) despite efforts on the part of the landlord to obtain a reconstruction or compilation of the records of the revenue of the defendant, through an independent auditor engaged for the purpose by the landlord, the tenant had failed to comply with the directions of the auditor to provide names and

35 addresses of customers from whom verification of sales transactions might be obtained, and that such verification was essential to that exercise of reconstruction or compilation of the records; and (d) in at least one instance a certain named customer had purchased an expensive item of jewellery from the tenants' on-

40 premises shop and that the tenant had failed to declare that item of revenue for the purposes of the accounting records.

Despite those assumptions which I was invited to make, counsel for the defendant submitted ultimately that the plaintiff's application on his summons should be dismissed in its entirety for the most important reason that the cause of action was bound to

5    fail. This submission was based on the position taken by the defendant that though it may have breached the lease, those breaches were not irremediable; it was entitled to notice requiring it to remedy them; and as there was no such proper notice nor any proper demand to remedy, the forfeiture was

10   wrong in law and the cause of action based on it, for recovery of possession, rent and, latterly, damages, could not succeed. Further, that the lease was still intact despite the landlord's claim to forfeiture. The landlord's claim was therefore bound to fail.

     For the reasons which will follow, I was unable to accept the

15   defendant's submissions that the plaintiff will inevitably fail to establish that it was entitled to forfeit the lease. Although that is the central issue underlying the action as it stands between the plaintiff and the defendant, the plaintiff sought leave by its summons to do a number of things, some of which were allowed

20   by my order of April 16th and others disallowed. I will proceed to set out my reasons for the order in respect of each issue separately.

     (A) *Application for leave to re-amend to join the proposed second,*

25   *third, fourth and fifth defendants. Leave refused.*

     For the purposes of joinder of defendants to an existing cause of action, rr. 25 and 26 of the Grand Court (Civil Procedure) Rules are applicable. The text of the rules is as follows:

     "25. All persons may be joined as defendants against

30   whom the right of any relief is alleged to exist, whether jointly, severally or in the alternative, and any judgment may be given against such one or more of the defendants as may be found to be liable, according to their respective liabilities, without any amendment.

35   26. No cause or matter shall be defeated by reason of the misjoinder or nonjoinder of parties and the Court may in every cause or matter deal with the matter in controversy so far as regards the rights and interests of the parties actually before it. The Court may, at any stage of the proceedings,

40   either upon or without the application of any party and upon such terms as may seem just, order the names of any parties

improperly joined, whether as plaintiffs or defendants, to be
struck out and the names of any parties added who *ought to
have been joined*, whether as plaintiffs or defendants, or
*whose presence before the Court may be necessary to enable*
5      *the Court effectually and completely to adjudicate upon and
settle all the questions* involved in the cause or matter:
   Provided that no person shall be added as a plaintiff, or as
the next friend of a plaintiff under a disability, without his
own consent in writing thereto." [Emphasis supplied.]

10     Rule 25 deals with the joinder of defendants in a single action.
Rule 26 addresses the principles and circumstances which
determine the joinder of a party to proceedings already insti-
tuted. As to joinder of plaintiffs or defendants, r.26 provides for
the addition of two categories of persons: (a) those who ought to
15     have been joined at the commencement of the proceedings, and
(b) those whose presence may be necessary to enable the court
effectually and completely to adjudicate upon and settle all the
questions involved in the cause or matter. Mr. Parkinson sought
the joinder of the additional defendants on the basis that they
20     came within the first category of persons.
   The original action is between the landlord and tenant based on
the lease agreement between them. The claim at the time that
action was brought was against the tenant for recovery of
possession, for rent and for mesne profits and arose from the
25     tenant's alleged repudiation of the lease. Privity of contract
existed only between those parties and in the cause of action as it
was thus framed, there could have been no other parties to the
action as originally instituted. Notwithstanding those circum-
stances Mr. Parkinson submitted that amendments ought to be
30     allowed to add the proposed second to fifth defendants because
the proper test is whether they could have been joined as
defendants in some way, *at the time* the original action was
brought, irrespective of whether they could have been joined as
defendants in the action *as it was actually brought.*
35     The plaintiff's claim against the proposed second to fifth
defendants was, *inter alia*, for damages for having procured and
conspired with the defendant to breach the lease. As such a
claim
could have been brought originally and *at the same time* as the
original action, Mr. Parkinson submitted the requirements of
40     rr. 25 and 26 were met, notwithstanding that the rules of privity
of contract would have precluded joinder of the proposed

defendants in the action as originally framed. He relied primarily
on the judgment of the Court of Appeal in *Executive Air Servs.
Ltd.* v. *MacDonald* (5).

