# **EXHIBIT 20**


# *366  Ebbw Vale Urban District Council v South Wales Traffic Area Licensing Authority.

**No Substantial Judicial Treatment**

**Court**
Court of Appeal

**Judgment Date**
16 March 1951

**Report Citation**
[1951] 2 K.B. 366



Court of Appeal

Cohen , Asquith and Birkett , L.JJ.

1951 March 16.

*Road Traffic—Omnibus company—100 per cent. subsidiary of British Transport Commission—Company's application to vary fares made to licensing authority—Jurisdiction of authority— Road Traffic Act, 1930 (20 & 21 Geo. 5, c. 43), s. 72 — Transport Act, 1947 (10 & 11 Geo. 6, c. 49), ss. 2, sub—ss. 1, 2 (f) (g) (i), 3, 63—5, 76 .*

By s. 65, sub-s. 1, of the Transport Act, 1947 , ss. 72 to 76 of the Road Traffic Act, 1930 , do not apply to any passenger road transport service provided by the British Transport Commission or by any person acting as agent for the commission.

The commission, acting under the Transport Act, 1947 , acquired all the shares of a passenger road transport company with power to appoint and dismiss all their directors, the company thus becoming a 100 per cent. subsidiary of the commission. There was no evidence that the commission had in fact appointed the company to act as their agent. The company applied to a licensing authority for public service vehicles under s. 72, sub-ss. 1 and 4, of the Road Traffic Act, 1930 , to vary the conditions of road service licences then held by them, i.e., to increase the existing scale of fares.

*367

Held, that the licensing authority had jurisdiction to hear the application of the company, since the service in question was not a passenger road transport service provided by the commission or by any person acting as agent for the commission. The commission, in acquiring the shares of the company in the exercise of their general duty as stated in s. 3 of the British Transport Act, 1947 , were not "providing", but "securing or promoting" the provision of, an efficient, adequate, economical and properly integrated system of public inland transport.

*Salomon v. Salomon & Co. LD.[1897] A. C. 22* followed.

Observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.[1924] 2 Ch. 33* , 38, 40, referred to.

Decision of the Divisional Court reversed.

© 2022 Thomson Reuters.

Appeal from the Divisional Court.

The applicants, Ebbw Vale Urban District Council, sought an order to prohibit the licensing authority for public service vehicles for the South Wales Traffic Area from hearing and determining an application by Red and White Services Ld. under s. 72 of the Road Traffic Act, 1930 [1] , to vary the conditions of road service licences then held by them, that was, to increase their existing scale of fares. The ground for the application was that the licensing authority had no jurisdiction to hear the application by the omnibus company by reason of s. 65 of the Transport Act, 1947 [2] .

*368
The Divisional Court (Lord Goddard, C.J., Hilbery and Hallett, JJ.) held that s. 72 of the Act of 1930 on the facts of the case had ceased to apply, because the services afforded by the omnibus company were provided "by the commission" or by a "person acting as agent for the commission" within the meaning of sub-s. 1 of s. 65 of the Transport Act, 1947 .

The omnibus company had been a private enterprise concern when, under the Transport Act, 1947 , the British Transport Commission had acquired all their shares and the power to appoint and dismiss all their directors. The omnibus company, therefore, became a 100 per cent. subsidiary of the British Transport Commission. Lord Goddard, C.J., said that the commission were providing the road passenger service of the omnibus company, though he was rather inclined to think that the omnibus company in the circumstances were acting as agents for the commission. The British Transport Commission and the omnibus company appealed.

Before the Court of Appeal, counsel for the urban district council did not see fit to support the order of prohibition made by the Divisional Court on the ground that the omnibus company provided the services as agents of the British Transport Commission: he contended that the services were provided by the commission.

*Heald, K.C.,* and *R. J. Parker* for the commission.

*Fox-Andrews, K.C.,* and *King-Hamilton* for the omnibus company.

*Cyril Morgan* for the urban district council.

The argument, based on the relevant sections of the Transport Act, 1947 , appears fully from the judgment of Cohen, L.J. Counsel for the appellants cited *Salomon v. Salomon & Co. LD.* [3] ; the speech of Lord Buckmaster in *Rainham Chemical Works LD. (In Liquidation) v. Belvedere Fish Guano Co. LD.* [4] ; the judgment of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.* [5] ; *Railway Executive v. Henson* [6] ; and *Smith v. London Transport Executive* [7] .

