UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Highland Capital Management, L.P. | § | |
| | § | |
| Debtor(s) | § | Case No.:    19−34054−sgj11 |
| | § | Chapter No.:   11 |
| Charitable DAF Fund, LP | § | |
| Plaintiff(s) | § | Adversary No.:    22−03052−sgj |
| vs. | § | |
| Highland Capital Management, L.P. | § | Civil Case No.: |
| Defendant(s) | § | |
| | § | |
| The Charitable DAF Fund, L.P. | § | |
| Appellant(s) | § | |
| vs. | § | |
| Highland Capital Management, L.P | § | |
| Appellee(s) | § | |
| | § | |

## NOTICE OF TRANSMITTAL

I am transmitting:

☐    The Motion for leave to Appeal 28 U.S.C. § (USDC Civil Action No. DNC Case).

☐    The Motion for Stay Pending Appeal (USDC Action No. − DNC Case).

☐    The Proposed Findings of Fact and Conclusions of Law.

☐    The Motion to Extend Time To File Designation (USDC Civil Action No DNC Case).

☐    On , the Record on Appeal was transmitted. The designation of record or item(s) designated by
were not filed when the record was transmitted. The item(s) were filed on awaiting instructions
from the assigned district judge.

☐    Other

☑    Copies of: Notice of appeal, appealed order [43] and supporting documents

**TO ALL ATTORNEYS**: File all subsequent papers captioned and numbered with the appropriate division of the
United States District Clerk's Office. Any questions concerning this proceeding should be directed to the U.S. District
Clerk's Office at (214) 753−2200.

DATED:  10/7/22

FOR THE COURT:
Robert P. Colwell, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# WITHDRAWAL OF REFERENCE SERVICE LIST

## Transmission of the Record

BK Case No.: 19−34054−sgj11

Adversary No.: 22−03052−sgj

Received in District Court by: _____

Date: _____

Volume Number(s): _____

cc: Stacey G Jernigan
    Courtney Lauer
    Caroline Nowlin
    Attorney(s) for Appellant
    US Trustee

**Appellant**   The Charitable DAF Fund, L.P.

SBAITI & COMPANY PLLC
Mazin A. Sbaiti
Jonathan Bridges
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432−2899

**Appellee**   Highland Capital Management, L.P.

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
T: (310) 277−6910

And
Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
T: (972) 755−7100

BTXN 150 (rev. 11/10)

| | |
|---|---|
| In Re:<br>Highland Capital Management, L.P. | § |
| | § |
| | § |
| Debtor(s) | § Case No.:    19−34054−sgj11 |
| | § Chapter No.:   11 |
| Charitable DAF Fund, LP | § |
| Plaintiff(s) | § Adversary No.:   22−03052−sgj |
| vs. | § |
| Highland Capital Management, L.P. | § |
| | § |
| Defendant(s) | § |

# CIVIL CASE COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I.** (a) **APPELLANT**
The Charitable DAF Fund, L.P.

**APPELLEE**
Highland Capital Management, L.P.

(b) County of Residence of First Listed Party:
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Party:
(IN U.S. PLAINTIFF CASES ONLY)

(c) Attorney's (Firm Name, Address, and Telephone Number)
SBAITI & COMPANY PLLC
Mazin A. Sbaiti
Jonathan Bridges
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432−2899

Attorney's (If Known)
PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
T: (310) 277−6910

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
T: (972) 755−7100

---

**II. BASIS OF JURISDICTION**

| | | | |
|---|---|---|---|
| ○ 1 U.S. Government<br>Plaintiff | ○ 2 U.S. Government<br>Defendant | ◉ 3 Federal Question<br>(U.S. Government<br>Not a Party) | ○ 4 Diversity<br>(Indicate Citizenship<br>of Parties in Item III) |

---

**III. CITIZENSHIP OF PRINCIPAL PARTIES**

| | | | | | |
|---|---|---|---|---|---|
| Citizen of This State | ○ 1 | ○ 1 | Incorporated *or* Principal Place<br>of Business In This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. NATURE OF SUIT**

| | | |
|---|---|---|
| ◉ 422 Appeal 28 USC 158 | ○ 423 Withdrawal 28 USC 157 | ○ 890 Other Statutory Actions |

---

**V. ORIGIN**

| | | | |
|---|---|---|---|
| ◉ 1 Original Proceeding | ○ 2 Removed from State<br>Court | ○ 3 Remanded from Appellate Court | ○ 4 Reinstated or<br>Reopened |
| ○ 5 Transferred from<br>another district | ○ 6 Multidistrict<br>Litigation | ○ 7 Appeal to District Judge from<br>Magistrate Judgment | |

---

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
422 Appeal 28 USC 158

Brief description of cause:
Notice of appeal of a bankruptcy court order

---

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23     DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☐ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**

Judge:                                                          Docket Number:

DATED:  10/7/22                          FOR THE COURT:
                                         Robert P. Colwell, Clerk of Court
                                         by: /s/Sheniqua Whitaker, Deputy Clerk

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367

*Counsel for The Charitable DAF Fund, L.P.*
*and CLO Holdco, Ltd.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| THE CHARITABLE DAF FUND, L.P. | § | |
| | § | |
| Plaintiff, | § | Adversary Proceeding No. |
| | § | |
| vs. | § | 22-03052-sgj |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):

    The Charitable DAF Fund, L.P.

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of
this appeal:

For appeals in an adversary proceeding:
☒ Plaintiff
☐ Defendant
☐ Other (describe)
_____

For appeals in a bankruptcy case and not in
an adversary proceeding:
☐ Debtor
☐ Creditor
☐ Trustee
☐ Other (describe)

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from:

    Order Granting Defendant's Amended Motion to Dismiss Adversary Proceeding
    [Doc. 43]

2. State the date on which the judgment, order, or decree was entered:  September 30, 2022

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names,
addresses, and telephone numbers of their attorneys:

1. *Party/Appellee:*    Debtor:    Highland Capital Management, L.P.

Attorney:

PACHULSKI STANG ZIEHL & JONES LLP
Jeffery N. Pomerantz
John A. Morris
Gregory V. Demo
Hayley R. Winograd
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
T: (310) 277-6910
F: (212) 561-7777

And

Hayward & Associates PLLC
Melissa S. Hayward
Zachery Z. Annable
10501 N. Central Expy. Ste. 106
Dallas, TX 75231
T: (972) 755-7100
F: (972) 755-7110


2.  *Party/Appellants:*  Plaintiffs:  The Charitable DAF Fund, L.P.


Attorney:

SBAITI & COMPANY PLLC
Mazin A. Sbaiti (TX Bar No. 24058096)
Jonathan Bridges (TX Bar No. 24028835)
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX  75201
T: (214) 432-2899
F: (214) 853-4367


**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts):**  Not applicable.


Dated:  October 5, 2022                    Respectfully submitted,

                                           **SBAITI & COMPANY PLLC**

                                           */s/  Mazin A. Sbaiti*
                                           **Mazin A. Sbaiti**
                                           Texas Bar No. 24058096
                                           **Jonathan Bridges**
                                           Texas Bar No. 24028835
                                           JPMorgan Chase Tower
                                           2200 Ross Avenue – Suite 4900W
                                           Dallas, TX  75201
                                           T: (214) 432-2899
                                           F: (214) 853-4367
                                           E:  mas@sbaitilaw.com
                                               jeb@sbaitilaw.com

                                           **Counsel for Plaintiffs**

3



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 30, 2022**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT L.P., | § | CASE NO. 19-34054-SGJ-11 |
| | § | (CHAPTER 11) |
|      REORGANIZED DEBTOR. | § | |
| _____ | § | |
| CHARITABLE DAF FUND, L.P., | § | |
| | § | |
|      PLAINTIFF | § | |
| | § | |
| VS. | § | ADVERSARY NO. 22-03052 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
|      DEFENDANT | § | |

_____

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AMENDED
## MOTION TO DISMISS ADVERSARY PROCEEDING
## [DE ## 19, 20, 21, & 32][1]

_____

[1] "DE # ___" as used herein refers to the Docket Number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in Adv. Proc. No. 22-03052. Here, DE ## 19, 20 & 21 refer to the Amended Motion to Dismiss, the Brief in Support, and the Appendix in Support filed by the Defendant (the "Original Appendix").

## I.    INTRODUCTION

The above-referenced action ("Action") was originally commenced in the United States District Court for the Northern District of Texas ("District Court") and was thereafter referred to the bankruptcy court ("Bankruptcy Court").[2]

In the Action, a Plaintiff seeks damages and other relief from a former Chapter 11 debtor, *pertaining to business conduct undertaken by the debtor, during the course of its Chapter 11 bankruptcy case ("Bankruptcy Case")—conduct that allegedly harmed the Plaintiff*.  The Action was filed after confirmation of the Debtor's plan, but before the effective date of the plan occurred.

The former debtor-in-possession (now a reorganized debtor) moves for dismissal of the Action, arguing primarily that the filing of the Action in District Court *was an improper means for pursuing a post-petition administrative claim against a chapter 11 debtor.*  There was a well-defined process for pursuing administrative expense claims in the Bankruptcy Case—of which the Plaintiff received ample notice—and the Plaintiff ignored that process, choosing instead to embark on post-confirmation litigation in the District Court. The former debtor-in-possession also argues

---

Additionally, DE # 32 refers to the Defendant's Amended Appendix in Support of Amended Motion to Dismiss, that merely added two more exhibits to Defendant's Original Appendix—new Exhs. 21 & 22.  *See also* DE # 30 (the Response of the Plaintiff) and DE # 31 (the Reply of the Defendant). Notably, at the oral argument on the Amended Motion to Dismiss, the court ruled that only Exhs. 1-13, 17, 21, and 22 would be considered by the court.  All of these exhibits, *except Exh. 17*, were items on the Bankruptcy Court's docket of which this court may take judicial notice in the context of a Rule 12(b) motion to dismiss. Although a court generally limits its inquiry on a Rule 12(b) motion to dismiss to a plaintiff's complaint or any documents attached to the complaint, a court may also take judicial notice of matters that are part of the public record when considering a motion to dismiss. *See, e.g., T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D. Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 (E.D. La. Aug. 31, 2001). *As to Exh. 17*, it was a short Declaration of Defendant's Chief Executive Officer ("CEO"), James Seery, dealing solely with the Rule 12(b)(1) standing (i.e., lack of subject matter jurisdiction) issue, and there was no objection to Exh. 17 being considered by the court.  *See* DE # 41, Transcript of oral argument on the Amended Motion to Dismiss ("8/3/22 Transcript"), at 3:22–5:17.