   In that case the Court of Appeal upheld the decision of this
5    court in allowing amendments to join a party as a joint tortfeasor
in a statement of claim which originally raised allegations of
tortious conduct as well as of breach of contract. In so doing it is
significant that the court disallowed amendments seeking to join
the same party as defendant to the claim based on allegations of
10   breach of contract. In that case it was urged that the additional
defendant was someone who fell within the first of the two
categories of persons covered by r.26 of those who ought to have
been joined at the commencement of the proceedings. From my
reading of that case it appears clear that the court regarded the
15   additional defendant as a party who "ought to have been joined"
in the original action as framed in tort and within the meaning of
that expression as it appears within r.26. It follows that the Court
of Appeal disallowed the further pleadings as the additional
defendant was not a party who ought to have been joined in the
20   contractual claim as originally pleaded; as such an amendment
would have been contrary to the principles of privity of contract,
the additional defendant not having been a party to the contract
and therefore against the principles established by *Salomon* v. *A.
Salomon & Co. Ltd.* (16). I therefore did not think the case
25   supported Mr. Parkinson's position.

   Although rr. 25 and 26 may be outmoded, they still apply and I
consider that the applicable principles were settled by the Court
of Appeal in the earlier case of *Bank of Nova Scotia* v. *Becker* (2)
which was cited in argument by Mr. Lamontagne on behalf of
the
30   proposed defendants.

   In that case, the applicant and third defendant, a company in
liquidation which had been joined as a party in the suit between
the plaintiff bank and the other defendants, applied for an order
to join its own receivers as parties. The company had been
35   granted a loan by the plaintiff bank for which collateral had been
provided by the other defendants. It had defaulted in payment
and the bank had appointed receivers who took possession of the
company's property. In an action by the bank against the other
defendants as guarantors, the company was itself made a
40   co-defendant upon the successful application of one of the other
defendants. It was joined for the purpose of setting off any

1992–93 CILR 383

damages it might recover for the wrongful acts of the receivers
(whom it alleged to be agents or servants of the bank) against
any
relief granted to the bank in relation to it as principal debtor and
the other defendants as guarantors.

5    The company then sought to counterclaim against the bank
alleging that the receivers, as the bank's agents or servants, had
trespassed upon the company's land, wrongfully taken
possession
of it and wrongfully converted the company's chattels. The
company also applied for leave to join the receivers as added

10   parties in the counterclaim contending that (a) as it was entitled
to damages from the bank or the receivers or both, the receivers
were, under the Grand Court (Civil Procedure) Rules, r.26
"necessary parties to the proceedings"; and (b) in any event,
since by virtue of r.25 it could have initiated proceedings against

15   the bank and joined the receivers as co-defendants, it was "only
just and convenient" that it should be able to counterclaim
against them both at the same time.

   The Court of Appeal, in refusing to order the joinder of the
receiver, held (a) the court was obliged to have regard to the

20   terms of the Grand Court (Civil Procedure) Rules and was only
entitled to consider whether joinder was "just and convenient" as
an aspect of the application of those rules. It was not entitled to
use the "just and convenient" principles to give itself an
unfettered discretion to order joinder; (b) as the bank had

25   originally made no claim against the receivers they could not be
added as defendants in the bank's writ against the guarantors.
Consequently, so far as that action was concerned, the receivers
could not qualify as persons who "ought to have been joined" at
the beginning of the proceedings. Nor did they so qualify when

30   the company was introduced into the proceedings as an added
party and counterclaimed against the bank. The application had
therefore failed the first criterion for joinder in r.26; and (c) nor
did the receivers qualify under the second criterion as parties
"whose presence before the court may be necessary to enable the

35   court effectually and completely to adjudicate upon the issue
involved within the meaning of r.26. . . ."