COHEN, L.J.

This appeal raises a question as to the jurisdiction of the licensing authority under  s. 72 of the Road Traffic Act, 1930 , to hear an application by Red and White Services Ld. for the modification of the conditions of their licence in such a way as to enable them to increase the fares which they are entitled to charge for the services that they supply in a district in South Wales.

Section 72, sub-s. 1 , provides: "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service ag may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. It is under that last provision that Red and White Services Ld. made the application which gives rise to the present proceedings.

When the application came before the authority, the suggestion was made, and it has since been decided by the Divisional Court, that the jurisdiction of the authority had been taken away, so far as the point then under discussion was concerned, by s. 65 of the Transport Act, 1947 . [His Lordship read sub-s. 1 of s. 65 ]. The Divisional Court decided that s. 72 of the Road Traffic Act, 1930 , had ceased to apply on the facts of this case, because the services in question were services provided "by the commission", or by a "person acting as agent for the commission", within the meaning of s. 65.

© 2022 Thomson Reuters.

I will refer to two passages in the judgment of Lord Goddard, C.J., in order to explain the ratio decidendi of the court. He said: "It seems to me, when one gives s. 65 the ordinary meaning of the English language, that the transport commission, having acquired the whole of the undertaking and share-holding of this company, and running the omnibuses of that company for the purpose of providing a passenger service through the Ebbw Vale, are providing a road transport service. The vehicles are not their own: they still belong to the legal entity which is the company; but it seems to me that the commission are in effect providing the road passenger transport, though I am rather inclined to think that the omnibus company in the circumstances are acting as agents for the commission". Then, in the last paragraph he said: "Mr.  *370  Heald has relied on the well-known case of *Salomon v. Salomon & Co. LD.*  [8] , which decided that in what is commonly called a one-man company, the company is a different entity from the man who holds the whole of the shares. and I have no doubt here that the omnibus company are a different entity from the commission; but it seems to me that the commission are providing this road passenger transport service, because the company are put there by the Transport Commission to do what otherwise it is the privilege of the commission to do. For these reasons I think that the order of prohibition must go".

Colloquially speaking, it may be true to say that the British Transport Commission are running the omnibuses of the company; but I am unable to agree, with all respect to the Divisional Court, that so broad a construction can properly be placed on the material phrase in s. 65: "any passenger road transport service provided ... by the commission or by any person acting as agent for the commission".

Under the ordinary rules of law, a parent company and a subsidiary company, even a 100 per cent. subsidiary company, are distinct legal entities, and in the absence of an agency contract between the two companies one cannot be said to be the agent of the other. That seems to me to be clearly established by *Salomon v. Salomon & Co. LD.*  [9] , and by the observations of Tomlin, J., in *British Thomson-Houston Co. LD. v. Sterling Accessories LD.*  [10] .

Tomlin, J., said  [11] : "I do not think that any such inference" - that is, an inference of agency between the directors and the company - "can be or ought to be drawn. It has been made plain by the House of Lords that for the purpose of establishing contractual liability it is not possible, even in the case of the so-called one-man companies, to go behind the legal corporate entity of the company and treat the creator and controller of the company as the real contractor merely because he is the creator and controller. If he is to be fixed with liability as principal, the agency of the company must be established substantively and cannot be inferred from the holding of director's office and the control of the shares alone: see *Salomon v. Salomon & Co. LD.*  [12] . Any other conclusion would have nullified the purpose for which the creation of limited companies was authorized by the legislature".
    *371*

Tomlin, J., continued: "Nor does the matter stand otherwise in regard to liability for tortious acts". and later  [13] : "There is no evidence from which it ought or can be inferred that the defendant directors have authorized the wrongful acts. To draw that inference from the fact that they are sole directors and shareholders of the defendant company would be manifestly wrong and contrary to the principles enunciated by the House of Lords in the cases already referred to, and there is no evidence of any other facts at all in relation to the matter".

So I think that it can clearly be said here that there is no evidence to justify the inference which apparently Lord Goddard, C.J., was inclined to draw, that the omnibus company in the circumstances of the case are acting as agents for the British Transport Commission. In fairness to Mr. Morgan I add that he did not seek to support the order on the ground of agency. He did, however, strongly urge that, on a business view of the matter, the services which were provided in South Wales by the company were services provided by the commission.