[2] The referral occurred by virtue of an order entered by Judge David C. Godbey on May 19, 2022, in Civil Action # 3:21-cv-01710-N. *See* DE # 32, Ex. 13, Appx. 477-79.

that—in addition to Plaintiff's procedural problems—that Plaintiff lacks standing to pursue its claims.

### A. The Parties

The movant is the Defendant, Highland Capital Management, L.P., now a reorganized debtor ("Highland" or "Reorganized Debtor").   Highland is the sole defendant. The allegedly actionable conduct of Highland occurred in August 2020 (mid-way through its Chapter 11 case). The Bankruptcy Court entered an order confirming Highland's Chapter 11 plan, on February 22, 2021.  Highland's plan went effective on August 11, 2021.  The Action was filed on July 22, 2021, some seven months after entry of the Bankruptcy Court's confirmation order but just before the effective date.

The respondent, the Plaintiff, is an entity known as Charitable DAF Fund, L.P. ("Plaintiff" or "Plaintiff/DAF").[3]  Plaintiff is a limited partnership hedge fund, organized in the Cayman Islands, that purports to have charitable purposes (i.e., it is designated as a "donor advised fund"), and was originally seeded with funds from Highland.[4] Plaintiff purports to now act through an

---

[3] Notably, this is Plaintiff/DAF's *second* time to sue Highland, post-confirmation, regarding Highland's alleged post-petition mismanagement or misconduct during its Chapter 11 case. *See* Adv. Proc. # 21-3067 styled *Charitable DAF Fund, L.P. et al. v. Highland Capital Management, L.P., et al*, (Bankr. N.D. Tex.) (hereinafter, the "First DAF Post-Confirmation Lawsuit Against Highland"). The First DAF Post-Confirmation Lawsuit against Highland was also filed in the United States District Court (Judge Jane Boyle) and then was referred by Judge Boyle to the Bankruptcy Court.  That lawsuit challenged the legality of Highland's conduct in entering into a compromise and settlement agreement during the Bankruptcy Case (with Bankruptcy Court approval) with an entity known as HarbourVest.  The Bankruptcy Court dismissed the First DAF Post-Confirmation Lawsuit Against Highland on March 11, 2022 (based on estoppel grounds and declining to reach other grounds possibly warranting dismissal). Finally, this court notes that an entity known as Dugaboy Investment Trust—a family trust of which Highland's former CEO, James Dondero, and/or his family members are beneficiaries —earlier, on June 23, 2021, filed a District Court action based on the very same allegations that are asserted in this present Action but later voluntarily dismissed such action. DE # 32, Exh. 22, Appx. 781.  *See also* 8/3/22 Transcript at 10:13.

[4] *See* DE # 99 entered in the First DAF Post-Confirmation Lawsuit Against Highland, Adv. Proc. # 21-3067, at p.2. As referenced earlier, although a court generally limits its inquiry on a motion to dismiss to the plaintiff's complaint or any documents attached to the complaint, a court may also take judicial notice of matters that are part of the public record when considering a motion to dismiss. *See* authorities mentioned in footnote 1, *supra*.

individual named Mark Patrick[5]—a former Highland employee who now works for entities controlled by or associated with James Dondero, Highland's founder and former CEO.

      B. *The Allegedly Actionable Conduct.*

Plaintiff represents in its Complaint that it was an investor in a non-debtor entity known as "Multi Strat." Multi Strat was controlled by Highland—in that Highland was Multi Strat's investment manager and ultimate majority equity owner.[6]  In its Complaint, Plaintiff alleges that Highland, during its Bankruptcy Case, breached contractual and extra-contractual duties to Plaintiff, as an alleged investor in "Multi Strat"—supposedly causing Plaintiff harm. The pith of the Complaint deals with Multi Strat's previous ownership of a pool of "viaticals."  Viaticals are life insurance policies, insuring the lives of various random individuals, that have been purchased, with the purchaser taking over the payment of premiums on such policies, such that when the individual dies, the life insurance proceeds are paid to the purchaser/owner of the policies (in this case, Multistrat). Distilled to its essence, Plaintiff's argument is that Highland—acting as Multi Strat's investment manager—caused the sale of Multi Strat's pool of viaticals, during the Chapter 11 case (in August 2020), pursuant to a flawed process, at a price that Plaintiff believes was too low, and subject to other improprieties.  To be clear, the sale was not subject to a Section 363 sale motion or court order, since Multi Strat's assets (i.e., the viaticals) were not property of the estate.

The Complaint must be dismissed, pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), made applicable to this Action by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (the "FRBP"), for at least two reasons.  First, the causes

---

[5] Until at least mid-January 2021, Grant Scott, James Dondero's life-long friend and college roommate, was the sole director of Plaintiff/DAF. *See* DE # 99, entered in the First DAF Post-Confirmation Lawsuit Against Highland, Adv. Proc. # 21-3067, at p. 3. Mark Patrick was installed as the new control person at some point thereafter in 2021.  DE # 32, Exh. 22, Appx. 790.

[6] It is undisputed that Highland was both the investment manager of and majority investor in Multi Strat.

of action asserted in the Complaint—that Highland breached its contractual and extra-contractual duties to Plaintiff ***during*** the Chapter 11 case—would, if meritorious, have been "administrative expense claims" and, under the terms of the Plan, were required to be filed ***with the Bankruptcy Court*** and served on Highland no later than September 25, 2021.    Despite these Plan requirements—of which Plaintiff received notice—Plaintiff asserted its claims through this Action in the District Court.   That decision must be deemed fatal, and Plaintiff's claims are now time-barred. Second, Plaintiff has now acknowledged in its response to Highland's Amended Motion to Dismiss that it is not an investor in Multi Strat. Rather, its subsidiary, an entity known as "CLO Holdco" is ("CLO Holdco" is apparently a 4.06% equity owner of Multi Strat).   Regardless of Plaintiff's reasons for filing the Complaint in its own name, rather than in the name of its subsidiary CLO Holdco (and this court can only speculate),[7] the result is the same. Plaintiff itself lacks standing to assert the claims in the Complaint, for the reasons further described herein, and this Court accordingly lacks jurisdiction to adjudicate the claims asserted in the Complaint. Moreover, allowing substitution of CLO Holdco as a plaintiff at this point in time (if a motion pursuant to Rules 15 and 17 of the FRCP were to be made) would be futile, since the real problem here is the failure to follow the Plan and Bankruptcy Code's required procedures for pursuing an administrative expense claim.   Accordingly, the Complaint must be dismissed.

---

[7] The court notes that CLO Holdco was ***very active*** in the Highland Bankruptcy Case, including objecting to the Plan.  *See* DE ## 1675 and 1797 in the main Highland Bankruptcy Case.  Its 100% parent, Plaintiff/DAF, on the contrary, was not nominally—although Plaintiff/DAF, as 100% parent to CLO Holdco, would have necessarily been giving directions to CLO Holdco during the Bankruptcy Case. The court cannot help but speculate that Plaintiff was trying to avert estoppel arguments that might have been made if CLO Holdco had filed this Action—given its active litigation of the Plan. In any event, as described herein, this Action fails for other reasons more fundamental than estoppel.

## II.    UNDISPUTED FACTS

### A.  *Relevant Dates and Deadlines in the Highland Bankruptcy Case*

On October 16, 2019 (the "Petition Date"), Highland commenced a voluntary petition under chapter 11 of the Bankruptcy Code.

On February 22, 2021, after months of contentiousness and various sessions of mediation with professional mediators—which successfully led to resolution of certain large creditor claims—the Bankruptcy Court entered an Order (i) Confirming the Fifth Amended Plan of Reorganization (as Modified) and (ii) Granting Related Relief (the "Confirmation Order"),[8] which confirmed the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P (as Modified) (the "Plan").[9]

Notably, the Plan contained customary language incorporating section 1141(d)(1)(A) of the Bankruptcy Code and releasing the Debtor from pre-confirmation liabilities of any kind:

> Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtor and its Estate will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities ***that arose before the Confirmation Date***, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.[10]

Section 1141(d(1)(A), in turn, provides that the confirmation of a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). To be clear, this did not leave parties without a remedy to assert possible post-petition, pre-confirmation claims. In that regard, the Plan contained customary definitions and other provisions

---

[8] DE # 32, Exh. 3, Appx. 19-180.
[9] *Id.,* Exh. 4, Appx. 181-247.
[10] *Id.,* Exh. 4, Appx. 235 (emphasis added).

regarding the filing and adjudication of "administrative expense claims."   These provisions,

summarized below, are key to the disputes in this Action.