   From the second head of the *ratio decidendi* of the case as
extracted above from the report and from the judgment itself, it
seems to me that parties can only be joined pursuant to r.26 as

40   persons "who ought to have been joined" if that nexus is
established with the action as originally commenced. It is

impermissible to join parties for the purpose of expanding the
original cause of action.

In the case before me, there was no privity of contract between
the proposed additional defendants and the plaintiff. The action
5   based on the lease for recovery of possession and mesne profits as
commenced could have joined no other parties. It rested entirely
between the plaintiff as landlord and the defendant as tenant. For
those reasons I was unable to allow the joinder of the proposed
second to fifth defendants.

10   I should also mention in passing that Mr. Parkinson also placed
great reliance on the case of *Molnlycke AB* v. *Procter & Gamble
Ltd.* (12) as authority for two propositions. The first was that
other members of a corporate group besides the defendant (as
were the proposed second and third defendants in relation to the
15   defendant herein) may be brought in as defendants in the same
action if they are in some way shown to have facilitated the
conspiracy whereby the original defendant was able to commit
the wrongdoing complained of and that is so whether or not the
others are willing parties to the conspiracy. The second proposi-
20   tion was that the *Molnlycke* case confirms it is not an abuse of
process to join other parties for the purpose only of obtaining
discovery where that discovery will assist in proving the claims
against the original defendant and assist in the later claim against
the added defendants and further that that approach would not
25   be in breach of the principles laid down in *Norwich Pharmacal
Co.* v. *Customs & Excise Commrs.* (13).

My reading of the *Molnlycke* case leads me to a different view
of it. To my mind it deals with a situation where a plaintiff sought
to join as an alleged tortfeasor a German company which was an
30   affiliate of the defendant company. By virtue of certain provisions
of the Convention on Jurisdiction and the Enforcement of Civil
and Commercial Judgments 1968, joinder in the circumstances of
that case was as of right provided the plaintiff met the preliminary
criterion of showing it had a good arguable case against the
35   alleged defendant by satisfying the court that there was a serious
question which called for a trial for its proper determination in
respect of an alleged defendant company domiciled in a country
which was party (as was Germany) to the convention. That
criterion is premised on a basis entirely distinct from those
40   criteria laid down by rr. 25 and 26 of the Grand Court (Civil
Procedure) Rules and which are clearly set out in the judgment of

the Court of Appeal in *Bank of Nova Scotia* v. *Becker* (2) which I
regard as applicable here. It follows I did not regard the
*Molnlycke* case as persuasive authority for either proposition in
the circumstances of this case.

5    I should also make it clear that leave to amend to join the
additional defendants was not refused on the basis that the
plaintiff's case was doomed to failure in its entirety. Had that
been my view of the case I would have been obliged to invoke
also the principles stated in *Raleigh* v. *Goschen* (15) that leave

10   should not be given to add parties to an action which is bound to
fail and where such leave would allow the plaintiff to mount a
substantially different cause of action against added parties.

(B) *Leave for consequential re-amendments in respect of the*
15   *proposed additional defendants, including an amendment seeking*
*orders for discovery against them. Leave refused.*

It followed from the refusal of leave to join the proposed
additional defendants that leave for consequential re-amend-
ments to plead claims against them had also to be refused. I note

20   further that in any event Mr. Parkinson for the plaintiff indicated
he would have been prepared to seek discovery from them
separately had they been joined as defendants and to have done
so by separate process. As joinder was refused, on the merits,
that recourse would also fail to materialize. I have set out above

25   the reasons for the decision not to allow further amendments
which sought to add new parties.