I can find nothing in the Act to negative or exclude the ordinary rules of law so far as this question is concerned. I think that the proper approach to the question is to construe s. 65, sub-s. 1, in the light of the other relevant provisions of the Act; and, as Mr. Fox-Andrews said, the proper starting point is s. 3 , which lays down the general duty of the commission and states the objects, as distinct from the powers, which the commission was incorporated to perform. By sub-s. 1: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation".

© 2022 Thomson Reuters.

I would emphasize the distinction that is plainly drawn there between "providing", on the one hand, and "securing or promoting" on the other, the provision of an efficient system of transport. It seems to me that those words clearly visualize that the commission may either provide the system themselves or may secure or promote its provision by others. With that in mind I turn back to s. 2 , which concerns the powers which the commission are to *372 have to enable them to fulfil their object. Section 2, sub-s. 1 , provides: "Subject to the provisions of this Act, the commission shall have power - (a) to carry goods and passengers by rail, road and inland waterway, within Great Britain". By sub-s. 2: "Subject to the provisions of this Act, the powers conferred by sub-s. 1 of this section include power", and then follow a series of powers lettered in paragraphs from (a) to (i). I need only refer to paragraphs (f), (g) and (i). Paragraph (f): "to acquire by agreement (whether absolutely or for any period) the whole or any part of any undertaking of any other person, being an undertaking, or a part of an undertaking, the activities whereof are wholly or mainly such activities as are specified in the said sub-s. 1". Paragraph (g): "to enter into and carry out agreements with any person for the carrying on by that person, whether as agent for the commission or otherwise, of any of the activities specified in the said sub-s. 1, or for the provision by that person, whether as agent for the commission or otherwise, of clearing house facilities in connexion with the transport of goods". Paragraph (i): "to lend money to, or give guarantees for the benefit of, any person carrying on or about to carry on any of the activities specified in the said sub-s. 1", and then, omitting immaterial words, "and to acquire by agreement any securities of any body corporate which is carrying on or about to carry on or which directly or indirectly controls another body corporate which is carrying on or about to carry on any such activities".

I pause here to observe that it is plain as regards the omnibus company that it is under this latter power to acquire the securities of a body corporate which is carrying on transport activities that the acquisition was made. I pause also to observe that both sub-s. 1 and sub-s. 2 are subject to provisoes prohibiting the commission from doing certain things which might otherwise be within the wide words of the enabling power.

Sub-s. 3 provides: "Where, whether by agreement or otherwise, the commission acquire the whole or any part of any undertaking of any other person, they may, subject to the provisions of this Act, carry on any activities, whether mentioned in sub-s. 1 of this section or not, which were theretofore carried on for the purposes of that undertaking or part of an undertaking or were authorized by any statutory provision to be carried on for the purposes thereof". There again that is followed by a proviso restricting the generality of the foregoing Sub-s. 4 also contains certain restrictive powers.
*373

It is clear from that section, and I think that it also appears clear from ss. 63 and 64 , which concern the preparation and approval of area road transport schemes and the contents of area road transport schemes, that the Act contemplates that the commission may either provide services itself or may secure the provision of those services by or through other bodies, and not only by or through agents of the commission. That being so, prima facie, it would seem necessary to see whether what is being done in any particular case is an act done to provide transport facilities, or is an act done to secure the provision of transport facilities. Where a service is provided through a subsidiary company of the commission, it seems to me that prima facie, having regard to the general rule of law, what the commission are doing is to secure the provision of road transport facilities, and not to provide them.

That the commission can act by providing them themselves is made clear by the decision of this court to which our attention was called by Mr. Heald and Mr. Morgan, namely, *Smith v. London Transport Executive* 14 .

That the commission can act through an agent is also clear under the express provisions of sub-s. (2) (g) ; but, as I have said, there is no question of agency here. It seems to me quite plain that it can also arrange with independent concerns to provide a service, in which case it will be performing its function of securing or promoting the provision of an efficient, adequate, economical and properly integrated system of public inland transport. In the present case, I think, the commission were securing the provision of an efficient, adequate, economical and properly integrated system of public inland transport within the meaning of s. 3, sub-s. 1, of the Act, through the omnibus company - not an independent concern, but a separate legal entity.