First, as is typical for a Chapter 11 plan, there was a "Defined Term" for "Administrative

Expense Claim" as follows:

> "Administrative Expense Claim" means any Claim for costs and expenses
> of administration of the Chapter 11 Case that is Allowed pursuant to sections
> 503(b), 507(a)(2), 507(b) or 1114(2) of the Bankruptcy Code, including, without
> limitation, (a) the actual and necessary costs and expenses incurred after the Petition
> Date and through the Effective Date of preserving the Estate and operating the
> business of the Debtor . . . and that have not already been paid by the Debtor during
> the Chapter 11 Case . . ..[11]

Second, the Plan further provided that:

> If an Administrative Expense Claim … is not paid by the Debtor in the
> ordinary course, the Holder of such Administrative Expense Claim must ***File***, on
> or before the applicable Administrative Expense Claims Bar Date, ***and serve on the
> Debtor or Reorganized Debtor***, as applicable … an application for allowance and
> payment of such Administrative Expense Claim.[12]

There was a defined term for "File" in the Plan as follows:

> "File" or "Filed" or "Filing" means file, filed, or filing with the Bankruptcy
> Court or its authorized designee in the Chapter 11 Case.[13]

Finally, there was a defined term for Administrative Expense Bar Date as follows:

> "Administrative Expense Claims Bar Date" means, with respect to any
> Administrative Expense Claim (other than a Professional Fee Claim) becoming due
> on or prior to the Effective Date, 5:00 p.m. (prevailing Central Time) on such date
> that is ***forty-five days after the Effective Date***.[14]

---

[11] *Id.*, Appx. 189.

[12] *Id.*, Appx. 204 (emphasis added).

[13] *Id.*, Appx. 196 (note that the reference to the "authorized designee" for the Bankruptcy Court in the Chapter 11 Case would have been a reference to Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in the above-captioned case, which, among other things, maintained the proof of claim register in the case for ***prepetition*** claims).

[14] *Id.*, Appx. 189 (emphasis added).

On August 11, 2021, the Plan became effective.  On August 11, 2021, Highland filed the

Notice of Occurrence of Effective Date of Confirmed Fifth Amended Plan of Reorganization of

Highland Capital Management, L.P. (the "Notice of Effective Date"),[15] clearly disclosing that the

"Effective Date" (as defined in the Plan) had occurred on August 11, 2021.

Consistent with the Plan, the Notice of Effective Date disclosed in bold, capitalized letters,

that all "administrative expense claims" were required to be filed no later than 45 days after the

Effective Date (i.e., September 25, 2021):

> **PLEASE TAKE FURTHER NOTICE** that, except with respect to Administrative Expense Claims that are Professional Fee Claims or as otherwise set forth in the Plan, requests for payment of an Administrative Expense Claim must be Filed with the Bankruptcy Court no later than forty-five (45) days after the Effective Date (the "Administrative Expense Claims Bar Date"). **HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE THAT DO NOT FILE AND SERVE SUCH A REQUEST BY THE ADMINISTRATIVE EXPENSE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR.**[16]

Highland served the Notice of Effective Date via at least First-Class Mail on

Plaintiff/DAF.[17]  It is undisputed that Plaintiff/DAF did not ***file*** an administrative expense claim

with the ***Bankruptcy Court***, nor did it ***serve*** one on the Reorganized Debtor by the bar date.

However, on July 22, 2021, seven months after entry of the Confirmation Order (and prior

to the Administrative Expense Claim Bar Date), Plaintiff commenced this Action against Highland

---

[15] *Id.*, Exh. 7, Appx. 269-73.

[16] *Id.*, Appx. 271 (emphasis in original).

[17] *Id.*, Exh. 8, Appx. 310. The court also notes that CLO Holdco's counsel received electronic Notice of the Effective Date, *id.* at Appx. 278, as well as notice by First-Class Mail, *id.*, at Appx. 282, and CLO Holdco itself received Notice of the Effective Date by First-Class Mail, *id.* at Appx. 312-313 at numerous addresses. The court takes judicial notice that the Plan itself was also served on CLO Holdco and its counsel. *See* DE #1630, in the main Highland Bankruptcy Case, at Exh. S, p.25 of 139, and at Exh. V, p. 1 of 3.

by filing an Original Complaint (the "Complaint") in the District Court.[18] It is undisputed that

Plaintiff/DAF also never served the Complaint on Highland.[19]

The Complaint alleged that Highland, under the direction of its new, independent CEO,

James P. Seery, Jr.—appointed pursuant to a corporate governance agreement between Highland

and the Official Committee of Unsecured Creditors (and approved by the Bankruptcy Court)—

violated the contractual and extra-contractual duties that Highland owed to Plaintiff/DAF as an

alleged investor in the entity known as Multi Strat and that Plaintiff/DAF was harmed thereby.[20]

As noted in the Introduction herein, Multi Strat was a vehicle that purchased and owned a pool of

viaticals—that is, life insurance policies keyed to the lives of various individuals. Multi Strat paid

the premiums on the policies, and when an insured person died, the life insurance money would

be paid to the owner of the policy—in this case, Multi Strat.

Highland's alleged misconduct occurred during the spring and summer of 2020, i.e., after

the Petition Date while Highland was a debtor-in-possession.[21]  The contracts allegedly breached

were assumed by Highland pursuant to the Plan.[22]

B.   *The Substance of the Complaint; More About "Multi Strat"*

The Complaint sets forth three causes of action premised on conduct in which Highland

allegedly engaged post-petition: (a) First Cause of Action—Highland's alleged violation of the

Investment Advisers Act of 1940;[23] (b) Second Cause of Action—Highland's alleged breach of

---

[18]*Id.*, Exh. 5, Appx. 248-59.

[19] *See* 8/3/22 Transcript, at 28:2-11.

[20]DE # 32, Exh. 5, Appx. 252-58.

[21]*Id.,* Appx. 251.

[22]*Id.,* Exh. 4, Appx. 224-25; Exh. 6, Appx. 262, 264.

[23] Although no statutory cite is given, the Plaintiff apparently refers to the Investment Advisers Act of 1940, codified
at 15 U.S.C. § 80b-1 through 80b21, which is the primary source of regulation of investment advisers and is
administered by the U.S. Securities and Exchange Commission. The court notes that the United States Supreme
Court has held in *Transamerica Mortg. Advisors, Inc. v. Lewis,* 444 U.S. 11, 19 (1979) that there is not a private
right of action for damages under the Investment Advisers Act.  Specifically, an investor may seek to *void an
investment adviser contract* (i.e., essentially allowing a suit for rescission or for an injunction against continued

fiduciary duty;[24] and (c) Third Cause of Action—Highland's alleged breach of contract.[25] The various conduct of Highland is described as: (1) selling the viatical pool of Multi Strat at a distressed price (i.e., $35 million) when it was not in distress and there was allegedly no need for Multi Strat to sell; (2) concealing the information about the transaction from the Plaintiff; (3) failing to advise the Plaintiff of the opportunity to purchase the viatical pool—especially when it knew the Plaintiff had an interest in the pool and had the means of purchasing it for more cash than $35 million; (4) allegedly concealing the purpose behind the sale of the viatical pool and conflicts of interest; (5) allegedly causing the viatical pool to be sold in a manner that violated the rights of the Plaintiff as an investor in Multi Strat (e.g., by failing to conduct an auction, obtaining competitive bids and taking the pool to market); and (6) utilizing the sale proceeds for its own ends—namely, to enrich itself.

The entity at the heart of the Complaint—Multi Strat—is what is known in the investment community as a pooled investment fund structured as a "mini master." It actually consists of Highland Multi Strategy Credit Fund, L.P., a Delaware limited partnership (the "Master Fund"), and Highland Multi Strategy Credit Fund, Ltd., a Cayman Island exempted company (the "Feeder Fund"). The Master Fund and the Feeder Fund are collectively referred to as "Multi Strat." Highland Multi Strategy Credit Fund GP, L.P., itself a Delaware limited partnership, is the general

---

operation of the contract, and for restitution), but not seek actual monetary damages. That being said, it appears that the relief sought by Plaintiff for this cause of action is as follows: "Plaintiff seeks to declare the sale of the viaticals void because they were accomplished in violation of the Advisers Act" and "Plaintiff further seeks to declare the agreement(s) between Highland and Multistrat void because they were continued in violation of the Advisers Act." Complaint, *id.* at Exh. 5, Appx. 254.

[24] Here, the Plaintiff appears to invoke both the Investment Advisers Act as well as Texas law—clearly seeking monetary damages including punitive damages.

[25] *Id.,* Exh. 5, Appx. 252-58. Here, the Plaintiff invokes the Third Amended and Restated Investment Management Agreement, effective November 1, 2013 (the "IMA") between Highland and Multi Strat.

partner of Multi Strat, which is wholly owned by Highland Multi Strategy Credit GP, LLC, which is, in turn, wholly owned by Highland.[26]

The equity ownership interests of the limited partners in Multi Strat are somewhat complex but, put simply, on a consolidated basis, Highland owns 58.7% of the limited partnership interests in Multi Strat and the entity known as CLO Holdco, Ltd. ("CLO Holdco") owns 4.06% of the limited partnership interests. ***Notably, CLO Holdco is a subsidiary of Plaintiff/DAF, but, as noted earlier, it is undisputed that Plaintiff/DAF itself is not an investor or equity owner of any sort of Multi Strat***.[27]

Also, notably, the only other owners of Multi Strat are: The Dugaboy Investment Trust (1.71%);[28] Highland Capital Management Services, Inc. (35.10%), and Mark Okada (.43%).[29] The Dugaboy interest is notable for the following reason: Dugaboy filed a proof of claim during the Highland Bankruptcy Case that, while vague, appears to have been based on the very same theories espoused by the Plaintiff/DAF in this Action. Specifically, it stated:

> The Dugaboy Investment Trust ("Claimant"), an investor in certain funds managed by the Debtor, including Highland Multi-Strategy Credit Fund, L.P. and Highland Multi-Strategy Credit Fund, Ltd., may have claims against the Debtor relating to the post-petition actions or inactions of the fund investment manager in managing these funds pursuant to Debtor's Fourth Amended and Restated Limited Partnership Agreement and that certain Third Amended and Restated Investment Management Agreement by and between Highland Multi-Strategy Credit Fund, L.P., Highland Multi-Strategy Credit Fund, Ltd., and the Debtor, as amended from time to time. While the potential claims relate to the post-petition actions or inactions of the fund investment manager, Claimant is filing this claim to preserve

---

[26] *Id.* at Exh. 17, Appx. 592-93. The Master Fund's governing document is known as the Fourth Amended and Restated Limited Partnership Agreement of Highland Multi Strategy Credit Fund, L.P., dated November 1, 2014 (the "LPA"). The Feeder Fund's governing document is known as the Amended and Restated Memorandum and Articles of Association of Highland Multi Strategy Credit Fund, Ltd., as adopted on November 1, 2014 (the "Articles"). Highland's obligations as investment manager are set forth in a document known as the Third Amended and Restated Investment Management Agreement, by and among Highland Multi Strategy Credit Fund, Ltd., Highland Multi Strategy Credit Fund, L.P., and Highland Capital Management, L.P., dated November 1, 2013 (the "IMA").