The remaining issues related to the application to re-amend the
pleadings to vary or add claims. Such applications still fell to be
decided on the merits to the extent that they might affect the

30   action brought against the original defendant. There was no
dispute as to the general principles which the court should apply
in deciding on an application to amend pleadings for the
purposes
of adding or varying claims. They are set out at O.20, r.5 of the
Rules of the Supreme Court and, as they apply to this case, I

35   summarize them as follows:

(a) Generally speaking, all amendments ought to be allowed
which are for the purpose of determining the real question in
controversy between the parties to any proceedings or for
correcting any defect or error in any proceedings (*per* Jenkins,

40   L.J. in *G.L. Baker Ltd.* v. *Medway Building & Supplies Ltd.* (1)
([1958] 1 W.L.R. at 1231).

1992–93 CILR 386

(b) Leave should be given to amend unless the court is satisfied that the party applying was acting *mala fide*, or that, by his blunder, he had done some injury to his opponent which could not be compensated for by costs or otherwise. However negligent
5   or careless may have been the omission, and however late the proposed amendment, the amendment should be allowed if it can be made without injustice to the other side. There is no injustice if the other side can be compensated by costs (*per* Bramwell, L.J. in *Tildesley* v. *Harper* (18) (10 Ch. D. at 397) and *per* Brett, M.R.
10   in *Clarapede* v. *Commercial Union Assn.* (4) (32 W.R. at 263).

(c) An amendment ought to be allowed if thereby "the real substantial question" can be raised between the parties and multiplicity of legal proceedings avoided: see *Kurtz* v. *Spence* (10).

(d) On the other hand, it should be remembered that there is a
15   clear difference between allowing amendments to clarify the issues in dispute and those that provide distinct defences or claims to be raised for the first time (*per* Lord Griffiths in *Ketteman* v. *Hansel Properties Ltd.* (9) ([1987] A.C. at 220)).

(e) Furthermore, the court will always look at the materiality of
20   the proposed amendment; inconsistent or useless amendments will not be allowed nor will amendments be allowed to raise a case which must fail: see 1 *The Supreme Court Practice 1991*, para. 20/5 – 8/23; *Jones v. Hughes* (8) ([1905] 1 Ch. at 187 *per* Vaughan Williams, L.J.) and the judgment of the Court of
25   Appeal of the Cayman Islands in *Iorgulescu* v. *Swiss Bank & Trust Corp. Ltd.* (7).

I now turn to deal with the application for re-amendments to the claims.

30   (C) *Leave to re-amend the writ and the statement of claim to include a claim for an account from the defendant to be taken in order to ascertain the ultimate amount which the defendant owes the plaintiff by way of annual percentage rent. Leave refused.*

This aspect of the application had proceeded on the basis that a
35   fiduciary relationship of principal and agent should be implied as existing between the plaintiff and defendant having regard to the lease arrangement which demanded a duty of trust from the defendant as tenant. Mr. Parkinson had submitted further that an action for an account is an established remedy available to a
40   principal against his agent (in lieu of damages) and that such an action arose here. I need not provide reasons at length for this

1992–93 CILR 387

aspect of the ruling as it appears Mr. Parkinson accepted as

correct the principles cited by Mr. Lamontagne in his response
but as considerable time was taken on it and as a distinction needs
to be struck between the duty to account prescribed by the lease
5   and the remedy in equity which was sought here, I will provide a
brief minute of reasons.

Two considerations were paramount bearing in mind that the
lease agreement embodies a commercial arm's length transaction
between the parties. It contains extensive provisions as set out in
10  Articles 3:01 – 3:05 as to the tenant's obligations to report and
account to the landlord. It also specifies the relief available in the
event of breach of those provisions. The two questions which
arose were (a) whether there was the necessity and therefore a
basis for implying as between the parties, a term or condition of
15  the lease that there existed a further fiduciary relationship and
arising from it that there should be accounting, as a separate
remedy, beyond that expressly provided in the lease in the event
the tenant acted in breach of the lease; and (b) could there be a
need or basis for finding a relationship of principal and agent and
20  a resulting duty to account, where the written agreement between
the parties is a complete code of the intentions of the parties.

The decision of the Privy Council in *Tai Hing Cotton Mill Ltd.*
v. *Liu Chong Hing Bank Ltd.* (17) was cited in opposition to Mr.
Parkinson's submissions and is clear authority for the proposition
25  that the court should not search for a liability in tort or in equity
where the parties are in a contractual relationship and that this is
particularly so in commercial relationships. It is not permissible,
on the contractual analysis of the relationship between the
parties, to imply duties which are not strictly and necessarily
30  incidental to that relationship.