That conclusion, it seems to me, is rendered more certain by sub-s. 6 of s. 2 of the Act. That provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission, and the undertaking of the body shall be deemed to form part of the undertaking of the commission". The importance of that provision seems to me to be that it is quite plain that Parliament when it passed this Act had in mind the general rule of law to which I have *374 referred as laid down in *Salomon v. Salomon & Co. LD.* 15 , and many other cases, that a subsidiary company is not the agent of the parent company, but is an entirely separate entity. Its acts are not the acts of the parent company, and the parent company is not responsible for its acts or defaults, in the absence of special provisions in some contract between the parties. Parliament, with that in mind, has gone out of its way to prescribe that for certain limited purposes the acts of the subsidiary company shall be

© 2022 Thomson Reuters.

deemed to be the acts of the commission. It seems to me an inevitable inference from that provision that, except to that extent, the intention was that the ordinary rule of law should prevail and that the acts of the subsidiary company should be its own acts and not the acts of the commission.

Mr. Morgan was compelled to admit that if there were a road accident the victim would have a remedy, if he had a remedy at all, not against the commission, but only against the omnibus company. That seems to me to lead to, or support, the conclusion that the services here were provided, not by the commission, but by the company.

There is another argument of Mr. Morgan's to which I ought to refer. He laid some stress on the words in sub-s. 1 of s. 65, "any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise". He relied upon those words as in some way enlarging the meaning to be given to the word "provided". I am unable to follow him in this part of his argument. It seems to me that, in the context in which they appear, the words "or otherwise" are merely in contrast to the words "under a scheme", and mean no more than "provided, whether or not under a scheme under the preceding provisions of this Part of this Act". It does not assist us in determining whether or not as a matter of fact any particular service is provided by the commission.

There is still one other argument to which I must refer. It was said that it would lead to a ridiculous, or at any rate to an artificial, situation if there were to be two bodies dealing with the same subject-matter. Section 76 of the Transport Act, 1947 , contains the provisions under which the commission "shall from time to time prepare, and submit to the transport tribunal for confirmation, drafts of schemes (hereafter in this Act referred to as 'charges schemes ') for determining, as respects the *375 services and facilities provided by the commission to which the schemes respectively relate - (a) the charges which are to be made by the commission". So, said Mr. Morgan, it is plain that in one case not the licensing authority under the Road Traffic Act, 1930 , but the transport tribunal under the Transport Act, 1947 , will have to determine the fares and charges which are to be made by the commission. Is it not, he said, most unlikely that the legislature intended that, as regards other cases, where in substance the service was provided by the commission, the reference should be to the licensing authority? It does not seem to me that that objection really has any substance, and in a sense it begs the question, because it is only where the services are provided by the commission that the obligation to set up a charging scheme arises; and it seems to me that Parliament, having, as it clearly had, in mind the prospect that the commission might discharge their obligations either by providing or by securing provision of the requisite services, should have visualized a different method of settling the charges according to whether the commission provided the services themselves or secured their provision. It seems to me quite natural that the charging scheme should only apply where the commission were providing the services themselves, leaving the matter to be dealt with under the Road Traffic Act, 1930 , in cases where the part played by the commission was merely to secure the provision of the services.

For these reasons, I think that the proper inference from the facts proved before the Divisional Court was that this was a case where the services were not provided by the commission but the commission merely secured their provision. I therefore think that it is not a case for prohibition, and I would allow the appeal.


ASQUITH, L.J.

I agree, and I would add only a word or two out of deference to the judgment from which we are differing. The case originally raised two distinct issues: did the commission within the meaning of sub-s. 1 of s. 65 "provide" these services? Or, short of that, did the omnibus company provide them as agents for the commission?

Mr. Morgan has not pressed the second point on the appeal, but, as the Divisional Court based its judgment partly on an affirmative answer to it, it is desirable to glance at it briefly. The only relevant fact before the court is that the commission own substantially all the shares in the company. The two bodies are admittedly separate legal personæ. Admittedly a subsidiary ia not necessarily, as such, an agent for the controlling corporation. *376 There is, of course, nothing to prevent a controlling body from constituting a controlled body its agent if it chooses to do so, but there is no evidence of any such thing having happened here.