[27] *Id.* at Exh. 17, Appx. 592-93.

[28] It is undisputed that Dugaboy is a family trust of former Highland CEO, James Dondero.

[29] *Id.* at Exh. 17, Appx. 592-93.

all potential rights, claims, and causes of action it may have against the Debtor under these prepetition agreements relating to the investment manager's actions or inactions in managing these funds.[30]

The Dugaboy proof of claim was signed and submitted by an individual named Grant Scott, the then-Trustee of Dugaboy.  Grant Scott was also the then-Trustee of CLO Holdco, the 100% subsidiary of Plaintiff/DAF.  This proof of claim was later withdrawn.

Dugaboy also filed a District Court lawsuit against Highland (post-confirmation and pre-Effective Date, on June 23, 2021)[31] raising these very same issues, which it later dismissed.

## III.   LEGAL ANALYSIS

### A.  Jurisdiction and Legal Standards

Bankruptcy subject matter jurisdiction exists with regard to this Action, pursuant to 28 U.S.C. § 1334(b).  The Action presents "arising in" or "arising under" core matters, pursuant to 28 U.S.C. § 157(b)(2)(A) and (B)—as it involves claims that were asserted against a Chapter 11 Debtor (before the effective date of its plan) and the application of sections 503 and 507 of the Bankruptcy Code.  Moreover, the Action requires interpretation of the now-effective Plan of the Reorganized Debtor and application of section 1141(d)(1) of the Bankruptcy Code.  Therefore, the Bankruptcy Court may enter final orders in this matter.  Moreover, the District Court has referred this Action to the Bankruptcy Court.

The Reorganized Debtor's Amended Motion to Dismiss argues grounds for dismissal, pursuant to FRCP 12(b)(1) (i.e., lack of subject matter jurisdiction—due to lack of standing of the Plaintiff) and FRCP 12(b)6) (i.e., failure to state a claim upon which relief may be granted).

---

[30] *Id.* at Exh. 1, Appx. 6.
[31] *Id.* at Exh. 2, Appx, 8-18.

With regard to the Rule 12(b)(1) argument, the applicable legal standards are set forth in detail in part III.E. of this Opinion. With regard to Rule 12(b)(6), to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Dismissal is proper under Rule 12(b)(6) when, taking the facts alleged in the complaint as true, it appears that the plaintiff "cannot prove any set of facts that would entitle it to the relief it seeks." *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.,* 61 F.3d 288, 289 (5th Cir. 1995). As set forth below, here, more than anything else, Plaintiff/DAF's problem is that its claims are barred for failure to proceed according to the Plan requirements and because of section 1141(d)(1)(A) of the Bankruptcy Code. As earlier noted, the court may take judicial notice of matters of public record when considering a motion to dismiss for failure to state a claim. *See, e.g., T.L. Dallas (Special Risks), Ltd. v. Elton Porter Marine Ins.*, No. 4:07–cv–0419, 2008 WL 7627807, at *2 (S.D. Tex. 2008); *Cade v. Henderson*, No. CIV A 01-943, 2001 WL 1012251, at *2 (E.D. La. Aug. 31, 2001).

### B. Plaintiff's Claims Asserted in the Action, if Valid, Would Constitute "Administrative Expense Claims"

Starting with the basics, an "Administrative Expense Claim" is not merely a concept defined in the Debtor's Plan.  It is a significant concept in the Bankruptcy Code.  Section 507(a)(2) of the Bankruptcy Code establishes that administrative expenses incurred in bankruptcy are to be given priority in distribution such that they are generally paid in full before other unsecured non-priority claims.  *See* 11 U.S.C. § 507(a)(2). These administrative expenses include "the actual, necessary costs and expenses of preserving the estate …." 11 U.S.C. § 503(b)(1)(A). To qualify as an "'actual and necessary cost' under section 503(b)(1)(A), a claim against the estate must have

13

arisen post-petition and as a result of actions taken by the trustee [or debtor-in-possession] that benefited the estate." *See Nabors Offshore Corp. v. Whistler Energy II, L.L.C. (In re Whistler Energy II, L.L.C.)*, 931 F.3d 432, 441 (5th Cir. 2019) (citing *Total Minatome Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 387 (5th Cir. 2001)). Notwithstanding the "benefited the estate" concept that has been articulated in case law, an exception was created by the United States Supreme Court many years ago (in the context of a "Chapter XI arrangement" case under the former Bankruptcy Act of 1898), in a situation in which damages were inflicted on innocent third parties through a receiver's (equivalent of a Chapter 11 trustee or debtor-in-possession today) operation of the debtor's estate. *See Reading Co. v. Brown*, 391 U.S. 471, 478-79 (1968).

In *Reading*, a building that was being operated by the bankruptcy receiver in a reorganization case was destroyed by a fire, and the fire spread to adjoining premises, destroying real and personal property of claimant, Reading. Reading argued that the fire was caused by the negligence of the receiver and one of his workmen, in the course of operating the debtor's estate during a bankruptcy reorganization. *See id.* at 473–74. The Supreme Court—in grappling with what type of a claim Reading might have—held that it would be unfair to force the fire victim to share equally with the existing creditors and, thus, granted administrative priority to that claimant. *See id.* at 478 (framing the question as "whether the fire claimants should be subordinated to, should share equally with, or should collect ahead of those creditors for whose benefit the continued operation of the business ... was allowed").

The "*Reading* exception," as it has become known, has withstood the test of time and has been routinely applied after the enactment of the modern Bankruptcy Code. *See, e.g., Jack/Wade Drilling*, 258 F.3d at 388 ("The Reading exception has survived Congressional amendments to the

bankruptcy code and been recognized and applied by nearly every Court of Appeals in the nation."); *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 437 (5th Cir. 1998) (same); *In re Al Copeland Enters., Inc.,* 991 F.2d 233, 238-39 (5th Cir. 1993) (same). The *Reading* case has been interpreted broadly to include not just torts, but other negligent or intentional acts committed by a debtor-in-possession as giving rise to administrative expense claims. *See Al Copeland*, 991 F.2d at 239 ("[T]hose injured during … administration of an estate are entitled to an administrative priority [claim] regardless of whether their injury was caused by a tort or other wrongdoing."); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 202 (1st Cir. 1985) ("If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, a fortiori, an intentional action which violates the law and damages others should be so treated"), *accord* 4 COLLIERS ON BANKRUPTCY ¶ 503.06[3][c][i] ("Courts have found *Reading* directly applicable to victims of postpetition torts committed by a debtor in possession or trustee. Courts have also applied the doctrine to a variety of other postpetition claims") (citing cases).

Accordingly, based on the above authority, the claims of Plaintiff, if meritorious, would fall into the category of administrative expense claims.  Plaintiff specifically alleges that it was injured by Highland causing the sale of Multi Strat's assets during the middle of 2020—after the Petition Date, before the Effective Date, and while Highland was a debtor-in-possession—in violation of Highland's alleged contractual and extra-contractual duties owed to Plaintiff. Plaintiff's claims, therefore, would constitute "administrative expense claims" against Highland. *Whistler Energy*, 931 F.3d at 443 (discussing circumstances when a party might be entitled to an administrative expense claim, regardless of whether there is an assumed or rejected prepetition contract, and even when "benefit to the estate" may be less than "readily calculable"; noting

sometimes such a claim might simply result as a cost incidental to a debtor's business operations) (citing *Reading*, 391 U.S. 471).

C. *Requests for Allowance of "Administrative Expense Claims" Were Required to be Filed in the Bankruptcy Court by September 25, 2021*

As set forth earlier herein, Article II of the Plan dictated the procedures for the filing and allowance of "administrative expense claims."  Pursuant to Article II of the Plan, parties seeking "administrative expense claims" were required to (i) file those claims with the bankruptcy court specifically (not the District Court); and (ii) serve those claims on Highland no later than the Administrative Expense Claim Bar Date (i.e., September 25, 2021).[32]  The Plan and Notice of Effective Date make clear that any administrative expense claim not filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date would be time-barred. Section 1141(a) provides that the provisions of a confirmed plan bind the debtor and any creditor. *Eubanks v. Fed. Deposit Ins. Corp.*, 977 F.2d 166, 170–71 (5th Cir. 1992).[33]

This court noted in the case of *In re Taco Bueno Rests., Inc.*, 606 B.R. 289, 302-303 (Bankr. N.D. Tex. 2019), in addressing the importance of the concept of "timeliness" with regard to administrative expense claims, that debtors and reorganized debtors have a keen interest in obtaining finality sooner rather than later with regard to administrative expense claims. The reason debtors have an interest in such finality derives from the special treatment afforded to administrative expense claims. An administrative expense claimant is generally entitled to cash in full on the effective date of a plan (or as soon as the claim is allowed thereafter by the bankruptcy

---

[32] *See* Exh. 4, Appx. 189, 196, 203-04.