Mr. Parkinson had conceded there was no English authority
directly on point to support his submissions but had cited extracts
from Underhill & Hayton, *Law relating to Trusts & Trustees*, 14th
ed., at 14 (1987), 1(2) *Halsbury's Laws of England*, 4th ed., para.
35  86, at 62, and from 1 *Atkin's Court Forms*, 2nd ed., at 601 *et seq.*
(1992 Issue) in support of his general submissions that the
categories of circumstances which may give rise to a fiduciary
relationship are not closed and that a principal/agent relationship
might be inferred from the nature of the relationship between the
40  parties as was evident in this case from the lease. Further, that an
action for an account is a remedy arising from that relationship.

---

1992–93 CILR 388

Mr. Lamontagne in opposition relied also on the decision of
the Supreme Court of Canada in *Lac Minerals Ltd.* v. *Interna*

*tional Corona Resources Ltd.* (11) for the following statement of
principles which are extracted from the headnote to the case in
the *Canada Supreme Court Reports* ([1989] 2 R.C.S. at 577–
578):

> "The following common features provide a rough and
> ready guide to whether or not a fiduciary obligation should
> be imposed on a new relationship: (1) the fiduciary has scope
> for the exercise of some discretion or power; (2) the fiduciary
> can unilaterally exercise that power or discretion so as to
> affect the beneficiary's legal or practical interests; and (3) the
> beneficiary is peculiarly vulnerable to or at the mercy of the
> fiduciary holding the discretion or power."

This description of the fiduciary relationship accords with the
treatment of the subject in the textbooks which were cited in
argument and especially as regards the relationship of principal
and agent the following definition of agency is to be found in
Fridman's *Law of Agency*, 6th ed., at 9 (1990):

> "Agency is the relationship that exists between two persons
> when one, called the *agent*, is considered in law to represent
> the other, called the *principal*, in such a way as to be able to
> affect the principal's legal position in respect of strangers to
> the relationship by the making of contracts or the disposition
> of property."

That definition does not accord with the relationship created
between the landlord and tenant in the context of the lease which
is the subject of this action.

The very helpful and exhaustive treatment of the subject in the
*Lac Minerals* case also demonstrates that no relationship of
principal and agent could properly be implied into the commer-
cial arm's length transaction which was the lease agreement
between the parties herein. It would not be appropriate to invoke
the rules of equity so as to impose a relationship in a situation
such as this where there is no true need for the special protection
that equity affords.

I also observe that the plaintiff's submissions were based not on
any suggestion of a pre-existing fiduciary duty but on the pro-
position that the court might find one having regard to the self-
dealing manner in which the contractual duties of the defendant
had been breached. In that regard I was specifically guided by the
opinion of Megarry, V.-C. in *Tito* v. *Waddell (No. 2)* (19) in

---

commenting on this approach to identifying a fiduciary
obligation

([1977] 3 All E.R. at 232):

      "I cannot see why the imposition of a statutory duty to perform certain functions, or the assumption of such a duty, should as a general rule impose fiduciary obligations, or even be presumed to impose any. Of course, the duty may be of such a nature as to carry with it fiduciary obligations. . . . Impose a fiduciary duty and you impose fiduciary obliga-tions. But apart from such cases, it would be remarkable indeed if in each of the manifold cases in which statute imposes a duty, or imposes a duty relating to property, the person on whom the duty is imposed were thereby to be put in a fiduciary relationship with those interested in the property, or towards whom the duty could be said to be owed. . . .

      Furthermore, I cannot see that coupling the job to be performed with self-dealing in the performance of it makes any difference. If there is a fiduciary duty, the equitable rules about self-dealing apply: but self-dealing does not impose the duty. Equity bases its rules about self-dealing on some pre-existing fiduciary duty: it is a disregard of this pre-existing duty that subjects the self-dealer to the con-sequences of the self-dealing rules. I do not think that one can take a person who is subject to no pre-existing fiduciary duty and then say that because he self-deals he is thereupon subjected to a fiduciary duty."