I turn, therefore, to the other question: did the commission provide these services themselves? The Divisional Court took a broad, common-sense view of the meaning of the word "provide", but in my view it has to be construed in the light of its context and the general structure of the Act. The other sections of the Act do draw a firm and sharp distinction between services "provided by" the commission themselves, and services of which they "secure the provision", presumably by other people. My Lord has read the first two or three lines of s. 3, sub-s. 1, of the Transport Act, 1947 , in support of that proposition, and I will not repeat them, but the same distinction reappears in a salient form in ss. 63 and 64, concerning schemes. Sub-s. 1 of s. 63

provides: "(1) The commission may, at any time, prepare and submit to the Minister a scheme". Sub-s. 1 of s. 64 provides: "A scheme under the last preceding section may provide for all or any of the following matters, that is to say - (a) for constituting or specifying the body or bodies who are to provide passenger road transport services operating within or partly within the area ...". Then by sub-s. 2: "The commission may be the body specified, or one of the bodies specified, in a provision included in a scheme by virtue of paragraph (a) of sub-s. 1 of this section"; so that it is not to be assumed that the distinction between services provided by the commission themselves and services which they cause other bodies to provide - a distinction which is so clearly present in the draftsman's mind when drafting ss. 63 and 64 - has entirely escaped his mind when he passes on to draft s. 65. It would appear to me that the commission have not in fact themselves provided passenger road services up to this time; but it is quite clear that they could, if they wished to do so, purchase a fleet of omnibuses tomorrow and run them themselves under powers given by s. 2, sub-s. 1 (a) and sub-s. 2 : see *Smith. v. London Transport Executive* [16] . If the commission in this case had bought, not shares in the omnibus company, but the physical assets of that company, and had engaged the company's staff to run the undertaking, in that case the commission would have been "providing" the services themselves. But it is, in my view, only if and to the extent that the commission do provide such services by themselves (or by an *377* "agent" within the meaning of sub-s. 1 of s. 65 ) that the jurisdiction as to fares of the licensing authority is displaced; and as neither of these conditions is fulfilled in the present case I agree with my Lord that the appeal ought to be allowed.


BIRKETT, L.J.

I agree with both the judgments which have just been delivered. The point in this case was described by the Lord Chief Justice in the Divisional Court as being a short point, and a short point it assuredly is.

The Lord Chief Justice said: "I think, therefore, for the reasons which I have endeavoured to express - it is a very short point - that this is a road transport service provided by the commission, or by persons acting as agents for the commission, and that acccordingly the Road Traffic Act no longer applies". Also, in the Divisional Court the grounds upon which this order for prohibition was asked were these: "The relief sought is an order of prohibition that the licensing authority for public service vehicles for the South Wales Traffic Area be prohibited from hearing and determining an application by Red and White Services Ld. to vary the conditions attached to road service licences now held by the Red and White Services Ld., that is to say, to increase their present scale of fares. The grounds upon which relief is sought are that the said licensing authority has no jurisdiction to hear and determine the said application".

The short question, therefore, is: is it shown, on the true construction of the statutes, and on the facts which have been proved, that the British Transport Commission are providing these road services in South Wales so that ss. 72 to 76 of the Road Traffic Act, 1930 , no longer apply?

Mr. Morgan invited the court to take a broad view, as he termed it, of the word "provide" in sub-s. 1 of s. 65, and, of course, that, I think, is the gist of the whole matter. Section 65, sub-s. 1, of the Transport Act, 1947 , provides: " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the commission or by any person acting as agent for the commission". Quite naturally, Mr. Morgan said that you must take a broad view of that word "provide". If I may say so, with all respect, it was the acceptance of that invitation in the Divisional Court which led to error. The meaning of the word "provide" cannot be interpreted quite on those lines, but must be ascertained with *378* some precision, having regard to the wording of the various sections of the Transport Act, 1947 .

I think that Mr. Fox-Andrews was quite right in saying that the section which sheds most light on this matter is s. 3. There the general duty of the commission is set out. Sub-section 1 provides: "It shall be the general duty of the commission so to exercise their powers under this Act as to provide, or secure or promote the provision of, an efficient, adequate, economical and properly integrated system of public inland transport and port facilities within Great Britain for passengers and goods with due regard to safety of operation; and for that purpose it shall be the duty of the commission to take such steps as they consider necessary for extending and improving the transport and port facilities within Great Britain in such manner as to provide most efficiently and conveniently for the needs of the public, agriculture, commerce and industry". That is the general duty of the commission, and it is to be observed that one can conceive all sorts of matters as within the power of the Transport Commission under that section: they can provide services themselves; they can, in lieu of providing services themselves, secure the provision of services; or they can, instead of doing that, promote services, all to the end that their general duty under the section shall be fulfilled.

© 2022 Thomson Reuters.