[33] *See also Hall Fin. Group, Inc., v. DP Partners, L.P,* 106 F.3d 667, 672, n.19 (5th Cir. 1997) (bankruptcy judges have, for some time, been accorded discretion in setting administrative-claim bar-dates) (citing 3 Collier on Bankruptcy ¶ 503.1, at 503–4 n. 2c (Lawrence P. King ed., 15th ed. 1994) (noting that the Bankruptcy Reform Act of 1994 sets no time limit for filing administrative claims, and further noting that because nothing in the Bankruptcy Rules or Code sets deadlines for filing administrative claims, bankruptcy judges "may set such deadlines on a case by case basis").

court).  It is a very important event in the bankruptcy case for a reorganized debtor to have a deadline for administrative expense claims because administrative claims can pose significant feasibility issues for plans.  The reorganized debtor needs to be able to ascertain an amount such entities must have in cash due to pay administrative expenses.

There is ample case law that stresses the importance of requiring potential administrative expense claimants to follow the mandates of Bankruptcy Code section 503(b) and file a request for allowance with the bankruptcy court.  *See Taco Bueno*, 606 B.R. 289 (concluding that utilizing a "Proof of Claim" form—i.e., Official Form 410—to make a request for payment of an administrative expense, is insufficient to satisfy the requirement under Bankruptcy Code section 503(a) to timely file and serve a request for payment of an administrative claim by an administrative claims bar date; requests for administrative claims have different procedures—requiring the filing of an application requesting allowance and payment of an administrative-expense claim on the bankruptcy court's docket).[34]  *See also In re Maxus Energy Corp.*, 639 B.R. 51, 64 (Bankr. D. Del. 2022) (claim barred because it was not filed by administrative claim bar date and "a claims bar date 'operates as a federally created statute of limitations, after which the claimant loses all of [its] rights to bring an action against the debtor'") (citations omitted); *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 190 B.R. 185, 188 (Bankr. S.D.N.Y.

---

[34] This court noted in *Taco Bueno* that Congress made the rules and burdens for an administrative expense claim very different from those for a proof of claim. Section 503 governs an administrative expense claim. Under § 503, the burden at the beginning is on the claimant to show reasonableness, necessity, and benefit to the estate. The Bankruptcy Code and the Bankruptcy Rules put a claimant in a completely different posture for an administrative expense claim compared to a proof of claim. Requiring that a § 503 administrative expense claim be asserted in an application, among other things, ensures that the bankruptcy court will have an opportunity to pass judgment on the administrative expense and prevent any unreasonable, unnecessary, and non-beneficial claims from being charged to the estate. Creditors ultimately bear the burden of persuasion and production to establish that their claims are, in fact, an administrative expense. Allowing creditors to satisfy their burden of production by burying an administrative expense in a proof of claim circumvents their statutory burdens and forces the trustee or some other interested party to affirmatively raise this administrative expense as objectionable—directly contradicting § 503(b)'s express requirement that a claimant, in order to have an administrative expense claim allowed, must make a request and give notice to parties in the case and obtain a bankruptcy court hearing. *Taco Bueno*, 606 B.R. at 302.

1995) (stressing the importance of filing claims timely in the bankruptcy court before the bar date, as opposed to in district court litigation).[35]

Here, Plaintiff's alleged causes of action are administrative expense claims and were required to be filed with this Bankruptcy Court by the Administrative Expense Claim Bar Date. Plaintiff knowingly chose not to file an administrative claim.   The filing of the Complaint constituted an ***improper means to pursue a post-petition claim against a chapter 11 debtor.***   To the extent it may have been a defensible strategy at the time the Action was filed (*see discussion* in Part III.E below for more on this thought), it certainly became wholly indefensible after the Plan went effective.   The Plaintiff/DAF received notice and had every reason to know, on or after August 11, 2021, that it had one avenue to pursue the claims asserted in the Action—through the mechanism of filing an Administrative Expense Claim in the Bankruptcy Court on or before September 25, 2021.   However, it chose not to go that route.   As a result, the Complaint must be dismissed.

Plaintiff/DAF makes a confusing argument that "administrative priority claims" are not subject to the Plan because the Plan uses the term "Administrative Expense Claim."[36] Plaintiff attempts to create confusion where none exists. As noted earlier, the Plan defines "Administrative Expense Claim," in relevant part, as a:

> Claim for costs and expenses of administration of the Chapter 11 Case … pursuant to sections 503(b), 507(a)(2), 507(b) … including, without limitation, (a) the actual and necessary costs and expense incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor ….[37]

---

[35] *See also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991) (case involved a post-petition contract between a chapter 11 debtor and an oil field service vendor that went awry and vendor filed a federal district court lawsuit during the case for breach of contract and torts; while the lawsuit went forward in the Federal District Court, the Fifth Circuit opinion contains discussion stressing the need for the vendor to have filed a request for administrative expense claim in the bankruptcy court and giving that as a reason for not allowing the vendor to amend its pleading to assert damages not provided for in the debtor's confirmed plan).

[36] *See* DE # 30 (Plaintiff's Response), at 3-4.

[37] DE # 21, Exh. 4, Appx. 189.

There is no "distinction" in the Plan between an "administrative priority claim" and an "Administrative Expense Claim." Both would encompass claims arising from the "actual and necessary costs and expense" of the debtor-in-possession's post-petition management. Highland's naming convention did not somehow change the substantive application of the Bankruptcy Code or the nature of an administrative expense/priority claim.

D.   *The Unsupportability of Plaintiff/DAF's Eleventh-Hour Request (Through Their Response to the Motion to Dismiss Their Action) for the Bankruptcy Court to Excuse Their "Technical Non-Compliance" and Deem Complaint to Have Been a Timely Request for Allowance of an Administrative Expense Claim*

Plaintiff/DAF argues that the Bankruptcy Court should excuse its "technical" non-compliance and treat its Complaint as a "request for an order permitting a late claim or treating the filing of this action as a timely Administrative Expense Claim."[38]  While Plaintiff minimizes the significance of its failure to comply with the Plan, Confirmation Order, and standard bankruptcy protocols—by referring to its failure to file a request for allowance of an administrative expense claim in the Bankruptcy Court as "technical" non-compliance—its proposal that the Complaint should be deemed such a "request" is procedurally and legally improper.  The relief must be sought by a separate motion and include evidence of "cause" under section 503(a) of the Bankruptcy Code and possibly also "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993).[39]  Here, there is no evidence supporting "cause" (or excusable neglect, for that matter), just the following undisputed facts:

---

[38] DE # 30 (Plaintiff's Response), at p.5.
[39] The *Pioneer* case dealt with late-filed proofs of claim, for prepetition claims, not requests for allowance of post-petition administrative expense claims.  Thus, it is not entirely clear that it governs here.  Perhaps, only section 503(a) "cause" is the standard.

- The Plan was confirmed on February 22, 2021 and included clear disclosures about the Administrative Expense Claim Bar Date.

- At a hearing on June 25, 2021, shortly before the Complaint was filed—in a hearing on a different matter, in which a different post-petition lawsuit filed in the District Court was being discussed (and the Bankruptcy Court expressed concern about it)—Plaintiff's counsel indicated to the Bankruptcy Court that he was receiving advice from bankruptcy counsel on whether post-petition administrative expense claims, like those asserted in the Complaint, could be filed in courts other than the Bankruptcy Court.[40]

- On July 22, 2021, Plaintiff's counsel filed (but did not serve) the Complaint—i.e., seven months after the Confirmation Order and two months before the Administrative Expense Claim Bar Date.

- On or about August 11, 2021, Plaintiff/DAF was served with notice of the Administrative Expense Claim Bar Date.

- Plaintiff/DAF did not file an administrative expense claim with this Court by the Administrative Expense Claim Bar Date (i.e., September 25, 2021).

- On November 23, 2021, the Bankruptcy Court told Plaintiff its arguments regarding the Plan injunction—similar to some of the same arguments it is making now—were mistaken. At the same hearing, Highland told Plaintiff/DAF, on the record, it should have filed an administrative expense claim in this court.[41]

---

[40] DE # 32, Exh. 21, Appx. 751-53.
[41] DE # 32, Exh. 22, Appx. 777 (lines 17) – Appx. 778 (line 18); Appx. 781 (line 10) – 782 (line 17); Appx. 783 (line 5-14); Appx. 786 (line 17-23).

•      Between the November 2021 hearing and the filing of the Motion (more than eight months), Plaintiff/DAF never moved this Court to allow its claim as late filed or took any other action to protect its rights.

•      Only after the Complaint was referred to this Court and Highland filed its Amended Motion to Dismiss did Plaintiff ask this Court to consider the Complaint as "a late claim" in the Response.

•      Plaintiff has not submitted any evidence of "cause" as required by Section 503(a), nor "excusable neglect" under *Pioneer* (to the extent it is applicable).

To be clear, Plaintiff argues that it should be held to have asserted a timely request for administrative expense claim because (a) its Complaint was filed (but not served) before the Administrative Expense Claim Bar Date; (b) Highland (while not formally served) received "prompt" notice and was not prejudiced; (c) enforcing the Administrative Expense Claims Bar Date would raise concerns regarding Constitutional "due process and taking;" and (d) the "best interests of creditors test" in Section 1129 favors Plaintiff.[42]   Plaintiff also blames its failure to comply on the Plan itself, arguing that a Plan injunction therein prevented Plaintiff from fulfilling its obligations. Each argument misses the point.

First, it is irrelevant that the Complaint was filed before the Administrative Expense Claim Bar Date. The Bankruptcy Code,[43] the Plan,[44] and applicable case law require the filing of administrative expense claims—like those asserted in the Complaint—on the bankruptcy court's docket, not on another court's, for a claim to be deemed timely filed. *See, e.g.*, *Taco Bueno*, 606 B.R. at 302-03; *Houbigant*, 190 B.R. at 188.14.