Notwithstanding the assumptions I was invited by Mr. Lamon-tagne to make and which lead irresistibly to the conclusion that the defendant was in breach of the lease and thereby guilty of "self-dealing," I was unable to conclude, having regard to the foregoing statements of principles, that there could be found to be a principal/agent relationship between the landlord and tenant as parties to the lease. Accordingly, no separate fiduciary duty to account was to be implied. The plaintiff had no arguable case for a claim in that regard and the re-amendments could not have been allowed.

      (D) *Application for leave to re-amend to include a claim for a declaration that the lease was properly rescinded. Leave refused.*

      This aspect of the application was abandoned by Mr. Parkinson and I see no need to comment further on it.

---

1992–93 CILR 390

      (E) *Leave to re-amend to include a claim for a declaration against*
*the defendant that the lease was duly forfeited. Leave granted.*

Having regard to the assumptions which I should make for
present purposes that the defendant was in breach of the lease,
5      the real point in dispute, as I earlier mentioned, was whether the
breaches committed by the defendant were repudiatory, that is
irremediable breaches giving rise to a right in the plaintiff to
repudiate the lease without first giving notice as required by the
lease and more importantly as required by ss. 55 and 56 of the
10     Registered Land Law (Revised).

Mr. Lamontagne submitted that leave should not be granted
because the plaintiff's claim for a declaration that the lease was
duly forfeited was bound to fail. This was so, he urged, because in
purporting to forfeit the lease the plaintiff treated as irremedi-
15     able breaches which were patently capable of being remedied
and because it failed to give notice to remedy as mandatorily
prescribed by s.56 of the Law. Furthermore, he submitted, it was
not for the plaintiff unilaterally and subjectively to decide
whether the breach was remediable; it was obliged to give notice
20     and see whether the defendant complied within the reasonable
time to be set in the notice. Acceptance of Mr. Lamontagne's
submissions in this regard would result in the disallowance of the
plaintiff's application to re-amend to include a claim for a
declaration that the lease was duly forfeited as, having regard to
25     the principles earlier cited, amendments should not be allowed in
aid of futile claims. This would be the result as no right of action
in forfeiture could have accrued to the plaintiff, if the breach had
been capable of remedy.

I was satisfied the plaintiff had at least an arguable case that the
30     breaches complained of were not capable of remedy. On the basis
of the authorities the plaintiff need not show more than that, at
this stage, in order to render his claim strike-out proof. In
arriving at that conclusion I was guided by the following passage
from the judgment of the English Court of Appeal given by
35     Slade, L.J. in *Empire Clothing Serv. & Sales Ltd.* v. *Hillgate
House Ltd.* (6) ([1985] 2 All E.R. at 1010):

"In my judgment, on the remediability issue, the ultimate
question for the court was this: if the s.146 notice had
required the lessee to remedy the breach and the lessors had
40     then allowed a reasonable time to elapse to enable the lessee
fully to comply with the relevant covenant, would such

1992–93 CILR 391

compliance, coupled with the payment of any appropriate
monetary compensation, have effectively remedied the harm
which the lessors had suffered or were likely to suffer from

the breach? If, but only if, the answer to this question was

5    No would the failure of the s.146 notice to require remedy of the breach have been justifiable. In the *Rugby School, Esplanade* and *Hoffman* cases the answer to this question plainly would have been No. In the present case, however, for the reasons already stated, I think the answer to it must

10   have been Yes."

Essentially, given the interlocutory nature of the proceedings before me, the issue is whether the plaintiff has an arguable case. The answer to that question is No. There is no dispute that the plaintiff's notice did not afford an opportunity to the defendant to

15   remedy the breach.

I took the view, in the light of the assumptions I was invited to draw by the defendant and having regard to the affidavit of Mr. Mark Chapman, the independent auditor engaged by the plaintiff to examine the records of the defendant, in which Mr. Chapman

20   expressed the view that there had been no proper records of accounts at all maintained by the defendant, that the plaintiff had at least an arguable case that the harm had been irretrievably done and that the breaches of the positive covenants to keep and maintain proper accounts and to enable full disclosure of income are breaches which in the context of this case may be shown to be

25   

incapable of remedy. This is, in my view, arguable notwithstanding that Mr. Chapman's affidavit dealt with the situation as he found it and did not specifically address the question whether it would be possible for the defendant to rectify the breach by

30   reconstruction of the records.