In this case it was shown that the commission in fact controlled the omnibus company, in this sense, that they owned all the shares, with the possible exception of two, and that they had the controlling power over the appointment and the dismissal of directors. In relation to that, sub-s. 6 of s. 2 is very important, because it is contemplated that the commission shall control, directly or indirectly, corporate bodies. The sub-section provides: "For the purposes of sub-s. 4 and of the provisoes to sub-ss. 2 and 3 of this section, where a body corporate is directly or indirectly controlled by the commission, anything done by that body shall be deemed to be done by the commission", thus limiting this provision most carefully to the matters which are set out in the section, i.e., for the purposes of sub-s. 4 and the provisoes of sub-ss. 2 and 3 of s. 2. Therefore, in this case, although the commission do control the omnibus company, though they do own the shares, though they have the power to control the appointment and dismissal of directors, they do not own the property of the company and the vehicles which actually run upon the roads. As my Lord pointed out, there is no power to sue the commission either in contract or in tort. Therefore, popularly, *379* or, if I may use Mr. Morgan's phrase, "in a broad sense", one may say, of course, that the commission provide the services, as one man might say to another, because they control the company, they own the shares; yet in fact what they are really doing here is, not to provide the services, but, as my Lord has already stated, to secure that those services are provided.

Asquith, L.J., discussed the matter of agency, which clearly influenced the Divisional Court, but which is no longer relied upon here; and Cohen, L.J., disposed of the argument raised on the use of the words "or otherwise" in the words of sub-s. 1 of s. 65: "any passenger road transport service provided whether under a scheme under the preceding provisions of this Part of this Act or otherwise".

In all these circumstances, I am clearly of opinion that this was not a case where the commission in fact provided the services, and, that being so, sub-s. 1 of s. 65, which eliminated ss. 72 to 76 of the Road Traffic Act, 1930 , in the case of any passenger road transport service *provided* by the commission, has no application, and I agree that this appeal should be allowed.


## Representation

Solicitors: M. H. B. Gilmour ; M. H. B. Gilmour ; Lewin, Gregory, Torr, Durnford & Co. , for J. L. J. Price, Merthyr Tydfil .


*Appeal allowed. (C. G. M. )*


## Footnotes

1    Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s. 65, sub-s. 1 : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission, but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area; and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of vehicles which may be used on the route and as to the portions of the route on which, and the points at which, passengers may be taken up or set down ...".

2    Road Traffic Act, 1930, s. 72, sub-s. 1 : "Subject to the provisions of this section the commissioners may grant to any person applying therefor a licence (in this Act referred to as a 'road service licence') to provide such a road service as may be specified therein, and a vehicle shall not be used as a stage carriage or an express carriage except under such a licence". Under sub-s. 6 power is given to the commissioners, subject to the

© 2022 Thomson Reuters.

provisions of the section, to fix such fares and make it a condition of the licence that fares shall not be charged under or in excess of the minimum or maximum. Under sub-s. 4 the commissioners may from time to time vary, in such manner as they think fit, the conditions attached to a road service licence. Transport Act, 1947, s. 65, sub-s. 1 : " Sections 72 to 76 of the Road Traffic Act, 1930 (which relate to road service licences) shall not apply to any passenger road transport service provided, whether under a scheme under the preceding provisions of this Part of this Act or otherwise, by the Commission or by any person acting as agent for the Commission, but neither the Commission nor any such person as aforesaid shall use any public service vehicle for the conveyance of passengers for hire or reward at separate fares except - (a) on a route approved, as respects so much there of as falls within any traffic area, by the licensing authority for public service vehicles for that area; and (b) in accordance with such restrictions as may be imposed by that authority as to the class or description of vehicles which may be used on the route and as to the portions of the route on which, and the points at which, passengers may be taken up or set down ...".

3    *[1897] A. C. 22* .
4    *[1921] 2 A. C. 465* , 475.
5    *[1924] 2 Ch. 33* , 38 and 40.
6    *(1949) 65 T. L. R. 336; 113 J. P. 333* .
7    *[1949] Ch. 685; [1951] W. N. 157* .
8    *[1897] A. C. 22* .
9    *[1897] A. C. 22* .
10   *[1924] 2 Ch. 33* .
11   Ibid. 38.
12   *[1897] A. C. 22* .
13   *[1924] 2 Ch. 33* , 40.
14   *[1949] Ch. 685; [1951] W. N. 157* .
15   *[1897] A. C. 22* .
16   *[1949] Ch. 685; [1951] W. N. 157*

(c) Incorporated Council of Law Reporting for England & Wales