---

[42] DE # 30 (Plaintiff's Response), at p. 5.
[43] 11 U.S.C. § 503(a).
[44] DE # 21, Exh. 4, Appx. 125, 203-04.

Moreover, any suggestion that the Complaint is an "informal proof of claim" is rejected. Even assuming this concept might be applicable in the context of requests for allowance of administrative expense claims, an "informal proof of claim" must be filed in the bankruptcy court and the equities must favor the claimant. *In re Opus Mgmt. Grp. Jackson LLC,* 2017 Bankr. LEXIS 555, at * 29-30 (Bankr. S.D. Miss. Feb. 27, 2017) ("The Court is unaware of any precedent that would allow it to treat the pre-bar date filing in one case as an informal proof of claim in another case."); *In re Murchison*, 85 B.R. 27, 41 (Bankr. N.D. Tex. 1987) ("Debtor's knowledge of the claim has never been held sufficient to constitute an informal proof of claim … These communications cannot constitute a proof of claim because they were not filed with the Court.").

Additionally, Plaintiff's argument regarding prejudice is disingenuous. Plaintiff filed the Complaint but decided not to serve it. Plaintiff cannot rely on Highland's purported diligence in learning of the Complaint to justify its misconduct. The bar date exists to avoid prejudice to Highland, not Plaintiff.  Moreover, other creditors in a bankruptcy case are entitled to notice that a party is asserting an administrative expense claim.  Allowance of such a claim could greatly impact their ultimate recovery.  Creditors (not just the debtor) may want to object and be heard. That's why section 503(b) of the Bankruptcy Code contemplates "notice and a hearing" in the bankruptcy court when a request is filed.

Additionally, no due process or taking concerns arise if Plaintiff is required to abide by court- and statutorily created deadlines, and Plaintiff cites to nothing to support this position.

Additionally, the "best interests of creditors" test applies to plan confirmation and is irrelevant in this context. Regardless, the test would weigh in Highland's favor. Creditors want Highland's assets monetized and proceeds distributed sooner rather than later. Plaintiff's efforts to

"backdoor" an administrative expense claim by asserting it in another forum delays that process, increases expenses, and directly contradicts the policy behind bar dates.

Finally, Plaintiff's argument that it was confused by the Plan discharge or injunction language is not credible. The provisions are typical and unambiguous; they prohibited Plaintiff from pursuing claims in the District Court. Numerous other claimants—including some of Mr. Dondero's other affiliates—complied with the bar date. Plaintiff is not entitled to special treatment because it, and it alone, found the Plan confusing.

E.  *The Plaintiff's Unspoken, But Not-So-Subtle Strategy Play*

Ultimately, the Plaintiff's filing of the Complaint in the District Court was a strategic move that did not work and now it binds the Plaintiff.

The Plaintiff's strategy—rather obvious to this Court—was clever, to be sure, but it all hinged on the prospect of the Debtor's Plan being reversed on appeal, which did not ultimately happen.[45] Specifically, thinking through the Plaintiff's legal strategy, the court believes the Plaintiff's legal team likely thought through this as follows.  First, there was an automatic stay conundrum.  Specifically, filing the Action might have at first seemed risky, because the automatic stay was still in place at the time the Plaintiff filed its Complaint (because it was filed during the post-confirmation but pre-Effective Date time frame).[46]  But, the Plaintiff was pursuing ***post***-petition claims, so the filing of the Action arguably was not precluded by the automatic stay.  11 U.S.C. § 362(a)(1).[47]  However, even with that automatic stay conundrum potentially resolved, the Plan and Confirmation Order became an obvious obstacle.  As discussed here *ad nauseum*, the

---

[45] The Fifth Circuit affirmed in substantial part the Plan on September 2, 2022, in Action No. 21-10449.

[46] *See also* DE # 21, Exh. 4, Appx. 167 (Art. IX.G.).

[47] The inapplicability of the automatic stay was not a "given." The relief sought in the Plaintiff/DAF's Complaint asked for, among other things, disgorgement of all of Highland's allegedly ill-gotten gains, and also voiding of certain agreements of Highland.  This sounds potentially like exercising or an attempt to exercise control over property of the estate.  11 U.S.C. § 362(a)(3).

23

Plan required a post-petition claim like this to be filed as a Request for Allowance of Administrative Expense Claim with the Bankruptcy Court and, moreover, the Plan discharge and injunction language precluded an action such as the Plaintiff's from being filed in another court. Plaintiff was no doubt thinking that it had found the perfect "workaround"—file the Action in the District Court *before* the Plan went effective, seek a stay of the Action for a bit,[48] and hope that, during the stay of the Action, the Plan got reversed on appeal (which would moot the Administrative Claim Bar Date and Plan Injunction). In the event of a reversal, the Plaintiff would seek to un-stay the Action and go forward in the District Court hopefully—unless the District Court decided to refer the Action at that point to the Bankruptcy Court (on the basis that it was at least related to the Bankruptcy Case; maybe Plaintiff could successfully fight this).

Here, as the Plaintiff's legal strategy started to unravel, on July 5, 2022, in its Response to the Motion to Dismiss, the Plaintiff asked the Bankruptcy Court for the first time to treat its Complaint as a timely request for allowance of an administrative expense claim (a year after it was filed, and 10 months after the deadline for filing it in the Bankruptcy Court). This is not "cause" as contemplated by Section 503(a). This is nothing more than a belated and unjustified "Plan B" after the Plaintiff's clever workaround did not pan out as hoped. *Houbigant*, 190 B.R. at 187 ("[Claimant] concedes that it failed to [file its claim] to avoid the claims allowance process … [Claimant] cannot have it both ways. Equity mandates that it be bound by its tactical decisions.").

*F. The Standing Problem.*

Highland has also argued that the Action must be dismissed because Plaintiff lacks both prudential and constitutional standing to assert the claims that it has asserted in the Action.

---

[48] DE # 32, Exh. 9, Appx. 451.

As has been extensively set forth herein, the Complaint alleges that Plaintiff/DAF was injured because Highland mismanaged the sale of certain of Multi Strat's assets and, in doing so, breached its contractual and extra-contractual duties to Plaintiff/DAF as an investor in Multi Strat. But Plaintiff/DAF is not a limited partner or investor in Multi Strat (Plaintiff/DAF agrees it is not). Rather, Plaintiff/DAF's 100% subsidiary CLO Holdco is. Therefore, Highland argues Plaintiff/DAF lacks standing to assert the claims in the Complaint. While Plaintiff/DAF arguably could have constitutional standing as the parent of CLO Holdco (a Multi Strat investor), Plaintiff/DAF would have had to plead its relationship to CLO Holdco, that CLO Holdco was injured, and that the injury to CLO Holdco caused injury to Plaintiff/DAF. *See BCC Merch. Solutions, Inc. v. Jet Pay, LLC*, 129 F.Supp.3d 440, 449-50 (N.D. Tex. 2015) (finding plaintiff parent company had constitutional standing when it pled injury it suffered arising from breach of contract to which its subsidiary was a counterparty). Plaintiff/DAF, however, has not done this.

Highland also argues that Plaintiff/DAF lacks prudential standing because it is not the "real party in interest" as required by Rule 17(a) of the FRCP, made applicable by Rule 7017 of the FRBP. Prudential standing is a "'fundamental restriction on [federal judicial] authority" and requires 'a litigant [to] assert his or her own legal rights… and []not rest a claim to relief on the legal rights or interests of third parties.'" *Id.* at 450 (citations omitted). Prudential standing is a separate requirement from constitutional standing, and, if a plaintiff lacks prudential standing, the action must be dismissed regardless of whether the plaintiff has constitutional standing. *Id.* This prudential standing requirement is embodied in Rule 17(a) of the FRCP, which mandates that a claim be brought by the "real party in interest," i.e., the party "with the right to sue under … the controlling state or federal substantive laws." *Id.* at 450, 453. Here, Plaintiff/DAF is not an investor

in Multi Strat and has no right to assert the actual investors' contractual or other rights under applicable substantive law.[49]

That Plaintiff/DAF is the parent of CLO Holdco, a Multi Strat investor, changes nothing. A parent cannot assert the contractual rights of its subsidiaries or pierce its own corporate veil to do so. *BCC Merch.*, 129 F. Supp. 3d at 460 ("[W]hile BCC may have Article III standing, the Court finds that it lacks prudential standing and is not the real party in interest entitled to enforce the ISO Agreement, which BCC's subsidiary, BankCard, undisputedly entered into alone."). For the foregoing reasons, Plaintiff/DAF is not a "real party in interest" as required by Rule 17(a) and lacks prudential standing to assert the claims in the Complaint.