To my mind it must be at least objectively arguable that the plaintiff should be entitled to treat the circumstances existing at the time it purported to forfeit the lease as irremediable because the defalcations were deliberate, because the defendant's failure

35   to assist Mr. Chapman's audit betrayed its intention to continue its dissemblance and because the continued performance of the lease depended on the good faith, willingness and ability of the defendant not only to remedy the breach but also to keep faithful accounts and make full and final disclosure of sales and income.

40   Put another way, it will be an arguable matter whether a notice in keeping with s.56 of the Law, specifying the breach and

---

1992–93 CILR 392

requiring remedy, should have been issued in circumstances where it would have been clear no proper records existed and that their creation would depend upon the recall and co-operation of

the officers or employees of the defendant which, from all
5    indications, would likely be convenient to the defendant's own
interests and which records may have therefore been predisposed
to falsification. Whether the plaintiff as landlord could reasonably
and objectively apprehend such an outcome as the inevitable
result of a notice to remedy is an issue to be tried.

10      On account of the unusual nature of this lease, none of the
cases cited in argument provided a full answer by way of
precedent to these factual issues which remain to be resolved on
the question whether the plaintiff was entitled to forfeit this lease.
It should also be clear that in arriving at this view of the matter I
15    proceeded on the basis that the requirements of ss. 55 and 56 of
the Registered Land Law (Revised), in respect of the exercise of
the right of forfeiture of leases, are paramount, and specifically as
regards the requirements set out in s.56 for proper notice, this is
so regardless whether there are provisions to the contrary
20    contained in the lease itself.

     The primacy of the s.56 requirements is confirmed by the
pronouncements of this court in *Cayman Arms (1982) Ltd.* v.
*English Shoppe Ltd.* (3) and by their confirmation by the Court of
Appeal. Moreover, s.37(1) of the Registered Land Law (Revised)
25    also expressly states that "no land, lease or charge registered
under this Law shall be capable of being disposed of except in
accordance with this Law. . . ." Henry, J.A. stated in the Court
of Appeal case of *Paradise Manor Ltd.* v. *Bank of Nova Scotia*
(14) (1984–85 CILR at 480) that under s.37 of the Registered
30    Land Law (Revised), "no right of a proprietor in or over his land,
lease or charge registered under the Law shall be capable of being
affected except in accordance with the Law. . . ."

     Nonetheless, as the plaintiff's primary contention is that it was
entitled to forfeit the lease on the basis that the breaches were
incapable of being remedied and as I decided it should be allowed
35    to present that claim for determination on its merits, there was no
need for me to consider whether the requirements of s.56 as to
notice had been met, as those requirements would apply in the
factual circumstances of this case only if it is determined that the
40    breach is capable of remedy or that the defendant should have
been afforded an opportunity to remedy.

---

1992–93 CILR 393

    (F) *Leave to re-amend to include a claim in respect of auditor's*

*fees. Leave granted.*

The lease in Article 3:04 provides that the cost of "any special audit or an examination by an accountant designated by the landord pursuant to this section shall be chargeable to and paid by the tenant" in circumstances like those which led to Mr. Chapman's audit. Accordingly Mr. Lamontagne for the defendant conceded that the plaintiff's claim in that regard was not prone to being struck out and did not oppose the amendment.

(G) *Leave to re-amend to include a claim, in the alternative to the claim for a declaration of forfeiture, for damages for breach of the*

*covenant to pay rent. Leave granted.*

In light of the proof of at least one instance where the defendant failed to declare the sale of a valuable item which would have generated income which would be subject to being assessed for percentage rent, a claim in the alternative for damages for breach of the covenant to pay rent is sustainable. This re-amendment was therefore allowed without opposition.

*Order accordingly.*

Attorneys: *Ritch & Connolly* for the plaintiff; *Ian Boxall & Co.* for the defendant.