Plaintiff/DAF argues that it should be given leave to amend its Complaint to clarify that it is suing derivatively on behalf of CLO Holdco and/or to substitute in CLO Holdco as party in interest. The Plaintiff/DAF submits that Rule 7017 of the FRBP requires an opportunity to join a

---

[49] *See Carroll v. JPMorgan Chase Bank*, 575 Fed. Appx. 260, 260-61 (5th Cir. 2014) (finding plaintiff lacked standing and was not the "real party in interest" when it had no right to sue under contract); *Farrell Constr. Co. v. Jefferson Parish*, 896 F.2d 136, 140 (5th Cir. 1990) (finding plaintiff was not a "real party in interest" when it was neither a party to the contract nor a third party beneficiary); *BCC Merch.*, 129 F.Supp.3d at 460 (holding plaintiff was not a "real party in interest" and lacked prudential standing when it sought to assert the contract rights of its wholly-owned subsidiary); *see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank*, 747 F.3d 44, 48-49 (2d Cir. 2014), *cert denied* 2015 U.S. LEXIS 1370 (U.S. Feb. 23, 2015) (applying federal common law and holding: ("We conclude that Hillside does not have prudential standing in this case because it cannot enforce the terms of the [contract], as to which it is neither a party nor a third-party beneficiary, but the enforcement of which is a necessary component of its claim"); *Williams v. Bd. of Educ. of Chicago*, 506 Fed. Appx. 517, 520 (7th Cir. 2013) ("Neither situation describes the federal lawsuit filed by Williams, whose indefinite, inchoate claims arise entirely from a dispute between two business entities whose contracts granted him no direct or incidental benefit and thus leave him without standing to bring these claims); *Pelletier v. Rodriguez*, 2021 U.S. Dist. LEXIS 131898, at *13 (D. Nev. July 15, 2021) ("[B]ecause there is no given reason that Clover Valley Ranch LLC could not pursue a breach of contract claim in its own name, the Court declines to confer prudential standing on Plaintiff to bring this claim on behalf of a third-party."); *Cumming v. Felder*, 2018 U.S. Dist. LEXIS 82081, at *5 (D. Conn. May 16, 2018) ("[A]n individual who is neither a party to an agreement nor an intended beneficiary of the agreement lacks prudential standing to sue under the agreement") (citing cases); *Alexander v. DLJ Mortg. Cap., Inc.*, 2016 U.S. Dist. LEXIS 198193, at * 8-14 (S.D. Miss. Jul. 5, 2016) (finding non-party to a contract lacked standing under FRCP 17(a) to bring breach of contract claims); *Henderson v. Benchmark Strategy, LLC*, 2011 U.S. Dist. LEXIS 90988, at *10-11 (D. Colo. Aug. 15, 2011) ("Mr. Henderson is not a party to the Consulting Agreement and is not the real party in interest to assert the rights (if any) of Henderson LLP."); *Browne v. Robb*, 583 A.2d 949, 954-55 (Del. 1990) (applying Delaware law and finding plaintiff lacked standing to assert breach of a contract to which it was neither a party nor an intended third-party beneficiary) .

real party in interest in such circumstances as these. Specifically, Rule 7017 incorporates FRCP 17(a)(3), which provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

However, because the administrative expense claims asserted in the Compliant are time-barred, granting Plaintiff/DAF leave to amend its Complaint and substitute in CLO Holdco would be futile.  *See, e.g., Stripling v. Jordan Prod. Co.*, 234 F.3d 863, (5th Cir. 2000) (finding amendment "futile" when the "amendment complaint would fail to state a claim upon which relief could be granted.").  CLO Holdco would have the same problems that Plaintiff/DAF has—it didn't comply with the Plan and Confirmation Order and timely file an administrative expense claim in the Bankruptcy Court and serve it on the Debtor by September 25, 2021.

## IV.  CONCLUSION

As this court explained in its *Taco Bueno*[50] decision, the requirement of filing a request for allowance of an administrative expense claim in the bankruptcy court, and the act of seeking/setting a bar date in connection therewith, are, collectively, a big deal.  The concept of setting an administrative expense claim bar date is not just about protecting a debtor.  It is about protecting general unsecured creditors, too—because a large administrative expense claim can greatly impact the general unsecured creditors' share of the bankruptcy pie.  That's why a request for allowance of an administrative expense claim must be filed on the bankruptcy court's docket and determined by the bankruptcy court after notice and a hearing. And that's why any party-in-interest can object to the claim.  But, to be clear, the Bankruptcy Code and Rules do not specifically

---

[50] *Taco Bueno*, 606 B.R. 289.

set the deadline.  *See* <mark>11 U.S.C. § 503</mark>.  Rather, a debtor typically asks for one to be set or provides

for one in its plan.  That's what Highland did here.  The deadline can be extended for cause under

section 503(a). The Plaintiff/DAF never filed any motion seeking an extension here arguing

"cause."  It only asks for an extension now—almost a year after the noticed deadline—and now

that it's clear that its District Court Action was improper.  The Plaintiff/DAF's "work-around"

legal strategy here cannot be condoned.

Accordingly, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** as to all causes of action asserted

and the Complaint is dismissed in its entirety with prejudice.

**###END OF MEMORANDUM OPINION AND ORDER###**

# U.S. Bankruptcy Court
## Northern District of Texas (Dallas)
## Adversary Proceeding #: 22-03052-sgj

*Assigned to:* Chief Bankruptcy Jud Stacey G Jernigan        *Date Filed:* 07/22/21
*Lead BK Case:* 19-34054                                      *Date Dismissed:* 09/30/22
*Lead BK Title:* Highland Capital Management, L.P.            *Date Transferred:* 05/19/22
*Lead BK Chapter:* 11
*Demand:*

*Nature[s] of Suit:*  02 Other (e.g. other actions that would have been brought in state court if unrelated to
                          bankruptcy)

### Plaintiff
----------------------
**Charitable DAF Fund, LP**                       represented by **Jonathan E. Bridges**
                                                                Sbaiti & Company PLLC
                                                                JP Morgan Chase Tower
                                                                2200 Ross Avenue, Suite 4900 W
                                                                Dallas, TX 75201
                                                                (214) 432-2899
                                                                Fax : (214) 853-4367
                                                                Email: jeb@sbaitilaw.com

                                                                **Mazin Ahmad Sbaiti**
                                                                Sbaiti & Company PLLC
                                                                JP Morgan Chase Tower
                                                                2200 Ross Avenue, Suite 4900 W
                                                                Dallas, TX 75201
                                                                (214) 432-2899
                                                                Fax : (214) 853-4367
                                                                Email: mas@sbaitilaw.com
                                                                *LEAD ATTORNEY*

V.

### Defendant
----------------------
**Highland Capital Management, L.P.**             represented by **Zachery Z. Annable**
                                                                Hayward PLLC
                                                                10501 N. Central Expressway
                                                                Suite 106
                                                                Dallas, TX 75231
                                                                (972) 755-7108
                                                                Fax : (972) 755-7108
                                                                Email: zannable@haywardfirm.com
                                                                *LEAD ATTORNEY*

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones L.L.P.
780 Third Avenue
New York, NY 10017-2024
(212) 561-7700
Fax : (212) 561-7777
Email: gdemo@pszjlaw.com

**Melissa S. Hayward**
Hayward PLLC
10501 N. Central Expry, Ste. 106
Dallas, TX 75231
972-755-7104
Fax : 972-755-7104
Email: MHayward@HaywardFirm.com

**John A. Morris**
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
(212) 561-7700
Fax : (212) 561-7777
Email: jmorris@pszjlaw.com

**Jeffrey N. Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
310-277-6910
Fax : 210-201-0760
Email: jpomerantz@pszjlaw.com

**Hayley R. Winograd**
Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue #36
New York, NY 10017
(212) 561-7700
Fax : (212) 561-7777
Email: hwinograd@pszjlaw.com

| Filing Date | Docket Text |
|---|---|
| 05/25/2022 | 🔵 1 (18 pgs; 4 docs) Adversary case 22-03052. ORDER REFERRING CASE 3:21-CV-1710-N from U.S District Court for the Northern District of Texas, Dallas Division to U.S. Bankruptcy Court for Northern District of Texas, Dallas Division and Complaint by Charitable DAF Fund, LP against Highland Capital Management, L.P. . Fee Amount $350 (Attachments: # 1 Original Complaint # 2 Civil Cover Sheet # 3 Docket Sheet from 21-CV-1710). Nature(s) of suit: 02 (Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy)). (Okafor, Marcey) |
| 05/25/2022 | 🔵 2 (2 pgs) Request for Clerk to issue Summons to Highland Capital Management, L.P. filed by Charitable DAF Fund LP. (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #2 ON 07/22/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |

| 05/25/2022 | 🔵 3 (2 pgs) New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Rutherford). Clerk to provide copy to plaintiff if not received electronically. (ndt) [ORIGINALLY FILED IN 21-CV-1710 AS #3 ON 07/23/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
|---|---|
| 05/25/2022 | 🔵 4 (2 pgs) Summons Issued as to Highland Capital Management LP. (ndt) [ORIGINALLY FILED IN 21-CV-1710 AS #4 ON 07/23/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION (Okafor, Marcey) |
| 05/25/2022 | 🔵 5 (2 pgs) CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Charitable DAF Fund LP. (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #5 ON 07/23/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 6 (6 pgs) MOTION to Stay filed by Charitable DAF Fund LP (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #6 ON 08/26/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 7 ELECTRONIC ORDER granting 6 Motion to Stay. (Ordered by Judge David C Godbey on 9/7/2021) (chmb) [ORIGINALLY FILED IN 21-CV-1710 AS #7 ON 9/7/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 8 (8 pgs; 2 docs) MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) Attorney Zachery Z. Annable added to party Highland Capital Management LP(pty:dft) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #8 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 9 (15 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #9 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 10 (1012 pgs; 28 docs) Appendix in Support filed by Highland Capital Management LP re 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #10 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION](Okafor, Marcey) |
| 05/25/2022 | 🔵 11 (8 pgs; 2 docs) MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) filed by Highland Capital Management LP (Attachments: # 1 Exhibit A) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #11 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 🔵 12 (10 pgs) Brief/Memorandum in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Annable, Zachery [ORIGINALLY FILED IN 21-CV-1710 AS #12 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |

| | |
|---|---|
| 05/25/2022 | 📄 13 (238 pgs; 4 docs) Appendix in Support filed by Highland Capital Management LP re 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss) (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #13 ON 10/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 📄 14 (6 pgs) CERTIFICATE OF SERVICE by Highland Capital Management LP re: 8 MOTION for Reconsideration, 9 Brief/Memorandum in Support of Motion, 10 Appendix in Support, 11 MOTION to Dismiss (Highland Capital Management, L.P.'s Motion to Dismiss), 12 Brief/Memorandum in Support of Motion, 13 Appendix in Support. (Annable, Zachery) Modified text on 10/12/2021 (mjr). [ORIGINALLY FILED IN 21-CV-1710 AS #14 ON 10/11/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 📄 15 (3 pgs) RESPONSE filed by Charitable DAF Fund LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Sbaiti, Mazin) [ORIGINALLY FILED IN 21-CV-1710 AS #15 ON 10/27/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 📄 16 (7 pgs) REPLY filed by Highland Capital Management LP re: 8 MOTION for Reconsideration re 7 Order on Motion to Stay (Highland Capital Management, L.P.'s Motion for Reconsideration of Stay Order) (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #16 ON 11/05/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 📄 17 (9 pgs) CERTIFICATE OF SERVICE by Highland Capital Management LP re 16 Reply (Annable, Zachery) [ORIGINALLY FILED IN 21-CV-1710 AS #17 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (Okafor, Marcey) |
| 05/25/2022 | 📄 18 (2 pgs) ORDER re: 8 Motion for Reconsideration. The Court grants Defendant's motion, lifts the stay, and refers this case to Judge Stacey G.C. Jernigan of the United States Bankruptcy Court for the Northern District of Texas, to be adjudicated as a matter related to the Chapter 11 Bankruptcy of HCM., Chapter 11 Case No. 10-34054. The Clerk of this Court and the Clerk of the Bankruptcy Court to which this case is referred are directed to take such actions as are necessary to docket this matter as an Adversary Proceeding associated with the aforementioned consolidated bankruptcy case. (Ordered by Judge David C Godbey on 5/19/2022) (oyh) (Main Document 18 replaced on 5/23/2022) (twd). (Entered: 05/20/2022) [ORIGINALLY FILED IN 21-CV-1710 AS #18 ON 11/21/2021 IN U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION] (*ERROR IN ENTRY: CORRECT CASE NUMBER IS: 19-34054*) (Okafor, Marcey) |
| 05/27/2022 | 📄 19 (8 pgs; 2 docs) Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order) (Annable, Zachery) |
| 05/27/2022 | 📄 20 (12 pgs) Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 05/27/2022 | 📄 21 (637 pgs) Support/supplemental document *(Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Annable, Zachery) |
| 06/01/2022 | 📄 22 (4 pgs) Certificate of service re: 1) Highland Capital Management, L.P.s Amended Motion to Dismiss ; 2) Highland Capital Management, L.P.s Memorandum of Law in Support of its Amended Motion to Dismiss; and 3) Appendix in Support of Highland Capital Management, L.P.s Amended Motion to Dismiss Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital |

Management, L.P. (Attachments: # 1 Exhibit A - Proposed Order) filed by Defendant Highland Capital Management, L.P., 20 Brief in support filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). filed by Defendant Highland Capital Management, L.P., 21 Support/supplemental document *(Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). filed by Defendant Highland Capital Management, L.P.). (Kass, Albert)

| | |
|---|---|
| 06/01/2022 | 🌐 23  (6 pgs; 2 docs) Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us-courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A)(Hayward, Melissa) |
| 06/03/2022 | 🌐 24  (3 pgs) Certificate of service re: Notice of Hearing re: Highland Capital Management, L.P.s Amended Motion to Dismiss Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)23 Notice of hearing filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM at https://us-courts.webex.com/meet/jerniga for 19 and for 19, (Attachments: # 1 Exhibit A) filed by Defendant Highland Capital Management, L.P.). (Kass, Albert) |
| 06/08/2022 | 🌐 25  (4 pgs) Stipulation by Highland Capital Management, L.P. and The Charitable DAF Fund, L.P.. filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Hayward, Melissa) |
| 06/21/2022 | 🌐 26  (2 pgs) Order approving stipulation regarding proposed scheduling order (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM Dallas Judge Jernigan Ctrm for 19, Entered on 6/21/2022 (Okafor, Marcey) |
| 06/23/2022 | 🌐 27  (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)26 Order approving stipulation regarding proposed scheduling order (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM Dallas Judge Jernigan Ctrm for 19, Entered on 6/21/2022) No. of Notices: 1. Notice Date 06/23/2022. (Admin.) |
| 06/24/2022 | 🌐 28  (3 pgs) Certificate of service re: Order Approving Stipulation Regarding Proposed Scheduling Order Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)26 Order approving stipulation regarding proposed scheduling order (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Hearing to be held on 8/3/2022 at 02:30 PM Dallas Judge Jernigan Ctrm for 19, Entered on 6/21/2022). (Kass, Albert) |
| 07/05/2022 | 🌐 29  (12 pgs) INCORRECT EVENT: See # 30 for correction Brief in opposition filed by Plaintiff Charitable DAF Fund, LP (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Sbaiti, Mazin) Modified on 7/6/2022 (Ecker, C.). |
| 07/05/2022 | 🌐 30  (12 pgs) Response opposed to (related document(s): 19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) filed by Plaintiff Charitable DAF Fund, LP . (Ecker, C.) (Entered: 07/06/2022) |
| 07/26/2022 | 🌐 31  (15 pgs) Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 07/26/2022 | 🌐 32  (865 pgs) Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)21 Support/supplemental document). (Annable, Zachery) |

| | |
|---|---|
| 07/27/2022 | 🔲 33  (4 pgs) Certificate of service re: 1) Highland Capital Management, L.P.'s Reply in Support of its Amended Motion to Dismiss; and 2) Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)31 Reply to (related document(s): 30 Response filed by Plaintiff Charitable DAF Fund, LP) filed by Defendant Highland Capital Management, L.P.. filed by Defendant Highland Capital Management, L.P., 32 Support/supplemental document *(Amended Appendix in Support of Highland Capital Management, L.P.'s Amended Motion to Dismiss)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)21 Support/supplemental document). filed by Defendant Highland Capital Management, L.P.). (Kass, Albert) |
| 08/01/2022 | 🔲 34  (867 pgs; 23 docs) Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) (Annable, Zachery) |
| 08/02/2022 | 🔲 35  (3 pgs) Certificate of service re: Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022 Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)34 Witness and Exhibit List *(Reorganized Debtor's Witness and Exhibit List with Respect to Evidentiary Hearing to Be Held on August 3, 2022)* filed by Defendant Highland Capital Management, L.P. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22) filed by Defendant Highland Capital Management, L.P.). (Kass, Albert) |
| 08/03/2022 | 🔲 36  (1 pg) INCORRECT ENTRY - SEE DE 40. Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (COURT ADMITTED EXHIBIT #17 (MR. SEERY DECLARATION); COURT TOOK JUDICIAL NOTICE OF EXHIBITS #1, #2, #3, #4, #5, #6, #7, #8, #9, #10, #11, #12, #13, #14, #15, #16, #18, #19, #20, #21 & #22) (Edmond, Michael) Modified on 8/4/2022 (Ellison, T.) |
| 08/03/2022 | 🔲 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.) (Edmond, Michael) |
| 08/03/2022 | 🔲 38  (1 pg) Request for transcript (Melanie Holmes), regarding a hearing held on 8/3/2022. The requested turn-around time is hourly. (Edmond, Michael) |
| 08/03/2022 | 🔊 🔲 39  (1 pg) PDF with attached Audio File. Court Date & Time [08/03/2022 02:37:28 PM]. File Size [ 15686 KB ]. Run Time [ 01:06:57 ]. (admin). |
| 08/03/2022 | 🔲 40  (1 pg) Court admitted exhibits date of hearing August 3, 2022 (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P. (Attachments: # 1 Exhibit A--Proposed Order)) COURT ADMITTED EXHIBIT 17. COURT TOOK JUDICIAL NOTICE OF EXHIBITS 1-13, 21 AND 22. (Ellison, T.) (Entered: 08/04/2022) |
| 08/04/2022 | 🔲 41  (45 pgs) Transcript regarding Hearing Held 08/03/2022 (45 pages) RE: Motion to Dismiss Adversary Proceeding (19). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE |

TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 11/2/2022. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 37 Hearing held on 8/3/2022. (RE: related document(s)19 Amended Motion to dismiss adversary proceeding (related document(s):11) filed by Defendant Highland Capital Management, L.P.) (Appearances: G. Demo and Z. Annabel for Movant/Highland; J. Bridges for Respondent/Charitable DAF. Evidentiary hearing. Motion granted. Court to issue Opinion and Order.)). Transcript to be made available to the public on 11/2/2022. (Rehling, Kathy)

| | |
|---|---|
| 09/30/2022 | 🌐 42  (28 pgs) Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022 (Okafor, Marcey) |
| 09/30/2022 | 🌐 43  (28 pgs) Order granting amended motion to dismiss adversary proceeding with prejudice (related document # 19) Entered on 9/30/2022. (Okafor, Marcey) |
| 10/02/2022 | 🌐 44  (30 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)42 Memorandum of opinion regarding Defendant's amended motion to dismiss adversary proceeding (RE: related document(s)19 Motion to dismiss adversary proceeding filed by Defendant Highland Capital Management, L.P.). Entered on 9/30/2022) No. of Notices: 1. Notice Date 10/02/2022. (Admin.) |
| 10/02/2022 | 🌐 45  (30 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)43 Order granting amended motion to dismiss adversary proceeding with prejudice (related document 19) Entered on 9/30/2022.) No. of Notices: 1. Notice Date 10/02/2022. (Admin.) |
| 10/05/2022 | 🌐 46  (3 pgs) Notice of appeal . Fee Amount $298 filed by Plaintiff Charitable DAF Fund, LP (RE: related document(s)43 Order on motion to dismiss adversary proceeding). Appellant Designation due by 10/19/2022. (Sbaiti, Mazin) |
| 10/05/2022 | Receipt of filing fee for Notice of appeal( 22-03052-sgj) [appeal,ntcapl] ( 298.00). Receipt number A29869493, amount $ 298.00 (re: Doc# 46). (U.S. Treasury) |